**Kathryn P. Salyer**, OSB #883017
ksalyer@tsbnwlaw.com
Tomasi Salyer Baroway
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A.**, a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>Plaintiff,<br><br>v.<br><br>**UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC.**, and **UPM MARKETING, INC.**, an Oregon corporation; **UPM TELECOM, INC.**, an Oregon a/b/n; **UPM MARKETING, INC.**, an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident; **BALTAZAR RUIZ**, an Oregon resident; and **TYLER ALLEN**, an Oregon resident,<br><br>Defendants. | Case No. 3:15-CV-00185-SI<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

UPM Technology, Inc., UPM Telecom, Inc, and UPM Marketing, Inc.

(collectively, "UPM") is a telecommunications company that employs an innovative technology

that uses the internet to provide communications services (voice, SMS, and voice-messaging).[1] This methodology is known as "Voice over Internet Protocol," or "VoIP" and is used by Skype, Vonage, Facetime, Google Voice, and similar companies. Monopolist companies often fight their competitors' use of this innovative technology so that the monopolists can continue to overcharge for their services. UPM has historically provided value to its subscribers by breaking telecom monopolies in Mexico, Africa, Asia and Central America, where single telecom providers charged vastly-inflated per-minute charges for incoming international calls. These costs are often borne by relatives and other loved ones who have moved away from their home country and use the phone to stay in touch with family and friends. UPM offers international long distance services to third-party large carriers, such as AT&T, Verizon, British Telecom, Telecom Italia, and others, that enable their subscribers to place international calls at a significantly lower price than the one charged by the monopolist. This is how it works: an incoming international call to the monopolist's network is routed to a cheaper tariff offered by the monopolist in the local market instead of the overcharged tariff. UPM purchases access to these cheaper tariffs from the monopolist and passes the savings to the third-party carrier's subscriber. To acquire access to the cheaper tariffs, UPM buys SIM cards and airtime credits from the monopolist. UPM uses a SIM server and gateway to network the SIM cards and then remotely connect to the monopolist's network. When a subscriber makes an international call through the UPM network, that call is routed via the internet to the SIM card, which ultimately routes the call to the recipient as a local call rather than an international one. Because the monopolist is overcharging for international incoming calls, UPM is able to offer a much lower price for its VoIP calls, which savings is passed along to the third-party carrier's subscriber who is placing the call.

---

[1] This memorandum will refer to "UPM" when necessary to refer only to the company and the products it provides. When discussing the Complaint's allegations, this memorandum will refer to "Defendants" to include UPM as well as the individual defendants Benjamin Sanchez, Baltazar Ruiz, and Tyler Allen.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Plaintiff Digicel Haiti ("Digicel") is such a monopolist who operates in Haiti. Digicel charges the third-party carriers it contracts with (like AT&T, Verizon, and others) 23¢ per minute for calls terminating in Haiti. UPM competed with Digicel—as it successfully has in other markets against other monopolists—by purchasing $130,000 worth of Digicel SIM cards and airtime (approximately 600,000 minutes) to construct a server that would route international calls to Haiti. UPM then offered this service to the market, only at a per-minute price between 15 and 18¢.

Like many monopolists, Digicel bristles at any attempts to undercut its stranglehold on the Haitian international cellular telecommunications market. It has therefore filed this lawsuit, alleging violations of the Racketeer Influenced and Corrupt Organizations act, 18 U.S.C. §§ 1961 – 1968 ("RICO"), claims for fraud, conspiracy, unjust enrichment, and seeking a permanent injunction. But Digicel's complaint suffers from a fatal flaw: it does not sufficiently allege that UPM's attempts to acquire market share were accomplished through fraudulent means. Although the Complaint freely uses conclusory terms such as "bypass fraud," its factual allegations do not demonstrate that Defendants did anything via misrepresentation, trick, deceit, or scheme. Instead, the allegations demonstrate that Defendants sent money to Haiti, that they had representatives use that money to (legally) purchase Digicel SIM cards; that those SIM cards were shipped to Oregon where Defendants used them to construct SIM servers and a SIM box, which were then used to route into Haiti—via the internet—international calls from cellular customers who had plans with carriers that contracted with UPM. Contrary to Digicel's implication, UPM is not using Digicel's network without compensation. Digicel received full compensation for the value of its SIM cards and airtime, which Defendants legally purchased. Under the Supreme Court's interpretation of Federal Rules of Civil Procedure 8(a) and 9(b) exemplified in the *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949,

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

173 L. Ed. 2d 868 (2009) decisions, Digicel has failed to allege plausible claims with sufficient particularity against Defendants.

