**Kathryn P. Salyer**, OSB #883017
ksalyer@tsbnwlaw.com
Tomasi Salyer Baroway
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**, <br><br> Plaintiff, <br><br> v. <br><br> **UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., and **UPM MARKETING, INC**., an Oregon corporation; **UPM TELECOM, INC**., an Oregon a/b/n; **UPM MARKETING, INC**., an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident; **BALTAZAR RUIZ**, an Oregon resident; and **TYLER ALLEN**, an Oregon resident, <br><br> Defendants. | Case No. 3:15-CV-00185-SI <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** <br><br><br> **ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

Digicel's response to UPM's motion to dismiss reads as if it were written prior to

---

**Page 1 of 9 -**     **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
UPM-L1\00166892.000

the Supreme Court's decisions in *Twombly*[1] and *Iqbal*.[2]  Digicel appears to believe that all it need do to survive a motion to dismiss is to parrot the elements of claims for fraud and RICO violations and that the Court will have to accept those allegations as true.  But that is not the procedural world that Digicel now lives in.  In order to be entitled to the presumption of truth, Digicel's allegations "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  After the court winnows out those conclusory allegations that are not entitled to the presumption of truth, it must then determine whether the remaining allegations "plausibly suggest an entitlement to relief."  *Id.*  It is here where Digicel's claims for fraud and RICO fall far short of the mark because the nonconclusory facts Digicel alleges that supposedly support those claims do not exclude the alternative plausible explanation that UPM is competing with Digicel, not attempting to defraud it.  Far from asking the Court to inappropriately "pre-determine" (Resp. at 2) that its conduct is not illegal or improper, UPM requests that the Court use its "judicial experience and common sense" to ascertain whether Digicel's accusations of fraudulent conduct are plausible.  *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.  Because they are not, dismissal is appropriate.

**ARGUMENT**

**I.    Because Digicel Cannot Plausibly Allege that UPM Had a Specific Intent to Defraud, Its RICO Claims Should Be Dismissed.**

The fatal flaw that besets all of Digicel's RICO claims is the lack of plausible facts that reveal a scheme to defraud Digicel.

**A.    The allegations based on alleged predicate acts of mail and wire fraud should be dismissed.**

In response to UPM's argument that Digicel failed to allege plausible facts that

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Page 2 of 9 -    **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
UPM-L1\00166892.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

support a "scheme to defraud" under RICO, Digicel relies on *U.S. Bank Nat'l Ass's v. Franulovic*, 2007 WL 1598091 (D. Or. Jun. 1, 2007).  Although Digicel claims the case is "analogous," it in fact involved RICO allegations against defendants who allegedly encouraged customers to "purchase" a vacuum cleaner from the defendant company via a credit card, "lend" the value of the purchase price to another defendant in exchange for a promise to repay with interest, and then charge back or reverse the original credit card charges for the imaginary vacuum cleaner. The plaintiff bank, which reimbursed charges to individuals for the vacuum cleaners that were never actually sold, never received reimbursement from the defendant company as it should have pursuant to the terms of the credit card servicing agreement.  This court found that the plaintiff adequately pleaded fraud with sufficient specificity and adequately pleaded the specific intent needed for mail and wire fraud allegations. *Id.* at *3 – 4.  Based on *Franulovic*'s holding, Digicel points to its allegations in Paragraph 70 that contend that Defendants had "the unlawful purpose of intentionally defrauding Plaintiff," and argues that it has fulfilled its burden. (Resp. at 9.)

*Franulovic*, however, was decided only about ten days after *Twombly* and two years prior to *Iqbal*.  It does not represent the current state of Ninth Circuit law regarding the adequacy of pleading RICO claims.  Put another way, it is not enough for Digicel to simply allege that UPM's conduct was intended to intentionally defraud Digicel; it must "establish that intent by showing the existence of a *plausible* fraudulent scheme." *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (emphasis added).  In that case, the plaintiffs had entered into several sale-leaseback transactions with property owners who operated various franchises on the properties.  Plaintiffs paid a combined total of $30.3 million for the properties that they claimed were actually worth only $11.1 million.  The plaintiffs alleged that the defendants had previously conspired to pay inflated rents and had used sham appraisals to make it appear that the properties were more valuable than they actually were. Although the franchises were successful for a few years, all eventually fell behind on their rent

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

payments and ultimately breached their leases with the plaintiffs. The plaintiffs filed suit alleging RICO violations, claiming that the defendants had used the mails and wires to intentionally defraud them.

