**Richard K. Hansen, OSB #832231**
Email: rhansen@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.796.2958
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Kim Vaughan Lerner LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL  33394
Telephone: 954.527.1115
Facsimile: 954.527.1116

Attorney for Plaintiff, Unigestion Holdings, S.A., a
Foreign Corporation, d/b/a Digicel Haiti

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A.,** a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>   *Plaintiff,*<br><br>vs.<br><br>**UPM TECHNOLOGY, INC. d/b/a UPM TELECOM, INC.,** and **UPM MARKETING, INC.,** an Oregon corporation;<br>**UPM TELECOM, INC.,** an Oregon a/b/n;<br>**UPM MARKETING, INC.,** an Oregon a/b/n; **BEN SANCHEZ a/k/a BEN SANCHEZ MURILLO,** a foreign individual; **BALTAZAR RUIZ,** a foreign individual, and **TYLER ALLEN**, a foreign individual,<br>*Defendants.* | No. 3:15-cv-00185-SI<br><br>**PLAINTIFF UNIGESTION HOLDINGS, S.A.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |

Page 1 -  PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S
     RESPONSE TO DEFENDANTS' MOTION TO
     DISMISS AMENDED COMPLAINT
     PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 5O3.796.2900

## PLAINTIFF UNIGESTION HOLDING S.A.'S, RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

This is Defendants' second attempt to dismiss Plaintiff's complaint. After motion, response, and a full hearing on the initial motion, the Court identified and discussed the sole gateway issue preventing Plaintiff's initial complaint from proceeding as filed, in the face of Defendants' motion to dismiss. [Hr'g Mot. to Dismiss at 50:9 – 13, July 27, 2015]. That issue was the absence of specific allegations of misrepresentations [or specific allegations of active concealment] necessary to support the already pled fraud claims. This Court observed that "if [Plaintiff] can allege [misrepresentations] as I have just described, then I think they get to move to the next phase." [Hr'g Mot. to Dismiss at 50:14 – 15, July 27, 2015]. To be sure, Plaintiff does not herein suggest that the Court's observations regarding possible allegations are dispositive, rather the Court identified that what was missing from the initial Complaint were specific allegations of misrepresentations or active concealment and stated that inclusion of that information would allow the Complaint to meet the requirements under Rules 8 and 9. Now, faced with an Amended Complaint that fully outlines the previously missing allegations, Defendants have filed what can only be described as a very detailed affirmative defense, thinly disguised as a motion to dismiss.

On this go-around, while they remain bound to admit the conduct that they previously admitted in their earlier motion to dismiss, Defendants again purport to attack the "plausibility" of Plaintiff's general allegations while at the same time attempting to explain the "legality" of their alleged fraudulent conduct. It goes without saying that Defendants' conduct, if legal, cannot at the same time, be so implausible as to support their motion to dismiss.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

This glaring internal inconsistency, however, is the least of Defendants' several problems in this second challenge to the adequacy of the allegations.  In violation of the most basic premise on a motion to dismiss, the Defendants have ventured well beyond the four corners of the Amended Complaint, inserting extraneous facts and explanations irrelevant to the pleading stage.  As detailed below, when stripped of the rhetoric, explanations of "legality" and baseless allegations of implausibility, the motion to dismiss the Amended Complaint is, simply put, a really long affirmative defense ... to wit, "yes we have engaged in the conduct alleged, but....(insert explanation)." Defendants' second motion fails because, replete with "facts" and explanations that go well beyond the four corners of the Amended Complaint, and in the face of an Amended Complaint that addresses, in detail, the sole gateway issue previously identified by this Court after review of the initial Complaint, Defendants' motion must be denied.

