**Kathryn P. Salyer**, OSB #883017
ksalyer@tsbnwlaw.com
**Eleanor A. DuBay**, OSB #073755
edubay@tsbnwlaw.com
Tomasi Salyer Baroway
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900

      Attorneys for Defendants


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>    Plaintiff,<br><br>  v.<br><br>**UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., and **UPM MARKETING, INC**., an Oregon corporation; **UPM TELECOM, INC**., an Oregon a/b/n; **UPM MARKETING, INC**., an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident; **BALTAZAR RUIZ**, an Oregon resident; and **TYLER ALLEN**, an Oregon resident,<br><br>    Defendants. | Case No. 3:15-CV-00185-SI<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................3

I.    Digicel Misconstrues or Misapplies the Relevant Legal Standards.. ...........................3

    A.    Under *Iqbal* and *Twombly*, Digicel Must Plead Its allegations With Both Specificity and Plausibility. ..................................................................3

    B.    Plaintiff Fails to Acknowledge That Active Concealment Arises in the Context of a Relationship, Usually Contractual, and Not In a Retail or Competitor Context. ................................................................................4

II.    The Amended Complaint's Fraud Allegations Are Inadequate Pursuant to *Iqbal* and *Twombly.*.................................................................................................9

    A.    Digicel's Allegations of Misrepresentation or Concealment Regarding Defendants' Purchase of SIM Cards Are Insufficient..................................14

    B.    Digicel's Allegations of Misrepresentation or Concealment Regarding Defendants' Use of the RLYH Plan Are Insufficient...................................15

    C.    Digicel's Allegations of Misrepresentation or Concealment Regarding Defendants' Use of VOIP Are Insufficient... ............................................16

    D.    Digicel's Allegations Fail to Attribute Any Specific Fraudulent Conduct to Any Particular Defendant.. .........................................................17

III.    Digicel's RICO Claims Should Be Dismissed.............................................................18

    A.    Because Digicel Cannot Demonstrate Defendants' Specific Intent to Defraud, Its RICO Claims Based On Predicate Acts of Mail and Wire Fraud Should Be Dismissed. ...................................................................18

    B.    Similarly, Digicel's RICO Claims Based On Access Device Fraud Also Fail to Establish Defendants' Intent to Defraud. ...........................................21

IV.    Digicel's Civil Conspiracy Claim Should Be Dismissed. ...........................................22

V.    Digicel's Conversion Claim Should Be Dismissed. .....................................................23

VI.    Digicel's Unjust Enrichment Claim Should Be Dismissed. ........................................23

VII.    Digicel's Claim for Injunction Should Be Dismissed. ................................................23

VIII.    Digicel Should Not Be Granted Additional Leave to Amend. ...................................23

CONCLUSION.................................................................................................................25

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## TABLE OF AUTHORITIES

**CASES**                                                                 **Page**

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451, 482 – 83, 126 S. Ct. 1991, 2011, 164 L. Ed. 2d 720 (2006)............................20

*Ashcroft v. Iqbal*,
556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).............2, 3, 9, 18, 19, 21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007))............2, 3, 9, 18, 19, 21

*Benson Tower Condominium Owners Ass'n v. Victaulic Co.*,
22 F. Supp.3d. 1126, 1132 (D. Or. 2014) ...................................................................................6

*Bixby v. KBR, Inc.*,
893 F. Supp. 2d 1067 (D. Or. 2012) .......................................................................................7, 8

*Bonds v. Landers*,
279 Or. 169, 174, 566 P.2d 513 (1977) ..................................................................................22

*Cafasso ex rel. United States v. General Dynamics C4 Sys., Inc.*,
637 F.3d 1047, 1055 (9th Cir. 2011) .....................................................................................6, 10

*Caldwell v. Pop's Homes, Inc.*,
54 Or. App. 104, 634 P.2d 471 (1981).....................................................................................7, 8

*Ebeid ex rel. United States v. Lungwitz*,
616 F.3d 993, 998 (9th Cir.), *cert. denied*, 562 U.S. 1102, 131 S. Ct. 801, 178 L. Ed. 2d
546 (2010))...................................................................................................................................6

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990, 997 (9th Cir. 2014) ...........................................................................................19

*Gregory v. Novak*,
121 Or. App. 651, 855 P.2d 1142 (1993)....................................................................................6

*In re Galena Biopharma, Inc. Derivative Litig.*,
83 F. Supp. 3d 1047 (D. Or. 2015) ..........................................................................................20

*Janson v. Egypt Valley Country Club*,
2009 WL 6582418 at *9 (W.D. Mich. Nov. 30, 2009)..............................................................21

*Lyden v. Nike*,
2014 WL 2563401 at * 4 (D. Or. 2014).......................................................................................4

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531, 540 (9th Cir. 1989) ..............................................................................................4

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*Naas v. Lucas*,
86 Or. App. 406, 409, 739 P.2d 1051, *rev. denied*,
304 Or. 680, 748 P.2d 142 (1987) ......................................................................................23

*Nunes v. Ashcroft*,
375 F.3d 805, 808 (9th Cir. 2004) .....................................................................................23

*Nunes v. Gonzales,*
543 U.S. 1188, 125 S. Ct. 1395, 161 L. Ed. 2d 192 (2005).............................................23

*Odom v. Microsoft Corp.*,
486 F.3d 541, 551 (9th Cir. 2007) (en banc) ......................................................................2

*Ogan v. Ellison*,
297 Or. 25, 682 P.2d 760 (1984) .....................................................................................6, 7

*Paul v. Kelley*,
42 Or. App. 61, 65-66, 599 P.2d 1236 (1979) .................................................................4, 5

*Starr v. Baca*,
652 F.3d 1202, 1216 (9th Cir. 2011) ..................................................................................3

*Stein v. United Artists Corp.*,
691 F.2d 885 (9th Cir. 1982) ............................................................................................24

*Swartz v. KPMG LLP*,
476 F.3d 756, 764–65 (9th Cir. 2007) ...........................................................................4, 17

*Reyes v. Zions First Nat. Bank*,
2012 WL 947139, at *6 (E.D. Pa. Mar. 21, 2012).............................................................21

*United States v. Ashe*,
47 F.3d 770 (6th Cir. 1995) ..............................................................................................22

*United States v. Bailey*,
41 F.3d 413, 418 (9th Cir. 1994) ......................................................................................22

*United States v. Lin*,
410 F.3d 1 187, 1193 (10th Cir. 2005) ..............................................................................21

*U.S. Bank Nat'l Ass's v. Franulovic*,
2007 WL 1598091 (D. Or. Jun. 1, 2007) ..........................................................................18

*Vincent v. Trend W. Technical Corp.*,
828 F.2d 563, 570–71 (9th Cir. 1987) ..............................................................................24

*Wagh v. Metris Direct, Inc.*,
363 F.3d 821, 828 (9th Cir. 2003) .................................................................................2, 24

*Walchli v. Community Bank*,
2010 WL 2105163 at *1 (D. Or. May 25, 2010) ...............................................................19

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**STATUTES**

18 U.S.C. § 1029.................................................................................................................21, 22

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Defendants UPM Technology, Inc., UPM Telecom, Inc., UPM Marketing, Inc., Benjamin Sanchez, Baltazar Ruiz, and Tyler Allen, (collectively, "Defendants") submit this Reply in Support of Motion to Dismiss Amended Complaint.

