# E.1

## Protocole d'Accord pour lutter efficacement contre les perturbations dans le secteur des Télécommunications, plus particulièrement, au niveau du trafic utilisant les protocoles IP

LES SOUSSIGNES

Le CONATEL organisme autonome de droit public jouissant de la personnalité juridique représenté par son Directeur Général, Monsieur Jean Marie Guillaume, propriétaire, demeurant et domicilié à Port-au-Prince, identifié au numéro ………………………………., ci-après désigné comme le Régulateur, d'une part,

ET

La UNIGESTION HOLDING S.A, société anonyme haïtienne, opérant sous le nom commercial DIGICEL, identifiée et patentée au Nos. 000-405-526-7 et 1907051452, établie et organisée en conformité avec les lois en vigueur dans la République d'Haïti et dont le siège social est situé au no. 151, Angle Ave. Jean Paul II et Impasse Duverger, Turgeau, Port-au-Prince Haïti, représentée par son Président, M. Maarten Robert BOUTE, identifié par son permis de séjour no. PPS016082 ;

La Natcom S.A., identifiée au et patentée respectivement aux numeros : 000-566-544-9  1407070878 établie et organisée en conformité avec les lois en vigueur dans la République d'Haïti et dont le siège social est situé au no. Angle Pont Morin et Martin Luther King , Port-au-Prince Haïti, représentée par son Président Directeur Général , M. Hoang Van Ngoc, citoyen Vietnamien, identifié par son passeport numéro 002-921-329-0

D'autre part,

La Unigestion Holding  S.A, la Natcom SA , sont ci-après désignés comme Opérateurs de téléphonie ou Opérateurs,

PREAMBULE

Vu le décret en date du 27 septembre 1969 créant le Conseil National des Télécommunications ;

Vu le décret en date du 12 octobre 1977, donnant à l'Etat Haïtien le monopole des services de télécommunications ;

Vu le décret du 20 aout 1987 redéfinissant la mission et les attributions du CONATEL ;

Considérant que dans le cadre de son programme LEKOL POU TI MOUN YO, le Président de la République a mis à contribution le secteur des télécommunications en requérant notamment la collaboration des opérateurs;

Considérant que toute baisse du trafic due au détournement du trafic des routes  déclarées de terminaison d'appel vers d'autres routes clandestines est préjudiciable aux opérateurs, au financement du Fonds National d'Éducation et aux revenus fiscaux de l'Etat en général ;





Considérant qu'il est impératif pour le CONATEL, dans le cadre de ses attributions de régulation du trafic téléphonique en tant que représentant de l'Etat pour le secteur des télécommunications, de se doter de moyens techniques et légaux pour lutter contre les agissements frauduleux perpétrés dans ce secteur ;

Considérant le protocole d'accord sur la lutte contre les fraudes dans le secteur des télécommunications en date du 06 Mars 2013 ;

Considérant le protocole d'accord pour lutter efficacement contre les perturbations dans le secteur des Télécommunications, plus particulièrement, au niveau du trafic téléphonique international en date du 19 Novembre 2015 ;

Considérant que le CONATEL, les Opérateurs de téléphonie ont exprimé leur intérêt à collaborer en vue de mettre fin aux pratiques frauduleuses ;

Considérant que le CONATEL, les Opérateurs de téléphone ont constaté qu'il était impératif d'étendre cette lutte aux sociétés de services non licenciées en Haiti qui exploitent le réseau de l'opérateur pour proposer des services aux consommateurs, sans cotiser auprès de l'opérateur pour l'utilisation du réseau, et qui de surcroit peuvent concurrencer les services des opérateurs, comme notamment la téléphonie.

Considérant qu'Il appartient au régulateur d'appliquer les mêmes obligations à tous les opérateurs et fournisseurs de services téléphoniques, qu'ils soient traditionnels ou non, indépendamment de leur mode de fourniture, au nom du principe de la symétrie réglementaire. Les directives sur les meilleures pratiques couvrent tous les aspects de la fourniture des services, depuis l'autorisation jusqu'à la sécurité et à la protection en passant par l'accès, l'interconnexion et l'interopérabilité, le numérotage et l'identification des réseaux de nouvelle Génération ( NGN), la qualité de service, et la sensibilisation des consommateurs.

Considérant que Le CONATEL est autorisée à acquérir et installer tout dispositif de contrôle et d'anti perturbation pour mieux mesurer quantitativement et qualitativement le trafic des communications internationales entrant au Haiti. Elle est compétente pour combattre et sanctionner toute perturbation constatée, incluant les terminaisons illégales des appels internationaux.

