**Kathryn P. Salyer**, OSB #883017
ksalyer@tsbnwlaw.com
Tomasi Salyer Baroway
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage** (*Pro Hac Vice*)
chrissavage@dwt.com
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A.**, a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>Plaintiff,<br><br>v.<br><br>**UPM TECHNOLOGY, INC.** d/b/a **UPM TELECOM, INC.**, et al<br><br>Defendants. | Case No. 3:15-CV-00185-SI<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF UNIGESTION HOLDING S.A.'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** |

Defendants UPM Technology, Inc. d/b/a UPM Telecom, Inc. and UPM Marketing, Inc., an Oregon corporation ("UPM"); UPM Telecom, Inc., an Oregon a/b/n; UPM Marketing, Inc., an Oregon a/b/n; Benjamin Sanchez a/k/a Benjamin Sanchez Murillo, an Oregon resident; Baltazar Ruiz, an Oregon resident; and Tyler Allen, an Oregon resident

Page 1 of 20 - DEFENDANTS' RESPONSE TO PLAINTIFF UNIGESTION HOLDING S.A.'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS
UPM-L1\00222261.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

(collectively "Defendants") respond to Plaintiff Unigestion Holding, Inc.'s ("Plaintiff")[1] Motion to Dismiss Defendants' Counterclaims ("Motion") as follows:

## Introduction and Summary

Plaintiff's Motion to Dismiss fails to include a certification of conferral pursuant to LR 7-1 and may be denied on that basis alone. LR 7.1(a)(3). The failure to certify was not the result of oversight; Plaintiff filed its Motion to Dismiss without so much as attempting to confer with Defendants about a single issue the motion raises. Had Plaintiff made such effort, some of the issues could easily have been resolved between counsel without this court's assistance.

More substantively, Plaintiff's Motion presents a complete about face of the sworn allegations in its verified Complaint and verified Amended Complaint, and the briefing and arguments made in its responses to Defendants' Motions to Dismiss. Plaintiff now contends that its use of phrases like "all United States traffic to Digicel (Haiti) is routed through Digicel's switching centers in Miami and New York" (Answer and Counterclaims (Doc # 73) at ¶ 18) and "Digicel's International Gateway" (*id.* at ¶ 23) do not give rise to a plausible claim that Plaintiff operates or owns equipment in the United States. And, despite Plaintiff's oft-repeated arguments to this Court that it was deceived by the "technological misrepresentations" made by UPM at the time the Roam Like You are Home ("RLYH") calls were delivered to the switches in Miami and New York, this Court is now informed that for RLYH calls, UPM never interfaces with Plaintiff at all, but instead with third party carriers (such as T-Mobile or AT&T) who then apparently interface with Digicel-USA, who then interfaces with Digicel-Haiti. At this stage in the proceeding, neither this court nor the Defendants should have to choose between whether the two individuals who separately swore to the truth of the allegations of the verified Complaint and verified Amended Complaint were incorrect, or whether these sworn statements should be

---

[1]    To avoid any confusion about which specific entity is being referred to, Defendants refer to the Plaintiff in this case simply as "Plaintiff" rather than by some short-form name like "Digicel" or "Digicel-Haiti." When some other entity is being referred to, a different designation is used for that entity.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

discounted in favor of the unsworn assertions in Plaintiff's Motion to Dismiss. Simply put, the allegations of Plaintiff's pleadings, taken together with the allegations in the Counterclaims, establish that each of the Counterclaims alleges plausible claims for relief.

## I.    Factual Background.

The allegations of UPM's Counterclaims include the following: UPM is a competitor of Plaintiff for telecommunications traffic and a reseller of airtime which Plaintiff offers to the market on unrestricted terms. Between April and November 2014, UPM provided calling to wholesale providers, and would have continued to do so but for the conduct described below. Answer and Counterclaims (Doc # 73) at ¶¶ 221-223. UPM purchased approximately 10,705 Digicel SIM Cards and paid $42,836.00 for those cards ($4 per card). *Id.* at ¶ 262. The Digicel SIM Cards were shipped to Oregon where Defendants would purchase minutes in the form of credits. UPM paid an additional $111,209.00 for these credits. *Id.* In exchange for the payment, Plaintiff would load "minutes" on the Digicel SIM Cards. There were no express or agreed restrictions on the use of the minutes or on the use of the Digicel SIM Cards. *Id.* at ¶ 217. Plaintiff initially "authorized" the Digicel SIM Cards and allowed the cards to access its network. After Plaintiff authorized the Digicel SIM Cards purchased by UPM, UPM would purchase minutes which were associated with the use of the cards. Once UPM attempted to access those minutes to deliver calls, however Plaintiff would "de-authorize" the Digicel SIM Cards, whether or not the cards had ever been used to deliver calls to Haiti. Once Plaintiff blocked the SIM Cards they could not be used for any purpose. Prior to filing this action, Plaintiff never contacted any of the Defendants nor has Plaintiff ever offered to account for or return the unused value of the minutes loaded on the Digicel SIM Cards purchased by UPM.

