**Kathryn P. Salyer**, OSB #883017
ksalyer@tsbnwlaw.com
Tomasi Salyer Baroway
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage** (*Pro Hac Vice*)
chrissavage@dwt.com
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A.**, a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>Plaintiff,<br><br>v.<br><br>**UPM TECHNOLOGY, INC.** d/b/a **UPM TELECOM, INC.**, et al<br><br>Defendants. | Case No. 3:15-CV-00185-SI<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6).**<br><br>**ORAL ARGUMENT REQUESTED** |

**CERTIFICATION**

Pursuant to Local Rule 7.1, the undersigned attorney hereby certifies that Defendants' counsel conferred with Plaintiff's counsel by telephone in an attempt to resolve the dispute presented by the Motion set forth below.

Page 1 of 15 - DEFENDANTS' MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6).
UPM-L1\00234075.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## MOTION

Pursuant to Federal Rules of Civil Procedure 12(h)(3), Defendants move to dismiss all of Plaintiff's claims for relief and Defendants move this court to reconsider its Opinion and Order denying Defendants' Motion to Dismiss under Rule 12(b)(6) (Doc. #58). This motion is supported by the record herein and the authorities set forth below.

## LEGAL MEMORANDUM

Defendants UPM Technology, Inc. d/b/a UPM Telecom, Inc.; UPM Marketing, Inc., an Oregon corporation; UPM Telecom, Inc., an Oregon a/b/n; UPM Marketing, Inc., an Oregon a/b/n; Benjamin Sanchez a/k/a Benjamin Sanchez Murillo, an Oregon resident; Baltazar Ruiz, an Oregon resident; and Tyler Allen, an Oregon resident (collectively "UPM"), pursuant to Federal Rules of Civil Procedure 12(h)(3), 12(b)(1), and 6(c), respectfully move that this Court dismiss the Amended Complaint (Doc. #34) filed in this matter by Plaintiff Unigestion Holding, S.A.'s ("Unigestion").[1] The Amended Complaint should be dismissed because Unigestion's recent filings show that it has not suffered any injury caused by UPM, which means that this Court lacks jurisdiction, because Unigestion has no standing to sue.[2] In the alternative, UPM respectfully moves that, in light of those same recent Unigestion filings, this Court reconsider its Opinion and Order of February 3, 2016 (Doc. #58), denying UPM's motion to dismiss

---

[1] As described more fully below, Unigestion has changed its position in this matter so as to now draw a sharp distinction between Unigestion itself – which, according to Unigestion now, is solely and entirely geographically limited to Haiti – and one or more Unigestion affiliates, which may operate in the United States and elsewhere. To avoid any additional confusion on this issue, in this filing, UPM will refer to the actual Plaintiff in this case as "Unigestion."

[2] *See* Plaintiff Unigestion Holdings S.A.'s Motion to Dismiss Defendants' Counterclaims (Doc. #80) ("Motion to Dismiss Counterclaims") and Plaintiff Unigestion Holdings S.A.'s Reply in Support of Motion to Dismiss Defendants' Counterclaims (Doc. #86) ("Reply re: Dismissal of Counterclaims"). For purposes of this filing only, UPM takes the assertions in Unigestion's recent filing (as opposed to those in the Amended Complaint) as true. UPM recognizes that Unigestion may change its story yet again in response to this filing. UPM reserves its rights to challenge any and all Unigestion claims, whether factual or legal, that may arise in this proceeding.

Page 2 of 15 - DEFENDANTS' MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6).
UPM-L1\00234075.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Unigestion's Amended Complaint (the "Opinion and Order") and, on reconsideration, grant UPM's motion to dismiss. The grounds for this motion are set out below.

