**Kathryn P. Salyer**, OSB #883017
ksalyer@tsbnwlaw.com
**Eleanor A. DuBay**, OSB #073755
edubay@tsbnwlaw.com
Tomasi Salyer Baroway
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage** (*Pro Hac Vice*)
chrissavage@dwt.com
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>Plaintiff,<br><br>v.<br><br>**UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., *et al.*<br><br>Defendants. | Case No. 3:15-CV-00185-SI<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6)** |

Defendants UPM Technology, Inc. d/b/a UPM Telecom, Inc., *et al.* (collectively

"UPM"), hereby reply to Plaintiff Unigestion Holding, S.A.'s Response in Opposition to

Defendant's Motion to Dismiss Rule 12(h)(3) or for Reconsideration (Doc. #92) (the "Opposition").[1]

Unigestion presents no facts to defend its claim to standing in this case, even though, once the factual basis of its standing has been challenged, it bears the burden of proof. *See, e.g., Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Unigestion lacks standing because – given its current position that it operates "strictly within Haiti" – none of its claims allege any economic or other cognizable harm that *it itself* has suffered by reason of UPM's alleged conduct.  *See* Plaintiff Unigestion Holdings S.A.'s Motion to Dismiss Defendants' Counterclaims (Doc. #80) at 7.  *See also id.* at 11. To the contrary, Unigestion only completed calls for which it had been fully paid by virtue of UPM's purchase of SIM cards and airtime.  *See* Amended Complaint (Doc. #34) at ¶ 64 (credits – the ability to pay for calls – are added via "recharges" and "top-ups"); ¶ 39(d) (UPM software allegedly arranges for "recharge" of SIM cards); ¶ 61 (SIM card "becomes active" when a "recharge takes place"). None of Unigestion's various theories of damages can survive the fact that Unigestion got paid for the work it did.  Moreover, had Unigestion been forthright about what it now says are the facts in its Amended Complaint – that is, had it plainly said that the $0.23/minute rate (that it claims is the minimum for getting calls to Haiti from the U.S.) *was charged and collected by a non-party affiliate* – this case would never have been allowed to go forward.

For these reasons, and for those stated in UPM's Motion to Dismiss or Reconsider, UPM requests that the Court dismiss this matter for lack of standing, or, in the alternative, reconsider its earlier ruling denying UPM's Motion to Dismiss the Amended Complaint.

---

[1]    As in Defendant's Memorandum in Support of Motion to Dismiss under Rule 12(h)(3) and, in the Alternative, to Reconsider Denial of Motion to Dismiss under Rule 12(b)(6) (Doc. #89) ("Motion to Dismiss or Reconsider"), UPM refers to the Plaintiff in this case as "Unigestion."

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## I. UNIGESTION BEARS THE BURDEN OF PROVING THAT IT HAS STANDING, AND MAY NOT RELY ON ITS PLEADINGS TO ESTABLISH IT.

When a defendant raises a challenge to the factual basis of jurisdiction, "[no] presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)). "In resolving a factual attack on jurisdiction, the district court . . . need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see also St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (holding after the district court dismissed on Article III grounds that: "Appellants argue that the decision is in error because the district court failed to assume the truth of the facts alleged in the complaint and that those facts do not support its conclusion. The district court did not err."). "Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *see also Osborn v. United States*, 918 F.2d 724, 729, n.6 (8th Cir. 1990) ("In a factual challenge to jurisdiction, the court may consider matters outside the pleadings, and the non-moving party does not benefit from the safeguards of Rule 12(b)(6)"). Further, "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Thornhill*, 594 F.2d at 733 (quoting *Mortensen*); *see also St. Clair*, 880 F.2d at 201 (if jurisdiction is challenged factually, "It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction").

Based on statements that Unigestion made outside of the pleadings (in filings subject to Rule 11), the factual basis of Unigestion's standing (and, thus, the Court's jurisdiction)

was reasonably called into question.  UPM's currently pending motion formally presents that issue for resolution.  In these circumstances, Unigestion may not simply rely on the allegations of its Amended Complaint (whether construed liberally or not) as a basis for establishing its standing.  To the contrary, given that its own statements, outside the pleadings, have reasonably brought its standing into question, Unigestion now bears the burden of showing – via actual factual evidence – that it has standing to proceed.

