IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNIGESTION HOLDING, S.A., a foreign corporation, dba DIGICEL HAITI, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:15-cv-00185-SI |
| | ) | |
| v. | ) | |
| | ) | July 22, 2016 |
| UPM TECHNOLOGY, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | Portland, Oregon |
| _____ | ) | |

ORAL ARGUMENT

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL H. SIMON

UNITED STATES DISTRICT COURT JUDGE

APPEARANCES

FOR THE PLAINTIFF(S):

ROBERT C.L. VAUGHAN
Kim Vaughan Lerner LLP
One Financial Plaza
Suite 2001
Fort Lauderdale, FL 33394

FOR THE PLAINTIFF(S):

RICHARD K. HANSEN
Schwabe Williamson & Wyatt PC
1211 SW 5th Avenue
Suite 1900
Portland, OR 97204

FOR THE DEFENDANT(S):

CHRISTOPHER W. SAVAGE
Davis Wright Tremaine LLP
1919 Pennsylvania Ave., NW
Suite 200
Washington, D.C 20006

FOR THE DEFENDANT(S):

KATHRYN P. SALYER
Tomasi Salyer Baroway
121 SW Morrison Street
Suite 1850
Portland, OR 97204

FOR THE DEFENDANT(S):

ELEANOR A. DUBAY
Tomasi Salyer Baroway
121 SW Morrison Street
Suite 1850
Portland, OR 97204

COURT REPORTER:    Jill L. Jessup, CSR, RMR, RDR, CRR
United States District Courthouse
1000 SW Third Avenue, Room 301
Portland, OR 97204
(503)326-8191

* * *

TRANSCRIPT OF PROCEEDINGS

DEPUTY COURTROOM CLERK:  Your Honor, this is the time set for oral argument in Civil Case 16-824-SI.

I'm sorry.  Wrong case there.  Let me get the right one here.  Case No. 15-CV-185-SI, Unigestion SA -- Unigestion Holding SA v. UPM Technology, Inc., et al.

Could I have counsel in court, beginning with plaintiff, please identify yourself for the record.

MR. VAUGHAN:  Good morning, Your Honor. Robert Vaughan and Richard Hansen representing Digicel Haiti, and with us at counsel table are -- just behind counsel table is Mr. David Gary (phonetic) of Digicel.

THE COURT:  Welcome.

MS. SALYER:  Good morning, Your Honor, Kathryn Salyer with Tomasi Salyer Baroway.  I'm here with my colleague Eleanor DuBay, and new to the table with me is Mr. Chris Savage.  He is with Davis Wright Tremaine.  He is the co-chair of the communications department, and I brought him in because he has 30 years of telephone experience.

THE COURT:  Welcome.  All right.  I know you all have seen my tentative opinion and order on several pending motions. We have the motion filed by plaintiff to dismiss counterclaims. That's Docket 80.  We have plaintiff's motion for judicial notice, Docket 87.  And we have defendant's motion to dismiss for lack of jurisdiction or, in the alternative, to

reconsidering.  That's Docket 89.  You have my tentative opinion and order.  I look forward to your arguments.  In particular, pointing out whether I have misunderstood, misstated, or omitted any important legal or factual material.

The only thing I ask is that there be no discussion of medical testimony in this case.

Okay.  Whoever wants to proceed first.

MR. ROBERTS:  Well, you just gutted my argument.

Your Honor, I asked, at the Court's request, that we be allowed just a few minutes, and I -- and I hinted that I may not have much to say with respect to the Court's order.  I'm compelled to say that since the Court invited our input, while we certainly disagree with some of the conclusions and we disagree with the lens through which the Court has viewed some of the allegations and facts presented to it, we understand the order; and I don't think I can quibble with that rationale, especially not at this stage.

So, in the interest of full disclosure, we would, since you ask, say we do take some exception.  We understand the order, and I'm not going to argue those points because, frankly, I think there's something much more important that the plaintiff would like to raise.

In the Court's order, the Court indicated some concern as to misunderstanding, mis-argument, or misperception with respect to a point that, frankly, on our side, has become more

of an issue of the tail wagging the dog, and that is the issue of the ownership of the switches in Miami and New York.

