**Richard K. Hansen**, OSB #832231
Email: rhansen@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.796.2958
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Kim Vaughan Lerner LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL  33394
Telephone: 954.527.1115
Facsimile: 954.527.1116

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A.,** a foreign corporation, d/b/a **DIGICEL HAITI**, <br><br> Plaintiff, <br><br> vs. <br><br> **UPM TECHNOLOGY, INC. d/b/a UPM TELECOM, INC.,** and **UPM MARKETING, INC.,** an Oregon corporation; **UPM TELECOM, INC.,** an Oregon a/b/n; **UPM MARKETING, INC.,** an Oregon a/b/n; **BENJAMIN SANCHEZ a/k/a BENJAMIN SANCHEZ MURILLO,** an Oregon resident; **BALTAZAR RUIZ,** an Oregon resident; **TYLER ALLEN,** an Oregon resident; and, **DUY TRAN a/k/a BRUCE TRAN**, a foreign individual. <br><br> Defendants. | No. 3:15-cv-00185-SI <br><br> **SECOND AMENDED COMPLAINT** <br><br> RICO (18 U.S.C. §§ 1962(b), (c) and (d)), Fraud, Conspiracy, Conversion and Unjust Enrichment <br><br> **DEMAND FOR JURY TRIAL** |

Page 1 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

## SECOND AMENDED COMPLAINT

Plaintiff, UNIGESTION HOLDING, S.A., d/b/a Digicel Haiti, ("Digicel Haiti"), sues Defendants, UPM TECHNOLOGY, INC. ("UPM TECHNOLOGY"), UPM TELECOM INC., ("UPM TELECOM"); UPM MARKETING, INC.("UPM MARKETING") (collectively the companies together shall be referred to as "UPM"), BENJAMIN SANCHEZ a/k/a BEN SANCHEZ MURILLO ("Sanchez"), BALTAZAR RUIZ ("Ruiz") and TYLER ALLEN ("Allen"), and DUY TRAN a/k/a BRUCE TRAN ("TRAN") for damages and injunctive relief, and alleges as follows:

### PARTIES AND JURISDICTION

1.    Plaintiff Digicel Haiti is a corporation organized under the laws of Haiti. Its headquarters and principal place of business is located in Port-Au-Prince, Haiti. Digicel Haiti owns and operates a mobile telecommunications network located in Haiti through which all voice calls to and from its subscribers in Haiti must pass.

2.    Defendant UPM Technology is a corporation organized under the laws of the state of Oregon with its principal place of business in Hillsboro, Oregon.

3.    Defendant UPM Telecom is a corporation organized under the laws of the state of Oregon with its principal place of business in Hillsboro, Oregon.

4.    Defendant UPM Marketing is a corporation organized under the laws of the state of Oregon with its principal place of business in Hillsboro, Oregon.

5.    UPM Telecom and UPM Marketing are both assumed business names of UPM Technology.

6.    According to the Oregon Secretary of State, Corporate Division's business registry, UPM Technology, UPM Telecom, and UPM Marketing are all located at 3000 NW

Page 2 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

Stucki Place, Suite 100, Hillsboro, OR, 97124.

7.    Upon information and belief, Defendant Benjamin Sanchez is a citizen and resident of Oregon.  Sanchez holds himself out as the Owner of UPM Marketing and the President of UPM Telecom.  Sanchez is also the authorized representative of UPM Marketing according to the Oregon Secretary of State, Corporate Division's business registry.

8.    Upon information and belief, Defendant Baltazar Ruiz is a citizen and resident of Oregon.  Ruiz holds himself out as the Project Manager for UPM Telecom.

9.    Upon information and belief, Defendant Tyler Allen is a citizen and resident of Oregon.

10.    Upon information and belief, Defendant Duy Tran is a citizen and resident of Oregon.  He is the Chief Executive Officer ("CEO") of the UPM entities.

11.    This Court has jurisdiction over the parties pursuant to 18 U.S.C. § 1964 and 28 U.S.C. §1332(a).  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens or subjects of foreign states.

12.    Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. §1391(b).

13.    All conditions precedent to the filing of this action has occurred, been performed, excused or waived.

## BACKGROUND

**Digicel Haiti's Operations**

14.    Plaintiff, Digicel Haiti, is a leading provider of telecommunications services in Haiti, with over 4 million customers.

15.    Digicel Haiti operates solely within Haiti.  It does not have any operations within

Page 3 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

the United States.

16.     Digicel Haiti has over 900 employees and over eight regional offices in the Haitian market.

17.     As a part of, and to facilitate its ongoing telecommunications operations, Digicel Haiti contracts with third parties including other companies which are a part of the "Digicel Group" of companies.  To facilitate its business, Digicel Haiti relies in part, upon technical and administrative services provided by other Digicel Group ("Digicel Group") entities including Digicel USA, Inc. ("Digicel USA") and Digicel Jamaica Limited ("Digicel Jamaica").

18.     Digicel USA is a company incorporated in Delaware.  Digicel USA holds an FCC 214 License which permits it to switch international telecom traffic in the United States.  Digicel USA's switching operations act as a hub for international traffic between third-party wholesale carriers in the USA and several local (i.e., Caribbean) Digicel markets, including Digicel Haiti.

19.     Digicel Jamaica is a company incorporated in Kingston, Jamaica.  Digicel Jamaica provides centralized administrative, operational and group carrier services for other Digicel entities.  Digicel Jamaica also serves as the primary administrative entity for Digicel Group.

20.     To facilitate the termination[1] of incoming international traffic on its domestic mobile telecommunication network in Haiti, Digicel Haiti typically connects telephone calls sent to it from destinations outside of Haiti through a system of telephone switching systems operated by Digicel USA and located in Miami, Florida and New York City, New York.

21.     Digicel USA's operations provide centralized switching facilities that allow for the management, technical support, and quality control management for the switching equipment

---

[1]     "Terminating" essentially means where a call is shown to be received for the purposes of a cellular companies tracking and billing records.

Page 4 -     SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

responsible for transmission and direction of international calls to Digicel Haiti and other Digicel Group entities from wholesale carriers in the USA.

**How a (Legitimate) Call Is Typically Routed and Billed**

22.     All authorized telecommunications traffic from the United States to the Digicel Haiti cellular network is routed through the Digicel USA operated international switching centers in Miami and New York.  The Digicel group members including, but not limited to Digicel Haiti have contracted for telecommunications capacity between Miami or New York in the United States and other locations in the region, including Haiti.  Calls from United States carriers bound for Digicel Haiti are legitimately routed through the Digicel USA switches by means of the contracted capacity to the Digicel Haiti network in Haiti where the traffic is terminated on a Digicel Haiti subscriber's handset.

23.     By way of example, a basic call (mobile or fixed) from the United States to an individual located in Haiti would be typically handled as follows.  The caller in the United States ("US Caller") would place a call to a recipient located in Haiti ("Haitian Recipient").  The call originates on the USA operator's network and that operator transfers the call to a wholesale international carrier.

24.     The wholesale international carrier recognizes the call as one that is directed to Haiti and accordingly sends the call to a Digicel USA switch, in either New York or Miami. From the assigned Digicel USA switch, the call is then transmitted to a switch located in Haiti that is owned and operated by Digicel Haiti.  The switch in Haiti then sends the call to a cellsite in Haiti, which is also owned and operated by Digicel Haiti.  From the cellsite, the call is

Page 5 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

transmitted by Digicel Haiti to the Haitian Recipient's cellular device.[2]

25.    When the call is directed through Digicel USA's switch in Miami or New York, a Call Detail Record ("CDR") is created at the switch.  The CDR is complete when the call is completed.

26.    The CDR is a record generated by a switch that contains certain call information including the telephone number of the Caller, the number of the Recipient, the time the call was made, the call duration, and the ingress or egress status of the call.  The information in the CDR regarding the calling and called telephone numbers is contained in the electronic signaling information transmitted from the sending switch as part of the technical process of handing off the call from one switch to another.  In this instance, the Digicel Haiti switch records when the call begins and the duration of the call.

