**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
ksalyer@tomasilegal.com
edubay@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
(admitted *pro hac vice*)
chrissavage@dwt.com
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**, <br><br> Plaintiff, <br><br> v. <br><br> **UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., and **UPM MARKETING, INC**., an Oregon corporation; **UPM TELECOM, INC**., an Oregon a/b/n; **UPM MARKETING, INC**., an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident; **BALTAZAR RUIZ**, an Oregon resident; and **TYLER ALLEN**, an Oregon resident; and **DUY "BRUCE" TRAN,** an Oregon resident, <br><br> Defendants. | Case No. 3:15-CV-00185-SI <br><br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

**TABLE OF CONTENTS**

I.    RULE 12(G)(2) DOES NOT BAR UPM'S MOTION TO DISMISS ............................... 1

II.   DIGICEL-HAITI DOES NOT DEFEND ITS CONCLUSORY ALLEGATION THAT IT IS ENTITLED TO $0.23 PER MINUTE FOR CALLS TO HAITI. ................. 3

III.  DIGICEL-HAITI DOES NOT EXPLAIN WHY THE TORT LAW OF THE STATE OF OREGON WOULD OR SHOULD TREAT UPM'S CONDUCT AS TORTIOUS. ................................................................................................................... 8

IV.   DIGICEL-HAITI'S FRAUD ALLEGATIONS ARE ALSO INSUFFICIENT. ............... 10

V.    DIGICEL-HAITI CONFLATES UPM'S PREEMPTION AND PRIMARY JURISDICTION ARGUMENTS – BOTH OF WHICH COMPEL DISMISSAL OF DIGICEL-HAITI'S CASE. ........................................................................................ 15

VI.   THE COURT SHOULD DISMISS CLAIMS ADDRESSED BY UPM'S MOTION THAT DIGICEL-HAITI CHOSE NOT TO DEFEND. .................................. 19

VII.  CONCLUSION ................................................................................................................. 20

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

# TABLE OF AUTHORITIES

**Page(s)**

<u>Court Cases</u>

*Abdullah v. International Lease Finance Corporation,* 2015 U.S. Dist. LEXIS 38727 (C.D. Cal. 2015) — 4, 5, 8

*Allstate Ins. Co. v. Countrywide Fin. Corp.,* 824 F. Supp. 2d 1164 (C.D. Cal. 2011) — 2

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) — 4, *passim*

*Bacerra v. Enterprise Rent-A-Car Company of Los Angeles,* 528 Fed. Appx. 770 (9th Cir. 2013) — 4, 5, 8

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) — 4, *passim*

*Caldwell v. Pop's Homes, Inc.,* 54 Or. App. 104 (1981) — 11

*Clark v. Time Warner Cable,* 523 F.3d 1110 (9th Cir. 2008) — 19

*Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581 (1945) — 6

*Conservation Force v. Salazar,* 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009), *aff'd,* 646 F.3d 1240 (9th Cir. 2011), *cert. denied sub nom. Blasquez v. Salazar,* 565 U.S. 1261 (2012) — 10, 19

*Davidson v. Countrywide Home Loans, Inc.,* 2011 U.S. Dist. LEXIS 33404 (S.D. Cal. Mar. 29, 2011) — 2

*Diehl v. Starbucks Corporation,* 2014 U.S. Dist. LEXIS 190018 (S.D. Cal. June 17, 2014) — 2

*Doyle v. City of Medford,* 356 Or. 336 (2014) — 9

*Hamana v. Kholi,* 2011 U.S. Dist. LEXIS 123306 (S.D. Cal. Oct. 25, 2011) — 2

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.,* 758 F. Supp. 2d 1077 (S.D. Cal. 2010) — 1

*Kilopass Tech. Inc. v. Sidense Corp.,* 2010 U.S. Dist. LEXIS 136345 (N.D. Cal. Dec. 13, 2010) — 2

*Lacey v. Maricopa County,* 693 F.3d 896 (9th Cir. 2012) (en banc) — 1

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.,* 431 F.3d 353 (9th Cir. 2005) — 4

*Locricchio v. Office of US Trustee,* 313 Fed Appx 51 (9th Cir 2009) — 10

*MCI Communications Corporation v. FCC,* 712 F.2d 517 (D.C. Cir. 1983) — 12

*Mir v. Kirchmeyer,* 2014 U.S. Dist. LEXIS 192049 (N.D. Cal. Nov. 3, 2014) — 1, 2, 3

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

## TABLE OF AUTHORITIES

**Page(s)**

*National Association of Regulatory Utility Commissioners v. FCC,* 737 F.2d 1095 (D.C. Cir. 1984) .......... 12

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350 (1989) .......... 6

*Northwest Airlines v. County of Kent,* 510 U.S. 355 (1994) .......... 6

*Public Utilities Commission v. United States,* 356 F.2d 236 (9th Cir. 1966) .......... 6

*Stamas v. Cnty. of Madera,* 2010 U.S. Dist. LEXIS 3241 (E.D. Cal. Jan. 15, 2010) .......... 1

*Ting v. AT&T,* 319 F.3d 1126 (9th Cir. 2003) .......... 16, 17

*Wieber v. FedEx Ground Package Sys., Inc.,* 231 Or. App. 469 (2009) .......... 11

*Wilson-Combs v. Cal. Dep't of Consumer Affairs,* 555 F. Supp. 2d 1110 (E.D. Cal. 2008) .......... 2

_Administrative Decisions_

*Determination of Interstate and Intrastate Usage of Feature Group A and Feature Group B Access Service,* Recommended Decision and Order 4 F.C.C. Rcd 1966 (Joint Board 1989) .......... 12

*Determination of Interstate and Intrastate Usage of Feature Group A and Feature Group B Access Service,* Memorandum Opinion and Order 4 F.C.C. Rcd 8448 (1989) .......... 12

