**Richard K. Hansen**
Email: rhansen@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.796.2958
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Kim Vaughan Lerner LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL 33394
Telephone: 954.527.1115
Facsimile: 954.527.1116

Attorney for Counterclaim Defendants, Unigestion
Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti;
and Digicel USA Incorporated

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A.,** a foreign corporation, d/b/a **DIGICEL HAITI**, | No. 3:15-cv-00185-SI |
| *Plaintiff,* | |
| vs. | **COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT** |
| **UPM TECHNOLOGY, INC. d/b/a UPM TELECOM, INC.,** and **UPM MARKETING, INC.,** an Oregon corporation; **UPM TELECOM, INC.,** an Oregon a/b/n; **UPM MARKETING, INC.,** an Oregon a/b/n; **BEN SANCHEZ a/k/a BEN SANCHEZ MURILLO,** a foreign individual; **BALTAZAR RUIZ,** a foreign individual, **TYLER ALLEN**, a foreign individual, and **DUY TRAN a/k/a BRUCE TRAN**, a foreign individual , | **ORAL ARGUMENT REQUESTED** |
| *Defendants,* | |

**UPM TECHNOLOGY, INC.,** an Oregon corporation;

      *Counterclaim Plaintiff,*

      **vs.**

**UNIGESTION HOLDINGS, S.A.,** a foreign corporation, d/b/a **DIGICEL HAITI**; and **DIGICEL USA, INC.** a Delaware corporation.

      *Counterclaim Defendants.*

## CERTIFICATION

In compliance with Local Rule 7.1, the undersigned attorney hereby certifies that the parties made a good faith effort through telephone conference to resolve the dispute presented by the Motion set forth below and have been unable to do so.

## INTRODUCTION

As the old adage goes, "the best defense, is a strong offense." This sentiment has become widely accepted in military strategy, personal defense and, of course, litigation. Here, after several failed efforts to have Digicel Haiti's claims against them dismissed, the UPM-led defendants have resorted to what can only be described as their own brand of "shock and awe" offense. After two years of unsuccessfully trying to dismiss Digicel Haiti's claims, UPM has filed a purported USD $60 million counterclaim against Digicel Haiti and Digicel USA, a Digicel company in the USA that provides interconnection and switching services to several international Digicel markets.

In pursuit of this latest [offensive] strategy, UPM ignores two primary realities. First, is that stealing telecom access and telecom services—even outside of the United States—is not "competition", it is just, stealing. And, second, is that protecting one's business from theft and fraud is not "anti-competitive" it is, simply, common sense. In

Page 1 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
           S.A. AND DIGICEL USA'S, MOTION TO DISMISS
           COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
           LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

the face of these basic truths, UPM's defense and purported "antitrust claims" fail in their entirety.

Digicel Haiti has sued UPM and several other defendants for theft of telecommunications services, conspiracy and fraud related to UPM's illicit use of Digicel Sim cards, and fraud related to the use of sophisticated telecommunications equipment and software designed to secretly allow UPM to terminate international wireless calls on Digicel's telecommunications network in Haiti, without paying Digicel Haiti for the network access or related services. Having initially admitted to the underlying conduct, UPM has, at different times throughout this action, characterized this theft as "building a better [telecommunications] mouse-trap"; and, as conduct in furtherance of US Government policy. Now, in its latest desperate bid to shift focus away from the underlying theft and Digicel Haiti's pending, well vetted claims, UPM engages in what can only be described as telecommunications "victim-shaming"—blaming Digicel Haiti for defending its business by identifying the theft and daring to do anything about it. Put simply, UPM now claims that that Digicel Haiti is engaged in "anti-competitive" conduct because it refuses to allow UPM to steal network access and related telecom services in Haiti.

UPM's underlying conduct is abhorrent, the "antitrust" arguments are specious and without legal merit and the claims should be dismissed in their entirety.

## LEGAL MEMORANDUM

### I.    Standard of Review on a Motion to Dismiss

Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Page 2 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

"We have held that for pleading an antitrust claim, the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), specifically abrogated the usual notice pleading rule under Rule 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (internal quotations omitted).  Rather, pleadings, particularly in the antitrust context, must meet the requisite plausibility standards that have already been extensively briefed and argued by both parties in this case.[1]

Importantly, "[e]stablishing the plausibility of a complaint's allegations is a two-step process." *Eclectic Props. E., LLC v. Marcus & Millchap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).  The first step requires that, "a court should identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 996 (quoting *Iqbal,* 556 U.S. at 679).  At the second step, "a court should assume the veracity of well pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal,* 556 U.S. at 679).  Here, UPM has failed to meet this burden in its Counterclaims for myriad reasons, and therefore UPM's implausible and unsupportable claims should be dismissed.

