**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
ksalyer@tomasilegal.com
edubay@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
*(Admitted Pro Hac Vice)*
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

    Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>    Plaintiff,<br><br>    v.<br><br>**UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., and **UPM MARKETING, INC**., an Oregon corporation; **UPM TELECOM, INC**., an Oregon a/b/n; **UPM MARKETING, INC**., an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident; **BALTAZAR RUIZ**, an Oregon resident; **TYLER ALLEN**, an Oregon resident; and **DUY TRAN a/k/a BRUCE TRAN,** a foreign individual,<br><br>    Defendants. | Case No. 3:15-CV-00185-SI<br><br>**<u>UNOPPOSED</u> MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Page 1 of 4 – UNOPPOSED MOTION FOR LEAVE TO FILE
AMENDED ANSWER AND COUNTERCLAIMS
UPM-L1\00367263.000

**UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., and **UPM MARKETING, INC**., an Oregon corporation; **UPM TELECOM, INC**., an Oregon a/b/n; **UPM MARKETING, INC**., an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident; **BALTAZAR RUIZ**, an Oregon resident; **TYLER ALLEN**, an Oregon resident; and **DUY TRAN a/k/a BRUCE TRAN,** a foreign individual,

    Defendants and
    Counterclaim-Plaintiffs,

    v.

**UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI;** and **DIGICEL USA, INC.**, a Delaware corporation,

    Counterclaim-Defendants.

## LR 7.1 CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1, Defendants and Counterclaim-Plaintiffs UPM Technology, Inc. dba UPM Telecom, Inc. and UPM Marketing, Inc., UPM Telecom, Inc., UPM Marketing, Inc., Benjamin Sanchez a/k/a Benjamin Sanchez Murillo, Baltazar Ruiz, and Tyler Allen, (collectively "UPM" or "Defendants") have made a good faith effort to confer with Plaintiff's counsel regarding this Motion. Plaintiff does not object to this Motion.

## MOTION

Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend its pleading with the court's leave. FRCP 15(a)(2). Further, the "court should freely give leave when justice so requires." *Id*. On June 14, 2017, Defendants filed the Answer, Affirmative Defendants and Counterclaims to Plaintiff's Second Amended Complaint and Demand for Jury Trial (Doc 127) (the "Answer"). Subsequently, it came to the attention of the undersigned counsel that there

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

were missing words from the PDF filed Answer.  Upon investigation, it was determined that in the process of converting the document from Word to PDF for filing, random words, often at the end of lines, were dropped from the final PDF file that was eventually filed with the court.

In this situation, there is no prejudice to Plaintiff to allow Defendants leave to amend the Answer.  The defect in the Answer is purely technical/clerical and easily resolved by filing a corrected PDF which includes the missing words.  A copy of the corrected Answer is attached hereto as Exhibit 1.  Defendants have discussed the identified technical issue with Plaintiff and Plaintiff does not oppose the filing of an Amended Answer.  While Plaintiff has filed a Motion to Dismiss the Counterclaims (Doc 133) and Motion to Strike some of the Affirmative Defenses (Doc 132), since the corrections are minor and no substantive changes are being made, Plaintiff will not be required to file additional responsive pleadings to the Amended Answer.

Based on the foregoing, it is clear that leave should be freely given to allow Defendants to file the Amended Answer.

Dated: September 8, 2017.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 3 of 4 – UNOPPOSED MOTION FOR LEAVE TO FILE
AMENDED ANSWER AND COUNTERCLAIMS
UPM-L1\00367263.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2017, I served the foregoing **UNOPPOSED MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Richard K. Hansen
Anne M. Talcott
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Email: rhansen@schwabe.com
Email: atalcott@schwabe.com

Dated: September 8, 2017.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    Telephone: (503) 894-9900
    Of Attorneys for Defendants

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage (*Pro Hac Vice*)
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    Of Attorneys for Defendants

PAGE 1 – CERTIFICATE OF SERVICE
UPM-L1\00367263.000

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
ksalyer@tomasilegal.com
edubay@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
*(Admitted Pro Hac Vice)*
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

    Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>    Plaintiff,<br><br>    v.<br><br>**UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., and **UPM MARKETING, INC**., an Oregon corporation; **UPM TELECOM, INC**., an Oregon a/b/n; **UPM MARKETING, INC**., an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident; **BALTAZAR RUIZ**, an Oregon resident; **TYLER ALLEN**, an Oregon resident; and **DUY TRAN a/k/a BRUCE TRAN,** a foreign individual,<br><br>    Defendants. | Case No. 3:15-CV-00185-SI<br><br><br>**DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Page 1 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 1 of 48**

**UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., and **UPM MARKETING, INC**., an Oregon corporation;
**UPM TELECOM, INC**., an Oregon a/b/n;
**UPM MARKETING, INC**., an Oregon a/b/n;
**BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident;
**BALTAZAR RUIZ**, an Oregon resident;
**TYLER ALLEN**, an Oregon resident; and
**DUY TRAN a/k/a BRUCE TRAN,** a foreign individual,

          Defendants and
          Counterclaim-Plaintiffs,

    v.

**UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI;** and **DIGICEL USA, INC.**, a Delaware corporation,

          Counterclaim-Defendants.

Defendants UPM Technology, Inc. ("UPM") d/b/a UPM Telecom, Inc., UPM Marketing, Inc., UPM Telecom, Inc., UPM Marketing, Inc., Benjamin Sanchez a/k/a Benjamin Sanchez Murillo, Baltazar Ruiz, Tyler Allen, and Duy Tran (collectively "Defendants") hereby responds to Plaintiff's Second Amended Complaint ("AC") as follows:

## ANSWER

1.     Answering Paragraph 1, Defendants are without sufficient knowledge to admit or deny the first sentence of Paragraph 1. Defendants admit the allegations of the second sentence of Paragraph 1.

2.     Answering Paragraph 2, Defendants admit.

3.     Answering Paragraph 3, Defendants deny. In further response to Paragraph 3, Defendants admit that UPM conducts business as UPM Telecom, Inc. ("UPM Telecom") which, at all relevant times, was an assumed business name of UPM Technology.

Page 2 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 2 of 48**

4.      Answering Paragraph 4, Defendants deny.  In further response to Paragraph 4, Defendants admit that UPM conducts business as UPM Marketing, Inc. ("UPM Marketing") which is an assumed business name of UPM Technology.

5.      Answering Paragraph 5, Defendants admit.

6.      Answering Paragraph 6, Defendants are without sufficient knowledge to admit or deny the allegations in Paragraph 6 regarding the contents of the business registry of the Oregon Secretary of State.  Defendants admit that UPM's address is as alleged in Paragraph 6.

7.      Answering Paragraph 7, Defendants deny that Benjamin Sanchez ("Sanchez") is a citizen and resident of the state of Oregon, further deny that Sanchez holds himself out as the owner of UPM Marketing or President of UPM Telecom; but admit that Sanchez is listed as an authorized representative of UPM Marketing in the business registry for the Oregon Secretary of State Corporation Division.

8.      Answering Paragraph 8, Defendants admit that Balthazar Ruiz ("Ruiz") is a citizen and resident of the state of Oregon but deny that Ruiz holds himself out as a Project Manager for UPM Telecom.

9.      Answering Paragraph 9, Defendants admit that Tyler Allen ("Allen") is a resident and citizen of the state of Oregon.

10.     Answering Paragraph 10, Defendants admit.

11.     Answering Paragraph 11, Defendants state that this paragraph contains legal conclusions to which no response is required.

12.     Answering Paragraph 12, Defendants state that this paragraph contains legal conclusions to which no response is required.

13.     Answering Paragraph 13, Defendants state that this paragraph contains legal conclusions to which no response is required; to the extent a response is required Defendants deny the allegations contained therein.

14.     Answering Paragraph 14, Defendants admit that Plaintiff is a leading provider of telecommunications services in Haiti, and assert that Digicel-Haiti is the leading

Page 3 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL     UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 3 of 48**

provider of telecommunications services in Haiti, with a market share in excess of 75%. Defendants lack sufficient knowledge and information to form a belief as to the truth of the remaining allegations contained in Paragraph 14 and on that basis deny the same.

15.     Answering Paragraph 15, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 15 therein and on that basis deny the same.

16.     Answering Paragraph 16, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 16 and on that basis deny the same.

17.     Answering Paragraph 17, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 17 and on that basis deny the same.

18.     Answering Paragraph 18, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in the first sentence of Paragraph 18 and on that basis deny the same. Defendants admit the allegations contained in the second sentence of Paragraph 18.  Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in the first sentence of Paragraph 18 and on that basis deny the same.

19.     Answering Paragraph 19, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 19 and on that basis deny the same.

20.     Answering Paragraph 20, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 20 and on that basis deny the same.

21.     Answering Paragraph 21, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 21 and on that basis deny the same.

Page 4 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL     UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 4 of 48**

22.    Answering Paragraph 22, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 22 and on that basis deny the same.

23.    Answering Paragraph 23, Defendants admit.

24.    Answering Paragraph 24, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in the first sentence of Paragraph 24 and on that basis deny the same.  With respect to the second sentence of Paragraph 24, Defendants admit that calls bound for a Digicel-Haiti subscriber that are delivered to a Digicel-USA switch are transmitted to Digicel-Haiti's network in Haiti, and otherwise deny the allegations of the second sentence of Paragraph 24.  Defendants admit the allegations in the third and fourth sentences of Paragraph 24.  Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in the footnote to the final sentence of Paragraph 24 and on that basis deny the same.

25.    Answering Paragraph 25, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 25 and on that basis deny the same.

26.    Answering Paragraph 26, Defendants admit that the allegations contained in the first two sentences of Paragraph 26 are a reasonable general description of how Call Detail Records ("CDRs") are generated.  With respect to the third sentence of Paragraph 26, Defendants are unsure what the phrase "In this instance" refers to, but admit that Digicel-Haiti's switches would normally record the time a call starts and ends and thereby implicitly record the duration of a call.

27.    Answering Paragraph 27, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 27 and on that basis deny the same.

28.    Answering Paragraph 28, Defendants admit that Digicel-USA switches will not generate a CDR with respect to a call that does not traverse those switches, but otherwise deny

Page 5 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 5 of 48**

the allegations of Paragraph 28.

