IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNIGESTION HOLDINGS, S.A.,<br>LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 3:15-cv-00185-SI |
| | ) | |
| vs. | ) | January 18, 2018 |
| | ) | |
| UPM TECHNOLOGY, INC.,<br>et al., | ) | Portland, Oregon |
| | ) | |
| Defendants. | ) | |

(Motion Hearing)

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL H. SIMON

UNITED STATES DISTRICT COURT JUDGE

                          APPEARANCES


FOR THE PLAINTIFF:        Robert C.L. Vaughan
                          Kim Vaughan Lerner LLP
                          One Financial Plaza, Suite 2001
                          Fort Lauderdale, Florida  33394

                          Richard K. Hansen
                          Schwabe Williamson & Wyatt, PC
                          1211 SW Fifth Avenue, Suite 1900
                          Portland, Oregon 97201


FOR THE DEFENDANTS:       Christopher W. Savage
                          Davis Wright Tremaine LLP
                          1919 Pennsyvania NW, Suite 800
                          Washington, D.C.   20006


                          Eleanor A. DuBay
                          Tomasi Salyer Martin
                          121 SW Morrison Street, Suite 1850
                          Portland, Oregon   97204


COURT REPORTER:           Dennis W. Apodaca, RDR, FCRR, CRR
                          United States District Courthouse
                          1000 SW Third Avenue, Room 301
                          Portland, OR   97204
                          (503) 326-8182

(January 18, 2018)

P R O C E E D I N G S

(Open court:)

THE CLERK:  Your Honor, this is the time set for oral argument in civil case 15-185-SI, Unigestion Holding, S.A. versus UPM Technology, Inc., et al.  Can I have counsel in court, beginning with plaintiff, please identify yourself for the record.

MR. VAUGHAN:  Good afternoon, Your Honor. Robert Vaughan, Kim Vaughan Lerner, appearing for Unigestion Holdings, Digicel Haiti, and Digicel USA.

THE COURT:  Welcome back.

MR. HANSEN:  Richard Hansen with Schwabe for the same.

THE COURT:  Welcome.

MR. SAVAGE:  Chris Savage with Davis Wright Tremaine for UPM.

THE COURT:  Welcome back.

MS. DUBAY:  Eleanor DuBay for defendants.

THE COURT:  Welcome back.

Thank you all for accommodating my scheduling need, because there is this conference call at three o'clock that I really must participate in.

We are here on the plaintiff's motion to dismiss the defendants' counterclaims and to strike

several affirmative defenses.  I have read everything that you all have submitted here.  I've refreshed myself with some of my prior opinions in this case.

When we get there, I'm going to ask some fairly specific questions for both sides, although you know what, let me ask right now and get it out of the way: What is the relationship between Plaintiff Unigestion Holdings, S.A. and the entity that I see identified in places as Digicel Holdings, Limited?  What's the relationship?

MR. VAUGHAN:  That can best be described, Your Honor, as a parent/sub of Digicel Holdings.

THE COURT:  Which is which?

MR. VAUGHAN:  Digicel Holdings being the parent in that situation.

THE COURT:  So Digicel Holdings is the parent of Unigestion.  Unigestion does business as Digicel Haiti.  Is then Digicel USA also a wholly owned sub of Digicel Holdings?

MR. VAUGHAN:  That's correct, Your Honor.

THE COURT:  Okay.  Got it.  Thank you.

MR. VAUGHAN:  You're welcome.

THE COURT:  If you wish to begin the argument, Mr. Vaughan, I look forward to hearing what you have to say.  I will tell you that I am most interested in

exploring with both sides what is the relevant market or submarket or markets?  Who participates in those markets?  Who has market power in those markets?  What's the main anticompetitive conduct alleged?

By the way, I have read everything.  What's the main anticompetitive conduct that's alleged?  And is it conduct that's occurring in those markets or in a different market that is arguably being extended to these markets?  That's what I'm most interested in.

I appreciate the argument about challenging plaintiff's theory, single enterprise theory, as between Digicel Haiti and Digicel USA.  I am not particularly persuaded by it based upon the case of --

MR. VAUGHAN:  Lenox.

THE COURT:  Yes, Lenox.  And American Airlines.  You got my e-mail about that.  We can talk about why I'm not persuaded.

MR. VAUGHAN:  Me talk you out of that particular one?  Oh, no.  (Laughter.)

THE COURT:  Well, you can tell me why it might not apply, if you want.  But I'm really most intrigued by understanding the antitrust, and I will tell you why.  By the way, let's refer to everybody as either "Digicel," or where it is relevant, "Digicel Haiti" and "Digicel USA" or "UPM."  Let's not talk about counterclaim plaintiff

and counterclaim defendant.

Okay.  I see that UPM alleges as part of its seventh counterclaim, the antitrust counterclaim, a first product market carrying calls from the U.S. to telephones in Haiti, paragraph 332.  They allege as their second product market or alternative product market carrying calls from the U.S. to Digicel's customers in Haiti, a subset of the first market.  I see that it has been alleged that, in terms of what people use for telecommunications within Haiti, about 75 percent of the folks use Digicel's technology and equipment in Haiti.

But as I'm envisioning carrying a call from the U.S. to a telephone line in Haiti, I'm seeing that -- and I'm looking at it more like a physical, if you will, truck and boat route, where let's say a call starts in Oregon or Chicago or wherever, and it is traveling along either wires or the airwave, but I'm visualizing a truck now carrying something.  And it's driving through the U.S. to the Digicel switch.  I will ignore right now, unless it becomes important, whether it is a Digicel USA switch or Haiti switch or New York or Florida.  It goes to the Digicel bridge.

Now, on that portion of the route, as far as I can tell, Digicel does not offer any service.  It doesn't compete.  It basically runs the bridge.  Once the truck

gets to the bridge and loads the cargo onto a boat to Haiti or a ship to Haiti, then Digicel allegedly controls that bridge.  At least it is alleged that if you want to deliver your cargo to a Digicel customer in Haiti, that's the only way you can get there, if you go through this bridge; otherwise, they will block you from getting to a customer.  At least that's how I understand the allegation.

If you want to try to get your cargo -- telephone call -- to someone who is not on the Digicel network, one of the other 25 percent, it is not quite clear to me how else one can do that, but there's an allegation that, still, Digicel interferes with UPM's ability to do that.

So if the product market is getting a call from the U.S., from a point in Oregon to a caller in Haiti, either a Digicel customer in Haiti or a non-Digicel customer in Haiti.  Digicel only participates in a portion of that market.  It controls the bridge, and it controls what happens from that bridge to Haiti for all people in one category; most people in another category. That's the market that's alleged.

How does one measure or assess who has power in that market, especially given that Digicel doesn't even participate in a portion of that market?  That's one

question I'm struggling with.

Once we sort of figure that out, then we can talk about, well, what does Digicel do that's allegedly anticompetitive?  That's what I'm really most interested in hearing both sides talk about.

That said, talk about anything you want.

MR. SAVAGE:  Your Honor, a suggestion. Obviously it is your call.  I am prepared.  I even have a pretty little chart to talk about exactly that question. Since I'm defending that market, if you want to have me take a shot and then have him respond, that's fine.  I am happy to wait.

THE COURT:  Do you have an objection to that?

MR. VAUGHAN:  Yes, I do have an objection.

THE COURT:  Then how long would you like to speak before I wait to hear that?

MR. VAUGHAN:  I can answer your question until you are tired of hearing me speak.

THE COURT:  No, that's the wrong direction.  I want to get to that answer, but I want to respect the fact that you are the movant, and I will let you speak first.

MR. VAUGHAN:  It is not so much that I'm the movant, Your Honor.  I want to make sure that we stay on the right path.

THE COURT:  All right.

MR. VAUGHAN:  So don't think everything is going to that answer.

THE COURT:  Is this fair -- given that I have a hard stop at 2:50 -- you talk about anything you want and start wherever you want.  I'll give you ten minutes, and ten minutes from now we will turn to the defendants.

MR. VAUGHAN:  Our job is to make sure you have what you need, and so you are going to miss this grand phenomenal opening I had, because I'm going to answer your question.

THE COURT:  Okay.  Thank you.

MR. VAUGHAN:  So, Your Honor, I would say that I agreed with 98 percent of your understanding of what you just articulated.  Here is the problem, and that's why I wanted to speak first --

THE COURT:  No problem.

MR. VAUGHAN:  -- not because I didn't want to cede to Mr. Savage.

THE COURT:  No problem.  We are going to go back and forth.

MR. VAUGHAN:  Mr. Savage has attempted to -- plaintiff -- sorry.

THE COURT:  UPM and Digicel.

MR. VAUGHAN:  UPM has attempted to

re-articulate exactly what this market is and who does what and where --

THE COURT:  Okay.

MR. VAUGHAN:  -- and it is creating some problems.  You asked:  Is the product market the market carrying calls to Haiti, one; or is it carrying calls to Digicel calls to customers in Haiti, two?

THE COURT:  That's what he alleges in paragraph 332 and 333.

MR. VAUGHAN:  And here is why it is incorrect --

THE COURT:  Okay.

MR. VAUGHAN:  -- and this is not false praise.  I have developed enough of a healthy respect for Mr. Savage's familiarity with the subject matter to believe that he understands the difference -- he is probably testing to see if I do, because this is the difference:  We have never alleged that the market is carrying calls to Haiti.  That's the entire country.  We have never alleged that it is carrying calls to Digicel's customers in Haiti.  That's a little bit broader than what we have essentially been trying to protect.

What we do is, Digicel USA must take all authorized calls that are to be terminated on the Digicel Haiti network.  What's the difference?  All we are doing

at Digicel USA is essentially acting as a turnstile -- the gate -- to get onto those towers, those telecom masts, because that's the only way that we can properly direct and route them on that network and build for the use of that network.

Remember that this entire case is about theft and fraud. It is about the use of that network to terminate international calls without paying the proper rate.

THE COURT: By the way, that's your case, and that's your claim.

MR. VAUGHAN: Correct.

THE COURT: And that's fine, although I do have one follow-up question for you on that. But that doesn't have to be the same market definition of UPM's antitrust counterclaim.

MR. VAUGHAN: I would agree with that. That being said, though, what that means is it now falls to Mr. Savage to properly plead and satisfy, not only the basic pleading requirements, but the plausibility requirement under Iqbal and Twombly, and how we are to proceed when this market has been created from whole cloth, because what's the difference?

Let me go to one that is closer. I think trying to explain the distinction between the

Digicel Haiti network and Haiti is obvious.  There is at least one other telecom company, Natcom, in Haiti that provides mobile telecom service.

THE COURT:  Is there landline service?

MR. VAUGHAN:  There is, which is why I made that distinction, because Digicel Haiti doesn't provide landline service at all.  So the percentage of the Haiti market that Digicel Haiti is alleged to have has nothing to do with landline --

THE COURT:  The 75 percent -- and I think I actually saw that in your complaint -- what is that 75 percent?  Is that just mobile in Haiti?

MR. VAUGHAN:  Correct.

THE COURT:  So roughly Digicel has about a 75 percent market share of the mobile market in Haiti and Natcom has about 25 percent approximately?

MR. VAUGHAN:  That's what we have been seeing so far.

THE COURT:  Okay.  Let's say we have a caller in Oregon or Chicago or wherever who wants to call someone who uses a Natcom mobile phone in Haiti or wants to call someone who is on a landline in Haiti.  How does that call work?

MR. VAUGHAN:  So using the Natcom Digicel model, either Natcom -- let's just answer your question.

Natcom would have sold access minutes to any number or series of wholesalers wherever.

THE COURT:  The same model as Digicel?

MR. VAUGHAN:  The same model.

THE COURT:  How about the landline?  If I want to call someone in Haiti who I know has a landline number, how is that call going to get transferred?

MR. VAUGHAN:  If I answer that question, I'm projecting.  I have never asked that specific question.  If I tell you, I'm guessing.  I could take a guess.

THE COURT:  No, not worth it.  Okay, I'm following you.

So we have the way that Digicel describes the market, and your allegations in your complaint allege that UPM is engaging in fraudulent tactics to try to bypass having take the toll at the Digicel tollbooth.  I get that.  Their counterclaim, and that's what we are here on, their counterclaim alleges that there is unlawful monopolization conducted by the Digicel enterprise or family of enterprises in one of two different markets.  And you're saying that they have not adequately alleged the market.  They have not adequately alleged market power.  They have not adequately alleged anticompetitive conduct.

Okay.

MR. VAUGHAN:  To the extent they have put sufficient words on paper, it fails to meet the Iqbal/Twombly plausibility analysis because, again, there is absolutely zero basis in fact -- not even a good faith basis -- to allege that we're monopolizing the traffic to Haiti in general.  And two, there is absolutely zero basis, because they cite to our complaint as the basis for the conclusion that we're carrying calls authorizing only the traffic to Digicel customers.

That's not correct.  You can go through a Natcom switch, to a Natcom tower, to a Digicel tower, to a Digicel customer.  That call can get to Haiti through another route, get to a Natcom tower in Haiti, and then to a Digicel tower, and then to a Digicel customer.

So the allegation that there is a market for carrying calls to Digicel customers in Haiti, which we monopolize, is, from my perspective, from whole cloth, and certainly, to the extent that Mr. Savage says it is based on our complaint, it is demonstrably not true.

THE COURT:  All right.  Although I need to be careful on a motion to dismiss that if he alleges a fact -- not a conclusion -- but if he alleges a fact, and you say that's not true, then on a motion to dismiss I'm going to have to let him take discovery on it.  Then you can move for summary judgment.  Then we will see whether

or not there is a disputed issue of fact, right?  That's what we have to do, don't we?

MR. VAUGHAN:  Yes and no.  I would say had the allegation not been predicated upon our complaint, I would be stuck.  Had he simply asserted with no basis and no reference and no citation that this was the market, I'd have a problem.

Now, I've seen nothing to suggest otherwise.  I think actually, if we look at Mr. Savage's opposition, I can demonstrate clearly exactly what my problem is.

THE COURT:  Okay.

MR. VAUGHAN:  We can then talk about it.  When he talks about monopoly power in his motion at page 21.

THE COURT:  One moment.  Internal 21?

MR. VAUGHAN:  It is page 15.

THE COURT:  Either is fine.  As long as you label it, I can do either.  So internal 15 is the same as page 21.  I'm at internal page 15.

MR. VAUGHAN:  That's with a subheading "Money Power"?

THE COURT:  I have it highlighted and even a few lines underlined.

MR. SAVAGE:  I'm honored.

THE COURT:  I'm confused.

MR. VAUGHAN:  If that's being honored, you

should see mine.  You would be very pleased.

If we go to middle of that paragraph, Your Honor where it says, "UPM also alleged," I think this illustrates the point clearly.

Mr. Savage writes, "UPM also alleged that by requiring that all calls bound for Digicel Haiti customers be directed through Digicel USA" -- I'm sorry -- no, I have a better example.

May I direct you to page 17?

THE COURT:  Yes.

MR. VAUGHAN:  I'm sorry.  That one does it, but this one does it better.

THE COURT:  Which paragraph?

MR. VAUGHAN:  It is the paragraph beginning with, "First, Digicel itself alleges."

THE COURT:  Okay.

MR. VAUGHAN:  So it says, "First, Digicel itself alleges that all authorized telecommunications traffic from the United States to Digicel Haiti's cellular network is routed through the Digicel USA operated international switching centers in Miami and New York."

UPM highlights two sections in that sentence, the "all authorized telecommunications" and "is routed through," because that's where it wants your attention.

Then it says, "UPM paraphrases this assertion by referring to Digicel's actions as amounting to requiring or purporting to require that all calls to its own subscribers be switched through Digicel USA."

It then goes on to say, "Digicel claims this is false and purposefully misleading," and purports to explain why. "Evidently the correct phrasing is to say that Digicel Haiti requires" -- correcting the "all" -- "that international calls destined to be terminated on the Digicel Haiti network be switched," correcting the "is routed" --

THE COURT: I highlighted that as well.

MR. VAUGHAN: This is the problem. That was not the articulated cause and purpose for the misleading problem, because what is not highlighted is -- when they quote our complaint, it says, "From the United States to the Digicel Haiti cellular network," the second line. In his paraphrasing it says, "Requiring or purporting to require that all calls to its own subscribers," which is a vastly subset from just the network. Then when it goes back to fixing the problem, notes it goes back to "terminated on the Digicel Haiti network." That is not a minor or inconsequential switch.

Where we are directed by the bolding of certain words, to look at the "all" and "is routed through" as

opposed to "requires" and "be switched," the important difference, the purpose for the misleading and false switch here is between cellular network and Digicel's own subscribers, on the other hand.

I would also point to that last sentence in that paragraph, because not only do we move from "the cellular network" to "all Digicel subscribers," in the last sentence it goes on to say, "Be that as it may, this conduct -- extending the monopoly for local service for Haiti to include international service between the United States and Haiti -- is clearly anticompetitive."

That morphing from the network, which is all that we're saying is routed from Digicel USA to the network, it morphs from the network to all Digicel subscribers to the entire country in some magical switch.

In the first section that I have referred to, and I think I would have answered, page 15, again, this is where UPM -- that same section that I referred to before, Your Honor.  "UPM also alleged that by requiring that all calls bound for Digicel Haiti customers be directed to Digicel USA, Digicel has eliminated competition for transporting calls to Haiti from the United States."

Mr. Savage then goes on to purport to support that position.  "On this point, Digicel itself has

provided adequate allegations of its monopoly power." Look at the support. He then quotes: "All authorized telecommunications traffic from the United States to the Digicel Haiti cellular network is routed through the Digicel USA operated international switching centers in Miami and New York." That is a distinction with a very big difference, and I think once that difference is properly identified and enforced, it impacts a good 60 or 70 percent of the allegations in this antitrust complaint. I think I've answered the question. I know we are short on time

THE COURT: Please. Thank you. I do appreciate that.

MR. VAUGHAN: You're welcome.

THE COURT: Mr. Savage.

MR. SAVAGE: Okay. So I have a lot of things. I figure, you know, explaining in some graphic form what we're talking about, it might be helpful. I have a graphic.

THE COURT: You have two copies for me, right?

MR. SAVAGE: I have plenty of copies.

THE COURT: Hopefully one for me and one for Maile.

Okay. Good. Thank you.

MR. SAVAGE: Before I get started doing the

guts of this, I do want to emphasize, under the standard we are operating under now, to the extent that the phrasing of a particular allegation isn't a hundred percent perfect, but you can get from reading the complaint and the counterclaim what's happening, that's sufficient to survive at this point.  If it is not, all that will happen, under what I understand the precedent, I will get to replead it.  So that's where we are.

So if we look at this chart, this is how the market works, as we understand it and as we allege it. You start at the top.  Forget all the complicated stuff on the left and just go down the arrows.

Retail customers call Haiti.  They get picked up by retail carriers in the U.S.  Competition happens, because those retail carriers -- either themselves or giving it to their intermediaries -- gets to decide who takes that call.  They give it to Digicel; they give it to us.  Once it is decided -- whoever gets it -- switches it and does the routing of it to Haiti.  Then it gets to Haiti.  But the calls in this example go to the Digicel customers, it all has to go to a Digicel switch, and then off it goes to their customers.  That's the call flow.

Then when you follow the call flow, you can see the two different methods that Digicel was attempting to compete and how that competition was destroyed.  We were

attempting to compete by saying to this market, to the wholesalers and the retail carriers: "Hey, we can get calls to Haiti. Send the calls to us."

