**Richard K. Hansen**
Email: rhansen@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.796.2958
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Kim Vaughan Lerner LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL  33394
Telephone: 954.527.1115
Facsimile: 954.527.1116

Attorney for Counterclaim Defendants, Unigestion
Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti;
and Digicel USA Incorporated

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A.,** a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>                    *Plaintiff,*<br><br>           vs.<br><br>**UPM TECHNOLOGY, INC. d/b/a UPM TELECOM, INC.,** and **UPM MARKETING, INC.,** an Oregon corporation;<br>**UPM TELECOM, INC.,** an Oregon a/b/n;<br>**UPM MARKETING, INC.,** an Oregon a/b/n; **BEN SANCHEZ a/k/a BEN SANCHEZ MURILLO,** a foreign individual; **BALTAZAR RUIZ,** a foreign individual, and **TYLER ALLEN**, a foreign individual,<br><br>                    *Defendants;* | No. 3:15-cv-00185-SI<br><br><br>**COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT**<br><br>**Request for Oral Argument** |

**UPM TECHNOLOGY, INC.,** an Oregon corporation;

*Counterclaim Plaintiff,*

vs.

**UNIGESTION HOLDINGS, S.A.,** a foreign corporation, d/b/a **DIGICEL HAITI**; and **DIGICEL USA, INC.** a Delaware corporation.

*Counterclaim Defendants,*

## TABLE OF CONTENTS

**I.   UPM's Latest Pleading Yet Again Fails to State a Claim for Section 2** ....... 3

  a.   UPM Has No Standing to Bring an Antitrust Claim Against Digicel ...................... 3

  b.   UPM Fails to Plead Elements Required to State a Section 2 Claim ........................ 5

    i.   UPM Fails To Meet The First Required Element: No Allegation of Monopoly Power in the Relevant Market .................................................................................... 6

    ii.   UPM Fails to Meet The Second Required Element: Willful Acquisition or Maintenance of that Power Through Anticompetitive Conduct ................................ 9

    iii.   No Antitrust Injury Is Alleged ......................................................................... 12

**II.   The Essential Facilities Doctrine is Inapplicable** ..................................... 14

  a.   General Considerations Related to Essential Facilities .......................................... 17

  b.   Elements of an Essential Facilities Claim ............................................................. 18

**III.   International Comity Requires Dismissal** .................................................. 22

## TABLE OF AUTHORITIES

### Cases

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir. 2016) .................16, 19

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991 (9th Cir. 2010) ...........................................................................................................................6

*Aspen Skiing Co. v. Aspen Highlands Skiing Co.*, 472 U.S. 585 (1985) ............... 14, 15, 21

*Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467 (9th Cir. 1985)..............................................3

*Brantley v. NBC Universal, Inc.*, 675 F.3d 1192 (9th Cir. 2012)...................................... 13

*Chanute v. Williams Nat. Gas Co.,* 955 F.2d 641 (10th Cir. 1992)....................................17

*City of Anaheim v. Southern Cali. Edison Co.*, 955 F.2d 1371 (9th Cir. 1992) ............... 19

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 (4th Cir. 2011) ......... 7

*Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976 (9th Cir. 1988) ............................................................................................................................. 18

*Fla. Fuels, Inc. v. Belcher Oil Co.*, 717 F. Supp. 1528 (S.D. Fla. 1989). ...........................20

*Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997)......................................... 7

*Gorlick Distribution Ctrs., Ltd. Liab. Co. v. Car Sound Exhaust Sys.*, 723 F.3d 1019 (9th Cir. 2013).................................................................................................................... 13

*Intellectual Ventures I LLC Capital One Fin. Corp., Civil Action No. 1:13-cv-00740 (AJT/TRJ), 2013 U.S. Dist. LEXIS 177836, at *21-22* (E.D. Va. Dec. 18, 2013) .......... 10

*LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554 (9th Cir. 2008) ......................... 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986 ........................ 15

*MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124 (9th Cir. 2004) .....................16, 19

*Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014)......................................................22

*Prime Healthcare Servs. v. SEIU*, 642 F. App'x 665 (9th Cir. 2016)................................6

*SmileCare Dental Grp. v. Delta Dental Plan*, 88 F.3d 780 (9th Cir. 1996).......................6

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) .................................................. 6, 12

*Spectrum Sports v. McQuillan*, 506 U.S. 447 (1993) ......................................................6,9

*Synopsys, Inc. v. Atoptech, Inc.*, No. C 13-2965 MMC, 2015 U.S. Dist. LEXIS 104763, at *26-27 (N.D. Cal. Aug. 7, 2015) ............................................................................... 3

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966) ....................................................... 7

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ..................................... 13

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 414 (2004) .......................................................................... 9, 14, 15, 16, 17, 21

### Other Authorities

Frank X. Schoen, *Exclusionary Conduct After Trinko* 80 N.Y.U. Law Review 1625, 1642 (2005)............................................................................................................................ 15

Phillip Areeda, *Essential Facilities: An Epithet in Need of Limiting Principles*, 58 Antitrust L.J. 841 (1990) .......................................................................... 15, 17, 18

Refusals to Deal and Essential Facilities, Testimony of R. Hewitt Pate on Behalf of United States Telecom Association, United States Department of Justice (July 8, 2006), https://www.justice.gov/atr/refusals-deal-and-essential-facilities-r-hewitt-pate-statement#31 .......................................................................................... 15

William B. Tye, *Competitive Access: A Comparative Industry Approach to the Essential Facility Doctrine*, 8 Energy L. J. 377, n. 41 (1987)......................................................... 19

## Treatises

*See* Philip Areeda & H. Hovencamp, *Antitrust Law* §772 (2d ed., 2004 supp.).............. 15

## CERTIFICATION

In compliance with Local Rule 7.1, the undersigned attorney hereby certifies that the parties made a good faith effort through telephone conference to resolve the dispute presented by the Motion set forth below and have been unable to do so.

