**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
ksalyer@tomasilegal.com
edubay@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison St, Suite 1850
Portland, OR 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
(admitted *pro hac vice*)
chrissavage@dwt.com
Davis Wright Tremaine LLP
1919 Pennsylvania Ave NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>Plaintiff,<br><br>v.<br><br>**UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., and **UPM MARKETING, INC**., an Oregon corporation; **UPM TELECOM, INC**., an Oregon a/b/n; **UPM MARKETING, INC**., an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident; **BALTAZAR RUIZ**, an Oregon resident; and **TYLER ALLEN**, an Oregon resident; and **DUY "BRUCE" TRAN,** an Oregon resident, | Case No. 3:15-CV-00185-SI<br><br><br>**DEFENDANTS' MOTION TO DISMISS RICO CLAIMS** |

Page 1 of  15 - DEFENDANTS' MOTION TO DISMISS RICO CLAIMS
UPM-L1\00435975.000

Defendants

**UPM TECHNOLOGY, INC.** d/b/a **UPM TELECOM, INC.,** and **UPM MARKETING, INC.,** an Oregon corporation; **UPM TELECOM, INC.,** an Oregon a/b/n; **UPM MARKETING, INC.**, an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO,** an Oregon resident; **BALTAZAR RUIZ,** an Oregon resident; **TYLER ALLEN,** an Oregon resident; and **DUY TRAN** a/k/a **BRUCE TRAN**, an Oregon resident

Defendants and Counterclaim-Plaintiffs,

v.

**UNIGESTION HOLDING, S.A.,** a foreign corporation, d/b/a **DIGICEL HAITI;** and **DIGICEL USA, INC.,** a Delaware corporation,

Counterclaim-Defendants

Page 2 of  15 - DEFENDANTS' MOTION TO DISMISS RICO CLAIMS
UPM-L1\00435975.000

**TABLE OF CONTENTS**

CERTIFICATION ........................................................................................................... 1

MOTION.......................................................................................................................... 1

LEGAL MEMORANDUM .............................................................................................. 1

I.      CIVIL RICO ONLY ADDRESSES "DOMESTIC" INJURIES ...................................... 1

II.     DIGICEL-HAITI'S ALLEGED INJURIES OCCURRED ENTIRELY IN HAITI, NOT IN THE UNITED STATES, SO ITS RICO CLAIMS MUST BE DISMISSED ........................................................................................................ 4

III.    CONCLUSION.................................................................................................. 10

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

# TABLE OF AUTHORITIES

**Page(s)**

<u>Court Cases</u>

*Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.,* 885 F.3d 1090 (7th Cir. 2018) ......... 2, 4

*Bascunan v. Elsaca,* 874 F.3d 806 (2d Cir. 2017) ......... 2

*Gusevs v. AS Citadele Banka*, 2016 WL 9086931 (C.D. Cal. Sept. 8, 2016) ......... 3, 5

*Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 702 (3d Cir. 2018) ......... 2, 3, 7, 8

*Korea Trade Ins. Corp. v. ActiveON, Inc.*, 2018 WL 1281800 (S.D. Cal. Mar. 9, 2018) ......... 3

*RJR Nabisco, Inc. v. European Community,* ___ U.S. ___ 136 S. Ct. 2090 (2016) ......... 1, *passim*

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056 (N.D. Cal. 2018) ......... 3, 5

*Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138 (C.D. Cal. 2016) ......... 3

*Uthe Tech. Corp. v. Harry Allen & Aetrium, Inc.*, 2016 WL 4492580 (N.D. Cal. Aug. 26, 2016), *aff'd on other grounds,* 2018 U.S. App. LEXIS 18024 (9th Cir. July 2, 2018) ......... 3

*Xiaomei Li v. Hanqing Sun*, 2016 WL 8377667 (ND Cal Dec 12, 2016) ......... 3

<u>Statutes</u>

Racketeer Influenced Corrupt Organization ("RICO") Act ......... 1, *passim*

<u>Rules/Regulations</u>

Fed. R. Civ. P. Rule 12(b)(6) ......... 1

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

## CERTIFICATION

Pursuant to Local Rule 7.1, the undersigned attorney hereby certifies that Defendants' counsel conferred with Plaintiff's counsel in an attempt to resolve the dispute presented by the Motion set forth below.

