**Richard K. Hansen**
Email: rhansen@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.796.2958
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Kim Vaughan Lerner LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL  33394
Telephone: 954.527.1115
Facsimile: 954.527.1116

*Attorney for Counterclaim Defendants, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti; and Digicel USA Incorporated*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

|  |  |
|---|---|
| **UNIGESTION HOLDINGS, S.A.,** a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>     *Plaintiff,*<br><br>     vs.<br><br>**UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., and **UPM MARKETING, INC**., an Oregon corporation; **UPM TELECOM, INC**., an Oregon a/b/n; **UPM MARKETING, INC**., an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident; **BALTAZAR RUIZ**, an Oregon resident; **TYLER ALLEN**, an Oregon resident; and **DUY TRAN a/k/a BRUCE TRAN**,<br><br>     *Defendants;* | No. 3:15-cv-00185-SI<br><br><br>**RESPONSE IN OPPOSITION TO MOTION TO DISMISS RICO CLAIM** |

Page 1 -    RESPONSE TO MOTION TO DISMISS RICO CLAIM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**UPM TECHNOLOGY, INC.,** an
Oregon corporation;
                    *Counterclaim Plaintiff,*

    vs.

**UNIGESTION HOLDINGS, S.A.,** a
foreign corporation, d/b/a **DIGICEL
HAITI**; and **DIGICEL USA, INC.**
a Delaware corporation;
                    *Counterclaim
                    Defendants.*

Defendants' most recent filing is their latest attempt to further delay and obfuscate these proceedings. Defendants come now, after no less than five motions to dismiss, two amended complaints and answers, and countless hours of briefing, argument, and deliberation, with a "new" basis for dismissal of Plaintiff's RICO claim. Without explanation for the delay, Defendants seek dismissal of the RICO claim pursuant to a two-year old Supreme Court decision by filing a motion to dismiss on the day of the parties' first attempt at mediation. Even to the least cynical observer, the "gamesmanship" behind the timing of this filing is too obvious to ignore.

Procedurally, the timing of Defendants' motion is also suspect and the delay in filing this sixth motion to dismiss is inexcusable. Defendants' failure to properly raise this issue during the multiple rounds of briefing on the various Rule 12(b)(6) issues constitutes a waiver of this new argument regarding whether Plaintiff has adequately stated a claim for RICO damages. Aside from the issue of waiver, the motion is also substantively deficient.

Page 2 -    RESPONSE TO MOTION TO DISMISS RICO CLAIM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Defendants rely on *RJR Nabisco, Inc. v. European Community,* __ U.S. __, 136 S. Ct. 2090 (2016) ("*RJR Nabisco*") to support their late-filed motion.  This case, which is factually and legally distinguishable from the instant case, resulted in a divided opinion and the fallout from its "holding" has caused more confusion than consensus.

*RJR Nabisco* notwithstanding, Plaintiff has sufficiently alleged here that Defendants fraudulent conduct caused injury to Plaintiff in the U.S.  Furthermore, courts have found that where, as here, a [fraudulent] scheme was executed almost exclusively in the U.S. by domestic defendants, it warrants the adjudication of the RICO claim in the U.S. court with jurisdiction over the defendants.  This Court can and should continue to adjudicate UPM's and the individual defendants' fraudulent conduct which originated in and was directed from Oregon.

## MEMORANDUM OF LAW

### I.    DEFENDANTS' FAILURE TO TIMELY BRING THIS MOTION WARRANTS DENIAL

Defendants state that they bring their newest motion based on Rule 12(b)(6). [E.C.F. 178 at 5].  Rule 12(b) is clear.  "A motion asserting any of these [Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  After the pleadings are at issue, arguments regarding failure to state a claim can only be brought under certain circumstances, but not including a motion to dismiss.  *See* Fed. R. Civ. 12(h)(2).  This is particularly true where, as here, numerous Rule 12(b)(6) motions have been briefed, deliberated and ruled upon over the course of this case to date. It is inappropriate and unreasonable—not to mention a deviation from the applicable rules—for Plaintiff to have to constantly defend against these repeated and never-ending attacks at the expense of moving this litigation forward.  Defendants should not now be

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

rewarded by having this inexplicably delayed motion heard so late in the proceedings. Defendants' delay creates an extreme prejudice to Plaintiff in the form of further time and expense. At this juncture, Plaintiff should be permitted to move forward with the entirety of its case as pleded and tested and retested several times over.

