**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
ksalyer@tomasilegal.com
edubay@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
(admitted *pro hac vice*)
chrissavage@dwt.com
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

        Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**, <br><br> Plaintiff, <br><br> v. <br><br> **UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**., and **UPM MARKETING, INC**., an Oregon corporation; **UPM TELECOM, INC**., an Oregon a/b/n; **UPM MARKETING, INC**., an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO**, an Oregon resident; **BALTAZAR RUIZ**, an Oregon resident; and **TYLER ALLEN**, an Oregon resident; and **DUY "BRUCE" TRAN,** an Oregon resident, <br><br> Defendants | Case No. 3:15-CV-00185-SI <br><br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS RICO CLAIMS** |

**UPM TECHNOLOGY, INC.** d/b/a **UPM TELECOM, INC.,** and **UPM MARKETING, INC.,** an Oregon corporation; **UPM TELECOM, INC.,** an Oregon a/b/n; **UPM MARKETING, INC.**, an Oregon a/b/n; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO,** an Oregon resident; **BALTAZAR RUIZ,** an Oregon resident; **TYLER ALLEN,** an Oregon resident; and **DUY TRAN** a/k/a **BRUCE TRAN**, an Oregon resident

        Defendants and Counterclaim-Plaintiffs,

        v.

**UNIGESTION HOLDING, S.A.,** a foreign corporation, d/b/a **DIGICEL HAITI;** and **DIGICEL USA, INC.,** a Delaware corporation,

        Counterclaim-Defendants

The Supreme Court's ruling in *RJR Nabisco, Inc. v. European Community,* ___ U.S. ___ 136 S. Ct. 2090 (2016), limits civil claims under the Racketeer Influenced Corrupt Organization Act ("RICO") to those involving "domestic injuries." In its Motion to Dismiss RICO Claims ("Motion") (ECF #178), Defendant UPM Technology, Inc. ("UPM") explained that *RJR Nabisco* was fatal to the RICO claims brought by Unigestion Holding, S.A., d/b/a Digicel Haiti ("Digicel-Haiti"). Nothing in Digicel-Haiti's Response in Opposition to Motion to Dismiss RICO Claims ("Opposition") (ECF #182) undermines that conclusion. As explained in the Motion and below, because Digicel-Haiti's alleged injuries were suffered in, and relate to, its business in Haiti, its RICO claims must be dismissed.

## I.   UPM'S MOTION IS TIMELY; UPM HAS NOT WAIVED ITS RIGHT TO SEEK DISMISSAL OF DIGICEL-HAITI'S CIVIL RICO CLAIMS; AND UPM IS NOT ENGAGED IN "GAMESMANSHIP"

Digicel-Haiti initially argues that UPM's Motion is untimely, that filing it reflects some kind of "gamesmanship," and that UPM should be deemed to have waived its right to seek

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

dismissal of Digicel-Haiti's RICO claims. Opposition at 2-4. None of these arguments has merit.

Digicel-Haiti is correct that normally a motion to dismiss under Rule 12(b)(6) is filed prior to filing a responsive pleading (in this case, UPM's answer to Digicel-Haiti's RICO claims). However, when a Rule 12(b)(6) motion is filed after that time, it is treated as a motion for judgment on the pleadings under Rule 12(c), to which the same legal standard applies. *See, e.g., Hansen v. Group Health Corp.,* 2016 U.S. Dist. LEXIS 66191, [*6] n.1 (W.D. Wash. May 19, 2016), *citing Aldabe v. Aldabe,* 616 F.2d 1089, 1093 (9th Cir. 1980).[1] Here, UPM has filed its Answer to Digicel-Haiti's RICO claims, so the pleadings on those claims are complete. As a result, UPM's Motion attacking those claims – considered as being raised under Rule 12(c) – is appropriate and timely.

This alone is a sufficient basis for rejecting Digicel-Haiti's argument that UPM has somehow waived its right to assert that Digicel-Haiti's RICO claims are foreclosed by *RJR Nabisco's* domestic injury requirement. In this regard, Digicel-Haiti cites no precedent, or even logic, in support of its claim of waiver. In particular, Digicel-Haiti does not claim (and cannot claim) that it has been prejudiced in any way by virtue of the timing of UPM's Motion. As of now, no significant discovery has occurred regarding the RICO claims. Moreover, as UPM understands Rule 12(c), it could have waited to file until after Digicel-Haiti answers UPM's counterclaims. From that perspective, by filing now, UPM has raised the issue earlier than it needed to, which benefits Digicel-Haiti – by giving it a fuller understanding of UPM's position – rather than creating any prejudice.

