**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
ksalyer@tomasilegal.com
edubay@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
(admitted *pro hac vice*)
chrissavage@dwt.com
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

        Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., d/b/a **DIGICEL HAITI**, | Case No. 3:15-CV-00185-SI |
|     Plaintiff and Counter-Claim Defendant | |
|     v. | **DEFENDANTS' OPPOSITION TO MOTION TO AMEND COMPLAINT TO ADD REQUEST FOR PUNITIVE DAMAGES** |
| **UPM TECHNOLOGY, INC**. d/b/a **UPM TELECOM, INC**.; **UPM MARKETING, INC**.; **UPM TELECOM, INC**.; **UPM MARKETING, INC**.; **BENJAMIN SANCHEZ** a/k/a **BENJAMIN SANCHEZ MURILLO; BALTAZAR RUIZ; TYLER ALLEN;** and **DUY "BRUCE" TRAN** | **ORAL ARGUMENT REQUESTED** |
|     Defendants and Counter-Claim Plaintiffs | |
|     v. | |
| **DIGICEL-USA, INC.** | |
|     Additional Counter-Claim Defendant | |

DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

# Table of Contents

I.    INTRODUCTION AND SUMMARY ............................................................. 1

II.   ARGUMENT ................................................................................................ 2

    A.    Digicel-Haiti Unduly Delayed Pleading Punitive Damages. ................................. 3

    B.    Digicel-Haiti Has Twice Previously Amended Its Complaint. ............................... 6

    C.    Adding A Claim for Punitive Damages Would Prejudice UPM By Unreasonably Expanding and Complicating the Issues in Dispute. ...................... 6

    D.    The Proposed Amendment Would Be Futile Because Digicel-Haiti's Claims Cannot Support Punitive Damages Under O.R.S. § 31.730(1). ................. 8

        1.    O.R.S. § 31.730 Requires *Both* A Showing of Malice *And* A Showing of Conscious Indifference to Others' Health, Safety and Welfare. ................................................................................................. 8

        2.    Digicel-Haiti Has Alleged that UPM Acted with Malice, But Not with Conscious Indifference to Digicel-Haiti's Health, Safety and Welfare. ............................................................................................... 10

        3.    Digicel-Haiti's Allegations Against UPM Cannot Support A Claim of Conscious Indifference to Digicel-Haiti's Health, Safety and Welfare. ............................................................................................... 11

III.  CONCLUSION ............................................................................................ 15

CERTIFICATE OF SERVICE ............................................................................. 1

DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

# Table of Authorities

**Page(s)**

*Cases*

*Bauer v. Old Dominion Freight Line, Inc.,* 2019 U.S. Dist. LEXIS 13446 (D. Or. Jan. 28, 2019) — 10

*Benson Tower Condo. Owners Ass'n v. Victaulic Co.,* 22 F. Supp. 3d 1126 (D. Or. 2014) — 11

*Bonin v. Calderon,* 59 F.3d 815 (9th Cir. 1995) — 2

*Citron v. Armstrong World Industries,* 721 F. Supp. 1259 (S.D. Fla. 1989) — 4

*Clausen v. M/V NEW CARISSA,* 171 F. Supp. 2d 1127 (D. Or. 2001) — 2, 8

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) — 2

*Foman v. Davis,* 371 U.S. 178 (1962) — 2

*Goodwin v. Kingsman Plastering, Inc.,* 359 Ore. 694, 375 P.3d 463 (2016) — 14

*Gordon v. City of Oakland,* 627 F.3d 1092 (9th Cir. 2010) — 8

*Gordon v. Rosenblum,* 261 Ore 352, 393 P.3d 1122 (2017) — 14

*Goschie v. J.P. Morgan Chase Bank, N.A.,* 2014 U.S. Dist. LEXIS 159041 (D. Or. Nov. 7, 2014) — 9

*Gritzbaugh Main St. Props., LLC v. Greyhound Lines, Inc.,* 204 Ore. App. 640, 135 P.3d 345 (2004) — 11

*Johnson v. Buckley,* 356 F.3d 1067 (9th Cir. 2004) — 2

*Justice v. Rockwell Collins, Inc.,* 117 F. Supp. 3d 1119 (D. Or. 2015) — 10

*Leadsinger, Inc. v. BMG Music Publishing,* 512 F.3d 522 (9th Cir. 2008) — 6

*Lithia Medford LM, Inc. v. Yovan,* 254 Ore. App. 307, 295 P.3d 642 (2012) — 13

*Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999) — 3

*McElwain v. Georgia-Pac. Corp.,* 245 Or. 247, 421 P.2d 957 (1966) — 9, 10

*McLean v. Pine Eagle School Dist. No. 61,* 194 F. Supp. 1102 (D. Or. 2016) — 5, 14

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) — 2, 3

*NAL II Ltd. v. Tonkin,* 705 F. Supp. 522 (D. Kan. 1989) — 5

*Nunes v. Ashcroft,* 348 F.3d 815 (9th Cir. 2003) — 2, 6, 8

*Parker v. Harris Pine Mills, Inc.,* 206 Ore. 187, 291 P.2d 709 (1955) — 4

DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

*Pruett v. Erickson Air Crane Co.,* 183 F.R.D. 248 (D. Or. 1998)  5

*Rubicon Global Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.,* 226 F. Supp. 3d 1141 (D. Or. 2016), *aff'd in relevant part, remanded in part on other grounds,* 757 Fed. Appx. 531 (9th Cir. 2018).  9

*Schultz v. Wells Fargo Bank, Nat'l Ass'n,* 2013 U.S. Dist. LEXIS 62769 (D. Ore. Apr. 30, 2016)  2-3, 8

*Schwartz v. Philip Morris USA, Inc.,* 272 Ore. App. 268, 355 P.3d 931 (Or. App. 2015)  13, 14

*State v. Ferrara,* 218 Ore. App. 57, 178 P.3d 250 (Or. App. 2008)  4

*State ex rel. Thesman v. Dooley,* 270 Ore. 37, 526 P.2d 563 (1974)  7

*Swanson v. United States Forest Serv.,* 87 F.3d 339 (9th Cir. 1996)  3

*Tarr v. USF Reddaway, Inc.,* 2018 U.S. Dist. LEXIS 16325 (D. Or. Feb. 1, 2018)  9

*Thompson v. Federico,* 324 F. Supp. 2d 1152 (D. Or. 2004)  2, 8, 9

*United States ex rel. Lee v. Corinthian Colleges,* 655 F.3d 984 (9th Cir. 2011)  2

*Vail v. Country Mut. Ins. Co.,* 2015 U.S. Dist. LEXIS 61310 (D. Or. Mar. 17, 2015)  9


<u>Statutes and Legislative Materials</u>

O.R.S. §§ 30.900 – 30.928  13

O.R.S. § 30.925  9, 13

O.R.S.§ 31.725  5

O.R.S. § 31.730(1)  1, *passim*

O.R.S. § 390.655  13

O.R.S. § 465.204  13

O.R.S. § 537.525  13


1995 Ore. Senate Bill 482  12

1989 Ore. SB 293  13

DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

*Rules*

Fed. R. Civ. P. 9(g)                                                     1, *passim*

