**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
ksalyer@tomasilegal.com
edubay@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>   Plaintiff,<br><br>   v.<br><br>**UPM TECHNOLOGY, INC**., *et al.,*<br><br>   Defendants & Counterclaim-Plaintiffs<br><br>**DIGICEL USA, INC.,** a Delaware corporation,<br><br>   Additional Counterclaim-Defendant. | Case No. 3:15-CV-00185-SI<br><br><br>**DEFENDANTS' OPPOSITION TO DIGICEL-USA, INC.'S MOTION TO DISMISS AMENDED COUNTERCLAIMS** |

Counter-claim plaintiff UPM Technology, Inc. ("UPM"), hereby opposes Counterclaim Defendant Digicel USA, Inc.'s ("Digicel-USA") Motion to Dismiss UPM's Communications Act Counterclaims (ECF #206) ("MTD").

## I.      STANDARD OF REVIEW

UPM incorporates the standard of review as stated by the Court in its recent order dismissing UPM's antitrust claims and the RICO claims of Unigestion Holdings, S.A. ("Digicel-Haiti").  *See* ECF #188 at 2-3.

## II.     UPM HAS ADEQUATELY PLED THAT DIGICEL-USA HAS VIOLATED THE COMMUNICATIONS ACT.

Digicel-USA claims that UPM has failed to "allege any actionable conduct by Digicel-USA."  MTD at 4.  This is wrong.  While Digicel-Haiti is the obvious focus of the Counterclaims, UPM's allegations implicate Digicel-USA as well.

Section 201(b) of the Communications Act requires that "all charges, practices, classifications, and regulations for and in connection with" a carrier's services must be "just and reasonable," and "declare[s] to be unlawful" "any such charge, practice, classification, or regulation that is unjust or unreasonable."  47 U.S.C. § 201(b).  This broad statutory provision outlaws a wide range of carrier behavior.

The core of UPM's Communications Act claims against Digicel-Haiti is that Digicel-Haiti unjustly and unreasonably interfered with UPM's ability to use (and to resell) Digicel-Haiti's services, by refusing to complete calls from the United States to Haiti that UPM was attempting to make by means of fully-paid Digicel-Haiti SIM cards and usage plans.  *See* UPM's Answer, Affirmative Defenses and Counterclaims to Plaintiff's Third Amended Complaint (ECF # 202) ("Counterclaims") at ¶¶ 297-320; *see also id.* at ¶¶ 288-296.  As explained in the Counterclaims, most of UPM's efforts entailed reselling Digicel-Haiti's "Roam Like You're Home" ("RLYH") service, although UPM also used equipment in Haiti to try to complete some calls as well.  *Id.* at ¶¶ 297-313.

To the extent that Digicel-USA's point is that Digicel-Haiti, not Digicel-USA, is the principal malefactor in UPM's Counterclaims, UPM agrees.  But UPM has also alleged that Digicel-USA participated in and facilitated Digicel-Haiti's wrongful conduct, which is, itself, actionable under 47 U.S.C. § 201(b).  This is because Section 201(b) outlaws all carrier

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

"practices" that are "unjust" or "unreasonable," as long as those practices are "in connection with" the carrier's own services. Under the liberal standard applicable to defending against a motion under Rule 12(b)(6), the Counterclaims allege sufficient involvement by Digicel-USA in wrongful conduct that Digicel-USA should not be dismissed from the case.

In light of the broad, flexible statutory standard in Section 201(b), Digicel-USA's claim that UPM "failed to include any allegations of wrongdoing on the part of Digicel-USA," MTD at 3, is clearly mistaken. By way of background, UPM alleged that Digicel-USA and Digicel-Haiti are commonly owned; that Digicel-USA is a carrier with a "Section 214" authorization to carry calls from the United states to Haiti; and that Digicel-USA operates switches in Miami and New York used to route calls from the United States to Digicel-Haiti. Counterclaims at ¶¶ 220-222, 255; *see also id.* at ¶ 24. These allegations establish that Digicel-USA is a carrier subject to Section 201(b) and that it is directly involved in Digicel-Haiti's supposed "legitimate" arrangements for getting calls from the United States to Haiti. *See* Third Amended Complaint (ECF # 192-1) at ¶¶ 17-40.

