**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A.,** a foreign corporation, d/b/a **DIGICEL HAITI**<br><br>    Plaintiff,<br><br> v.<br><br>**UPM TECHNOLOGY, INC.** d/b/a **UPM TELECOM, INC.,** and **UPM MARKETING, INC.,** an Oregon corporation**;**<br>**UPM TELECOM, INC.,** an Oregon a/b/n;<br>**UPM MARKETING, INC.,** an Oregon a/b/n;<br>**BEN SANCHEZ a/k/a BEN SANCHEZ MURILLO,** a foreign individual;<br>**BALTAZAR RUIZ,** a foreign individual, and<br>**TYLER ALLEN,** a foreign individual,<br><br>    Defendants;<br><br>**UPM TECHNOLOGY, INC.,** an Oregon corporation;<br><br>    Counterclaim-Plaintiff,<br><br> v.<br><br>**UNIGESTION HOLDINGS, S.A.,** a foreign corporation, **d/b/a DIGICEL HAITI;** and **DIGICEL USA, INC.,** a Delaware corporation;<br><br>    Counterclaim-Defendants. | Case No. 3:15-cv-185-SI<br><br>**OPINION AND ORDER** |

Richard K. Hansen and Anne M. Talcott, SCHWABE, WILLIAMSON & WYATT, PC, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204; Robert C.L. Vaughan, Cherine Smith Valbrun, and Leah Storie, KIM VAUGHAN LERNER, LLP, One Financial Plaza, Suite 2001, Fort Lauderdale, FL 33394. Of Attorneys for Plaintiff and Counterclaim Defendants.

Kathryn P. Salyer and Eleanor A. DuBay, TOMASI SALYER MARTIN, 121 SW Morrison Street, Suite 1850, Portland, OR 97204; Christopher W. Savage, DAVIS WRIGHT TREMAINE, LLP, 1919 Pennsylvania Avenue NW, Suite 800, Washington, DC 20006. Of Attorneys for Defendants and Counterclaim Plaintiff.

**Michael H. Simon, District Judge.**

Plaintiff Digicel Haiti, Inc. ("Digicel Haiti") provides mobile telecommunications services in Haiti. In its Third Amended Complaint, Digicel Haiti asserts claims of fraud, conversion, and unjust enrichment against UPM Technology, Inc. ("UPM") and several individuals and entities affiliated with UPM (collectively, "Defendants"). ECF 200. In Defendants' Answer, Affirmative Defenses and Counterclaims, UPM asserts six counterclaims against both Digicel Haiti and Digicel USA, Inc. ("Digicel USA"). ECF 202. Digicel USA is an affiliate of Digicel Haiti and operates two international telephone switching stations in the United States. UPM alleges that Digicel Haiti and Digicel USA violated Sections 201, 202, and 214 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151, *et seq.* (the "Act"). UPM also alleges claims of breach of implied-in-fact contract, money had and received, conversion, unjust enrichment, and intentional interference with prospective economic advantage. ECF 202. Digicel USA—and only Digicel USA—has moved to dismiss all counterclaims asserted by UPM. ECF 206. For the reasons that follow, the Court grants Digicel USA's motion to dismiss.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,*

*Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

For purposes of Digicel USA's motion to dismiss UPM's counterclaims, the Court accepts as true all well pleaded facts alleged by UPM in its counterclaims. The Court, however,

gives no presumption of truth to Digicel Haiti's allegations in its Third Amended Complaint ("TAC"), unless UPM in its counterclaims expressly endorses or relies upon Digicel Haiti's allegations.

## A. Digicel USA and Digicel Haiti

Digicel USA is a wholly-owned subsidiary of Digicel Holdings, Ltd., which also owns Digicel Haiti. ECF 202 ¶¶ 219-20. Digicel USA owns and operates two sets of international telephone switching systems—equipment with the capacity to transmit a call from the United States to an overseas telecommunications network— in Miami, Florida and New York City, New York. *Id.* ¶ 221. Digicel Haiti is the leading provider of telecommunication services in Haiti, where it solely operates and has an estimated market share of between 75 and 90 percent of local telephone service. *Id.* ¶ 224. UPM contends that both Digicel USA and Digicel Haiti are common carriers under the Act. *Id.* ¶ 222.

