**Kathryn P. Salyer, OSB #883017**
**Eleanor A. DuBay, OSB #073755**
**Blake Van Zile, OSB #184672**
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage, D.C. Bar #362657**
chrissavage@dwt.com
(*Admitted Pro Hac Vice*)
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

            Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| UNIGESTION HOLDINGS, S.A. d/b/a DIGICEL HAITI,<br><br>            Plaintiff and Counterclaim-Defendant,<br><br>**v.**<br><br>UPM TECHNOLOGY, INC., *et al.,*<br><br>            Defendants and Counterclaim-Plaintiffs | Case No. 3:15-cv-185-SI<br><br>**DEFENDANT UPM'S MOTION TO COMPEL** |

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), UPM states that its counsel conferred with Digicel-

Haiti's counsel by telephone, Internet videoconferencing, email and letters regarding this motion,

and that Digicel-Haiti does not concur.[1]

<b>UPM'S MOTION TO COMPEL[2]</b>

UPM Technology, Inc. ("UPM") moves to compel Unigestion Holdings, S.A. d/b/a Digicel-Haiti ("Digicel-Haiti") to: (a) provide complete answers to several UPM interrogatories; and (b) clarify what documents it lost due to technical problems.

## I.    BACKGROUND

### A.    Discovery So Far

Discovery in this case has proceeded informally, but by now UPM has responded to Digicel-Haiti's interrogatories, has provided thousands of documents in response to Digicel-Haiti document requests, and has worked (and continues to work) to address concerns Digicel-Haiti raised.  UPM's only "red line" has been information about its non-Haiti business activities; its actions in other countries have no bearing on whether it defrauded Digicel-Haiti, and it has not answered interrogatories seeking such information, and redacted it from otherwise responsive documents that it produced.

Digicel-Haiti's discovery responses, however, have been inadequate. UPM raised its concerns with Digicel-Haiti in an August 1, 2021 letter; it brought them to the Court's attention at a discovery conference (*see* ECF #246); and it agreed to extend until today the time for filing motions to compel.[3] As of today, however, Digicel-Haiti, has not satisfactorily addressed the

---

[1]    Even today, the parties continue to discuss ways to narrow their discovery disputes, and will continue to do so while consideration of their respective motions to compel is pending. UPM will advise the Court if any of the matters raised in this motion are resolved by the parties.

[2]    Following the discovery conference on September 10, 2021 (*see* ECF # 246), the parties agreed that motions to compel would be due today and that oppositions would be due on October 4. **EXHIBIT 1**, Emails between C. Savage and C. Valbrun. UPM is not requesting oral argument on this motion, but would welcome the opportunity to answer any questions the Court may have in the course of considering it.

[3]    **EXHIBIT 2** is UPM's correspondence with the Court submitted in advance of the discovery conference. This includes UPM's August 1 letter to Digicel-Haiti, as well as Digicel-Haiti's responses and

concerns raised here, so UPM respectfully asks the Court to compel Digicel-Haiti to promptly provide the requested information.

### B.    The Requested Information Is Relevant.

The key facts in this case are not in dispute.[4] The parties agree that UPM sent agents to Haiti to purchase Digicel-Haiti SIM cards and sent them back to UPM in Oregon. Third Amended Complaint, ECF #200 ("TAC") and Defendants' Amended Answer, ECF #244 ("Answer"), ¶¶50, 65, 86, 97. They agree that UPM activated those SIM cards, *id.,* ¶¶87-90, and used them to initiate and authenticate two types of calls: (a) calls sent to Haiti via the Internet and originated on Digicel-Haiti's network *id.,* ¶¶57, 68, 82; and (b) "Roam Like You're Home" ("RLYH") calls on the United States network of a Digicel-Haiti roaming partner, sent by that carrier to Digicel-Haiti. *Id.,* ¶¶83, 129. They agree that UPM linked third party calls bound for Digicel-Haiti customers to the calls UPM initiated. *Id,* ¶¶57, 68, 82. They agree that Digicel-Haiti charged UPM the rate for local calls in Haiti, rather than Digicel-Haiti's higher $0.023/minute rate for inbound international calls. *Id.,* ¶¶58, 136. And, they agree that Digicel-Haiti, when it concluded that a SIM card was being used for this purpose, deauthenticated it, blocking UPM from using it.  Digicel-Haiti Amended Answer, ECF #245, and Answer, ¶312.

