**Kathryn P. Salyer, OSB #883017**
**Eleanor A. DuBay, OSB #073755**
**Blake Van Zile, OSB #184672**
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage, D.C. Bar #362657**
chrissavage@dwt.com
(*Admitted Pro Hac Vice*)
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A. d/b/a DIGICEL HAITI,**<br><br>Plaintiff and Counterclaim-Defendant,<br><br>**v.**<br><br>**UPM TECHNOLOGY, INC.,** *et al.,*<br><br>Defendants and Counterclaim-Plaintiffs | **Case No. 3:15-cv-185-SI**<br><br>**UPM'S OPPOSITION TO DIGICEL-HAITI'S OMNIBUS MOTION TO COMPEL** |

UPM Technology, Inc. and the individual defendants (collectively, "UPM") hereby

oppose Digicel-Haiti's Motion to Compel (ECF #248) ("Motion to Compel").

Page 1 of 16 - **UPM'S OPPOSITION TO DIGICEL-HAITI'S OMNIBUS MOTION TO COMPEL**

UPM-L1\00367587.000

## Contents

I.  Digicel-Haiti's Motion Violates Local Rules 7-2(b) and 26-3(b)(2) .........................................3

II.  Digicel-Haiti's Motion To Compel Responses to Its Six-Year-Old First Request Is Untimely ...........................................................................................................................3

III.  Misunderstandings and Matters Not In Dispute ...........................................................4

    A.  Withheld Documents .................................................................................................4

    B.  Missing Attachments .................................................................................................5

    C.  Redactions ..................................................................................................................5

    D.  Privilege Log ..............................................................................................................5

IV.  Search Criteria .................................................................................................................6

    A.  UPM Did Not Limit Its Searches to a Pre-Screened Set of UPM Documents. .......6

    B.  Digicel-Haiti Has Not Shown That It Needs Searches Based On Its First Request, Which Largely Overlaps Its Second Request. ...........................................................6

    C.  Digicel-Haiti's Complaints About Search Terms UPM Did Not Use Do Not Justify A Motion to Compel ...................................................................................................8

V.  Individual Defendants' Responses .................................................................................9

VI.  UPM's Operations Outside of Haiti ..............................................................................10

VII.  Information Regarding Roam Like You're Home ........................................................13

VIII.  Supporting Data for Damages Spreadsheet .................................................................15

IX.  Conclusion ......................................................................................................................16

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## I.    DIGICEL-HAITI'S MOTION VIOLATES LOCAL RULES 7-2(B) AND 26-3(B)(2)

Digicel-Haiti has not complied with Local Rules LR 7-2(b) and 26-3(b)(2). Its motion exceeds ten pages, it does not contain the required certification that it does not exceed 3,000 words, and it appears to exceed that limit. At this late date, this is a sufficient ground to deny the motion. With the time left to prepare dispositive motions ineluctably slipping away, requiring UPM to respond to an excessively-long motion should not be viewed with charity.

These rules exist for a reason: to require motions to compel to be focused on meeting the movant's burden of showing that the material at issue is relevant and proportional to the needs of the case. *Cf. Sedillo Elec. v. Colo. Cas. Ins. Co.*, 2017 U.S. Dist. LEXIS 33603, [*17] (D.N.M. Mar. 9, 2017) (burden on movant to show relevance). This requires weighing the data sought against the issues in dispute and the discovery that has already occurred. Digicel-Haiti's motion does not meet this burden. Instead, it mainly asks for further responses to six-year-old discovery requests (*see* below) untethered from any presently disputed issues. *See* UPM Motion to Compel (ECF #247) ("UPM Motion") at 3 (noting broad areas of agreement on the facts). Digicel-Haiti's lack of focus on the case as it now stands, combined with its failure to comply with the rules for length and word count, justify rejecting its motion without getting into the details.[1]

## II.    DIGICEL-HAITI'S MOTION TO COMPEL RESPONSES TO ITS SIX-YEAR-OLD FIRST REQUEST IS UNTIMELY

Digicel-Haiti's motion to compel is untimely insofar as it relates to Digicel-Haiti's now six-year-old First Request for Production ("First Request").[2] Discovery has been informal in

---

[1]    UPM has restricted this Opposition to fourteen substantive pages – the same length as Digicel-Haiti's overly long Motion.

