**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
**Kathryn E. Kelly**, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
**Cherine Smith Valbrun** (*Pro Hac Vice*)
E-mail: cvalbrun@kvllaw.com
E-mail: emailservice@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL 33316
Telephone: 954.527.1115
Facsimile: 954.527.1116

>    *Attorney for Plaintiff, Unigestion Holdings, S.A.,*
>    *a foreign corporation, d/b/a Digicel Haiti*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A., d/b/a DIGICEL HAITI**, | No. 3:15-cv-00185-SI |
| Plaintiff and Counterclaim Defendant, | |
| v. | **PLAINTIFF UNIGESTION HOLDINGS, S.A.'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS** |
| **UPM TECHNOLOGY, INC., *et al.*,** | |
| Defendants and Counterclaim Plaintiffs. | **ORAL ARGUMENT REQUESTED** |

UNIGESTION HOLDINGS' MOTION FOR SUMMARY
JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

# TABLE OF CONTENTS

**Page**

PLAINTIFF, UNIGESTION HOLDING'S, MOTION FOR SUMMARY JUDGMENT
ON UPM TECHNOLOGY INC.'S COUNTERCLAIMS ................................................. 1

FACTUAL BACKGROUND .......................................................................................... 1

LEGAL ARGUMENTS .................................................................................................. 3

      I.      UPM's Counterclaims Are Barred by the Statute of Limitations .......................... 3

      II.     Digicel Haiti is Not a Common Carrier Under The Act; Summary
Judgment Disposing of All Communications Act Claims is Appropriate .............. 8

      III.    Defendants' Counterclaims Implicate Foreign Law; These International
Law Issues Require the Court to Abstain From Exercising Jurisdiction .............. 12

      IV.    The Doctrine of Foreign Sovereign Compulsion Requires Disposition of
All Claims Based on Disconnection of Sim Cards ............................................... 13

      V.     Principles of International Comity Require Summary Judgment or
Dismissal of UPM's Counterclaims ...................................................................... 17

      VI.    No Implied Contract Existed Between UPM and Digicel Haiti; Summary
Judgment is Warranted on Its Breach of Implied Contract Claim ........................ 20

CONCLUSION ............................................................................................................. 21

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*,
138 S. Ct. 1865 (2018)................................................................................................14

*Bagley v. Mt. Bachelor, Inc.*,
356 Or. 543, 340 P.3d 27 (2014) ...............................................................................20

*Cable & Wireless P.L.C. v. FCC*,
166 F.3d 1224 (D.C. Cir. 1999)..................................................................................10

*FTC v. Verity Int'l, Ltd.*,
443 F.3d 48 (2d Cir. 2006)..........................................................................................10

*Hartford Fire Ins. Co. v. California*,
509 U.S. 764 (1993)....................................................................................................15

*Hilton v. Guyot*,
159 U.S. 113 (1895)....................................................................................................18

*Hofler v. American Tel. and Tel. Co.*,
328 F. Supp. 893 (E.D. Va. 1971) ................................................................................7

*MFS Int'l, Inc. v. Int'l Telecom Ltd.*,
50 F. Supp. 2d 517 (E.D. Va. 1999) ............................................................................7

*Timberlane Lumber Co. v. Bank of America, N.T. and S.A.*,
549 F.2d 597 (9th Cir. 1976) ......................................................................................16

*Uhlmann v. Kin Daw*,
97 Or. 681, 193 P. 435 (1920) ....................................................................................20

*United States v. Brodie*,
174 F. Supp. 2d 294 (E.D. Pa. 2001) ..........................................................................16

*In re Vitamin C Antitrust Litig.*,
584 F. Supp. 2d 546 (E.D.N.Y. 2008) ........................................................................15

*In re Vitamin C Antitrust Litig.*,
810 F. Supp. 2d 522 (E.D.N.Y. 2011) ..................................................................15, 16

*Ward v. Northern Ohio Tel. Co.*,
251 F. Supp. 606 (N.D. Ohio 1966)..............................................................................8

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

**Statutes**

47 U.S.C. § 152 ..................................................................................9, 10, 11, 16

47 U.S.C. § 201 ...........................................................................................1

47 U.S.C. § 202 ...........................................................................................1

47 U.S.C. § 214 ........................................................................................1, 7

47 U.S.C. § 415 ........................................................................................3, 7

The Communications Act of 1934, 47 U.S.C. § 151 *et seq.* ................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 44.1 ...........................................................................................14

Fed. R. Civ. P 56 ...........................................................................................1

Local Rule 7-1 ...........................................................................................1

Local Rule 56 ...........................................................................................1

Wright & Miller § 2444 ...........................................................................................14

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), Plaintiff Unigestion Holdings, S.A. ("Digicel Haiti") states that its counsel conferred by telephone on November 12, 2021, with counsel for Defendants regarding this motion. The parties made a good-faith effort to resolve the issues raised in this motion but were unable to do so.

## PLAINTIFF, UNIGESTION HOLDING'S, MOTION FOR SUMMARY JUDGMENT ON UPM TECHNOLOGY INC.'S COUNTERCLAIMS

Plaintiff Digicel Haiti moves pursuant to Fed. R. Civ. P 56 and LR 56, for summary judgment as to all counterclaims filed by Defendant and Counterclaim-Plaintiff UPM Technology Inc. ("UPM"). UPM's Answer, Affirmative Defenses, and Counterclaims [ECF 244] allege ten counterclaims. Counts I – IV are bottomed on 47 U.S.C. §§ 201 and 202 for alleged "unreasonable discrimination" against UPM (the "Communications Act Counterclaims"). Count V alleges a violation of 47 U.S.C. § 214. UPM's additional state law claims are for breach of implied-in-fact contract, money had and received, unjust enrichment, and intentional interference with prospective economic advantage.

