**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
**Kathryn E. Kelly**, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
**Cherine Smith Valbrun** *(Pro Hac Vice)*
E-mail: cvalbrun@kvllaw.com
E-mail: emailservice@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL  33316
Telephone: 954.527.1115
Facsimile: 954.527.1116

*Attorney for Plaintiff, Unigestion Holdings, S.A.,*
*a foreign corporation, d/b/a Digicel Haiti*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A., d/b/a DIGICEL HAITI**, <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> **UPM TECHNOLOGY, INC., *et al.*,** <br><br> Defendants and Counterclaim Plaintiffs. | No. 3:15-cv-00185-SI <br><br><br> **PLAINTIFF UNIGESTION HOLDINGS, S.A.'S DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT, JOSEPH GILLAN** <br><br> **ORAL ARGUMENT REQUESTED** |

Page 1 -    UNIGESTION HOLDINGS' DAUBERT MOTION AND
IN THE ALTERNATIVE, MOTION IN LIMINE TO
EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), Plaintiff Unigestion Holdings, S.A. ("Digicel Haiti") states that its counsel conferred by telephone on November 12, 2021, with counsel for Defendants regarding this motion. The parties made a good-faith effort to resolve the issues raised in this motion but were unable to do so.

### PLAINTIFF'S DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT, JOSEPH GILLAN

Plaintiff, Digicel Haiti, moves pursuant to Rule 702 of the Federal Rules of Evidence, to exclude the testimony of Defendant and Counterclaim-Plaintiff UPM Technology, Inc.'s ("UPM") expert Joseph Gillan ("Mr. Gillan").  In support of this motion, Plaintiff states as follows:

### FACTUAL BACKGROUD

UPM disclosed Joseph Gillan for the improper purpose of addressing the following premises as posed to him by UPM's counsel (and as outlined in the scope of Mr. Gillan's Declaration (Ex. A.)[1]):

(1) the economic and policy rationale underlying various FCC decisions that recognize the importance of resale as a regulatory tool to achieve the efficient (*i.e.,* cost-based) pricing of telecommunications services;

(2) whether UPM's resale of Digicel-Haiti's wireless services as a means to terminate traffic in Haiti is consistent with (and furthers) the economic reasoning used by the FCC in determining that resale restrictions are generally prohibited under Sections 201 and 202 of the federal Communications Act; and, conversely,

(3) whether Digicel-Haiti's discontinuing the services UPM was buying from Digicel-Haiti and reselling to other carriers constituted the same kind of conduct, from an economic and policy perspective, that the FCC's ban on resale restrictions was intended to prevent.[2]

Armed with the above construct—with which Digicel-Haiti disagrees—Mr. Gillan offers

---

[1] References herein to "Ex. ___" refer to exhibits to the Declaration of Anne M. Talcott filed concurrently herewith.

[2] Ex. A, Declaration of Joseph Gillan ("Declaration") at ¶ 9, September 27, 2021.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

the following inadmissible opinions and conclusions:

(1) **Unsupported Legal Opinion:** UPM's service configurations – both the resale of Digicel-Haiti's local service (for calls delivered to Haiti via the Internet) and the resale of Digicel-Haiti's RLYH service (for calls UPM handed off to wireless carriers in the United States) – were economically rational responses to the problem of Digicel-Haiti's inflated termination rates.

(2) **Improper Legal Opinion/FCC Policy Interpretation:** Moreover, these arrangements would have increased consumer welfare by placing competitive pressure on Digicel-Haiti's termination rates, leading to lower prices for consumers in America calling Digicel-Haiti subscribers in Haiti. UPM's service configuration, therefore, was consistent with, and would have advanced, the FCC's policies with respect to international termination rates.

(3) **Improper Legal Opinion/Statutory Interpretation Opinion:** UPM's activities in reselling Digicel-Haiti's services were reasonable, and Digicel-Haiti's refusal to permit them to be resold was unreasonable and discriminatory, within the meaning of sections 201 and 202 of the Communications Act, as the FCC has generally interpreted and applied those provisions to resale situations.[3]

The opinions and conclusions offered by Mr. Gillan fall woefully short of the minimum standards for admissibility under Fed. R. Evid. 702 and Fed. R. Civ. P. 37 and *Daubert*. Mr. Gillan's opinions are inadmissible legal conclusions, and otherwise unreliable as they are based on unfounded and unreasonable assumptions that ignore law, facts and evidence relevant to this case.

