**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
**Kathryn E. Kelly**, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
**Cherine Smith Valbrun** *(Pro Hac Vice)*
E-mail: cvalbrun@kvllaw.com
E-mail: emailservice@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL 33316
Telephone: 954.527.1115
Facsimile: 954.527.1116

*Attorney for Plaintiff, Unigestion Holdings, S.A.,
a foreign corporation, d/b/a Digicel Haiti*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A., d/b/a DIGICEL HAITI**, | No. 3:15-cv-00185-SI |
| Plaintiff and Counterclaim Defendant, | |
| v. | **UNIGESTION HOLDINGS, S.A.'S RESPONSE IN OPPOSITION TO UPM TECHNOLOGY, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| **UPM TECHNOLOGY, INC.,** *et al.*, | |
| Defendants and Counterclaim Plaintiffs. | **ORAL ARGUMENT REQUESTED** |

UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
TO UPM'S MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

## INTRODUCTION

UPM admits the activity Digicel Haiti alleges and argues was fraudulent.  In its Motion for Summary Judgment (UPM MSJ). UPM squarely confesses that it "used in-country bypass to get calls to Digicel Haiti's network during the 2011-2012 period" and to some degree in 2014.  ECF 254 at 7.  Additionally, reselling and servicing the connection of Roam Like Your Home Calls ("RLHY") was the primary way UPM "got calls to Digicel-Haiti's network, beginning in mid-2014 and ending in November 2014." *Id*.  Taken at face value, these statements alone confirm Digicel Haiti's arguments that the liability aspect of its fraud claims are ripe for summary judgment.

UPM's MSJ continues, with little legal support and multiple irrelevant and unhelpful analogies, to attempt to cast the parties' dispute as a simple contract case gone awry.  This convenient and oversimplified characterization ignores reality and the record evidence.  Defendants' entire interaction with Digicel Haiti was parasitic and carried out in covert fashion for good reason; it was a fraud that does not conform to standard carrier relationships, and it violates FCC and international telecommunications policy.  This is not a contract issue by any stretch of the imagination.  Rather, UPM's conduct was theft, effectuated through fraud.  Ironically, UPM uses the term "gaslighting" to describe being hailed to court for its activities when its own MSJ shows the reverse is true – UPM was and continues to gaslight Digicel Haiti by stealing from it and having the audacity to now claim that Digicel Haiti's actions taken to protect its lawful business somehow "damaged" UPM.  Regardless, Defendants admit their actions, and their actions were fraudulent.  Summary judgment is appropriate as to liability for fraud (see ECF 269).

In its MSJ, UPM goes a step further, arguing that certain individual issues, including summary judgment as to the number of minutes bypassed - and consequently, fraud damages - are ripe for adjudication.  It also argues that parts and portions of its counterclaims should be granted summary judgment.  These requests all clearly urge a decidedly improper application of

Page 1 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
             TO UPM'S MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Rule 56. Individual issues are not proper for summary judgment.[1] The large majority of UPM's arguments fail for this reason alone, however, they also implicate multiple issues of material fact that preclude summary judgment in their favor. Accordingly, Defendants' Motion for Summary Judgment must be denied.

## I. UPM DEFRAUDED DIGICEL HAITI

Surreptitiously purchasing SIM cards from unauthorized third-parties in bulk quantities in violation of Haitian law; creating company-wide standard operating procedures that not only condone but mandate misrepresenting facts to shipping and customs officials; concealing the true nature and function of the UPM Gateways that were shipped to Haiti and other destinations to avoid customs and Haitian government detection; shipping equipment under the false name of a fake company; and facilitating, transmitting, and terminating international calls in a manner that causes the calls to present as in-country calls and be charged as such are all individual fraudulent acts. In the aggregate, however, these acts present an indisputable picture of a well-planned and well-executed fraudulent scheme of international proportions. UPM directs the Court to focus on the "strong economic incentive" it was taking advantage of, but even an economically-focused analysis yields the same result – Defendants' business operations are an orchestrated fraud that relies on concealed activity and misrepresentations in order to profit. No different than most fraud. Defendants' fraud was at the expense of Digicel Haiti and other target carriers across the globe.

