**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

    Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>    Plaintiff & Counterclaim-Defendant,<br><br>    v.<br><br>**UPM TECHNOLOGY, INC**., *et al.,*<br><br>    Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI<br><br>**DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION AND, IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN**<br><br>**Oral Argument Requested** |

Page 1 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S
DAUBERT MOTION TO EXCLUDE TESTIMONY OF
DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. III

I.   INTRODUCTION .............................................................................................. 1

II.  DIGICEL-HAITI'S DAUBERT MOTION DURING SUMMARY JUDGMENT PROCEEDINGS IS PREMATURE.............................................. 1

III. MR. GILLAN'S EXPERT OPINIONS AS TO THE ECONOMIC ANALYSIS UNDERLYING THE FCC'S RULE AGAINST RESALE RESTRICTIONS AND HOW THAT ECONOMIC ANALYSIS APPLIES TO DIGICEL-HAITI'S CONDUCT ARE ADMISSIBLE UNDER FED. R. EVID. 702. ....................... 4

   A.   Mr. Gillan Is Qualified ............................................................................ 5

   B.   Mr. Gillan's Testimony Is Reliable And Relevant .................................... 6

   C.   Digicel-Haiti's Specific Objections To Mr. Gillan's Testimony Are Without Merit ............................................................................................. 8

      1.   Mr. Gillan Is Not Offering Legal Opinions ................................. 8

      2.   There Is Nothing Unreliable About Mr. Gillan's Methodology ............... 13

IV.  CONCLUSION .................................................................................................. 20

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

# TABLE OF AUTHORITIES

**Cases**

*Boydstun v. U.S. Bank Nat'l Ass'n ND*, 187 F. Supp. 3d 1213 (D. Or. 2016) ................................ 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995) ..................... 3, 4, 5

*Ford v. Allied Mut. Ins. Co.*, 72 F.3d 836 (10th Cir. 1996) ............................................................ 9

*Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) ....................... 8, 9

*Inhale, Inc. v. Inhale, LLC*, 6:19-CV-01780-AA, 2020 U.S. Dist. LEXIS 192145, 2020
    WL 6121942  (D. Or. Oct. 16, 2020) ..................................................................................... 3

*King v. GEICO Indem. Co.*, 712 F. App'x 649  (9th Cir. 2017) ...................................................... 9

*Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037 (D. Ariz. 2005) .................. 13

*Shackelford v. W. Coast Freightline, LLC*, No. C20-5492 BHS, 2021 U.S. Dist. LEXIS
    165167 (W.D. Wash. Aug. 31, 2021) ................................................................................. 4

*Siring v. Or. State Bd. of Higher Educ.,* 927 F. Supp. 2d 1069 (D. Or. 2013) .............................. 8

*United States v. Diaz*, 876 F.3d 1194 (9th Cir. 2017) .................................................................... 13

*United States v. Winters*, 729 F.2d 602 (9th Cir. 1984) .................................................................. 5

**Statutes**

15 U.S.C. § 1 ................................................................................................................................... 10

47 U.S.C. §§ 201 .................................................................................................................. 10, 13, 19

47 U.S.C. §§ 202 .................................................................................................................. 10, 13, 19

**Other Authorities**

*McCormick's Handbook of the Law of Evidence* (E. Clearly 2d ed. 1972) ................................... 5

**Rules**

Fed. R. Evid. 104 ............................................................................................................................. 4

Fed. R. Evid. 702 ...................................................................................................................... 3, 4, 5

Fed. R. Evid. 704 ...................................................................................................................... 8, 9, 12

Fed. R. Evid. 706 ............................................................................................................................. 4

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## I.   INTRODUCTION

Digicel-Haiti's Daubert Motion and, In the Alternative, Motion in Limine to Exclude Testimony of Defendant's Expert, Joseph Gillan (ECF #272) ("Daubert Motion") is wildly premature. It seeks to exclude Joseph Gillan ("Mr. Gillan") from providing expert witness testimony at trial. At this stage of the litigation, however – with dispositive motions just filed and still pending – it is far from clear what the issues at trial will ultimately be. The Court should dismiss this motion without prejudice to Digicel-Haiti refiling the motion at a time closer to trial, in accordance with the pre-trial order in this case. If, however, the Court is inclined to consider the motion on the merits, then the Court should hold a *Daubert* hearing to consider the admissibility of Mr. Gillan's testimony. Moreover, and in any event, the concerns about Mr. Gillan's testimony raised in the motion are without merit, and the Court should deny the motion on that ground as well.

## II.   DIGICEL-HAITI'S DAUBERT MOTION DURING SUMMARY JUDGMENT PROCEEDINGS IS PREMATURE

At the outset, and contrary to Digicel-Haiti's LR 7-1 certification, Digicel-Haiti made no effort to resolve the issues raised in its Daubert Motion prior to filing.[1] The parties did confer – albeit briefly – but only as to their dispositive motions.[2] The Daubert Motion came out of the blue.

---

[1] Daubert Motion at 2.

[2] Digicel-Haiti's Motion for Summary Judgment (ECF #264) ("Motion (Communications Act)") and Motion For Partial Summary Judgment As To Defendants' Liability For Fraud (ECF #269) ("Motion (Fraud)"); Defendant UPM Technology, Inc.'s Motion for Summary Judgment (ECF #255) ("UPM Motion") and Defendants Benjamin Sanchez a/k/a Benjamin Sanchez Murillo, Baltazar Ruiz, Tyler Allen and Duy Tran aka Bruce Tran's Motion for Summary Judgment (ECF #259). The conferring on these motions was brief because it was clear to all parties, after extensive informal discussions during the month prior to filing them (while depositions were being taken) that the parties would not agree.

