**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

        Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A.**, a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>    Plaintiff & Counterclaim-Defendant,<br><br>    v.<br><br>**UPM TECHNOLOGY, INC.**, *et al.,*<br><br>    Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral Argument Requested**<br>**Hearing: January 14, 2022 at 10:00 AM** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. III

I.      INTRODUCTION .................................................................................................... 2

II.     THE COURT SHOULD GRANT SUMMARY JUDGMENT IN UPM'S
        FAVOR ON THE FRAUD CLAIM ......................................................................... 2

        A.      No Rational Trier Of Fact Could Conclude That Digicel-Haiti Could
                Establish All Of The Elements Of Common-Law Fraud By Clear And
                Convincing Evidence ................................................................................... 4

        B.      UPM Did Not Make Fraudulent Representations To Digicel-Haiti ........... 5

        C.      Making Bypass Calls Was Not Fraud .......................................................... 9

                1.      No Precedent Supports The Conclusion That Bypass Constitutes Fraud,
                        And There Are Good Reasons To Reject That Conclusion ....................... 9

                2.      Digicel-Haiti's Purported Inference That Bypass Calls Were Really
                        Local Was Unwarranted Both In Light Of The Limited Scope Of What
                        UPM "Represented" And In Light Of What Digicel-Haiti Knew ........... 11

                3.      Nothing Bad Will Happen If The Court Concludes That Digicel-Haiti's
                        Inferences Were Unjustified ................................................................... 15

        D.      Digicel-Haiti's "Reliance" Argument Shows That Its Real Claim Sounds In
                Breach Of Contract .................................................................................. 16

        E.      UPM's Bypass Activity Did Not Violate FCC Policy ............................. 17

III.    AT A MINIMUM, THE COURT SHOULD GRANT UPM'S MOTION FOR
        PARTIAL SUMMARY JUDGMENT ON THE FRAUD CLAIM ........................ 18

        A.      Partial Summary Judgment Is Appropriate For "Parts Of" A Claim ....... 18

        B.      Digicel-Haiti Does Not Contest UPM's Motion For A Ruling That RLYH
                Resale Was Not Fraudulent ....................................................................... 20

        C.      Digicel-Haiti Does Not Contest UPM's Motion Regarding Its Non-
                Monetary Damages Claims ....................................................................... 20

        D.      There Is No Material Dispute As To How Much Traffic UPM Sent To
                Digicel-Haiti Via In-Country Bypass And Via RLYH Resale. .............. 20

        E.      The Question Of How To Calculate Digicel-Haiti's Direct Monetary
                Damages Is Purely A Question Of Law And Is Appropriate For Summary
                Judgment. ................................................................................................. 23

IV.     THE COURT SHOULD ALSO GRANT PARTIAL SUMMARY
        JUDGMENT THAT DIGICEL-HAITI IS A TELECOMMUNICATIONS
        CARRIER AND THAT BLOCKING RLYH SIM CARDS PREVENTED
        RESALE OF THAT SERVICE .............................................................................. 26

        A.      Digicel-Haiti Is A Telecommunications Carrier Subject To The

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Communications Act ............................................................................................ 26

B.     Blocking UPM's RLYH SIM Cards Prevented UPM From Reselling RLYH
Service................................................................................................................... 26

V.     CONCLUSION................................................................................................................. 27

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## TABLE OF AUTHORITIES

**Cases**

*Alifax Holding SpA v. Alcor Sci., Inc.,* 357 F. Supp. 3d 147 (D.R.I. 2019) ............................ 19, 20

*Alphonsis v. Century Reg'l Det. Facility,* 2011 U.S. Dist. LEXIS 195197 (C.D. Cal. 2021) ................................................................................................................ 20

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................................................................................. 3, 22, 23, 24

*Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278 (9th Cir. 1982) ......................... 3, 22, 23, 24

*Cable & Wireless P.L.C. v. FCC,* 166 F.3d 1224 (D.C. Cir. 1999) ...................................... 25, 27

*Cocchiara v. Lithia Motors, Inc.*, 353 Or. 282, 297 P.3d 1277 (2013) .................................. 15, 16

*Collinge v. IntelliQuick Delivery, Inc.,* 2015 U.S. Dist. LEXIS 35860 (D. Ariz. 2015) ................................................................................................................ 20

*Conzelmann v. N. W. P. & D. Prod. Co.*, 190 Or. 332, 225 P.2d 757 (1950) ............................ 4, 5

*Coy v. Starling*, 53 Or. App. 76, 630 P.2d 1323 (1981) ................................................................ 4

*Crime v. Smith,* 2013 U.S. Dist. LEXIS 98628  (E.D. Cal. 2013) ................................................. 20

*Dizick v. Umpqua Cmty. Coll.*, 287 Or. 303, 599 P.2d 444 (1979) ..................................... 4, 5, 24

*Gonsalez v. Amsberry,* No. 2:18-cry-01839-AC, 2020 U.S. Dist. LEXIS 167099 (D. Or. Sep. 12, 2020) ............................................................................... 3, 22, 23, 24

*Heather v. Allstate Prop. & Cas. Ins. Co.,* 2020 U.S. Dist. LEXIS 415 (W.D. Wash. 2020) ................................................................................................................ 20

*Ibanez v. Bettazza,* 2013 U.S. Dist. LEXIS 44531 (D. Or. 2013) ................................................. 20

*Intel Corp. v. Hamidi,* 30 Cal. 4th 1342, 71 P.3d 296 (2003) ...................................................... 11

*Lies v. Farrell Lines, Inc.,* 641 F.2d 765 (9th Cir. 1981) .............................................................. 20

*Martell v. GM LLC*, 492 F. Supp. 3d 1131 (D. Or. 2020) ............................................................ 17

*Morasch v. Hood,* 232 Or. App. 392, 222 P.3d 1125 (2009) ....................................................... 24

*Or. Pub. Emples. Ret. Bd. v. Simat, Helliesen & Eichner,* 191 Or. App. 408, 83 P.3d 350 (2004) ............................................................................................................. 15, 16

*Sahakian v. City of Glendale,* 2020 U.S. Dist. LEXIS 80944 (C.D. Cal. 2020) .......................... 20

*Schwarz v. Philip Morris Inc. (In re Estate of Schwarz),* 206 Or. App. 20, 135 P.3d 409 (2006) ................................................................................................................. 6

*Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944) ............................. 19

*Straightshot Communs., Inc. v. Telekenx, Inc.,* 2010 U.S. Dist. LEXIS 153016 (W.D. Wash. November 15, 2010) ................................................................................. 5

*United States v. Mead Corp.,* 533 U.S. 218, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) ............................................................................................................................ 19

UPM-L1\00615884.000

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*Verizon v. FCC,* 740 F.3d 623 (D.C. Cir. 2014) ............................................................. 8

*Webb v. Clark*, 274 Or. 387, 546 P.2d 1078 (1976) ................................................... 4, 5

*Wieber v. FedEx Ground Packaging Sys.,* 231 Or. App. 469, 220 P.3d 68, 77 (2009) .......................................................................................................................... 4, 5

**Statutes**

ORS § 646.608(2) ............................................................................................................ 8

ORS § 647.608(2) ............................................................................................................ 8

**Other Authorities**

*1998 Biennial Regulatory Review; Reform of the International Settlements Policy and Associated Filing Requirements,* Report and Order and Order on Reconsideration, 14 FCC Rcd 7963 (1998) ...................................................... 2, 9

CODE AND OTHER LAWS OF CYBERSPACE, Lawrence Lessig (1999) ........................... 11

*Enforcement of Other Nations' Prohibitions Against the Uncompleted Call Signaling Configuration of International Call-back Service et al.,* Order, 18 FCC Rcd 6077 (2003) ...................................................................................... 10, 18

Moore's Federal Practice P 56.20(3.-2) (2d ed. 1976) .................................................. 19

Orin Kerr, Cybercrime's Scope: Interpreting "Access" and "Authorization" in Computer Misuse Statutes, 78 N.Y.U.L. Rev. 1596 (2003) ............................. 11

*Petition of AT&T Inc. for Settlements Stop Payment Order on the U.S.-Tonga Route,* Memorandum Opinion and Order, 29 FCC Rcd 4186 (2014)......................... 24, 26

THROUGH THE LOOKING-GLASS, Lewis Carroll (Charles L. Dodgson) (1934) ............................. 12

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## I.    INTRODUCTION

UPM moved for summary judgment dismissing Digicel-Haiti's fraud claim, and sought partial summary judgment with respect to parts of that claim and parts of UPM's Communications Act claim.[1] Digicel-Haiti's Opposition[2] argues that summary judgment should be denied for UPM (and granted for Digicel-Haiti) on the fraud claim; that UPM's requests for partial summary judgment are procedurally improper; and that at least some of those partial summary judgment requests should be denied on the merits.[3]

Digicel-Haiti is wrong on all counts. It has not raised any material factual disputes regarding the matters on which UPM seeks summary judgment, and has not rebutted UPM's legal analysis showing that summary judgment is warranted. UPM's Motion, therefore, should be granted.

