**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
**Kathryn E. Kelly**, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
**Cherine Smith Valbrun** (*Pro Hac Vice*)
E-mail: cvalbrun@kvllaw.com
E-mail: emailservice@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL 33316
Telephone: 954.527.1115
Facsimile: 954.527.1116

　　　*Attorney for Plaintiff, Unigestion Holdings, S.A.,*
　　　*a foreign corporation, d/b/a Digicel Haiti*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A., d/b/a DIGICEL HAITI**, | No. 3:15-cv-00185-SI |
| 　　　Plaintiff and Counterclaim Defendant, | |
| 　　v. | **PLAINTIFF UNIGESTION HOLDINGS, S.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS** |
| **UPM TECHNOLOGY, INC., *et al.*,** | |
| 　　　Defendants and Counterclaim Plaintiffs. | **ORAL ARGUMENT REQUESTED** |

UNIGESTION HOLDINGS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT ON DEFENDANT UPM
TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

## I.    UPM'S ENTIRE COUNTERCLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

UPM admits and agrees that its claims related to any conduct on the part of Digicel Haiti taking place before March 1, 2014, are barred.  It asks that the Court stop there and allow all post-March 2014 claims, bottomed on the exact conduct, to proceed.  Essentially, UPM is asking the Court to find that Section 415 was somehow equitably tolled because UPM rolled out a new type of fraud without knowing if that new fraud would be more successful.  The case relied on by UPM, *Communs. Vending Corp. of Ariz., Inc. v. FCC*, is easily distinguished.  On its face, Section 415(b) differentiates between damages based on overcharges (the subject of the *Communs. Vending* case and the other cases cited in support of its analogy) and other types of damages carriers might incur.  Overcharges are not at issue here, and UPM's arguments in this regard should be summarily disregarded.

"The purpose of Section 415 is to protect a potential defendant against stale and vexatious claims by ending the possibility of litigation after a reasonable period of time has elapsed."  *Aetna Life Ins. Co. v. American Tel. & Tel. Co*., 3 FCC Rcd. 2126, 2129, 1988 FCC LEXIS 497, *17-18 (F.C.C. April 13, 1988); *citing Bunker Ramo Corp*., 31 FCC 2d 449, 453 (1971).  The cases cited by UPM in support of its argument *all* deal with overcharge issues that the statute itself distinguishes from other issues, like the alleged "discriminatory" treatment that forms the basis of UPM's counterclaims.  Several other Section 415 cases address and apply the statute of limitations as set forth in the section—straightforward and without contortions–to wit, if a party has or should have knowledge of a claim, it must be brought within the applicable limitations period.  "The statute is not discretionary and the lapse of time beyond the limitation period not only bars the remedy but also destroys the liability."  *Id. citing Armstrong Utilities, Inc. v. Gen. Tel. Co. of Pennsylvania*, 25 FCC 2d 385 (1970); *cf. Midstate Co. v. Pennsylvania R. Co*., 320 U.S. 356, 363-64 (1943); *Kansas City So. R. Co. v. Wolf*, 201 U.S. 133 (1923).

In a detailed analysis of Section 415, the FCC discussed the purpose and intent of The Communications Act's statute of limitations.  Applying Section 415 to a claim brought by a

Page 1 -    UNIGESTION HOLDINGS' REPLY ISO MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

complainant who alleged that it was discriminated against by another carrier's refusal to enter into a pole line agreement, the FCC held that "[i]t would be contrary to the policies underlying the statute of limitations in a situation like this to permit a potential complainant to sit idly by and remain silent for years with respect to his asserted grievance based on a defendant's conduct of several years past." *Armstrong Utilities, Inc. v. Gen. Tel. Co. of Pennsylvania*, 25 FCC 2d at 389 (applying the since extended one-year statute of limitations to alleged discriminatory action and dismissing complaint).

Likewise, UPM cannot be permitted to sit by, devise new ways to defraud Digicel Haiti, and then multiple years later try to avail itself of alleged claims that it knew about as a certainty in 2011.  To allow UPM to proceed with a claim here would make a mockery of the statute of limitations where the record evidence is that UPM not only knew about the alleged "disruption" of its attempt to infiltrate Digicel's network, but affirmatively employed countermeasures against Digicel Haiti to avoid that disruption.  Additionally, it is also record evidence in this case that UPM likely refrained from making certain claims during the early stages of this lawsuit, because it was affirmatively representing *that it had no presence or activity in Haiti after 2013.*  Now, after those representations were discovered to be false, to allow UPM to not only proceed with claims based upon the exact time period it earlier denied being in Haiti ***and*** to allow UPM to avoid the clear operation of the statute of limitations to achieve that result would turn the law on its head and work a severe inequity to Digicel Haiti and an unfair benefit to UPM for its initial fraudulent conduct and its continued improper denials during this litigation.

