**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
**Kathryn E. Kelly**, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
**Cherine Smith Valbrun** (*Pro Hac Vice*)
E-mail: cvalbrun@kvllaw.com
E-mail: emailservice@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL  33316
Telephone: 954.527.1115
Facsimile: 954.527.1116

    *Attorney for Plaintiff, Unigestion Holdings, S.A.,*
    *a foreign corporation, d/b/a Digicel Haiti*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A., d/b/a DIGICEL HAITI**, <br><br>      Plaintiff and Counterclaim Defendant, <br><br>     v. <br><br> **UPM TECHNOLOGY, INC.,** *et al.*, <br><br>      Defendants and Counterclaim Plaintiffs. | No. 3:15-cv-00185-SI <br><br><br> **PLAINTIFF UNIGESTION HOLDINGS, S.A.'S REPLY IN SUPPORT OF DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT, JOSEPH GILLAN** <br><br> **ORAL ARGUMENT REQUESTED** |

UNIGESTION HOLDINGS' REPLY ISO DAUBERT
MOTION AND IN THE ALTERNATIVE, MOTION IN
LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH
GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

## I.    DIGICEL-HAITI MET ITS CONFERRAL OBLIGATION AND THE DAUBERT MOTION SHOULD NOT BE SUMMARILY DENIED AS PREMATURE

Defendant, UPM TECHNOLOGY, INC. (hereinafter referred to as "Defendant" or "UPM") contends that Plaintiff, UNIGESTION HOLDINGS, S.A. (hereinafter referred to as "Digicel-Haiti" or "Plaintiff") did not meet its conferral obligation under Local Rule 7-1, yet in the same breath concedes that the parties conferred briefly because "it was clear to all parties, after extensive informal discussions during the month prior to filing them (while depositions were being taken) that the parties would not agree."[1]  To ensure that there is no room for doubt, Digicel-Haiti was under the clear understanding that both Digicel-Haiti and the UPM Defendants had met their conferral obligations as agreed between Robert Vaughan and Christopher Savage prior to filing the parties' respective dispositive motions.  UPM's argument that Digicel-Haiti's *Daubert* Motion was filed in anticipation of UPM filing a dispositive motion that relied on Mr. Gillan's testimony misses the mark entirely as it attempts to suggest that the motion was more tactical than merit-based.  Nothing could be further from the truth.  Digicel-Haiti's *Daubert* Motion was grounded entirely upon the frailties evident in Mr. Gillan's expert disclosure and upon the confirmation obtained during Mr. Gillan's sworn deposition, that his opinions were inadmissible under Fed. R. Evid. 702.  *That* is the basis for the motion and it is upon *that* basis that it should be granted.

UPM's argument that the *Daubert* Motion is "grossly premature" is likewise unavailing.  Without any stated basis, UPM argues that the *Daubert* Motion ought to be resolved after the Court rules on the various summary judgment motions and the issues in the case have been clarified.  The Court's determination of issues of law by and through the summary judgment motions have no bearing on whether Mr. Gillan's testimony is admissible under Fed. R. Evid. 702 and the *Daubert* standard.  Mr. Gillan's proposed testimony and expert opinions are inadmissible now and will remain inadmissible after the ruling on the motions for summary

---

[1] Response to *Daubert* Motion (ECF 280) at 1.

Page 1 -    UNIGESTION HOLDINGS' REPLY ISO DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

judgment and in March 2022 when UPM incorrectly suggests that *Daubert* motions should be filed along with the parties' motions *in limine*. Notably, while the deadline to file motions *in limine* is four weeks prior to the April 4, 2022 trial date, the deadline to address all issues that may be dispositive of any issue before the Court was November 15, 2021. Additionally, there is no procedural rule or rational basis that precludes Digicel-Haiti from seeking to strike improper expert testimony based on sworn deposition testimony and an executed declaration at a point in the proceedings where the decision may actually have a meaningful impact on determining the issues remaining to be tried to the jury.

## II.    MR. GILLAN'S OPINIONS ARE INADMISSIBLE

Mr. Gillan's opinions and testimony are inadmissible where they are not reliable or relevant and consist of impermissible legal opinion. To boot, Mr. Gillan's methodology is also unreliable where it is based on assumptions regarding disputed and sometimes disproven factual assertions.

