**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
**Kathryn E. Kelly**, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
**Cherine Smith Valbrun** *(Pro Hac Vice)*
E-mail: cvalbrun@kvllaw.com
E-mail: emailservice@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL  33316
Telephone: 954.527.1115
Facsimile: 954.527.1116

*Attorneys for Plaintiff, Unigestion Holdings, S.A.,*
*a foreign corporation, d/b/a Digicel Haiti*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A., d/b/a DIGICEL HAITI**, <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> **UPM TECHNOLOGY, INC., *et al.***, <br><br> Defendants and Counterclaim Plaintiffs. | No. 3:15-cv-00185-SI <br><br><br> **PLAINTIFF, UNIGESTION HOLDINGS, S.A.'S TRIAL MEMORANDUM** |

Pursuant to the Court's Trial Management Order (ECF 191), Plaintiff Unigestion

Holdings, S.A., d/b/a Digicel Haiti ("Digicel Haiti"), submits this Trial Memorandum.

Page 1 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S TRIAL
MEMORANDUM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

## I.    INTRODUCTION

As Digicel Haiti has alleged and discovery has confirmed, UPM Technology Inc. ("UPM"), at the control and direction of individual defendant, Duy Tran ("Tran"), (collectively "Defendants"), conceived, constructed, and operated an international Bypass scheme that defrauded Digicel Haiti out of the proper rates for terminating international calls made to its network in Haiti.  Starting in or about 2011, Defendants began illegally acquiring Digicel Haiti SIM cards in bulk, against the commercial restrictions Digicel Haiti places on its wholesale and retail vendors.  Defendants used the SIM cards to transmit international calls to Digicel Haiti's local network in Haiti over the internet, thereby avoiding the international switches that route and allow for appropriate charges for international calls.

Defendants directed the calls from their location(s) in Oregon via Voice-over-Internet Protocol ("VoIP") to secret gateways located in Haiti that they previously, and illicitly, shipped and set up.  These gateways, often concealed in private residences, received the VoIP calls and directed these calls on to Digicel Haiti's physical network.  In bypassing the international switches, the calls transmitted by Defendants, although international in origin, were presented to Digicel Haiti's network as local calls rather than international calls.  Consequently, the calls were either not billed, or only billed as local calls made from within Haiti.  This was to the financial benefit of Defendants and the financial detriment of Digicel Haiti.  It appears this operation continued throughout 2011 into 2012 at which time Defendants assert that the operation was temporarily interrupted before efforts were made to resume Bypass operations in Haiti in 2013.

Shortly thereafter, in addition to traditional Bypass as described above, Defendants devised a new way to deceive Digicel Haiti.  Defendants devised a simpler and more profitable way to bypass the Digicel international tolling rates by using a Digicel Haiti calling plan, Roam Like Your Home ("RLYH"), to connect international third-party calls by using SIM cards which Defendants allegedly registered to the Digicel Network as local subscribers roaming in the United States.  This was false.  Throughout 2013 and 2014, Defendants allegedly registered Digicel Haiti SIM cards with the RLYH program pretending to be local Haiti subscribers.  Using

Page 2 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S TRIAL
MEMORANDUM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

their servers and other telecommunications equipment located at UPM and Duy Tran's residence, Defendants would then route calls using these RLYH registered SIM cards, causing Digicel Haiti's network to recognize that call as a call from a roaming Digicel Haiti subscriber signed up for the RLYH program. The call from the original third-party caller remained concealed. Hence, the call was charged at the RLYH local rate and the hidden third-party international call was never paid for.

Regardless of the method of Bypass, VoIP or RLYH, Defendants' scheme used artifice, concealment, and deception to carry out their fraud. This includes, but is not limited to, the use of Human Behavior Software (HBS) to trick Digicel Haiti's network into believing that Defendants' SIM cards were being used by actual individual human callers. The use of this software helped Defendants avoid detection and prevented their SIM cards from being flagged as being used in illegal Bypass.[1] When SIMs were detected as displaying abnormal calling patterns, including calling frequency, location, or call length, the SIM card was lawfully interrupted or disconnected by Digicel Haiti. Knowing this, Defendants actively concealed their operations and used the SIMs in ways that concealed their participation and presence in Haiti and concealed their Bypass activities.

## II.     STATEMENT OF FACTS

### A.     Background

Digicel Haiti operates a telecommunications network in Haiti. Digicel Haiti is part of the "Digicel Group" of companies. Digicel Haiti has over 4 million customers and over 900 employees across the region. Digicel Haiti operates solely in Haiti, and through its relationships with Digicel USA and Digicel Jamaica, it carries on roaming relationships with telecommunications carriers throughout the world.

