**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

        Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**, <br><br> Plaintiff & Counterclaim-Defendant, <br><br> v. <br><br> **UPM TECHNOLOGY, INC**., *et al.,* <br><br> Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI <br><br> **DEFENDANTS' MOTIONS *IN LIMINE*** <br><br> REQUEST FOR ORAL ARGUMENT |

Page 1 – DEFENDANTS' MOTIONS *IN LIMINE*
UPM-L1\00626824.000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. III

LOCAL RULE 7-1 CERTIFICATION ................................................................................ 1

INTRODUCTION ............................................................................................................. 1

    A.    Motion *in Limine* 1 (Exclude Experts and Request for *Daubert* Hearing) ............. 2

        1.    Legal Standard ........................................................................................ 3

        2.    Exclusion of Mr. Castel's Testimony ........................................................ 4

        3.    Exclusion of Mr. McEwen's Testimony ................................................... 10

        4.    Exclusion of Mr. Cross' Testimony ......................................................... 12

    B.    Motion *in Limine* 2 (Prohibit Lay Opinion Testimony from Witnesses) .............. 14

    C.    Motion *in Limine* 3 (Exclude All Reference to Digicel-Haiti's Dismissed Claims, Theories and Arguments) ........................................................................ 15

    D.    Motion *in Limine* 4 (Exclude Evidence, Testimony and Argument Claiming That UPM's Acquisition of SIMs, Top-Ups or RLYH Plans was Illegal or Illegitimate) ...................................................................................................... 18

    E.    Motion *in Limine* 5 (Exclude Evidence, Testimony and Argument Regarding Shipping to Haiti and / or Wire Transfers) ......................................... 20

    F.    Motion *in Limine* 6 (Exclude Evidence, Testimony and Argument Regarding UPM's Business or Practices in Jurisdictions Other Than Haiti and Outside the Relevant Time Period) ............................................................... 22

    G.    Motion in Limine 7 (Exclude Evidence, Testimony and Argument Relating to Roaming Agreements Between Digicel-Haiti and U.S. "Roaming Partners") .......................................................................................................... 24

    H.    Motion *in Limine* 8 (Exclude the Use of the Term "Bypass" When Referring to RLYH) ............................................................................................ 25

    I.    Motion *in Limine* 9 (Exclude Request for Punitive Damages and Any Related Evidence, Testimony and Argument) ....................................................... 26

GENERIC MOTIONS PRESENTED WITHOUT ARGUMENT ............................................ 27

    A.    Motion *in Limine* 10 (Unopposed) - Excluding all lay and expert witnesses from the trial proceedings when they are not testifying, except each parties' representatives, pursuant to Rule 615. ................................................................ 27

    B.    Motion *in Limine* 11 (Unopposed) - Prohibiting any "Golden Rule" arguments or testimony, or any suggestions that the jury should put themselves in the positions of the parties. Rules 402, 403; *Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) .......................................... 27

    C.    Motion *in Limine* 12 (Unopposed) - Prohibiting counsel from explicitly or implicitly arguing their case during jury selection or opening statement. ............ 28

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

D.      Motion *in Limine* 13 (Unopposed) - Prohibiting the parties from addressing jurors individually (except in voir dire). ................................................................ 28

E.      Motion *in Limine* 14 (Unopposed) - Prohibiting counsel from suggesting personal knowledge of the facts or giving their opinions of the testimony, facts, credibility of the witnesses, or justice of the case. Rules 402, 403, 602, 802 ................................................................................................................ 28

F.      Motion *in Limine* 15 (Unopposed) - That counsel be specifically instructed to inform and instruct all witnesses or parties in the courtroom not to volunteer, inject, disclose, state, or mention to the jury any matters prohibited by the Court's rulings on motions *in limine*, unless specifically allowed by the Court. ............................................................................... 28

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## TABLE OF AUTHORITIES

**Cases**

*Bourjaily v. United States*, 483 U.S. 171 (1987) ................................................................. 4

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014) ........................... 4, 6

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ........................................... 3, 4

*Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) ............................. 4

*Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074 (8th Cir. 2000) ........................................ 27

*Lust by & Through Lust v. Merrell Dow Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996) .......... 4

*Murray v. S. Route Mar. SA*, 870 F.3d 915 (9th Cir. 2017) .............................................. 3

*Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051 (9th Cir. 2008) ............... 14, 15

*Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843 (9th Cir. 2014) ....................... 4

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) ....................................................... 3, 4, 6

*United States v. Durham*, 464 F.3d 976 (9th Cir. 2006) ................................................. 14

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ................................................. 3

*United States v. Skeet*, 665 F.2d 983 (9th Cir. 1982) ..................................................... 14

**Statutes**

ORS 31.730 ..................................................................................................................... 26

**Rules**

404 ............................................................................................................................ 19, 21

701 ................................................................................................................................. 14

Fed. R. Civ. P. 32 ........................................................................................................... 25

Fed. R. Civ. P. 37 ........................................................................................................... 24

Fed. R. Evid. 403 ...................................................... 1, 2, 6, 10, 14, 19, 21, 23, 27, 28

Fed. R. Evid. 1002 .......................................................................................................... 25

Fed. R. Evid. 104 ............................................................................................................. 2

Fed. R. Evid. 401 ........................................................ 1, 2, 6, 10, 14, 19, 21, 23

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Fed. R. Evid. 402 ...................................................................1, 2, 6, 10, 14, 19, 23, 27, 28

Fed. R. Evid. 602 .......................................................................................................... 1, 28

Fed. R. Evid. 615 ............................................................................................................... 27

Fed. R. Evid. 702 ...........................................................................1, 2, 3, 5, 6, 10, 14

Fed. R. Evid. 801 ............................................................................................................... 25

Fed. R. Evid. 802 ......................................................................................................... 25, 28

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), Defendants UPM Technology, Inc. and Duy "Bruce" Tran (collectively "UPM" unless context otherwise requires) state that their counsel conferred in good faith with counsel for Digicel-Haiti, to resolve the disputed issues and were unable to do so.

## INTRODUCTION

UPM's motions *in limine* generally arise under Fed. R. Evid. ("Rule") 401 and 402 (exclusion of irrelevant evidence), Rule 403 (exclusion of unduly prejudicial or confusing evidence), Rule 602 (witnesses must have personal knowledge of what they testify to), and Rule 702 (exclusion of unreliable and speculative "expert" testimony). These motions are based on the Court's ruling on dispositive motions, which dismissed claims that UPM affirmatively misrepresented anything to, or failed to provide material information to, Digicel-Haiti. ECF #294 at 27-30. That ruling left Digicel-Haiti with one remaining theory – that UPM defrauded Digicel-Haiti by using human behavior software ("HBS") to actively conceal the fact that UPM's SIMs were not being used by individual subscribers, *id.* at 30-31 – applied to two counts, relating to UPM's resale of Roam Like You're Home ("RLYH") service (Count I) and to UPM's in-country bypass activity (Count II). The Court's ruling provides the test for what evidence is relevant to these counts and what is not. Notably, much of Digicel-Haiti's evidence – including evidence that may have been relevant to Digicel-Haiti's broader, now-rejected fraud theories, but has no bearing on active concealment – fails that test and must be excluded.