## PROCEDUAL POSTURE

Digicel's complaint alleges eight claims for relief:    three RICO claims (for violation of 18 §§ 1962(c), 1962(b), and 1962(d)), and claims for fraud, civil conspiracy, conversion, unjust enrichment, and for a permanent injunction.    With this motion, Defendants seek to dismiss all of the RICO claims and the fraud claim.

## ARGUMENT

**I.    Digicel Must Plead Its Allegations With Both Specificity and Plausibility Pursuant to Federal Rules of Civil Procedure 8(a) and 9(b).**

Federal Rule of Civil Procedure 9(b) requires that a complaint "state with particularity the circumstances constituting fraud."    Fed. R. Civ. P.    9(b).    Rule 9(b)'s particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that [the] defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).    In other words, the allegations must be specific enough "to give defendants notice of the particular misconduct which is alleged to constitute the fraud ... so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).    The complaint must specify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso ex rel. United States v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.), *cert. denied*, ___ U.S. ___, 131 S. Ct. 801, 178 L. Ed. 2d 546 (2010)).    RICO claims based upon predicate acts involving fraud must also be pleaded with particularity under Rule 9(b).    *See Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (applying Rule 9(b) to allegations of mail fraud as RICO predicate acts), *cert.*

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*denied*, 502 U.S. 1094, 112 S. Ct. 1168, 117 L. Ed. 2d 414 (1992); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (applying Rule 9(b) to allegations of mail and wire fraud as RICO predicate acts), *cert. denied*, 493 U.S. 858, 110 S. Ct. 168, 107 L. Ed. 2d 124 (1989); *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir. 1987).

In addition to complying with Rule 9(b)'s requirements, a complaint must also fulfill Rule 8's obligation to allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *See Cafasso*, 637 F.3d at 1055; *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 828 (9th Cir. 2003) ("[C]omplaints alleging fraud must comply with both [Federal Rules of Civil Procedure] 8(a) *and* 9(b)."), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc) (emphasis in original). Compliance with Rule 8(a) means that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal* at 678, (quoting *Bell Atlantic Corp. v. Twombly* at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Identifying whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679. The court must first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Assuming that there are "well-pleaded factual allegations," the court is then to "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The fact that the plaintiff's allegations may be consistent with one explanation of the defendant's conduct is insufficient; the plaintiff must "nudge [its] claims across the line from conceivable to plausible" or else those claims must be

dismissed. *Twombly* at 570. In determining whether the plaintiff's claim is plausible, the court should also consider whether there is an "obvious alternative explanation" for the defendant's behavior. *Id.* at 567.

The Ninth Circuit has distilled the Supreme Court's plausibility inquiry into these principles:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Viewed in the light of these principles, Digicel's complaint fails to adequately state any of its RICO or fraud claims. In the case of fraud, not only does Digicel fail to plead its claim with the particularity Rule 9(b) demands, it does not even plead all of the elements necessary for a fraud claim. Without containing the requisite elements, Digicel's fraud claim is necessarily not plausible under Rule 8(a). Similarly, Digicel's RICO claims fail because they cannot plausibly allege that UPM's conduct was anything other than an attempt to legitimately compete for telecom business in the Haiti market. Without a plausible underlying fraudulent scheme, none of the so-called predicate acts that Digicel alleges run afoul of the RICO statute.

## II.    Digicel's Fraud Claim Must Be Dismissed Because Digicel Does Not Plead That It Relied On Any Defendant's Misrepresentation.

Defendants begin by examining the flaws with Digicel's fourth claim for relief—for fraud—because that claim's flaws underscore the problem with the entire complaint: Digicel's misguided attempt to categorize pro-competitive conduct as "fraudulent" in order to prop up its Haitian monopoly. Digicel's fourth claim for relief is for fraud. (Cmplt. ¶¶ 94 – 99.) Digicel also incorporates its allegations contained in paragraphs 1 through 66 of the Complaint.

Page 6 of 14 -    MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
UPM-L1\00161290.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

(Cmplt. ¶ 94.)  Under Oregon law:

> [t]he essential elements of a common-law fraud claim are: the defendant made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended the plaintiff to rely on the misrepresentation; the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance.

*Farmers Ins. Exch. v. First Choice Chiropractic & Rehab.*, 2014 WL 3591558, at *7 (D. Or. Jul. 18, 2014) (quoting *Strawn v. Farmers Ins. Co.,* 350 Or. 336, 351–52, 258 P.3d 1199 (Or. 2011)); *see also Webb v. Clark,* 274 Or. 387, 391, 546 P.2d 1078 (Or. 1976).