Contrary to Digicel's view of the world, the Ninth Circuit did not simply accept the plaintiffs' allegations at face value, even those that alleged that the defendants had an intent to defraud. Rather, following the direction of *Twombly* and *Iqbal*, the court examined the complaint and found that it did not "tend to exclude the alternative explanation that the transactions were merely a group of business deals gone bad during a deep recession." *Eclectic Properties*, 751 F.2d at 1000. Moreover, the Ninth Circuit found that the complaint did not allege "facts sufficient to show the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension," which is necessary to demonstrate the existence of a specific intent to defraud. *Id.* (citation and quotation omitted). *See also Walchli v. Community Bank*, 2010 WL 2105163 at \*1 (D. Or. May 25, 2010) (under the *Twombly/Iqbal* standard of review, plaintiffs' RICO allegations that defendants' oral representations to "entice" plaintiffs away from their current bank were not plausible because they did not demonstrate a "scheme to defraud," which "in the context of the mail fraud statute typically signifies the deprivation of something of value by trick, deceit, chicane or overreaching") (citation and quotation omitted).

Here, Digicel's (nonconclusory) factual allegations show UPM purchased Digicel SIM cards and used them to offer third-party carriers a way to route international calls to Haiti without having to go through Digicel's gateway. The plausible and innocuous alternative explanation to Digicel's claims that such conduct evinces fraud is that UPM is offering a competitive service for international calls that does not require the use of Digicel's gateway. Digicel seems to believe that slapping on the phrase "to commit bypass fraud" after each of its allegations related to UPM's conduct is enough to demonstrate a specific intent to defraud.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

(Cmplt., ¶ 70.) But that is simply a tautological argument that does not comply with *Twombly*'s and *Iqbal*'s requirements. Digicel does not sufficiently allege that UPM's competing telecom network was accomplished through "trick, deceit, chicane or overreaching." The only "trick" Digicel apparently points to in its response is its claim that UPM fraudulently conceals the origin of international calls by using its SIM boxes and SIM servers to route international calls through the internet, around Digicel's gateway, so that the call is routed as a local call. But Digicel's own complaint also acknowledges that UPM *purchased* Digicel's SIM cards, thereby compensating Digicel for that use of its network. (Cmplt., ¶¶ 43, 45, 46.) Digicel's real complaint is that it is not able to recoup its monopoly rate of 23¢ per minute that it charges to third-party carriers who offer calling plans to their cell phone customers that call Haiti.[3] But that is a loss that Digicel suffered through outright business competition; UPM is able to offer a lower international tariff to third-party carriers like AT&T and Verizon, who choose to place their business with UPM rather than Digicel. In other words, Digicel is not "losing" business because UPM's conduct is hijacking incoming international calls that otherwise should be charged at 23¢ per minute; instead, Digicel lost that business before the call was ever made as a result of UPM's competition with Digicel. That is not a RICO violation. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 482 – 83, 126 S. Ct. 1991, 2011, 164 L. Ed. 2d 720 (2006) (Breyer, J., concurring) ("RICO does not permit private action based solely upon this competitive type of harm, *i.e.*, harm a plaintiff suffers only because the defendant was able to attract customers through normal competitive methods, such as lower prices, better products, better methods of production, or better systems of distribution.").

---

[3] In its response, Digicel seems to imply that the money it is losing comes from the back end of the transaction, *i.e.*, that the 23¢ per minute would normally be paid by the recipient, who instead pays a lower rate because the call "present[s] itself as a domestic communication." (Resp. at 16.) But the complaint makes clear that "Digicel has established commercial agreements with a number of third party international telecommunication carriers and charges those carriers a 'floor' rate of at least 23 cents per minute—the lowest rate established by the Government of Haiti for incoming international telephone calls with an end-user in Haiti—to route such traffic through its switches and other proprietary equipment in the USA and Haiti to Digicel's customers and subscribers in Haiti." (Cmplt., ¶ 17.)

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Digicel does not allege that it is the only telecom provider able or permitted to transfer international cell traffic in Haiti, thereby making it illegal for UPM to offer a competing service; indeed, the complaint identifies Digicel as "*a* leading provider of telecommunications services in Haiti. . . ."  (Cmplt., ¶ 13 (emphasis added).)  If Digicel's argument is instead that it is damaged because UPM does not charge the minimum 23¢-per-minute rate purportedly required by the Haitian government,[4] that is not a cognizable RICO violation either because if anyone suffered from that conduct, it was Haiti, not Digicel.  *See Anza*, 547 U.S. at 458, 126 S. Ct. at 1997.  In that case, a steel supply company sued a competitor, National, claiming that National failed to charge its cash-paying customers New York state sales tax, thereby enabling National to charge its customers less without affecting its profit margin.  The alleged predicate acts of mail and wire fraud were National's submission of fraudulent tax returns that concealed this conduct.  The Supreme Court held that the RICO claims should have been dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because there was no proximate cause between the alleged RICO violation (defrauding the state) and the injury suffered by the plaintiff (National's offering lower prices).  *Id.*  If UPM's failure to pay a 23¢-per-minute rate for international calls violates Haitian law, then the Haitian government "can be expected to pursue appropriate remedies."  *Id.* at 460, 126 S. Ct. at 1998.  But Digicel may not seek damages based on an alleged fraud against Haiti.