Finally, the Defendants have adopted a novel approach to their suggested analysis of the Amended Complaint.  Having unilaterally parsed the ***general allegations*** of the complaint into "convenient" sections, they then proceed to advocate a critique of each section based upon what is "missing" therefrom (even if present somewhere else).  The Defendants' analysis is tantamount to criticizing a sculpture of a human body as being anatomically incorrect, because a careful review of the head shows that there were no toes, and a careful review of the feet showed that there were no eyes. The flaw in Defendants' piecemeal analysis is obvious and the resulting conclusions, clearly erroneous.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 5O3.796.2900

## LEGAL ARGUMENT

### I. Legal Standard for Evaluating a Motion to Dismiss and Rule 9 Pleading Requirements

#### a. All allegations of the Amended Complaint Must be Taken as True

The Court, on a motion to dismiss, is obligated to: (1) construe the complaint in the light most favorable to the plaintiff; (2) presume all factual allegations to be true; and (3) draw all reasonable inferences in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). Any ambiguities are resolved in favor of upholding the pleading. *Walling v. Beverly Enterprises,* 476 F.2d 393, 396 (9th Cir. 1973). Further, a motion to dismiss is properly granted only where there is either a "lack of [a] cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifical Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990) (abrogated on other grounds). "To dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).

#### b. Rule 9 Only Requires That Fraud Be Plead with Sufficient Specificity to Allow Defendants to Answer and Defend the Claims

"Rule 9(b) requires fraud claims to be pled with particularity, but a pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Semegen v. Weidner*, 780 F.2d 727, 734-35 (9th Cir. 1985); *citing Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866 (9th Cir. 1977) (*quoting* Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973)).

Page 4 -    PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S
RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT
PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 5O3.796.2900

"Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.*

The Ninth Circuit has further opined that "Rule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter." *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973); *citing* 2A J. Moore, Federal Practice para. 9.03, at 1930 (2d ed. 1972). "Nor does Rule 9(b) require any particularity in connection with an averment of intent, knowledge or condition of the mind. It only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.* (internal citations omitted).

c. Plaintiff Alleges Fraud Through Both Active Concealment and Affirmative Misrepresentations

The general pleading requirements of Rule 9 are clear and they have been well satisfied here. Without any basis, Defendants improperly suggest an overly-restrictive interpretation of these requirements by implying that the only way a fraud can be alleged is through an affirmative misrepresentation. This is an incorrect statement of law. In Oregon, a fraud claim can be based on either an affirmative misrepresentation, active concealment, or nondisclosure. *See Lyden v. Nike Inc.*, No. 3:13-cv-00662-HZ, 2014 U.S. Dist. LEXIS 77188, *10-11 (Or. June 6, 2014) (citing Prosser for proposition that "[a]ny words or acts which create a false impression covering up the truth,...or which remove an opportunity that might otherwise have led to the discovery of a

Page 5 -   PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S
RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT
PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

material fact...are classed as misrepresentations, no less than a verbal assurance that the fact is not true."); *Gregory v. Novak*, 121 Or. App. 651, 655 (1993); *Ogan v. Ellison*, 297 Or. 25, 34 (1984); *Paul v. Kelley,* 42 Ore. App. 61, 65-66 (Or. Ct. App. 1979).

To be clear, the type of active concealment alleged in the Amended Complaint does not require that there be any special duty between the parties. "[W]hen there is active concealment, as opposed to simple nondisclosure, the plaintiff does not need to prove that defendant had a duty to speak." *Bixby v. KBR, Inc.*, 893 F. Supp. 2d 1067, 1073 (D. Or. 2012); *quoting Caldwell v. Pop's Homes, Inc.*, 54 Ore. App. 104, 113 (1981). Accordingly, while Plaintiff has sufficiently plead affirmative misrepresentations constituting fraud, Plaintiff has also alleged that a significant portion of Defendants' fraudulent conduct was executed through active concealment of Defendants' scheme to illegally use Digicel's products, infrastructure, and network.

Even a cursory review of the Amended Complaint confirms that Plaintiff has sufficiently alleged the "who, what, when, where, and how" required to successfully allege fraud through both affirmative misrepresentations and active concealment. Defendants' Motion to Dismiss should be denied.