## INTRODUCTION

Defendants seek to dismiss Digicel's Amended Complaint because of Digicel's continued failure to plead sufficient facts to state a claim. The Court earlier recognized that the essence of each of Digicel's claims was fraud, and dismissed Digicel's first complaint because it was "lacking in clarity and specificity" as to the nature and substance of any misrepresentations. (Transcript of Jul. 27, 2015 Hearing, 39:19 – 20.) The Court went on to identify two potential categories of misrepresentations. The first type of misrepresentation, which the Court termed "not technological," "depends on what representations were actually made at the time of the purchase of the SIM card or at the time of the activation of the Roam [Like] You're Home." (Transcript, 45:24; 47:7 – 9.) The second type of potential misrepresentation the Court recognized is an "electronic misrepresentation" allegedly made by UPM's equipment to Digicel's computers and system that a call placed through UPM's system "is a local Haitian call." (*Id.*, 47:18 – 20.)

Digicel appears to have tried to heed the Court's exhortation, as evidenced by the Amended Complaint's breakdown of Defendants' "misrepresentations" into three categories: (1) "through purchase and use of SIM cards" (Am. Compl., ¶¶ 56 – 74); (2) "through purchase and use of RLYH Plan" (*id.*, ¶¶ 75 – 82); and (3) "through use of IP technology" (*id.*, ¶¶ 83 – 98). As Defendants' Motion detailed, however, Digicel's Amended Complaint still fails to plausibly and specifically state a basis for fraud. Digicel's allegations amount to nothing more than an accusation that Defendants used Digicel's SIM cards in a way that Digicel did not intend. Notably, Digicel fails to specify (1) whether Defendants were aware of Digicel's expectation with respect to the intended use of its SIM Cards, (2) whether Defendants did anything to mislead Digicel into believing that Defendants' use would be consistent with Digicel's intent,

Page 1  - **REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

and, if so, (3) which of the Defendants were involved in the allegedly misleading conduct. In its Response to Defendants' Motion, and perhaps recognizing that it cannot establish either (1) or (2), Digicel tries to bolster its fraud allegations by claiming that Defendants' conduct constitutes active concealment. However, the cases that Digicel relies on to support that claim are inapplicable to the scenario that Digicel paints.

Further, Digicel's entire analysis of the Amended Complaint's viability inexplicably ignores the pronouncements of *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Rather than recognizing the burden imposed by these cases for plaintiffs to plead factually specific, plausible allegations, Digicel relies on outdated holdings that required the district court to accept all the complaint's allegations as true, then scoffs at Defendants' plausibility arguments as being improperly based on "facts and explanations" beyond the four corners of the Amended Complaint. Despite Digicel's protests, Defendants' proffered analysis is precisely what *Iqbal* and *Twombly* require. And, in light of those cases, it is evident that Digicel has failed, once again, to adequately plead claims against Defendants. In the context of a RICO claim, this failure is even more consequential. Courts have recognized that due to their quasi criminal nature, RICO claims have a stigmatizing effect on those named as defendants. As a result, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102, 1108-09 (9th Cir. 2004), overruled on other grounds, *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007).

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## ARGUMENT

**I.    Digicel Misconstrues or Misapplies the Relevant Legal Standards.**

**A.    Under *Iqbal* and *Twombly*, Digicel Must Plead Its Allegations With Both Specificity and Plausibility.**

None of the cases Digicel cites in its Response that pertain to Federal Rules of Civil Procedure 8(a) and 9(b) is more recent than 2003, four years before *Twombly* was decided. (Dkt. 47, Resp. at 4 – 5.)  Defendants will not reiterate the entire section of their Motion that explained the current state of the law regarding what makes a complaint's allegations sufficient to withstand a motion to dismiss, but instead incorporate that explanation here.  (Dkt. 46, Motion to Dismiss Am. Compl., 2 – 5.)  In short, "the tenet that a court must accept a complaint's allegations as true is inapplicable" to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679, 129 S. Ct. at 1950.

The Ninth Circuit has distilled the Supreme Court's plausibility inquiry into these principles:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

It is also worth noting that Rule 9(b)'s specificity standard applies to each and every defendant who is accused of fraud.  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations ... and inform each defendant separately of the allegations surrounding his alleged participation in

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (citation and internal quotations omitted). Digicel must, "at a minimum 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" *Id.* at 765 (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (alterations in original).

**B.     Plaintiff Fails to Acknowledge That Active Concealment Arises in the Context of a Relationship, Usually Contractual, and Not In a Retail or Competitor Context.**

Digicel now claims that its allegations present a case of "active concealment," upon which it avers a fraud claim may be based. The cases that Digicel relies on, however, do not support that claim. Digicel begins by citing *Lyden v. Nike*, 2014 WL 2563401 at * 4 (D. Or. 2014) for the generic proposition that fraud can be "based on either an affirmative misrepresentation, active concealment, or nondisclosure." (Dkt. 47, Resp. at 5.) *Lyden* was a case in which a former Nike employee alleged several claims related to patents that he claimed to have authored. One of the claims was for fraud, but the plaintiff's complaint detailed affirmative misrepresentations, not concealment. *Id.* The court dismissed the fraud claim as barred by the statute of limitations. *Id.*

In outlining Oregon's common-law fraud rules, the *Lyden* court cited *Paul v. Kelley*, 42 Or. App. 61, 65-66, 599 P.2d 1236 (1979). In that case, the plaintiff was an assignee of the purchaser's interest in an earnest money receipt that the purchaser had negotiated with the defendants related to a piece of property that the defendants knew the purchaser intended to subdivide. The complaint alleged that the defendants had previously filled in a drainage ditch on the property and had been asked by the City of Springfield to either re-open the ditch or to install a storm sewer. *Paul*, 42 Or. App. at 63. The complaint further alleged that the defendants' concealment of the natural drainage ditch prevented the plaintiff from learning of its existence and therefore constituted fraud. The Court of Appeals agreed, and cited Section 550 of the Restatement (Second) of Torts (1977), from which arises the theory of fraud by concealment:

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

§ 550. Liability for Fraudulent Concealment

One **party to a transaction** who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

Comment:

a. The rule stated in this Section is commonly applied in two types of situations, although it is not limited to them. The first occurs when the defendant actively conceals a defect or other disadvantage in something that he is offering for sale to another. Thus a defendant is subject to liability for a fraudulent misrepresentation if he paints over and so conceals a defect in a chattel or a building that he is endeavoring to sell to the plaintiff, and thus induces the plaintiff to buy it in ignorance of its defective character. So also, he is subject to liability if he reads a contract to the plaintiff and omits a portion of it, or if he so stacks aluminum sheets that he is selling as to conceal defective sheets in the middle of the pile.