Considérant que Le CONATEL se doit d'adopte des mesures pour le contrôle et la réglementation des passerelles internationales VoIP en Haiti.

En conséquence, les parties signataires ont arrêté et convenu ce qui suit :

**Définitions**

Dans le cadre du présent protocole, les expressions qui suivent auront la signification indiquée ci-dessous :

1.      Régulateur signifie le Conseil National des Télécommunications (CONATEL).

2.      Opérateurs signifie fournisseurs de services téléphoniques



3.      Trafic d'Interconnexion c'est le trafic circulant entre les réseaux respectifs de deux opérateurs distincts qui ont conclu à cet effet un contrat commercial dans lequel le prix et le type de trafic sont définis.

4.      PABX signifie Private Automatic Branch Exchange qui se traduit en français par autocommutateur privé, c'est-à-dire un central exploité par une entreprise pour son réseau interne de communication.

5.      Transporteur international ou carrier signifie les firmes spécialisées dans la transmission de communication, achetant et revendant en gros la terminaison de minutes de communication sur les réseaux de nombreux pays.

6.      NOC PC signifie Network Operation Center Personnel Computer.

7.      Billing plateform signifie équipement de commutation et d'informatique programmé pour décompter et facturer les minutes de communication enregistrées sur un central.

8.      Perturbation du trafic renvoie à toute activité consistant à envoyer du trafic en contournant les routes déclarées et autorisées de terminaison d'appel à partir d'une installation mise en place à cet effet <par exemple en terminant du trafic sur un réseau sans accord de terminaison ou transit>

9.      Circuit TDMA (Time Division Multiple Access) signifie circuit analogue de communication utilisant le protocole TDM

10.     CDR signifie Call Detail Record

11.     Switch signifie central de communication

12.      OTT désigne techniquement le transport de programmes audio et vidéo sur Internet. Over the Top reflète l'image que des protocoles supplémentaires à l'IP sont nécessaires pour l'acheminement du contenu et par conséquent ils se situent « au dessus » des protocoles traditionnels d'Internet (IP).

**Article 1 : Termes de référence du présent protocole d'accord**

Le CONATEL et les Opérateurs de téléphonie ont décidé de lutter d'un commun accord contre les perturbations constatées dans le secteur des télécommunications en général et surtout dans le domaine du trafic téléphonique en particulier ;

A travers ce protocole d'accord, les parties signataires s'engagent à lutter activement et en coordination contre les cas de perturbation ci-dessous définis.

**Article 2 : Classes de service**

Il convient de distinguer les différentes classes de services de téléphonie sur internet :

2.1 : Communication entre terminaux de données (PC to PC) : ces communications n'utilisent pas le service commuté, ne requièrent pas d'accord de terminaison et ne sont pas taxées.

2.2 : Communications entre terminal de données et terminal de téléphonie (PC to SmartPhone) : les communications n'utilisant pas le service commuté ou d'application dont l'utilisation et ou l'enregistrement ne sont pas associés à un numéro de téléphone ne requièrent pas d'accord de terminaison et ne sont pas taxées.

2.3 : Communication entre terminal de données et terminal de téléphonie (PC to SmartPhone) : les communications utilisant le service commuté et ou une application dont l'utilisation ou l'enregistrement sont associés à un numéro de téléphone  requièrent un accord de terminaison, les tarifs de terminaison seront fonction du type d'appel local ou international.

2.4 : Communications entre terminaux de téléphonie (Smartphone to Smartphone) : les communications utilisant les services commutés ou applications dont l'utilisation ou l'enregistrement sont associés à un numéro de téléphone requièrent un accord de terminaison. Lorsque ces communications sont générées et terminées sur le même réseau à partir d'une application quelconque l'opérateur de ce réseau a le droit d'appliquer un tarif spécifique à l'usage d'une telle application par KBytes/s .

**Article 3 : Engagement des Opérateurs**

Dans le cadre de ce protocole, les Opérateurs s'engagent sur les points suivants :

1)      De collaborer en vue de lutter contre toutes les pratiques perturbatrices du secteur définies à l'article 4 du présent protocole d'accord ;

2)      De prendre toutes les dispositions afin de détecter et démasquer les activités et installations clandestines et les dénoncer au Régulateur qui se chargera d'engager les poursuites légales  sur la base de la législation existante;

3)      De ne jamais s'adonner elle mêmes aux activités non-autorisées telles qu'établies par la législation et reprises au présent accord ;

4)      De s'assurer de la pertinence des informations fournies et de préciser la méthode utilisée afin d'éviter tout malentendu ;

5)      D'éviter tout comportement déloyal envers ses compétiteurs.