Plaintiff has provided no "value" to UPM in exchange for the unused minutes and unused Digicel SIM Cards, and Plaintiff retains the funds it received in connection with the purchase of the cards and minutes.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## II.    Rule 8 Requires Only Sufficient Factual Content to Allow Court to Draw Reasonable Conclusion as to Plaintiff's Liability.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when it contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

Plaintiff argues that this court should examine Defendant UPM's allegations under the same standard as the allegations of Plaintiff's Complaint and Amended Complaint, both of which alleged claims for fraud and violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 – 1968 ("RICO"), that were subject to the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure ("FRCP"). But Rule 9 is not applicable to any of Defendant UPM's Counterclaims and the factual pleading standard set by the applicable rule, Rule 8(a), is significantly lower ("short plain statement of the claim"). Indeed, the Supreme Court has repeatedly reaffirmed that Rule 8(a) does not require that a plaintiff plead specific facts in order to survive a motion to dismiss, but rather need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).

## III.    The Individual Defendants Do Not Allege Counterclaims.

Plaintiff's Motion begins with a challenge to the standing of the individuals named as defendants ("Individual Defendants") to assert counterclaims, and claims "confusion" arising from its focus on a single misplaced apostrophe while ignoring the specific allegations of each counterclaim and the Prayer. Indeed, there are six counterclaims. The beginning paragraph of each counterclaim alleges that UPM (previously defined as the corporation and not the Individual Defendants)" reasserts prior factual allegations. Answer and Counterclaims (Doc # 73) at ¶ 244, 247, 250, 253, 258, 267, 270, and 275. Each counterclaim further alleges that the injury and/or damages that were incurred were to UPM. *Id.* at ¶¶ 246, 249, 252, 257, 266, 269,

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

279, 280, 286, 287. <u>Nowhere in any of the specific allegations of any of the counterclaims do the Individual Defendants purport to allege that they were asserting a claim, much less that they were damaged</u> (which Plaintiff's Motion concedes). Motion to Dismiss (Doc # 80) at page 5.

Plaintiff also argues that it is confused because "Defendant asserts separate prayers for relief, one on behalf of 'Defendants' and one on behalf of 'UPM'." This assertion reveals just how little attention Plaintiff paid to the pleading. The first part of the prayer for relief prays that the court "<u>enter an order as to Digicel-Haiti's claims against Defendants</u>" and the second part of the prayer for relief prays that the court "<u>enter an order, as to UPM's Counterclaims against Digicel-Haiti</u>."

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray that the Court enter an order, <u>as to Digicel-Haiti's claims against Defendants</u>:

1.    Dismissing Digicel-Haiti's Amended Complaint, and each and every count, with prejudice;
2.    Providing that Digicel-Haiti take nothing on its claims, and entering judgment on all of Digicel-Haiti's claims in favor of Defendants;
3.    Awarding Defendants their costs in defending this action, including reasonable attorneys' fees; and
4.    Awarding Defendants such other and further relief as justice may require.

WHEREFORE, UPM further prays that the Court enter an order, <u>as to UPM's Counterclaims against Digicel-Haiti</u>:

5.    Awarding monetary judgment against Digicel-Haiti for damages UPM incurred as a result of Digicel-Haiti's violation of the Communications Act of 1934, as amended, in an amount to be proven at trial;
6.    Awarding UPM damages on its contractual and quasi-contractual claims against Digicel-Haiti, in an amount to be proved at trial;
7.    Awarding UPM damages on its tort claims against Digicel-Haiti in an amount to be proved at trial;
8.    Awarding Defendant UPM punitive damages in an amount to be proved at trial;
9.    Awarding UPM its costs in defending this action, including reasonable attorneys' fees; and
10.    Awarding UPM such and other and further relief as justice may require. (Emphasis added) (Answer and Counterclaims (Doc # 73), at page 42).

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Thus, there is no need to dismiss any counterclaims brought on behalf of any Individual Defendant, or to strike any prayer for relief associated with such nonexistent counterclaims.

### IV.  Plaintiff's Own Pleadings and Representations to this Court Establish that it is a Common Carrier Subject to the Communications Act.

The sole ground that Plaintiff advances for dismissing UPM's counterclaims arising under the Communications Act of 1934, as amended (the "Communications Act") is that UPM has not adequately pled facts showing that Plaintiff owns equipment in, or operates in, the United States. Motion to Dismiss at pages 6-11. Instead, Plaintiff now claims that it is a "foreign carrier," (*id.* at pages 7-8,) while a third-party entity not a party to this case, known as "Digicel USA," is actually the United States international carrier involved in this controversy. *Id.* at pages 7, 9. As a result, according to Plaintiff, UPM's Communications-Act-based claims should be dismissed.