## Introduction and Summary

Unigestion's Amended Complaint asserts that Unigestion owns and operates international gateway switches in New York and Miami; that it itself carries international calls from the United States to Unigestion's wireless customers in Haiti; that it is paid for that service (at a minimum rate of 23¢/minute); and that it itself is harmed when UPM gets calls to Haiti using other means (by virtue of not receiving the 23¢). This assertion permeates the Amended Complaint, both expressly (by referring to "Digicel's" gateway switches and international operations) and by implication (by, for example, referring to "bypass fraud" as somehow damaging or affecting Unigestion). *See* Amended Complaint, *passim.* This assertion is the only grounds on which Unigestion alleges that it itself was damaged by UPM's conduct, because, as this Court understood, Unigestion was itself paid (by means of the pre-paid SIM cards UPM purchased) for the work it did handling calls on its network in Haiti. *See* Opinion and Order (Doc. #58) at 22. Only the international leg of a call – that is, only the portion in which Unigestion *is not involved* – is "bypassed." Yet Unigestion's claimed damages arise from that "bypass," not from any lack of compensation for its activities in Haiti.

In denying UPM's earlier motion to dismiss, this Court expressly relied on Unigestion's claim that it itself handles both the United States end of US-Haiti calls and the process of getting those calls to Haiti. *See, e.g.,* Opinion and Order (Doc. #58) at 5-6. And UPM, like the Court, relied on these claims in formulating its counterclaims against Unigestion. Specifically, UPM pointed out that Unigestion's United States-based activities – operating gateways in Miami and New York and carrying calls to Haiti – establish that Unigestion is a United States international common carrier, subject to the requirements of the Communications Act of 1934, as amended – requirements which Unigestion has been violating. *See* Answer and Counterclaims (Doc. #73) at pp. 20-32, ¶¶ 196-231.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Confronted with potential liability under the Communications Act, Unigestion now claims that the Amended Complaint is wrong, and that Unigestion has nothing to do with any activities in the United States. Motion to Dismiss Counterclaims (Doc. #80) at 7 (Unigestion "does not operate within the United States and … runs operations strictly within Haiti"); *id.* at 11 (Unigestion "operates in Haiti" and "does not construct or operate lines or equipment in the United States").[3] This means that all allegations in the Amended Complaint that relate to activities outside of Haiti relate to a third-party entity other than Plaintiff Unigestion. Reading the Amended Complaint in that light, it is evident that Unigestion itself has not alleged any damages from UPM's activities. UPM paid (via SIM card purchases) for the use of Unigestion's network *in* Haiti; the alleged damages supposedly arise from UPM not using (or paying for) the services of a third party in getting calls *to* Haiti. Unigestion has no standing to complain that a third party – even an affiliated third party – may have lost business. As a result, there is no live case or controversy between Unigestion – which has been fully paid for *its* services – and UPM, and this case must be dismissed for lack of jurisdiction.

Moreover, it is also clear that the Opinion and Order relied on the assertions in the Amended Complaint that Unigestion *itself* owned, operated, and/or controlled the international gateway switches in the United States and the facilities used to transmit calls via those gateways to Unigestion in Haiti. Unigestion's new stance on the facts justifies reconsideration of the Opinion and Order and dismissal of the Amended Complaint. Indeed, given what Unigestion now claims to be the true state of affairs, its counsel had a duty to promptly correct the Court's misunderstanding – which would have led to dismissal of the Amended Complaint and avoided the time and expense of the further proceedings in which the parties have been engaged.

---

[3]     Unigestion concedes that that the allegations in its Amended Complaint are "ambiguous" and "inartful," Reply re: Dismissal of Counterclaims at 4, and that it "could have more specifically identified" the actual entity that operates in the United States. *Id.* at 3.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## I.    Factual Background

It is clear that the Amended Complaint asserts that Unigestion operated as an international carrier between the United States and Haiti.  It is also clear that this Court's Opinion an Order denying UPM's earlier motion to dismiss relied on that understanding in concluding that the Amended Complaint should go forward.  Unigestion, however, now repudiates that understanding.  That repudiation forms the basis for this motion.

The Amended Complaint defines the term "Digicel" to mean Unigestion Holdings, S.A., a wireless telephone service provider in Haiti.  Amended Complaint at ¶ 1.  There is no mention in that document of any affiliated companies being involved.  References in that document to "Digicel" can therefore only be fairly read as references to Unigestion.