Unigestion has failed to meet that burden.  As an initial matter, however, Unigestion is simply wrong to suggest that UPM's Motion to Dismiss or Reconsider for lack of standing is to be decided on the basis of a liberal reading of the allegations in the Amended Complaint.  Opposition at 5-6.  UPM's motion is not based on those allegations; to the contrary, taking those allegations as true, they establish that Unigestion is and has been operating as an unlicensed and unauthorized international common carrier, whose violations of the Communications Act entitle UPM to substantial damages, as indicated in UPM's counterclaims.  The problem is that Unigestion, in the course of opposing those counterclaims, has made factual assertions that are directly contrary to those in the Amended Complaint.  Those assertions put the basis of Unigestion's standing (and the Court's jurisdiction) directly at issue *as a factual matter.*  Because the Court has no power to act if Unigestion lacks standing, the question must be resolved now, based on actual facts, not mere allegations.  As one federal district court explained:

> "'The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.'"  *United States v. Hays,* 515 U.S. 737, 742, 132 L. Ed. 2d 635, 115 S. Ct. 2431 (1995) (*quoting FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 230-31, 107 L. Ed. 2d 603, 110 S. Ct. 596 (1990)) (internal quotation marks omitted); *see also Sommers Drug Stores Company Employee Profit Sharing Trust v. Corrigan,* 883 F.2d 345, 348 (5th Cir. 1989) ("'Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding, and not merely when the action is initiated or during an initial appeal.'") (*quoting Safir v. Dole,* 231 U.S. App. D.C. 63, 718 F.2d 475, 481 (D.C. Cir. 1983), *cert. denied,* 467 U.S. 1206, 81 L. Ed. 2d 347, 104 S. Ct. 2389 (1984)); *University of South Alabama v. American Tobacco Company,* 168 F.3d 405, 410 (11th Cir. 1999) (noting that "it is well

Page 4 of 13 - DEFENDANTS' REPLY MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6)

UPM-L1\00249686.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

*Leon v. Dallas County Hospital Dist.,* 2001 U.S. Dist. LEXIS 6003 (N.D. Tex. May 9, 2001) at [*7]. *Cf. Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"), *quoting Mansfield, C. & L. M. R. Co. v. Swan,* 111 U.S. 379, 382 (1884).

## II.  UNIGESTION HAS FAILED TO ESTABLISH STANDING.

UPM notes at the outset that Unigestion has not presented any actual evidence (in the form of affidavits, documents, or otherwise) to establish that it has standing. That alone is a sufficient basis for the Court to grant UPM's motion and dismiss this case.  Unigestion has simply failed to meet its burden of proof.  Instead, Unigestion relies on arguments based on the language of its Amended Complaint – language whose plain meaning Unigestion itself has repudiated – to try to salvage the viability of its lawsuit.  As described below, none of Unigestion's claims has merit, and the case should be dismissed.

### A. Unigestion's Claims of "Access Device Fraud" Do Not Support Standing When Unigestion Has Been Fully Paid for the Use of Its Network.

Unigestion argues that it has sufficiently alleged damages under the "Access Device Fraud Statute," 18 U.S.C. § 1029.  It claims that it has alleged that UPM violated that statute and that this alleged violation is sufficient to support standing of Unigestion's claims under the Racketeer Influenced Corrupt Organization ("RICO") Act.  Opposition at 6-7.  This argument fails.

As Unigestion itself notes, standing under RICO pursuant to 18 U.S.C. § 1964(c) requires that the plaintiff be "injured in his business or property."  Opposition at 6-7.  Here, however, Unigestion only completed calls for which UPM had paid, by virtue of buying SIM

Page 5 of 13 - DEFENDANTS' REPLY MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6)
UPM-L1\00249686.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