I will be frank, and I will let you know right off the bat, before I say anything else, after multiple rereadings, I've concluded that it was an awkward and it was an unfortunate miss on my part. I'm the guy responsible for the final product. The miss was simple, and it's this: In defining Unigestion, plaintiff, I allowed my team to define it -- I probably was the one who did it -- as Unigestion aka Digicel Haiti, aka Digicel. That's the error. I should have never said "aka Digicel." Because why? Because just like AT&T or T-Mobile. Nobody says AT&T USA, AT&T Wireless, AT&T, you know, Singapore. We say "AT&T." Maybe it's lazy. Maybe it's just too familiar with the facts that I'm trying to grasp.

THE COURT: Sometimes it matters and sometimes it doesn't, and sometimes we don't realize how much it matters until we learn a little bit more.

MR. VAUGHAN: Absolutely. The problem is, Judge, my nonchalance has created more of an issue than I anticipated or realized because the Court then goes on to say that after you identify that you may have read "Digicel" to mean that Digicel Haiti owned the switches -- and this is where in the order you have essentially made it imperative that I travel across the country for this hearing, Mr. Hansen said -- and I'll tell you why, but Mr. Hanson said, "We have to be there," and my client

said, "We have to be there."  Because the Court seemed concerned that it was clear to us that there was a misunderstanding, and I didn't correct it.

For what it's worth, as an officer of the Court, even at that point I still didn't see it.

Opposing counsel, in their papers, raised for us for the first time that there was probably this misunderstanding, and I will again tell you my response, you will see in the papers, was that they were overly aggressive; it was an abuse of the reading of the complaint; and, frankly, it was more than zealous advocacy.

Then the Court read it and said, "I saw the same thing." And I went, "Oops, now I really have to address it."

I will tell the Court, first, as a matter of fact, it is incorrect to say that Digicel Haiti owns the New York and Miami switches.  As a matter of fact, that is incorrect, could never be proven to be so, never one of our theories.

As a matter of substantive law and impact on this case, we would say it's a matter of insignificance.  Why?  None of our theories are predicated upon Digicel Haiti owning the New York or Miami switch.  And, as I've said to the Court, I've thought about it many, many, many, many, many times, and I've tried to figure out a way to best illuminate or illustrate what we're saying.

The best I could come up with is an analogy to a turnstile

at a subway station or at a train station.  If you imagine that the train company has this operation, if you imagine that the train company has a third party managing its turnstile operations, its ticket booths, if someone jumps the turnstile or enters the train somewhere mid-track and gets a ride on the train for either free or less than the full price, can we really say that it's a turnstile booth operator who has lost funds?  No.  It's the train company.

That's all we've been saying.  It's still described as jumping the turnstile.  It's still described as bypass fraud, but we never intended to suggest that the tort took place or revenue was lost at the switch.

Now, I would love to say, Judge, that, as an officer of the court, my saying this to you and as the judge presiding over this, you hearing this from an officer of the court should be sufficient.  I'm not so naive nor so inexperienced.

THE COURT:  No.  Listen, Mr. Vaughan.  I accept what you say.  I, as of right now, have no reason to disagree.  I'll wait and see whether or not there's some relevant point the defendants call other facts to my attention.  I totally accept it.

However, it's critically important we have precision in the pleadings so that we have precision in the result.  By the way, it's not uncommon.  I just finished a jury trial last night where what was actually presented at trial bore

relatively little resemblance to the very first iteration of the complaint when the complaint was filed two years ago.

I have very little doubt that when I read the Ninth Circuit opinion, whether it affirms or reverses, I'll say, "Oh, that wasn't the case that I tried."  And then, when I read the U.S. Supreme Court's opinion, I'll say, "That wasn't my case." The same thing will probably happen in this case.

But the key is I think we need an amended complaint from the plaintiff.  I see no undue prejudice to defendant for allowing plaintiff to amend the complaint.

Am I correct?

MR. SAVAGE:  I'm not sure you are, Your Honor.

THE COURT:  Really?  Okay.  We'll talk about that in a minute, but, unless there's some undue prejudice, it seems like the right thing to do, at some appropriate time, to let the plaintiff amend the complaint, let the defendant amend the answer and the counterclaims.  Maybe defendant needs a bit more discovery before they do that, but we'll talk about timing. But in a moment, especially in light of what Mr. Savage said, I feel like turning to him relatively soon to tell me what the prejudice will be in allowing the plaintiff to amend the complaint, but I do want to let you finish your comments, Mr. Vaughan, and I apologize for interrupting.

MR. VAUGHAN:  Not at all, Judge.  Not at all.  You may have shortened my comments significantly because I agree.

It was going to conclude with two more points.