27.    For each incoming international call a separate and simultaneous CDR is created by a switch located in Haiti and operated by Digicel Haiti.  Digicel Jamaica uses both the CDRs from the switches in Miami/New York and the CDRs from the switch in Haiti to create reports used to reconcile the number of calls made to Haiti and the number of minutes that should be invoiced to the appropriate parties.  Ongoing analysis of the CDRs and their attendant reports are a means to identify and combat fraudulent use of Digicel Haiti's network, such as bypass activities.

---

[2]    This example is meant to illustrate the most basic path of the typical international cellular telephone call originating with a US Caller and terminating on Digicel Haiti's network in Haiti, and is not intended to illustrate the several switching permutations and combinations of third-party participants that may be involved in a complex telecommunications transaction involving the delivery of international telecommunications traffic that might occur before the call is handed off to Digicel USA in Miami or New York.  All Digicel-Haiti-bound calls from the United States that are handed off to Digicel USA in Miami or New York, however, are handled as described above without regard to the particular path they may have taken to get from the originating US Caller to the Digicel USA switch.

Page 6 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

28.     When a call is caused to bypass the Digicel USA switches in New York and/or Miami and is routed using IP technology or otherwise to an illicit or unauthorized switch (referred to herein as a "False Gateway", "probe" or "receiver") in Haiti, the originating party's phone number is purposefully hidden or misrepresented to disguise the call's international origin and no CDR is created in the Digicel USA switch.

29.     Accordingly, a "bypassed" call affirmatively conceals from Digicel Haiti the international origin of the call by, among other things, causing Digicel Haiti to create a false local call CDR, instead of the proper international CDR required to accurately report, invoice, bill and account for an international call.  Accordingly, the usual revenue associated with an international call is avoided because it cannot be properly accounted for or subsequently invoiced and collected.  This results in a direct and individualized injury to Digicel Haiti in the amount of lost call revenues for international calls terminated through bypass fraud.

**Support Services Provided By Digicel Jamaica**

30.     Digicel Jamaica provides mobile and other telecommunication services in Jamaica.  It also serves as the administrative hub for several companies in the wider Digicel Group.  In this administrative role, Digicel Jamaica—on behalf of, and for the benefit of Digicel Haiti—is responsible for managing relationships between Digicel Haiti and several third-party companies (including wholesale carriers), and including providing contract administration and billing and revenue collection functions between Digicel Haiti and those third-parties.

31.     This centralization of Digicel Group's business structure allows for the efficient negotiation of contract rates and costs across the various Digicel Group local markets, including but not limited to Digicel Haiti.

32.     As a part of the administrative services that it provides to the wider Digicel

Page 7 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

Group, Digicel Jamaica is responsible for monitoring inbound and outbound call reports for Digicel Group's local markets including but not limited to monitoring the rates charged by third-party carriers to group members, including Digicel Haiti.

33.    As part of its management of several Digicel Group third-party contractual relationships and interconnection agreements, Digicel Jamaica also serves as a collections agent and clearing house for several local Digicel Group entities, including Digicel Haiti in their business dealings with third-party wholesale providers and international carriers.  For example, after collecting and reviewing the inbound and outbound call reports, generated from information provided by the CDRs, if Digicel Haiti is owed money from a United States based Telecom carrier, Digicel Jamaica will invoice the carrier and the carrier will pay the funds to Digicel Jamaica on behalf of and for the benefit of Digicel Haiti.  Digicel Jamaica then pays those funds directly to Digicel Haiti.  Digicel Jamaica does not retain any portion of these funds for its own benefit.

34.    Specifically, Digicel Jamaica makes an intercompany transfer payment to Digicel Haiti for the amount of the funds collected—net of any payments Digicel Jamaica makes on Digicel Haiti's behalf.  Payments made on Digicel Haiti's behalf would include payments to USA carriers for outbound international calls that such carriers terminated for Digicel Haiti.

35.    Separate and apart from the revenues Digicel Haiti collects from international calling, Digicel Haiti along with all of Digicel Group's other local markets pay Digicel Jamaica and Digicel USA a fee for the services provided by Digicel Jamaica and Digicel USA.  This payment is made to Digicel Jamaica and Digicel USA as compensation for the costs incurred in the administration and provision of services to these Digicel Group entities. This fee payment is in keeping with the centralized business model employed by Digicel Group.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

36.    The payment amounts made by each local market to Digicel Jamaica (which includes Digicel USA as a cost to Digicel Jamaica) include, among other things, amounts that reflect Digicel Haiti's responsibility for the costs of the international telecommunications capacity between the United States and Haiti described above.  Those payments however are not directly tied to or determined by the amount of call revenue or the call volume that each market generates or collects but rather, reflects Digicel Haiti's charges for shared services including shared capacity, provided to the members of the group.

37.    If an international call is terminated on the Digicel Haiti network using a method other than through the Digicel USA international switches in Miami and New York, Digicel Haiti is precluded from obtaining the identifying information required to accurately account for and appropriately bill the call as an international call being terminated on the Digicel Haiti network.

38.    To terminate international telecom traffic originating from or through third party wholesalers or carriers on its network in Haiti, Digicel Haiti must charge those carriers a minimum rate of 23 cents per minute—the "floor" or lowest rate set by the Government of Haiti for terminating incoming international cellular telephone calls into Haiti—to route such traffic through its telecommunications network and proprietary equipment to Digicel Haiti's customers and subscribers in Haiti.

39.    Ultimately, Digicel Haiti receives a gross payment of a minimum of 23 cents per minute from the various contracting third parties for calls received under these telecommunications termination agreements.  In the case of calls originating on a network in the United States, the originating network will either directly connect to a Digicel USA switch in Miami/New York or hand the call off to another carrier that has such a connection.  Every call

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

bound for Haiti handed off at one of those switches results in a charge to the carrier handing the call to Digicel USA of a minimum of 23 cents per minute, although the carrier's actual obligation to pay will be determined by netting out any offsetting obligations that the carrier has to Digicel Haiti. That is, the actual net payment to Digicel Haiti may vary, for example, depending upon the amount of traffic the third party terminates in Haiti and whether there is any payment due from Digicel Haiti to that third party for handling outgoing telecommunications traffic originating with Digicel Haiti and terminating outside of Haiti. These amounts are billed to the third party carrier by Digicel Jamaica on behalf of Digicel Haiti.[3] There is no separate charge to third party carriers for the use of the Digicel Group's telecommunications capacity between the United States and Haiti, the minimum 23 cents per minute charge for terminating calls on the Digicel Haiti network is considered to cover that transport function as well.

40.    Digicel Haiti has not authorized international or domestic telephone traffic to enter its telecommunications network in Haiti by any other route or under any other form of agreement. Accordingly, Digicel Haiti has neither directly, nor indirectly through Digicel Jamaica, entered into any contractual relationship allowing UPM and or its agents or affiliates to direct or otherwise terminate international telecommunications traffic onto Digicel Haiti's telecommunications network in Haiti.

**Bypass Fraud**

41.    Telephone switching systems such as the ones that direct calls to Digicel Haiti, are susceptible to what, in the telecom industry, is sometimes referred to as bypass fraud. Bypass fraud occurs when calls, destined for termination on a particular network, are fraudulently and illegally routed around one or more switches designated by the owner/operator of the target

---

[3]    This minimum rate does not include or reflect any, barter, trade or set-off arrangements or payments owing by Digicel Haiti to third-party international carriers.

Page 10 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

network as the designated pathway into that network. The bypass is usually completed by using a combination of the internet and/or certain specialized telecommunications devices called Subscriber Identity Module ("SIM") Boxes and/or SIM Servers in conjunction with Gateways and/or False Gateways or Receivers and sophisticated bundled software to avoid passing through the designated switches and thereby avoid detection and billing.

42. A SIM Server is, in lay terms, a device that can be used to remotely store and control SIM Cards on a mobile telephone network. Using specialized software, this server device can monitor and control several connected SIM Boxes and Gateways. The use of SIM Servers is typical of a large and sophisticated operation due to the volume and cost of the equipment required to construct SIM Servers.

43. A SIM Card is essentially a small circuit board which is placed inside a cellular device in order to, among other things, identify the device to a specific cellular carrier as associated with a unique telephone number and customer account.