_Statutes_

28 U.S.C. § 1331 .......... 18

47 U.S.C. § 201-202 .......... 16, 19

47 U.S.C. § 207 .......... 18

47 U.S.C. § 251(b)(1) .......... 14

Racketeer Influenced Corrupt Organization ("RICO") Act .......... 4, 15, 18

_Rules/Regulations_

Fed. R. Civ. P. Rule 12(b)(1) .......... 3

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

**TOMASI SALYER MARTIN**
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

## TABLE OF AUTHORITIES

**Page(s)**

Fed. R. Civ. P. Rule 12(b)(6)                                         2, 3

Fed. R. Civ. P. Rule 12(g)(2)                                      1, 2, 3

Fed. R. Civ. P. Rule 12(h)(2)                                            2

Fed. R. Civ. P. Rule 44.1                                         4, 5, 8


_Other Authorities_


O.W. Holmes, THE COMMON LAW (1881)                                       9

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

Defendants UPM Technology, Inc. d/b/a UPM Telecom, Inc., UPM Marketing, Inc., UPM Telecom, Inc., UPM Marketing, Inc., Benjamin Sanchez a/k/a Benjamin Sanchez Murillo, Baltazar Ruiz, Tyler Allen, and Duy "Bruce" Tran (collectively "UPM"), hereby reply to Plaintiff Unigestion Holdings S.A.'s Response in Opposition to Defendant's Motion to Dismiss Second Amended Complaint (Doc. # 117) ("Digicel-Haiti Opposition"). As described below, Unigestion Holdings S.A. ("Digicel-Haiti") has failed to explain why the Second Amended Complaint ("SAC") properly pleads any cause of action.  As a result, the SAC should be dismissed with prejudice, for the reasons explained below and in Defendants' Motion to Dismiss Second Amended Complaint (Doc. # 113) ("Motion to Dismiss").

## I.    RULE 12(G)(2) DOES NOT BAR UPM'S MOTION TO DISMISS

At the outset, Digicel-Haiti argues that Rule 12(g)(2) bars UPM from attacking any claims in the SAC that were or could have been attacked by earlier motions to dismiss. Digicel-Haiti Opposition at 3-6.  Most centrally, it argues that UPM may not challenge the sufficiency of Digicel-Haiti's claim to be entitled to $0.23 per minute for calls to Haiti.

This argument is without merit.  In the Ninth Circuit, "'[A]n amended complaint supersedes the original complaint and renders it without legal effect[.]'" *Mir v. Kirchmeyer,* 2014 U.S. Dist. LEXIS 192049, [*14] (N.D. Cal. Nov. 3, 2014), *quoting Lacey v. Maricopa County,* 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (alterations in original).  As a result,

> Courts within this Circuit … have permitted … motions to dismiss in response to an amended pleading ***based on arguments previously made in a prior motion to dismiss and to raise new arguments that were not previously made.*** *See In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.,* 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) ("When Plaintiffs filed the [First Amended Consolidated Complaint], it superseded their previous complaint, and Sony was therefore free to move again for dismissal."); *Stamas v. Cnty. of Madera,* No. CV F 09-0753 LJO SMS*,* 2010 U.S. Dist. LEXIS 3241 , 2010 WL 289310, at *4 (E.D. Cal. Jan. 15, 2010) ("***[A]n amended pleading*** is a new round of pleadings . . . [and] ***is subject to the same challenges as the original*** (i.e., motion to dismiss, to strike, for more definite statement).").  …
>
> In addition, Federal Rule of Civil Procedure 12(h)(2) provides an exception to Rule 12(g)(2) and allows that "defenses [under Rule 12(b)(6)] for failure to state a claim ***may be presented at any time up to and including trial,*** and under Rule

Page 1 of 20 - DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

12(g), a party does not waive a ground for moving to dismiss for failure to state a claim by not including that ground in an earlier motion to dismiss." *Wilson-Combs v. Cal. Dep't of Consumer Affairs,* 555 F. Supp. 2d 1110, 1113 n.3 (E.D. Cal. 2008) (citation omitted).

Moreover, district courts in this Circuit have noted that Rule 12(g) applies to situations where successive motions are filed for the "sole purpose of delay." *Kilopass Tech. Inc. v. Sidense Corp.,* No. C 10-02066 SI, 2010 U.S. Dist. LEXIS 136345, 2010 WL 5141843, at *3 (N.D. Cal. Dec. 13, 2010) (citation and internal quotation marks omitted); *see also Allstate Ins. Co. v. Countrywide Fin. Corp.,* 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011) ("Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics."); *Davidson v. Countrywide Home Loans, Inc.,* No. 09-CV-2694-IEG JMA, 2011 U.S. Dist. LEXIS 33404, 2011 WL 1157569, at *4 (S.D. Cal. Mar. 29, 2011) (***successive motions not brought for purpose of wasting time under Rule 12 where defendants responded to multiple amended complaints***). Even if a party files successive motions, a court has discretion to consider the arguments to expedite final disposition on particular issues. *See Allstate Ins., 824 F. Supp. 2d at 1175*; *Davidson, 2011* U.S. Dist. LEXIS 33404, 2011 WL 1157569, at *4.

*Mir v. Kirchmeyer,* 2014 U.S. Dist. LEXIS 192049 at [*14] – [*16] (emphasis added).  *See also Diehl v. Starbucks Corporation,* 2014 U.S. Dist. LEXIS 190018 at [*12] (S.D. Cal. June 17, 2014) ("The law is clear … that an 'amended complaint supersedes the original' [so that a] Defendant is therefore generally ***permitted to dismiss an amended complaint either by way of arguments previously made or new arguments previously available***") (citations omitted, emphasis added); *Hamana v. Kholi,* 2011 U.S. Dist. LEXIS 123306 at [*2] – [*3] (S.D. Cal. Oct. 25, 2011) ("Under Fed. R. Civ. P. 12(h)(2), a defense of failure to state a claim is not waived by the failure to raise it in a first motion. … Under Fed. R. Civ. P. 12(g)(2), a defendant can move to dismiss an amended complaint for failure to state a claim based on arguments not raised in its first motion to dismiss").  There is, in short, no merit to Digicel-Haiti's effort to insulate the claims in the SAC from the pending Motion to Dismiss.

UPM also notes that at the oral argument leading to the filing of the SAC, UPM counsel asked for clarification that "approving" the SAC (in the sense of agreeing that the SAC met the special pleading obligations established by the Court's ruling at that time) "does not in any way prejudice us from filing a 12(b)(6) or a 12(b)(1) or something like that."  The Court responded, "Absolutely not."  Transcript of Proceedings of July 22, 2016 hearing at page 25,

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

lines 5-7.  The Court's response was entirely in accord with the case law noted above.[1]

UPM emphasizes three final points regarding Rule 12(g)(2).  First, the pending Motion to Dismiss was not interposed for delay.  Quite the contrary.  UPM believes that Digicel-Haiti's case is entirely without merit as a legal matter for (at least) the reasons set out in the motion, and UPM filed its motion in an effort to bring this case to a close as promptly and inexpensively as possible.  Second, while the motion is not specifically directed to the newly revised material in the SAC, that material served both to clarify those issues and to highlight the underlying deficiencies in the SAC as a whole.[2]  Third, if the Court concludes that UPM may not file the Motion to Dismiss as of right, the Court "has discretion to consider the arguments to expedite final disposition on particular issues," *Mir v. Kirchmeyer, supra,* 2014 U.S. Dist. LEXIS 192049 at [*16]. The Court should exercise that discretion to consider UPM's motion.