## II. UPM's Antitrust Claim is Inherently Flawed and Must be Dismissed with Prejudice

### a. UPM's Entire Antitrust Claim is Bottomed on A Known Falsehood

As a threshold matter, UPM's conclusory allegation that Digicel USA and Digicel Haiti are one and the same company is inaccurate and based on a misrepresentation.[2]  This incorrect legal conclusion, unsupported by fact, should be disregarded by the Court.

---

[1] *See* ECF 122 at 2-3; ECF 95 at 3-5; ECF 58 at 2-5.
[2] This may explain UPM's failure to include a pincite or parenthetical for the cited case.

Page 3 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

*See W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."). "In evaluating the sufficiency of the plaintiff's [counterclaims], the court should, in general, accept as true all 'material facts,' but the court cannot accept unsupported legal conclusions." *Phelps v. Lockheed Missiles & Space Co.*, No. 91-16812, 1992 U.S. App. LEXIS 26382, at \*2 (9th Cir. Oct. 14, 1992) *citing Kennedy v. H & M Landing, Inc.,* 529 F.2d 987 (9th Cir. 1976) (material allegations taken as true but not if allegations are mere conclusions); *see generally* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990). Because this unsupported and demonstrably false allegation serves as the cornerstone of Digicel USA's and Digicel Haiti's alleged antitrust liability, the claim should be dismissed with prejudice.

The facts so far established, suggest that Digicel USA and Digicel Haiti are separate corporations that observe separate corporate formalities. They are not a single entity under the strictures of Section 2 legal analysis, or for any other purpose. In support of its claim, UPM advances no factual allegations that support an abandonment of the corporate formalities that separate these two companies and can allege no facts to support a conspiracy between the two.[3] UPM's instant anti-trust claim is bottomed on Sherman Act Section 2 liability. Accordingly, Section 1 of the Sherman Act, which is discussed in *Copperweld,* (the case cited as support for UPM's position that the Digicel entities should be considered as a single entity) is inapplicable to the instant analysis. *See* Answer, ECF

---

[3] Likewise, UPM's unsupported, conclusory allegation that Digicel USA acts as Digicel Haiti's agent in the transmission of calls is unavailing. ECF 127 at ¶ 247. There are no allegations of actions on the part of Digicel USA or Digicel Haiti that indicate an agency relationship. As alleged in the Second Amended Complaint, Digicel USA provides switching services to Digicel Haiti and other entities. It is compensated for those services. Similarly, the Counterclaims contain no allegations that Digicel Haiti exercises control over Digicel USA's operations.

Page 4 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

127 at ¶ 329 citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 755 (1984) (Parent corporation and its wholly owned subsidiary held incapable of conspiring with each other for purposes of Section 1 of Sherman Act liability).

In *Copperweld* the Court refused to impose Section 1 liability for an alleged antitrust conspiracy on a parent and its wholly-owned subsidiary holding that it was impossible for them to conspire with each other.  The Court held that for the narrow purpose of analyzing their ability to conspire, the two entities should be considered as one.  Here, UPM's attempted use of this case is misplaced.  This conclusory allegation of a unified entity is no doubt intended to effect an end-run around UPM's obligation to make sufficient allegations to substantiate claims against both Digicel USA and Digicel Haiti as counterclaim defendants, respectively, in this claim.

UPM's conclusory allegations improperly combine the operations of Digicel USA and Digicel Haiti into a singular, fictional, "Digicel" entity.  This is factually and legally improper and was clarified- at Defendants' insistence- in prior pleadings.  UPM has not provided any basis for its attempted use of the single entity doctrine—usually employed as a defense against antitrust liability in order to avoid alleged conspiracy liability—as an end-run around alleging and proving a conspiracy and the specific anticompetitive conduct that must be alleged against each entity.  Bottomed on this fictional and conclusory allegation, UPM's entire Section 2 claim should fail.