29.    Answering Paragraph 29, Defendants deny.

30.    Answering Paragraph 30, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 30 and on that basis deny the same.

31.    Answering Paragraph 31, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 31 and on that basis deny the same.

32.    Answering Paragraph 32, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 32 and on that basis deny the same.

33.    Answering Paragraph 33, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 33 and on that basis deny the same.

34.    Answering Paragraph 34, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 34 and on that basis deny the same.

35.    Answering Paragraph 35, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 35 and on that basis deny the same.

36.    Answering Paragraph 36, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 36 and on that basis deny the same.

37.    Answering Paragraph 37, Defendants deny.

38.    Answering Paragraph 38, Defendants deny.

39.    Answering Paragraph 39, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 39 and on that

Page 6 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 6 of 48**

basis deny the same.

40.    Answering Paragraph 40, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 40 and on that basis deny the same.

41.    Answering Paragraph 41, Defendants deny.

42.    Answering Paragraph 42, Defendants admit that devices exist that can store and control SIM cards and that such devices can monitor and control several SIM cards, admit that there is no technical requirement for a SIM card to be in the same location as a radio with which it is associated, and otherwise deny that allegations of Paragraph 42.

43.    Answering Paragraph 43, Defendants admit.

44.    Answering Paragraph 44, Defendants admit that devices can be loaded with multiple SIM cards, that it is possible to communicate with such devices via the internet, and that calls can be routed to such devices, including international calls, via the internet.  Defendants otherwise deny that allegations of Paragraph 44.

45.    Answering Paragraph 45, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 45 and on that basis deny the same.

46.    Answering Paragraph 46, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 46 and on that basis deny the same.

47.    Answering Paragraph 47, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 47 and on that basis deny the same.

48.    Answering Paragraph 48, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 48 and on that basis deny the same.

49.    Answering Paragraph 49, Defendants deny.

Page 7 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 7 of 48**

50.    Answering Paragraph 50, Defendants admit that persons acting on behalf of UPM purchased Digicel SIM Cards that were shipped back to Oregon, and otherwise deny the allegations of this Paragraph.

51.    Answering Paragraph 51, Defendants deny.

52.    Answering Paragraph 52, Defendants deny.

53.    Answering Paragraph 53, Defendants admit that for a time UPM made use of equipment in Haiti to initiate calls on Digicel-Haiti's network, and otherwise deny the allegations of this Paragraph.

54.    Answering Paragraph 54, Defendants admit that for a time UPM made use of equipment in Haiti that received data via internet access service obtained from local Haitian internet service providers ("ISPs") and used that data to initiate calls onto Digicel-Haiti's network, and otherwise deny the allegations of this Paragraph.

55.    Answering Paragraph 55, Defendants deny.

56.    Answering Paragraph 56, Defendants deny.

57.    Answering Paragraph 57, Defendants admit that calls initiated via equipment in Haiti on Digicel-Haiti's network would be digitally associated to a domestic number associated with a Digicel Haiti SIM Card, and otherwise deny the allegations contained of this Paragraph.

58.    Answering Paragraph 58, Defendants admit that calls initiated via equipment in Haiti on Digicel Haiti's network do not pass through switches in New York or Miami, and otherwise deny the allegations contained in this Paragraph.

59.    Answering Paragraph 59, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 59 and on that basis deny the same.  To the extent that the allegations of this Paragraph are intended to suggest that Defendants generated "significant profits" in connection with sending calls to Haiti, Defendants deny that allegation.

60.    Answering Paragraph 60, Defendants deny.

Page 8 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 8 of 48**

61.    Answering Paragraph 61, Defendants deny.

62.    Answering Paragraph 62, Defendants deny.

63.    Answering Paragraph 63, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in the first sentence of Paragraph 63 and on that basis deny those allegations.  Defendants admit the allegations of the second sentence of Paragraph 63, but deny any implied allegation in that sentence that grocery or convenience stores are the only authorized channels for retail distribution of SIM Cards.

64.    Answering Paragraph 64, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 64 and on that basis deny the same.

65.    Answering Paragraph 65, Defendants admit that UPM obtained, through third parties, multiple Digicel Haiti SIM Cards, and otherwise deny the allegations of that paragraph.

66.    Answering Paragraph 66, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 66 and on that basis deny the same.

67.    Answering Paragraph 67, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 67 and on that basis deny the same.

68.    Answering Paragraph 68, Defendants admit that it is possible to transmit voice communications via the internet that can be linked to local calls in Haiti, and otherwise deny that allegations of this Paragraph.

69.    Answering Paragraph 69, Defendants deny.

70.    Answering Paragraph 70, Defendants deny.

71.    Answering Paragraph 71, Defendants admit that they own and operate equipment in Oregon, and otherwise deny the allegations of this Paragraph.

72.    Answering Paragraph 72, Defendants lack sufficient knowledge or

Page 9 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 9 of 48**

information to form a belief about the truth of the allegations contained in Paragraph 72 and on that basis deny the same.

73. Answering Paragraph 73, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 73 and on that basis deny the same.

74. Answering Paragraph 74, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 74 and on that basis deny the same.

75. Answering Paragraph 75, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 75 and on that basis deny the same.

76. Answering Paragraph 76, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 76 and on that basis deny the same.

77. Answering Paragraph 77, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 77 and on that basis deny the same.

78. Answering Paragraph 78, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 78 and on that basis deny the same.

79. Answering Paragraph 79, Defendants deny.

80. Answering Paragraph 80, Defendants deny.

81. Answering Paragraph 81, Defendants deny.

82. Answering the first sentence of Paragraph 82, Defendants admit that in the past UPM sold wholesale minutes to Haiti that got the communications to Haiti via the internet, following by initiating a local call in Haiti linked to the internet. Defendants deny that are now

Page 10 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 10 of 48**

engaged in such activities. Defendants deny the allegations of the second sentence of Paragraph 82.

83.    Answering Paragraph 83, Defendants admit that UPM paid full retail price for Roam Like You Are Home ("RLYH") service on certain SIM cards for which UPM also paid full retail price, and that UPM initiated calls to Haiti using those SIM cards on the network of or more domestic United States wireless carriers.  Defendants otherwise deny the allegations of Paragraph 83.

84.    Answering Paragraph 84, Defendants deny.

85.    Answering Paragraph 85, Defendants deny.

86.    Answering Paragraph 86, Defendants admit that they obtained numerous Digicel Haiti SIM Cards from third parties who acquired them in Haiti, and otherwise deny the allegations of Paragraph 86.

87.    Answering Paragraph 87, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 87 and on that basis deny the same.

88.    Answering Paragraph 88, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 88 and on that basis deny the same.

89.    Answering Paragraph 89, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 89 and on that basis deny the same.  In further response to Paragraph 89, Defendants admit that Digicel-Haiti assigns telephone numbers on its network to SIM cards that it obtains and later sells to third parties.

90.    Answering Paragraph 90, Defendants admit that a SIM card purchased from Digicel-Haiti will become active when it is used to make a call or a recharge (adding money to the account associated with the SIM card) occurs, and otherwise deny that allegations of Paragraph 90.

91.    Answering Paragraph 91, Defendants lack sufficient knowledge or

Page 11 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 11 of 48**

information to form a belief about the truth of the allegations contained in Paragraph 91 regarding Digicel-Haiti's "defaults." In further response to Paragraph 91, Defendants admit that Digicel-Haiti SIM Cards can be used to transmit voice and messaging services into Digicel-Haiti's network.

92.     Answering Paragraph 92, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 92 and on that basis deny the same.

93.     Answering Paragraph 93, Defendants admit.

94.     Answering Paragraph 94, Defendants deny.

95.     Answering Paragraph 95, Defendants deny.

96.     Answering Paragraph 96, Defendants deny.

97.     Answering Paragraph 97, Defendants admit that UPM was shipped Digicel Haiti SIM Cards to its location in in Oregon, and otherwise deny the allegations of Paragraph 97.

98.     Answering Paragraph 98, Defendants deny.

99.     Answering Paragraph 99, Defendants deny.

100.     Answering Paragraph 100, Defendants admit that during the period in the past that it operated in Haiti, it placed SIM Cards shipped from Haiti into devices in Oregon.

101.     Answering Paragraph 101, Defendants admit that when a local call in Haiti is initiated on Digicel-Haiti's network via radio equipment in Haiti, that equipment transmits information associated with a Digicel Haiti SIM Card; that the SIM Card itself may not be physically located in Haiti; and that the internet may be used to transmit that information. Defendants otherwise deny the allegations of Paragraph 101, and specifically deny that they "cloned" any SIM Cards, as that term is normally used in the telecommunications industry.

102.     Answering the first sentence of Paragraph 102, Defendants admit that when a local call in Haiti is initiated on Digicel-Haiti's network via radio equipment in Haiti, that equipment transmits information associated with a Digicel Haiti SIM Card; that the SIM Card itself may not be physically located in Haiti; and that the internet may be used to transmit that

Page 12 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL     UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 12 of 48**

information; but otherwise deny the allegations of the first sentence of Paragraph 102. Defendants deny the allegations of the second sentence of Paragraph 102. Answering the third sentence of Paragraph 102, Defendants admit that Digicel-Haiti's network will complete calls using its network irrespective of where the SIM Card associated with the number making the call is physically located, but otherwise deny the allegations of that sentence.

103.    Answering Paragraph 103, Defendants deny.

104.    Answering Paragraph 104, Defendants deny.

105.    Answering Paragraph 105, Defendants deny.

106.    Answering Paragraph 106, Defendants deny.

107.    Answering Paragraph 107, Defendants admit that for a period of time in the past, UPM sold wholesale minutes of use to carriers for calls from the United States to Haiti, but otherwise deny that allegations of Paragraph 107.

108.    Answering Paragraph 108, Defendants deny.

109.    Answering Paragraph 109, Defendants admit the allegations of the first two sentences of Paragraph 109. Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in the third sentence of Paragraph 109, and on that basis deny the same.

110.    Answering Paragraph 110, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 110 and on that basis deny the same.