One of the cases we cited was Glen Holly. It says that you want to look for the point of competition. That's the point of competition. When retail carriers and wholesale carriers in the U.S. have calls bound for Haiti, and the question is, where do I send it? Do I pay Digicel to do it, or do I pay UPM to do it? That's competition on the merits right there.

THE COURT: By the way, can you also pay Natcom to do it? Can they also pay Natcom to do it?

MR. SAVAGE: It is my belief that you can probably -- you can certainly find a physical way to get calls to Haiti that don't involve Digicel. Our contention is certainly with respect to the submarket, in light of their own statement that -- I did emphasize in bold the word "all," but I didn't put it there. "All calls bound for Digicel's network in Haiti are supposed to go right here." I took them at their word. So what they are saying effectively is if someone wants to call Natcom, they don't have to go through Digicel USA. Okay. I mean, that may or may not be true. We will sort that out in discovery. We will figure out whether -- since the report shows them having 75 percent of the market,

has that grown to 85?  We don't know those answers.  But we do know that 75 percent is plainly enough to have monopoly power in the market as a whole.  And with respect to the submarket of their own customers, that is a substantial amount of commerce between the United States and Haiti.

So clearly with respect to that submarket, their own allegation that all calls bound for their network in Haiti are required to come through their own network.  I mean, once we get past this part, I'm sure that we will probably move for judgment on the pleadings, because they had said that all calls going to their network have to go this way.

Now, in terms of the market, my decades as a telecom lawyer probably betray me giving away some of this here, because this wholesale market, where the wholesaler is saying, "Go here; go there," what the buyers in that market think they are buying --

THE COURT:  Who are the buyers?

MR. SAVAGE:  The retail carriers or wholesalers whose customers are making calls to Haiti.  They are the buyers.  They have to buy the function of getting the calls to Haiti.  What those buyers think they are buying is getting calls to Haiti; transporting calls to Haiti. They don't care whether it goes by satellite, whether it

goes by optical fiber to Zimbabwe and then back.  You stand there in that market and say, "I can get the call to Haiti."  They say, "Awesome, here is your dime," or 23 cents or whatever it is.  That's the competition.  That's what Digicel destroyed by their anticompetitive actions.

THE COURT:  I appreciate that, but now let's be even simpler, if you don't mind.  I am going to ask you to either take off your telecommunications expert hat and put on your antitrust expert hat.  Let's talk about this first product market.  Carrying calls from the U.S. to telephones in Haiti.

MR. SAVAGE:  Correct.

THE COURT:  Who are the participants in that market?  You can either give me names or just general descriptions.

MR. SAVAGE:  So the purpose of the telecom expert stuff that I went through was to give myself a little wiggle room on that word "carrier."  The reason I'm saying that is, the physical carriers, the actual probably optical signals that do this, is handled by various entities that own undersea cables.  There are undersea cables that run from New York and Miami and so on that run through the Caribbean.  Then I think they hit the Dominican Republic and then go across the mountain states.

Those undersea cables are owned by the main -- AT&T, Cable & Wireless -- level three.  But the next thing that happens in that market is they sell what are called IRUs -- indefeasible rights of use -- on those cables to anybody.  So, for example, Digicel Haiti could buy IRUs.  Other people can buy IRUs.  Then those cables land somewhere physically in Haiti.  Then connections run from them to various switches.

Because I'm a little pedantic about this, it is important to distinguish.  What Mr. Vaughan said can't technically be true, not that it matters, but I want the record to be clear.  If a call comes in from Natcom from overseas, it doesn't come into one of their towers.  It comes into a switch, which in my diagram it is here.

Then the switch sends things out to towers.  So if a Natcom switch gets a call that's bound for Digicel Haiti, it won't hit the towers.  There will be a landline.  There will either be a microwave link or a fiberoptic cable running between those two switches.  Then it will be Digicel Haiti's job to get it out to its own cell towers and out to the customers.

But that said, there will be some number of undersea cables.  Presumably the usual suspects of international carriage -- AT&T or Cable & Wireless -- will get your calls to Natcom from the U.S., if you want,

and indeed Digicel USA may buy capacity from those people to carry the calls down to Haiti.

THE COURT:  I'm having trouble translating telecommunication speak to antitrust speak.

MR. SAVAGE:  I understand.

THE COURT:  Here is my problem.  When I think about a monopolization case, and we know that the relevant market has to have a product component and a geographic component.

MR. SAVAGE:  Correct.

THE COURT:  And we first look and say, "All right, what's the product here?"  Then we ask the plaintiff or the antitrust claimant, "What's the relevant product that you allege?"  And then when asked, "Okay, who are the people that supply that product" -- presumably one of them is the antitrust -- I'll choose plaintiff -- presumably one is an antitrust defendant, putting aside market extensions issues, which we will get to later.  But basically they both compete in that market.  Maybe there are some other people that compete in that market.

So now we can define the market by understanding who competes in that market.  Then we can ask maybe later about market power; maybe use market share as a proxy.  Maybe you look at can the antitrust

defendant raise prices a nontrivial amount for a non-transitory period of time?  Fine, whatever.

But before we get to that, we have to understand the market and who competes in it.  I'm still stuck trying to understand -- you allege in paragraph 332 that the first product market is carrying calls from the U.S. to telephones in Haiti.

MR. SAVAGE:  Correct.

THE COURT:  I note that you don't say whether that telephone is a landline or a mobile.  Okay, fine. So I presume either.

Who competes in that market?  What I'm hearing you tell me in telecommunications talk is that there is lots of different people or entities that play lots of different roles in that.  Is that what we're going to end up with in trying to understand what the market is -- something that has different entities providing different things to it?  Do you see where my confusion is?

MR. SAVAGE:  I think I see what your concern is --

THE COURT REPORTER:  Mr. Savage, will you slow down a little bit, please?

MR. SAVAGE:  I apologize.

THE COURT REPORTER:  Thank you.

MR. SAVAGE:  The market is the market for

arranging to get calls to Haiti.

THE COURT:  What does that mean?

MR. SAVAGE:  What that means is, as I said when I was speaking too fast earlier, people and users in the U.S. make calls to Haiti.  They get picked up by their carriers -- Verizon, AT&T, Qwest, whoever.  Those entities, which themselves have no physical connections to Haiti, have a problem.

"I have undertaken to get these calls to Haiti.  How do I do it?"  And the answer is, "I pay somebody."  That market, the market of getting the calls to Haiti in response to market demand from the carriers, who have a bunch of calls to get to Haiti, that is a product market -- getting calls to Haiti.

THE COURT:  Is there a leading or well-respected appellate case that defines that type of product market in this context -- not necessarily Haiti -- but in the international telecommunications area?  I want to see how other judges have decided that.

MR. SAVAGE:  Not that I'm aware.  I'll accept an invitation, where you are inclined to have offered one, to go back and look.

Fundamentally the micro-history of this is for many, many decades international carriage of telephone service was hugely painfully regulated.  Starting in the

mid-ish to late '90s, that began to be liberalized both in the United States and overseas and through various international treaties and so on.

In the complaint and in the pleadings, where I'm quoting all these FCC things about dealing with anticompetitive activity overseas, all of that is stuff that was thrown off as the regulators were grappling with liberalizing this market.

So the reason that I do not think there is a leading antitrust case about monopolization of international trade in carried calls is that market is actually on the scale of those century-plus antitrust laws very new --

THE COURT:  Okay.

MR. SAVAGE:  -- because it was heavily regulated until the last decade or so when it became much more liberalized, because, frankly, in 1990, of course, AT&T would carry the calls from the United States to some hypothetical meet-point in the middle of the ocean, at which point some Haitian telephone company, authorized by the Government, would pick it up, and there you would be. It is only with the introduction of competition relatively recently that this has occurred, and so this may be the first antitrust case about this.

THE COURT:  Now, in terms of the geographic

market, you allege in paragraph 334 that the geographic market is the United States.

MR. SAVAGE:  Correct.

THE COURT:  Does that mean we're excluding the underwater stuff in Haiti, or what do I make of that?

MR. SAVAGE:  What I intended to convey by that, is, if you look at the top of my chart, these phone calls, these people calling Haiti, could be anywhere. They could be in Seattle.  They could be in Miami.  They could be in Los Angeles.  They could be in Chicago.  It doesn't make any difference.  Wherever they call from, it goes to their carriers.  Now, where their carriers are also doesn't make any difference, because those carriers just want to find a way to get it to Haiti.  So it is calls from the entire United States with carriers all over the United States.  That's why I said the whole United States.

THE COURT:  So obviously outside of this market, we don't care about the call from Mexico trying to call Haiti.

MR. SAVAGE:  Correct.

THE COURT:  So if I view the relevant product and geographic market as follows:  A caller in the physical United States who wants to call someone either on the Digicel mobile network in Haiti -- market one --

or a caller in the United States who wants to call anybody in Haiti --

MR. SAVAGE:  Right.

THE COURT:  -- on Digicel, on Natcom, on a landline -- market two.  Those are the two alternative relevant markets.

MR. SAVAGE:  That's correct.

THE COURT:  Where does the market power of the Digicel family come from?  How do we measure that?  That's going to be question 1.  Then question 2 is, what are they doing that's anticompetitive?

MR. SAVAGE:  Okay.  Where the market power comes from is their control -- their market power in Haiti, whether it is 75 percent of mobile or maybe that's only 60 percent of all -- whatever those numbers turn out to be.  We've alleged based on what we know.

That gives them the ability to say, "I won't terminate calls on my network at all" -- being a monopoly -- "unless you use my service to get from the United States to Haiti."  And getting from the United States to Haiti is supposed to be, if you follow the lore and all that, that's supposed to be an open, competitive market.  Our allegation is precisely that they are using the market power that they have in the local Haitian market to extend into this other market

that should be competitive.

THE COURT:  And that's why it is not clear to me that what is really going on here is that they have monopolized the market from carrying a call from the United States to Haiti; but instead, that they have a monopoly of delivering calls within Haiti.  Maybe essential facility doctrine comes in; maybe not.  But what they are doing is trying to extend that, because they interest capped in their monopoly pricing by whatever the set price is by the Government of Haiti in trying to extract additional monopoly profits in a different market; namely, the market of the competing carriers trying to get their calls from the United States into Haiti, but at least for the most part you've got to go through their bridge, their gateway, their switch, and that's the quasi-essential facility that they are monopolizing.

MR. SAVAGE:  I didn't plead essential facilities because I read the same cases you have, and that's not a great argument to make.

THE COURT:  Yes.

MR. SAVAGE:  But to the extent that they have an essential facility, it is the ability to terminate calls to their customers in Haiti.

THE COURT:  That's what I'm trying to say.  You

didn't plead essential facility.

MR. SAVAGE:  And the reason I didn't, we are not suggesting -- what we are suggesting is they're using that control, which for now we have to assume is legal. I don't have any basis to say --

THE COURT:  Right.

MR. SAVAGE:  -- that their market power in Haiti violates even Haitian law, much less U.S. antitrust law.

THE COURT:  Right.

MR. SAVAGE:  So what that would mean is, theoretically what they should say for calls to the United States is, if I understand their allegations about 23 cents properly, anybody who shows up in Haiti with a call for my network pays me 23 cents.  Then they should say, "By the way, we will carry your calls from New York or Miami down to Haiti.  Just get them to us there."  And the problem is, moving into the second part of your question, for the same 23 cents.  At least that's what they said.

In other words, what they are doing -- there is a lot of debate in the cases, as you're probably aware, as to what is the appropriate minimum cost standard for predatory pricing and bundling and non-bundling.  But under any standard you apply, a price of zero is

predatory.

What I have alleged, based on what I understand we believe to be true -- obviously discovery may prove wrong.  But what we alleged is that they are predatorily pricing or unfairly bundling or that kind of thing the termination in Haiti with the transport -- again, the arranging of the transport from the United States to Haiti.

Again, they are free in answering the counterclaims to say, "That's wrong.  It isn't that way at all," blah, blah, blah.  But our current understanding is that's what is happening, and that's the basis of our allegation.

THE COURT:  And that sounds a little bit more like a monopoly extension case, almost like a Verizon, Trinko, or Aspen Skiing type extension case than a classic monopolization case.

MR. SAVAGE:  In a way it is.  And there isn't a separate section to -- you are either monopolizing or you are attempting.  So a monopolizing extension is a species of monopolizing case.

THE COURT:  No.  No, it is not, I don't think.

Let me tell you how I understand it.

MR. SAVAGE:  All right.

THE COURT:  A classic monopolization case is,

there's a market, you're monopolizing, and you have either unlawfully or anti-competitively obtained or maintained your monopoly power in that market.

MR. SAVAGE:  Right.

THE COURT:  What I was meaning by the extension case is, there's a market.  You have got monopoly power in it.  We aren't alleging that you have unlawfully or anti-competitively obtained or maintained that monopoly power.  More power to you.  But you're now trying to use that monopoly power to gain an anticompetitive advantage in another market.

MR. SAVAGE:  That is exactly what we are alleging.  Their monopoly power -- their raw monopoly power is Haiti, which we allege, and they are extending that to what should be competitive "arrange to get calls to Haiti market."  And that's the problem.

THE COURT:  That's different from a classic monopolization case.

MR. SAVAGE:  Yes, I agree.  But to get to your point about anticompetitive conduct, I mean, Trinko/Aspen Skiing is music to my ears.  In both of those cases, the Supreme Court -- well, in Trinko they said no; in Aspen Skiing they said yes.  But on a very important point, the point most relevant here, they agreed.

What they said in Aspen Skiing and what they affirmed in Trinko was -- well, Trinko was all about did they have an obligation to provide wholesale; blah, blah, blah.  They said, "This isn't like Aspen Skiing," because in Aspen Skiing, they wouldn't even take full retail price --

THE COURT:  Right.

MR. SAVAGE:  -- and that's presumptively in effect anticompetitive if you won't take full retail price.

"Well, read our complaint.  Read everything we have been saying.  We have been paying full retail price, and they cut us off anyway."  Under both Aspen Skiing and Trinko, in the antitrust context, I would say that is presumptively anticompetitive.  That's certainly an element of antic-competitive conduct.

THE COURT:  And you are saying you paid full retail price.  You go into the stores, and you buy the SIM cards.  Whatever the price is, you pay.

MR. SAVAGE:  Not just the SIM card.  We also buy minutes, and we pay the minutes, whatever we pay.

THE COURT:  Right.

MR. SAVAGE:  Their contention is, "Oh, we didn't have a right to do that.  Oh, it was fraud.  It was terrible."  But that is their contention.  Our

contention -- our claim is we had a contract, and you violated it.  They breached the contract -- they couldn't even wait to let the SIM card -- let the minutes run out and just not renew it, you know.

There is a case that nobody cited, but I found in thinking about this.  It is Metro Call v. Qwest.  I can send the citation and e-mail it to everybody.  But in that case you had an entity that was reselling Qwest business services, very much like Roam Like You're Home situation, where the business services were available at a cheap price if you bought enough of them.  So this entity was buying the business services that require a minimum number of lines and then reselling them to smaller entities.

Qwest didn't like that, but they didn't cut them off.  They went to the regulator and got approval to change the terms so they couldn't do it anymore.  And that's a key distinction here, which is to say that if Digicel hadn't panicked, hadn't jumped -- they could have simply said, "We are going to change the terms under which we are offering our service, and we will include it in some of these contracts saying you can't do this, and it can't be done."

THE COURT:  I remember, and this is before you joined the case, but one of the conversations I had with

Mr. Vaughan and defense counsel was:  Is there anything in the contract, whether it be in the packaging of the SIM cards or in the sale of the minutes, that somehow restrict the ability to resell or reuse in certain ways?  I think the early answer was, "I don't know.  If there is, we will replead it."  I gave them leave to replead, and that's not the direction they moved in.

MR. SAVAGE:  Correct.  Our affirmative allegation is there are no such restrictions.

THE COURT:  Right.  And your position is that, in the absence of those restrictions, they are engaged in anticompetitive conduct by not letting UPM use the services that you bought in order to extend their monopoly power in Haiti --

MR. SAVAGE:  Correct.

THE COURT:  -- as alleged.

MR. SAVAGE:  Correct.

I would cite Aspen Skiing and Trinko as to the strength of that.

But wait, there is more.  As you see in the complaint, there are a number of things that they did that I think for the pleading stage there are sufficient evidence of anticompetitive conduct.  There's that.  There's the failure to register at the FCC, which is a bigger deal than it sounds.

THE COURT:  Yeah.  I'm not catching why that is a big deal.

MR. SAVAGE:  It is a big deal because the FCC confronted with a dominant carrier, which they are under the FCC dominant carrier rules.  A, it starts paying more attention; B, it requires more reports; and C, when they file, other interested parties have an opportunity to use the regulatory process to protect themselves.

THE COURT:  That's in part what your Communications Act claims would be?

MR. SAVAGE:  Correct.  Correct.

THE COURT:  But it is also one of your alternative methods of anticompetitive activity.  And when I saw that, it kind of looked to me like the negative image of a Noerr-Pennington problem.  If what you were complaining about is what they said to the FCC --

MR. SAVAGE:  Right.

THE COURT:  -- we are facing Noerr-Pennington.

MR. SAVAGE:  Right.

THE COURT:  But what you're saying is what they didn't say.

MR. SAVAGE:  Correct.  Our contention is they have an obligation under Section 214 to take certain steps that, had they taken them, would have allowed us to

protect ourselves.

THE COURT: Are you aware of any antitrust case where it's found to be anticompetitive conduct that the antitrust defendant didn't go get certain governmental approvals? I'm not.

MR. SAVAGE: No. Of course, in any antitrust case, I kind of flip through every one of them -- as an aside, at the same time that you were evidently working on the American Airlines case, I was deeply involved in an FTC anti-monopolization case against my then client who had acquired an 88 percent market share in some market. So I know a lot of antitrust cases, but some are fairly far back.

THE COURT: I joined the Antitrust Division in September of 1981. And in December of '81, three months later, Bill Baxter announced the settlement of the AT&T case, which had been consuming a lot of resources, to which I said, "Thank goodness; I'm not going to get assigned to that case."

MR. SAVAGE: You missed a lot of fun.

THE COURT: By the way, I did see, although I lost my copy. At some point somebody gave me a copy of the transcript where it was either AT&T or the Government -- it might have been the Government -- moves the admission of Exhibits 512 through 37,817. AT&T's

lawyer says, "No objection," and Judge Greene says, "Received."  This is pre-computers.

MR. SAVAGE:  There was an enormous amount of work that went into that.  I joined Bell Atlantic in 1985.  Then e-mail had the administration of it, but that's a little different.

But back to where we are now.  For better or worse, I believe it to be true that we may be breaking some new antitrust ground here precisely because -- you know, it has been the AT&T and GTE cases since there have been plain-old antitrust claims in the telecom business.  There is a lot of this stuff that Trinko threw away.

But in any event, the bottom line, to summarize, and I know --

THE COURT:  I want to get back to Mr. Vaughan and give him an opportunity.

MR. SAVAGE:  The market is this market for arranging to get calls to Haiti.  Our allegation is if the destination of those calls is Digicel Haiti customers, they monopolize.  If the destination is any call anywhere in Haiti, their market share is sufficiently great that it still counts as monopolization, although they don't really have one.

THE COURT:  At least for purposes of surviving a motion for summary judgment?

MR. SAVAGE:  Exactly.  Obviously the facts may turn out to be different than they've alleged or we've alleged.  We will sort that out, but we are doing our best.

THE COURT:  Understood.