## INTRODUCTION

Defendant's Second Amended Counterclaims (the "Amended Counterclaim") added 19 pages to the last iteration of its counterclaims. Those 19 pages are mainly comprised of legal arguments and conclusions that do not remedy the previously identified shortcomings of UPM's prior pleadings. The only new fact included is that Digicel Haiti may in fact have an even higher market share in Haiti than previously alleged by UPM. This single fact – even if true - does not revive UPM's flawed Sherman Act claim. Rather than adding the required *facts,* UPM has instead merely identified those areas of concern raised in the Court's last Order granting Plaintiffs' Motion to Dismiss in part and reargued its position within the body of the Amended Counterclaim. The end result remains a still-defective pleading that improperly relies on legal conclusions and argument within the "allegations" of the Amended Counterclaim and that lacks the requisite elements to state a claim pursuant to Section 2 of The Sherman Act.

The defects in the Amended Counterclaim are compounded by the way that UPM chooses to re-plead its antitrust claim. UPM essentially alleges one new fact – Digicel Haiti provides "perhaps as much as 90%, of the local telephone service in Haiti." ECF. 158 at ¶ 249. This repeated allegation that Digicel Haiti may have a (legal) monopoly in Haiti, does nothing to illuminate the issue of whether Digicel Haiti and Digicel U.S.A.

Page 1 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S SECOND AMENDED
COUNTERCLAIMS AND LEGAL MEMORANDUM IN
SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

(collectively "Digicel") have a monopoly in the relevant geographic market, which is once again plead as the "entire United States." *Id.* at ¶ 357.  Despite this glaring fault, and additional holdover shortcomings, in the Amended Counterclaim, UPM persists on its pursuit of a Section 2 claim by cloaking these same facts in a tortured "essential facilities" argument.  This is remarkable considering the following exchange during the hearing on Digicel's previous motion to dismiss the counterclaims:

> MR. SAVAGE: I didn't plead essential facilities because I read the same cases you have, and that's not a great argument to make.
> THE COURT: Yes.
> . . .
> MR. SAVAGE: And the reason I didn't, we are not suggesting -- what we are suggesting is they're using that control, which for now we have to assume is legal. I don't have any basis to say . . .that their market power in Haiti violates even Haitian law, much less U.S. antitrust law.

Mot. to Dismiss Hr'g Tr.  31: 18-20; 32: 1-6, Jan. 18, 2018 [ECF 150 at 31-32].  Despite these prior misgivings, UPM has thrown up one last Hail Mary to again disrupt the progression of this matter.  The lack of merit in the Amended Counterclaim cannot be cured because on the admitted facts at issue here, there simply cannot exist a Sherman Act violation.  Accordingly, UPM's Sherman Act claim warrants dismissal with prejudice.

## **LEGAL MEMORADUM[1]**

UPM's Sherman Act claim should be dismissed with prejudice.  It has failed to remedy the deficiencies previously pointed out by this Court regarding its Section 2

---

[1] Digicel hereby incorporates the legal standards governing a motion to dismiss pursuant to Rule 12(b)(6) as set out by this Court's Order on Digicel's Motion to Dismiss UPM's Amended Counterclaims.  ECF  154 at 4.

Page 2 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S SECOND AMENDED
COUNTERCLAIMS AND LEGAL MEMORANDUM IN
SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

standing and the additional elements required to state a claim. Furthermore, UPM's reliance on the essential facilities doctrine is entirely misplaced and requires this Court to reexamine the international comity concerns implicated by UPM's suggested application of The Sherman Act.

## I. UPM's Latest Pleading Once Again Fails to State a Claim for Section 2 Relief

### a. UPM Has No Standing to Bring an Antitrust Claim Against Digicel

To state a claim for monopolization or attempted monopolization, a plaintiff must be "a participant in the same market as the alleged malefactors." *Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985); *see Synopsys, Inc. v. Atoptech, Inc.*, No. C 13-2965 MMC, 2015 U.S. Dist. LEXIS 104763, at *26-27 (N.D. Cal. Aug. 7, 2015) (where plaintiff did not do business in the market for which the monopoly was alleged, its participation in a related but separate market was not sufficient to confer antitrust standing). Courts can employ a cross-elasticity of demand analysis to determine whether the two enterprises participate in the same market. *Bhan,* 772 F.2d at 1470-71. In its previous Order, this Court determined that "UPM's standalone transportation service is not interchangeable with Digicel's transportation-termination service, because its transportation service would only partially meet a third-party carrier's needs." ECF 154 at 17. UPM tries to remedy the Court's concern that UPM cannot allege a stand-alone market for transportation services by adding the words "and termination" to describe the relevant product market. ECF 158 at ¶¶ 263, 258. This highly suspect and convenient "edit" does not magically resolve the underlying issue or provide any additional facts that

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

would now make UPM a participant on the termination side of the market. To the contrary, UPM's amended allegations confirm that it is not in the business of providing termination services. UPM does not allege anywhere in its Amended Counterclaim that it terminates calls. In its attempt to appease the Court's concern, UPM has only highlighted the fact that it and Digicel do not participate in the same market or offer interchangeable services. Nothing in UPM's amended allegations alter the Court's earlier finding, and the Section 2 claim must, again, be dismissed.