## MOTION

Defendants UPM Technology, Inc. d/b/a UPM Telecom, Inc., UPM Marketing, Inc., UPM Telecom, Inc., UPM Marketing, Inc., Benjamin Sanchez a/k/a Benjamin Sanchez Murillo, Baltazar Ruiz, Tyler Allen, and Duy "Bruce" Tran (collectively "UPM") hereby move, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), to dismiss all of the claims comprising Counts I, II, and III of Plaintiff's Second Amended Complaint ("SAC"). These are the claims Unigestion Holdings, S.A., d/b/a Digicel Haiti ("Digicel-Haiti") brings under the Racketeer Influenced Corrupt Organization Act ("RICO"). Under *RJR Nabisco, Inc. v. European Community,* ___ U.S. ___ 136 S. Ct. 2090 (2016), "[a] private RICO plaintiff … must allege and prove a ***domestic*** injury to its business or property." *Id.* at 2096 (emphasis in original). RICO "does not allow recovery for foreign injuries." *Id.* at 2111. Because Digicel-Haiti's alleged injuries were suffered in, and relate to its business in, Haiti, its RICO claims must be dismissed.[1]

## LEGAL MEMORANDUM

## I.    CIVIL RICO ONLY ADDRESSES "DOMESTIC" INJURIES

In *RJR Nabisco, Inc. v. European Community,* ___ U.S. ___ 136 S. Ct. 2090 (2016), the Supreme Court considered whether civil RICO claims under 18 U.S.C. § 1964 (such as Digicel-

---

[1]    UPM adopts the discussion of the legal standard for a motion to dismiss under Rule 12(b)(6) from the Court's ruling on Digicel-Haiti's motion to dismiss UPM's counterclaims. *See* ECF #154 at 3. For purposes of this motion, UPM treats the factual allegations in the SAC as true.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

Haiti's claims here, *see* SAC at ¶ 11) could reach injuries to "business or property" suffered outside the United States. Relying on the strong presumption against the extraterritorial application of federal statutes, the Court concluded that RICO's private right of action addresses only "domestic injuries" to a plaintiff's "business or property," *i.e.,* injuries to "business or property" located in the United States. 136 S. Ct. at 2106-11.  Among other considerations, the Court was loath to conclude that Congress intended to set up a regime in which "foreign citizens [could] bypass their home countries' less generous remedies" and obtain greater recovery in the United States by virtue of RICO's treble damages and attorneys' fees provisions.  136 S. Ct. at 2107; *see id.* at 2106-09.

Lower courts have begun to flesh out the "domestic injury" requirement. No single rule has developed, but there is "a general consensus among the courts that … the location of a RICO injury depends on where the plaintiff 'suffered the injury'—not where the injurious conduct took place." *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 702 (3d Cir. 2018).

For tangible property, the Second Circuit holds that "domestic injury" occurs when the property is in the United States. On the other hand, injury to tangible property located outside the United States does not qualify. *See Bascunan v. Elsaca,* 874 F.3d 806 (2d Cir. 2017). This rule seems simple and sensible and, to the extent that Digicel-Haiti's allegations can be read to embrace harm to tangible property (*see, e.g.,* SAC at ¶ 104), this Court should adopt it.

For intangible property, such as an ongoing business, courts look to the nature of the injury to determine where it occurred. The Seventh Circuit has adopted a straightforward test: injury to a business occurs where the business resides. *See Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1094–95 (7th Cir. 2018) ("It is well understood that a party experiences or sustains injuries to its intangible property at its residence, which for a corporation

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

… is its principal place of business;" dismissing RICO claim by business in Singapore). The Third Circuit takes a somewhat more nuanced view, applying a multi-factor test to determine where a RICO plaintiff suffered injury to a business. The Third Circuit holds that this question requires:

> consideration of multiple factors, [including] where the injury itself arose; the location of the plaintiff's residence or principal place of business; where any alleged services were provided; where the plaintiff received or expected to receive the benefits associated with providing such services; where any relevant business agreements were entered into and the laws binding such agreements; and the location of the activities giving rise to the underlying dispute.

*Humphrey, supra*, 905 F.3d at 707.