## II.   DEFENDANTS' FRAUDULENT CONDUCT HAS CAUSED PLAINTFF TO SUFFER DOMESTIC INJURY

The allegations in Plaintiff's Complaint are sufficient to establish that Plaintiff suffered domestic damages, including fraudulent manipulation of the Digicel SIM Cards in Oregon, bypass or avoidance of the Digicel switches in New York and Miami, the failure to generate and record accurate Call Data Reports ("CDRs") to be recorded at the U.S. based switches, loss of customer goodwill and business interruptions. Indeed, the main thrust of Defendants' motion seems to be that because Plaintiff is a foreign operated entity it cannot suffer domestic injury. Such a simplistic approach with any purported bright line rule, has been repeatedly rejected and courts have instead, employed a broad and more encompassing interpretation of domestic injury. *See infra.* II. b - c

### a.   Defendants Reliance on *RJR Nabisco* is Misplaced

In *RJR Nabisco* the Court explicitly failed to reach the analysis of what constitutes a domestic versus foreign injury. This is not surprising as the Court did not have to reach that inquiry because respondents in that case stipulated to a lack of domestic injury by waiving their damages claims for domestic injuries in the District Court. *RJR Nabisco,* 136 S. Ct. at 2111. In *RJR Nabisco* the Court's analysis focused solely on whether recovery is allowed for foreign injuries, not what makes an injury foreign. *Id.* In its holding, the Court cautioned, "[t]he application of [the domestic injury] rule in any given case will not always be self-evident, as disputes may arise as to whether a particular alleged injury is

Page 4 -    RESPONSE TO MOTION TO DISMISS RICO CLAIM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

'foreign' or 'domestic.'" *Id.* As the dissent in *RJR Nabisco* accurately foretold, this has led to lower courts being tasked, without guidance, to classify the nature and "location" of RICO injuries to determine whether *RJR Nabisco*'s exclusion of solely foreign injuries applies. Out of necessity, lower courts are now taking a piece-meal, fact-based approach to cobble together a methodology that best fits each individual case. However, as Defendants note, neither the Ninth Circuit nor the District of Oregon have opined on how to best evaluate this issue or apply this holding in any particular case.

      b.  <u>Domestic Defendants Operating a Domestic Scheme Can Cause Domestic Injury to a Foreign Plaintiff</u>

Not surprisingly, in cases where, like here, U.S. based defendants operate a domestic scheme, courts have found that it would be patently unfair to foreclose a foreign plaintiff from redressing its harm in U.S. courts. Instead, some courts have adopted a more nuanced approach to finding domestic injury. *See, e.g., GolTV, Inc. v. Fox Sports Latin Am., Ltd.,* No. 16-24431-CIV, 2018 U.S. Dist. LEXIS 29836, at *62 (S.D. Fla. Jan. 26, 2018) (finding injury to property interest through the loss of bids to purchase U.S. and Americas broadcasting rights); *Akishev v. Kapustin*, No. CV 13-7152 (NLH) (AMD), 2016 U.S. Dist. LEXIS 169787, 2016 WL 7165714, at *8 (D.N.J. Dec. 8, 2016) (finding domestic injury because defendants chose "to operate their fraudulent scheme from New Jersey and Pennsylvania," such that "the *locus delecti* of the crimes committed is the United States"); *Tatung Co., Ltd. v. Shu Tze Hsu*, No. SA CV 13-1743 (DOC) (ANX), 217 F. Supp. 3d 1138, 2016 U.S. Dist. LEXIS 157450, 2016 WL 6683201, at *7-8 (C.D. Cal. Nov. 14, 2016) (declining to follow *Bascuñan* because conduct of defendants so clearly targeted California that "[i]t would be absurd to find that such activity did not result in a domestic injury to Plaintiff").