As to Digicel-Haiti's claims of "gamesmanship," while UPM is constrained by the confidentiality obligations surrounding mediation from fully responding, we nonetheless note

---

[1] Treating UPM's Motion as arising under Rule 12(c), UPM adopts the discussion of the applicable legal standard from the Court's ruling on Digicel-Haiti's motion to dismiss UPM's counterclaims. *See* ECF #154 at 3. For purposes of the present Motion, UPM treats the factual allegations in the SAC as true.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

several points. First, while Digicel-Haiti correctly asserts that UPM's Motion was **filed** "on the day of the parties' first attempt at mediation," Opposition at 2, Digicel-Haiti does **not** assert that UPM **raised** the RICO "domestic injury" issue for the first time on that day. Second, as reported to the Court on the record during the December 7, 2018, status conference, a second mediation session was held on December 6, 2018, and a third is planned for January 2019, so filing the motion plainly did not disrupt ongoing mediation and associated settlement discussions. Third, to the extent that UPM came to believe – as it did – that Digicel's RICO claims are unsustainable in light of *RJR Nabisco,* laying out its arguments on that point clearly, on the record, early in the mediation process, and before any significant discovery regarding the RICO claims has occurred, will tend to facilitate settlement by ensuring that both parties are working from a parallel understanding of the issues in play. Fourth, if settlement is not ultimately achievable, a ruling from this Court on UPM's Motion, as soon as possible after settlement discussions conclude, will materially aid in clarifying the scope of reasonable discovery and advance the efficient resolution of the case, whether on summary judgment or at trial.  Far from constituting "gamesmanship," therefore, UPM's filing the motion when it did forthrightly and efficiently brings the issue to the table, both for purposes of settlement discussions and – should those discussions fail – for purposes of the ongoing efficient management of the case.[2]

/ / /

/ / /

/ / /

/ / /

---

[2] If the Court agrees with UPM that Digicel-Haiti's RICO claims are unsustainable under *RJR Nabisco,* Digicel-Haiti's case boils down to its "technological fraud" claims, as to which any material factual disputes are likely to be few in number and tightly focused. Notably, large swaths of potentially contentious discovery and evidence regarding the nature and scope of any alleged RICO enterprise and/or RICO conspiracy would be removed from the case, and the parties would necessarily focus on the two questions that are at the heart of it: Did UPM commit fraud by reselling Digicel-Haiti's service? Did Digicel-Haiti violate the Communications Act by cutting off UPM's services?

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

## II. DIGICEL-HAITI DOES NOT EXPLAIN HOW IT HAS SUFFERED "DOMESTIC INJURY" UNDER *RJR NABISCO.*

### A.    Digicel-Haiti Obfuscates the Relevant Legal Standard.

In its Motion, UPM explained that *RJR Nabisco, Inc. v. European Community,* ___ U.S. ___ 136 S. Ct. 2090 (2016), held that civil RICO actions must be based on "domestic injuries" to a plaintiff's "business or property," *i.e.,* injuries to "business or property" located in the United States. 136 S. Ct. at 2106-11. Motion at 1-2.  UPM discussed decisions from the Second, Third, and Seventh Circuits regarding how to apply this requirement, and also discussed all of the district court decisions on the point from within the Ninth Circuit of which UPM is aware.  Motion at 2-4.  UPM also provided a detailed review of the Second Amended Complaint ("SAC"), noting that Digicel-Haiti flatly proclaims that it has no business operations in the United States and providing citations to literally dozens of allegations in which Digicel-Haiti characterizes its injuries as arising in Haiti, and/or as pertaining to its network and operations in Haiti.  Motion at 4-8. Finally, UPM explained how the facts alleged in the SAC, considered in light of the relevant case law, show that Digicel-Haiti has failed to allege the required "domestic injury," compelling dismissal of its RICO claims. Motion at 4 n.2, 5, 8-9.

Digicel-Haiti tries to downplay the significance of the Supreme Court's ruling in *RJR Nabisco,* characterizing it as "a divided opinion" and using scare quotes to suggest that "the fallout from its 'holding' has caused more confusion than consensus." Opposition at 3. In this same vein, Digicel-Haiti notes that while *RJR Nabisco* declared that RICO only permits recovery for domestic injuries, the Court in that case did not explain how to determine which injuries are domestic.  Opposition at 4-5.