Fed. R. Civ. P. 15(a)                                                  1, *passim*


*Other Authorities*

Digicel Group, Amended Form F-1 (filed Oct. 2, 2015), available at: https://www.sec.gov/Archives/edgar/data/1645826/000119312515335867/d946689df1a.htm#rom946689_6.     11

DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

## I.    INTRODUCTION AND SUMMARY

Under Fed R. Civ. P. 15(a)(2), the Court "should freely give leave" to a party to amend a pleading "when justice so requires."  Here, justice requires that the Court deny Digicel-Haiti's motion to file a ***Third*** Amended Complaint to add claims for punitive damages.[1]

First, there is no excuse for Digicel-Haiti's four-year delay in seeking to include a claim for punitive damages – particularly when, as Digicel-Haiti itself forthrightly admits, there has been no change in the underlying "operative facts" going all the way back to "the original complaint."  Motion at 3.  The inexcusable nature of Digicel-Haiti's delay is particularly stark because, under Fed. R. Civ. P. 9(g), if Digicel-Haiti wanted punitive damages, it was obliged to specially plead them – in the original complaint and in each subsequent revision.  This unexplained and inexcusable four-plus year delay in raising the issue of punitive damages strongly supports denial of Digicel-Haiti's motion.

Second, granting the motion would unfairly prejudice UPM.  From the outset – even with Digicel-Haiti's now-dismissed RICO claims at issue – this case was focused on UPM's actions and the effect of those actions on Digicel-Haiti's business.  Adding a claim for punitive damages would expand and complicate the case to include not just the motives and states of mind of UPM and, to the extent they remain in the case, the individual defendants, but also their financial conditions.  Particularly considering Digicel-Haiti's undue and inexcusable delay, UPM (and any individual defendants) should not be subjected to this expansion and complication of the issues.

Finally, as a substantive matter, Digicel-Haiti's allegations cannot support punitive damages under Oregon law.  Punitive damages are governed by O.R.S. § 31.730(1), under which a plaintiff must prove "malice or 'reckless and outrageous indifference to a highly unreasonable

---

[1]    Motion for Leave to Amend Complaint to Conform with Court's Order and Add Request for Punitive Damages, ECF # 192 ("Motion").  As the Motion's title suggests, Plaintiff Unigestion Holdings S.A. ("Digicel-Haiti") also seeks to drop allegations that were relevant only to the RICO claims that the Court recently dismissed.  *See* ECF # 188.  UPM does not believe that removing those allegations is required – they simply no longer relate to any pending claim – but it has no objection to Digicel-Haiti dropping them.

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

risk of harm, ***and*** that defendant acted with a conscious indifference to the health, safety and welfare of others.'" *See Thompson v. Federico,* 324 F. Supp. 2d 1152, 1170 (D. Or. 2004) (emphasis in original), *quoting Clausen v. M/V NEW CARISSA,* 171 F. Supp. 2d 1127, 1131 (D. Or. 2001) *quoting* O.R.S. § 31.730(1).  This is not a case in which UPM's alleged conduct reflects "a conscious indifference" to anyone's "health, safety and welfare."   Taking Digicel-Haiti's allegations as true, they show merely that UPM wanted to pay – and paid – a lower rate ($0.09 per minute) rather than a higher rate ($0.23 per minute) to terminate traffic on Digicel-Haiti's network in Haiti. The case presents a dispute between two businesses – essentially, a dispute as to whether the various technical steps UPM took to route calls to Haiti entitled it to the lower rate.   Nobody's "health, safety and welfare" – and certainly not Digicel-Haiti's – is involved.   Because Digicel-Haiti cannot possibly establish that it is entitled to punitive damages under O.R.S. § 31.730(1), Digicel-Haiti's proposed amendment to include a claim for such damages is futile, warranting denial of its motion under Rule 15(a).

UPM respectfully requests that the Court hold oral argument on this motion.

## II.    ARGUMENT

Digicel-Haiti correctly notes that in general, leave to amend a complaint should be freely granted.  Motion at 1-2, *citing Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  It asserts that four factors are relevant to evaluate a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party and futility of amendment. Motion at 2, *citing Foman v. Davis,* 371 U.S. 178, 182 (1962); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  More recent authority, however, indicates that there are actually ***five*** relevant factors: "In assessing the propriety of a motion for leave to amend, we consider five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) ***whether the plaintiff has previously amended his complaint.***" *Nunes v. Ashcroft,* 348 F.3d 815, 819 (9th Cir. 2003) (emphasis added), *citing Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995). *See also Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir. 2004); *United States ex rel. Lee v. Corinthian Colleges,* 655 F.3d 984 (9th Cir. 2011); *Schultz v. Wells Fargo*

*Bank, Nat'l Ass'n,* 2013 U.S. Dist. LEXIS 62769 [*5] – [*6] (D. Ore. Apr. 30, 2016). Here, considerations of undue delay, previous amendments, prejudice, and futility all warrant denial of Digicel-Haiti's motion.

### A.     Digicel-Haiti Unduly Delayed Pleading Punitive Damages.

The Ninth Circuit has held that "[a]lthough delay is not a dispositive factor in the amendment analysis, it is relevant, *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990), ***especially when no reason is given for the delay,*** *Swanson v. United States Forest Serv.,* 87 F.3d 339, 345 (9th Cir. 1996)." *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999) (emphasis added).  Here, Digicel-Haiti's extensive and unexplained delay in requesting punitive damages supports denying its Motion.

Digicel-Haiti's basic factual allegations against UPM have not materially changed since this case was filed in early 2015.  Digicel-Haiti's main complaint always has been that UPM: (a) purchased Digicel-Haiti SIM cards in Haiti; (b) assembled those SIM cards into SIM Servers in Oregon; (c) sent radio devices ("Gateways") into Haiti to connect to Digicel-Haiti's network; and then (d) used the Internet to get calls from the United States to Haiti for termination on Digicel-Haiti's network (using those radio devices and information from the SIM cards).  *Compare* Complaint (Feb. 2, 2105) (EFC #1) at ¶¶ 13-66; Amended Complaint (Aug. 26, 2015) (ECF # 34) at ¶¶ 13-70, 83-98; *and* Second Amended Complaint (Oct. 18, 2016) (ECF # 104) at ¶¶ 14-71, 85-127.  While not part of its initial Complaint, Digicel-Haiti noted its concern about UPM's United-States-based resale of Roam Like You're Home service in late 2015.  *See* Amended Complaint at ¶¶ 72, 75-82; Second Amended Complaint at ¶¶ 128-136.

None of these earlier pleadings claimed punitive damages, and, until Digicel-Haiti raised the issue in consulting with counsel under Local Rule 7.1, Digicel-Haiti had never raised punitive damages with UPM.  To the contrary, for more than ***four years,*** Digicel-Haiti has apparently not thought that UPM's allegedly "egregious" conduct (*see* Motion at 4) supported a claim for such damages.  Then, seemingly out of the blue, more than four-and-a-half years after

Page 3 of 16 - DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

the case began, Digicel-Haiti has suddenly decided that something about UPM's actions would justify punitive damages.