Beyond that, UPM alleged that Digicel-USA acts in concert with and/or under the direction of Digicel-Haiti with regard to the terms and conditions associated with getting calls from the United States to Haiti. *Id.* at ¶¶ 222, 346.[1] Moreover, UPM has alleged that Digicel-USA directly benefits from the elimination of competition for Digicel-USA's transport business. *Id.* at ¶ 320. In addition (and as discussed more fully below), UPM has alleged that Digicel-USA acts as Digicel-Haiti's agent with respect to the business of getting calls from the United States to Haiti, *id.* at ¶ 222, which – at least in the context of Rule 12(b)(6) – implicates Digicel-USA in

---

[1] There does not seem to be any disagreement between the parties with regard to the fact that Digicel-USA is intimately involved in getting calls from the United States to Haiti, or that Digicel-Haiti and Digicel-USA work together in various ways with regard to accounting for and charging for such calls. *Compare* Counterclaims at ¶¶ 220-222 *with* Third Amended Complaint (ECF # 192-1) at ¶¶ 17-40. UPM has discovery requests pending with Digicel-Haiti, seeking more information regarding the relationships between Digicel-USA and Digicel-Haiti, including identifying any common officers or directors; where each fits within the broader Digicel Group; what services they provide each other; and how compensation for those services is handled.

Digicel-Haiti's own wrongful conduct. Finally, in the specific context of resold RLYH calls, UPM has alleged that all such calls were routed to Haiti via Digicel-USA's switches. *Id.*, ¶¶ 221, 222(a).[2]

In evaluating these allegations in light of applicable law, the question of whether a carrier's actions (its "practices," in the language of the statute) violate Section 201(b)'s prohibition of "unjust" and "unreasonable" actions cannot be boiled down to a set of specific elements or requirements. Instead, what constitutes unjust or unreasonable conduct will depend on a consideration of the overall circumstances of the case. *See, e.g., Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc.,* 550 U.S. 45, 53-54 (2007) (noting a range of practices the Federal Communications Commission has found to be "unjust or unreasonable" under § 201(b)); *id.* at 55 (noting the breadth of "practices" that can be deemed unreasonable under Section 201(b)). Moreover, the Communications Act's prohibition on bad carrier behavior is not limited to the strict details of the terms imposed on customers of the services it provides. To the contrary, the Act bans *any* unjust or unreasonable "practices" "in connection with" the carrier's services. 47 U.S.C. § 201(b). *See, e.g., AT&T Corp. v. FCC,* 317 F.3d 227 (D.C. Cir. 2003) (creation of sham entity to extract excessive call termination payments constitutes an unjust and unreasonable practice in violation of Section 201(b); *Beattie v. CenturyTel, Inc.,* 234 F.R.D. 160 (E.D. Mich. 2006), *aff'd,* 511 F.3d 554 (6th Cir. 2007) (deceptive or misleading description of charges for an unregulated service is an unjust and unreasonable "practice" "in connection with" regulated telephone service). And a carrier is liable not merely for any direct damages its unlawful actions may cause; it is liable for "the full amount of damages sustained *in consequence of*" the unlawful conduct. 47 U.S.C. § 206 (emphasis added). Digicel-USA's participation in and support of Digicel-Haiti's Communications Act violations, therefore, are

---

[2]    UPM notes that in ¶ 302(f) of its Counterclaims, it referred to "*Digicel-Haiti's* gateway switches in New York [and] Miami" (emphasis added). As we trust the Court and the Digicel parties understood, that was a scrivener's error. As indicated in ¶ 221, UPM recognizes that Digicel-USA, not Digicel-Haiti, owns and operates those switches.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

independent violations of the Communications Act and subject it to liability for the harm those violations cause.[3]

Here, Digicel-USA's services – the transport of, and charging for, calls from the United States to Haiti, including, notably, resold RLYH calls – are intimately involved in the Digicel-Haiti Communications Act violations UPM has alleged.   Indeed, Digicel-Haiti's insistence that all "legitimate" calls must use Digicel-USA's (high-priced) services was central to Digicel-Haiti's efforts to shut UPM down, as well as its purported justifications for doing so. *See* Third Amended Complaint (ECF # 192-1) at ¶ 22.  In this regard, *AT&T v. FCC, supra,* is instructive.  There, the Federal Communications Commission ("FCC") found that two carriers **both** violated Section 201(b) when one of them (Atlas) set up the other one (Total), and arranged things technically so that AT&T's traffic had to go to the second one – which then charged excessive prices.  *AT&T v. FCC, supra,* 317 F.3d at 231, *citing In the Matter of Total Telecommunications Services, Inc., and Atlas Telephone Company, Inc., Complainants, v. AT&T Corporation, Defendant,* Memorandum Opinion and Order, 16 FCC Rcd 5726 (2001) at ¶¶ 15-18.