Digicel Haiti tracks and charges its local customers in Haiti through pre-paid Subscriber Identity Module ("SIM") cards. A SIM card acts as a small circuit board. When the card is placed inside a cellular telephone, the card identifies the device as associated with an individual customer's unique telephone number and account. These SIM cards then allow customers to access Digicel Haiti's cellular network and, in turn, allow Digicel Haiti to charge for communications made from cellular devices containing specific SIM cards.

When a user of a Digicel Haiti SIM card makes a local call within Haiti, that user incurs charges of about $0.09 per minute of wireless service. If a Digicel Haiti customer travels to the United States and uses his or her Digicel Haiti SIM card to make calls back to Haiti, the user of that SIM card generally incurs charges of at least $1.99 for each minute of wireless service used. Digicel Haiti also offers a Roam-Like-You're-Home ("RLYH") pricing plan. For a monthly access fee about $20 to $25, the RLYH plan allows registered Digicel Haiti customers to call

back to Haiti while traveling in the United States at rates similar to the local rates in Haiti during the authorized, pre-paid period.

When someone in the United States not registered on a Digicel Haiti RLYH plan originates a call to one of Digicel Haiti's subscribers in Haiti, a "third-party carrier"—typically a United States telecommunications carrier—picks up that telephone call from the United States-based originating caller and transports it to one of the Digicel USA switching gateways. From that switching gateway, Digicel USA picks up the call and transports it to Haiti. Digicel Haiti pays Digicel USA a "small cost-allocation-based compensation" for its switching services. *Id.* ¶ 222. Digicel Haiti then "terminates" (*i.e.*, connects) the call on its local network in Haiti. Digicel Haiti charges the third-party carrier at least $0.23 per minute (the minimum termination rate set by the Haitian government) for terminating calls in Haiti. *Id.* ¶ 307.

**B. UPM**

UPM is an Oregon corporation that facilitated international calls from the United States to people in Haiti on behalf of third-party carriers, at rates lower than what Digicel Haiti charged. UPM asserts that from April 2014 through November 2014 it essentially resold Digicel Haiti's local and RLYH services within the United States at a discount. UPM's business involved paying full retail price to buy large quantities of Digicel Haiti's SIM cards from authorized dealers and then using those cards in UPM's servers to facilitate calls to Haiti through two distinct platforms: (1) the resale of the RLYH plan; and (2) the resale of Digicel Haiti's local wireless services. Because of Digicel Haiti's efforts to prevent UPM from reselling Digicel Haiti's services, UPM no longer facilitates calls to Haiti through either of these means.

    **1. UPM's Purchase of RLYH SIM Cards**

The first and most common way that UPM facilitated calls to Haiti began with UPM buying about 10,000 of Digicel Haiti's SIM cards at full retail price and enrolling the cards in the

RLYH plan. ECF 202 ¶¶ 297-99. At no relevant time did Digicel Haiti provide UPM with any terms or conditions restricting the use of these SIM cards. *Id.* ¶¶ 278-79. UPM would then place the RLYH-enrolled SIM cards into one or more SIM servers owned and maintained by UPM. These UPM servers were capable of accessing the wireless networks of AT&T and T-Mobile, the third-party carriers that have contractual roaming arrangements in the United States with Digicel Haiti. Ordinarily, when a third-party carrier's customer would call Haiti, the third-party carrier, and ultimately the customer, would be required to pay the standard amount—a minimum of $0.23 per minute—for Digicel Haiti to connect the international call to its local network in Haiti.

UPM offered to the third-party carriers a less expensive way to connect the calls. A third-party carrier that elected to use UPM's services would switch a call bound for a Digicel Haiti customer in Haiti to UPM, instead of to Digicel USA's gateway. The third-party carrier's switch would reformat the call into an internet-based protocol packet that carries the call (including the destination number in Haiti) over the internet to one of UPM's SIM servers in Oregon. UPM's SIM server would then initiate the call to Haiti on the third-party carrier's wireless network. UPM's SIM server also would convert the call into the appropriate format for wireless transmission and essentially reformat the call to make it appear to have come from a mobile telephone number that was already associated with one of the RLYH-enrolled Digicel Haiti SIM cards. After the call was made to look like a call registered on the RLYH plan, it would follow the typical route for calls switched directly to Digicel Haiti: the third-party carrier would route the newly-reformatted call to one of Digicel USA's switches in New York or Miami, Digicel USA would then carry the call to Haiti, and Digicel Haiti then would terminate the call on its local network in Haiti, charging the associated SIM card at the discounted RLYH rate.