The parties ***disagree*** on whether UPM's actions constitute fraud; on whether Digicel-Haiti's deauthentication of SIM cards violated its obligations as a common carrier; and on issues of damages. Aside from seeking information about Digicel-Haiti's potential witnesses and

---

objections to UPM's interrogatories. We respectfully refer to Court to **EXHIBIT 2** for the specific text of the interrogatories at issue and Digicel-Haiti's responses and objections to them.

[4]    Statements in pleadings constitute judicial admissions. *See Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 860 (9th Cir. 1995); *Am. Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988). UPM submits that we should not waste time debating (or receiving evidence on) matters not in dispute.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

other relevant individuals, the information UPM seeks relates to these contested issues.[5]

## II.    SPECIFIC REQUESTS SUBJECT TO THIS MOTION

The requests at issue are discussed below. Note that UPM is amenable to restricting Digicel-Haiti's information to outside counsel and consultants (subject to later debate, if need be). Moreover, Digicel-Haiti has not raised burden as a basis for not responding, and UPM sees no basis for such an objection. As a result, this motion focuses on the relevance of the information to the open issues.

### A.    Information About Individuals

*Interrogatories 1-1, 1-2, and 1-4 – Information about individuals.* UPM sought basic information about (a) Digicel-Haiti's expected witnesses: (b) people Digicel-Haiti identified as having relevant information; and (c) Digicel-Haiti's directors. In the August 1 letter, UPM limited its request to information parallel to what Digicel-Haiti provided with respect to one individual in response to Interrogatory No. 2-2. This basic information is appropriate discovery, and Digicel-Haiti should be directed to provide it.

*Interrogatory 2-4 – Communications with Mr. Gosal and Mr. Smith.* UPM seeks information about Digicel-Haiti's communications with Jaspaul Gosal, a former UPM employee involved in reselling Digicel-Haiti's services, and Andrew Smith, an associate of Mr. Gosal. These individuals embezzled from UPM and attempted to, in effect, extort UPM in the context of this lawsuit, with the threat of taking information to Digicel-Haiti if UPM did not pay. *See* **EXHIBIT 3** (correspondence with counsel for Smith and Gosal). Information regarding communications between Digicel-Haiti and these individuals will assist UPM in cross-examining and impeaching

---

[5]    Digicel-Haiti refused to provide information for periods prior to 2014. Given the Court's ruling on Statute of Limitations issues, ECF #242, that refusal is no longer justified – if it ever was. The Court should direct Digicel-Haiti to supplement *all* of its discovery responses to include pre-2014 periods.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Digicel-Haiti witnesses who were in contact with, and/or who directly or indirectly relied upon, these individuals for any of their testimony.

Digicel-Haiti claims communications with these individuals are privileged and work product, but this is nonsense. Communications between Digicel-Haiti and these individuals cannot be privileged – Digicel-Haiti does not represent them – and, as to work product, they are not experts; their only possible role here is as percipient witnesses. Communications between them and Digicel-Haiti personnel thus cannot be the work product of Digicel-Haiti's counsel.[6]

### B.    Defense Against Digicel-Haiti's Fraud Claim

As noted above, the parties do not dispute what UPM *did.* The question is whether that conduct constitutes fraud.