[2]    Of the nine specific requests Digicel-Haiti identifies in its motion, six of them – fully two-thirds of the total – come from the six-year-old First Request. *See* Motion to Compel at 5-8, 10 (restating requests).

this case, with neither party demanding strict adherence to deadlines. Even so, there is no justification for Digicel-Haiti waiting *six years* after having received initial responses to its First Request before filing a motion to compel further responses.

"A party may not unduly delay in moving to compel discovery[, and] [u]ntimeliness is a sufficient ground, standing alone, to deny a discovery motion." *V5 Techs. v. Switch, Ltd.,* 332 F.R.D. 356, 360-61 (D. Nev. 2019) (citations and internal quotations omitted). Courts consider a range of factors in applying this laches-like limitation on motions to compel, including how long the movant has known about the supposedly deficient discovery; the movant's explanation for the delay; whether dispositive motions have been scheduled; the age of the case; and prejudice to the opposing party. *Id.* These factors all indicate that Digicel-Haiti's motion should be denied with respect to items from its First Request. Digicel-Haiti has known for six years what the defendants' responses to its First Request were; it has provided no explanation for why, only now, it is moving to compel; the case is nearly seven years old; and, precisely because dispositive motions have been scheduled and are due a mere month from now, forcing UPM and the individual defendants to spend time providing further responses to these ancient requests would be unfair and prejudicial. On the other hand, because there is so much overlap between the matters covered by the First Request and Digicel-Haiti's Second Request for Production ("Second Request") (*see infra*), the prejudice to Digicel-Haiti in denying this aspect of its motion is minimal. The motion to compel further responses to these old requests should be denied.

## III.    MISUNDERSTANDINGS AND MATTERS NOT IN DISPUTE

### A.    Withheld Documents

Digicel-Haiti seeks to compel the production of three documents noted on UPM's privilege log, stating that "there is no recognizable privilege identified." Motion to Compel at 12.

Page 4 of 16 - **UPM'S OPPOSITION TO DIGICEL-HAITI'S OMNIBUS MOTION TO COMPEL**

UPM-L1\00367587.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

But in each case the first words after the document number are "Withhold Non-Haiti Information." Perhaps Digicel-Haiti was confused by UPM's including, within the "Privilege Log," the documents UPM redacted or withheld because they contained information about UPM's activities in countries other than Haiti. These documents were returned by the system in response to searches UPM ran to identify documents potentially responsive to Digicel-Haiti requests. Upon review, they contained no information bearing on UPM's activities in Haiti, and were withheld on that basis. *See* Section VI, *infra.* This aspect of Digicel-Haiti's motion should be denied.

### B.    Missing Attachments

The matter of "missing" attachments (*see* Motion to Compel at 13) has been fully addressed by counsel. Some of the supposedly missing attachments were "phantom" documents with no content (sometimes created as artifacts of the e-discovery system), and all but one of the rest had already been produced. The exception was a spreadsheet with information UPM believes was supplied in other documents but that, in any case, has now been produced to Digicel-Haiti.

### C.    Redactions

Digicel-Haiti notes that it wishes to use the "no waiver peek" process the Court suggested, during the status conference on September 10, 2021, to confirm that the redacted material is not relevant to UPM's activities in Haiti. UPM's only observation is that in the more than three weeks since that status conference, Digicel-Haiti has not yet requested a single "peek."

### D.    Privilege Log

Digicel-Haiti seeks production of two documents listed on UPM's privilege log that appear to bear a date of September 15, 2006. That purported date is a technical artifact of the e-discovery system. In fact, the documents are privileged and/or work product. They were created in response to an inquiry from counsel and attached to an email from Mr. Tran to counsel (Ms.

Page 5 of 16 - **UPM'S OPPOSITION TO DIGICEL-HAITI'S OMNIBUS MOTION TO COMPEL**

UPM-L1\00367587.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Salyer and Ms. DuBay), generated at counsel's request, sent on August 5, 2016.