## FACTUAL BACKGROUND

UPM's counterclaims are all bottomed on a single common alleged activity—the alleged disconnection by Digicel Haiti of Digicel Haiti SIM cards used by UPM to connect Bypass VoIP or Roam Like Your Home ("RLYH") calls. The fact that Digicel Haiti disconnected offending SIM cards is undisputed, as is the fact that there is no evidence that Digicel-Haiti knew that UPM claimed ownership of any of these SIM cards at the time they were interrupted. Notwithstanding, UPM's counterclaims are all subject to summary judgment where the application of Digicel Haiti's various defenses only requires determinations of law.

UPM's counterclaims rely on the demonstrably inaccurate presumption that Digicel Haiti's actions to disconnect SIM cards—completed in Haiti and pursuant to the mandates of Haitian law—are subject to U.S. law and regulation. UPM claims that Digicel Haiti's

Page 1 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY
JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

disconnection of the SIM cards constitutes discriminatory conduct under The Communications Act (or "The Act") and gives rise to various state law claims. First, UPM's counterclaims are barred by the applicable two-year statute of limitations that also applies to the related putative state law claims. It is undisputed that UPM knew that Digicel Haiti was blocking SIM cards being used in Bypass as early as 2011, more than five years before UPM filed its claims. Summary judgment is required on this basis alone.

UPM's Counterclaims based on The Act also fail because Digicel Haiti is not a U.S. common carrier subject to The Act. An analysis of The Act's relevant provisions and certain relevant policy considerations confirm that Digicel Haiti is a foreign carrier outside the jurisdiction of The Act. Consistent with this conclusion are the facts that Digicel Haiti only operates within Haiti and the specific conduct complained of occurred outside of the United States which would necessarily require an extraterritorial application of the Act under UPM's theory of liability. These fatal deficiencies in UPM's Counterclaims dictate summary disposition of all of UPM's Communications Act counterclaims and related state law claims.

Additionally, several doctrines of international law require summary judgment on UPM's counterclaims. Because Digicel Haiti's disconnection of cards was compelled by the law of Haiti, the doctrine of foreign sovereign compulsion ("FSC") operates to bar UPM's counterclaims. Where Digicel Haiti, a Haitian company, was merely acting in compliance with the requirements of Haitian law, it should not and cannot be held liable for U.S. claims based on U.S. law in a U.S. court. Moreover, in addition to the FSC doctrine, considerations of international comity require this Court to abstain from exercising jurisdiction over UPM's claims. This is consistent with U.S. and FCC policies acknowledging and upholding the sovereignty of foreign laws and regulations by affirmatively requiring U.S. carriers to operate in accordance with strictures of foreign governments and foreign laws.

Page 2 -   UNIGESTION HOLDINGS' MOTION FOR SUMMARY
JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

**LEGAL ARGUMENTS**

**I.    UPM's Counterclaims Are Barred by the Statute of Limitations**

Pursuant to 47 U.S.C. § 415 the statute of limitations for Communications Act claims is two years.  Under The Act, "all complaints against carriers for the recovery of damages . . . shall be filed . . . within two years from the time the cause of action accrues, and not after…. 47 U.S.C. § 415.  UPM first filed its counterclaims in March 2016.  Based on the record evidence here, UPM knew or should have known of its alleged "blocking" claims going back to 2011 (five years before the filing date), and its claims are therefore barred as untimely.

UPM's Communications Act claims are bottomed on Digicel Haiti's alleged action of disconnecting UPM's Bypass cards.  UPM's allegations explicitly specify the blocking of SIM cards as the sole basis of its Communications Act and state law claims, encompassing the entirety of UPM's counterclaims and requests for recovery of damages.  See ECF 244, First Counterclaim, Counts I – V at pp. 48-52.  Specifically, UPM alleges that "Digicel-Haiti's actions in blocking the use by UPM of SIM cards. . .constitutes 'unreasonable discrimination' against UPM," and constitutes an "unjust or unreasonable charge, practice, classification or regulation." See ECF 244 at ¶¶ 331, 335, 339, 343, and 349.

UPM filed its first iteration of its Communications Act claims in its original Answer and Counterclaims on March 1, 2016.  See ECF 73.[1]  Based on the first filing date of UPM's counterclaims, since UPM had knowledge of its alleged claim as early as 2011 (five years before the filing date), the entirety of its counterclaims are barred by the statute of limitations.

UPM's own documents and emails unequivocally confirm that UPM knew that SIM cards in its possession were being blocked as early as 2011, more than *five years* before it filed its claims.  There is no dispute that UPM was aware that Digicel Haiti was blocking SIM cards being used by UPM for Bypass in 2011.  A multitude of documents produced by Defendants in the course of this litigation show that *UPM had knowledge* that Digicel Haiti was blocking the

---

[1] Likewise, UPM's state law claims rely on the same activity, losses occurring from the blocking of SIM cards, as their basis for damages.  See ECF 244, Second – Fifth Counterclaims.

Page 3 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY
JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

SIM Cards it was using to connect Bypass calls.[2]  Primarily, these documents consist of communications between and among UPM employees as UPM ramped up its early Bypass activities in Haiti and continue all the way throughout UPM's presence in Haiti.  These communications explicitly discuss Digicel Haiti's blocking of SIM cards identified as being used in Bypass beginning in 2011 and continuing through 2015.

- Ex. 1,[3] UPM005537 – October 2011 Email Communication

  From: Deiby Martin <deiby.martin@upmtelecom.com>
  To: 'Daniel Barbosa Romero'
  CC: leo.jasso@upmtelecom.com,
  Sent: Wednesday, October 19, 2011 12:46 PM
  Subject: HAITI DIGICEL
  Attachments: HAITI DIGICEL.docx

  La forma que estamos trabajando Haiti es la siguiente:
  . . .
  FORMA DE BLOQUEO DE SIMS, AL MOMENTO QUE NOS BLOQUEAN UN SIMS DE DIGICEL SE PONE EN MAX SUCCESSIVE EL SIM.