**LEGAL STANDARD**

Courts are vested with the responsibility of ensuring that proffered expert testimony is "not only relevant, but reliable." *Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert*, 509 U.S. at 589. The trial court is the gatekeeper allowing only the admission of relevant and reliable testimony. In doing so, the Judge must "make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. Expert evidence must meet "exacting standards of reliability" in order to be admitted. *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

When reviewing a challenge to the admissibility of expert testimony under Federal Rule

---

[3] Ex. A, at ¶ 57.

Page 3 -   UNIGESTION HOLDINGS' DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

of Evidence 702, courts must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

Courts have "substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999) (internal quotation omitted).

Finally, *Daubert* and its progeny have well established that it is <u>not enough</u> for an expert to justify his conclusions based solely on his "experience." *Daubert* is clear that an expert's methodology cannot be found reliable on the basis that the expert "says so." "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) *citing Daubert*, 43 F.3d 1311, 1316 (9th Cir. 1995) (on remand) ("the expert's bald assurance of validity is not enough").

"Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to carry the proponent's burden. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005). Thus, neither an expert's qualifications and experience alone nor his unexplained assurance that his or her opinions rely on accepted principles is sufficient. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005).

Here, the substance of Mr. Gillan's proposed testimony does not meet the thresholds established for admissibility of expert testimony. In reality, the substance of Mr. Gillan's declaration and his deposition testimony confirm that he lacks any reliable methodology, and his testimony will not aid the jury as it is inadmissible legal opinion. Mr. Gillan's declaration,

Page 4 -    UNIGESTION HOLDINGS' DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

opinion and proposed testimony thus do not meet the applicable standards for expert testimony and must be excluded for the reasons set forth below.

## LEGAL ARGUMENT

I.    **MR. GILLAN'S INTERPRETATION OF FCC ORDERS AND THE COMMUNICATIONS ACT CONSTITUTES INADMISSIBLE LEGAL OPINION**

Mr. Gillan confirmed that he is offering opinions on the economic rationale and analysis regarding previous FCC decisions, and an explanation of the application of that analysis to predict conclusions relating to resale and restrictions on the resale of Digicel services.[4] Mr. Gillan testifies that he *merely* repeats, replicates and attempts to apply what he has determined to be the FCC's underlying policies and rationales as outlined in prior orders to the fact pattern provided to him by counsel for UPM.[5]  Although, Mr. Gillan goes to great lengths to avoid stating the obvious—that his expert opinions are intended to predict or otherwise suggest to this Court what the FCC's response to this dispute, as he understands it might be—the reality is that Mr. Gillan's opinions are nothing more than speculative predictions and inadmissible legal opinion.  Indeed, he testifies that if he applies the economic reasoning the FCC has applied in the past he arrives at certain "conclusions."  Mr. Gillan draws a distinction without a difference between the terms "prediction" and "conclusion" in this context.  It is clear from Mr. Gillan's testimony and declaration that his conclusions are, indeed, predictions of how he believes that the FCC would and should rule on the issues presented in this case based on the FCC's historical policies, goals and motivations ("I have looked at these [FCC] orders to judge the conduct of both parties against the policy and the economic analysis…"[6]).  For example, relying on his interpretation and analysis of the FCC's prior orders, Mr. Gillan concludes that the FCC *would* find that UPM's "resale" of the two termination methods is a resale arrangement that is

---

[4] Ex. B, Deposition of Joseph Gillan ("Gillan Depo.") on October 18, 2021 at 17:23-18:02; 18:20-19:06.

[5] Gillan Depo. 37:11-38:20.

[6] Gillan Depo. 48:19-21.

Page 5 -   UNIGESTION HOLDINGS' DAUBERT MOTION AND
           IN THE ALTERNATIVE, MOTION IN LIMINE TO
           EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

consistent with the FCC goals, and therefore permissible.[7]

Mr. Gillan also offers opinions regarding whether Digicel Haiti's alleged interruptions of UPM's efforts were unreasonable under sections 201 and 202 of the Communications Act.[8] Again purportedly relying on his understanding of the economic analyses the FCC applied in interpreting the Communications Act, Mr. Gillan concludes that Digicel Haiti's "refusal to permit UPM's resale activities" was unreasonable and discriminatory, within the meaning of sections 201 and 202.[9]  It is wholly improper for Mr. Gillan to testify as to the reasonableness or unreasonableness of Digicel Haiti's conduct under sections 201 and 202 of the Communications Act.  See e.g. *In re WorldCom, Inc. Secs. Litig.*, 352 F.Supp.2d 472, 500 n.34 (S.D.N.Y. 2005) (noting that an expert's failure to opine that a defendant's actions were "reckless" accords with the prohibition on testimony concerning legal conclusions).  Notwithstanding that his conclusions are pure legal opinion, Mr. Gillan concluded that Digicel Haiti's conduct was unreasonable and discriminatory in violation of sections 201 and 202 based on the false assumption that Section 201 and 202 applied to Digicel Haiti.[10]