### A. Defendants Made Fraudulent Representations to Digicel Haiti

UPM encourages the Court to find that its actions were not "representations," thereby absolving Defendants of their fraud. UPM attempts to make this point by breaking down its scheme into individual actions and presenting inapplicable and hyper-technical arguments to explain why each should not be considered a "representation." UPM attempts to separately address its activation of SIM cards, its making of calls, and its RLYH subscriptions to over

---

[1] *See Infra.* Section II at 6-7.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

complicate the notion of what constitutes a "representation." This artificially fragmented approach misses the mark. Even a cursory review of the two cases UPM cites to support its theories reflects a desperate attempt to support an unsupportable position. ECF 254 at 18-19.[2] Despite the technological nature of the parties' interactions, at bottom, this is a basic fraud claim that is grounded in common law notions of what constitutes representation and concealment.

Oregon statutes define a representation as "any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." Or. Rev. Stat. Ann. § 647.608(2); also applicable to Or. Rev. Stat. Ann. § 646.607. This plain-language definition easily encompasses multiple aspects of Defendants' activities. UPM's reliance upon irrelevant, highly distinguishable cases and unnecessarily complicated arguments regarding mundane "tech issues" are little more than an artful decoy—useless in any effort to understand the scope and nature of Defendants' fraudulent representations and omissions. Defendants admit—time and again—to innumerable actions that constitute representations made to Digicel Haiti, the most significant of which is presenting calls to Digicel Haiti's network for termination in Haiti as local calls when they in fact originated internationally. Every call Defendants sought to connect to the Digicel Haiti network constituted a representation, and every call Defendants sought to connect to the Digicel Haiti network concealed the true geographic origin of an international call that originated outside of Haiti even though its true origin was as an unauthorized, wholesale call, including all the predicate fraud required to complete a call in UPM's Bypass operation.

Defendants' actions also included several instances of active concealment, which in Oregon, also constitutes fraud. Active or actual concealment means:

---

[2] UPM argues that somehow the differences between expressive and functional codes and their relation to the First Amendment should dictate whether it made representations to Digicel Haiti. This is entirely unhelpful in relation to the facts before the Court. Next, it relies on a criminal warrant case, *Carpenter v. United States*, to support the notion that if an individual was not held to "voluntarily" provide information to a network then UPM's presentation of international calls as local calls to Digicel Haiti's network should not be considered a representation. Again, the mental gymnastics required to connect the holding of *Carpenter* and this case are of Olympic proportions. These cases are completely inapposite and entirely unhelpful. ECF 254 at 18, 19.

Page 3 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
          TO UPM'S MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

> Any words or acts which create a false impression covering up the truth, or which remove an opportunity that might otherwise have led to the discovery of a material fact as by floating a ship to conceal the defects in her bottom, sending one who is in search of information in a direction where it cannot be obtained, or even a false denial of knowledge by one in possession of the facts are classed as misrepresentations, no less than a verbal assurance that the fact is not true."

*MAT, Inc. v. Am. Tower Asset Sub, Ltd. Liab*. Co., 312 Or. App. 7, 17, 493 P.3d 14, 21 (2021) *citing Caldwell v. Pop's Homes, Inc.,* 54 Or. App. 104, 113, 634 P2d 471 (1981 (internal omissions and quotation marks omitted; emphases added)).  Here, calls purporting to originate in Haiti by Defendants are that floating ship.  On the surface they appeared to be "local calls" and appeared to operate in a standard fashion, but they were anything but.  Each "local call" was in fact originated using a SIM in Oregon and was concealing another international call originated by a third-party caller which is never disclosed to Digicel Haiti, preventing Digicel Haiti from accounting for and charging that international call at the appropriate termination rate.