Page 1 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

UPM suspects that the reason Digicel-Haiti filed the Daubert Motion was as protection against UPM filing a dispositive motion that would have relied in whole or in part on Mr. Gillan's expert testimony. However, a simple question to undersigned counsel – "Are your dispositive motions going to rely on Mr. Gillan?" – would have received a forthright response: "No." As described below, Mr. Gillan's expert testimony will explain the economic logic underlying the decisions of the Federal Communications Commission ("FCC") forbidding carriers from restricting the resale of their services, and applies that same economic analysis to the restrictions on resale that Digicel-Haiti accomplished by blocking UPM's SIM cards – thus supporting, ultimately, a ruling that Digicel-Haiti's actions violated the Communications Act.[3] UPM, however, has not sought a court ruling on that point,[4] or otherwise relied on Mr. Gillan, either in its own motion for summary judgment or in its opposition to Digicel-Haiti's summary judgment motions. The issues addressed by Mr. Gillan are for trial.

This situation presents a perfect example of why the obligation to confer (and to certify conferral) under LR 7-1 is not an empty formality. Digicel-Haiti could have spared itself the burden of writing its Daubert Motion, UPM the burden of responding to it, and the Court the burden of dealing with it, had Digicel-Haiti asked the simple question above. In these circumstances, the Court can and should deny the Daubert Motion simply for failure to comply with of LR 7-1.[5]

---

[3] *See* Expert Disclosure of Joseph Gillan and Declaration pf Joseph Gillan on Behalf of UPM Technology, Inc. (ECF #273-1) ("Gillan Decl."), *passim,* but especially ¶¶ 9-15, 45-50, & 57-60, attached as Exhibit A to the Declaration of Anne M. Talcott in Support of Plaintiff Unigestion Holding, S.A.'s Daubert Motion and in the Alternative, Motion in Limine to Exclude Testimony of Defendant's Expert, Joseph Gillan (ECF #273) ("Talcott Daubert Dec."). *See also* Excerpts of the Deposition Transcript of Joseph Gillan ("Gillan Depo."), attached as Exhibit 5 to the Declaration of Christopher Savage in Support of Defendants' Oppositions to Digicel-Haiti's Motions ("Savage Opp. Dec.").

[4] UPM Motion at 34-35.

[5] LR 7-1(a)(1)(3)("[t]he Court may deny any motion that fails to meet this certification

Page 2 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S
DAUBERT MOTION TO EXCLUDE TESTIMONY OF
DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

Conferral aside, Digicel-Haiti's Daubert Motion is grossly premature – UPM has merely provided its expert disclosure pursuant to Fed. Civ. R. 26.[6]  The purpose of these expert disclosures is to facilitate discovery from the expert, which has occurred. Once the Court rules on the parties' various summary judgment motions, and the issues for trial (if any) have been clarified, both parties will have a full opportunity to file any appropriate motions *in limine*.[7] Furthermore, UPM has yet to provide its Expert Witness List, which will include a narrative statement setting forth the qualifications of its expert witnesses to be called at trial and "summariz[ing] in fair detail the substance of any opinions to be expressed by the expert witness, along with the facts, data, and assumptions upon which each opinion is based."[8] These disclosures are not due until 28 days before trial.[9]

This situation is thus entirely different from that presented in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* itself,[10] where the expert testimony at issue was proffered to support plaintiff's summary judgment motion. Here, Mr. Gillan's evidence has not been offered in connection with summary judgment. *Daubert* set out the appropriate procedure:

> Proffering scientific testimony and making an initial showing that it was derived by the scientific method enables a party to establish a prima facie case as to admissibility under Rule 702. The opposing party would **then** be entitled to challenge that showing. This it could do by presenting evidence (including expert

---

requirement."); *see e.g., Inhale, Inc. v. Inhale, LLC*, 6:19-CV-01780-AA, 2020 U.S. Dist. LEXIS 192145, 2020 WL 6121942, at *4 (D. Or. Oct. 16, 2020) (denying motion for failure to comply with LR 7-1(a)).

[6] *See* Gillan Decl.

[7] Trial in this matter is set for April 4, 2022, with motions *in limine* due four weeks earlier. Minutes of Telephonic Scheduling Conference: Order (ECF #237); Minutes of Telephonic Scheduling Conference: Order (ECF #237); *see also* Civil Trial Management Order (ECF #191) ("Pretrial Order"), § II (G).

[8] Pretrial Order, § II (C)(1); *see also Id.,* § III (C).

[9] *Id*.

[10] 43 F.3d 1311 (9th Cir. 1995).

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

testimony) that the proposing party's expert employed unsound methodology or failed to assiduously follow an otherwise sound protocol. ***Where the opposing party thus raises a material dispute as to the admissibility of expert scientific evidence, the district court <u>must</u> hold an in limine hearing*** (a so-called ***Daubert*** hearing) to consider the conflicting evidence and make findings about the soundness and reliability of the methodology employed by the scientific experts. *See* Fed. R. Evid. 104(a) ("In making its determination [the court] is not bound by the rules of evidence."); Fed. R. Evid. 706 (on the use of court-appointed experts).[11]

In these circumstances, UPM respectfully requests that the Court dismiss Digicel-Haiti's Daubert Motion without prejudice. In the alternative, the Court should consider it a motion *in limine* and stay its determination, pending full disclosure of anticipated expert witness testimony at trial, until proper consideration, along with the parties' other motions *in limine*, at the pretrial conference (currently scheduled for March 21, 2022).[12] If the Court elects to stay the Daubert Motion and consider it *in limine*, UPM requests that the Court also grant UPM the opportunity to provide a full response in accordance with the Pretrial Order (*i.e.*, no later than three weeks before the pretrial conference).[13] Alternatively, if the Court chooses to consider the Daubert Motion (whether at the pretrial conference or an earlier time, as ordered by the Court), UPM respectfully requests that a *Daubert* hearing be held prior to the Court making a determination as to Mr. Gillan's methodology and the admissibility of his testimony.