## II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN UPM'S FAVOR ON THE FRAUD CLAIM

Digicel-Haiti claims it is pursuing "a basic fraud claim."[4] Yet in nearly seven years of litigation it has never cited any case from any jurisdiction that treats bypass activity as fraud. This is not because bypass is rare or unprecedented: the Federal Communications Commission ("FCC") discussed bypass with approval more than two decades ago.[5] The reason Digicel-Haiti

---

[1] Defendant UPM Technology, Inc.'s Motion for Summary Judgment (ECF #255) ("UPM Motion").

[2] Digicel-Haiti's Opposition to UPM's Motion for Summary Judgment (ECF #274) ("Digicel-Haiti Opposition").

[3] Digicel-Haiti has not presented any opposition to UPM's request for partial summary judgment that resale of Roam Like You're Home ("RLYH") service was not fraudulent, or that UPM did not cause damage to Digicel-Haiti by creating stress on its network, by imposing investigation costs, or by causing a loss of good will. These points, therefore, are conceded, and the Court should grant UPM's Motion with respect to them. *See infra.*

[4] Digicel-Haiti Opposition at 3.

[5] *1998 Biennial Regulatory Review; Reform of the International Settlements Policy and Associated Filing Requirements,* Report and Order and Order on Reconsideration, 14 FCC Rcd 7963 (1998)

has no cases to cite is that no court anywhere, under any circumstances, has ever held that bypass is fraudulent. This shows that Digicel-Haiti's fraud claim is not "basic" at all. To the contrary, it is "highly technically novel and complex," and represents a "one-of-a-kind, first-of-its-kind case."[6] Digicel-Haiti bears a heavy burden, both legally and factually, to show that Oregon's common law of fraud should be extended (and distorted) to cover this "one-of-a-kind, first-of-its-kind case." It has not met, and cannot meet, that burden.

UPM's Motion laid out the facts showing that its activities did not constitute fraud.[7] Rather than engaging with UPM's argument, Digicel-Haiti seems to think that if it just says "fraud" often enough, perhaps the label will stick.[8] But name-calling, characterization, speculation and rhetoric are no substitute for admissible evidence and cogent legal argument. Digicel-Haiti has not "set forth specific facts showing that there is a genuine issue for trial,"[9] much less set forth any admissible evidence to contradict UPM's showing.[10] The facts UPM presented, therefore, should be taken as established, and in light of those facts it is clear that no rational trier of fact could find that Digicel-Haiti will be able to prove all of the elements of fraud by "clear and convincing evidence."[11] As a result, the Court should grant UPM's Motion.

---

(*1998 Settlements Order*) at ¶ 63 & n.119 (finding that it is "encouraging" that activities that "bypass" the normal settlements regime are underway, and noting specifically that "Internet telephony is a promising means of bypassing" the need to make traditional settlement payments).

[6] Transcript of Proceedings, July 22, 2016, at 23:7-15 (remarks of Mr. Vaughan).

[7] UPM Motion at 10-28.

[8] UPM counts *fifteen* appearances of "fraud" or "fraudulent" in the first two pages of Digicel-Haiti's Opposition alone.

[9] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, 212-13 (1986) (internal quotations omitted).

[10] *See Gonsalez v. Amsberry,* No. 2:18-cry-01839-AC, 2020 U.S. Dist. LEXIS 167099, at *17 (D. Or. Sep. 12, 2020), *citing Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278, 1284 (9th Cir. 1982).

[11] *Dizick v. Umpqua Cmty. Coll.*, 287 Or. 303, 311, 599 P.2d 444, 448 (1979) (citing *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (1976); *Wieber v. FedEx Ground Packaging Sys.,* 231 Or. App. 469, 480, 220 P.3d 68, 77 (2009), *citing Conzelmann v. N. W. P. & D. Prod. Co.*, 190 Or. 332, 350, 225

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

### A. No Rational Trier Of Fact Could Conclude That Digicel-Haiti Could Establish All Of The Elements Of Common-Law Fraud By Clear And Convincing Evidence

Rather than forthrightly address UPM's showing that the undisputed facts prove that UPM did not commit fraud, Digicel-Haiti engages in its now-familiar unsupported rhetorical flourishes, characterizations, and innuendo. Thus, Digicel-Haiti introduces its argument by claiming that UPM engaged in "theft;"[12] that its conduct was "parasitic" and "covert;"[13] that it "surreptitiously" obtained SIM cards;[14] and that those SIM cards were purchased from "unauthorized third-parties" and "in violation of Haitian law."[15] Perhaps yielding to nostalgia for its long-dismissed RICO claim,[16] Digicel-Haiti for good measure accuses UPM of a "fraudulent scheme of international proportions" that was undertaken at the expense not only of Digicel-Haiti, but also "of other target carriers across the globe." None of this is relevant to UPM's motion for summary judgment. It is an attempt to substitute rhetoric for relevant evidence.[17]

Addressing the specific elements of fraud under Oregon law, UPM showed that no rational trier of fact could find that UPM defrauded Digicel-Haiti, for at least the following reasons: (1) UPM made no representations to Digicel-Haiti; (2) any representations UPM made were true;

---

P.2d 757 (1950). "Clear and convincing evidence means that the truth of the facts asserted is highly probable." *Coy v. Starling*, 53 Or. App. 76, 80, 630 P.2d 1323 (1981) (citations omitted).

[12] Digicel-Haiti Opposition at 2.

[13] *Id.*

[14] *Id.* at 3.

[15] *Id.*

[16] *See* Opinion and Order (ECF #188) at 23-27 (dismissing RICO claims).

[17] *Id.* Digicel-Haiti's RICO conspiracy-based claim was grounded on allegations of mail and wire fraud, as well as common-law fraud. *See id.; see also* Opinion and Order (ECF #58) at 19-21. The scope of conduct that violates the mail and wire fraud statutes is broader than that addressed by common law fraud. *See, e.g., Straightshot Communs., Inc. v. Telekenx, Inc.,* 2010 U.S. Dist. LEXIS 153016 at [*20] n.5 (W.D. Wash. November 15, 2010) ("The definition of 'fraud' under the wire fraud statute is much broader than a typical common law fraud claim"). This means that some activity that might have been relevant to the dismissed RICO claim will be irrelevant to the fraud claim that remains in the case. *See, e.g.,* Digicel-Haiti Opposition at 2 (noting UPM mislabeling of Gateway devices sent to Haiti).

---

Page 4 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

(3) any representations were not knowingly false; and (4) Digicel-Haiti's purported reliance on any UPM representations was not justified.[18] Digicel-Haiti claims this approach was "hyper-technical" and "artificially fragmented,"[19] but it is precisely the kind of analysis that is necessary to properly analyze any fraud claim. Digicel-Haiti must prove each element of fraud by clear and convincing evidence,[20] and cannot avoid summary judgment by waving its arms and saying "look at all this bad stuff!" or "surely this is fraud!" Once UPM has shown that Digicel-Haiti will be unable to prove any one element of fraud, Digicel-Haiti's case must be dismissed. UPM's Motion shows that Digicel-Haiti will be unable to prove at least four elements of fraud, whether Digicel-Haiti wants to engage with the detailed evidence UPM presented or not.[21]

Digicel-Haiti makes its last stand to defend its fraud claim on two grounds. First, it says that UPM did in fact make "fraudulent representations" to Digicel-Haiti.[22] Second, it says that its reliance on those "representations" was reasonable.[23] Both of these claims are wrong.

### B. UPM Did Not Make Fraudulent Representations To Digicel-Haiti

No matter how one might characterize UPM's dealings with Digicel-Haiti, they do not fit the mold of traditional, garden-variety fraud. UPM pointed out[24] (and Digicel-Haiti does not contest) that UPM did not *say* anything to Digicel-Haiti that affected Digicel-Haiti in any way,

---

[18] UPM Motion at 12-27.

[19] Digicel-Haiti Opposition at 3.