UPM's case is dissimilar to the overcharge cases it relies on in multiple ways.  In the overcharge cases there was a new bill (invoice) and a new set of transactions every month for which a party has a new claim.  The party does not know from month to month if the overcharges will occur again, the amount of the overcharge, or for how long the overcharges will persist.  Conversely, UPM knew that Digicel Haiti would move to block cards that were engaged in any type of termination fraud.  Each disrupted card was not a "new transaction" but rather was

Page 2 -    UNIGESTION HOLDINGS' REPLY ISO MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

as a result of the same initiative that was in place and ongoing to attempt to identify and disrupt Bypass.  UPM experienced this in 2011 and it continued through 2012.  The bright line UPM attempts to draw between Bypass and RLYH fraud is unavailing where the same alleged "discriminatory" conduct by Digicel Haiti is at issue.  Digicel Haiti blocked cards that showed patterns of overuse or other automated behaviors that indicated unauthorized commercial use— specifically, that the particular SIM card was being used to terminate a hidden third-party international call in Bypass.  UPM knew this, and it failed to bring its claims within two years that this conduct was first discovered.  The applicable statute is triggered, and UPM's counterclaims must be barred.

## II.     DIGICEL HAITI IS NOT A CARRIER UNDER THE ACT

The Court's earlier ruling regarding whether Digicel Haiti is a carrier under The Communications Act ("The Act") acknowledges that the decision is subject to a better understanding of the facts of the case and Digicel Haiti's operations.  ECF 95 at 20.  The development of the relevant facts now show that Digicel Haiti is not a common carrier under The Act.  See ECF 264 at 8-12.  Offering a roaming program to subscribers from Haiti is not engaging in communications in the United States, and this is insufficient to subject a wholly foreign carrier to the strictures of The Act.  To be clear, Digicel Haiti offers RLYH to its subscribers *in Haiti*.  The subscribers then travel to different countries, including the U.S. where they are allowed to access the benefits of Digicel's roaming agreements with the local carriers with whom Digicel contracts.  This is not a program offered to individuals living in the U.S., and as the name suggests it is intended for people to be able to *roam* throughout the *world like they are home* in Haiti.  UPM's argument stands for the ludicrous position that all carriers involved in the flow of telecommunications traffic to or from the United States should be subject to all FCC regulations.  This is untenable and not what is intended by The Act or international regulations.

Regardless of how UPM attempts to muddy the waters, the law is clear.  The Act's provisions apply to "all persons engaged within the United States" and explicitly exclude "*any*

Page 3 -     UNIGESTION HOLDINGS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT ON DEFENDANT UPM
TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

*carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier.*"  47 U.S.C. § 152 (emphasis supplied).

Further, unlike UPM's response, Digicel Haiti's motion cites directly relevant and explicit precedent to support its argument.  "The Communications Act authorizes the Commission to regulate 'foreign telecommunications.'  The Commission claims no authority to directly regulate foreign carriers."  *Cable & Wireless P.L.C. v. FCC*, 334 U.S. App. D.C. 261, 166 F.3d 1224, 1229 (1999) (relying on the differentiation between foreign and domestic carriers to uphold application of order to "carriers within [Commission's] jurisdiction" noting that FCC "claims no authority to directly regulate foreign carriers"); *see also FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 59 (2d Cir. 2006) ("As indicated by the 'engaged within the United States' limitation, The Communications Act does not apply to foreign terminating carriers.").  "Offering its SIM card [subscribers] the ability to make calls in the United States and be charged" does not make Digicel Haiti a common carrier under The Act.  ECF 279 n. 30.  Rather, it makes Digicel a foreign carrier *engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such [Digicel].*

### III.    THE COURT CAN AND SHOULD EMPLOY DOCTRINES OF INTERNATIONAL LAW TO SUMMARILY REJECT UPM'S COUNTERCLAIMS

UPM provides no substantive legal argument as to why this Court cannot employ Foreign Sovereign Compulsion ("FSC") or notions of international comity to reject UPM's counterclaims.

#### A.    FSC Doctrine Supports Summary Adjudication of UPM's Counterclaims

UPM relies on the Tonga Order for the notion that it would be impossible for the Court to employ the FSC doctrine to dispense of UPM's counterclaims.  ECF 279 n. 52; see *Petition of*

Page 4 -    UNIGESTION HOLDINGS' REPLY ISO MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

*AT&T Inc. for Settlements Stop Payment Order on the U.S. Tonga Route*, Memorandum Opinion and Order, 29 FCC Rcd 4186 (2014) ("Tonga Order") at ¶ 13.  UPM overstates the FCC's findings in this matter.  In the Tonga Order the FCC found "nothing in the record to suggest that the Tongan Government required TCC to block U.S. carrier circuits."  *Id.*  Moreover, in the Tonga matter the FCC was dealing with decidedly anticompetitive conduct that amounted to "foreign market power abuse."  *Id.*  Those findings are entirely inapposite to the conduct here at issue where the Haitian Government prohibits Bypass and where there is no evidence of "foreign market power abuse."