### A.    Mr. Gillan's Opinions and Testimony is Not Reliable or Relevant

Consistent with Mr. Gillan's declaration, UPM's Response contends that Mr. Gillan's analysis serves two primary functions: first to explain the economic rationale underlying past FCC rulings; and second, to apply that economic reasoning to Digicel-Haiti's conduct to support the conclusion that Digicel-Haiti's conduct leads to the same economic effects that have been banned by the FCC.[2] Neither of these proposed objectives constitute reliable or relevant expert testimony and neither objective qualifies as admissible expert testimony. Mr. Gillan's explanation of the economic reasoning underlying prior FCC rulings have no bearing on whether certain conduct by either party here is lawful. Furthermore, Mr. Gillan recites FCC policies and rationale while occasionally attempting to apply that rationale to an incomplete fact pattern based on his assumptions. Certainly, applying legal and policy rationale to an incomplete fact pattern is not reliable, relevant, or useful to any trier of *fact*. As was detailed in the initial motion, the

---

[2] Response to *Daubert* Motion at 6.

Page 2 -    UNIGESTION HOLDINGS' REPLY ISO DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

law is clear that it is improper for an expert to explain the purpose and goals of a law or statute. *See In re Ocean Bank*, 481 F. Supp. 2d 892, 901 (N.D. Ill. 2007) (holding that expert went beyond proper testimony in explaining the goals and meaning of the Fair Credit Reporting Act); s*ee Joseph v. Carnes*, No. 13-cv-2279, 2015 U.S. Dist. LEXIS 57135, at *5 (N.D. Ill. Apr. 30, 2015) (holding that testimony by the expert regarding her research into the Stored Communications Act ("SCA"), the history and purpose of the SCA, and the meaning and application of any terms within the SCA is inadmissible as irrelevant.)

UPM intends to offer Mr. Gillan to explain that the economic effect of Digicel-Haiti's conduct is detrimental to United States consumers, *and ultimately inconsistent with the goals and purpose of resale restrictions by the FCC*.  Mr. Gillan's proposed testimony regarding the economic impact of Digicel-Haiti's alleged conduct, however, is irrelevant to the fact finder's understanding of the facts in this case, especially where Mr. Gillan posits that the economic impact of conduct is a policy consideration for establishing FCC policies and regulations.  The trier of fact here, is not charged with implementing or creating FCC policy and regulations based on an understanding of the economic impact of Digicel-Haiti's conduct.  Rather, the jury is charged with considering the facts of *this* case and applying those facts to the existing law as instructed by the Court.  Furthermore, the economic rationale and reasoning behind past FCC decisions and FCC goals does not go to an essential element of any of Plaintiffs' claims. Therefore, Mr. Gillan's proffered testimony regarding the economic effect and impact of Digicel-Haiti's conduct, as he misunderstands it, is wholly irrelevant, not useful, and would only serve to confuse the issues for the jury in executing their role as the trier of fact.

**B.       Mr. Gillan's Opinions are Inadmissible Legal Opinions**

Mr. Gillan's opinions and conclusions regarding the economic effect and impact of Digicel-Haiti's alleged conduct are inadmissible legal opinion.  It is undisputed that an expert may be called upon to aid the jury in understanding facts in evidence even though reference to those facts is couched in legal terms. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998,

Page 3 -    UNIGESTION HOLDINGS' REPLY ISO DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

1017 (9th Cir.2004). "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (quoting *Hangarter*, 373 F.3d at 1016); *see* Fed. R. Evid. 704 Advisory Committee Notes (explaining that the rules did not allow "admission of opinions which would merely tell the jury what result to reach"). "Resolving doubtful questions of law" and "instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin.*, 523 F.3d at 1058-59; *see Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law. Experts interpret and analyze factual evidence. They do not testify about the law.").

In the telecommunications context, courts similarly place boundaries on experts purporting to give testimony offering an opinion on the interpretation of FCC rulings and orders and the intent of the FCC as inadmissible as it impermissibly usurps the role of the judge. *See TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171 (N.D.N.Y. 2002). Indeed, Mr. Gillan testified that the purpose of his declaration is to apply what he has identified as the FCC's goals:

> A: And the point of what UPM is doing is, in effect, avoiding the authoritative price discrimination by taking advantage of the fact that the call can be terminated at these other prices that Digicel Haiti makes available to customers, and that – that approach, while I understand why Digicel Haiti hates the fact that people are able to avoid price discrimination is ***something that is consistent with federal policy*** because it forces prices toward costs. ***And that's the purpose of my declaration.*** I understand why Digicel-Haiti doesn't like that conclusion, ***but that is the conclusion of my analysis, that if the goal is economic efficiency and low prices, which are the FCC's goals***, then cost based rates is the path. And one of the ways to get to that is to make sure that it is very difficult for companies with market power to discriminate based on technology or type recall or county of origination? [3]

---

[3] Gillan Depo. 175:1-18. (ECF 273-2, p. 41)

Page 4 -     UNIGESTION HOLDINGS' REPLY ISO DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

\* \* \*

A:    The **goal of the FCC's analysis is to unleash forces**
      **that   move   rates   towards   cost**.   Any   price
      discrimination is one of those tools, all right? [4]

The record demonstrates that Mr. Gillan's proffered testimony does not analyze the factual evidence, but rather offers an opinion regarding the policy rationale behind FCC decisions, and provides predictions regarding whether the alleged conduct here is consistent or inconsistent with the FCC's goals as he understands them.