When an individual in the United States places a call to one of Digicel Haiti's subscribers

---

[1] Defendants argue they used HBS solely in a lab setting. Even if this were the case, the HBS admittedly was used to create calling profiles designed to deceive Plaintiff and conceal that a pre-programed SIM box, not an individual human, was placing calls to the network.

Page 3 -     PLAINTIFF UNIGESTION HOLDINGS, S.A.'S TRIAL
MEMORANDUM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

in Haiti, that call is routed through a switch operated by Digicel USA, located in either Miami, Florida, or New York, New York. The switch creates a Call Detail Record ("CDR"), which contains various information about the call, including the initiating caller's telephone number and the length of the call. Digicel USA's switch then transmits the call to a Digicel Haiti switch in Haiti, which routes the call to one of Digicel Haiti's cellsites in Haiti. That cellsite then eventually connects the call to the Digicel Haiti subscriber's cellular telephone. Digicel Haiti's local switch also creates a CDR when the call reaches Haiti.

On February 2, 2015, Digicel Haiti brought suit against UPM and multiple individual defendants for civil RICO, fraud, unjust enrichment, and conversion. ECF 1. Digicel Haiti has alleged, and will prove, that UPM, at the control and direction of Tran, undertook an international scheme aimed at committing Bypass fraud against Digicel Haiti. Over the course of many years of motion practice, the parties' dispute was finally reduced to a singular fraud by active concealment claim against UPM and one individual defendant, Duy Tran. Digicel Haiti's fraud claim encompasses all of UPM and Tran's activity aimed at concealing their bypass operation from Digicel Haiti, resulting in damages to Digicel Haiti.

Defendants admit to the following set of facts which are therefore not in dispute:

1. UPM acquired Digicel Haiti SIM cards from individuals in Haiti who allegedly purchased Digicel-Haiti SIM cards [from undetermined sources] and had those SIM cards sent to UPM in Oregon. See, ECF 247 at 3; Third Amended Complaint, ECF 200 ("TAC"); Defendants' Amended Answer, ECF 244 ("Defendants' Answer"), ¶¶ 50, 65, 86, 97; UPM Tech.'s Resp. to First Req. For Admis. Nos. 9-13; UPM Corp. Rep. Dep. 106:19 – 110:19. (ECF 267 No.17; ECF 268 No. 9)

2. UPM activated those SIM cards [ECF 247 at 3; Defendants' Answer at ¶¶ 87-90], and used them to initiate and authenticate two types of bypass calls: (a) calls sent to Haiti via the Internet and originated on Digicel-Haiti's network [ECF 247 at 3., Answer at ¶¶ 57, 68, 82]; and (b) "Roam Like You're Home" ("RLYH") calls on the United States

Page 4 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S TRIAL MEMORANDUM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

network of a Digicel Haiti roaming partner, sent by that carrier to Digicel Haiti. ECF 247 at 3, Defendants' Answer at ¶¶ 83, 129.

3. Defendants agree that UPM linked or packaged third-party calls bound for Digicel Haiti customers with the calls UPM initiated using the Digicel Haiti SIMS. ECF 247 at 3, Defendants' Answer at ¶¶ 57, 68, 82.

4. Defendants acknowledge that Digicel Haiti relied on these actions taken by Defendants by charging UPM the rate for local calls in Haiti, rather than the standard rate for inbound international calls. ECF 247 at 3, Defendants' Answer at ¶¶ 58, 136.

5. Finally, Defendants agree that when it concluded that a SIM card was being used for this purpose, Digicel Haiti reacted by interrupting or blocking the SIM Card from being used. ECF 247 at 3; ECF 245; and Defendants' Answer, ¶ 312.

Furthermore, undisputed evidence confirms that Defendants' scheme also included shipping equipment to Haiti, including gateways used to connect VoIP calls, in such a way as to purposefully avoid detection. *See* UPM005654 – 5661[2] (ECF 270, No. 3); Ruiz Dep. 210:1-20 (ECF 270 No. 8); 212:12-15 (*Id*.); Allen Dep. 90:11-20 (ECF 271 No. 5). UPM created a fake company name, Video Vizion, for the sole purpose of using fake invoices and documents from this fake company to mislabel bypass equipment and create fake invoices and shipping and customs documents in an attempt to conceal its true function. Allen Dep. 92: 11-21 (ECF 271 No. 5); 93:12-13, 19 (ECF 271 No. 5); Ruiz Dep. 210: 1 – 11 (ECF 277 No. 2); 211: 21-24 (*Id*.); UPM Corp. Rep Dep. 362: 1-4 (ECF 271 No. 2); 364:3-4 (*Id*.).

Finally, Defendants used anti-bypass detection techniques, including the use of HBS, to induce Digicel Haiti to connect calls being routed through Bypass by creating the false impression that calls were being placed by individual [human] subscribers rather than by UPM's SIM Servers and Gateways. *See* ECF 47-C - UPM Tech. Resp. to First Req. for Admis. No. 22

---

[2] Counsel for UPM has stipulated to the authenticity of all documents produced by Defendants. Ruiz Dep. 298:7-11.