Procedurally, UPM's motions cover all forms of communicating information to the jury, directly or indirectly, including via exhibits, demonstratives, testimony, questions, objections, comments on testimony, innuendoes, and statements during opening, closing, and *voir dire*. If the Court denies or reserves any motion *in limine* on the ground that Digicel-Haiti may be able to establish a conditional basis for admission, UPM moves in the alternative that Digicel-Haiti provide notice of its intention to raise the issue outside

Page 1 – DEFENDANTS' MOTIONS *IN LIMINE*
UPM-L1\00626824.000

of the jury's hearing so that the Court may decide pursuant to a hearing under Rule 104 whether Digicel-Haiti may proceed.

### A.  Motion *in Limine* 1 (Exclude Experts and Request for *Daubert* Hearing)

UPM moves, pursuant to Rules 401, 402, 403 and 702, to exclude all testimony from Charles Castel, Kenneth McEwen and Philip Cross, each of whom Digicel-Haiti designated as an expert witness. As described more fully below, Mr. Castel's testimony should be excluded because he is not qualified to provide an expert opinion on the issues for which he is offered; because his "methodology" is unreliable; and because his testimony is based entirely on unreliable speculation. While Mr. McEwen might be an expert on certain issues, he is not an expert on the nature, operation or impact of HBS, and so cannot testify as to the only surviving claim in this case. Moreover, his testimony, too, is based on speculation, not facts or data. Finally, Mr. Cross' testimony should be excluded because it is irrelevant. He is offered as providing testimony "regarding the legality [and] international standard related to bypass," but that has nothing to do with any issue in this case.[1] Moreover, while he has evidently participated at the staff level in groups addressing international telecommunications issues, his training is as an electrical engineer, not a lawyer or policy analyst, so he is not qualified to offer opinions about the "legality" of "bypass" or any purported "international standards" relating to it.

Because each of these witness' testimony is irrelevant, based on speculation (rather than sufficient facts or data), or both, the Court should exclude their testimony without a *Daubert* hearing as to their qualifications and whether their testimony would assist the jury. If, however, the Court chooses not to exclude their testimony on those grounds, then UPM requests that the Court conduct a *Daubert* hearing regarding each of their qualifications and the usefulness of each of their testimony.

---

[1] ECF #304 at 2.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## 1.    Legal Standard

Rule 702 governs the admissibility of expert testimony. District court trial judges must prevent "shoddy expert testimony and junk science from reaching the jury." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 923 (9th Cir. 2017) (citing *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 595-97 (1993)). This applies to ***all*** expert testimony, not just scientific opinions. *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010). The Ninth Circuit has detailed the applicable standard: (1) the opinion must be based on scientific, technical, or other specialized knowledge; (2) it will assist the trier of fact in understanding the evidence or determining a fact in issue; (3) the expert must have appropriate qualifications for the subject matter on which he is testifying; (4) the testimony must be relevant and reliable; the expert's methodology or technique must fit the conclusions; and (5) the probative value of the testimony must not be outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time. *See United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). More recently, the Ninth Circuit explained:

> Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702.
> …
> "[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id*. at 564 (quoting *Daubert*, 509 U.S. at 597)."Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id*. at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id*. at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738

F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id*. at 969-70.

The test of reliability is flexible. *Estate of Barabin v. AstenJohnson, Inc*., 740 F.3d 457, 463 (9th Cir. 2014) (en banc). The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance. *Id*.; *see also Primiano*, 598 F.3d at 564. But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation marks omitted); *see also Barabin*, 740 F.3d at 463. The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 564-65. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014).

*Daubert* held that an expert's opinion must consist of more than "subjective belief or unsupported speculation." 509 U.S. at 589-90. "[P]ersonal opinion testimony is inadmissible as a matter of law under Rule 702 and speculative testimony is inherently unreliable." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (internal citations omitted). The proponent of the expert has the burden of proving admissibility. *Lust by & Through Lust v. Merrell Dow Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996). Admissibility of the expert's testimony must be shown by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

These standards show that Digicel-Haiti's proffered experts should be barred.

### 2.     Exclusion of Mr. Castel's Testimony

Mr. Castel is undoubtedly an educated and intelligent man. But he has never testified as an expert in the United States on any topic, let alone as an expert in the

calculation of damages.[2] In this case, Digicel-Haiti must show by clear and convincing evidence that it was damaged as a result of UPM using HBS to conceal UPM's bypass activity. ECF # 294 at 30-31. Mr. Castel does not attempt to estimate those damages. He has no knowledge of UPM's activities.[3] His report does not even mention HBS, much less attempt to estimate how much traffic UPM may have completed as a result of using HBS.[4] Instead, he presents a high-level, entirely speculative estimate, not based on sufficient facts or data, using an inherently unreliable methodology, of how much bypass traffic Digicel-Haiti *might* be experiencing, in the aggregate. This inadmissible material will not "help the [jury] understand the evidence or to determine a fact in issue." Rule 702(a). To the contrary, even if Mr. Castel's estimate were valid on its own terms – which, as discussed below, it is not – it has no bearing on how much bypass traffic UPM might have completed on Digicel-Haiti's network, either in total, or as a result of using HBS.[5]

In addition, and perhaps more fundamentally, Mr. Castel's material ignores the Court's ruling on dispositive motions, rendering his testimony irrelevant to any surviving issue for trial. Digicel-Haiti's surviving fraud theory is that UPM harmed Digicel-Haiti by using HBS to actively conceal the fact that it was using its SIMs for bypass. ECF #294 at 31. HBS manages the pattern of calls made using a given SIM so that the pattern looks like the SIM is being used by an individual subscriber.[6] Any damages, therefore,

---

[2] Castel Depo., 6:5-13 (*see* Declaration Of Christopher W. Savage in Support of Defendants' Motions *in Limine* ("Savage Dec.") at ¶ 3, Ex. 1).

[3] Castel Depo., 75:24-76:2; 112:17-19; 121:9-20.

[4] UPM's evidence will show that in fact it did not use HBS in connection with terminating calls on Digicel-Haiti's network.

[5] Mr. Castel's presentation also has literally nothing to do with UPM's RLYH resale. In the unlikely event that Mr. Castel's material is allowed at all, it must be made clear to the jury that his testimony relates only and exclusively to Count II, and has no bearing on Count I.

[6] UPM notes that Digicel-Haiti has not proffered any evidence to define what "HBS" means or how it works, which creates severe problems for its own case. At a very high level, at

---

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

would arise because making calls with a SIM in that *pattern* had the effect of *delaying* Digicel-Haiti's recognition that the SIM is being used for bypass. Where HBS was not used to manage the calling pattern of a SIM, there cannot have been active concealment of by using HBS. If HBS was used to manage the calling pattern of a SIM, the relevant measure is the difference between how much traffic the SIM would have completed without HBS, versus the amount it actually completed by the use of HBS. In other words, under the Court's ruling, Digicel-Haiti can only have experienced legally cognizable "damages" from calls that would *not* have gone through in the absence of HBS, but that *did* go through as a result of it. Any harm caused by calls that would have gone through irrespective of the use of HBS was, obviously, not caused by the use of HBS, and so cannot contribute to Digicel-Haiti's damages.[7] Mr. Castel's material ignores this point entirely, *i.e.,* it ignores the Court's ruling narrowing the issues in this case, and, as such, is not relevant to the issues actually before the jury for determination at trial.