The heart of a fraud claim is therefore the defendant's alleged misrepresentation, which starts the chain of events that leads to the plaintiff's reliance upon that misrepresentation and consequent damages.  But Digicel's fraud claim is fatally flawed because it does not allege that any of Defendants made even a single misrepresentation, let alone one upon which Digicel relied.  Instead, Digicel makes sweeping, conclusory allegations that Defendants "intended to engage … in bypass fraud," that they were "fraudulently compensated" and "fraudulently avoid[ed] compensating" Digicel.  (Cmplt., ¶¶ 95, 96.)  Nor are any representations alleged in paragraphs 1 through 66, which Digicel incorporates into its fraud claim.  Rather, Digicel tautologically defines "bypass fraud" as "occur[ing] when individual illegally route calls around the international gateway" (Cmplt., ¶ 22) and accuses Defendants of "illicit[ly] sourcing and purchas[ing]" Digicel SIM cards without specifying how the conduct was illegal (Cmplt., ¶ 43).  Digicel alleges numerous examples of wire transfers of funds to Haiti from various Defendants to purchase SIM cards and shipments of SIM cards from Haiti to various Defendants.  (Cmplt., ¶¶ 43 – 58.)  However, none of those allegations discuss any representation—from any Defendant—to Digicel (or to anyone else).  Without a misrepresentation, there can be no claim of fraud.  For nearly the last 100 years, Oregon courts have held that "charges of fraud and illegality, without stating the facts upon which the charges are based, are insufficient." *Owen v.*

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*Leber*, 112 Or. 136, 139, 228 P. 927 (Or. 1924).   Digicel cannot string together terms like "bypass fraud," "illicit" and "illegal," in the absence of any false representation from Defendants, and pass off those allegations as a fraud claim.

Digicel's fraud claim therefore clearly falls short of Rule 9(b)'s requirement to state "the who, what, when, where, and how of the misconduct charged." *Cafasso*, 637 F.3d at 1055 (quoting *Ebeid*, 616 F.3d at 998).   More fundamentally, Digicel does not explain "what is false or misleading about [the purportedly fraudulent] statement, and why it is false," because it does not even allege that Defendants made *any* fraudulent statements.   *Id.*   And the fact that Digicel does not allege any misrepresentations illustrates why its fraud claim is also not plausible under Rule 8(a):  because Defendants' conduct represents that of a competitor trying to undercut Digicel's monopoly rates for international calls, not that of an entity that has through deceit obtained money wrongfully from Digicel.   Indeed, the "obvious alternative explanation" for why Digicel has not alleged that Defendants made any misrepresentations is that businesses do not typically achieve their business gains by deceiving their competitors but by offering a better price for the same service.   *Twombly* at 567.   As currently pleaded, the Complaint is missing all of the hallmark allegations of a fraud claim:  Defendants' material misrepresentations, Digicel's justifiable reliance on those misrepresentations, and Digicel's consequent damages.   Digicel's fraud claim should therefore be dismissed.

A district court ordinarily "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)).   In this case, however, there are not any facts that would allow Digicel to plead an amended fraud claim; simply stated, Digicel cannot truthfully allege that Defendants made any representations at all to Digicel.   Digicel's

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

fraud claim should therefore be dismissed with prejudice.

## III.    Digicel's RICO Claims Should Be Dismissed.

Digicel alleges three claims under RICO, for violations of 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d). As *Iqbal* requires, the court should first examine the elements that a plaintiff must plead to state a RICO violation. *See Iqbal* at 675. For § 1962(b), a plaintiff must allege that (1) a person (2) through a pattern (3) of racketeering activity (4) acquires or maintains an interest in or control of (5) an enterprise that affects interstate or foreign commerce. 18 U.S.C. § 1962(b).

For § 1962(c), the RICO statute sets out four elements:  (1) the conduct of (2) an enterprise that affects interstate or foreign commerce (3) through a pattern (4) of racketeering activity.  18 U.S.C. § 1962(c); *see also Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

To plead a violation of § 1962(d), the plaintiff needs to allege that the defendants conspired to violate sections 1962(a), (b), or (c). 18 U.S.C. § 1962(d).

"Racketeering activity", —which is common to all of Digicel's RICO claims— requires predicate acts which, as relevant to Digicel's Complaint, include "any act which is indictable under any of the following provisions of title 18, United States Code:  … section 1029 (relating to fraud and related activity in connection with access devices), … section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)." 18 U.S.C. § 1961(1)(B).  All of Digicel's RICO allegations concern predicate acts of mail fraud, wire fraud, or fraud related to access devices. (Cmplt., ¶¶ 70 – 73, 89.)