In short, it is not sufficient—in a post-*Twombly/Iqbal* world—for Digicel to simply label conduct as intentionally fraudulent.  Digicel's mail and wire fraud RICO counts must be dismissed because its complaint does not plausibly demonstrate that UPM intended to defraud Digicel.

**B.    Similarly, Digicel's RICO claims based on access device fraud also fail to establish Defendants' intent to defraud.**

---

[4]  Digicel notes that UPM "effectively avoid[s] the government imposed tariffs for terminating international telephone traffic in Haiti."  (Resp. at 5.)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
UPM-L1\00166892.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

For the same reasons just discussed, Digicel's RICO claims based on purported violations of 18 U.S.C. § 1029 should also be dismissed. Under the same level of scrutiny mandated by *Twombly/Iqbal*, Digicel's allegations do not plausibly establish that UPM had an intent to defraud Digicel when it purchased the Digicel SIM cards and used them to offer a competing telecom service. *See, e.g., Janson v. Egypt Valley Country Club*, 2009 WL 6582418 at *9 (W.D. Mich. Nov. 30, 2009) (RICO predicate acts alleging violation of § 1029 did not pass muster under *Iqbal* because "from a common sense and experiential point of view," the allegations related solely to an internal business dispute regarding management); *cf. Reyes v. Zion First Nat. Bank*, 2012 WL 947139, at *6 (E.D. Pa. Mar. 21, 2012) (complaint alleging RICO violations with predicate acts of access fraud met *Iqbal* plausibility requirements because it alleged defendants' knowledge of "several blatant indications of fraud").

Digicel's reliance on *United States v. Lin*, 410 F.3d 1187, 1193 (10th Cir. 2005) is irrelevant. The issue in *Lin* was whether the trial court's upward departure from the United States Sentencing Guidelines for conviction under § 1029 was appropriate. The trial court imposed a sentence based on the maximum amounts the defendants could have charged on the illegally obtained credit cards (access devices) rather than on the amounts that were actually charged. Defendants argued that because their intent was never to reach the maximum credit limit of the cards, their punishment should be determined by the amount they actually charged. In rejecting that argument, the Tenth Circuit pointed out that punishment was based on engaging in the fraudulent scheme, not on the actual amount of damage that the defendants caused. In other words, the defendants were not even challenging the finding that they had had the specific intent to engage in a scheme to defraud under § 1029; instead they were arguing that the government needed to demonstrate their specific intent to charge a certain amount for purposes of imposing sentence, which the Tenth Circuit held was unnecessary. Here, however, it is fundamentally necessary for Digicel to demonstrate plausible specific facts that indicate UPM's

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

specific intent to engage in a scheme to defraud under § 1029. As already explained, Digicel fails to do so.

Digicel's citation to *United States v. Ashe*, 47 F.3d 770 (6th Cir. 1995), is also puzzling. *Ashe* involved "tumbling" cell phones, much like *United States v. Bailey*, 41 F.3d 413 (9th Cir. 1994), cited in UPM's memorandum in support of its motion to dismiss (Mem. at 13-14.) UPM does not take issue with the fact that § 1029 could theoretically cover the use of the internet in cellular telecommunications. But Digicel's allegations regarding UPM's conduct do not, under *Bailey*, give rise to the specific intent to defraud. "Tumbling" a cell phone means using a counterfeit code to trick a carrier into completing a call although the carrier is never reimbursed for doing so. *Bailey*, 41 F.3d at 418 (use of counterfeit code constitutes intent to defraud). But Digicel cannot deny, and in fact alleges in its complaint, that it was compensated for the calls that it connected on behalf of UPM because UPM legitimately bought and paid for those minutes on the Digicel SIM cards. Digicel was compensated for the use of its network through UPM's purchase of those cell minutes.

## II.    Because Digicel's Fraud Claim is Premised on Its Implausible Allegation of UPM's "Fraudulent Use" of Digicel's SIM Cards, It Should Be Dismissed.

Digicel argues in its response that UPM's SIM boxes and SIM servers effectively "conceal" the true identity of an international call, upon which concealment Digicel relies by then routing the call as a domestic one. While Digicel's response does a better job of explaining UPM's purported misrepresentations than the complaint does, under *Twombly* and *Iqbal* its allegations are still not plausible. That is because, once again, Digicel's complaint acknowledges that UPM purchased the Digicel SIM cards, meaning that it already compensated—pre-paid, even—Digicel for the use of those network minutes. Digicel's "damages" therefore do not result from UPM's conduct, but instead from Digicel's loss of customers who no longer must pay Digicel's monopoly rate to place international calls to Haiti. That is not fraud; that is a competitive injury for which common-law fraud does not recognize a recovery.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Digicel's first, second, third, and fourth claims for relief.

Dated: May 4, 2015.

TOMASI SALYER BAROWAY


By: /s/ Kathryn P. Salyer
  Kathryn P. Salyer, OSB #883017
  ksalyer@tsbnlaw.com
  Telephone: (503) 894-9900

  Of Attorneys for Defendants

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236