## II. <u>The Amended Complaint Provides the "Who, What, When, Where, and How" and the Misrepresentations Required to Successfully Plead Fraud</u>

Plaintiff has amended the Complaint to specifically allege misrepresentations made by Defendants with sufficient particularity to sustain its claims bottomed on fraud. Having now crossed that bridge, Defendants' [revamped] motion ventures well beyond the four corners of the Amended Complaint and deep into explanations of their conduct that are premature and inapplicable to the proper considerations on a motion

Page 6 -    PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S
RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT
PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

to dismiss.  The Court should instead focus on what Plaintiff has properly alleged to determine if Plaintiff has met the applicable pleading requirements.  For ease of reference and to assist the Court's review, the following examples showing the required "who, what, when, where, and how" allegations regarding Defendants' conduct are outlined below.  In addition, allegations which also indicate a misrepresentation or affirmative concealment are emphasized in bold.

| | |
|---|---|
| Who, What: | "Upon information and belief [1], Defendants employed the assistance of numerous Haitian individuals to act as their agents in the purchase and acquisition of numerous Digicel SIM Cards." Am. Compl. ¶ 57. |
| Who, What, How: | "Upon information and belief, Defendants have sold large blocks of wholesale cellular minutes for calls to be terminated in Haiti to large third-party telecommunications carriers whose customers make telephone calls to Haiti." Am. Compl. ¶ 78. |
| Who, How, Where: | "If a customer of one of the third-party carriers who purchased wholesale minutes from Defendants places a call to Haiti, the call is routed using sophisticated telecommunications software to Defendants' SIM Servers in Oregon and possibly elsewhere." Am. Compl. ¶ 79. |
| Who, How, Where: | "Upon information and belief, UPM and its agents, subsidiaries, and representatives may have also created direct commercial relationships with retail customers through the retail sale of digital plans or international calling cards." Am. Compl. ¶ 80. |
| Who, What, How: | "In basic terms, Defendants have SIM Servers and SIM Boxes into which they have loaded Digicel SIM Cards.  These SIM Servers receive calls made to Haiti by individuals outside of Haiti." Am. Compl. ¶ 84. |
| Who, What, How: | "Defendants have either sold minutes (wholesale) to third-parties or sold minutes directly to consumers through phone cards or retail sales of cellular plans and devices." Am. Compl. ¶ 85. |
| When, Where, and How: | "To obtain Digicel SIM Cards, the Defendants' Haitian agents go to a Digicel authorized retailer and purchase SIM Cards **under the false premise** that those SIM Cards are for their own individual, retail use in their cellular handset devices."  Am. Compl. ¶ 65 (emphasis added). |

_____

[1] The Ninth Circuit has held that allegations made "upon information and belief" are sufficient to allege fraud where Plaintiff does not have access to direct knowledge of an issue.  *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. Cal. 1987) (internal citations and quotations omitted).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 5O3.796.2900

| Who, What, When, Where, How: | "Defendants assemble the SIM Cards into SIM Boxes and SIM Servers, all located in Oregon, to **intentionally misrepresent incoming international calls** to the Digicel network as local (domestic) calls placed within Haiti."  Am. Compl. ¶ 67 (emphasis added). |
|---|---|
| Who, What, When, Where, How: | "The SIM Cards housed in Oregon, are manipulated or cloned to retrieve and then transmit the unique identifying information off each SIM Card, so that the information can be sent to Haiti.  **This allows UPM to pretend to initiate a call in Haiti when the call in fact initiated in the USA**.  Using the "cloned" SIM Card, the Receiver located in Haiti completes the call to the ultimate recipient using Digicel's telecom network."   Am. Compl. ¶ 69 (emphasis added). |
| Who, What, When, Where, How: | "The SIM Server, containing SIM Cards allegedly registered for the RLYH Plan, then directs the call to its ultimate recipient.  At that time, **the call represents itself to towers in the United States and ultimately in Haiti as coming from a RLYH subscriber when the call is actually from an individual that is subscribed to a third-party carrier and has no relationship with Digicel and is not registered on the plan**." Am. Compl. ¶ 81 (emphasis added). |
| When, How: | "**The call is then misrepresented to the Digicel's network** in Haiti as a call made by an individual subscribed to the RLYH Plan and is not charged international calling rates."  Am. Compl. ¶ 82 (emphasis added). |
| Who,When, Where, How: | "Once a call is made by a customer of the third-party carrier, a Digicel retail customer, or a customer who has purchased a UPM related phone card, the call is then routed directly to UPM's SIM Servers in Oregon." Am. Compl. ¶ 86 |
| When,Where, How: | "The call is then routed via the internet to a Receiver that has been installed in Haiti which contains the cloned SIM Card information, bypassing Digicel's International Switches." Am. Compl. ¶ 87. |
| Who, What, When, Where, How: | "UPM's **technology intentionally causes the call to avoid Digicel's Switches** in the United States."   Am. Compl. ¶ 88 (emphasis added). |
| Were, When, How: | "Through the use of sophisticated software that **works to evade detection** of the SIM Servers and bypass operations, the SIM Servers in Oregon select a Haitian telephone number associated with one of the SIM Cards in the SIM Server and 'packages' that number along with the original call for transmission over the internet." Am. Compl. ¶ 89 (emphasis added). |
| When,Where, How: | "Once a SIM Card and associated telephone number is selected by the software, the telephone number is transmitted via IP technology to a Receiver located in Haiti." Am. Compl. ¶ 90. |

PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S
RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 5O3.796.2900

PDX\128154\201374\RKH\16897899.1

| When,Where, How: | "The packaged SIM information and telephone call are delivered via the internet to a local Receiver in Haiti which then directs that call back into the local network as a local call using the identifying information transmitted from the SIM card to **trick the network into thinking the call was originated from that "local" number**." Am. Compl. ¶ 91 (emphasis added). |
|---|---|
| Who, Where, How: | "Defendants have numerous Receivers located throughout Haiti, and each Receiver can be moved to a different location on short notice.  Again, this is to **evade detection**."  Am. Compl. ¶ 92 (emphasis added). |
| Who, When, How: | "This is a manipulation of the intended use of SIM Cards.  Here, Defendants use the software to **evade detection by misrepresenting the true identity and origin of the initial call and altering the SIM Card's normal usage patterns**." Am. Compl. ¶ 93 (emphasis added). |
| Who, Where, How: | "Through the use of software, Defendants in Oregon can choose to spread calls to different Receivers.  This strategy is intended to **mimic** the calling patterns of real people." Am. Compl. ¶ 94. |
| Who, How: | "To **avoid easy detection**, Defendants use multiple, portable Receivers in various locations.  The software **manipulates calling patterns** by directing calls to be spread among various Receivers." Am. Compl. ¶ 96. |
| Who, How: | "The Receiver, also operated by Defendants, then routes the call to the closest Digicel tower in Haiti and ultimately, on to the recipient's cellular telephone.  When the call is terminated through the Receiver the Caller Line Identification (CLI) is blocked so that the calling number is manipulated to display on the Digicel subscriber's phone as "unknown" or with a blank value. Defendants do this by inserting a special code in front of the subscriber number when the call is routed." Am. Compl. ¶ 97. |
| Who, What, When, Where, How: | "By using SIM Servers in Oregon and sophisticated IP technology in conjunction with the local Receiver, **Defendants intentionally manipulate the SIM card data to misrepresent the international call to Digicel's Haitian network** as a domestic call made in Haiti, and only the domestic calling fees are charged."  Am. Compl. ¶ 98. |

## III.    The Amended Complaint Alleges Fraud Through Active Concealment and Misrepresentations

Contrary to Defendants' assertions, an evaluation of the Amended Complaint confirms that Plaintiff has pled fraud with the required specificity and has pled

Page 9 -    PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 5O3.796.2900

allegations which sufficiently set forth active concealment and several misrepresentations by Defendants.

Defendants' insistence that Plaintiff is required to allege a specific "verbal communication" by a Defendant directly to a Digicel Dealer regarding the intended use for the SIM Cards or the RLYH Plan, is unsupported in law and imposes a burden on Plaintiff that well exceeds the applicable pleading standards required by Rule 9.

Plaintiff alleges that it is the victim of a sophisticated fraud whose operations are carefully and purposefully concealed – by Defendants' design.  Specifically, for example, Plaintiff alleges that Defendants used clandestine purchasers, to whom compensation was provided for their cooperation, to acquire Digicel SIM cards on Defendants' behalf, in order to actively conceal the ultimate intended use of the SIM Cards.  [Am. Compl. ¶¶ 57, 65, 126.]  These SIM cards were then transmitted in bulk to Defendant in Oregon for use in SIM Servers to facilitate the fraudulent bypass operations.  The active concealment of the true purchaser and true intent behind the purchase of the SIM cards is fraud.  *Supra Sec.* I(c); *See Ogan v. Ellison*, 297 Or. 25, 34 (1984); *Gregory v. Novak*, 121 Or. App. 651, 655, (1993).