*Paul*, 42 Or. App. at 65 n.1 (emphasis added). The fact that this Restatement rule is intended to apply to a "party to a transaction" is a signal that it does not control the situation presented here: Defendants' purchase and use of Digicel SIM cards to access the local tariff to which they correspond. Moreover, the only "transactions" that are pertinent in any of Digicel's concealment allegations are those in which Defendants or their agents purchased the SIM cards. But Digicel's only specific allegation regarding what Defendants actually did during those transactions is this: "To obtain Digicel SIM Cards, the Defendants' Haitian agents go to a Digicel authorized retailer and purchase SIM Cards under the false premise that those SIM Cards are for their own individual, retail use in cellular handset devices." (Am. Compl., ¶ 65.) As explained in Defendants' Motion, this allegation is simply inadequate under both Rules 8(a) and 9(b) to state a claim of fraud. It does not allege: which Defendant the agent was allegedly acting on behalf of, the nature of the "false premise," who these "agents" were, whether the Digicel dealer asked Defendants' agents about their intended use for the SIM cards, whether the agents were even aware that Digicel purportedly did not want them to use the SIM cards other than in a personal cell phone, what—if anything—the agents communicated to the Digicel dealers, how those

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

communications were false, and how Digicel relied on them.  In short, the Amended Complaint fails to specify "what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *Cafasso ex rel. United States v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.), *cert. denied*, 562 U.S. 1102, 131 S. Ct. 801, 178 L. Ed. 2d 546 (2010)).

All of the rest of the cases Digicel cites in support of its argument that "active concealment" is one aspect of fraud also either arose in the context of a sale of property, or involved an affirmative misrepresentation, or both.  *Gregory v. Novak*, 121 Or. App. 651, 855 P.2d 1142 (1993), concerned the sale of an apartment complex.  The defendants, who knew that the complex's swimming pool was unusable, covered the pool during the plaintiffs' inspection of the property.  Although the water appeared "murky and stagnant," the sale occurred during the winter, when such a condition for a pool is normal.  *Gregory*, 121 Or. App. at 653.  The defendants also affirmatively "assured plaintiffs that the pool was in working order and had been recently painted."  *Id.*  After mentioning that "one who makes a representation that is misleading because it is in the nature of a 'half-truth' assumes the obligation to make a full and fair disclosure of the whole truth," the Court of Appeals concluded that the defendants did not remain silent regarding the pool, whether or not they had a right to, and that summary judgment had been inappropriate due to their affirmative misrepresentation.  *Id.* at 655; *see also Benson Tower Condominium Owners Ass'n v. Victaulic Co.*, 22 F. Supp.3d. 1126, 1132 (D. Or. 2014) ("When fraud is based on silence or nondisclosure, a party must demonstrate that the defendant either (1) remained silent when they had a duty to speak, or (2) assumed the obligation to make a full and fair disclosure of the whole truth by making a representation in the nature of a 'half-truth.'") (citation and quotation omitted).

The next case Digicel cites is *Ogan v. Ellison*, 297 Or. 25, 682 P.2d 760 (1984).  In that case, the defendants sold two contiguous tracts of land, each with houses on them, to the

plaintiffs.  The plaintiffs assumed that the two tracts had been legally subdivided into separate parcels, but learned otherwise after the purchase.  At the time of the sale, ORS 92.016(2) prohibited the sale of a land parcel prior to the approval of a tentative plan for partitioning required by either an ordinance or regulation.  *Ogan*, 297 Or at 32.  The Court of Appeals noted: "In this case, allegations that the sellers sold the property to the purchasers knowing that the property was not partitioned, but not expressly representing that the property was partitioned, constitutes a sufficient allegation of a fraudulent misrepresentation even though the misrepresentation is only implied." *Id.* at 34.  Stated another way, the defendant remained silent in face of a 'statutory duty' to speak.

*Bixby v. KBR, Inc.*, 893 F. Supp. 2d 1067 (D. Or. 2012), was a case in which plaintiffs, Oregon National Guard members, alleged that KBR, a military contractor, deliberately misled them regarding the seriousness of the health risks posed by exposed sodium dichromate at a water treatment facility in Qarmat Ali, Iraq.  Although the district court did enunciate the rule that Digicel relies on—that a duty to speak is irrelevant when the defendant actively conceals information—it determined that summary judgment in favor of the defendants was not appropriate because of the affirmative misrepresentations that KBR had made:  "It is enough that plaintiffs have provided evidence that the KBR employees' statements gave the false impression that the soil was not a serious hazard when it was, in fact, the opposite." *Bixby*, 893 F. Supp. 2d at 1075.

*Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104, 634 P.2d 471 (1981), which the *Bixby* court cited, also does not help Digicel.  In that case, the plaintiff wanted to purchase an "in-park" mobile home because he did not have the time or resources available to search for a mobile home park to which to move an unattached mobile home.  He told the defendant sales representative of his desire for an "in-park" mobile home, and she showed him a home owned by Grace Hunter that he eventually purchased.  The plaintiff asked why Hunter wanted to sell the

**Page 7 -  REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

home, and was told by the sales representative that Hunter wanted a larger mobile home. According to the plaintiff's complaint, however, what the sales representative knew, but did not disclose, was the fact that the mobile home park was going to be sold within several months and that Hunter was moving because of the park's imminent sale.  The plaintiff learned of the park's sale after he purchased the mobile home; within one month of moving into the home, he learned that the new owners of the mobile park were not going to use the property for that purpose and that he would have 120 days to vacate.  As the Court of Appeals explained, "[t]he objectionable behavior was defendant's misrepresentation of the reason for Hunter's sale and its failure to disclose the fact that the park was being sold."  *Caldwell*, 54 Or. App. at 111.