**Article 4 : Définition des activités perturbatrices et clandestines**

Sont considérées comme activités perturbatrices et clandestines:

1.      La terminaison d'appels téléphoniques sur des réseaux de télécommunications dûment licenciés par l'État :

    a.      en violation des termes de leur concession ;

    b.      en dehors des termes du contrat qui les lie avec leurs fournisseurs de service respectifs, y compris l'opérateur sur lequel les appels sont terminés ;




c.      sans accord commercial, validé par le Régulateur, signé avec les responsables du réseau sur lequel ces appels sont terminés ; ou

d.      par des installations clandestines, sans autorisation du CONATEL ;

2.      Le traitement d'appel international initié à partir du réseau d'un autre opérateur  sans accord de transit international entre les deux Opérateurs ;

3.      Une déclaration volontairement faussée de trafic ;

4.      La modification de l'identification du numéro appelant (manipulation au niveau de la signalisation) ;

5.      Toute violation des décrets et lois, et règlements en particulier sur les tarifs planchers et le plan de numérotation ;

6.       Toute commercialisation ou  usage de numéro non répertorié dans le plan de numérotation national  sauf expressément autorisé par le  CONATEL ;

7.      La commercialisation de services sans une autorisation valide ;

8.      Toute utilisation d'équipements non homologués par le CONATEL et/ou importés irrégulièrement en Haïti ; ou

9.      Toute action  perturbatrice visant à porter préjudice et à nuire au réseau d'un autre Opérateur.

**Article 5 : Procédures à suivre entre opérateurs licenciés en Haiti et le CONATEL en cas de soupçon d'activités préjudiciables à leur bon fonctionnement**

Dans le cadre de la lutte contre le les activités frauduleuses perturbatrices et clandestines les Parties s'engagent à établir les procédures ci-dessous établies. Les fournisseurs de service  IP sont  responsables de l'usage qui est  fait de leurs réseaux. L'usage de la téléphonie à travers le réseau internet est définit à l'article 2 et tous les opérateurs licenciés s'engagent à en respecter les modalités.

Article 5.1 : Le CONATEL prend toutes les dispositions nécessaires pour renforcer le monitoring et l'audit des données du trafic IP» dans le respect des lois en vigueur.

Article 5.1.1 : Le CONATEL installe des sondes « live » qui ont la particularité d'effectuer des lectures des signatures IP en temps réel.

Article 5.1.2 : Niveau de service et procédures d'escalade. Un document spécifique définissant les moyens dont disposeront les opérateurs pour s'assurer que ces sondes n'altèrent pas le bon écoulement du trafic et au cas contraire leur permettre de prendre les mesures nécessaires afin de ne pas pénaliser les abonnés  sera élaboré et signé séparément par les parties avant la mise en service de ces sondes.

Article 5.2 : Dans une phase 1 les adresses IP dont l'utilisation n'est pas conforme aux recommandations régulatoires seront bloquées par le CONATEL, en particulier celles associées à l'utilisation de SIM box ,



SIM servers et les applications associées à un numéro de téléphone telles que Viber – Tango –Nimbuzz – Fring et tout autre application similaire.

Article 5.3 : Dans une phase 2 et lorsque le système le permettra , le service des applications dont l'utilisation n'est pas conforme aux recommandations régulatoires pourra être détérioré au niveau de la qualité et même bloqué par le CONATEL. Cette mesure sera prise après analyse du trafic et d'un commun accord avec les deux opérateurs de réseau de téléphones mobiles.

Article 5.4 : Dans une phase 3 et lorsque le système adéquat sera établi pour permettre un degré de visibilité requis sur les données du trafic international entrant en Haiti , les parties décideront d'étendre éventuellement ces mesures à tout type de trafic précédemment listé ou non en vue de permettre notamment à l'Etat Haïtien de collecter le montant à prélever sur le tarif plancher facturé par appel international entrant et affecté au Fond National pour l' Education.

Article 5.5 : Les adresses IP dont l'utilisation est suspecte seront communiquées aux opérateurs en vue de procéder à des investigations, les opérateurs disposeront alors d'un délai maximum de 2 jours ouvrables pour investiguer sur la conformité du trafic transitant par le biais de ces adresses IP. Dans tous les cas les opérateurs et le Conatel sous l'égide de l'unité de la lutte contre la fraude se réuniront dans un délai n'excédant pas 5 jours ouvrables et statueront sur les suites à donner.