As shown below, Plaintiff is wrong. Its own allegations in the Amended Complaint clearly and unambiguously indicate that Plaintiff itself indeed owns telecommunications equipment in, and provides international telecommunications services in, the United States. Plaintiff's current effort to run away from the plain meaning of its own sworn allegations (*see* Amended Complaint (Doc # 34) at page 35) is troubling in many ways, but those allegations are clearly sufficient to sustain UPM's counterclaims based upon them as against the Motion to Dismiss.

Plaintiff claims that it made no "representations regarding outright ownership of US equipment or operations." *Id.* at page 8. In fact, Plaintiff's factual allegations clearly show that Plaintiff itself owns equipment in, and operates in, the United States. In evaluating the sufficiency of UPM's counterclaims, UPM's assertions – which in this case are based on Plaintiff's assertions – must be taken as true. UPM lays out below Plaintiff's specific allegations, to which UPM referred and on which it relied for its counterclaims, demonstrating these points.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

UPM specifically alleged that: "based on [Plaintiff's] representations to this Court," Plaintiff itself "owns and operates two 'Gateway' switches, one in Miami, Florida, and one in New York, New York. By means of these devices, [Plaintiff] offers to carry telephone calls from the United States to Haiti, using either [Plaintiff's] own facilities, the facilities of affiliates acting in concert with [Plaintiff], or the facilities of third-party carriers." Answer and Counterclaims (Doc # 73) at ¶ 209. UPM did not rehash the specific allegations that established those points because they are already before this Court in the Amended Complaint. To eliminate any doubt about the sufficiency of UPM's Communications-Act-based counterclaims, however, UPM does so here.

At the outset, note that the only "Digicel" entity identified or discussed in any way in the Amended Complaint is Plaintiff Unigestion Holding, S.A., d/b/a Digicel-Haiti. *See* Amended Complaint (Doc # 34) at page 1 (unnumbered introductory paragraph). The very first sentence of that document gives "Digicel" as the short-form name for the Plaintiff. References in the Amended Complaint to "Digicel," therefore, can only be referring to the Plaintiff, not to some other entity that might bear the "Digicel" name. It follows that assertions in that document about "Digicel" are assertions about the Plaintiff, not about some third party.

Those assertions clearly establish that the Plaintiff in this case operates in the United States. First, in paragraph 1 of the Amended Complaint, Plaintiff states that it "operates throughout the Caribbean and *several other regions.*" Amended Complaint (Doc # 34) at ¶ 1. The Motion to Dismiss, in contrast, states that "Digicel Haiti" – that is, the Plaintiff – "runs operations strictly within Haiti." (Motion to Dismiss at page 7). There is no way to square those two statements. If – as stated in the Amended Complaint – Plaintiff "operates throughout the Caribbean and several other regions," then obviously its operations are not limited to Haiti – "strictly" or otherwise. So either the Amended Complaint is false, or the assertion in the Motion to Dismiss is false. The Amended Complaint is verified (*see* Amended Complaint at page 35); the Motion to Dismiss is not. The Court should therefore disregard the *post hoc* efforts to change

Page 7 of 20 - DEFENDANTS' RESPONSE TO PLAINTIFF UNIGESTION HOLDING S.A.'S
MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS
UPM-L1\00222261.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

the facts on which Plaintiff has chosen to rely to assert its claims against UPM.

Second, it is evident from the verified Amended Complaint that the United States is one of the "several other regions" within which Plaintiff "operates." This is shown by Plaintiff's extensive discussion of and references to the international "gateway" switches that the Amended Complaint asserts Plaintiff owns and operates.

Plaintiff introduces its United-States-based equipment and operations in paragraph 15 of the Amended Complaint, where it states that to "facilitate" the provision of its services in Haiti, "Digicel" – that is, the Plaintiff – "uses telephone switching systems ("Switches") located in" Miami and New York, the purpose of which "is to route all voice calls that originate from customers of third party telecommunications networks outside of Haiti to [Plaintiff's] customers and subscribers located in Haiti." Amended Complaint (Doc # 34) at ¶ 15. In the Motion to Dismiss, Plaintiff asserts that it never claimed to "own" switches in the United States. Motion to Dismiss at page 9. This assertion, however, cannot be squared with the plain language of the Amended Complaint. Specifically, even if paragraph 15 in isolation could be viewed as somehow ambiguous on that point (it states that Plaintiff "uses" the relevant switches), other allegations in the Amended Complaint eliminate any doubt.