According to the Amended Complaint, Unigestion owns and operates "throughout the Caribbean" and in "several other regions."  Amended Complaint at ¶ 1.  Specifically, Unigestion supposedly owns "gateway" switches in the United States (Amended Complaint at ¶¶ 16, 18, 23, 42, 45, 71, 87, 117, 126(h), 155, 162, 172); Unigestion contracts with third party carriers to pick up traffic at those United States switches for delivery to Haiti (Amended Complaint at ¶¶ 17-19); Unigestion contends that delivering traffic to Unigestion's gateway switches in New York and Miami is the only "legitimate" way to get traffic to Unigestion in Haiti (Amended Complaint at ¶¶ 18-19, 27, 45); and Unigestion charges a minimum of 23¢ per minute for that service (Amended Complaint at ¶¶ 17, 20).  In light of these claims about what Unigestion does, the Amended Complaint bases its claims for damages on UPM's alleged "bypass" or "bypass fraud," which refers to UPM getting calls to Unigestion in Haiti without using the gateway switches and associated transmission between the United States and Haiti, and thus without paying the purported minimum rate of 23¢ per minute for those functions.  Amended Complaint at ¶ 23 (defining "bypass fraud"), *passim* (referring to "bypass" or "bypass

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

fraud").[4]  The Amended Complaint does not allege that UPM ever made use of Unigestion's wireless network in Haiti without paying for that use.  Indeed, it appears uncontested that any such use was paid for by means of UPM's purchase of pre-paid SIM cards.

In a complete reversal of the situation portrayed in the Amended Complaint, Unigestion now asserts that it has nothing to do with either the United States gateway switches or with getting calls from the United States to Haiti.  Those functions are now claimed to be handled by third-party entities, including, perhaps, an affiliate of Unigestion known as "Digicel-USA."  Thus, Unigestion now states that it "does not operate within the United States and … runs operations *strictly within Haiti.*"  Motion to Dismiss Counterclaims (Doc. #80) at 7 (emphasis added).  It further states that it "operates in Haiti" and "does not construct or operate lines or equipment in the United States." *Id.* at 11.[5]

The Opinion and Order denying UPM's earlier motion to dismiss relied on the Amended Complaint for the facts outlined above and is inconsistent with Unigestion's current position.  For example, that ruling stated (emphasis added; footnotes omitted; "Unigestion" substituted for "Digicel"):

---

[4]    Based on a review of the Amended Complaint in light of Unigestion's new position, Unigestion's direct and indirect reliance on the notion that it itself is involved in picking up calls in the United States and getting them to Haiti appears in at least the following paragraphs: 1, 15-21, 23, 26-28, 30, 37, 42, 45-48, 50-51, 53-55, 68, 70-71, 73-74, 83, 87-89, 95, 102-03, 115-17, 119-20, 125-26, 130, 133-34, 139, 145, 148, 151, 154-55, 161-62, 164-65, 172, 177, 179, 182-83, 185.  This includes both direct references to Unigestion owning or operating gateway switches in New York and Miami and/or international transmission facilities, as well as references to "bypass" or "bypass fraud."  The latter references implicitly require an assertion that Unigestion is involved in the United States-to-Haiti aspect of international calls because it is only that portion of the call path that was allegedly "bypassed" by UPM.

[5]    As noted above, Unigestion now concedes that that the allegations in its Amended Complaint are "ambiguous" and "inartful," Reply re: Dismissal of Counterclaims at 4, and that it "could have more specifically identified" the actual entity that operates in the United States. *Id.* at 3.  UPM submits that it strains credibility to suggest that Unigestion was merely inadvertently unclear on these points, given the pervasive and repeated nature of its allegations, such as its repeated assertions that the switches in Miami and New York were "Digicel's," *see* Amended Complaint at ¶¶ 18, 71, 87-88, 117, 119, 139, 155, 162, 172, and that UPM's alleged wrongful conduct involved "divert[ing] international telephone calls around *Digicel's international telephone network.*" *Id.* at ¶ 172 (emphasis added).