cards and airtime at full retail rates.[2]   Unigestion vaguely argues that UPM has "misused" and "abused" those SIM cards, *id.* at 6, but, notably, it does not allege that UPM failed to pay for them.   Indeed, in every case which UPM could find involving the application of the Access Device Fraud Statute to wireless calling, courts have interpreted the statute to require that an allegedly illicit device be used to obtain ***free, unpaid*** use of a wireless network, whether by stealing minutes paid for by a third party, or by tricking the system into permitting usage without payment.   *See United States v. Kimbrough,* 1997 U.S. App. LEXIS 2887 (7th Cir. 1997) at [*2] (applying Section 1029 to "cloning" scheme in which wireless calls are billed to an innocent third party's account); *United States v. Pervaz,* 118 F.3d 1, 3 (1st Cir. 1997) (same); *United States v. Sepulveda,* 115 F.3d 882, 884 (11th Cir. 1997) (noting that Section 1029 applies to both "cloning," which bills calls to a third-party account, and "tumbling," which uses random account information to make calls without payment); *United States v. Morris,* 81 F.3d 131, 132 (11th Cir. 1996) (applying Section 1029 to supplying phones that "access cellular services without charge"); *United States v. Ashe,* 47 F.3d 770, 771 (6th Cir. 1995) (applying Section 1029 to schemes permitting phones to "avoid charges" and to make calls "without charge"); *United States v. Bailey,* 41 F.3d 413, 415 (9th Cir. 1994) (applying Section 1029 to a "tumbling" arrangement under which calls would be completed "even though [they] could never be billed"); *United States v. Brady,* 13 F.3d 334, 336 (10th Cir. 1993) (applying Section 1029 to "tumbling" arrangement under which phones could make calls "without ever being charged for the calls").   Thus, an intrinsic element of Section 1029 in the cellular context entails ***getting phone service without paying for it.***

That is simply not what Unigestion is alleging here.   To the contrary, Unigestion nowhere alleges that UPM failed to pay for the SIM cards and airtime it used, and, in fact,

---

[2]    *See* Amended Complaint (Doc. #34) at ¶¶ 64, 39(b), & 61.   Unigestion claims that it has been "deprived of the value of international telecommunications minutes," Opposition at 6, but its current

(note continued…)

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Unigestion's allegations show that it was paid at full retail rates for every minute it provided.  *See* Amended Complaint (Doc. #34) at ¶¶ 64, 39(b), & 61.  Unigestion, therefore, was not injured by virtue of UPM's alleged activities.  As a result, claims of violation of the Access Device Fraud Statute cannot provide standing.  Again, because the RICO statute (18 U.S.C. § 1964(c)) requires that the plaintiff be "injured," the Access Device Fraud Statute is no help to Unigestion here.[3]

**B. Unigestion's Lack of Involvement In Operations Outside Haiti – Not The Mere Fact That It Does Not Own The Gateway Switches – Shows That It Lacks Standing To Complain About "Bypass."**

Unigestion mistakenly claims that UPM's argument depends on which entity owns the gateway switches.  *See* Opposition at 7-9; *see also id.* at 2 (suggesting that UPM's argument is that "ownership of the switches is somehow determinative of the Court's subject matter jurisdiction"); *see also id.* at 3 (suggesting that one of Unigestion's RICO claims "does not include a unique claim founded on operation and ownership of switches" in the United States); *id.* at 2 (referring to "factual concerns regarding the ownership" of the switches).  The fact that Unigestion neither owns nor operates the gateway switches is certainly important, if nothing else, it shows that Unigestion's verified Amended Complaint contains materially false statements. The critical point, however, is that Unigestion's recent filings draw a circle around the island of Haiti and assert that Unigestion's operations occur "strictly within" that circle.  That means that any ***damages*** to Unigestion, as opposed to some third party, must have occurred within it.  Given

---

…(note continued)

claim that it operates "strictly within Haiti" shows that it is one or more third parties, not Unigestion, that is entitled to payment for the relevant international carriage.

[3]    Unigestion alludes to "damages caused by [UPM's] bypass operations," Opposition at 7, but since Unigestion supposedly operates "strictly within Haiti," it is not and cannot be harmed by any claimed "bypass."  It also refers vaguely to the "illicit connection of calls to and through [Unigestion's] telecommunications network," *id.,* but even if the connections were indeed somehow "illicit," the fact remains that Unigestion was fully paid for each call it completed.  Mere alleged "illicitness" does not constitute a concrete injury under Article III.  *See infra.*

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

that Unigestion only completed calls for which it was paid, those damages are necessarily zero.[4] To the extent that any entity was harmed by virtue of UPM "bypassing" the switches (and associated US-Haiti transmission facilities and services), that entity was not Unigestion.