For what it's worth -- please don't take this the wrong way, but were it not for our very early realization and determination that Digicel Haiti does not own those switches, we would not be in Oregon. Our initial thought was to bring the case in federal court in Florida or in New York. There was no jurisdiction because they didn't own the switches or realize revenues. The torts weren't there. So we are where the defendants are.

So that ends that discussion.

With respect to what the Court alluded to earlier, I do think that an amendment is appropriate, and we've thought about what and to what extent and if maybe I preempt some of the concern. We don't think that a full-throttled, full-blown change of theory and a complaint is appropriate, nor would we want to do that.

Funny enough, in your tentative order, you identified, in the alternative theory, "If that's not what they're saying, then clearly what they're saying is this." That's exactly what we --

THE COURT: That's obvious.

MR. VAUGHAN: So it's my fault that what you identify as the alternative was actually our primary theory, and clearly I did not make it clear. So we'll fix it.

THE COURT: Have you conferred with defendant on a

proposed amendment yet?

MR. VAUGHAN:  For 20 seconds outside when we had a conversation right before coming in, where I indicated, yes, we do believe it's appropriate to amend to make sure that we're all on the same page going forward and, not surprisingly, I was given the same hint of, "Well, we're not sure that an amendment is appropriate, and we will still object."  So I won't steal their thunder.

THE COURT:  Very good.  Then we'll hear from Mr. Savage or anyone else from the defendant.

MR. SAVAGE:  Chris Savage for UPM.  So here is our problem.  First, let me say, it's -- in my experience, having a tentative opinion is great because I know what to focus on. The downside, of course, is it seems like I'm arguing with you, not opposing counsel, which can be a little awkward, but --

THE COURT:  Well, you won it on the briefs, not on the oral argument.

MR. SAVAGE:  There you go.

The reason I think the case should actually be dismissed rather than giving a verbal leave to replead is because when you -- in light of what they have now said, I understand Digicel wants to characterize it as a minor net and who owns the turnstile, and blah, blah, blah.

In fact, buried in the language and buried in the vague language of the first complaint, and now the second complaint,

is total obscurity about the actual economic relationships between these various entities, which makes it essentially impossible to say who is really damaged.

Let me give you an example focusing on your tentative opinion. Let's think about how Roam Like You're Home works. This is within the context of let's take the pleadings as stated. Roam Like You're Home works, according to them, when someone in Haiti, who is traveling -- going to travel the U.S., buys a SIM card or buys this extra plan, comes to the U.S., and then what happens? They pick up their phone; they make a call. It goes to AT&T, let's say, who sends it to Miami or New York, as the case may be, and sends it to Haiti, and, by their own allegations, pays 23 cents.

What happens when we do Roam Like You're Home? We buy a SIM card that they would not otherwise have sold and therefore give them money. We buy a plan, which they would not otherwise have sold, and therefore make the money. And then I pick up the phone in my office and call. They send it to UPM, who sends it to AT&T, who sends it to New York, who pays them 23 cents and makes them more money.

There is no scenario, given what they have alleged, as we read it, as, I think, just the facts of it, where they could possibly be damaged economically by our reselling Roam Like You're Home as they have alleged. Right?

So what does it mean? Why are they doing it? A, they may

not understand it; or, B, our suspicion is it's an impingement on their monopoly, and that's more important to them than the small amount of money that we might be actually making them by doing this.  But in the absence of --

THE COURT:  I don't follow that last point.

MR. SAVAGE:  Okay.

THE COURT:  If they have not been economically damaged, how is there any impingement on a monopoly?

MR. SAVAGE:  Having both fought against and represented monopolies over many years --

THE COURT:  Me too.  Both ways.

MR. SAVAGE:  The answer is, Your Honor, it's the principle of the thing.

THE COURT:  Okay.

MR. SAVAGE:  If I'm attempting to maintain a monopoly and it becomes widely known that a way around the normal way of doing things is this, that erodes my control.  And so that could lead to a motivation for them filing a complaint but not a way to file a complaint on this set of -- on this set of facts that actually allege any damages.

And so my concern is they had their first complaint, and you dismissed that one; then they filed their second complaint, adding a bunch of the allegations that they're now running away from -- I mean, if you go back and compare what was added, oops.

THE COURT:  I did.

MR. SAVAGE:  Okay.  That leads me, frankly, to a certain amount of concern as to what the content of a second amended complaint would be.