44. The SIM Boxes or SIM Servers are loaded with multiple [Digicel Haiti] SIM Cards which in turn communicate with False Gateways or Receivers in the target area via the internet. From thousands of miles away, a SIM Server can register multiple quantities of SIM Cards onto the False Gateways. International calls can then be sent via the internet to the False Gateway. The False Gateway then uses the SIM information received from the SIM Server to simulate a local call, when it is, in fact, actually delivering an international call.

45. The SIM Card's information is manipulated by the SIM Server and specialized software to mimic the behavior of a typical subscriber in Haiti. This is important because operators, such as Digicel Haiti, have specialized software to detect bypass calls. To mimic a real subscriber's behavior: (1) a SIM Card is not used consistently for hours. It is sporadically used;

Page 11 -   SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

(2) A SIM Card is moved from one False Gateway to another to simulate mobility; (3) The SIM Card movements must be done to simulate realistic travel (cannot move from one end of the country to another in 3 minutes); (4) a SIM Card must also receive calls and call among similar SIM Cards (few short calls are made from one SIM Card to the other to simulate this pattern); and (5) False Gateways that generate the calls and place them on to the local network, cannot be too large (contain too many phones in the bank) or the heavy calling in one cell location will be spotted by bypass detection software. To facilitate these patterns, False Gateways are spread around the country.

46.    A SIM Server is a computer with associated slots to hold SIM Cards and specialized software, including but not limited to different types of Human Behavior Software ("HBS") installed.  Its purpose is to redirect incoming international calls and to transmit them using the SIM Cards to the Digicel Haiti network for onward transmission to Digicel Haiti subscribers.   The HBS serves as the "brains" of the SIM Servers and Gateways, enabling Defendants to fake the device appearance, select the desired SIM Card, and mimic typical [human] user behavior, in furtherance of their bypass operations.

47.    The specialized HBS allows users to effectuate bypass fraud through a combination of the following:

> (a) Virtual or simulated registration and movement of SIM Cards within Digicel Haiti's network;
>
> (b) "Randomized" SIM Card selection for the termination of call;
>
> (c) Simulated SIM Card profiles, to disguise aggregated use as regular subscribers;
>
> (d) Managing SIM Card credit balance and recharges;

Page 12 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

(e) Alarms indicating SIM Cards which are blocked by target company after detection of bypass;

(f) Service whitelists (confirmed customers) and blacklists (test numbers used in bypass detection protocols for identifying bypass activity).

48.     The use of the SIM Boxes and SIM Servers to "aggregate" and resell telecommunication service is not the intended or expected use for which the SIM Cards are sold to retail purchasers who purchase these SIM Cards in Haiti.

49.     The expected commercial purpose of these types of SIM Cards is to operate and associate one cellular device to an individual consumer account, allowing that consumer access to the Digicel Haiti network and allowing Digicel Haiti to account for, invoice and collect for the calls or communications made from a cellular device containing that specific SIM Card.

50.     In many instances, UPM through is agents or employees made secret "bulk" purchases of Digicel SIM Cards which are then shipped back to Oregon for use in the bypass operations.

51.     Instead of performing pursuant to the commercial expectations and the established protocol for terminating telecommunications traffic on a specific terminating network, persons engaging in bypass fraud use various combinations and configurations of the SIM Boxes, SIM Servers, False Gateways, and SIM Cards to set up bypass gateways in an effort to divert international calls around any switches, gateways, or other devices used to legitimately manage, account and invoice telecommunications traffic destined for the target network.

52.     This type of bypass scheme allows inbound international telephone calls to avoid the commercially established and legitimate routing mechanisms and ultimately, to avoid the invoicing and payment of established termination fees to legitimate cellular telecom providers.

Page 13 -     SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

53.     After a SIM Server routes the call around the switches and international gateways, the call is directed to a Receiver or False Gateway which has been shipped to, installed, and subsequently operated in Haiti by the Defendants or individuals assisting with the bypass operation on their behalf.

54.     The Receiver or False Gateway, commonly innocuously disguised as a computer or other household appliance to avoid detection, receives the call from the SIM Server via the Internet and subsequently directs the call to a nearby domestic cellular tower in Haiti.

55.     At the time the False Gateway or Receiver directs an international call to the local Digicel Haiti cellsite, the Receiver/False Gateway further misrepresents and conceals the true origin of the international call and instead presents the call as nothing more than a domestic call of local origin.

56.     Essentially, the bypass scheme allows the perpetrator to conceal the true origin of the international call or communication to the target cellular carrier's network by misrepresenting it as a domestic call.

57.     In this case, when an international call is directed through the Defendants' SIM Boxes or SIM Servers, the call is digitally associated to a domestic number using one of the locally sourced Digicel Haiti SIM Cards.

58.     The international call is then subsequently directed onto the local (Haiti) Digicel cellular network as a domestic call without passing through the international switches in New York and Miami operated for the benefit of Digicel Haiti. The termination of the international call as a local call after this misrepresentation and active concealment of the call's true origin is the final act in the bypass fraud.

59.     Significant profits are generated by the illicit operators exploiting the margin

Page 14 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

between the local call rates and the contracted international termination rates.

60.    SIM Cards used in bypass fraud are sometimes purchased using false or altered identification documents procured by local co-conspirators at the instruction and direction of the head of the fraudulent enterprise and sometimes secretly purchased in bulk in unauthorized "off-book" transactions, for example, where an agent of UPM purchases SIM cards in bulk from a distributor in a secret transaction to avoid detection by Digicel.  In these scenarios, an agent of UPM would approach a local distributor and purchase SIM cards in bulk for a premium by misrepresenting the true intent of the purchase or by colluding with the distributor to hide the true nature of the purchase from Digicel Haiti.

61.    Where the local identification infrastructure is less robust, local purchasers are "recruited" to purchase SIM Cards on behalf of the conspirators and at their instructions.  The local recruits are provided with the funds to make these purchases and further compensated for their efforts in furtherance of the conspiracy.

62.    For individual purchases, these SIM Cards are purchased under the pretext that they will be used by an individual for that individual's personal calls in a unique cellular device, when in fact they are being purchased for use in a SIM Server to re-direct international calls.  It is beyond the contractual and commercial expectations of Digicel Haiti and its authorized retailers that an individual SIM Card would be used for anything other than an individual's personal cellular calls and communication needs.

63.    To protect and further the commercial expectations that a SIM Card will only be used for retail consumer purposes, Digicel Haiti SIM Cards in Haiti, are only intended to be sold by Digicel Haiti's authorized retailers and representatives.  SIM Cards can be purchased at various authorized retail locations including grocery and convenience stores.

Page 15 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

64.     In order to legitimately purchase a Digicel Haiti SIM Card in Haiti, an individual is required to complete and file a Customer Registration Card using their government issued identification card.  A true and correct copy of a Customer Registration Card is attached to the Amended Complaint as Exhibit A.  This mechanism was designed to prevent the acquisition and use of SIM Cards for improper or illegal purposes.

65.     UPM, through its agents, purchased or secured hundreds of SIM Cards from one or more distributors willing to break the rules for extra payment from UPM.

66.     Further, the sale of SIM Cards is regulated by law and dealers are cautioned through Dealer Circulars—communications from Digicel Haiti—not to sell SIM Cards to anyone that the dealer may think is going to resell the SIM Card.  A true and correct copy of an applicable regulation, two Dealer Circulars, and certified translations of each document are attached to the Amended Complaint as Composite Exhibit B.

67.     Digicel Haiti does not allow for the unauthorized bulk sale and purchase of SIM Cards.  This is to avoid the use of the SIM Cards in a manner inconsistent with the commercial expectation that a retail purchaser will be using the SIM Card solely for personal calls and communications.

68.     Using a combination of the internet, highly specialized software, SIM Boxes or SIM Servers and/or "Receivers" and False Gateways, enables UPM and the individual co-conspirator participants in the bypass fraud to use Digicel Haiti's infrastructure to sell international call minutes to third parties for termination on Digicel Haiti's network, while avoiding proper payment to Digicel Haiti for the use of this infrastructure.

69.     Defendants' use of SIM Servers, False Gateways, and Human Behavior Software is proof of the existence of a sophisticated enterprise and operation due in part to the

Page 16 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

technological expertise required to construct the bypass infrastructure and keep it properly maintained and operational.