## II.    DIGICEL-HAITI DOES NOT DEFEND ITS CONCLUSORY ALLEGATION THAT IT IS ENTITLED TO $0.23 PER MINUTE FOR CALLS TO HAITI.

The linchpin of Digicel-Haiti's case is its claim that it was entitled to at least $0.23/minute for traffic UPM sent from the US to Haiti.  Without that allegation, its case boils down to the claim that UPM bought some SIM cards and airtime at normal retail rates and then used them in ways that Digicel-Haiti may not have expected or liked.  Even if true, that would not establish that UPM violated any legal duty that it owed to Digicel-Haiti, particularly since Digicel-Haiti concedes there was no binding contract between the two carriers.  SAC at ¶ 40;

---

[1]    Digicel-Haiti asserts that the Court required that it "allege, in exacting detail, all of its business practices relevant to the transmission of calls and the ownership and function of any entity that is involved in this process."  Digicel-Haiti Opposition at 6.  This overstates the Court's directive to Digicel-Haiti.  If the case is not dismissed, UPM expects to conduct discovery regarding such matters.

[2]    As noted in Section VI, below, the newly pled material confirms that all claims relating to the "Roam Like You're Home" service should be dismissed.  Also, the newly pled material does not insulate Digicel-Haiti from claims under the Communications Act.  *See* Digicel-Haiti Opposition at 3.  If the case is not dismissed, UPM expects to raise Communications Act claims against Digicel-Haiti (and perhaps other Digicel entities) based on Digicel-Haiti's admitted anticompetitive conduct regarding traffic on the US-Haiti route.  Similarly, UPM has not waived and cannot waive claims that Digicel-Haiti lacks standing and that the Court therefore lacks subject matter jurisdiction over this case.  *See id.*

Digicel-Haiti Opposition at 16.  And there is obviously no free-floating obligation in the tort law of the State of Oregon to pay Digicel-Haiti $0.23/minute for using its network.[3]  So, Digicel-Haiti's whole case depends on nailing down UPM's supposed obligation to pay that rate.

The question is, where did the $0.23/minute rate come from?  There is only one source: Digicel-Haiti says it was "set by the Government of Haiti for terminating incoming international cellular telephone calls."  SAC at ¶ 38.  In other words, Digicel-Haiti's claim is that UPM must pay $0.23/minute because of a legally binding obligation supposedly established by a foreign government.  It follows that Digicel-Haiti's entire case depends on foreign law (the $0.23 rate) and on UPM's supposed failure to comply with that law (by not paying it).

UPM explained in its Motion to Dismiss that allegations of foreign law must be pled with sufficient specificity to pass the stringent pleading requirements established by *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), as well as by Fed. R. Civ. P. 44.1.  UPM cited two cases from this Circuit confirming that those pleading requirements apply to allegations of foreign law.  *See Bacerra v. Enterprise Rent-A-Car Company of Los Angeles,* 528 Fed. Appx. 770 (9th Cir. 2013) (affirming dismissal of complaint for failure to adequately plead foreign law, citing *Iqbal*), and *Abdullah v. International Lease Finance Corporation,* 2015 U.S. Dist. LEXIS 38727, [*83]-[*92] (C.D. Cal. 2015) (dismissing claim under Cormoran law as insufficiently pled under Fed. R. Civ. P. 44.1 and insufficiently specific under *Twombly/Iqbal*). Digicel-Haiti does not dispute or distinguish (or, in the case of *Bacerra* and *Abdullah,* even mention) these cases.  It does not argue that allegations of foreign law are exempt from *Twombly* and *Iqbal.* Nor does it argue that its allegations about the source

---

[3]      Neither is there such an obligation in the Racketeer Influenced Corrupt Organization Act ("RICO").  In RICO terms, the enforceability of the $0.23/minute rate goes to the obligation to show that UPM's actions caused "injury to plaintiff's business or property."  Digicel-Haiti Opposition at 7, *quoting Living Designs, Inc. v. E.I. DuPont de Nemours & Co.,* 431 F.3d 353, 361 (9th Cir. 2005).  Digicel-Haiti is not "injured" in any cognizable sense by not receiving $0.23/minute if it has no entitlement to that rate in the first place. So, by failing to adequately plead the basis for the $0.23 rate, Digicel-Haiti has failed to adequately plead not only its underlying fraud claims, but also its RICO claims.

Page 4 of 20 - DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

of the $0.23/minute rate are specific enough to meet the requirements of *Twombly/Iqbal* or Rule 44.1.[4]  Instead, it argues that: (a) none of its claims, including the $0.23 rate, are based on foreign law; and (b) its case does not depend on the enforceability of the $0.23/minute rate.  *See* Digicel-Haiti Opposition at 7-12.  This brings to mind the quote from the movie *Duck Soup* – "Well, who you gonna believe? Me or your own eyes?" *See* http://www.imdb.com/title/tt0023969/quotes. For these purposes, what matters is what one can actually see in the SAC, and what one can see shows that Digicel-Haiti is wrong.

At the outset, Digicel-Haiti effectively admits that it has not provided any detail, noting UPM's statement that "Digicel-Haiti did not include the legal explanation of Haitian telecommunications regulations regarding the minimum international rate."  Digicel-Haiti Opposition at 7.  This phrasing, of course, assumes that there *is* some "minimum international rate" that is binding on UPM, which only emphasizes the problem.  And, Digicel-Haiti does not claim it provided any such "explanation" for the rate, "legal" or otherwise.  Instead, it claims that its case does not depend on foreign law at all.  Thus, it states baldly that:

- "[T]he allegations of the SAC do not rely on the violation and adjudication of foreign law." Digicel-Haiti Opposition at 7;

- It "has not alleged that foreign law applies to the underlying allegations of liability." *Id.* at 9; and

- "[T]here is no pleaded intent to rely on foreign law or any alleged claims that will be determined by foreign law." *Id.*

But the Court should believe its own eyes: there can be no doubt that Digicel-Haiti's claimed entitlement to a minimum of $0.23/minute arises from foreign law.  What else can possibly be meant by the direct statement that the rate was "set" by "the Government of Haiti"?  In this