This fatal defect cannot be corrected upon amendment.  There is no applicable legal doctrine or factual addition or omission that can make these two separate, horizontally related entities, a singular entity for the purpose of advancing an antitrust claim.  For this reason alone, UPM's antitrust claim should be dismissed with prejudice. *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). ("Dismissal without leave to

Page 5 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

amend is proper if it is clear that the complaint could not be saved by amendment. . .").

      b.   <u>UPM's Claim Seeks the Impermissible Extraterritorial Application of Antitrust Laws</u>

The Ninth Circuit is home to the seminal case on the extraterritorial application of antitrust laws. In *Timberlane Lumber Co. v. Bank of America*, the court expressed a now often-cited test for whether improper extraterritorial application is being sought and whether a court should abstain from asserting jurisdiction on comity grounds. *Timberlane Lumber Co. v. Bank of America*, N.T. & S.A., 549 F.2d 597 (9th Cir. 1976) (remanding with instructions on factors to consider when evaluating extraterritoriality of antitrust claim). This test is now applied through the evaluation of several factors on a case-by-case basis. The *Timberlane* factors have been summarized as:

> (1) Degree of conflict with foreign law or policy;(2) Nationality or allegiance of the parties and the locations or principal places of businesses or corporations; (3) Extent to which enforcement by either state can be expected to achieve compliance; (4) Relative significance of effects on the United States as compared with those elsewhere; (5) Extent to which there is explicit purpose to harm or affect American commerce; (6) Foreseeability of such effect; and(7) Relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*In re Vitamin C Antitrust Litig.*, 810 F. Supp. 2d 522, 542 n.25 (E.D.N.Y. 2011). Here, UPM alleges Digicel Haiti's purported antitrust liability based upon acts taken as a result of, or in compliance with the laws of Haiti. As has been previously established, Digicel Haiti is a foreign entity that only operates in Haiti. Documents have been filed with this Court, demonstrating the illegality of bypass in Haiti and the implementation of local policies in Haiti that encourage the shutdown of bypass operations when and where detected. *See* ECF 59. Additionally, it has been alleged in the pleadings here, that the Haitian government has established a mandatory floor rate of 23 cents per minute for terminating international cellular calls inbound to Haiti.

Page 6 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Actions allegedly taken by Digicel Haiti in compliance with these governmental restrictions and requirements in Haiti is the precise conduct that now forms the basis for UPM's contrived antitrust claim.  These actions must be analyzed through the lenses of the unique economic and regulatory position in which Haiti finds itself.  Investment and development of a cellular telephone network infrastructure in many foreign countries, especially those lacking basic infrastructure, is a risky and time-consuming investment.  Accordingly, like many other countries, the Haitian telecom industry is highly regulated to promote the protection of these investments in furtherance of the advancement and development of its nation's telecom network.  The acts complained of by UPM, including the disconnection of SIM Cards suspected of fraud, are actions necessary to maintain Haiti's unique sovereign interest.  These are actions that took place in Haiti in compliance with Haitian law and which were performed by an entity operating solely within Haiti.  To attach U.S. antitrust liability to Digicel Haiti's actions—in Haiti—would be an affront to the doctrine of comity, and an impermissible extraterritorial application of United States' antitrust law.  For these reasons, UPM's antitrust claim should be dismissed with prejudice.

### III.    UPM's Pleading Fails to State a Claim for Section 2 Antitrust Violations

a.  <u>UPM Has No Standing to Bring an Antitrust Claim Against Digicel Haiti or Digicel USA</u>

To state a claim for monopolization or attempted monopolization, a plaintiff must be "a participant in the same market as the alleged malefactors." *Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985); *see Synopsys, Inc. v. Atoptech, Inc.*, No. C 13-2965 MMC, 2015 U.S. Dist. LEXIS 104763, at *26-27 (N.D. Cal. Aug. 7, 2015) (where plaintiff did not do business in the market for which the monopoly was alleged, its

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

participation in a related but separate market was not sufficient to confer antitrust standing). "Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.,* 241 F.3d 696, 705 (9th Cir. 2001) (denying health care providers antitrust claim where its injuries were not experienced in the relevant product market).

By its own admission, UPM is not a participant in the same product market as either Digicel Haiti and/or Digicel USA, therefore, it lacks basic standing to pursue its alleged antitrust claim.[4]  Although the allegation of relevant product market is itself lacking in specificity, UPM alleges that the relevant product market is "the market for transporting calls from the United States to [Haiti]." ECF 127 at ¶¶332, 333[5]. The services that UPM conveniently categorizes as "transporting" functions in the United States, consist of the switching services provided by Digicel USA to all Digicel markets **and** the transmission and connection services provided by Digicel Haiti within Haiti.  UPM's alleged business, as is often repeated in its Answer and throughout this matter, is the resale of telecommunications at a wholesale level.  ECF 127 at ¶¶ 244, 259, 262, 266, 267, 268, 269, 339.  There are also several instances throughout the record where UPM insists that it is a "reseller" of telecommunications airtime.  *See* ECF 81 at 3, 13, 16; ECF 95 at 21; ECF 113 at 10, 22, 30; ECF 119 at 19.  The Court has even relied on this representation and incorporated UPM's self-described status as a reseller in its orders.  ECF 95 at 7, 21.