111.    Answering Paragraph 111, Defendants deny.

112.    Answering Paragraph 112, Defendants deny.

113.    Answering Paragraph 113, Defendants deny.

114.    Answering Paragraph 114, Defendants admit that for a period of time in the past, it converted calls received in Oregon into internet data and transmitted that data to local Haitian ISPs and that those local Haitian ISPs transmitted information to equipment in Haiti that

Page 13 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 13 of 48**

initiated local calls on Digicel-Haiti's network.  Defendants deny the remaining allegations of Paragraph 114.

115.     Answering Paragraph 115, Defendants deny.

116.     Answering Paragraph 116, Defendants deny.

117.     Answering Paragraph 117, Defendants deny.

118.     Answering Paragraph 118, Defendants deny.

119.     Answering Paragraph 119, Defendants deny.

120.     Answering Paragraph 120, Defendants deny.

121.     Answering Paragraph 121, Defendants deny.

122.     Answering Paragraph 122, Defendants deny.

123.     Answering Paragraph 123, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 123 and on that basis deny the same.

124.     Answering Paragraph 124, Defendants deny.

125.     Answering Paragraph 125, Defendants deny.

126.     Answering Paragraph 126, Defendants deny.

127.     Answering Paragraph 127, Defendants deny.

128.     Answering Paragraph 128, Defendants admit that Digicel-Haiti's RLYH plan operates generally as described, but denies that during the time that UPM purchased that service, there was any contractual or other limitation or requirement that only individual subscribers could purchase RLYH plans.

129.     Answering Paragraph 129, Defendants admit that Digicel-Haiti's RLYH plan operates generally as described, but denies that during the time that UPM purchased that service, there was any contractual or other limitation or requirement that only individual subscribers could purchase RLYH plans.

130.     Answering Paragraph 130, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 130 and on

Page 14 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL     UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 14 of 48**

that basis deny the same.  In further response to Paragraph 130, Defendants deny that there were any contractual or other restrictions on the use of RLYH plans that reflected the "intention" referred to in that paragraph.

131.     Answering Paragraph 131, Defendants admit that during the time UPM was operating in Haiti, it sold a number of wholesale minutes for calls bound to Haiti to  third-party carriers, but otherwise deny the allegations of Paragraph 131.

132.     Answering Paragraph 132, Defendants admit that during the time UPM as operating in Haiti, calls from its wholesale customers were routed to its location in Oregon, but otherwise deny the allegations of Paragraph 132.

133.     Answering Paragraph 133, Defendants deny.

134.     Answering Paragraph 134, Defendants deny.

135.     Answering Paragraph 135, Defendants deny the allegations of the first sentence of Paragraph 135.  Defendants admit the allegations of the second sentence of Paragraph 135.  Defendants do not understand the meaning of the claim that UPM "combines" a call with "digital information" from a SIM card and therefore denies the allegations of the third sentence of Paragraph 135.  With respect to the fourth sentence of Paragraph 135, Defendants admit that during the time that it was operational in Haiti it would initiate calls to United States wireless carriers using SIM Cards that it had registered for (and paid for) the RLYH plan and admits that those carriers had roaming agreements with Digicel-Haiti, but otherwise deny the allegations of that sentence.  Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in the final sentence of Paragraph 135, and on that basis deny the same, except that Defendants admit that some of the calls that it initiated using SIM Cards on the RLYH plan were completed to called parties in Haiti.

136.     Answering Paragraph 136, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 136 and on that basis deny the same.

137.     Answering Paragraph 138, Defendants admit that during the time that UPM

Page 15 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL     UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 15 of 48**

operated in Haiti, it sent funds to persons in Haiti to purchase Digicel Haiti SIM Cards, but deny all remaining allegations of Paragraph 137.

138.    Answering Paragraph 138, Defendants admit that during the time that UPM operated in Haiti, it sent funds to persons in Haiti to cover certain costs of associated with operating UPM equipment in Haiti, but deny all remaining allegations of Paragraph 138.

139.    Answering Paragraph 139, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 139 and on that basis deny the same.

140.    Answering Paragraph 140, Defendants deny.

141.    Answering Paragraph 141, Defendants admit that certain funds that UPM had sent to persons in Haiti were later sent to Victor Manuel Moscoso Ruiz, but deny the remaining allegations of Paragraph 141.

142.    Answering Paragraph 142, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 142 and on that basis deny the same.

143.    Answering Paragraph 143, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 143 and on that basis deny the same.  In further response to Paragraph 143, Defendants deny that Defendants acquired any SIM Cards illegally and deny that any SIM Cards it acquired were used to commit fraud.

144.    Answering Paragraph 144, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 144 and on that basis deny the same.

145.    Answering Paragraph 145, Defendants admit that during 2014 a number of SIM Cards were shipped from Haiti to Sanchez in Oregon, but otherwise deny the allegations of Paragraph 145.

146.    Answering Paragraph 146, Defendants admit that during 2014 a number of

Page 16 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 16 of 48**

SIM cards were shipped from Haiti to Sanchez in Oregon, but otherwise deny the allegations of Paragraph 146.

147.     Answering Paragraph 147, Defendants admit that during 2014 a number of SIM cards were shipped from Haiti to Sanchez in Oregon, but otherwise deny the allegations of Paragraph 147.

148.     Answering Paragraph 148, Defendants admit that during 2014 UPM shipped certain equipment to Haiti for use in providing its services in Haiti, but otherwise deny the allegations of Paragraph 148.

149.     Answering Paragraph 149, Defendants admit that during 2014 a number of SIM cards were shipped from Haiti to Sanchez in Oregon, but otherwise deny the allegations of Paragraph 149.

150.     Answering Paragraph 150, Defendants admit that during 2014 a number of SIM cards were shipped from Haiti to Sanchez in Oregon, but otherwise deny the allegations of Paragraph 150.

151.     Answering Paragraph 151, Defendants admit that during 2014 UPM shipped certain equipment to Haiti for use in providing its services in Haiti, but otherwise deny the allegations of Paragraph 151.

152.     Answering Paragraph 152, Defendants admit that during 2014 a number of SIM cards were shipped from Haiti to Allen in Oregon, but otherwise deny the allegations of Paragraph 152.

153.     Answering Paragraph 153, Defendants admit that during 2014 a number of SIM cards were shipped from Haiti to Allen in Oregon, but otherwise deny the allegations of Paragraph 153.

154.     Answering Paragraph 154, Defendants admit that during 2014 a number of SIM cards were shipped from Haiti to Allen in Oregon, but otherwise deny the allegations of Paragraph 154.

155.     Answering Paragraph 155, Defendants admit that during the time that UPM

Page 17 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL     UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 17 of 48**

operated in Haiti, it sent funds to persons in Haiti to cover certain costs of associated with operating UPM equipment in Haiti, but deny all remaining allegations of Paragraph 155.

156.    Answering Paragraph 156, Defendants admit that during the time UPM operated in Haiti, UPM shipped certain equipment to Haiti for use in providing its services in Haiti, but otherwise deny the allegations of Paragraph 156.

157.    Answering Paragraph 157, Defendants are unclear what Digicel-Haiti means by "standard operating procedures" and by "sophisticated telecommunications equipment" and so deny the allegations of Paragraph 157.

158.    Answering Paragraph 158, Defendants are unclear what Digicel-Haiti means by "invoice templates" and by "telecommunications equipment" and so deny the allegations of Paragraph 158.

159.    Answering Paragraph 159, Defendants are unclear what Digicel-Haiti means by "shipping procedures" and so deny the allegations of Paragraph 159.

160.    Answering Paragraph 160, Defendants are unclear what Digicel-Haiti means by "shipping procedures" and so deny the allegations of Paragraph 160.

161.    Answering Paragraph 161, Defendants deny.

162.    Answering Paragraph 162, Defendants deny.  In further response to Paragraph 162, Defendants deny that they at any time sent any equipment to Haiti that meets the definition of "False Gateway" established by Plaintiff in the Second Amended Complaint.

163.    Answering Paragraph 163, Defendants deny.

164.    Answering Paragraph 164, Defendants deny.

165.    Answering Paragraph 165, Defendants deny.

166.    Answering Paragraph 166, Defendants deny.

167.    In response to the first sentence of Paragraph 167, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in that sentence, and on that basis deny the same.  Defendants deny the allegations of the second sentence of Paragraph 167.  In further response to the second sentence of Paragraph 167,

Page 18 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 18 of 48**

Defendants state that UPM ceased its operations in Haiti during 2014.

168.    Answering Paragraph 168, Defendants deny.  In further response to the allegations of the first sentence of Paragraph 168, Defendants admit that UPM undertook certain activities to explore operation in Haiti during 2011 but did not continue those activities in any substantial way thereafter until it operated in Haiti briefly during 2014.

169.    Answering Paragraph 169, Defendants deny.

170.    Answering Paragraph 170, Defendants deny.

171.    Answering Paragraph 171, Defendants deny.

172.    Answering Paragraph 172, Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations contained in Paragraph 172 and on that basis deny the same.

173.    Answering Paragraph 173, Defendants re-allege and re-incorporate by reference Paragraphs 1 through 172 above as if fully set forth herein.

174.    Answering Paragraph 174, this paragraph consists of legal arguments or conclusions and therefore no response to it is required.  To the extent that a response is required, Defendants deny the allegations of this paragraph.

175.    Answering Paragraph 175, Defendants deny.

176.    Answering Paragraph 176, Defendants deny.

177.    Answering Paragraph 177, Defendants deny.

178.    Answering Paragraph 178, Defendants deny.

179.    Answering Paragraph 179, Defendants deny.

180.    Answering Paragraph 180, Defendants deny.

181.    Answering Paragraph 181, Defendants deny.

182.    Answering Paragraph 182, Defendants deny.

183.    Answering Paragraph 183, Defendants deny.

184.    Answering Paragraph 184, Defendants deny.

185.    Answering Paragraph 185, this paragraph consists of legal arguments or

Page 19 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 19 of 48**

conclusions and therefore no response to it is required. To the extent that a response is required, Defendants deny the allegations of this paragraph.

186. Answering Paragraph 186, Defendants re-allege and re-incorporate by reference Paragraphs 1 through 172 above as if fully set forth herein.

187. Answering Paragraph 187, this paragraph consists of legal arguments or conclusions and therefore no response to it is required. To the extent that a response is required, Defendants deny the allegations of this paragraph.