MR. SAVAGE:  Do you want to hear at all about the Communications Act stuff now or at all?

THE COURT:  Take about two or three minutes on that, please.

MR. SAVAGE:  Actually I have another handout. That's basically just a question of what the statutory definitions say.  This is just for convenience, although I will admit that I have done some bolding and underlining.

The key question is, is Digicel Haiti a carrier subject to Section 201 and 202 and all of that?  The short answer is yes.  The reason is, again, based on their own allegations.  I direct your attention to the middle definition on the page, which is (53) of the definitions section.

"Telecommunications service" means "offering telecommunications for a fee directly to the public, or class of users to be effectively available directly to the public, regardless of the facilities used."

What that last part means is, if you are simply

reselling the physical capacity of third parties, you are a telecommunication carrier subject to the Telecommunications Act, just as much as you own every wire and every cell tower. It doesn't matter what technology you use. What matters is what you offer to the public.

When you read their allegations, their third-try allegations explaining who does what, what they are saying is Digicel Haiti gets paid for the calls going from New York to Haiti. And through some cost allocation magic inside the corporate family, Digicel USA gets a little money. They don't allege that Digicel USA gets a payday, and they certainly don't allege that Digicel USA is out there offering this service to the public.

What it sounds like they are alleging is Digicel USA is on the side providing this to Digicel Haiti, and that's fine. There is nothing illegal about any of that. That's fine. But the plain consequence of simply applying the statutory language is the carrier here is Digicel Haiti and not -- in addition, also they're the carrier, but Digicel Haiti certainly.

THE COURT: Understood.

MR. SAVAGE: Therefore, having done that, they are then subject to 201 and 202, which we say violates.

The one thing that I want to say for both of

them is Roam Like You're Home.  You can have a lot of discussion about whether -- and I'm sure we will as this case proceeds -- whether interfering with the use of the local Haitian cellular capacity in Haiti, when we got the calls there through the Internet, that's complicated.  We think we have a case, but that's complicated.

Roam Like You're Home is a service being offered to people physically in the United States.  It is provided by virtue of devices that connect to United States telephone networks through arrangements that Digicel Haiti has made with United States carriers.

So it is like -- you know, if I were in settlement mode, I would say, "Fine, you can have the Internet stuff.  But how dare you say that you're not subject to United States anti-trust law and United States telecommunications law when someone in the United States is trying to use a service that you have offered to be used in the United States and then contrary to the terms of that service you cut it off?"  That's nuts.  That's both a Communications Act violation and an integral part of an antitrust violation.  So that's where they really tie together the Roam Like You're Home.

Then you go to this one, right, this middle bar, Roam Like You're Home is this along here, right, where it says, "UPM used fully paid retail Roam Like

You're Home services to get the calls to Haiti." That's all in the United States --

THE COURT: Right.

MR. SAVAGE: -- refusing to honor a retail contract: See Trinko and Aspen Skiing. So if don't you have more questions, I'll stop.

THE COURT: I do want to pass on one thing to you, probably the least important matter of everything here, but I do agree with Digicel's point that the first and second affirmative defenses aren't really affirmative defenses, a failure to state a claim and standing. It is not going to make a bit of difference, and I'll explain why in a moment.

As I understand, and there is case law on this, as I understand the difference between an affirmative defense and a negative defense, there is a difference. A negative defense can be either factual or legal. A negative defense that is factual is, "You can't prove what you've alleged." That's not an affirmative defense. That's a factual negative defense. A legal negative defense is, "Fine. Even if you could prove all that stuff, it doesn't state a claim," or "You don't have standing," or stuff like that.

An affirmative defense is, No. 1, not a negative defense. And 2, it is where the person pleading

the affirmative defense affirmatively adds an additional factual allegation, which, if true, would then extinguish liability.  That's how I see it.

Am I wrong?

MR. SAVAGE:  Sounds right to me, Your Honor.

THE COURT:  Therefore, I am going to throw out, but it is not going to make a bit of difference as an affirmative defense failure to state a claim and probably even standing, but that doesn't in any way deprive you of your abilities to argue here or on appeal that the complaint doesn't state a claim, and they don't have standing, because those don't have to be pled as affirmative defenses.

That said, I'm done.

MR. SAVAGE:  Your Honor, that's fine.  In fairness, when you are pleading those defenses, you put in what you think you need to put in.

THE COURT:  I know.  You're not going to be informing that many other cases, I assume.  But usually in this district, when I tell people that failure to state a claim is not an affirmative defense, don't do it in the next case, and usually they don't.

MR. SAVAGE:  I promise you I won't.

THE COURT:  Mr. Vaughan, I am mostly interested in your responses on the antitrust issues, but I will

also give you an opportunity to respond on the
Communications Act arguments.

MR. VAUGHAN:  I'll start with the
Communications Act arguments, just because I think that's
going to be quick, and I think you hit the nail on the
head.  But it bears noting that Mr. Savage said twice,
with respect to the Telecommunications Act issue and also
with respect to his arguments on the antitrust issues,
they had a contract.  They claim they had a contract with
Digicel Haiti with respect to the acquisition of the SIM
cards and the minutes that they believed they were
entitled to.

Digicel Haiti breached that arrangement, jumped
the gun; "panicked," he said.  If that is the case, then
I think he has argued to you that that doesn't belong
here, and it is certainly not an antitrust issue.  If he
believes that there was a contract with Digicel Haiti,
where they purchased services and goods, were denied
those services and goods, that's a breach of contract
case in Haiti.

It is also funny, with respect to the
telecommunications reference, 47 U.S.C. Section 153.22,
the middle paragraph, he said, "Telecommunication
service.  The term 'telecom service' means the offering
of telecommunications for a fee directly to the public or

to such classes of users as to be effectively available directly to the public."  Everything else is bolded except that.  There is no allegation -- zero -- that Digicel USA provided any services directly to the public.

Now, let's talk about Digicel Haiti.  He has argued that, with reference to the chart, that Digicel Haiti essentially contracted with or made available facilities to bring calls from the United States to Haiti with the top line being the retail customers, i.e., the public; the next line being the retail carriers, the AT&Ts, the Verizons, the Sprints of the world.  Then he alleges -- then he alleges that Digicel USA falls somewhere in that wholesale carrier section -- not Digicel Haiti -- Digicel USA falls somewhere in there.

I disagree with that.  What I'm saying is the inconsistency with those allegations is obvious.  It is patent.  There is no offering to the public, either Digicel Haiti or Digicel USA here in the U.S., and that's just patently wrong.  And it is also inconsistent with their own pleadings.

Now let's talk about it with respect to their antitrust allegations and the arguments that were made, because the reality is, Judge, whereas Mr. Savage wants to put Digicel Haiti in the wholesale carrier section, in his antitrust argument, I was going to stand up, and I

was going to argue that that is also patently false.  And there is zero basis to make that allegation, because let's take a step back and remember how Digicel USA came into this entire case.

We initially alleged that Digicel Haiti, through a series of relationships with various wholesale providers, provided the opportunity to terminate minutes in Haiti.  Mr. Savage came in with his decades of telecom experience and said, "Ha, ha, ha.  They've pled themselves into quite a pickle," because Digicel Haiti is not allowed to practice any telecom here in the U.S.

So we had to go back and say, "Look, when we said 'Digicel,' it was loose," because what Digicel Haiti does is it contracts with a local entity to provide the switching services; then their other capacitors to do the transportations.  Really what Digicel Haiti is selling is access to the telecom network in Haiti.  That's what we're selling -- to terminate international phone calls.  But we had to go through that entire thing to explain the process.

Now he comes in, and he has said, "So Digicel USA competes with wholesalers."  Where does that come from, Judge?  It certainly is nowhere in our pleadings, because that's not correct.  In fact, I thought I was going to predict what you were going to say, which was,

"Mr. Vaughan, that's what he alleges, so we're going to have to live with it."

When he was talking about the FCC issue, do you remember what he said?  "Digicel USA is somewhere off to the side.  All they do is they provide switching services.  They don't get paid anything.  It is a disgrace."

Both sides of their mouth, they're making these allegations.  How is Digicel USA or Digicel Haiti supposed to respond to any these allegations.  You're seeing two different things in the exact same complaint. Digicel USA is forward facing.  It is to the public. Digicel USA is competing as a wholesaler, and it is trying to obtain retail clients -- the Sprints of the world.  Digicel USA is off to the side, and it's not getting paid, and it is predatory, because it is zero. Which one is it?  Even their pleading in the alternative is a pleading with antitrust, a pleading in breach of contract, and a pleading in a FCC violation.  How are we supposed to respond to that?

Then, Judge, when we are talking about the wholesale carriers, Mr. Savage attempts to say that the market -- and I'm mindful of your hard stop, so forgive me if the transitions are not as smooth as I planned them -- but the market is a market that is for the

termination -- if it is for the transportation of calls to Haiti, and Digicel USA is competing with the wholesale carriers of the world to get that business.

What is the basis for that allegation, and are they obligated to plead more than just the conclusory parroting of the language of the statute in order to meet the basic allegations of the antitrust claim?  They have created a market of the foregone.  There is nothing he can plead in this case -- nothing -- that pleads that Digicel USA is out trying to secure wholesale purchasers or clients.  It is zero.

What we have alleged is that Digicel Haiti sells access to terminate international phone calls on the Digicel Haiti network.  What we have said is, in order to access that network, you must pay the freight, and you must go through this turnstile, this gate.  It is the only way we know who you are, how long you are there, and what we are supposed to be paid.  It is the only way we know which company is sending the minutes here and what relationship, what contract governs the exchange -- minutes, access, and payment.

What we have said is they have jumped that turnstile.  They have completely bypassed that turnstile, and in so doing, they have accessed the telecom network for free.

What Mr. Savage does, he goes, "Uh, uh, uh.  We have not done that.  We are paying you.  We have paid you the nine cents for the SIM cards minutes, and we paid you for the SIM cards."

But what he wants us to forget is, if that were the case, if they had bought a SIM, if they were in Haiti, if they had made a local call, no issue.  Frankly, if they had bought the SIM card, if they had taken that SIM card and sold it to a friend, and somehow that friend decided that they were go to pay twelve cents instead of the nine cents that they would get from Digicel, maybe we would be having a different conversation.  We certainly probably wouldn't be here.

What they have done is, they have taken that SIM card, they have bought those minutes for nine cents, based upon what they are saying, and they have taken your phone call, they have taken Johnny Oregon's phone call, and they have put it on top of it.  They have now brought those two phones, snuck them onto the network and said, "Here is your nine cents."

Guess what?  One, that nine cents might cover the local call that is being made.  It certainly does not begin to cover the minimum 23 cents for the international call that you are sneaking on.  No, it is not an international call.  Why?  Because our gateway/our probe

in Haiti is where the call initiates it.  That makes it local.

Two problems:  First, they concede that the digital information from that SIM card comes from Oregon. It is resident in a SIM bank in Mr. Tran's office down the street, No. 1.

No. 2, it is undisputable that during that transaction there is an individual sitting on their couch in Oregon who is having a live conversation with an individual sitting on her couch in Haiti.  If that's not international, I don't know what is.

Whether you want to call it digital packaging, as he said, whether you want to say it is fiberoptic through Tanzania, the bottom line is we have set a requirement that if you are going to terminate an international call on our network, you must pay this freight.  That's what we charge for using our facility. If you don't like it, go use Natcom.  No problem with that.

He has determined that somehow charging for one's facility, charging to use one's network that you have built, that you have expended the cap. ex. for, that you maintain by yourself is antitrust.  It is anticompetitive.

Then he has the gall to mention -- it would be

nice if I would be able to remember the name of the cases -- Aspen and Trinko.  Well, what do Aspen and Trinko tell us?  Even if one has a monopoly position, that monopoly position must be acquired in violation of the antitrust laws and so maintained.

THE COURT:  No, it isn't.  That not what those cases say.  What Aspen says, even if you have a monopoly position, even perfectly well-obtained and legally well-obtained, if you are using it to extract super-competitive prices or charges in another market, then you have violated Section 2.

MR. VAUGHAN:  I don't disagree.  I thought Aspen -- I'm about to look for it -- it also said, just by virtue of having a monopoly position, that doesn't mean that you have committed an antitrust violation.  You may have a monopoly position that was gained through competitive --

THE COURT:  Right.  But you still can't abuse it.

MR. VAUGHAN:  That's correct.

THE COURT:  That means you can't get -- putting aside the "you" concept -- and that's what we are talking about -- you can't use it to gain a competitive advantage in another market.  The Supreme Court in Trinko did confine an Aspen Skiing theory and said that is like the

outer limits of where this theory will go.

MR. VAUGHAN:  You scared me for a second.

THE COURT:  I do want to give Mr. Savage a brief opportunity to respond to your point about the Communications Act argument and your pointing out the language "directed to the public."

Go ahead.  Last comment, Mr. Vaughan.

MR. VAUGHAN:  The last comment:  I would like to remind the Court that this is a case about theft and fraud.  We have had dalliances into the FCC.  We are now fully exploring antitrust law.  This is a case about UPM accessing the Digicel Haiti network to terminate international phone calls.

THE COURT:  I understand, because it took a couple of iterations of clarifying the complaint to state what I think is a well-stated -- not well-proven necessarily -- but a well-stated fraud claim.  It may take another iteration or so to see if we have a well-stated antitrust claim.  But there may very well be both that go to a jury.

I so want to hear from Mr. Savage on his Communications Act response to "directly to the public," and then I have got an Aspen Skiing question for you.

MR. SAVAGE:  So the answer is in footnote 28 of my response to his pleading.  It is on page 30 of 34 of

the filing.  The law is entirely clear that the subclasses of users as to "effectively available to the public," that covers wholesalers.  If you sell to a wholesaler that then eventually sells to the public, you are there.  So that's the answer to that.

THE COURT:  On Aspen Skiing, it seems to me where we left off is that you are asserting an Aspen Skiing type theory, right?

MR. SAVAGE:  Yes.  Well, I'm asserting the kind of theory that Trinko says survives Trinko.

THE COURT:  Right.  And I get that.  But I don't see that as really what's being pled.

MR. SAVAGE:  Okay.  So what is being pled within that theory is this:  Trinko says if their only obligation -- let me back up a second.

The little market, the market for fighting for the right to get paid to get calls to Haiti, that's the market.  The question then is:  What is it that they have done bad to be anticompetitive in that market?

Where I was finishing up before, and I'll come back to is, the things that we allege in those five paragraphs in the counterclaims, but I was directing your attention, in light of Aspen Skiing and Trinko, is the refusal to permit the resale of Roam Like You're Home in the United States when we pay full retail price for that.

What that amounts to is saying, "Even though I'm offering this product in the marketplace for my own benefit" -- therefore under the Trinko and Aspen Skiing language, presumably I'm making a perfectly good profit on it -- "I would rather give up that profit because I would make even more profit by maintaining my monopoly." That is the essence of that claim.

I don't think it is pled in the complaint, but our understanding of the facts is if you look at the minutes we sent to them before they shut us off, a vast majority of the minutes are under the Roam Like You're Home arrangement rather than the other. And so the bulk of our case is there.

THE COURT:  Thank you.

MR. SAVAGE:  Now, in preparing for this argument, I put together a chart that just lists the elements of an antitrust claim, what we say, and a bunch of pleading references.

THE COURT:  You did a lot of that in your brief.  Is it different than what's in your brief?

MR. SAVAGE:  It is even more thorough.  The point is, if you would be interested, I can submit it and submit it to the parties.

THE COURT:  That's fine.  Go ahead and file it as a supplemental post-hearing memorandum.

MR. SAVAGE:  I will do that.

THE COURT:  I'm going to take the pending --
and if you want to respond, you may.

MR. VAUGHAN:  I appreciate that.

THE COURT:  I'm going to take the pending
motion under advisement.  I will get you a written
opinion when we can.  That's that for that issue.

I do note that you have the rest of this year
to complete your discovery.  Dispositive motions are due
middle of December of this year.  This case has been
going on for quite a while, so I do encourage you to
complete your discovery between now and then.  I don't
think discovery really needs to wait much for my current
opinion on this motion.

Basically I think Defendant UPM wants to
understand exactly how plaintiff operates, and plaintiff
probably needs to understand how UPM operates.  Then at
some point you need to get everything to experts and
exchange expert reports.

Did I give you deadlines for exchange of expert
discovery?

MR. VAUGHAN:  I don't remember off the top of
my head, Judge.  I don't think so.  I do think -- well, I
don't think; I know.  In an effort to be judicious, we
have been waiting.  So we may come back to you to ask for

a brief -- it depends -- I am not sure.  We will take a look at it again, but we haven't been doing discovery.

THE COURT:  Here is what I would like you to do:  Take a look at what you need to learn from each other.  Figure out a good, logical way to do it, and that probably includes the close of fact discovery, the exchange of reports or rebuttal reports, and the close of expert discovery followed by dispositive motions.

If you need one more extension, fine, I will give you one more extension, if you can all agree upon the timing for that.  But I don't expect to give you any more extensions after that.  We have got to bring this to a resolution.  The case has been going on since 2015.  I was hopeful that we can get a trial date in 2019.  I'm now less hopeful than I was.  But this case will either be tried, if you don't resolve it yourselves, in 2019 or 2020 at the latest.  Let's get this resolved.

Speaking of which, by the way, you really should spend some time, and maybe you already have, and I don't want to get into the details.  See if you can resolve this among yourselves.

I am not unwilling to make new law.  Last time I did it was 1984, and it turned out kind of well.  But if one side or the other really needs law here, knowing that the losing side is not going to like it, then we

will see what the Ninth Circuit has to say. Then if the losing side there doesn't like it, they will take it to the Supreme Court, and these are interesting enough and cutting enough issues that even without a circuit split, you might get something from the Supreme Court, or you might wait to see if there is a circuit split in some other context.

These are fascinating issues. Do you really want to spend, or do your clients really want to spend all the time and all the money to litigate all of this? I'm going to deal with a really interesting motion for summary judgment. If there is a fact dispute, it is going to be a really interesting trial. How you're going to explain all of this to the jury, I look forward to watching.

MR. VAUGHAN: Charts.

THE COURT: That's fine. It will be fascinating. Don't you dare waive jury. Even if you do, I might call them in as an advisory jury.

But hasn't this dispute been going on long enough? Have both sides really thoroughly spoken with their clients and then with each other to see if there is some way to resolve it? That's a rhetorical question. Don't answer me, not now anyway.

If you do resolve it before I get out my

opinion, please let my courtroom deputy know, and we will stop working on this. Otherwise, I will continue to work on it, you will hear from us, and I will take it under advisement.

Good seeing you all.

COUNSEL:  Thank you, Your Honor.

(Recess.)