UPM's newly included details regarding how it transports calls over the internet and not via a Public Switched Telephone Network ("PSTN"), reinforces this Court's original finding that UPM lacks antitrust standing because "UPM's standalone transportation service is not interchangeable with Digicel's transport-termination services." ECF 154 at 17. "It bears emphasis that interconnected VoIP service [UPM] effectively requires a trunk-side connection, and, as a result, can only be established with the cooperation of a PSTN carrier [Digicel]." ECF 158 at ¶ 294. UPM continues, "UPM's VoIP-based service by which it tried to compete with Digicel was, effectively, the use of one-way VoIP calling to interconnect with Digicel-Haiti using a line-side connection." *Id.* at ¶ 296. In other words, UPM concealed the fact that it was actually transporting an international call over VoIP by completing the final step of transmission to Digicel Haiti through an illegal receiver located in Haiti which mimicked a legitimate line-side connection. Finally, in explaining the steps required to complete its VoIP calls, UPM confirms that it relied on Digicel Haiti to perform termination services, leaving UPM to,

Page 4 -     COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S SECOND AMENDED
COUNTERCLAIMS AND LEGAL MEMORANDUM IN
SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

as this Court held, only partially meet a third-party carrier's needs. After sending the calls to Haiti via the internet, UPM "delivered the calls to Digicel-Haiti via a wireless line-side connection . . . Digicel Haiti then (until UPM was cut off) terminated [the calls]." *Id.* at ¶ 358.

There are no new allegations that support the conclusion that UPM is a competitor in the same market as Digicel. UPM's attempted expansion of the relevant product market definition to include termination services essentially backfires. As the quoted excerpts indicate, [assuming a legitimate, commercial operation] a more comprehensive unpacking of UPM's alleged business model serves only to emphasize the parties' separate and interdependent, not interchangeable, market functions. UPM has provided no new basis for antitrust standing, and its Sherman Act claim must be dismissed with prejudice.

b. <u>UPM Fails to Plead The Elements Required to State a Section 2 Claim</u>

Beyond UPM's continued failure to set forth Section 2 standing, Digicel's legal arguments regarding UPM's failure to state a claim under the required elements of Section 2 closely track the original arguments set forth in its prior motion to dismiss. *See* ECF 133 at 10-17. This is because UPM has failed to supplement its Amended Counterclaim with additional facts that further its claims. Instead, it has provided what can only be described as a legal argument based in an analysis of "competing with telephone monopolies,"[2] and a misguided attempt to invoke the essential facilities

---

[2] This entire section of UPM's Amended Counterclaim constitutes legal argument and conclusions that are improper and should not be considered by this Court on a motion to

Page 5 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

doctrine. ECF 158 at 57-60. Even so, there are no new facts alleged that would warrant a change of this Court's prior decision to dismiss UPM's Section 2 claim.

To state a plausible monopolization claim under Section 2, UPM must show: "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (*citing Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 998 (9th Cir. 2010)). Further, to plead an attempted monopoly, UPM must additionally allege with adequate plausibility: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *SmileCare Dental Grp. v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996) (upholding district court dismissal of Section 2 claim); *see also Spectrum Sports v. McQuillan*, 506 U.S. 447, 446 (1993). UPM's new allegations present no new information that would require the Court to alter its prior analysis and conclusions regarding the application of these factors to UPM's Section 2 claim.

### i. UPM Fails To Meet The First Required Element: No Allegation of Monopoly Power in the Relevant Market[3]

In its March 30, 2018, Order [ECF 154] the Court identified two key weaknesses in UPM's attempt to allege monopoly power in the relevant market. First, UPM failed to

_____

dismiss. Further, the case cited is inapposite as UPM is not seeking access to a US based and US regulated telecom.

[3] To prevail under any of these theories, a Section 2 claimant must show [Defendants'] possession of monopoly power in the relevant market." *Prime Healthcare Servs. v. SEIU*,

Page 6 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

define the precise scope of the relevant product market. The Court noted that UPM failed to define the scope, in part, due to its inconsistent phrasing. UPM indicated in its first amended counterclaims that the relevant product market included termination services, but it affirmed in its response brief that the relevant product market was limited to "the market for getting calls to Haiti for termination there." ECR 154 at 19. Second, to the extent that UPM alleged that the relevant product market was only for transportation services, it did not allege that there is a market for that service as a standalone product. *Id.* at 19-20.

In its attempt to align its new allegations with these observations, UPM has now created an internally inconsistent theory of its claim. UPM now seeks to extend its alleged relevant product market to add ". . . termination services," in a transparent attempt to survive a dismissal of the claim and address the Court's concerns regarding its ability to

---

642 F. App'x 665, 667 (9th Cir. 2016) (upholding district court's dismissal of Section 2 claims for failure to allege monopoly power or market share of defendant in the relevant market); *referencing Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475, 1477 (9th Cir. 1997) (elements of monopolization and attempted monopolization), aff'd sub nom. *Humana Inc. v. Forsyth*, 525 U.S. 299, 119 S. Ct. 710, 142 L. Ed. 2d 753 (1999), and overruled on other grounds by *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). A plaintiff must generally allege monopoly power in both the relevant product market and the relevant geographic market in which trade was unreasonably restrained or monopolized. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011). Monopoly power, for the purpose of Section 2 of the Sherman Act, is "the power to control prices or exclude competition." *Forsyth*, 114 F.3d at 1475 (*citing United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966)). Typically, plaintiffs attempt to establish market power through circumstantial evidence which "requires the plaintiff to: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Forsyth*, 114 F.3d at 1476.