While the Ninth Circuit itself has not addressed the "domestic injury" requirement, several district courts within this circuit have done so, reaching reasonable results based on a common-sense assessment of where the RICO plaintiff's business was located and where it suffered injury. *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1078 (N.D. Cal. 2018) (no domestic injury, given plaintiff's "protestations in this case that it has no presence in California and did no business in California"); *Korea Trade Ins. Corp. v. ActiveON, Inc.*, 2018 WL 1281800, at *4-5, 2018 U.S. Dist. LEXIS 39283 (S.D. Cal. Mar. 9, 2018) (injury occurred in Korea where U.S.-based defendants fraudulently induced Korean plaintiff to lend money that was not repaid, forcing plaintiff to pay $137 million to other Korean companies in Korea); *Xiaomei Li v. Hanqing Sun*, 2016 WL 8377667, at *2, 2016 U.S. Dist. LEXIS 171545 (N.D. Cal. Dec. 12, 2016) (where plaintiffs were defrauded in China while living there, the fact that defendants moved to the United States and brought the funds from the fraud here does not establish a domestic injury); *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1156 (C.D. Cal. 2016) (where plaintiff "maintains a 'hub' in the United States," "extended credit and delivered goods … in the United States[, and when] not paid … pursued arbitration in the United

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

States pursuant to a binding arbitration agreement that required arbitration … in Los Angeles," domestic injury has occurred); *Gusevs v. AS Citadele Banka*, 2016 WL 9086931, at *7, 2016 U.S. Dist. LEXIS 188784 (C.D. Cal. Sept. 8, 2016) (no domestic injury because, even though plaintiff lived in California, the injuries "were suffered by his businesses and properties located in Latvia, and he does not allege that any businesses or properties located within the United States were injured."); *Uthe Tech. Corp. v. Harry Allen & Aetrium, Inc.*, 2016 WL 4492580, at *3, 2016 U.S. Dist. LEXIS 115016 (N.D. Cal. Aug. 26, 2016), *aff'd on other grounds,* 2018 U.S. App. LEXIS 18024 (9th Cir. July 2, 2018) (U.S. shareholder not injured in U.S. by diminution in value of Singapore company).

These cases do not formally adopt *Humphrey's* multi-factor test – they were decided before the Third Circuit adopted it. But district courts here have, in practice, adopted the Third Circuit's approach by considering factors that reasonably bear on a pragmatic assessment of where a business operates and where it has suffered injury. Here, none of Digicel-Haiti's injuries were suffered in the United States, so its RICO claims must be dismissed.[2]

## II.    DIGICEL-HAITI'S ALLEGED INJURIES OCCURRED ENTIRELY IN HAITI, NOT IN THE UNITED STATES, SO ITS RICO CLAIMS MUST BE DISMISSED.

Digicel-Haiti claims it was injured in several ways. Its main claim is that it was tricked into terminating international calls on its network in Haiti, leading it to charge only $0.09 per minute when it would have charged $0.23 had it known the calls were really international in

---

[2]    There is something to be said for the simplicity and clarity of the Seventh Circuit's test for assessing injuries to a business enterprise – all such injuries occur where the enterprise has its principal place of business. *See Armada (Singapore) PTE Ltd., supra,* 885 F.3d at 1094–95. Under this test, Digicel-Haiti, which operates entirely in Haiti (*see* SAC at ¶ 15) is incapable of experiencing a domestic injury for purposes of RICO. As a result, under this test Digicel-Haiti's RICO claims may be dismissed without further analysis. As discussed below, however, Digicel-Haiti has not suffered domestic injury even under a more nuanced, multi-factor analysis.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

nature. *See, e.g.,* SAC at ¶¶ 183-184 (alleging lost revenue). Digicel-Haiti also claims that UPM's actions "disrupted its business operations," SAC at ¶¶ 191, 198, and injured its "goodwill," its "commercial reputation," and its "reputation and standing with the Haitian Government." *Id.* Finally, Digicel-Haiti claims that it incurred costs investigating UPM's conduct. SAC at ¶¶ 77-79, 198. Under any reasonable understanding of what it means for an injury to be "domestic," these injuries were all suffered in Haiti, not in the United States.

At the outset, Digicel-Haiti alleges plainly and without equivocation that "***Digicel Haiti operates solely within Haiti. It does not have any operations within the United States.***" SAC at ¶ 15 (emphasis added). *See also* SAC at ¶ 1 (Digicel-Haiti is organized under Haitian law, has its headquarters and principal place of business in Haiti, and operates its network in Haiti). This flat denial of any business or operations in the United States means that, no matter how Digicel-Haiti was injured, it cannot have suffered any domestic injuries. This allegation alone destroys Digicel-Haiti's RICO claims.[3] *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, *supra,* 313 F. Supp. 3d at 1078 (no domestic injury, given plaintiff's "protestations in this case that it has no presence in California and did no business in California"); *Gusevs v. AS Citadele Banka*, *supra,* 2016 WL 9086931, at *7 (no domestic injury because the injuries "were suffered by [plaintiff's] businesses and properties located in Latvia, and he does not allege that any businesses or properties located within the United States were injured.") But a more detailed review of the SAC also confirms that Digicel-Haiti has not alleged that it suffered any domestic injury.