Page 5 -    RESPONSE TO MOTION TO DISMISS RICO CLAIM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Similarly, where the Defendants chose to conduct their fraudulent scheme from Oregon, this Court can and should employ a fair and balanced analysis of the *locus delecti* of Defendants' conduct, Oregon, and conclude that Plaintiff suffered damages and injury here in the U.S.  It is beyond dispute that Defendants operated primarily from Oregon and that they are residents of the state.  Conversely, in many of the cases relied upon in Defendants' motion, the defendants in those matters had significant foreign conduct or were foreign defendants themselves.  *See e.g Bascuñan v. Elsaca*, 874 F. 3d 806 (2d Cir. 2018) (defendants were foreign individuals and entities whose use of U.S. bank accounts was the source of the court's jurisdiction).  Here, UPM and its principals neatly tucked themselves, literally, in the farthest corner of the United States from Haiti and hid behind their computers and SIM Servers to execute a fraud targeted directly at Plaintiff and other similarly situated targets.  As the court in *Tatung* reasoned, it would be "absurd to find that such conduct did not result in a domestic injury" to Plaintiff.  *Tatung Co., Ltd.,* 217 F. at 1156.

In *Tatung* seven of the alleged individual conspirators were American and six of the alleged entity conspirators were American.  *Id.*  The conspirators allegedly siphoned away funds through a series of fraudulent transfers to avoid paying a judgment owned to a plaintiff, a foreign corporation.  *Id.*  Rejecting defendants' argument that a foreign corporation could not suffer domestic injury, the court found that the defendants specifically targeted California with the aim of harming plaintiff in California.  The court ultimately held that the defendants' actions resulted in a domestic injury to the plaintiff.  *Id.*

Page 6 -    RESPONSE TO MOTION TO DISMISS RICO CLAIM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Similarly, Plaintiff has alleged and suffered domestic injury where UPM's bypass operations caused the fraudulent and improper use of Digicel SIM cards in Oregon, caused the avoidance of the Digicel switches in Miami and New York, caused the failure to generate and record accurate CDRs at the U.S. based switches, caused Plaintiff to lose customer goodwill with callers located in the U.S, and caused the loss of revenue from international telecommunications traffic.

   c. The Fraudulent Avoidance of Digicel Switches and Preventing the Creation of Accurate CDRs is a Domestic Injury

Like the Third Circuit case of *Humphrey v. GlaxoSmithKline PLC*, "[t]his case presents an excellent example of why the inquiry required under § 1964(c) must be undertaken in the context of the specific injuries alleged in a given case rather than relying on a one-size-fits-all approach or bright-line rule." *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 702 (3d Cir. 2018). The *Humphrey* court acknowledged that different types of alleged injuries and factual scenarios require courts to closely evaluate the unique factual circumstances of each case. "[R]elying on such tangible factors as the location of lost funds, damaged property or plaintiff's residence is not only of little use, but it could also be very misleading. Instead, we must consider multiple factors in determining whether the injuries in question were suffered in the United States or abroad." *Id.*

Where a primarily U.S. based enterprise acts purposefully to defraud a foreign corporation while hiding behind technology, software and the internet, it would be unimaginable that the foreign corporation would be denied recourse in the jurisdiction where the enterprise is located and from where the fraud was directed. As the Federal District Court for the District of New Jersey held:

Page 7 -    RESPONSE TO MOTION TO DISMISS RICO CLAIM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

> To rule this case outside § 1964(c) would allow the United States to become a haven for internet fraud despite Congress' dual intent both to create a private cause of action under RICO and incorporate predicate acts of mail and wire fraud which extend expressly to transactions affecting foreign commerce. A person responsible for a United States-based fraudulent scheme to defraud people overseas should not escape liability under a federal law that permits private causes of action to redress that fraud simply because the scheme targets foreign citizens over the internet.