These arguments are meritless. *RJR Nabisco* is an authoritative statement of the law – civil RICO clearly now contains a "domestic injury" requirement.  And while the Court in *RJR Nabisco* did not dictate how to distinguish domestic from foreign injuries, many district

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

courts and three courts of appeals have undertaken that task. Indeed, most of UPM's Motion is devoted to explaining that case law and applying it to the facts of this case.[3]

Digicel-Haiti basically ignores both the relevant case law and its own allegations in the SAC. The question is whether the injuries Digicel-Haiti allegedly sustained are fairly characterized as foreign or domestic. Digicel-Haiti, however, initially focuses on the true but irrelevant fact that a foreign business can sustain domestic injuries as a result of a defendant's domestic conduct. Opposition at 5-6. While that certainly *can* happen, UPM's Motion shows that this is not what happened here – over and again, the SAC describes Digicel-Haiti's injuries as relating entirely to its business operations and its network in Haiti. Motion at 4-8. This is so even though some of UPM's activities occurred within the United States. Again, the question under *RJR Nabisco* is not where the defendant's alleged predicate acts occurred, it's where the plaintiff's alleged injuries were sustained.

The cases that Digicel-Haiti cites do not support any different legal standard. In *GolTV, Inc. v. Fox Sports Latin Am., Ltd.,* No. 16-24431-CIV, 2018 U.S. Dist. LEXIS 29836 (S.D. Fla. Jan. 26, 2018), the plaintiff was trying to acquire broadcast rights that included the United States, and the alleged RICO violations prevented the plaintiff from obtaining those rights. This was plainly an injury to a domestic business – broadcasting within the United States. *Id.* at [*62].

---

[3] Digicel-Haiti inexplicably asserts that "the main thrust of Defendants' motion seems to be that because Plaintiff is a foreign operated entity it cannot suffer domestic injury." Opposition at 4. UPM noted that the Seventh Circuit has adopted essentially that rule and that applying it would doom Digicel-Haiti's RICO claims. *See* Motion at 2-3, 4 n.2. The bulk of UPM's Motion, however, is focused on the more nuanced analysis of the sort reflected in district court decisions from the Ninth Circuit and the Third Circuit's ruling in *Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694 (3rd Cir. 2018). To the extent that Digicel-Haiti is an entirely "foreign ***operated*** entity" – that is, to the extent that is has no business or operations in the United States – then it is hard to see how it could suffer a "domestic" injury. That said, UPM's Motion is not based on formulaic application of some bright-line rule; it is based on a detailed consideration of the allegations in the SAC about Digicel-Haiti's operations and the injuries it claims to have sustained.

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

Digicel-Haiti seems to place principle reliance on *Akishev v. Kapustin,* No. CV 13-7152 (NLH) (AMD), 2016 U.S. Dist. LEXIS 169787, 2016 WL 7165714, at *8 (D.N.J. Dec. 8, 2016), an early case applying *RJR Nabisco.  See* Opposition at 5, 7-8.  In *Akishev,* plaintiffs were defrauded in the United States by being induced to pay excessive prices on a United States website for automobiles purportedly located in the United States (but to be shipped overseas). The court found that the domestic injury requirement was met even though the victims reached the United States via the Internet rather than by physically traveling here. The court first observed that if the plaintiffs had physically traveled to the United States and become the victim of the fraudulent transaction while physically here, the injury would clearly have occurred here. 2016 U.S. Dist. LEXIS 169787 at [*17]. The court then, reasonably enough, analogized the online activity to physical travel to the United States, *id.* at [*17] – [*18], and, based on that analogy, found the injury to have occurred here.[4]

*Akishev's* relevance to this case is attenuated, and not only because of its unique facts.  On the merits, *Akishev's* status as reliable precedent regarding how to apply the domestic injury test is questionable. The case arose in 2016 in the District of New Jersey – within the Third Circuit – and, as noted above, the Third Circuit in *Humphrey,* in 2018, adopted its multi-factor test for determining whether injuries are domestic in nature.  *Humphrey,* not *Akishev,* reflects the Third Circuit's view of how to assess whether a RICO plaintiff has alleged domestic injury. UPM specifically addressed the *Humphrey* test in its motion, *see* Motion at 8-9, and

---

[4] *Akishev* is an example of a more general issue in Internet law, which is that many activities in cyberspace are in some sense location-independent, making it somewhat challenging to identify "where" online activity should be deemed to occur for purposes of legal principles that inherently presume the existence of a relevant physical location. *See generally* Orin S. Kerr, *The Problem of Perspective in Internet Law,* 91 Geo. L.J. 357 (2003). While interesting, these issues have no bearing on the case at hand, which involves sending telephone calls for termination on a specific, identified, physical network – Digicel-Haiti's wireless network in Haiti – and determining how much Digicel-Haiti should be paid for the service it provided there. *Akishev* is certainly not authority for a general proposition that RICO's domestic injury requirement is met when a United States entity engages in predicate acts that entail "hiding behind technology, software and the internet." *See* Opposition at 7.