Digicel-Haiti's delay is inexcusable. It forthrightly concedes that its punitive damages claim "arises out of the same operative facts" that have been in the case for years. Motion at 3. And, while Digicel-Haiti asserts that the amendment is based on "information gained throughout the course of the litigation related to the scope and breadth of UPM's conduct," *id.,* its proposed amendment does not contain any allegations containing any new information. The notion that this proposed amendment is based on new facts, therefore, should be dismissed as entirely pretextual – or at least as entirely unsupported by anything Digicel-Haiti has presented.

There is simply no good explanation for Digicel-Haiti waiting more than four years to assert that the very same facts it has been complaining about all along somehow, now, suddenly support punitive damages. In fact, as discussed below, they don't. But in these circumstances, even if they did, UPM submits that four-plus years of delay is essentially *per se* undue, and that this alone strongly supports denial of the motion to amend.

Digicel-Haiti's unexplained delay in raising its purported punitive damages claims is particularly egregious because, if it had wanted to pursue such damages, it was affirmatively obliged to specifically plead them in its various complaints, as an element of special damage under Rule 9(g). "Rule 9(g) unambiguously requires a plaintiff to set forth a demand for punitive damages in its complaint." *Citron v. Armstrong World Industries,* 721 F. Supp. 1259, 1261 (S.D. Fla. 1989).[2] This requirement of Rule 9(g) applies even where state procedural laws, such as

---

[2] Rule 9 does not define "special damages." That makes sense, because what constitutes "special damages" will be a question of substantive law that varies from case to case. In Oregon, broadly speaking, "special damages" are contrasted with "general damages," which are damages that are "the necessary result of the acts complained of." *See State v. Ferrara,* 218 Ore. App. 57, 71-72, 178 P.3d 250, 258 (Or. App. 2008), *quoting Parker v. Harris Pine Mills, Inc.,* 206 Ore. 187, 208, 291 P.2d 709, 718-19 (1955). At least since the passage of O.R.S. § 31.730(1), punitive damages cannot be the "necessary result" of damages occasioned by the mere commission of any particular tort, because that statute requires proof of additional facts, over and above whatever the elements of a particular tort might be.

Page 4 of 16 - DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

O.R.S. § 31.725, impose different pleading rules for punitive damages claims.  *See, e.g., McLean v. Pine Eagle School Dist. No. 61,* 194 F. Supp. 1102, 1127 n.12 (D. Or. 2016).  *See also NAL II Ltd. v. Tonkin,* 705 F. Supp. 522 (D. Kan. 1989).[3]  As a result, Digicel-Haiti's "unambiguous" obligation to plead punitive damages under Rule 9(g) necessarily served to highlight its duty to do so – in its original Complaint, in its Amended Complaint, and in its Second Amended Complaint. The Court may properly consider Digicel-Haiti's utter and repeated failure to comply with Rule 9(g) to support a ruling denying leave to amend.

Finally, and without belaboring the obvious, UPM submits that Digicel-Haiti's actual motivation for seeking to add punitive damages now, as opposed to earlier in the case, is this Court's recent dismissal of its RICO claims – and with them its hopes for treble damages and attorneys' fees.  *See* ECF # 188 at 27.  From this perspective, Digicel-Haiti's motion is "timely" in the perverse sense that it promptly followed the actual event that motivated it.  But this Court should not countenance such tactics.  Four-and-a-half years after Digicel-Haiti's RICO claims were filed, this Court reasonably hoped to narrow the case, and facilitate its effective management going forward, by dismissing those claims (along with UPM's antitrust claims) – in effect, clearing out the legal underbrush.  It would be one thing if Digicel-Haiti sought to replead its dismissed RICO claims – amendments to try to salvage a dismissed claim are often permitted.  But Digicel-Haiti declined that opportunity.  Instead, it seeks to make an end run around the Court's ruling by adding new substantive claims that it had not previously raised and that – Under Rule 9(g) – it should have raised years ago.

---

[3]    The special pleading requirements of O.R.S. § 31.725 do not apply because in diversity cases, federal courts follow state substantive law, but federal procedural law. Entitlement to punitive damages is a question of substance, but how to plead such damages is a question of procedure. The inapplicability of O.R.S. § 31.725 was settled long before Digicel-Haiti filed its original Complaint in 2015.  *See Pruett v. Erickson Air Crane Co.,* 183 F.R.D. 248, 250-52 (D. Or. 1998).  As a result, there can be no suggestion that some deference to O.R.S. § 31.725 excuses Digicel-Haiti's delay.

**B.**    **Digicel-Haiti Has Twice Previously Amended Its Complaint.**

Another factor relevant to permitting amendments is "whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft, supra,* 348 F.3d at 819. Here, Digicel-Haiti has already amended its complaint twice, so this factor weighs against another amendment.

UPM recognizes that this factor typically applies where a complaint has been dismissed and the plaintiff has failed to overcome deficiencies identified in the order of dismissal. *See, e.g., Leadsinger, Inc. v. BMG Music Publishing,* 512 F.3d 522, 532 (9th Cir. 2008). That has not literally occurred here, but UPM submits that Digicel-Haiti's repeated failures to heed its obligation to plead punitive damages under Rule 9(g) should be treated as previous failures to address plain defects in its pleadings. In any event, four-and-a-half years into this litigation, there is no good reason to give Digicel-Haiti a fourth bite at the apple.

**C.**    **Adding A Claim for Punitive Damages Would Prejudice UPM By Unreasonably Expanding and Complicating the Issues in Dispute.**

Adding punitive damages claims would unfairly prejudice UPM. Digicel-Haiti argues that doing so would not subject UPM to any "insurmountable prejudice." on the theory that the proposed amendment "only modifies the fraud claim" in the case. Motion at 4. This assertion, however, is entirely false.

First, to obtain punitive damages in the first place – as discussed below – Digicel-Haiti would have to prove that UPM (and any individual defendants) acted with "conscious indifference" to Digicel-Haiti's "health, safety and welfare." That inquiry would engender a range of proof and potential disputes that go far beyond the limited "technological fraud" that this Court found to be at issue here. *See* ECF #58, *Unigestion Holdings, S.A. v. UPM Technology, Inc.,* 160 F. Supp. 3d 1214, 1226-27 (D. Or. 2016) (holding that Digicel-Haiti's allegations regarding traditional common-law fraud were not sufficient to survive a motion to dismiss, but that its allegations regarding "technological fraud" were).

Moreover, beyond the question of Digicel-Haiti's *entitlement* to punitive damages, permitting the amendment would necessarily raise the question of *how large* any such damages

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

should be.  That would expand the case from focusing on UPM's alleged ***conduct*** – whether getting calls to Haiti via the Internet or via resale of Roam Like You're Home service constituted "technological fraud" – to an inquiry into the ***motives and states of mind*** of UPM (and, to the extent they remain in the case, the individual defendants).  Even more, with punitive damages in the case, UPM's (and any individual defendants') ***financial condition*** would also be at issue, since the size of any proper punitive damage award must not be disproportionate to the defendant's ability to pay it.  *See, e.g., State ex rel. Thesman v. Dooley,* 270 Ore. 37, 41, 526 P.2d 563, 566 (1974).  It is therefore disingenuous to suggest that adding punitive damages issues to the case would be some minor addition to existing claims.[4]

Furthermore, while formal discovery has not yet been extensive, *see* Motion at 4, for its part UPM has spent considerable time and effort examining and organizing information in its records regarding the business activities that form the basis of Digicel-Haiti's claims.[5]  This is not, therefore, like a case where a proposed amended complaint is proffered at a time when little case preparation has occurred.  This is much more like a case where the parties – or at least the defendants – have expended significant resources investigating and analyzing the factual basis for the plaintiffs' claims, with a new set of issues being sprung into the case years after it began.