As relevant here, the Section 201(b) violation that the FCC found, and the D.C. Circuit sustained, was not (only) the excessive rates.  To the contrary, the carriers were specifically held to have violated Section 201(b) by virtue of ***establishing a corporate structure*** that facilitated the technical arrangement that made it necessary for AT&T to pay those rates.  Here, Digicel-USA's actions in support of Digicel-Haiti – including acting as the supposedly uniquely "legitimate" gateway for calls being sent to Haiti – are without question "practices" "in connection with" Digicel-USA's services that can (and should) give rise to liability under Section 201(b).

---

[3]    UPM emphasizes that it is not seeking double-recovery – from Digicel-Haiti and, separately, from Digicel-USA – for the same harms.  It is simply asserting that Digicel-USA's conduct in support of and at the direction of Digicel-Haiti makes Digicel-USA liable as well.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

UPM recognizes that the parallel between the arrangements made by Digicel-Haiti and Digicel-USA, on the one hand, and by Atlas and Total in *AT&T v. FCC,* on the other hand, is not exact. But that is beside the point; they do not have to be. The point is that *AT&T v. FCC* establishes that inter-company arrangements between two related carriers **can themselves be a Section 201(b)** violation, particularly where the effect is to force customers – including other carriers – to pay excessive rates. For this same reason, Digicel-USA's claim that UPM has not alleged any specific wrongful conduct by Digicel-USA is also beside the point. Digicel-USA violated Section 201(b) by participating in and facilitating Digicel-Haiti's arrangements and efforts (including shutting down UPM) to prevent customers in the United States from ever paying less than Digicel-Haiti's asserted $0.23/minute rate floor.

Finally, and, as discussed more fully below, UPM has more than adequately alleged that Digicel-USA has been acting as Digicel-Haiti's agent, facilitating Digicel-Haiti's violations of the Act. That agency relationship both permits Digicel-USA to be tarred with the same brush as Digicel-Haiti with respect to the latter's actionable conduct, and in and of itself – given their overall effort to prevent UPM from operating – constitutes an unjust and unreasonable practice.

UPM expects that discovery will permit UPM to flesh out in more fact-specific detail additional aspects of Digicel-USA's activities and business arrangements that have been unjust and unreasonable, and thus in violation of Section 201(b). But for now, UPM's allegations regarding Digicel-USA's involvement in the Communications Act violations alleged in the Counterclaims are sufficient to survive a motion to dismiss.[4]

---

[4]    If the Court concludes UPM's allegations are insufficient, UPM respectfully requests the opportunity to replead, which should be routinely granted. *Rodriguez v. Steck,* 795 F.3d 1187, 1188 (9th Cir. 2015); *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.,* 863 F.3d 1178, 1187 n. 5 (9th Cir. 2017), *quoting Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1101 (9th Cir. 1999).

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

## III.    UPM HAS ADEQUATELY PLED THAT DIGICEL-USA IS DIGICEL-HAITI'S AGENT WITH RESPECT TO THE CIRCUMSTANCES OF THIS CASE

Recognizing that it would be inappropriate to dismiss Digicel-USA from the case if it has indeed been doing Digicel-Haiti's bidding in violating the Communications Act, Digicel-USA takes specific and detailed issue with UPM's allegation that Digicel-USA is acting as Digicel-Haiti's agent.  *See* MTD at 4-9.  In fact, UPM's allegations of agency are entirely adequate.

To argue against this conclusion, Digicel-USA first relies on cases that purport to require particularly detailed pleading of an agency relationship.  *See Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003,* 2019 U.S. Dist. LEXIS 165863 (D. Haw. September 26, 2019); *Sollberger v. Wachovia Sec., LLC,* 2010 U.S. Dist. LEXIS 66233 (C.D. Cal. June 30, 2010).  *See also Woodard v. Labrada,* 2016 U.S. Dist. LEXIS 82849 (C.D. Cal. May 12, 2016). These cases, however, are inapposite.