## 2. Voice-over-Internet-Protocol

A second, though less common, way in which UPM facilitated international calls to Haiti was by transporting the calls to Digicel Haiti's local network in Haiti through a Voice-over-Internet-Protocol ("VoIP"). The customer of a third-party carrier would initiate a call to someone in Haiti, and the third-party carrier's switch would then select UPM to handle the call. The call would be sent to a UPM SIM server in Oregon in the same manner described above. Instead of initiating a wireless call to Haiti and converting the call for wireless transmission, however, UPM would leave the call in an Internet-based protocol packet. UPM would use the internet to transmit the call to a receiver in Haiti, known as a Global System for Mobile Communications ("GSM") Gateway. The GSM Gateway would then format the call for wireless transmission and initiate a wireless call on Digicel Haiti's local network in Haiti using the account information associated with the UPM SIM card in Oregon. Digicel Haiti would then terminate (or complete) the call on its local network in Haiti, treating the call as a local call and charging the associated SIM card at the lower rate applicable to local calls.

## 3. Digicel Haiti's Response to UPM's Conduct

Digicel Haiti investigated the international "resale" of its services and discovered that the calling and usage patterns of particular SIM cards were inconsistent with use by individual customers. Digicel Haiti then "de-authorized" those SIM cards so that calls associated with those cards could no longer be completed. Because Digicel Haiti de-authorized many of the SIM cards that UPM used to conduct its business, UPM was no longer able to facilitate international calls to Haiti through either RLYH plans or VoIP.

## DISCUSSION

### A. UPM's Claims Under § 201(b) of the Communications Act

#### 1. Timeliness

UPM's first counterclaim asserts violations of § 201(b) of the Act. In two counts, UPM alleges that Digicel USA engaged in "unjust or unreasonable . . . charges, practices, classifications, or regulations" in connection with their communications services. *See* 47 U.S.C. § 201(b). Digicel USA argues that these counts are time-barred. Digicel USA notes that UPM ceased all operations in Haiti in 2014 but asserted its claim under § 201(b) for the first time in November 2019. Digicel USA contends that UPM's claim falls well outside the two-year statute of limitations for Communications Act claims seeking damages. *See* 47 U.S.C. § 415(b).

"[A] claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (citations omitted). It is not apparent from the face of UPM's counterclaims that they are untimely. UPM acknowledges that it "no longer provided or offered [telecommunications] services [in Haiti] after 2014." ECF 202 ¶ 295. And UPM also acknowledges that it stopped providing these services in Haiti "due to Digicel Haiti's successful efforts to foreclose UPM from providing calling to Haiti." *Id.* UPM's counterclaims, however, are ambiguous about whether Digicel Haiti's efforts continued as a deterrent after UPM withdrew. As a result, construed in the light most favorable to UPM, the counterclaim as alleged does not foreclose the possibility that Digicel USA and Digicel Haiti continued into a point within the limitations period to monitor and deactivate the SIM cards that UPM purchased.

### 2. Sufficiency of Allegations Underlying § 201(b) Counterclaim

UPM alleges that Digicel USA is directly liable for violating § 201(b) of the Communications Act. UPM argues that § 201(b)'s prohibition on "unjust or unreasonable . . . charges, practices, classifications, or regulations for and in connection with [a common carrier's] communication services" applies to Digicel USA's business relationship with Digicel Haiti because, UPM contends, Digicel USA and Digicel Haiti are each common carriers. Relatedly, UPM argues that the "inter-company arrangement" between Digicel USA and Digicel Haiti is itself a § 201(b) violation. Although § 201(b) is broad and bans certain arrangements as unjust practices, it does not proscribe the business arrangement here between Digicel USA and Digicel Haiti.

In *AT&T Corp. v. FCC*, 317 F.3d 227 (D.C. Cir. 2003), the court described an arrangement prohibited by § 201(b). The court held that two carriers violated § 201(b) when the first carrier set up the second carrier as a shell, and the second carrier then charged excessive prices. The court explained that the "entire arrangement," rather than just the excessive costs, violated § 201(b). *AT&T*, 317 F.3d at 233. The court based its holding on the fact that the second carrier "was devised solely to circumvent regulation" and, thus, was a "sham entity." *Id.*

UPM's allegations do not fit that mold. UPM hints in its opposition that Digicel Haiti charges "high" prices, but nowhere in its counterclaims does UPM allege that Digicel Haiti charges "excessive" rates. UPM alleges nothing about the rates, except the obvious: that they are above the $0.23 per minute floor mandated by the Haitian government. UPM also alleges nothing close to the "sham" arrangement of the two carriers in *AT&T*. Unlike the "sham" carrier in *AT&T*, Digicel USA cannot force third parties to pay excessive rates because Digicel USA only provides switching services—Digicel Haiti charges the third parties and handles the billing.