Digicel-Haiti's fraud claim is based on the notion that when UPM originated a call on Digicel-Haiti's network in Haiti, or a RLYH call in the United States, using authentication data from a Digicel-Haiti SIM card, that amounted to a representation to Digicel-Haiti that an individual subscriber was making the call and that the call originated, physically, where it was picked up by the wireless network. Even assuming that using a SIM card to initiate a call amounts to making those representations (which UPM disputes), Digicel-Haiti's fraud claim requires proof that: (a) Digicel-Haiti actually relied on those representations, and (b) it had a "right to rely" on them – which requires proof that reliance was reasonable. *Cocchiara v. Lithia Motors, Inc.*, 353 Ore. 282, 297 P.3d 1277 (Or. 2013); *Or. Pub. Emples. Ret. Bd. v. Simat, Helliesen & Eichner,* 191 Ore. App. 408, 428, 83 P.3d 350 362 (Ct. App. Or. 2004). Digicel-Haiti has thus put into issue: what it understood its services were being used for (including resale); when and how it learned its services

---

[6]    One can imagine that counsel's notes of meetings with these individuals might contain work product. If such notes exist, and Digicel-Haiti seeks to assert a work product claim, UPM requests that the notes be submitted to the Court for an *in camera* inspection.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

were being resold; and what it did in response. All of this goes to whether Digicel-Haiti actually and reasonably relied on local-looking calls really being local (rather than international), and that they were being made by individuals (rather than being resold). Several interrogatories bear on these issues.

*Interrogatory 1-7 – Communications with Haitian government.* Digicel-Haiti claims the Haitian government supported suppressing bypass and that Digicel-Haiti invoked that assistance in suppressing UPM. TAC at ¶¶64, 77 & Exhibits A & B. It says it "began actively protecting its network from bypass beginning in June 2007." Response to Interrogatory 1-33. Given this, Digicel-Haiti's communications with the Haitian government regarding bypass (and UPM) will directly bear on its understanding of how its services were being used and, therefore, whether reliance on the notion that its services would not be resold was reasonable.[7] Digicel-Haiti's communications with the Haitian government regarding bypass will likely also shed light on the scope of its obligations to serve the public, which bears on its status as a carrier; *see* Interrogatory 1-9, below.

*Interrogatory 1-16 – Terms and conditions on which Digicel-Haiti provides SIM cards to distributors for retail sales.* The parties agree that UPM obtained SIM cards in Haiti from distributors who had obtained them from Digicel-Haiti. The terms and conditions under which Digicel-Haiti provides SIM cards to its distributors are relevant to how Digicel-Haiti expected them to be sold to, and used by, purchasers such as UPM's agents and UPM. This bears directly on the reasonableness of Digicel-Haiti relying on some understanding that SIM cards would **not**

---

[7]    Note that even if resale was illegal in Haiti, that does not make it reasonable for Digicel-Haiti to rely on an assumption that it will not occur, any more than (for example) it is reasonable to rely on the fact that speeding is illegal in the United States to assume that no speeding occurs.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

be used as UPM used them.[8]

*Interrogatory 1-33 – Digicel-Haiti's knowledge of resale/bypass.* UPM asked "when and how" Digicel-Haiti "first learned" that it was being bypassed using the Internet. Digicel-Haiti addressed the "when," stating that it started "protecting its network from bypass" in 2007. But that doesn't address the ***how.*** This goes to Digicel-Haiti's knowledge – again, long before UPM came on the scene – of how its services were actually being used, which goes to the reasonableness of any reliance on the notion that a call originated on its network (or a RLYH call) was not being resold and/or did not have an international origin.

*Interrogatory 1-38 – Digicel-Haiti's efforts to suppress resale/bypass.* The nature and scope of Digicel-Haiti's efforts to suppress resale will reveal its knowledge of how its services were being used, which again goes to the reasonableness of any reliance on the notion that resale was not occurring. Moreover, what steps Digicel-Haiti took to suppress resale, and when it took them, also bears on UPM's Statute of Limitations defense: Liability for any UPM activity prior to February 2013 is barred unless Digicel-Haiti shows the statute was tolled. It has said that it did not know UPM was involved until later, but whether that fact (even if true) tolls the statute depends on the scope and reasonableness of its investigations when it became aware it was being bypassed. *See Murphy v. Allstate Ins. Co.,* 251 Ore. App. 316, 322, 284 P.3d 524, 529 (Or. App. 2012).