## IV.     SEARCH CRITERIA

### A.     UPM Did Not Limit Its Searches to a Pre-Screened Set of UPM Documents.

Digicel-Haiti asserts that "UPM … utilized initial search terms to narrow the universe of documents it reviewed for production" and that such "search terms were used to create the initial database from which later, individual searches were performed."  Motion to Compel at 10. This is not what happened. This process was fully explained in connection with the parties' earlier dispute regarding the Statute of Limitations:

> 2.     [Counsel] personally conducted the review of the documents of UPM Technology, Inc. ("UPM"), one of the defendants in the above-captioned action, in response to discovery requests from plaintiff Unigestion Holdings, S.A. d/b/a Digicel-Haiti ("Digicel-Haiti") during 2020 and 2021.
>
> 3.     Specifically, [counsel] directed [his] electronic discovery team to work with UPM personnel to upload *all available items from UPM* into [his] firm's e-discovery system (Relativity) and, based on the specific matters as to which Digicel-Haiti was inquiring, [counsel] *developed search terms likely to produce potentially responsive documents for each request.* [Counsel] then personally and individually reviewed each document returned in response to the search terms and determined whether it was responsive to a Digicel-Haiti discovery request. [Counsel] also personally determined which documents should be withheld on grounds of privilege, and what redactions (if any) should be made to otherwise responsive documents before producing them.

Declaration of Christopher W. Savage (ECF #241) at 2 (emphasis added). There was no "narrow[ing of] the universe of documents." Instead, the entire universe of UPM documents ("all available items from UPM") was uploaded and then searched. Digicel-Haiti could easily have determined that this aspect of its motion was baseless simply by reading counsel's earlier declaration. This aspect of Digicel-Haiti's motion, therefore, should be denied.

### B.     Digicel-Haiti Has Not Shown That It Needs Searches Based On Its First Request, Which Largely Overlaps Its Second Request.

Digicel-Haiti is correct that UPM did not search the database (which was created

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

in 2020) for materials potentially responsive to Digicel-Haiti's First Request from back in 2015. Motion to Compel at 11. UPM provided responses to that request more than six years ago, did not re-review its records with that earlier request in mind, and should not be required to do so now.

First, if Digicel-Haiti was unsatisfied with UPM's now six-year-old responses to its six-year-old First Request, it should have raised the issue earlier. *See supra.*

Second, while the requests use different phrasing, Digicel-Haiti's First Request parallels and substantially overlaps with its Second Request – to which UPM fully responded.[3] If there were specific items from the First Request ***not*** covered by the Second Request that are ***also*** relevant to a material issue now in dispute, and production would be proportional to the needs of the case as it now stands, Digicel-Haiti should have identified those specific matters in its motion. A general request that UPM "try again" with respect to Digicel-Haiti's six-year-old First Request does not meet its burden of showing both relevance and proportionality now.

Third, it is more than three weeks since the most recent discovery conference, where UPM agreed to work with Digicel-Haiti in good faith to identify additional searches that might find responsive documents not already produced. Digicel-Haiti, however, has never suggested any search strings for UPM to consider. With dispositive motions due in only a month,

---

[3]    Compare, for example, First Request No. 12 and Second Request No. 22:

> No. 1-12:  Any and all documents evidencing meetings between and among Defendants that pertained or related to doing business in Haiti, including but not limited to agendas, draft agendas, calendar appointments, meeting notes, and attendance logs.

> No. 2-22:  All documents evidencing any communications among or between UPM, Duy Tran and others regarding UPM's operation and presence in Haiti.

Similarly, Request No. 1-19, regarding RLYH, seems entirely subsumed by Request Nos. 2-39 and 2-40. Moreover, some items in the Second Request are so broad that they would capture (and did capture) documents responsive to a very wide range of matters also covered by the First Request. For example, Request No. 2-32 sought "All communications/correspondence regarding UPM's operations in Haiti." Though UPM could have (and perhaps should have) objected to Request Nos. 2-22 and 2-32 as unduly broad, UPM instead produced more than 5,000 pages of documents responsive to them.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

UPM submits that Digicel-Haiti should not be permitted now to waste UPM's time in this way.

C.    **Digicel-Haiti's Complaints About Search Terms UPM Did Not Use Do Not Justify A Motion to Compel**

Digicel-Haiti's complaints about specific search terms (*see* Motion to Compel at 11) in fact show why UPM should not be required to conduct additional searches: Digicel-Haiti makes no effort to show that the search terms it suggests would collect documents relevant to any disputed issue that have not already been captured by the searches UPM actually did perform.