  Translation:

  The way in which we are working in Haiti is as follows:

  BLOCKED SIM CARDS METHOD: WHEN A DIGICEL SIM CARD IS BLOCKED, PUT THE SIM CARD IN MAX SUCCESSIVE.

- Ex. 2, UPM001663 – November 2011 Email Communication

  From: Jaspaul Gosal <jaspaul.gosal@upmtelecom.com>
  To: NOC Guatemala; NOC Mexico
  Sent: 11/16/2011 6:38:57 AM
  Subject: puertos digicel Haiti

  podemos poner 8 nuevos sims en el HAT 103 porfavor, para tener los 16 puertos total.

  creo que estan blogeado los sims en este GW.

---

[2] Counsel for UPM has stipulated to the authenticity of all documents produced by Defendants.  Ex. 8, Ruiz Dep. 298:7-11.

[3] References herein to "Ex. ___" refer to exhibits to the Declaration of Anne M. Talcott filed concurrently herewith.

Page 4 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Jesse

Translation:

Can we put 8 new SIM cards in the HAI L03 please, to have all 16 ports?

I think the SIM cards in that GW are blocked.

Jesse

- Ex. 3, UPM003381 – November 2011 Email Communication

From: Deiby Martin
To: 'Jaspaul Gosal'; 'Francisco Javier. Barbosa Romero' CC: 'NOC Guatemala"; 'NOC Mexico'
Sent: 11/16/2011 7:22:19 AM
Subject: RE: puertos digicel haiti

Hola Jesse

Estoy viendo que los gws de Haiti loc 3 ya se ve estable e igualmente los gws que se estaban molestando de [redacted] ya estan estables al mismo tiempo que el de Haiti, y listo están remplasados los sims del gw 1 de haiti estaban todos bloqueados.
Saludos,

Deiby Martin
NOC Guatemala UPM Marketing S.A.
deiby.martin@upmtelecom. com
msn dibyomar18@hotmail.com
BB PIN: 21B31C50
Cellular: (502) 55040702

Translation:

Hello Jesse

I see that the Haiti loc 3 GW look stable and the GWs that were giving problems in Panama are stable at the same time as the one in Haiti. Also, the SIM cards at GW 1 in Haiti have been replaced; they were all blocked.

- Ex. 4, UPM000771 – December 2011 Email Communication

From: Jaspaul Gosal jaspaul.gosal@upmtelecom.com
To: Tyler Allen
CC: Dean Johnson; Jack Kohn; Victor Moscoso; Deiby Martin; Daniel Barbosa; Leonel Jasso
Sent: 12/2/2011 10:58:34 AM
Subject: Haiti recharges Digicel

Page 5 -     UNIGESTION HOLDINGS' MOTION FOR SUMMARY
JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Hi guys,

Over the days today and tomorrow, its double and triple Digicel Haiti. The way the sims are being blocked, we rely on the doubles and triples to keep our costs down. Basically every weekend now is double/triple.

　. . .

- Ex. 5, UPM002915 – December 2011 Email Communication

From: Jorge Martin <jorge.martin@upmtelecom.com>
To: Jaspaul Gosal
CC: Deiby Martin; NOC Guatemala; Juan Carlos Flores
Sent: 12/11/2011 5:03:09 PM
Subject: Re: HAITI DIGICEL

Ya no hay mas sims Jaspaul. Se mandaron a recargar 12 sims, de las cuales, el primer request de 6 sims nuevas que se mando ayer segun tyler dice que ya se recargo pero no reflejan el balance. El otro request de 6 sims que mando Colocho hoy no lo ha confirmado. Hay otras 5 sims que estan bloqueadas. 17 en total y es todo lo que queda.  Otra cosa, el GW 4 esta fuera desde hace rato y el GW 1 tiene pesimo internet, se va de linea constantemente. Si se regulariza y las sims son recargadas correctamente pondremos el trafico de comcel en la 1.

Jorge.

Translation:

There aren't any more SIM cards, Jaspaul. 12 SIM cards were sent for reloading, of which the first request for 6 new SIM cards was sent yesterday, Tyler says they were reloaded, but the balance does not reflect that. The other request for 6 SIM cards sent by Colocho today has not been confirmed.  There are another 5 SIM cards that are blocked. 17 in total and that's all
that's left.

Another thing: GW 4 has been offline for a while and GW 1 has terrible internet; it goes offline constantly. If it returns to normal and the SIM cards are reloaded properly, we'll put COMCEL traffic on 1.

Jorge.

- Ex. 6, UPM003265 – February 2012 Email Communication

From: Dmitry Kunilov <Dmitry.kunilov@umptelecom.com>
To: 'Jaspaul Gosal'
CC: 'Dean Johnson'; 'Jack Kohn'; 'Sergey Spatar'; 'Deiby Martin'; 'Daniel Barbosa' Sent: Monday, February 13, 2012 09:33 PM
Subject: RE: Haiti Digicel Scoring

Page 6 -　UNIGESTION HOLDINGS' MOTION FOR SUMMARY
JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

> We do have scoring enabled on Haiti Digicel for quite a while and I do see some obvious dialer numbers blocked. However, like you said, Digicel probably uses sim profiling and not dialers.

These email communications and additional notes and all relevant certified translations are attached to this motion as Composite Ex. 7,  These communications, by UPM's own employees, preclude any issue of material fact.  UPM knew SIM cards it was using for Bypass were being blocked by Digicel Haiti as early as 2011 and through UPM's alleged departure from Haiti.

Defendants' deposition testimony confirms this timeline.  Tellingly, during the deposition of UPM's corporate representative and CEO, Duy Tran, he confirmed UPM's knowledge of SIM cards being blocked in 2011, five years before UPM filed its claims.

> Q: Now, you can agree with me that based on what's in this email, you can confirm you were [aware] of blocking of SIM's taking place in Haiti by Digicel in 2011; correct?
>
> A: Yes.