Testimony on legal issues, such as the interpretation of statutes, is not helpful to the jury and is therefore inadmissible under Rule 702.  It is well settled that, "[C]ourts often exclude expert opinions that involve legal conclusions if those opinions tell the jury nothing about the facts. Such opinions merely function like jury instructions and, thus, infringe upon the trial judge's role. For the same reason, courts often exclude expert opinions on so-called 'ultimate issues.' Courts frequently find that such opinions fail to assist under Rule 702 where those opinions do nothing more for the jury than tell it what verdict to reach." Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6264, 217-23 (footnotes omitted); *see also Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) ("The

---

[7] Gillan Depo. 33:17-34:04.

[8] Gillan Depo. 34:5-35:6.

[9] Gillan Declaration ¶57; Gillan Depo. 12:12:19.

[10] Gillan Depo. 103:14-23.

Page 6 -   UNIGESTION HOLDINGS' DAUBERT MOTION AND
IN THE ALTERNATIVE, MOTION IN LIMINE TO
EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This 'invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law,'" *quoting F.A.A. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1977) (alteration in original)).

Expert testimony offering an opinion on the proper interpretation of words in a statute is inadmissible because "[i]t is the responsibility of the court, not testifying witnesses, to define legal terms." *Berry v. City of Detroit,* 25 F.3d 1342, 1353 (6th Cir. 1994). Courts consistently apply this rule in cases involving telecommunications law.  *See, e.g., CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1236 (E.D. Cal. 2005) (excluding expert opinions predicting the future actions of the FCC as speculative; specifically, the Court excluded expert testimony regarding: (1) what factors the FCC considers in deciding control of a broadcast station and how such factors apply to this case; (2) whether and how any FCC action, including but not limited to letter rulings, indicates its likely decision on any legal issue; (3) how the FCC will decide any legal issue and (4) any other application of law to the facts of the case)*; GlobalRock Networks, Inc., v. MCI Commc's*, 943 F. Supp. 2d 320, 343 (N.D.N.Y. 2013) (excluding an expert's "opinions regarding violations of FCC rules"); *Qwest Corp. v. City of Santa Fe,* 2013 WL 12239492, at *5 (D.N.M. Feb. 8, 2013) (refusing to allow an expert to testify as to "the legal standards applicable to [47 U.S.C.] § 253").

*TC Sys. Inc. v. Town of Colonie* is particularly instructive to the instant case.  213 F. Supp. 2d 171, 181-82 (N.D.N.Y. 2002).  The Court in *TC Sys. Inc.* held that the "expert report" read more like a legal brief than an expert opinion.  Much like UPM, the Plaintiffs in *TC Sys. Inc.* contended that the review of previous FCC rulings and orders are relevant to establish the framework for the proposed expert's analysis of the issues raised.  The *TC Sys. Inc.* Court unambiguously held that the expert's "review of FCC rulings and regulations impermissibly usurps the role of the trial judge in determining the relevant law" and further that "any testimony as to the intent of the Telecommunications Act or FCC regulations or how the jury should

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

ultimately decide this case, however, is inappropriate."

Throughout his declaration and deposition testimony, Mr. Gillan repeatedly offers his inadmissible opinion as to what he has deemed the goals and motives of the FCC as well as the FCC's analysis and policy rationale.[11]

> A:  The goal of the FCC's analysis is to unleash forces that move rates towards cost. Any price discrimination is one of those tools, all right? [12]

*  *  *

> Q:  Now, not to repeat or rehash our earlier discussion, still talking about the scope of your retention, the scope of your work in this case, you have already described for me that – I'm paraphrasing slightly, just because it is too long to remember, but you're addressing the economic and policy rationales for certain FCC decisions, past FCC decisions and their applicability to resale. Are you also intending to discuss whether UPM's resale of Digicel Haiti services is consistent with FCC's economic reasoning and rationale?
> A:  Yes, in the sense that if you apply that economic analysis to UPM's resale of the two termination methods, is it consistent with the type of resale arrangement that the FCC found to be publicly beneficial, yes.· And other decisions.[13]

*  *  *

> Q:  Got it. Now, can you confirm for me that the purpose and scope of this declaration that you have provide us with consists of your interpretation of the rationale and the motives behind the FCC regulations?
> A:  I balk at the word interpretation. The FCC explained an economic analysis that it used to reach certain policy decisions. I applied that economic analysis. I

---

[11] *E.g.* Gillan Depo. 148:10-23.