Half-truths are also active concealment: "'Fraud may be predicated upon an equivocal, evasive or misleading answer calculated to convey a false impression even though it may be literally true as far as it goes.'"  *Id. citing Package Containers v. Director's*, 270 Or. 845, 852, 530 P2d 40 (1974) (*quoting Sheets v. B & B Personnel Sys.*, 257 Or. 135, 145, 475 P2d 968 (1970)); *see also Krause v. Eugene Dodge, Inc.,* 265 Or. 486, 505, 509 P2d 1199 (1973) (reasoning that half-truths can be the most dangerous kind of lie because the half-truth implies to the recipient that the whole truth has been disclosed.)  UPM relies on *Martell v. GM LLC* to defend its position, arguing that Digicel Haiti would have had to literally "hear" Defendants make a misrepresentation out loud for it to be a half-truth.  This argument is as preposterous as it sounds.  The case in fact makes no such assertion, but rather provides support for Digicel Haiti's reasonable reliance on Defendants' misrepresentations and purported "half-truths."  "[T]o establish reliance in a case premised on 'half-truths,' a plaintiff must show that they heard the half-truth, but can be found to have relied on it if they would have behaved differently 'had the omitted information been disclosed.'"  *Martell v. GM LLC*, 492 F. Supp. 3d 1131, 1143 (D. Or. 2020).  The court continues by expanding the means of receiving a half-truth to whether it was

Page 4 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
            TO UPM'S MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

seen or heard, explaining that numerous advertisements, brochures, radio ads, and other public statements by Defendant could have been considered if the plaintiff had seen them or heard them. *Id.* at 1143-44. Likewise, Digicel Haiti "saw" Defendants' thousands of misrepresentations when they were presented to the Digicel-Haiti network. The fallacy in Defendants' position is easily demonstrated by applying *Martell* to the calls transmitted by UPM. If the international origin or illegal wholesale nature of the calls had been disclosed to Digicel Haiti, it would have behaved differently by disrupting the Bypass call or reporting the fraud to the authorities or otherwise exercising its rights to prevent unauthorized wholesale access to its network. This is evidenced by the fact that *this is exactly what Digicel-Haiti did whenever it detected a SIM being used in Bypass*.

Under the above analyses, Defendants' actions at the very least constituted representations being made through the calls that were delivered to Digicel Haiti's network, and an award of summary judgment finding Defendants liable for fraud is warranted. [3]

## B.    Digicel Haiti's Connection of Calls is Reasonable Reliance

The principles illustrated by *Martell* also work against UPM's argument that Digicel Haiti could not have reasonably relied on Defendants' misrepresentations. ECF 254 at 29-30. UPM's argument goes something like this: if Digicel Haiti knew about Bypass then it cannot have reasonably relied on *any* call that was trying to be completed on its network. *Id.* Here again UPM's argument defies reason and in an ironic twist, it is guilty of the very "gaslighting" it suggests Digicel is guilty of. Essentially, UPM argues that any business (the "victim") which continues its operation in the face of a known threat, fraud, piracy, (from the "bully") or the like, cannot later, once the fraud is discovered, prove reasonable reliance (the victim must be crazy to think otherwise). Quintessential gaslighting. If this were true, no business, person or other claimant could ever hold a perpetrator responsible for executing any known grift, con, or fraud.

---

[3] To clarify, Digicel Haiti's position is that UPM's MSJ should be denied, but Digicel Haiti's own Partial Motion for Summary Judgment as to Defendants' Liability for Fraud (ECF 269) should be granted.

Page 5 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
          TO UPM'S MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Why? Because the historical fact of the existence of such a con means there can be no reliance on the fraudulent conduct in the future.

The logical extension of UPM's argument here would result in the absurd result that should any company's servers or equipment ever be hacked through fraud, that company would have no recourse at law because it knows that hackers exist and could possibly violate its network through fraud.  UPM's analysis is entirely unreasonable, and not surprising, unsupported in law.  Even so, it bears repeating in the instant case, that Digicel Haiti was always using measures to prevent Bypass even without knowing the identity of the perpetrators.  Emails produced by Defendants show that they *knew* that Digicel Haiti was blocking offending SIMs even before they started their Haiti operations in 2011.  Unfortunately, Digicel Haiti did not have the benefit of knowing the identity of the individuals or companies defrauding them through Bypass.