## III.   MR. GILLAN'S EXPERT OPINIONS AS TO THE ECONOMIC ANALYSIS UNDERLYING THE FCC'S RULE AGAINST RESALE RESTRICTIONS AND HOW THAT ECONOMIC ANALYSIS APPLIES TO DIGICEL-HAITI'S CONDUCT ARE ADMISSIBLE UNDER FED. R. EVID. 702

Under Fed. R. Evid. 702, the trial court has discretion to allow expert testimony

---

[11] *Daubert*, 43 F.3d at 1318 n.10 (emphasis added). *See also, e.g., Shackelford v. W. Coast Freightline, LLC*, No. C20-5492 BHS, 2021 U.S. Dist. LEXIS 165167, at *8 (W.D. Wash. Aug. 31, 2021) (reserving ruling on motion to exclude expert pending completion of Daubert hearing).

[12] ECF #237.

[13] Pretrial Order, § III (K)(2).

Page 4 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

that "will assist the trier of fact to understand the evidence or to determine a fact in issue" if (1) it is "based upon sufficient facts or data," (2) it is "the product of reliable principles and methods," and (3) the expert "has applied the principles and methods reliably to the facts of the case."[14] Generally, expert opinions are admissible if the expert is qualified, and the expert's testimony is both reliable and relevant.[15] Put another way, expert testimony is admissible under Fed. R. Evid. 702 if (1) the subject matter at issue is beyond the common knowledge of the average layman, (2) the witness has sufficient expertise, and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion.[16] Without question, Mr. Gillan's expert opinions are admissible under this standard.

## A.  Mr. Gillan Is Qualified

There can be no question that Mr. Gillan is qualified to develop and express expert opinions about the economics of the telecommunications industry. He holds a Master's Degree in Economics, granted in 1979.[17] For the last forty (40) years, he has worked as a professional economist focusing on economic issues associated with the regulation of telecommunications entities and their services; he has served on the staff of a state regulatory commission with responsibility for issues surrounding telecommunications competition; he has worked for a telecommunications firm in with responsibility for regulatory issues; he has practiced as a private economic consultant for thirty (30) years, presenting affidavits, reports, and/or live testimony over

---

[14]  Fed. R. Evid. 702.

[15] *Boydstun v. U.S. Bank Nat'l Ass'n ND*, 187 F. Supp. 3d 1213, 1215 (D. Or. 2016) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (additional citation omitted)).

[16] *United States v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984) (citing *McCormick's Handbook of the Law of Evidence* § 13, at 29-31 (E. Clearly 2d ed. 1972)) (admitting psychiatrist and psychologist testimony because the subject matter was beyond the common knowledge of the average layman and would assist the jury to understand the evidence).

[17] Gillan Dec. (ECF #273-1) at 4, ⁋ 2; *see also Id*. at  25.

Page 5 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

300 times on a range of telecommunications economic and policy issues; and he has taught courses in telecommunications economics both in the United States and abroad.[18] In addition, for more than a decade he has served, on the appointment of the Chairman of the FCC, on the Board of Directors of the Universal Service Administrative Company ("USAC"), the FCC-designated entity responsible for collecting and distributing billions of dollars to implement FCC programs supporting (among other things) the provision of telecommunications and broadband services in high-cost areas and to low-income consumers, schools, libraries, and health care providers.[19] Mr. Gillan presently serves as Chairman of the Board of USAC.[20]

## B.  Mr. Gillan's Testimony Is Reliable And Relevant

UPM discusses Digicel-Haiti's specific objections to Mr. Gillan's opinions below. At a high level, however, Mr. Gillan's analysis performs two functions. First, he explains the economic reasoning articulated in and underlying the various FCC rulings in which it established, expanded, and applied its ban on resale restrictions. Second, he applies that economic reasoning the Digicel-Haiti's blocking of the SIM cards UPM was using to resell Digicel-Haiti's services, notably its Roam Like You're Home ("RLYH") service, concluding that Digicel-Haiti's conduct leads to the same ill economic effects as created by the earlier resale restrictions that have been expressly banned by the FCC. Without question, both of these functions will "assist the trier of fact" to understand the evidence surrounding Digicel-Haiti's conduct.[21]

---

[18] *Id*. at 4-5, ¶¶ 1-8; *see also Id*. at 25-27.

[19] *Id*. at 5, ℙ 8; *see also Id*. at 25; Universal Service Administrative Co., *About Universal Service*, https://www.usac.org/about/universal-service/ (last visited Dec. 3, 2021).

[20] *Id*. at 5, 25; *see also* Universal Service Administrative Co., *Leadership: Board of Directors,* https://www.usac.org/about/leadership/board-of-directors/ (last visited Dec. 3, 2021).