[20] *Dizick, supra,* 287 Or. at 311, 599 P.2d at 448 (citing *Webb, supra,* 274 Or. at 391, 546 P.2d 1078); *Wieber, supra,* 231 Or. App. at 480, 220 P.3d at 77, *citing Conzelmann, supra,* 190 Or. at 350, 225 P.2d 757.

[21] In addition to the four elements noted in the text, *see* UPM Motion at 10-28, UPM has also shown that Digicel-Haiti was not damaged by UPM's actions, considering what UPM paid. Defendants' Opposition to Digicel-Haiti's Motion for Partial Summary Judgment (Fraud) (ECF # 278) ("UPM Opposition (Fraud)") at 15-17.

[22] Digicel-Haiti Opposition at 2-5.

[23] *Id.* at 5-6.

[24] UPM Motion at 12.

Page 5 – DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

nor did it *do* anything (in any normal sense) that affected Digicel-Haiti. There are, in short, no typical, normal "representations" between the parties in this case. This is what the Court understood six years ago when it concluded that Digicel-Haiti had not even pled sufficient facts to establish "non-technological fraud."[25] This may even have been part of what Digicel-Haiti's counsel was thinking about when he admitted that this situation is "highly technically novel and complex" and represents a "one-of-a-kind, first-of-its-kind case."[26]

UPM also showed that it made no representations to Digicel-Haiti when buying SIM cards or top-ups, because Digicel-Haiti has chosen to arrange its business such that both SIM cards and top-ups are sold to the public by independent third parties.[27] And – in a discussion that Digicel-Haiti doubtless views as "hyper-technical" – UPM showed that activating SIM cards on Digicel-Haiti's network and making calls do not constitute "representations" either.[28]

Because this case is "highly technically novel and complex" and the "first-of-its-kind," there are no cases from any United States jurisdiction that directly address whether the types of communications that occurred between UPM's devices and Digicel-Haiti's network could count as "representations" for purposes of common law fraud. UPM therefore suggested that the Court

---

[25] Opinion and Order, ECF #58 at 6-8, 13.

[26] Transcript of Proceedings, July 22, 2016, at 23:7-15 (remarks of Mr. Vaughan). A version of traditional fraud to which the Court alluded earlier in the case is "promissory fraud," where someone enters into a contract with a conscious intention to violate a material term. Transcript of Proceedings, July 27, 2015 at 47:1-12 (remarks of Judge Simon); *see, e.g., Schwarz v. Philip Morris Inc. (In re Estate of Schwarz),* 206 Or. App. 20, 41, 135 P.3d 409, 423 (2006) (promissory fraud "protects the interests only of those *to whom a promise is made specifically and directly* … because the requisite intent to mislead … consists of a defendant misrepresenting a material fact for the purpose of misleading the other party") (emphasis added). That situation cannot exist here because there was never any discussion between the parties, and thus no "specific[] and direct[]" promise. Instead, their contractual relationship was a bare-bones implied-in-fact contract. *See* Defendants' Opposition To Digicel-Haiti's Motion For Summary Judgment On Defendant UPM Technologies, Inc.'s Counterclaims (ECF #279) ("UPM Opposition (Communications Act)") at 13-17, 25-28.

[27] UPM Motion at 12-13.

[28] *Id.* at 13-17.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

look to analogous situations for guidance, pointing out that in related areas of the law, courts distinguish between technical communications that are "expressive" as opposed to merely "functional."[29] Moreover, because fraud is an intentional tort, UPM also looked to related areas of the law for guidance as to whether automatic communications between a wireless device and a wireless network can be considered "voluntary" – and thus, for purposes of this case, intentional.[30]

Digicel-Haiti is clearly unhappy that these analogous precedents counsel rejection of its fraud claim. So, it calls them "irrelevant and unhelpful,"[31] "irrelevant,"[32] "entirely unhelpful" (twice),[33] "highly distinguishable,"[34] and "entirely inapposite."[35] It does not, however, provide any reasoned response to them, or to UPM's argument based on them.

UPM has shown that when its radio devices and SIM cards communicated with Digicel-Haiti's network, they weren't *saying* anything, but instead were merely communicating functional data, and that the critical communications – authenticating SIM cards to make calls – were not even voluntary acts by UPM.[36] If UPM's argument was truly "unnecessarily complicated,"[37] one would have thought that Digicel-Haiti would have come back with a legion of cases – or at least *one* case, or perhaps a law review article or a learned treatise – explaining why these kind of technical data exchanges could indeed constitute "representations." But it presents nothing, because there is nothing. And there is nothing because it makes no sense to

---

[29] *Id. at* 14-15.

[30] *Id.* at 16. UPM also pointed out that in the analogous context of the Computer Fraud and Abuse Act, the Supreme Court has held that hacking into a system is actionable, while using a system as designed but in a manner that is against the wishes of the system owner is not. *Id.* at 19.

[31] Digicel-Haiti Opposition at 1.

[32] *Id.* at 3.

[33] *Id.* at 3 n. 2.

[34] *Id.* at 3.

[35] *Id.*

[36] UPM Motion at 13-17.

[37] Digicel-Haiti Opposition at 3.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

contort common law fraud doctrine to reach such functional, automatic data exchanges. This is reason enough to grant UPM's motion. Digicel-Haiti is basing its fraud claim on communications that were not "representations," and that therefore cannot support a finding of fraud.

To be clear: whether or not there is any relevant precedent, it makes no sense to contort common law fraud doctrine to reach the technical data exchanges between UPM's devices and Digicel-Haiti's network. The point of UPM's citations of cases from analogous areas of the law was to show how courts had addressed similar questions and to provide potential guidance in dealing with the "one-of-a-kind, first-of-its-kind" situation presented by this case. In this regard, UPM disagrees that it takes "mental gymnastics … of Olympic proportions" to see the relevance of the cases it cited,[38] but either way, UPM is confident that the Court will be able to do so.[39]

The only authority that Digicel-Haiti cites is consistent with – and, indeed, supports – UPM's argument. Digicel-Haiti cites a definition of "representation" from ORS § 646.608(2), a statute dealing with certain unlawful trade and business practices.[40] Fair enough. But the definition on which Digicel-Haiti relies reads: "A representation … may be any manifestation of *any assertion* by words or conduct … ."[41] In other words, a "representation" has to be a communication of some *content* – an "assertion."[42] This confirms UPM's point: because technical, functional

---

[38] *See* Digicel-Haiti Opposition at 3 n.2.

[39] Accepting Digicel-Haiti's analogy, what matters is not the complexity of UPM's mental gymnastics, but rather whether it sticks the landing. *Cf. Verizon v. FCC,* 740 F.3d 623, 643 (D.C. Cir. 2014) (in response to a Verizon argument that an FCC ruling should be vacated because its reasoning was an overly complex "triple-cushion shot," the D.C. Circuit – upholding the FCC on the point in question – noted that "although perhaps more difficult to complete," a successful triple-cushion shot "counts the same as any other shot").

[40] *See* Digicel-Haiti Opposition at 3. Digicel-Haiti actually mis-cites the statute, referring to Or. Rev. State *647*.608(2), which as far as UPM can determine, does not exist.

[41] ORS § 647.608(2) (emphasis added).

[42] Merriam-Webster defines an "assertion" as "a declaration that something is the case." https://www.merriam-webster.com/dictionary/assertion (definition b) (last visited December 15, 2021). The technical data exchanges between UPM's devices and Digicel-Haiti's network and systems were not "declaring" anything.

Page 8 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

device-to-device exchanges of information do not "assert" anything, they cannot be viewed as "representations." UPM's arguments on this point apply with full force even if one accepts Digicel-Haiti's proposed definition of a "representation" as an "assertion" of something.[43]

### C. Making Bypass Calls Was Not Fraud

As just shown, Digicel-Haiti has no cogent, reasoned response to UPM's demonstration that it did not "represent" anything to Digicel-Haiti. Instead, Digicel-Haiti waves its rhetorical arms and says that every time UPM placed a bypass call on Digicel-Haiti's network, that was inherently, intrinsically fraudulent.[44] There are a range of problems with this argument.