Digicel Haiti is being accused of blocking its own SIM cards that were being used to steal from its network.  It was doing so to comply with the law of Haiti seeking to eradicate Bypass as a threat to the country's telecommunications network.  This is highly distinguishable from alleged conduct evaluated in the Tonga Order particularly because Bypass is an internationally recognized menace to networks in developing countries.  As discussed in Digicel Haiti's motion, the International Telecommunications Union ("ITU") supports individual countries' abilities to address Bypass, and the FCC dictates that carriers under its jurisdiction, like UPM, must abide by those countries' efforts.

Finally, UPM misstates the intent and target audience of Circular 009.  Circular 009 regulates IP addresses because that is part of what is used in Bypass.  There is nothing in the verbiage that limits or regulates the policing activity.  UPM's statement that Circular 009 "has nothing to do with SIM Cards" is also incorrect and misleading.  The Circular grants CONATEL the ability to confiscate *all equipment used to divert traffic*.  This includes gateways and SIMs. The Court can and should apply FSC to dispense of UPM's counterclaims.

### B.    Principles of Comity Support Summary Judgment on UPM's Counterclaims

UPM's comity argument is confusing at best and attempts to inaccurately recast Digicel Haiti's original argument.  Digicel Haiti does not argue that the Court need adopt enforcement of foreign anti-competitive laws to hold that international comity prevents the continuation of

Page 5 -    UNIGESTION HOLDINGS' REPLY ISO MOTION FOR
SUMMARY JUDGMENT ON DEFENDANT UPM
TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

UPM's counterclaims.  UPM either relies on materials that clearly support Digicel Haiti's original point or are so distinguishable that UPM's reliance borders on irrational.  The FCC ruling cited by UPM discusses the Commission's resolution to stop devoting resources to investigating allegations against U.S. carriers' activity in foreign nations.  It speaks to an entirely dissimilar fact pattern.

In the case at bar, a foreign carrier is asking a U.S. court to abstain from devoting its resources to investigating and litigating what the foreign carrier [Digicel] allegedly did in a foreign country [Haiti] subject to foreign law.  This is consistent with the cited ruling's general principle of letting each sovereign resolve disputes involving its own carriers "within its own jurisdiction."  Digicel Haiti is not asking a U.S. court or commission to enforce foreign law; it is asking it to *abstain* because the conduct in question is foreign and subject to foreign law, not subject to The United States' Communications Act.  This is also consistent with the relevant precedent, and the Court should exercise comity to dispense of UPM's counterclaims.

## IV.    THERE IS NO IMPLIED IN FACT CONTRACT BETWEEN THE PARTIES

UPM has not established any contractual relationship with Digicel Haiti.  Through discovery, it has been confirmed that not only was there no contract, UPM affirmatively avoided direct contact with Digicel Haiti and worked through intermediary third parties to obtain SIM cards without being detected or identified as being present in Haiti.  UPM cannot prove that its secret acquisition of SIM cards through random, unauthorized and unidentified individuals somehow amounts to a contractual relationship—directly or indirectly—with Digicel Haiti.  Moreover, as argued in Digicel Haiti's motion, the purpose of any purported contract between the parties would be void due to illegality.

UPM here again attempts to distinguish its use of RLYH versus VoIP.  This is a distinction without a difference.  In traditional VoIP, UPM used the internet and its hidden servers and SIM Boxes to avoid the Digicel International Gateways.  In RLYH, UPM utilized the SIM Servers and the RLYH program to similarly disguise third-party international calls and

Page 6 -    UNIGESTION HOLDINGS' REPLY ISO MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

transport them on to Digicel's network without paying the published international rates.  Simply another form of "Bypass."  In both cases UPM was using Digicel Haiti services in unintended manners and for the purpose of providing unauthorized access to Digicel Haiti's network in both its VoIP operations and its RLYH calls.  UPM argues that simply because it had crafted a way to improperly access Digicel Haiti's services, it somehow created a contractual relationship.  This theory is unsupported by either Haitian or U.S. law.  As a matter of law there is no implied in fact contract between UPM and Digicel Haiti.

### CONCLUSION

Based on the foregoing, Digicel Haiti respectfully request that the Court grant summary judgment as to the entirety of UPM's counterclaims.

DATED this 20th day of December, 2021.

Respectfully submitted,

By:  *s/ Robert C.L. Vaughan*

Anne Talcott, OSB #965325
Email: atalcott@schwabe.com
Kathryn E. Kelly, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Telephone: 503.796-2958

Robert C. L. Vaughan (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Cherine Smith Valbrun (*Pro Hac Vice*)
Email:  cvalbrun@kvllaw.com
Leah B. Storie (*Pro Hac Vice*)
Email:  lstorie@kvllaw.com
KIM VAUGHAN LERNER LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL  33394
Telephone:  (954) 527-1115

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti*

Page 7 -    UNIGESTION HOLDINGS' REPLY ISO MOTION FOR
            SUMMARY JUDGMENT ON DEFENDANT UPM
            TECHNOLOGY, INC.'S COUNTERCLAIMS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900