Curiously, UPM's Response ignores authority that addresses the admissibility of analogous expert testimony in the telecommunications context in favor of its preferred reliance on *Hangarter*, which is easily distinguishable in the instant case. *See, e.g., TC Sys. Inc,* 213 F. Supp. 2d at 181-82 (excluding expert opinions where the expert's "review of FCC rulings and regulations impermissibly usurps the role of the trial judge in determining the relevant law" and further holding that "any testimony as to the intent of the Telecommunications Act or FCC regulations or how the jury should ultimately decide this case, however, is inappropriate."); *CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1236 (E.D. Cal. 2005) (excluding expert opinions predicting the future actions of the FCC as speculative; specifically, the Court excluded expert testimony regarding: (1) what factors the FCC considers in deciding control of a broadcast station and how such factors apply to this case; (2) whether and how any FCC action, including but not limited to letter rulings, indicates its likely decision on any legal issue; (3) how the FCC will decide any legal issue and (4) any other application of law to the facts of the case)*; GlobalRock Networks, Inc., v. MCI Commc's*, 943 F. Supp. 2d 320, 343 (N.D.N.Y. 2013) (excluding an expert's "opinions regarding violations of FCC rules"); *Qwest Corp. v. City of Santa Fe,* 2013 WL 12239492, at \*5 (D.N.M. Feb. 8, 2013) (refusing to allow an expert to testify as to "the legal standards applicable to [47 U.S.C.] § 253").

In *Hangarter,* an insured offered an expert to testify regarding industry standards in a bad

---

[4] Gillan Depo. 177:16-25. (ECF 273-2, p. 43)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

faith insurance matter. 373 F.3d at 1016.  The trial court correctly permitted the expert to testify as to the industry standards as well whether the insurer deviated or otherwise failed to comport with industry standards.  *Id.*  In *Hangarter,* however, the expert did not extend his conclusion to whether the insurer acted in bad faith--the ultimate legal issue.  *Id.*  As opposed to Mr. Gillan, here, the *Hangarter* expert's testimony assisted the trier of fact in understanding the facts of the case and their relation (if any) to the industry standards.  Here, Mr. Gillan seeks to offer opinions and conclusions that predict how the FCC would and should rule on the issues presented in this case based on the FCC's historical policies, goals and motivations ("I have looked at these [FCC] orders *to judge the conduct of both parties against the policy and the economic analysis…*" ) (emphasis added).  Clearly, unlike the expert in *Hangarter*, the proffered testimony here, goes to the issue of whether UPM's conduct is legal.  For example, Mr. Gillan concludes that the FCC *would* find that UPM's "resale" of the two termination methods is a resale arrangement that is consistent with the FCC goals, and therefore permissible.[5]

## C.    Mr. Gillan's Opinions Methodology and Assumptions Render His Opinions Inadmissible

Mr. Gillan's methodology consists of his analysis of Digicel-Haiti and UPM's conduct without regard to whether the underlying facts relating to their relationship are true and accurate—or even exist.  Specifically, the "data" upon which Mr. Gillan grounds his understanding of their relationship is derived from the pleadings and discovery responses in litigation rather than any actual objective data. *See* Exhibit JPG-2 Documents Reviewed to Gillan Declaration.  (ECF 273-1, pp. 42-45)  Indeed, these pleadings and discovery responses from which Mr. Gillan obtains his understanding of the facts consist of argument of counsel and disputed facts.  Mr. Gillan's analysis consists of him then applying his understanding of Digicel-Haiti and UPM's relationship to FCC reports and orders.  In order to do so, Mr. Gillan adopts UPM's recitation of the facts to arrive at his conclusion. There is no scientific method applied to

---

[5] Gillan Depo. 33:17-34:04.  (ECF 273-2, pp. 9-10)

Page 6 -    UNIGESTION HOLDINGS' REPLY ISO DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Mr. Gillan's process, no analysis of data or complicated documents, no methodology and no independent verification of any information or other matter, which would prove difficult for a jury to understand without his expert assistance.  Rather, Mr. Gillan serves as nothing more than an extra mouthpiece, an alternative conduit from its counsel, for UPM's theory of its case.  This alone renders Mr. Gillan's methodology and resulting opinions inadmissible.