Page 5 -     PLAINTIFF UNIGESTION HOLDINGS, S.A.'S TRIAL MEMORANDUM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

(ECF 267 No. 17); UPM Tech. Corp. Rep. Dep. 552 – 553 (ECF 271 No. 2); McEwen Depo. 127 – 128 (ECF 276 No. 6).  These actions, individually and collectively, actively concealed Defendants' use of Digicel Haiti SIM cards to conduct Bypass operations.  Defendants admit that they committed these acts, but contest that these acts constitute fraud.

### B.    Digicel's Investigation

After experiencing substantial financial impact as a result of bypass, Digicel Haiti employed various security and testing measures that worked to detect and interrupt illegal Bypass.  These efforts included conducting internal investigations and assisting in investigations conducted by local law enforcement—specifically the Haitian National Police—which culminated in the arrest of individuals working with Defendants and the seizure of several of the Defendants' gateways and a cache of Digicel Haiti SIM cards.

Digicel Haiti also employs proprietary strategies to monitor its network for indicators of anomalous call patterns that suggest bypass fraud.  These proprietary strategies are used to determine the "bypass profile" of any individual SIM card. In conjunction with the local Haitian Police, operations were commenced to identify possible locations or bases of the fraudulent activities. Contemporaneous with the PNH operations, Digicel Haiti continued its own internal investigations of suspected bypass operations by engaging the services of Shields Crime & Security Consultants ("Shields CSC"), in Kingston, Jamaica.  The combined investigations of Shields CSC (on behalf of Digicel Haiti) and the PNH, revealed a systematic and ongoing bypass operation coordinated, funded, and conducted by Defendants UPM and Duy Tran.

The investigation led to the arrest of Haitian individuals working at the direction of and in concert with the Defendants to carry out Bypass against Digicel Haiti.  The arrests also resulted in the seizure of equipment and multiple SIM cards, some of which had already been packaged and addressed for shipment to UPM.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

III.    ELEMENTS OF THE CLAIM

A.    Common Law Fraud Through Active Concealment

In Oregon, a plaintiff must allege the following elements to state a claim for fraud:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury

*Or. Pub. Emps.' Ret. Bd. ex rel. Or. Pub. Emps.' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 424 (2004) (quotation marks omitted).

Fraud through actual concealment is recognized and actionable under Oregon law. Where "fraud is based on actual concealment, as opposed to simple nondisclosure, a duty to speak is not required." *Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104, 113 (1981*); see also Wieber v. FedEx Ground Package Sys., Inc.,* 231 Or. App. 469, 484 (2009) ("Moreover, even in the absence of a duty to speak, actions by a defendant to actively conceal the truth can constitute fraud.").

The Restatement (Second) of Torts (1977) details this point of law: "One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering." § 550. The commentary to this section explains that this rule applies "when the defendant successfully prevents the plaintiff from making an investigation that he would otherwise have made, and which, if made, would have disclosed the facts; or when the defendant frustrates an investigation." *Id.* § 550 cmt. b; *see also Caldwell*, 54 Or. App. at 113 ("Restatement (Second) of Torts §§ 550, 551 (1977), states that nondisclosure is actionable where there is a duty to speak but notes no such duty requirement where there has been an active concealment.").

> The U.S. Court of Appeals for the Fourth Circuit gave a detailed explanation:
> [T]he common law clearly distinguishes between concealment and nondisclosure. The former is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material

Page 7 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S TRIAL MEMORANDUM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

matter. The latter is characterized by mere silence.  Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does.

\*\*\*

In short, at common law, no fiduciary relationship, no statute, no other independent legal duty to disclose is necessary to make active concealment actionable fraud—simple "good faith" imposes an obligation not to purposefully conceal material facts with intent to deceive.

*United States v. Colton*, 231 F.3d 890, 899-900 (4th Cir. 2000).

Defendants' entire scheme was devised to conceal their activity and the true origin of the Bypass calls they were transmitting for the benefit of securing a profit at Digicel Haiti's expense. From acquiring SIM cards from random individuals "off the street", creating a fictitious company name to label, ship and import bypass equipment into Haiti, and using HBS to trick Digicel Haiti into believing that individuals and not SIM boxes and SIM Servers were making calls, Defendants carried out a coordinated effort to actively conceal their bypass activity and defraud Digicel Haiti.

## IV.    DAMAGES

The Oregon Supreme Court explained: "When the alleged fraud does not involve the sale of property, the proper measure of damages must be flexible to compensate the plaintiff for whatever loss he has suffered." *Id.*; *see also Hocks v. Hocks*, 95 Or. App. 40, 46 (1989) (same), el *Dizick*.