Not only is Mr. Castel's generic, speculative, high-level estimates of how much bypass Digicel-Haiti might have endured fail to provide any meaningful evidence of the only relevant measure of damages; those estimates are also inherently confusing. "Expert opinion testimony is relevant if the knowledge underlying it has *a valid connection to the pertinent inquiry*. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of *the relevant discipline*." *City of Pomona*, *supra,* 750 F.3d at 1044 (citing *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)). Mr. Cross's material fails this test and must be excluded under Rules 401, 402, 403, and 702.

Digicel-Haiti protests that it cannot know how much traffic UPM terminated,

the pretrial stage, UPM refers the Court to the Third Amended Complaint (ECF #200) at ¶¶ 46-47 for a general description.

[7] For example, the very first call made with any SIM cannot contribute to Digicel-Haiti's damages. The first call does not and inherently cannot *conceal* anything; to the contrary, a SIM's first call *announces* that a given SIM is active, and doubtless alerts Digicel-Haiti's system to begin tracking and analyzing its usage.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

and so must rely on estimates. But this is wrong on several levels. At the outset, UPM has provided information to Digicel-Haiti in discovery that identifies with a high degree of precision, based on contemporaneous business records, how many SIMs it activated and much traffic it sent to Digicel-Haiti's network. Even if Digicel-Haiti lacks data of its own (which it does not; see below), that is not an excuse for ignoring the best available data just because it comes from discovery. Digicel-Haiti's decision to put forward Mr. Castel's speculative and unreliable material is a tactical choice, not something imposed on Digicel-Haiti by data limitations.

More fundamentally, even without UPM's data, Digicel-Haiti has always been able to estimate, based on actual data, how much bypass traffic it experienced on its network, how many bypass SIMs were active on its network, and how much traffic a bypass SIM completes. Consider: Digicel-Haiti knows exactly how many SIM cards it cuts off for bypass each day, each week, each month and each year. It therefore can estimate what portion of active SIMs on its network are being used for bypass. Digicel-Haiti also knows exactly how many minutes of use each SIM card completed before Digicel-Haiti cut it off. It therefore can estimate how much bypass traffic an average SIM completes. With such an analysis in hand, it could readily prepare an evidence-based estimate of how much bypass traffic, in total, it is experiencing. And to estimate the amount of bypass traffic being generated by any one bypasser, all Digicel-Haiti would need is information on how many SIMs the bypasser had activated – which, if Digicel-Haiti could not reasonably estimate in some other way, UPM has indicated in discovery.

Moreover, this same information about bypass SIMs – information that in Digicel-Haiti's possession – would also have enabled it to estimate damages caused by the use of HBS, which is now the only issue in this case. First, Digicel-Haiti could determine (by looking at the call detail records associated with bypass SIMs' calls) the average length of the first call made with a bypass SIM. These calls would be excluded from the analysis because, as noted above, completing a SIM's first call can never be caused by the use of

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

HBS. Second, Digicel-Haiti would identify the bypass SIMs that completed the most traffic before being identified, and determine what delayed their identification. If identification was delayed due to the SIMs' calling patterns (as opposed to, for example, some unrelated failure in Digicel-Haiti's systems), Digicel-Haiti would then know that those SIMs were completing more calls than they otherwise would, as a result of the use of HBS – the issue in this case.

For these reasons, any suggestion that Digicel-Haiti could not have developed a fact-based, evidence-based analysis of the impact of bypass on its operations – both in general and in the specific context of damages caused by bypassers' use of HBS – is frankly incredible. Digicel-Haiti had ample actual data about actual SIMs actually engaged in bypass and actually delaying detection by means of clever software – yet it has presented nothing that remotely reflects, or is in any way based on, that actual data. This fatally undermines any claim that Mr. Castel's speculative and unreliable material should ever be presented to the jury.[8]

---

[8] In this respect, UPM submits that it is both curious and extraordinarily convenient for Digicel-Haiti that a mysterious "server crash" in 2018 – three years after this case was filed – evidently wiped out all of Digicel-Haiti's data for the period relevant to this case. *See* Boute Depo., 50:2-60:22 (Savage Dec. at ⁋ 4, Ex. 2). *See also* Laborde Depo., 21:25-23:19, 25:2-26:1 (Savage Dec. at ⁋ 5, Ex. 3). Mr. Laborde's testimony (also as Rule 30(b)(6) witness) details the data captured in a Digicel-Haiti CDR, which allows an understanding of what could have been done with the now-missing information. But even ***that*** is not an excuse, because it implies that three years into the case, Digicel-Haiti had not provided any data to any third party to perform any sort of evidence-based analysis of its damages. If that is the case, then Digicel-Haiti's lack of a data-based analysis is a result of its dithering earlier in the case, and does not justify putting rank speculation before the jury. The only other possibility is that Digicel-Haiti had conducted an evidence-based analysis of bypass, as described above, but that somehow, coincidentally, that analysis, too became unavailable. And as a last resort, even if all the historical data was lost as of 2018, Digicel-Haiti could have conducted the investigation along the lines noted above starting with post-2018 data, because it has repeatedly stated that it continues to experience bypass to this day. *See* Third Amended Complaint at ¶ 167 (as of October 19, when the Third Amended Complaint was filed, bypass is supposedly "continuous and ongoing").

---

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Finally, nothing in Mr. Castel's testimony reflects "expertise." Stated charitably, he presents a high-level estimate of how much bypass, in total, Digicel-Haiti might be experiencing. But that high-level estimate is not based either on reliable facts or on a sound, accepted methodology. Instead, it is cobbled together from a range of speculative assumptions. Mr. Castel has no reliable information or data to suggest that the number of gateways he assumes to exist, ever actually existed; no reliable information to suggest how many ports each (assumed) gateway might have had; no reliable information to suggest how many of those (assumed) ports might have been active at any given time; and, certainly, no reliable information to suggest that any of the (assumed) gateways were used to terminate traffic that UPM had sent to Haiti via the Internet.[9]

In addition, Mr. Castel presents nothing, and there is nothing, to indicate that his methodology is reliable (it is not). He cites no articles, studies, or analyses in any learned journals supporting his methodology. He cites no textbooks or other sources to support or validate it. He cites no evidence that any other expert has ever used his methodology in any context. Neither he nor Digicel-Haiti point to any court case in any jurisdiction that has ever accepted an estimate of the sort he has constructed, for any purpose. Putting it bluntly, he is making stuff up.

Permitting an "expert" to testify to "damages" figures based on such a shoddy foundation would undoubtedly confuse and prejudice the jury. It would do so, among other ways, by drawing their attention away from any harm that *UPM* might have caused Digicel-Haiti due to the use of HBS – the issue in the case – and instead focusing them on Digicel-Haiti's ***general bypass problem*** – a matter that is not at issue. Indeed, permitting

---

[9] The monetary aspect of Mr. Castel's analysis – where he simply multiplies his unreliable estimate of the number of bypass minutes by $0.23 – also contradicts Digicel-Haiti's Rule 30(b)(6) witness (Mr. Boute) and its network expert Mr. McEwen – both of whom expressly recognize that Digicel-Haiti's supposed damages from bypass are not the full $0.23 per minute, but instead must be reduced to reflect the $0.05 per minute it pays to the Haitian government. Mr. Castel ignores this $0.05 offset in his estimate.