Digicel's RICO claims are all deficiently pleaded with respect to the "racketeering activity" that the Complaint alleges, and must be dismissed for that reason. Defendants will first examine the flaws related to Digicel's allegations of mail and wire fraud, and then explain why Digicel's allegations of predicate acts related to access devices are also

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

insufficient.

**A.    Because Digicel cannot demonstrate Defendants' specific intent to defraud, its RICO claims based on predicate acts of mail and wire fraud should be dismissed.**

The mail and wire fraud statutes, 18 U.S.C. § 1341 and § 1343, "are identical except for the particular method used to disseminate the fraud, and contain three elements:  (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Properties*, 751 F.3d at 997 (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986)).

"In order to prove a violation of [the mail or wire fraud statutes], there must be a showing of a specific intent to defraud.  The intent to defraud may be inferred from a defendant's statement and conduct." *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992).  If there is no direct evidence of intent, the plaintiff must first prove "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension," after which, "by examining the scheme itself," the court may infer the defendant's specific intent to defraud. *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir. 1984), *cert. denied*, 474 U.S. 925, 106 S. Ct. 259, 88 L. Ed. 2d 266 (1985) (quoting *United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S. Ct. 3026, 65 L. Ed. 2d 1122 (1980)).

After eliminating all of the conclusory allegations in the Complaint, *see Iqbal* at 679, 129 S. Ct. at 1950, Digicel's alleged "scheme to defraud" amounts to Defendants' sending money to persons in Haiti, who then purchased Digicel SIM cards and sent them to Defendants in Oregon.  Defendants then used those SIM cards to construct SIM boxes and SIM servers that allowed UPM to sell calling plans to third party international telephone carriers, who in turn provided them to their customers who place cell phone calls to Haiti.  In other words, Defendants' "scheme to defraud" consisted of their paying full value for Digicel SIM cards in Haiti (presumably to the same retailers who sell SIM cards to individual Digicel customers who

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

want to add minutes to their cell phones) and then using that technology—for which they had paid—to create a competing telecommunication network via the internet that UPM could market to third party carriers. That is not evidence of an attempt "to defraud," a phrase that this court has noted means, in the context of the mail fraud statute, "the deprivation of something of value by trick, deceit, chicane or overreaching." *Walchli v. Community Bank*, 2010 WL 2105163 at *1 (D. Or. May 25, 2010) (noting that what could be considered "a poor business strategy that might ultimately lead to an action at common law" does not alone evidence a scheme or intent to defraud) (quoting *Carpenter v. United States*, 484 U.S. 19, 27, 108 S. Ct. 316, 321, 98 L. Ed. 2d 275 (1987)).

There was no "trick, deceit, chicane or overreaching" in Defendants' conduct; they purchased the Digicel SIM cards and airtime directly from licensed retailers and then used them to provide international cellular calls to Haiti at a lower price than the monopoly price Digicel enjoys.[2] *Cf. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 482 – 83, 126 S. Ct. 1991, 2011, 164 L. Ed. 2d 720 (2006) (Breyer, J., concurring) ("RICO does not permit private action based solely upon this competitive type of harm, *i.e.*, harm a plaintiff suffers only because the defendant was able to attract customers through normal competitive methods, such as lower prices, better products, better methods of production, or better systems of distribution."). It is clear that Digicel is unhappy with the fact that Defendants used the Digicel SIM cards they purchased to build a better mousetrap, but that—in and of itself—is not enough to "nudge" its mail and wire fraud allegations "across the line from conceivable to plausible." *Twombly* at 570. The "obvious alternative explanation" to Defendants' purported intent to defraud is that they instead intended to compete with Digicel in the Haitian telecom market. *Id.* at 567, 127 S. Ct. at 1972. Digicel's RICO claims based on mail and wire fraud should therefore be dismissed. *See*

---

[2] Although Digicel alleges that Defendants "illicitly" obtained the SIM cards (Cmplt., ¶¶ 43, 47), that conclusory allegation seems to refer to the fact that Digicel's monopoly was undercut by Defendants' actions, not that the actual purchase of the SIM cards was anything other than lawful.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*Eclectic Properties*, 751 F.3d at 1000 (dismissing plaintiffs' RICO § 1962(c) and (d) claims because they did not "allege facts sufficient to show 'the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension'") (citation and quotation omitted); *Walchli*, 2010 WL 2105153 at *2 (dismissing RICO mail fraud claims because there was "nothing to suggest or infer that defendants' initial effort to obtain plaintiffs' business were made pursuant to a scheme to defraud them"). Because Digicel's Complaint does not plausibly allege that Defendants had a specific intent to defraud, the RICO claims based on mail and wire fraud should be dismissed.