Likewise, Defendants arguments regarding the RLYH Plan incorrectly center around the notion that Plaintiff was required to plead Defendants' awareness of the RLYH plan's intended purpose and that there had to be a verbal representation to Digicel that Defendants were going to use RLYH for its intended purpose in order for their conduct to be fraudulent.  [Mot. to Dismiss Am. Compl. at 10].  This position incorrectly assumes that only an affirmative, verbalized misrepresentation can constitute fraud.  This is not the state of the law.  As alleged, "Defendants furthered this

Page 10 -    PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S
RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT
PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

fraud by [having others] sign up for Digicel's 'Roam Like You Are Home' plan with the specific intent of using the Plan for unauthorized commercial purposes." [Am. Compl. ¶ 152.] In short, the allegation that Defendants directly or indirectly subscribed to the RLYH service with the specific intent of using it in an unauthorized fashion is sufficient to allege active concealment, and the resulting fraud. *See Lyden v. Nike Inc.*, No. 3:13-cv-00662-HZ, 2014 U.S. Dist. LEXIS 77188, *10-11 (Or. June 6, 2014); *Paul v. Kelley,* 42 Ore. App. 61, 65-66 (Or. Ct. App. 1979).

Indeed, it is well-settled law that Defendants' intent to defraud may be averred generally to meet the requirements of Rule 9, as was done in the Amended Complaint. *Hydranautics v. Filmtec Corp.*, 1996 U.S. App. LEXIS 28491 at *10 (9th Cir. 1996); *citing Walling v. Beverly Enter.,* 476 F.2d 393, 397 (9th Cir. 1973). Throughout the Amended Complaint, Plaintiff further alleges that all of Defendants' actions were performed with the "specific intent of defrauding Digicel." [See, e.g., Am. Compl. ¶¶ 119, 126, 152, 153, 155]. Plaintiff alleges that "Defendants knew that their acts were unlawful and intentionally committed these acts for their own benefit." [Am. Compl. ¶ 157]. Taken as true, these allegations satisfy Rule 9 by asserting that Defendants were aware of the "unlawful" nature of their actions. This Amended Complaint squarely meets the requirement that scienter in furtherance of fraud need only be generally averred. Defendants' Motion to Dismiss therefore fails.

## IV. The Amended Complaint Alleges Misrepresentations in the Use of Internet Protocol Technology

Construed in the light most favorable to Plaintiff, as they must be, the allegations of the Amended Complaint provide a plausible, specific, and well-plead fraudulent scheme. Defendants' *entire* motion is nothing more than a thinly masked motion for

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

summary judgment—at best—or an attempt to preempt their "explanation" of their business model to this Court. It is not a motion to dismiss.

Defendants urge the analysis that there is no misrepresentation because the calls are "local" when they are transmitted to Digicel's towers in Haiti. This is disingenuous at best. Rather, the international calls bound for Haiti have been 'assigned' to a local number at the SIM Server in Oregon. From this moment forward, the true origination of the call is being actively and fraudulently concealed and the entire transaction constitutes an affirmative misrepresentation that is communicated to the Digicel network and transmitted using its infrastructure. The Amended Complaint alleges the process by which "Defendants intentionally manipulate the SIM card data to misrepresent the international call to Digicel's Haitian network as a domestic call made in Haiti, and only the domestic calling fees are charged." [Am. Compl. ¶ 98; see also Am. Compl. ¶¶ 72, 90 – 98]. Taken as true and in the light most favorable to Plaintiff, this alleges active concealment and affirmative misrepresentations constituting fraud.