What is evident from all of these "concealment" cases is that they occurred in the context of a negotiated relationship, or transaction, between plaintiff and defendant, in which the defendant either made an outright misrepresentation, or a statement that was a half-truth, or remained silent in the face of a duty to speak.[1]  They also involve misrepresentation or concealment made by the *seller*, not by the purchaser.  It is hard to imagine a situation in which a purchaser in a retail transaction could be liable for fraud for concealing from the seller how he intended to use the product.  And yet that is exactly what the Amended Complaint tries to allege.  Could one imagine that a bodega owner who buys a box of Costco blueberry muffins and then upsells each muffin at his store at a price three times more than what he paid would be liable to Costco for fraudulently concealing how he planned to earn a higher margin?  Of course not.  And therein lies the fundamental problem with Digicel's Amended Complaint:  it is nothing more than the roar of the monopolist angry at a competitor who has figured out how to penetrate the market.  Digicel protests that Defendants' method is a misuse of Digicel's technology or network, but that, by itself, is insufficient for a fraud or RICO claim.  Digicel acknowledges that

---

[1] The one possible exception is *Bixby*, which concerned half-truths that an employer made to its contractors.  However, as already explained, the *Bixby* court held that the defendant actually affirmatively made false representations, so it is not a pure concealment case.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Defendants have purchased access to Digicel's network through their purchase of SIM cards. And Digicel's insistence that it did not intend for a purchaser to use the SIM cards in the way that Defendants did is meaningless unless Digicel can establish that Defendants were both aware of Digicel's restrictions and somehow misled Digicel into believing that Defendants would comply with them. The Amended Complaint, like the original Complaint, fails to do that.

The other aspect of concealment appears to be Digicel's pique that Defendants did not conduct all of their business activities in such a way that they were completely transparent to a competitor. Of course, none of the fraudulent concealment cases that Digicel cites support that scenario. Under Digicel's theory of "concealment," Coca-Cola would be liable for fraud because it does not make available to Pepsi its marketing plans and bottling technology. Simply put, the law of fraudulent concealment does not apply to this situation.

## II.    The Amended Complaint's Fraud Allegations Are Inadequate Pursuant to *Iqbal* and *Twombly*.

Notwithstanding Digicel's insistence that it is inappropriate for Defendants to "venture[] well beyond the four corners of the Amended Complaint" (Dkt. 47, Resp. at 6), that is precisely what this Court must do to determine whether Digicel's allegations comport with the specificity and plausibility requirements set forth by *Iqbal* and *Twombly*. To assist the Court, Defendants will examine the allegations as raised on Digicel's chart:

| Allegation | Insufficiency |
|---|---|
| "Upon information and belief, Defendants employed the assistance of numerous Haitian individuals to act as their agents in the purchase and acquisition of numerous Digicel SIM Cards." Am. Compl. ¶ 57. | This allegation does not indicate either a misrepresentation or concealment. Using "Haitian individuals to act as their agents" is more plausibly a result of the fact that none of the Defendants are located in Haiti, rather than evidence of an attempt to hide their identity from Digicel. |

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

| Allegation | Insufficiency |
|---|---|
| "Upon information and belief, Defendants have sold large blocks of wholesale cellular minutes for calls to be terminated in Haiti to large third-party telecommunications carriers whose customers make telephone calls to Haiti." Am. Compl. ¶ 78. | This allegation states nothing more than the fact that UPM is a competitor of Digicel. This allegation also fails to specify which Defendants are involved in the conduct. |
| "If a customer of one of the third-party carriers who purchased wholesale minutes from Defendants places a call to Haiti, the call is routed using sophisticated telecommunications software to Defendants' SIM Servers in Oregon and possibly elsewhere." Am. Compl. ¶ 79. | The allegation does not specify how "the call is routed." Certainly Digicel does not allege that Defendants play any role in routing the call. In fact, it is the third-party carrier who routes the call based on pricing and quality. |
| "Upon information and belief, UPM and its agents, subsidiaries, and representatives may have also created direct commercial relationships with retail customers through the retail sale of digital plans or international calling cards." Am. Compl. ¶ 80. | This allegation does not allege any fraudulent conduct, either a misrepresentation or concealment. |
| "In basic terms, Defendants have SIM Servers and SIM Boxes into which they have loaded Digicel SIM Cards. These SIM Servers receive calls made to Haiti by individuals outside of Haiti." Am. Compl. ¶ 84. | This allegation does not allege any fraudulent conduct, either a misrepresentation or concealment, nor does it specify which Defendants were involved in this conduct. |
| "Defendants have either sold minutes (wholesale) to third-parties or sold minutes directly to consumers through phone cards or retail sales of cellular plans and devices." Am. Compl. ¶ 85. | This allegation states nothing more than the fact that UPM is a competitor of Digicel. |
| "To obtain Digicel SIM Cards, the Defendants' Haitian agents go to a Digicel authorized retailer and purchase SIM Cards **under the false premise** that those SIM Cards are for their own individual, retail use in their cellular handset devices." Am. Compl. ¶ 65 (emphasis added). | "Under the false premise" is a conclusory allegation with no factual support. Digicel fails to provide any necessary information regarding "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso*, 637 F.3d at 1055. |

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

| Allegation | Insufficiency |
|---|---|
| "Defendants assemble the SIM Cards into SIM Boxes and SIM Servers, all located in Oregon, to **intentionally misrepresent incoming international calls** to the Digicel network as local (domestic) calls placed within Haiti." Am. Compl. ¶ 67 (emphasis added). | "Intentionally misrepresent incoming international calls" is a conclusory allegation with no factual support. It is also implausible, given that (1) it is Digicel's own technology on the SIM cards that cause its Haitian gateway to recognize the calls as local and (2) the calls are local at the point they enter the Digicel network in Haiti. |
| "The SIM Cards housed in Oregon, are manipulated or cloned to retrieve and then transmit the unique identifying information off each SIM Card, so that the information can be sent to Haiti. **This allows UPM to pretend to initiate a call in Haiti when the call in fact initiated in the USA**. Using the "cloned" SIM Card, the Receiver located in Haiti completes the call to the ultimate recipient using Digicel's telecom network." Am. Compl. ¶ 69 (emphasis added). | Allegations of "cloning" are on their face implausible because they contradict Digicel's allegations that Defendants purchased the SIM cards. Further, the allegation that UPM "pretends to initiate a call in Haiti" is not plausible because it is Digicel's own technology on its SIM cards—not anything done by Defendants—that causes Digicel's network to recognize the call as a local call. |
| "The SIM Server, containing SIM Cards allegedly registered for the RLYH Plan, then directs the call to its ultimate recipient. At that time, **the call represents itself to towers in the United States and ultimately in Haiti as coming from a RLYH subscriber when the call is actually from an individual that is subscribed to a third-party carrier and has no relationship with Digicel and is not registered on the plan**." Am. Compl. ¶ 81 (emphasis added). | This allegation is not plausible because it is Digicel's RLYH tariff and technology that cause the call to be routed via Digicel's local gateway. It is also not plausible for Digicel to allege that the call somehow misrepresents itself as a RLYH call because Digicel also alleged that the only way to get access to the RLYH plan is to register for it. (Am. Compl., ¶¶ 75 – 76.) In other words, Digicel's implication that such calls are not "registered on the plan" is implausible on its face—UPM did register the SIM cards on the RLYH plan. If the SIM cards were not registered to the RLYH plan, then the Digicel gateway would charge a higher tariff. |
| "**The call is then misrepresented to the Digicel's network** in Haiti as a call made by an individual subscribed to the RLYH Plan and is not charged international calling rates." Am. Compl. ¶ 82 (emphasis added). | The allegation is implausible on its face because the call is, in fact, made via a SIM card that is registered on the RLYH plan. Moreover, Digicel's use of the passive voice allows it to gloss over the fact that it is Digicel's own technology that routes the call to the local gateway, not anything that Defendants have done or concealed. |