**Article 6 : Identification des perturbateurs**

Les noms des personnes ou institutions impliquées dans la perturbation des communications et réseaux seront inscrits sur une liste noire et des mesures réglementaires permettront aux Opérateurs de refuser la fourniture de services téléphoniques et ou internet aux « perturbateurs » clairement identifiés.

L'Etat se porte garant pour tout opérateur qui serait accusé de discrimination et poursuivi en justice pour avoir refusé la fourniture de services téléphoniques ou internet selon les conditions déterminées ci-dessus. En outre, si ce n'est pas encore le cas, les opérateurs peuvent indiquer dans les clauses des contrats qui les lient avec leurs clients ces conditions pour lesquels un contrat peut être terminé et dans quelles conditions le service est susceptible d'être refusé à un individu.

**Article 7 : Groupe de courrier électronique**

Un groupe de courrier électronique sera constitué avec tous les membres des différentes compagnies engagées et toute communication passera systématiquement par ce canal. Ainsi, une adresse IP sur lequel pèse un soupçon d'activités frauduleuses sera automatiquement diffusé à tous les opérateurs.

## La liste des contacts par ordre hiérarchique (*for Escalation process*)

|  | Digicel | Natcom |
|---|---|---|
| **Niveau 1** |  |  |
| Fonction | Revenue Assurance |  |
| Nom |  |  |
| No de Téléphone |  |  |
| E-mail |  |  |
| **Niveau 2** |  |  |
| Fonction | RA Manager |  |
| Nom |  |  |
| No de Téléphone |  |  |
| E-mail |  |  |
| **Niveau 3** |  |  |
| Fonction | Head of  Regulatory |  |
| Nom |  |  |
| No de Téléphone |  |  |
| E-mail |  |  |
| **Niveau 4** |  |  |
| Fonction | CEO / Chairman | CEO |
| Nom |  |  |
| No de Téléphone |  |  |
| E-mail |  |  |



**Article 8 : Identification des opérateurs d'installations clandestines**

L'État Haïtien ci-après représenté par le Conatel se porte garant pour tout opérateur qui serait accusé de discrimination et poursuivi en justice pour avoir refusé la fourniture de services téléphoniques selon les conditions déterminées ci-dessus. En outre, si ce n'est pas encore le cas, les Opérateurs peuvent indiquer dans les clauses des contrats qui les lient avec leurs clients ces conditions pour lesquels un contrat peut être résilié et dans quelles conditions le service est susceptible d'être refusé à un individu.

À cette fin, une campagne de sensibilisation, par les autorités concernées,  devra être lancée dès la mise en œuvre de la nouvelle mesure relative au trafic international entrant.

**Article 9 : Règlements des différends**

Les parties feront tous les efforts possibles pour résoudre à l'amiable toute dispute découlant du présent Accord quant à sa validité, son interprétation, son exécution ou sa résiliation, par le biais de discussions entre les responsables concernés.  Ces discussions commenceront dans les cinq (5) jours ouvrables qui suivront la demande d'une telle discussion par l'une ou l'autre des parties.

**Article 10 : Notification**

Toute notification ou autre communication devant être donnée à une quelconque des Parties en vertu du présent Protocole d'Accord  devra être formulée par écrit en langue française et pourra être donnée par transmission par facsimilé, par courrier électronique, par courrier recommandé, par un service de messagerie commerciale reconnu, ou par livraison de la main à la main à la Partie en question, au siège social de chaque compagnie, ou à toute autre adresse que la Partie en question pourra désigner par avis préalable et écrit.

**Article 11: Dispositions Générales**

Le présent Accord entrera en vigueur le jour de sa signature par les Parties, et ce pour un terme de Cinq (5) années entières et consécutives sous réserve d'évolution future  et de tout 'amendement nécessaire pour la poursuite de l'exécution  du  protocole et le maintien des principes y établis. Dans ce cas, la partie diligente en promptement notifiera l'autre ainsi que le Conatel afin d'entamer le processus de révision du dit accord. Cependant il reste et demeure entendu que les modifications envisagées ne pourront affecter l'objectif premier du protocole ainsi que les principes fondamentaux le constituant.

Le présent Protocole d'Accord est soumis à la législation haïtienne. En attendant la publication d'une nouvelle loi régissant de manière plus détaillée les activités clandestines et perturbatrices pour le secteur des Télécommunications, le dit accord fera office de loi entre les parties signataires conformément aux dispositions du Code Civil.

Fait en toute bonne foi.... Port-au-Prince, le.........................2015

Pour Conatel

Jean Marie Guillaume

Directeur General

Pour Natcom S. A.