For example, just two paragraphs after asserting how it "uses" the New York and Miami switches, Plaintiff refers to them in blatantly proprietary terms, asserting that it "has established commercial agreements with a number of third party international telecommunications carriers … to route [Haiti-bound] traffic through *its Switches and other proprietary equipment in the USA* and Haiti to the Digicel network in Haiti …." Amended Complaint (Doc # 34) at ¶ 17 (emphasis added). This is not an assertion that Plaintiff makes use of some other entity's United-States-based equipment. This is an assertion that Plaintiff uses "*its* Switches and other proprietary equipment *in the USA*." There is no rational way to read this language other than as an assertion of ownership, on the part of Plaintiff, of "switches and other proprietary equipment" located here.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

This conclusion is confirmed in the very next paragraph, where Plaintiff states that "[a]ll United States telecommunications traffic to Digicel (Haiti)" – that is, to Plaintiff – "is routed through *Digicel's*" – that is, the Plaintiff's – "*international switching centers in Miami and New York.*" Amended Complaint (Doc # 34) at ¶ 18 (emphasis added). Again, the reference to "Digicel's" switching centers is entirely unambiguous – the only entity to which the term "Digicel" refers in the Amended Complaint is Plaintiff itself, so Plaintiff is asserting that it, itself, has ownership and control of these "international switching centers." *See also id.* at ¶ 23 (referring to "Digicel's International Gateway"). This same usage is repeated later in the Amended Complaint as well. Thus, in paragraph 71, Plaintiff complains that UPM is using IP technology, combined with traditional cellular technology, "to completely bypass *Digicel's international switch.*" Amended Complaint (Doc # 34) at ¶ 71 (emphasis added). Continuing this theme, Plaintiff asserts that UPM uses IP technology to "bypass calls *around Digicel Switches.*" Amended Complaint (Doc # 34) at ¶ 83 (emphasis added). This language clearly means that Plaintiff – not some third party – is the entity that owns and controls the switching equipment in New York and Miami. Equally, this language is inconsistent with the notion that some entity other than Plaintiff is the true owner or operator of that equipment.

The repeated use of possessive language – "*Digicel's* international switching centers;" "*its* Switches and other proprietary equipment in the USA;" "*Digicel's* international switch" – clearly and unambiguously amounts to an assertion of ownership and control. Far from being "created out of whole cloth," as Plaintiff claims, *see* Motion to Dismiss at page 8, UPM's assertion that Plaintiff owns and operates telecommunications equipment in the United States is directly grounded on Plaintiff's own verified statements to this Court. It may well turn out that as the case proceeds, these verified statements – and others Plaintiff has made – will turn out to be wrong. Indeed, UPM is quite confident that many of Plaintiff's statements are wrong. But at the pleading stage, UPM clearly has a specific and unambiguous basis – which Plaintiff, in fairness, should be estopped to deny – for its allegations.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Notwithstanding these clear statements that Plaintiff itself owns and controls telecommunications equipment in the United States, Plaintiff now claims that a third-party entity, called "Digicel USA," is the entity that actually operates here. Motion to Dismiss at pages 7, 9. In the course of its background research leading up to its counterclaims, UPM indeed found reference to that third-party entity as having authorization from the Federal Communications Commission ("FCC") to operate as an international carrier, and UPM noted that fact in its filing. But even if that third party entity is an international carrier in the United States, that does not mean that Plaintiff is not *also* such an international carrier in the United States. Again, the allegations in the Amended Complaint – a verified document, unlike the Motion to Dismiss – relate only and entirely to Plaintiff, and do not mention or refer to "Digicel USA" or any other third-party "Digicel" entity. As a result, even if the Court chooses to permit Plaintiff to defend against UPM on the merits by explaining that the allegations in its Amended Complaint are false and misleading – which it should not – UPM, in relying on those allegations for its counterclaims, clearly has an adequate factual basis to survive a motion to dismiss.[2]

Given all of this, the Court should reject any argument that UPM's counterclaims should be dismissed on the ground that Plaintiff does not actually operate in the United States. Plaintiff has plainly alleged that it does so, and it must live with the consequences of those allegations.[3]

---

[2]    Plaintiff's unambiguous allegations that it operates in the United States defeat both its claim that UPM has not adequately pled Plaintiff's status as a United States international carrier, *see* Motion to Dismiss at 6-9, and its claim that it is not subject to Section 214 of the Communications Act, *id.* at pages 10-11.