---

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

> As alleged in the Amended Complaint (Dkt. 34), [Unigestion] provides mobile telecommunications services to customers in Haiti. *[Unigestion] operates telephone switching systems in Miami, Florida, and New York City, New York, that route international calls from third-party providers (such as AT&T and Verizon) to [Unigestion] customers in Haiti.* The switching systems use an international gateway that allows [Unigestion] to manage call routing and account for any billing and associated regulatory charges. Under Haitian law, *international telephone carriers must charge at least 23 cents per minute for international calls terminating in Haiti. Accordingly, [Unigestion] charges third-party providers at least 23 cents per minute to route international calls to [Unigestion] customers in Haiti.*
>
> UPM is an Oregon corporation that offers *to route international calls to Haiti* at lower rates than [Unigestion].

Opinion and Order at 5. Thus, the Court understood that Unigestion itself – the Plaintiff, not some third party – operated the United States gateway switches, and that Unigestion itself was an "international telephone carrier" that was required to "charge[] third-party providers at least 23 cents ... ." Later discussion in the Opinion and Order confirms this. In discussing Unigestion's allegations of supposed "technological fraud," the Opinion and Order notes that UPM's alleged activities supposedly allow it to "'pretend' to initiate a local call in Haiti when the call was in fact initiated outside of Haiti, thus 'bypassing' *[Unigestion's]* international switches and international charges." Opinion and Order at 9 (emphasis added). This same understanding permeates the discussion of damages in the Opinion and Order (emphasis added):

> "[Unigestion] further alleges that UPM has diverted millions of minutes of calling time away from *[Unigestion's] international switches*, for which UPM has not compensated [Unigestion]. [Unigestion's] allegations satisfy the elements of common law fraud in Oregon."

Opinion and Order at 19. The Opinion and Order again relied on Unigestion's allegations that it was involved in carrying calls from the United States to Haiti in its discussion of Unigestion's conversion claim:

> According to [Unigestion], for every international phone call that UPM connected, [Unigestion] was entitled to at least 23 cents per minute minus the amount that UPM paid for RLYH plans or local minutes on the SIM cards. Finding that [Unigestion] has stated a claim that UPM commits fraud to divert

Page 7 of 15 - DEFENDANTS' MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6).
UPM-L1\00234075.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

international telecommunications traffic away from [Unigestion], the Court also finds that [Unigestion] has sufficiently alleged conversion."

Opinion and Order at 22. Unigestion's damages claims thus depended on Unigestion itself – not some third party – being entitled to the 23¢ per minute supposedly payable for the service of carrying international calls from the United States to Haiti; the damages supposedly arise when those international calls are "divert[ed] ... away from" Unigestion itself. This passage also correctly reflects that Unigestion was paid for the work it did in Haiti, since the alleged damages are framed as the supposed 23¢ rate *minus* the amounts paid for the local usage.

## II.    The Court Should Dismiss Unigestion's Amended Complaint Pursuant to Rule 12(h)(3) Because Unigestion Lacks Standing To Sue.

"It is black-letter law that one corporation cannot assert an affiliate's legal rights." *In Re Countrywide Financial Corporation Mortgage-Backed Securities Litigation,* 2014 U.S. Dist. LEXIS 102102 at [*9] (C.D. Cal. 2014), *quoting Clarex Ltd. v. Natixis Secs. Am. LLC,* 2012 U.S. Dist. LEXIS 147485, 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012). Yet here, it now appears that Unigestion is trying to assert rights that – if they exist at all – belong to its United States affiliate. "A corporation does not have standing to assert claims belonging to a related or closely affiliated corporation simply because their businesses are intertwined." *The Mitchell Company, Inc. v. Campus,* 2009 U.S. Dist. LEXIS 51643 at [*16]-[*17] (S.D. Ala. 2009) (multiple citations omitted). Yet this is exactly what Unigestion is evidently trying to do in its Amended Complaint.