This central fact dooms Unigestion's claims.[5]  Its assertion of damages is predicated on the notion that it, itself, was entitled to get $0.23/minute for calls that originate in the United States, and that UPM deprived it of that revenue.  Its current position, however, is that it is third parties (presumably affiliates) that are entitled to the $0.23/minute for the combined job of getting calls from the United States to Haiti and terminating calls on Unigestion's network.  As the Court understood, Unigestion itself was always paid (by payments for SIM cards and airtime) for that latter function.  *See* Opinion and Order (Doc. #58) at 22 (noting that damages would be the $0.23/minute *minus* the amounts paid for airtime).  In the absence of any lost revenue for the work that Unigestion itself does, each Count of Unigestion's Amended Complaint collapses.[6]

---

[4]    In this regard, Unigestion recently admitted in discovery that "[Unigestion] SIM cards were available for purchase in Haiti during 2013 and 2014 without being accompanied by any written contractual documents governing their use."  Plaintiff Unigestion Holding S.A.'s Answers and Objections to Defendant's First Request for Admissions, Answer to Request for Admission No. 43.  (Copy attached as **EXHIBIT 1**.)  Among other things, this means that to the extent that Unigestion chose to spend resources trying to block calls from UPM's paid-up SIM cards, such costs were voluntarily incurred and cannot be laid at UPM's door.  *See* Opposition at 4; *id.* at 8 (quoting Amended Complaint (Doc. #34) at ¶ 148(b)). Because UPM cannot fairly be said to have caused Unigestion to incur these costs, they cannot support Unigestion's claims to standing, *i.e.,* any such injuries to Unigestion are not "fairly traceable to the challenged conduct" of UPM.  *Spokeo, Inc. v. Robins,* __ U.S. ___, 136 S. Ct. 1540, 1547 (2016).

[5]    *See* Amended Complaint, ¶ 133 (Count I/RICO based on claimed loss of revenue); *id.,* ¶¶ 156, 158 (Count IV/"Roam Like You're Home" based on claimed loss of revenue); *id.,* ¶¶ 165, 167 (Count V/IP Calls based on claimed bypass and loss of revenue); *id.,* ¶ 172 (Count VI/Civil Conspiracy based on claimed loss of revenue); *id.,* ¶ 177 (Count VII/Conversion based on claimed loss of revenue); *id.,* ¶ 182 (Count VIII/Unjust Enrichment based on claimed loss of revenue).

[6]    As UPM pointed out in its Motion to Dismiss or Reconsider, the policy of the United States, through the Federal Communications Commission ("FCC") is to *encourage* bypass of high international carrier charges.  Motion to Dismiss (Doc. #89) at 10.  On this point, *see also* C. Kiser & A. Collins, *Regulation on the Horizon: Are Regulators Poised to Address the Status of IP Telphony?*, 1 COMMLAW CONSPECTUS 19 (2003) at 19 ("the current regulatory regime exempts IP telephony providers from the obligation to pay … international settlement rates"); D. Lampert, *No Sight Like Hindsight: The 1996 Act and the View Ten Years Later,* 58 FED. COMM. L. J. 519, 522-23 (2006) (FCC policy is to encourage the use of IP-based telephony to "address the thorny problem of exorbitant international settlement rates").  UPM notes that Unigestion's Opposition entirely ignores this crucial hole in its legal theories.

---

Page 8 of 13 - DEFENDANTS' REPLY MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6)
UPM-L1\00249686.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

The only possible exceptions are portions of Count II (Amended Complaint, ¶ 141) and of Count III (Amended Complaint, ¶ 148). In these counts, Unigestion alleges harm to its "reputation" and "goodwill" and similar vague, intangible harms. The Ninth Circuit has held, however, that injuries to intangible interests (such as reputation and potential lost business) are not "injuries" under RICO. *See Oscar v. University Students Co-Op Assn.,* 965 F.2d 783, 785-87 (9th Cir. 1992) (*en banc*); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 406 (9th Cir. 1991). In Article III terms, the Supreme Court has recently emphasized the critical importance of "concreteness" of injury in assessing standing. *Spokeo, supra,* 136 S. Ct. at 1548-50. Making such an assessment requires the application of sound judicial judgment "in the context of [the] particular case." *Id.* at 1550. UPM submits that in the context of *this* case, Unigestion's claimed nonmonetary injuries cannot reasonably be viewed as sufficiently specific and concrete to support standing, particularly in the absence of real economic or similarly definite injuries, which, in light of Unigestion's current version of the facts, do not exist.