How, I understand, you may conclude, "Oh, come on.  We'll give them another chance in the interest of justice," and so on.  My concern is, if you're going to do that, that you insist, as a condition of refiling, that their amended complaint actually lay out step by step, entity by entity, who is involved in handling these calls and who pays who how much for it.

Because, to use his turnstile example, in the example he gave, if the train company pays someone to manage a turnstile, then I would argue that the turnstile entity is simply an agent of or in concert with the train entity, and my communications act claim would remain.

If his contention is that Digicel USA is simply acting under contract as an agent for Digicel Haiti for these purposes, then Digicel Haiti is, in effect, operating in the United States.  That would be my claim under communications law.

On the other hand, if his claim is, no, Digicel USA is a completely separate entity, they have their deals, they can call out to Haiti like anyone else, that leads to different responses.

And my concern is, you know, given that I'm here, given that I'm involved, if we're going to have to respond to another complaint, to put it bluntly, it needs to be a better one than the one we've got here.  It needs to actually lay out who does what and where the money goes.  So they can say, "And this is where I'm hurt."

If you're not -- if that would be a condition of permitting them to replead, then we might not object; but if that's not going to a condition, if all they're going to do is say, "For Digicel, we mean Digicel Haiti only," and change a few words here and there, we still don't know what we're defending against.  And at some point it makes sense to require a little more of them than the first two trials.  So we would urge that.

Now, I have a whole separate set of arguments as to why, in fact, we plainly raised a factual objection to jurisdiction, not a -- not a facial one.  We can get into that if you'd like, but I don't know if that matters at this point.

THE COURT:  I think it was done more in the reply than in the opening motion.  At least that was my read of it.

MR. SAVAGE:  A, in fairness, it wasn't; and, B, in fairness, it doesn't matter.

THE COURT:  Oh, the B.  How can it not matter?

MR. SAVAGE:  Because you can't waive jurisdiction.

THE COURT:  No, I agree with that, but that would

just simply be "I'm not going to say that there is jurisdiction," but I'm not going to hear an argument, even on subject matter jurisdiction, that was raised for the first time in a reply brief.

MR. SAVAGE:  So --

THE COURT:  I mean --

MR. SAVAGE:  -- what I would say, Your Honor, is --

THE COURT:  -- you certainly will have leave to file a new motion.

MR. SAVAGE:  Well, you properly characterize it on page 3 of the tentative decision.  In response to the factual assertion that Digicel Haiti does not operate outside of Haiti, we filed our motion.

Our motion -- it was plainly based on, entirely, totally, on facts outside the complaint.

THE COURT:  Okay.

MR. SAVAGE:  And so to characterize it as a facial motion is a -- I -- you see my point.

THE COURT:  Fair enough.  And I'm not being critical, and I apologize if I sounded critical on that point, but I understand there may or may not be an interesting facial attack on a pleading, on sub -- there may or may not be a problem with subject matter jurisdiction.

I think we already know, and I think there's an agreement by both sides, that the facts alleged in the first amended

complaint are not necessarily the facts that the plaintiff intended to or at least wants to assert.  So let's at least deal with subject matter jurisdiction on a clearly articulated set of fact.

With respect to your point about what they need to put in a second amended complaint, I would be interested first in hearing Mr. Vaughan's response before I tell him that I agree with you.

MR. VAUGHAN:  Your Honor, the Court has and -- and Mr. Savage has missed that party, but the Court has gone through, in great detail, the allegations that were set forth in, first, the original complaint.  We discussed exactly what was missing and what needed to have been put in to round out the allegations of misrepresentation and fraud in any amendment.

We agreed with the quibbling that it could have been clearer, and we fixed it.  They came back, and they filed yet another motion to dismiss on other grounds.

The Court heard full argument on all of that.  We went through the entire thing, and the Court ruled that the pleading survived.

Now we have Mr. Savage, who, whether you want to -- however you want to categorize it, you know, it is what it is. It's a rehearing.  He is saying that we need to go over that again.  And what he is using as the hook is what we have

plainly said is a definitional issue.

We're not going to be changing the allegations. I have no intention to, and I don't think the Court would order me to go change allegations that have been amended and tested. They have been tested and passed. Where there is a little bit of a concern, where there was -- I have to now say where there was some misunderstanding, is when the complaint said that Digicel operates the switches in New York and Miami, did you mean Digicel Haiti or some other Digicel entity? And we're going to clarify "No, no, no, we never said, we never intended to imply, and we apologize for the misunderstanding. It was not Digicel Haiti." That's what we're going to change.