70.    Bypass and the underlying misrepresentations and active concealment necessary for its success, occurs every time a call is secretly re-routed from a legitimate international gateway or switch to a False Gateway or Receiver and then into the local target network infrastructure.

71.    Defendants have engaged in the above-described bypass operation through the use of SIM Servers and SIM Boxes constructed, located and operated in Oregon.

## FACTS

72.    In early 2014, Digicel Haiti uncovered evidence of possible fraudulent activity using bypass techniques and discovered equipment typically used in bypass fraud during monitoring and investigation designed to detect and deter bypass operations.

73.    Further investigation and monitoring was conducted by Digicel Haiti to confirm its initial suspicions regarding possible fraudulent bypass activity.

74.    Digicel Haiti determined that international calls were being transmitted to a SIM Box or a SIM Server in Oregon which was installed with local [Haitian] SIM Cards, and these local SIM Cards were then subsequently making further outbound connections on the same calls.

75.    Digicel Haiti was able to identify specific SIM Cards that were being used in the bypass operation by evaluating the "Bypass Profile" of the SIM Cards and their related information from Digicel Haiti's charging and billing systems.

76.    Digicel Haiti employs several proprietary strategies to regularly scan the network for indicators of anomalous call patterns that suggest bypass fraud. These proprietary strategies are used to determine the "bypass profile" of any individual SIM Card.

Page 17 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

77.    With the assistance of the local Haitian Police ("PNH"), operations were commenced to identify the possible locations or bases of the fraudulent activities.

78.    Contemporaneous with the PNH operations, Digicel Haiti continued its own internal investigation of the suspected bypass operation by engaging the services of Shields Crime & Security Consultants ("Shields CSC"), in Kingston, Jamaica.

79.    The combined investigations of Shields CSC (on behalf of Digicel Haiti) and the PNH, revealed a systematic and ongoing bypass operation coordinated, funded, and conducted by UPM and the other conspiracy Defendants.

80.    The fraudulent bypass operation is, upon information and belief, possibly still ongoing through UPM's evolving and heightened efforts to conceal the bypass operations and avoid detection.

## MISREPRESENTATIONS MADE BY DEFENDANTS

81.    Currently, there are at least two known methods that Defendants have employed to commit bypass fraud through the illicit use of SIM Cards.

82.    First, Defendants are using Internet Protocol ("IP") technology in conjunction with Digicel Haiti's cellular infrastructure to cause international calls to completely bypass the international switches in New York and Miami and then subsequently terminate in Haiti as a local rather than an international call.  This bypass prevents Digicel Haiti from properly accounting for, billing, and collecting the applicable international rate for the call.

83.    Second, and likely less prevalent, the Defendants themselves purport to be using Digicel Haiti's Roam Like You Are Home ("RLYH") service plan to cause international calls from non-Digicel customers to be manipulated in their SIM Servers located Oregon.  These calls are then digitally associated with subscribing RLYH Digicel SIM Cards in the SIM Servers in

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

Oregon and re-transmitted, so that they are ultimately accounted for and billed as authorized subscriber RLYH calls when they are in fact international calls from non-subscribers.

84.    Both of these bypass methods culminate in international calls being misrepresented to the Digicel Haiti network as regular local, domestic or RLYH calls through an active concealment of the calls true international origins, and accordingly, invoiced and billed as such.

**Misrepresentations through purchase and use of SIM Cards**

85.    In Haiti, Digicel Haiti SIM Cards are only permitted to be sold by Digicel Haiti's authorized sales representatives and retailers.

86.    Upon information and belief, Defendants employed the assistance of numerous Haitian individuals and foreigners temporarily residing in Haiti for the sole purpose of aiding the furtherance of Defendants' bypass operations to act as their agents in the purchase and acquisition of numerous Digicel Haiti SIM Cards.

87.    Based upon anticipated demand, Digicel Haiti places orders for SIM Cards with an approved manufacturer.  Digicel Haiti provides the basic information for this process including SIM Card specifications (2G, 3G, standard, micro, mini), along with the range of International Mobile Subscriber Identity ("IMSI") numbers to be used during the process.  The manufacturer then produces the SIM Cards which are shipped to Digicel Haiti's offices.

88.    To protect the security of the network, great care is taken to protect the integrity of the information associated with the SIM Cards.  For example, data regarding the SIM Cards and corresponding IMSIs is transmitted to and from the manufacturer in an encrypted format in order to maintain confidentiality of sensitive data.

89.    Upon receipt of the new SIM Cards, Digicel Haiti assigns each SIM Card with a

Page 19 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

Mobile Station International Subscriber Directory Number ("MSISDN").  The SIM Card's details including the MSISDN are registered in Digicel Haiti's internal systems in a pre-active state.

90.    The SIM Card only becomes active on the network when they are placed into a handset and a transaction such as a personal call or recharge takes place.

91.    By default, all Digicel Haiti SIM Cards can be used for transmitting voice, data and messaging services into or within the Digicel Haiti network.

92.    If a customer so requires, customized parameters for specialist services can be added to the SIM Card's function, such as vehicle tracking.  These parameters are only available at the specific request of the customer and with the approval of Digicel Haiti's commercial team.

93.    Credits, in the form of "minutes", are added to the SIM through recharges.  This can be done using a number of recharge methods including vouchers and on-line "top-ups." When a subscriber uses its phone, the rate associated with the service is deducted.  The deductions and management of the credits and balances are performed by Digicel Haiti.

94.    To obtain Digicel Haiti SIM Cards, the Defendants' Haitian agents go to a Digicel Haiti authorized retailer and purchase SIM Cards under the false impression that those SIM Cards are for their own individual, retail use in cellular handset devices.

95.    Upon information and belief these SIM Cards are sometimes also purchased in unauthorized "bulk" purchases from SIM Card retailers or distributors who are willing to go along with the scheme or turn a blind eye for a premium payment—leaving no reasonable doubt that they are being acquired for unauthorized purposes and are being acquired through fraudulent means.

96.    These agents and any participating distributors purposefully conceal their

Page 20 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

intentions to deliver these SIM Cards to UPM for UPM's illicit purposes.

97.    The UPM agent or representative then delivers the SIM Cards to the Defendants or their designees who then ship those cards to Defendants in Oregon in bulk shipments.

98.    Defendants have created a standardized shipping practice that is intended to cause deception to the relevant authorities as to the contents of their shipments.

99.    For example, UPM requires that its corporate name not be included in the documentation or contents of shipments.  Further, Defendants purposefully and systematically avoid the use of certain names, words or phrases such as "Telecommunications" or "UPM" or "Commercial" that would alert the shipping company or customs agents to the fact that telecommunications equipment is being transported or that UPM or any related company was involved in the shipment.

100.    Defendants then load the Digicel Haiti SIM Cards into SIM Boxes and SIM Servers, located in Oregon.

101.    In order to complete the bypass, the SIM Card information is typically extracted or cloned—meaning the SIM Card data is retrieved from the SIM Card and transmitted over the internet to a local Receiver or False Gateway in Haiti—following which the virtualized data is then used by the local Receiver or False Gateway to complete the call in Haiti.

102.    The SIM Cards housed in Oregon, are manipulated or copied to retrieve and then transmit the unique identifying information off each SIM Card, so that the information can be sent to Haiti.  This allows UPM to pretend to initiate a local call in Haiti when the call was in fact initiated in the USA.  Using the "virtualized" data from the SIM Card, the Receiver located in Haiti sends the call into the Digicel Haiti network so that Digicel will complete the call to the ultimate recipient using Digicel Haiti's telecom network.

Page 21 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

103.    Throughout the duration of the call, as the communication is being ferried between the conversation's participants, the true origin and nature of the call is fraudulently and continuously concealed from Digicel Haiti's local network.

104.    These multiple misrepresentations by the Defendants and their agents and Digicel Haiti's subsequent reliance thereon create a significant loss of revenue for Digicel Haiti, and an additional unaccounted for stress on Digicel Haiti's cellular network and infrastructure and good-will in Haiti.