---

[4]    Digicel-Haiti notes that its earlier submission of materials regarding Haitian telecommunications regulation was not an effort to comply with Rule 44.1. Digicel-Haiti Opposition at 8-9.  Those materials do not support the $0.23/minute rate and do not support Digicel-Haiti's claim that UPM violated Oregon tort law.  Motion to Dismiss at 18-19.  That said, by distancing those materials from its Rule 44.1 obligations, Digicel-Haiti only confirms that its allegations of foreign law in the SAC are inadequate to permit the case to go forward.

regard, it is well-settled that setting rates is a legislative function. *See Northwest Airlines v. County of Kent,* 510 U.S. 355, 366 (1994), *quoting Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 589 (1945) ("Rate-making is essentially a legislative function"); *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 371 (1989) ("[R]atemaking is an essentially legislative act"); *Public Utilities Commission v. United States,* 356 F.2d 236, 241 (9th Cir. 1966) (setting rates "is recognized to be essentially a legislative act") (footnote omitted).  So, when Digicel-Haiti alleges that "the Government of Haiti" has "set" the $0.23/minute rate, it is clearly and without question relying on foreign law.

Digicel-Haiti gamely seeks to avoid this conclusion, asserting – without any citation to the SAC – that "its claims are firmly rooted in the United States Code and Oregon state law."  Digicel-Haiti Opposition at 9.  But this is simply wrong.  It cites to nothing – and there is nothing – either in the United States Code or in Oregon law that establishes $0.23/minute as a legally binding rate that UPM was obliged to pay for calls going from the United States to Haiti.  (Indeed, nothing in the United States Code or Oregon state law requires UPM to pay Digicel-Haiti any particular rate at all.)  Again: Digicel-Haiti's entire case depends on foreign law – the supposed enforceability of the $0.23/minute rate – which Digicel-Haiti has barely pled, and certainly has not pled with the specificity required by *Twombly* and *Iqbal* and Rule 44.1.

Perhaps sensing this hole in its logic, Digicel-Haiti next tries to run away from the importance of the $0.23/minute rate to its overall case.  Thus, Digicel-Haiti claims that its allegations about the $0.23 rate were included "simply to illustrate the minimum rate charged" for calls to Haiti, and that the rate "does not serve as the basis for [UPM]'s liability."  Digicel-Haiti Opposition at 9.  But this is obviously absurd – without an adequate allegation that Digicel-Haiti was legally entitled to payment beyond what it received when UPM bought SIM cards and paid for usage, Digicel-Haiti has no claim for damages and its entire case collapses.[5]

---

[5]     Use of the passive voice cannot hide these problems.  To say that the $0.23 is "the rate charged" leaves the key questions unanswered – Who charges the rate? For what? On what authority?

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

Continuing its effort to downplay the importance of the $0.23 rate, Digicel-Haiti claims that the SAC provided "multiple detailed allegations of liability and damages." Digicel-Haiti Opposition at 7-8. But aside from its claims of being underpaid – that is, aside from claims based on the $0.23 rate – its only allegations of harm are that (a) the calls from UPM somehow put "stress" on Digicel-Haiti's network, and (b) UPM's operation somehow harmed Digicel-Haiti's "goodwill." UPM explained in the Motion to Dismiss that the allegations of these supposed harms are too vague and conclusory – and implausible on their face – to support liability. Motion to Dismiss at 11-12. In a truly tepid effort to defend those claims, Digicel-Haiti notes that "it is inappropriate to consider whether or not properly plead damages have been proven." Digicel-Haiti Opposition at 12 n.4. But that's not the point: UPM showed that Digicel-Haiti's *pleading* regarding these supposed damages was insufficient, not that Digicel-Haiti had not proven "properly plead" damages. Digicel-Haiti simply ignores this argument.

The centrality of the $0.23 rate is also illustrated by the fact that Digicel-Haiti cannot summarize or describe its case without at least implicit reference to the enforceability of that rate. Its Opposition opens with: "This is a case about fraud. Put simply, [UPM] plotted and conspired *to underpay Digicel* for telecommunications services…" Digicel-Haiti Opposition at 2 (emphasis added). But there is no independent tort of generic "underpayment." Digicel-Haiti can only be "underpaid" in relation to some amount which it supposedly should have been paid – which, here, obviously, is its claim that it was entitled to $0.23/minute.

This theme reappears throughout Digicel-Haiti's Opposition, as it claims that UPM engaged in "theft" by sending calls to Haiti without paying the $0.23. *See* Digicel-Haiti Opposition at 2 ("there has been fraud and theft"); *id.* at 14 ("Digicel Haiti seeks relief for [UPM's] theft of Digicel Haiti's property and services"); *id.* at 15 (UPM's business model "amounts to fraud and theft"); *id.* at 16 (Digicel-Haiti seeks damages supposedly arising from UPM's "fraudulent conduct and theft of the use of Digicel Haiti's telecom network and infrastructure"). Because it is uncontested that UPM bought and paid for SIM cards and usage, the only possible "theft" would be UPM paying Digicel-Haiti less than it was somehow entitled

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

to receive – again, making the $0.23 rate central to Digicel-Haiti's entire case.[6]  On this point as well, the Court should believe its own eyes – and what is clear from the face of the SAC and Digicel-Haiti's Opposition – and conclude that Digicel-Haiti's case collapses without the legal enforceability of the $0.23 rate – a rate that, as alleged, supposedly arises from a legislative act by the Government of Haiti.

Without question, the $0.23/minute rate is central to Digicel-Haiti's claims, and without question, the source of that supposedly legally enforceable rate is foreign law – some supposed act by "the Government of Haiti."  SAC ¶ 38.  Digicel-Haiti thus had an obligation under *Twombly, Iqbal, Bacerra* and *Abdullah* (and Fed. R. Civ. P. 44.1) to specifically and in detail plead the nature and source of that foreign law.   It did not do so, and does not try to claim that it did.  As a result, all of its claims should be dismissed.

## III.    DIGICEL-HAITI DOES NOT EXPLAIN WHY THE TORT LAW OF THE STATE OF OREGON WOULD OR SHOULD TREAT UPM'S CONDUCT AS TORTIOUS.