---

[4] This argument goes hand-in-hand with UPM's failure to allege a proper antitrust injury.  This additional issue is further analyzed below.  *Infra.* Section III.b.iii.

[5] Para. 333 of the Counterclaim is incomplete and does not expressly identify Haiti as the alleged place were subscribers can be found.  ". . . Digicel has monopolized and/or attempted to monopolize the market for transporting calls from the United States to Digicel subscribers in".  ECF at ¶ 333.

Page 8 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Indeed, UPM's first four counterclaim counts are based upon its conduct of resale services.[6]  UPM is demonstrably not a legitimate participant in the transmission or switching market for international calls to Haiti, which is the closest that UPM's allegations come to alleging a relevant product market for purposes of an antitrust claim.

One test widely employed to determine whether parties are participants in the same market is an evaluation of the cross-elasticity of demand.  *See Bhan v. NME Hosps., Inc.,* 772 F.2d 1467, 1470-71 (9th Cir. 1985) (engaged in reasonable interchangeability of use or cross-elasticity of demand test to analyze whether nurse anesthetists and M.D. anesthesiologists participate in the same market).  The test is similarly instructive here. The wholesale resale market allegedly inhabited by UPM does not present an interchangeable use or function with the switching market in which Digicel USA participates and certainly not the local Haiti call connection and retail markets in which Digicel Haiti operates.  The non-interchangeable nature of UPM and Digicel USA and Digicel Haiti's product markets is underscored by the fact that [within the context of this case and calls destined for the Digicel Haiti network] the legitimate functionality of a wholesale reseller of cellular minutes to Haiti is entirely dependent on the Digicel entities' (or a similar companies') ability to first switch and ultimately transmit and connect the minutes that [the wholesaler] has put out into the market.  Where the market in which UPM operates is purposefully parasitic relative to the established Digicel entities' product markets, they cannot be considered interchangeable.

UPM's failure to show or even plausibly allege that they are a participant in the

---

[6] Count I – Violation of Section 202 of the Act – <u>Resale</u> of "Roam Like You're Home"
Count II – Violation of Section 202 of the Act – <u>Resale</u> of Calls Initiated in Haiti
Count III – Violation of Section 201 of the Act – <u>Resale</u> of "Roam Like You're Home"
Count IV – Violation of Section 201 of the Act – <u>Resale</u> of Calls Initiated In Haiti

Page 9 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

allegedly monopolized product market is dispositive.  UPM's Section 2 claims must be dismissed for lack of standing.  As stated above, an amendment to the claim cannot remedy this deficiency.  There are no conceivable new facts regarding the market in which UPM is a legitimate participant that can cure this deficiency, and for this reason alone UPM's Section 2 claim should be dismissed with prejudice.  *See Somers, Inc.*, 729 F.3d at 959-60.

> b.  UPM Fails to Plead Elements Required to State a Section 2 Claim

If the Court elects to analyze UPM's claim beyond the threshold issues discussed above, the following discussion further illustrates why the antitrust counterclaim fails to state a claim for which relief can be granted.

To state a plausible monopolization claim under Section 2, UPM must show: "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) *citing Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 998 (9th Cir. 2010).  Further, to plead an attempted monopoly, UPM must additionally allege with adequate plausibility: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *CollegenNET, Inc. v. Common Application, Inc.*, 104 F. Supp. 3d 1137, 1145 (D. Or. 2015); *see also Spectrum Sports v. McQuillan*, 506 U.S. 447, 446 (1993).  UPM's conclusory allegations do not meet any of the elements required to present a viable antitrust action.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

### i. UPM Fails To Meet The First Required Element: No Allegation of Monopoly Power in the Relevant Market

First, UPM must allege Digicel Haiti's and Digicel USA's possession of monopoly power in the relevant market.  "To prevail under any of these theories, a Section 2 claimant must show [Defendants'] possession of monopoly power in the relevant market." *Prime Healthcare Servs. v. SEIU*, 642 F. App'x 665, 667 (9th Cir. 2016) (upholding district court's dismissal of Section 2 claims for failure to allege monopoly power or market share of defendant in the relevant market); *referencing Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475, 1477 (9th Cir. 1997) (elements of monopolization and attempted monopolization), *aff'd sub nom. Humana Inc. v. Forsyth*, 525 U.S. 299, 119 S. Ct. 710, 142 L. Ed. 2d 753 (1999), *and overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).  A plaintiff must generally allege monopoly power in both the relevant product market and the relevant geographic market in which trade was unreasonably restrained or monopolized.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011).  Monopoly power, for the purpose of Section 2 of the Sherman Act, is "the power to control prices or exclude competition." *Forsyth,* 114 F.3d at 1475; *citing United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966). Typically, plaintiffs attempt to establish market power through circumstantial evidence which "requires the plaintiff to: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run."  *Forsyth*, 114 F.3d at 1476.