188. Answering Paragraph 188, Defendants deny.

189. Answering Paragraph 189, Defendants deny.

190. Answering Paragraph 190, Defendants deny.

191. Answering Paragraph 191, Defendants deny.

192. Answering Paragraph 192, this paragraph consists of legal arguments or conclusions and therefore no response to it is required. To the extent that a response is required, Defendants deny the allegations of this paragraph.

193. Answering Paragraph 193, Defendants re-allege and re-incorporate by reference Paragraphs 1 through 172, 174 through 184 and 188 through 191 above as if fully set forth herein.

194. Answering Paragraph 194, this paragraph consists of legal arguments or conclusions and therefore no response to it is required. To the extent that a response is required, Defendants deny the allegations of this paragraph.

195. Answering Paragraph 195, Defendants deny.

196. Answering Paragraph 196, Defendants deny.

197. Answering Paragraph 197, Defendants deny.

198. Answering Paragraph 198, Defendants deny.

199. Answering Paragraph 199, this paragraph consists of legal arguments or conclusions and therefore no response to it is required. To the extent that a response is required, Defendants deny the allegations of this paragraph.

Page 20 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 20 of 48**

200. Answering Paragraph 200, Defendants re-allege and re-incorporate by reference paragraphs 1 through 172 above as if fully set forth herein.

201. Answering Paragraph 201, Defendants deny.

202. Answering Paragraph 202, Defendants deny.

203. Answering Paragraph 203, Defendants deny.

204. Answering Paragraph 204, Defendants deny.

205. Answering Paragraph 205, Defendants deny.

206. Answering Paragraph 206, Defendants deny.

207. Answering Paragraph 207, Defendants deny.

208. Answering Paragraph 208, Defendants deny.

209. Answering Paragraph 209, Defendants deny and, with respect to the unnumbered paragraph following paragraph 209 beginning with "WHEREFORE", Defendants deny that Plaintiff is entitled to the relief prayed for.

210. Answering Paragraph 210, Defendants re-allege and re-incorporate by reference paragraphs 1 through 172 above as if fully set forth herein.

211. Answering Paragraph 211, Defendants deny.

212. Answering Paragraph 212, Defendants deny.

213. Answering Paragraph 213, Defendants deny.

214. Answering Paragraph 214, Defendants deny.

215. Answering Paragraph 215, Defendants deny.

216. Answering Paragraph 216, Defendants deny.

217. Answering Paragraph 217, Defendants deny.

218. Answering Paragraph 218, Defendants deny.

219. Answering Paragraph 219, Defendants deny and, with respect to the unnumbered paragraph following paragraph 219 beginning with "WHEREFORE", Defendants deny that Plaintiff is entitled to the relief prayed for.

220. Answering Paragraph 220, Defendants re-allege and re-incorporate by

Page 21 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 21 of 48**

reference paragraphs 1 through 172 above as if fully set forth herein.

221.    Answering Paragraph 221, Defendants deny.

222.    Answering Paragraph 222, Defendants deny.

223.    Answering Paragraph 223, Defendants deny and, with respect to the unnumbered paragraph following paragraph 223 beginning with "WHEREFORE", Defendants deny that Plaintiff is entitled to the relief prayed for.

224.    Answering Paragraph 224, Defendants re-allege and re-incorporate by reference paragraphs 1 through 172 above as if fully set forth herein.

225.    Answering Paragraph 225, Defendants deny.

226.    Answering Paragraph 226, Defendants deny.

227.    Answering Paragraph 227, Defendants deny.

228.    Answering Paragraph 228, Defendants deny.

229.    Answering Paragraph 229, Defendants deny.

230.    Answering Paragraph 230, Defendants deny and, with respect to the unnumbered paragraph following paragraph 230 beginning with "WHEREFORE", Defendants deny that Plaintiff is entitled to the relief prayed for.

231.    Except as expressly admitted or otherwise controverted herein, Defendants deny any and all remaining allegations of the Second Amended Complaint.

### ALLEGATIONS RELATED TO AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

#### Statutory and Regulatory Background

232.    Under the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 *et seq.* (the "Act"), an entity is a "telecommunications carrier" and a "common carrier" when it offers to transmit information for a fee between points designated by its customer.  *See* 47 U.S.C. §§ 151(11), (50), (51), & (53) (defining, respectively, "common carrier," "telecommunications," "telecommunications carrier," and "telecommunications service").  (For purposes of the Act, the terms "common carrier" and "telecommunications carrier" are generally interchangeable.  *See*

Page 22 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 22 of 48**

*Virgin Islands Telephone Corp. v. FCC,* 198 F.3d 921, 926-27 (D.C. Cir. 1999).)  A "foreign communication" under the Act is a communication with one end in the United States and the other end in a foreign country.  47 U.S.C. § 153(21).  A common carrier involved in providing foreign communications is referred to in the FCC's rules as an "international carrier" or an "international common carrier," and the services such entities provide are referred to as "international services." *See, e.g.,* 47 C.F.R. §§ 63.09-63.23.

233.    FCC rules require that an entity seeking to operate in the United States as an international carrier, *i.e.*, as an entity that undertakes to deliver traffic between the United States and a foreign country, must obtain formal authorization to do so.  *See id.*  These authorizations are required under 47 U.S.C. § 214, and are referred to in the industry as "Section 214" authorizations.  Operating as an international common carrier without a Section 214 authorization constitutes a violation of the Act.  *See, e.g., PTT Phone Cards, Inc.,* Notice of Apparent Liability for Forfeiture, 29 F.C.C.R. 11531 (2014); *PTT Phone Cards, Inc.,* Forfeiture Order, 2015 FCC LEXIS 3727 (FCC Dec. 7, 2015).

234.    The specific rules and regulations applicable to an international carrier vary depending on whether the carrier is classified as "dominant" or not.  *See* 47 C.F.R. §§ 63.09, 63.11.  An international carrier may be found to be "dominant" with respect to a particular route (such as, as relevant to this case, the route between the United States and Haiti) for several reasons.  One such reason is if the international carrier is affiliated with a provider of "local access" services (that is, the ability to make and receive local calls) that has a market share of more than 50% in the foreign market.  *See, e.g.,* 47 C.F.R. § 63.22, note 2.

235.    The FCC has long been concerned that certain foreign nations, and certain foreign carriers, are interfering with the operation of competitive markets, and harming United States consumers, by imposing excessive fees on calls that originate in the United States and terminate in those countries.  As a technological and economic matter, the actual cost of terminating a call on a modern telecommunications network is trivial – close to zero.  *See Connect America Fund, et. al.* ("Connect America Order"), Report and Order and Further Notice of

Page 23 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 23 of 48**

Proposed Rulemaking, 26 F.C.C.R. 17663, 17905-25 (2011) at ¶¶ 740-781 & esp. ¶ 746 & n. 1309, *affirmed sub nom*; *In Re: FCC 11-161, Direct Communications Cedar Valley, LLC, et al.*, 753 F.3d 1015 (10th Cir. 2014), cert. denied, ___ U.S. ___ 2015 U.S. LEXIS 3119 (May 4, 2015).  As a result, such call termination fees are best viewed not as compensating the terminating carrier for any actual costs incurred in delivering calls, but instead simply as a transfer of wealth from the originating carrier (and, ultimately, the calling party) to the terminating carrier (with some amount typically shared with the terminating carrier's host government).  In these circumstances, the FCC has taken various steps over the last twenty years to put pressure on foreign nations to lower such fees, sometimes called "settlement rates."

236.    This is part of the general United States policy favoring competition in all telecommunications markets.  For example, in 1998 the FCC stated that it "has sought to foster an increasingly competitive international telecommunications market by adopting policies that promote the shift away from regulated monopolies and toward private sector competition."  *1998 Biennial Regulatory Review; Reform of the International Settlements Policy and Associated Filing Requirements,* Report and Order and Order on Reconsideration, 14 F.C.C.R. 7963 (1998) at ¶ 1 (footnote omitted).

237.    As part of this effort, the FCC has long been aware of, and expressed its approval of, the innovative use of technology by United States entities to avoid (or "bypass") high settlement rates, because such activities put marketplace pressure on foreign carriers and governments to lower such fees.  Thus, for example, in the order quoted above, the FCC stated:

> We are aware … that "services and technologies that bypass the settlements regime" … are available for carriers seeking to avoid the legal monopoly of a foreign incumbent carrier in some countries that are legally closed to competition. ***We find it encouraging that such activity is putting pressure on settlement rates in those countries***. Such methods of termination may not be a realistic alternative, however, for the termination of large amounts of traffic, particularly where termination of traffic in such a manner is illegal in the foreign country.[fn 119]

> [fn 119] ***Internet telephony is a promising means of bypassing the traditional settlements system.*** At present, however [that is, in 1998], such services remain cumbersome for the average user and account for a minimal amount of international voice traffic.

Page 24 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 24 of 48**

*Id.* at ¶ 63 (emphasis added, footnotes omitted except as shown above). This passage shows that as early as 1998, the FCC was aware of and approved of the use of technological innovations, including specifically Internet-based telephone calling, to "bypass" traditional arrangements that required United States entities to pay high settlement rates. The FCC viewed such actions by United States entities as "encouraging" and found Internet-based telephony to be particularly "promising." And the FCC adopted this position in full knowledge of the fact that it might be "illegal in the foreign country." This shows that for calls between the United States and a foreign country, if there is a conflict between the pro-competitive, pro-technical-innovation policies of the United States and monopolistic policies of the foreign country, the United States' policies should prevail.

238.    International common carriers are subject to the terms of 47 U.S.C. § 201(b), which requires that the "charges, practices, classifications, and regulations for and in connection with" the provision of "foreign communications" must not be "unjust or unreasonable." Section 201(b) states that "any such charge, practice, classification or regulation that is unjust or unreasonable is hereby declared to be unlawful."

239.    International common carriers are also subject to the terms of 47 U.S.C. § 202(a), which states that "[it] shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communications service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue preference or disadvantage."