--oOo--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

/s/ Dennis W. Apodaca                        January 27, 2018
DENNIS W. APODACA, RDR, RMR, FCRR, CRR              DATE
Official Court Reporter

COUNSEL: [1] 60/5
MR. HANSEN: [1] 3/12
MR. SAVAGE: [64]
MR. VAUGHAN: [46] 3/8 4/10 4/13 4/19
4/21 5/13 5/17 8/13 8/16 8/22 9/1 9/7 9/12
9/17 9/21 9/24 10/3 10/9 10/12 11/11
11/16 12/4 12/12 12/16 12/23 13/3 13/7
13/25 15/2 15/11 15/14 15/18 15/24 16/10
16/13 16/16 17/12 19/13 46/2 53/11 53/19
54/1 54/7 57/3 57/21 59/15
MS. DUBAY: [1] 3/18
THE CLERK: [1] 3/3
THE COURT REPORTER: [2] 26/20
26/23
THE COURT: [110]

**'**

'81 [1] 39/15
'90s [1] 28/1
'Digicel,' [1] 48/13
'telecom [1] 46/24

**-**

--oOo [1] 61/3

**/**

/s [1] 61/10

**1**

1000 [1] 2/22
121 [1] 2/12
1211 [1] 2/6
15 [4] 15/15 15/17 15/18 18/17
15-185-SI [1] 3/5
153.22 [1] 46/22
17 [1] 16/9
18 [2] 1/6 3/1
1850 [1] 2/12
1900 [1] 2/6
1919 [1] 2/9
1981 [1] 39/15
1984 [1] 58/23
1985 [1] 40/5
1990 [1] 28/17

**2**

20006 [1] 2/9
2001 [1] 2/3
201 [2] 41/16 42/24
2015 [1] 58/13
2018 [3] 1/6 3/1 61/10
2019 [2] 58/14 58/16
202 [2] 41/16 42/24
2020 [1] 58/17
21 [3] 15/13 15/14 15/18
214 [1] 38/24
23 [5] 23/3 32/14 32/15 32/19 51/23
25 [1] 7/11
25 percent [1] 12/16
27 [1] 61/10
28 [1] 54/24
2:50 [1] 9/5

**3**

30 [1] 54/25
301 [1] 2/22
326-8182 [1] 2/23
332 [3] 6/5 10/9 26/5
333 [1] 10/9
33394 [1] 2/4
334 [1] 29/1

34 [1] 54/25
37,817 [1] 39/25
3:15-cv-00185-SI [1] 1/5

**4**

47 [1] 46/22

**5**

503 [1] 2/23
512 [1] 39/25
53 [1] 41/19

**6**

60 [1] 19/8
60 percent [1] 30/15

**7**

70 percent [1] 19/9
75 percent [7] 6/10 12/10 12/12 12/15
 21/25 22/2 30/14

**8**

800 [1] 2/9
8182 [1] 2/23
85 [1] 22/1
88 percent [1] 39/11

**9**

97201 [1] 2/6
97204 [2] 2/12 2/22
98 percent [1] 9/14

**A**

abilities [1] 45/10
ability [4] 7/14 30/17 31/23 37/4
able [1] 53/1
about [44] 5/10 5/16 5/16 5/25 6/10 8/3
 8/5 8/6 8/9 9/5 11/6 11/7 12/14 12/16 13/5
 15/12 15/13 19/18 23/9 24/9 25/7 25/24
 28/5 28/10 28/24 29/19 32/13 34/20 35/2
 36/6 38/16 41/6 41/8 42/17 43/2 47/5
 47/21 49/3 49/21 53/13 53/23 54/4 54/9
 54/11
above [1] 61/7
above-entitled [1] 61/7
absence [1] 37/11
absolutely [2] 14/4 14/6
abuse [1] 53/18
accept [1] 27/20
access [5] 13/1 48/17 50/13 50/15 50/21
accessed [1] 50/24
accessing [1] 54/12
accommodating [1] 3/21
acquired [2] 39/11 53/4
acquisition [1] 46/10
across [1] 23/24
Act [9] 38/10 41/7 42/3 43/20 46/2 46/4
 46/7 54/5 54/22
acting [1] 11/1
actions [2] 17/2 23/5
activity [2] 28/6 38/13
actual [1] 23/19
actually [4] 12/11 15/9 28/12 41/10
addition [1] 42/20
additional [2] 31/11 45/1
adds [1] 45/1
adequate [1] 19/1
adequately [3] 13/22 13/22 13/23
administration [1] 40/5
admission [1] 39/25
admit [1] 41/13
advantage [2] 34/10 53/23
advisement [2] 57/6 60/4

advisory [1] 59/19
affirmative [11] 4/1 37/8 44/10 44/10
 44/15 44/19 44/24 45/1 45/8 45/13 45/21
affirmatively [1] 45/1
affirmed [1] 35/2
after [1] 58/12
afternoon [1] 3/9
again [6] 14/3 18/17 33/6 33/9 41/17 58/2
against [1] 39/10
agree [4] 11/17 34/19 44/9 58/10
agreed [2] 9/14 34/25
ahead [2] 54/7 56/24
Airlines [2] 5/15 39/9
airwave [1] 6/17
al [2] 1/8 3/6
all [49] 3/21 4/2 7/20 9/1 10/23 10/25 12/7
 14/20 16/6 16/18 16/24 17/3 17/8 17/19
 17/25 18/7 18/12 18/14 18/20 19/2 20/6
 20/11 20/21 21/18 21/18 22/8 22/12 25/12
 28/5 28/6 29/15 30/15 30/18 30/22 33/11
 33/24 35/2 41/6 41/7 41/16 44/2 44/21
 49/5 58/10 59/10 59/10 59/10 59/14 60/5
All right [1] 25/12
allegation [14] 7/8 7/13 14/15 15/4 20/3
 22/8 30/23 33/13 37/9 40/18 45/2 47/3
 48/2 50/4
allegations [12] 13/14 19/1 19/9 32/13
 41/18 42/7 42/8 47/16 47/22 49/9 49/10
 50/7
allege [11] 6/5 13/14 14/5 20/10 25/14
 26/5 29/1 34/14 42/12 42/13 55/21
alleged [23] 5/4 5/6 6/9 7/3 7/22 10/18
 10/20 12/8 13/22 13/23 13/23 16/3 16/5
 18/19 30/16 33/2 33/4 37/16 41/2 41/3
 44/19 48/5 50/12
allegedly [2] 7/2 8/3
alleges [10] 6/2 10/8 13/18 14/21 14/22
 16/15 16/18 47/12 47/12 49/1
alleging [3] 34/7 34/13 42/15
allocation [1] 42/10
allowed [2] 38/25 48/11
almost [1] 33/15
along [2] 6/16 43/24
already [1] 58/19
also [17] 4/18 16/3 16/5 18/5 18/19 21/11
 21/12 29/13 35/20 38/12 42/20 46/1 46/7
 46/21 47/19 48/1 53/13
alternative [4] 6/6 30/5 38/13 49/17
although [6] 4/5 11/13 14/20 39/21 40/23
 41/12
am [10] 4/25 5/12 8/8 8/11 23/7 45/4 45/6
 45/24 58/1 58/22
American [2] 5/15 39/9
American Airlines [1] 5/15
among [1] 58/21
amount [3] 22/5 26/1 40/3
amounting [1] 17/2
amounts [1] 56/1
analysis [1] 14/3
Angeles [1] 29/10
announced [1] 39/16
another [7] 7/21 14/13 34/11 41/10 53/10
 53/24 54/18
answer [12] 8/17 8/20 9/3 9/10 12/25 13/8
 27/10 37/5 41/17 54/24 55/5 59/24
answered [2] 18/17 19/10
answering [1] 33/9
answers [1] 22/1
anti [4] 34/2 34/8 39/10 43/15
anti-competitively [2] 34/2 34/8
anti-monopolization [1] 39/10
anti-trust [1] 43/15
antic [1] 35/16

**A**

**antic-competitive [1]** 35/16
**anticompetitive [18]** 5/4 5/6 8/4 13/24 18/11 23/5 28/6 30/11 34/10 34/20 35/9 35/15 37/12 37/23 38/13 39/3 52/24 55/19
**antitrust [36]** 5/22 6/3 11/15 19/9 23/9 25/4 25/13 25/16 25/17 25/25 28/10 28/12 28/24 32/8 35/14 39/2 39/4 39/6 39/12 39/14 40/9 40/11 43/21 45/25 46/8 46/16 47/22 47/25 49/18 50/7 52/23 53/5 53/15 54/11 54/19 56/17
**any [16]** 6/24 13/1 29/11 29/13 32/5 32/25 39/2 39/6 40/13 40/20 42/18 45/9 47/4 48/11 49/10 58/11
**anybody [3]** 24/5 30/2 32/14
**anymore [1]** 36/17
**anything [4]** 8/6 9/5 37/1 49/6
**anyway [2]** 35/13 59/24
**anywhere [2]** 29/8 40/21
**Apodaca [3]** 2/21 61/10 61/11
**apologize [1]** 26/23
**appeal [1]** 45/10
**APPEARANCES [1]** 2/1
**appearing [1]** 3/10
**appellate [1]** 27/16
**apply [2]** 5/21 32/25
**applying [1]** 42/19
**appreciate [4]** 5/10 19/13 23/6 57/4
**appropriate [1]** 32/23
**approval [1]** 36/16
**approvals [1]** 39/5
**approximately [1]** 12/16
**are [82]**
**area [1]** 27/19
**aren't [2]** 34/7 44/10
**arguably [1]** 5/8
**argue [2]** 45/10 48/1
**argued [2]** 46/15 47/6
**argument [7]** 3/5 4/23 5/10 31/20 47/25 54/5 56/16
**arguments [4]** 46/2 46/4 46/8 47/22
**arrange [1]** 34/15
**arrangement [2]** 46/13 56/12
**arrangements [1]** 43/10
**arranging [3]** 27/1 33/7 40/18
**arrows [1]** 20/12
**articulate [1]** 10/1
**articulated [2]** 9/15 17/14
**as [51]** 4/9 4/12 4/17 5/11 5/23 6/2 6/5 6/12 6/23 6/23 11/1 13/3 14/7 15/16 15/16 15/17 17/2 17/12 17/25 18/8 20/10 20/10 22/3 22/14 25/25 27/3 28/7 29/23 32/22 32/23 37/16 37/18 37/20 39/7 40/22 42/3 42/3 43/2 44/14 44/15 45/7 45/12 47/1 49/13 49/24 49/24 52/13 55/2 55/12 56/25 59/19
**aside [3]** 25/18 39/8 53/22
**ask [6]** 4/4 4/6 23/7 25/12 25/24 57/25
**asked [3]** 10/5 13/9 25/14
**Aspen [19]** 33/16 34/21 34/23 35/1 35/4 35/5 35/13 37/18 44/5 53/2 53/2 53/7 53/13 53/25 54/23 55/6 55/7 55/23 56/3
**asserted [1]** 15/5
**asserting [2]** 55/7 55/9
**assertion [1]** 17/1
**assess [1]** 7/23
**assigned [1]** 39/19
**assume [2]** 32/4 45/19
**Atlantic [1]** 40/4
**attempted [2]** 9/22 9/25
**attempting [3]** 20/24 21/1 33/20
**attempts [1]** 49/22

**attention [4]** 16/25 38/6 41/18 55/23
**authorized [5]** 16/24 16/18 16/24 19/2 28/20
**authorizing [1]** 14/8
**available [5]** 36/10 41/23 47/1 47/7 55/2
**Avenue [2]** 2/6 2/22
**aware [3]** 27/20 32/22 39/2
**Awesome [1]** 23/3

**B**

**back [16]** 3/12 3/18 3/20 9/21 17/21 17/21 23/1 27/22 39/13 40/7 40/15 48/3 48/12 55/15 55/21 57/25
**bad [1]** 55/19
**bank [1]** 52/5
**bar [1]** 43/24
**based [6]** 5/13 14/19 30/16 33/2 41/17 51/16
**basic [2]** 11/20 50/7
**basically [4]** 6/25 25/19 41/11 57/15
**basis [9]** 14/4 14/5 14/7 14/7 15/5 32/5 33/12 48/2 50/4
**Baxter [1]** 39/16
**be [64]**
**bears [1]** 46/6
**became [1]** 28/16
**because [35]** 3/22 9/10 9/18 10/17 11/3 11/23 12/6 14/3 14/7 16/25 17/15 18/6 20/15 22/12 22/16 24/9 28/15 28/17 29/13 31/8 31/19 35/4 38/3 40/9 45/12 46/4 47/23 48/2 48/10 48/13 48/24 49/16 51/25 54/14 56/5
**becomes [1]** 6/20
**been [16]** 6/8 10/22 11/22 12/17 15/4 35/12 35/12 39/17 39/24 40/10 40/11 57/10 57/25 58/2 58/13 59/20
**before [9]** 1/14 8/16 18/19 19/25 26/3 36/24 55/20 56/10 59/25
**began [1]** 28/1
**begin [2]** 4/23 51/23
**beginning [2]** 3/7 16/14
**being [11]** 4/14 5/8 11/18 15/25 30/18 43/7 47/9 47/10 51/22 55/12 55/13
**belief [1]** 21/13
**believe [3]** 10/16 33/3 40/8
**believed [1]** 46/11
**believes [1]** 46/17
**Bell [1]** 40/4
**belong [1]** 46/15
**below [1]** 61/5
**benefit [1]** 56/3
**best [2]** 4/11 41/4
**betray [1]** 22/15
**better [3]** 16/8 16/12 40/7
**between [9]** 4/7 5/11 11/25 18/3 18/10 22/5 24/19 44/15 57/12
**big [3]** 19/7 38/2 38/3
**bigger [1]** 37/25
**Bill [1]** 39/16
**bit [5]** 10/21 26/22 33/14 44/12 45/7
**blah [6]** 33/11 33/11 33/11 35/3 35/3 35/4
**block [1]** 7/6
**boat [2]** 6/15 7/1
**bold [1]** 21/18
**bolded [1]** 47/2
**bolding [2]** 17/24 41/13
**both [12]** 4/5 5/1 8/5 25/19 28/1 34/21 35/13 42/25 43/20 49/8 54/20 59/21
**bottom [2]** 40/13 52/14
**bought [5]** 36/11 37/13 51/6 51/8 51/15
**bound [6]** 16/6 18/20 21/7 21/19 22/8 24/16

**breach [2]** 46/19 49/18
**breached [2]** 36/2 46/13
**breaking [1]** 40/8
**bridge [8]** 6/22 6/25 7/1 7/3 7/6 7/19 7/20 31/15
**brief [4]** 54/4 56/20 56/20 58/1
**bring [2]** 47/8 58/12
**broader [1]** 10/21
**brought [1]** 51/18
**build [1]** 11/4
**built [1]** 52/22
**bulk [1]** 56/12
**bunch [2]** 27/13 56/17
**bundling [3]** 32/24 32/24 33/5
**business [6]** 4/17 36/9 36/10 36/12 40/11 50/3
**buy [6]** 22/22 24/6 24/6 25/1 35/18 35/21
**buyers [4]** 22/18 22/19 22/22 22/23
**buying [3]** 22/18 22/23 36/12
**bypass [1]** 13/16
**bypassed [1]** 50/23

**C**

**C.L [1]** 2/2
**cable [3]** 24/2 24/19 24/24
**cables [6]** 23/21 23/22 24/1 24/5 24/6 24/23
**call [39]** 3/22 6/12 6/15 7/10 7/15 8/8 12/20 12/22 12/23 13/6 13/7 14/12 20/13 20/17 20/22 20/23 21/21 23/2 24/12 24/16 29/11 29/19 29/20 29/24 30/1 31/4 32/15 36/6 40/21 51/7 51/17 51/17 51/22 51/24 51/25 52/1 52/12 52/16 59/19
**called [1]** 24/4
**caller [4]** 7/16 12/19 29/23 30/1
**calling [1]** 29/8
**calls [61]** 6/4 6/7 10/6 10/6 10/7 10/19 10/20 10/24 11/8 14/8 14/16 16/6 17/3 17/9 17/19 18/20 18/22 20/20 21/3 21/3 21/7 21/15 21/19 22/8 22/12 22/21 22/23 22/24 22/24 23/10 24/25 25/2 26/6 27/1 27/5 27/9 27/11 27/13 27/14 28/11 28/18 29/8 29/15 30/18 31/6 31/13 31/24 32/12 32/16 34/15 40/18 40/19 42/9 43/5 44/1 47/8 48/18 50/1 50/13 54/13 55/17
**came [2]** 48/3 48/8
**can [39]** 3/6 4/11 5/16 5/20 6/24 7/5 7/12 8/2 8/17 11/3 14/10 14/12 14/25 15/10 15/12 15/17 20/4 20/23 21/2 21/11 21/12 21/13 21/14 23/2 23/14 24/6 25/22 25/23 25/25 36/7 43/1 43/13 44/17 50/9 56/22 57/7 58/10 58/14 58/20
**can't [7]** 24/10 36/22 36/23 44/18 53/18 53/21 53/23
**cap [1]** 52/22
**capacitors [1]** 48/15
**capacity [3]** 25/1 42/1 43/4
**capped [1]** 31/9
**card [6]** 35/20 36/3 51/8 51/9 51/15 52/4
**cards [5]** 35/19 37/3 46/11 51/3 51/4
**care [2]** 22/25 29/19
**careful [1]** 14/21
**cargo [3]** 7/1 7/4 7/9
**Caribbean [1]** 23/23
**carriage [2]** 24/24 27/24
**carried [1]** 28/11
**carrier [9]** 23/18 38/4 38/5 41/15 42/2 42/19 42/21 47/13 47/24
**carriers [18]** 20/14 20/15 21/2 21/6 21/7 22/20 23/19 27/6 27/12 29/12 29/12 29/13 29/15 31/13 43/11 47/10 49/22 50/3
**carry [3]** 25/2 28/18 32/16
**carrying [13]** 6/4 6/6 6/12 6/18 10/6 10/6

**C**

**carrying... [7]** 10/19 10/20 14/8 14/16 23/10 26/6 31/4
**case [40]** 3/5 4/3 5/13 11/6 11/10 25/7 27/16 28/10 28/24 33/15 33/16 33/17 33/21 33/25 34/6 34/18 36/5 36/8 36/25 39/2 39/7 39/9 39/10 39/17 39/19 43/3 43/6 44/14 45/22 46/14 46/20 48/4 50/9 51/6 54/9 54/11 56/13 57/10 58/13 58/15
**cases [9]** 21/4 31/19 32/22 34/22 39/12 40/10 45/19 53/2 53/7
**catching [1]** 38/1
**category [2]** 7/21 7/21
**cause [2]** 17/14 61/7
**cede [1]** 9/19
**cell [2]** 24/21 42/4
**cellular [6]** 16/20 17/17 18/3 18/7 19/4 43/4
**centers [2]** 16/21 19/5
**cents [11]** 23/4 32/14 32/15 32/19 51/3 51/10 51/11 51/15 51/20 51/21 51/23
**century [1]** 28/12
**century-plus [1]** 28/12
**certain [4]** 17/24 37/4 38/24 39/4
**certainly [10]** 14/18 21/14 21/16 35/15 42/13 42/21 46/16 48/23 51/12 51/22
**certified [1]** 61/9
**certify [1]** 61/5
**challenging [1]** 5/10
**change [2]** 36/17 36/20
**charge [1]** 52/17
**charges [1]** 53/10
**charging [2]** 52/20 52/21
**chart [5]** 8/9 20/9 29/7 47/6 56/16
**Charts [1]** 59/16
**cheap [1]** 36/11
**Chicago [3]** 6/16 12/20 29/10
**choose [1]** 25/16
**Chris [1]** 3/16
**Christopher [1]** 2/8
**circuit [3]** 59/1 59/4 59/6
**citation [2]** 15/6 36/7
**cite [2]** 14/7 37/18
**cited [2]** 21/4 36/5
**civil [1]** 3/5
**claim [13]** 11/11 36/1 44/11 44/22 45/8 45/11 45/21 46/9 50/7 54/17 54/19 56/7 56/17
**claimant [1]** 25/13
**claims [3]** 17/5 38/10 40/11
**clarifying [1]** 54/15
**class [1]** 41/23
**classes [1]** 47/1
**classic [3]** 33/17 33/25 34/17
**clear [4]** 7/12 24/12 31/2 55/1
**clearly [4]** 15/10 16/4 18/11 22/7
**client [1]** 39/10
**clients [4]** 49/14 50/11 59/9 59/22
**close [2]** 58/6 58/7
**closer [1]** 11/24
**cloth [2]** 11/23 14/17
**come [6]** 22/9 24/13 30/9 48/22 55/20 57/25
**comes [6]** 24/12 24/14 30/13 31/7 48/21 52/4
**comment [2]** 54/7 54/8
**commerce [1]** 22/5
**committed [1]** 53/15
**Communications [7]** 38/10 41/7 43/20 46/2 46/4 54/5 54/22
**company [3]** 12/2 28/20 50/19
**compete [5]** 6/25 20/25 21/1 25/19 25/20