Page 7 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
            S.A. AND DIGICEL USA'S, MOTION TO DISMISS
            COUNTERCLAIM PLAINTIFF'S SECOND AMENDED
            COUNTERCLAIMS AND LEGAL MEMORANDUM IN
            SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

allege an existing market which is not solely for transportation services. ECF 158 at ¶ 356, 358. However, as outlined in Digicel's standing argument, UPM does *not* compete in the termination services market as evidenced by its own description of handing off its calls to Digicel Haiti for termination. *Id.* at ¶ 358. Notwithstanding that UPM originally attempted to limit the relevant product market to call transportation to serve its initial argument that UPM and Digicel are market competitors, UPM now contradicts its original position and seeks to include termination services in the relevant market to fill a gaping hole in its legal analysis. The facts regarding UPM's lack of market presence and lack of participation in the termination market remain absolute and inescapable.

As for the geographic market, UPM maintains that the relevant geographic market is the entire United States and tries to selectively add termination services to the relevant product market. ECF 158 at ¶ 357. None of the alleged termination services at issue in this case, take place in the United States, and therefore a relevant product market of transportation and termination services cannot accurately be limited to the "entire United States." Further, UPM is still unable to provide any new information regarding Digicel's (Haiti or US) market power in the United States. In fact, it admits that it would need discovery to even begin to understand Digicel's US presence. *Id.* at ¶ 360 ("In the absence of discovery, UPM cannot provide precise market share figures."). UPM once again tries to allege a monopoly leveraging theory and once again falls short. Instead, UPM relies upon Digicel Haiti's alleged monopoly power in the Haitian telecommunications market by alleging it has market share of possibly up to 90 percent. *Id.* at ¶ 249. Because UPM

Page 8 -  COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

cannot merely infer a US market share, UPM's allegations once more fail the test for monopoly leveraging referenced in the Order. [4] "A mere unfair advantage combined with the use of upstream monopoly power is not sufficient to state a claim for monopoly or attempted monopoly of the second market under a leveraging theory." ECF 154 at 21-22 (*referencing Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 415 n. 4 (2004)).

UPM fails to sufficiently allege a precise product or geographic market. Even accepting wholesale that the relevant geographic market is the entire United States, UPM also fails to allege that Digicel has monopoly power in that market. UPM's repeated failure to sufficiently allege the very first required element commands dismissal of the claim with prejudice.

> ii. <u>UPM Fails to Meet The Second Required Element: Willful Acquisition or Maintenance of that Power Through Anticompetitive Conduct</u>

UPM must allege and ultimately establish "the willful acquisition or maintenance of [monopoly] power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." ECF 154 at 22 (*citing Trinko* 540 U.S. at 407). On this latest attempt, UPM sets forth three alleged anticompetitive

---

[4] Likewise, due to the absence of any allegations demonstrating monopoly in the relevant market, UPM fails to allege requisite facts to establish specific intent to monopolize or a "dangerous probability" that Digicel USA or Digicel Haiti will obtain a monopoly. For this reason, UPM's claims for attempted monopolization also fail. *See Spectrum Sports v. McQuillan,* 506 US 447, 455 (1993) (liability for attempted monopolization under § 2 of the Sherman Act will not attach absent proof of a dangerous probability that they would monopolize a particular market and specific intent to monopolize).

Page 9 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

acts: 1) deauthorizing UPM's SIM cards; 2) Digicel's pricing practices regarding its 23 cents per minute [floor] rate; and 3) Digicel Haiti's failure to report its dominant local carrier status to the FCC. Each of these actions are competitive in nature to either preserve Digicel's network security and functionality or to prevent outright theft of its network access and telecom/termination services.

First, UPM again alleges that Digicel's deauthorization of its SIM Cards is anticompetitive because it constitutes a forsaking of "immediate and substantial short-term profits in order to achieve its anticompetitive end." ECF 158 at ¶ 366. However, regardless of the new window-dressing, the allegation still fails because, as this Court has already observed, "Digicel's course of dealing with UPM is not presumably profitable, either with regard to the resale of the RLYH service or with regard to UPM's internet-based telephone service terminating on its network." ECF 154 at 25. Further, the fact remains that "Digicel had no prior dealing with UPM or any other internet-based telephone service." *Id.* Here, Digicel's deactivation of SIM Cards being employed for fraud and theft is not anticompetitive. *See Intellectual Ventures I LLC Capital One Fin. Corp., Civil Action No. 1:13-cv-00740 (AJT/TRJ), 2013 U.S. Dist. LEXIS 177836, at *21-22* (E.D. Va. Dec. 18, 2013) (activity to legally protect market and product does not constitute antitrust violation). As this Court stated "[b]y refusing to deal with UPM, or any other internet-based telephone service, Digicel is not forsaking near-term profits, but rather protecting itself from an unprofitable deal." ECF 154 at 26. Deactivating the SIM Cards was a means to avoid theft, fraud, economic loss, and possible damage to the

Page 10 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
             S.A. AND DIGICEL USA'S, MOTION TO DISMISS
             COUNTERCLAIM PLAINTIFF'S SECOND AMENDED
             COUNTERCLAIMS AND LEGAL MEMORANDUM IN
             SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

functionality of its infrastructure, a truly "competitive business decision." *Id.* Therefore, UPM's first alleged "anticompetitive act" fails to allege anticompetitive conduct.