---

[3]    This is not merely an application of the Seventh Circuit's bright-line rule. While Digicel-Haiti is a resident of Haiti and not the United States, which would doom its RICO claims under that rule, in ¶ 15 of the SAC, Digicel-Haiti directly asserts – as a factual matter – that it has no business or operations in the United States. As a result – as a factual matter – none of its injuries could have been suffered here.

Page 5 of  15 - DEFENDANTS' MOTION TO DISMISS RICO CLAIMS
UPM-L1\00435975.000

The essence of Digicel-Haiti's case, as noted above, is that, due to UPM's actions, it terminated international calls on its network in Haiti for which it only charged the $0.09 per minute local rate, rather than the $0.23 per minute rate for international calls. The SAC is permeated with allegations that make clear that the injury about which Digicel-Haiti complains is the physical termination of those calls on its Haitian network.[4] Similarly pervasive are allegations indicating that Digicel-Haiti's injury arose from UPM's use (or, as Digicel-Haiti alleges it, misuse) of Digicel-Haiti's network in Haiti.[5] Consistent with its clear and unequivocal

---

[4]    Allegations in the SAC that describe Digicel-Haiti being injured by virtue of "terminating" calls on its network in Haiti include (emphasis added): ¶ 29 (bypass "results in a direct and individualized injury to Digicel Haiti in the amount of lost call revenues for *international calls terminated through bypass fraud*"); ¶ 58 ("The *termination of the international call as a local call* after this misrepresentation and active concealment of the call's true origin is the final act in the bypass fraud"); ¶ 68 (the alleged arrangement "enables UPM and the individual co-conspirator participants in the bypass fraud *to use Digicel Haiti's infrastructure* to sell international call minutes to third parties *for termination on Digicel Haiti's network*, while avoiding proper payment to Digicel Haiti for *the use of this infrastructure*"); ¶ 106 (SIM Servers and Gateways "work in conjunction to conceal the true origins of an international call by misrepresenting the origin of the SIM Cards making the initial call, and *facilitating the termination of international calls as if they were actually local calls*"); ¶ 135 (a UPM Roam Like You're Home ("RLYH") call is "misrepresented *to … Digicel Haiti's network in Haiti* as a call made by an individual subscribed to the RLYH Plan, concealing its true origins, and is not charged international calling rates *to terminate in Haiti* but is instead charged the RLYH rate."); ¶ 156 (the "intent and sole purpose" of UPM's alleged RICO scheme was "to facilitate bypass operations f*or the termination of international telephone traffic into Haiti*"). *See also* SAC at ¶¶ 20, 22, 24 n.2, 37-40, 51-52, 59, 82, 126, 131, 204, and 214.

[5]    Allegations in the SAC that refer to Digicel-Haiti being injured by the use of, or by misrepresentations to, its network in Haiti include (emphasis added): ¶ 27 (Digicel-Haiti and its affiliates undertake analysis of CDRs "to identify and combat *fraudulent use of Digicel-Haiti's network*"); ¶ 58 (a call is "*directed onto the local (Haiti) Digicel cellular network* as a domestic call"); ¶ 84 (UPM's were calls "misrepresented *to the Digicel-Haiti network*"); ¶ 103 (UPM's activities meant that "the true origin and nature of the call is fraudulently and continuously *concealed from Digicel Haiti's local network*"); ¶ 105 (calls sent to Haiti via the Internet intended "to *defraud Digicel-Haiti's local network* into believing" the calls were local); ¶ 127 (IP-based bypass calls "*misrepresent the international call to Digicel Haiti's network* as a domestic call made in Haiti, and therefore ensure that only the domestic calling fees are charged"); ¶ 135 (UPM's RLYH calls "*misrepresented to Digicel-Haiti's network in Haiti*" that they were made by an individual RLYH subscriber); ¶ 180 (describes Count I RICO claims as

---

Page 6 of  15 - DEFENDANTS' MOTION TO DISMISS RICO CLAIMS
UPM-L1\00435975.000

allegation in ¶ 15 of the SAC that it operates entirely in Haiti and has no operations in the United States, these more detailed allegations clearly describe an injury in Haiti, not here in the United States. The alleged harm arose from UPM making use of Digicel-Haiti's network in Haiti and from Digicel-Haiti receiving payment in Haiti at a rate that it views as too low. It is inconceivable that these injuries could properly be characterized as domestic to the United States.