*Ardak Akishev v. Sergey Kapustin*, Civil Action No. 13-7152(NLH)(AMD), 2016 U.S. Dist. LEXIS 169787 at * 19 (D.N.J. Dec. 8, 2016). Here too, UPM should not be permitted to hide behind its internet-based bypass scheme to steal from and damage foreign businesses with impunity, particularly where the scheme involves manipulating the process of creating the CDRs—a business function that is carried out in the U.S.

In *Akishev* the court was tasked with deciding whether an alleged RICO enterprise, run entirely in the U.S, that defrauded customers into buying non-existent vehicles over the internet through various "bait-and-switch" techniques, could be held responsible for their actions in a U.S. court where the victim-plaintiffs were individuals located in Russia. *Id.* The court held that "[t]he key to this case is that plaintiffs suffered their injuries the moment they clicked the computer mouse—on a United States-based website representing United States-based car dealerships—and ordered and paid for a car whose condition was materially misrepresented or did not even exist at all." *Id.* In other words, the plaintiffs were injured the moment the internet fraud was initiated.

Likewise, Plaintiff here was—at the latest—injured at the very moment that an international call "bypassed" the switches in the U.S. The inability to accurately create CDR reports as a result of UPM's fraudulent concealment of the bypassed call, is where Plaintiff suffers its injury in the U.S. At that moment, Plaintiff incurs a domestic injury as the CDR that is normally created for an international call never materializes and the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

call cannot be properly tracked for billing.  It is akin to the moment a person trying to avoid paying a fare jumps the proverbial turnstile.  The injury is not felt at the end of the journey, but at the moment that the perpetrator "bypasses" the ticket booth and jumps the turnstile.  As Plaintiff has alleged, a proper international CDR is created at the U.S. switch and it is the basis for all of Plaintiff's billing and reconciliation procedures. Without a CDR it is impossible to even identify inbound international calls.  As alleged:

25. When the call is directed through Digicel USA's switch in Miami or New York, a Call Detail Record ("CDR") is created at the switch. The CDR is complete when the call is completed.

26. The CDR is a record generated by a switch that contains certain call information including the telephone number of the Caller, the number of the Recipient, the time the call was made, the call duration, and the ingress or egress status of the call. The information in the CDR regarding the calling and called telephone numbers is contained in the electronic signaling information transmitted from the sending switch as part of the technical process of handing off the call from one switch to another. In this instance, the Digicel Haiti switch records when the call begins and the duration of the call.

27. For each incoming international call a separate and simultaneous CDR is created by a switch located in Haiti and operated by Digicel Haiti. Digicel Jamaica uses both the CDRs from the switches in Miami/New York and the CDRs from the switch in Haiti to create reports used to reconcile the number of calls made to Haiti and the number of minutes that should be invoiced to the appropriate parties. Ongoing analysis of the CDRs and their attendant reports are a means to identify and combat fraudulent use of Digicel Haiti's network, such as bypass activities.

. . .

29. . . . Accordingly, the usual revenue associated with an international call is avoided because it cannot be properly accounted for or subsequently invoiced and collected. This results in a direct and individualized injury to Digicel Haiti in the amount of lost call revenues for international calls terminated through bypass fraud.