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

showed that applying that test leads to the conclusion that Digicel-Haiti's injuries are foreign, not domestic.

Finally, Digicel-Haiti invokes *Tatung Co. v. Shu Tze Hsu,* 217 F. Supp. 3d 1138 (C.D. Cal.), supposedly for the proposition that "because conduct of defendants so clearly targeted California … '[i]t would be absurd to find that such activity did not result in a domestic injury to Plaintiff.'" Opposition at 5. With due respect, this misstates the court's holding in *Tatung.* Here is how the court described the underlying facts:

> Here, Plaintiff is a foreign corporation doing business in the United States with a corporation wholly owned by an American company. Although it is a foreign corporation, Plaintiff maintains a "hub" in the United States.
>
> In the course of doing business, Plaintiff extended credit and delivered goods to its creditor in the United States. When Plaintiff was not paid by its creditor, it pursued arbitration in the United States pursuant to a binding arbitration agreement that required arbitration to take place in Los Angeles, California. The arbitration demand was delivered to the creditor at their California address. After three years of extraordinarily contentious arbitration, Plaintiff received an arbitration award enforceable in California. This award was then confirmed by the state court of California.
>
> However, Plaintiff was never able to collect the award or the judgment because, it alleges, its creditor and many others engaged in a RICO conspiracy to render the creditor an empty shell. Seven alleged individual conspirators are American citizens. Six alleged entity conspirators are American citizens. As part of the alleged conspiracy, assets were siphoned out of the creditor through fraudulent transfers. At least one of the eventual transferees was an American corporation.

*Tatung,* 217 F. Supp. 3d at 1155-56 (citations and footnotes omitted). After reviewing these facts – facts that clearly show that the plaintiff's domestic United States business was harmed when it was not paid for goods delivered in the United States and could not collect on a United States arbitration award – the court stated: "***In light of the facts described above,*** the Court agrees that the 'defendants specifically targeted their conduct at California' ***with the aim of 'thwarting Tatung's rights in California.'*** It would be absurd to find that such activity did not result in a domestic injury to Plaintiff." *Id.* at 1156 (emphasis added).

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

In Digicel-Haiti's telling, *Tatung* stands for the proposition that the domestic injury requirement can be based on where the defendant "targeted" its activities. But the emphasized language shows that the court's conclusion that domestic injury existed in that case was based on facts showing that the underlying business transactions all occurred in California and that the injury at issue was suffered with respect to the plaintiff's "rights in California," including its right to collect on a California arbitration award.

At bottom, Digicel-Haiti relies on snippets of language from a few cases to avoid the main point, which is that assessing whether a plaintiff's injury is "domestic" requires a fact-specific consideration of a range of potentially relevant factors. UPM provided such a fact-specific analysis in its motion. By contrast, with a few exceptions, Digicel-Haiti ignores the facts alleged in the SAC describing the nature of its injuries. We now turn to those exceptions.

**B.    The SAC Alleges Foreign, Not Domestic, Injuries.**

As UPM emphasized in its motion, Digicel-Haiti plainly and unequivocally alleges that it "operates solely within Haiti" and that it "does not have any operations within the United States." SAC at ¶ 15. *See* Motion at 5, 7, 10.  Having proclaimed that it has no domestic business operations, it would seem a foregone conclusion that any injuries Digicel-Haiti may have sustained are foreign in nature.  That conclusion is only strengthened by the dozens of specific allegations in the SAC that clearly point to injuries in Haiti rather than in the United States.  *See* Motion at 6-8.  Digicel-Haiti literally has nothing to say about these aspects of the SAC. It simply does not address its plain allegation that it operates only in Haiti, and, similarly, completely ignores the dozens of allegations describing its injuries as occurring in Haiti.