---

[4]      In this regard, with Digicel-Haiti's RICO claims dismissed, all of the alleged bad actions in the complaint were undertaken either by UPM itself or by persons acting on its (rather than their own) behalf.  This suggests that keeping the individual defendants in the case is inappropriate.  Consequently – and depending on the content of Digicel-Haiti's substantive response to the allegations in UPM's counterclaims – UPM hopes to further streamline the case by seeking dismissal of all individual defendants.  Unfortunately, however, UPM cannot yet determine the precise content of such a motion, because, as of the date of this filing, counsel is still seeking to negotiate a way to deal with the facial inadequacy of Digicel-Haiti's responses to many dozens of paragraphs in UPM's counterclaims.  *See, e.g.,* Digicel-Haiti's Answer to Counterclaims, ECF # 193 at ¶¶ 240, 242, 244-296.  UPM hopes to resolve this dispute over the inadequacy of Digicel-Haiti's responses without having to bring it to the Court.

[5]      Much of this effort was expended in connection with the parties' failed mediation, which entailed, among other things, UPM providing Digicel-Haiti with information (which will certainly be re-produced in response to formal discovery requests) detailing the nature and scope of UPM's activities in sending calls from the United States to Haiti.

Page 7 of 16 - DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

In these circumstances, and particularly considering Digicel-Haiti's undue and inexcusable delay, UPM (and any remaining individual defendants) should not be subjected to this expansion and complication of the issues.

### D. The Proposed Amendment Would Be Futile Because Digicel-Haiti's Claims Cannot Support Punitive Damages Under O.R.S. § 31.730(1).

"Although leave to amend a deficient complaint shall be freely given when justice so requires, leave may be denied if amendment of the complaint would be futile." *Gordon v. City of Oakland,* 627 F.3d 1092, 1094 (9th Cir. 2010). "Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft, supra,* 348 F.3d at 819; *Schultz v. Wells Fargo Bank, Nat'l Ass'n, supra,* 2013 U.S. Dist. LEXIS 62769 at [*6]. Here, Digicel-Haiti's allegations cannot support punitive damages under Oregon law, so even if its amendment were timely, and even if the prejudicial effects of the amendment were acceptable, the Court should still deny the motion.

### 1. O.R.S. § 31.730 Requires *Both* A Showing of Malice *And* A Showing of Conscious Indifference to Others' Health, Safety and Welfare.

A plaintiff's right to punitive damages in Oregon tort cases is governed by O.R.S. § 31.730(1). The statute provides:

> Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought *has acted with malice* or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm *and has acted with* a conscious indifference to the health, safety and welfare of others.

O.R.S. § 31.730(1) (emphasis added). The parallel construction indicates that the law imposes two requirements: *both* malice or "outrageous indifference" to a risk of harm, *and* a "conscious indifference to the health, safety, and welfare of others." *See Thompson v. Federico,* 324 F. Supp. 2d 1152, 1170 (D. Or. 2004) (plaintiff must prove "malice or 'reckless and outrageous indifference to a highly unreasonable risk of harm, *and* that defendant acted with a conscious indifference to the health, safety, and welfare of others.'") (emphasis in original), *quoting Clausen v. M/V NEW CARISSA,* 171 F. Supp. 2d 1127, 1131 (D. Or. 2001), *quoting* O.R.S. § 31.730(1). As another judge in this district explained:

> Under Oregon law, punitive damages are not available "unless it is proven by clear and convincing evidence" that the opposing party acted "with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm *and* has acted with a conscious indifference to the health, safety and welfare of others." (emphasis added). [Or. Rev. Stat.]. § 31.730(1). Malice is a "wrongful act done intentionally, without just cause or excuse." *McElwain v. Georgia-Pacific Corp.,* 245 Ore. 247, 249, 421 P.2d 957 (1966). A court must determine whether the evidence establishes *both* elements such that a reasonable juror could find punitive damages were appropriate. *Thompson v. Federico,* 324 F. Supp. 2d 1152, 1170 (D. Or. 2004). … Plaintiffs do not present clear and convincing evidence such that a reasonable juror could find that Defendant acted with malice or reckless and outrageous indifference, *and also* acted with a conscious indifference to Plaintiffs' health, safety and welfare.

*Goschie v. J.P. Morgan Chase Bank, N.A.,* 2014 U.S. Dist. LEXIS 159041, [*22] – [*24] (D. Or. Nov. 7, 2014) (first emphasis in original; second and third emphasis added). *See also Vail v. Country Mut. Ins. Co.,* 2015 U.S. Dist. LEXIS 61310, [*30] – [*31] (D. Or. Mar. 17, 2015). This reading of the statute is the most natural, and is clearly correct.

In some cases, the nature of the harm sustained by the plaintiff – such as physical injury or death – will necessarily show that someone's "health, safety and welfare" was at issue. In those cases, the focus of any challenge to punitive damages under O.R.S. § 31.730(1) naturally falls on the requirement that the defendant "has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm." *See, e.g., Tarr v. USF Reddaway, Inc.,* 2018 U.S. Dist. LEXIS 16325 (D. Or. Feb. 1, 2018) (in wrongful death case arising from an auto accident, question was whether defendant acted with malice or reckless indifference; claim for punitive damages dismissed due to insufficient evidence of required malicious/indifferent state of mind). Similarly, a claim for punitive damages may be dismissed irrespective of the nature of the injury, if a plaintiff fails to show malice. *See, e.g., Rubicon Global Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.,* 226 F. Supp. 3d 1141, 1153-54 (D. Or. 2016) (dismissing claim for punitive damages due to lack of showing of malice), *aff'd in relevant part, remanded in part on other grounds,* 757 Fed. Appx. 531 (9th Cir. 2018). While these cases do not explicitly discuss

the "indifference to health, safety and welfare of others" standard, they did not need to, and thus do not in any way suggest that that standard need not be met.

There are, however, some cases that suggest – without expressly holding – that, notwithstanding the parallel language of the statute emphasized above, a showing of malice alone could be sufficient. *See, e.g., Justice v. Rockwell Collins, Inc.,* 117 F. Supp. 3d 1119, 1134 (D. Or. 2015) (dismissing claim for punitive damages for lack of showing of malice where plaintiff abandoned the claim by ignoring challenge to it in briefing; suggesting in *dictum* that malice alone is sufficient to support punitive damages). UPM submits that a reading that treats malice alone as sufficient is inconsistent with the plain language of the statute, and also with its history and application, as discussed below. As a result, the Court should rule that both elements laid out in O.R.S. § 31.730(1) must be established before a plaintiff can receive punitive damages.

### 2. Digicel-Haiti Has Alleged that UPM Acted with Malice, But Not with Conscious Indifference to Digicel-Haiti's Health, Safety and Welfare.