First, as a factual matter, in those cases the allegations regarding the relationship between the alleged principal and agent were much weaker than in UPM's Counterclaims.  *See Aquilina,* 2019 U.S. Dist. LEXIS 165863 at [*28] – [*29] ("the only agency-related facts in the Complaint are general allegations of the business relationships between the parties"); *Sollberger,* 2010 U.S. Dist. LEXIS 66233 at [*14] – [*17] (plaintiff's theories of liability based on claim that defendants were agents and sub-agents of the plaintiff himself, with only contractual relationships among them); *Woodard,* 2016 U.S. Dist. LEXIS 82849 at [*17] – [*18] (only factual allegation supporting agency relationship between television personality and media companies was that the media companies "help produce or distribute" the show). *See also United States v. Bonds,* 608 F.3d 495, 504-07 (9th Cir. 2010) (based on detailed review of evidentiary record, District Court did not err in concluding that athletic trainer was not the agent of athlete for purposes of identifying blood and urine samples); *Whisper Soft Mills, Inc. v. NLRB,* 1985 U.S. App. LEXIS 29703 (9th Cir. Mar. 11, 1985) (discussion based on evidentiary record of whether a particular local labor unit was the agent of an international union).

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

Here, Digicel-USA claims that UPM's "sole" basis for claiming that Digicel-USA acts as Digicel-Haiti's agent is that it transmits calls to Digicel-Haiti. MTD at 6. In fact, however, UPM's allegations are much more robust. *See* Counterclaims at ¶ 219-222. UPM alleges that Digicel-Haiti and Digicel-USA are both 100% owned by the same entity. *Id.* at ¶¶ 219-220. UPM alleges that Digicel-USA owns "gateway" switches to which Digicel-Haiti directs all inbound-from-the-United-States calls. *Id.* at ¶¶ 221-222(a). UPM alleges that Digicel-Haiti dictates the price that Digicel-USA will charge third parties for switching and carrying calls to Haiti. *Id.* at ¶ 222(b). UPM alleges that when it resold RLYH service, all of the calls that it carried (and all of the calls that it would have carried but for Digicel-USA's de-authorizing the relevant SIM cards) were routed (via third parties) to and through Digicel-USA's switches. *Id.* at ¶¶ 221-222(a), 302(f), 307. And UPM alleges that Digicel-Haiti, not Digicel-USA, is the recipient of the fees from those third parties, nominally charged by Digicel-USA. *Id.* at ¶ 222(c).

With respect to the vast majority of calls at issue in this case, therefore – resold RLYH calls (*see id.* at ¶ 293) – UPM has alleged that Digicel-USA is not acting on its own behalf or in its own independent interest. To the contrary, its actions in receiving calls and routing them to Haiti are dictated by Digicel-Haiti. The amount it requires third parties to pay for "its" services is dictated by Digicel-Haiti. In fact, Digicel-USA itself is not meaningfully paid by those third parties at all – Digicel-Haiti is. *Id.* at ¶ 222(c). Digicel-Haiti then pays Digicel-USA (via intra-corporate allocations) for providing services to the third parties.[5] These

---

[5] As noted above, UPM has discovery pending with Digicel-Haiti that will shed more light on the nature of that entity's relationship with Digicel-USA. UPM intends to seek discovery directly from Digicel-USA as well. At the pleading stage, however, UPM cannot reasonably be expected to have detailed insight into the particulars of the intra-corporate-family relations between the two parties. That said, Digicel-Haiti's own pleading makes clear that they are extensive: Third Amended Complaint (ECF # 192-1) at ¶¶ 22, 39 (Digicel-Haiti requires Digicel-USA to switch all traffic coming from the United States to Digicel-Haiti); *id.* at ¶ 24 (Digicel-Haiti calls on Digicel-USA to arrange for transport capacity between the United States and Haiti); *id.* at ¶¶ 25-26 (Digicel-Haiti calls on Digicel-USA to generate "call detail records," or "CDRs," for all calls from the United States to Digicel-Haiti); *id.* at ¶¶ 35-36 (Digicel-
(note continued)…

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

are not allegations of some mere business relationship – Digicel-Haiti and Digicel-USA are not independent entities in a "business relationship," but are, in fact, both wholly-owned subsidiaries within the same integrated corporate family. *Id.* at ¶¶ 219-220. These are clearly sufficient allegations to support UPM's allegation of agency.