And most basically, UPM does not allege that Digicel USA is a "sham" entity. UPM alleges only that Digicel USA is a subsidiary of Digicel Holdings, Ltd.

B. **UPM's Other Counterclaims**

UPM also asserts counterclaims alleging violations of other sections of the Act. ECF 202 ¶¶ 328-49. In addition, UPM alleges common law counterclaims, consisting of: breach of implied-in-fact contract, money had and received, conversion, unjust enrichment, and intentional interference with prospective economic advantage. *Id.* ¶¶ 350-80. In its opposition to Digicel USA's motion to dismiss, UPM does not argue the merits of the additional Communications Act violations or the five other counterclaims. Instead, UPM apparently relies only on the alleged principal-agent relationship between Digicel Haiti and Digicel USA to argue that Digicel USA is liable.

UPM acknowledges that its allegations about the relationship between Digicel Haiti and Digicel USA may contain "inaccuracies" but insists that discovery from Digicel Haiti and Digicel USA will "clear things up." ECF 209 at 9. But "[r]ule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Discovery follows a properly stated claim—it is not a mechanism through which a plaintiff obtains enough information to state a claim properly. As discussed below, UPM fails to state a claim.

Two factors characterize an agency relationship: the principal's ability to control the agent and the agent's ability to bind the principal. *See N.L.R.B. v. United Bhd. of Carpenters & Joiners of Am., Local No. 1913, AFL-CIO*, 531 F.2d 424, 426 (9th Cir. 1976) ("An agent acts for and on behalf of his principal and subject to his control"); *Whisper Soft Mills, Inc. v. N.L.R.B.*, 754 F.2d 1381, 1386 (9th Cir. 1984) (citations omitted) ("An essential characteristic of an agency is the power of the agent to commit his principal to business relationships with third

parties. An agent can by nature bind his principal to a transaction with a third person. A party without this capacity to bind the principal is not an agent."). The parties dispute whether UPM has sufficiently pleaded the existence of an agency relationship between Digicel Haiti (the alleged principal) and Digicel USA (the alleged agent).

None of UPM's allegations plausibly suggest the existence of an agency relationship between Digicel Haiti and Digicel USA. "The extent of control exercised by the employer is the essential ingredient in determining an agency relationship." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017). UPM does not allege that Digicel Haiti owns Digicel USA, which might reflect control. UPM alleges only that both Digicel Haiti and Digicel USA are subsidiaries of Digicel Holdings, Ltd. ECF 202 ¶¶ 219-20. Nor does UPM allege that Digicel Haiti controls the prices that Digicel USA charges—or that Digicel USA directly charges customers at all. UPM's allegations suggest nothing more than a business arrangement among corporate affiliates in which Digicel Haiti pays Digicel USA a "small cost-allocation-based compensation" in exchange for Digicel USA using its own switches to switch Digicel Haiti's calls from the United States. *Id.* ¶ 222. It is Digicel Haiti that "dictates the price to be charged to third party carrier," and it is Digicel Haiti that "is paid the demanded rate for the service." *Id.*

In its opposition, UPM also argues that Digicel USA binds Digicel Haiti each time it routes a call through its switches. That is, "the transaction between Digicel USA and third parties necessarily includes a commitment from Digicel Haiti to terminate the calls." ECF 209 at 9. Under this understanding of the agency relationship, either party in a contract would "bind" the other. The Court finds no merit in that argument because it appears nowhere in UPM's counterclaims. UPM simply has not alleged either Digicel Haiti's ability to control Digicel USA

nor Digicel USA's ability contractually to bind Digicel Haiti. Accordingly, UPM fails to state a claim that Digicel USA is liable as an agent of Digicel Haiti.

## CONCLUSION

Digicel USA's motion to dismiss (ECF 206) is GRANTED.

**IT IS SO ORDERED**.

DATED this 17th day of March, 2020.

/s/ <u>*Michael H. Simon*</u>  
Michael H. Simon  
United States District Judge