**C.      Prosecution of UPM's Communications Act Claims**

The parties do not dispute that UPM resold Digicel-Haiti's services or that Digicel-Haiti deauthenticated the SIM cards UPM was using in its resale efforts. The essence of UPM's

---

[8]      It is important to note the interplay between potential Digicel-Haiti reliance on contractual provisions with distributors to minimize resale, versus reliance, for purposes of Digicel-Haiti's fraud claim, on representations supposedly inherent in using SIM cards to initiate and authenticate calls. Requirements on or exhortations to distributors to suppress resale would show that Digicel-Haiti knew resale could and would occur – undermining the reasonableness of any reliance on the assumption that it would not.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Communications Act claims is that it had a right to resell Digicel-Haiti's services and that Digicel-Haiti violated the Communications Act when it blocked UPM's resale. Digicel-Haiti, however, asserts it is not a carrier under the Communications Act and that, if it is, it did not violate that Act.[9] Several UPM interrogatories go to gathering information about these points.

*Interrogatory 1-9 – Terms of Digicel-Haiti's authorization to operate.* Digicel-Haiti claims it may lawfully refuse to permit resale of its services. Whether that is so depends in part on the terms of its license to operate. If that license includes obligations to serve the public without discrimination – paralleling United States carrier obligations – that would undercut any claim that it reasonably expected resale would not occur. This would also undercut its claim that it was entitled to deauthorize UPM's SIM cards, thus supporting UPM's claim that, under the Communications Act, deauthorizing them was unjust, unreasonable, and discriminatory.

*Interrogatory No. 2-17 – Digicel-Haiti's market share.* The degree to which Digicel-Haiti dominates the market in Haiti may affect the reasonableness, under the Communications Act, of what it did to stifle resale.[10]

*Interrogatories regarding the nature and scope of Digicel-Haiti's marketing and other activities in the United States.* Digicel-Haiti has undertaken a wide range of efforts to sell services within the United States. These include: (1) RLYH service; (2) arrangements permitting

---

[9]    The Court has already ruled that Digicel-Haiti's offering of its RLYH service to roaming SIM card holders in the United States makes Digicel-Haiti a telecommunications carrier under the Communications Act. ECF #154 at 31. UPM nevertheless expects Digicel-Haiti to argue that preventing UPM from reselling RLYH service did not violate the Communications Act. Moreover, the Court has not yet decided whether Digicel-Haiti's role in terminating calls sent to Haiti via the Internet makes it a carrier subject to the Communications Act with respect to those calls.

[10]    Both information about Digicel-Haiti's market share and about the "Diaspora" program, discussed below (and other relevant matters), are contained in an SEC filing by Digicel-Haiti's parent company. *See* **EXHIBIT 4**, Digicel Group Limited, Form F-1 Registration Statement (June 26, 2015) (excerpts). The entire document is available online at: Form F-1 (sec.gov). UPM notes this to negate any suggestion that it is engaged in a "fishing expedition" on these topics.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

recharge/top-up of Digicel-Haiti SIM cards online, which includes from within the United States; and (3) marketing specifically directed towards the Haitian diaspora in the United States to purchase Digicel-Haiti services. These activities bear on the scope of Digicel-Haiti's role as a telecommunications carrier subject to the Communications Act, since one aspect of determining the scope of an entity's activities as a carrier is what services it offered for sale. *See, e.g., National Asso. Of Regulatory Utility Comm'rs v. FCC*, 525 F.2d 630, 641 ((D.C. Cir. 1976); *United States Telecom. Ass'n v. FCC,* 295 F.3d 1326 (D.C. Cir. 2002).

UPM asked several interrogatories about these topics: 1-27 (describe roaming agreements used with RLYH); 1-29 and 2-13 (full description of the economics of RLYH calling); 2-7 through 2-10 (information about how SIM card holders can recharge their accounts via the Internet); 2-11 (information about Digicel-Haiti efforts to market its services in the United States); 2-12 through 2-15 (information about the "Diaspora Program" identified in the Digicel Group SEC filing noted above). All of the requested information is directly relevant to the nature and scope of Digicel-Haiti's activities in marketing its services in the United States and, therefore, to the scope of its status as a carrier.

**D.    Damages**

The parties do not agree on what Digicel-Haiti's damages might be if UPM's conduct is found to be fraudulent, or on what UPM's damages might be if Digicel-Haiti's conduct is found to have violated the Communications Act. Certain UPM interrogatories go to these issues.

*Interrogatory 1-29 – Full description of the economics of RLYH calling; Interrogatory 2-18 – Profitability of RLYH.* UPM's best understanding, based on information it has received so far, is that far from being damaged, Digicel-Haiti *made additional profits* when UPM resold RLYH service, because when UPM resold a RLYH call, Digicel-Haiti received *both*

the RLYH payment of approximately $0.09/minute from UPM *and also* $0.23/minute from the United States wireless carrier that picks up and delivers the call to Digicel-Haiti. In contrast, if the call UPM handled via RLYH resale went through "normal" channels, Digicel-Haiti would receive $0.23/minute, but not the additional $0.09/minute from the RLYH service.[11] The economic terms of the RLYH service, including its profitability, are also relevant to any attempt by Digicel-Haiti to argue that its decision to bar resale of RLYH was reasonable under the Communications Act.

*Interrogatory 1-31 – Payments that Digicel-Haiti makes to the Haitian government for calls from the United States.* During the time relevant to this case, UPM understands that Digicel-Haiti paid the Haitian government $0.05 per minute for calls from the United States, out of the $0.23 per minute retail rate Digicel-Haiti received. This tax is identified in the SEC filing noted above; *see* **EXHIBIT 4.** If Digicel-Haiti itself only actually received $0.18 per minute, any Digicel-Haiti damages would be correspondingly reduced.

### E.    Clarity Regarding Lost Documents

Digicel-Haiti has indicated, without a great deal of specificity, that it has no documents available for any period prior to 2018. It has stated that it lacks information about any particular SIM card usage, blocking, etc. UPM addresses this issue in Interrogatory 2-20, and is entitled to a clear understanding of what information Digicel Haiti has about matters relevant to the case. This will affect the parties' motions for summary judgment, particularly on the issue of damages, because if Digicel-Haiti indeed has no relevant documents, then the parties and the Court can know that many important aspects of damages calculations will be based entirely on UPM's

---

[11]    UPM also believes, and is attempting to ascertain via a Rule 30(b)(6) deposition, that Digicel-Haiti's deauthentication of SIMs UPM was using to resell RLYH was entirely algorithmic, because Digicel-Haiti would have been loath to forgo the extra profits – at least as a purely economic matter – if it had thought the situation through.

own business records.

## III.    CONCLUSION

The Court should grant UPM's motion as requested herein. All of the information UPM seeks is directly relevant to contested issues in the case, and Digicel-Haiti has asserted no valid grounds for failing to provide it.

Dated: September 27, 2021


TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
Kathryn P. Salyer, OSB #883017
Eleanor A. DuBay, OSB #073755
Blake Van Zile, OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
Christopher W. Savage, D.C. Bar #362657
chrissavage@dwt.com
Telephone: (202) 973-4200
*(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 11 of 11 - **UPM'S MOTION TO COMPEL**

UPM-L1\00367587.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF COMPLIANCE

This Motion complies with the applicable word-count limitation under LR 7-2(b) and 26-3(b)(2) because it contains 2,996 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: September 27, 2021.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
Kathryn P. Salyer, OSB #883017
Eleanor A. DuBay, OSB #073755
Blake Van Zile, OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
Christopher W. Savage, D.C. Bar #362657
chrissavage@dwt.com
Telephone: (202) 973-4200
*(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 1 - **UPM'S MOTION TO COMPEL –**
**CERTIFICATE OF SERVICE**
UPM-L1\00367587.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2021, I served the foregoing **UPM'S MOTION TO COMPEL** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Anne M. Talcott
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Email: rhansen@schwabe.com
Email: atalcott@schwabe.com

Dated: September 27, 2021.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
Kathryn P. Salyer, OSB #883017
Eleanor A. DuBay, OSB #073755
Blake Van Zile, OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
Christopher W. Savage, D.C. Bar #362657
chrissavage@dwt.com
Telephone: (202) 973-4200
*(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 1 - **UPM'S MOTION TO COMPEL –
CERTIFICATE OF SERVICE**
UPM-L1\00367587.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236