First, UPM did not specifically search for documents mentioning "Guatemala," but that term has nothing to do with any disputed issues, and, indeed, does not appear in Digicel-Haiti's Second Request *at all*. Digicel-Haiti is probably interested in Guatemala because a UPM Project Manager who handled operations in Haiti was based there; *see infra*. But there is nothing relevant about Guatemala per se. He could have been based in Grenada or Greenland. If this kind of detail matters at all at this stage of the case – which it doesn't – what matters is what UPM did with respect to Digicel-Haiti, not whether its actions were directed from Guatemala (or Grenada or Greenland).[4] And of course, UPM did not automatically or reflexively treat documents that mention Guatemala as nonresponsive; it just didn't affirmatively look for them.

Second, while a small number of UPM documents (mainly emails) were in Spanish (and a *very* small number were in German), the word for "Haiti," for example, is "Haiti" in both languages, as is the word "SIM." And, of course, a reference to "Digicel" would appear as "Digicel" in either language. Digicel-Haiti's vague, non-specific concern about some documents

---

[4]    In fact, information of this sort doesn't matter to any disputed issue. As noted in its own motion to compel, UPM does not dispute that it paid agents in Haiti to buy SIM cards, shipped those cards back to Oregon, and used them to authenticate calls sent to Haiti via the Internet. *See* UPM Motion to Compel at 3. The location from which these activities were managed has nothing to do with whether UPM's actions were fraudulent or to the amount of any damages Digicel-Haiti may have suffered. Digicel-Haiti's interest in documents mentioning "Guatemala" is thus unmoored from any disputed issue in the case.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

using languages other than English does not meet its burden here.

Finally, UPM did not search for "bypass," but that term is used in only one question in the Second Request – Request No. 38, asking for documents about how Haitian law addresses bypass. In order to avoid missing anything, in response to that specific request, UPM searched for *any* documents referencing Haitian law, irrespective of whether they mentioned "bypass." And, like "Guatemala," UPM certainly did not treat documents that mentioned "bypass" as nonresponsive. In fact, it produced many documents containing that term.

Again, it has been more than three weeks since the Court suggested that the parties work in good faith on possible alternative search terms, but even in its motion, Digicel-Haiti has no suggestions for specific searches that would find documents potentially responsive to any specific request.  In these circumstances, this aspect of Digicel-Haiti's motion should be denied.

## V.    INDIVIDUAL DEFENDANTS' RESPONSES

Digicel-Haiti seeks additional information from the individual defendants. *See* Motion to Compel at 3-4, 6-8. At this late stage, the Court should not subject these individuals to any further discovery burdens. Such additional burdens are simply not proportionate to the needs of the case now – if they ever were.

First, all of the requests directed to the individual defendants for which Digicel-Haiti seeks further responses are from the six-year-old First Request, and the motion should be denied with respect to those items on grounds of untimeliness. *See supra.*

Second, the requested material is not proportionate to the needs of the case. Out of the 203 paragraphs in the Third Amended Complaint (ECF #200), only a small fraction even mention the individual defendants, *id.* at ¶¶ 140-166, and those few relate to UPM's shipping radio equipment (so-called "Gateways") to Haiti or shipping SIM cards to Oregon. But UPM has

admitted that it shipped Gateways to Haiti and SIM cards to Oregon and used them to resell Digicel-Haiti's services. *See* UPM Motion at 3. And, the individual defendants long ago provided interrogatory responses addressing the time periods they worked for UPM (one still does), and their role as individuals (or, more properly, their ***lack*** of role as individuals) in shipping the Gateways and SIM cards. Moreover, these individuals will be deposed during the weeks of October 11 and October 18. In these circumstances, requiring further responses from these individuals would be entirely disproportionate to the needs of the case as it now stands.

## VI.    UPM'S OPERATIONS OUTSIDE OF HAITI

Digicel-Haiti seeks documents regarding UPM's activities ***outside*** of Haiti that relate to terminating calls on Digicel-Haiti's network ***in*** Haiti. Motion to Compel at 4-6. This aspect of Digicel-Haiti's motion is puzzling, and should be denied for several reasons.

First, Digicel-Haiti's requests are not limited to UPM's activities terminating calls in Haiti. For example, Request No. 24 seeks "[a]ll documents pertaining to UPM's authorized use of [various means] to transmit calls to countries ***other than Haiti,*** including but not limited to" a list of nearly twenty countries in Africa, Central America, and the Caribbean. Motion to Compel at 5-6 (emphasis added). Digicel-Haiti claims this information is relevant to its claim for "punitive damages related to Defendants' continuous and purposeful ongoing bypass related activities," *id.* at 4-5, but this is nonsense. It does not cite any information that suggests that UPM is still reselling Digicel-Haiti's services and, in any case, UPM's activities reselling other carriers' services in other countries is entirely irrelevant to whether UPM should be liable for punitive damages to Digicel-Haiti. Furthermore, UPM's activities involving other carriers and countries cannot possibly affect whether UPM defrauded Digicel-Haiti (*i.e.,* whether it made inaccurate representations; whether Digicel-Haiti relied on those representations; whether any such reliance was reasonable; etc.).

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Second, UPM has not withheld any otherwise responsive documents on the grounds that they addressed UPM's activities in other countries. Instead, where a document reflected activities in Haiti and elsewhere, UPM redacted the information about the other countries. For example, UPM produced a number of internal reports indicating (among other things) how many minutes UPM was terminating on the networks of carriers in various countries, including Haiti. For those documents, UPM redacted the information about the non-Haiti countries while providing the information about Haiti. This same principle was applied to UPM's entire production. If a document contained information ***bearing on UPM's efforts to resell Digicel-Haiti's services,*** it was produced, with redactions as needed.[5] As a result, this aspect of Digicel-Haiti's motion should be denied because it is asking for an order compelling UPM to do what it has already done.

Moreover, and contrary to Digicel-Haiti's characterization, UPM has never agreed to produce "any and all documents … in any way related to [UPM's] activities in Haiti." Motion to Compel at 5. UPM agreed to produce information relevant and discoverable in this case, which will generally include information about UPM's activities in Haiti, but which is not "any and all documents … in any way related to" Haiti. For example, as noted above, while UPM's activities in Haiti were to some extent managed out of a UPM facility in Guatemala, that does not mean that everything that UPM did, that it managed out of Guatemala, is relevant here.

UPM has struggled to understand Digicel-Haiti's fascination with this point, but now envisions a scenario that explains it. It is entirely possible, and perhaps even likely, that

---

[5]    Digicel-Haiti vaguely asserts that "the parties' previous disagreements about the scope of this information that is discoverable has resulted in relevant documents regarding activities that took place outside of Haiti, but that were related to Haiti, not being produced." Motion to Compel at 5. UPM is at a loss to comprehend this claim. Counsel has repeatedly tried to make the point in the text above: if a document contained information about UPM's efforts to resell Digicel-Haiti's services and was otherwise responsive to a Digicel-Haiti document request, that document was produced, and if it was redacted, the redactions were limited to information bearing on UPM's activities relating to other countries and carriers.

Page 11 of 16 - **UPM'S OPPOSITION TO DIGICEL-HAITI'S OMNIBUS MOTION TO COMPEL**

UPM-L1\00367587.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Digicel-Haiti *already has* – albeit illicitly – documents that it believes to be relevant, that UPM has not produced (because its search strings didn't find them), but that Digicel-Haiti does not want to reveal that it has.

As noted in UPM's Motion, a UPM Project Manager handling UPM efforts to resell Digicel-Haiti's services was embezzling from UPM, and then later, in 2016 (after being dismissed), attempted to extort UPM in connection with this case. UPM Motion to Compel at 4-5 and Exhibit 3. This individual claimed to have "information … pertinent to the ongoing litigation" – that is, *this case* – that included "thousands of e-mails on [UPM's] Haitian Operation." *See* UPM Motion to Compel, Exhibit 3 at page 11 of 14. In other words, this individual, before leaving UPM, exfiltrated "thousands" of UPM documents. This individual's counsel made clear that if UPM refused the "offer" to pay for his "expertise," he would shop those documents (or some version of them) to Digicel-Haiti. *See id.,* page 12 of 14. If he made good on that threat – and there is no reason to think he didn't – then Digicel-Haiti already has documents that it now – via misdirection and subterfuge – is seeking to have UPM authenticate by producing them in discovery.[6]

Digicel-Haiti's frustration on this point would then arise if UPM's search terms – based on the actual content of Digicel-Haiti's Second Request – did not return the specific document(s) that Digicel-Haiti already possesses and is seeking to have UPM produce – and thus effectively authenticate. Rather than engage in subterfuge, however, if Digicel-Haiti has purported UPM documents it wants to authenticate, it should have either requested that UPM search its

---

[6]    Indeed, it is entirely possible that this individual had already contacted Digicel-Haiti before approaching UPM, which would raise issues about Digicel-Haiti's involvement in the attempted extortion. Concern about revealing arrangements of this sort could explain why Digicel-Haiti has advanced the facially ludicrous claim that its communications with this individual are subject to attorney-client privilege or constitute work product. *See* UPM Motion at 4-5.

Page 12 of 16 - **UPM'S OPPOSITION TO DIGICEL-HAITI'S OMNIBUS MOTION TO COMPEL**

UPM-L1\00367587.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

database using search terms that would return both otherwise responsive documents and the ones Digicel-Haiti has, or, more directly, simply provide UPM with the documents and ask UPM to admit their authenticity.[7]

The fact that Digicel-Haiti has not done either of these things suggests that: (a) it is simply fishing; (b) it does not want to have to admit where the documents came from; and/or (c) it is trying to set UPM up to reveal some document later and play "gotcha!" in a deposition or at trial. None of these possibilities supports compelling UPM to produce more documents than it already has. This aspect of Digicel-Haiti's motion should thus be denied, and UPM's request to compel Digicel-Haiti to document and explain its communications with UPM's former employee should be granted.

## VII.    INFORMATION REGARDING ROAM LIKE YOU'RE HOME

Digicel-Haiti seeks documents regarding "RLYH contracts or books or records relating to RLYH subscriptions." Motion to Compel at 6; First Request No. 19. This request reflects apparent ignorance about Digicel-Haiti's own operations.

First, UPM has produced all the documents it could identify regarding RLYH in response to Request Nos. 39 and 40 in the Second Request. For example, UPM produced a very lengthy spreadsheet specifically identifying every SIM card UPM purchased and used during 2014 (there were many thousands), including whether the SIM card was enrolled in RLYH, how many calls were made using it, and other information. The spreadsheet was based on information from UPM's switching and accounting systems that was maintained in its normal business operations.

---

[7]    Of course, any purported "UPM" documents provided to UPM's active adversary in litigation by a dismissed embezzler – plainly hostile to UPM – may not be genuine at all. An additional problem with this approach is that Digicel-Haiti has said it has no relevant documents from before 2018. If it actually **has** such documents –whether illicitly obtained or not – that raises an entirely different set of problems regarding its candor in meeting its discovery obligations. *See* UPM Motion at 10.

Page 13 of 16 - **UPM'S OPPOSITION TO DIGICEL-HAITI'S OMNIBUS MOTION TO COMPEL**

UPM-L1\00367587.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

This information was not, however, derived from "contracts or books … relating to RLYH subscriptions." The reason why can be seen from Digicel-Haiti's responses to UPM's interrogatories. Digicel-Haiti described the process of subscribing to the RLYH plan as follows:

1. Dial *186 from a Digicel phone and receive a message from our system with additional instructions.

2. Confirm the subscription by dialing *186*1# or cancel the request by dialing *186*9#

3. Once the subscription is confirmed you will receive the activation confirmation message from Digicel.

Digicel-Haiti Response to UPM Interrogatory No. 15. This process will not generate any contracts to sign or any "books" or "records" to keep. As long as there is enough money in the SIM card's account, simply sending the specified codes activates the RLYH plan for the SIM card. Once active, the plan works automatically, resulting in the lower RLYH per-minute roaming charge being deducted from the account when calls are made from the United States to Haiti.[8]

In this regard, the spreadsheet lists *all* the SIM cards UPM purchased from Digicel-Haiti during 2014, and separately identifies which ones UPM enrolled in the RLYH plan, which were used for calls in Haiti, which could not be used for various reasons, etc. In the normal course, it would be reasonable to expect *Digicel-Haiti* to have accounting or system records that would indicate (and confirm) which SIM cards were enrolled in RLYH, the usage on those cards, etc. Digicel-Haiti should have identified all of those records in response to one or more UPM interrogatories and produced them in response to one or more UPM document requests. Unfortunately, it appears that those records are not available due to Digicel-Haiti's 2018 server crash. *See* UPM Motion at 10-11. But the fact that Digicel-Haiti has to rely on UPM's records

---

[8] In legal terms, the RLYH plan, like Digicel-Haiti's services generally, is effectively an "implied in fact" contract. Subscribing to RLYH requires actions, not words: send the relevant codes, make calls, and be charged at the lower rate.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

regarding SIM card usage, RLYH subscriptions, etc., does not suggest that UPM has more records than Digicel-Haiti required RLYH subscribers to create or keep, or that UPM's records are in any way inadequate.

All that said, UPM will re-examine its electronic and other records to try to identify whatever information may exist that would bear on the issue of "documenting" UPM's subscription to RLYH plans for its SIM cards. If such information exists, UPM will produce it.

## VIII.   SUPPORTING DATA FOR DAMAGES SPREADSHEET

Finally, Digicel-Haiti seeks additional information underlying a "damages spreadsheet," which UPM understands to be the same spreadsheet identified above. Motion to Compel at 9-10. It also asks why detailed information of the sort the spreadsheet contains for 2014 is not available for prior periods.

Digicel-Haiti does not understand how UPM developed the relevant information. During the 2011-2012 period, UPM did not have an automatic system to track SIM card details and usage. It kept track, effectively manually, of how many SIM cards it had purchased, how much had been paid to recharge them, and how many minutes of use were completed. UPM has produced countless pages of spreadsheets and other reports containing that information from that period.

To streamline this process, UPM subsequently developed an automated system for tracking SIM card information, including usage, recharges, etc. With the new system, when a SIM card was placed into a SIM server, the SIM server read information from the card and sent it to the new system, which also recorded updated information about each SIM card's usage, recharges, etc. The recharges themselves were done via a computerized interface with wholesale recharge vendors, not by any manual process that would have generated receipts, contracts, or similar documents. The result of UPM deploying these new systems is that it does not have the same level

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

of detail regarding the SIM cards it purchased and used during the 2011-2012 period that it has for the 2014 period, because the systems to capture the greater level of detail did not yet exist.

As with questions about RLYH, however, UPM will query the information in its system and, to the extent that UPM can identify additional responsive information, UPM will produce it. UPM also notes that its CEO, Mr. Tran, has been designated as UPM's representative for purposes of a forthcoming Rule 30(b)(6) deposition, and Digicel-Haiti will be free to ask about these issues – and get a more complete description of how the process worked – if it so desires.

## IX.    CONCLUSION

The Court should deny Digicel-Haiti's motion to compel.

Dated: October 4, 2021

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
Kathryn P. Salyer, OSB #883017
Eleanor A. DuBay, OSB #073755
Blake Van Zile, OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
Christopher W. Savage, D.C. Bar #362657
chrissavage@dwt.com
Telephone: (202) 973-4200
*(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2021, I served the foregoing **UPM'S OPPOSITION TO DIGICEL-HAITI'S OMNIBUS MOTION TO COMPEL** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan                     Anne M. Talcott
Cherine Smith Valbrun                   Schwabe, Williamson & Wyatt, PC
Leah Storie                             Pacwest Center
Kim Vaughan Lerner LLP                  1211 SW 5th Ave., Suite 1900
One Financial Plaza                     Portland, OR  97204
100 SE Third Avenue • Suite 2001        Email: rhansen@schwabe.com
Fort Lauderdale, FL 33394               Email: atalcott@schwabe.com
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com


Dated: October 4, 2021.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
Kathryn P. Salyer, OSB #883017
Eleanor A. DuBay, OSB #073755
Blake Van Zile, OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
Christopher W. Savage, D.C. Bar #362657
chrissavage@dwt.com
Telephone: (202) 973-4200
*(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 1 - **UPM'S MOTION TO COMPEL –**
**CERTIFICATE OF SERVICE**
UPM-L1\00367587.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236