Ex. 9,  UPM Corp. Rep. Dep. Vol. 1, 197:21-25.  At several points during that same deposition, Tran confirmed UPM's knowledge of SIM cards being blocked by Digicel Haiti going back as early as 2011.  *See* Exs. 9 & 10, UPM Corp. Rep. Dep. Vol. 1, 198:1-5; 215: 3-4; 221:11-15; Vol. 2, 260:8-12.  Additional deposition testimony by individual defendant, Tyler Allen, confirmed the same.  *See* Ex. 11, Allen Dep. 82:14-25; 83:1-20.  It is beyond question, doubt, or argument that in 2011 UPM knew Digicel Haiti was blocking SIM cards that UPM was using for Bypass.

This limitations statute also operates to bar UPM's state law claims.  Federal courts have held that where a party brings state law claims in conjunction with Communications Act claims, the two-year statute of limitations set forth in 47 U.S.C § 415 should also be applied to the state law claims.  "[P]utative state law claims are in fact governed by the federal statute of limitations set out in § 415(b)."  *See MFS Int'l, Inc. v. Int'l Telecom Ltd.*, 50 F. Supp. 2d 517, 520 (E.D. Va. 1999) (*referencing e.g., Hofler v. American Tel. and Tel. Co.*, 328 F. Supp. 893, 894 (E.D. Va.

Page 7 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY
             JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
             INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

1971); *Ward v. Northern Ohio Tel. Co.*, 251 F. Supp. 606, 611 (N.D. Ohio 1966), *aff'd*, 381 F.2d 16 (6th Cir. 1967).  Accordingly, all of UPM's Counterclaims, including its putative state law claims are barred by the applicable two-year statute of limitations, and they should be summarily adjudicated as a matter of law.

**II.    Digicel Haiti is Not a Common Carrier Under The Act; Summary Judgment Disposing of All Communications Act Claims is Appropriate**

Based on the plain language of The Act, it does not apply to foreign carriers such as Digicel Haiti, and Digicel Haiti is not a "common carrier" as is required for Defendants to pursue their claims.  Here, an understanding of relevant policy considerations informs an analysis of the black-letter law.  Regulatory schemes such as The Act are carefully designed and regularly updated to reflect changes in the market, to avoid imposing regulation on activities that do not affect the balance of interest in the telecommunications sector among all participants including regulators, carriers, and end-users.  This is true in concept for all countries.  Here, the central issue of law regarding UPM's Communications Act-based counterclaims is whether Digicel Haiti, a Haitian carrier, is to be treated as a U.S. common carrier under the U.S. regulatory scheme codified by The Act.

The Act recognizes that a foreign carrier that brings communications from its subscribers in its own country to a U.S. international gateway where the call is handed off to a U.S. carrier for engaging with the call in the U.S., does not affect the balance of interests of participants in the U.S. market, and therefore it is not necessary or useful to regulate these carriers.  Rather, when the communications are handed off to a U.S. licensed carrier who has contracted with the foreign carrier for that purpose, usually through a reciprocal roaming agreement, the foreign carrier never affects the U.S. market and never subjects itself to FCC regulation as a U.S. common carrier.  Likewise, these roaming agreements allow U.S. carriers to deliver their U.S. subscribers' communications to an international gateway in another country, like Haiti, by handing off calls to and routing calls throughout a foreign country using a foreign carrier, for

Page 8 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

example, in this case Digicel Haiti routing calls through Haiti.  This allows the U.S. carrier to service and deliver its U.S. subscribers' calls to Haiti without being subject to CONATEL regulation and allows a foreign carrier like Digicel Haiti to deliver and service its Haitian subscribers' calls to the U.S. without being subject to regulation by the FCC.  Carriers the world over enter into similar agreements with foreign carriers to be able to fully route traffic for their subscribers without fear of being subject to regulation in every country in which their subscribers make calls or to which they seek to send calls.  If this were not the case, international telecommunications would be untenable for regulators and carriers alike.

> The Communications Act dictates in relevant part:
>
> The provisions of this chapter shall apply to all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States, and *to all persons engaged within the United States* in such communication or such transmission of energy by radio, and to the licensing and regulating of all radio stations as hereinafter provided;
> . . .
>
> Except as provided in sections 223 through 227 of this title, inclusive, and section 332 of this title, and subject to the provisions of section 301 of this title and subchapter V–A, nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier, or (2) *any carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier*, or (3) any carrier engaged in interstate or foreign communication solely through connection by radio, or by wire and radio, with facilities, located in an adjoining State or in Canada or Mexico (where they adjoin the State in which the carrier is doing business), of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier. . .

47 U.S.C. § 152 (emphasis supplied).  The language of Section 152 confirms that *foreign carriers are not common carriers in the U.S.* or subject to The Act simply because they bring communications to a U.S. international gateway where it is handed off to a U.S. carrier to route within the U.S.  Section 152 mandates application to "all interstate and foreign

Page 9 -   UNIGESTION HOLDINGS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

*communications*" on the one hand but to only those "*persons*" on the other hand, who *engage within the U.S. in such communications*. *Id.* (emphasis supplied). This distinction is paramount as it applies directly to the facts of this case. The FCC regulates all communications within the U.S., but it does not regulate foreign carriers who do not engage with those communications within the U.S., such as Digicel Haiti.

Digicel Haiti does not engage with communications in the U.S., hence the necessity for its roaming agreements with U.S. carriers. Ex. 12, Digicel Haiti Corp. Rep. (Boute) Dep. 76:20-25; 86:17-20; 88:2-4; 78:10-17 (describing U.S. host networks and operation of roaming agreements between Digicel Haiti and U.S. common carriers). UPM admits that this is the case in its response to requests for admissions. "UPM admits that Digicel-Haiti's physical network occurs solely in Haiti." Ex. 13, UPM Tech., Inc.'s Resp. to Second Req. for Admis., No. 9. UPM continues its answer by acknowledging that Digicel Haiti uses roaming agreements with United States carriers to transmit calls within the U.S. *Id.* It further acknowledges Digicel Haiti's use of roaming agreements to facilitate calls in the U.S. in its Motion to Compel. ECF 247 at 3 citing Answer at ¶¶ 83, 129 ("Digicel Haiti receives calls made in the U.S. from a Digicel Haiti roaming partner with a U.S. network.").

This distinction between foreign telecommunications and foreign carriers is further confirmed by federal courts interpreting the extent of the FCC's jurisdiction to enforce the Act. "The Communications Act authorizes the Commission to regulate 'foreign telecommunications.' The Commission claims no authority to directly regulate foreign carriers." *Cable & Wireless P.L.C. v. FCC*, 166 F.3d 1224, 1229 (D.C. Cir. 1999) (relying on the differentiation between foreign and domestic carriers to uphold application of order to "carriers within [Commission's] jurisdiction" noting that FCC "claims no authority to directly regulate foreign carriers"); *see also FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 59 (2d Cir. 2006) ("As indicated by the 'engaged within the United States' limitation, The Communications Act does not apply to foreign terminating carriers.").

Page 10 -  UNIGESTION HOLDINGS' MOTION FOR SUMMARY
JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

In the earliest stages of this case there was confusion regarding what Digicel entity owned and operated the international switches located in the U.S., and it was incorrectly reported that Digicel Haiti owned those switches which formed bases to reject this very argument when it was first raised in motions to dismiss.  ECF 95 at 8-9, 17-20.[4]  However, as the litigation has evolved, the actions and responsibilities of each party have become clearer.  The Court required that Digicel Haiti amend its pleadings to specifically delineate what Digicel entities were responsible for the different phases of call routing, transmission, and accounting.  *See generally*, Digicel Haiti's Third Amended Complaint, ECF 200 ("TAC"). For example, the TAC clarified that Digicel U.S.A. is the owner and operator of the international switches that account for and route calls to Haiti.  TAC at ¶¶ 18-25.  Further, Digicel Haiti detailed, with specificity, how it was damaged by UPM's Bypass activity.  TAC at ¶¶173-203.  Subsequently, there has been no evidence to suggest that Digicel Haiti is anything more than a foreign carrier, not subject to The Act.  There is no evidence that Digicel Haiti engaged with calls in the U.S. or that it was ever considered a U.S. common carrier by *any* regulator.

During the course of discovery, no evidence has been presented to raise an issue of material fact as to whether Digicel Haiti "engages within the U.S." as is required by Section 152 to be considered a U.S. common carrier.  Rather, Digicel Haiti has confirmed time and again that it is a wholly foreign carrier that only operates in Haiti and is therefore not subject to the strictures of The Act.  TAC at ¶ 15.  UPM's own discovery responses confirm this.  *See* Ex. 13, UPM Tech. Inc's Res. to Second Req. for Admis. No. 9 ("UPM admits that Digicel-Haiti's physical wireless retail network is entirely located in Haiti, so the operation of that network occurs solely in Haiti.").  Digicel Haiti does not engage within the U.S., and as a matter of law it is not a common carrier as defined by The Act.  *See* Ex. 12, Digicel Haiti Corp. Rep Boute Dep. 97-98 (discussing Digicel Haiti's use of roaming partners to carry traffic within and from the U.S.); Ex. 12, Digicel Haiti Corp. Rep. Boute Dep. 103:23-25; 104:1-11 (noting that Digicel

---

[4] In this ruling the Court acknowledges that once the ultimate facts are sorted out this determination could be subject to change.  ECF 95  at 20.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Haiti is not even responsible for marketing in U.S.).  Accordingly, as a matter of law Digicel Haiti is not subject to the strictures of The Act on which UPM's counterclaims rely.  Summary judgment as to UPM's claims bottomed on The Act is required.

III.    **Defendants' Counterclaims Implicate Foreign Law; These International Law Issues Require the Court to Abstain From Exercising Jurisdiction**

Defendants' entire counterclaims are based on the presumption that the laws of the United States apply to the conduct attributed to Digicel Haiti in Haiti.  This presumption is false.  A review of UPM's counterclaims confirms that they are subject to the law of Haiti, not The Act or U.S. common law, and various international law doctrines require these claims to be summarily adjudicated.

The allegations of the counterclaims all appear to originate with the acquisition of Digicel Haiti SIM Cards by people allegedly acting for the benefit of UPM in Haiti and then culminate with UPM's alleged damages resulting from Digicel Haiti's alleged disconnection of the SIM Cards acquired in Haiti.  ECF 244 at ¶¶ 332, 336, 340, 344, and 350.  However, the record confirms that UPM never purchased *any* SIM cards directly from Digicel and does not know where or from whom its "agents" or "contractors" as they are interchangeably referenced, allegedly purchased the SIM cards procured by UPM.  UPM's principal and corporate representative, Mr. Tran even admitted that "[w]e have no clue" whether the SIM cards were stolen.  Ex. 9, UPM Corp. Rep Dep. 110:20-25; 111:1-4.  In reality, UPM had no clue where the SIM cards came from, how they were acquired, or whether these cards were "subscribed" by some other customer.  This series of concessions alone makes it impossible for there to be any legally recognizable contractual or equitable relationship between UPM and Digicel Haiti.

Further, because UPM's counterclaims are based on actions that allegedly took place in Haiti and in compliance with the laws of Haiti, numerous international law doctrines, including the foreign sovereign compulsion doctrine and concepts of international comity support the application of summary judgment to UPM's claims.

Further, as a matter of law, Digicel Haiti cannot be bound to an implied-in-fact contract

Page 12 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY
             JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
             INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

that was presumptively originated through the illegal acts of UPM or its "agents" as they are loosely described.  Digicel-Haiti cannot be bound to an implied-in-fact contract when the record evidence confirms that UPM never purchased a single SIM card from Digicel-Haiti and UPM cannot confirm how or from whom the SIMs were actually acquired or whether they were acquired legally or in accordance with the Digicel-Haiti Terms and Conditions of service.  Likewise, Digicel Haiti cannot be determined to have converted property, or to have been unjustly enriched, or to have interfered with any business relationship where no business relationship has been specifically plead or established or where no "property right" has been established by UPM and where Digicel is only being accused of taking perfectly legal action in Haiti to prevent the use of SIM cards for Bypass operations.[5]  Defendants' claims for breach of implied in fact contract, money had and received, conversion, unjust enrichment, and intentional interference with a prospective economic relationship are also appropriate for summary judgment.

**IV.     The Doctrine of Foreign Sovereign Compulsion Requires Disposition of All Claims Based on Disconnection of Sim Cards**

The doctrine of foreign sovereign compulsion ("FSC") dictates that where a party is being held at fault for taking actions that are compelled by an applicable foreign law, a U.S. court will not entertain those claims.  Here, Haitian law compels Haitian carriers to disconnect SIM cards that are identified as connecting Bypass calls.

Pursuant to Haitian law, local telecom operators are required to terminate SIM cards

---

[5] Defendants' Chapter 47 claims fail for a similar yet more basic reason.  Digicel Haiti does not engage in activity within the United States, and, therefore, is entirely not subject to the strictures of The Communications Act of 1934.  *See Supra*. Section II

Page 13 -     UNIGESTION HOLDINGS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

being used in Bypass.[6]  The Haitian national telecom regulator, CONATEL[7], distributes

Opinions and Circulars that communicate these policies and legal obligations to the incumbent

carriers in Haiti.  G. Laborde Decl. at ℙ 4.  In an Opinion issued on September 22, 2008,

CONATEL proclaimed that the "flow of fraudulent international traffic on the national telephone

network . . . is strictly prohibited by the State of Haiti.  See ECF 59, Ex. B.  In keeping with this

prohibition, CONATEL confirmed the illegality of Bypass in CONATEL, Circular No. 009

(ECF 60, Ex. D).  This Circular dictates that diverted traffic shall be blocked immediately and

that carriers are discharged of any responsibility for termination of service due to this edict.  See

CONATEL Circular No. 009 at ℙ 4.  In relevant part, Circular No. 009 further mandates:

> 4.  IP addresses confirmed by the results of the investigation obtained by data collection equipment as being used in the diverted traffic shall be blocked immediately by CONATEL, with the consent of the operators and after the latter have been notified.  *This termination of service cannot be attributed to the operators, who are already discharged of any responsibility with respect to the implementation of these measures.  Any dispute by the users relating to the application of this Circular Note and to the measures taken as a result should be submitted to CONATEL.*
>
> 5.  In accordance with the legal provisions, in particular to Articles 15, 19, 137, and 139, paragraphs f, j, and p of the Ordinance of October 12, 1977, awarding the telecommunications monopoly to the State of Haiti, CONATEL shall proceed with the confiscation of all equipment used to divert traffic and shall in fact take any legal or statutory action against the violator or violators.

CONATEL Circular No. 009 at ℙℙ 4, 5 (emphasis supplied).  This regulation requires carriers, in

---

[6] A determination of foreign law is a matter of law appropriate for review on summary judgment.  "Federal Rule of Civil Procedure 44.1, adopted in 1966, fundamentally changed the mode of determining foreign law in federal courts. The Rule specifies that a court's determination of foreign law "must be treated as a ruling on a question of law," rather than as a finding of fact."  *Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1873 (2018).  "The 'obvious' purpose of the changes Rule 44.1 ordered was 'to make the process of determining alien law identical with the method of ascertaining domestic law to the extent that it is possible to do so.'"  *Id.*; *citing* Wright & Miller § 2444, at 338-342.  As such, Digicel Haiti relies on Haitian law that was filed with this Court in its earlier Rule 44.1 Notice, ECF 59 - 62.

[7] UPM concedes that CONATEL is the regulatory agency of Haitian telecommunications. ECD 244 at ℙ 224; Ex. 13, UPM Resp. to Second Req. for Admis. No. 14.

Page 14 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY
             JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
             INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

conjunction with the regulator, to shut down offending cards as they are identified.

As set forth above, UPM's counterclaims are all based on the allegation that Digicel Haiti knowingly disconnected Digicel Haiti SIM cards that UPM used for Bypass or illicit resale of RLYH minutes which UPM argues constitutes a violation of U.S. law either under The Communications Act or various state law claims.  As a threshold matter, there is no record evidence that Digicel Haiti knew that UPM existed or claimed to own any of the SIM cards that were being interrupted.  Nor is there any record evidence that Digicel Haiti was ever able to identify a particular SIM as a "UPM" SIM while it was being used.  This is true because the record confirms that UPM never purchased a single SIM card from Digicel-Haiti and certainly never registered a single SIM card with Digicel Haiti.

Even more significant, however, is that Digicel Haiti's actions to disconnect offending SIM cards is required under applicable Haitian laws, and therefore, under the doctrine of FSC, Digicel Haiti cannot be held liable by a U.S. court for a violation of U.S. law where the actions that form the basis of the U.S. law claims are consistent with and in fact compelled by the laws of Haiti—the law of the country where Digicel Haiti operates—where Digicel Haiti allegedly disconnected offending cards.  *See generally* CONATEL Circular NO. 0009.

"The defense of foreign sovereign compulsion . . . focuses on the plight of a defendant who is subject to conflicting legal obligations under two sovereign states . . . [and] recognizes that a defendant trying to do business under conflicting legal regimes may be caught between the proverbial rock and a hard place where compliance with one country's laws results in a possible violation of another's." *In re Vitamin C Antitrust Litig*., 584 F. Supp. 2d 546, 551 (E.D.N.Y. 2008).  In *Hartford Fire Ins. Co. v. Ca.,* the Supreme Court laid the groundwork for FSC by recognizing that abstention on comity grounds is warranted where the compulsion to act caused by the laws of a foreign government creates a true conflict.  *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993).  Building on this acknowledgment, courts have identified FSC as a distinct defense in correlation with the act of state doctrine.  *See In re Vitamin C Antitrust*

Page 15 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY
JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

*Litig.,* 810 F. Supp. 2d 522, 544 (E.D.N.Y. 2011); *discussing Timberlane Lumber Co. v. Bank of America, N.T. and S.A.,* 549 F.2d 597, 606 (9th Cir. 1976) (reasoning that "corporate conduct which is compelled by a foreign sovereign" is treated as "if it were an act of the state itself.").

"To make out a foreign sovereign compulsion defense, a party must show that: (1) the behavior violating American law was actually compelled by the foreign government; and (2) the foreign order was 'basic and fundamental' to the alleged behavior and not just peripheral to the illegal course of conduct." *United States v. Brodie*, 174 F. Supp. 2d 294, 300 (E.D. Pa. 2001) (stating the test for FSC but refusing to apply it in a criminal law context). "In addition to fairness concerns, the FSC defense also acknowledges comity principles by accommodating the interests of equal sovereigns and giving due deference to the official acts of foreign governments." *In re Vitamin C Antitrust Litig*., 810 F. Supp. 2d 522, 544 (E.D.N.Y. 2011). "The fact that a foreign government compels certain activity ordinarily indicates that the activity implicates its most significant interests…. Relatedly, the FSC defense also recognizes that compelled conduct often raises foreign policy concerns that are primarily the province for the Executive Branch." *Id.* (internal quotations omitted).

Presently, FSC is applied primarily as a defense to antitrust actions. Yet, the application of FSC to the facts of this case is warranted and necessary where the complained of conduct is also allegedly "anticompetitive" in nature and in a heavily regulated industry sector. This application of FSC achieves the same purpose in this case as it would in an antitrust claim, preventing a U.S. court from condemning corporate activity taken in order to comply with the laws of the sovereign country in which the corporation operates. If the courts employ FSC to restrict the extraterritorial reach of antitrust laws, this Court should do the same to reign in UPM's attempted extraterritorial misapplication of The Communications Act, a distinctly U.S. law that expressly does not apply to77 foreign carriers. *See* 47 U.S.C. § 152. Digicel Haiti is a Haitian company. It is not an American company operating in a foreign nation that is being held to American antitrust standards, as is the case with most matters relying on an FSC defense. Its

Page 16 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

interruption of SIM cards being used in Bypass is in keeping with the laws of Haiti that require local Haitian carriers to protect and maintain the integrity of their local network infrastructure to preserve the efficacy of the national telecommunications networks.  CONATEL Circular No. 009.

As a matter of Haitian law, Bypass activity is illegal in Haiti.  So were many other actions taken by UPM in pursuit the secret use of Digicel Haiti's SIM cards and network, while keeping their presence in Haiti a secret from the local operators and the Haitian authorities. Pursuant to applicable Haitian law, Digicel Haiti was compelled by a decree of Government and the Regulator to take the actions that UPM now claims are illegal *pursuant to U.S. law*.  The Court should apply the FSC doctrine to absolve Digicel Haiti from any liability under all the counterclaims plead by UPM where those counterclaims assert damages based on Digicel Haiti's alleged disconnection of SIM cards used in Bypass.

## V.    Principles of International Comity Require Summary Judgment or Dismissal of UPM's Counterclaims

As a threshold matter, what UPM requests from this Court is inconsistent with FCC policy related to international comity.  The FCC clearly and unambiguously refrains from taking actions that would infringe on other regulators' law-making authority.  The FCC has stated that the 214 registered operators it regulates should operate in conformity with the laws in the countries where they operate.  Accordingly, the FCC has ruled that services that are illegal in another country but allowed in the U.S., are proscribed where a US carrier violates foreign law by seeking to provide that service, even where this may be to the economic detriment of U.S. carriers.  *See Ex. 14, Enforcement of Other Nations' Prohibitions Against the Uncompleted Call Signaling Configuration of Int'l Call-Back Service,* 17 FCC Rcd 2794, 2796, 2002 FCC LEXIS 720, *6-7 Feb. 13, 2002 (Notwithstanding the finding that call-back serves the public interest and does not violate U.S. or international law, the Commission concluded that the United States should, for reasons of international comity assist in the enforcement of foreign laws that ban call-back.).

Page 17 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY
             JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
             INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

By requiring that its operators act in accordance with the laws of foreign countries where they operate, the FCC demonstrates and confirms its support of international comity. Had UPM acted in accordance with the FCC's mandate and Haitian law it would have never established a Bypass operation in Haiti, and none of the actions giving rise to its counterclaims would have transpired. Generally, international comity reflects "the extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation." *Hilton v. Guyot*, 159 U.S. 113, 163 (1895). International comity plays a prominent role in telecommunications where the interconnected nature of the industry requires that international operations be subject to multiple, national regulators and regulatory schemes.

UPM's counterclaims urge this Court to ignore the sovereignty of Haitian law and Haitian telecom regulation in favor of penalizing a Haitian carrier, Digicel Haiti, for actions taken in its home territory, in compliance with its home country's laws and telecommunications policies. The U.S., independently under the FCC's regulatory decisions, and as a member of the International Telecommunications Union (ITU), has committed to respecting the stated needs of less developed countries for more restrictive regulations than those imposed in the U.S. In keeping with this policy, the Court should abstain from exercising jurisdiction over UPM's counterclaims in the interest of international comity and avoiding significant disruption in international telecommunication regulations.

The U.S. and Haiti are also signatory members of the International Telecommunications Union ("ITU"). The ITU emphasizes and functions on the basis of reciprocal respect for the diverse interests of the telecommunications networks of developed and developing countries. ITU Resolution 21, ITU Plenipotentiary Conference, Dubai 2018, specifically addresses and supports each member states' ability to address alternative calling schemes, such as Bypass, in a way that best addresses the practices and how they impact that countries' telecommunications network. *See* ITU Resolution 21, ITU Plenipotentiary Conference, Dubai 2018 at 36-37. A true

Page 18 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY
             JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
             INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

and correct copy of the Resolution is attached as Ex. 15. *See also* Ex. 16, Cross Dep. 81:11-21.

In addition to the fraudulent activity plead in Digicel Haiti's claims, every step in UPM's Bypass scheme which occurred in Haiti is illegal under Haitian law, and this Court should not countenance those actions by asserting jurisdiction over Digicel Haiti to entertain UPM's counterclaims allegedly grounded in US regulatory law. This is especially true where the counterclaims are bottomed on the alleged disruption of SIM cards which took place in Haiti to curtail UPM's illegal Bypass as proscribed under the mandates of Haitian law.

There is no record evidence that UPM ever purchased a single SIM card directly from an authorized Digicel Haiti retailer. Ex. 8, Ruiz Dep. 140: 1-13; Ex. 9, UPM Corp. Rep Dep. 110:20-25; 111:1-4. Instead UPM has acknowledged that it acquired SIM cards from third parties who purchased them from other third parties in bulk (further illegal conduct) or through an undefined combination of various third-party transactions without knowledge of the true origin of the SIM cards. Third Amended Complaint, ECF 200 ("TAC") Defendants' Amended Answer, ECF 244 ("Defendants' Answer"), ¶¶50, 65, 86, 97; ECF 247 at 3; Ex. 11, Allen Dep. 110:13-18; Ex. 9, UPM Corp. Rep Dep. 106; 110:19-25; 111:1-4; Ex. 17, UPM Tech.'s Resp. to First Req. For Admis. Nos. 9-13; Ex. 16, Cross Dep. at 43-44. UPM used hidden equipment in Haiti, such as gateways, that are banned by CONATEL, which were illegally imported into Haiti under false pretenses to be used to transmit calls within Haiti through Bypass. Ex. 8, Ruiz Dep. 210:1-20; 212:12-15; Ex. 11, Allen Dep. 90:11-20. The end result of these actions was a fraudulent scheme that runs afoul of Haitian law on multiple levels, and the interruption of SIM cards that were identified as SIM cards being used in Bypass. There is no record evidence that Digicel Haiti was ever aware that any single SIM card that was being intercepted was a "UPM SIM Card." In keeping with U.S. and FCC policy, comity requires that the U.S. courts acknowledge the sovereignty of Haiti and its telecommunications regulator by refusing to exercise jurisdiction over UPM's counterclaims.

Page 19 -  UNIGESTION HOLDINGS' MOTION FOR SUMMARY
JUDGMENT ON DEFENDANT UPM TECHNOLOGY,
INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

**VI.    No Implied Contract Existed Between UPM and Digicel Haiti; Summary Judgment is Warranted on Its Breach of Implied Contract Claim**

To establish a breach of implied-in-fact contract claim, UPM must first show the existence of an implied contract.  "An agreement is illegal if it is contrary to law, morality or public policy.  Plain examples of illegality are found in agreements made in violation of some statute; and, stating the rule broadly, an agreement is illegal if it violates a statute or cannot be performed without violating a statute."  *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 552, 340 P.3d 27, 34 (2014); *citing Uhlmann v. Kin Daw*, 97 Or. 681, 688, 193 P. 435 (1920) (an illegal agreement is void and unenforceable).  Here the "contract" UPM seeks to impose is illegal as a matter of law where its purpose violates the law of Haiti, and summary judgment is therefore appropriate.

Based on the record evidence here, it is impossible to find that an implied in fact contract existed as a matter of law where this purported agreement was for an illegal purpose.  UPM readily and consistently admits that it did not purchase SIM Cards directly from Digicel Haiti or its licensed retailers.  Ex. 13, UPM Res. To Second Req. for Admis. Nos.  3.  The record in this case confirms that UPM acquired Digicel Haiti SIM cards from individuals who obtained the cards from unknown or unidentified sources.  See TAC; Defendants' Answer, ECF at ¶¶50, 65, 86, 97; ECF 247 at 3; Ex. 17, UPM Tech.'s First Resp. to Req. For Admis. Nos. 9-13; Ex. 13, UPM Res. To Second Req. for Admis. No. 3.  UPM further admits that it never approached Digicel Haiti to negotiate a business relationship or to confirm or disclose that it was planning to use the SIM cards to "resell" Digicel Haiti minutes or network access. Ex. 8, Ruiz 238: 7-25.  Additionally, UPM admits in its own allegations that the purpose of acquiring the SIM Cards was to [secretly] gain access to Digicel Haiti's network.  ECF 244 at ₱ 357.

Even if the Court were to find that the elements of an implied contract could be found to exist—notwithstanding the lack of privity, the affirmative steps taken to conceal UPM's existence and involvement in Haiti and Digicel Haiti's consistent and unambiguous expression of unwillingness to allow Bypass on its network—summary judgment is still required where the

Page 20 -    UNIGESTION HOLDINGS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

implied contract would be barred as being made for an illegal purpose.  As established *infra*, Bypass is illegal in Haiti, as were many of the surrounding actions UPM took to facilitate, implement and effectuate its Bypass scheme.  UPM's implied contract claim fails as a matter of law where UPM's purposeful and intentional use of the SIM Cards was for an illegal purpose, and summary judgment as to this claim is therefore appropriate.

## CONCLUSION

Based on the foregoing, Digicel Haiti respectfully request that the Court dismiss the entirety of UPM's counterclaims.

Respectfully submitted,

By:    s/ Robert C.L. Vaughan

Anne Talcott, OSB #965325
Email: atalcott@schwabe.com
Kathryn E. Kelly, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Telephone: 503.796-2958

Robert C. L. Vaughan (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Cherine Smith Valbrun (*Pro Hac Vice*)
Email:  cvalbrun@kvllaw.com
Leah B. Storie (*Pro Hac Vice*)
Email:  lstorie@kvllaw.com
KIM VAUGHAN LERNER LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL  33394
Telephone:    (954) 527-1115

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900