[12] Gillan Depo. 177:16-25.

[13] Gillan Depo. 33:9-24.

Page 8 -  UNIGESTION HOLDINGS' DAUBERT MOTION AND
IN THE ALTERNATIVE, MOTION IN LIMINE TO
EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

don't know that that would be considered interpreting the FCC order, as opposed to simply following the bread crumbs that they laid out in their order, the economic bread crumbs of the analysis they applied.[14]

\* \* \*

Q:  So without adding anything to it, you have taken the FCC – what you determined to be the FCC's policy and analysis in past cases, and you have repeated them in your analysis here, first part?

A:  What the FCC explained, yes. How the FCC explained the analysis.[15]

As in *TC Sys. Inc.*, Mr. Gillan reveals that the starting point for his process is a review of previous FCC rulings and orders to establish the framework for applying his economic analysis to the present set of facts:

> The starting point was to look at the economic role of resale in the telecommunications industry, *how it came about what its functions were, how its viewed in US telecommunication's policy, where FCC orders*, I went to the -- through the process of *going to the early decisions that first established the FCC's policies promoting resale, encouraging resale, as a means to assist the FCC in achieving [its goal of] cost space breaks.* And there – then research that throughout frequently having to request additional orders or citations from Mr. Savage, who had access to Nexus, which I did not – and some orders are quite old – and then went through to identify – refamiliarize myself is probably a better term since I lived through many of these decisions – *what the FCC rationale was*, *and then applied that to the general question of, as I understand, the overarching dispute here…*[16]

Mr. Gillan concedes that the purpose of his declaration is to essentially apply what he

---

[14] Gillan Depo. 36:11-22.

[15] Gillan Depo. 38:15-20.

[16] Gillan Depo. 25:14-26:6.

Page 9 -   UNIGESTION HOLDINGS' DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

identifies as the FCC's goals of economic efficiency to the conduct of the parties.[17]  As in *TC Sys. Inc.*, Mr. Gillan's testimony regarding the rationale, goal and intent of the Communications Act and FCC with respect to resale regulations is inappropriate and improper opinion testimony.

## II.     MR. GILLAN'S METHODOLOGY IS UNRELIABLE, RENDERING HIS OPINIONS UNRELIABLE AND NOT HELPFUL OR USEFUL TO THE TRIER OF FACT.

Mr. Gillan's opinions are fundamentally unreliable where they are premised upon demonstrably incorrect assumptions of fact; ignore other relevant facts; and, present an otherwise incomplete analysis. Indeed, Mr. Gillan's expert testimony has been previously excluded where the opinion was not based on sufficient facts and data, and where there was "too great an analytical gap between the data and Gillan's opinion." *Hamilton Cty. Emergency Communs. Dist. v. Level 3 Communs., LLC*, 845 F. App'x 376, 383 (6th Cir. 2021).  In affirming the district court decision to exclude Gillan's testimony, the *Hamilton* court considered whether there was any factual basis to support his conclusions that wireline activity reports accurately capture 911 billable lines.  The *Hamilton* court held that Mr. Gillan's opinion was based on "no facts or data, at least none in the record." *Id.* at 384.  The court went further to hold that Mr. Gillan's "entire opinion is premised on an assumption that Level 3 [the defendant] is a 'service supplier' subject to the 911 fee."  The false assumption, coupled with other "multiple fatal defects"[18] in Mr. Gillan's testimony rendered his expert opinion inadmissible.   Similar to *Hamilton,* here Mr. Gillan's testimony, as outlined in Sections II(a) and (b) below, is not based on facts or record evidence—which he at times blatantly ignores—but rather on false assumptions similarly

---

[17] Gillan Depo. 175:10-18.

[18] "In short, Gillan's testimony suffers multiple fatal defects. So it is not based on sufficient facts or data. Gillan admitted that he did not know what services Level 3 provided or how Level 3 filled out its WARs. And he admitted that he was unaware of any court or regulatory authority that used WARs to gauge 911-billable lines. His belief that Level 3's WARs approximate 911-billable lines appears to depend on the lack of any other information. But one expert's ipse dixit, unsupported by any facts in the record and contradicted by multiple industry experts and even his own deposition testimony, does not satisfy Daubert or Rule 702. The district court did not abuse its discretion in excluding Gillan's expert opinion on the WARs." *Hamilton Cty. Emergency Communs. Dist. v. Level 3 Communs., LLC,* 845 F. App'x 376, 387-88 (6th Cir. 2021)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

coupled to multiple other fatal defects which leaves his opinions in this case, suffering from the same analytical gap that rendered it too deficient to be considered reliable under Daubert and Rule 702 in *Hamilton*.

### A. Mr. Gillan's Methodology is Unreliable as His Opinions are Premised Upon Demonstrably Inaccurate Assumptions.

Mr. Gillan's opinions are predicated on incorrect assumptions that have no grounding in data or facts. As a threshold matter, Mr. Gillan simply chose to assume that certain facts necessary to his analysis were not in dispute.[19] In reality, Mr. Gillan was unable to identify *any record evidence* that supported the assumptions upon which he predicated his various opinions. Mr. Gillan made assumptions regarding the UPM business model based solely upon conversations with counsel for UPM, as opposed to any independent investigation and/or verification.[20] In preparing his opinions and arriving at his conclusions, Mr. Gillan made the following significant assumptions regarding UPM's business model; UPM's *arrangement* with Digicel Haiti; and UPM's SIM card acquisitions:

- Mr. Gillan assumed that UPM legally acquired Digicel-Haiti SIM cards and did not know the manner and methods through which UPM obtained SIM cards.[21]
- Mr. Gillan assumed that UPM had agents in Haiti.[22]
- Mr. Gillian assumed that "UPM agents purchased several thousand SIM cards on the open market in Haiti and shipped them back to UPM in Oregon."[23]
- Mr. Gillan assumed that UPM was a subscriber of Digicel Haiti's services.[24]
- Mr. Gillan assumed that in the case of RLYH resale, UPM was paying for a bulk discounted calling arrangement.[25]
- Mr. Gillan assumed that UPM paid for RLYH services for approximately 2300 SIM

---

[19] Gillan Depo. 26:18-21.

[20] Gillan Depo. 72:15-73:9.

[21] Gillan Depo. 94:14-95:2.

[22] Gillan Depo. 100:1-100:4.

[23] Gillan Depo. 96:3-97:01; 97:13-98:02; 99:23-25.

[24] Gillan Depo. 141:17-142:01.

[25] Gillan Depo. 139:8-140:06.

Page 11 -    UNIGESTION HOLDINGS' DAUBERT MOTION AND
IN THE ALTERNATIVE, MOTION IN LIMINE TO
EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

cards.[26]

- Mr. Gillan assumed that UPM and Digicel Haiti had an arrangement.[27]  However, Mr. Gillan conceded that does not know the terms of the assumed arrangement.[28]
- Mr. Gillan made assumptions regarding the manner in which calls that were sent via the internet were routed into Haiti.  He assumed that there was an internet back up facility that routed calls into Haiti via the internet.[29]

While it is a reasonable expectation that experts will make certain assumptions as a necessary part of their methodology and analysis, it is unreasonable for the expert to assume certain ultimate facts as part of his opinion.  Here, Mr. Gillan assumes the legitimacy of UPM's termination of calls in Haiti, a fact to be determined by the jury and the very claim being brought by Digicel-Haiti against UPM.  Mr. Gillan assumes that UPM "purchased" SIM cards from Digicel-Haiti and had "subscriptions" to Digicel-Haiti services. Mr. Gillan also assumes an "arrangement" between UPM and Digicel, a fact which even UPM cannot credibly maintain. Mr. Gillan builds his entire analysis and all of his conclusions on the false premise that there is a legitimate "arrangement" between UPM and Digicel.  The record evidence is to the contrary and removing the false assumption that a legitimate "arrangement" exists between UPM and Digicel Haiti causes Mr. Gillan's entire construct to crumble.

**B.    Mr. Gillan's Opinions Ignore Relevant Facts and Law.**

In addition to adopting demonstrably false assumptions, Mr. Gillan ignores relevant well-established telecommunications law.  As a purported expert on the policy considerations and goals of the FCC, it is hardly conceivable that Mr. Gillan would disregard basic principles espoused by the FCC.  But he does.  Mr. Gillan was forced to concede that the FCC does not override regulators from other countries, but apparently ignored that principle to arrive at his conclusions.[30]  Furthermore, Mr. Gillan's testifies that he does not know the degree of

---

[26] Gillan Depo. 100:05-09.

[27] Gillan Depo. 100:10-18.

[28] Gillan Depo. 142:02-05.

[29] Gillan Depo. 169:16-170:04.

[30] Gillan Depo. 149:19-23.

Page 12 -   UNIGESTION HOLDINGS' DAUBERT MOTION AND
IN THE ALTERNATIVE, MOTION IN LIMINE TO
EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

consideration that the FCC affords to whether a regulated entity is in compliance with the laws of the nation it is operating in, when analyzing reasonableness and compliance with FCC regulations.  Mr. Gillan's failure to inform himself of relevant FCC principles in *this* case before offering an opinion regarding the "reasonableness" of Digicel Haiti's alleged conduct is proof positive that his methodology is unreliable to the extent he is allowed to offer any guidance on FCC conduct or policy.

Accordingly, Mr. Gillan's incomplete and heavily tailored opinions, addressed in turn below, are unreliable and not helpful to the trier of fact.

1. **Opinion/Conclusion No. 1: UPM's service configurations – both the resale of Digicel-Haiti's local service (for calls delivered to Haiti via the Internet) and the resale of Digicel-Haiti's RLYH service (for calls UPM handed off to wireless carriers in the United States) – were economically rational responses to the problem of Digicel-Haiti's inflated termination rates.**

To arrive at his conclusion that UPM's service configurations were economically rational responses to the problem of Digicel Haiti's inflated[31] termination rates, Mr. Gillan employs a surprisingly lop-sided one-step analysis which simply enquires 'does the response move prices closer to cost.'[32]  In sum, Mr. Gillan's sole measure of whether UPM's response to Digicel Haiti's termination rates is an "economically rational" response is whether or not the service configuration is more cost based.[33]  He concedes that the FCC participated in setting an international benchmark termination rate of twenty-three cents for "lower income countries" like and including Haiti.[34]  However, Mr. Gillan's analysis of what constitutes an economically rational response to an allegedly "inflated" termination rate is devoid of any analysis or basic

---

[31] Mr. Gillan testifies that any termination rate above the at-cost rate is "inflated", including the benchmark termination rates set by the FCC.  Gillan Depo. 192:11-16; 193:5-8.  Mr. Gillan's characterization of the termination rate as "inflated" is misleading, inaccurate and not helpful to a trier of fact.

[32] Gillan Depo. 186:13-18.

[33] Gillan Depo. 186:13-18.

[34] Gillan Depo. 188:19-189:04.

Page 13 -    UNIGESTION HOLDINGS' DAUBERT MOTION AND
            IN THE ALTERNATIVE, MOTION IN LIMINE TO
            EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

acknowledgment of the FCC's own rationale which was adopted and utilized in setting the benchmark termination rates which are dependent upon a country's income level.[35]  Specifically, in arriving at his conclusion, Mr. Gillan has elected to wholesale disregard the plain language of FCC's Benchmark Order outlining its economic considerations when setting benchmark rates:

> We categorize countries primarily by their level of economic development, as defined by a World Bank and ITU classification scheme. For each category, the benchmark is based on an average of the tariff rates and other data for each country in the category. The three benchmarks we adopt are: $0.15 per minute for upper income countries; $0.19 per minute for upper middle income and lower middle income countries; and $0.23 per minute for lower income countries.[36]

> \*\*\*

> Many commenters urge the Commission to heed in particular the effect of significant reductions in settlements revenues on telecommunications network development in lower income countries trying to develop their infrastructure. We agree with these commenters that calculation and implementation of our benchmarks should take into account the impact on lower income countries of moving to more cost-based settlement rates.[37]

Mr. Gillan's conclusion ignores the rationale adopted by the FCC for allowing for higher termination rates for lower income countries and ignores that the benchmark rates set by the FCC are cost-based settlement rates.[38]  Setting aside that Mr. Gillan's interpretation of the FCC goals, motives and intentions is inadmissible expert opinion as a matter of law, his decision to cherry-pick certain FCC considerations and simply ignore others which may be less helpful to his position, underscores why his proposed testimony and declaration should be precluded as unreliable and unhelpful to the trier of fact.

---

[35] Gillan Depo. 200:20-25.

[36] Ex. C, Report and Order, International Settlement Rates, Federal Communications Commission IB Docket No. 96-261, rel. August 18, 1997 ("Benchmarks Order") at ¶ 19.

[37] Benchmarks Order at ¶ 18.

[38] Gillan Depo. 201:14-18.

Page 14 -    UNIGESTION HOLDINGS' DAUBERT MOTION AND
IN THE ALTERNATIVE, MOTION IN LIMINE TO
EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

2.      **Opinion/Conclusion No. 2: Moreover, these arrangements would have increased consumer welfare by placing competitive pressure on Digicel-Haiti's termination rates, leading to lower prices for consumers in America calling Digicel-Haiti subscribers in Haiti. UPM's service configuration, therefore, was consistent with, and would have advanced, the FCC's policies with respect to international termination rates.**

Mr. Gillan was unable to identify any evidence or data that support his conclusion that UPM's conduct ultimately resulted in lower prices for consumers.[39] Mr. Gillan's sweeping conclusion that UPM's conduct *would* increase consumer welfare by placing competitive pressure on Digicel Haiti's termination rates leading to lower prices for consumers in America is undermined by his own testimony.

As stated above, Mr. Gillan's conclusion that UPM's service configuration "was consistent with and advances the FCC's policies with respect to termination rates," blatantly ignores the FCC's articulation of considerations given to lower income countries, like Haiti, in establishing its Benchmark Order on termination rates. Mr. Gillan's opinions disingenuously suggest that the FCC's *sole* policy goal with respect to termination rates is obtaining a cost-based pricing. According to Mr. Gillan, the means by which UPM "placed competitive pressure" on Digicel Haiti's termination rates which in turn resulted in lower termination rates are irrelevant, as long as the end result was a termination rate that is closer to cost-based termination rates. With no regard to the FCC mandate regarding following the law of the country where termination occurs, Mr. Gillan (digging in his proverbial heels) testified to the contrary that his opinions are *unaffected by the legality of UPM's conduct and international regulations*:

- Mr. Gillan's opinion would not change if UPM's acquisition of Digicel Haiti's SIM cards was illegal in Haiti;[40]

- Mr. Gillan is not aware of (nor does he think it is necessary to his analysis) the existence of regulations or restrictions that govern the subscription to Digicel

---

[39] Gillan Depo. 208:10-23.

[40] Gillan Depo. 146:4-14; 145:4-12.

Page 15 -    UNIGESTION HOLDINGS' DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

Haiti's wireless service,[41] the existence of procedures and requirements implemented by Digicel Haiti with respect to accessing its wireless service in Haiti,[42] the existence of restrictions or regulations governing the acquisition of SIM cards in Haiti[43] or the existence of limitations placed on the acquisition of SIM cards in Haiti;[44] and

- Mr. Gillan is unaware of whether UPM's acquisition of Digicel Haiti's SIM cards was in compliance with Haitian regulations or laws.[45]

    **3.**        **Opinion/Conclusion No. 3: UPM's activities in reselling Digicel-Haiti's services were reasonable, and Digicel-Haiti's refusal to permit them to be resold was unreasonable and discriminatory, within the meaning of sections 201 and 202 of the Communications Act, as the FCC has generally interpreted and applied those provisions to resale situations.**

In addition to offering an opinion that is inadmissible as an impermissible legal opinion, Mr. Gillan cannot testify regarding whether conduct is "unreasonable" or "discriminatory" within the meanings of sections 201 and 202 because he cannot establish as a threshold matter that Digicel Haiti is a U.S. common carrier *subject to* sections 201 and 202 of the Act. Gillan's conclusion that "UPM's activities in reselling Digicel-Haiti's services were reasonable, and Digicel-Haiti's refusal to permit them to be resold was unreasonable and discriminatory, within the meaning of sections 201 and 202 of the Communications Act" ignores the law, and the record evidence in this case and is therefore unreliable. Sections 201 and 202 of the Communications Act apply to and govern a U.S. based "common carrier." Mr. Gillan testified in pertinent part:

> Q:   Do you know if sections 201 and 202 apply only to US based common carriers?
> A:   No, I don't know
> Q:   Is Digicel Haiti a common carrier subject to the act, 201 and 202 of the act, do you know?
> Objection:   Objection. Calls for a legal conclusion.
> A:   I didn't investigate that.

---

[41] Gillan Depo. 143:23-144:1; 145:4-12.

[42] Gillan Depo. 144:2-7; 145:4-12.

[43] Gillan Depo. 144:8-11; 145:4-12.

[44] Gillan Depo. 144:12-14; 145:4-12.

[45] Gillan Depo. 144:15-20; 145:4-12.

Page 16 -  UNIGESTION HOLDINGS' DAUBERT MOTION AND
                 IN THE ALTERNATIVE, MOTION IN LIMINE TO
                 EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

Q: So that's a, no, you don't know?
A: That's correct because I didn't look.
Q: Okay. Did you make any assumptions regarding 201 or 202 of the act?
A: I think it's fair to say that I did make an assumption that 201, 202 apply, and therefore the FCC policies apply. But I didn't go into all the legal reasons as to why it would be true. I know the issue as to what constitutes a common carrier is far more complicated that I'm prepared to talk to – to address here today.[46]

Furthermore, Mr. Gillan's opinion that Digicel Haiti's conduct is discriminatory rings hollow where his opinion is unsupported by the relevant facts and law. In order to establish discrimination, it is beyond dispute that there must be at least two entities engaging in the same or similar conduct where the party accused of discrimination, in this case Digicel Haiti, has elected to treat the two entities disparately. Here, however, Mr. Gillan cannot identify a single other Digicel Haiti "subscriber" reselling Digicel Haiti termination in the manner and method UPM did.[47]

Furthermore, although his declaration states that market power must be present in conjunction with resale restrictions in order to engage in price discrimination, Mr. Gillan has no independent knowledge of whether Digicel Haiti has market power. Rather than investigating whether Digicel Haiti sets the termination rates, Mr. Gillan simply assumed that Digicel Haiti set the price it charges and therefore has market power.[48] Mr. Gillan remained willfully blind to whether there is any regulatory scheme or authority in Haiti which set Digicel Haiti's international termination rates.[49]

Mr. Gillan's alleged price discrimination is bottomed in the belief that having separate termination rates, one for international calls and one for local calls, is in and of itself

---

[46] Gillan Depo. 102:23-103:23.

[47] Gillan Depo. 134:12-18.

[48] Gillan Depo. 160:4-10.

[49] Gillan Depo. 160:11-17.

Page 17 - UNIGESTION HOLDINGS' DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

discriminatory.[50]   Mr. Gillan's opinion is fatally flawed in that it presumed any and every carrier and/or nation that sets more than one termination rate (i.e. independent of locality, regulation, etc.) is engaging in price discrimination.  Furthermore, where price discrimination is a legal element necessary to establish a violation of the Communications Act and/or the FCC regulations, it is entirely improper for Mr. Gillan to offer his legal conclusion as an expert opinion.  See *Weston v. Wash. Metro. Area Transit Auth.*, 316 U.S. App. D.C. 321 n.4, 78 F.3d 682, 684 (1996) (holding that expert cannot testify as to whether "discrimination" occurred for Title VII purposes because expert witnesses may not deliver legal conclusions on law, for legal principles are outside the witness' area of expertise under Federal Rule of Evidence 702).

## CONCLUSION

For the above stated reasons, Mr. Gillan's opinions and proposed testimony are inadmissible as a matter of law and exceeds the scope of permissible expert testimony where it usurps the roles of judge and jury.   Furthermore, Mr. Gillan's proposed expert testimony is unreliable under the *Daubert* standard, is not helpful to the trier of fact and should be excluded in its entirety.

//

//

//

//

//

//

//

//

//

//

---

[50] Gillan Depo. 176:25-177:6.

Page 18 -   UNIGESTION HOLDINGS' DAUBERT MOTION AND
IN THE ALTERNATIVE, MOTION IN LIMINE TO
EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Respectfully submitted,

By:    s/ Robert C.L. Vaughan
Anne Talcott, OSB #965325
Email: atalcott@schwabe.com
Kathryn E. Kelly, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Telephone: 503.796-2958

Robert C. L. Vaughan (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Cherine Smith Valbrun (*Pro Hac Vice*)
Email:  cvalbrun@kvllaw.com
Leah B. Storie (*Pro Hac Vice*)
Email:  lstorie@kvllaw.com
KIM VAUGHAN LERNER LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL  33394
Telephone:    (954) 527-1115

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti*

Page 19 -   UNIGESTION HOLDINGS' DAUBERT MOTION AND
IN THE ALTERNATIVE, MOTION IN LIMINE TO
EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900