Every time Defendants presented a fraudulent Bypass call to Digicel Haiti's network, Digicel Haiti reasonably relied on those representations by connecting the calls, and consistent with this reliance, the calls were billed at local, in-country rates.  Digicel Haiti's reasonable reliance is further evidenced by the fact that once Bypass cards were identified, they were disconnected, as also confirmed by UPM's counterclaims.  Digicel Haiti reasonably relied on Defendants' admitted actions, and there are no material issues of fact remaining in dispute regarding Defendants' fraud.

## II.     THE REMAINDER OF UPM'S MSJ IS IMPROPER BECAUSE IT SEEKS PIECEMEAL ADJUDICATION OF INDIVIDUAL ISSUES

"[S]ummary judgment may not properly issue as to mere elements of liability. . . piecemeal adjudication of less than all of the elements of liability for a single cause of action is not permitted under Rule 56." *Rapid Funding Grp., Inc. v. Keybank Nat'l Ass'n,* No. CV 07-1348-PK, 2009 U.S. Dist. LEXIS 79058, at *40 (D. Or. June 23, 2009).  This unequivocal holding applies to Sections IV and V of UPM's MSJ.  In these sections, UPM requests that a

Page 6 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
TO UPM'S MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

smattering of individual issues be resolved through summary judgment which is procedurally improper and impermissible.

In so holding, the *Rapid Funding Grp.* court reviewed holdings of other courts that support this interpretation of Rule 56. The Northern District of Illinois "determined that to move for partial summary judgment as to only a subset of the elements of liability on a claim was a 'fatal defect' that could not be cured by '[f]raming the motion as one for partial summary judgment.'" *Id. citing Capitol Records, Inc. v. Progress Record Distrib., Inc.*, 106 F.R.D. 25, 28 (N.D. Ill. 1985). *SEC v. Thrasher*, 152 F. Supp. 2d 291 (S.D.N.Y. 2001), held that "[t]he plain language of Federal Rule of Civil Procedure 56 indicates that it is not appropriate to use summary judgment as a vehicle for fragmented adjudication of non-determinative issues," denying a motion for partial summary judgment as to less than all the elements of liability. *Thrasher*, 152 F. Supp. 2d at 295. The U.S. District Court for the District of Oregon continued by referencing *City of Wichita v. United States Gypsum Co.*, 828 F. Supp. 851 (D. Kan. 1993), *rev'd on other grounds*, 72 F.3d 1491 (10th Cir. 1996), where that court held that "Rule 56(c) authorizes only the entry of judgments on claims, not single issues or elements that are not dispositive of judgment on those claims," *Wichita*, 828 F. Supp. at 869. Finally, in *Arado v. General Fire Extinguisher Corp.*, 626 F. Supp. 506 (N.D. Ill. 1985), the court held that "Rules 56(a) and 56(b) simply do not permit the piecemealing of a single claim. . . ." *Arado*, 626 F. Supp. at 509.

None of the piecemeal requests UPM makes regarding parts of the damages analysis and portions of its counterclaims reach the level of requesting a determination of summary judgment as to an entire claim, and summary judgment must be denied.[4]

---

[4] In contrast, Digicel Haiti's request for summary judgment as to Defendants' liability for fraud is appropriate and contemplated by Rule 56. "Federal Civil Procedure Rule 56(d)(2) provides, in its entirety, that '[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.'" *Rapid Funding Grp., Inc. v. Keybank Nat'l Ass'n*, No. CV 07-1348-PK, 2009 U.S. Dist. LEXIS 79058, at *39-40 (D. Or. June 23, 2009).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

### III.    UPM'S DAMAGES' ARGUMENTS PRESENT MULTIPLE ISSUES OF FACT

If the Court were to continue with a substantive analysis of UPM's impermissible arguments regarding piecemeal adjudication of individual issues, it should still deny UPM's requested relief regarding damages calculations. Here, UPM requests that the Court grant it summary judgment on an inchoate group of issues dealing with proposed damages analyses including whether there are any damages and what information should inform a damages calculation. However, UPM's own motion reveals multiple issues of material fact. This confirms that UPM's claims are not ripe for summary judgment.

First and foremost, the parties have presented dueling expert reports on the issue of damages and how damages should be calculated in this case. This fact alone raises issues of fact that preclude summary judgment. The issues on which the reports conflict require consideration by a jury. Second, the very nature of Defendants' fraud makes it impossible for Digicel Haiti to be able to present, before trial, the entire universe of its damages without reliance on some circumstantial evidence. Digicel Haiti cannot be expected to recreate Defendants' operation when the very nature of the operation was designed to hide the existence and scope of that operation. Additionally, based on the history between the parties and the nature of UPM's "business model" it is simply unreasonable for Digicel Haiti to believe that UPM is being 100 percent forthright and forthcoming regarding *all* of its activity in Haiti. These existing issues and conflicts preclude summary judgment on damages where there are issues of fact remaining to be resolved by a jury.

Second, UPM encourages a formula for damages that from the outset, presents multiple issues of fact. UPM argues the basic damages calculation for this case should be the floor international rate, minus taxes, minus the local rate, equals UPM's per-minute liability for damages. This, again, oversimplifies multiple facets of the calculation. First, $0.23 per minute is the *floor* rate for international calls to Haiti. It does not necessarily represent what UPM's rate would have been had it connected the calls in a legitimate manner. Second, Digicel Haiti's tax obligations to the Haitian government have no bearing on damages owed to Digicel by UPM in

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

this matter. That consideration is outside the jurisdiction of this court and the relevant issues presented by this case. When Digicel Haiti is awarded any damages the issue of taxes will then be between Digicel Haiti and the government of Haiti. Furthermore, Digicel Haiti's tax obligations are part and parcel of a complex question of foreign taxation that is well outside of the purview of this case and this court. These are all issues of material fact that must be fleshed out.

Next, the delta between the damages amount encouraged by the MSJ and the damages amount claimed in UPM's counterclaims is vast to say the least. There are issues of fact as to how and why these numbers so greatly differ. In its MSJ, UPM argues that UPM only generated $211,056 of revenue from operating in Hatiti from 2011 to 2014, yet UPM's counterclaims allege damages in excess of $50,000,000. ECF 254 at 34; ECF 244 at ₱₱ 332, 336, 340, 344, 350. This gap itself presents an issue of material fact that precludes summary judgment.

UPM also suggests that it should receive an offset for the amount it "paid" for local calls. There are several assumptions in that theory of damage calculations—all of which are issues of fact. First, whether UPM actually purchased any SIM cards (or merely used cards "purchased" by others). UPM also expects the Court to accept on its *ipse dixit* that it completed only one single "call" with each connection—without regard to the fact that there was a separate third-party call which was indisputably connected with each Bypass connection. Even if UPM gets "credit" for payments made on the account of any SIM card used to terminate Bypass calls to account for the cost of a local call, there is no evidence of any amounts paid towards the tariff for the international call.

Lastly, there are outstanding claims for punitive damages that are not addressed by the MSJ which could drastically alter the landscape of damages in this case. These issues of fact, preclude summary judgment on damages, and these matters should be submitted to the jury.

IV.    **DIGICEL HAITI'S MOTION FOR SUMMARY JUDGMENT ADDRESSES UPM'S ARGUMENTS REGARDING ITS COUNTERCLAIMS**

Finally, UPM asks the Court to make random, individual issue determinations related to

Page 9 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
TO UPM'S MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

its counterclaims. These arguments are fully addressed in Digicel Haiti's Motion for Summary Judgment on UPM's Counterclaims, ECF 264 at 8-13, but for completeness' sake Digicel Haiti's arguments on these issues are summarized below.

UPM asks the Court to find that Digicel Haiti's roaming arrangements with U.S. carriers make it a common carrier subject to the Communications Act ("The Act"). As fully laid out in Digicel Haiti's Motion for Summary Judgment, there are multiple reasons that Digicel Haiti is not a common carrier under the Act. *See* ECF 264 at 8. Specifically, addressing UPM's MSJ arguments here, the fact that Digicel Haiti has roaming agreements with U.S. carriers actually evidences that Digicel Haiti is *not* a common carrier under The Act, the inverse of what UPM suggests. Digicel Haiti's roaming agreements are necessary *precisely* because it does not engage in activity within the U.S. In fact, the entire global regime of telecommunications regulation depends on that axiom. Carriers have roaming agreements with other carriers that facilitate the carrying of calls from foreign networks to their network. This enables telecommunications companies to service their subscribers globally without being considered a carrier in every nation a subscriber could potentially travel and make calls. The result encouraged by UPM would create the burden that every carrier become licensed in every country in which its subscribers may roam. This is unworkable, and the totality of the international telecommunications industry was created and developed to avoid such a ridiculous result, mainly through the use of roaming agreements. This is but one reason Digicel Haiti is *not* a carrier subject to the strictures of The Act, and UPM's request must fail.

UPM also encourages the Court to find that Digicel Haiti's blocking of UPM's RLYH SIM cards prevented UPM from reselling RLYH services. This is not an element of any of UPM's counterclaims and is an improper request for summary judgment. *See Supra.* Section II. This is a singular issue, not an element of a claim. It is impossible and improper for the Court to enter an adjudication as to this question.

Substantively, there are multiple reasons that UPM was prevented from reselling RLYH service. To ask the Court to make this determination ignores the myriad other reasons UPM may

Page 10 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
             TO UPM'S MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

not have been able to resell including, but not limited to, whether UPM actually purchased any RLYH SIM cards, whether UPM was a legitimate "subscriber" to the RLYH program, strained carrier relationships or service-related issues between UPM and third-parties or existing RLYH conditions that operate to expressly prevent wholesale of RLYH minutes.  *See* Termes et Conditions Generalies - Prepaye ("General Terms and Conditions Prepay Service."  A true and correct copy and certified translation of the Termes et Conditions Generalies are attached as Composite Ex. A to the Declaration of Cherine Smith Valbrun in Support of Unigestion's Response in Opposition to UPM's Motion for Summary Judgment, filed concurrently herewith.). These conditions provide that a SIM card may not be used for commercial purposes, nor for the purpose of modifying the routing of the telecommunications service.  Ex. A, Sec. 10.  It further provides that the terms and conditions are governed by Haitian law.  Ex. A, Sec. 15.  UPM's alleged "inability" to resell RLYH is not an issue that can be addressed remotely, or which should be adjudicated in a vacuum at any stage of the proceedings, much less by summary judgment.

## CONCLUSION

Based on the foregoing, Digicel Haiti respectfully requests the Court enter summary judgment in its favor regarding Defendants' liability for Digicel Haiti's fraud claims (see ECF 269).  The remainder of UPM's MSJ should be summarily denied where it is procedurally improper in violation of Rule 56 and its application to individual issues.  Even still, UPM's motion fails due to the myriad remaining issues of material facts remaining to be resolved by a jury and summary judgment must be denied.

Page 11 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
         TO UPM'S MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Respectfully submitted,

By:    *s/ Robert C.L. Vaughan*

Anne Talcott, OSB #965325
Email: atalcott@schwabe.com
Kathryn E. Kelly, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT,
P.C.
Telephone: 503.796-2958

Robert C. L. Vaughan (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Cherine Smith Valbrun (*Pro Hac Vice*)
Email:  cvalbrun@kvllaw.com
Leah B. Storie (*Pro Hac Vice*)
Email:  lstorie@kvllaw.com
KIM VAUGHAN LERNER LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL  33394
Telephone:    (954) 527-1115

*Attorneys for Plaintiff, Unigestion Holdings,*
*S.A., a Foreign Corporation, d/b/a Digicel*
*Haiti*

Page 12 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
TO UPM'S MOTION FOR SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900