[21] UPM's brief discussion here of some of the legal and factual arguments it presently plans to present at trial, is subject, of course, to how the Court rules on the parties' dispositive motions. Given the premature filing of Digicel-Haiti's Daubert Motion, UPM necessarily reserves the right to supplement this opposition and to advance additional or different factual and legal arguments at

Page 6 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S
DAUBERT MOTION TO EXCLUDE TESTIMONY OF
DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

By way of example, UPM plans to argue, first, that the FCC's ban on resale restrictions is, in effect, a *per se* rule under which any justifications a carrier (here, Digicel-Haiti) might proffer are simply irrelevant. UPM has moved for summary judgment that Digicel-Haiti's blocking of the SIM cards UPM used to resell RLYH service constitutes a restriction on the resale of that service.[22] If the Court grants that motion, then under UPM's "*per se*" argument, Digicel-Haiti's liability under the Communications Act will be established. If, however, the Court denies that motion, it will be necessary to prove that one effect of blocking the SIM cards is to deny UPM the ability to resell RLYH service. Mr. Gillan's expert testimony regarding the economic analysis of resale and resale restrictions will assist the trier of fact in that determination.

As an alternative approach, UPM also plans to argue that restrictions on resale are banned by the FCC where they have the economic effect of insulating a carrier with market power from competition, thus permitting it to maintain above-cost rates, to the detriment of United States consumers. Mr. Gillan's expert testimony regarding the economic effect of Digicel-Haiti's blocking of UPM's SIM cards will assist the trier of fact in determining that Digicel-Haiti's conduct has that type of economic impact.

Moreover, depending on the economic, factual, and legal arguments advanced by Digicel-Haiti and its own witnesses, Mr. Gillan's analysis may be useful to the trier of fact in determining how much weight (if any) to give to Digicel-Haiti's claims.

All of these points can be elaborated in much more detail, as appropriate, in any *Daubert* hearing the Court may choose to hold regarding Mr. Gillan's testimony. At a high level, however, UPM submits that this brief summary alone shows that Mr. Gillan's testimony will be reliable, relevant, and "helpful" to the trier of fact. However, because Digicel-Haiti filed its motion so prematurely, is it too soon to reach a final decision on the "helpfulness" prong of Fed. R. of

---

trial, as circumstances warrant.

[22] UPM Motion at 34-35.

Page 7 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S
DAUBERT MOTION TO EXCLUDE TESTIMONY OF
DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Evid. 702. But as a result, as noted above, there is certainly no reason to rule – particularly at this early juncture – that any aspect of Mr. Gillan's expected testimony is inadmissible.

### C. Digicel-Haiti's Specific Objections To Mr. Gillan's Testimony Are Without Merit

Digicel-Haiti raises a scattershot series of objections to Mr. Gillan's testimony, none of which have merit. UPM addresses these objections below.[23]

### 1. Mr. Gillan Is Not Offering Legal Opinions

Digicel-Haiti claims that Mr. Gillan's expert economic testimony amounts to presenting legal opinions as evidence.[24] This simply wrong.

At the outset, as stated in Fed. R. Evid. 704(a), an expert's opinion "is not objectionable just because it embraces an ultimate issues,"[25] and an expert's opinion that relies in part on the expert's understanding of law does not improperly usurp the court's role.[26] Rather, an expert may "properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms" and may "refer to the law in expressing an opinion without that reference rendering the testimony inadmissible."[27] For instance, in *Hangarter v. Provident Life & Accident Ins. Co.*, the Ninth Circuit found that there was no abuse of discretion in admitting expert testimony opining that an insurance company deviated from

---

[23] At the risk of burdening the Court, to the extent that the Court is inclined to consider Digicel-Haiti's Daubert Motion on the merits, UPM would invite the Court to review Mr. Gillan's Declaration (ECF #273-1). The Court would then see that Mr. Gillan has properly focused on the economic analysis underlying the FCC's rulings banning restrictions on resale and an application of that analysis to Digicel-Haiti's conduct in this case – an entirely appropriate scope for expert economic testimony.

[24] Daubert Motion at 3, 5-10.

[25] Fed. R. Evid. 704(a).

[26] *Siring v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) (citing and discussing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)).

[27] *Id*. (internal citations and quotations omitted).

Page 8 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S
DAUBERT MOTION TO EXCLUDE TESTIMONY OF
DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

industry standards that were themselves premised in part on state law, which supported the jury's finding on the ultimate issue of the insurers' bad faith. This was permissible because the expert never testified that he, himself, had reached the legal conclusion that the insurers had actually acted in bad faith (that is, the ultimate issue of law).[28]  This is the situation with Mr. Gillan's testimony, where his economic analysis is necessarily based in part on legal materials (FCC opinions and rulings that incorporate both economic analysis and legal principles) and that are comprehension of an average layperson. This testimony is permissible under Fed. R. Evid. 704(a) and will be helpful to the jury in understanding the evidence.

Indeed, Mr. Gillan makes a point, in his Declaration, of drawing a distinction between legal opinion and economic analysis:

> In connection with my review and discussion of FCC rulings, I recognize that I am not an attorney and I am not offering a legal opinion. That said, ***the FCC frequently makes decisions and rulings, such as its analysis of resale restrictions under the Communications Act, that are grounded in economic principles and an analysis as to how competition works (and fails to work) in the telecommunications industry.*** For more than 40 years the FCC has approached the issue of resale by applying economic analysis to the market facts at hand and, because it has found restrictions on resale to harm consumers and interfere with the operation of competitive market forces, it has declared such restrictions to violate sections 201 and 202. ***While I recognize that the ultimate legal decisions in this case are for the Court, the FCC has consistently relied on economic analysis to determine that resale restrictions violate sections 201 and 202, and my training and experience as an economist specializing in competitive issues in telecommunications markets enable me to apply the same economic analysis to judge the reasonableness of Digicel-Haiti's practices in this case that the FCC has applied in interpreting***

---

[28] *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (*citing Ford v. Allied Mut. Ins. Co.*, 72 F.3d 836, 841 (10th Cir. 1996) (concluding that "expert witness for [the defendant] was permitted to testify" to 'the issue of bad faith' by showing that the defendant relied on both "Iowa law" and "industry practice that before there is payment . . ., one looks at the total coverage available at the time of the accident.")); *see also King v. GEICO Indem. Co.*, 712 F. App'x 649, 651 (9th Cir. 2017) (expert testimony regarding GEICO's handling of the claim in relation to industry standards and GEICO's own claim manual, which incorporated the Montana Unfair Trade Practices Act, was proper because it did not address an ultimate issue of law).

Page 9 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*sections 201 and 202.*[29]

Mr. Gillan is thus in a position analogous to an expert economist in an antitrust case. Section 1 of the Sherman Act says not a word about economic analysis; it blandly condemns every "contract, combination … or conspiracy, in restraint of trade … ."[30] Economic analysis, however, is obviously central to any Section 1 case – at least to define relevant product and geographic markets, and also, in Rule of Reason cases, to assess the economic impact of the challenged conduct. But the type of economic analysis relevant and informative in a Section 1 case is to be found, essentially entirely, in decisions rendered by courts. This necessarily means that expert economists in antitrust cases have to read and understand court opinions – legal documents – to understand what economic data and analysis matters to a Sherman Act case. Reading and understanding those opinions, and then applying the kind of economic analysis that courts have found relevant, is not, and does not entail, the expert economists having or expressing opinions about what Section 1 – as a statute – "means."

So too with Mr. Gillan and 47 U.S.C. §§ 201 and 202. Section 201(b) bans "practices" or "regulations" that are "unjust or unreasonable," while Section 202 ban "unjust or unreasonable discrimination in … practices, … regulations, …or services." These statutes say nothing about economic analysis. Instead, over the decades, the FCC has issued a body of opinions and rulings articulating and applying various types of economic analysis to different aspects of the telecommunications industry in order to assist it in determining what carrier actions are "unjust" or "unreasonable" or "unreasonably discriminatory." In litigating a claim under Sections 201 and/or 202, therefore, it is entirely appropriate for an economic expert to read, understand, and refer to the FCC's rulings in order to understand and apply the economic analysis that those rulings establish as relevant to determining whether those statutes have been violated. Discussing,

---

[29] Gillan Dec., p. 7, ¶ 12.

[30] 15 U.S.C. § 1.

Page 10 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

analyzing, and opining about that economic analysis does not convert the expert's economic opinion into an opinion on a matter of law.

UPM submits that Digicel-Haiti's objections to Mr. Gillan's testimony on this point amount to word games.[31] Mr. Gillan's deposition ran for nearly eight hours (from 10:10 a.m. to 5:50 p.m.), with his cross-examination by Digicel-Haiti's counsel running to more than 200 pages. Digicel-Haiti's counsel again and again asked (in terms or in effect) if Mr. Gillan was trying to predict what the FCC would do if confronted with Digicel-Haiti's conduct, and Mr. Gillan again and again clarified that he was not trying to predict the FCC's behavior, he was simply *applying the same kind of economic analysis* that the FCC has used in prior rulings to Digicel-Haiti's behavior.[32] To present one example, here is an exchange between Mr. Gillan and Digicel-Haiti's counsel:

Mr. Vaughan:    So the second -- the second thing that you're doing, in addition to what we just confirmed, is you then take what you have repeated from the FCC, and then you provide your conclusion about what the FCC would do using that analysis?

…

Mr. Gillan:    A.· No, as I indicated, *I'm not giving a prediction as to what the FCC would do.* All right? I'm merely saying -- and maybe it's not a merely, but *if you apply the same economic reasoning that the FCC has applied over the 35 years, to the facts as I understand them, that these are the conclusions that I reach applying that same analysis.*

Now, that is not really the same as saying I'm predicting what the FCC would do because the FCC might choose to apply a completely different analysis than they applied over the past 35 years. *So I'm not trying to argue what -- make a prediction about what they would do*, I'm just saying, *if you apply the analysis that they have applied consistently over this period of time to the facts at hand, you reach the conclusions that I reach*. Or at least I reach the conclusions that I reach as an economist from my economic training and their economic analysis.

But I recognize that the FCC, at times, issues decisions that are not entirely

---

[31] Daubert Motion at 5-6.

[32] *E.g.,* Gillan Depo. at 16:20-17:22; 39:9-41:24.

consistent with precedent, so therefor, I am not making a prediction about FCC behavior.[33]

Mr. Gillan was quite clear that he was applying a form of economic analysis, based on the economic analysis the FCC has applied in the past (just as antitrust experts apply economic analysis based on what prior cases indicate is relevant). This is entirely proper for an expert economist to do.

Another exchange further illustrates the point:

Mr. Vaughan: Are you also intending to discuss whether UPM's resale of Digicel Haiti services is consistent with FCC's economic reasoning and rationale?

Mr. Gillan: Yes, in the sense that *if you apply that economic analysis* to UPM's resale of the two termination methods, is it consistent with the type of resale arrangement that the FCC found to be publicly beneficial, yes. And other decisions.

Mr. Vaughan: So you do intend to apply the rationale from past [FCC] decisions to the determination of whether UPM's resale was consistent with FCC regulations?

Mr. Gillan: Well, *consistent with the economic analysis that the FCC used in reaching those decisions,* yes.[34]

Again, there is nothing improper about an expert economist applying the kind of economic analysis that an adjudicatory body has applied to similar situations in the past, and opining as to the results of that analysis.

In case there is any doubt, UPM entirely agrees with Digicel-Haiti that expert witnesses may not present purely legal opinions on the ultimate issue in a case (although, as noted above, under Fed. R. Evid. 704(a) an expert's opinion may "embrace" the ultimate issue).[35] UPM will not, in its direct examination of Mr. Gillan, ask questions designed to elicit legal opinions, and any question that did so would be subject to a valid objection. What UPM will do is ask Mr.

---

[33] *Id.* at 39:9-40:14 (emphasis added).

[34] *Id.* at 33:17-34:04 (emphasis added).

[35] Indeed, the disclosures and depositions of Digicel-Haiti's witnesses are replete with legal conclusions and characterizations; depending on what issues remain in play after the Court rules on the parties' dispositive motions, UPM expects to file a range of motions *in limine* to exclude "legal" testimony from those witnesses.

Page 12 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Gillan about his *economic analysis* of Digicel-Haiti's conduct, and how that *economic analysis* compares to an *economic analysis* of other conduct that the FCC has, in its various rulings, found to violate Sections 201 and 202. It will be for the finder of fact to connect the dots to determine whether Digicel-Haiti's conduct violates the statute. Without question, however, the economic evidence that Mr. Gillan will present will be useful to the finder of fact in reaching that determination.[36]

The problem Digicel-Haiti is fixated on here is entirely of its own making. Over the course of his 8-hour deposition, Digicel-Haiti's counsel tried again and again to get Mr. Gillan to agree to a characterization of his testimony as constituting a legal opinion or a prediction of what the FCC would do, rather than as the application of economic analysis.[37] Mr. Gillan again and again emphasized that he was applying an economic analysis, not offering a legal opinion.[38] There will be time enough during pretrial proceedings and at trial to ensure that neither Mr. Gillan nor any other witness testifies as to legal issues. But the need to avoid that situation does not remotely justify ruling *in limine,* now, that Mr. Gillan's economic analysis and conclusions should be excluded simply because FCC rulings also employ economic reasoning – of which Mr. Gillan was aware and which he applied to the facts at hand in this case.

## 2.   There Is Nothing Unreliable About Mr. Gillan's Methodology

Digicel-Haiti next attacks Mr. Gillan's testimony as unreliable on the ground that it supposedly ignored relevant facts and law.[39] There is no basis for these arguments, which we

---

[36] *See, e.g.*, *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1045-46 (D. Ariz. 2005) (allowing professors to offer expert opinion "on the on the relevant corporate norms and the relationship between [the parties] in view of those corporate norms" and "how that relationship was consistent with, or diverged from, corporate norms."); *United States v. Diaz*, 876 F.3d 1194, 1198-99 (9th Cir. 2017) (upholding expert's testimony that a doctor's prescriptions were "outside the usual course of professional practice," which was an element of the charge).

[37] *See, e.g.,* Gillan Depo. at 12:8-15:23.

[38] Id.

[39] Daubert Motion at 10-18.

Page 13 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S
DAUBERT MOTION TO EXCLUDE TESTIMONY OF
DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

address *seriatim* below. At the outset, however, it bears emphasis that, while Digicel-Haiti objects to a number of "assumptions" that it claims Mr. Gillan made, at no point does Digicel-Haiti even hint at why those assumptions matter, either to the substance of Mr. Gillan's opinions, or to any issue in the case. This failure by Digicel-Haiti makes this entire aspect of Digicel-Haiti's argument irrelevant.

### a.  Acquisition of SIM Cards

Digicel-Haiti objects to Mr. Gillan assuming that "UPM legally acquired Digicel-Haiti SIM cards."[40] As discussed in UPM's oppositions to Digicel-Haiti's summary judgment motions, not only is there no evidence of any illegality in UPM's acquisition of SIM cards, that question is irrelevant to whether UPM could use its SIM cards to make use of Digicel-Haiti's services.[41] To the extent that any aspect of Mr. Gillan's opinion is affected by the legality of UPM's acquisition of SIM cards – and it is far from clear that it would be – the weight to be given to that aspect of his opinion will be affected by whether, at trial, it is established that UPM acquired the SIM cards illegally.

### b.  Agents in Haiti

Digicel-Haiti objects to Mr. Gillan assuming that UPM had agents in Haiti.[42] But both the Complaint and Answer in this matter state that UPM had agents in Haiti.[43] There may be

---

[40] *Id.* at 11.

[41] *See* Defendant UPM Technology, Inc.'s Opposition to Motion (Communication Act) (ECF #279) ("UPM Communications Act Opposition") at Section IV; Opposition to Motion (Fraud) (ECF #278) ("UPM Fraud Opposition") at Section II.B.1, filed concurrently herewith. Very briefly, because Digicel-Haiti sold SIM cards to independent dealers, the relationship between Digicel-Haiti and a subscriber was established by a SIM card being activated and topped up, not by when or how a SIM card was acquired. By analogy, in a case about ski resorts, what would matter would be how much the resort charged for lift tickets, etc., not whether one of its patrons used stolen skis.

[42] Daubert Motion at 11.

[43] *See, e.g.,* Third Amended Complaint (ECF #200) ("TAC") at ¶¶ 50, 65, 86 (all referring to UPM's "agents" in Haiti); Defendants' Amended Answer, Affirmative Defenses And Counterclaims To

Page 14 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S
DAUBERT MOTION TO EXCLUDE TESTIMONY OF
DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

some dispute about the precise legal relationship between UPM and the people in Haiti who obtained SIM cards for UPM, but the basic fact that UPM paid people in Haiti to obtain SIM cards (and, for in-country bypass, operate gateways) is undisputed. UPM is at a loss to understand what Digicel-Haiti's issue is with Mr. Gillan making this assumption.

### c.  Agents Purchasing SIM Cards

Digicel-Haiti objects to Mr. Gillan assuming that UPM's agents purchased several thousand SIM cards on the open market in Haiti and shipped them back to UPM in Oregon."[44] Again, UPM is baffled: that is exactly what happened. UPM has detailed records, which it has shared with Digicel-Haiti in discovery, listing the several thousand SIM cards that UPM obtained from Haiti during 2014, along with detailed information of how those SIM cards were used.[45]

### d.  UPM Subscribed to Digicel-Haiti's Services

Digicel-Haiti objects to Mr. Gillan assuming that UPM was a subscriber to Digicel-Haiti's services.[46] But this, again, is accurate. UPM explains in its motion for summary judgment and in its oppositions to Digicel-Haiti's motions the nature of the implied-in-fact contract governing the relationship between UPM and Digicel-Haiti, and how that contract was formed.[47] The fact that Digicel-Haiti may disagree with UPM's explanation does not make it unreasonable for Mr. Gillan to assume that a contractual relationship existed between them.

### e.  RLYH as a "Bulk Discounted Calling Arrangement"

Digicel-Haiti objects to Mr. Gillan characterizing RLYH as a "bulk discounted

---

Plaintiff's Third Amended Complaint And Demand For Jury Trial (ECF #244) at ¶¶ 50, 65, 86, 297.

[44] Daubert Motion at 11.

[45] *See* UPM Motion at 29-30 (discussing UPM's records).

[46] Id.

[47] *See* UPM Motion at 10, 24; UPM Opposition (Communication Act) at Sections II.C.2 and IV; UPM Opposition (Fraud) at Section II.A.

Page 15 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

calling arrangement.[48] But that is a fair characterization of the service: by paying a flat fee up front, RLYH subscribers get to make calls back to Haiti at a lower (discounted) rate than would otherwise apply.

### f.  UPM Paying for RLYH Service For 2,300 SIM Cards

Digicel-Haiti objects to Mr. Gillan assuming that UPM paid for RLYH service for roughly 2,300 SIM Cards.[49] Again, however, that is actually true, as materials UPM has provided to Digicel-Haiti in discovery show.

### g.  UPM's Relationship with Digicel-Haiti

Digicel-Haiti objects to Mr. Gillan assuming that UPM and Digicel-Haiti had an "arrangement" without knowing its details.[50] As noted above, UPM *did* have an arrangement – the implied-in-fact contract – with Digicel-Haiti. Moreover, Digicel-Haiti, again, provides no explanation of why the scope of Mr. Gillan's assumptions (or lack of assumptions) about the details of the parties' relationship matters to the reliability of his opinions.

### h.  How Calls Got to Haiti

Digicel-Haiti objects to the fact that Mr. Gillan did not have a specific idea of how calls were routed to Haiti.[51]  Yet again, however, Digicel-Haiti provides not a hint as to how the details of call routing would have any impact on the economic analysis of UPM's resale of RLYH service or, conversely of Digicel-Haiti's blocking of the SIM cards UPM used to resell that service.

### i.  Mr. Gillan Did Not "Ignore" Issues of International Comity

Bizarrely, after (wrongly and unfairly) criticizing Mr. Gillan for supposedly

---

[48] Daubert Motion at 11.

[49]  Id.

[50] *Id.* at 12.

[51] Id.

Page 16 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

opining about the law, Digicel-Haiti *also* claims that Mr. Gillan is to be faulted for not taking adequate account of how the FCC handles issues of international comity – a purely legal issue.[52] Aside from comity not having any particular relevance to the *economic analysis* of UPM reselling RLYH service and of Digicel-Haiti blocking that resale, the fact is that Digicel-Haiti's conception of how the FCC addressed comity concerns is quite wrong, as UPM explains in its opposition to Digicel-Haiti's summary judgment motion directed to UPM's Communications Act claims.[53]

### j.   Mr. Gillan properly focused on cost-based rates

Digicel-Haiti argues that Mr. Gillan was wrong to focus on whether Digicel-Haiti's call termination rates were cost-based in concluding that it was economically rational for UPM to seek to bypass those rates.[54] Digicel-Haiti is free to present its own economic expert to explain why factors other than whether rates are based on cost should be considered in an *economic* analysis of Digicel-Haiti's rates and UPM's response to them. Digicel-Haiti's argument here seems to be that, in setting its "benchmark" rates for international call termination rates, the FCC took account of policy considerations other than whether the benchmarks it set were cost-based.[55] That may be true, but on its face, that is a legal or policy argument, not an economic argument. Digicel-Haiti is free to argue that the fact that the FCC did not insist that benchmark rates be cost-based somehow excuses Digicel-Haiti's anticompetitive conduct in blocking UPM's SIM cards. But any such argument does not change the fact that it is appropriate for Mr. Gillan to testify that, from an *economic* perspective, what matters is whether rates are cost-based.[56]

---

[52] Id.

[53] *Id*. at 12-23; UPM Opposition (Communications Act) at Sections III.D. and III.E.

[54] Daubert Motion at 13-14.

[55] *Id.*

[56] Here again, after claiming that Mr. Gillan's testimony should be excluded because it was legal rather than economic in nature, Digicel-Haiti criticizes Mr. Gillan for supposedly not considering non-economic legal and policy considerations in his economic analysis.

Page 17 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S
DAUBERT MOTION TO EXCLUDE TESTIMONY OF
DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

### k.  The Consumer Welfare Implications of UPM's Activities

Digicel-Haiti argues that Mr. Gillan's opinions are defective because he could not point to specific consumer benefits arising from UPM's resale of Digicel-Haiti's services.[57] Of course, because Digicel-Haiti rapidly blocked UPM's SIM cards before UPM could have a substantial, long-lasting effect on the marketplace, no such evidence could possibly exist. But it is perfectly appropriate for Mr. Gillan to apply his economic expertise to conclude that permitting resale of Digicel-Haiti's services, particularly RLYH service, would have the effect, over time, of benefitting consumers. Digicel-Haiti is free to present its own economic expert to testify to the contrary (if it can find a reputable economist who would so testify). The finder of fact can then resolve the dispute.

Digicel-Haiti then regurgitates its argument that the *economic* analysis of the impact of resale competition should be affected by whether the particular means UPM used to compete complied with Haitian laws or regulations.[58] But there is no reason to think that the economic impact of RLYH resale would be affected by that issue. Digicel-Haiti's argument here seems to be that Mr. Gillan's *economic* analysis is flawed because it did not take account of the *non-economic* factors on which Digicel-Haiti focuses. But this confuses economic evidence with legal argument. If Digicel-Haiti can establish that (a) UPM, by reselling RLYH service, somehow broke Haitian law; (b) the Haitian law that UPM supposedly broke applies to UPM's United States activity (reselling RLYH service) and Digicel-Haiti's United States activity (offering RLYH service, and blocking UPM's SIM cards); and (c) the Haitian law at issue overrides the FCC's rules and policies favoring competition (including resale competition in the United States), then Digicel-Haiti might have an argument that the finder of fact should give less weight to Mr. Gillan's *economic* analysis. But none of that reflects any flaw in his analysis *per se;* it simply reflects that

---

[57] Daubert Motion at 15.

[58] *Id.* at 15-16.

Page 18 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S
DAUBERT MOTION TO EXCLUDE TESTIMONY OF
DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

it is possible to imagine legal theories under which that analysis does not matter, or matters less than UPM will argue that it does. This is not a reason to exclude or limit Mr. Gillan's testimony at this early stage.

### l.    Mr. Gillan's Analysis Is Not Affected by Whether Digicel-Haiti Is a Carrier

Digicel-Haiti next argues that Mr. Gillan's economic analysis is flawed because he did not have an opinion on the legal question of whether Digicel-Haiti is a carrier subject to Sections 201 and 202.[59] Here again, Digicel-Haiti is criticizing Mr. Gillan for not being a lawyer. If Digicel-Haiti is not subject to Sections 201 and 202, that does not mean that Mr. Gillan's economic analysis is flawed or wrong; it means that, as a legal matter, UPM cannot recover on the theory that Digicel-Haiti violated Sections 201 and 202. If Digicel-Haiti is not a carrier subject to the Communications Act, its blocking of UPM's SIM cards would still have anticompetitive, anti-consumer effects, as explained by Mr. Gillan. In that case, though, the Communications Act would not provide UPM with a remedy – a legal question, not an economic one.

### m.    Digicel-Haiti Misunderstands Price Discrimination in the Communications Act Context

Finally, Digicel-Haiti takes Mr. Gillan to task for his discussion of price discrimination.[60] Mr. Gillan is entitled as an economist to testify that when Digicel-Haiti charges one price for terminating international calls on its network and a different price for the technically identical function of terminating local calls, that is a form of price discrimination, creating the associated economic problems. Digicel-Haiti's argument is that Mr. Gillan should have taken account of the fact that Digicel-Haiti is supposedly required by Haitian regulators to charge those different rates,[61] but here again Digicel-Haiti is confusing economic and legal considerations. The

---

[59] *Id.* at 16-17.

[60] *Id.* at 17-18.

[61] *Id.*

Page 19 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

economic damage to United States consumers caused by Digicel-Haiti charging an above-cost rate for international call termination does not magically disappear if the reason it charges that rate is because a regulator told it to do so. Digicel-Haiti is free to argue that its anticompetitive behavior should be excused by virtue of its foreign-imposed regulatory obligations, but those obligations – if they indeed compel its anticompetitive behavior – do not cleanse away the anticompetitive effects of what Digicel-Haiti, in fact, does. There is nothing inappropriate about Mr. Gillan addressing and explaining those issues in his economic analysis.

## IV.    CONCLUSION

For the foregoing reasons, UPM respectfully requests that the Court deny Digicel-Haiti's motion to exclude Mr. Gillan from providing expert testimony at trial. In the alternative, UPM requests that the Court consider the Daubert Motion *in limine,* allowing UPM to respond substantively thereto pursuant to the Pretrial Order, and stay determination until the pretrial conference.

Dated: December 3, 2021.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 20 – DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN
UPM-L1\00609751.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2021, I served the foregoing **DEFENDANTS' OPPOSITION TO DIGICEL-HAITI'S DAUBERT MOTION AND, IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOSEPH GILLAN**

on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com

Dated: December 3, 2021.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

UPM-L1\00614069.000
Page 1 of 1 – CERTIFICATE OF SERVICE
UPM-L1\00605125.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236