### 1. No Precedent Supports The Conclusion That Bypass Constitutes Fraud, And There Are Good Reasons To Reject That Conclusion

First, as noted above, Digicel-Haiti has no case support for its theory that bypass calls are somehow intrinsically fraudulent. Internet-enabled in-country bypass by United States carriers seeking to avoid high international call termination rates has been going on since at least the mid-1990s.[45] If bypass were fraud, there should be any number of cases – or at least one case – so holding. In fact, there are none. In this same vein, up until 2003, the FCC made itself available as a forum for foreign governments and entities to complain that United States carriers were violating foreign restrictions on competition, including, specifically, tactics they used to bypass the international settlements regime.[46] Yet there is no record of any complaint ever being brought

---

[43] Digicel-Haiti also completely misunderstands UPM's point about potential misrepresentations by means of a "half-truth." Digicel-Haiti Opposition at 4-5; *see* UPM Motion at 22. UPM's point is that cases addressing "half-truths" all involve a human being on the receiving end of the communication, and that the "half-truth" doctrine cannot be applied to device-to-device transmissions of the sort at issue in this case. When one device sends technical, functional data to another device in accordance with a scripted protocol, that cannot be a "half-truth" because the recipient device – as opposed to a human recipient – cannot form any (erroneous) mental impressions from, or draw any (erroneous) conclusions from, the information it receives.

[44] Digicel-Haiti Opposition at 3-6.

[45] *See 1998 International Settlements Order, supra,* at ¶ 63 & n.119.

[46] *Enforcement of Other Nations' Prohibitions Against the Uncompleted Call Signaling Configuration of International Call-back Service et al.,* Order, 18 FCC Rcd 6077 (2003) (*2003*

---

Page 9 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

to the FCC to address the supposed fraud of bypass, much less any FCC ruling condemning bypass as fraudulent. The complete lack of precedent supporting Digicel-Haiti's core claim that bypass is inherently fraudulent (because it misrepresents an international call as a local call) should give the Court pause.

While there is no case addressing whether the tort of fraud encompasses bypass, UPM (at the risk of being accused of raising yet another "irrelevant," "entirely inapposite" and "highly distinguishable" case requiring "Olympian mental gymnastics" to understand) respectfully refers the Court to *Intel Corp. v. Hamidi*.[47] In that case, the California Supreme Court held that it would not extend the tort of trespass to chattels to the conduct of a disgruntled former Intel employee who sent anti-Intel emails to current Intel employees, at their work email addresses, using Intel's email system.[48] The California Supreme Court rejected Intel's request to declare Hamidi's conduct to be tortious in the face of uncontradicted evidence that Hamidi had been told that Intel did not want him sending emails to its employees; that Intel had made efforts to block Hamidi's emails; and that Hamidi had taken affirmative steps to evade Intel's blocking efforts.[49] In rejecting the claim that it was tortious for Hamidi to disregard Intel's known publicly stated desires and to evade Intel's blocking efforts, the court explained that all Hamidi was doing was using Intel's email system as the system was designed and intended to be used, without harming or overwhelming it (as, for example, a massive flood of spam might do).[50] Here – by analogy – UPM

---

*Settlements Order*) (reconsidering and rejecting former policy permitting such complaints). For the convenience of the Court, a copy of the 2003 Settlements Order (which was previously cited in the UPM Opposition (Communications Act), p. 21-23, n. 68) is attached as Exhibit 4 to the Declaration of Christopher Savage in Support of Motion for Summary Judgment Replies ("Reply Dec."), filed concurrently herewith; and the corresponding Notice of Proposed Rulemaking (UPM Opposition (Communications Act), p. 21, n. 67) is also attached as Exhibit 5 thereto. *See* Reply Dec, ¶¶ 6-7, Exs. 4-5.

[47] 30 Cal. 4th 1342, 71 P.3d 296 (2003).

[48] *Id.*

[49] 30 Cal. 4th at 1349; 71 P.3d at 301.

[50] 30 Cal. 4th at 1353-56; 71 P.3d at 301-06. As relevant to our case, this shows that when a user

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

was doing nothing more than using Digicel-Haiti's network exactly as that network was designed and intended to be used – to complete telephone calls made using valid SIM cards with topped-up money in their accounts. It makes no more sense to extend the common-law tort of fraud in Oregon to cover such conduct that it did to extend the common-law tort of trespass to chattels in California to cover sending unwanted, unauthorized messages to Intel's email system.[51]

### 2. Digicel-Haiti's Purported Inference That Bypass Calls Were Really Local Was Unwarranted Both In Light Of The Limited Scope Of What UPM "Represented" And In Light Of What Digicel-Haiti Knew

Contrary to Digicel-Haiti's argument, the fact that an in-country bypass call is actually an inbound international call does not mean that when UPM made such calls, it was (falsely) asserting that they were local. As Digicel-Haiti sees it, the fact that UPM was "presenting calls to Digicel-Haiti's network … as local when they in fact originated internationally" was a "representation[] made to Digicel-Haiti," and "[e]very call [UPM] sought to connect to the Digicel-Haiti network constituted a representation."[52] The problem with this theory is that UPM never said or did anything that conveyed any information about the status of its calls as bypass or local.

Digicel-Haiti does not dispute UPM's factual presentation regarding what information was and was not communicated to Digicel-Haiti when UPM made a call. This means that it is undisputed that UPM conveyed nothing to Digicel-Haiti about where the SIM card used

---

evades a system owner's blocking efforts, that does not support a finding of liability if the use of the system that the user is seeking to make is not itself tortious. Here, UPM had legitimately purchased access to Digicel-Haiti's network (by buying SIM cards and top-ups) and used that access to make phone calls. *Hamidi* thus counsels that UPM's efforts to avoid Digicel-Haiti's blocking should not be construed to support liability in this case.

[51] *Cf.* Lawrence Lessig, CODE AND OTHER LAWS OF CYBERSPACE (1999). Professor Lessig developed the idea that in online environments, "code is law," meaning that users cannot (except by hacking) escape the constraints imposed by a system's architecture. Here, UPM did not engage in any hacking, and instead used Digicel-Haiti's network in accordance with its technical design and constraints. *See also* Orin Kerr, Cybercrime's Scope: Interpreting "Access" and "Authorization" in Computer Misuse Statutes, 78 N.Y.U.L. Rev. 1596, 1602, 1644-46 (2003) (distinguishing between circumventing "code based restrictions," which should be construed to violate 18 U.S.C. § 1030, versus breaching contract-based restrictions, which should not).

[52] Digicel-Haiti Opposition at 3.

Page 11 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

to authenticate a call was located, where the call itself ultimately originated, whether the call was transported to Haiti via the Internet, etc. Not only did UPM not communicate that information, it could not have done so, because all of the communications at issue were scripted, technical data exchanges (a fact that Digicel-Haiti also does not dispute). Instead, when UPM made a call, to the extent its functional data transmissions contained any content at all, it was both limited and true: "Here is a valid SIM card. The connection to your network is via this cell site. Please complete a call to this number." Nothing in Digicel-Haiti's Opposition – and, indeed, nothing Digicel-Haiti has ever presented since this case began – explains why it made any sense for Digicel-Haiti to *interpret* the fact that UPM (or anyone else) made a phone call as meaning that the caller was conveying, suggesting, or implying anything about the ultimate origin of the call.

This reveals the key problem with Digicel-Haiti's attack on UPM's argument about reliance. It was not unreasonable for Digicel-Haiti to rely on the information UPM's devices actually conveyed – the basic data described above. To the extent that UPM conveyed information to Digicel-Haiti, that information was true. But it *was* unreasonable for Digicel-Haiti to leap from those simple "representations" to the conclusion that UPM was saying that the calls originated in Haiti. That conclusion is simply a *non sequitur*. None of the information that UPM conveyed when making a call suggests or implies anything at all about the ultimate origination point of the call.

Undeterred – and given that all it has to work with is the fact that calls were being made – Digicel-Haiti tries to conjure a false representation out of whole cloth by simply proclaiming that it will unilaterally choose to interpret the fact that a call was made, as a representation that the call originated in Haiti. But this is circular, an attempt to impose liability by fiat. In Digicel-Haiti's telling, callers are supposedly "representing" that calls originate in Haiti not by virtue of anything they say or do, but entirely by virtue of Digicel-Haiti's say-so. Just as Humpty-Dumpty haughtily declared that a word "means just what I choose it to mean,"[53] Digicel-

---

[53] Lewis Carroll (Charles L. Dodgson), THROUGH THE LOOKING-GLASS 205 (1934).

Haiti petulantly claims that it has the right to decide that the fact that a phone call is made means just what Digicel-Haiti chooses it to mean. But nothing – certainly not the common law of Oregon – gives it that right.[54]

On the merits, so to speak, Digicel-Haiti does not have, and never has had, any reason to think that its interpretation is reasonable. It knows that in-country bypass calls are technically indistinguishable from local calls.[55] It knows that a large fraction of the calls on its network are, in fact, inbound international bypass calls.[56] It knows that the SIM card being used to authenticate a call is valid and has money in its account. And it knows which cell site the caller's radio is connected to.[57] But that's it. It knows that it **does not know** where the SIM card being used to authenticate the call is located.[58] And it knows that there is no technical means by which a caller can convey any information about where a call ultimately originated.[59] This means that Digicel-Haiti is wrong to claim that any time UPM made a call on Digicel-Haiti's network, that was a representation that the call was local. There are simply no rational, evidence-based grounds on which Digicel-Haiti – knowing what it knew – could conclude that someone making a call on its network was somehow implicitly asserting that the call was a local call.

It bears emphasis that what was unreasonable and unjustifiable here was not Digicel-Haiti relying on the accuracy of the information that it actually received from a wireless device when someone made a call. ("Here is a valid SIM card. The connection to your network is

---

[54] *See* UPM Motion at 24-25.

[55] ECF #258, Digicel(I) Depo., 146:10-24; Savage Opp. Dec., Ex. 1, McEwen Depo., 126:15-127:1.

[56] UPM Motion at 26.

[57] *Id.* at 27.

[58] *Id. See* Transcript of Digicel-Haiti's Rule 30(b)(6) corporate representative Gerard Pierre Laborde ("Digicel(II) Depo."), 20:11-21.

[59] *See* Digicel(II) Depo., 12:6-15 (authentication occurs using steps from GSM standard); *id.* 18:3-26:1 (describing information available to the network from a call); Tran UPM Dec., ¶ 22, 24, 29. *See also* UPM Motion at 13-17, 21 (noting the technical parameters involved in authenticating a SIM card and making a call).

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

via this cell site. Please complete a call to this number.") To the extent that these functional statements can be treated as "representations" at all, they are true. What was unjustifiable and unreasonable was for Digicel-Haiti to rely on those minimal "representations" to infer a further representation that the call is local. No such further representation was ever made, whether by UPM or by anyone else. In other words, what is unjustifiable was *not* Digicel-Haiti's reliance on the truth of the "representations" that UPM (or its devices) actually *made.* What was unjustifiable was the *inference* that Digicel-Haiti claims to have made based on those true representations. And it is Digicel-Haiti's knowledge and sophistication regarding how its own network works that shows that its inference was entirely unwarranted.[60]

The facts are not disputed: UPM never "represented" anything to Digicel-Haiti about the location of the SIM cards being used to authenticate calls, about whether the calls had made it to Haiti via the Internet, about whether the calls were bypass calls, or about where the calls ultimately originated. And Digicel-Haiti – because it was a sophisticated and experienced network operator – knew the technical limitations of what UPM's wireless devices could and could not "say" to the network. It therefore knew that UPM was not making any such representations, knew that bypass calls looked just like local calls, and knew that a substantial portion of the traffic on its network was bypass traffic. To prevail on its fraud claim, however, Digicel-Haiti – in the face of those undisputed facts – has to prove by *clear and convincing evidence* that it was justified in inferring, from the bare technical data that UPM's devices conveyed, that UPM was actually saying that its calls were local. Digicel-Haiti has presented no evidence at all, much less clear and convincing evidence, that any such inference was justified. To the contrary, on this record, no rational trier of fact could possibly reach that conclusion. Digicel-Haiti, therefore, cannot satisfy the "justifiable reliance" element of common-law fraud.

---

[60] *See Cocchiara v. Lithia Motors, Inc.*, 353 Or. 282, 297 P.3d 1277 (2013); *Or. Pub. Emples. Ret. Bd. v. Simat, Helliesen & Eichner,* 191 Or. App. 408, 428, 83 P.3d 350, 362 (2004).

### 3. Nothing Bad Will Happen If The Court Concludes That Digicel-Haiti's Inferences Were Unjustified

Digicel-Haiti complains that UPM's argument means that no victim of fraud "could ever hold a perpetrator responsible … [b]ecause the historical fact of the existence of such [fraud] means there can be no reliance on the fraudulent conduct in the future."[61] This is wrong, and misses the point. The question is whether Digicel-Haiti was justified in relying on the bare fact that UPM made telephone calls, and the associated highly limited device-to-device "representations" involved in that process, to conclude that those telephone calls were not bypass calls. It was not, for the reasons noted above. Whether in general it is reasonable for an (alleged) victim of fraud to have relied on the truth of particular representations to draw particular conclusions depends on the situation – what the representations were, the level of sophistication of the (alleged) victim, and the surrounding circumstances.[62] The fact that it made no sense for Digicel-Haiti to rely on the fact that calls were being made on its system to conclude that all of those calls were local, does not mean that a repeated victim of (say) door-to-door conmen would never have a fraud case. Each (alleged) fraud perpetrated by the conmen (or by the same conman over and over) would need to be evaluated based on what the conman said, how he said it, and other relevant circumstances – as would any inferences or conclusions the (alleged) victim derived from whatever actually *true* statements the (alleged) conman made. UPM's argument is not a free pass for repeat offenders.

To be fair, though, Digicel-Haiti has at least part of a point. UPM's argument would establish a precedent holding that in-country bypass, is not common-law fraud. But this should not deter the Court from accepting UPM's argument. The fact that Internet-based in-country bypass is not fraud does not mean that there is no solution to the problem of bypass (taking Digicel-Haiti's view that bypass is a problem). As UPM has explained, all Digicel-Haiti has to do to make in-country bypass actionable is to require its subscribers to assent to a contract that explicitly bans

---

[61] Digicel-Haiti Opposition at 5-6.

[62] *Cocchiara, supra; Or. Pub. Emples. Ret. Bd., supra,* 191 Or. App. at 428, 83 P.3d at 362.

Page 15 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

that conduct.[63] Then if a subscriber does it anyway, they can be sued for breach of contract.[64]

### D. Digicel-Haiti's "Reliance" Argument Shows That Its Real Claim Sounds In Breach Of Contract

There is an additional problem with UPM's claim that it was somehow "relying" on "representations" that UPM's calls were local in origin. It claims that it "would have behaved differently" – presumably, not completed the calls – if it had known that the calls were really in-country bypass.[65] The problem is that there was no way – and Digicel-Haiti presents no facts suggesting there *was* a way – for someone making a call on its network to "tell" the system that the call is not purely local. Digicel-Haiti's claim that it would not have completed bypass calls, therefore, is not a fact established by any evidence; it is merely argument of counsel. In fact, the technical protocols for authenticating a SIM card and using it to make calls do not have a data parameter for "bypass" or "not bypass."[66] This means that Digicel-Haiti's claim that it would not have completed bypass calls, had it only known their nature, is no more meaningful than someone claiming that "had they known" the winning numbers they would have won the lottery.[67]

---

[63] UPM Motion at 10-11, 18-19, 23-25; UPM Opposition (Fraud) at 3-4.

[64] In this regard, Digicel-Haiti attaches what it claims are "Terms and Conditions" associated with its prepaid wireless services. Digicel-Haiti Opposition at 11. Digicel-Haiti provides no evidence suggesting that the purported "Terms and Conditions" were ever presented to, or would be binding on, UPM. But even if they are enforceable as an abstract matter, they are unenforceable to the extent that they would prevent UPM from reselling Digicel-Haiti's RLYH service in the United States, because the FCC has banned restrictions on resale.

[65] Digicel-Haiti Opposition at 4, *quoting Martell v. GM LLC*, 492 F. Supp. 3d 1131, 1143 (D. Or. 2020).

[66] *See* Digicel(II) Depo., 12:6-15 (authentication occurs using steps from GSM standard); *id.* 18:3-26:1 (describing information available to the network from a call); Tran UPM Dec., ¶ 22, 24, 29. *See also* UPM Motion at 13-17, 21 (noting the technical parameters involved in authenticating a SIM card and making a call).

[67] The fact that there is no way for a caller to identify a call as bypass readily leads to absurd speculation about how Digicel-Haiti should have been told. Should UPM have sent emails saying "the call being made using SIM card ID 123ABC is a bypass call"? Should it have called up Digicel-Haiti's Network Operations Center and told whomever was on duty? Digicel-Haiti's only possible response – that UPM should not have been engaging in bypass at all – proves UPM's

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

The fact that there is no technical means by which callers can convey to Digicel-Haiti the information it claims to want means that Digicel-Haiti could not have prevented any individual bypass call from being completed. In reality, the only thing Digicel-Haiti can "know" is that a SIM card is being used in a way that looks like bypass, and then block the SIM card from making calls. A moment's reflection, however, reveals that this situation – Digicel-Haiti can block SIM cards but not individual calls – shows what Digicel-Haiti is really saying: "No SIM card on my network may be used for in-country bypass." Digicel-Haiti is free, in the abstract, to impose that condition on its subscribers *by contract*. Indeed, the technical characteristics of Digicel-Haiti's service mean that a contract-based restriction is probably the *only* practical way for Digicel-Haiti to impose an actionable legal obligation on its subscribers to not engage in in-country bypass. Digicel-Haiti has chosen not to structure its business so as to impose such restrictions by contract, but that does not mean that it can magically impose them, after the fact, by means of a fraud claim.[68]

### E.  UPM's Bypass Activity Did Not Violate FCC Policy

Digicel-Haiti asserts (without explanation or citation) that UPM's bypass activity "violates FCC … policy."[69] This is obviously wrong. The FCC stated in 2003 that its "standing policy" is "to encourage competition in all markets, both developed and developing;" that its "pro-competitive … policy … extends to the international marketplace, embraces free and open competition, and benefits U.S. consumers as well as the global community by ensuring lower

---

point. *See infra.*

[68] The fact that there was no way to communicate the status of a given call as "bypass" or "not bypass" undermines Digicel-Haiti's fraud claim from another angle as well. Fraud is an *intentional* tort. To be liable for fraud, the liar must have intended to lie, the half-truth-teller must have chosen to reveal only part of the truth, or the concealer must have chosen to hide material facts. But at no point in making any call did UPM choose to lie, to hold back facts, or to conceal anything. To the contrary, it simply used the service as Digicel-Haiti designed it, configured it, and provided it. Because UPM could not have provided the information Digicel-Haiti claims to have wanted, it cannot be held to have intentionally failed to provide it.

[69] Digicel-Haiti Opposition at 1.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

prices, new and better products and services, and greater consumer choice;" and that "eliminating [anti-consumer, anticompetitive] prohibitions enhance[s] competition throughout the global marketplace."[70] By bypassing Digicel-Haiti's unreasonably high call termination rate, UPM was enacting and supporting FCC policy.[71]

## III. AT A MINIMUM, THE COURT SHOULD GRANT UPM'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE FRAUD CLAIM

### A. Partial Summary Judgment Is Appropriate For "Parts Of" A Claim

Contrary to Digicel-Haiti's claim,[72] there is nothing procedurally improper about UPM's motions for partial summary judgment. Rule 56(a), as amended in 2010, expressly states that a party may seek summary judgment on "***part of [a] claim or defense***." This is flatly inconsistent with Digicel-Haiti's notion that summary judgment is only permissible on an entire claim.[73] Digicel-Haiti cites no cases from after the new version of Rule 56(a) took effect to support

---

[70] *2003 Settlements Order, supra* at ¶¶ 10-12.

[71] To the extent that Digicel-Haiti is alluding to its argument that either the FCC or international comity calls for United States carriers to abide by foreign anticompetitive restrictions, that is also plainly wrong. *See* UPM Opposition (Communications Act) at 17-18, 21-25. Indeed, because UPM's activity is so clearly in accord with the FCC's pro-competitive policies, the Court should apply so-called *Skidmore* deference and conclude that the common law tort of fraud in Oregon should not be extended to cover bypass activity. As UPM has noted in other filings, *Skidmore* deference calls on courts to consider the well-reasoned views of the regulatory agency with authority over a given area. *See United States v. Mead Corp.,* 533 U.S. 218, 227-228, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001) ("agencies charged with applying a statute necessarily make all sorts of interpretive choices, and while not all of those choices bind judges to follow them, they certainly may influence courts facing questions the agencies have already answered. The well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance, and we have long recognized that considerable weight should be accorded to an [agency's] construction of a statutory scheme it is entrusted to administer") (internal quotations and citations omitted); *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40, 65 S. Ct. 161, 89 L. Ed. 124 (1944).

[72] Digicel-Haiti Opposition at 6-7.

[73]*Id*. In describing the 2010 amendments to the rule, the Advisory Committee stated: "The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case ***but also as to a*** claim, defense, or ***part of a claim or defense***." (emphasis added). *See Alifax Holding SpA v. Alcor Sci., Inc.,* 357 F. Supp. 3d 147, 154-55 (D.R.I. 2019)

---

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

its crabbed view, which suggests that the cases on which it relies are out of date. In any event, the rule Digicel-Haiti argues for – that partial summary judgment is permitted only for entire claims within a case – is inconsistent with Ninth Circuit precedent.[74] Moreover, there are any number of district court cases from within the Ninth Circuit rejecting that view.[75] Where there is no material dispute as to the facts, therefore, this Court may and should grant partial summary judgment as to those facts and to the "part[s] of" the claims or defenses to which they relate.

_____

(quoting Advisory Committee note to 2010 amendment to Rule 56(a)).

[74] *Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 768-69 & n.3 (9th Cir. 1981) ("It is clear that Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim") *quoting* 6 Moore's Federal Practice (hereinafter Moore's) P 56.20(3.-2) (2d ed. 1976). Note that the language permitting summary judgment as to "part of" a claim has been in Rule 56 for decades; the amendment in 2010, promoting that language to subsection (a) of the Rule, was intended to ***clarify*** that summary judgment as to less than an entire claim is appropriate.

[75] *See, e.g., Ibanez v. Bettazza,* 2013 U.S. Dist. LEXIS 44531 [*20]-[*24] (D. Or. 2013) (noting that Rule 56 permits partial summary judgment as to a "part of each claim or defense" and even to establish particular facts as undisputed); *Heather v. Allstate Prop. & Cas. Ins. Co.,* 2020 U.S. Dist. LEXIS 415 [*12] (W.D. Wash. 2020) (Rule 56(a) "expressly permits a party to seek partial summary judgment by 'identifying . . . the part of each claim or defense . . . on which summary judgment is sought.' Fed. R. Civ. P. 56 … . Plaintiffs may seek summary judgment on specific factual questions"); *Collinge v. IntelliQuick Delivery, Inc.,* 2015 U.S. Dist. LEXIS 35860, [*3] (D. Ariz. 2015) ("A party may move for partial summary judgment pursuant to Rule 56(a) by identifying the ***part of each claim*** on which summary judgment is sought") (emphasis added); *Crime v. Smith,* 2013 U.S. Dist. LEXIS 98628, [*26] (E.D. Cal. 2013) ("The partial summary judgment . . . . procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit") *quoting Lies, supra*; *Sahakian v. City of Glendale,* 2020 U.S. Dist. LEXIS 80944, [*5]-[6] (C.D. Cal. 2020) ("Summary adjudication, or partial summary judgment on 'part of each claim or defense' is appropriate where there is no genuine dispute of material fact as to that portion of the claim"); *citing Lies, supra; Alphonsis v. Century Reg'l Det. Facility,* 2011 U.S. Dist. LEXIS 195197, [*10] (C.D. Cal. 2021) (same). *See also Alifax Holding SpA, supra,* 357 F. Supp. 3d at 154-55 ("Rule 56(a) expressly authorizes a party to seek partial summary judgment on '***part*** of each claim or defense.' The term 'judgment' in this context is often a misnomer. A partial summary judgment is merely an order deciding one or more issues in advance of trial; it may not be a judgment at all, let alone a final judgment on a separate claim. The 2010 amendments to Rule 56(a) comport with this understanding. See Fed. R. Civ. P. 56, advisory committee notes to 2010 amendments ("The first sentence is added to make clear . . . that summary judgment may be requested . . . as to a claim, defense, ***or part of a claim or defense***.") (citations and internal quotations omitted; emphasis in original).

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

### B. Digicel-Haiti Does Not Contest UPM's Motion For A Ruling That RLYH Resale Was Not Fraudulent

Digicel-Haiti made no substantive response to UPM's motion for partial summary judgment that RLYH resale was not fraudulent.[76] It does not dispute that all RLYH resale calls were routed and charged as international calls and does not dispute that it was not damaged by RLYH resale. Its discussion of roaming is limited to its argument about its status as a carrier,[77] and its discussion of RLYH is limited to its opposition to UPM's motion regarding the effect of blocking UPM's SIM cards.[78] It has thus conceded that RLYH resale is not fraudulent.

### C. Digicel-Haiti Does Not Contest UPM's Motion Regarding Its Non-Monetary Damages Claims

Digicel-Haiti made no substantive response to UPM's motion for a ruling that UPM did not impose any damages on Digicel-Haiti arising from stress on its network, from the cost of investigating bypass, or from harm to its reputation or good will.[79] Digicel-Haiti has thus conceded this aspect of UPM's Motion as well.

### D. There Is No Material Dispute As To How Much Traffic UPM Sent To Digicel-Haiti Via In-Country Bypass And Via RLYH Resale.

UPM explained that it had detailed, contemporaneous, automatically-generated business records of each call it ever sent to Digicel-Haiti.[80] By contrast, Digicel-Haiti made clear in a stipulation of counsel, in the presence of and based on the testimony of its Rule 30(b)(6) witness, that it had no records relevant to this issue.[81] Digicel-Haiti claims that there are disputed factual issues regarding the determination of damages, but it cites nothing – not a single document,

---

[76] UPM Motion at 28-29.

[77] *See* Digicel-Haiti Opposition at 10.

[78] *See id.* at 10-11.

[79] UPM Motion at 32-34.

[80] *Id.* at 29-31; Tran UPM Dec., ¶¶ 31-34 and Exhibit 1.

[81] *Id.* at 29-30

Page 20 – DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

declaration, or scrap of deposition testimony – to actually dispute UPM's factual showing. To dispute that showing, however, Digicel-Haiti was required to come forward with ***admissible evidence*** showing that there was a real dispute as to these material facts.[82] It has not done so, and this failure alone is a sufficient basis for the Court to grant UPM's Motion. UPM, however, briefly addresses Digicel-Haiti's arguments below.

First, Digicel-Haiti makes the peculiar claim that "the parties have presented dueling expert reports on the issue of damages."[83] Even if this were true, it would be irrelevant to the purely factual question of how much traffic UPM sent to Digicel-Haiti. Notably, Digicel-Haiti cites nothing in its "expert report" that would throw doubt on UPM's contemporaneous business records. This is not surprising, because its expert did not review any information specific to UPM in preparing his report,[84] and indeed conceded that "UPM knows and only UPM can know" what UPM did in Haiti.[85] Digicel-Haiti's expert thus ***agrees*** with UPM that the facts regarding how much traffic UPM sent to Digicel-Haiti will need to be established through UPM's records.

But it is not actually true that UPM and Digicel-Haiti have presented "dueling expert reports" regarding Digicel-Haiti's fraud damages. Digicel-Haiti's expert, Mr. Castel, addressed Digicel-Haiti's ***fraud claim.*** UPM's expert, Mr. Wood, addressed UPM's ***Communications Act claim,*** and did not discuss the fraud claim at all.[86] With regard to Digicel-

---

[82] *Anderson v. Liberty Lobby, Inc., supra; Gonsalez v. Amsberry, supra; Bell v. Cameron Meadows Land Co., supra.*

[83] Digicel-Haiti Opposition at 8. UPM does not, at this point in the litigation, agree that Digicel-Haiti's purported expert is qualified as an expert on any relevant issue, nor does it agree that, even if Mr. Castel is an expert, his report or any views or opinions embodied in it are admissible. UPM will address these issues as appropriate later in the case.

[84] *See* Deposition of Charles Castel, 75:24-76:2.

[85] *Id.,* 112:17-19; *see also id.,* 121:9-20. This is actually not quite correct. If Digicel-Haiti's normal business records had not been lost or corrupted, once UPM had identified to Digicel-Haiti which SIM cards UPM had used, Digicel-Haiti could have looked to its own records to cross-check UPM's records regarding how many minutes of traffic had been completed using each SIM card.

[86] *See* Expert Disclosure of Don Wood, pages 1-4.

Page 21 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Haiti's fraud damages, Mr. Wood and Mr. Castel are not "dueling" over anything. And as noted above, Mr. Castel agrees that only UPM has actual data regarding how much traffic it sent to Digicel-Haiti.

Next, Digicel-Haiti states that it may need to rely on "some circumstantial evidence" with regard to its fraud damages.[87] Even if that is true, merely stating it is not enough to defeat a summary judgment motion. UPM has presented specific admissible evidence based on its contemporaneous business records showing how much traffic it sent to Digicel-Haiti. To contest that factual showing, Digicel-Haiti was obliged to present admissible evidence – circumstantial or not – that would rebut or undercut UPM's evidence, and thereby create a triable issue of fact.[88] It has completely failed to do so.

Digicel-Haiti then says, albeit with some delicacy, that UPM is lying about its evidence.[89] Digicel-Haiti is, UPM supposes, entitled to hold whatever opinion on that topic that it wants.[90] But in the context of a summary judgment motion, Digicel-Haiti is obliged to come forward with **admissible evidence** showing that there is some problem with the evidence that UPM has presented.[91] "I don't believe you" is not a valid argument against summary judgment.

In sum, not only has Digicel-Haiti failed to come forward with any admissible

---

[87] Digicel-Haiti Opposition at 8.

[88] *Anderson v. Liberty Lobby, Inc., supra; Gonsalez v. Amsberry, supra; Bell v. Cameron Meadows Land Co., supra.*

[89] Digicel-Haiti Opposition at 8 ("[I]t is simply unreasonable for Digicel Haiti to believe that UPM is being 100 percent forthright and forthcoming regarding *all* of its activity in Haiti") (emphasis in original).

[90] UPM submits that this is a problem of Digicel-Haiti's own making. If it had not lost its records, Digicel-Haiti would have been able to confirm the accuracy of UPM's records showing how much traffic it had sent to Digicel-Haiti using which SIM cards, which would have, perhaps, built a modicum of trust between the parties. Unfortunately, Digicel-Haiti's self-induced ignorance seems to have fueled its (somewhat paranoid) fantasies about the scale of UPM's activities.

[91] *Anderson v. Liberty Lobby, Inc., supra; Gonsalez v. Amsberry, supra; Bell v. Cameron Meadows Land Co., supra.*

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

evidence to contest UPM's figures regarding the scope of its operations in Haiti, its own expert has conceded that "only UPM can know" this information. Summary judgment for UPM on this point is therefore entirely warranted.

### E. The Question Of How To Calculate Digicel-Haiti's Direct Monetary Damages Is Purely A Question Of Law And Is Appropriate For Summary Judgment.

UPM explained that damages for fraud are measured using the "out-of-pocket" rule, and based on that rule, moved for summary judgment as to how to calculate Digicel-Haiti's damages.[92] This presentation seems quite straightforward: start with the $0.23 per minute that Digicel-Haiti claims it was entitled to, subtract the $0.05 per minute that Digicel-Haiti would have had to pay to the Haitian government, and subtract the amounts that UPM paid to use Digicel-Haiti's network. This reflects the money that Digicel-Haiti was supposedly entitled to, minus the money it got. That difference undoubtedly reflects Digicel-Haiti's "out-of-pocket" damages.[93]

Digicel-Haiti does not present any factual material to suggest anything amiss with UPM's calculation, which alone shows that this issue is appropriate for summary judgment. Instead, Digicel-Haiti vaguely gestures at what amount to legal or policy claims, without ever fleshing them out. But this is plainly not enough to deny UPM's Motion.

First, Digicel-Haiti argues that the $0.23 per minute figure is a floor rate, not a maximum rate,[94] evidently alluding to some speculative possibility that it could have or would have received more than that, in some unspecified situation. Putting aside that this vague speculation is not admissible evidence of anything, it also ignores the fact that the $0.23 is the *maximum rate that any United States carrier is allowed to pay.*[95] There is no conceivable basis

---

[92] UPM Motion at 31-32, *citing Morasch v. Hood,* 232 Or. App. 392, 400, 222 P.3d 1125, 1130 (2009) and *Dizick v. Umpqua Community College,* 287 Or. 303, 312; 599 P.2d 444, 448 (1979).

[93] This discussion assumes *arguendo* that UPM's bypass activity was fraudulent, such that Digicel-Haiti is entitled to damages in the first place.

[94] Digicel-Haiti Opposition at 8.

[95] *See Cable & Wireless P.L.C. v. FCC,* 166 F.3d 1224, 1228, 1232 (D.C. Cir. 1999) (noting that the FCC had "mandate[ed] the maximum settlement rates that U.S. carriers may pay" and

Page 23 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

to deny summary judgment on this point.

Second, Digicel-Haiti objects to deducting the $0.05 per minute that it owed the Haitian government for each minute of international traffic that it terminated.[96] Even aside from the fact that both its Rule 30(b)(6) witness and one of its experts agreed that this $0.05 per minute should be deducted,[97] deducting it also makes sense in light of Oregon's "out-of-pocket" rule for damages. If UPM had done exactly what Digicel-Haiti claims to want – delivered traffic using its international gateway switches at $0.23 per minute – Digicel-Haiti would only have "pocketed" $0.18 per minute, because it would have had to pay the $0.05 per minute tax. Letting Digicel-Haiti keep that $0.05 per minute as part of its damages would be a windfall. Moreover, its speculation about its tax obligations with respect to a damages award are beside the point.[98] The question of what tax obligations Digicel-Haiti might have with respect to any damages award is entirely separate from what payment would be needed to compensate it for its "out-of-pocket" losses.[99]

In any event, once UPM explained that the $0.05 per minute would need to be deducted in order to comport with Oregon's "out-of-pocket" rule for damages, the burden shifted

expressing "no doubt that the [FCC] has authority to prescribe maximum settlement rates"). In this regard, the FCC has identified, among other "indicia of potential anticompetitive conduct by foreign carriers," either increasing rates above the applicable benchmark or even establishing a purported rate floor that is below the benchmark. *Petition of AT&T Inc. for Settlements Stop Payment Order on the U.S.-Tonga Route,* Memorandum Opinion and Order, 29 FCC Rcd 4186 (2014) ("*Tonga Order*"), at ¶9. Any Digicel-Haiti argument that it could ever receive more than $0.23 per minute for calls from a United States carrier conflicts directly with binding FCC rulings. For the convenience of the Court, a copy of the *Tonga Order* (which was previously cited in the UPM Opposition (Communications Act), p. 17 n.52) is attached as Exhibit 6 to the Reply Dec. Reply Dec. at ¶ 8, Ex. 6.

[96] Digicel-Haiti Opposition at 8-9.

[97] UPM Motion at 31.

[98] Digicel-Haiti Opposition at 8-9.

[99] UPM notes that it appears that Digicel-Haiti did not pay the $0.05 per minute tax on the money it received from the bypass calls UPM made on the SIM cards that Digicel-Haiti blocked. Instead, Digicel-Haiti simply "banked" that money. Digicel(I) Depo., 145:18-146:2; *see* UPM Motion at 32. Digicel-Haiti provides no explanation as to why it would not be able to simply "bank" a damages award for the equivalent situation of money received in damages for bypass calls.

Page 24 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

to Digicel-Haiti to explain why that rule would not apply to exclude the $0.05 per minute tax. It cannot defeat summary judgment by saying that it has some theory or evidence that it might be able to present at some point in the future.

Third, in a peculiar argument, Digicel-Haiti points to the wide difference between the damages Digicel-Haiti may have sustained by virtue of UPM's bypass activities (the fraud claim), and the damages that UPM sustained by virtue of Digicel-Haiti blocking UPM's SIM cards (the Communications Act claim). It apparently thinks that this difference somehow itself indicates that there is an issue of material fact **with regard to Digicel-Haiti's fraud damages**.[100] This argument is a complete *non sequitur*.

Mr. Wood (UPM's damages expert) explained that his estimate is based on assumptions (which he specifies) regarding how many minutes of RLYH traffic UPM could have sold (resold) to its own carrier-customers, at what prices, from 2014 to the present, on the assumption that Digicel-Haiti had not engaged in illegal blocking.[101] Precisely because UPM expected there to be disputes about the assumptions underlying Mr. Wood's analysis, it did not seek summary judgment regarding damages for its Communications Act claim. Mr. Wood's analysis certainly shows that UPM experienced very substantial damages as a result of Digicel-Haiti's unlawful conduct,[102] but that figure is entirely distinct, factually and analytically, from the question of how much bypass traffic UPM completed, and thus how much UPM's bypass activity may have damaged Digicel-Haiti.

Finally, Digicel-Haiti alludes to an unspecified theory under which, apparently, it thinks it could or should get paid more than once for the same bypass call.[103] Although its thinking is not at all clear, it appears to suggest that it should be paid both the $0.23 per minute for an international call, and also its local rate for the same call. The Court should reject any such

---

[100] Digicel-Haiti Opposition at 9.

[101] *See* Wood Decl., *passim.*

[102] Mr. Wood's estimate is approximately $61,000,000.

[103] Digicel-Haiti Opposition at 10.

Page 25 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

suggestion and grant UPM's summary judgment motion on this point. Digicel-Haiti does not identify any factual disputes relevant to this question. There is no disagreement that for in-country bypass calls, UPM connected inbound international calls, delivered to Haiti via the Internet, to Digicel-Haiti's local network. UPM, therefore, used Digicel-Haiti's network one time for each call. That is an indisputable physical fact. If Digicel-Haiti believed that it had some viable legal theory, consistent with Oregon's "out-of-pocket" rule for fraud damages, that would allow it to receive a double-recovery windfall, it was obliged to put that theory forward in response to UPM's Motion. Its failure to do so constitutes a waiver of any such argument.[104]

## IV.    THE COURT SHOULD ALSO GRANT PARTIAL SUMMARY JUDGMENT THAT DIGICEL-HAITI IS A TELECOMMUNICATIONS CARRIER AND THAT BLOCKING RLYH SIM CARDS PREVENTED RESALE OF THAT SERVICE

### A.  Digicel-Haiti Is A Telecommunications Carrier Subject To The Communications Act

UPM has fully explained why the undisputed facts show that Digicel-Haiti, by virtue of offering RLYH service, is a telecommunications carrier subject to the Communications Act.[105] Digicel-Haiti offers nothing new on this score. Rather than repeat UPM's earlier arguments here, UPM respectfully refers the Court to its earlier filings.

### B.  Blocking UPM's RLYH SIM Cards Prevented UPM From Reselling RLYH Service

Digicel-Haiti does not contest that the effect of its blocking the SIM cards UPM was using for RLYH resale was to prevent UPM from reselling that service.[106] Instead, it proffers some potential legal arguments that blocking was justified. It suggests without evidence that UPM

---

[104] UPM notes that any claim that it should pay *more than* the benchmark rate of $0.23 per minute for traffic sent to Haiti would directly violate the FCC's benchmark regime, which forbids United States carriers from paying more than the applicable benchmark rate. *See Tonga Order, supra; Cable & Wireless P.L.C. v. FCC, supra*. As a result, even if Digicel-Haiti could somehow justify a payment of more than $0.23 per minute under the out-of-pocket rule for fraud damages (which it cannot), any such payments are barred by federal law.

[105] UPM Motion at 34-35; UPM Opposition (Communications Act) at 6-11.

[106] *See* Digicel-Haiti Opposition at 10-11.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

may not have owned its RLYH SIM cards; that UPM was not actually a "subscriber" of the RLYH service; or that UPM's activities may have violated RLYH terms of service.[107] These arguments, however, do not in any way undermine the hard *fact* that the effect (and purpose) of blocking the SIM cards was to keep UPM from using the RLYH service, which inevitably prevented UPM from reselling that service. Summary judgment on this point is clearly appropriate.

## V.     CONCLUSION

Digicel-Haiti's opposition to UPM's motion for summary judgment is unfounded. The Court should grant UPM's Motion by dismissing Digicel-Haiti's fraud claim in its entirety, and grant UPM's requested partial summary judgments with respect to UPM's Communications Act claim. If the Court does not entirely dismiss Digicel-Haiti's fraud claim, then it should grant UPM's requested motions for partial summary judgment with respect to that claim.

Dated: December 20, 2021.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

---

[107] *See id.* at 11.

Page 27 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00615884.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2021, I served the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the following individuals by electronic service to said individuals:

| | |
|---|---|
| Robert C.L. Vaughan | Anne M. Talcott |
| Cherine Smith Valbrun | Kathryn E. Kelly |
| Leah Storie | Schwabe, Williamson & Wyatt, PC |
| Kim Vaughan Lerner LLP | Pacwest Center |
| One Financial Plaza | 1211 SW 5th Ave., Suite 1900 |
| 100 SE Third Avenue • Suite 2001 | Portland, OR  97204 |
| Fort Lauderdale, FL 33394 | Email: atalcott@schwabe.com |
| Email: rvaughan@kvllaw.com | Email: kkelly@schwabe.com |
| Email: cvalbrun@kvllaw.com | |
| Email: lstorie@kvllaw.com | |

Dated: December 20, 2021.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
   Kathryn P. Salyer, OSB #883017
   Eleanor A. DuBay, OSB #073755
   Blake Van Zile, OSB #184672
   ksalyer@tomasilegal.com
   edubay@tomasilegal.com
   bvanzile@tomasilegal.com
   Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
   Christopher W. Savage, D.C. Bar #362657
   chrissavage@dwt.com
   Telephone: (202) 973-4200
   *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 1 of 1 – CERTIFICATE OF SERVICE
UPM-L1\00605125.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236