UPM argues that Mr. Gillan's assumptions (regarding the following critical facts material to the legal issues in this case) are somehow irrelevant to his analysis:

- Mr. Gillan assumed that UPM legally acquired Digicel-Haiti SIM cards and did not know the manner and methods through which UPM obtained SIM cards.[6]
- Mr. Gillan assumed that UPM had agents in Haiti.[7]
- Mr. Gillian assumed that "UPM agents purchased several thousand SIM cards on the open market in Haiti and shipped them back to UPM in Oregon."[8]
- Mr. Gillan assumed that UPM was a subscriber of Digicel Haiti's services.[9]
- Mr. Gillan assumed that in the case of RLYH resale, UPM was paying for a bulk discounted calling arrangement.[10]
- Mr. Gillan assumed that UPM paid for RLYH services for approximately 2300 SIM cards.[11]
- Mr. Gillan assumed that UPM and Digicel Haiti had an arrangement.[12]  However, Mr. Gillan conceded that he does not know the terms of the assumed arrangement.[13]
- Mr. Gillan made assumptions regarding the manner in which calls that were sent via the Internet were routed into Haiti.  He assumed that there was an internet back up facility that routed calls into Haiti via the Internet.[14]

If Mr. Gillan's opinion operates to explain the economic reasoning underlying FCC

---

[6] Gillan Depo. 94:14-95:2.  (ECF 273-2, pp. 18-19)

[7] Gillan Depo. 100:1-100:4.  (ECF 273-2, p. 24)

[8] Gillan Depo. 96:3-97:01; 97:13-98:02; 99:23-25.  (ECF 273-2, pp. 20-23)

[9] Gillan Depo. 141:17-142:01.  (ECF 273-2, pp. 30-31)

[10] Gillan Depo. 139:8-140:06.  (ECF 273-2, pp. 28-29)

[11] Gillan Depo. 100:05-09.  (ECF 273-2, p. 24)

[12] Gillan Depo. 100:10-18.  (ECF 273-2, p. 24)

[13] Gillan Depo. 142:02-05.  (ECF 273-2, p. 31)

[14] Gillan Depo. 169:16-170:04.  (ECF 273-2, pp. 39-40)

Page 7 -    UNIGESTION HOLDINGS' REPLY ISO DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

rulings and to apply that economic reasoning to Digicel-Haiti and UPM's conduct as UPM claims, then it is hardly conceivable that such an analysis can be done without regard to the aforementioned critical facts.  UPM however, expects that Mr. Gillan will be allowed to simply parrot these "*facts*" into the record where his response on cross will be that such was his understanding from Counsel for UPM.[15]  In fact, Mr. Gillan will not only be serving as a conduit for impermissible hearsay and hearsay within hearsay, he will be acting as an advocate—regurgitating legal argument and conclusions of counsel that otherwise do not exist in the record.

**CONCLUSION**

Based on the foregoing, Digicel Haiti respectfully requests that the Court grant its *Daubert* Motion, or in the alternative its Motion *in Limine* to Exclude Testimony of Joseph Gillan.

DATED this 20th day of December, 2021.

Respectfully submitted,

By:     *s/ Robert C.L. Vaughan*
        Anne Talcott, OSB #965325
        Email: atalcott@schwabe.com
        Kathryn E. Kelly, OSB #175162
        Email: kkelly@schwabe.com
        SCHWABE, WILLIAMSON & WYATT, P.C.
        Telephone: 503.796-2958

        Robert C. L. Vaughan (*Pro Hac Vice*)
        E-mail: rvaughan@kvllaw.com
        Cherine Smith Valbrun (*Pro Hac Vice*)
        Email:  cvalbrun@kvllaw.com
        Leah B. Storie (*Pro Hac Vice*)
        Email:  lstorie@kvllaw.com
        KIM VAUGHAN LERNER LLP
        One Financial Plaza, Suite 2001
        Fort Lauderdale, FL  33394
        Telephone:  (954) 527-1115

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti*

---

[15] At outlined in the *Daubert* Motion, in prior circumstances Mr. Gillan's expert testimony suffered from the same frailties evident here and resulting in the exclusion of his testimony because there was "too great an analytical gap between the data and Gillan's opinion." *Hamilton Cty. Emergency Communs. Dist. v. Level 3 Communs., LLC*, 845 F. App'x 376, 383 (6th Cir. 2021).[15]

Page 8 -   UNIGESTION HOLDINGS' REPLY ISO DAUBERT MOTION AND IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF JOSEPH GILLAN

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900