Where the purpose of Defendants' Bypass model was dependent upon their active concealment and remaining undetected, it is not surprising that it would be impossible to prove, with certainty, the specific calls that were made using Bypass.  Rather, Digicel Haiti's damages expert, Charles Castel, formulated a range of possible damages based on the equipment seized from Defendants' in-country agents.  Mr. Castel's methodology is based on the following assumptions:

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

- The type of equipment used by the fraudsters, seized by the Haitian National Police (PNH) was able to manage 400 calls simultaneously;

- Conservatively, 80% of the available call circuits (320) were occupied at any given time, for 14 hours per day during the different periods; and

- The financial losses were conservatively calculated using a rate of 23 cents per minute (the rate for international calls arriving to Haiti) for Digicel Haiti.

Using these empirical assumptions, Mr. Castel calculated Digicel Haiti's lost revenue during the period during which Defendants admit they operated in Haiti.  These real-world numbers resulted in significant losses to Digicel Haiti.

Mr. Castel calculated losses over a 20, 22, and 27 month period.   For the 20-month period [August 2011 – July 2012; May 2013 – November 2013] Digicel Haiti's losses totaled 37.09 million USD:

- Losses of traffic of 8.06 million minutes per month;

- Monthly financial losses of $1.85 million USD;

- Thus, the total losses for the 20-month period amounted to $37.09 million USD.

For a 22-month period, Mr. Castel calculates Digicel Haiti's losses totaled 40.7 million USD:

- Losses of traffic of 8.06 million minutes per month;

- Monthly financial losses of 1.85 million USD;

- Thus, the total losses for the 22-month period amounted to 40.7 million USD.

For the 27-month period, August 2011 – July 2012; May 2013 – November 2013; and May 2014 to December 2014 Digicel Haiti's losses totaled 50.07 million USD:

- Losses of traffic of 8.06 million minutes per month;

- Monthly financial losses of 1.85 million USD;

- Thus, total losses of 50.07 million USD.

Beyond direct financial losses, Digicel Haiti incurred revenue shortfalls due to non-

Page 9 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S TRIAL
            MEMORANDUM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

identified calls (local numbers) not picked up and/or called back, capital expenditures for monitoring, and loss of reputation due to quality of services/signal deterioration and number of calls successfully terminated. During discovery, Maarten Boute confirmed that Digicel Haiti's annual expenses for Bypass related investigations and security amounted to 3-5 million USD. Ex A. to the Declaration of Anne Talcott, Depo. of M. Boute at 33:10-13. This exhibit is being filed under seal pursuant to the Stipulated Protective Order.

### A.    Punitive damages

"The function of punitive damages to penalize harmful acts done with a bad motive may ordinarily justify liability for such damages in cases of intentional fraud . . ." *2-D'S Logging, Inc. v. Weyerhaeuser Co.*, 53 Or. App. 677, 689, 632 P.2d 1319, 1326 (1981) (discussing the availability of punitive damages under Oregon law and upholding a finding of punitive damages for fraud); *citing Green v. Uncle Don's Mobile City*, 279 Or 425, 432, 568 P2d 1375 (1977), *Lewis v. Worldwide Imports, Inc.*, 238 Or 580, 582, 395 P2d 922 (1964). Defendants have admitted time and again that their conduct was intentional. They surreptitiously and secretly acquired SIM cards for access to Digicel Haiti's network, used equipment and software to place calls to Digicel Haiti's network in the most undetectable way possible, all with the intent to illicitly profit off Digicel Haiti's significant investment of bringing a secure and reliable telecommunications network to a high-risk market. Further, this is Defendants' business model that they have implemented world-wide to the detriment of multiple carriers across the globe in high-margin and low-security markets. Punitive damages are appropriate and reasonable to penalize Defendants' actions.

### V.    CONCLUSION

For the reasons discussed above, and to be further demonstrated at trial, Digicel Haiti seeks a guilty verdict against both Defendants on its fraud claim and an award of all compensatory, special, and punitive damages that the jury deems just and necessary.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

Dated this 22nd day of February, 2022.

Respectfully submitted,

By: _s/ Robert C.L. Vaughan_

Anne Talcott, OSB #965325
Email: atalcott@schwabe.com
Kathryn E. Kelly, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Telephone: 503.796-2958

Robert C. L. Vaughan (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Cherine Smith Valbrun (*Pro Hac Vice*)
Email: cvalbrun@kvllaw.com
Leah B. Storie (*Pro Hac Vice*)
Email: lstorie@kvllaw.com
KIM VAUGHAN LERNER LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL 33394
Telephone:    (954) 527-1115

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti*

Page 11 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S TRIAL MEMORANDUM

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900