Page 9 – DEFENDANTS' MOTIONS *IN LIMINE*
UPM-L1\00626824.000

the jury to hear figures purporting to show that Digicel-Haiti is subject to massive bypass would necessarily imply to the jury that UPM was responsible for at least a substantial portion of the total – why else is it being presented? – when in fact there is no evidence that this is true, and considerable evidence that it is not. The minimal probative value of such evidence, therefore, is clearly outweighed by its potential to confuse and prejudice the jury, and should therefore be excluded under Rule 403 and Rule 702

For all these reasons, therefore, Mr. Castel's testimony should be excluded.

### 3.    Exclusion of Mr. McEwen's Testimony

Mr. McEwen's testimony should also be excluded under Rules 401, 402, 403, and 702. Unlike Mr. Castel, he seems to have some expertise that is in some sense broadly relevant to the question of bypass. Generic bypass, however, is not the issue – the issue is whether ***UPM actively concealed*** its bypass activities from Digicel-Haiti by using HBS to manage the patterns of calls made with its SIMs. Mr. McEwen makes some reference in his report to the existence of HBS, but he does not appear to have any expertise in or familiarity with the actual operation or use of such software. He is, therefore, not qualified to present testimony relevant to whether UPM actively concealed its bypass by means of using HBS. Consequently, his testimony will not help the jury understand the evidence or determine a fact at issue, because he has no knowledge of UPM's operations or practices and no expertise relevant to the case.

Mr. McEwen's opinions, moreover, are speculative, inherently unreliable and unsupported by the facts. He claims that he is providing an "assessment of the design used by UPM and the reasons for that particular choice of design."[10] In fact, however, he has no information or understanding of the "design" of UPM's operations or business practices – and certainly no knowledge of whether UPM used HBS to manage any of its SIMs and, if

---

[10] ECF #305-1 at 4.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

it did, how effectively that may have delayed Digicel-Haiti's ability to cut them off. This is shown by the text of Mr. McEwen's own report. The relevant section is entitled "UPM's *Suspected* Deployment,"[11] and includes the following:

> In the case of the *suspected* deployment by UPM they *apparently* have taken the concept of a distributed SIMBank one step further…
>
> In this case the deployment that UPM has been *suspected* of producing …
>
> Although at this time the number of deployed GSM gateways that UPM's *suspected* solution uses *has not been divulged or exposed* …
>
> the nature of the GSM gateways and the number of sites that UPM are *suspected* of having deployed *has not been disclosed* …[12]

Suspicions and appearances are not a sound basis for expert testimony in a technically complicated case such as this one. And, again, none of these suspicions reach the relevant issue, which is whether UPM used HBS to manage its SIMs and, if so, how much it may have delayed Digicel-Haiti in cutting them off.

Moreover, Mr. McEwen admitted that his opinion is not based on any information about UPM. Instead, his opinions is based on "my experience of how bypass operators typically behave rather than anything that's been provided to me" and "on my knowledge of how these people behave and how bypass operators typically behave rather than anything that's been typically passed to me or been passed to me in reference to the

---

[11] ECF #305-1 at 14 (emphasis added).

[12] *Id*. at 14-15 (emphasis added). UPM notes that materials produced in discovery permit the identification of the number of gateways that it had sent to Haiti, and that Mr. Tran, as UPM's Rule 30(b)(6) witness, discussed this topic in his deposition. Tran Rule 30(b)(6) Depo., 610:25-611:21; 613:4-24 (*see* Savage Dec. at ¶ 6, Ex. 4); *see also id*., 578:1-579:25. So even if prior to the commencement of the case Digicel-Haiti was unsure about these issues, there has been plenty of time since discovery was completed in mid-2021 to base expert opinions on actual facts.

Page 11 – DEFENDANTS' MOTIONS *IN LIMINE*
UPM-L1\00626824.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

way UPM has particularly behaved during any investigation done by Digicel."[13] It is, therefore, entirely speculative for Mr. McEwen to provide an opinion regarding a purported "assessment of the design *used by UPM*." To the extent that Mr. McEwen has opinions or speculations about UPM, they are not based either on any reliable data or on any expertise that Mr. McEwen may possess.[14]

In these circumstances, McEwen's opinion about the "the design used by UPM and the reasons for that particular choice of design" is utter speculation, inherently unreliable, and unsupported by the facts; such testimony will not assist the jury in determining any factual issue, or understanding the relevant evidence, before it To the extent that such a highly speculative opinion has any probative value at all, when cloaked in the garbs of an expert that minimal value is substantially outweighed by the risk of unfair prejudice and confusion under Rule 403. His testimony must be excluded from trial on this basis alone. In the alternative, UPM requests that the Court conduct a *Daubert* hearing regarding Mr. McEwen's qualifications and proffered testimony.

### 4.    Exclusion of Mr. Cross' Testimony

Mr. Cross' testimony should be excluded for the simple reason that it is not relevant to any issue in the case. He is offered as providing testimony "regarding the legality [and] international standard related to bypass," but that has nothing to do with

---

[13] McEwen Depo. p. 146:12-148:22 (*see* Savage Dec. at ⊩ 7, Ex. 5).

[14] UPM provided information in discovery identifying the particular brands and models of SIM management equipment that it used (devices by companies called iQsim and Teles). If Mr. McEwen were actually an expert on SIM management or HBS, he could have discussed the capabilities of those devices to perform HBS-like functions, what configuration options were available with them, etc. This would have given a meaningful baseline about what UPM, in theory, could have done to use HBS to avoid having its SIMs cut off – although, again, UPM's evidence will show that it did not, in fact, use any such capabilities. His failure to address these topics simply reflects his lack of relevant expertise.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

whether UPM used HBS to conceal its bypass activities from Digicel-Haiti.[15] Moreover, while Mr. Cross has participated at the staff level in various international groups address telecommunications issues, his training is as an electrical engineer, not a lawyer or policy analyst, so he is not qualified to offer any opinions about either the "legality" of "bypass" or any purported "international standards" relating to it.[16]

Digicel-Haiti asserts that Mr. Cross' testimony would be needed as rebuttal to UPM's expert Mr. Gillan, but that is not true. As discussed at the hearing on the parties' dispositive motions, a precondition for UPM's use of HBS to constitute active concealment is that Digicel-Haiti had the legal right to cut off SIMs that were being used for bypass. UPM will argue that Digicel-Haiti did not have that right with respect to SIMs being used in the United States, to originate calls in the United States, in the course of RLYH resale. UPM will present legal argument showing that the FCC has a long-standing policy forbidding carriers such as Digicel-Haiti from restricting the resale of their services. Mr. Gillan will testify as to the economic analysis underlying that policy and explain that the same type of economic harms that the FCC targeted in its various rulings addressing its ban on resale restrictions exist in the case of Digicel-Haiti's blocking of RLYH resale. Any rebuttal of Mr. Gillan would need to be focused on that economic analysis. The policies and views of other countries and international bodies regarding bypass have nothing to do with the economic analysis of resale restrictions, and certainly nothing to do with the FCC's rules, rulings and policies that govern carrier behavior in the United States. On this point, Mr. Cross himself noted in his deposition that no matter what international telecommunications bodies may think about bypass (or anything else), the regulatory obligations applicable to activities in any given country are determined by the regulators

---

[15] ECF #304 at 2.

[16] ECF #304-3 at 30-37.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

in that country.[17] So, Mr. Cross' testimony is not relevant even as rebuttal to Mr. Gillan.

For these reasons, the Court should exclude Mr. Cross' testimony as irrelevant and prejudicial under Rules 401, 402, 403 and 702. If the Court does not so rule, then UPM requests that the Court conduct a *Daubert* hearing regarding Mr. Cross's qualifications and proffered testimony.

### B. Motion *in Limine* 2 (Prohibit Lay Opinion Testimony from Witnesses)

Digicel-Haiti has identified two witnesses, Maarten Boute and Gerard Pierre Laborde, who intend to offer speculative, inadmissible lay opinion testimony on behalf of Digicel-Haiti. Specifically, Mr. Boute will offer testimony regarding "Haitian law" and how that affects Digicel-Haiti;[18] Mr. Laborde will offer testimony, among other things, regarding Digicel-Haiti's "Obligations to Serve the Public" and the licensing, franchising and authorizations from the Haitian Government.[19] The testimony of both witnesses is inadmissible on this topic under Rules 701 and 403.

Lay opinion testimony is only admissible under Rule 701 when it is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Rule 701. Lay opinion testimony must be "predicated upon concrete facts" within the witness's own observation and recollection. *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006) (citing *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982). Further, legal conclusions are generally inadmissible and are not helpful to the trier of fact. *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059-60 (9th Cir. 2008)

---

[17] Cross Depo., 70:17-71:4; 82:3-13 (*see* Savage Dec. at ⁋ 8, Ex. 6).

[18] Lay Witness Statements, ECF #303 at 2-3.

[19] *Id*. at 6.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

("[t]estimony that simply tells the jury how to decide is not considered 'helpful' as lay opinion."). Neither Mr. Boute nor Mr. Laborde are lawyers or experts seeking admission of their opinions under Rule 702, yet both intend to testify regarding Haitian law. Any such testimony would constitute inadmissible legal conclusions and must be excluded.

Moreover, UPM also requests that the Court instruct the witnesses not to use the words "illegal", "unlawful", "fraud", "fraudulent", "misrepresentation", "concealment" or the like to describe UPM's conduct. Such words have specific meaning under Oregon law and are tantamount to telling the jury how to decide this case. *Nationwide Trans. Fin.*, 523 F.3d at 1059-60. "Resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Id.* at 1058 (citations omitted). Such testimony not only has no probative value, it would inevitably confuse and prejudice the jury. All such testimony, therefore, should be excluded under Rule 403.

### C.  Motion *in Limine* 3 (Exclude All Reference to Digicel-Haiti's Dismissed Claims, Theories and Arguments)

UPM requests that this Court enter an order *in limine* excluding all references, including evidence, testimony and argument, relating to the various claims and legal theories that Digicel-Haiti's advanced earlier in the case, but that have been dismissed. As noted above, the Court's ruling on dispositive motions dismissed the claims that UPM affirmatively misrepresented anything to, or failed to disclose material information to, Digicel-Haiti; fraud by direct misrepresentation or material omission are no longer at issue. ECF #294 at 27-30. The necessary implication of this ruling is that Digicel-Haiti's over-arching theme – that all bypass calls and all forms of bypass are illegal or fraudulent – is no longer viable. The only remaining theory for trial is whether UPM defrauded Digicel-Haiti by using HBS to conceal the fact that UPM's SIMs were being used for bypass (i.e., fraud by active concealment). *Id.* at 30-31.

This motion is necessary because, despite the Court's ruling, Digicel-Haiti appears to be intent on trying to advance its now dismissed theories. For example, Digicel-

Haiti claims that the evidence at trial will show that UPM used its "servers and other telecommunications equipment" to route calls using the RLYH services "causing Digicel Haiti's network to recognize that call as a call from a roaming Digicel Haiti subscriber" such that the "call from the original third-party caller remained concealed."[20] This theory – that UPM in some way misrepresented or failed to identify the identity of a calling party – has already been rejected by the Court. ECF #294 at 27-28.[21] Digicel Haiti also claims that UPM used "artifice, concealment, and deception to carry out their fraud. This includes, *but is not limited to*, the use of" HBS.[22] Even more boldly, Digicel Haiti claims that its "*fraud claim encompasses all of UPM and Tran's activity aimed at concealing their bypass operation from Digicel Haiti*…"[23] and that "Defendants' *entire scheme* was devised to conceal their activity…"[24] All of this reflects Digicel-Haiti trying to defy the Court's ruling and – notwithstanding that its only live claim is active concealment via HBS – to get before the jury anything and everything that UPM may have done that Digicel-Haiti can spin as looking bad. Again, permitting this would make a mockery of the Court's

---

[20] Plaintiff's Trial Memorandum, ECF #299 at 2-3.

[21] *See also* ECF #294 at 16-18.

[22] Plaintiff's Trial Memorandum, ECF #299 at 3 (emphasis added).

[23] *Id*. at 4 (emphasis added).

[24] *Id*. at 8 (emphasis added). Indeed, the very first sentence of Plaintiff's Trial Memorandum broadly claims "[a]s Digicel Haiti has alleged and discovery has confirmed, UPM…conceived, constructed, and operated an international Bypass scheme that defrauded Digicel Haiti..." Digicel-Haiti then going on to re-allege that "[s]tarting in or about 2011, Defendants began illegally acquiring Digicel Haiti SIM cards in bulk" and "often concealed [their gateways] in private residences." *Id*. at 2. These allegations, which failed to survive summary judgment, are entirely irrelevant to fraudulent concealment by HBS. *See* ECF #269 at 9 ("Defendants' entire pattern of conduct and admitted activity— including the direct acts of Bypass *and all of the surrounding activities required to facilitate the Bypass operations in Haiti*—demonstrate the multiple omissions and false representations that operated to actively conceal their bypass activity." (emphasis in original)).

Page 16 – DEFENDANTS' MOTIONS *IN LIMINE*
UPM-L1\00626824.000

ruling narrowing the case, and would severely prejudice UPM.

In addition to continuing to promote its now-dismissed theories of fraud, Digicel-Haiti is also still trying to claim that there were "terms and conditions" and a "contract" which restricted UPM's use of Digicel-Haiti SIM cards. For example, Digicel-Haiti's CEO, Mr. Boute, will apparently offer testimony regarding "Digicel Haiti's operations and the regulations of the use, sale, and distribution of SIM cards which are subject to Digicel Haiti's terms and conditions. He will confirm where and how the consumer can find said terms and conditions that are available online and in stores,"[25] and regarding the "general terms and conditions for operation and subscription."[26] Such testimony not only has nothing to do with active concealment by means of HBS; it has been specifically rejected by the Court. As stated in the recent ruling: "Digicel Haiti offers no facts or argument explaining how UPM would have become obligated to Digicel Haiti's terms, for example by 'shrink wrap' terms, electronic 'click' agreement, or some other means[, t]hat may explain why Digicel Haiti has not alleged breach of contract." ECF #294 at 15, fn. 11. The Court also stated that "[i]t is also unclear what, if any, terms Digicel Haiti tried to attach to its RLYH program or how UPM might have become bound to those terms. Digicel Haiti presents no evidence that might answer these questions, especially the latter. Moreover, even if UPM were contractually bound to these terms, Digicel Haiti presents no evidence or argument for why any breach of those terms might also be actionable as fraud." *Id*. at 18, fn. 13. In light of these clear rulings, it is profoundly inappropriate for Digicel-Haiti to proffer testimony or arguments on the very claims that the Court dismissed.

The Court should also exclude all references, including evidence, testimony and argument, relating to Digicel-Haiti's dismissed RICO claims. ECF #188 at 23-7. Such evidence includes facts that Digicel-Haiti asserted in order to satisfy the predicate-acts

---

[25] Plaintiff's Lay Witness Statements, ECF #303 at 2-3.

[26] *Id*. at 3.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

requirement of RICO, including, but not limited to, allegations related to shipping items to and from Haiti and wire transfers regarding Haiti. *See* Third Amended Complaint (ECF #200) at ¶¶ 137-160 ("Defendants' Mail and Wire Fraud Activities"). Because the RICO claims have been dismissed, and because the case is limited to claims of active concealment via the use of HBS, evidence related to "mail and wire fraud activities" (and other matters not bearing on that topic) is irrelevant and must be excluded under Rules 401 and 402. And, to the extent that Digicel-Haiti may be able to concoct some theory on which such materials have some minimal probative value, any such probative value is outweighed by the plain tendency of such materials to confuse and prejudice the jury, warranting exclusion under Rule 403. Furthermore, to the extent that Digicel-Haiti seeks to introduce such evidence to make a showing along the lines of, "see what kind of company UPM is, and what kind of person Mr. Tran is," that evidence would constitute improper character evidence under Rule 404, which also further supports excluding it under Rule 403.

For these reasons, all references, including evidence, testimony and argument, relating to Digicel-Haiti's dismissed claims and theories should be excluded.

### D. Motion *in Limine* 4 (Exclude Evidence, Testimony and Argument Claiming That UPM's Acquisition of SIMs, Top-Ups or RLYH Plans was Illegal or Illegitimate)

Throughout this proceeding, Digicel-Haiti has argued that UPM "illegally" or "illegitimately" obtained Digicel-Haiti SIM cards in Haiti. For example, Digicel-Haiti claimed that the only "legitimate" way to purchase a SIM card requires the purchaser to complete a Customer Registration Card using a government-issued identification card.[27] Digicel-Haiti has also claimed that it is illegal to purchase two or more SIM cards in a single day, and that retailers are prohibited from selling to purchasers they know will use the SIM cards for resale.[28] These claims are irrelevant under Rules 401 and 402, unfairly

---

[27] Third Amended Complaint, ECF #200 at ¶ 64. *See* ECF #294 at 28-29.

[28] ECF #294 at 28-29.

Page 18 – DEFENDANTS' MOTIONS *IN LIMINE*
UPM-L1\00626824.000

prejudicial and misleading under Rule 403, and constitute inadmissible hearsay under Rule 802 and character evidence under Rule 404.

The Court correctly ruled that Digicel-Haiti has not presented any evidence to show that UPM's agents were asked to fill out any forms when they purchased SIM cards in Haiti: "Digicel-Haiti did not require them to fill out forms, and the service provided by Digicel Haiti was unaffected by whether a form was completed and returned."[29] Further, there is no evidence that any express contract was ever established between UPM and Digicel-Haiti, which means that UPM was not and could not be bound by any terms or conditions applicable to the purchase of acquisition of SIM cards. As the Court noted, "Digicel-Haiti may have claims against its retailers, subscribers, and customers, including its distributors and associate partners, but UPM does not fit into any of those categories."[30] Yet, undeterred by the Court's clear rulings, Digicel-Haiti is stiff trying to introduce testimony that UPM "illegally" acquired its SIM cards.[31]

Not only is there no factual basis for claims that UPM "illegally" or "illegitimately" purchased SIM cards; such claims are irrelevant and inadmissible character evidence. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," Rule 401, and irrelevant evidence is inadmissible. Rule 402. And, under Rule 403, the Court may exclude otherwise admissible evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Finally, Rule 404(b)(1) states that "[e]vidence

---

[29] *Id.* at 28.

[30] *Id.* at 29.

[31] Plaintiff's Trial Memorandum, ECF #299 at 2 ("Defendants began illegally acquiring Digicel Haiti SIM cards in bulk, against the commercial restrictions Digicel Haiti places on its wholesale and retail vendors").

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acting in accordance with the character."

As narrowed by the Court's ruling, the question in this case is whether UPM used HBS to manage its SIMs in a manner that constituted misrepresentation by active concealment within the meaning of Oregon law, and if so, whether Digicel-Haiti can prove the other elements of common-law fraud (such as reasonable reliance and damages). How the SIM cards were obtained in Haiti has no bearing on that question. Further, even if how UPM acquired SIMs had some limited relevance, any such relevance is substantially outweighed by the danger of unfair prejudice to UPM and misleading the jury. Such claims would also be inadmissible character evidence under Rule 404 – essentially amounting to an effort to show that UPM and/or Mr. Tran did bad things, so they must also have committed fraud by active concealment.[32]

For all of these reasons, UPM moves the Court for an order *in limine* prohibiting Digicel-Haiti from eliciting testimony, offering evidence, argument or otherwise alleging that UPM "illegally" or "illegitimately" purchased SIM cards, topped them up, or enrolled them in the RLYH program.

### E. Motion *in Limine* 5 (Exclude Evidence, Testimony and Argument Regarding Shipping to Haiti and / or Wire Transfers)

As set forth in Motion *in Limine* 3, UPM has asked the Court to exclude all reference, including evidence, testimony, and argument, related to Digicel-Haiti's dismissed claims and theories. This necessarily includes the theory that evidence related to shipping items between UPM in Oregon and its agents in Haiti, and wire transfers between UPM and its agents in Haiti, constitute any sort of misrepresentation to Digicel-Haiti. ECF

---

[32] This argument applies fully to any effort by Digicel-Haiti to assert that UPM's topping-up of its SIM cards, or its enrollment of those cards into the RLYH program, were "illegal" or "illegitimate."

Page 20 – DEFENDANTS' MOTIONS *IN LIMINE*
UPM-L1\00626824.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

#294 at 3, fn. 4 ("Digicel Haiti has not presented evidence showing that the customs officials in Haiti to whom these alleged misrepresentations were made would have confiscated these Gateway devices had they known the truth about the shipped equipment.").[33]

Separately from the points raised Motion *in Limine* 3, such evidence is inadmissible under Rule 404(b)(1). In particular, Digicel-Haiti should be prohibited from presenting any of this evidence, testimony or argument to argue or imply that UPM, ***in the context of the active concealment claim in this case,*** acted in conformity with its claimed wrongful behavior in the shipping or wire transfer contexts. Whether UPM made misrepresentations on ***shipping or customs documents to unrelated third parties*** has no bearing on whether UPM used HBS to actively conceal its use of its SIM cards for bypass. As a result, such evidence would necessarily amount to improper character evidence, inadmissible under Rule 404(b)(1). Moreover, the minimal probative value of such evidence (if any) is substantially outweighed by the danger of unfair prejudice to Defendants and confusing the issues and misleading the jury, warranting exclusion under Rules 401-403. Specifically, it is highly probable that a jury may seek to punish UPM for false statements made to customs officials, even though that activity is irrelevant to the question of whether UPM used HBS to actively conceal the nature of its use of its SIM cards, which would result in an unfair trial. Accordingly, Defendants seek an order *in limine* excluding evidence, testimony and argument regarding shipping to Haiti and / or wire transfers related to Haiti.

---

[33] *See also* Third Amended Complaint, ECF #200 at ¶ 108 ("Defendants are also engaged in the sale and distribution of equipment used in bypass as a part of the fraudulent enterprise."). As noted by UPM *supra*, the only reason Digicel-Haiti included allegations related to shipping and wire transfers in this proceeding is because those facts are predicate acts under RICO, claims which have long since been dismissed.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

### F. Motion *in Limine* 6 (Exclude Evidence, Testimony and Argument Regarding UPM's Business or Practices in Jurisdictions Other Than Haiti and Outside the Relevant Time Period)

Defendants move to exclude any evidence and testimony regarding UPM's business model practices, policies or conduct in foreign jurisdictions other than Haiti. Such matters have nothing to do with whether UPM used HBS to actively conceal from Digicel-Haiti the nature of the calls UPM was making with its SIMs to Digicel-Haiti subscribers.

Throughout this case, Digicel-Haiti has sought to elicit and introduce evidence regarding UPM's operations in jurisdictions other than Haiti. For example, Digicel-Haiti alleged that, "[a]s a part of the fraudulent enterprise UPM Telecom has also been implicated in other fraudulent bypass operations in other regions with high international termination rates and has been implicated in fraudulent bypass traffic into the wholesale market servicing those areas." Third Amended Complaint, ECF #200 ¶ 170.[34] Digicel-Haiti has also sought discovery from UPM regarding UPM's operations in foreign jurisdictions. *See* Interrogatories to UPM No. 14[35] ("Please provide a list of countries in which UPM has operated over the last eight years to current date, including countries where UPM transmits or transports calls whether or not UPM owns physical assets in that country.").

None of this has anything to do with the case as it now stands. UPM's business, practices, or conduct in other jurisdictions is not relevant to the question before the jury: whether or not UPM used HBS to actively conceal *from Digicel-Haiti* the nature

---

[34] *See also* Third Amended Complaint, ECF #200 at ¶ 157 ("UPM maintained standard operating procedures for shipping gateways and other sophisticated telecommunications equipment into Haiti *and other countries*."); ¶ 158 ("UPM standard operating procedures included the use of invoice templates to be used for customs forms *in countries where UPM sought to avoid detection* of the shipment of telecommunications by customs officials.").

[35] *See* Savage Dec. at ¶ 9, Ex. 7.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

of the calls UPM was sending to ***Digicel-Haiti's*** network.[36] What UPM did, or did not do, in other jurisdictions does not make any fact relating to that question "more or less probable" and is not "of consequence" in determining whether and how UPM used HBS, what effect that may have had on Digicel-Haiti's actions, etc. Evidence relating to jurisdictions other than Haiti is therefore irrelevant under Rules 401 and 402. Moreover, information about UPM's activities with respect to jurisdictions other than Haiti is highly likely to confuse (if not prejudice) the jury, so any such evidence should also be excluded under Rule 403.

For the same reasons, testimony, evidence and argument regarding UPM's alleged conduct outside the time periods at issue in this case is not relevant. The relevant time period here includes only the period(s) in which UPM sent calls to be terminated on Digicel-Haiti's network in Haiti. The only evidence that addresses this question was submitted by UPM, and proves that UPM sent calls to Haiti during the following periods only: August of 2011 through March of 2012, and March through October of 2014. Any evidence or testimony addressing UPM's conduct outside of those time periods is not relevant to the case as it now stands. Specifically, because this case is limited to the claim that UPM used HBS to actively conceal the nature of the calls that UPM was sending to Digicel-Haiti, the relevant time periods for the case are the time periods during which UPM was sending calls to Digicel-Haiti. Any UPM conduct outside those time periods is irrelevant and should be excluded under Rules 401 and 402. And, as with evidence regarding jurisdictions other than Haiti, evidence regarding UPM's conduct outside the relevant time periods would be confusing and misleading to the jury, and unfairly prejudicial to UPM. It should therefore be excluded under Rule 403 as well.

Accordingly, under Rules 401, 402, and 403, UPM asks that the Court enter

---

[36] The jury, of course, will also address the other elements of fraud, such as intent, reasonable reliance, and damages.

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

an order *in limine* excluding any evidence, testimony and argument regarding UPM's business, practices, or conduct in jurisdictions other than Haiti and outside the scope of the relevant time periods noted above.

### G. Motion in Limine 7 (Exclude Evidence, Testimony and Argument Relating to Roaming Agreements Between Digicel-Haiti and U.S. "Roaming Partners")

UPM requests an order *in limine* excluding all evidence, testimony and argument relating to roaming agreements between Digicel-Haiti and its third-party "roaming partners." UPM sought these agreements in discovery but Digicel-Haiti refused to provide them, stating: "Plaintiff's roaming agreements are not at issue in this litigation… The entire crux of this case, both primary claims, counterclaims, and defenses, is that there were no such agreements between UPM and Plaintiff."[37] It refused to provide them even though UPM explained that these agreements were relevant to the economic arrangements applicable to RLYH (Count I) and, therefore, relevant to any potential damages claim that Digicel-Haiti might assert with respect to UPM's resale of RLYH.[38]

Yet now, Digicel-Haiti wishes to rely at trial upon information derived from the very agreements which it refused to produce and claimed were irrelevant, stating that Mr. Boute will offer testimony about Digicel-Haiti's "roaming arrangements." Fed. R. Civ. Pro. 37(c) states that "[i]f a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Pro. 37(c)(1). Having refused to produce the roaming agreements during discovery,

---

[37] Savage Dec., ¶ 10, Ex. 8 at p. 2, ℙ 4.

[38] *See* ECF #247-2 at 9. This material was submitted to the Court in connection with an earlier UPM motion to compel. It is a chart attached to a letter that counsel for UPM sent to counsel for Digicel-Haiti indicating the relevance of materials that Digicel-Haiti was not producing in discovery. The entry for UPM Interrogatory 1-27 states that UPM needs Digicel-Haiti's roaming agreements because the "economic terms on which such roaming occurred are relevant to … any claim of damages by Digicel-Haiti with respect to UPM's resale of RLYH service." *Id.*

Page 24 – DEFENDANTS' MOTIONS *IN LIMINE*
UPM-L1\00626824.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Digicel-Haiti cannot be allowed to use or rely on them at trial.

Alternatively, if Digicel-Haiti is to be permitted to address these matters in its affirmative case at trial, its witnesses (Mr. Boute and Mr. Laborde) should be forbidden from addressing information derived from the contents of Digicel-Haiti's roaming agreements without introducing those agreements into evidence (and producing them to UPM as soon as possible to permit UPM to prepare for cross-examination). Testimony about the contents of those agreements, without also admitting them into evidence, would not be the best evidence of their contents and must be excluded under Rule 1002. In this regard, if Digicel-Haiti's witnesses have not themselves reviewed the roaming agreements, any testimony about their terms would be inadmissible hearsay to which no exception would apply, because they would necessarily be testifying about what someone else told them about the agreements, in violation of Rules 801 and 802 (an out of court statement to prove the truth of the matter asserted is not admissible). And of course if they have reviewed the agreements, any discussion based on the agreements requires that they be offered and admitted under Rule 1002.[39]

## H. Motion *in Limine* 8 (Exclude the Use of the Term "Bypass" When Referring to RLYH)

UPM requests an order *in limine* excluding the use of the term "bypass" when referencing UPM's activities regarding RLYH service. As UPM has explained, RLYH calls do not "bypass" anything. When UPM connected a Haiti-bound call to a Digicel-Haiti

---

[39] UPM asked Digicel-Haiti's Rule 30(b)(6) deposition witness about the economic terms applicable to RLYH service, and he testified about those economic terms, specifically, that when a RLYH subscriber calls back to Digicel-Haiti, there is no charge from the roaming partner to Digicel-Haiti; instead, the roaming partner *pays* Digicel-Haiti $0.23 per minute, and Digicel-Haiti also charges the account of the roaming SIM card the then-current rate for local calls in Haiti. Boute Depo., 92:14-96:3. This testimony may be used by UPM "for any purpose" at trial. Fed. R. Civ. P. 32(a)(3). But the fact that UPM may use Mr. Boute's deposition testimony as admissions on these topics does not give Digicel-Haiti free rein to present affirmative testimony that necessarily relies on the contents of the roaming agreements that it refused to produce.

roaming partner in the United States, the call was routed to Haiti via Digicel-Haiti's international gateway switches, and Digicel-Haiti received its preferred $0.23 per minute rate. Nothing was "bypassed" in connection with RLYH calls. In this regard, Digicel-Haiti's proffered evidence glosses over this important difference between RLYH and "in-country bypass" in an attempt to muddle the facts and overcome the weaknesses in its RLYH case. Using the terms "resale" and "bypass" interchangeably, as Digicel-Haiti does, is misleading and confusing to the jury as there simply was no "bypass" of anything when UPM used the RLYH services.

## I. Motion *in Limine* 9 (Exclude Request for Punitive Damages and Any Related Evidence, Testimony and Argument)

Digicel-Haiti seeks an award of punitive damages if UPM is found liable on the underlying fraud claims.[40] However, as UPM explains in its Renewed Motion for Summary Judgment, filed contemporaneously herewith, Digicel-Haiti cannot receive punitive damages in this case as a matter of law, and that aspect of Digicel-Haiti's case must be dismissed. On that basis, UPM moves this Court for an order *in limine* excluding any references to Digicel-Haiti's request for punitive damages, as well as any testimony, evidence or argument related that request.

Even if the Court does not grant UPM's summary judgment motion, some matters regarding punitive damages that should be excluded from trial. First, "[p]unitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the [defendant] has acted with malice *or* has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." ORS 31.730(1) (emphasis added). Any references to punitive damages at trial should be exclude evidence or argument directed towards any claim that UPM acted with "recklessness," or "outrageous

---

[40] Third Amended Complaint, ECF #200, prayer following ¶¶ 182, 192.

indifference," or "conscious indifference," because by statute those matters relate only to harms to natural persons, not business entities.

Second, as explained in UPM's summary judgment motion, as a matter of law, punitive damages are not available as redress for out-of-state conduct that caused out-of-state harm to an out-of-state entity. Here, any harm was to Digicel-Haiti, in Haiti. As a result, if the Court allows Digicel-Haiti's punitive damages claim to go forward, the Court should exclude any evidence of any allegedly bad acts by UPM that occurred outside of Oregon, because Oregon has no interest in imposing punitive damages on such conduct. Instead, as UPM explained, the only even potentially viable fact pattern that could warrant punitive damages would be if UPM engaged in conduct in Oregon, not legal in Oregon, that caused harm to Digicel-Haiti.[41] If the Court does not dismiss Digicel-Haiti's punitive damages claim in its entirety, it should rule *in limine* that any evidence or argument regarding punitive damages be limited to actions that UPM allegedly took in Oregon, that are illegal in Oregon, and that harmed Digicel-Haiti.

### GENERIC MOTIONS PRESENTED WITHOUT ARGUMENT[42]

A. **Motion *in Limine* 10 (Unopposed)** - Excluding all lay and expert witnesses from the trial proceedings when they are not testifying, except each parties' representatives, pursuant to Rule 615.

B. **Motion *in Limine* 11 (Unopposed)** - Prohibiting any "Golden Rule" arguments or testimony, or any suggestions that the jury should put themselves in the positions of the parties. Rules 402, 403; *Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000).

---

[41] For example, nothing that happened in Haiti, or in Guatemala, or anywhere other than Oregon, can lawfully support punitive damages against UPM in this case.

[42] In conferral with Digicel-Haiti's counsel regarding these motions pursuant to LR 7-1(a), Digicel-Haiti agreed to Defendant's Generic Motions *in Limine*, Nos. 10-15.

Page 27 – DEFENDANTS' MOTIONS *IN LIMINE*
UPM-L1\00626824.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**C. Motion *in Limine* 12 (Unopposed)** - Prohibiting counsel from explicitly or implicitly arguing their case during jury selection or opening statement.

**D. Motion *in Limine* 13 (Unopposed)** - Prohibiting the parties from addressing jurors individually (except in voir dire).

**E. Motion *in Limine* 14 (Unopposed)** - Prohibiting counsel from suggesting personal knowledge of the facts or giving their opinions of the testimony, facts, credibility of the witnesses, or justice of the case. Rules 402, 403, 602, 802

**F. Motion *in Limine* 15 (Unopposed)** - That counsel be specifically instructed to inform and instruct all witnesses or parties in the courtroom not to volunteer, inject, disclose, state, or mention to the jury any matters prohibited by the Court's rulings on motions *in limine*, unless specifically allowed by the Court.

Dated: February 28, 2022.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900


DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 28 – DEFENDANTS' MOTIONS *IN LIMINE*
UPM-L1\00626824.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, I served the foregoing **DEFENDANTS' MOTIONS *IN LIMINE*** on the following individuals by electronic service to said individuals:

| | |
|---|---|
| Robert C.L. Vaughan | Anne M. Talcott |
| Cherine Smith Valbrun | Kathryn E. Kelly |
| Leah Storie | Schwabe, Williamson & Wyatt, PC |
| Kim Vaughan Lerner LLP | Pacwest Center |
| One Financial Plaza | 1211 SW 5th Ave., Suite 1900 |
| 100 SE Third Avenue • Suite 2001 | Portland, OR  97204 |
| Fort Lauderdale, FL 33394 | Email: atalcott@schwabe.com |
| Email: rvaughan@kvllaw.com | Email: kkelly@schwabe.com |
| Email: cvalbrun@kvllaw.com | |
| Email: lstorie@kvllaw.com | |

Dated: February 28, 2022.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236