**B.    Digicel's RICO claims based on alleged violations of 18 U.S.C. § 1029 should be dismissed because Digicel cannot establish Defendants' intent to defraud.**

For reasons very similar to those just discussed—Defendants' actions reveal outright competition with, rather than an attempt to defraud, Digicel—the Complaint's allegations related to predicate acts that violate 18 U.S.C. § 1029 should also be dismissed. Section 1029 deals with the improper use of an "access device," which is defined as "any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds … ." 18 U.S.C. § 1029(e)(1). The statute prohibits a variety of conduct, but requires in almost all instances[3] that the defendant act "with intent to defraud."

---

[3] The only section that does not require an intent to defraud is section 1029(a)(10), which penalizes one who "knowingly uses, produces, traffics in, has control or custody of, or possesses hardware or software, knowing it has been configured to insert or modify telecommunication identifying information associated with or contained in a telecommunications instrument so that such instrument may be used to obtain telecommunications service without authorization." 18 U.S.C. § 1029(a)(10). Because Defendants bought the SIM cards—and the right to use their accumulated minutes—they neither "insert[ed] or modif[ied]" any telecommunications information nor used the SIM card minutes "without authorization." Moreover, Digicel has not alleged that Defendants inserted or modified any identifying information on

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

18 U.S.C. § 1029(a)(1) – (8); *see also United States v. Bailey*, 41 F.3d 413, 418 (9th Cir. 1994) (noting that "intent to defraud is an element, along with the involvement of an 'access device,' of any violation of 18 U.S.C. § 1029"). As discussed in section III(B) of this memorandum, Digicel has not plausibly pleaded that Defendants' actions were consistent with an intent to defraud. Defendants did not falsely obtain the SIM cards, but instead bought them as would any consumer who desired to purchase additional minutes. Digicel received its compensation at the time of the SIM card purchases. Digicel does not allege that Defendants altered, reconfigured, or used the SIM cards in an improper manner; Digicel is simply angry that UPM used those minutes to sell a competing service to third party carriers, thus preventing Digicel from protecting its monopoly.

That is not what section 1029 prohibits. Its purpose is to prevent "the user of the access device [to] be able to obtain goods or services from which he would otherwise be excluded." *Bailey*, 41 F.3d at 418. But UPM was not "excluded" from using the minutes on the Digicel SIM cards which Defendants legally purchased. *Bailey*, in contrast, concerned a defendant who rewrote the programming in the hardware of cell phones to "fool the local [cellular] network into permitting calls placed by those phones to be completed in roaming mode," even though there was no distant carrier to bill for the call. *Id.* at 415. Digicel does not allege that Defendants did anything similar. Instead, Defendants used (unaltered) Digicel SIM cards, which they lawfully purchased, to construct a server that would use the internet to route the call to Haiti. International callers with third-party carriers who contract with Digicel still have their calls placed through Digicel; only those callers who use a third-party carrier that has contracted with UPM have their calls routed through VoIP based on the requirement of the market (price, quality, service, competition, etc.). UPM's VoIP server does not "pick off" or "strip" incoming international calls from Digicel's network. The calls Digicel "loses" do not

---

those SIM cards. Because Defendants purchased the SIM cards from Digicel retailers, they acquired the "authorization" to use them and therefore did not violate section 1029(a)(10).

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
UPM-L1\00161290.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

result from nefarious activities, but from UPM's competitive pricing for the same service.

Digicel's allegations do not adequately demonstrate that Defendants' conduct is evidence of a specific intent to defraud. Nor are they plausible in light of the "obvious alternative explanation" that UPM intended to openly compete with Digicel for the same third-party international carriers. *Twombly* at 567. For those reasons, Digicel's RICO claims based on predicate acts of violating 18 U.S.C. § 1029 must be dismissed. Because Digicel has no other bases for predicate acts, all of its RICO claims should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Digicel's first, second, third, and fourth claims for relief.

Dated: March 16, 2015.

TOMASI SALYER BAROWAY

By:/s/ Kathryn P. Salyer
    Kathryn P. Salyer, OSB #883017
    ksalyer@tsbnlaw.com
    Telephone: (503) 894-9900

Of Attorneys for Defendants

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236