Finally, Defendants argue that their purchase and payment for the SIM Cards is sufficient to insure that Digicel received value for the calls Defendants are routing around the switches, and that the compensation they payed is sufficient to use Digicel's infrastructure in Haiti as Defendants see fit. This argument is similarly improper on a motion to dismiss. It also directly contradicts the allegations in the Amended Complaint where it is alleged that "[t]hese multiple misrepresentations by the Defendants and their agents and Digicel's subsequent reliance thereon create a significant loss of revenue for Digicel, and an additional unaccounted for stress on Digicel's cellular network and infrastructure and good-will in Haiti." [Am. Compl. ¶ 74.] It is further alleged, that

Page 12 -    PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 5O3.796.2900

"[a]s a direct, foreseeable, and proximate result of the Defendants' fraudulent conduct, Plaintiff has suffered damages, including but not limited to a loss of charged rates, costs of infrastructure, and loss of brand good-will." [Am. Compl. ¶ 167].  Construing the facts in the light most favorable to Plaintiff and taking all allegations as true, Defendants' argument is incorrect, and the motion to dismiss should be denied.

## V.    The Amended Complaint Contains Allegations of Specific Intent to Maintain RICO and Fraud Claims

Stripped of the rhetoric, explanations and their several attempts to prematurely litigate the "legality" of their conduct, Defendants' argument for dismissal of Digicel's RICO claims rests primarily on the notion that the Amended Complaint does not sufficiently plead specific intent as to the predicate acts of mail, wire, and access fraud. This argument is unavailing as it is wholly contradicted by well-established case law of this Court and the Ninth Circuit Court of Appeals.

### a.    The Complaint Alleges That Defendants' Mail, Wire, and Access Device Fraud were Carried Out To "Intentionally Defraud" Digicel

In *U. S. Bank Nat'l Ass'n v. Franulovic,* the defendant argued that plaintiff's RICO action did not sufficiently plead the "intent" or "scienter" to defraud which is required under the mail and wire fraud statutes. 2007 U.S. Dist. LEXIS 40550 (D. Or. June 1, 2007).  In *Franulovic*, a case presenting an analogous set of circumstances to the case at bar, this Court evaluated a similar argument on a motion to dismiss and applied precedent established by the Ninth Circuit holding that plaintiff's allegations were sufficient in that instance, to aver the required intent.   In that case, this Court emphasized that "RICO imposes no additional *mens rea* requirement beyond that found in the predicate crimes," and "the Ninth Circuit held that plaintiffs may aver scienter

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

generally—just as the rule states—that is, simply by saying that scienter existed." *Id.* at *11; *quoting U.S. v. Blinder*, 10 F.3d 1468, 1477 (9th Cir. 1993). The Ninth Circuit further opined that "[t]his lenient standard also comports with Rule 9(b) which states that for allegations of fraud, '[m]alice, intent, knowledge, and other condition of mind...may be averred generally.'" *Id.* at *12; *see also Odom v. Microsoft Corp.,* 486 F.3d 541, 545 (9th Cir. 2007) ("[S]pecific intent to deceive or defraud requires only a showing of the defendants' state of mind, for which general allegations are sufficient.")

This Court most recently held that "when a complaint alleges with particularity the circumstances constituting fraud, as required by the rule, then generally it will also have set forth facts from which an inference of scienter could be drawn." *In re Galena Biopharma , Inc. Derivative Litig.,* 2015 U.S. Dist. LEXIS 13194 at *37 (D. Or. Feb. 4, 2015) (upholding Ninth Circuit precedent holding allegation of facts from which a reasonable inference of scienter can be drawn is all that is required to properly plead knowledge and intent).

In keeping with these considerations, the allegations of the Amended Complaint, when taken as true, allege the particular circumstances constituting fraud. [2] "[G]enerally, [allegations of particular circumstances constituting fraud] will also have set forth facts from which an inference of scienter could be drawn." *See id.* However, above and beyond the basic inference of scienter, the Complaint explicitly alleges that the Defendants' conduct was carried out to intentionally defraud Digicel. "Defendants agreed to and did conduct and participate in the conduct of the enterprises' affairs

---

[2] Defendants do not argue that particularized allegations of fraud are absent from the Complaint. They instead admit their activities, but deny illegality and contest whether or not those activities constitute a "plausible underlying fraudulent scheme." Their protests as to the propriety of their conduct are irrelevant to the considerations undertaken by a motion to dismiss. *See supra. Section I.*

Page 14 -     PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S
RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT
PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

through a pattern of racketeering activity and ***for the unlawful purpose of intentionally defrauding Plaintiff*** . . ." [Am. Compl. at ¶ 126] (emphasis added). Paragraph 126 continues by explaining, in detail, examples of the known mail, wire, and access device fraud activities undertaken by each defendant with the purpose of intentionally defrauding Digicel:

(a) UPM Marketing provided funds by wire to individuals in Haiti for the purchase and use of SIM Cards to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

(b) Sanchez knowingly received hundreds of Digicel SIM Cards from Haiti for use in SIM Boxes in Oregon which were used to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

(c) Ruiz for, with and on behalf of Sanchez and UPM Telecom knowingly caused computer and internet equipment to be sent to Haiti for the commission of bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

(d) Allen for, with and on behalf of Sanchez and UPM Telecom, knowingly received a large quantity of SIM Cards from Haiti for use in SIM Boxes in Oregon which were used to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

(e) Allen for, with and on behalf of Sanchez and UPM Telecom, knowingly received a large quantity of SIM Cards from Haiti for use in SIM Servers in Oregon which were used to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

(f) Allen knowingly caused computer and internet equipment to be sent to Haiti for the commission of bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

(g) Defendants individually and in concert all knowingly participated in programing SIM Cards and constructing SIM Boxes and Servers to carry out the bypass fraud.

(h) Defendants continue their racketeering activity to this day as each international call that bypasses Digicel's switch, and is then subsequently transmitted using Digicel's towers and infrastructure is a predicate act of racketeering activity.

(i) Defendants racketeering activity is on-going as millions of cellular minutes continue to be stolen by the fraudulent bypass operations that Defendants funded, constructed, and operated for this purpose.

Page 15 -    PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S
RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT
PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 5O3.796.2900

[Am. Compl. at ¶126].

Other paragraphs similarly allege that Defendants' actions were taken in furtherance of their fraudulent scheme. *See* [Am. Compl. at ¶¶ 127-29]. These specific allegations of fraud and general statements regarding intentionally and knowingly acting in a fraudulent manner are sufficient to meet the standards this Court has set for adequate pleading under Rules 8 and 9. Accordingly, Digicel's allegations, when taken as true, adequately plead Defendants' intentional and knowing participation in predicate acts constituting racketeering activity, and therefore Defendants' motion to dismiss should be denied.

### b. The Nature of Access Device Fraud

Pursuant to 18 U.S.C. § 1029(a)(7): "Whoever knowingly and with intent to defraud, uses, produces, traffics in, has control or custody of, or possesses a telecommunications instrument that has been modified or altered to obtain unauthorized use of telecommunications services shall, if the offense affects interstate or foreign commerce, be punished as provided in . . . this section." The definition of "access devices" provided by the statute includes, "any . . . code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value." 18 U.S.C. § 1029 (e)(1).

It is well-established, in keeping with the Congressional intent of the statute, that "the scope of the statutory definition of 'access device' may encompass devices not

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 5O3.796.29OO

specifically enumerated in the statute." *United States v. Brewer*, 835 F.2d 550, 553 (5th Cir. 1987) (acknowledging that the definition is broad enough to encompass technological advances, our court read long distance access codes into the [definition] (internal quotations omitted)); *see also United States v. Scott,* 250 F.3d 550, 552 (7th Cir. 2001) ("A key to the effectiveness of § 1029 in combating credit fraud is a broad, open-ended definition of an "access device" so as to accommodate future technological developments.").

The statue "defines an unauthorized access device as any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3).  *United States v. Inman*, 411 F.3d 591, 594 (5th Cir. 2005) (examining whether access device was "unauthorized" under § 1029(e)(3)'s "obtained with intent to defraud" prong).  Although premature on a motion to dismiss, it bears noting that § 1029 is applicable where a perpetrator uses an otherwise perfectly legitimate access device that was obtained with intent to defraud.  *See Id.* at 595 (describing an unauthorized access device as a "genuine access device being used without authority" and "genuine but misused" in distinguishing between "counterfeit access device" as defined in § 1029(e)(2) and an "unauthorized access device" in § 1029 (e)(3)).  Here, where Defendants claim that SIM Cards they acquired were bought for value and not manipulated (which is contested), the possession and control of the SIM cards alone, not to mention the other access devices and computer equipment necessary to perpetuate bypass fraud, renders the SIM Cards and those devices "unauthorized access devices" pursuant to § 1029(e)(3) where the access devices were "obtained with intent to defraud." *See Id.*

Page 17 -    PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S
RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT
PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Additionally, whether Defendants intended to take money from hijacking Digicel's infrastructure or were merely implementing a "competitive business model" through fraudulent means, the statute punishes the fraudulent scheme and as such, the Defendants should be held liable. Specifically,

> 18 U.S.C. § 1029 punishes the fraudulent scheme and not simply the taking of money. Under that circumstance, it is not required that the court make findings with absolute certainty in the determination of a defendant's intent. ***Once a defendant has engaged in the scheme, culpability is established, and for punishment purposes, only the potential scope of the scheme needs to be determined***."

*United States v. Lin*, 410 F.3d 1187, 1193 (10th Cir. 2005) (emphasis added).

In an analogous case the Sixth Circuit Court of Appeals reinforced the breadth and necessity of Section 1029 to regulate and mitigate losses to cellular telephone carriers. In *US v. Ashe* the court held that a complainant "need only prove by the appropriate weight of the evidence that the defendant possessed, produced, trafficked, had control over, or had custody of an instrument or device ... that permits a theft of services" to be liable for a violation of § 1029. *US v. Ashe*, 47 F.3d 770, 774 (6th Cir. 1995).

The court noted that "[i]n 1992, the losses charged to cellular telephone carriers resulting from 'free riding' amounted to over $100 million." *Id.* In the intervening time period since that opinion was issued, the means of cellular telephone and network scams have only grown and evolved. The new reality of this evolving landscape includes persons and entities, like Defendants here, who masquerade as legitimate business competitors by using internet technology to alter the legitimate purpose and intended use of existing infrastructure and equipment. When all is said and done, their "innovation" still results in an unauthorized and fraudulent use of Digicel's SIM cards,

Page 18 -    PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S
RESPONSE TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT
PDX\128154\201374\RKH\16897899.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 5O3.796.2900

cellular infrastructure, and sustained investment in pioneering and developing a cellular network in Haiti.  It is the new face of telecommunications fraud and "free riding" and Section 1029 encompasses and penalizes this conduct.

## VI.    The Fraudulent Conduct Alleged Throughout Amended Complaint Supports Common Law Claims

The allegations of fraudulent conduct outlined above, as alleged in the Amended Complaint are sufficient to sustain causes of action for civil conspiracy, conversion, and unjust enrichment.

## CONCLUSION

Based on the foregoing, Digicel respectfully requests that Defendants' Motion to Dismiss the Amended Complaint be denied.

Dated:  October 16, 2015.

Respectfully submitted,

By:    /s/ Robert C.L. Vaughan

SCHWABE, WILLIAMSON & WYATT, P.C.
Richard K. Hansen, OSB #832231
Telephone: 503.796-2958
Facsimile: 503.796.2900

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti*

KIM VAUGHAN LERNER LLP
Robert C. L. Vaughan (*Pro Hac Vice*)
Cherine Smith Valbrun (*Pro Hac Vice*)
Leah B. Storie (*Pro Hac Vice*)
One Financial Plaza, Suite 2001
Fort Lauderdale, FL  33394
Telephone:        (954) 527-1115
Facsimile:        (954) 527-1116
E-mail: rvaughan@kvllaw.com

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 5O3.796.2900

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of October, 2015, I caused to be served a copy of the foregoing PLAINTIFF UNIGESTION HOLDINGS, S.A.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT on the following person via the Court's CM/ECF electronic service system:

> Kathryn P. Salyer, OSB #883017
> ksalyer@tsbnwlaw.com
> Tomasi Salyer Baroway
> 121 SW Morrison Street, Suite 1850
> Portland, Oregon 97204-3136
> Telephone: (503) 994-9900
>
> Attorneys for Defendants

> /s/ Richard K Hansen_____
> Richard K. Hansen, OSB #832231

Page 1 -     CERTIFICATE OF SERVICE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\128154\201374\RKH\16897899.1