**Page 11 -  REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

| Allegation | Insufficiency |
|---|---|
| "Once a call is made by a customer of the third-party carrier, a Digicel retail customer, or a customer who has purchased a UPM related phone card, the call is then routed directly to UPM's SIM Servers in Oregon." Am. Compl. ¶ 86 | Again, the use of the passive voice lets Digicel hide the fact that the call is routed to UPM's SIM servers by the third-party carrier or by Digicel's technology, not by Defendants. |
| "The call is then routed via the internet to a Receiver that has been installed in Haiti which contains the cloned SIM Card information, bypassing Digicel's International Switches." Am. Compl. ¶ 87. | "Cloning" allegations are implausible on their face because Digicel has already alleged that Defendants purchased the Digicel SIM cards. |
| "UPM's **technology intentionally causes the call to avoid Digicel's Switches** in the United States." Am. Compl. ¶ 88 (emphasis added). | This allegation does not allege any fraudulent conduct, either a misrepresentation or a concealment. Using VOIP to route calls is not illegal, nor does Digicel allege that it is. |
| "Through the use of sophisticated software that **works to evade detection** of the SIM Servers and bypass operations, the SIM Servers in Oregon select a Haitian telephone number associated with one of the SIM Cards in the SIM Server and 'packages' that number along with the original call for transmission over the internet." Am. Compl. ¶ 89 (emphasis added). | Even if true, Defendants' alleged use of software that works to evade detection is not sufficient to establish concealment in the context of competitors. Indeed, it would be implausible for Defendants not to take steps to protect their business activities from competitors' examination. |
| "Once a SIM Card and associated telephone number is selected by the software, the telephone number is transmitted via IP technology to a Receiver located in Haiti." Am. Compl. ¶ 90. | This allegation merely states that UPM's network—not Digicel's—is responsible for carrying a VOIP call to Haiti. |
| "The packaged SIM information and telephone call are delivered via the internet to a local Receiver in Haiti which then directs that call back into the local network as a local call using the identifying information transmitted from the SIM card to **trick the network into thinking the call was originated from that "local" number**." Am. Compl. ¶ 91 (emphasis added). | This allegation is implausible because Digicel's network is not "tricked" into thinking that a VOIP call is a local call. Based on Digicel's allegations that Defendants purchased Digicel SIM cards, it is evident that—at the point the call arrives at Haiti's local gateway, it is a local call. |
| "Defendants have numerous Receivers located throughout Haiti, and each Receiver can be moved to a different location on short notice. Again, this is to **evade detection**." Am. Compl. ¶ 92 (emphasis added). | The portability of receivers is more plausibly due to the fact that the technology does not require large receivers. Moreover, even if Defendants did wish to "evade detection," that is not evidence of fraud in the context of competitors. |

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

| Allegation | Insufficiency |
|---|---|
| "This is a manipulation of the intended use of SIM Cards. Here, Defendants use the software to **evade detection by misrepresenting the true identity and origin of the initial call and altering the SIM Card's normal usage patterns**." Am. Compl. ¶ 93 (emphasis added). | The "intended use of SIM cards" is irrelevant if Defendants were not aware of Digicel's restrictions; the Amended Complaint does not allege that they were. Moreover, this allegation is implausible on its face because the origin of a call is not determined by the calling phone number, but by where the call enters the network. |
| "Through the use of software, Defendants in Oregon can choose to spread calls to different Receivers. This strategy is intended to **mimic** the calling patterns of real people." Am. Compl. ¶ 94. | This allegation does not allege any fraudulent conduct, either a misrepresentation or concealment. If "mimicking" call patterns is an effort to conceal activities, such concealment is not evidence of fraud in a competitor context. |
| "To **avoid easy detection**, Defendants use multiple, portable Receivers in various locations. The software **manipulates calling patterns** by directing calls to be spread among various Receivers." Am. Compl. ¶ 96. | This allegation does not allege any fraudulent conduct, either a misrepresentation or concealment. "Avoiding easy detection" is not evidence of fraud in a competitor context. Nor is directing calls to be spread among various receivers evidence of misrepresentation or concealment. |
| "The Receiver, also operated by Defendants, then routes the call to the closest Digicel tower in Haiti and ultimately, on to the recipient's cellular telephone. When the call is terminated through the Receiver the Caller Line Identification (CLI) is blocked so that the calling number is manipulated to display on the Digicel subscriber's phone as 'unknown' or with a blank value. Defendants do this by inserting a special code in front of the subscriber number when the call is routed." Am. Compl. ¶ 97. | Even if true, this allegation merely says that the *recipient* might be confused as to the caller ID number; it does not allege that anything Defendants do cause Digicel's network to inappropriately route or recognize the call. It therefore is insufficient to form a misrepresentation to or concealment from Digicel. Moreover, Digicel does not allege that it bills the calls based on the CLI; rather, it bills based on where the calls enters its network. |
| "By using SIM Servers in Oregon and sophisticated IP technology in conjunction with the local Receiver, **Defendants intentionally manipulate the SIM card data to misrepresent the international call to Digicel's Haitian network** as a domestic call made in Haiti, and only the domestic calling fees are charged." Am. Compl. ¶ 98. | This allegation is conclusory and also implausible. A SIM card does not route the call. Digicel's own SIM card technology and tariff are what cause its network to recognize the call as local, which is in fact what the call is when it enters Digicel's network. There is no reason for Defendants to "manipulate" SIM card data in order to access Digicel's local Haitian gateway. |

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

From this comparison, it is evident that Digicel's fraud allegations are inadequate, insufficiently specific, and implausible.

### A. Digicel's Allegations of Misrepresentation or Concealment Regarding Defendants' Purchase of SIM Cards Are Insufficient.

As this Court noted at the hearing on Defendants' first motion to dismiss, one of the "non-technological" misrepresentations that Defendants might have made could have been in connection with what they told Digicel representatives at the time they purchased the Digicel SIM cards.  In its Amended Complaint, Digicel alleges that it requires SIM card purchasers to fill out a registration card, which is intended to thwart users from obtaining SIM cards for anything other than individual use.  (Am. Compl., ¶¶ 32, 34, Exh. A.)

Digicel did not respond to Defendants' argument that the "registration card" does not contain any language informing the purchaser of Digicel's restrictions, nor of any representation or acknowledgement by the purchaser that he will comply with them. Presumably, Digicel has the "registration cards" that correspond to the SIM cards that it alleges "Defendants' agents" purchased.  And yet the Amended Complaint does not reveal the names of those persons, nor the dates on which the SIM cards were purchased, information that should be readily available if, in fact, the registration cards were filled out.  In any event, Digicel admits that the local identification infrastructure in Haiti is less than robust (Am. Compl., ¶ 31), an allegation which likely explains the curious absence of the completed registration cards from its Amended Complaint and further undermines the plausibility of Digicel's claim that the SIM Cards were purchased under false pretenses.

Digicel also alleges that it informs its dealers, through "Dealer Circulars," not to sell SIM cards to anyone who may resell them or use them for non-consumer purposes.  (Am. Compl., ¶¶ 33, 35 – 36).  But Digicel is silent in the face of Defendants' argument that, regardless of Digicel's sales policies (which cannot have any relevance unless they were communicated to Defendants), the Amended Complaint is devoid of any allegation that Digicel's

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

dealers even asked Defendants' agents how they planned to use the SIM cards, let alone any allegation regarding anything Defendants misrepresented or concealed in the course of purchasing them.

Now Digicel argues that "[t]he active concealment of the true purchaser and true intent behind the purchase of the SIM cards is fraud." (Dkt. 47, Resp. at 10.) Of course, no active concealment case supports the premise that a retail purchaser is obligated to inform the seller what he intends to do with the product. Moreover, Digicel does not explain, either in the Amended Complaint or in its Response, how Defendants could have "concealed" anything if they were not even asked about their intent. Finally, Digicel's claims of "concealment" are not plausible: if Defendants paid Haitian agents to buy the SIM cards and send them to Oregon, it is more likely the result of the fact that Defendants were not based in Haiti rather than a scheme to hide from Digicel.[2] None of Digicel's allegations regarding Defendants' purchase of the SIM cards sufficiently states a plausible, specific claim for fraud, whether misrepresentation or concealment.

### B.   Digicel's Allegations of Misrepresentation or Concealment Regarding Defendants' Use of the RLYH Plan Are Insufficient.

Digicel claims that "the allegation that Defendants directly or indirectly subscribed to the RLYH service with the specific intent of using it in an unauthorized fashion is sufficient to allege active concealment, and the resulting fraud." (Dkt. 47, Resp. at 11.) But at the same time Digicel brushes aside—without answering—Defendants' argument that "Plaintiff was required to plead Defendants' awareness of the RLYH plan's intended purpose . . ." as unnecessary. (*Id.* at 10.) Of course, it is impossible for Defendants to have had an intent to use RLYH in an "unauthorized fashion" if they were not even aware of what its "intended purpose"

---

[2] Nor does the Amended Complaint allege that Digicel's dealers would have even recognized the individual Defendants had they appeared in person to buy the SIM cards.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

was.   Digicel does not allege that Defendants were so aware.   The RLYH allegations are therefore also conclusory and implausible.

### C.   Digicel's Allegations of Misrepresentation or Concealment Regarding Defendants' Use of VOIP Are Insufficient.

With respect to its allegations of fraud regarding Defendants' use of VOIP to route calls to Haiti, Digicel again fails to recognize that the Court's job is to ascertain whether Digicel has pleaded those allegations both specifically and plausibly.   Digicel now argues that its allegation that UPM's SIM server "assigns" a local Haitian number to a call "fraudulently conceals" the transaction and is an affirmative misrepresentation communicated to the Digicel network.   (Dkt. 47, Resp. at 12.)   That allegation is implausible on its face.   The Haitian local tower recognizes the call and allows it to enter and be charged at the local tariff because Digicel's network allows it to do so.   The call "bypasses" Digicel's international gateway, not through any fraud or concealment, but because it is using an Internet route—one that is entirely paid for by UPM—to reach Haiti.   When the call reaches Haiti's local network, it uses a local switch rather than the international one because UPM's Receiver located in Haiti uses Digicel SIM cards.   Digicel's allegation that "the international calls misrepresent themselves as domestic calls," (Am. Compl., ¶ 165), is implausible on its face because the calls are—at the moment they enter Digicel's network—in fact domestic calls.   Just as this Court surmised, there is no difference between an UPM VOIP call and a call made by the recipient of a Skype transmission who holds his phone up to the computer (although the call quality is likely better in the former scenario).   The Amended Complaint does not adequately explain how Defendants' actions "trick" Digicel's network; rather, what is apparent is that Defendants are using VOIP technology in a way that Digicel did not foresee.

Defendants' argument that the Amended Complaint does not sufficiently allege that Defendants intended "to fraudulently avoid compensating Digicel for the calls terminated on Digicel's network," (Am. Compl., ¶ 164), because Defendants purchased access to the network

**Page 16 -   REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

by buying the SIM cards and air time, Digicel calls "improper on a motion to dismiss." (Dkt. 47, Resp. at 12.) It then points to its allegation that Defendants' actions "create a significant loss of revenue for Digicel, and an additional unaccounted for stress on Digicel's cellular network and infrastructure and good-will in Haiti" as sufficient. (*Id.*) Once again, that allegation is not plausible on its face. Because Digicel alleged that Defendants purchased Digicel SIM cards, which were used to access Haiti's local network—as they would have been had they been bought and used by an individual Haitian, all at a profit to Digicel—Digicel has not lost any revenue nor had any "unaccounted for stress" placed on its network. Digicel's real argument is that it lost an opportunity to charge its monopoly rates to international callers. But that lost opportunity was not caused by Defendants' fraud, and Digicel has—for the second time—failed to sufficiently allege that it was.

> **D.      Digicel's Allegations Fail to Attribute Any Specific Fraudulent Conduct to Any Particular Defendant.**

Finally, it is worth pointing out that the entire Amended Complaint "is shot through with general allegations that the 'defendants' engaged in fraudulent conduct" without attributing specific actions to any particular defendant. *Swartz*, 476 F.3d at 765. In fact, the only allegations that specifically name individual defendants are those that detail shipments of money and/or SIM cards, hardly activities that—by themselves—constitute fraud or the predicate acts of mail and wire fraud. (Am. Compl., ¶¶ 99 – 116.) And Digicel's multiple allegations that "Defendants" actions were "performed with the specific intent of defrauding Digicel" or were "for the purpose of committing bypass fraud" do not pass muster. *See id.* ("Conclusory allegations that Presidio and DB 'knew that [KPMG and B & W] were making ... false statements to clients, including Swartz, and thus were acting in concert with [KPMG and B & W]' and 'were acting as agents [of KPMG and B & W]' and were 'active participants in the conspiracy' without any stated factual basis are insufficient as a matter of law.") These kinds of

Page 17 -  **REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

generic, sweeping allegations plague the entire Amended Complaint and are yet another example of how Digicel has failed to allege fraud with particularity.

### III.    Digicel's RICO Claims Should Be Dismissed.

Having failed to adequately plead the scope of any fraudulent action on Defendants' part, Digicel cannot rely—as it argues—on its multiple RICO allegations that conclusorily allege Defendants' "unlawful purpose for intentionally defrauding Plaintiff." (Dkt. 47, Resp. at 14 – 15.)

#### A.    Because Digicel Cannot Demonstrate Defendants' Specific Intent to Defraud, Its RICO Claims Based On Predicate Acts of Mail and Wire Fraud Should Be Dismissed.

Digicel relies on *U.S. Bank Nat'l Ass's v. Franulovic*, 2007 WL 1598091 (D. Or. Jun. 1, 2007), to support its claim that it has adequately pleaded fraudulent intent. Although Digicel claims the case is "analogous," it in fact involved RICO allegations against defendants who allegedly encouraged customers to "purchase" a vacuum cleaner from the defendant company via a credit card, "lend" the value of the purchase price to another defendant in exchange for a promise to repay with interest, and then charge back or reverse the original credit card charges for the imaginary vacuum cleaner. The plaintiff bank, which reimbursed charges to individuals for the vacuum cleaners that were never actually sold, never received reimbursement from the defendant company as it should have pursuant to the terms of the credit card servicing agreement. This Court found that the plaintiff adequately pleaded fraud with sufficient specificity and adequately pleaded the specific intent needed for mail and wire fraud allegations. *Id.* at *3 – 4.

*Franulovic*, however, was decided only about ten days after *Twombly* and two years prior to *Iqbal*. It does not represent the current state of Ninth Circuit law regarding the adequacy of pleading RICO claims. Put another way, it is not enough for Digicel to simply allege that UPM's conduct was intended to intentionally defraud Digicel; it must "establish that

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

intent by showing the existence of a *plausible* fraudulent scheme." *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (emphasis added). In that case, the plaintiffs had entered into several sale-leaseback transactions with property owners who operated various franchises on the properties. Plaintiffs paid a combined total of $30.3 million for the properties that they claimed were actually worth only $11.1 million. The plaintiffs alleged that the defendants had previously conspired to pay inflated rents and had used sham appraisals to make it appear that the properties were more valuable than they actually were. Although the franchises were successful for a few years, all eventually fell behind on their rent payments and ultimately breached their leases with the plaintiffs. The plaintiffs filed suit alleging RICO violations, claiming that the defendants had used the mails and wires to intentionally defraud them.

Contrary to Digicel's view of the world, the Ninth Circuit did not simply accept the plaintiffs' allegations at face value, even those that alleged that the defendants had an intent to defraud. Rather, following the direction of *Twombly* and *Iqbal*, the court examined the complaint and found that it did not "tend to exclude the alternative explanation that the transactions were merely a group of business deals gone bad during a deep recession." *Eclectic Properties*, 751 F.2d at 1000. Moreover, the Ninth Circuit found that the complaint did not allege "facts sufficient to show the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension," which is necessary to demonstrate the existence of a specific intent to defraud. *Id.* (citation and quotation omitted). *See also Walchli v. Community Bank*, 2010 WL 2105163 at *1 (D. Or. May 25, 2010) (under the *Twombly/Iqbal* standard of review, plaintiffs' RICO allegations that defendants' oral representations to "entice" plaintiffs away from their current bank were not plausible because they did not demonstrate a "scheme to defraud," which "in the context of the mail fraud statute

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

typically signifies the deprivation of something of value by trick, deceit, chicane or overreaching") (citation and quotation omitted).

For all the reasons that Digicel's allegations of fraudulent misrepresentation and/or concealment are inadequate, its allegations of a specific intent to defraud, as required to show mail and wire fraud predicate offenses, also fail.[3] Digicel does not sufficiently allege that UPM's competing telecom network was accomplished through "trick, deceit, chicane or overreaching." The only "tricks" Digicel allege are (1) that Defendants concealed from Digicel their intent to use the SIM cards in a way that Digicel did not intend; and (2) that UPM's VOIP network misrepresents an international call as a local call. As already discussed, these allegations are insufficient. Digicel cannot bootstrap the specific intent to defraud required to plead mail and wire fraud predicate acts without a sound factual basis on which to ask the court to infer scienter. Simply repeating that Defendants intended to engage in "bypass fraud" or "to further their fraudulent scheme" is inadequate when Digicel had not first established that a fraudulent scheme existed at all. Digicel's real complaint, that it is not able to recoup its monopoly rate of 23¢ per minute that it charges to third-party carriers who offer calling plans to their cell phone customers that call Haiti, is a loss that Digicel suffered through outright business competition. In other words, Digicel is not "losing" business because Defendants' conduct is hijacking incoming international calls that otherwise should be charged at 23¢ per minute; instead, Digicel lost that business before the call was ever made as a result of UPM's competition with Digicel. That is not a RICO violation. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 482 – 83, 126 S. Ct. 1991, 2011, 164 L. Ed. 2d 720 (2006) (Breyer, J., concurring) ("RICO does not permit private action based solely upon this competitive type of harm, *i.e.*,

---

[3] Digicel's reliance on *In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1047 (D. Or. 2015) is also misplaced. In that case, this Court merely pointed out that when a complaint adequately pleads fraud with particularity, then it will also likely have set forth facts from which an inference of scienter can be drawn. *In re Galena*, 83 F. Supp. 3d at 1064-65. But that does not help Digicel here because, as already explained, its factual allegations of fraud are inadequately pleaded.

**Page 20 -  REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

harm a plaintiff suffers only because the defendant was able to attract customers through normal competitive methods, such as lower prices, better products, better methods of production, or better systems of distribution.").

> **B.**      **Similarly, Digicel's RICO Claims Based On Access Device Fraud Also Fail to Establish Defendants' Intent to Defraud.**

For the same reasons just discussed, Digicel's RICO claims based on purported violations of 18 U.S.C. § 1029 should also be dismissed. Under the same level of scrutiny mandated by *Twombly/Iqbal*, Digicel's allegations do not plausibly establish that UPM had an intent to defraud Digicel when it purchased the Digicel SIM cards and used them to offer a competing telecom service. *See, e.g., Janson v. Egypt Valley Country Club*, 2009 WL 6582418 at *9 (W.D. Mich. Nov. 30, 2009) (RICO predicate acts alleging violation of § 1029 did not pass muster under *Iqbal* because "from a common sense and experiential point of view," the allegations related solely to an internal business dispute regarding management); *cf. Reyes v. Zions First Nat. Bank*, 2012 WL 947139, at *6 (E.D. Pa. Mar. 21, 2012) (complaint alleging RICO violations with predicate acts of access fraud met *Iqbal* plausibility requirements because it alleged defendants' knowledge of "several blatant indications of fraud").

Digicel's reliance on *United States v. Lin*, 410 F.3d 1187, 1193 (10th Cir. 2005) is irrelevant. The issue in *Lin* was whether the trial court's upward departure from the United States Sentencing Guidelines for conviction under § 1029 was appropriate. The trial court imposed a sentence based on the maximum amounts the defendants could have charged on the illegally obtained credit cards (access devices) rather than on the amounts that were actually charged. The defendants argued that because their intent was never to reach the maximum credit limit of the cards, their punishment should be determined by the amount they actually charged. In rejecting that argument, the Tenth Circuit pointed out that punishment was based on engaging in the fraudulent scheme, not on the actual amount of damage that the defendants caused. In other words, the defendants were not even challenging the finding that they had had the specific

Page 21 -  **REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

intent to engage in a scheme to defraud under § 1029; instead they were arguing that the government needed to demonstrate their specific intent to charge a certain amount for purposes of imposing sentence, which the Tenth Circuit held was unnecessary. Here, however, it is fundamentally necessary for Digicel to demonstrate plausible specific facts that indicate Defendants' specific intent to engage in a scheme to defraud under § 1029. As already explained, Digicel fails to do so.

Digicel's citation to *United States v. Ashe*, 47 F.3d 770 (6th Cir. 1995), is also puzzling. *Ashe* involved "tumbling" cell phones, much like *United States v. Bailey*, 41 F.3d 413 (9th Cir. 1994), cited in Defendants' motion to dismiss. (Dkt. 20, 21, Mot. at 17.) UPM does not take issue with the fact that § 1029 could theoretically cover the use of the internet in cellular telecommunications and/or an unaltered SIM card. But Digicel's allegations regarding Defendants' conduct do not, under *Bailey*, give rise to the specific intent to defraud. "Tumbling" a cell phone means using a counterfeit code to trick a carrier into completing a call although the carrier is never reimbursed for doing so. *Bailey*, 41 F.3d at 418 (use of counterfeit code constitutes intent to defraud). But Digicel cannot deny, and in fact alleges in its Amended Complaint, that it was compensated for the calls that it connected on behalf of UPM because UPM legitimately bought and paid for those minutes on the Digicel SIM cards. Digicel was compensated for the use of its network through UPM's purchase of those cell minutes. This is not a case of "free riding." *Ashe*, 47 F.3d at 774.

## IV.    Digicel's Civil Conspiracy Claim Should Be Dismissed.

Because none of Digicel's allegations adequately establish that Defendants undertook any "unlawful overt acts" that would subject all of them to liability, the civil conspiracy claim must be dismissed. *Bonds v. Landers*, 279 Or. 169, 174, 566 P.2d 513 (1977) (quoting 15A *C.J.S.* 599 Conspiracy § 1(2).).

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## V.    Digicel's Conversion Claim Should Be Dismissed.

Because none of Digicel's allegations plausibly establish that Defendants "inten[ded] to exercise control over the chattel *inconsistently* with the plaintiff's rights," Digicel's conversion claim must be dismissed. *Naas v. Lucas*, 86 Or. App. 406, 409, 739 P.2d 1051, *rev. denied*, 304 Or. 680, 748 P.2d 142 (1987) (emphasis added).

## VI.    Digicel's Unjust Enrichment Claim Should Be Dismissed.

Digicel alleges that Defendants purchased Digicel SIM cards. Defendants then used those SIM cards to access Digicel's local network, as those SIM cards' programming permitted. Digicel received compensation for the use of its local network through Defendants' purchase of the SIM cards. Digicel has failed to sufficiently allege that any of Defendants' conduct was fraudulent or illegal. Therefore, its unjust enrichment claim must also be dismissed with prejudice.

## VII.    Digicel's Claim for Injunction Should Be Dismissed.

Finally, because Digicel has failed to specifically and plausibly allege that Defendants have engaged in fraudulent conduct, it cannot state the basis for injunctive relief. Digicel's claim for injunction should therefore be dismissed with prejudice.

## VIII.    Digicel Should Not Be Granted Additional Leave to Amend.

In determining whether to allow Digicel to file yet another amended complaint, the Court should consider the following factors:  (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004), *cert. denied sub nom Nunes v. Gonzales,* 543 U.S. 1188, 125 S. Ct. 1395, 161 L. Ed. 2d 192 (2005).  Futility alone is enough to deny a motion to amend. *Id.*  Finally, the Court should be mindful of the need

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

to flush out frivolous RICO claims early in order to mitigate the stigmatizing effect of the claims on Defendants. *Wagh,* 348 F.3d 1108-09.

A district court does not "abuse its discretion in denying a motion to amend a complaint ... when the movant presented no new facts but only 'new theories' and 'provided no satisfactory explanation for his failure to fully develop his contentions originally.'" *Vincent v. Trend W. Technical Corp.*, 828 F.2d 563, 570–71 (9th Cir. 1987) (quoting *Stein v. United Artists Corp.*, 691 F.2d 885 (9th Cir. 1982)). That is precisely what has happened here. Digicel did not present any new facts regarding how Defendants were aware of Digicel's "intended use" of its SIM cards and RLYH plan, nor any facts regarding how Defendants misrepresented to Digicel that they intended to use Digicel's products consistently with that use. Nor is it likely that Digicel can present any new facts on these issues. For example, although it claims that its "registration cards" must be filled out by SIM card purchasers, it has not alleged any new information based on the registration cards that correspond to the SIM cards Defendants purchased, such as the identity of the purchasers or whether they made any representations regarding the technology's "intended use." If Digicel could have alleged these facts, it surely would have, especially given that this Court specifically suggested that it do so.

Digicel also did not present any new facts regarding UPM's use of its own VOIP network to route calls to Haiti. Digicel continued to repeat its insistence that the calls "misrepresent themselves" as local calls, an implausible allegation given that the call does not "originate" in Haiti until it arrives via the Internet. Nothing Digicel can allege will alter the fact that, at the moment that call enters Haiti's network, it is a local call. Having had an opportunity to correct the flaws in the original complaint, Digicel has failed to do so. It should not be allowed a third bite at the apple.

**Page 24 -  REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Digicel's Amended Complaint with prejudice.

Dated: November 2, 2015.

TOMASI SALYER BAROWAY


By:/s/ Eleanor A. DuBay
 Kathryn P. Salyer, OSB #883017
 ksalyer@tsbnlaw.com
 Eleanor A. DuBay, OSB #073755
 edubay@tsbnlaw.com
 Telephone: (503) 894-9900

 Of Attorneys for Defendants

**Page 25 -  REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236