Hoang Van Ngoc

Directeur General

Unigestion Holding S.A.
Digicel
Siège Social: 151, Angle Ave, Jean Paul II &
Impasse Duverger, Turgeau,
Port-au-Prince, Haïti. PO Box 15316
Tél.: (509) 3711-1000
www.digicelhaiti.com

Pour Unigestion Holding S. A.

Maarten Boute

Président

**E.2**

**Memorandum of Understanding for fighting effectively against the disruptions in the telecommunications sector, especially at the level of traffic using IP protocols**

THE UNDERSIGNED

CONATEL, independent body under public law, with legal status, represented by its Managing Director, Jean Marie Guillaume, owner, residing and domiciled in Port-au-Prince, identified under number ………………………, hereinafter referred to as the REGULATOR, on the one hand,

AND

UNIGESTION HOLDING S.A., Haitian public limited company, operating under the commercial name DIGICEL, identified and patented under No. 000-405-526-7 and No. 1907051452, established and organized in compliance with the laws in force in the Republic of Haiti and having its registered office at No. 151, at the corner of Ave. Jean Paul II and Impasse Duverger, Turgeau, Port-au-Prince, Haiti, represented by its President, Maarten Robert BOUTE, identified by his residence permit, No. PPS016082 **[sic]**;

National S.A., identified and patented under No. 000-566-544-9 and No. 1407070878 respectively, established and organized in compliance with the laws in force in the Republic of Haiti and having its registered office at the corner of Pont Morin and Martin Luther King, Port-au-Prince, Haiti, represented by its CEO, Hoang Van Ngoc, citizen of Vietnam, identified by his passport, No. 002-921-329-0.

On the other hand,

Unigestion Holding S.A. and Natcom S.A. are hereinafter referred to as telephone operators or operators.

PREAMBLE

Having regard to the Ordinance of September 27, 1969, creating the National Telecommunications Council;

Having regard to the Ordinance of October 12, 1977, providing the State of Haiti with the monopoly on telecommunications services;

Having regard to the Ordinance of August 20, 1987, redefining the remit and assignments of CONATEL;

Whereas as part of his program LEKOL POU TI MOUN YO, the President of the Republic has involved the telecommunications sector by requesting in particular the cooperation of operators;

Whereas any decline in traffic due to diversion of traffic on routes dedicated to call termination to other clandestine routes is detrimental to operators, the funding of the National Education Fund and to the tax revenue of the State in general;

[There are 3 illegible signatures]

-------------------------------------------------------------------------------------
**MASTER TRANSLATING SERVICES, INC.**
10651 N. KENDALL DRIVE, SUITE 220
MIAMI, FLORIDA 33176
(305) 279-2484
www.MasterTranslating.com

Whereas it is imperative for CONATEL, as part of its assignment to regulate telephone traffic as State representative for the telecommunications sector, to develop technical and legal means to fight against fraudulent activities perpetrated within this sector;

Considering the memorandum of understanding on the fight against fraud in the telecommunications sector of March 6, 2013;

Considering the memorandum of understanding to fight effectively against disruption in the telecommunications sector, especially at the level of international telephone traffic, of November 19, 2015;

Whereas CONATEL and the telephone operators have expressed their interest in collaborating with a view to putting an end to fraudulent practices;

Whereas CONATEL and the telephone operators have declared it imperative to extend this fight to the unlicensed service companies in Haiti that exploit the operator's network to provide services to consumers, without paying the operator to use the network, and which, moreover, can compete with the services of operators, especially in terms of telephony.

Whereas it is up to the regulator to apply the same obligations to all operators and telephone service providers, whether traditional or not, regardless of their method of supply, on the principle of regulatory symmetry. The guidelines on best practices cover all aspects of the provision of services, from authorization to security and protection all the way to access, interconnection and interoperability, numbering and identification of new generation networks (NGN), service quality, and consumer awareness.

Whereas CONATEL is authorized to acquire and install any control and anti-disruption and monitoring device to better quantitatively and qualitatively measure the traffic of international communications entering Haiti. It is competent to combat and punish any disruption found, including the illegal termination of international calls.

Whereas CONATEL has to adopt measures to monitor and regulate VoIP international gateways in Haiti.

As a result, the signatory parties have decreed and agreed as follows:

Definitions

Within the context of this memorandum, the following terms shall be defined as indicated below:

1. Regulator means the National Telecommunications Council (CONATEL).

2. Operators means telephone service providers.

[There are 3 illegible signatures]

--------------------------------------------------------------------------------------

**MASTER TRANSLATING SERVICES, INC.**

10651 N. KENDALL DRIVE, SUITE 220
MIAMI, FLORIDA 33176
(305) 279-2484
www.MasterTranslating.com

3. Interconnection traffic is the traffic flowing between the respective networks of two different operators who have concluded for this purpose a commercial contract in which the price and the type of traffic are defined.

4. PABX stands for Private Automatic Branch Exchange, i.e. a center used by a company for its internal communications network.

5. International carrier or carrier means firms specializing in the transmission of communication, wholesale buying and selling termination of minutes of communication over networks in many countries.

6. NOC PC stands for Network Operation Center Personnel Computer.

7. Billing platform means programmed switching and computer equipment to count and bill minutes of communication recorded on a central terminal.

8. Disruption of traffic refers to any activity involving the sending of traffic bypassing declared and authorized call termination routes from an installation set up for this purpose
<E.g. by terminating traffic on a network without agreement of termination or transit>

9. TDMA (Time Division Multiple Access) circuit means an analog circuit communication using the TDM protocol

10. CDR stands for Call Detail Record

11. Switch stands for communication center

12. OTT technically refers to the transport of audio and video programs over the Internet. Over the Top reflects the image that additional IP protocols are needed for the routing of content and therefore they are located "above" traditional Internet protocols (IP).

**Article 1: Terms of reference for this Memorandum of Understanding**

CONATEL and the telephone operators have decided to join forces in the fight against the disruptions observed in the telecommunications sector in general and especially in the domain of telephone traffic in particular;

Through this Memorandum of Understanding, the signatory parties undertake to fight actively and in a coordinated manner against the cases of disruption defined above.

**Article 2: Classes of service**

A distinction should be made between different classes of internet telephony services:

2.1: Communication between data terminals (PC to PC): these communications do not use the dial-up service, do not require a termination agreement and are not taxed.

[There are 3 illegible signatures]

--------------------------------------------------------------------------------------
**MASTER TRANSLATING SERVICES, INC.**
10651 N. KENDALL DRIVE, SUITE 220
MIAMI, FLORIDA 33176
(305) 279-2484
www.MasterTranslating.com

2.2: Communications between a data terminal and a telephone terminal (PC to Smartphone): communications not using the dial-up service or application whose use and/or registration are not associated with a telephone number do not require a termination agreement and are not taxed.

2.3: Communication between a data terminal and a telephone terminal (PC to Smartphone): communications using the dial-up service or application whose use and/or registration are associated with a telephone number require a termination agreement, where the termination prices will depend on the type of local or international call.

2.4: Communications between telephone terminals (Smartphone to Smartphone): communications using dial-up services or applications whose use or registration are associated with a telephone number require a termination agreement. When these communications are generated and terminated on the same network from any application, the operator of this network has the right to apply a specific price for the use of such an application through Kbytes/s.

**Article 3: Commitment of Operators**

Within the context of this Memorandum, the operators are committed to the following points:

1) To collaborate with a view to fighting against any disruptive practices within the sector as defined in Article 4 of this Memorandum of Understanding;

2) To take all measures to detect and uncover clandestine activities and installations and denounce them to the Regulator who will engage in legal proceedings on the basis of existing legislation;

3) Never themselves to indulge in activities deemed unauthorized as established by law and listed in this agreement;

4) To ensure the relevance of the information provided and to specify the method used to avoid any misunderstanding;

5) To avoid any unfair behavior towards its competitors.

**Article 4: Definition of disruptive and clandestine activities**

The following are considered disruptive and illegal activities:

1. The termination of telephone calls over telecommunications networks duly licensed by the State:

   a. in violation of the terms of their license;

   b. outside the terms of the contract binding them with their respective service providers, including the operator through which calls are terminated;

[There are 3 illegible signatures]

--------------------------------------------------------------------------------------

**MASTER TRANSLATING SERVICES, INC.**
10651 N. KENDALL DRIVE, SUITE 220
MIAMI, FLORIDA 33176
(305) 279-2484
www.MasterTranslating.com

c. without a commercial agreement, approved by the Regulator, signed with managers of the network on which these calls are terminated; or

d. by clandestine installations, without authorization from CONATEL;

2. The processing of an international call initiated from the network of another operator without an international transit agreement between the two operators;

3. A deliberately distorted traffic report;

4. The amendment of the identification of the number calling (manipulation at the signaling level);

5. Any violation of ordinances and laws, and regulations particularly on floor prices and the numbering plan;

6. Any marketing or use of an unlisted number in the national numbering plan unless expressly authorized by CONATEL;

7. The marketing of services without a valid license;

8. Any use of equipment not certified by CONATEL and/or imported illegally into Haiti; or

9. Any disruptive action aimed at harming and damaging the network of another operator.

**Article 5: Procedures to be followed between operators licensed in Haiti and CONATEL in case of suspicion of activities prejudicial to proper operation**

As part of the fight against disruptive and clandestine fraudulent activities, the Parties undertake to establish the procedures set out below. The IP service providers are responsible for the use made of their networks. The use of the telephone through the Internet network is defined in Article 2 and all licensed operators undertake to respect its terms.

Article 5.1: CONATEL is taking all necessary measures to strengthen the monitoring and auditing of IP traffic data in compliance with laws in force.

Article 5.1.1: CONATEL is installing "live" probes that have the distinction of taking readings of IP signatures in real time.

Article 5.1.2: Level of service and escalation procedures. A specific document defining the means available to operators to ensure that these probes do not impair the proper flow of traffic and to otherwise enable them to take the necessary measures in order not to penalize subscribers will be developed and signed separately by the parties before the commissioning of these probes.

Article 5.2: In a phase 1, the IP addresses whose use does not comply with regulatory recommendations will be blocked by CONATEL, particularly those associated with the use of SIM-box, SIM servers and applications associated with a telephone number such as Viber – Tango –Nimbuzz – Fring and any other similar application.

[There are 3 illegible signatures]

-----------------------------------------------------------------------------------------
**MASTER TRANSLATING SERVICES, INC.**
10651 N. KENDALL DRIVE, SUITE 220
MIAMI, FLORIDA 33176
(305) 279-2484
www.MasterTranslating.com

Article 5.3: In a phase 2, and when the system will allow it, the service of applications whose use does not comply with regulatory recommendations may deteriorate in quality and even be blocked by CONATEL. This measure will be taken after analyzing traffic and by common agreement with both mobile telephone network operators.

Article 5.4: In a phase 3, and when the appropriate system will be established to allow a degree of visibility required for data on incoming international traffic in Haiti, the parties will decide to eventually expand these measures to any type of traffic listed above or otherwise, to allow in particular the State of Haiti to collect the amount to be taken from the floor price billed per incoming international call and assigned to the National Fund for Education.

Article 5.5: The IP addresses whose use is suspect will be communicated to operators with a view to undertaking investigations. Operators will then have a maximum of 2 working days to investigate the compliance of traffic passing through these IP addresses. In all cases the operators and CONATEL will meet within a period not exceeding 5 working days under the aegis of the unity of the fight against fraud and will decide on further action.

**Article 6: Identification of disrupters**

The names of persons or institutions involved in the disruption of communications and networks will be put on a blacklist and regulatory measures will allow operators to refuse the provision of telephone services and/or internet to clearly identified "disrupters".

The State shall act as guarantor for every operator that will be accused of discrimination and sued for refusing to provide telephone or internet services according to the conditions determined above. Also, if this is not yet the case, operators may indicate in the terms of contracts binding them to their customers the conditions for which a contract can be terminated and the conditions under which the service may be denied to an individual.

**Article 7: Email Group**

An email group will be formed comprising all the members of the different companies involved and any communication will pass systematically through this channel. Thus, an IP address suspected to be linked to fraudulent activity will be automatically distributed to all operators.

[There are 3 illegible signatures]

-----------------------------------------------------------------------------------------

**MASTER TRANSLATING SERVICES, INC.**
10651 N. KENDALL DRIVE, SUITE 220
MIAMI, FLORIDA 33176
(305) 279-2484
www.MasterTranslating.com

The list of contacts according to hierarchy (for Escalation process)

|  | Digicel | Natcom |
|---|---|---|
| **Level 1** | | |
| Position | Revenue Assurance | |
| Name | | |
| Telephone Number | | |
| Email | | |
| **Level 2** | | |
| Position | RA Manager | |
| Name | | |
| Telephone Number | | |
| Email | | |
| **Level 3** | | |
| Position | Head of Regulatory | |
| Name | | |
| Telephone Number | | |
| Email | | |
| **Level 4** | | |
| Position | CEO/Chairman | CEO |
| Name | | |
| Telephone Number | | |
| Email | | |

[There are 3 illegible signatures]

---------------------------------------------------------------------------------------

**MASTER TRANSLATING SERVICES, INC.**

10651 N. KENDALL DRIVE, SUITE 220
MIAMI, FLORIDA 33176
(305) 279-2484
www.MasterTranslating.com

**Article 8: Identification of operators of clandestine installations**

The State of Haiti, hereinafter represented by CONATEL, shall act as guarantor for any operator that will be accused of discrimination and sued for refusing to provide telephone services according to the conditions determined above. Also, if this is not yet the case, operators may indicate in the terms of contracts binding them to their customers the conditions for which a contract can be terminated and the conditions under which the service may be denied to an individual.

To this end, an awareness campaign should be launched by the relevant authorities following the implementation of the new measure relating to incoming international traffic.

**Article 9: Settlement of Disputes**

The parties will make every effort possible to resolve amicably any dispute arising under this Agreement in relation to its validity, interpretation, performance or termination, through discussions between the managers concerned. These discussions will begin within five (5) working days following the request for such a discussion by one or other of the parties.

**Article 10: Notification**

Any notification or other communication to be given to any of the Parties under this Memorandum of Understanding shall be written in French and may be transmitted by fax, by email, by registered mail, by a recognized commercial messaging service or delivery by hand to the relevant Party at each company's registered office, or to any other address that the relevant Party may designate in advance in writing.

**Article 11: General Provisions**

This Agreement shall enter into effect on the day it is signed by the Parties, for a term of five (5) full consecutive years subject to future developments and any amendment required for the continued implementation of the memorandum and for maintaining the principles established thereto. In this case, the first party to make a request shall promptly notify the other party as well as CONATEL in order to begin the process of revising said agreement. However, it remains and is understood that the anticipated amendments will not affect the main purpose of the memorandum and the fundamental principles constituting it.

This Memorandum of Agreement is subject to Haitian law. Pending the publication of a new law regulating in more detail the clandestine and disruptive activities in the telecommunications sector, said agreement will serve as law between the signatory parties in accordance with the provisions of the Civil Code.

[There are 3 illegible signatures]

-----------------------------------------------------------------------------------------

**MASTER TRANSLATING SERVICES, INC.**

10651 N. KENDALL DRIVE, SUITE 220
MIAMI, FLORIDA 33176
(305) 279-2484
www.MasterTranslating.com

Made in good faith…Port-au-Prince, on ……………………………2015

For CONATEL

Jean Marie Guillaume **[Signature]**

Managing Director

For Natcom S. A. **[Stamp and Signature]**

Hoang Van Ngoc

Managing Director

For Unigestion Holding S. A.

Maarten Boute

President

**[Signature and Stamp:**
**Unigestion Holding S. A.**
**Digicel**
**Registered Office: 151, corner at Ave. Jean Paul II &**
**Impasse Duverger, Turgeau**
**Port-au-Prince, Haiti, PO Box 15516**
**Tel.: (509) 3711-1000**
**www.digicel.com]**

[There are 3 illegible signatures]

**STATE OF FLORIDA** )

                   :

**COUNTY OF MIAMI-DADE)**

BEFORE ME, A NOTARY PUBLIC IN AND FOR THE STATE OF FLORIDA AT LARGE, PERSONALLY APPEARS CHRISTINA GREEN, ON BEHALF OF MASTER TRANSLATING SERVICES, INC., WHO, AFTER BEING DULY SWORN, DEPOSES AND SAYS THAT SHE IS FULLY VERSED IN THE FRENCH AND ENGLISH LANGUAGES, THAT SHE IS A TRANSLATOR CERTIFIED BY THE AMERICAN TRANSLATORS ASSOCIATION AND THAT THIS IS A TRUE AND CORRECT TRANSLATION OF THE ATTACHED DOCUMENT CONSISTING OF 9 PAGES, AND THAT THIS IS THE LAST OF THE ATTACHED.

_____

CHRISTINA GREEN

SWORN TO AND SUBSCRIBED THIS 5th       DAY OF
FEBRUARY       A.D., 2016.

_____

NOTARY PUBLIC, STATE OF FLORIDA AT LARGE.

MY COMMISSION EXPIRES:



MARTHA CORDERO-ESQUIVEL
MY COMMISSION # FF 002838
EXPIRES: May 19, 2017
Bonded Thru Notary Public Underwriters

The utmost care has been taken to ensure the accuracy of all translations. Master Translating Services, Inc. and its employees shall not be liable for any damages due to negligence or error in typing or translation.

-------------------------------------------------------------------------------

**MASTER TRANSLATING SERVICES, INC.**
10651 N. KENDALL DRIVE, SUITE 220
MIAMI, FLORIDA 33176
(305) 279-2484
www.MasterTranslating.com