[3]    If the Court chooses to entertain Plaintiff's claim that it does *not* own or operate any equipment in the United States, then UPM respectfully requests that the Court provide time in the case schedule to entertain a renewed motion by UPM and the other Defendants to dismiss the Amended Complaint on the ground (among other things) that Plaintiff has not alleged any credible theory under which it is harmed by UPM's conduct. Plaintiff's claims of harm depend on the allegation that UPM bypassed the international gateways discussed in the Amended Complaint. For example, paragraph 20 of the Amended Complaint (Doc # 34) asserts that "Digicel" receives a minimum of $0.23/minute for Haiti-bound calls, suggesting that *the Plaintiff in this case* is being deprived of revenue when calls bypass the international gateway in

Page 10 of 20 - DEFENDANTS' RESPONSE TO PLAINTIFF UNIGESTION HOLDING S.A.'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS
UPM-L1\00222261.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

UPM's counterclaims equally establish – again, by reference to Plaintiff's own allegations – that Plaintiff operates as a common carrier on the US-Haiti route. The essence of being a common carrier is holding out to the public, *i.e.,* an entity letting it be known that its services are available to any customers that might make use of them. *National Ass'n of Regulatory Utility Comm'rs v. F.C.C.,* 525 F.2d 630 (D.C. Cir. 1976). An entity that holds itself out in this sense does not have to advertise or file tariffs to do so; all that is necessary is that its potential customers be aware of its offerings. *See, e.g., Verizon California, Inc. v. FCC,* 555 F.3d 270, 275-76 (D.C. Cir. 2009).

Plaintiff's allegations in the Amended Complaint clearly show that it makes its United States-based services – offering to transport calls from the United States to Haiti – available to any entity that wants to make use of them. First, Plaintiff states that the "purpose of the Switches" – that is, Plaintiff's United-States-based equipment – "is to route all voice calls that originate from customers of third party telecommunications networks located outside of Haiti to [Plaintiff's] customers or subscribers located in Haiti." Amended Complaint (Doc # 34) at ¶ 15. Plaintiff also makes clear that it has already established agreements with a number of third parties to perform that task: "to properly route international calls to its customers and subscribers, [Plaintiff] has established commercial agreements with a number of third party international telecommunication carriers … to route such traffic through its Switches and other proprietary equipment in the USA and Haiti to [Plaintiff's] customers and subscribers in Haiti." Amended Complaint (Doc # 34) at ¶ 17.

Indeed, not only does Plaintiff hold itself out as being available to provide transport on the US-Haiti route, it tries to serve that entire market – at least as regards calls bound for Plaintiff's subscribers in Haiti. *See* Amended Complaint (Doc # 34) at ¶ 18 ("All United States telecommunications traffic to [Plaintiff] is routed through [Plaintiff's] international

Miami and New York. But if (as claimed in the Motion to Dismiss) that function is not provided by *the Plaintiff in this case,* then *the Plaintiff in this case* has suffered no damages from bypass and the entire case should be dismissed.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

switching centers in Miami and New York. Network links are established between these switching centers and various third-party international wholesale carriers so that telecom traffic originating with these third party carriers can be legitimately routed to [Plaintiff's] network in Haiti"); *see also id.* at ¶ 27 (referring to the Plaintiff-provided gateway switches as "established legitimate routing mechanisms"). And, as UPM explained, data from the Haiti telecommunications regulator shows that Plaintiff controls at least 75% of the local market in that country. *See* Answer & Counterclaims (Doc # 73) at ¶ 211.

In sum, Plaintiff's own representations to this Court, by means of its verified Complaint and Amended Complaint, show that (a) Plaintiff owns and operates telecommunications equipment in the United States and (b) Plaintiff holds itself out as making that equipment available to any eligible entity to deliver traffic along the US-Haiti route. Plaintiff's only basis for seeking to dismiss UPM's Communications-Act-based counterclaims is its assertion that some other entity, not Plaintiff itself, owns and operates telecommunications equipment in the United States. But the verified Amended Complaint clearly and unambiguously asserts that Plaintiff itself owns and operates that equipment and provides the function of transporting calls to Haiti. Plaintiff's current claim that those allegations in its verified Amended Complaint are, in fact, false is, as noted above, troubling in a number of ways. The content of those allegations, however, plainly compels the conclusion that UPM, in asserting its counterclaims "based on [Plaintiff's] representations to this Court," has pled its claims with adequate specificity and with an adequate factual basis.

## V.    UPM's Claim for Intentional Inference is Plausible.

There is no dispute that to prevail on a claim for intentional interference in Oregon, a party must prove the following:

> (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages."

Page 12 of 20 - DEFENDANTS' RESPONSE TO PLAINTIFF UNIGESTION HOLDING S.A.'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS
UPM-L1\00222261.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*McGanty v. Staudenraus*, 321 Or. 532, 536, 901 P.2d 841 (1995). Plaintiff's attack on UPM's intentional interference claim is multipronged, asserting that the claim is defective because (1) it does not allege any prospective relationship, (2) the requisite intent, (3) that the interference was by a third-party, (4) that the interference was not through improper means or with improper motives, or (5) causation and damages. Each such argument attempts to hold Defendants' pleading to a more fact specific standard than FRCP 8 requires. As set forth below, Defendants have alleged sufficient facts and Plaintiff's Motion should be denied.

Plaintiff's argument that Defendant has not properly alleged a business relationship is based on Plaintiff's characterization of the claim as including only "a single, conclusory allegation that states that 'UPM has a variety of business relationships with telecommunications wholesalers and carriers.'" Motion to Dismiss (Doc # 80) at page 12. While UPM's claim includes that allegation, it also incorporates numerous other allegations. Specifically, UPM alleges that it is a reseller of telecommunications services and that it provided calling to Haiti to wholesale providers in the United States market between April 2014 and November 2014. Answer and Counterclaims (Doc # 73) at ¶¶ 221, 224, and 230. Indeed, Plaintiff's Amended Complaint itself alleges that Defendants sold wholesale minutes to "large third party telecommunications carriers" and to consumers. Amended Complaint (Doc # 34) at ¶¶ 78, 80, 85.

Plaintiff next attempts to dodge its liability for its interference by arguing that it is necessarily a "party" to the business relationships between UPM and its customers, asserting that the relationship would not exist "without the use of Digicel-Haiti's equipment and infrastructure." Motion to Dismiss (Doc # 80) at page 13. Followed to its logical conclusion, Plaintiff's argument would render every reseller, subcontractor, distributor or dealer a "party" to the contracts. Numerous courts have recognized intentional interference claims by resellers (such as UPM) arising from the seller's conduct with respect to the reseller's customers. *E.g., Desmond & Ahern, Ltd. v. Scheffki*, 2001 U.S. Dist. LEXIS 17617; (N.D. Ill. Oct. 23, 2011) (seller a third

Page 13 of 20 - DEFENDANTS' RESPONSE TO PLAINTIFF UNIGESTION HOLDING S.A.'S
MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS
UPM-L1\00222261.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

party); *Integrated Storage Consulting Servs. v. NetApp, Inc.*, 2014 U.S. Dist. LEXIS 93480, *36, (N.D. Cal. July 9, 2014) (refusing to dismiss claim of reseller against seller); *Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp., U.S.A.*, 221 Cal. App. 4th 867, 884, 164 Cal. Rptr. 3d 811 (2013) (despite distributor-dealer relationship, Yamaha was a "stranger" to the contract).

Plaintiff's argument further flies in the face of many of the seminal Oregon cases that have recognized this tort. For instance in *Lewis v. Oregon Beauty Supply,* 302 Or. 616, 733 P.2d 430(1987), the plaintiff alleged that she was forced to leave her job at Oregon Beauty Supply after she discontinued a romantic involvement with her supervisor. Despite the fact that both the plaintiff (Lewis) and her supervisor provided services to Oregon Beauty Supply, the supervisor was a third party to the relationship between the plaintiff and her employer. Similarly, in *Top Service Body Shop, Inc. v. Allstate Ins Co.,* 283 Or. 201, 582 P.2d 1365 (1978), plaintiff sued defendant insurance company for dissuading insurance claimants from doing business with the plaintiff. The insurance claimants were customers of both plaintiff (for repairs) and defendant (whose policy would ultimately provide payment for the claim).

There is no merit to Plaintiff's argument that a finding that it is not a party to UPM's customer relationships is internally inconsistent with UPM's Communications Act counterclaims. Plaintiff reasons that UPM must establish that Digicel-Haiti is a "required party" to complete UPM's business transactions. But that is not what UPM is required to allege, nor what it actually alleges. Rather, as Plaintiff's Motion concedes, Plaintiff's liability under 47 U.S.C. §§ 201 and 202 arises if it is a common carrier, (Motion to Dismiss (Doc # 80) at page 6), without regard to whether it was UPM or some other third party that delivered calls to it for termination in Haiti. UPM alleges that Plaintiff offers to carry calls from the United States to Haiti, and that it "competes with" UPM in the United States market for delivering calls for termination in Haiti. Answer and Counterclaims (Doc # 73) at ¶ 208.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

UPM has also adequately alleged intent. The Oregon Supreme Court has described the intent standard as "somewhat flexible," noting that:

> * * * [E]ven if [a defendant] does not act for the purpose of interfering or does not desire it but knows that the interference is substantially certain to occur from his action and is a necessary consequence thereof, his interference is intentional as contemplated by the rule." *Lewis v. Oregon Beauty Supply*, 302 Or. 616, 733 P.2d 430 (1987), citing Restatement (Second) of the Law of Torts § 766, comments (h) and (j).

Plaintiff's conduct comes within this definition and more. The allegations of Plaintiff's Amended Complaint alone establish that it knew that UPM was selling the minutes it purchased to wholesale providers and Plaintiff had to have known that by blocking the Digicel SIM Cards which it knew UPM was using would necessarily interfere with these business relationships. *See also Straube v. Larson*, 287 Or. 357, 600 P.2d 371 (1979) (even if party does not act for the purpose of interfering but knows that interference is likely to occur as a consequence, then his interference is intentional); *Wampler v. Palmerton*, 250 Or. 65, 73, 439 P.2d 601 (1968) (interference must be knowing and not inadvertent or merely incidental); *Top Service*, 283 Or. 201 (same).

Defendant UPM has also adequately alleged that the interference either be in pursuit of an improper or wrongful motive or involve the use of an improper or wrongful means. *Top Service*, 283 Or. at 205; *Straube* 287 Or. at 361. These motives or means may be defined as improper "by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession." *Top Service*, 283 Or. at 209-10. It is unnecessary in making out an interference claim to prove all the elements of another tort. *Id*.

In this case, Plaintiff's conduct comes within several of these categories. UPM alleges that Plaintiff breached its implied-in-fact contract with UPM, created an unlawful restraint of trade, violated the Communications Act and implementing regulations, and made defamatory statements. Answer and Counterclaims (Doc # 73) at ¶ 284. All these are improper means which in fact resulted in injury to UPM's relationships with its customers.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Plaintiff's argument about causation and damages also misses the mark. The salient inquiry in any interference claim is whether defendant's tortious conduct damaged plaintiff's economic or contractual relationship. Defendant's interference may cause a third person to discontinue the relationship with plaintiff. Such was the case in *Top Service Body Shop v. Allstate Ins. Co.*, supra, when defendant dissuaded insurance claimants from doing business with plaintiff. Alternatively, defendant's interference may render plaintiff incapable of continuing the relationship, as occurred in *Wampler*, supra. There, defendant's refusal to provide plaintiff with promised financial backing caused plaintiff to breach contracts with others. *See also Lewis* (defendant's interference forced plaintiff to abandon her employment). That is precisely what UPM alleges happened here. Plaintiff's interference caused it to be unable to continue to provide minutes to its wholesale customers, resulting in the damages alleged in the Counterclaim.

## VI.    Implied-In-Fact Contract.

Plaintiff argues that UPM does not state a claim for an implied contract because it cannot factually allege that Plaintiff assented to the use of the SIM Cards for bypass operations. Plaintiff's argument ignores the fact that it did not place any restrictions on the use of the Digicel SIM Cards. Plaintiff's argument also ignores the fact that it will not honor the cards for any purpose, even those not associated with what it deems "bypass" operations.

An implied contract is proved by circumstances and the general course of dealing between the parties. *Rose v. Wollenberg*, 36 Or. 154, 158-159, 59 P. 190 (1899). UPM alleges that the Plaintiff's conduct reflects that as to each SIM Card transaction, Plaintiff expected to sell, and the buyer (UPM) expected to receive, access to Plaintiff's network for the amount of time associated with the SIM Card. This intention is manifested in the parties' conduct, and specifically in the fact that Plaintiff did not place any express restrictions on the use of the Digicel SIM Cards by UPM, or on the resale of the associated minutes. UPM is entitled to receive the value of the minutes purchased from Plaintiff.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## VII.    Conversion.

Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel. In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important: (a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the other's right of control; (c) the actor's good faith; (d) the extent and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; (f) the inconvenience and expense caused to the other. *Mustola v. Toddy*, 253 Or. 658, 456 P.2d 1004 (1969).

Here, by de-authorizing the Digicel SIM Cards, Plaintiff has exercised complete dominion and control over their use. This dominion and control is inconsistent with UPM's right to use those cards in the manner contemplated at the time of purchase, and UPM has been entirely deprived of the economic benefit of its use of the cards, together with its payments for use of the cards. Plaintiff cannot claim good faith as it initially authorized the cards and allowed them to be registered on the network, and it sold the cards, and additional minutes, without imposing any restrictions on their use, or requiring that they only be used with certain equipment. Plaintiff's conduct has rendered the cards to be valueless, and has caused a conversion of the associated airtime credits.

Plaintiff's claim that UPM did not have the right to use the Digicel SIM Cards as it did should be determined after discovery is complete. The evidence will show that Plaintiff injected the cards, and the associated minutes, into the stream of commerce where these items were offered for sale by Plaintiff's agents with no restrictions on their use. This conduct alone seriously compromises Plaintiff's argument that UPM's use of the cards was improper. Moreover, UPM denies making any "technological misrepresentations," a fact which it believes discovery and expert testimony will prove. And, Plaintiff's claim with respect to its right to be the exclusive

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

provider of United States inbound calls to Haiti (see Amended Complaint (Doc # 34) at 18) is undermined by its argument that it is not operating in the United States. Plaintiff is on fair notice of the claim.

## VIII.   Money Had and Received.

Plaintiff argues that a claim of money had and received is appropriate when a contract has been fully performed by the plaintiff, and nothing remains to be done except the payment of money. While this proposition may be true, the claim is not limited to such circumstances. Recovery on a theory of money had and received is based on a promise implied by law and on the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution. As the court explained in *Powell v. Sheets*, 196 Or. 682, 700, 251 P.2d 108 (1952),

> "The term "money had and received" is the technical designation of a form of declaration in assumpsit, wherein plaintiff declares that defendant had and received certain money, etc. Although an action at law, an action for money had and received is equitable in its nature and is governed by equitable principles. It may, in general, be maintained whenever one has money in his hands belonging to another, which, in equity and good conscience, he ought to pay over to that other. *Recovery in such case is based on a promise implied by law or quasi contract and on the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution.*"

(Quoting *Money Received*, 58 CJS 906 § 1) (emphasis in *Powell*).

In fact, Oregon courts have recognized claims arising under this theory in a wide variety of factual circumstances. *E.g.*, *Tupper v. Roan*, 349 Or. 211, 243 P.3d 50 (2010) (recognizing plaintiff's claim (arising from marital settlement agreement) to life insurance proceeds); *Briggs v. Lamvik*, 242 Or. App. 132, 255 P.3d 518 (2011) (finding viable claim for money had and received where defendant moved funds from decedent's bank account into his own); *Angelini v. Delaney*, 156 Or. App. 293, 966 P.3d 223 (1998) *rev denied* 328 Or. 594, 987 P.2d 514 (1999). (defendant received "benefit" from loan payments). Here, Plaintiff has received payment for the purchase of the cards and the airtime, and if it chooses not to honor the unrestricted terms of sale, it should be required to repay UPM for the unused minutes.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

### IX.    Unjust Enrichment.

The elements of the quasi-contractual claim of unjust enrichment are (1) a benefit conferred, (2) awareness by the recipient that she has received a benefit, and (3) it would be unjust to allow the recipient to retain the benefit without payment for it. A plaintiff can show a recipient's actions are unjust by proving one of three things: (1) the plaintiff had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of security of person and property would be defeated by nonpayment. *Cron v. Zimmer*, 255 Or. App. 114, 296 P.3d 567 (2013). Here, UPM can prove each of these things and can prove, in particular, that it would violate society's expectations of security of property if Plaintiff were not required to refund UPM for the minutes it will not allow UPM to use or resell.

The word "benefit" denotes any form of advantage. A person confers a benefit upon another if the person gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage. *Gutierrez v. Gutierrez*, 261 Or. App. 410, 411, 323 P.3d 974 (2014).

Plaintiff incorrectly argues that UPM's claim for unjust enrichment is based on a "few unsupported conclusory statements." (Motion to Dismiss (Doc # 80) at page 18). Defendant UPM's counterclaim for unjust enrichment contains a plain and concise statement of its claim for relief. It alleges that Plaintiff received funds (a benefit) from UPM for the purchase of the Digicel SIM Cards and minutes that Plaintiff did not expressly restrict the use of the cards or minutes in any way, that Plaintiff "de-authorized" the SIM Cards, which deprived UPM from the economic benefit of its purchase, that Plaintiff has not reimbursed UPM for the value it paid for the Digicel SIM Cards, and that under these circumstances, it is inequitable for Plaintiff to retain the funds received from the purchase of the cards and corresponding minutes. UPM seeks damages equivalent to the unused value of its purchases ($156,735.42). Answer and

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Counterclaims (Doc # 73) at ¶ 279. These allegations are sufficient to put Plaintiff on fair notice of the claim and the grounds upon which it rests.

Plaintiff's argument not only chooses to ignore the factual allegations described above, but it incorrectly focuses on its own mischaracterization of UPM's allegations. Plaintiff asserts that "Defendants themselves allege that they used the SIM Cards to make 'in excess of $20,000,000' in profits.'" Motion to Dismiss (Doc # 80) at page 18. This statement is a flat-out misstatement of UPM's allegations. UPM does not allege that it made $20,000,000 in profit. Instead, UPM alleges that it lost the opportunity to make $20,000,000. Answer and Counterclaims (Doc # 73) at ¶ 257.

## CONCLUSION

Plaintiff's Motion should be denied. The allegations of UPM's counterclaims provide a short, plain statement of the claim, as required by FRCP 8(a), and they put Plaintiff on fair notice of the facts and circumstances giving rise to the claims, as well as the legal basis for the claims. Moreover, the factual basis of many of the counterclaims are set forth in Plaintiff's own sworn pleadings, which it is not entitled to disavow at this stage of the proceedings.

Dated: April 21, 2016.

TOMASI SALYER BAROWAY
By:/s/ Kathryn P. Salyer
    Kathryn P. Salyer, OSB #883017
    ksalyer@tsbnlaw.com
    Telephone: (503) 894-9900
    Of Attorneys for Defendants

DAVIS WRIGHT TREMAINE
By:/s/ Christopher W. Savage
    Christopher W. Savage (Pro Hac Vice)
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    Of Attorneys for Defendants

Page 20 of 20 - DEFENDANTS' RESPONSE TO PLAINTIFF UNIGESTION HOLDING S.A.'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS
UPM-L1\00222261.000

TOMASI SALYER BAROWAY
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236