Unigestion's current position is that it, itself, is not involved in any United States activities and is not involved in getting calls from the United States to Haiti. From that perspective, the Amended Complaint tells a much different story that appears from its literal words. Nothing in the Amended Complaint identifies any injury to *Unigestion* arising from UPM's conduct. Instead, the Amended Complaint alleges that some third party (evidently a Unigestion affiliate) may have been harmed by virtue of UPM getting calls from the United

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

States to Haiti without relying on that third party.[6] But as the cases quoted above show, without injury *to itself* – not an affiliate – Unigestion has no standing to sue UPM, and Unigestion's Amended Complaint must be dismissed.

The fact that Unigestion *itself* has not been injured by UPM's actions is evident from the passage from the Opinion and Order quoted above:

> According to [Unigestion], for every international phone call that UPM connected, [Unigestion] was entitled to at least 23 cents per minute minus the amount that UPM paid for RLYH plans or local minutes on the SIM cards. Finding that [Unigestion] has stated a claim that UPM commits fraud to divert international telecommunications traffic away from [Unigestion], the Court also finds that [Unigestion] has sufficiently alleged conversion."

Opinion and Order at 22. This passage clearly distinguishes between (a) the 23¢/minute rate supposedly payable to the entity that picks up calls in the United States and carries them to Unigestion in Haiti, and (b) the amounts that Unigestion, in Haiti, can expect to receive for the work it does in handling a call *in Haiti* – which we now know to be the *only* work that Unigestion – the actual Plaintiff in the case – does. But as the passage above indicates, Unigestion in Haiti only completes calls when it has already been paid for them in advance by means of a pre-paid SIM card, whether on the "Roam Like You're Home" plan or otherwise. So Unigestion itself has neither experienced nor alleged any injury to itself. It thus lacks standing to sue, and immediate dismissal is appropriate.

UPM will not unduly attempt to anticipate Unigestion's arguments in response to the clear standing problem that Unigestion has created for itself. UPM does, however, note the following points.

First, even if, hypothetically, some Unigestion affiliate has a claim against UPM, as noted above, Unigestion has no right to assert such claims. If Unigestion's affiliate believes

---

[6]    UPM denies that there is anything unlawful or inappropriate about "bypassing" Unigestion's affiliate's services involved in getting calls from the US to Haiti. But assuming *arguendo* that there is, it is the affiliate, not Unigestion, that is harmed by that activity.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

that UPM's actions in getting calls to Haiti by means that do not involve the affiliate somehow violates a legal duty that UPM supposedly owes to the affiliate, that entity is free to sue to try to vindicate those rights. But Unigestion cannot sue UPM for economic "harms" to its affiliate any more than an individual can sue someone for breaching a contract with his cousin.[7]

Second, on the merits, no such allegation is possible because no law of the United States forbids UPM from getting calls to Haiti via the Internet or any other means. Bypassing international carriers is affirmatively supported by United States policy for the communications industry. As the Federal Communications Commission stated:

> We are aware…that "services and technologies that bypass the settlements regime"… are available for carriers seeking to avoid the legal monopoly of a foreign incumbent carrier in some countries that are legally closed to competition. ***We find it encouraging that such activity is putting pressure on settlement rates in those countries.*** Such methods of termination may not be a realistic alternative, however, for the termination of large amounts of traffic, particularly where termination of traffic in such a manner is illegal in the foreign country.

*See 1998 Biennial Regulatory Review; Reform of the International Settlements Policy and Associated Filing Requirements,* Report and Order and Order on Reconsideration, 14 F.C.C.R. 7963 (1998) at ¶ 63 (emphasis added, footnote omitted). Not only does Unigestion's United States affiliate have no cognizable right under United States law to be protected from UPM's "bypass," the FCC finds such "bypass" to be an "encouraging" development. Any "harm" that Unigestion's United States affiliate may experience is simply the result of competition by UPM by means of innovative technology, including Voice-over-Internet Protocol ("VoIP") technology. For this reason, any plea by Unigestion to be permitted to amend its complaint yet again, or to try to save its claims by adding its affiliate as a party, should be denied as futile.

---

[7] There are certain limited situations in which a corporate ***parent*** may have Article III standing to assert the rights of a wholly-owned ***subsidiary.*** *See, e.g., Franchise Tax Board of California v. Alcan Aluminum, Ltd.,* 493 U.S. 331 (1990). But Unigestion does not claim that it owns the various affiliated entities that might be involved in getting calls from the United States to Haiti. *See* Reply re: Dismissal of Counterclaims at 3. And even if "constitutional" standing might exist in such a case, courts will still normally dismiss such actions on prudential grounds. *See id.,* and *infra.*

Page 10 of 15 - DEFENDANTS' MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6).
UPM-L1\00234075.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Because it now seems clear that Unigestion lacks standing to sue – because Unigestion itself has not been injured by UPM's alleged conduct – the Amended Complaint must be dismissed.

**III.    The Court Should Reconsider The Opinion And Order And Dismiss Unigestion's Amended Complaint Under Rule 12(b)(6) For Failure To State A Claim.**

The Amended Complaint clearly states that Unigestion itself – not some third party – owns, operates, and/or controls international gateway switches in New York and Miami, and handles the transmission of calls on the international route between the United States and Haiti.[8]   According to Unigestion's recent filings, those statements were incorrect.  It is clear that the Court's Opinion and Order denying UPM's motion to dismiss the Amended Complaint relied directly and materially on what Unigestion now claims to have been a complete misreading of the Amended Complaint. The Court, therefore, should reconsider that earlier ruling and grant UPM's motion to dismiss for failure to state a claim.[9]

This reliance of the Opinion and Order on what Unigestion now claims to be a mistaken reading of its pleading seems undeniable from the language of the Opinion and Order itself.  As noted above, for example, that ruling stated (emphasis added; footnotes omitted; "Unigestion" substituted for "Digicel"):

> As alleged in the Amended Complaint (Dkt. 34), [Unigestion] provides mobile telecommunications services to customers in Haiti. *[Unigestion] operates telephone switching systems in Miami, Florida, and New York City, New York, that route international calls from third-party providers (such as AT&T and Verizon) to [Unigestion] customers in Haiti.* The switching systems use an

---

[8]      *See* note 4, *supra,* and accompanying text.

[9]      As an alternative ground for reconsidering the Opinion and Order, even if the Court were to conclude that Unigestion could be deemed to have Article III (constitutional) standing, the Court should still dismiss this action for lack of standing as a prudential matter. *See Franchise Tax Board of California, supra,* 493 U.S. at 336 (the "prudential requirements of the standing doctrine" include "the requirement that 'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties'") (*quoting Warth v. Seldin,* 422 U.S. 490, 499 (1975)).

Page 11 of 15 - DEFENDANTS' MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6).
UPM-L1\00234075.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

> international gateway that allows [Unigestion] to manage call routing and account for any billing and associated regulatory charges. Under Haitian law, ***international telephone carriers must charge at least 23 cents per minute for international calls terminating in Haiti. Accordingly, [Unigestion] charges third-party providers at least 23 cents per minute to route international calls to [Unigestion] customers in Haiti.***

> UPM is an Oregon corporation that offers ***to route international calls to Haiti*** at lower rates than [Unigestion].

Opinion and Order at 5. Thus, the Court understood that Unigestion itself – the Plaintiff, not some third party – operated the United States gateway switches, and that Unigestion itself was an "international telephone carrier" that was required to "charge[] third-party providers at least 23 cents ... ." Unigestion now says that all of this is untrue. Later, in discussing Unigestion's allegations of supposed "technological fraud," the Opinion and Order notes that UPM's alleged activities supposedly allow it to "'pretend' to initiate a local call in Haiti when the call was in fact initiated outside of Haiti, thus 'bypassing' ***[Unigestion's]*** international switches and international charges." Opinion and Order at 9. But now we know that Unigestion has no "international switches" or "international charges" to bypass.

> This same understanding permeates the Opinion and Order's discussion of damages. For example, it states:

> "[Unigestion] further alleges that UPM has diverted millions of minutes of calling time away from ***[Unigestion's] international switches***, for which UPM has not compensated [Unigestion]. [Unigestion's] allegations satisfy the elements of common law fraud in Oregon."

Opinion and Order at 19. All of Unigestion's claims for damages stem from the basic assumption that in the normal course of "legitimate" call routing, ***Unigestion itself*** would pick up calls in New York or Miami, carry those calls to Haiti, and charge 23¢/minute for that work.

Now we are told that *Unigestion itself* has nothing to do with those activities, since it operates "*strictly within Haiti.*" Motion to Dismiss Counterclaims (Doc. #80) at 11 (emphasis added).[10]

Most tellingly for present purposes, the Opinion and Order clearly relied on Unigestion's allegations that it was involved in carrying calls from the United States to Haiti in its discussion of the damages that Unigestion supposedly incurred:

> According to [Unigestion], for every international phone call that UPM connected, [Unigestion] was entitled to at least 23 cents per minute minus the amount that UPM paid for RLYH plans or local minutes on the SIM cards. Finding that [Unigestion] has stated a claim that UPM commits fraud to divert international telecommunications traffic away from [Unigestion], the Court also finds that [Unigestion] has sufficiently alleged conversion."

Opinion and Order at 22. That is, Unigestion's damages claims depend on Unigestion itself – not some third party – being entitled to the 23¢ per minute supposedly payable for carrying international calls from the United States to Haiti. Damages supposedly arise when international calls are "divert[ed] … away from" Unigestion itself. The supposed measure of those damages was the 23¢ per minute (which we now know is actually charged by the affiliate), *minus the amounts that Unigestion was automatically paid for its work in Haiti* by means of deductions from the pre-paid SIM card balances. Unigestion's problem, obviously, is that if – as it now says to be the case – its operations are limited to Haiti, and if – as it now says to be the case – the 23¢/minute rate applies to the international carriage of calls from the United States to Haiti, then even if everything Unigestion alleges (now) is true, it has been fully paid for everything *it* did, and has no basis for any further/additional recovery from UPM, on any legal theory.[11]

---

[10]    As noted above, UPM denies that there is anything illegal or inappropriate about getting calls to Haiti without relying on the services of, or paying, Unigestion's affiliate. The point here is that even if that activity is problematic, the only entity that Unigestion has actually alleged to be harmed by it is the affiliate, not Unigestion itself.

[11]    This applies to all counts of the Amended Complaint. Unigestion's entire case depends on the claim that UPM deprived Unigestion – not some third party, whether affiliated or not – of revenues to which it was otherwise entitled. But now we know that Unigestion itself was fully paid for every call it completed.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

In these circumstances, justice requires that the Court reconsider the Opinion and Order, vacate that ruling, and issue a new ruling granting UPM's motion to dismiss the case. Simply stated, reading the Amended Complaint as Unigestion now says that it should be read, Unigestion is not entitled to any relief.

The language in the Amended Complaint that confusingly lumps together Unigestion and its United States affiliate (and perhaps other affiliates as well) is pervasive. Moreover, that lumping together – that treatment of Unigestion and its affiliates as a single entity – is central in allowing Unigestion to allege damages at all. In these circumstances, a fair reading of the situation is that Unigestion was content to have this Court believe that Unigestion itself was responsible for handling Haiti-bound calls all the way from the United States gateway switches back to Haiti, when that meant that Unigestion's Amended Complaint would not be dismissed. However, once UPM's counterclaims alerted Unigestion to the fact that the United States activities for which Unigestion sought "credit" would impose significant responsibilities on Unigestion under United States law (the Communications Act), Unigestion immediately tried to disavow any such role. Even indulging the assumption that the language of the Amended Complaint was not intentionally misleading, UPM submits that Unigestion's counsel had an obligation to promptly correct what was (if Unigestion is now to be believed) an obvious and material misunderstanding by the Court.[12]

In this regard, UPM submits that failure by Unigestion's counsel to promptly advise the Court (and UPM) that the Opinion and Order was based on a material misunderstanding may well constitute an instance in which an attorney "unreasonably and

---

[12]    Oregon Rules of Professional Conduct, Rule 3.3(a)(1) ("(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal *or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer*") (emphasis added). *Cf.* 28 U.S.C. § 1927 (attorney liable for costs resulting from "unreasonably and vexatiously" "multipl[ying] the proceedings").

Page 14 of 15 - DEFENDANTS' MEMORANDUM IN SUPPORT TO MOTION TO DISMISS
UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION
TO DISMISS UNDER RULE 12(b)(6).
UPM-L1\00234075.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

vexatiously" "multiplies the proceedings" within the meaning of 28 U.S.C. § 1927.[13]    Had Unigestion's counsel promptly corrected the misunderstanding on which the Opinion and Order was based, it seems clear that the Court would have granted UPM's motion to dismiss.  In that event, UPM would not have had to incur the expense and effort of drafting an answer and counterclaims; would not have had to incur the expense and effort of defending against Unigestion's motion to dismiss those counterclaims; and would not have had to incur the expense and effort of prosecuting the instant motion.  At a minimum, if – as Unigestion now claims – it operates "strictly" within Haiti and has nothing to do with any activities in the United States, UPM's counterclaims would, at a minimum, have been framed quite differently.  UPM is not, in this motion, seeking compensation for the costs it has incurred since the Opinion and Order issued, whether under 28 U.S.C. § 1927 or otherwise.  In fairness, however, UPM believes it to be appropriate to bring this potential issue to the attention of both the Court and Unigestion, and notes that it may formally seek such redress in the future.

## CONCLUSION

The Amended Complaint should be dismissed because it appears, in light of Unigestion's recent filings, that Unigestion itself has not been damaged by any UPM conduct, and thus lacks standing to pursue the claims in the Amended Complaint.  Because Unigestion

/ / /

/ / /

/ / /

/ / /

---

[13]    Section 1927 "authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced." *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.,* 210 F.3d 1112, 1117-18 (9th Cir. 2000) *citing Cunningham v. County of Los Angeles,* 879 F.2d 481, 490 (9th Cir. 1988); *id* at 1119 ("an attorney does not simply act as an advocate for his client; he is also an officer of the court. As such, an attorney has a duty of good faith and candor in dealing with the judiciary), *quoting United States v. Associated Convalescent Enters. Inc.,* 766 F.2d 1342, 1346 (9th Cir. 1985).

Page 15 of 15 - DEFENDANTS' MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6).
UPM-L1\00234075.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

lacks standing, this Court lacks jurisdiction over this matter.  For the same reason, the Court should reconsider the Opinion and Order denying UPM's earlier motion to dismiss the Amended Complaint and issue a new ruling dismissing it.

Dated: June 3, 2016.

TOMASI SALYER BAROWAY

By:/s/ Kathryn P. Salyer
    Kathryn P. Salyer, OSB #883017
    ksalyer@tsbnlaw.com
    Telephone: (503) 894-9900

    Of Attorneys for Defendants

DAVIS WRIGHT TREMAINE

By:/s/ Christopher W. Savage
    Christopher W. Savage (Pro Hac Vice)
    chrissavage@dwt.com
    Telephone: (202) 973-4200

    Of Attorneys for Defendants

Page 16 of 2 - DEFENDANTS' MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6).
UPM-L1\00234075.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2016 I served the foregoing **DEFENDANTS'**

**MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3)**

**AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS**

**UNDER RULE 12(b)(6)** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Richard K. Hansen
Anne M. Talcott
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Email: rhansen@schwabe.com
Email: atalcott@schwabe.com

Dated: June 3, 2016.

TOMASI SALYER BAROWAY

By: s/ Kathryn P. Salyer
    Kathryn P. Salyer, OSB #883017
    (503) 894-9900
    ksalyer@tsbnwlaw.com
    Attorneys for Defendants

DAVIS WRIGHT TREMAINE LLP

By:/s/ Christopher W. Savage
    Christopher W. Savage (*Pro Hac Vice*)
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    Of Attorneys for Defendants