### III. RECONSIDERATION OF THE COURT'S EARLIER RULING IS PROCEDURALLY APPROPRIATE AND SHOULD BE GRANTED ON THE MERITS.

Unigestion claims that UPM's request that the Court reconsider its earlier ruling is "procedurally improper." Opposition at 3-4. This claim is without foundation. A district court "has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment." *American Med. Response Northwest, Inc. v. Ace American Ins. Co.,* 31 F. Supp. 3d 1087 (D. Or. 2014), *citing Smith v. Massachusetts,* 543 U.S. 462, 475 (2005) (emphasis added, internal quotes omitted). As the Ninth Circuit has observed:

> The general rule regarding the power of a district court to rescind an interlocutory order is as follows: "As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind,* or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.,* 659 F.2d 551, 553 (5th Cir. 1981) (emphasis added); see also Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1315 (11th Cir. 2000) (stating that when a district court issues "an interlocutory order, the district court has plenary power over it and this power to reconsider, revise, alter or amend the interlocutory order

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

is not subject to the limitations of Rule 59"); *High Country Arts and Craft Guild v. Hartford Fire Ins. Co.,* 126 F.3d 629, 635 (4th Cir. 1997) (same); *Wagoner v. Wagoner,* 938 F.2d 1120, 1122 n. 1 (10th Cir. 1991) (same).

*City of Los Angeles v. Santa Monica BayKeeper,* 254 F.3d 882, 885 (9th Cir. 2001) (emphasis in original).  There is nothing "procedurally improper" in UPM asking the Court to exercise its inherent power to take a fresh look at its earlier ruling in light of the new facts presented in Unigestion's attacks on UPM's counterclaims.

Substantively, UPM agrees with Unigestion that the Court itself is in the best position to assess what factual conclusions and assumptions underlay its earlier ruling. *See* Opposition at 4.  That said, it seems clear that the Court assumed (as UPM did) that the only sensible reading of the Amended Complaint was that Unigestion itself owned, operated, and controlled both the "gateway" switches in New York and Miami and the facilities and services used to transport calls from those switches back to Haiti; that Unigestion was paid (at its own retail rates) for the work it did completing calls "strictly within Haiti" (by means of taking the money for the SIM cards UPM used); and that, as a result, Unigestion's allegations of damages all depend on UPM "bypassing" the gateway switches and US-Haiti transport links – not on anything that is alleged to have occurred "strictly within Haiti."  If the Court indeed made its earlier ruling on the basis of that reading of the Amended Complaint, then reconsideration is clearly warranted.  Put more directly, since Unigestion's own allegations show that it was paid for all work that it did "strictly within Haiti," it has no grounds for recovery of any damages from UPM, and its case should be dismissed.[7]

---

[7]    As noted above, as a matter of general FCC policy, calls made using IP-based telephony are not subject to international settlement rates (which may be what Unigestion is referring to when it discusses the supposed "minimum" $0.23/minute that applies to US-Haiti calls).  Given this FCC policy, UPM submits that any Unigestion claim that it has a right enforceable in United States courts to receive that payment cannot survive.  As also noted above, Unigestion entirely ignores this point in its opposition to UPM's motion to dismiss.  In fact, this aspect of United States policy provides yet another basis for reconsideration of the Court's earlier ruling choosing not to dismiss the Amended Complaint.

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Unigestion seeks to avoid the conclusion that it has not been damaged (and that its case should therefore not be dismissed) by emphasizing that the Court's earlier ruling was "bottomed on theories of fraud." Opposition at 4. But (as this Court has recently observed) an essential element of a fraud claim is that the supposed victim must be "***damaged as a result of [its] reliance***" on the allegedly fraudulent representation. *See Horner v. Plaza Home Mortg., Inc.,* 2016 U.S. Dist. LEXIS 85941 (D. Or. July 1, 2016) at [*5] (emphasis added) ("The essential elements of a common law claim for fraud are: the defendant made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended the plaintiff to rely on the misrepresentation; the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance"), *quoting Strawn v. Farmers Ins. Co.,* 350 Or. 336, 351-52, 258 P.3d 1199 (2011). Unigestion's statement that it operates "strictly within Haiti" shows that Unigestion itself was not damaged by any "bypass" in which UPM allegedly engaged. Any "damages" that arose from UPM's activities – and UPM denies that bypassing any carrier on any route between the US and a foreign nation could ever constitute legally cognizable "damages" – were incurred, not by Unigestion, but, evidently, by some third party.[8]

Finally, to the extent that statutory "standing" under RICO is considered conceptually separate from Article III standing, UPM emphasizes, as noted above, that RICO does not permit recovery for non-pecuniary losses such as damages to goodwill, reputation, etc. *Oscar,* 965 F.2d at 785-87; *Lancaster Cmty. Hosp.,* 940 F.2d at 406. As a result, once Unigestion's lack of actual damages is taken into account, leaving at most, claims addressing alleged non-monetary harms, those claims should be dismissed on the merits on reconsideration

---

[8]     It may be, as Unigestion claims, that it would have preferred not to complete calls delivered to Haiti by UPM rather than its affiliate, evidently as part of an effort to support its affiliate to effectively monopolize carriage on the US-Haiti route. *See* Opposition at 4. But even if UPM's actions frustrated that preference, that frustration does not does not amount to cognizable economic damage ***to Unigestion,*** which, as noted, was paid for the work it performed "strictly within Haiti."

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

as not stating a claim, even if they were held sufficient, in the abstract, to convey Article III standing.

In sum, by asserting that its operations are limited to Haiti, Unigestion has necessarily eliminated the basis for any claim that it, itself, is or could be damaged as a result of "bypass", whether somehow "fraudulent" in nature or otherwise.  Since the notion of "bypass fraud" was the bedrock on which the Amended Complaint was based, Unigestion's new position clearly warrants reconsideration of the Court's earlier ruling.

## IV.    UNIGESTION'S CLAIM FOR COSTS AND FEES IS FRIVOLOUS.

Unigestion has no basis for recovering costs or fees from UPM in connection with UPM's challenge to Unigestion's standing.  *See* Opposition at 8-9.  Unigestion's position regarding what activities it itself performs (and thus might be entitled to be paid for) has plainly changed, radically and materially, as between its Amended Complaint and its filings in opposition to UPM's counterclaims.  The discussion in UPM's Motion to Dismiss or Reconsider and in this Reply show that the challenge to Unigestion's standing is well-founded and is not in any way (in the terms of 28 U.S.C. § 1927) "vexatious."  For this reason, and assuming that Unigestion's currently stated view as to the facts turns out to be correct, *UPM* may well be entitled to recovery of costs and fees from *Unigestion,* for the reasons alluded to in UPM's Memorandum.  UPM, however, will defer any potential motion formally seeking such a recovery until after the Court rules on UPM's pending Motion to Dismiss or Reconsider.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 12 of 13 - DEFENDANTS' REPLY MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6)
UPM-L1\00249686.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CONCLUSION

For the reasons stated here and in UPM's Memorandum, the Amended Complaint should be dismissed because Unigestion lacks standing and, in the alternative, the Court should reconsider the Opinion and Order denying UPM's earlier motion to dismiss the Amended Complaint and issue a new ruling granting it and dismissing the Amended Complaint.

Dated: July 8, 2016.

TOMASI SALYER BAROWAY

By: /s/ Kathryn P. Salyer
    Kathryn P. Salyer, OSB #883017
    ksalyer@tsbnlaw.com
    Telephone: (503) 894-9900

    Of Attorneys for Defendants

DAVIS WRIGHT TREMAINE

By: /s/ Christopher W. Savage
    Christopher W. Savage (Pro Hac Vice)
    chrissavage@dwt.com
    Telephone: (202) 973-4200

    Of Attorneys for Defendants

Page 13 of 13 - DEFENDANTS' REPLY MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6)
UPM-L1\00249686.000

*TOMASI SALYER BAROWAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2016 I served the foregoing **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT TO MOTION TO DISMISS UNDER RULE 12(h)(3) AND, IN THE ALTERNATIVE, TO RECONSIDER DENIAL OF MOTION TO DISMISS UNDER RULE 12(b)(6)** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Richard K. Hansen
Anne M. Talcott
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Email: rhansen@schwabe.com
Email: atalcott@schwabe.com

Dated: July 8, 2016.

TOMASI SALYER BAROWAY

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    (503) 894-9900
    ksalyer@tsbnwlaw.com
    edubay@tsbnwlaw.com
    Attorneys for Defendants

DAVIS WRIGHT TREMAINE LLP

By:/s/ Christopher W. Savage
    Christopher W. Savage (*Pro Hac Vice*)
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    Of Attorneys for Defendants