So if we fix that, then we have two questions pending. How does it impact the remaining allegations that you have already reviewed, tested, and passed? It doesn't. How does it impact question number two, their follow-on counterclaim? Because, if I'm hearing them correctly, what they're saying is because you said Digicel Haiti owns the switches in New York and Miami, we believe there's an FCC violation. Let me make no bones about the fact that if their position is that their entire good faith basis for that claim is my error, then I think that's follow-on, and there's a problem there. But if they have more than that as their good faith basis for their claim, the question is, is my change in the definition to say, "No, no, no, Digicel Haiti does not own those switches.

There's another Digicel," they can go ahead and bring their claim.

We suspect that if they bring that claim, they're going to have some good faith basis to make that argument.  They have conceded in their papers that they did some basic due diligence.  They did confirm that Digicel USA is the entity that owns the switch, and Digicel USA is the one that owns the license.  But Robert said "Digicel" and suggests -- they put it in square brackets -- "Haiti."  So there's the problem.

So if I fix that, Judge, what we're left with is, A, our allegations that you've already tested and passed; B, their new complaint predicated upon that mistake.  And if there's an argument that they're going to be prejudiced by not being able to defend against the claim that we're not making, I have a problem with that.

THE COURT:  Okay.  Let me ask you this question:  If you were to -- if I were to allow you to amend the complaint as you have just described, would the defendant be entitled to get answers from you to interrogatories where the interrogatories ask you to describe step by step, entity by entity, who handles the calls for plaintiff; who pays whom; how the calls were handled; how the plaintiff has been hurt, and -- and questions like that?  Could they ask you those in interrogatories, and would you be required to answer them?

MR. VAUGHAN:  At its most expansive, I would say that

there may be an argument to be made that they're entitled to establish either some understanding for their benefit as to, quote/unquote, "how we say it works," so that they can defend themselves and say, "No, that's not what happens."

THE COURT:  Right.

MR. VAUGHAN:  As a purist, I would say there is a strong argument that it's not relevant because, only because we have alleged that through fraudulent means, UPM is terminating international phone calls in Haiti on Digicel's network and telecommunications infrastructure without paying for it.  That is the bottom line allegation.

How phone calls are routed and how phone calls are, in the normal course, completed and terminated, in many respects, is irrelevant to what UPM is doing, which we say constitutes fraudulent activity.

But I think that at the right time, after we have the question properly phrased, after we clearly understand what they're looking for, and after -- you know, if we can't work it out, the Court has an opportunity to say, "Well, I agree in this respect, and I disagree in that respect; so you can turn over this but not that," it's hard for me to give a blanket, "Sure, open the gate."

THE COURT:  You raised an interesting point.  If you remember, the problem with the original complaint, as I found it, is -- was that it didn't clearly specify the mechanism of

the fraud, and that's why you repled.  And I suppose if we were at the very beginning and you clearly alleged in an opening complaint what the fraud was, as you did in, I think, the second -- in the first amended complaint, and if you didn't make the inadvertent mistake -- and I accept it was totally inadvertent.

MR. VAUGHAN:  I appreciate that, sir.

THE COURT:  If you hadn't made that mistake of sort of blurring who does what and who owns what, had you properly pled it all in the very beginning, and then they asked an interrogatory to you of the sort that I've just described, and your response might have been, "We object.  It's irrelevant.  It doesn't matter," I would have struggled with that, and I don't know what the answer would have been.

But, I think, in light of the history of this case, where the first complaint did not adequately or clearly, at least in my view, identify what the fraud was and who deceived whom and how, and then I gave you leave to amend, and in the amended complaint you identified certain entities that owned certain things and did certain things, that brought about the counterclaim from defendant.  But now you say, "Well, we didn't quite get it exactly right.  It was inadvertent, but it's not right.  We would like an opportunity to clean that up."  I think in light of all of that, I don't want to be going on a 12th or 13th complaint, so I'm going to give the plaintiff

leave to file a second amended complaint --

MR. VAUGHAN: Certainly.

THE COURT: -- on the condition that you allege step by step, entity by entity, who handles the calls for plaintiff, who pays whom, how the calls are handled, who is alleging that they are hurt.

I'm not going to require that they allege in a complaint how much they have been hurt by. That can be for discovery and down the road.

But everything else I think you need to allege in a second amended complaint.

MR. VAUGHAN: Okay.

THE COURT: What I'm also going to direct to reduce the number of times that you all have to fly across country and appear before me is, before you file it, you send in draft form to the defendants.

MR. VAUGHAN: Send it to the defendants?

THE COURT: To defense counsel.

MR. VAUGHAN: Okay.

THE COURT: Mr. Savage and Ms. Salyer. Ask them, "Is this sufficient?" Confer in good faith reasonably. You all know what I'm requiring. And if they say it is sufficient, you know -- they don't have to agree with it, obviously -- but, yes, they have enough detail, then, fine, file it. And you can even represent to me that you -- well, represent to me anyway

your motion to file it, that you know the defendant -- you have conferred with the defendant, and they agree that it's sufficient.

If it is insufficient, then you have an option.  Either make it sufficient so that they're satisfied with it -- you know what I'm talking about -- or file it and tell me that they still disagree.  File as a motion to amend, and I'll hear why they say it is insufficient.  And if I conclude that they're right, that they have -- that you have not pled what I think you -- what I'm telling you you need to plead, I will not allow it, and then there might be some serious consequences of where we go forward, and I'll see who's right.

If they demand, you know, way too much detail, then I'll rule on your side.  If they say, and they're right, that you have not alleged clearly and precisely, step by step, entity by entity, who handles the calls, who pays whom for handling the calls, and who is claiming in this lawsuit to be hurt -- as I said you don't need to allege how much in damages, just who was hurt -- if I conclude you haven't alleged that, then I'm going to agree with defendant, and we'll go from there.

If you have alleged it, that's fine.  Especially if they say it's fine.  If you have alleged it sufficiently and they say you haven't and it comes back before me and I agree with plaintiff, I don't know what I'll do, but I'll do something appropriate, and then we'll see where we go from there.

MR. VAUGHAN:  May I?

THE COURT:  Yes.

MR. VAUGHAN:  I completely understand the Court's ruling.  I have one concern that I don't think is going to be addressed by changing anything you've just said.

THE COURT:  Okay.

MR. VAUGHAN:  I fear that because this issue is so novel, because everyone on this side of the table and on that side of the bench -- I'll let Mr. Savage speak for himself -- are struggling with the highly technical novel and complex issues that are presented by what we all agree is a one-of-its-kind, first-of-its-kind case, I fear that we're not putting too much of a burden on the plaintiff over and beyond the regular pleading requirements on the *Iqbal/Twombly* plausibility analysis.

THE COURT:  Well, you --

MR. VAUGHAN:  I'm sorry.

THE COURT:  You might very well be right.  That's why I prefaced it with had we started on a clean slate.

MR. VAUGHAN:  Okay.

THE COURT:  Had you not -- had you sufficiently alleged what's the fraud in the opening complaint, had you not made the factual mistakes in the amended complaint, had you simply just done it all originally and then they wanted to know, "Well, wait a minute.  Who handles what?  Give me a

step-by-step, entity-by-entity," I would say, "Fine.  Ask it in an interrogatory."  I would have done it that way.

MR. VAUGHAN:  Okay.

THE COURT:  But given where we are -- that's why I'm making the ruling.  You may very well be right.  The next case that you file somewhere, you might not need all that detail to satisfy Rule 8 and *Twombly* and *Iqbal* at the outset.

MR. VAUGHAN:  Right.

THE COURT:  But I'm making the ruling now as a condition of granting leave to file a second amended complaint.

MR. VAUGHAN:  I understand, Your Honor.  I won't say any more.

THE COURT:  All right.  Someone also told me, and I think it was defendant --

MR. SAVAGE:  Your Honor, if I could be heard on a couple of things?

THE COURT:  Yes.

MR. SAVAGE:  One, I have to say this for the record, he said using their system without paying for it.  That goes to the heart of the matter.  Of course we pay for it.  We buy the SIM card and buy the minutes.  The only not-paid-for claim relates to this 23 cents, which is why we need all the detail.

THE COURT:  I understand.  I'm beginning to understand the dispute.

MR. SAVAGE:  Good.

Second, we are, of course, happy with your ruling. Getting slightly metaphysical, if we're presented with a draft amended complaint, what I envision us doing is saying, "Yes, this gives us enough detail to understand what you're alleging," and us approving it does not in any way prejudice us from filing a 12(b)(6) or a 12(b)(1) or something like that.

THE COURT: Absolutely not. I fully envision that the only question that's going to be put to you when you get the draft question is "Have we complied with Judge Simon's order?" If "no," discuss it; if, "yes," you don't waive any of your rights. You say, "Yes, you've complied with his order."

Now, as you know, you file it. Then you have to confer with them on any motions to dismiss. I doubt -- I don't think you have to file -- you don't have to confer on a counterclaim, but you go ahead and assert whatever counterclaim you want. You do have to confer if you're going to make a motion to dismiss.

But all you're being asked for is basically do you agree that they have complied with my order regarding the specificity.

MR. SAVAGE: Thank you, Your Honor. I just wanted that to be clear.

THE COURT: Fair enough.

MR. SAVAGE: Where you may be going, and say it is, we had raised an issue surrounding -- a potential discussion of

matters surrounding discovery.  I think, in light of where we are, that's moot.

THE COURT:  That's fine.

MR. SAVAGE:  We'll wait and see the amended complaint; and whatever discovery is appropriate under that one, we'll take up at the time.

THE COURT:  Anything else, then, that either side would like to discuss while we're all together?

First plaintiff.

MR. VAUGHAN:  No, Your Honor.  I think what Mr. Savage was alluding to is hopefully, when this is done, we're going to have to take a really robust and honest look at the deadlines.

THE COURT:  That's fine.

MR. VAUGHAN:  Because they're all off.

THE COURT:  Why don't we do this:  Just so I can keep track of the next step, when should I set as a deadline for plaintiff to file a second amended complaint?

MR. VAUGHAN:  To be honest with the Court, I was prepared to come out of here and say, "Send it," but we have some more work to do.

THE COURT:  30 days sound reasonable?

MR. VAUGHAN:  Yes, sir.

THE COURT:  30 days?  Okay.  Any objection?

MR. SAVAGE:  It's not an objection, Your Honor.  It's

just I'm going to be out of the country from August 12th to the 19th; so 30 days from now will be just after that.  If we could have 35 days?

THE COURT:  Fine.

MR. SAVAGE:  A little extra time.

THE COURT:  45 days.  You're not going to complain.

MR. VAUGHAN:  I've never refused a --

THE COURT:  So 35 or 40 or 45?

MR. SAVAGE:  Call it 45.

THE COURT:  I'm going to enter this opinion, but also I'll enter a separate minute order that plaintiff has 45 days from today to file a second amended complaint with the specificity discussed on the record.  That's all I'm going to say about that.  You can get a copy of the transcript if you want.  Specificity discussed on the record.

By the way, for whatever -- if you need more time, if you need extensions, confer.  If it's unopposed, I'll grant them.

Then, at some point thereafter, when defendant sees the second amended complaint, among other things, he should confer about a new proposed schedule.  If you all -- if both sides agree on what a proposed schedule should be, I can't imagine not granting it as long as it doesn't have, like -- you know, take us three or four or five years to get to trial.  As long as it's something reasonable, I can't imagine not accepting your proposed schedule.

If for whatever reason you disagree, make it easy for me, please. Do something like this: Give me a joint status report, or something, on a proposed schedule, where one document you can show me what are the deadlines that you agree on; what are the deadlines that you disagree on; and a brief paragraph of what's plaintiff's position on why this is the right deadline, defendant's position of why that's not the right deadline and why this should be the right deadline. Make it easy for me to read one document, please, and then I'll give you a ruling on a schedule.

As I said, if you can agree on a schedule that, you know, gets us to a trial date at some reasonable time -- I would say that any time in 2017 is going to be reasonable in my view, per se. If you really think 2018 is needed, give me a little bit of reason and, even if it's stipulated, as to why we need to wait that long.

MR. VAUGHAN: I have one -- I don't want to jump in line.

MR. SAVAGE: Go ahead.

MR. VAUGHAN: This is just for my edification. The Court had set forth a procedure for dealing with issues that may arise, et cetera. If you have a -- if you can't work it out and have a conflict, give me a call, and we'll figure it out.

THE COURT: On discovery issues.

MR. VAUGHAN:  On discovery issues.

THE COURT:  Yes.

MR. VAUGHAN:  May I ask that we clarify exactly what we send to Mary?

THE COURT:  Yes.  Yes.  And here -- let me work backwards.  What I am going to be -- what I try to avoid in cases is getting hit out of the blue with really thick discovery motions where -- and you guys practice on the East Coast.  You know exactly what I'm talking about.

MR. VAUGHAN:  I can't imagine that I do, Judge.

MR. SAVAGE:  Oh, I do.  I receive them.  I don't --

THE COURT:  The way we operate in the District of Oregon, I don't have a magistrate that deals with discovery disputes.  I don't know if you practice in Central District of California where each DJ is assigned an MJ that deals with discovery.  We don't do that here.  I'll deal with my own discovery disputes unless, for some reason, for a special master, and I'll do that on ESI-type disputes.

But, basically, I don't want to see a big thick motion to compel, you know, 15 different interrogatory answers that are unsatisfactory and 512 requests for production that have not been adequately answered, things like that.

So what I do is I require that if someone really has a discovery dispute -- obviously, you know, you have to confer with each other in good faith.  That means either a telephone

call or a meeting, simply an email exchange that says, "Give me everything I've asked for in my fifteenth discovery request, or I'll file a motion to compel," and the other side responds by email, "File your motion," and then I get a big thick motion, that doesn't even count as a good faith conferral.

But if you've had your good faith conferral and you still disagree, call Mary, or send her an email, with a copy to the other side, and say, "We have a discovery dispute."

Then what we'll -- you'll hear back from her, to both sides. I would like -- "the judge would like basically one or two paragraphs in an email explaining what the nature of the dispute is."

And, if you want, it could be either plaintiffs -- no, the requester's position, "We want such and such, and they're not giving it to us." And if we don't see the other side's response, we're going to ask, in a paragraph or two, what's the other side's response.

The only reason I need that and I want that is because at least it then sets my thinking and helps me frame what it is we're talking about. And then I'll get on a telephone call with you all, and we'll talk our way through it.

I don't want attachments; I don't want exhibits; I don't want filings. I basically want to know what is the general topic.

Like I saw -- I got a one-paragraph letter from

Ms. Salyer.  That's exactly what we need.  It doesn't have to be in a formal letter.  An email would be fine.  Frankly, an email is better because that way it's less likely that I would lose it, but something like that.  Then I have a general sense of what the dispute is.  We'll get on the phone.

My experience has been when we talk our way through it on the telephone, sometimes on easier disputes, easier cases, easier discovery disputes, we get them resolved by talking it through on the telephone.

Sometimes, on more complicated areas, we basically can eliminate about 80 percent of it, or so, on the telephone and 20 percent of it is really interesting and difficult and challenging.  Then I'll say, "Fine.  Brief these issues.  Give me this as support."  We'll hear a response.  You know, generally there's no reply for discovery disputes, but some of these more complicated ones it might be fair and helpful to hear a reply, and maybe we'll even schedule an oral argument.  Probably by telephone to save you all some expense.  Maybe not.

But if we have the more complicated ones, then, then we'll probably -- I'll probably give you oral argument.

Historically, some of the more complicated ones have been really interesting issues relating to such things as attorney-client privilege, trade secret type stuff, things like that.

I generally put such things as proportionality,

burdensomeness, relevance, and the categories.  Those aren't that hard, folks.  I know it when I see it.  And that's when we'll talk to you on the telephone.

And if I'm missing something, if I don't see it, you will certainly have an opportunity to explain that to me.  And if you really asked me, you know, on the phone conference, say, "This one really is more complicated than it appears.  Let me tell you why.  May I please brief it?" the answer is going to be yes.

I just want to have a little bit of gatekeeping so that when eventually it comes in, it's manageable and focused.

Sorry for a long-winded answer.

MR. VAUGHAN:  No, Judge.  Thank you.  That helps.  We were discussing amongst ourselves the procedure so that we're not --

THE COURT:  Anything else we should talk about this morning?

MR. VAUGHAN:  Not from plaintiff.

MS. SALYER:  I don't think so, Your Honor.

MR. SAVAGE:  No.

THE COURT:  Thank you very much.

Welcome to the case, Mr. Savage.

MR. SAVAGE:  Thank you, Your Honor, I appreciate it.

(Hearing concluded.)

C E R T I F I C A T E


Unigestion Holding, S.A., v. UPM Technology, Inc., et al.

3:15-cv-00185-SI

ORAL ARGUMENT

July 22, 2016


        I certify, by signing below, that the foregoing is a
true and correct transcript of the record, taken by
stenographic means, of the proceedings in the above-entitled
cause.  A transcript without an original signature, conformed
signature, or digitally signed signature is not certified.


/s/Jill L. Jessup, CSR, RMR, RDR, CRR
_____
Official Court Reporter        Signature Date: 8/9/16
Oregon CSR No. 98-0346        CSR Expiration Date:  3/31/17