**Misrepresentations and Active Concealments Made In Furtherance Of Traditional Bypass Activity**

105.    Defendants use IP technology along with the Digicel Haiti SIM Cards to defraud Digicel Haiti's local network into believing that certain calls originate from within Haiti, when the truth is that they are international in origin, but are bypassed around the New York and Miami International switches.

106.    In basic terms, Defendants have SIM Servers/SIM Boxes into which they have placed Digicel Haiti SIM Cards. Defendants also have False Gateways/Receivers, shipped to and installed locally in Haiti.  These SIM Servers and Gateways work in conjunction to conceal the true origins of an international call by misrepresenting the origin of the SIM Cards making the initial call, and facilitating the termination of international calls as if they were actually local calls.

107.    Defendants have either sold minutes (wholesale) to third-parties or sold minutes directly to consumers through phone cards or retail sales of cellular plans and devices.

108.    Defendants are also engaged in the sale and distribution of equipment used in bypass as a part of the fraudulent enterprise.

Page 22 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

109.    Selling "wholesale minutes" describes a transaction where a wholesaler, sells the right to terminate a large block of telecommunications minutes into a particular location or territory.    For example, "Wholesaler Telecom" will sell "ABC Telecom", the right to terminate 1 million minutes of telecom calls into Haiti.    Typically, to facilitate this arrangement, Wholesaler will have a contractual arrangement with Digicel Haiti or another Haitian telecom allowing the termination of these minutes on a particular Haitian telecom network.

110.    In phone card sales transactions, rather than reselling to another Telecom, Wholesaler, directly or through a related company can sell small blocks of minutes to individual customers using phone cards, pre-loaded cellular phones or digital "charge-ups" on their pre-owned cellular devices.

111.    Once a call is made by a customer of the third-party carrier ("ABC Telecom") or a customer who has purchased a UPM related phone card, the call is then routed directly to the wholesaler ("Wholesaler Telecom") or to the company that sold the phone cards and then to UPM's SIM Servers in Oregon.

112.    UPM utilizes sophisticated software and anti-fraud detection protocols to avoid detection of bypass and combat Digicel Haiti's efforts to identify fraud.

113.    For example, each call when received by UPM, is then analyzed using specialized software to confirm that the call is not actually being generated by Digicel Haiti as a part of Digicel Haiti's own ongoing anti-fraud efforts before being "accepted" or "rejected" for forward processing by UPM's servers.

114.    If accepted, the call is then routed from Defendants' Oregon location via the internet to one of many local Receivers or False Gateways that have been installed in Haiti

Page 23 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

which also receives the cloned data and information from one of the SIM Cards resident in the SIM Servers in Oregon, bypassing any established international switches, and therefore any ability of Digicel Haiti to track and properly bill the incoming international call.

115. Defendants' technology intentionally causes the call to avoid these switches to conceal the call's origins - gaining unauthorized and fraudulent access to Digicel Haiti's local infrastructure.

116. Through the use of sophisticated software that works to evade detection of the SIM Servers and bypass operations, the SIM Servers in Oregon select a Digicel Haiti SIM Card in the SIM Server and "packages" that SIM Card's number and digital information along with the original call and sends the "package" via transmission on the internet, to the Receiver or False Gateway in Haiti.

117. The call is then further transmitted as if it was physically originated in Haiti, and is then registered onto Digicel Haiti's local cellular network towers.

118. Once registered on Digicel Haiti's Network, the SIM Card—physically located in Oregon but simulating as if it were present in Haiti—uses instructions from the UPM software and system, to receive and transmit the international call sent through the UPM servers.

119. The packaged SIM information and international telephone call are delivered—misrepresented—as a local call using the identifying information transmitted from the SIM Card to trick the network into thinking the entire "package" was originated from that "local" number in Haiti.

120. Defendants have numerous Receivers and/or False Gateways located throughout Haiti and, to evade detection, each Receiver or False Gateway can be moved to a

Page 24 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

different location on short notice.

121. This is a manipulation of the intended use of SIM Cards. Here, Defendants use the software to evade detection by misrepresenting and concealing the true identity and origin of the initial international call by altering the SIM Card's normal and intended usage.

122. Through the use of sophisticated software, Defendants in Oregon can choose to divide and transmit the calls amongst and through different local False Gateways and Receivers. This strategy is intended to mimic the physical movement and calling patterns of real people and trick Digicel by simulating the "movement" of a SIM Card in a real cellular device.

123. For example, if all calls went to—and then from—a single Receiver or False Gateway in a static location, the abnormal call volumes to the particular tower in the area of the Receiver or False Gateway could be flagged as a possible sign of bypass fraud.

124. To avoid easy detection, Defendants use multiple, portable Receivers and/or False Gateways in various locations. The software manipulates calling patterns by directing calls to be spread among various Receivers or False Gateways.

125. The Receivers, also operated and managed by Defendants, then routes the call to the most available Digicel tower in Haiti and ultimately, on to the recipient's cellular telephone.

126. When the call is terminated through a Receiver or False Gateway, the Caller Line Identification (CLI) is blocked so that the calling number is manipulated to display on the Digicel Haiti subscriber's phone as "unknown" or with a blank value. Defendants do this by programming the SIM Servers to insert a special code in front of the subscriber number when the call is routed through bypass.

127. By using SIM Servers in Oregon and sophisticated IP technology in conjunction

Page 25 - SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

with local Receivers and/or False Gateways, Defendants intentionally manipulate the SIM Card data to misrepresent the international call to Digicel Haiti's network as a domestic call made in Haiti, and therefore ensure that only the domestic calling fees are charged.

**Misrepresentations and Active Concealments made through purchase and use of RLYH Plan**

128.    Digicel Haiti's RLYH Plan allows an individual customer based in Haiti, with a Haitian based telephone number, to call Haiti while traveling abroad with a subscription to the RLYH plan.  An individual can sign up for this service and pay an additional fee for use of this service on a weekly or monthly cycle.  Having agreed to the terms of service and having paid a one-time advanced access charge (for the period of the subscription), the RLYH Plan allows this individual to make international calls back to Haiti at rates similar to the domestic rate (therefore "roaming like they were home") during the period they are signed up for the plan.

129.    Generally, an individual can sign up for the RLYH Plan by paying an additional access fee of approximately $20 – $25 US at the time they sign up for the RLYH plan.  This service can also be added to an existing SIM Card through the use of an Unstructured Supplementary Service Data ("USSD") Code (i.e. a short number code) that can be entered into the phone at any time.

130.    The RLYH Plan is intended to be used by an individual customer for a finite period of time while they are roaming outside of their "home" network in Haiti.

131.    Upon information and belief, Defendants have sold large blocks of wholesale cellular minutes for calls to be terminated in Haiti to third-party telecommunications carriers whose customers make telephone calls to Haiti.

132.    If a customer of one of the third-party carriers who purchased wholesale minutes from Defendants places a call to Haiti, the call is routed using sophisticated telecommunications

Page 26 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

software to Defendants' SIM Servers in Oregon and possibly elsewhere.

133.    Upon information and belief, UPM and its agents, subsidiaries, and representatives may have also created direct commercial relationships with retail customers through the retail sale of digital plans or international calling cards.

134.    The SIM Server, containing certain SIM Cards allegedly registered for the RLYH Plan, then directs the call to its ultimate recipient.  At that time, the call represents itself to towers in the United States and ultimately in Haiti as coming from a RLYH subscriber when the call is actually from an individual that is subscribed to a third-party carrier and has no relationship with Digicel Haiti and is **not** registered on the RLYH plan.

135.    The call is then misrepresented to the Digicel Haiti's network in Haiti as a call made by an individual subscribed to the RLYH Plan, concealing its true origins, and is not charged international calling rates to terminate in Haiti but is instead charged the RLYH rate. Specifically, a call from a US caller is routed by that caller's carrier (directly or indirectly) to UPM in Oregon.  UPM then combines that call to the digital information from a Digicel Haiti SIM Card which it has allegedly registered for the RLYH plan.  That call is picked up by a US wireless carrier that has a roaming agreement with Digicel Haiti. That US wireless carrier then delivers the call (directly or indirectly) to Digicel USA in New York or Miami, and Digicel USA arranges for its delivery to Digicel Haiti, as described above.

136.    For these calls, the US wireless carrier is billed on behalf of Digicel Haiti, and pays a minimum of $0.23/minute (subject to any offsets or netting out associated with that carrier's overall balance of traffic inbound to, and outbound from, Digicel Haiti, as described above).  The US carrier also bills Digicel Haiti a fee for handling roaming calls, including calls made under the RLYH plan.  This fee is negotiated between Digicel Haiti and the US carrier, and

Page 27 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

is not affected by whether a particular call is or is not covered by the RLYH plan.  Also, as noted above, the actual cash payments between Digicel Haiti and a US carrier depends on the net flow of inbound and outbound traffic between Digicel Haiti and that US carrier.

## DEFENDANTS' MAIL AND WIRE FRAUD ACTIVITIES

137.    Defendants sent or caused money to be sent by international wire from UPM Marketing to known and unknown co-conspirators in Haiti to facilitate the illicit sourcing and purchase of Digicel Haiti SIM Cards.

138.    Defendants also wired funds to cover expenses associated with the operation and maintenance of locally installed Receivers and False Gateways, including commissions for individuals installing and maintaining Gateways in Haiti.

139.    Plaintiff has knowledge of several separate Capital Bank transaction slips transferring money between UPM Marketing and the Haitian co-conspirators.  These transactions slips are in the custody of the PNH.

140.    Again, Defendants, at the direction of Tran, agreed to and used shipping procedures specifically intended to avoid the detection of telecommunications equipment by customs agents and to avoid any association between UPM and the shipments.

141.    In certain instances, money remaining from the purchases was then sent from the Haitian co-conspirators by international wire transfer to Victor Manuel Moscoso Ruiz ("Moscoso Ruiz"), the President of UPM Marketing Guatemala, S.A.  Wire transfer receipts evidencing some of these transfers are similarly in the possession of the PNH.  True and correct copies of some of these receipts are attached to the Complaint as Composite Exhibit C.

142.    Plaintiff knows of additional Sogebank financial transaction slips that evidence wire transfers of money used to further the bypass fraud. Evidence of these transactions slips are

Page 28 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

similarly in the custody of the PNH.

143.    Several DHL shipping documents evidencing the shipment of illicitly acquired SIM Cards used to commit bypass fraud, from the Haitian agents and co-conspirators addressed to Sanchez and Allen at 2373 NW 185th Avenue Hillsboro, OR, 97124, listing a phone number of ***.***.8522, were recovered by the PNH.

144.    Additional documents evidencing the shipment of computer equipment to the Haitian agents and co-conspirators by Ruiz were also discovered.  These documents evidence at least ten separate international shipments between the Defendants and their agents and co-conspirators in Haiti.  The original shipping documents are in the custody of the PNH.

145.    On May 13, 2014, a Haitian co-conspirator, formerly in the custody of the PNH, shipped SIM Cards addressed to Sanchez in Oregon through DHL.  True and correct copies of the shipping documents evidencing this transaction are attached to the Complaint as Exhibit D.

146.    On May 20, 2014, the same Haitian co-conspirator made an additional shipment of SIM Cards addressed to Sanchez in Oregon through DHL.  True and correct copies of the shipping documents evidencing this transaction are attached to the Complaint as Exhibit E.

147.    On May 27, 2014, the same Haitian co-conspirator made an additional shipment of SIM Cards addressed to Sanchez in Oregon through DHL.  True and correct copies of the shipping documents evidencing this transaction are attached to the Complaint as Exhibit F.

148.    On June 4, 2014, Defendant Ruiz shipped sophisticated telecommunications equipment, disguised and misrepresented as computer equipment to a Haitian agent and co-conspirator of the Defendants.  A true and correct copy of the customs form evidencing this shipment is attached as Exhibit G.

149.    On June 5, 2014, the same Haitian co-conspirator made an additional shipment of

Page 29 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

SIM Cards addressed to Sanchez in Oregon through DHL. True and correct copies of the shipping documents evidencing this transaction are attached to the Complaint as Exhibit H.

150. On June 30, 2014, the same Haitian co-conspirator made an additional shipment of SIM Cards addressed to Defendant Allen in Oregon through DHL. True and correct copies of the shipping documents evidencing this transaction are attached to the Complaint as Exhibit I.

151. On July 3, 2014, Defendant Ruiz made an additional shipment of sophisticated telecommunications equipment, disguised and misrepresented as computer equipment to a Haitian agent and co-conspirator. A true and correct copy of the customs form evidencing this shipment is attached as Exhibit J. Notably, the export invoice associated with this shipment was signed by Allen, although the shipment form indicates that it was made from Ruiz.

152. On July 8, 2014, the same Haitian co-conspirator made an additional shipment of SIM Cards addressed to Allen in Oregon through DHL. True and correct copies of the shipping documents evidencing this transaction are attached to the Complaint as Exhibit K.

153. On July 15, 2014, the same Haitian co-conspirator made an additional shipment of SIM Cards addressed to Allen in Oregon through DHL. True and correct copies of the shipping documents evidencing this transaction are attached to the Complaint as Exhibit L.

154. On July 21, 2014, the same Haitian co-conspirator made an additional shipment of SIM Cards addressed to Allen in Oregon through DHL. True and correct copies of the shipping documents evidencing this transaction are attached to the Complaint as Exhibit M.

155. Money was also transferred into Haiti by UPM Marketing and the Defendants to fund and facilitate the setup and operation of the illicit bypass locations and Receivers at different secret locations in Haiti.

156. Upon information and belief, UPM Telecom, through Defendants Sanchez, Ruiz,

Page 30 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

and UPM Marketing, funded and directly provided, through mail and wire, access devices, including SIM Banks (groups of SIM Servers), laptops, internet routers, and generators to their co-conspirators in Haiti, with the intent and sole purpose to facilitate bypass operations for the termination of international telephone traffic into Haiti.

157.    UPM maintained standard operating procedures for shipping gateways and other sophisticated telecommunications equipment into Haiti and other countries.

158.    UPM standard operating procedures included the use of invoice templates to be used for customs forms in countries where UPM sought to avoid detection of the shipment of telecommunications by customs officials.

159.    UPM shipping procedures further instructed employees to avoid the use of the certain words which could raise suspicion of customs officials.  Specifically, employees were instructed not to use the words "commercial" and "telecommunications" anywhere in the label or on the box containing telecommunications equipment.

160.    UPM's shipping procedures also instructs employees to ensure that paperwork associated with a shipment contained absolutely no reference to UPM.

161.    Upon information and belief, UPM created and maintained a website advertising a "Video Vizion" multimedia unit to facilitate the deception of customs agents.

162.    Upon information and belief, the "Video Vizion" multimedia unit was truly a False Gateway, housed in a casing that was disguised to appear as a "Video Vizion" multimedia unit.

163.    Upon information and belief, this website was designed, intended to be used, and was used to deceive customs agents, Digicel and law enforcement as to the true nature and potential use of the equipment.

Page 31 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

164.    Upon information and belief, the "Video Vizion" multimedia unit case was covered with a sticker which read, "WARRANTY VOID IF SEAL IS BROKEN" which was intended to prevent customs agents and local police from opening the unit and exposing its true contents, is in fact a Gateway intended to be used in bypass operations.  If the unit were opened, the deception would be easily detected as the "Video Vizion" multimedia unit had false ports and other functionless outputs designed to further the fraud and the deception.

165.    Upon information and belief, UPM also created and maintained a fake Facebook page for the "Video Vizion" unit, which falsely described the uses of the unit.

166.    Upon information and belief, UPM employees, including Balthazar Ruiz and Kerry Rohner "liked" the "Video Vizion" Facebook page to further the appearance of legitimacy of the equipment and the site.

167.    To date, Digicel Haiti estimates that as a result of Defendants' fraudulent bypass activity, in excess of 3.2 million minutes of calling time has not been properly accounted for and Digicel Haiti was not adequately compensated.  Defendants' intentional misrepresentations and affirmative concealment of their calls' true origins constitutes fraudulent bypass activity and the illicit use of Digicel Haiti SIM Cards and network infrastructure are continuous and on-going.

168.    Upon information and belief, Defendants' bypass operations in Haiti date back to 2011.  Defendants' ongoing unlawful activity is not isolated but rather is persistent and poses a continuing threat.

169.    Each international telephone call that is concealed as a local call or a RLYH call to Digicel Haiti's transmission systems through Defendants' illicit use of SIM Cards and other bypass operations constitutes a separate act of fraud performed with the specific intent of defrauding Digicel Haiti and enriching the Defendants.

Page 32 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

170. As a part of the fraudulent enterprise UPM Telecom has also been implicated in other fraudulent bypass operations in other regions with high international termination rates and has been implicated in fraudulent bypass traffic into the wholesale market servicing those areas.

171. In addition to suffering financial injury, Digicel Haiti also has suffered irreparable harm through disruption of its business operations and damage to its goodwill, commercial and government reputation and customer relationships.

172. Digicel Haiti's investigation of the ongoing fraudulent activity is ongoing.

## COUNT I: RICO SECTION 1962(c)

173. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 172 above as if fully set forth herein.

174. This Count is against Defendants UPM Telecom, UPM Marketing, Sanchez, Ruiz, Allen, and Tran (collectively "the Count I Defendants").

175. UPM Telecom is an enterprise engaged in and whose activities affect interstate commerce through the systematic re-routing of international cellular telephone calls through a sophisticated bypass network that allows cellular phone companies to avoid routine charges for international cellular telephone calls. The Count I Defendants are employed by or associated with the enterprise.

176. The Count I Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs with specific intent and unlawful purpose of defrauding Plaintiff through a pattern of racketeering activity. Specifically, and without limitation,

> (a) UPM Marketing provided funds by wire to individuals in Haiti for the purchase and use of SIM Cards to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

Page 33 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981

(b) Sanchez knowingly received thousands of Digicel Haiti SIM Cards from Haiti for use in SIM Boxes in Oregon which were used to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

(c) Ruiz for, with and on behalf of Sanchez and UPM Telecom knowingly caused sophisticated telecommunications equipment, disguised and mislabeled as computer and internet equipment to be sent to Haiti for the commission of bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

(d) Allen for, with and on behalf of Sanchez and UPM Telecom, knowingly received a large quantity of SIM Cards from Haiti for use in SIM Boxes in Oregon which were used to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

(e) Allen for, with and on behalf of Sanchez and UPM Telecom, knowingly received a large quantity of SIM Cards from Haiti for use in SIM Servers in Oregon which were used to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

(f) Allen knowingly caused sophisticated telecommunications equipment, disguised and mislabeled as computer and internet equipment to be sent to Haiti;

(g) Tran, in his role as CEO of the UPM entities, knowingly and intentionally planned, implemented, and directed the commission of bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. §1029;

(h) Defendants knowingly and intentionally created a false website with the intent

Page 34 -   SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

of misleading customs and shipping agents in furtherance of carrying out the bypass fraud;

(i) Defendants, individually and in concert, all knowingly participated in programing SIM Cards and constructing SIM Boxes and Servers to carry out the bypass fraud;

(j) Defendants continue their racketeering activity to this day as each international call that bypasses Digicel USA's switch, and is then subsequently transmitted using Digicel Haiti's towers and infrastructure, is a predicate act of racketeering activity; and,

(k) Defendants racketeering activity is on-going as millions of cellular minutes continue to be stolen from Digicel Haiti by the fraudulent bypass operations that Defendants funded, constructed, and operated for this purpose.

177.    Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts under 18 U.S.C. § 1341 related to mail fraud.

178.    Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts under 18 U.S.C. §1343 related to wire fraud.

179.    Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts under 18 U.S.C. § 1029 prohibiting fraud and related activity in connection with access devices.

180.    Defendants racketeering activity includes directly or indirectly participating in the wiring of funds to purchase and ship equipment each Defendant knew would be used to commit bypass fraud, the purchase and possession of access devices in order to commit bypass fraud, the programing of the equipment, software, and SIM Cards to commit bypass fraud, and

Page 35 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

intentionally causing international calls to misrepresent and conceal themselves to Digicel Haiti's network as domestic calls through the manipulation and unintended use of SIM Cards. Bypass fraud is committed when every single such call is illegally delivered to Digicel Haiti's network. This activity is on-going and poses a continued threat.

181.    The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. 1961(5).

182.    The Count I Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

183.    As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Digicel Haiti has sustained an individual and direct injury in its business and property in that Digicel Haiti is losing revenue on an average of 1440 minutes of international cellular telephone usage per day which translates to approximately US$2,592.00 per day of lost revenue for an aggregate amount believed to be approximately, or in excess of one million dollars.

184.    From the time the scheme was detected in March 2014 up to and until the date of this Second Amended Complaint, Digicel Haiti has lost significant revenue with much of this revenue believe to be attributed to ongoing and concealed fraudulent activity. These losses are continuous and on-going as Count I Defendants conduct is open-ended and continues to this day.

185.    WHEREFORE, Plaintiff requests that this Court enter judgment against the Count I Defendants as follows:

> (a) Actual damages in the amount of revenue stolen by Count I Defendants scheme;

Page 36 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

(b)  Treble damages;

(c)  Attorneys' fees;

(d)  Injunctive relief ordering Count I Defendants to temporarily and permanently enjoin the use of or access to any assets located in the United States;

(e)  Injunctive relief ordering Count I Defendants to cease any contact by Defendants with any party in the United States for the purpose of further facilitating Defendants' unlawful conduct as described herein; and,

(f)  Any further relief this Court deems just and proper.

## COUNT II: RICO SECTION 1962(b)

186.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 172 above as if fully set forth herein.

187.    This Count is against Defendants UPM Marketing, Sanchez, Ruiz, Allen, and Tran (collectively "the Count II Defendants").

188.    UPM Telecom is an enterprise engaged in and whose activities affect interstate commerce.

189.    The Count II Defendants acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity.  Specifically the Count II Defendants knowingly and willing maintained an interest in the enterprise through funding and supporting the fraudulent bypass operations through the purchase and maintenance of the access devices required to perpetuate the bypass fraud, the shipping of equipment to Haiti to be used in the bypass fraud, the illicit manipulation and unintended use of SIM Cards and illicit assembly of SIM Boxes and SIM Servers to commit the bypass fraud, intentionally causing international calls to misrepresent themselves to Digicel Haiti's network as domestic calls through the manipulation

Page 37 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

and unintended use of SIM Cards, and the commission of individual acts of bypass fraud every time a call is improperly connected to Digicel Haiti's network. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

190.    The Count II Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

191.    As a direct and proximate result of the Count II Defendants racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs have suffered individual and direct injury to their business and property in that:

(a) Plaintiff has suffered a Loss of Plaintiff's goodwill;

(b) There has been a disruption of Plaintiff's business operations;

(c) There has been damage to Plaintiff's commercial reputation; and,

(d) There has been damage to Plaintiff's reputation and standing with the Haitian Government.

192.    WHEREFORE, Plaintiff requests that this Court enter judgment against the Count II Defendants for an award to include the following:

(a) Actual damages;

(b) Treble damages;

(c) Attorneys' fees; and,

(d) Any further relief this Court deems just and proper.

## COUNT III: RICO SECTION 1962(d) CONSPIRACY

193.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 172, 174 through 184 and 188 through 191 above as if fully set forth herein.

Page 38 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

194.    This Count is against Defendants UPM Telecom, UPM Marketing, Sanchez, Ruiz, Allen, and Tran (collectively "the Count III Defendants").

195.    As set forth above, the Count III Defendants agreed and conspired to violate 18 U.S.C. § 1962(b) and (c).  Specifically,

    (a) UPM provided funds by wire to individuals in Haiti for the purchase and use of SIM Cards to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

    (b) Sanchez knowingly received a large quantity of SIM Cards from Haiti for use in SIM Boxes in Oregon which were used to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

    (c) Ruiz knowingly caused computer and internet equipment to be sent to Haiti for the commission of bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

    (d) Allen knowingly received a large quantity of SIM Cards from Haiti for use in SIM Boxes in Oregon which were used to commit bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

    (e) Allen knowingly caused computer and internet equipment to be sent to Haiti for the commission of bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. § 1029;

    (f) Tran, in his role as CEO of the UPM entities, knowingly and intentionally planned, implemented, and directed the commission of bypass fraud in violation of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and 18 U.S.C. §1029;

    (g) Defendants all knowingly and willingly participated in programing or arranging

Page 39 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

for the programming of SIM Cards and constructing SIM Boxes and Servers or arranging for their construction to carry out the bypass fraud; and,

(h) Defendants knowingly and willingly continue their racketeering activity as millions of cellular minutes have been stolen by the fraudulent bypass mechanism that Defendants funded, constructed, housed and operated for this purpose.

196.    The Count III Defendants have intentionally conspired and agreed to acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

197.    The Count III Defendants knew that these predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.  That conduct constitutes a conspiracy to violate 18 U.S.C §§ 1962(b) and (c), in violation 18 U.S.C. § 1962(d).

198.    As a direct and proximate result of the Count III Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has suffered individual and direct injury in their business and property in that it has suffered:

(a) Loss of revenue from millions of minutes of international airtime;

(b) Loss of funds used to implement and execute the investigative operations which lead to the discovery of Defendants' racketeering activity;

(c) Loss or diminution of Plaintiff's business and customer goodwill;

(d) Disruption of Plaintiff's business operations;

(e) Damages to Plaintiff's commercial reputation; and,

(f) Damages to Plaintiff's reputation and standing with the Haitian Government.

Page 40 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

199.    WHEREFORE, Plaintiff requests that this Court enter judgment against the Count III Defendants for the following:

(a)  Actual damages;

(b)  Treble damages;

(c)  Attorneys' fees;

(d)  Injunctive relief ordering Count III Defendants to temporarily and permanently enjoin the use of or access to any illicit assets located in the United States;

(e)  Injunctive relief ordering Count III Defendants to cease and desist from any contact by Defendants with any party in the United States for the purpose of further facilitating Defendants' unlawful conduct as described herein; and,

(f)  Any further relief this Court deems just and proper.

## COUNT IV:  FRAUD (RLYH Plan)

200.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 172 above as if fully set forth herein.

201.    Defendants intended to engage, and did engage, in bypass fraud by improperly using the acquired SIM Cards and other unauthorized equipment to permit calls to be made on Digicel Haiti's network and to be fraudulently compensated for the calls made by third parties.

202.    Defendants furthered this fraud by signing up for Digicel Haiti's "Roam Like You Are Home" plan ("RLYH Plan") with the specific intent of using the Plain for unauthorized, commercial purposes.

203.    The RLYH Plan is intended to provide individuals traveling outside of Haiti to make calls home at the going-rate for domestic calls.  Instead of signing up for its intended

Page 41 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

purpose, Defendants signed up for the RLYH Plan with the specific, fraudulent intent of using SIM Cards associated with the RLYH Plan as a means of trafficking international cellular calls to Haiti at domestic rates through the improper and unauthorized use of Digicel Haiti's cellular network and infrastructure.

204.    Defendants intended to engage, and did engage, in bypass fraud by improperly using the acquired SIM Cards and other unauthorized equipment to permit calls to be made on Digicel Haiti's network and to fraudulently avoid compensating Digicel Haiti for the calls terminated on Digicel Haiti's network.

205.    By directing calls to avert Digicel Haiti's accounting procedures by bypassing any necessary switches that allow for the call to ultimately be accounted for as an international call, Defendants are intentionally causing an active concealment to take place.

206.    By causing international calls to represent themselves as domestic calls, Defendants made specific misrepresentations to Digicel Haiti.  These misrepresentations and active concealments caused the calls to be improperly accounted for and to be billed at a lesser domestic rate.

207.    Defendants knew that their acts were unlawful and intentionally committed these acts for their own benefit.

208.    As a direct, foreseeable, and proximate result of the fraudulent conduct of Defendants, Plaintiff has suffered direct and individualized damages.

209.    The acts by Defendants were committed maliciously and with an improper motive, and in conscious disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest and costs, and for such other relief as this Court deems just and proper.

Page 42 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

## COUNT V: FRAUD (IP Calls)

210.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 172 above as if fully set forth herein.

211.    Defendants intended to engage, and did engage, in bypass fraud by improperly using the acquired SIM Cards, other unauthorized equipment, and specialized software to permit calls to be made on Digicel Haiti's network and to be fraudulently compensated for the calls made by third parties.

212.    Defendants furthered this fraud by using IP technology to cause international calls made to Haiti to bypass switches and international gateways by use of SIM Servers.

213.    By using SIM Servers and IP technology in conjunction with Receivers located in Haiti, Defendants intentionally misrepresent the international call to Digicel Haiti's network as a domestic call made in Haiti.

214.    Defendants intended to engage, and did engage, in bypass fraud by this improper use of the acquired SIM Cards and other unauthorized equipment and software to permit calls to be made on Digicel Haiti's network and to fraudulently avoid compensating Digicel Haiti for the calls terminated on Digicel Haiti's network.

215.    By causing international calls to represent themselves as domestic calls, Defendants made specific misrepresentations and active concealments to Digicel Haiti.  These misrepresentations and active concealments caused the calls to be improperly accounted for and to be billed at a lesser domestic rate.

216.    Digicel Haiti relied to its detriment upon these misrepresentations in the course of its business and in specifically allowing and inaccurately accounting for these fraudulent calls.

217.    Defendants knew that their acts were unlawful and intentionally committed them

Page 43 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

for their own benefit.

218.    As a direct, foreseeable, and proximate result of the fraudulent conduct of Defendants, Plaintiff has suffered direct and individualized damages, including but not limited to a loss of charged rates, costs of infrastructure, and loss of brand good-will.

219.    The acts by Defendants were committed maliciously and with an improper motive, and in conscious disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest and costs, and for such other relief as this Court deems just and proper.

## COUNT VI: CONVERSION

220.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 172 above as if fully set forth herein.

221.    As alleged herein, Defendants have wrongfully retained possession and/or secreted away revenues of Plaintiff with the intent to permanently deprive Plaintiff of such revenues.

222.    Defendants have improperly kept these revenues for themselves or have used such revenues for their own benefit.

223.    The acts of Defendants were committed maliciously and with an improper motive, and in conscious disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, interest and costs, and for such other relief as this Court deems just and proper.

## COUNT VII: UNJUST ENRICHMENT

224.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 172 above as if fully set forth herein.

Page 44 -    SECOND AMENDED COMPLAINT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

225.    As set forth above, Defendants are in receipt of a significant benefit for which there was no entitlement.

226.    Specifically, Defendants received a stream of revenue resulting from calls diverted from Plaintiff's network for which they paid no compensation to Plaintiff, Digicel Haiti.

227.    Defendants have retained current possession of the profits received from the calls diverted from Plaintiff.

228.    Under the circumstances it would be inequitable for Defendants to retain the profits without paying the fair value thereof.

229.    Despite the fact that there is no basis for Defendants to retain such benefit, they have failed to return such benefit to Plaintiff in conscious disregard of Plaintiff's rights.

230.    The acts of Defendants were committed maliciously and with an improper motive, and in conscious disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, interest and costs, and for such other relief as this Court deems just and proper.

## TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981

PDX\128154\201374\RKH\19296598.1

## VERIFICATION

I, _Julio Alvarez_ , declare under penalty of perjury pursuant to 28

U.S.C. § 1746 that I have read the foregoing Complaint and have personal knowledge of the facts

and matters contained therein, and that the facts and matters contained therein are true and correct.

By: _____

Name: _Julio Alvarez_

Dated: _Oct. 18, 2016_

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.

By:    /s/Richard K. Hansen_____

Robert C. L. Vaughan (*Pro Hac Vice*)
Cherine Smith Valbrun
Leah B. Storie
Kim Vaughan Lerner LLP
*Attorneys for Plaintiff*
One Financial Plaza, Suite 2001
Fort Lauderdale, FL 33394
Telephone: (954) 527-1115
Facsimile: (954) 527-1116
E-mail: rvaughan@kvllaw.com

Richard K. Hansen, OSB #832231
Telephone: 503.796-2958
Facsimile: 503.796.2900
Of Attorneys for Plaintiff