Taking the allegations of the SAC as true, UPM cleverly and nefariously deceived the Government of Haiti with regard to the nature of some equipment it shipped to Haiti, and also cleverly and nefariously found ways to buy SIM cards and usage from Digicel-Haiti that Digicel-Haiti did not want UPM to buy.[7]  If the SAC is correct, UPM broke Haitian law in so doing, and, evidently, also broke the laws of other countries – all in service of getting traffic to Haiti without paying Digicel-Haiti the sacrosanct $0.23/minute.  In other words, according to the

---

[6]    Digicel-Haiti appears to be raising a new claim, which is that somehow the SIM cards that UPM bought in order to resell Digicel-Haiti's services were actually ***Digicel-Haiti's*** property.  *See* Digicel-Haiti Opposition at 8 (referring to "Digicel-Haiti's SIM cards"); *id.* at 9 (same); *id.* at 10 (same); *id.* at 14 (referring to UPM's supposed "theft of Digicel-Haiti's property and services"). UPM cannot fathom a legal theory under which Digicel-Haiti somehow retained ownership over SIM cards that UPM purchased on the open market in Haiti but, in any event, the SAC does not allege such claims.

[7]    As in the Motion to Dismiss, in this brief UPM treats the well-pled allegations of the SAC as true, while reserving its right to dispute any and all of them if the case goes forward.  It again bears emphasis that Digicel-Haiti does not assert that UPM violated any contractual obligations either in purchasing SIM cards and usage or in reselling Digicel-Haiti's services.

SAC, UPM supposedly did bad things that violate the laws of Haiti and other countries as well.

As UPM explained in its Motion to Dismiss, the only reasonable response to these claims from the perspective of Oregon tort law is, "so what?"  Motion to Dismiss at 12-20.  Even if properly pled, a violation of the laws of a foreign sovereign does not provide a basis for state-law tort liability in the United States.  Extending Oregon tort law to cover (arguable) violations of Haitian law requires a policy justification.  *See* O.W. Holmes, Jr., THE COMMON LAW (1881) at 35; *Doyle v. City of Medford,* 356 Or. 336 (2014).  Digicel-Haiti's Opposition does not acknowledge, much less grapple with, the lack of any logical connection between UPM trying to get calls to Haiti cheaply – even if, as alleged, in violation of Haitian law – and a sound policy explanation for why the courts of Oregon would supposedly deem that conduct to be tortious.

UPM laid out many good reasons to conclude that the State of Oregon would ***not*** view UPM's alleged conduct to be tortious.  First, Oregon tort law has no inherent concern with Haitian legal requirements.  Second, Oregon tort law has no role to play in setting or policing rules of conduct regarding international telecommunications traffic.  Third, the policy of the United States is ***served*** by actions such as those taken by UPM that are designed to bypass anticompetitive restrictions like those imposed by Haiti, and Oregon tort law would respect that policy.  Fourth, the effect of UPM's actions – to lower the cost of calling to Haiti for Oregon residents and others – is something the policy of Oregon would support, not punish.  Motion to Dismiss at 12-20.  Digicel-Haiti may have a claim against UPM under Haitian law (although, as suggested in the Motion to Dismiss at 18-19, even that is dubious), but it has no claim against UPM under Oregon tort law.

Digicel-Haiti does not meaningfully respond to this aspect of UPM's motion.  It does not advance any policy justification for the State of Oregon to sanction UPM's actions.  It does not explain why the courts of Oregon would embrace application of Oregon tort law to vindicate anti-competitive policies put into place by the Government of Haiti.  It does not explain why the courts of Oregon would extend Oregon tort law to embrace international telecommunications issues.  It does not explain why the courts of Oregon would deem conduct to

be tortious the purpose and effect of which is to put downward pressure on the prices consumers pay for calls to Haiti.  The only reasonable conclusion is that the courts of Oregon would not do so, and the SAC should be dismissed, both on the strength of UPM's arguments and because Digicel-Haiti has, by ignoring them, waived any opposition to them.  *See Conservation Force v. Salazar,* 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived. *Locricchio v. Office of US Trustee,* 313 Fed Appx 51, 52 (9th Cir 2009)"), *aff'd,* 646 F.3d 1240 (9th Cir. 2011), *cert. denied sub nom. Blasquez v. Salazar,* 565 U.S. 1261 (2012).

## IV.    DIGICEL-HAITI'S FRAUD ALLEGATIONS ARE ALSO INSUFFICIENT.

Assuming that the tort law of the state of Oregon might, in theory, extend to actions of the kind that Digicel-Haiti is complaining about, the SAC should still be dismissed under *Twombly* and *Iqbal* because Digicel-Haiti failed to address an entirely innocent explanation for what it asserts is fraudulent conduct.  Motion to Dismiss at 7-11. Specifically, Digicel-Haiti's fraud claim is premised on the idea that UPM in some way "actively concealed" information about the telephone numbers (and thus location in the United States) of the end users making the calls that were routed to UPM, which then routed them to Digicel-Haiti.  SAC at ¶¶ 41-58, 70, 84 (alleging "active concealment").  *See* Digicel-Haiti Opposition at 11-13.  Yet the SAC ignores a straightforward explanation, based on common sense and common experience, that defeats the "active concealment" claim.

The concept of UPM "actively concealing" information necessarily implies that if UPM would just stop its concealment, Digicel-Haiti would get the information it wants.  This basic idea is captured somewhat casually and colloquially – but, UPM submits, entirely accurately – with the "Aw, c'mon…" test.  When a defendant claims that it should not be held liable for alleged concealment, the test is, "Aw, c'mon.  All you had to do was [x]."  The operation of this test can be seen in the two cases relied upon by Digicel-Haiti.  In *Caldwell v. Pop's Homes, Inc.,* 54 Or. App. 104 (1981), plaintiff bought a mobile home in a mobile home park, but the park was about to be sold and shut down.  Defendants knew this, but did not tell

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

plaintiff, and the court upheld a fraud verdict for damages arising from the shut-down. Why? "Aw, c'mon. All you had to do was tell the plaintiff that the mobile home park was being sold." In *Wieber v. FedEx Ground Package Sys., Inc.,* 231 Or. App. 469 (2009), the plaintiff lost the opportunity to sell his business on good terms when defendant told him he would get advance notice if defendant was terminating his contract, and approved his purchase of an additional truck to expand, even as defendant was actually getting ready to end the contract. Here again, the fraud verdict was upheld on appeal. Why? "Aw, c'mon. All you had to do was tell him you wouldn't give him notice before terminating the contract, and tell him not to buy the new truck."

Application of the "Aw c'mon" test to Digicel-Haiti's fraud claim both shows why Digicel-Haiti's allegations are insufficient under *Twombly* and *Iqbal* and provides insight into Digicel-Haiti's actual position. UPM purchased SIM cards and airtime from Digicel-Haiti, and then routed calls from third parties in the United States to Digicel-Haiti's wireless network by means of those SIM cards and used the airtime to complete them. Digicel-Haiti claims that UPM engaged in fraud – in "active concealment" – by not sending Digicel-Haiti signaling information with the originating third parties' telephone numbers. So, applying the test, Digicel-Haiti would say, "Aw c'mon. All you had to do was…" – what, exactly? Digicel-Haiti has no answer to that question – either in its pleadings or in fact – for the simple reason that there is no technical means by which UPM could send Digicel-Haiti the information it wants for calls UPM sent to Digicel-Haiti's network using the purchased SIM cards and airtime as its means of delivering traffic. It's just not the way phone networks work.

While this is described in a bit more detail in a footnote below, all the Court needs to consult to understand this point is common experience and common sense. *See Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). When Person A uses his cell phone to call Person B, the number that reaches (and can be displayed on) Person B's phone is Person A's phone number. That's how Person B's phone knows to display "John" or "Home" or "Doctor's Office" or whatever name Person B has

Page 11 of 20 - DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

identified as associated with Person A's number. The phone number that is "known" to, and available to, the wireless network (which sends it to the called party's phone) is the number of the phone making the call – not the number of a third party that might be further up the line and somehow connected to the phone making the call.[8]

Now, if Digicel-Haiti wanted to allege that, *contrary to normal, common experience,* there is something special or different that UPM could have or should have done to get different or additional signaling information to Digicel-Haiti's network, it was free to make such allegations. But it did not. As a result, its claim boils down to the idea that "letting things work the way they normally work" constitutes "active concealment" as an element of fraud. That can't be right. Notably on this point, Digicel-Haiti misconstrues UPM's argument. UPM is not attacking Digicel-Haiti's pleading on the grounds that Digicel-Haiti "has not pled a legal entitlement to accurate information." Digicel-Haiti Opposition at 11. The problem with Digicel-Haiti's pleading is that its fraud claim is based on the notion that UPM could, somehow, have transmitted the specific "accurate information" Digicel-Haiti says it wants – information about the third party end users who originated the calls – as opposed to the "accurate information" that

---

[8]    This limitation on the information available to the network is reflected in any number of court and regulatory rulings. When Carrier A connects to Carrier B by using Carrier B's *retail service,* this is called a "line-side" connection. *See, e.g., MCI Communications Corporation v. FCC,* 712 F.2d 517, 523 (D.C. Cir. 1983) (discussing how MCI used to connect to local phone networks using standard business lines). By contrast, the kind of switch-to-switch connection Digicel-Haiti describes in the SAC, *see* SAC at ¶ 26, is a "trunk-side" connection. *See, e.g., National Association of Regulatory Utility Commissioners v. FCC,* 737 F.2d 1095, 1107 (D.C. Cir. 1984) (noting differences between "line side" and "trunk side" connections). The most well-known "line-side" connection was the arrangement used by some long-distance carriers prior to the break-up of the Bell System, known as "Feature Group A." A line-side connection does not provide "automatic number identification" or "ANI," which is what Digicel-Haiti wants. *See Determination of Interstate and Intrastate Usage of Feature Group A and Feature Group B Access Service,* Recommended Decision and Order 4 F.C.C. Rcd 1966 (Joint Board 1989) at ¶ 3 ("FGA and FGB access arrangements … typically do not provide ANI capability [and] lack the technical ability to identify and measure jurisdictional usage"); *see id.* at ¶ 56 n.47 ("While actual measurement is obviously the best way of ensuring accurate jurisdictional determination of interstate and intrastate traffic, it does not appear that the ANI capability is available for FGA under any circumstances"). The FCC "adopt[ed] these recommendations and the analysis and reasoning on which they are founded." *Determination of Interstate and Intrastate Usage of Feature Group A and Feature Group B Access Service,* Memorandum Opinion and Order 4 F.C.C. Rcd 8448 (1989) at ¶ 2 (footnote omitted).

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

UPM actually transmitted – information about the phone numbers assigned (by Digicel-Haiti) to the retail services that UPM bought from Digicel-Haiti in order to resell them.[9]

This is why Digicel-Haiti's allegations fail the "Aw c'mon" test.  What that test highlights is a plaintiff's obligation to be able to identify what the defendant supposedly could have and should have done to avoid liability.  Here, Digicel-Haiti has not alleged – and cannot allege – that there is some straightforward or obvious or understandable or even subtle thing that UPM could have or should have done to deliver Digicel-Haiti the information Digicel-Haiti wants.  The reason Digicel-Haiti did not make that allegation is that there *is* no such thing – as is borne out in common experience every time any of us receives a call on our phones that displays the number of the telephone calling us.

In fact, Digicel-Haiti doesn't think that UPM had a legal duty to send end user telephone numbers using resold lines.  It wishes that UPM had a legal duty not to resell Digicel-Haiti's services *at all*, and through a combination of vague and clever pleading tries to dress up that anticompetitive claim as a form of misrepresentation.

Which brings us to Digicel-Haiti's real complaint, which is *not* that UPM failed to find some magical and unspecified way to send the ultimate originating caller's telephone number "up the line" to Digicel-Haiti's wireless network.  Digicel-Haiti's real complaint is that UPM's entire "business model" is supposedly fraudulent.  *See* Digicel-Haiti Opposition at 15.  As Digicel-Haiti summarized its own argument: "Put simply, the Defendants plotted and conspired to underpay Digicel for telecommunications services and access to its network *so that they could resell that service and network access at a profit.*"  Digicel-Haiti Opposition at 2 (emphasis added).  In other words, Digicel-Haiti's real claim is that it constitutes fraud for UPM – for anyone – to buy a SIM card and airtime and then resell that service by routing third-party calls to

---

[9]     UPM does note that Digicel-Haiti has pled no source of law – whether from Oregon, from the United States generally, or from Haiti – that gives it a legal entitlement to expect to receive the information it wants, which is a separate defect in the SAC.

Page 13 of 20 - DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

Digicel-Haiti using that SIM card and airtime.[10]

The problem with Digicel-Haiti's position, as alluded to above and as discussed in detail in the Motion to Dismiss at 12-18, 19-20, is that there is not the slightest indication in Oregon tort law, in United States telecommunications law, or in any other law of which UPM is aware, that there is anything wrongful about reselling a retail connection to Digicel-Haiti's network for use by third parties. If some contract to which UPM was a party banned that activity, there might be a breach of contract claim. But no contractual relationship is at issue. SAC at ¶ 40; Digicel-Haiti Opposition at 16. If some United States law banned resale of telecommunications services, there could be some statutory claim. But United States law encourages resale. *See* 47 U.S.C. § 251(b)(1). If some policy of the United States directed US-based entities to avoid bypassing overpriced foreign calling regimes, there could be some regulatory claim. But the FCC specifically encourages this kind of activity. If some aspect of Oregon tort law deemed resale of wireless telephone services to be problematic, there might be a tort case. But Oregon tort law simply does not address this issue.

Digicel-Haiti isn't pleading any sort of normal fraud case, whether based on "active concealment" or otherwise. Digicel-Haiti is seeking a ruling that it constitutes fraud to resell its wireless services.

UPM submits that Digicel-Haiti keeps its focus on the fact that it doesn't get "true" signaling information with the calls UPM sends because that creates the impression that UPM is somehow nefariously concealing vital information in order to perpetrate its clever fraudulent scheme. But the much more prosaic truth – again, based on common experience and common sense – is that with resale of a retail service – known in the industry as a "line-side"

---

[10]    UPM is puzzled by Digicel-Haiti's apparent view that there is something inappropriate about UPM trying to make a profit by reselling Digicel-Haiti's service. Private businesses exist to make profits. The basic idea of competitive markets is that firms that can find ways to provide services at higher quality and lower cost than competitors do will earn profits while simultaneously providing benefits to consumers.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

connection, as noted above – that kind of signaling information simply cannot be transmitted. Not doing something that you can't do is not fraud.[11]

This is why UPM argued in the Motion to Dismiss that Digicel-Haiti has not properly pled fraud under the standards of *Twombly* and *Iqbal,* and also why it argued that there is no reason to conclude that Oregon tort law would sanction anything that UPM allegedly did (*see supra*).  UPM did not take any steps – affirmative or otherwise – to prevent Digicel-Haiti from getting the call signaling information it wants.  What UPM did was to resell Digicel-Haiti's retail services to deliver traffic to Digicel-Haiti's network, which is not and never has been configured to transmit that information. Using a decades-old, well-established, standard means of interconnecting networks – resale of retail services – cannot somehow magically have become a form of fraud under Oregon tort law.  To adequately plead fraud requires an identification of something more, which Digicel-Haiti has not supplied.  As a result, Digicel-Haiti has not properly pled a claim for fraud, and the SAC should be dismissed.

## V.    DIGICEL-HAITI CONFLATES UPM'S PREEMPTION AND PRIMARY JURISDICTION ARGUMENTS – BOTH OF WHICH COMPEL DISMISSAL OF DIGICEL-HAITI'S CASE.

In the Motion to Dismiss, UPM raised two distinct arguments based on the Communications Act. First, UPM explained that Congress has given the FCC plenary and exclusive regulatory authority over all aspects of the terms and conditions of international telecommunications, and that Oregon tort law is therefore preempted as to the matters at issue in the SAC. Motion to Dismiss at 23-29.  Second, UPM explained that even if Oregon tort law is not literally preempted, this Court should dismiss the case under the doctrine of primary jurisdiction and refer the issues to the FCC.  Motion to Dismiss at 29-31.

---

[11]    In RICO terms, simply reselling Digicel-Haiti's retail services, while (automatically) sending to Digicel-Haiti the signaling information associated with those services, as opposed to other information that Digicel-Haiti might want, is not wrongful and so cannot be a RICO "predicate act." *See* Digicel-Haiti Opposition at 7.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

Digicel-Haiti conflates these two arguments, claiming that UPM argues "that Digicel-Haiti's claims are preempted by the Communications Act, and therefore, should be before the [FCC]." Digicel-Haiti Opposition at 13. But the two claims are separate.

With regard to preemption, Digicel-Haiti claims that *Ting v. AT&T,* 319 F.3d 1126 (9th Cir. 2003) stands for the broad proposition that the Communications Act "does not preempt state law." Digicel-Haiti Opposition at 12-14. But *Ting* says no such thing. *Ting* involved a claim that 47 U.S.C. §§ 201-02 preempted state consumer protection laws with regard to retail long distance service. The question was whether, looking at the purpose and operation of the Communications Act in light of the FCC's decision to detariff consumer long distance services, enforcing state consumer protection laws would interfere with, or stand as an obstacle to, the operation of the statute. That is, *Ting* was a "conflict preemption" case. Given that the FCC had plainly said that state contract law would apply to AT&T's relationships with its customers, the Ninth Circuit held that state contract law was not preempted.

Here, Digicel-Haiti is trying to apply Oregon state tort law to interconnection arrangements between two carriers with respect to international calling. This raises two different issues under *Ting* in particular and the law of preemption generally.

First, UPM's primary argument is that **all** matters with respect to international calling arrangements – the ways in which carriers interconnect, how much they pay each other, etc. – are preempted by the Communications Act. Whereas in *Ting* the FCC had said that there was a role for state contract law, as noted in UPM's Motion to Dismiss, the FCC and the courts have repeatedly recognized that the FCC's jurisdiction over international calling matters is exclusive. *See* Motion to Dismiss at 24-26 (citing multiple court and FCC rulings). Thus, whereas in *Ting* the question of "field preemption" did not arise – the FCC had expressly and intentionally ceded much of the "field" to state law – here it is front and center. The FCC has never said that state tort law would or should play a role in determining the terms and conditions of interconnection or payment for international calling. In this regard, UPM notes that Digicel-Haiti has not offered a single case – not one – in which Oregon tort law, or any state's tort law,

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

has ever been applied to international telecommunications matters.

Second, *Ting* does not help Digicel-Haiti even if the current dispute is viewed as a case of conflict preemption rather than field preemption. For the reasons described above, the court in *Ting* found that applying state consumer protection law to the contractual relationship between AT&T and its retail long distance customers would not frustrate any federal policies or objectives. By contrast, application of the tort law of Oregon to the terms and conditions on which UPM sent traffic to Digicel-Haiti would interfere with federal control of international telecommunications matters – that is, if this is an issue of ***conflict*** preemption rather than ***field*** preemption, the answer is that it clearly would interfere. The Motion to Dismiss is replete with citations to FCC rulings explaining that the policy of the United States is to encourage competition in all aspects of international calling, explaining that it favored using the Internet to avoid high call termination rates in foreign countries, and declining to use its investigative and other powers to help foreign nations enforce their anti-competitive market restrictions, even where the activity banned in the foreign country happened, in part, in the United States. *See* Motion to Dismiss at 13-17 (citing FCC rulings). It would plainly interfere with the FCC's pursuit of these pro-competitive policies to impose state-law tort liability on activities that the FCC has indicated it affirmatively wants to encourage. So, while *Ting* is obviously good law as far as it goes, the situation at issue in this case is so different from that addressed in *Ting* that even on a "conflict preemption" analysis, this Court should rule that Digicel-Haiti's state-law-based claims against UPM are preempted by the FCC's specific rulings made under its general authority over international communications.

Finally with regard to preemption, and contrary to Digicel-Haiti's suggestion, the point of UPM's preemption argument is not that the Court lacks ***jurisdiction*** over the claims in the SAC. *See* Digicel-Haiti Opposition at 15-16. The point is that the SAC should be dismissed because the claims it alleges – state tort law claims pled as a basis for RICO – are legally non-viable because they are preempted by the Communications Act (on which Digicel-Haiti did not rely). UPM also does not contend that this Court would lack jurisdiction over some hypothetical

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

set of Communications Act claims that Digicel-Haiti might conceivably have alleged against UPM. Any such claims would be substantively without merit – there is nothing unjust, unreasonable, or discriminatory about what UPM did – but this Court would have subject matter jurisdiction to hear them if otherwise properly pled. *See* 47 U.S.C. § 207 (federal courts may hear claims that a carrier violated the Communications Act); 28 U.S.C. § 1331 (federal courts may hear claims based on alleged violations of federal law). But the fact that this Court would have jurisdiction over hypothetical federal-law claims that Digicel-Haiti has not made, does not protect the state-law claims it actually made from being dismissed on preemption grounds.

The fact that the SAC should be dismissed on preemption grounds is an entirely separate point from the fact that it should *also* be dismissed on primary jurisdiction grounds. If the Court accepts UPM's preemption argument, then the primary jurisdiction argument becomes moot. The point of the primary jurisdiction argument is that even if some aspects of the SAC survive substantive dismissal, the SAC should *still* be dismissed because the FCC, rather than federal court, is the place where Digicel-Haiti should really be looking for a resolution of its complaints. UPM identified the factors bearing on whether primary jurisdiction applies to a given case and explained why those factors show that this proceeding – if it is not dismissed for failure to state a claim – should be dismissed on primary jurisdiction grounds. *See* Motion to Dismiss at 29-31. As noted there, a case should be handed over to an agency with primary jurisdiction if the case involves issues that have been placed by Congress within the jurisdiction of an administrative body having regulatory authority, pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority and that requires expertise or uniformity in administration. *See Clark v. Time Warner Cable,* 523 F.3d 1110, 1114-15 (9th Cir. 2003). These factors obviously counsel a primary jurisdiction referral here. Digicel-Haiti, however, does not address them in its response in any way. UPM suggests that the Court treat that silence as a concession by Digicel-Haiti that this case should indeed be dismissed on

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

primary jurisdiction grounds, if it is not otherwise disposed of.[12]

## VI.    THE COURT SHOULD DISMISS CLAIMS ADDRESSED BY UPM'S MOTION THAT DIGICEL-HAITI CHOSE NOT TO DEFEND.

UPM moved to dismiss Digicel-Haiti's claims for conversion and unjust enrichment, showing that those claims were entirely dependent on the untenable premise that Digicel-Haiti somehow has a legally enforceable right to "own" the right to all money third parties spend getting calls from the United States to Haiti.  Thus, UPM does not "convert" Digicel-Haiti funds when it gets paid by third parties to get calls to Haiti, and it is not "unjustly enriched" by doing so.  Motion to Dismiss at 22-23.  Digicel-Haiti makes no effort to defend its unjust enrichment or conversion claims.  To the contrary, its Opposition mentions those claims only twice, in passing.  *See* Digicel-Haiti Opposition at 3 (noting earlier rulings about those claims); *id.* at 16 (asserting that the Court has pendant jurisdiction over those claims).  As noted above, it is well-settled that "[w]here plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived." *Conservation Force v. Salazar, supra,* 677 F. Supp. 2d at 1211.  For this reason – as well as for the reasons presented in UPM's Motion to Dismiss – Digicel-Haiti's conversion and unjust enrichment claims should be dismissed.

UPM also moved to dismiss claims relating to the "Roam Like You're Home" service because Digicel-Haiti has not alleged any damages arising from UPM's resale of that service.  Motion to Dismiss at 21-22.  Specifically: (a) Digicel-Haiti admits that it received the $0.23/minute to which it claims to be entitled when UPM resold that service; and (b) Digicel-Haiti does not allege that any United States legal standard prevented UPM from reselling it.  *Id.*

---

[12]    Attacking a straw man, Digicel-Haiti suggests that UPM is arguing that that this case somehow involves setting the terms and conditions of an interconnection agreement between the carriers. *See* Digicel-Haiti Opposition at 13-14, 16.  UPM makes no such claim.  UPM's argument is that the rates, terms and conditions on which UPM and Digicel-Haiti exchanged traffic are governed by 47 U.S.C. §§ 201-202, which govern all "charges, practices, classifications and regulations for or in connection with" international communications, thus preempting Digicel-Haiti's state law arguments and strongly supporting primary jurisdiction referral if the case is not dismissed.

Page 19 of 20 - DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

Unlike its conversion and unjust enrichment claims, which Digicel-Haiti at least mentions in passing, Digicel-Haiti's Opposition offers literally nothing to defend its "Roam Like You're Home" claims.  In these circumstances, the Court should rule that Digicel-Haiti has waived those claims and dismiss them.  *See Conservation Force v. Salazar, supra.*

## VII.    CONCLUSION

For the reasons stated here and in the Motion to Dismiss, this Court should dismiss the SAC with prejudice, and bring this case to an end.

Dated: February 6, 2017.

TOMASI SALYER MARTIN

By:    /s/ Kathryn P. Salyer
Kathryn P. Salyer, OSB #883017
Eleanor A. DuBay, OSB #073755
ksalyer@tomasilegal.com
edubay@tomasilegal.com
Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By:    /s/ Christopher W. Savage
Christopher W. Savage
D.C. Bar #362657
chrissavage@dwt.com
Telephone: (202) 973-4200
*Admitted Pro Hac Vice*

Of Attorneys for Defendants

Page 20 of 20 - DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT
UPM-L1\00294746.000

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236