UPM does not allege the market share of any entity or allege the conclusive monopoly of either Digicel Haiti or Digicel USA in the identified product or geographic

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

markets. *See Id.* UPM repeatedly identifies the relevant product market as "the market for transporting calls from the United States to Haiti." Answer ¶¶ 332, 333. Further, UPM alleges that the relevant geographic market is the "entire United States." *Id.* at ¶ 334. Yet, UPM puts forth no allegations of Digicel USA's or Digicel Haiti's monopoly power in the purported relevant markets.[7] Indeed, the only allegation that approaches mention of a potential monopoly is that Digicel Haiti may have a monopoly in the local service market in Haiti. ECF 127 at ¶ 250, 335, 341. A purported monopoly of local service in Haiti, (similarly with no supporting factual allegations to support the conclusion), fails to advance the claim of an alleged monopoly in the antitrust product or geographic markets delineated in the counterclaim. UPM's Sherman Act counterclaim fails to state a claim for which relief can be granted and thus should be dismissed.

ii. UPM Fails to Meet The Second Required Element: Willful Acquisition or Maintenance of that Power Through Anticompetitive Conduct

This element requires that a defendant engage in anticompetitive conduct in order to achieve or sustain its monopoly. "Such conduct must affect the relevant product market, that is, the area of effective competition between the defendant and plaintiff." *Intellectual Ventures I LLC v. Capital One Fin. Corp.,* Civil Action No. 1:13-cv-00740 (AJT/TRJ), 2013 U.S. Dist. LEXIS 177836, at *21-22 (E.D. Va. Dec. 18, 2013). Further, it is essential that this conduct must be anticompetitive in nature. *See Verizon Commc'ns*

---

[7] Likewise, due to the absence of any allegations demonstrating monopoly in the relevant market, UPM fails to demonstrate requisite facts to establish specific intent to monopolize or a "dangerous probability" that Digicel USA or Digicel Haiti will obtain a monopoly. For this reason, UPM's claims for attempted monopolization also fail. *See Spectrum Sports v. McQuillan,* 506 US 447, 455 (1993) (liability for attempted monopolization under § 2 of the Sherman Act will not attach absent proof of a dangerous probability that they would monopolize a particular market and specific intent to monopolize).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

*Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004) (holding "possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct").  In addition to their failure to allege a relevant market of competition between UPM and the Digicel entities, UPM has not alleged a willful acquisition or maintenance of monopoly power through anticompetitive conduct on the part of Digicel USA or Digicel Haiti.  The outright failure to meet this critical element can stand alone as a basis to dictate dismissal.  UPM's conclusory statement that Digicel USA's and Digicel Haiti's actions "constitute predatory, anticompetitive conduct undertaken with the specific intent" is a meager conclusory recitation of the elements without the requisite factual support.  ECF 127 at ¶ 341.

UPM's allegations do not illustrate anticompetitive conduct.  Rather they confirm that Digicel USA and Digicel Haiti are conducting the legitimate business of telecommunications companies.  *See Pac. Bell Tel. Co. v. linkLine Communs., Inc.*, 555 U.S. 438, 439 (2009) (Businesses are generally free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing.).  Moreover, where obvious alternative explanations for the alleged conduct exist, UPM's allegations do not make it "across the line from conceivable to plausible." *Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013) (defendants' alternative explanations for alleged anticompetitive conduct rendered plaintiff's allegations insufficient to state a claim); *citing Twombly,* 500 US at 570.   Under *Twombly* UPM is required to make factual allegations of anticompetitive conduct that raise a right to relief above the speculative level.  *Id.* at 555.  UPM's counterclaim does not satisfy these requirements.

First, UPM alleges that Digicel Haiti requires that calls to its own subscribers be switched through Digicel USA.  ECF 127 at ¶ 336.  The allegation is false and purposefully

Page 13 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

misleading.  Even if this were so, this is not anticompetitive, nor does UPM provide any explanation of how this would be anticompetitive.  Stated correctly however, Digicel Haiti requires that international calls destined to be terminated on the Digicel Haiti network be switched through the Digicel USA gateway.  This function is necessary to properly route and bill calls which are directed through the Digicel Haiti network and on to an end-subscriber.  Digicel USA will switch calls from any third-party wholesale carrier with which there is an enforceable interconnection agreement.  There is no exclusionary or anticompetitive conduct involved, nor is any alleged.  Tellingly, there are no allegations that Digicel Haiti or Digicel USA refused to deal with UPM or any other party.[8]

Second, UPM alleges that Digicel Haiti charges anyone calling Haiti on its network a minimum of 23 cents per minute.  ECF 127 at ¶ 337.  Again, this is not anticompetitive activity to maintain or achieve a monopoly, nor is that alleged.  As alleged by Digicel Haiti in the Second Amended Complaint, this floor rate is a result of a legally enacted mandatory minimum rate on all international calls to Haiti, regardless of carrier, imposed by the foreign sovereign.[9]  Indeed, the allegation itself admits that the 23 cents per minute rate is charged no matter what entity originated the call even "charging the same $0.23 per minute for calls delivered to Haiti by UPM."  *Id.*  Under no analysis does this allegation, although inaccurate for myriad reasons, allege anticompetitive conduct.

---

[8] Indeed, UPM cannot rely on the refusal to deal exception to prove anticompetitive injury because it is not plead, and even if it were, it is entirely inapplicable where there has never been a voluntary course of dealing between the parties. *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 556 (9th Cir. 2008) (the narrow scope of the refusal to deal exception requires the unilateral termination of a voluntary and profitable course of dealing).

[9] The fact that the 23 cent minimum is a Haitian government requirement also gives rise to the defense of sovereign compulsion.  Where an entity undertakes conduct at the direction or mandate of a sovereign decree, that same conduct may not be considered anticompetitive. *See Interamerican Ref. Corp. v. Texaco Maracaibo, Inc.*, 307 F. Supp. 1291, 1298 (D. Del. 1970) (". . . practices compelled by foreign nations are not restraints of commerce, as commerce is understood in the Sherman Act, because refusal to comply would put an end to commerce.").

Page 14 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Instead, it directly contradicts the idea that Digicel Haiti charges this amount in a preferential manner that rises to the level of anticompetitive conduct.

Third, the allegation that Digicel USA provides transport functions "in effect, for free," has no basis in fact or in the record of this extraordinarily well-detailed case. ECF 127 at ¶ 337; *See* Second Am. Compl. at ¶ 36 (Digicel Haiti compensates Digicel USA for its switching services). Notwithstanding the obvious inaccuracy, this allegation also fails to support a claim of anticompetitive conduct or intent.

Lastly, UPM alleges that "Digicel's efforts to prevent any such calls from being completed using *its wireless network*" or resale of RLYH service are actions to protect "Digicel's local service monopoly." ECF 127 at ¶¶ 338-339 (emphasis supplied). Any actions by Digicel Haiti to prevent UPM from stealing access to its telecommunications network infrastructure and services are a valid and legal protection of Digicel Haiti's business. *See Intellectual Ventures I LLC* at *20 (E.D. Va. Dec. 18, 2013) (activity to legally protect market and product does not constitute antitrust violation). There is no tenet of competition (or US foreign policy) that promotes or permits US companies stealing from other companies. Additionally, the allegations admit that the actions complained of are aimed at maintaining a monopoly in the Haitian "local service" market, not UPM's alleged relevant geographic antitrust market of the "entire United States." ECF 127 at ¶ 334. Nothing in UPM's alleged antitrust claim asserts maintenance of a monopoly through anticompetitive conduct, and its Section 2 claim should be denied.

### iii.    UPM Fails To Meet The Third Required Element: Pleading an Antitrust Injury

"Parsing the Supreme Court's definition of antitrust injury, we have held that antitrust injury consists of four elements: (1) unlawful conduct, (2) causing an injury to

Page 15 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (plaintiff's failure to prove antitrust injury resulted in dismissal). "[I]n order to state a claim successfully, plaintiffs must allege both that defendant's behavior is anticompetitive and that plaintiff has been injured by an anti-competitive aspect of the practice under scrutiny." *Brantley v. NBC Universal, Inc.,* 675 F.3d 1192, 1195 (9th Cir. 2012). Additionally, "[a] plaintiff must demonstrate injury to competition in the market as a whole, not merely injury to itself as a competitor." *CollegenNET, Inc. v. Common Application, Inc.*, 104 F. Supp. 3d 1137, 1147 (D. Or. 2015) (Plaintiff's attempt to translate individual harm into harm to competition by generally alleging harm to consumers lacked sufficient factual allegations); *Gorlick*, 723 F.3d at 1024-25; *see also Brantley*, 675 F.3d at 1200. "Accordingly, the lack of antitrust injury serves as an independent basis for dismissal." *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008).

Here again, UPM's claim fails to allege a necessary element of its 'antitrust' claim. Instead UPM summarily declares that "but for Digicel's illegal monopolization, UPM would have been able to provide competitive telephone services to United States consumers seeking to call Digicel subscribers and others in Haiti." ECF 127 at ¶ 343. This is a woefully inadequate allegation of antitrust injury for a variety of reasons.[10] First, the absence of allegations detailing any actual anticompetitive activity makes it impossible for UPM to contend that anticompetitive behavior caused the injury. UPM only alleges that Digicel's "illegal monopoly" is to blame. This conclusory statement is insufficient to

---

[10] This analysis also illustrates UPM's lack of standing discussed in detail above. *Supra.* at III.a.

Page 16 -   COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

support any part of UPM's antitrust claim.  Second, there is no allegation that there is injury to the market as a whole.  *See CollegenNET, Inc.,* 104 F. Supp. 3d at 1147; *see also Brantley*, 675 F.3d at 1200 ("Plaintiffs may not substitute allegations of injury to the claimants for allegations of injury to competition.").  There are no allegations regarding an impact on the market for call transmissions.  No market-wide impact is alleged that rises to the level of an antitrust injury.  The only alleged injury is an entirely unsupportable US$20 million in "lost profits" to UPM.  Lastly, UPM's conclusory statement that the lost opportunity to "offer[] competition that would benefit consumers by means of new service alternatives and lower prices" is insufficient as an allegation of injury.  *See Id.* at 1148.  This is particularly true where UPM makes no allegations of how any Digicel entity precludes it from offering those services—shy of preventing theft of Digicel Haiti network access and services.  UPM is free to offer competitive calls to Haiti on its own network or through an interconnection agreement with anyone with a network in Haiti.  There are no allegations that any actions by or on behalf of Digicel USA or Digicel Haiti impact that ability.

## IV.    Counterclaim Plaintiff's Title 47 Claims Must Be Dismissed Because Digicel Haiti is not Subject to Application of the Act or 47 USC 214

Counterclaim Plaintiff's second set of counterclaims once again include alleged violations of the Communications Act of 1934 (The "Act").  In its prior order on Digicel Haiti's first Motion to Dismiss Counterclaims [ECF 95] the Court granted Digicel Haiti leave to amend to clarify and expand upon the manner in which calls from the United States to Digicel Haiti subscribers are transmitted, switched, delivered, and billed.  In response, Digicel Haiti submitted a Second Amended Complaint that alleges in exacting detail the roles that separate entities play in this process.  The Second Amended

Page 17 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
            S.A. AND DIGICEL USA'S, MOTION TO DISMISS
            COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
            LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Complaint was not only pre-vetted by opposing counsel, but withstood yet another motion to dismiss. The Second Amended Complaint unequivocally forecloses the notion that Digicel Haiti operates within the United States. Accordingly, Digicel Haiti renews its previous arguments that it is an entirely foreign carrier not subject to the regulations of The Act. *See* ECF 80 at Section III. Furthermore, because Digicel Haiti does not perform the transmission of calls from the United States to Haiti, it is not required to hold a Section 214 license. *See* ECF 80 at Section IV.

The allegations in the expanded and clarified Second Amended Complaint, are relevant for purposes of determining whether Digicel Haiti has any operations in the United States that would: 1) subject it to liability as a common carrier under The Act; and 2) require it to hold a Section 214 license. UPM's counterclaims lack on the other hand, lack any comparable measure of detail and contain no detailed allegations of Digicel Haiti's alleged operations in the United States. This is significant since UPM just argued to the Court the level of detail that Digicel Haiti was required to meet in its pleading. Instead, UPM bottoms their argument that Digicel Haiti should still be subject to The Act based on an unsupported legal conclusion that Digicel USA is Digicel Haiti's agent with respect to offering services to carry telephone calls from the United States to Haiti. ECF 127 at ¶ 247. There are, however, no allegations to support an agency relationship, and the Digicel entities' service provider relationship is insufficient—by itself—to confer this status. *Vaughn v. First Transit, Inc.*, 346 Or. 128, 136, 206 P.3d 181, 186 (2009) ("Agency does not result . . . when an individual (or entity) simply agrees to provide services for another, even if the other person - through contract - is able to establish general standards for performance and in that way 'control' the individual. That individual simply may be a contractor performing services for another, and not an 'agent' at all."). UPM's bald

Page 18 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

conclusion and its related allegations should be summarily disregarded.  *See also W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (factually unsupported legal conclusions should not be given presumption of truth).

The allegations of the Second Amended Complaint are clear, Digicel Haiti only operates within Haiti.  Digicel USA is responsible for switching calls from the United States to Haiti, and the two entities are entirely separate corporate organizations that maintain an arm's-length business relationship for the purposes of these transactions. *See* Second Am. Compl., ECF 104 at ¶¶ 15, 17, 18, 20, 21, 24.  UPM encourages this Court to impose liability on a wholly foreign entity under an impermissible agency theory that is born out of the mere fact that the companies are engaged in a contract for services.  This analysis contravenes existing law.  In practice, it would promote the unsustainable expansion of liability for all international telephone carriers by promoting an agency relationship and attendant liabilities between every switching company and its foreign customer(s) for the basic performance of switching services.

UPM provides no allegations of Digicel Haiti's conduct in the United States.  The Act only applies to entities that operate within the United States, 47 USC § 152(a), and allowing claims under 47 USC §§ 201 and 202 to proceed against Digicel Haiti would be an impermissible extraterritorial application of The Act.  *See Cable & Wireless P.L.C. v. FCC*, 334 U.S. App. D.C. 261, 166 F.3d 1224, 1229 (1999) (relying on the differentiation between foreign and domestic carriers to uphold application of order to "carriers within [Commission's] jurisdiction" noting that FCC "claims no authority to directly regulate foreign carriers"); *see also FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 59 (2d Cir. 2006) ("As indicated by the 'engaged within the United States' limitation, the Communications Act does not apply to foreign terminating carriers.").  In light of the facts now clearly alleged

Page 19 -   COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

before this Court, Digicel Haiti cannot be magically declared by UPM to be operating in the United States. Therefore, UPM's Communications Act claims and Section 214 claim should be dismissed with prejudice.

## V.    <u>Digicel Haiti Renews its Prior Arguments As to UPM's State Law Claims</u>

Digicel Haiti renews and incorporates its arguments for dismissal of UPM's state law claims as asserted in its prior Motion to Dismiss Counterclaims [ECF 80], including: 1) Intentional Interference with Economic Relations; 2) Breach of Implied-in-Fact Contract; 3) Conversion; 4) Money Had and Received; and 5) Unjust Enrichment.

## <u>CONCLUSION</u>

Based on the foregoing, Digicel Haiti and Digicel USA respectfully request that Counterclaim Plaintiff's Counterclaims be dismissed without leave to amend. Digicel Haiti and Digicel USA further request that the Court grant oral argument on this motion and the arguments contained herein.

Dated:  August 14, 2017

Respectfully submitted,

By:    /s/Richard K. Hansen

KIM VAUGHAN LERNER LLP
Robert C. L. Vaughan (*Pro Hac Vice*)
Cherine Smith Valbrun (*Pro Hac Vice*)
Leah B. Storie (*Pro Hac Vice*)
One Financial Plaza, Suite 2001
Fort Lauderdale, FL  33394
Telephone:     (954) 527-1115
Facsimile:      (954) 527-1116
E-mail: rvaughan@kvllaw.com

*Attorneys for Counterclaim
Defendants, Unigestion Holdings, S.A., a
Foreign Corporation, d/b/a Digicel Haiti
and Digicel USA, Inc.*

SCHWABE, WILLIAMSON & WYATT, P.C.
Richard K. Hansen, OSB #832231
Telephone: 503.796.2958
Facsimile: 503.796.2900

*Attorneys for Counterclaim
Defendants, Unigestion Holdings, S.A., a
Foreign Corporation, d/b/a Digicel Haiti
and Digicel USA, Inc.*

Page 20 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND
LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August 2017, I caused to be served a copy of the foregoing COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA INC.'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT on the following person via the Court's CM/ECF electronic service system:

| | |
|---|---|
| Kathryn P. Salyer, OSB #883017<br>ksalyer@tsbnwlaw.com<br>Tomasi Salyer Baroway<br>121 SW Morrison Street, Suite 1850<br>Portland, Oregon 97204-3136<br>Telephone: (503) 994-9900<br><br>*Attorneys for Counterclaim Plaintiff* | Christopher W. Savage (*Pro Hac Vice*)<br>chrissavage@dwt.com<br>Davis Wright Tremaine LLP<br>1919 Pennsylvania Ave. NW Ste. 800<br>Washington DC 20006-3401<br>Tel: (202) 973-4200<br><br>*Attorneys for Counterclaim Plaintiff* |

/s/Richard K. Hansen_____
   Richard K. Hansen, OSB #832231