240.    One way in which a dominant international carrier can impede competition in the United States is by interfering with competitors' ability to complete calls in the foreign market in which the carrier is dominant. As described by the FCC's International Bureau, "In order

Page 25 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 25 of 48**

to complete a U.S. international call, a U.S. carrier must obtain as inputs various call termination services from foreign carriers in the destination country of the U.S. call, including international transport services, inter-city services within the destination country, *and terminating access services within the local exchange of the called party.* A foreign carrier with market power in these input markets could favor one U.S. international carrier at the expense of its rivals by denying rivals access to these crucial termination services, or by providing the services at non-competitive prices or inferior service quality levels. The ultimate effect of such discrimination would be to affect adversely competition in the U.S. international services market and harm U.S. consumers." *Eastlink International (USA) Inc.; Petition to Modify Regulatory Classification from Dominant to Non-Dominant on the U.S.-Bermuda Route*, Memorandum Opinion and Order, 28 F.C.C.R. 8364 (Int'l Bur. 2012) at ¶ 2 (emphasis added, footnote omitted).

241.    To this same effect, in an earlier order the FCC had stated that "blockage or disruption of U.S. carrier networks by foreign carriers directly harms the public interest, leads to decreases in call quality or completion and to potential increases in calling prices." *International Settlements Policy Reform,* First Report and Order, 19 F.C.C.R. 5709 (2004) at ¶ 45. As indicated by the quotations above, the FCC views interference by an international carrier or its affiliates with the ability of another carrier to terminate calls in the foreign country as contrary to the public interest, and to be a form of "discrimination [which will] affect adversely competition in the U.S. international services market and harm U.S. consumers." *Id.*

242.    One way in which a foreign carrier with market power may choose to interfere with the ability of a United States carrier to complete calls is to refuse to permit the resale, within the United States, of the foreign carrier's services, to the extent that such services are effectively available in the United States. A carrier with monopoly power can exploit that power by offering services at one price or under one set of conditions to a preferred set of customers, but then refuse to offer services at those same terms and conditions to others, thereby exploiting its monopoly power over the disfavored customers or competitors. If the monopoly carrier's services can be purchased by competitors and then resold, however, the ability of the monopoly carrier to

Page 26 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 26 of 48**

exercise its market power is limited.  For example, if a carrier with market power offers a low price to some customers but not others, competitors may purchase the low-priced service for resale, and offer it to customers not in the monopolist's favored group.  This prevents the monopolist from exercising its market power against customers not in the favored group. As relevant here, if a carrier with market power permits some callers to complete calls to its customers, but blocks other callers from doing so, that constitutes unlawful discrimination.  That unlawful discrimination may be defeated, however, by banning interference with the ability of competitors to purchase unblocked service and resell that service to others.

243.    Any person damaged by a common carrier's acts or omissions that violate the terms of the Act may recover damages in federal court.  47 U.S.C. §§ 206-207.  Under Section 206, if "any common carrier shall do, or cause or permit to be done, any act, matter or thing" banned by the Act, or "shall omit to do any act, matter or thing" that the Act requires, then "such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation," including attorneys' fees.  47 U.S.C. § 206. Section 207 provides that claims for damages against carriers for violating the Act may be brought in any district court with jurisdiction.  47 U.S.C. § 207.

### UPM and Digicel Entities

244.    UPM is a competitive provider of various communications services. Among other things, UPM is an international common carrier within the meaning of 47 U.S.C. §§ 201-202 and associated regulations of the FCC.  UPM holds a Section 214 authorization to provide its services by means of resale of the facilities and services of other entities, by means of UPM's own facilities where such facilities exist and have appropriate capacity, or by a combination of resale and the use of UPM's own facilities.  *See* Public Notice, "International Authorizations Granted," ITC-214-20081120-00511, 24 F.C.C.R. 5376 (May 7, 2009).  By virtue of its FCC authorization, UPM is in competition with other providers of international communications services for calls from the United States to other countries, including calls to Haiti.

245.    On information and belief (based on a review of filings by Digicel

Page 27 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 27 of 48**

Holdings, Ltd., with the Securities and Exchange Commission and available online via the EDGAR website), Digicel-Haiti is a 100%-owned indirect subsidiary of Digicel Holdings, Ltd.

246. On information and belief (based on a review of filings by Digicel Holdings, Ltd., with the Securities and Exchange Commission and available online via the EDGAR website), Digicel-USA Incorporated ("Digicel-USA") is also a 100%-owned indirect subsidiary of Digicel Holdings, Ltd.

247. On information and belief (based on Digicel-Haiti's representations to this Court), Digicel-USA owns and operates two "Gateway" switches, one in Miami, Florida, and one in New York, New York. Digicel-USA, is an international carrier on the United States-Haiti route. Digicel-USA, like UPM, holds an international Section 214 authorization from the FCC. Also based on Digicel-Haiti's representations to this Court, Digicel-USA acts as Digicel-Haiti's agent with respect to offering to carry telephone calls from the United States to Haiti, such that Digicel-USA and Digicel-Haiti are both common carriers within the meaning of the Act. The circumstances that constitute Digicel-Haiti as a carrier include, but are not limited to: (a) Digicel-Haiti requires that inbound international calls from the United States be routed via Digicel-USA; (b) Digicel-Haiti dictates to Digicel-USA the price to be charged for calls from the United States to Haiti; (c) Digicel-Haiti collects from Digicel-USA the entirety of the charge to third party carriers for delivering calls to Haiti, with small cost-allocation-based compensation to Digicel-USA, such that the economic substance of the transaction is that Digicel-Haiti is paid the demanded rate for the service; and (d) the fact that transport between the US and Haiti, and call termination in Haiti, is bundled together as a single service. On information and belief, other aspects of the contractual, corporate and business relationships between Digicel-Haiti and Digicel-USA further confirm Digicel-Haiti's status as a carrier with respect to calls between the United States and Haiti.

248. On information and belief (based on a review of a recent report from the website of the telecommunications regulator in Haiti), Digicel-Haiti has a market share of more than 75% in the provision of local telephone service in Haiti. On information and belief, there is

Page 28 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 28 of 48**

little if any "landline" local telephone service in Haiti; instead, essentially all local service in Haiti is provided by means of wireless services. Digicel-Haiti's overwhelming market share in the local telephone service market in Haiti makes Digicel-Haiti dominant in that market. Because Digicel-Haiti and Digicel-USA are affiliates within the meaning of applicable FCC rules, by virtue of their common ownership by Digicel Holdings, Ltd., and because Digicel-Haiti is a carrier as alleged above, Digicel-USA and Digicel-Haiti are also dominant international carriers on the US-Haiti route.

<u>Facts Relevant To Violations of the Communications Act</u>

249.    There is little if any traditional "landline" telephone service in Haiti. Instead, virtually all local telephone service in Haiti is provided by means of wireless telephone service.

250.    Digicel-Haiti provides 75% or more of the local telephone service in Haiti. As a result of this dominant market share and for other reasons, Digicel-Haiti exercises significant monopoly power in the local telephone service market in Haiti.

251.    To obtain wireless service, a customer needs a functioning radio device to send radio signals to, and receive radio signals from, a local wireless telecommunications network. In addition, a customer needs a SIM card or equivalent device to store information regarding the wireless service obtained from the wireless carrier, including identification numbers, so that the SIM card information be paired with information in the carrier's systems with the specific rate plan that owner of the SIM card has purchased, how much credit is currently available for the owner of the SIM card, etc.

252.    SIM cards are technologically standardized items that are designed to work, and do work, in a wide range of different wireless devices. There is no technical, legal, contractual or other requirement for a SIM card to be directly physically linked to any particular radio device, to be linked to the same radio device at different times, or to be any particular distance from whichever radio device it might be associated with at any given time. SIM cards merely contain information that authenticates an account with a carrier.

Page 29 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 29 of 48**

253. During the period relevant to this case, Digicel-Haiti did not impose any contractual or other obligation on any purchaser of a SIM card to use that SIM card in any particular wireless telephone or other device, or in any such device. The choice of wireless device or devices with which to pair a SIM card is entirely up to the purchaser of the SIM card, both as a legal and as a technical matter.

254. During the period relevant to this case, Digicel-Haiti sold SIM cards through various distribution channels in Haiti. These include sales at convenience stores and sales from individuals who obtain SIM cards directly or indirectly from Digicel-Haiti and then sell them to individuals on street corners, out of the back of pick-up trucks, and other similar means.

255. During the period relevant to this case, a SIM card sold for the Digicel-Haiti system was not normally accompanied by any written or oral contractual terms or conditions that imposed any restrictions on its use, either in Haiti or in the United States. Instead, before a SIM card would be used to make calls, Digicel-Haiti associated one or more accounts with each SIM card it sold.

256. During the period relevant to this case, a SIM card sold for the Digicel-Haiti system would incur charges of approximately $0.09 per minute (depending on exchange rates) for each minute of wireless service used.

257. During the period relevant to this case, in the absence of other arrangements, when such a SIM card was used in connection with a wireless network in the United States via roaming arrangements (contractual arrangements with United States wireless carriers to recognize customers with Digicel-Haiti SIM cards as valid customers), the per-minute rate charged to customers for such calls would normally be in excess of $1.99 per minute.

258. During the period relevant to this case, however, under Digicel-Haiti's RLYH rate plan, if a customer paid a flat rate of approximately $20 to $25 (depending on the exchange rate), a SIM card would permit calls from the United States to Haiti to be made for the same approximately $0.09 per minute rate applicable to calls within Haiti.

259. UPM's services at issue in this proceeding involved UPM using innovative

Page 30 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 30 of 48**

technology to resell Digicel-Haiti's services within the United States to provide the functional equivalent of traditional telephone calls from the United States to Haiti. UPM provided calling to Haiti to wholesale providers in the United States market, using the means described below, during the period from approximately April 2014 through approximately November 2014, although during much of this time period the only activity was testing. In addition, UPM engaged in certain activities in Haiti in 2011, in the nature of market exploration. Those activities were terminated in 2011 shortly after they began and were not begun again until 2014, as alleged above.

260. Due to Digicel-Haiti's successful efforts to foreclose UPM from providing services on the United States-Haiti route, as described below, UPM ceased offering or providing its services on that route after November 2014.

261. But for the unlawful and anticompetitive conduct of Digicel-Haiti, as described below, UPM would have continued to provide its services on the United States-Haiti route, including through the present.

262. *Resale of RLYH Arrangements (Call Initiated in US).* UPM acquired SIM cards for use in connection with Digicel-Haiti's system within Haiti. Digicel-Haiti received its full retail price for each such SIM card. UPM then paid Digicel-Haiti the full retail price ($24.44 based on the exchange rate in effect at the time of purchase) to enroll those SIM cards in Digicel-Haiti's RLYH program. UPM then assembled a number of those SIM cards into a radio device capable of accessing the United States wireless networks of AT&T Wireless and T-Mobile, the two carriers that have roaming arrangements with Digicel-Haiti in the United States. UPM then offered on the open wholesale "spot" market in the United States to provide transport of calls from the United States to Haiti. Some carriers responded favorably to UPM's offer and began to send calls to UPM for further delivery to Haiti.

263. The path of such a call through the network would be as follows. First, an end user of the third-party carrier that was UPM's customer would dial a call to Haiti. That call would reach the third-party carrier's switch, which would need to decide (based on its internal programming) how to route the call onward to Haiti. Where UPM was selected to handle the call,

Page 31 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL     UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 31 of 48**

the third-party carrier's switch would convert the call into an Internet-based protocol and then send the Internet packets representing the call (including the destination number in Haiti for which the call was destined), by means of the public Internet, to UPM's equipment located in Oregon. UPM's equipment would then direct its device (including the SIM cards purchased from Digicel-Haiti and duly enrolled in the RLYH plan) to initiate a wireless call to the called number in Haiti, while simultaneously translating the Internet packets representing the call into the applicable format used for wireless transmission (generally known as "GSM" or "Global System for Mobile communications").

264.    Once the call with the third party wireless carrier in Oregon was established, that carrier would then route the call from Oregon to Haiti. On information and belief (including Digicel-Haiti's representations to this Court), the call path would normally involve the United States wireless carrier delivering the call to one of Digicel-Haiti's gateway switches in New York or Miami, at which point Digicel-Haiti itself would carry the call to Haiti and deliver it to the called party.

265.    UPM is not aware of any technical method to include the telephone number of the original calling party (the customer of the third-party carrier indicated above) in the information that UPM sends to the United States wireless carrier that picks up the call. To the contrary, as far as UPM is aware, it is not technically possible to transmit that information. Instead, after emerging from the Internet on UPM's equipment in Oregon, as a technical matter it is necessary to initiate an entirely new telephone call, using UPM's equipment, which will necessarily include, as the calling number, the telephone number associated with one of the Digicel SIM Cards that UPM had purchased.

266.    Such a call will be completed only when (a) the SIM card itself was paid for and appropriately activated on Digicel-Haiti's system, and (b) sufficient additional payments had been made to Digicel-Haiti to cover the cost of the call under the applicable rate plan – in this case, including payment of the fee described in Paragraph 262 to enroll the SIM card in the RLYH plan. As a result, Digicel-Haiti, would only complete calls for which it had been fully paid the rate at

Page 32 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 32 of 48**

which it sells those calls without restriction in the market.  After undertaking the technical efforts and business arrangements needed to get the Haiti-bound calls to its location in Oregon, all that UPM was doing was making use of Digicel-Haiti services for which UPM had fully paid.  That is, UPM was engaged in resale of Digicel-Haiti's services within the United States, and Digicel-Haiti was fully paid at its market rate for all the calls that it completed.

267.  In order to prevent UPM from reselling Digicel-Haiti's services, on information and belief, Digicel-Haiti used various technical means to analyze the calling and usage patterns associated with particular SIM cards, and, when it concluded that the calling and usage patterns were consistent with a resale use, rather than use by an individual customer, it de-authorized the affected SIM cards in its own system, so that calls associated with those SIM cards would no longer be completed.  This had the direct and intended effect of preventing UPM from completing calls on the United States-Haiti route in competition with Digicel-Haiti and with Digicel-Haiti's affiliate, Digicel-USA.

268.  *Resale of Local Rates (Calls Initiated in Haiti).*  Most of the calls at issue in this case were made by means of UPM's resale within the United States of Digicel-Haiti's RLYH plan.  Some, however, involved the use of UPM equipment in Haiti to initiate a wireless call.  In those cases, a call originating with a third-party carrier would make its way from the calling party to UPM's facilities in Oregon in the manner described above.  Rather than converting the call to GSM format and initiating a wireless call in Oregon with equipment in Oregon, however, for these calls, UPM would leave the call in internet/packet format and route the packets via the internet to its equipment in Haiti.  The equipment in Haiti would convert the call to GSM format and initiate a wireless call on Digicel-Haiti's network in Haiti, using the account information associated with a SIM card located in Oregon.  That is, in this arrangement the radio device involved in making the relevant wireless connections was located in Haiti, while the SIM card with the relevant account information was located in Oregon.  As with the RLYH situation described above, all that UPM was doing was making use of Digicel-Haiti services for which UPM had fully paid.  That is, UPM was engaged in resale of Digicel-Haiti's services, and Digicel-Haiti was fully paid at its market rate

Page 33 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 33 of 48**

for all the calls that completed.

269. As with resale of RLYH service, Digicel-Haiti used various technical means to identify SIM cards that were being used in SIM servers to resell its local wireless services and de-authorized them. And, as with resale of RLYH service, this had the direct and intended effect of preventing UPM from completing calls on the United States-Haiti route in competition with Digicel-Haiti and with Digicel-Haiti's affiliate, Digicel-USA.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

270. The allegations of the Second Amended Complaint, and the whole thereof, fail to state ultimate facts sufficient to constitute a claim for relief. Without limiting the scope of this Affirmative Defense, Digicel-Haiti has failed to plead any entitlement to receive more payment for the services it provided than it actually received.

## SECOND AFFIRMATIVE DEFENSE

### (Standing)

271. Plaintiff lacks standing to assert claims on behalf of third parties including claims on behalf of the government of Haiti and on behalf of other carriers who transport calls to Haiti.

## THIRD AFFIRMATIVE DEFENSE

### (Payment)

272. As set forth above, Defendant UPM acquired the right to terminate calls to customers in Haiti when it purchased the Digicel SIM Cards and purchased access to Digicel-Haiti's RLYH Plan. Digicel-Haiti has thus received all payment to which it is entitled for the services and functions it provided to UPM.

/ / /

/ / /

Page 34 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 34 of 48**

## FOURTH AFFIRMATIVE DEFENSE

(Justification)

273.     As set forth above, Defendant UPM's use of the Digicel SIM Cards and Digicel-Haiti's RLYH Plan was justified because UPM acquired the right to terminate calls to customers in Haiti when it purchased these products.

## FIFTH AFFIRMATIVE DEFENSE

(Unclean Hands)

274.     Digicel-Haiti has participated, directly and by means of its affiliate and agent, Digicel-USA, in activities that violate the Act and constitute unfair and unreasonable business practices, restraint of trade, and acts that stifle competition along the United States-Haiti route in direct violation of the pro-competitive telecommunications policies of the United States. As a result, Digicel-Haiti is not entitled to the assistance of courts of the United States to continue to perpetuate its unlawful conduct.

## SIXTH AFFIRMATIVE DEFENSE

(Restraint of Trade)

275.     Digicel-Haiti enjoys a monopoly in the Haitian mobile telecommunications market and it has engaged in conduct which constitutes an unreasonable restraint of trade as set forth herein.

## SEVENTH AFFIRMATIVE DEFENSE

(Illegality)

276.     Digicel-Haiti's arrangements with its agent, Digicel-USA pursuant to which Digicel-Haiti will not accept inbound international calls from the United States constitute an unlawful restraint of trade and a violation of the Act and FCC decisions and policies under the Act favoring the resale of telecommunications services, and Digicel-Haiti cannot recover any damages based on claims that it is entitled to maintain those illegal arrangements.

## JURISDICTION AND VENUE

277.     This Court has jurisdiction over Defendants' compulsory counterclaims, set

Page 35 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL     UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 35 of 48**

out below, pursuant to 28 U.S.C. § 1367(a), because all such counterclaims are so related to Digicel-Haiti's claims that they form part of the same case or controversy under Article III of the United States Constitution.  This Court also has jurisdiction over Defendants' compulsory counterclaims arising out of the Act under 28 U.S.C. § 1331, because such counterclaims arise under the laws of the United States.

278.    This Court has personal jurisdiction over Digicel-Haiti because Digicel-Haiti has filed suit in this Court, thereby consenting to such jurisdiction.

279.    Venue in proper in this district pursuant to 28 U.S.C. § 1391(b).

## FIRST COUNTERCLAIM

### Count I – Violation of Section 202 of the Act – Resale of "Roam Like You're Home"

280.    UPM reasserts and realleges all of the allegations of paragraphs 232 through 269 above as though such allegations were set forth fully herein.

281.    Digicel-Haiti's actions in blocking the use by UPM of SIM cards associated with the "Roam Like You're Home" plan, when permitting other owners of SIM cards associated with the plan to complete such calls, constitutes "unreasonable discrimination" against UPM within the meaning of 47 U.S.C. § 202(a) and associated FCC rules.

282.    Digicel-Haiti's actions foreclosed UPM from engaging in profitable business in the United States in competition with Digicel-Haiti and/or its affiliate Digicel-USA. As a direct result of that foreclosure of competition, as of June 2017, UPM has lost substantial revenues and profits, for which Digicel-Haiti is liable to UPM under 47 U.S.C. §§ 206-207, in an amount to be proven at trial but estimated to be in excess of $20,000,000, and will continue to lose at least $1 million per month until such time as Digicel-Haiti discontinues its unreasonable discrimination.

### Count II – Violation of Section 202 of the Act – Resale of Calls Initiated in Haiti

283.    UPM reasserts and realleges all of the allegations of paragraphs 232 through 269 above as though such allegations were set forth fully herein.

284.    Digicel-Haiti's actions in blocking the use by UPM of SIM cards associated

Page 36 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 36 of 48**

with its equipment located in Haiti to complete calls from the United States by means of initiating wireless calls within Haiti, when permitting other owners of SIM cards to initiate wireless calls within Haiti, constitutes "unreasonable discrimination" against UPM within the meaning of 47 U.S.C. § 202(a) and associated FCC rules.

285.    Digicel-Haiti's actions foreclosed UPM from engaging in profitable business in the United States in competition with Digicel-Haiti and/or its affiliate Digicel-USA. As a direct result of that foreclosure of competition, UPM lost substantial revenues and profits, for which Digicel-Haiti is liable to UPM under 47 U.S.C. §§ 206-207, in an amount to be proven at trial but estimated to be in excess of $1,000,000.

### Count III – Violation of Section 201 of the Act – Resale of "Roam Like You're Home"

286.    UPM reasserts and realleges all of the allegations of paragraphs 232 through 269 above as though such allegations were set forth fully herein.

287.    Digicel-Haiti's actions in blocking the use by UPM of SIM cards associated with the "Roam Like You're Home" plan to complete calls from the United States to Haiti, when permitting other owners of SIM cards associated with the plan to complete such calls, constitutes an "unjust or unreasonable" "charge, practice, classification or regulation" within the meaning of 47 U.S.C. § 201(b) and associated FCC rules and rulings.

288.    Digicel-Haiti's actions foreclosed UPM from engaging in profitable business in the United States in competition with Digicel-Haiti and/or its affiliate Digicel-USA. As a direct result of that foreclosure of competition, as of June 2017, UPM lost substantial revenues and profits, for which Digicel-Haiti is liable to UPM under 47 U.S.C. §§ 206-207, in an amount to be proven at trial but estimated to be in excess of $20,000,000, and will continue to lose at least $1 million per month until such time as Digicel-Haiti discontinues its unjust and unreasonable practice.

### Count IV – Violation of Section 201 of the Act – Resale of Calls Initiated In Haiti

289.    UPM reasserts and realleges all of the allegations of paragraphs 232 through 269 above as though such allegations were set forth fully herein.

Page 37 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 37 of 48**

290.    Digicel-Haiti's actions in blocking the use by UPM of SIM cards associated with a GSM Gateway located in Haiti to complete calls from the United States by means of initiating calls within Haiti, when permitting other owners of SIM cards located in Haiti to initiate calls within Haiti, constitutes an "unjust or unreasonable" "charge, practice, classification or regulation" within the meaning of 47 U.S.C. § 201(b) and associated FCC rules and rulings.

291.    Digicel-Haiti's actions foreclosed UPM from engaging in profitable business in the United States in competition with Digicel-Haiti and/or its affiliate Digicel-USA. As a direct result of that foreclosure of competition, UPM lost substantial revenues and profits, for which Digicel-Haiti is liable to UPM under 47 U.S.C. §§ 206-207, in an amount to be proven at trial but estimated to be in excess of $1,000,000.

## Count V – Violation of 47 U.S.C. § 214

292.    UPM reasserts and realleges all of the allegations of paragraphs 232 through 269 above as though such allegations were set forth fully herein.

293.    Digicel-Haiti's arrangements with its affiliate, Digicel-USA (as described above and in the Second Amended Complaint) so involve Digicel-Haiti in the operation and business decisions of Digicel-USA with respect to the US-Haiti route that Digicel-Haiti is, for all intents a purposes, an international common carrier on that route.

294.    In order to operate as an international common carrier, Section 214 of the Act and associated FCC rules require that Digicel-Haiti obtain an appropriate Section 214 authorization from the FCC.

295.    Digicel-Haiti has never received any Section 214 authorization from the FCC to operate on the US-Haiti route. Had it attempted to obtain such authorization, it would have had to disclose to the FCC that it is a dominant carrier in Haiti and thus would have been classified as a dominant carrier on the US-Haiti route. Such an application would have permitted UPM, prior to Digicel-Haiti beginning operations in the United States, to request the FCC to forbid Digicel-Haiti from engaging in unjust, unreasonable, and discriminatory practices against UPM, such as those in which Digicel-Haiti has engaged. As a result, Digicel-Haiti's ability to foreclose

Page 38 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 38 of 48**

competition from UPM on the US-Haiti route by means of blocking calls originating with SIM cards owned by UPM, during the time that UPM sought to provide its services, as alleged above, is a direct result of Digicel-Haiti's failure to seek and obtain Section 214 authorization from the FCC.

296.    As explained above, Digicel-Haiti's actions foreclosed UPM from engaging in profitable business in the United States in competition with Digicel-Haiti and/or its affiliate Digicel-USA.  As a direct result of that foreclosure of competition, as of February 2016, UPM lost substantial revenues and profits, for which Digicel-Haiti is liable to UPM under 47 U.S.C. §§ 206-207, in an amount to be proven at trial but estimated to be in excess of $20,000,000 and will continue to lose at least $1 million per month until such time as Digicel-Haiti discontinues its practice of foreclosing competition.

## SECOND COUNTERCLAIM

### (Breach of Implied-in-Fact Contract)

297.    UPM reasserts and realleges all of the allegations of paragraphs 232 269 above as though such allegations were set forth fully herein.

298.    UPM's agents purchased Digicel SIM Cards from authorized Digicel-Haiti dealers.  The sales transactions through which the Digicel SIM Cards were purchased were no different from those in which an individual Digicel-Haiti customer purchases one or more Digicel SIM Cards for use in his or her cell phone.

299.    Digicel-Haiti's purpose in selling Digicel SIM Cards is to allow purchasers to access the Digicel-Haiti network for at least the number of minutes that are associated with each Digicel SIM Card.  When those minutes are used up, the purchaser must either buy a new card or pay Digicel-Haiti to "top up" the card, refreshing it with another set number of minutes.  In other words, in each SIM card transaction – whether purchase or "top up" – the purchaser expects to receive, and Digicel-Haiti intends to sell, not merely a physical SIM card, but also access to the Digicel-Haiti network for the amount of time specified on or associated with that SIM card.

300.    There is no language on or contained in the packaging surrounding the SIM cards purchased by UPM's agents that places any restrictions or limits on how the SIM card or its

Page 39 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 39 of 48**

minutes can be used.

301.    UPM or its agents purchased a total of approximately 10,705 Digicel SIM Cards, at the rate of approximately $4.00 per card, for a total purchase payment of $42,836.00. UPM also paid $111,209.00 for credits in the form of minutes to be added to the Digicel SIM Cards.

302.    Digicel-Haiti's conduct regarding the sale and use of its SIM cards, both in its transactions with UPM's agents and in its general SIM card transactions with its other customers, manifested its intent that Digicel-Haiti would provide access to its Haiti network for the specified number of minutes in exchange for the purchase of its SIM cards.  UPM understood that, by buying the Digicel SIM Cards, it would be able to access the Digicel-Haiti's network for the number of minutes that it had purchased.  Digicel-Haiti's and UPM's conduct established an implied-in-fact contract that Digicel-Haiti would provide access to its Haitian network in exchange for the purchase of its SIM cards.

303.    Digicel-Haiti's conduct in blocking UPM's ability to use the Digicel SIM Cards was a breach of Digicel-Haiti's manifested intent to provide UPM – and all other purchasers of Digicel's SIM Cards – access to the Digicel-Haiti network in exchange for purchase of the SIM cards.

304.    UPM has performed all conditions precedent to Digicel-Haiti's performance, which has not been excused.

305.    As a direct and proximate result of Digicel-Haiti's breach of its implied-in-fact contract to allow UPM, a Digicel SIM Card purchaser, access to Digicel-Haiti's network, UPM has suffered damages in an amount to be proved at trial, as alleged above.

## THIRD COUNTERCLAIM

(Money Had and Received)

306.    UPM reasserts and realleges all of the allegations of paragraphs 232 through 269 above as though such allegations were set forth fully herein.

307.    Digicel-Haiti received money from UPM for the purchase of Digicel SIM

Page 40 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 40 of 48**

cards and credits.  Digicel-Haiti blocked the use of Digicel SIM Cards and credits and should not be allowed to keep the money it received.

308.    Digicel-Haiti should be required to return $156,735.42 to UPM on account of the funds it received for Digicel SIM Cards and credits that UPM was not allowed to use.

## FOURTH COUNTERCLAIM

### (Conversion)

309.    UPM reasserts and realleges all of the allegations of paragraphs 232 through 269 above as though such allegations were set forth fully herein.

310.    As set forth above, Plaintiff has wrongfully exercised dominion and control over the use of the Digicel SIM Cards by blocking their use with an intent to permanently deprive UPM of the use of those cards.  This conduct constitutes conversion.

311.    Plaintiff's conduct involved repeated actions to convert UPM's property for its own benefit.  The harm to UPM caused by Plaintiff's repeated actions is the result of intentional malice, trickery or deceit.  Digicel-Haiti has acted with a conscious indifference to the harm suffered by UPM.  Plaintiff's conduct is so reprehensible as to warrant the imposition of punitive damages to achieve punishment or deterrence.

312.    Digicel-Haiti should be required to pay $156,735.42 to UPM representing the value of the Digicel SIM Cards and credits that it converted from UPM.

313.    Digicel-Haiti should be required to pay to UPM punitive damages in an amount to be proved at trial.

## FIFTH COUNTERCLAIM

### (Unjust Enrichment)

314.    UPM reasserts and realleges all of the allegations of paragraphs 232 through 269 above as though such allegations were set forth fully herein.

315.    As set forth above, Plaintiff has received funds from UPM for the purchase of the Digicel SIM Cards and credits but Plaintiff has blocked UPM from receiving the economic benefit of its purchase.

Page 41 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 41 of 48**

316.     Plaintiff has not reimbursed UPM for the value it paid for the Digicel SIM Cards.

317.     Plaintiff's conduct involved repeated actions to receive a benefit from UPM without reimbursement for the proceeds thereof.  The harm to UPM caused by Plaintiff's repeated actions is the result of intentional malice, trickery or deceit.  Digicel-Haiti has acted with a conscious indifference to the harm suffered by UPM.  Plaintiff's conduct is so reprehensible as to warrant the imposition of punitive damages to achieve punishment or deterrence.

318.     Under the circumstances, it is inequitable to allow Plaintiff to retain the funds received from the purchase when it has failed to allow UPM to use the Digicel SIM Cards and credits to access Digicel-Haiti's network.  Digicel-Haiti should be required to repay UPM for the unused value of the Digicel SIM Cards purchased by UPM, which amount is $156,735.42.

319.     Digicel-Haiti should be required to pay to UPM punitive damages in an amount to be proved at trial.

## SIXTH COUNTERCLAIM

(Intentional Interference with Prospective Economic Advantage)

320.     UPM reasserts and realleges all of the allegations of paragraphs 232 through 269 above as though such allegations were set forth fully herein.

321.     UPM has a variety of business relationships with telecommunications wholesalers and carriers in which UPM offers to sell "minutes" that those carriers then use to complete telephone calls (including cellular telephone calls) made by their customers.  Some of the minutes UPM offered were to place telephone calls to Haiti.

322.     Digicel-Haiti is not a party to the business relationships in which UPM sells services on the wholesale market.

323.     Digicel-Haiti intentionally interfered with UPM's ability to market its telephone minutes that would complete calls to Haiti through the improper means of:

(a)     breaching its implied-in-fact contractual agreement to provide the minutes associated with the SIM cards that UPM purchased from Digicel-Haiti or its agents;

Page 42 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 42 of 48**

(b)    creating or continuing an unlawful restraint of trade; and/or

(c)    violating the aforementioned statutes and regulations; and

(d)    making defamatory statements about UPM to others, including UPM's customers.

324.    Plaintiff's conduct involved repeated actions to intentionally interfere with UPM's ability to market its telephone minutes.  The harm to UPM caused by Plaintiff's repeated actions is the result of intentional malice, trickery or deceit.  Digicel-Haiti has acted with a conscious indifference to the harm suffered by UPM.  Plaintiff's conduct is so reprehensible as to warrant the imposition of punitive damages to achieve punishment or deterrence.

325.    As a direct and proximate result of Digicel-Haiti's intentional interference with UPM's relationships with wholesalers for the sale of cellular telephone services for international calls terminating in Haiti, UPM has suffered damages in an amount to be proven at trial.

326.    Digicel-Haiti should be required to pay to UPM punitive damages in an amount to be proved at trial.

## SEVENTH COUNTERCLAIM

(Monopolization/Attempted Monopolization in Violation of 15 U.S.C. § 2)

327.    UPM reasserts and realleges all of the allegations of paragraphs 232 through 269 above as though such allegations were set forth fully herein.

328.    Under 15 U.S.C. § 2, it is unlawful for any person or persons to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations."  Under 15 U.S.C. § 15(a), "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent."

329.    Digicel-Haiti and Digicel-USA are wholly-owned subsidiaries of Digicel Holdings, Ltd., and are thus considered to be a single entity for purposes of the antitrust laws.  *See*

Page 43 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 43 of 48**

*Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 753 (1984). In addition, as alleged above, with respect to calls from the United States to Haiti, Digicel-Haiti and Digicel-USA operate in tandem in order to prevent competition on the United States-Haiti route. For purposes of this counterclaim, the two entities are referred to collectively and individually as "Digicel."

330.    *Jurisdiction and Venue.*  In addition to the allegation of jurisdiction above, jurisdiction to hear this counterclaim arises under 15 U.S.C. § 15(a) and 28 U.S.C. §1331 (federal question).  Venue is proper in this Court under 28 U.S.C. § 1391(b) with respect to both Digicel-Haiti and Digicel-USA.

331.    As described below, Digicel has monopolized and/or attempted to monopolize at least two "part[s] of trade or commerce … with foreign nations," *i.e.,* at least two distinct product markets.

332.    *First Product Market – Calls from the United States to All Telephones in Haiti.*  As alleged above, Digicel provides the overwhelming majority of local telephone service in Haiti.  By virtue of its purported "requirement" that all calls to any of its subscribers in Haiti be routed through its switches in Miami and New York at a minimum of $0.23 per minute, and by virtue of the actions described below, Digicel has monopolized and/or attempted to monopolize the market for transporting calls from the United States to Haiti.  This product market includes calls to all telephone subscribers in Haiti, including those that Digicel does not serve.

333.    *Second Product Market – Calls from the United States to Digicel Customers in Haiti.*  As alleged above, Digicel provides the overwhelming majority of local telephone service in Haiti.  By virtue of its purported "requirement" that all calls to any of its subscribers in Haiti be routed through its switches in Miami and New York at the rate of $0.23 per minute, and by virtue of the actions described below, Digicel has monopolized and/or attempted to monopolize the market for transporting calls from the United States to Digicel subscribers in Haiti. Because of Digicel's overwhelming share of telephone subscribers in Haiti, this product market standing alone constitutes a substantial amount of commerce between the United States and a foreign nation (Haiti).

Page 44 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL     UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 44 of 48**

334.   *Geographic Market.*   The relevant geographic market that Digicel has monopolized consists of the entire United States, with respect to the product markets identified above.  That is, no matter where in the United States a call to Haiti (first product market) or to a Digicel subscriber in Haiti (second product market) originates, by virtue of Digicel's unlawful monopolization, that call will be handled by Digicel via the means described above and alleged in Digicel's Second Amended Complaint.

335.   *Acts of Monopolization And/Or Attempted Monopolization.*   UPM lacks sufficient information regarding the circumstances by which Digicel acquired its effective monopoly on local telephone service in Haiti and so assumes at this juncture (and in the absence of additional information potentially to be obtained in discovery) that Digicel's acquisition of that local service monopoly did not in itself violate the laws either of Haiti or of the United States. Even making the assumption, however, Digicel has acted to illegally extend its local service monopoly to the separate lines of commerce/product markets alleged above.

336.   First, by requiring or purporting to require that calls from the United States to its customers in Haiti be directed to one of its gateway switches in New York or Miami, as alleged in the Second Amended Complaint, Digicel has eliminated competition for transporting calls to Haiti from the United States.

337.   Second, by charging $0.23 per minute for calls delivered to New York or Miami for termination in Haiti, but also charging the same $0.23 per minute for calls delivered to Haiti by UPM (or other third parties), as alleged in the Second Amended Complaint, Digicel has made it economically impossible for any third party to compete in carrying calls from the United States to Haiti, since the pricing structure just described establishes a regime in which that transport function is provided, in effect, for free.

338.   Third, while internet-based telephone service provides a technically and economically viable means to deliver calls to Haiti from the United States at very low cost, Digicel's efforts to prevent any such calls from being completed using its wireless network (as alleged in the Second Amended Complaint and as alleged above) constitute actions to protect and

Page 45 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 45 of 48**

extend Digicel's local service monopoly to include transport of calls from the United States to Haiti.

339.    Fourth, resale of Digicel's RLYH service within the United States provides a technically and economically viable means of competing with Digicel and, to some extent, undermining Digicel's monopoly power with respect to the product markets described above, Digicel's efforts to prevent any such resale from occurring (as alleged in the Second Amended Complaint as alleged above) constitute actions to protect and extend Digicel's local service monopoly to include transport of calls from the United States to Haiti.

340.    Fifth, as described above, once Digicel became the dominant local carrier in Haiti, it was obliged to report that status to the FCC, which, had it known of such conditions, would likely have taken steps to limit Digicel's ability to exploit and extend its local service monopoly to include transport of calls from the United States to Haiti.  Digicel's illegal, wrongful action in concealing its dominant status from the FCC also had the effect of protecting and extending Digicel's local service monopoly to include transport of calls from the United States to Haiti.

341.    The acts identified above (and others that may be revealed in discovery) constitute predatory, anticompetitive conduct undertaken with a specific intent on the part of Digicel to monopolize (and/or attempt to monopolize) the markets identified above.  Indeed, there is no other plausible explanation for Digicel's intent in undertaking those actions.  Moreover, Digicel's overwhelming market share of the local service market in Haiti, combined with the actions identified above (and others that may be revealed in discovery), plainly indicate that Digicel has either succeeding in monopolizing the markets identified above or that there is a dangerous probability that Digicel will succeed in doing so.

342.    By virtue of the conduct and circumstances alleged above, Digicel has violated, and continues to violate, 15 U.S.C. § 2.

343.    As a direct result of Digicel's unlawful monopolization and/or attempted monopolization of the markets described above, UPM has been harmed in "its business or

Page 46 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 46 of 48**

property" within the meaning of 15 U.S.C. § 15(a). Specifically, but for Digicel's illegal monopolization, UPM would have been able to provide competitive telephone services to United States consumers seeking to call Digicel subscribers and others in Haiti. UPM's estimate of its damages (profits lost due to Digicel's illegal monopolization) is approximately $20,000,000. Because these losses reflect UPM's being precluded from offering competition that would benefit consumers by means of new service alternatives and lower prices, these harms constitute "antitrust injury" within the meaning of *Brunswick Corp. v. Pueblo Bowl-O-Mat,* 429 U.S. 477 (1977) and subsequent cases.

344. Digicel should be required to pay UPM's damages as alleged above, in an amount to be proved at trial, trebled in accordance with 15 U.S.C. § 15(a). UPM's current estimate is that Digicel should be required to pay at least $60,000,000 after trebling.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray that the Court enter an order, as to Digicel-Haiti's claims against Defendants:

1. Dismissing the Second Amended Complaint, and each and every count, with prejudice;

2. Providing that Digicel-Haiti take nothing on its claims, and entering judgment on all of Digicel-Haiti's claims in favor of Defendants;

3. Awarding Defendants their costs in defending this action, including reasonable attorneys' fees; and

4. Awarding Defendants such other and further relief as justice may require.

WHEREFORE, UPM further prays that the Court enter an order, as to UPM's Counterclaims against Digicel-Haiti:

5. Awarding monetary judgment against Digicel-Haiti for damages UPM incurred as a result of Digicel-Haiti's violation of the Communications Act of 1934, as amended, in an amount to be proven at trial;

Page 47 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL    UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1
Page 47 of 48**

6. Awarding UPM damages on its contractual and quasi-contractual claims against Digicel-Haiti, in an amount to be proved at trial;

7. Awarding UPM damages on its tort claims against Digicel-Haiti in an amount to be proved at trial;

8. Awarding UPM damages on its monopolization claim against Digicel-Haiti and Digicel-USA, in an amount to be proved at trial, and trebled in accordance with 15 U.S.C. § 15(a);

9. Awarding Defendant UPM punitive damages in an amount to be proved at trial;

10. Awarding UPM its costs in defending this action, including reasonable attorneys' fees; and

11. Awarding UPM such other and further relief as justice may require.

## TRIAL BY JURY

Defendants demand trial by jury on all issues so triable.

Dated: September 7, 2017.

TOMASI SALYER MARTIN


By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

Christopher W. Savage, D.C. Bar #362657
chrissavage@dwt.com
*(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 48 of 49 - DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL     UPM-L1\00367266.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Exhibit 1**
**Page 48 of 48**