**competes [4]** 25/23 26/4 26/12 48/22
**competing [3]** 31/12 49/13 50/2
**competition [8]** 18/22 20/14 20/25 21/5 21/6 21/10 23/4 28/22
**competitive [7]** 30/23 31/1 34/15 35/16 53/10 53/17 53/23
**competitively [2]** 34/2 34/8
**complaining [1]** 38/16
**complaint [15]** 12/11 13/14 14/7 14/19 15/4 17/16 19/10 20/5 28/4 35/11 37/21 45/11 49/11 54/15 56/8
**complete [2]** 57/9 57/12
**completely [1]** 50/23
**complicated [3]** 20/11 43/5 43/6
**component [2]** 25/8 25/9
**computers [1]** 40/2
**concede [1]** 52/3
**concept [1]** 53/22
**concern [1]** 26/19
**conclusion [2]** 14/8 14/22
**conclusory [1]** 50/5
**conduct [10]** 5/4 5/6 5/7 13/24 18/9 34/20 35/16 37/12 37/23 39/3
**conducted [1]** 13/19
**conference [1]** 3/22
**confine [1]** 53/25
**conformed [1]** 61/8
**confronted [1]** 38/4
**confused [1]** 15/24
**confusion [1]** 26/18
**connect [1]** 43/9
**connections [2]** 24/7 27/7
**consequence [1]** 42/18
**consuming [1]** 39/17
**contention [5]** 21/16 35/23 35/25 36/1 38/23
**context [3]** 27/17 35/14 59/7
**continue [1]** 60/2
**contract [10]** 36/1 36/2 37/2 44/5 46/9 46/9 46/17 46/19 49/19 50/20
**contracted [1]** 47/7
**contracts [2]** 36/22 48/14
**contrary [1]** 43/18
**control [2]** 30/13 32/4
**controls [3]** 7/2 7/19 7/20
**convenience [1]** 41/12
**conversation [2]** 51/12 52/9
**conversations [1]** 36/25
**convey [1]** 29/6
**copies [2]** 19/20 19/21
**copy [2]** 39/22 39/22
**corporate [1]** 42/11
**correct [20]** 4/20 11/12 12/13 14/10 17/7 23/12 25/10 26/8 29/3 29/21 30/7 37/8 37/15 37/17 38/11 38/11 38/23 48/24 53/20 61/6
**correcting [2]** 17/8 17/10
**cost [2]** 32/23 42/10
**couch [2]** 52/8 52/10
**could [9]** 13/10 24/5 29/8 29/9 29/9 29/10 29/10 36/19 44/21
**couldn't [2]** 36/2 36/17
**counsel [2]** 3/7 37/1
**counterclaim [8]** 5/25 6/1 6/3 6/3 11/16 13/17 13/18 20/5
**counterclaims [3]** 3/25 33/10 55/22
**country [2]** 10/19 18/15
**counts [1]** 40/22
**couple [1]** 54/15
**course [2]** 28/17 39/6
**court [11]** 1/1 1/15 2/21 3/3 3/7 34/22 53/24 54/9 59/3 59/5 61/11
**Courthouse [1]** 2/21

**courtroom [1]** 60/1
**cover [2]** 31/21 51/23
**covers [1]** 55/3
**created [2]** 11/22 50/8
**creating [1]** 10/4
**CRR [2]** 2/21 61/11
**current [2]** 33/11 57/13
**customer [6]** 7/4 7/7 7/17 7/18 14/12 14/14
**customers [16]** 6/7 10/7 10/21 14/9 14/16 16/7 18/20 20/13 20/21 20/22 22/4 22/21 24/21 31/24 40/20 47/9
**cut [3]** 35/13 36/15 43/19
**cutting [1]** 59/4
**cv [1]** 1/5

**D**

**D.C [1]** 2/9
**dalliances [1]** 54/10
**dare [2]** 43/14 59/18
**date [2]** 58/14 61/11
**Davis [2]** 2/8 3/16
**deadlines [1]** 57/20
**deal [4]** 37/25 38/2 38/3 59/11
**dealing [1]** 28/5
**debate [1]** 32/22
**decade [1]** 28/16
**decades [3]** 22/14 27/24 48/8
**December [2]** 39/15 57/10
**decide [1]** 20/16
**decided [3]** 20/18 27/19 51/10
**deeply [1]** 39/9
**defendant [5]** 6/1 25/17 26/1 39/4 57/15
**defendants [4]** 1/9 2/8 3/19 9/7
**defendants' [1]** 3/25
**defending [1]** 8/10
**defense [13]** 37/1 44/16 44/16 44/17 44/18 44/19 44/20 44/21 44/24 44/25 45/1 45/8 45/21
**defenses [5]** 4/1 44/10 44/11 45/13 45/16
**define [1]** 25/22
**defines [1]** 27/16
**definition [2]** 11/15 41/19
**definitions [2]** 41/12 41/20
**deliver [1]** 7/4
**delivering [1]** 31/6
**demand [1]** 27/12
**demonstrably [1]** 14/19
**demonstrate [1]** 15/10
**denied [1]** 46/18
**Dennis [3]** 2/21 61/10 61/11
**depends [1]** 58/1
**deprive [1]** 45/9
**deputy [1]** 60/1
**described [1]** 4/11
**describes [1]** 13/13
**descriptions [1]** 23/15
**destination [2]** 40/19 40/20
**destined [1]** 17/9
**destroyed [2]** 20/25 23/5
**details [1]** 58/20
**determined [1]** 52/20
**developed [1]** 10/14
**devices [1]** 43/9
**diagram [1]** 24/14
**did [8]** 21/17 35/2 37/21 39/21 53/24 56/19 57/20 58/23
**didn't [10]** 9/18 21/18 31/18 32/1 32/2 35/24 36/15 36/15 38/22 39/4
**difference [13]** 10/16 10/18 10/25 11/23 18/2 19/7 19/7 29/11 29/13 44/12 44/15 44/16 45/7
**different [14]** 5/8 13/21 20/24 26/14 26/15

**D**

different... [9]  26/17 26/17 31/12 34/17 40/6 41/2 49/11 51/12 56/20
Digicel [125]
Digicel Haiti [2]  4/18 12/1
Digicel's [7]  6/7 6/11 10/20 17/2 18/3 21/19 44/9
digital [2]  52/4 52/12
digitally [1]  61/8
dime [1]  23/3
direct [3]  11/4 16/9 41/18
directed [4]  16/7 17/24 18/21 54/6
directing [1]  55/22
direction [2]  8/19 37/7
directly [6]  41/22 41/23 46/25 47/2 47/4 54/22
disagree [2]  47/15 53/12
discovery [10]  14/24 21/24 33/3 57/9 57/12 57/13 57/21 58/2 58/6 58/8
discussion [1]  43/2
disgrace [1]  49/7
dismiss [3]  3/25 14/21 14/23
dispositive [2]  57/9 58/8
dispute [2]  59/12 59/20
disputed [1]  15/1
distinction [4]  11/25 12/6 19/6 36/18
distinguish [1]  24/10
district [5]  1/1 1/2 1/15 2/21 45/20
Division [1]  39/14
do [51]  7/12 7/14 8/3 8/13 8/14 10/17 10/23 11/13 12/9 15/2 15/17 18/6 19/12 20/1 21/8 21/8 21/9 21/9 21/9 21/12 21/12 22/2 23/20 26/18 27/10 27/10 28/9 29/5 30/9 35/24 36/17 36/22 41/6 44/7 44/9 45/21 48/15 49/3 49/5 53/2 54/3 57/1 57/8 57/11 57/23 58/4 58/5 59/8 59/9 59/18 59/25
doctrine [1]  31/7
does [17]  4/17 6/24 7/23 8/3 10/1 12/22 16/11 16/12 20/19 27/2 29/4 30/8 42/8 48/14 48/22 51/1 51/22
doesn't [14]  6/24 7/24 11/14 12/6 24/13 29/11 29/13 42/4 44/22 45/9 45/11 46/15 53/14 59/2
doing [8]  10/25 19/25 30/11 31/8 32/21 41/3 50/24 58/2
dominant [2]  38/4 38/5
Dominican [1]  23/24
don't [36]  9/2 15/2 21/15 21/22 22/1 22/25 23/7 26/9 29/19 32/5 33/22 37/5 40/23 42/12 42/13 44/5 44/22 45/11 45/12 45/21 45/22 49/6 52/11 52/18 53/12 55/12 56/8 57/12 57/22 57/23 57/24 58/11 58/16 58/20 59/18 59/24
done [7]  36/23 41/13 42/23 45/14 51/2 51/14 55/19
down [5]  20/12 25/2 26/22 32/17 52/5
driving [1]  6/18
DuBay [2]  2/11 3/19
due [1]  57/9
during [1]  52/7

**E**

e-mail [3]  5/16 36/7 40/5
each [2]  58/4 59/22
earlier [1]  27/4
early [1]  37/5
ears [1]  34/21
effect [1]  35/9
effectively [4]  21/21 41/23 47/1 55/2
effort [1]  57/24
either [18]  5/23 6/17 7/17 12/25 15/16

15/17 20/15 23/8 23/14 24/18 26/11 29/24 53/19 54/2 55/23 55/24/17 47/17 58/15
Eleanor [2]  2/11 3/19
element [1]  35/16
elements [1]  56/17
eliminated [1]  18/21
else [2]  7/12 47/2
emphasize [2]  20/1 21/17
encourage [1]  57/11
end [1]  26/15
enforced [1]  19/8
engaged [1]  37/11
engaging [1]  13/15
enormous [1]  40/3
enough [6]  10/14 22/2 36/11 59/3 59/4 59/21
enterprise [2]  5/11 13/20
enterprises [1]  13/20
entire [6]  10/19 11/6 18/15 29/15 48/4 48/19
entirely [1]  55/1
entities [5]  23/21 26/14 26/17 27/7 36/14
entitled [2]  46/12 61/7
entity [4]  4/8 36/8 36/12 48/14
envisioning [1]  6/12
equipment [1]  6/11
especially [1]  7/24
essence [1]  56/7
essential [5]  31/7 31/16 31/18 31/23 32/1
essentially [3]  10/22 11/1 47/7
et [2]  1/8 3/6
even [19]  7/24 8/8 14/4 15/21 23/7 32/8 35/5 36/3 44/21 45/9 49/17 53/3 53/7 53/8 56/1 56/6 56/21 59/4 59/18
event [1]  40/13
eventually [1]  55/4
every [3]  39/7 42/3 42/4
everybody [2]  5/23 36/7
everything [7]  4/1 5/5 9/2 35/11 44/8 47/2 57/18
evidence [1]  37/23
evidently [2]  17/7 39/8
ex [1]  52/22
exact [1]  49/11
exactly [6]  8/9 10/1 15/10 34/12 41/1 57/16
example [3]  16/8 20/20 24/5
except [1]  47/3
exchange [4]  50/20 57/19 57/20 58/7
excluding [1]  29/4
Exhibits [1]  39/25
expect [1]  58/11
expended [1]  52/22
experience [1]  48/9
expert [6]  23/8 23/9 23/17 57/19 57/20 58/8
experts [1]  57/18
explain [5]  11/25 17/7 44/12 48/19 59/14
explaining [2]  19/17 42/8
exploring [2]  5/1 54/11
extend [3]  30/25 31/8 37/13
extended [1]  5/8
extending [2]  18/9 34/14
extension [6]  33/15 33/16 33/20 34/5 58/9 58/10
extensions [2]  25/18 58/12
extent [4]  14/1 14/18 20/2 31/22
extinguish [1]  45/2
extract [2]  31/11 53/9

**F**

facilities [3]  31/19 41/24 47/8
facility [6]  31/7 31/16 31/23 32/1 52/17

52/21
facing [2]  38/19 49/12
fact [8]  8/21 14/4 14/22 14/22 15/1 48/24 58/6 59/12
facts [2]  41/1 56/9
factual [4]  44/17 44/18 44/20 45/2
fails [1]  14/2
failure [4]  37/24 44/11 45/8 45/20
fair [1]  9/4
fairly [2]  4/4 39/13
fairness [1]  45/16
faith [1]  14/4
falls [3]  11/18 47/12 47/14
false [4]  10/13 17/6 18/2 48/1
familiarity [1]  10/15
family [3]  13/20 30/9 42/11
far [3]  6/23 12/18 39/13
fascinating [2]  59/8 59/18
fast [1]  27/4
FCC [8]  28/5 37/24 38/3 38/5 38/17 49/3 49/19 54/10
FCRR [2]  2/21 61/11
fee [2]  41/22 46/25
few [1]  15/22
fiber [1]  23/1
fiberoptic [2]  24/19 52/13
Fifth [1]  2/6
fighting [1]  55/16
figure [4]  8/2 19/17 21/24 58/5
file [2]  38/7 56/24
filing [1]  55/1
Financial [1]  2/3
find [2]  21/14 29/14
fine [13]  8/11 11/13 15/16 26/2 26/10 42/17 42/18 43/13 44/21 45/15 56/24 58/9 59/17
finishing [1]  55/20
first [13]  6/3 6/8 8/22 9/16 16/15 16/17 18/16 23/10 25/11 26/6 28/24 44/9 52/3
five [1]  55/21
fixing [1]  17/21
flip [1]  39/7
Florida [2]  2/4 6/21
flow [2]  20/22 20/23
folks [1]  6/11
follow [3]  11/14 20/23 30/21
follow-up [1]  11/14
followed [1]  58/8
following [1]  13/12
follows [1]  29/23
footnote [1]  54/24
foregoing [1]  61/5
foregone [1]  50/8
forget [2]  20/11 51/5
forgive [1]  49/23
form [1]  19/17
Fort [1]  2/4
forth [1]  9/21
forward [3]  4/24 49/12 59/14
found [2]  36/5 39/3
frankly [2]  28/17 51/7
fraud [4]  11/7 35/24 54/10 54/17
fraudulent [1]  13/15
free [2]  33/9 50/25
freight [2]  50/15 52/17
friend [2]  51/9 51/9
FTC [1]  39/10
full [5]  35/5 35/9 35/12 35/17 55/25
fully [2]  43/25 54/11
fun [1]  39/20
function [1]  22/22
Fundamentally [1]  27/23
funny [1]  46/21

**G**

gain [2] 34/10 53/23
gained [1] 53/16
gall [1] 52/25
gate [2] 11/2 50/16
gateway [2] 31/15 51/25
gateway/our [1] 51/25
gave [2] 37/6 39/22
general [2] 14/6 23/14
geographic [4] 25/9 28/25 29/1 29/23
get [51] 4/4 4/6 7/5 7/9 8/20 11/2 13/7
13/17 14/12 14/13 19/25 20/4 20/8 20/13
21/2 21/14 22/10 23/2 24/20 24/25 25/18
26/3 27/1 27/5 27/9 27/13 29/14 30/19
31/13 32/17 34/15 34/19 39/4 39/18 40/15
40/18 44/1 49/6 50/3 51/11 53/21 55/11
55/17 55/17 57/6 57/18 58/14 58/17 58/20
59/5 59/25
gets [8] 7/1 20/16 20/18 20/19 24/16 42/9
42/11 42/12
getting [8] 7/6 7/15 22/22 22/24 27/11
27/14 30/20 49/16
give [12] 9/6 20/17 20/17 23/14 23/17
40/16 46/1 54/3 56/5 57/20 58/10 58/11
given [2] 7/24 9/4
gives [1] 30/17
giving [2] 20/16 22/15
Glen [1] 21/4
go [28] 7/5 9/20 11/24 14/10 16/2 20/12
20/20 20/21 21/20 21/22 22/13 22/17
22/17 23/24 27/22 31/15 35/18 39/4 43/23
48/12 48/19 50/16 51/10 52/18 54/1 54/7
54/20 56/24
goes [11] 6/21 17/5 17/20 17/21 18/8
18/24 20/22 22/25 23/1 29/12 51/1
going [35] 4/4 9/3 9/9 9/10 9/20 13/7
14/24 22/12 23/7 26/15 30/10 31/3 36/20
39/18 42/9 44/12 45/6 45/7 45/18 46/5
47/25 48/1 48/25 48/25 49/1 52/15 57/2
57/5 57/11 58/13 58/25 59/11 59/13 59/13
59/20
good [7] 3/9 14/4 19/8 19/24 56/4 58/5
60/5
goodness [1] 39/18
goods [2] 46/18 46/19
got [8] 4/21 5/16 31/14 34/6 36/16 43/4
54/23 58/12
Government [4] 28/21 31/10 39/24 39/24
governmental [1] 39/4
governs [1] 50/20
grand [1] 9/9
graphic [2] 19/17 19/19
grappling [1] 28/7
great [2] 31/20 40/22
Greene [1] 40/1
ground [1] 40/9
grown [1] 22/1
GTE [1] 40/10
guess [2] 13/10 51/21
guessing [1] 13/10
gun [1] 46/14
guts [1] 20/1

**H**

ha [3] 48/9 48/9 48/9
had [20] 9/10 15/3 15/5 22/12 36/1 36/8
36/25 38/25 39/11 39/17 40/5 46/9 46/9
48/12 48/19 51/6 51/7 51/8 51/8 54/10
hadn't [2] 36/19 36/19
Haiti [134]
Haiti's [2] 16/19 24/20
Haitian [4] 28/20 30/25 32/8 43/4

band [1] 18/4
handled [1] 23/20
handout [1] 41/10
Hansen [2] 2/5 3/13
happen [1] 20/7
happening [2] 20/5 33/12
happens [3] 7/20 20/14 24/3
happy [1] 8/12
hard [2] 9/5 49/23
has [28] 5/3 6/8 7/23 9/22 9/25 11/22 12/8
12/14 12/16 13/6 18/21 18/25 20/21 22/1
25/8 26/17 28/23 40/10 43/11 46/15 47/5
48/21 52/20 52/25 53/3 57/10 58/13 59/1
hasn't [1] 59/20
hat [2] 23/8 23/9
have [117]
haven't [1] 58/2
having [7] 13/16 21/25 25/3 42/23 51/12
52/9 53/14
he [26] 10/8 10/16 10/16 14/21 14/22 15/5
15/13 19/2 46/14 46/15 46/16 46/23 47/5
47/11 47/12 48/21 48/21 49/1 49/3 49/4
50/8 51/1 51/5 52/13 52/20 52/25
head [2] 46/6 57/23
healthy [1] 10/14
hear [4] 8/16 41/6 54/21 60/3
hearing [6] 1/12 4/24 8/5 8/18 26/12
56/25
heavily [1] 28/15
helpful [1] 19/18
her [1] 52/10
here [29] 3/24 4/2 9/15 10/10 13/18 18/3
21/20 22/16 22/17 23/3 24/14 25/6 25/12
31/3 34/24 36/18 40/9 42/20 43/24 44/9
45/10 46/16 47/18 48/11 50/19 51/13
51/20 58/3 58/24
Hey [1] 21/2
highlighted [3] 15/21 17/12 17/15
highlights [1] 16/23
him [3] 8/11 14/24 40/16
his [7] 15/13 17/18 46/8 47/25 48/8 54/21
54/25
history [1] 27/23
hit [3] 23/23 24/17 46/5
Holding [1] 3/6
HOLDINGS [8] 1/4 3/11 4/8 4/9 4/12 4/14
4/16 4/19
Holly [1] 21/4
Home [8] 36/9 43/1 43/7 43/22 43/24 44/1
55/24 56/12
honor [13] 3/4 3/9 4/12 4/20 8/7 8/24 9/13
16/3 18/19 44/4 45/5 45/15 60/6
HONORABLE [1] 1/14
honored [2] 15/23 15/25
hopeful [2] 58/14 58/15
Hopefully [1] 19/22
how [23] 7/7 7/12 7/23 8/15 11/21 12/22
13/5 13/7 20/9 20/25 27/10 27/19 30/9
33/23 43/14 45/3 48/3 49/9 49/19 50/17
57/16 57/17 59/13
hugely [1] 27/25
hundred [1] 20/3
hypothetical [1] 28/19

**I**

I'd [1] 15/7
I'll [7] 9/6 25/16 27/20 44/6 44/12 46/3
55/20
I'm [46] 4/4 5/9 5/16 5/21 6/12 6/13 6/14
6/17 8/1 8/4 8/10 8/23 9/10 13/8 13/10
13/11 14/23 15/18 15/23 15/24 16/7 16/11
22/10 23/19 24/9 25/3 26/4 26/12 27/20
28/5 31/25 38/1 39/5 39/18 43/2 45/14

47/15 49/23 53/13 55/9 56/2 56/4 57/2
57/5 58/14 59/1
I've [3] 4/2 15/8 19/10
i.e [1] 47/9
identified [2] 4/8 19/8
identify [1] 3/8
ignore [1] 6/19
illegal [1] 42/17
illustrates [1] 16/4
image [1] 38/15
impacts [1] 19/8
important [5] 6/20 18/1 24/10 34/24 44/8
INC [2] 1/7 3/6
inclined [1] 27/21
include [2] 18/10 36/21
includes [1] 58/6
inconsequential [1] 17/23
inconsistency [1] 47/16
inconsistent [1] 47/19
incorrect [1] 10/11
indeed [1] 25/1
indefeasible [1] 24/4
individual [2] 52/8 52/10
information [1] 52/4
informing [1] 45/19
initially [1] 48/5
initiates [1] 52/1
inside [1] 42/11
instead [2] 31/5 51/10
integral [1] 43/20
intended [1] 29/6
interest [1] 31/9
interested [6] 4/25 5/9 8/4 38/7 45/24
56/22
interesting [3] 59/3 59/11 59/13
interferes [1] 7/13
interfering [1] 43/3
intermediaries [1] 20/16
internal [3] 15/14 15/17 15/18
international [17] 11/8 16/21 17/9 18/10
19/5 24/24 27/18 27/24 28/3 28/11 48/18
50/13 51/23 51/25 52/11 52/16 54/13
Internet [2] 43/5 43/14
intrigued [1] 5/21
introduction [1] 28/22
invitation [1] 27/21
involve [1] 21/15
involved [1] 39/9
Iqbal [2] 11/21 14/3
Iqbal/Twombly [1] 14/3
IRUs [3] 24/4 24/6 24/6
is [304]
ish [1] 28/1
isn't [5] 20/3 33/10 33/18 35/4 53/6
issue [6] 15/1 46/7 46/16 49/3 51/7 57/7
issues [5] 25/18 45/25 46/8 59/4 59/8
it [206]
it's [3] 6/18 39/3 49/15
iteration [1] 54/18
iterations [1] 54/15
its [5] 6/2 17/3 17/19 19/1 24/20
itself [3] 16/15 16/18 18/25

**J**

January [3] 1/6 3/1 61/10
job [2] 9/8 24/20
Johnny [1] 51/17
joined [3] 36/25 39/14 40/4
JUDGE [6] 1/15 40/1 47/23 48/23 49/21
57/23
judges [1] 27/19
judgment [4] 14/25 22/11 40/25 59/12
judicious [1] 57/24

**J**

**jumped [3]** 36/19 46/13 50/22
**jury [4]** 54/20 59/14 59/18 59/19
**just [18]** 9/15 12/12 12/25 17/20 20/12
 23/14 29/14 32/17 35/20 36/4 41/11 41/12
 42/3 46/4 47/19 50/5 53/13 56/16

**K**

**key [2]** 36/18 41/15
**Kim [2]** 2/3 3/10
**kind [5]** 33/5 38/14 39/7 55/9 58/23
**know [20]** 4/5 13/6 19/10 19/17 22/1 22/2
 25/7 30/16 36/4 37/5 39/12 40/10 40/14
 43/12 45/18 50/17 50/19 52/11 57/24 60/1
**knowing [1]** 58/24

**L**

**label [1]** 15/17
**land [1]** 24/7
**landline [9]** 12/4 12/7 12/9 12/22 13/5
 13/6 24/18 26/10 30/5
**language [4]** 42/19 50/6 54/6 56/4
**last [7]** 18/5 18/8 28/16 41/25 54/7 54/8
 58/22
**late [1]** 28/1
**later [3]** 25/19 25/24 39/16
**latest [1]** 58/17
**Lauderdale [1]** 2/4
**Laughter [1]** 5/19
**law [9]** 32/8 32/9 43/15 43/16 44/14 54/11
 55/1 58/22 58/24
**laws [2]** 28/13 53/5
**lawyer [2]** 22/15 40/1
**leading [2]** 27/15 28/10
**learn [1]** 58/4
**least [7]** 7/3 7/7 12/2 31/14 32/19 40/24
 44/8
**leave [1]** 37/6
**left [2]** 20/12 55/7
**legal [3]** 32/4 44/17 44/20
**legally [1]** 53/8
**Lenox [2]** 5/14 5/15
**Lerner [2]** 2/3 3/10
**less [2]** 32/8 58/15
**let [9]** 4/6 8/21 11/24 14/24 33/23 36/3
 36/3 55/15 60/1
**let's [11]** 5/23 5/25 6/15 12/19 12/25 23/6
 23/9 47/5 47/21 48/3 58/17
**letting [1]** 37/12
**level [1]** 24/2
**liability [1]** 45/3
**liberalized [2]** 28/1 28/17
**liberalizing [1]** 28/8
**light [2]** 21/17 55/23
**like [25]** 6/14 8/15 33/15 33/15 35/4 36/9
 36/9 36/15 38/14 42/15 43/1 43/7 43/12
 43/22 43/24 43/25 44/23 52/18 53/25 54/8
 55/24 56/11 58/3 58/25 59/2
**Limited [1]** 4/9
**limits [1]** 54/1
**line [6]** 6/13 17/17 40/13 47/9 47/10 52/14
**lines [2]** 15/22 36/13
**link [1]** 24/18
**lists [1]** 56/16
**litigate [1]** 59/10
**little [9]** 8/9 10/21 23/18 24/9 26/22 33/14
 40/6 42/12 55/16
**live [2]** 49/2 52/9
**LLC [1]** 1/4
**LLP [2]** 2/3 2/8
**loads [1]** 7/1
**local [7]** 18/9 30/25 43/4 48/14 51/7 51/22
 52/2
**logical [1]** 58/5
**long [4]** 8/15 15/16 50/17 59/20
**look [16]** 4/24 15/9 17/25 19/2 20/9 21/5
 25/11 25/25 27/22 29/7 48/12 53/13 56/9
 58/2 58/4 59/14
**looked [1]** 38/14
**looking [1]** 6/14
**loose [1]** 48/13
**lore [1]** 30/22
**Los [1]** 29/10
**Los Angeles [1]** 29/10
**losing [2]** 58/25 59/2
**lost [1]** 39/22
**lot [8]** 19/16 32/22 39/12 39/17 39/20
 40/12 43/1 56/19
**lots [2]** 26/14 26/14

**M**

**made [6]** 12/5 43/11 47/7 47/22 51/7
 51/22
**magic [1]** 42/11
**magical [1]** 18/15
**mail [3]** 5/16 36/7 40/5
**Maile [1]** 19/23
**main [3]** 5/3 5/6 24/1
**maintain [1]** 52/23
**maintained [3]** 34/3 34/8 53/5
**maintaining [1]** 56/6
**majority [1]** 56/11
**make [12]** 8/24 9/8 27/5 29/5 29/11 29/13
 31/20 44/12 45/7 48/2 56/6 58/22
**makes [1]** 52/1
**making [3]** 22/21 49/8 56/4
**many [3]** 27/24 27/24 45/19
**market [96]**
**marketplace [1]** 56/2
**markets [7]** 5/2 5/2 5/3 5/7 5/9 13/21 30/6
**Martin [1]** 2/11
**masts [1]** 11/3
**matter [3]** 10/15 42/4 44/8
**matters [2]** 24/11 42/5
**may [14]** 16/9 18/8 21/23 21/23 25/1
 28/24 33/3 40/8 41/1 53/16 54/17 54/19
 57/3 57/25
**maybe [9]** 25/20 25/24 25/24 25/25 30/14
 31/6 31/7 51/11 58/19
**me [23]** 4/6 5/18 5/20 7/12 8/10 8/18
 11/24 19/20 19/22 22/15 23/14 26/13 31/3
 32/15 33/23 38/14 39/22 45/5 49/24 54/2
 55/6 55/15 59/24
**mean [7]** 21/23 22/10 27/2 29/4 32/11
 34/20 53/15
**meaning [1]** 34/5
**means [6]** 11/18 27/3 41/21 41/25 46/24
 53/21
**measure [2]** 7/23 30/9
**meet [3]** 14/2 28/19 50/6
**meet-point [1]** 28/19
**memorandum [1]** 56/25
**mention [1]** 52/25
**merits [1]** 21/10
**methods [2]** 20/24 38/13
**Metro [1]** 36/6
**Mexico [1]** 29/19
**Miami [5]** 16/21 19/6 23/22 29/9 32/17
**MICHAEL [1]** 1/14
**micro [1]** 27/23
**micro-history [1]** 27/23
**microwave [1]** 24/18
**mid [1]** 28/1
**mid-ish [1]** 28/1
**middle [6]** 16/2 28/19 41/19 43/23 46/23
**might [7]** 8/20 19/18 39/24 51/21 59/5
 59/6 59/19
**mind [1]** 23/7
**mindful [1]** 49/23
**mine [1]** 16/1
**minimum [3]** 32/23 36/13 51/23
**minor [1]** 17/23
**minutes [16]** 9/6 9/7 13/1 35/21 35/21
 36/3 37/3 41/8 46/11 48/7 50/19 50/21
 51/3 51/15 56/10 56/11
**misleading [3]** 17/6 17/14 18/2
**miss [1]** 9/9
**missed [1]** 39/20
**mobile [7]** 12/3 12/12 12/15 12/21 26/10
 29/25 30/14
**mode [1]** 43/13
**model [3]** 12/25 13/3 13/4
**moment [2]** 15/14 44/13
**money [3]** 15/19 42/12 59/10
**monopolization [8]** 13/19 25/7 28/10
 33/17 33/25 34/18 39/10 40/23
**monopolize [2]** 14/17 40/20
**monopolized [1]** 31/4
**monopolizing [6]** 14/5 31/17 33/19 33/20
 33/21 34/1
**monopoly [22]** 15/13 18/9 19/1 22/3
 30/19 31/6 31/9 31/11 33/15 34/3 34/6
 34/8 34/10 34/13 34/13 37/14 53/3 53/4
 53/7 53/14 53/16 56/6
**months [1]** 39/15
**more [14]** 6/14 28/17 33/14 34/9 37/20
 38/5 38/6 44/6 50/5 56/6 56/21 58/9 58/10
 58/12
**morphing [1]** 18/12
**morphs [1]** 18/14
**Morrison [1]** 2/12
**most [7]** 4/25 5/9 5/21 7/21 8/4 31/14
 34/24
**mostly [1]** 45/24
**motion [9]** 1/12 3/24 14/21 14/23 15/13
 40/25 57/6 57/14 59/11
**motions [2]** 57/9 58/8
**mountain [1]** 23/24
**mouth [1]** 49/8
**movant [2]** 8/21 8/24
**move [3]** 14/25 18/6 22/11
**moved [1]** 37/7
**moves [1]** 39/24
**moving [1]** 32/18
**Mr [1]** 26/21
**Mr. [24]** 4/24 9/19 9/22 10/15 11/19 14/18
 15/9 16/5 18/24 19/15 24/10 37/1 40/15
 45/24 46/6 47/23 48/8 49/1 49/22 51/1
 52/5 54/3 54/7 54/21
**Mr. Savage [14]** 9/19 9/22 11/19 14/18
 16/5 18/24 19/15 46/6 47/23 48/8 49/22
 51/1 54/3 54/21
**Mr. Savage's [2]** 10/15 15/9
**Mr. Tran's [1]** 52/5
**Mr. Vaughan [7]** 4/24 24/10 37/1 40/15
 45/24 49/1 54/7
**much [6]** 8/23 28/16 32/8 36/9 42/3 57/13
**music [1]** 34/21
**must [6]** 3/23 10/23 50/15 50/16 52/16
 53/4
**my [24]** 3/21 4/3 5/16 14/17 15/10 21/13
 22/14 24/14 25/6 26/18 29/7 30/18 30/19
 32/15 34/21 39/10 39/22 54/25 56/2 56/6
 57/13 57/23 59/25 60/1
**myself [2]** 4/2 23/17

**N**

name [1] 53/1
namely [1] 31/12
names [1] 23/14
Natcom [17] 12/2 12/16 12/21 12/24 12/25 13/1 14/11 14/11 14/13 21/11 21/12 21/22 24/12 24/16 24/25 30/4 52/18
necessarily [2] 27/17 54/17
need [7] 3/22 9/9 14/20 45/17 57/18 58/4 58/9
needs [3] 57/13 57/17 58/24
negative [7] 38/15 44/16 44/17 44/18 44/20 44/20 44/25
network [32] 7/11 10/25 11/4 11/5 11/7 12/1 16/20 17/10 17/17 17/20 17/22 18/3 18/7 18/12 18/14 18/14 19/4 21/19 22/9 22/10 22/13 29/25 30/18 32/15 48/17 50/14 50/15 50/24 51/19 52/16 52/21 54/12
networks [1] 43/10
never [3] 10/18 10/20 13/9
new [9] 6/21 16/22 19/6 23/22 28/13 32/16 40/9 42/10 58/22
New York [6] 6/21 16/22 19/6 23/22 32/16 42/10
next [3] 24/2 45/22 47/10
nice [1] 53/1
nine [5] 51/3 51/11 51/15 51/20 51/21
Ninth [1] 59/1
Ninth Circuit [1] 59/1
no [24] 5/19 8/19 9/17 9/20 13/11 15/3 15/5 15/6 15/6 16/8 27/7 33/22 33/22 34/23 37/9 39/6 40/1 47/3 47/17 51/7 51/24 52/6 52/18 53/6
No. [2] 44/24 52/7
No. 1 [1] 44/24
No. 2 [1] 52/7
nobody [1] 36/5
Noerr [2] 38/15 38/19
Noerr-Pennington [2] 38/15 38/19
non [3] 7/17 26/2 32/24
non-bundling [1] 32/24
non-Digicel [1] 7/17
non-transitory [1] 26/2
nontrivial [1] 26/1
not [69]
note [2] 26/9 57/8
notes [1] 17/21
nothing [5] 12/8 15/8 42/17 50/8 50/9
noting [1] 46/6
now [26] 4/6 6/18 6/19 6/23 9/7 11/18 15/8 20/2 22/14 23/6 25/22 28/25 29/12 32/4 34/9 40/7 41/7 47/5 47/21 48/21 51/18 54/10 56/15 57/12 58/15 59/24
nowhere [1] 48/23
number [5] 13/1 13/7 24/22 36/13 37/21
numbers [1] 30/15
nuts [1] 43/19
NW [1] 2/9

**O**

o'clock [1] 3/23
objection [3] 8/13 8/14 40/1
obligated [1] 50/5
obligation [3] 35/3 38/24 55/15
obtain [1] 49/14
obtained [4] 34/2 34/8 53/8 53/9
obvious [2] 12/1 47/16
obviously [4] 8/8 29/18 33/3 41/1
occurred [1] 28/23
occurring [1] 5/7
ocean [1] 28/19

off [11] 20/22 23/8 28/7 35/13 36/16 43/19 49/4 49/15 55/7 56/10 57/22
offer [2] 6/24 42/5
offered [3] 27/21 43/8 43/17
offering [6] 36/21 41/21 42/14 46/24 47/17 56/2
office [1] 52/5
Official [1] 61/11
Oh [3] 5/19 35/23 35/24
Okay [18] 4/21 6/2 9/12 10/3 10/12 12/19 13/11 13/25 15/11 16/16 19/16 19/24 21/22 25/14 26/10 28/14 30/12 55/13
old [1] 40/11
once [5] 6/25 8/2 19/7 20/18 22/10
one [36] 2/3 5/19 7/11 7/12 7/21 7/23 7/25 10/6 11/14 11/24 12/2 13/20 15/14 16/11 16/12 19/22 19/22 21/4 24/13 25/16 25/17 27/22 29/25 36/25 38/12 39/7 40/23 42/25 43/23 44/7 49/17 51/21 53/3 58/9 58/10 58/24
one's [2] 52/21 52/21
only [11] 7/5 7/18 11/3 11/19 14/9 18/6 28/22 30/15 50/17 50/18 55/14
oOo [1] 61/3
open [2] 3/3 30/22
opening [1] 9/10
operated [2] 16/21 19/5
operates [2] 57/16 57/17
operating [1] 20/2
opinion [3] 57/7 57/14 60/1
opinions [1] 4/3
opportunity [5] 38/7 40/16 46/1 48/7 54/4
opposed [1] 18/1
opposition [1] 15/9
optical [2] 23/1 23/20
oral [1] 3/5
order [3] 37/13 50/6 50/15
OREGON [9] 1/2 1/7 2/6 2/12 6/16 7/16 12/20 52/4 52/9
Oregon's [1] 51/17
original [1] 61/8
other [16] 7/11 12/2 18/4 24/6 25/20 27/19 30/25 32/21 38/7 45/19 48/15 56/12 58/5 58/24 59/7 59/22
otherwise [3] 7/6 15/8 60/2
our [24] 9/8 14/7 14/19 15/4 17/16 21/15 30/23 33/11 33/12 35/11 35/25 36/1 36/21 37/8 38/23 40/18 41/3 48/23 51/25 51/25 52/16 52/17 56/9 56/13
ourselves [1] 39/1
out [19] 4/6 5/18 8/2 21/24 21/24 24/15 24/20 24/21 30/15 36/3 41/2 41/3 42/14 45/6 50/10 54/5 58/5 58/23 59/25
outer [1] 54/1
outside [1] 29/18
over [1] 29/16
overseas [3] 24/13 28/2 28/6
own [13] 17/3 17/19 18/3 21/17 22/4 22/8 22/9 23/21 24/21 41/18 42/3 47/20 56/2
owned [2] 4/18 24/1

**P**

packaging [2] 37/2 52/12
page [8] 15/13 15/15 15/18 15/18 16/9 18/17 41/19 54/25
paid [9] 35/17 42/9 43/25 49/6 49/16 50/18 51/2 51/3 55/17
painfully [1] 27/25
panicked [2] 36/19 46/14
paper [1] 14/2
paragraph [9] 6/5 10/8 16/2 16/13 16/14 18/6 26/5 29/1 46/23
paragraphs [1] 55/22

paraphrases [1] 17/1
paraphrasing [1] 17/18
parent [3] 4/12 4/14 4/16
parent/sub of [1] 4/12
parroting [1] 50/6
part [7] 6/2 22/10 31/14 32/18 38/9 41/25 43/20
participants [1] 23/13
participate [2] 3/23 7/25
participates [2] 5/2 7/18
particular [2] 5/19 20/3
particularly [1] 5/12
parties [3] 38/7 42/1 56/23
pass [1] 44/7
past [1] 22/10
patent [1] 47/17
patently [2] 47/19 48/1
path [1] 8/25
pay [12] 21/8 21/9 21/11 21/12 27/10 35/19 35/21 35/21 50/15 51/10 52/16 55/25
payday [1] 42/13
paying [4] 11/8 35/12 38/5 51/2
payment [1] 50/21
pays [1] 32/15
PC [1] 2/5
pedantic [1] 24/9
pending [2] 57/2 57/5
Pennington [2] 38/15 38/19
Pennsyvania [1] 2/9
people [12] 6/9 7/21 7/21 24/6 25/1 25/15 25/20 26/14 27/4 29/8 43/8 45/20
percent [14] 6/10 7/11 9/14 12/10 12/12 12/15 12/16 19/9 20/4 21/25 22/2 30/14 30/15 39/11
percentage [1] 12/7
perfect [1] 20/4
perfectly [2] 53/8 56/4
period [1] 26/2
permit [1] 55/24
person [1] 44/25
perspective [1] 14/17
persuaded [2] 5/13 5/17
phenomenal [1] 9/10
phone [7] 12/21 29/7 48/18 50/13 51/17 51/17 54/13
phones [1] 51/19
phrasing [2] 17/7 20/3
physical [6] 6/14 21/14 23/19 27/7 29/24 42/1
physically [2] 24/7 43/8
pick [1] 28/21
picked [2] 20/13 27/5
pickle [1] 48/10
places [1] 4/9
plain [2] 40/11 42/18
plain-old [1] 40/11
plainly [1] 22/2
plaintiff [10] 1/5 2/2 3/7 4/7 5/25 9/23 25/13 25/17 57/16 57/16
plaintiff's [2] 3/24 5/11
planned [1] 49/24
plausibility [2] 11/20 14/3
play [1] 26/14
Plaza [1] 2/3
plead [5] 11/19 31/18 32/1 50/5 50/9
pleading [10] 11/20 37/22 44/25 45/16 49/17 49/18 49/18 49/19 54/25 56/18
pleadings [4] 22/11 28/4 47/20 48/23
pleads [1] 50/9
please [5] 3/7 19/12 26/22 41/9 60/1
pleased [1] 16/1
pled [5] 45/12 48/9 55/12 55/13 56/8

**P**

**plenty [1]** 19/21
**plus [1]** 28/12
**point [17]** 7/16 16/4 18/5 18/25 20/6 21/5 21/6 28/19 28/20 34/20 34/24 34/24 39/22 44/9 54/4 56/22 57/18
**pointing [1]** 54/5
**portion [3]** 6/23 7/19 7/25
**Portland [4]** 1/7 2/6 2/12 2/22
**position [7]** 18/25 37/10 53/3 53/4 53/8 53/14 53/16
**post [1]** 56/25
**post-hearing [1]** 56/25
**power [21]** 5/3 7/23 13/23 15/13 15/20 19/1 22/3 25/24 30/8 30/12 30/13 30/24 32/7 34/3 34/6 34/9 34/9 34/10 34/13 34/14 37/14
**practice [1]** 48/11
**praise [1]** 10/13
**pre [1]** 40/2
**pre-computers [1]** 40/2
**precedent [1]** 20/7
**precisely [2]** 30/23 40/9
**predatorily [1]** 33/4
**predatory [3]** 32/24 33/1 49/16
**predicated [1]** 15/4
**predict [1]** 48/25
**prepared [1]** 8/8
**preparing [1]** 56/15
**presumably [4]** 24/23 25/16 25/17 56/4
**presume [1]** 26/11
**presumptively [2]** 35/8 35/15
**pretty [1]** 8/9
**price [9]** 31/10 32/25 35/6 35/10 35/12 35/18 35/19 36/11 55/25
**prices [2]** 26/1 53/10
**pricing [3]** 31/9 32/24 33/5
**prior [1]** 4/3
**probably [11]** 10/17 21/14 22/11 22/15 23/20 32/22 44/8 45/8 51/13 57/17 58/6
**probe [1]** 51/25
**problem [14]** 9/15 9/17 9/20 15/7 15/10 17/13 17/15 17/21 25/6 27/8 32/18 34/16 38/15 52/18
**problems [2]** 10/5 52/3
**proceed [1]** 11/22
**proceedings [2]** 1/13 61/6
**proceeds [1]** 43/3
**process [2]** 38/8 48/20
**product [15]** 6/4 6/6 6/6 7/15 10/5 23/10 25/8 25/12 25/14 25/15 26/6 27/13 27/17 29/22 56/2
**profit [3]** 56/4 56/5 56/6
**profits [1]** 31/11
**projecting [1]** 13/9
**promise [1]** 45/23
**proper [1]** 11/8
**properly [4]** 11/3 11/19 19/8 32/14
**protect [3]** 10/22 38/8 39/1
**prove [3]** 33/3 44/18 44/21
**proven [1]** 54/16
**provide [4]** 12/6 35/3 48/14 49/5
**provided [4]** 19/1 43/9 47/4 48/7
**providers [1]** 48/7
**provides [1]** 12/3
**providing [2]** 26/17 42/16
**proxy [1]** 25/25
**public [14]** 41/22 41/24 42/6 42/14 46/25 47/2 47/4 47/10 47/17 49/12 54/6 54/22 55/3 55/4
**purchased [1]** 46/18
**purchasers [1]** 50/10

**purport [1]** 18/24
**purporting [2]** 17/3 17/18
**purports [1]** 17/6
**purpose [3]** 17/14 18/2 23/16
**purposefully [1]** 17/6
**purposes [1]** 40/24
**put [8]** 14/1 21/18 23/9 45/16 45/17 47/24 51/18 56/16
**putting [2]** 25/18 53/21

**Q**

**quasi [1]** 31/16
**quasi-essential [1]** 31/16
**question [18]** 8/1 8/9 8/17 9/11 11/14 12/25 13/8 13/9 19/10 21/8 30/10 30/10 32/19 41/11 41/15 54/23 55/18 59/23
**questions [2]** 4/5 44/6
**quick [1]** 46/5
**quite [3]** 7/11 48/10 57/11
**quote [1]** 17/16
**quotes [1]** 19/2
**quoting [1]** 28/5
**Qwest [4]** 27/6 36/6 36/8 36/15

**R**

**raise [1]** 26/1
**rate [1]** 11/9
**rather [2]** 56/5 56/12
**raw [1]** 34/13
**RDR [2]** 2/21 61/11
**re [1]** 10/1
**re-articulate [1]** 10/1
**read [6]** 4/1 5/5 31/19 35/11 35/11 42/7
**reading [1]** 20/4
**reality [1]** 47/23
**really [17]** 3/23 5/21 8/4 31/3 40/23 43/21 44/10 48/16 55/12 57/13 58/18 58/24 59/8 59/9 59/11 59/13 59/21
**reason [4]** 23/18 28/9 32/2 41/17
**rebuttal [1]** 58/7
**Received [1]** 40/2
**recently [1]** 28/23
**Recess [1]** 60/7
**record [3]** 3/8 24/12 61/6
**refer [1]** 5/23
**reference [3]** 15/6 46/22 47/6
**references [1]** 56/18
**referred [2]** 18/16 18/18
**referring [1]** 17/2
**refreshed [1]** 4/2
**refusal [1]** 55/24
**refusing [1]** 44/4
**regardless [1]** 41/24
**register [1]** 37/24
**regulated [2]** 27/25 28/16
**regulator [1]** 36/16
**regulators [1]** 28/7
**regulatory [1]** 38/8
**relationship [3]** 4/7 4/10 50/20
**relationships [1]** 48/6
**relatively [1]** 28/23
**relevant [7]** 5/1 5/24 25/8 25/13 29/22 30/6 34/24
**remember [6]** 11/6 36/24 48/3 49/4 53/1 57/22
**remind [1]** 54/9
**renew [1]** 36/4
**replead [3]** 20/8 37/6 37/6
**report [1]** 21/25
**REPORTER [2]** 2/21 61/11
**reports [4]** 38/6 57/19 58/7 58/7
**Republic [1]** 23/24
**require [3]** 17/3 17/19 36/12

**required [1]** 22/9
**requirement [2]** 11/21 52/15
**requirements [1]** 11/20
**requires [3]** 17/8 18/1 38/6
**requiring [4]** 16/6 17/2 17/18 18/19
**resale [1]** 55/24
**resell [1]** 37/4
**reselling [3]** 36/8 36/13 42/1
**resident [1]** 52/5
**resolution [1]** 58/13
**resolve [4]** 58/16 58/21 59/23 59/25
**resolved [1]** 58/17
**resources [1]** 39/17
**respect [10]** 8/20 10/14 21/16 22/4 22/7 46/7 46/8 46/10 46/21 47/21
**respected [1]** 27/16
**respond [6]** 8/11 46/1 49/10 49/20 54/4 57/3
**response [3]** 27/12 54/22 54/25
**responses [1]** 45/25
**rest [1]** 57/8
**restrict [1]** 37/4
**restrictions [2]** 37/9 37/11
**retail [16]** 20/13 20/14 20/15 21/2 21/6 22/20 35/5 35/9 35/12 35/18 43/25 44/4 47/9 47/10 49/14 55/25
**reuse [1]** 37/4
**rhetorical [1]** 59/23
**Richard [2]** 2/5 3/13
**right [29]** 4/6 6/19 8/25 9/1 14/20 15/1 19/20 21/10 21/20 25/12 30/3 32/6 32/10 33/24 34/4 35/7 35/22 35/24 37/10 38/18 38/20 43/23 43/24 44/3 45/5 53/18 55/8 55/11 55/17
**rights [1]** 24/4
**RMR [1]** 61/11
**Roam [8]** 36/9 43/1 43/7 43/22 43/24 43/25 55/24 56/11
**Robert [2]** 2/2 3/10
**roles [1]** 26/15
**room [2]** 2/22 23/18
**roughly [1]** 12/14
**route [4]** 6/15 6/23 11/4 14/13
**routed [6]** 16/20 16/24 17/11 17/25 18/13 19/4
**routing [1]** 20/19
**rules [1]** 38/5
**run [4]** 23/22 23/23 24/7 36/3
**running [1]** 24/19
**runs [1]** 6/25

**S**

**S.A [3]** 1/4 3/6 4/8
**said [29]** 8/6 11/18 22/12 24/10 24/22 27/3 29/16 32/20 34/23 34/23 35/1 35/4 36/20 38/16 39/18 45/14 46/6 46/14 46/23 48/9 48/13 48/21 49/4 50/14 50/22 51/19 52/13 53/13 53/25
**sale [1]** 37/3
**Salyer [1]** 2/11
**same [10]** 3/14 11/15 13/3 13/4 15/17 18/18 31/19 32/19 39/8 49/11
**satellite [1]** 22/25
**satisfy [1]** 11/19
**Savage [17]** 2/8 3/16 9/19 9/22 11/19 14/18 16/5 18/24 19/15 26/21 46/6 47/23 48/8 49/22 51/1 54/3 54/21
**Savage's [2]** 10/15 15/9
**saw [2]** 12/11 38/14
**say [34]** 4/25 6/15 9/13 12/19 14/23 15/3 17/5 17/7 18/8 23/2 23/3 25/11 26/9 30/17 31/25 32/5 32/12 32/16 33/10 35/14 36/18 38/22 41/12 42/24 42/25 43/13 43/14

**S**

**say... [7]** 48/12 48/25 49/22 52/13 53/7 56/17 59/1
**saying [14]** 13/21 18/13 21/1 21/21 22/17 23/19 35/12 35/17 36/22 38/21 42/9 47/15 51/16 56/1
**says [13]** 14/18 16/3 16/17 17/1 17/16 17/18 21/5 40/1 40/1 43/25 53/7 55/10 55/14
**scale [1]** 28/12
**scared [1]** 54/2
**scheduling [1]** 3/21
**Schwabe [2]** 2/5 3/13
**Seattle [1]** 29/9
**second [6]** 6/5 17/17 32/18 44/10 54/2 55/15
**section [10]** 18/16 18/18 33/19 38/24 41/16 41/20 46/22 47/13 47/24 53/11
**Section 2 [1]** 53/11
**Section 201 [1]** 41/16
**Section 214 [1]** 38/24
**section to [1]** 33/19
**sections [1]** 16/23
**secure [1]** 50/10
**see [20]** 4/8 6/2 6/8 10/17 14/25 16/1 20/23 26/18 26/19 27/19 37/20 39/21 44/5 45/3 54/18 55/12 58/20 59/1 59/6 59/22
**seeing [4]** 6/13 12/17 49/11 60/5
**seems [1]** 55/6
**seen [1]** 15/8
**sell [2]** 24/3 55/3
**selling [2]** 48/16 48/18
**sells [2]** 50/13 55/4
**send [3]** 21/3 21/8 36/7
**sending [1]** 50/19
**sends [1]** 24/15
**sent [1]** 56/10
**sentence [3]** 16/23 18/5 18/8
**separate [1]** 33/19
**September [1]** 39/15
**series [2]** 13/2 48/6
**service [15]** 6/24 12/3 12/4 12/7 18/9 18/10 27/25 30/19 36/21 41/21 42/14 43/7 43/17 43/19 46/24
**service' [1]** 46/24
**services [10]** 36/9 36/10 36/12 37/13 44/1 46/18 46/19 47/4 48/15 49/6
**set [3]** 3/4 31/10 52/14
**settlement [2]** 39/16 43/13
**seventh [1]** 6/3
**several [1]** 4/1
**share [4]** 12/15 25/25 39/11 40/21
**ship [1]** 7/2
**short [2]** 19/11 41/17
**shot [1]** 8/11
**should [6]** 16/1 31/1 32/12 32/15 34/15 58/19
**shows [2]** 21/25 32/14
**shut [1]** 56/10
**SI [2]** 1/5 3/5
**side [6]** 42/16 49/5 49/15 58/24 58/25 59/2
**sides [5]** 4/5 5/1 8/5 49/8 59/21
**signals [1]** 23/20
**signature [3]** 61/8 61/8 61/9
**signed [1]** 61/9
**signing [1]** 61/5
**SIM [13]** 35/19 35/20 36/3 37/3 46/10 51/3 51/4 51/6 51/8 51/9 51/15 52/4 52/5
**SIMON [1]** 1/14
**simpler [1]** 23/7
**simply [4]** 15/5 36/20 41/25 42/19

**since [4]** 8/10 21/24 40/10 58/13
**single [1]** 5/1
**sitting [2]** 52/8 52/10
**situation [2]** 4/15 36/10
**Skiing [15]** 33/16 34/21 34/23 35/1 35/4 35/5 35/13 37/18 44/5 53/25 54/23 55/6 55/8 55/23 56/3
**slow [1]** 26/21
**smaller [1]** 36/14
**smooth [1]** 49/24
**sneaking [1]** 51/24
**snuck [1]** 51/19
**so [55]** 4/16 7/15 8/23 9/2 9/9 9/13 12/7 12/14 12/18 12/24 13/13 14/15 15/17 16/17 19/16 20/8 20/9 21/20 22/7 23/16 23/22 24/5 24/15 25/22 26/11 28/3 28/9 28/16 28/23 29/14 29/18 29/22 32/11 33/20 36/11 36/17 39/12 43/12 43/21 44/5 48/12 48/21 49/1 49/23 50/24 53/5 54/18 54/21 54/24 55/5 55/13 56/12 57/11 57/23 57/25
**sold [2]** 13/1 51/9
**some [21]** 4/3 4/4 10/4 18/15 19/17 22/15 24/22 25/20 28/18 28/20 36/22 39/11 39/12 39/22 40/9 41/13 42/10 57/18 58/19 59/6 59/23
**somebody [2]** 27/10 39/22
**somehow [3]** 37/3 51/9 52/20
**someone [7]** 7/10 12/21 12/22 13/6 21/21 29/24 43/16
**something [3]** 6/18 26/17 59/5
**somewhere [4]** 24/7 47/13 47/14 49/4
**sorry [3]** 9/23 16/8 16/11
**sort [3]** 8/2 21/23 41/3
**sounds [4]** 33/14 37/25 42/15 45/5
**speak [6]** 8/16 8/18 8/21 9/16 25/4 25/4
**speaking [2]** 27/4 58/18
**species [1]** 33/20
**specific [2]** 4/5 13/9
**spend [3]** 58/19 59/9 59/9
**split [2]** 59/4 59/6
**spoken [1]** 59/21
**Sprints [2]** 47/11 49/14
**stage [1]** 37/22
**stand [2]** 23/2 47/25
**standard [3]** 20/1 32/23 32/25
**standing [4]** 44/11 44/23 45/9 45/12
**start [3]** 9/6 20/11 46/3
**started [1]** 19/25
**Starting [1]** 27/25
**starts [2]** 6/15 38/5
**state [6]** 44/11 44/22 45/8 45/11 45/21 54/15
**stated [3]** 54/16 54/17 54/19
**statement [1]** 21/17
**states [34]** 1/1 1/15 2/21 16/19 17/16 18/11 18/23 19/3 22/6 23/25 28/2 28/18 29/2 29/15 29/16 29/17 29/24 30/1 30/20 30/21 31/5 31/13 32/13 33/7 43/8 43/10 43/11 43/15 43/15 43/16 43/18 44/2 47/8 55/25
**statute [1]** 50/6
**statutory [2]** 41/11 42/19
**stay [1]** 8/24
**step [1]** 48/3
**steps [1]** 38/25
**still [4]** 7/13 26/4 40/22 53/18
**stop [4]** 9/5 44/6 49/23 60/2
**stores [1]** 35/18
**street [2]** 2/12 52/6
**strength [1]** 37/19
**strike [1]** 3/25
**struggling [1]** 8/1

**stuck [2]** 15/5 26/5
**stuff [9]** 20/11 23/17 28/6 29/5 40/12 41/7 43/14 44/22 44/23
**sub [2]** 4/12 4/19
**subclasses [1]** 55/2
**subheading [1]** 15/19
**subject [5]** 10/15 41/16 42/2 42/24 43/15
**submarket [4]** 5/2 21/16 22/4 22/7
**submit [2]** 56/22 56/23
**submitted [1]** 4/2
**subscribers [5]** 17/4 17/19 18/4 18/7 18/15
**subset [2]** 6/8 17/20
**substantial [1]** 22/5
**such [2]** 37/9 47/1
**sufficient [3]** 14/2 20/6 37/22
**sufficiently [1]** 40/22
**suggest [1]** 15/8
**suggesting [2]** 32/3 32/3
**suggestion [1]** 8/7
**Suite [4]** 2/3 2/6 2/9 2/12
**summarize [1]** 40/14
**summary [3]** 14/25 40/25 59/12
**super [1]** 53/10
**super-competitive [1]** 53/10
**supplemental [1]** 56/25
**supply [1]** 25/15
**support [2]** 18/24 19/2
**supposed [6]** 21/19 30/21 30/22 49/10 49/20 50/18
**Supreme [4]** 34/22 53/24 59/3 59/5
**sure [5]** 8/24 9/8 22/10 43/2 58/1
**survive [1]** 20/6
**survives [1]** 55/10
**surviving [1]** 40/24
**suspects [1]** 24/23
**SW [3]** 2/6 2/12 2/22
**switch [12]** 6/19 6/21 6/21 14/11 17/23 18/3 18/15 20/21 24/14 24/15 24/16 31/15
**switched [3]** 17/4 17/10 18/1
**switches [3]** 20/18 24/8 24/19
**switching [4]** 16/21 19/5 48/15 49/5

**T**

**T's [1]** 39/25
**tactics [1]** 13/15
**take [18]** 8/11 10/23 13/10 13/16 14/24 23/8 35/5 35/9 38/24 41/8 48/3 54/18 57/2 57/5 58/1 58/4 59/2 60/3
**taken [5]** 38/25 51/8 51/14 51/16 51/17
**takes [1]** 20/17
**talk [13]** 5/16 5/18 5/25 8/3 8/5 8/6 8/9 9/5 15/12 23/9 26/13 47/5 47/21
**talking [4]** 19/18 49/3 49/21 53/22
**talks [1]** 15/13
**Tanzania [1]** 52/14
**technically [1]** 24/11
**technology [4]** 1/7 3/6 6/11 42/5
**telecom [10]** 11/2 12/2 12/3 22/15 23/16 40/11 48/8 48/11 48/17 50/24
**telecommunication [3]** 25/4 42/2 46/23
**telecommunications [14]** 6/10 16/18 16/24 19/3 23/8 26/13 27/18 41/21 41/22 42/3 43/16 46/7 46/22 46/25
**telephone [6]** 6/13 7/10 26/10 27/24 28/20 43/10
**telephones [3]** 6/4 23/11 26/7
**tell [9]** 4/25 5/20 5/22 6/24 13/10 26/13 33/23 45/20 53/3
**ten [2]** 9/6 9/7
**term [1]** 46/24
**terminate [8]** 11/8 30/18 31/23 48/7 48/18 50/13 52/15 54/12

**T**

**terminated [3]** 10/24 17/9 17/22
**termination [2]** 33/6 50/1
**terms [6]** 6/9 22/14 28/25 36/17 36/20 43/18
**terrible [1]** 35/25
**testing [1]** 10/17
**than [8]** 10/21 33/16 37/25 41/2 50/5 56/12 56/20 58/15
**Thank [9]** 3/21 4/21 9/12 19/12 19/24 26/24 39/18 56/14 60/6
**that [339]**
**that's [88]**
**theft [2]** 11/6 54/9
**their [44]** 6/5 13/17 13/18 20/16 20/22 21/17 21/20 22/4 22/8 22/8 22/9 22/12 23/5 24/13 27/5 29/12 29/12 30/13 30/13 31/9 31/13 31/15 31/15 31/15 31/24 32/7 32/13 34/13 34/13 35/23 35/25 37/13 40/21 41/18 42/7 42/7 47/20 47/21 48/15 49/8 49/17 52/8 55/14 59/22
**them [18]** 11/4 21/20 21/25 24/8 25/16 30/17 32/17 36/11 36/13 36/16 37/6 38/25 39/7 43/1 49/25 51/19 56/10 59/19
**themselves [4]** 20/15 27/7 38/8 48/10
**then [53]** 4/18 7/2 8/2 8/11 8/15 14/13 14/14 14/23 14/24 14/25 15/12 17/1 17/5 17/20 18/24 19/2 20/19 20/21 20/23 23/1 23/23 23/24 24/6 24/7 24/15 24/20 25/12 25/14 25/23 30/10 32/15 36/13 39/10 40/5 42/24 43/18 43/23 45/2 46/14 47/11 47/12 48/15 49/21 52/25 53/11 54/23 55/4 55/18 57/12 57/17 58/25 59/1 59/22
**theoretically [1]** 32/12
**theory [7]** 5/11 5/11 53/25 54/1 55/8 55/10 55/14
**there [57]** 3/22 4/4 7/5 12/1 12/4 12/5 13/18 14/3 14/6 14/15 15/1 21/10 21/18 22/17 23/2 23/21 24/17 24/18 24/22 25/20 26/13 27/15 28/9 28/21 32/17 32/21 33/18 36/5 37/1 37/5 37/9 37/20 37/21 37/22 40/3 40/10 40/12 42/14 42/17 43/5 44/14 44/16 46/17 47/3 47/14 47/17 48/2 50/8 50/17 52/8 54/19 55/5 56/13 59/2 59/6 59/12 59/22
**there's [5]** 7/12 34/1 34/6 37/23 37/24
**therefore [3]** 42/23 45/6 56/3
**these [10]** 5/8 27/9 28/5 29/7 29/8 36/22 49/8 49/10 59/3 59/8
**they [113]**
**they're [3]** 32/3 42/21 49/8
**they've [2]** 41/2 48/9
**thing [5]** 24/3 33/5 42/25 44/7 48/19
**things [7]** 19/16 24/15 26/18 28/5 37/21 49/11 55/21
**think [29]** 9/2 11/24 12/10 15/9 16/3 18/17 19/7 19/10 22/18 22/23 23/23 25/6 26/19 28/9 33/22 37/5 37/22 43/6 45/17 46/4 46/5 46/15 54/16 56/8 57/13 57/15 57/23 57/23 57/24
**thinking [1]** 36/6
**third [3]** 2/22 42/1 42/8
**third-try [1]** 42/8
**this [82]**
**thorough [1]** 56/21
**thoroughly [1]** 59/21
**those [29]** 5/2 5/3 5/7 11/2 11/2 20/15 22/1 22/23 24/1 24/4 24/6 24/19 25/1 27/6 28/12 29/13 30/5 30/15 34/22 37/11 40/19 45/12 45/16 46/19 47/16 51/15 51/19 53/6 55/21
**though [2]** 11/18 56/1

**thought [2]** 48/24 53/12
**three [4]** 3/23 24/2 39/15 41/8
**three o'clock [1]** 3/23
**threw [1]** 40/12
**through [26]** 6/18 7/5 14/10 14/12 16/7 16/20 16/25 17/4 17/25 19/4 21/22 22/9 23/17 23/23 28/2 31/15 39/7 39/25 42/10 43/5 43/10 48/6 48/19 50/16 52/14 53/16
**throw [1]** 45/6
**thrown [1]** 28/7
**tie [1]** 43/22
**time [7]** 3/4 19/11 26/2 39/8 58/19 58/22 59/10
**timing [1]** 58/11
**tired [1]** 8/18
**together [2]** 43/22 56/16
**toll [1]** 13/16
**tollbooth [1]** 13/16
**Tomasi [1]** 2/11
**too [1]** 27/4
**took [2]** 21/20 54/14
**top [5]** 20/11 29/7 47/9 51/18 57/22
**tower [5]** 14/11 14/11 14/13 14/14 42/4
**towers [5]** 11/2 24/13 24/15 24/17 24/21
**trade [1]** 28/11
**traffic [4]** 14/5 14/9 16/19 19/3
**Tran's [1]** 52/5
**transaction [1]** 52/8
**transcript [4]** 1/13 39/23 61/6 61/7
**transferred [1]** 13/7
**transitions [1]** 49/24
**transitory [1]** 26/2
**translating [1]** 25/3
**transport [2]** 33/6 33/7
**transportation [1]** 50/1
**transportations [1]** 48/16
**transporting [2]** 18/22 22/24
**traveling [1]** 6/16
**treaties [1]** 28/3
**Tremaine [2]** 2/8 3/17
**trial [2]** 58/14 59/13
**tried [1]** 58/16
**Trinko [17]** 33/16 34/21 34/22 35/2 35/2 35/14 37/18 40/12 44/5 53/2 53/3 53/24 55/10 55/10 55/14 55/23 56/3
**Trinko/Aspen Skiing [1]** 34/21
**trouble [1]** 25/3
**truck [3]** 6/15 6/17 6/25
**true [7]** 14/19 14/23 21/23 24/11 33/3 40/8 45/2
**trust [1]** 43/15
**try [3]** 7/9 13/15 42/8
**trying [13]** 10/22 11/25 26/5 26/16 29/19 31/8 31/11 31/13 31/25 34/9 43/17 49/14 50/10
**Ts [1]** 47/11
**turn [3]** 9/7 30/15 41/2
**turned [1]** 58/23
**turnstile [4]** 11/1 50/16 50/23 50/23
**twelve [1]** 51/10
**twice [1]** 46/6
**two [13]** 10/7 13/20 14/6 16/23 19/20 20/24 24/19 30/5 30/5 41/8 49/11 51/19 52/3
**Twombly [2]** 11/21 14/3
**type [3]** 27/16 33/16 55/8

**U**

**U.S [14]** 6/4 6/7 6/13 6/19 7/16 20/14 21/7 23/10 24/25 26/7 27/5 32/8 47/18 48/11
**U.S.C [1]** 46/22
**uh [3]** 51/1 51/1 51/1
**under [13]** 11/21 20/1 20/2 20/7 32/25

35/13 36/20 38/4 38/24 56/3 56/11 57/6 60/3
**underlined [1]** 15/22
**underlining [1]** 41/14
**undersea [4]** 23/21 23/22 24/1 24/23
**understand [15]** 7/7 20/7 20/10 25/5 26/4 26/5 26/16 32/13 33/2 33/23 44/14 44/15 54/14 57/16 57/17
**understanding [5]** 5/22 9/14 25/23 33/11 56/9
**understands [1]** 10/16
**Understood [2]** 41/5 42/22
**undertaken [1]** 27/9
**underwater [1]** 29/5
**undisputable [1]** 52/7
**unfairly [1]** 33/5
**UNIGESTION [6]** 1/4 3/5 3/11 4/7 4/17 4/17
**UNITED [33]** 1/1 1/15 2/21 16/19 17/16 18/11 18/23 19/3 22/6 28/2 28/18 29/2 29/15 29/16 29/17 29/24 30/1 30/20 30/21 31/5 31/13 32/13 33/7 43/8 43/10 43/11 43/15 43/15 43/16 43/18 44/2 47/8 55/25
**United States [29]** 16/19 17/16 18/11 18/23 19/3 22/6 28/2 28/18 29/2 29/15 29/16 29/17 29/24 30/1 30/20 30/21 31/5 31/13 32/13 33/7 43/8 43/10 43/11 43/15 43/15 43/16 43/18 44/2 55/25
**unlawful [1]** 13/19
**unlawfully [2]** 34/2 34/7
**unless [2]** 6/20 30/19
**until [2]** 8/17 28/16
**unwilling [1]** 58/22
**up [10]** 11/14 20/14 26/16 27/5 28/21 32/14 47/25 55/15 55/20 56/5
**UPM [20]** 1/7 3/6 3/17 5/25 6/2 9/24 9/25 13/15 16/3 16/5 16/23 17/1 18/18 18/19 21/9 37/12 43/25 54/11 57/15 57/17
**UPM's [2]** 7/13 11/15
**upon [4]** 5/13 15/4 51/16 58/10
**us [9]** 20/18 21/3 32/17 35/13 38/25 51/5 53/3 56/10 60/3
**USA [32]** 3/11 4/18 5/12 5/24 6/20 10/23 11/1 16/7 16/20 17/4 18/13 18/21 19/5 21/22 25/1 42/11 42/12 42/13 42/16 47/4 47/12 47/14 47/18 48/3 48/22 49/4 49/9 49/12 49/13 49/15 50/2 50/10
**use [16]** 6/9 6/11 11/5 11/7 24/4 25/24 30/19 34/9 37/12 38/7 42/5 43/3 43/17 52/18 52/21 53/23
**used [3]** 41/24 43/18 43/25
**users [4]** 27/4 41/23 47/1 55/2
**uses [1]** 12/21
**using [5]** 12/24 30/24 32/3 52/17 53/9
**usual [1]** 24/23
**usually [2]** 45/19 45/22

**V**

**various [4]** 23/21 24/8 28/2 48/6
**vast [1]** 56/10
**vastly [1]** 17/20
**Vaughan [11]** 2/2 2/3 3/10 3/10 4/24 24/10 37/1 40/15 45/24 49/1 54/7
**Verizon [2]** 27/6 33/15
**Verizons [1]** 47/11
**versus [1]** 3/6
**very [6]** 16/1 19/6 28/13 34/23 36/9 54/19
**view [1]** 29/22
**violated [2]** 36/2 53/11
**violates [2]** 32/8 42/24
**violation [5]** 43/20 43/21 49/19 53/4 53/15
**virtue [2]** 43/9 53/14

**V**

visualizing [1] 6/17

**W**

wait [6] 8/12 8/16 36/3 37/20 57/13 59/6
waiting [1] 57/25
waive [1] 59/18
want [30] 5/21 7/3 7/9 8/6 8/10 8/20 8/20 8/24 9/5 9/6 9/18 13/5 20/1 21/5 24/11 24/25 27/19 29/14 40/15 41/6 42/25 44/7 52/12 52/13 54/3 54/21 57/3 58/20 59/9 59/9
wanted [1] 9/16
wants [9] 12/20 12/21 16/25 21/21 29/24 30/1 47/23 51/5 57/15
was [35] 15/6 17/13 20/24 20/25 21/4 23/17 27/4 27/25 28/7 28/15 34/5 35/2 35/2 35/24 35/25 36/8 36/12 37/1 37/5 39/9 39/23 40/3 46/17 47/25 48/1 48/13 48/24 48/25 49/3 53/16 55/20 55/22 58/14 58/15 58/23
Washington [1] 2/9
watching [1] 59/15
way [21] 4/6 5/5 5/23 7/5 11/3 11/10 13/13 21/11 21/14 22/13 29/14 32/16 33/10 33/18 39/21 45/9 50/17 50/18 58/5 58/18 59/23
ways [1] 37/4
we [122]
we're [8] 14/5 14/8 18/13 19/18 26/15 29/4 48/18 49/1
we've [2] 30/16 41/2
welcome [6] 3/12 3/15 3/18 3/20 4/22 19/14
well [18] 5/20 8/3 17/12 27/16 34/22 35/2 35/11 53/2 53/8 53/9 54/16 54/16 54/17 54/19 54/19 55/9 57/23 58/23
well-obtained [2] 53/8 53/9
well-proven [1] 54/16
well-respected [1] 27/16
well-stated [3] 54/16 54/17 54/19
went [3] 23/17 36/16 40/4
were [13] 20/25 28/7 36/10 38/16 39/8 43/12 46/11 46/18 47/22 48/25 51/5 51/6 51/10
what [107]
what's [10] 4/9 5/3 5/5 10/25 11/23 20/5 25/12 25/13 55/12 56/20
whatever [6] 23/4 26/2 30/15 31/10 35/19 35/21
when [23] 4/4 11/22 15/12 17/15 17/20 20/23 21/6 25/6 25/14 27/3 28/16 38/6 38/14 42/7 43/4 43/16 45/16 45/20 48/12 49/3 49/21 55/25 57/7
where [29] 5/24 6/15 10/2 16/3 16/25 17/24 18/18 20/8 21/8 22/16 26/18 27/21 28/4 29/12 30/8 30/12 36/10 39/3 39/23 40/7 43/21 43/25 44/25 46/18 48/22 52/1 54/1 55/7 55/20
whereas [1] 47/23
wherever [5] 6/16 9/6 12/20 13/2 29/11
whether [12] 6/20 14/25 21/24 22/25 22/25 26/9 30/14 37/2 43/2 43/3 52/12 52/13
which [26] 4/13 4/13 12/5 14/16 16/13 17/19 18/12 24/14 25/18 27/7 28/20 32/4 34/14 36/18 36/21 37/24 38/4 39/17 39/18 41/19 42/24 45/2 48/25 49/17 50/19 58/18
while [1] 57/11
who [24] 5/2 5/3 7/10 7/23 10/1 12/20 12/21 12/22 13/6 20/16 22/19 23/13 25/15 25/23 26/4 26/12 27/12 29/24 30/1 32/14

whoever [2] 20/18 27/6
whole [4] 11/22 14/17 22/3 29/16
wholesale [9] 21/7 22/16 35/3 47/13 47/24 48/6 49/22 50/2 50/10
wholesaler [3] 22/17 49/13 55/4
wholesalers [5] 13/2 21/2 22/20 48/22 55/3
wholly [1] 4/18
whose [1] 22/21
why [12] 5/16 5/20 5/22 9/16 10/10 12/5 17/7 29/16 31/2 38/1 44/13 51/25
wiggle [1] 23/18
will [40] 4/25 5/22 6/14 6/19 7/6 8/21 9/7 14/25 20/7 20/8 21/23 21/24 22/11 24/17 24/18 24/20 24/22 24/25 25/18 26/21 32/16 36/21 37/6 41/3 41/13 43/2 45/25 54/1 57/1 57/6 58/1 58/9 58/15 59/1 59/2 59/17 60/1 60/2 60/3 60/3
Williamson [1] 2/5
wire [1] 42/4
Wireless [2] 24/2 24/24
wires [1] 6/17
wish [1] 4/23
within [3] 6/10 31/6 55/14
without [3] 11/8 59/4 61/7
won't [4] 24/17 30/17 35/9 45/23
word [3] 21/18 21/20 23/18
words [3] 14/2 17/25 32/21
work [3] 12/23 40/4 60/2
working [2] 39/8 60/2
works [1] 20/10
world [3] 47/11 49/15 50/3
worse [1] 40/8
worth [1] 13/11
would [28] 8/15 9/13 11/17 13/1 15/3 15/5 16/1 18/5 18/17 28/18 28/21 28/21 32/11 35/14 37/18 38/10 38/25 43/13 45/2 51/11 51/12 52/25 53/1 54/8 56/5 56/6 56/22 58/3
wouldn't [2] 35/5 51/13
Wright [2] 2/8 3/16
writes [1] 16/5
written [1] 57/6
wrong [5] 8/19 33/4 33/10 45/4 47/19
Wyatt [1] 2/5

**Y**

Yeah [1] 38/1
year [2] 57/8 57/10
yes [9] 5/15 8/14 15/3 16/10 31/21 34/19 34/23 41/17 55/9
York [6] 6/21 16/22 19/6 23/22 32/16 42/10
you [196]
you're [19] 4/22 13/21 19/14 32/22 34/1 34/9 36/9 38/21 43/1 43/7 43/14 43/22 43/24 44/1 45/18 49/10 55/24 56/11 59/13
you've [2] 31/14 44/19
your [51] 3/4 3/9 4/12 4/20 7/4 7/9 8/7 8/8 8/17 8/24 9/11 9/13 9/14 11/10 11/11 12/11 12/25 13/14 13/14 16/3 16/25 18/19 23/3 23/8 23/9 24/25 26/19 32/16 32/18 34/3 34/19 37/10 38/9 38/12 41/18 45/5 45/10 45/15 45/25 49/23 51/16 51/20 54/4 54/5 55/22 56/19 56/20 57/9 57/12 59/9 60/6
Your Honor [10] 3/4 3/9 4/12 4/20 8/7 9/13 16/3 18/19 45/5 45/15
yourself [2] 3/8 52/23
yourselves [2] 58/16 58/21

**Z**

zero [7] 14/4 14/6 32/25 47/3 48/2 49/16 50/11
Zimbabwe [1] 23/1