Second, UPM tries to deconstruct Digicel's pricing model with an argument premised on inaccuracies that are entirely lacking in factual support. ECF 158 at ¶ 368. UPM first suggests that Digicel accepts trunk-side connections of international calls in Haiti. There are no allegations that Digicel Haiti would or can even accept that type of connection for an international call. In fact, UPM's entire action is bottomed on the argument that Digicel does not provide connection services to internet-based call providers. As alleged in Digicel Haiti's Complaint and confirmed by UPM, the only authorized way to transport an international call from the US directly to Digicel Haiti's network is through the Digicel USA switch. There are no allegations anywhere that Digicel Haiti participates in a trunk-side market, and this Court has confirmed, that Digicel does not have relationships with other internet providers, solidifying the irrelevance of UPM's conclusory and creative allegation of potential trunk side pricing in this analysis. ECF 154 at 26. This entirely self-serving and fabricated hypothetical preceded by "[a]s UPM understands Digicel's approach" cannot stand as the basis for an antitrust injury. Further, as has also been reiterated and alleged over and over again, 23 cents per minute is the floor rate for international calls terminated in Haiti as implemented by Conatel, the Haitian Telecommunications Regulator. UPM's allegation of the 23 cents per minute as a "termination fee" is again self-serving and fictitious. It is the base rate for an international call terminated in Haiti, through an authorized switch

Page 11 -   COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
            S.A. AND DIGICEL USA'S, MOTION TO DISMISS
            COUNTERCLAIM PLAINTIFF'S SECOND AMENDED
            COUNTERCLAIMS AND LEGAL MEMORANDUM IN
            SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

that can properly document and price the call. Where the premise of this alleged anticompetitive act is demonstrably false and unsupported by any good faith allegation of fact, as is the case here, UPM cannot satisfy its pleading obligations.

Finally, UPM again alleges that Digicel Haiti's failure to register as a dominant local carrier constitutes anticompetitive conduct. As with other allegations discussed before, this allegation is similarly based upon a patently false premise that is used as a platform to leap to another unsupported legal conclusion. Digicel Haiti rejects the allegation that it has failed to do anything it was obligated to do under any set of applicable regulations. Without any scintilla of good faith, UPM's attempt to use this legal conclusion as the basis for anticompetitive conduct is unavailing, impermissible, and should not be given consideration by this Court.

UPM has failed to properly plead anticompetitive acts, and for this reason alone its Section 2 claim must be dismissed with prejudice.

### iii.    No Antitrust Injury Is Alleged

UPM has once more failed to allege a cognizable antitrust injury.[5] Where UPM has failed to properly allege antitrust standing or anticompetitive conduct by Digicel, no antitrust injury can be found. Even if there was merit to any of UPM's allegations, the Court cannot deem the conduct to have caused antitrust injury were the only injury is to

---

[5] "Antitrust injury consists of four elements: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013).

Page 12 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

UPM as a competitor and not to the market or consumers as is required to allege a Section 2 claim. UPM "must demonstrate injury to competition in the market as a whole, not merely injury to itself as a competitor." *Gorlick Distribution Ctrs., Ltd. Liab. Co. v. Car Sound Exhaust Sys.*, 723 F.3d 1019, 1024-25 (9th Cir. 2013) (dismissal of Sherman Act claim upheld for failure to demonstrate actual injury to competition). The act must "harm the competitive *process* and thereby harm consumers. In contrast, harm to one or more *competitors* will not suffice." *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001) (emphasis in original). "Accordingly, the lack of antitrust injury serves as an independent basis for dismissal." *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008).

UPM admits that there are no known competitors in its position in the alleged market. ECF 158 at n. 2. Further, UPM fails to allege any damage to consumers by virtue of the conduct outlined in the Amended Counterclaim. UPM alleges that it resells minutes to wholesale carriers on the spot market. ECF 158 at ¶ 262. UPM has made no allegation that its provision of an alleged cheaper alternative to these wholesalers has ever resulted in any cost savings to consumers, yet, it attempts to rely on potential consumer savings for the notion that it has demonstrated an antitrust injury. ECF 158 at ¶ 372. This conclusion is inconsistent, unsupported, and unsustainable. UPM only alleges damage to itself as a self-described competitor of Digicel. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012) ("Plaintiffs may not substitute allegations of injury to the

Page 13 -   COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S SECOND AMENDED
COUNTERCLAIMS AND LEGAL MEMORANDUM IN
SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

claimants for allegations of injury to competition."). The continued failure to plead a cognizable antitrust injury compels dismissal with prejudice.

## II.    The Essential Facilities Doctrine is Inapplicable

In an attempt to piggyback onto the Court's suggestion in note 5 of its Order, UPM now suddenly relies on the essential facilities doctrine to provide a basis for its Section 2 claims, after expressly disavowing its application to the facts at bar. Digicel vigorously maintains that the Court need not reach an essential facilities analysis due to UPM's continued failure to demonstrate standing under Section 2.

The Supreme Court of the United States ("SCOTUS") has never expressly recognized the doctrine, and the most recent SCOTUS cases touching on essential facilities have eschewed its application in favor of more tangible principles. *See Trinko*, 540 U.S. 398 (2004) (refusing to employ essential facilities doctrine where regulatory framework provided necessary context to determine Section 2 liability); *see also Aspen Skiing Co. v. Aspen Highlands Skiing Co.*, 472 U.S. 585, n. 44 (1985) (refusing to employ essential facilities analysis in finding Section 2 liability). Indeed, many scholars believe that due to its unworkable nature the essential facilities doctrine should be entirely abandoned. *See* Philip Areeda & H. Hovencamp, *Antitrust Law* §772 (2d ed., 2004 supp.) ("one is hard-pressed to see any separate vitality remaining in the essential facility doctrine").

The scholarship and practical implications surrounding essential facilities make the following abundantly clear; the doctrine is widely considered as an overreaching

Page 14 -   COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S SECOND AMENDED
COUNTERCLAIMS AND LEGAL MEMORANDUM IN
SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

crutch, is very rarely applicable, and many jurists advocate a significant narrowing or outright abrogation of the doctrine because it tends to contravene the true purpose of antitrust law, encouraging competition.[6]  Indeed, it has become known as a "plaintiffs' wishing well" that "offer[s] some measure of doctrinal legitimacy to otherwise thin allegations." Frank X. Schoen, *Exclusionary Conduct After Trinko* 80 N.Y.U. Law Review 1625, 1642 (2005).  Its problems range from creating unenforceable remedies by effectively seeking to turn antitrust courts into regulators[7] to creating false positive results that introduce a chilling effect on competition.  *See Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 414 (2004) *(citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 594 (1986)).  This is particularly true where, as in this case, the "facility" in question is an infrastructure constructed to meet the specific commercial needs of ones' business.  *See Trinko,* 540 U.S. at 407-08 ("Firms may acquire monopoly power by establishing an infrastructure that renders them uniquely suited to serve their customers. Compelling such firms to share the source of their advantage …

---

[6]  *See* Refusals to Deal and Essential Facilities, Testimony of R. Hewitt Pate on Behalf of United States Telecom Association, United States Department of Justice (July 8, 2006), https://www.justice.gov/atr/refusals-deal-and-essential-facilities-r-hewitt-pate-statement#31 (encouraging an overruling of *Aspen Skiing* and detailing general concerns regarding overly subjective and harmful nature of current refusal to deal and essential facilities analysis and its tendency to inhibit investment in valuable high risk telecom infrastructure investments); *See e.g.* Phillip Areeda, *Essential Facilities: An Epithet in Need of Limiting Principles,* 58 Antitrust L.J. 841 (1990).
[7] "No court should impose a duty to deal that it cannot explain or adequately and reasonably supervise.  The problem should be deemed irremediable by antitrust law when compulsory access requires the court to assume the day-to-day controls characteristic of a regulatory agency."  Areeda, 58 Antitrust L.J. at 853; *see also Trinko,* 540 U.S at 414, 415.

Page 15 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

may lessen the incentive for the monopoly, the rival, or both to invest in those socially beneficial facilities.").

Setting aside its practical and conceptual shortcomings, the essential facilities doctrine as articulated by the Ninth Circuit does not apply to this case. In *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, the Ninth Circuit recently summarized its essential facilities analysis.

> The essential facilities doctrine is one of the circumstances in which plain English and antitrust lingo converge. This theory is a variation on a refusal to deal claim. It imposes liability where competitors are denied access to an input that is deemed essential, or critical, to competition. Although the Supreme Court has never recognized the doctrine, *see Trinko*, 540 U.S. at 411, we have continued to treat it as having a basis in § 2 of the Sherman Act.

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184-85 (9th Cir. 2016). To establish a violation of the essential facilities doctrine, UPM must show (1) that Digicel is a monopolist in control of an essential facility, (2) that UPM, as Digicel's competitor, is unable reasonably or practically to duplicate the facility, (3) that Digicel has refused to provide UPM access to the facility, and (4) that it is feasible for Digicel to provide such access. *Id.* (*referencing MetroNet Servs.*, 383 F.3d at 1128-29). "Because mandating access, as the essential facilities doctrine implies, shares the same concerns as mandating dealing with a competitor, a facility is essential 'only if control of the facility carries with it the power to eliminate competition in the downstream market.'" *Id.* It is UPM's obligation therefore, "to demonstrate the presence of all these elements . . . If even one element is absent, [its] argument under the [essential facilities] doctrine is unavailing."

Page 16 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

*Chanute v. Williams Nat. Gas Co.,* 955 F.2d 641, 648 (10th Cir. 1992) (overruled in part on other grounds).

    a.  <u>General Considerations Related to Essential Facilities</u>

Embedded in this seemingly garden-variety test are many thorny concerns. First, the alleged anti-competitive conduct of a single firm must be considered more carefully than concerted multi-firm conduct. This is rooted in the practical notion that single-firm entities, (as UPM has encouraged this Court to consider Digicel for purposes of a Section 2 analysis), make daily business decisions that should not be confused as having anticompetitive bends. *See Trinko*, 540 U.S. at 799; *see also* Phillip Areeda, *Essential Facilities: An Epithet in Need of Limiting Principles*, 58 Antitrust L.J. 841, 844-45 (1990). This contrasts with alleged anti-competitive multi-firm conduct that is more apparent in nature because it is not every day that unaffiliated firms, that are usually in direct competition, come together to make joint business decisions. UPM attempts to impart anticompetitive motives to Digicel's sound business decision to foreclose fraud and theft of its services. The mere suggestion that acting to prevent theft and fraud is anticompetitive tests the outer limits of basic reasonableness and the elasticity of any recognized antitrust principles.[8]

---

[8] This notion is emblematic of the difficulties with wholesale expansion of the essential facilities doctrine. The doctrine has been manipulated from its original intention of providing fair and regulated access to instruments of public utility to being invoked in a variety of far flung scenarios including: claims by a muscle building food supplement demanding that a body building magazine accept its ads; claim by a would-be oil seller, who with no storage tanks of his own, demanded to use those of an incumbent seller; and claim by a film company that demanded to be notified of the results of a rival companies'

Page 17 -   COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Another threshold issue is whether the parties are even competitors in the same market. Where the parties are not competitors in the same market it is impossible for the essential facilities doctrine to apply. *See Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 983 (9th Cir. 1988) (court refused to apply essential facilities doctrine because there could be no refusal to deal with a competitor where the parties were not in the same market). UPM and Digicel are not competitors in the same market. *See* discussion *supra* at Section I.a. Regardless of the length to which UPM is willing to stretch its allegations, UPM does not terminate international calls and it has never alleged that it does. Termination of international calling through a traditional network infrastructure is a critical aspect of Digicel's business that separates it from UPM and other internet-based call transporters, particularly where the essential facility in questions is the infrastructure required to terminate the calls. Where there is no competition between UPM and Digicel in the same market, an essential facilities analysis is unwarranted and cannot stand.

b. <u>Elements of an Essential Facilities Claim</u>

As to the first element of essential facilities, UPM has failed to allege that Digicel is a monopolist in control of an essential facility for various reasons. First, for the reasons previously analyzed, UPM has failed to allege that Digicel is a monopolist in the relevant

---

research innovations before they were even marketed. *See* Areeda, *supra* at 843-44, nn. 13, 16, 17. We can now add to this list a bypass fraud operator seeking access to the infrastructure of the established telecom company from which it was previously stealing network and infrastructure access.

Page 18 -   COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

markets. *See* discussion *supra* Sections I.a, I.b.i.  For this reason alone UPM cannot make a claim bottomed on the essential facilities doctrine.  Next, UPM's characterization of the "essential facility" as Digicel Haiti's telecommunications network in Haiti is a fallacy that cannot support further analysis.  ECF 158 ¶ 364 (a).  "A facility is 'essential' only if it is 'otherwise unavailable and cannot be reasonably or practically replicated.'  Additionally, the doctrine does not guarantee competitors access to the essential facility in the most profitable manner."  *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1129-30 (9th Cir. 2004); (*referencing City of Anaheim v. Southern Cali. Edison Co.*, 955 F.2d 1371, 1380 (9th Cir. 1992)).  If "reasonable access to the essential facility exists—even if not in a way that is conducive to [UPM]'s existing business model—[UPM] cannot establish an essential facilities claim."  *Aerotec Int'l, Inc.*, 836 F.3d at 1185 (*citing MetroNet Servs.*, 383 F.3d at 1130).

The termination services that UPM is claiming are essential, are also otherwise available and can be replicated.[9]  Digicel Haiti is not the only cellular telephone provider in Haiti.  Its network cannot be an essential facility where there are other networks UPM

---

[9] The reasonable duplication standard has also been highly criticized.  In his seminal article on the issue William Tye made a now oft quoted hot dog analogy, in keeping with this Court's observations.  "Carried to its logical extreme, this principle would require any restaurant with empty tables to be forced to include on its menu the offerings of an outside sidewalk hot-dog vendor if the vendor could not itself supply seating for its customers elsewhere at lower costs.  The entire emphasis of the antitrust laws to force firms to compete would be stood on its head and firms would otherwise appear to have an obligation to affirmatively take steps to achieve the success of a competitor."  William B. Tye, *Competitive Access: A Comparative Industry Approach to the Essential Facility Doctrine*, 8 Energy L. J. 377, n. 41 (1987).

Page 19 -   COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S SECOND AMENDED
COUNTERCLAIMS AND LEGAL MEMORANDUM IN
SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

could use to terminate international calls in Haiti. UPM could just as easily buy SIM Cards from any of Digicel Haiti's competitors, for example, Comcel, Haitel, or NatCOM, and piggyback onto their networks in Haiti. Digicel Haiti's infrastructure is not essential, it is just convenient.[10]  UPM's essential facilities argument fails for its failure to allege facts sufficient to determine that Digicel Haiti is in possession of an essential facility.

The second element of an essential facilities claim requires that UPM is unable to reasonably or practically duplicate the facility. "An inquiry into the practicality of duplicating the facility should consider economic, regulatory, and other concerns. Although expensive in absolute terms, the cost of duplication may be reasonable in light of the transactions that would be facilitated and the possible profits to be gained." *Fla. Fuels, Inc. v. Belcher Oil Co.*, 717 F. Supp. 1528, 1533 (S.D. Fla. 1989).

Again, UPM can "duplicate" the facility by [legitimately] connecting to the network of any other cellular provider in Haiti. This is a both practical and reasonable way to duplicate the alleged essential facility where it only requires the use of another service provider. The technology, equipment, and methods remain the same. Furthermore, taken to the extreme, there is nothing preventing UPM from pursuing installation or implementation of its own infrastructure as means to deliver and terminate their own calls.

---

[10] There is a distinct possibility that UPM already has bypass operations using the SIM Cards and networks of these other providers. At any rate, the possibility that UPM could just as easily perform its bypass operations on one of these networks negates its essential facilities argument as to Digicel Haiti.

Page 20 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Although UPM suggests that it would be too costly to construct its own network, this consideration must be judged by whether it is economically infeasible. ECF 158 at ¶ 364(b). In other words, where a sizable investment would produce sizeable profits, duplication of the facility is presumptively reasonable. UPM has alleged that it has lost "approximately $20,000,000.00" in very short course as it began its bypass operation using Digicel Haiti's network less than four years ago. ECF 158 at ¶ 259. UPM's expected potential profits certainly do not foreclose the reasonableness of duplicating the facility, and it therefore fails to meet the second element of the essential facilities test.

The third element of an essential facilities claim requires that the alleged monopolist has refused to provide the competitor access to the facility. Digicel has been unable to locate even one essential facilities case where there was not either a prior course of consensual dealing between the parties or at least a rejected offer to enter into an agreement for use of the facility.[11] Based on the record in the case alone UPM cannot fulfill this element. As this Court has found, UPM has never even approached Digicel Haiti to initiate a legitimate business arrangement. ECF 154 at 25 ("Digicel had no prior voluntary dealing with UPM or any other internet-based telephone service."). Where there was no attempt on the part of UPM to initiate an arms-length transaction with Digicel on any [legal] terms, much less fair and reasonable terms as required by antitrust

---

[11] Both *Aspen Skiing* and *Trinko* highlight the importance of a voluntary course of prior dealing between the parties to establish any refusal to deal. *Trinko,* 540 U.S. at 409.

Page 21 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING
S.A. AND DIGICEL USA'S, MOTION TO DISMISS
COUNTERCLAIM PLAINTIFF'S SECOND AMENDED
COUNTERCLAIMS AND LEGAL MEMORANDUM IN
SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

law, there can be no "refusal" on Digicel Haiti's part directed at UPM. This element also requires that UPM and Digicel Haiti be direct competitors, which they are not.

The fourth and final element of the essential facilities doctrine is whether it is feasible for Digicel Haiti to provide access. Again, the Court need not reach analysis of this element because of UPM's failure to state any of the other required elements. However, even if the Court were to complete this analysis, UPM fails here as well. UPM's bypass method of transporting calls to Digicel Haiti's network is illegal in Haiti. *See* ECF 59. Additionally, UPM has failed to allege that it is registered as a legal telecom provider in Haiti or that it is even allowed to terminate international calls in Haiti. Accordingly, any transaction that might expose Digicel Haiti to legal jeopardy (by facilitating the possibly illegal telecom operations of UPM) in the host country is presumptively not feasible.

UPM's new-found reliance on the essential facilities doctrine is unhelpful to its cause. UPM does not state a claim for Section 2 relief or for the application of the essential facilities doctrine. Its claim should be dismissed with prejudice.

## III.   International Comity Requires Dismissal of UPM's Sherman Act Claim

"Comity, as the golden rule among nations, compels us to give the respect to the laws, policies and interests of others that [we] would have others give to [our] own in the same or similar circumstances." *Mujica v. AirScan Inc.*, 771 F.3d 580, 608 (9th Cir. 2014) (internal quotations omitted). While the Court has made it clear that any argument regarding the application of Haitian laws is for another stage in the litigation, UPM's new

Page 22 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

allegations regarding essential facilities located in Haiti and governed by Haitian regulatory agencies, injects new aspects of the *Timberlane* decision and international comity in general.

The *Timberlane* considerations include the "[e]xtent to which enforcement by either state can be expected to achieve compliance." It is now crystal clear that UPM wants this Court to exercise regulatory jurisdiction over Digicel Haiti's on-the-ground, cellular network infrastructure which is physically located in Haiti and which operates pursuant to the oversight and regulation of the Haitian telecommunications authority. This presents a myriad of issues. Under no conceivable analysis can a US District Court, analyzing US law, issue a pronouncement regarding access to a foreign network that would be enforceable or allow for the court to monitor compliance. Such a pronouncement would require regulatory oversight and enforcement from a US court of a network that is physically located in Haiti and subject to local regulation there. The problem becomes more apparent when considering the reverse scenario. What would be the result of a Haitian court order, bottomed on Haitian law, commanding [any US carrier] to allow a Haitian telecom provider access to [that carrier's] US termination network? First and foremost, that order would surely fail to comport with the strictures of The Communications Act and the regulatory powers of the FCC. The order would be unenforceable and essentially worthless. Likewise, a US Court, lacking any consideration of Haitian law or telecommunications regulations, cannot effectively unlock regulatory access to a physical asset controlled by the laws of another country. In light of UPM's

Page 23 - COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

claim requesting access to an allegedly essential facility located in Haiti, a renewed evaluation of international comity and the resulting extraterritorial application of US law, require dismissal.

## CONCLUSION

Based on the foregoing, Digicel respectfully requests that UPM's Sherman Act Claim be dismissed without leave to amend. Digicel further requests that the Court grant oral argument on this motion and the arguments contained herein.

Dated: May 25, 2018

Respectfully submitted,

| | |
|---|---|
| KIM VAUGHAN LERNER LLP<br>Robert C. L. Vaughan (*Pro Hac Vice*)<br>Cherine Smith Valbrun (*Pro Hac Vice*)<br>Leah B. Storie (*Pro Hac Vice*)<br>One Financial Plaza, Suite 2001<br>Fort Lauderdale, FL  33394<br>Telephone:   (954) 527-1115<br>Facsimile:    (954) 527-1116<br>E-mail: rvaughan@kvllaw.com<br><br><br>*Attorneys for Plaintiff and Counter-Defendants* | By:      /s/Richard K. Hansen<br><br>SCHWABE, WILLIAMSON & WYATT, P.C.<br>Richard K. Hansen, OSB #832231<br>Telephone: 503.796.2958<br>Facsimile: 503.796.2900<br><br>*Attorneys for Plaintiff and Counter-Defendants* |

Page 24 -   COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of May 2018, I caused to be served a copy of the foregoing COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA INC.'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF''S SECOND AMENDED COUNTERCLAIM AND LEGAL MEMORANDUM IN SUPPORT on the following person via the Court's CM/ECF electronic service system:

| | |
|---|---|
| Kathryn P. Salyer, OSB #883017<br>ksalyer@tsbnwlaw.com<br>Tomasi Salyer Baroway<br>121 SW Morrison Street, Suite 1850<br>Portland, Oregon 97204-3136<br>Telephone: (503) 994-9900<br><br>*Attorneys for Counterclaim Plaintiff* | Christopher W. Savage (*Pro Hac Vice*)<br>chrissavage@dwt.com<br>Davis Wright Tremaine LLP<br>1919 Pennsylvania Ave. NW Ste. 800<br>Washington DC 20006-3401<br>Tel: (202) 973-4200<br><br>*Attorneys for Counterclaim Plaintiff* |

    /s/ Richard K. Hansen
Richard K. Hansen, OSB #832231

Page 25 -    COUNTERCLAIM DEFENDANTS', UNIGESTION HOLDING S.A. AND DIGICEL USA'S, MOTION TO DISMISS COUNTERCLAIM PLAINTIFF'S SECOND AMENDED COUNTERCLAIMS AND LEGAL MEMORANDUM IN SUPPORT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900