Digicel-Haiti makes some additional, vague claims of harm, but those claims also address injuries in Haiti, not in the United States.  Thus, Digicel-Haiti complains that UPM's activities "disrupted" Digicel-Haiti's business operations. *See* SAC at ¶¶ 171, 191(b), 198(d). But Digicel-Haiti has alleged that it only operates in Haiti and has no United States operations, *see* SAC at ¶ 15, so any such "disruption" was not suffered in the United States. Similarly, it claims UPM's activities harmed its "goodwill," *see* SAC at ¶¶ 171, 191(a), 198(c), and its "commercial reputation," *see* SAC at ¶¶ 171, 191(c), 198(e). Given that Digicel-Haiti only operates in Haiti,

---

addressing bypass fraud, which entailed "programing … equipment, software, and SIM Cards to commit bypass fraud, and intentionally causing international calls *to misrepresent and conceal themselves to Digicel Haiti's network* as domestic calls … . Bypass fraud is committed when every single such call is illegally delivered *to Digicel Haiti's network*"); ¶ 184 (UPM engages in "illicit *use of Digicel Haiti … network*"); ¶ 189 (describes Count II RICO claims as addressing bypass fraud, which entailed "intentionally causing international calls *to misrepresent themselves to Digicel Haiti's network* as domestic calls through the manipulation and unintended use of SIM Cards, and the commission of individual acts of bypass fraud every time a call is improperly connected *to Digicel Haiti's network*"); ¶ 201 (UPM's alleged RLYH fraud was "to permit *calls to be made on Digicel Haiti's network* and to be fraudulently compensated for the calls made by third parties"); ¶ 203 (UPM's alleged RLYH fraud was "with the specific, fraudulent intent of using SIM Cards associated with the RLYH Plan as a means of trafficking international cellular calls to Haiti at domestic rates *through the improper and unauthorized use of Digicel Haiti's cellular network and infrastructure*"); ¶ 204 (UPM's use of RLYH involved "improperly using the acquired SIM Cards and other unauthorized equipment *to permit calls to be made on Digicel Haiti's network* and to fraudulently avoid compensating Digicel Haiti for *the calls terminated on Digicel Haiti's network*"); ¶ 211 (alleged fraud enabled "calls to be made *on Digicel Haiti's network* and to be fraudulently compensated for the calls made by third parties"). *See also* SAC at ¶¶ 37-38, 46, 68, 102, 104 117, 213-14.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

SAC at ¶ 15, any injury to "goodwill" or 'reputation" must have occurred there, not in the United States. Similarly, Digicel-Haiti's claims regarding injury to its "reputation" with the Haitian Government, *see* SAC at ¶¶171, 191(d), 198(f), describe a Haitian injury, not a domestic one. The same conclusion holds for its costs of investigating UPM's alleged conduct. *See* SAC at ¶¶ 72-73, 77-79, 198(b). This "investigation" evidently involved Digicel-Haiti monitoring its own network and working with the local Haitian police and a non-United-States-based investigatory firm. *Id.* at ¶¶ 77-79. So, the costs of undertaking this investigation are not domestic injuries.

Consideration of the specific factors the Third Circuit identified only confirms the conclusion that Digicel-Haiti has not alleged domestic injury. *Humphrey, supra,* 905 F.3d at 707. The first *Humphrey* factor is "where the injury itself arose." *Id.* Here, the injury arose in Haiti, as just discussed. Second is "the location of the plaintiff's residence or principal place of business." *Id.* Again, the answer is Haiti. Third is "where any alleged services were provided." *Id.* Yet again, Haiti. Fourth is "where the plaintiff received or expected to receive the benefits associated with providing such services." *Id.* Digicel-Haiti expected to be paid in Haiti for the services it provided in Haiti. Fifth is "where any relevant business agreements were entered into and the laws binding such agreements." *Id.* The relevant business arrangements are the purchase of SIM cards for use on Digicel-Haiti's network, which occurred in Haiti, and payments for "topping-up" (usage) for the accounts associated with those SIM cards, which Digicel-Haiti received in Haiti. Moreover, Digicel-Haiti relies on Haitian regulatory policies and rules to claim that UPM's "bypass" activities were problematic in the first place. The final question under *Humphrey* is "the location of the activities giving rise to the underlying dispute." *Id.* UPM engaged in some activities in the United States, but UPM's key actions about which Digicel-Haiti complains – buying SIM cards, importing GSM Gateways, and using Digicel-Haiti's

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

network to complete calls – all occurred in Haiti. Under any fair consideration of the *Humphrey* factors, Digicel-Haiti's injuries were suffered in Haiti, not in the United States.

It bears emphasis that Digicel-Haiti's RICO claims cannot be salvaged merely because some of UPM's activities occurred in the United States. As the Third Circuit noted, there is "a general consensus among the courts that … the location of a RICO injury depends on where the plaintiff 'suffered the injury'—not where the injurious conduct took place."  *Humphrey, supra,* 905 F.3d at 702. This conclusion follows inevitably from the Supreme Court's analysis in *RJR Nabisco.* The Court asked whether Congress' intended the private right of action under RICO to extend to injuries to business or property that occurred overseas. The question was not where the predicate acts leading to injury may have occurred, *see RJR Nabisco,* 136 S. Ct. at 2104-06; overseas predicate acts may support a RICO claim if the statutes criminalizing those acts have extraterritorial application. But that is a separate issue from whether civil RICO covers overseas *injuries.* As the Court stated:

> The same logic requires that we separately apply the presumption against extraterritoriality to RICO's cause of action despite our conclusion that the presumption has been overcome with respect to RICO's substantive prohibitions. "The creation of a private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion."

*RJR Nabisco,* 136 S. Ct. at 2106 (citation omitted).  The Court considered whether the statute indicated that Congress intended injuries suffered overseas to be redressable under RICO, and concluded that "Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries." *Id.* at 2111.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

Under any fair reading of the SAC, and under any fair reading of *RJR Nabisco* and subsequent case law, the only possible conclusion is that Digicel-Haiti has failed to allege a domestic injury, *i.e.,* an injury to "business or property" within the United States.

## III.    CONCLUSION

Digicel-Haiti's claimed injuries were suffered entirely in Haiti. But under *RJR Nabisco,* a civil RICO plaintiff must allege ***domestic*** injuries, that is, injuries to its "business or property" in the United States. Digicel-Haiti not only fails to allege that it has "business or property" in the United States that was injured by UPM's conduct; it affirmatively alleges that it "operates solely within Haiti [and] does not have any operations within the United States." SAC at ¶ 15. As a result, Digicel-Haiti's RICO claims UPM must be dismissed.

Dated: November 20, 2018.

TOMASI SALYER MARTIN

By:    /s/ Eleanor A. DuBay
Kathryn P. Salyer, OSB #883017
Eleanor A. DuBay, OSB #073755
ksalyer@tomasilegal.com
edubay@tomasilegal.com
Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By:    /s/ Christopher W. Savage
Christopher W. Savage
D.C. Bar #362657
chrissavage@dwt.com
Telephone: (202) 973-4200
*Admitted Pro Hac Vice*

Of Attorneys for Defendants

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2018, I served the foregoing

**DEFENDANTS' MOTION TO DISMISS RICO CLAIMS** on the following individuals by

electronic service to said individuals:

| | |
|---|---|
| Robert C.L. Vaughan | Richard K. Hansen |
| Cherine Smith Valbrun | Anne M. Talcott |
| Leah Storie | Schwabe, Williamson & Wyatt, PC |
| Kim Vaughan Lerner LLP | Pacwest Center |
| One Financial Plaza | 1211 SW 5th Ave, Suite 1900 |
| 100 SE Third Ave, Suite 2001 | Portland, OR  97204 |
| Fort Lauderdale, FL 33394 | Email: rhansen@schwabe.com |
| Email: rvaughan@kvllaw.com | Email: atalcott@schwabe.com |
| Email: cvalbrun@kvllaw.com | |
| Email: lstorie@kvllaw.com | |

Dated: November 20, 2018.

TOMASI SALYER MARTIN

By:    /s/ Eleanor A. DuBay
       Kathryn P. Salyer, OSB #883017
       Eleanor A. DuBay, OSB #073755
       ksalyer@tomasilegal.com
       edubay@tomasilegal.com
       Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By:    /s/ Christopher W. Savage
       Christopher W. Savage
       D.C. Bar #362657
       chrissavage@dwt.com
       Telephone: (202) 973-4200
       *Admitted Pro Hac Vice*

Of Attorneys for Defendants

Page 1 of 1 - CERTIFICATE Of SERVICE

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236