Page 9 -    RESPONSE TO MOTION TO DISMISS RICO CLAIM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

ECF 104 at ¶¶ 25-27, 29. Like in *Tatung,* this is the domestic component of Plaintiff's business that Defendants have sabotaged. It is one of Plaintiff's domestic injuries, and the Court should allow Defendants RICO claim to proceed.[1]

### d. Plaintiff's Loss of Customer Goodwill is Also A Domestic Injury

Digicel has also plead injury in the form of its loss of ability to control the services offered to its current customers which has resulted in business interruptions and the loss of customer goodwill.[2] This is not a negligible claim. There are very real scenarios in which UPMs bypass operations cause significant changes in Plaintiff's ability to service its clients located in the U.S. This results in domestic injury to Plaintiff. *See Humphrey v. GlaxoSmithKline PLC,* 905 F.3d 694, 704 n.72 (3d Cir. 2018) ("If the plaintiff has suffered an injury to his or her business, the court should ask where substantial negative business consequences occurred.").

When a customer of Plaintiff located in the U.S. makes a call back to Haiti, if that call is picked up by a carrier that has a relationship with UPM, this call may be sent to Haiti via UPM's bypass service. As a result of this call being transmitted through UPM's bypass operations, the call will present itself to the intended receiver as coming from a random, local Haitian number, one associated with a UPM SIM Card, not the actual customer that placed the call. This misrepresentation presents a host of issues. Very often people will not answer a call unless they recognize the number. This has real

---

[1] If the Court finds only some of Digicel Haiti's injuries are domestic, the RICO claim for those injuries must proceed. *See Bascuñán* 874 F.3d at 818 ("[I]f a plaintiff alleges more than one injury, courts should separately analyze each injury to determine whether any of the injuries alleged are domestic. If one of the alleged injuries is domestic, then the plaintiff may recover for that particular injury even if all of the other injuries are foreign.")

[2] ECF 104 at ¶¶ 104, 171. 191, 198.

Page 10 -    RESPONSE TO MOTION TO DISMISS RICO CLAIM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

consequences for Plaintiff's customers.  Failure to complete the calls because of refusals to answer can result in missed business opportunities or neglected personal obligations. To be sure, Plaintiff is on the receiving end of customer complaints when this takes place. Additionally, the strain placed on Plaintiff's network by bypass calls and the increase in illegitimate calls can cause business interruptions that also impact Plaintiff's customers calling from the U.S.  This is yet another domestic (U.S.) injury sustained by Plaintiff. Defendants' intentional domestic conduct caused domestic injury to Plaintiff and the motion to dismiss must be denied.

### III.    Insulating Domestic Defendants from Liability is A Dangerous Approach That This Court Should Not Adopt

Emphasizing the implicit unfairness of using extraterritoriality as a shield to carry out international fraudulent schemes, the *Akishev* court concluded:

> In a fraudulent and criminal scheme that crosses borders, the extraterritoriality analysis should be a two-way street. The Plaintiffs here could have been anywhere in the world and actually came from several countries. Defendants, however, choose to operate their fraudulent scheme from New Jersey and Pennsylvania. The *locus delecti* of the crimes committed is the United States. Nothing in 18 U.S.C. § 1964(c) suggests Congress intended to exclude a scenario like this one from the reach of a private victim, even a foreign one.

*Akishev*, 2016 U.S. Dist. LEXIS 169787 at *20-21.  UPM has followed this precise path. UPM and its principals chose to operate out of Oregon and direct an international fraudulent scheme from Oregon.  From Oregon, Defendants resell Plaintiff's telephone minutes and re-direct calls around the proper international gateways and switches to make a profit.  From Oregon, Defendants ordered and received SIM Cards and shipped equipment around the world to build this "business" whose success is conditioned on its ability to conceal itself from the very networks it relies upon to function.  It is

Page 11 -    RESPONSE TO MOTION TO DISMISS RICO CLAIM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

inconceivable that Congress intended to exclude or immunize a fraudulent operation like this one from the reach of a private victim. As the *Tatung* court cautioned:

> This Court is also concerned that the *Bascuñan* rule amounts to immunity for U.S. corporations who, acting entirely in the United States, violate civil RICO at the expense of foreign corporations doing business in this country. It cannot be the case that the mere fact that a loss is economic means that foreign corporations are unable to avail themselves of the protections of civil RICO, even in cases where all of the actions causing the injury took place in the United States.

*Tatung Co.*, 217 F. Supp. 3d at 1155. Rather than allowing domestic enterprises to operate with global impunity—immune from prosecution or liability for harms caused to others— a number of courts, including one in this circuit, have denounced the notion of isolating all foreign plaintiffs and instead, have employed a more holistic analysis to the issue of determining domestic injury. Similarly, this Court should not allow the Defendants here to operate with impunity. Upon careful consideration of the location of Defendants' actions and the impact of those actions on Plaintiff's ability to run its business, the Court must deny Defendants' latest motion to dismiss.

## IV.    <u>Plaintiff's Only Remedy is With This Court</u>

This Court can take comfort in the fact that the concerns regarding forum shopping or the reluctance of foreign plaintiffs to seek redress in foreign courts expressed in *RJR Nabisco* are not present here. *RJR Nabisco, Inc.* 136 S. Ct. at 2107 (courts have to be aware of foreign citizens seeking to bypass their home countries' less generous remedies). Rather, Defendants have set up shop in Oregon and this is where any plaintiff, foreign or domestic, should have proper recourse. Defendants' preferred, myopic view of what constitutes a domestic injury would lead to a much greater judicial concern, the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

immunization of U.S. enterprises running internet-based scams, targeted at foreign corporations and persons.

## CONCLUSION

Based on the foregoing, Plaintiff, Digicel Haiti, respectfully requests that the Court deny Defendants' Motion to Dismiss the RICO Claim. In the event the Court is inclined to grant the motion, in whole or in part, Plaintiff requests leave to amend the Complaint.

Dated: December 14, 2018

Respectfully submitted,

| | |
|---|---|
| KIM VAUGHAN LERNER LLP<br><br>Robert C. L. Vaughan (*Pro Hac Vice*)<br>Cherine Smith Valbrun (*Pro Hac Vice*)<br>Leah B. Storie (*Pro Hac Vice*)<br>One Financial Plaza, Suite 2001<br>Fort Lauderdale, FL  33394<br>Telephone:     (954) 527-1115<br>Facsimile:     (954) 527-1116<br>E-mail: rvaughan@kvllaw.com<br><br><br><br>*Attorneys for Counterclaim Defendants, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti and Digicel USA, Inc.* | SCHWABE WILLIAMSON & WYATT, P.C.<br><br>By: /s/*Richard K. Hansen*          .<br>Richard K. Hansen, OSB #832231<br>Email: rhansen@schwabe.com<br>Telephone: (503) 796-2958<br><br><br>*Attorneys for Counterclaim Defendants, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti and Digicel USA, Inc.* |

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December 2018, I caused to be served a copy

of the foregoing RESPONSE IN OPPOSITION TO MOTION TO DISMISS RICO CLAIM

on the following person via the Court's CM/ECF electronic service system:

| | |
|---|---|
| Eleanor A. DuBay, OSB #073755<br>edubay@tomasilegal.com<br>Tomasi Salyer Martin<br>121 SW Morrison Street, Suite 1850<br>Portland, Oregon 97204-3136<br>Telephone: (503) 894-9900<br><br>*Attorneys for Counterclaim Plaintiff* | Christopher W. Savage (*Pro Hac Vice*)<br>chrissavage@dwt.com<br>Davis Wright Tremaine LLP<br>1919 Pennsylvania Ave. NW Ste. 800<br>Washington DC 20006-3401<br>Tel: (202) 973-4200<br><br>*Attorneys for Counterclaim Plaintiff* |

/s/ Richard K. Hansen_____
          Richard K. Hansen

Page 14 -    RESPONSE TO MOTION TO DISMISS RICO CLAIM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900