Instead, Digicel-Haiti seizes on its claim that UPM's actions had the effect of preventing Digicel-Haiti's United States affiliate from generating a Call Detail Record ("CDR") with respect to the calls UPM was sending to Haiti. But this is not a United-States based injury to Digicel-Haiti. That injury occurs when the call is terminated on Digicel-Haiti's network in Haiti or when it decrements the account associated with the call only $0.09 rather than $0.23.  The lack of the CDRs is an element in the causal chain that leads to Digicel-Haiti's alleged injury, but

it is not the injury itself. This is clear even from the portions of the SAC that Digicel-Haiti quotes: UPM's traffic "cannot be properly accounted for *or subsequently invoiced and collected.* This results in a direct and individualized injury to Digicel-Haiti in the amount of *lost call revenues* for international calls *terminated* through bypass fraud." Opposition at 9, *quoting* SAC at ¶ 29 (emphasis added). Digicel-Haiti has alleged that its injury is *caused by* a lack of CDRs, but the injury itself is being unable to "invoice and collect" for "calls terminated" on its network. The injury – terminating calls in Haiti and getting paid (by its lights) too little for them – occurred in Haiti, not in the United States.[5]

In this regard, in addition to the domestic injury requirement, RICO also contains a "proximate cause" requirement, *i.e.,* the alleged predicate acts must lead "directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006); *Hemi Group, LLC v. City of New York,* 559 U.S. 1, 9 (2010); *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 654-55 (2008). Digicel-Haiti's arguments about CDRs essentially go towards establishing that its alleged injuries were caused, for RICO purposes, by UPM's actions – a point that is irrelevant to the domestic injury requirement and that UPM's Motion does not address.

Digicel-Haiti's argument about loss of goodwill, *see* Opposition at 10-11, suffers from similar problems. Digicel-Haiti speculates that if one of its customers is roaming in the United States and makes a call to Haiti that is for some reason routed to UPM, when that call reaches Haiti, the customer's actual phone number will not be displayed. This may lead, in some

---

[5] To use a concrete analogy: Suppose Digicel-Haiti were running a high-end electronics store instead of a wireless network. What customers are supposed to do is walk into the lobby, fill out an order form saying what they want, get it from the clerk, pay for it, and leave. If someone instead slips in a window into the storage room and steals the gear they want, the injury is the theft, occurring in the storage room, not the failure to fill out the form, occurring in the lobby. This is true even if the store uses the forms to keep track of its accounting and inventory. As applied to the question of domestic injury under RICO, the storage room is Haiti, Digicel-Haiti's wireless network is the electronic gear, its affiliate's switch in the United States is the lobby, and the CDRs are the order forms.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

cases, to the called party failing to pick up the call, which, in turn, can cause problems for Digicel-Haiti's customers, who may then complain to Digicel-Haiti about it.[6]

Taking this scenario at face value, it describes an event that occurs in Haiti – a phone call not being answered – that results in Digicel-Haiti's customers being annoyed and complaining to Digicel-Haiti, in Haiti. These are plainly Haitian injuries, not domestic United States injuries – even though the hypothesized event that starts the causal chain leading to the injury occurred in the United States.[7] Again, Digicel-Haiti's argument tends to show that its injuries in Haiti are in some sense caused by actions that occur in the United States, but that is a different question from where the injury itself is suffered.

In a final, extraordinarily strained speculation, Digicel-Haiti claims that UPM's activities put "strain" on its (Haitian) network; that UPM's calls "can cause business interruptions;" and that those business interruptions could "impact Plaintiff's customers calling from the U.S." Opposition at 11. This hypothetical does not suggest that Digicel-Haiti experienced any domestic injuries. On its face, this hypothetical involves a failure of Digicel-Haiti's network in Haiti causing harm to Digicel-Haiti's customers trying to call back to Haiti while roaming in the United States. Moreover, this hypothetical is unmoored from the allegations in the SAC, which mention "stress" on Digicel-Haiti's network once in passing, *see* SAC at ¶ 104, and unspecified "disruptions" of its "business operations" three times, *see* SAC at ¶¶ 171, 191, 198. The notion that UPM's activities could have caused Digicel-Haiti's network to fail –

---

[6] Digicel-Haiti characterizes this scenario as affecting its "ability to service its clients located in the United States." Opposition at 10. Since Digicel-Haiti itself has no network or business operations in the United States, *see* SAC at ¶ 15, it must be referring to the roaming arrangements that it has with certain wireless carriers in the United States. *See* SAC at ¶¶135-36 (describing roaming arrangements in the context of its "Roam Like You're Home" offering).

[7] Digicel-Haiti notes that the fact that calls may be rejected due to unrecognized calling number information can harm its customers, *see* Opposition at 10-11, but Digicel-Haiti cannot bootstrap hypothetical harms to customers – nowhere mentioned in the SAC, by the way – into domestic injury to itself.

that is, to cause a "business interruption" – is not only absurd on its face; it is entirely absent from the SAC.[8]

In sum, Digicel-Haiti has failed to identify any portions of the SAC in which it alleges domestic injury, that is, an injury that Digicel-Haiti itself experienced to any supposed business or operations in the United States. Even its speculative scenarios – not supported by the SAC, but invented for purposes of opposing UPM's Motion – do not entail domestic United States injuries to Digicel-Haiti. In these circumstances, the RICO claims in the SAC must be dismissed for failing to meet the domestic injury requirement established in *RJR Nabisco.*

## III.    GRANTING UPM'S MOTION WILL NOT DEPRIVE DIGICEL-HAITI OF A REMEDY IF IT IS ENTITLED TO ONE ON THE MERITS

In a last-ditch effort to save its RICO claims, Digicel-Haiti argues that the Court should deny UPM's Motion because Digicel-Haiti's "only remedy is with this Court." Opposition at 12-13. Digicel-Haiti similarly claims that granting UPM's Motion would somehow constitute "insulating domestic defendants from liability." *Id.* at 11-12. These arguments ignore the fact that UPM's Motion is focused only on Digicel-Haiti's statutory RICO claims, and does not seek to dismiss its common-law fraud claims. UPM obviously denies that its activities constituted fraud of any kind, but if they did, Digicel-Haiti may recover whatever damages it can adequately prove. Dismissal of Digicel-Haiti's RICO claims would not result in UPM being "insulated" from liability (again, assuming that it has committed fraud on the merits), nor would it leave Digicel-Haiti without a remedy.

To the contrary, dismissal of the RICO claims would simply mean that Digicel-Haiti would not have access to RICO's special, unusual, statutorily-created benefits – treble

---

[8] In this regard, Digicel-Haiti's entire case is based on the notion that the calls that UPM handled should have been, and, absent UPM's activities, would have been, routed to Digicel-Haiti by means of its United States affiliate, and then terminated by Digicel-Haiti on its Haitian network. Nowhere in the SAC does Digicel-Haiti allege or suggest that UPM's activities had the effect of materially increasing the total amount of calling from the United States to Haiti. In these circumstances, any claim that UPM's activities "stressed" Digicel-Haiti's network – much less stressed it so much that it failed to function – is entirely implausible.

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

damages and attorneys' fees. But the entire point of *RJR Nabisco* is that Congress did not intend to provide those special, unusual benefits in situations where the plaintiff's injuries were foreign rather than domestic in nature. Because Digicel-Haiti's injuries are entirely foreign, it has no entitlement to the special benefits provided by RICO in the first place – and would have no such entitlement even if RICO were its only hope of any recovery at all.[9]

## IV. CONCLUSION

Digicel-Haiti's claimed injuries were suffered entirely in Haiti, not the United States. This compels dismissal of its RICO claims under *RJR Nabisco.* Nothing in its Opposition explains how its alleged injuries could reasonably be considered domestic – hardly surprising given that it "operates solely within Haiti [and] does not have any operations within the United States." SAC at ¶ 15. Digicel-Haiti's RICO claims must therefore be dismissed.

Dated: December 21, 2018.

TOMASI SALYER MARTIN

By:    /s/ Eleanor A. DuBay
          Kathryn P. Salyer, OSB #883017
          Eleanor A. DuBay, OSB #073755
          ksalyer@tomasilegal.com
          edubay@tomasilegal.com
          Telephone: (503) 894-9900


DAVIS WRIGHT TREMAINE LLP

By:    /s/ Christopher W. Savage
          Christopher W. Savage
          D.C. Bar #362657
          chrissavage@dwt.com
          Telephone: (202) 973-4200
          *Admitted Pro Hac Vice*


Of Attorneys for Defendants

---

[9] The law is full of rules – for example, the obligation to make personal service of a complaint, the obligation to establish personal and subject matter jurisdiction, statutes of limitations – that inevitably leave certain injuries unredressable, either by specific courts, or at all.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2018, I served the foregoing

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS RICO CLAIMS** on

the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Richard K. Hansen
Anne M. Talcott
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Email: rhansen@schwabe.com
Email: atalcott@schwabe.com

Dated: December 21, 2018.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

CERTIFICATE Of SERVICE - DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS RICO CLAIMS

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236