UPM agrees that Digicel-Haiti has alleged malice. As Digicel-Haiti points out, its pleadings have included claims that UPM acted "maliciously." Motion at 4. Moreover, Oregon courts have defined "malice" as "nothing more than a wrongful act done intentionally, without just cause or excuse." *Bauer v. Old Dominion Freight Line, Inc.,* 2019 U.S. Dist. LEXIS 13446 at [*27] (D. Or. Jan. 28, 2019), *quoting McElwain v. Georgia-Pac. Corp.,* 245 Or. 247, 249, 421 P.2d 957 (1966). While UPM does not concede that Digicel-Haiti can *prove* that UPM acted with "malice" by "clear and convincing" evidence, as required by O.R.S. § 31.730(1), UPM accepts that, under the lenient definition of *McElwain,* Digicel-Haiti has *alleged* that UPM acted with "malice."

In its motion, Digicel-Haiti gamely notes that it alleged that UPM supposedly acted "with an improper motive, and in conscious disregard of" Digicel-Haiti's rights. *See* Motion at 4. Fair enough, but that is quite different from alleging "conscious indifference" to Digicel-Haiti's "***health, safety and welfare***." Digicel-Haiti's allegation simply parallels Oregon courts' understanding of "malice," described above. That is, "malice" under Oregon law entails intentionally acting in a wrongful manner – which is just another way of claiming that UPM

Page 10 of 16 - DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

consciously disregarded Digicel-Haiti's rights.  Digicel-Haiti's referenced allegation simply does not address the requirement of O.R.S. § 31.730(1) that, to obtain punitive damages, a plaintiff must *also* allege (and eventually prove) "conscious indifference" to someone's **health, safety, and welfare.**  As discussed below, as a matter of law, Digicel-Haiti cannot make such an allegation in this case, so its motion to amend must be denied.

### 3.    Digicel-Haiti's Allegations Against UPM Cannot Support A Claim of Conscious Indifference to Digicel-Haiti's Health, Safety and Welfare.

Under the most natural reading of the language of O.R.S. § 31.730(1), punitive damages are appropriate, and typically arise, where the plaintiff is a natural person.[6]  On the other hand, it is difficult if not impossible to see how a large corporate entity like Digicel-Haiti could prove "conscious indifference" to *its* "health, safety, and welfare" – ore even what such concerns would mean.   While large, rich, international corporations may count as "people" for some purposes, they inherently do not and cannot face risks to their "health, safety and welfare" as those terms are normally understood and as they are used in O.R.S. § 31.730(1).[7]

UPM's research reveals no Oregon case since the O.R.S. § 31.730(1) became law that upheld a punitive damages award in favor of a large corporate entity, nor any case that permitted a claim by a large corporate entity for such damages to go forward.[8]  From this

---

[6]    That said, courts have logically permitted claims for punitive damages by associations of natural persons, *see, e.g., Benson Tower Condo. Owners Ass'n v. Victaulic Co.,* 22 F. Supp. 3d 1126 (D. Or. 2014) (plaintiff condominium association representing its members who owned the affected properties), and small business entities closely aligned with their owners, *see, e.g., Gritzbaugh Main St. Props., LLC v. Greyhound Lines, Inc.,* 204 Ore. App. 640, 135 P.3d 345 (2004) (LLC that technically owned property not questioned as co-plaintiff with natural persons who owned/managed it).

[7]    In this regard, the revenues of the Digicel Group, of which Digicel-Haiti is a part, were approximately ***$2.8 billion*** in 2015 (the last year for which such information appears to be publicly available). Digicel Group, Amended Form F-1 (filed Oct. 2, 2015), available at: https://www.sec.gov/Archives/edgar/data/1645826/000119312515335867/d946689df1a.htm#rom946689_6.

[8]    UPM has reviewed every reported Oregon case in the LEXIS database that mentions both "punitive damages" and "31.730."

Page 11 of 16 - DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

perspective, by attempting to obtain authorization for a large, international corporation to seek punitive damages against a smaller entity in purely a business-based dispute, Digicel-Haiti's motion seeks relief that is literally unprecedented.

The point is not that Oregon law is somehow biased against large, international corporate entities. The point, instead, is that such entities inherently cannot suffer the kind of harms that O.R.S. § 31.730(1) is designed to address.

This presumptive limitation of concerns of "health, safety and welfare" to the kinds of harms typically suffered by natural persons is confirmed by the origin and legislative history of O.R.S. § 31.730(1). Prior to 1995, Oregon's statute dealing specifically with product liability cases provided that "punitive damages shall not be recoverable unless it is proven by clear and convincing evidence that the party against whom punitive damages is sought has shown ***wanton disregard for the health, safety and welfare of others.***" *See* Ore. Senate Bill 482, Section 4 (showing both former and new text of O.R.S. § 30.925) (emphasis added). Senate Bill 482, however, simultaneously modified the product liability law (O.R.S. § 30.925) and enacted the current text of O.R.S. § 31.730(1). The relevant amendment to O.R.S. § 30.925 was as follows:

> 30.925. (1) In a product liability civil action, punitive damages shall not be recoverable ~~unless it is proven by clear and convincing evidence that the party against whom punitive damages is sought~~ ***has shown wanton disregard for the health, safety and welfare of others*** **except as provided in Section 2 of this 1995 Act.**

1995 SB 482, Section 4, emphasis added (deleted material ~~stricken through~~, new material **bold and double-underlined**).[9] Section 2 of the bill was an entirely new provision that is now codified as O.R.S. § 31.730(1):

> (1) Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and ***has acted with a conscious indifference to the health, safety and welfare of others.***

---

[9]     For ease of reference, a copy of 1995 SB 482 (as downloaded from the LEXIS database) is attached.

Page 12 of 16 - DEFENDANTS' OPPOSITION TO MOTION TO
FILE THIRD AMENDED COMPLAINT

***TOMASI SALYER MARTIN***
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

*Id.,* Section 2 (emphasis added) (note that this was an entirely new section).

The specific phrasing – "health, safety and welfare of others" – is significant, and confirms that punitive damages are not available to Digicel-Haiti here. Oregon law, like that of many jurisdictions, is replete with general references to protection of "the *public* health, safety and welfare." *See, e.g.,* O.R.S. § 390.655 (regulation of ocean shores); O.R.S. § 465.204 (environmental regulation of release of hazardous wastes); O.R.S. § 537.525 (regulation of water rights). But the legislative phrase "health, safety and welfare *of others*" has always referred to concerns for natural persons potentially injured by tortious acts. It seems to have originally appeared in O.R.S. § 30.925, which was enacted in 1979 as part of a comprehensive statutory framework for dealing with product liability actions (now codified as O.R.S. §§ 30.900 – 30.928).[10] The phrase was next used in a now-uncodified section of 1989 Ore. SB 293, extending, in certain cases, the statute of limitations applicable to products liability claims regarding intrauterine devices.[11] It was then transferred, as indicated above, from O.R.S. § 30.925 to O.R.S. § 31.730(1). The phrase, therefore, should be interpreted in light of its origin in dealing with claims seeking damages for injuries to actual, natural persons. *See Schwartz v. Philip Morris USA, Inc.,* 272 Ore. App. 268, 283-84, 355 P.3d 931, 940 (Or. App. 2015) ("Oregon has a particular interest in deterring and punishing conduct that causes its citizens physical harm, evidences a disregard of their health or safety, or takes advantage of their vulnerability"), *quoting Lithia Medford LM, Inc. v. Yovan,* 254 Ore. App. 307, 322, 295 P.3d 642 (2012).

Interpreting the phrase "health, safety and welfare of others" as referring to harms of the sort suffered by natural persons is consistent with the long-recognized principle of statutory interpretation known as *noscitur a sociis,* under which "the meaning of words in a statute may be

[10]    No reported cases in the LEXIS database refer to the phrase, prior to 1995, other than in the context of former O.R.S. § 30.925, and, other than in connection with that statute and O.R.S. § 31.730(1), the phrase does not, as far as UPM's research reveals, appear in the LEXIS database of Oregon legislation.

[11]    For ease of reference, a copy of 1989 SB 293 (as downloaded from the LEXIS database) is attached.

clarified by reference to other words in the same sentence or provision." *Gordon v. Rosenblum,* 261 Ore 352, 365-66, 393 P.3d 1122, 1130 (2017), *quoting Goodwin v. Kingsman Plastering, Inc.,* 359 Ore. 694, 702, 375 P.3d 463 (2016). "Health" and "safety" obviously apply to natural persons, not large corporations, and as a result, "welfare," as used in O.R.S. § 31.730(1) necessarily refers to other types of harms to which individuals might be subject, such as discrimination, defamation, lost wages, etc. It does not refer to a large business potentially not making all the profits it wants.

The language, context and history of O.R.S. § 31,730(1) thus all confirm that business-to-business economic damages suffered by large corporate entities simply do not fall within the ambit of the statute – which bars Digicel-Haiti from obtaining punitive damages here. This case does not involve death, injury, or illness, *see, e.g., Schwartz v. Philip Morris, supra*; it does not involve assault or humiliation, *see, e.g., McLean v. Pine Eagle School Dist. No. 61, supra;* and it does not involve a large, sophisticated entity taking advantage of weak or vulnerable Oregon citizens, *see, e.g., Schwartz v. Philip Morris, supra*. To the contrary, stripped of their dark innuendoes, Digicel-Haiti's allegations show that UPM bought Digicel-Haiti SIM cards and paid Digicel-Haiti for usage on Digicel-Haiti's network, albeit at a lower rate ($0.09 per minute versus $0.23 per minute) than Digicel-Haiti claims it is entitled to. While in some respects technically complicated, Digicel-Haiti's claim boils down to saying that *some* customers are entitled to the $0.09 rate (individual customers in Haiti and Haitian customers purchasing a Roam Like You're Home plan), but that *UPM,* in the circumstances in which it used Digicel-Haiti's services, was not. Even if Digicel-Haiti is correct (and, of course, UPM denies that), depriving Digicel-Haiti of revenues by only paying $0.09 per minute does not, and cannot, reflect a conscious indifference on UPM's part to anyone's "health, safety and welfare" – including Digicel-Haiti's.

All that said, while it may be – as UPM asserts – that no large corporation could ever obtain punitive damages in a tort case under O.R.S. § 31.730(1), the Court does not have to make such a ruling to reach the proper result here. Obviously, corporations do not face concerns for their "health" or "safety," so any punitive damages claim in favor of a large corporation would have to be based on concerns over its "welfare." Conceivably, one could equate a corporation's

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

"welfare" to its ongoing viability.  In that case, one could imagine a situation in which some entity – perhaps an even larger corporation – committed an Oregon tort so grave and egregious that it forced the (hypothetical) plaintiff corporation into bankruptcy, or otherwise severely damaged its ability to continue in business.  Perhaps, in an appropriate case, that kind of tortious conduct could support a punitive damages award to a large, rich, international corporate entity in a business-to-business tort action.

But here, Digicel-Haiti does not even claim that it *lost money* (that is, provided services at a loss) by virtue of UPM's actions; it merely claims that it *did not make as much profit* as it wanted to.  It beggars belief to think that the Oregon legislature, by transferring the consumer-product-liability-based "health, safety and welfare of others" standard into O.R.S. § 31.730(1), sought to give multi-billion-dollar international corporations like Digicel-Haiti a right to extract punitive damages whenever a claimed tort caused them to make less profits than they would like. For this reason, as noted above, a ruling that Digicel-Haiti can seek punitive damages in this case would be literally unprecedented – and wrong.

Ultimately – and leaving for another day the broader question of whether any corporate plaintiff could ever be entitled to punitive damages under Oregon tort law – here and now, this Court need only exercise its discretion under Rule 15(a) to hold that in this particular case, Digicel-Haiti's claims are not the sort that could entitle a large, international corporation to punitive damages under O.R.S. § 31.730(1).  Because Digicel-Haiti's proposed amendment would be futile, therefore, its motion to amend should be denied.

## III.    CONCLUSION

Digicel-Haiti's motion to amend its complaint to add a claim for punitive damages should be denied.  The amendment is inexcusably untimely (and appears to reflect gamesmanship following the dismissal of Digicel-Haiti's RICO claims); Digicel-Haiti has already, twice, amended its complaint; it provides no reason to explain its delay or to justify a third amendment; granting the motion would unfairly prejudice UPM; and, in any event, the proposed amendment would be futile because Digicel-Haiti cannot, in the circumstances of this case, possibly show that

UPM's conduct was undertaken with "conscious indifference" to Digicel-Haiti's "health, safety and welfare" as those terms are used in O.R.S. § 31.730(1).  Whether considered singly or together, these considerations show that "justice requires" that Digicel-Haiti's motion be denied.

Dated: October 21, 2019.

TOMASI SALYER MARTIN


By:   /s/ Eleanor A. DuBay
      Kathryn P. Salyer, OSB #883017
      Eleanor A. DuBay, OSB #073755
      ksalyer@tomasilegal.com
      edubay@tomasilegal.com
      Telephone: (503) 894-9900


DAVIS WRIGHT TREMAINE LLP

By:   /s/ Christopher W. Savage
      Christopher W. Savage
      D.C. Bar #362657
      chrissavage@dwt.com
      Telephone: (202) 973-4200
      *Admitted Pro Hac Vice*

Of Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2019, I served the foregoing **DEFENDANTS'**

**MOTION TO DISMISS RICO CLAIMS** on the following individuals by electronic service to

said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Richard K. Hansen
Anne M. Talcott
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Email: rhansen@schwabe.com
Email: atalcott@schwabe.com

Dated: October 21, 2019.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

CERTIFICATE Of SERVICE -  DEFENDANTS' MOTION TO
DISMISS RICO CLAIMS

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

*1995 Ore. SB 482*

Enacted, July 19, 1995

**Reporter**
1995 Ore. ALS 688; 1995 Ore. Laws 688; 1995 Ore. SB 482

**OREGON ADVANCE LEGISLATIVE SERVICE > OREGON 68TH LEGISLATIVE ASSEMBLY (1995) > CHAPTER 688 > SENATE BILL 482**

## Notice

[A> UPPERCASE TEXT WITHIN THESE SYMBOLS IS ADDED <A]
[D> Text within these symbols is deleted <D]

## Synopsis

AN ACT Relating to punitive damages; creating new provisions; amending ORS 18.540 and 30.925; and repealing ORS 41.315.

## Text

*Be It Enacted by the People of the State of Oregon:*

SECTION 1. ORS 18.540 is amended to read:

18.540. (1) Upon the entry of a [D> judgment <D] [A> VERDICT <A] including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award to which the Criminal Injuries Compensation Account is entitled pursuant to paragraph [D> (c) <D] [A> (B) <A] of this subsection, and the punitive damage portion of an award shall be allocated as follows:

(a) [A> FORTY PERCENT SHALL BE PAID TO THE PREVAILING PARTY. <A] The attorney for the prevailing party shall be paid [A> OUT OF THE AMOUNT ALLOCATED UNDER THIS PARAGRAPH, IN <A] the amount agreed upon between the attorney and the prevailing party. [A> HOWEVER, IN NO EVENT MAY MORE THAN 20 PERCENT OF THE AMOUNT AWARDED AS PUNITIVE DAMAGES BE PAID TO THE ATTORNEY FOR THE PREVAILING PARTY. <A]

[D> (b) One-half of the remainder shall be paid to the prevailing party. <D]

[D> (c) <D] [A> (B) <A] [D> One-half of the remainder <D] [A> SIXTY PERCENT <A] shall be paid to the Criminal Injuries Compensation Account to be used for the purposes set forth in ORS chapter 147. However, if the prevailing party is a public entity, the amount otherwise payable to the Criminal Injuries Compensation Account shall be paid to the general fund of the public entity.

1995 Ore. SB 482

(2) The party preparing the proposed judgment shall assure that the judgment identifies the judgment creditors specified in subsection (1) of this section.

(3) Upon the entry of a **[D>** judgment **<D] [A>** VERDICT **<A]** including an award of punitive damages, the prevailing party shall provide notice of the judgment to the Department of Justice. **[A>** THE NOTICE SHALL BE IN WRITING AND SHALL BE DELIVERED TO THE DEPARTMENT OF JUSTICE WITHIN FIVE DAYS AFTER THE ENTRY OF THE VERDICT. **<A]**

(4) Whenever a judgment includes both compensatory and punitive damages, any payment on the judgment by or on behalf of any defendant, whether voluntary or by execution or otherwise, shall be applied first to compensatory damages, costs and court-awarded attorney fees awarded against that defendant and then to punitive damages awarded against that defendant unless all affected parties, including the Department of Justice, expressly agree otherwise, or unless that application is contrary to the express terms of the judgment.

(5) Whenever any judgment creditor of a judgment which includes punitive damages governed by this section receives any payment on the judgment by or on behalf of any defendant, the judgment creditor receiving the payment shall notify the attorney for the other judgment creditors and all sums collected shall be applied as required by subsections (1) and (4) of this section, unless all affected parties, including the Department of Justice, expressly agree otherwise, or unless that application is contrary to the express terms of the judgment.


 SECTION 2. **[A>** (1) PUNITIVE DAMAGES ARE NOT RECOVERABLE IN A CIVIL ACTION UNLESS IT IS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT THE PARTY AGAINST WHOM PUNITIVE DAMAGES ARE SOUGHT HAS ACTED WITH MALICE OR HAS SHOWN A RECKLESS AND OUTRAGEOUS INDIFFERENCE TO A HIGHLY UNREASONABLE RISK OF HARM AND HAS ACTED WITH A CONSCIOUS INDIFFERENCE TO THE HEALTH, SAFETY AND WELFARE OF OTHERS. **<A]**

**[A>** (2) IF AN AWARD OF PUNITIVE DAMAGES IS MADE BY A JURY, THE COURT SHALL REVIEW THE AWARD TO DETERMINE WHETHER THE AWARD IS WITHIN THE RANGE OF DAMAGES THAT A RATIONAL JUROR WOULD BE ENTITLED TO AWARD BASED ON THE RECORD AS A WHOLE, VIEWING THE STATUTORY AND COMMON-LAW FACTORS THAT ALLOW AN AWARD OF PUNITIVE DAMAGES FOR THE SPECIFIC TYPE OF CLAIM AT ISSUE IN THE PROCEEDING. **<A]**

**[A>** (3) IN ADDITION TO ANY REDUCTION THAT MAY BE MADE UNDER SUBSECTION (2) OF THIS SECTION, UPON THE MOTION OF A DEFENDANT THE COURT MAY REDUCE THE AMOUNT OF ANY JUDGMENT REQUIRING THE PAYMENT OF PUNITIVE DAMAGES ENTERED AGAINST THE DEFENDANT IF THE DEFENDANT ESTABLISHES THAT THE DEFENDANT HAS TAKEN REMEDIAL MEASURES THAT ARE REASONABLE UNDER THE CIRCUMSTANCES TO PREVENT REOCCURRENCE OF THE CONDUCT THAT GAVE RISE TO THE CLAIM FOR PUNITIVE DAMAGES. IN REDUCING AWARDS OF PUNITIVE DAMAGES UNDER THE PROVISIONS OF THIS SUBSECTION, THE COURT SHALL CONSIDER THE AMOUNT OF ANY PREVIOUS JUDGMENT FOR PUNITIVE DAMAGES ENTERED AGAINST THE SAME DEFENDANT FOR THE SAME CONDUCT GIVING RISE TO A CLAIM FOR PUNITIVE DAMAGES. **<A]**

1995 Ore. SB 482

SECTION 3. [A> (1) A PLEADING IN A CIVIL ACTION MAY NOT CONTAIN A REQUEST FOR AN AWARD OF PUNITIVE DAMAGES EXCEPT AS PROVIDED IN THIS SECTION. <A]

[A> (2) AT THE TIME OF FILING A PLEADING WITH THE COURT, THE PLEADING MAY NOT CONTAIN A REQUEST FOR AN AWARD OF PUNITIVE DAMAGES. AT ANY TIME AFTER THE PLEADING IS FILED, A PARTY MAY MOVE THE COURT TO ALLOW THE PARTY TO AMEND THE PLEADING TO ASSERT A CLAIM FOR PUNITIVE DAMAGES. THE PARTY MAKING THE MOTION MAY SUBMIT AFFIDAVITS AND DOCUMENTATION SUPPORTING THE CLAIM FOR PUNITIVE DAMAGES. THE PARTY OR PARTIES OPPOSING THE MOTION MAY SUBMIT OPPOSING AFFIDAVITS AND DOCUMENTATION. <A]

[A> (3) THE COURT SHALL DENY A MOTION TO AMEND A PLEADING MADE UNDER THE PROVISIONS OF THIS SECTION IF THE COURT DETERMINES THAT THE AFFIDAVITS AND SUPPORTING DOCUMENTATION SUBMITTED BY THE PARTY SEEKING PUNITIVE DAMAGES FAIL TO SET FORTH SPECIFIC FACTS SUPPORTED BY ADMISSIBLE EVIDENCE ADEQUATE TO AVOID THE GRANTING OF A MOTION FOR A DIRECTED VERDICT TO THE PARTY OPPOSING THE MOTION ON THE ISSUE OF PUNITIVE DAMAGES IN A TRIAL OF THE MATTER. <A]

[A> (4) THE COURT SHALL CONDUCT A HEARING ON A MOTION FILED UNDER THIS SECTION NOT MORE THAN 30 DAYS AFTER THE MOTION IS FILED AND SERVED. THE COURT SHALL ISSUE A DECISION WITHIN 10 DAYS AFTER THE HEARING. IF NO DECISION IS ISSUED WITHIN 10 DAYS, THE MOTION SHALL BE CONSIDERED DENIED. <A]

[A> (5) DISCOVERY OF EVIDENCE OF A DEFENDANT'S ABILITY TO PAY SHALL NOT BE ALLOWED BY A COURT UNLESS AND UNTIL THE COURT GRANTS A MOTION TO AMEND A PLEADING UNDER THIS SECTION. <A]

SECTION 4. ORS 30.925 is amended to read:

30.925. (1) In a product liability civil action, punitive damages shall not be recoverable [D> unless it is proven by clear and convincing evidence that the party against whom punitive damages is sought has shown wanton disregard for the health, safety and welfare of others <D] [A> EXCEPT AS PROVIDED IN SECTION 2 OF THIS 1995 ACT <A] .

[D> (2) During the course of trial, evidence of the defendant's ability to pay shall not be admitted unless and until the party entitled to recover establishes a prima facie right to recover under subsection (1) of this section. <D]

[D> (3) <D] [A> (2) <A] Punitive damages, if any, shall be determined and awarded based upon the following criteria:

(a) The likelihood at the time that serious harm would arise from the defendant's misconduct;

(b) The degree of the defendant's awareness of that likelihood;

(c) The profitability of the defendant's misconduct;

1995 Ore. SB 482

(d) The duration of the misconduct and any concealment of it;

(e) The attitude and conduct of the defendant upon discovery of the misconduct;

(f) The financial condition of the defendant; and

(g) The total deterrent effect of other punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, punitive damage awards to persons in situations similar to the claimant's and the severity of criminal penalties to which the defendant has been or may be subjected.

 SECTION 5. **[A>** SECTIONS 2 AND 3 OF THIS ACT, THE AMENDMENTS TO ORS 18.540 AND 30.925 BY SECTIONS 1 AND 4 OF THIS ACT, AND THE REPEAL OF ORS 41.315 BY SECTION 6 OF THIS ACT, APPLY ONLY TO ACTIONS COMMENCED ON OR AFTER THE EFFECTIVE DATE OF THIS ACT. **<A]**

 SECTION 6. **[A>** ORS 41.315 IS REPEALED. **<A]**

## History

Approved by Governor on July 19, 1995.

## Sponsor

Sponsored by COMMITTEE ON JUDICIARY

OREGON ADVANCE LEGISLATIVE SERVICE
Copyright © 2019 by Information of Public Affairs, Inc.

**End of Document**

## *1989 Ore. SB 293*

Enacted, July 10, 1989

**Reporter**
1989 Ore. ALS 642; 1989 Ore. Laws 642; 1989 Ore. SB 293

**OREGON ADVANCE LEGISLATIVE SERVICE > 65th OREGON LEGISLATIVE ASSEMBLY, 1989 REGULAR SESSION > CHAPTER 642 > SENATE BILL 293**

## Notice

[D> Text within these symbols is deleted <D]
[A> UPPERCASE TEXT WITHIN THESE SYMBOLS IS ADDED <A]

## Synopsis

AN ACT Relating to protection of rights of persons claiming injury from intrauterine devices; creating new provisions; amending sections 5 and 7, chapter 4, Oregon Laws 1987; and declaring an emergency.

## Text

*Be It Enacted by the People of the State of Oregon:*

SECTION 1.  Section 7, chapter 4, Oregon Laws 1987, is amended to read:

Sec. 7.  Section 5, [A> CHAPTER 4, OREGON LAWS 1987, <A] [D> of this Act <D] is repealed on July 1, [D> 1989 <D] [A> 1995. <A] The repeal of section 5, [A> CHAPTER 4, OREGON LAWS 1987, <A] [D> of this Act <D] by this section does not affect an action described in section 5, [A> CHAPTER 4, OREGON LAWS 1987, <A] [D> of this Act <D] that is filed before July 1, [D> 1989 <D] [A> 1995. <A]

SECTION 2.  The statutes of repose in ORS 12.115, 30.905 (1) or any other statute of repose contained in Oregon Revised Statutes shall not apply to a product liability civil action against a manufacturer of an intrauterine device, resulting in IUD-related injuries.

SECTION 3.  Section 5, chapter 4, Oregon Laws 1987, is amended to read:

Sec. 5.  Notwithstanding ORS 30.905, a product liability civil action against the manufacturer of an intrauterine contraceptive device [D> shall <D] [A> MUST <A] be commenced not later than two years after the date on which the plaintiff first discovered[D> , <D] or, in the exercise of reasonable care, should have discovered[D> , <D] the [A> SPECIFIC DISEASE, <A] injury [A> OR PERMANENT DISABILITY FOR WHICH THE PLAINTIFF IS SUING <A] [D> and the cause of <D] [A> AND THE

1989 Ore. SB 293

TORTIOUS ACT OR ACTS OF THE MANUFACTURER WHICH CAUSE **<A]** the **[A>** DISEASE, **<A]** injury **[A>** OR PERMANENT DISABILITY. **<A]**

 SECTION 4.  This Act applies to any product liability civil action against the manufacturer of an intrauterine device resulting from IUD-related injuries which is tried, arbitrated or settled after the effective date of this Act, even if such an action has already been dismissed, so long as the dismissal is based on a previous version of the applicable statute of limitations or repose.  This Act shall also apply to any product liability civil action against a manufacturer of an intrauterine device currently pending in the trial court or on appeal, in which the defendant manufacturer has raised the statute of limitations or repose as a defense.  Any such action in which final judgment has been entered in favor of the manufacturer based solely on a previous version of the statute of limitations or repose may be refiled within one year of the effective date of this Act.

 SECTION 5.  If a product liability civil action that was allowed to be commenced or refiled under authority of section 8 or 9, chapter 4, Oregon Laws 1987, was not refiled or commenced in timely fashion under the provisions of either of those sections because of the pending bankruptcy of the defendant, such action may be refiled or commenced within one year after the effective date of this Act.

 SECTION 6.  This Act shall not apply to product liability actions against manufacturers that had, at the time the intrauterine device was sold, received approval of an application filed under *21 U.S.C. section 355* with the Food and Drug Administration for the sale of the intrauterine device which caused the injury unless the plaintiff proves, by clear and convincing evidence, that the defendant drug manufacturer, acting in wanton disregard for the health, safety and welfare of others, fraudulently withheld from or misrepresented to the United States Food and Drug Administration, information that was both:

(1) Required to be submitted by Food and Drug Administration regulations; and

(2) Material and relevant to the harm suffered by the plaintiff.

 SECTION 7.  This Act is repealed on July 1, 1995.

 SECTION 8.  This Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this Act takes effect on its passage.

## History

Filed by Office of Secretary of State on July 10, 1989

OREGON ADVANCE LEGISLATIVE SERVICE

End of Document