Digicel-USA makes much of the idea that UPM has failed to allege that Digicel-USA is authorized to "bind" Digicel-Haiti. *See, e.g.,* MTD at 6-7. It is true that UPM does not literally allege that Digicel-USA has that power, but it is also entirely clear, from the allegations UPM does make, that the power exists. Specifically, when Digicel-Haiti directs Digicel-USA to charge third parties $0.23 per minute for calls to Haiti when it receives them, Digicel-USA is binding Digicel-Haiti to complete the calls that the third parties are sending. The transaction between Digicel-USA and the third parties necessarily includes a commitment from Digicel-Haiti to terminate the calls; otherwise there would need to be a separate arrangement between each third party and Digicel-Haiti.[6]

In this regard, UPM also notes that in some of the cases on which Digicel-USA relies, the underlying claim at issue involved fraud, triggering the heightened pleading requirements of Rule 9(b), which may well have informed those courts' consideration of the

---

…(note continued)

Haiti pays Digicel-USA for its services on behalf of Digicel-Haiti). To the extent that the Court concludes that UPM's current allegations regarding Digicel-USA's status as Digicel-Haiti's agent are insufficient, UPM – relying merely on Digicel-Haiti's own allegations regarding its relationship with Digicel-USA – could readily include more details in amended counterclaims regarding Digicel-USA, based on Digicel-Haiti's allegations. At this late stage in the case, it seems the more reasonable course to require Digicel-USA to answer, allow discovery to proceed, and handle any claims that Digicel-USA didn't do anything wrong on motions for summary judgement.

[6]    Digicel-USA asserts that UPM has "misconstrued" the nature of the relationship between Digicel-USA and Digicel-Haiti, MTD at 8, and that UPM's allegations contain "inaccuracies," *id.* at 6. That may, of course, be true; prior to discovery, UPM's insight into the details of that relationship is limited – a problem confounded by Digicel-Haiti's own shifting explanations of it. *Compare* Amended Complaint (ECF # 34) at ¶¶ 13-22 *with* Third Amended Complaint (ECF #192-1) at ¶¶ 22-39. UPM expects Digicel-Haiti's responses to discovery – and, ultimately, Digicel-USA's responses to discovery – to clear things up.

*TOMASI SALYER MARTIN*
121 SW MORRISON STREET, SUITE 1850
PORTLAND, OREGON 97204
TELEPHONE: (503) 894-9900
FACSIMILE: (971) 544-7236

adequacy of the pleadings of agency. *See Aquilina, supra; Sollberger, supra; Woodard, supra.* But UPM is not alleging that Digicel-USA or Digicel-Haiti defrauded UPM. UPM alleges that Digicel-USA was – with respect to calls bound from the United States to Haiti – doing Digicel-Haiti's bidding and thus acting as its agent "in connection with" its provision of its international common carrier services. *See* 47 U.S.C. § 201(b). UPM's substantive claim is that, under the flexible, circumstance-specific standard of 47 U.S.C. § 201(b), Digicel-USA's participation in these activities, in the way it did, both independently and as Digicel-Haiti's agent, constitutes an "unjust" or "unreasonable" practice under the Act. As the pleadings stand and under applicable law, UPM has adequately alleged that claim.

## IV.    CONCLUSION

For the reasons stated herein, this Court should deny Digicel-USA's Motion to Dismiss. However, if and to the extent that the Court finds UPM's allegations to be deficient, UPM respectfully requests leave to replead to cure any such deficiencies.

Dated: December 17, 2019.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2019, I served the foregoing **DEFENDANTS' OPPOSITION TO DIGICEL-USA, INC.'S MOTION TO DISMISS AMENDED COUNTERCLAIMS** on the following individuals by electronic service to said individuals:

| | |
|---|---|
| Robert C.L. Vaughan | Richard K. Hansen |
| Cherine Smith Valbrun | Anne M. Talcott |
| Leah Storie | Schwabe, Williamson & Wyatt, PC |
| Kim Vaughan Lerner LLP | Pacwest Center |
| One Financial Plaza | 1211 SW 5th Ave., Suite 1900 |
| 100 SE Third Avenue • Suite 2001 | Portland, OR  97204 |
| Fort Lauderdale, FL 33394 | Email: rhansen@schwabe.com |
| Email: rvaughan@kvllaw.com | Email: atalcott@schwabe.com |
| Email: cvalbrun@kvllaw.com | |
| Email: lstorie@kvllaw.com | |

Dated: December 17, 2019.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants