**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

        Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**, <br><br> Plaintiff & Counterclaim-Defendant, <br><br> v. <br><br> **UPM TECHNOLOGY, INC**., *et al.,* <br><br> Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI <br><br> **DEFENDANTS' OBJECTION TO PLAINTIFF UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIONS IN *LIMINE*** |

Set out below are the responses of Defendants UPM Technology, Inc. and Bruce Tran (collectively, except where context clearly otherwise requires, "UPM") to Digicel-Haiti's Motions *in limine*.[1] UPM notes that all of these responses should be read in the context of UPM's own motions *in limine* seeking to require Digicel-Haiti's evidence relate to the only surviving claim in the case, which is that UPM supposedly actively concealed the nature of the calls being made using its SIM cards by means of human behavior software ("HBS").

## MOTIONS IN LIMINE

## I.     MOTION TO EXCLUDE REFERENCES TO DIGICEL HAITI'S 2018 SERVER CRASH

To the extent that this motion is strictly limited to the potential loss of certain Digicel-Haiti *emails,* UPM does not object to it. UPM has no plans to ask Mr. Boute or Mr. Laborde about missing emails.

The phrasing of the motion, however, makes clear that Digicel-Haiti is *not* seeking to limit the excluded material to emails. Instead, it is seeking the exclusion of references to any "relevant and responsive documents" that may have been lost, purportedly because "this issue is resolved."[2]

That claim is profoundly misleading, but putting that aside, the motion is entirely unjustified on the merits – at least with the focus where it belongs, which is Call Detail Records ("CDRs") and other relevant network data, not emails.  Specifically, the "issue" about lost data was "resolved" by an on-the-record stipulation in the Rule 30(b)(6) deposition of Digicel-Haiti's CEO to the effect that the company had inexplicably lost vast amounts of directly relevant information about the SIM cards used to authenticate calls on its network, along with the CDRs

---

[1] Plaintiff Unigestion Holdings, S.A.'s Omnibus Motions *In Limine* (ECF # 298) ("Digicel-Haiti Motions *In Limine*").

[2] Digicel-Haiti Motions *In Limine* at 2.

Page 2 – DEFENDANTS' OBJECTION TO PLAINTIFF
UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIOS IN *LIMINE*
UPM-L1\00626570.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

identifying specific and relevant information about the calls made using those SIM cards.[3] As explained in UPM's motion *in limine* to exclude Mr. Castel's testimony, the lost information would have allowed Digicel-Haiti to develop an evidence-based estimate of whether it was damaged by UPM's activity at all and, if so, to develop an evidence-based damages claim.[4] It would also have provided evidence regarding the extent to which entities engaged in bypass were making effective use of human behavior software ("HBS") to avoid detection.

Specifically, the lost data would have provided accurate information regarding how many SIMs Digicel-Haiti cuts off in a given period of time (week, month, year) based on its conclusion that they were being used for bypass; how many calls and how many minutes bypass SIMs completed, both on average and individually; what SIM usage profiles led to unusual delays in identifying them and cutting them off; as well as other factors relevant to a reasonably accurate estimate of the damages (if any) that Digicel-Haiti might have suffered by virtue of any UPM use of HBS. UPM is entitled to question both Digicel-Haiti's lay witnesses, as well as Mr. Castel

---

[3] The parties agreed, on the record, to the following stipulations: (1) At some point in the past Digicel Haiti's systems would naturally have recorded data showing the usage of SIM cards on its network in order to generate CDRs and all of the related data, which would include UPM's usage; (2) In the normal course of Digicel Haiti's business, that information was transferred from Digicel-Haiti servers onto backup tapes; and (3) Digicel Haiti made an effort to retrieve the data from those backup tapes in order to identify the CDR-based data, but for technical reasons that data, in additional to other relevant data, is not recoverable by Digicel Haiti for the relevant time periods here. Boute Depo. 50:2-60:22 (*see* Declaration of Christopher W. Savage in Support of UPM's Objection to [Digicel-Haiti's] Omnibus Motions *In Limine* ("Savage Dec.") at ℙ 3, Ex. 1). *See also id.,* Laborde Depo., 21:25-23:19, 25:2-26:1 (*see* Savage Dec. at ℙ 4, Ex. 2). Mr. Laborde's testimony (also as Rule 30(b)(6) witness) details the data captured in a Digicel-Haiti CDR, which allows an understanding of what could have been done with the now-missing information.

[4] This is the situation to which UPM referred in its earlier Motion for Summary Judgment (ECF #254), explaining why UPM's business records were the only reliable source of information about how much traffic UPM sent to Digicel-Haiti. [UPM's] Motion for Summary Judgment (ECF #254) at 30 & nn.102-104; [UPM's] Reply in Support of Motion for Summary Judgment (ECF #284) at 20-21; [UPM's] Opposition to Digicel-Haiti's Motion for Partial Summary Judgment (Fraud) (ECF # 278) at 16 & n.49.

Page 3 – DEFENDANTS' OBJECTION TO PLAINTIFF
UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIOS IN *LIMINE*
UPM-L1\00626570.000

(assuming he is not excluded), about what information was made available to Mr. Castel, and when; whether Mr. Castel was made aware of the existence of the bypass-SIM-specific usage data that Digicel-Haiti's systems regularly record; and other related issues as well. If Mr. Castel is allowed to testify, UPM plans to cross-examine him on these points, and to argue to the jury that he is not credible as a witness because (among other reasons) he did not insist on being provided with this information (or with some reasonable surrogate information) before attempting to develop his speculative and unreliable damages analysis. Moreover, whether or not Mr. Castel is allowed to testify, UPM expects to ask Digicel-Haiti's lay witnesses (Mr. Boute and Mr. Laborde) about these issues as well. These are all legitimate lines of attack on Digicel-Haiti's damages case, and it would be unfair and inappropriate to forbid UPM from pursuing them.[5]

Considering all of these factors, UPM requests that the Court take steps to address what amounts to Digicel-Haiti's spoliation of relevant information and records. In this regard, while spoliation of course includes intentional destruction or alteration of evidence, it also includes "***the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation***.'" *Harfouche v. Stars on Tour, Inc.*, No. 2:13-cv-00615-LDG-NJK, 2016 U.S. Dist. LEXIS 1268, at *12 (D. Nev. Jan. 5, 2016) (emphasis added), citing *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002). While UPM has no evidentiary basis to suggest that Digicel-Haiti's data loss was intentional, the effect of its absence on UPM is the same – a degraded ability to address Digicel-Haiti's claims.

The Court can rely on either or both of two sources of authority to "sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to

---

[5] Digicel-Haiti filed its case in 2015, but it appears that it had not begun any damages analysis based on actual data by 2018, when the relevant data were apparently lost. UPM notes that, had Digicel-Haiti begun such an analysis earlier (whether with Mr. Castel or otherwise) the relevant data would likely have been extracted from Digicel-Haiti's systems and stored and backed up in one or more other locations for purposes of this litigation (including, perhaps, an expert's own systems) and thus would not have been lost at all.

Page 4 – DEFENDANTS' OBJECTION TO PLAINTIFF
UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIOS IN *LIMINE*
UPM-L1\00626570.000

abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). In cases where the spoliation was not intentional,

> District courts may impose sanctions short of dismissal by instructing the fact-finder that it may draw an inference adverse to the party or witness responsible for destroying the evidence. BIC, 6 F.3d 1318, 1329 (9th Cir. 1993); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991), *cert. denied*, 503 U.S. 962, 112 S. Ct. 1567, 118 L. Ed. 2d 212 (1992). Courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

*Hall v. City of Depoe Bay*, No. 3:17-cv-00479-JR, 2018 U.S. Dist. LEXIS 166640, at *19 (D. Or. June 28, 2018).  More specifically,

> In considering what spoliation sanction to impose, courts generally consider three factors: "'(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.'" *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).

*Dallas Buyers Club, LLC v. Huszar*, No. 3:15-cv-907-AC, 2017 U.S. Dist. LEXIS 16203, at *5 (D. Or. Feb. 6, 2017).

UPM emphasizes that "a finding of 'bad faith' is ***not*** a condition precedent to the imposition of spoliation sanctions short of dismissal; 'a finding of willfulness [or] fault' can be sufficient to impose lesser sanctions in certain circumstances." *Hall*, 2018 U.S. Dist. LEXIS 166640, at *18 (emphasis added), citing *Leon*, 464 F.3d at 958.  Moreover, "[a] party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were ***potentially*** relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959, citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (emphasis original). "The prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the

Page 5 – DEFENDANTS' OBJECTION TO PLAINTIFF
UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIOS IN *LIMINE*
UPM-L1\00626570.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

case.'"  *Id.*

Here, there can be no dispute as to the following: (1) Digicel-Haiti had control over its data, including the CDRs, and had an obligation to preserve that information beginning no later than 2014, when it was preparing the Complaint that it filed in February 2015;[6] (2) Digicel-Haiti can fairly be charged with responsibility for the destruction of the information because it knew or should have known of the direct relevance – and certainly the *potential* relevance – of the data to this litigation; and (3) the data is relevant evidence to UPM's defense of Digicel-Haiti's claim, in particular (a) whether Digicel-Haiti was damaged; (b) if so, by how much; and (c) whether UPM used HBS to actively conceal its activities. As indicated above and in UPM's motion *in limine* regarding Mr. Castel, UPM is prejudiced in defending against these claims.

Again, UPM has no evidence to suggest that Digicel-Haiti intentionally lost the relevant data. But no later than 2014, it acquired an obligation to preserve it, which it obviously failed to fulfill.[7] Simply by way of example, Digicel-Haiti could have compiled the relevant data and provided it to its counsel or its experts; or it could have simply generated a backup of the information for use during the litigation, separate from its normal recordkeeping procedures which – assuming they were followed – were obviously inadequate. UPM submits that this amounts to

---

[6] *See* Complaint (ECF #1) (filed February 2, 2015).

[7] The original Complaint in this action asserts that Digicel-Haiti first detected UPM's bypass activity "in early 2014," *id.* at ¶ 24, and that Digicel-Haiti believed the activity to be "ongoing." *Id.* at ¶¶ 41-42, 62, 66, 78. In light of these allegations, Digicel-Haiti's obligation to preserve relevant CDRs and SIM usage records should have been glaringly obvious to anyone considering the nature of the claims being asserted. In this regard, Mr. Boute testified that the relevant usage data was kept "live" on Digicel-Haiti's servers for 180 days before being transferred to backup tapes. Boute Depo. 51:5-22**.** Once Digicel-Haiti concluded that it was going to file this lawsuit – certainly no later than mid-2014 – it became subject to a specific obligation to retain data relevant to what it was going to sue about. At a minimum this would have entailed regularly checking the status of the data on the server and the availability of the backup tapes. A more responsible course would have been to establish a separate set of backup tapes for use in this lawsuit. But clearly none of that happened.

Page 6 – DEFENDANTS' OBJECTION TO PLAINTIFF
UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIOS IN *LIMINE*
UPM-L1\00626570.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

at least a reckless disregard of Digicel-Haiti's duty to retain relevant records.

In these circumstances, UPM requests that the Court instruct the jury as follows:

While this case was ongoing, Digicel-Haiti lost records and information relevant to the claims it asserts, including Call Detail Records and related information from the relevant time period (August 2011 through March 2012, and April 2014 through October 2014). The loss or destruction of evidence does not need to be intentional or in bad faith. You may, but are not required to, draw an inference that by reason of the loss of the Call Detail Records and related information, the lost evidence was unfavorable to Digicel-Haiti.

While giving this instruction will not fully relieve UPM of the prejudice of dealing with the absence of the relevant data, it will at least permit the jury to fairly take that situation into consideration.

## II.    MOTION TO EXCLUDE REFERENCES TO GOVERNMENTAL SPENDING OR TAXATION OF INTERNATIONAL CALLS

UPM does not understand the basis for this motion *in limine.* UPM's summary judgment motion and its opposition to Digicel-Haiti's summary judgment motion both clearly show the relevance of the fact that the Government of Haiti imposes a $0.05 per minute tax on calls that come to Haiti by way of Digicel-Haiti's international gateway switch.[8] UPM is clearly entitled to refer to that tax as part of its attack on Digicel-Haiti's damages claim. In this regard, Digicel-Haiti's Rule 30(b)(6) witness indicated that Digicel-Haiti did not charge the $0.23 per minute international rate (which included the $0.05 tax) on in-country bypass calls, that is, calls that were made by SIMs that Digicel-Haiti had identified as being used for bypass. This fact undermines its claim that it was entitled to charge or receive that higher rate for those calls, which obviously undermines its entire damages case. It is entirely inappropriate to limit UPM's ability to

---

[8] [UPM's] Motion for Summary Judgment (ECF #254) at 31; [UPM's] Opposition to Digicel-Haiti's Motion for Partial Summary Judgment (Fraud) (ECF # 278) at 5 n.10, 16. Indeed, as shown there, both Digicel-Haiti's Rule 30(b)(6) witness and its technical expert (Mr. McEwen) both refer to the $0.05 government tax.

Page 7 – DEFENDANTS' OBJECTION TO PLAINTIFF
UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIOS IN *LIMINE*
UPM-L1\00626570.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

refer to the $0.05 per minute tax in this context.

UPM does not presently plan to bring up a related issue that arose earlier in the litigation, *viz.,* that there is reasonable evidence that the $0.05 tax is illegal under Haitian law and that the proceeds from the tax were being corruptly diverted from their stated purposes.[9] However, if any Digicel-Haiti witness directly or indirectly raises the suggestion that Digicel-Haiti or the Haitian government were or are being harmed in any way by virtue of the tax not being assessed or paid, UPM is entitled to cross-examine and impeach those witnesses by questioning regarding the use of the funds. Any reference by Digicel-Haiti witnesses to the potential uses of the money to which Digicel-Haiti claims to have been deprived (such as claims that Digicel-Haiti or the Haitian government "needs" those funds for "infrastructure" or other investments) will open the door to this line of questioning. On the other hand, to the extent that Digicel-Haiti's testimony on this issue is limited to the simple fact that the effective per-minute rate that UPM paid was less than the rate that Digicel-Haiti claims to have been entitled to, UPM will not need to address the matters just noted.

## III.    MOTION TO EXCLUDE REFERENCES TO DISMISSAL OF DEFENDANTS TYLER ALLEN, BALTHAZAR RUIZ, AND BENJAMIN SANCHEZ

UPM does not oppose Plaintiff's motion *in limine* to exclude references to the dismissal of former defendants Tyler Allen, Balthazar Ruiz, and Benjamin Sanchez, provided both parties are prohibited from such references and Digicel-Haiti is prohibited from attempting to introduce evidence, testimony or argument that these individuals conspired with each other, with UPM, or with Mr. Tran, or that Mr. Allen, Mr. Ruiz, or Mr. Sanchez in any way attempted to "defraud" Digicel-Haiti. Not only have these individuals defendants been dismissed from this

---

[9] *See, e.g.,* Digicel-Haiti proposed trial Exhibit No. 178 (news report of Haitian legislator pointing out illegality of the tax).

Page 8 – DEFENDANTS' OBJECTION TO PLAINTIFF
UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIOS IN *LIMINE*
UPM-L1\00626570.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

proceeding, but all claims against them are dismissed. Accordingly, Digicel-Haiti should be prohibited from referring in any way to the dismissed claims against the dismissed individuals. *See* Defendants' Motion *in Limine* at 3-4.[10]

## IV.   MOTION TO EXCLUDE REFERENCES AND EVIDENCE RELEVANT ONLY TO UPM'S BIFURCATED AND STAYED COUNTERCLAIMS

UPM does not object to refraining from eliciting testimony or arguing that Defendants have filed counterclaims.[11] However, a blanket prohibition on evidence relevant to UPM's counterclaims is not only unwarranted, but would prejudice UPM by prohibiting it from having a full and fair trial.

In order for UPM to have engaged in "active concealment" within the meaning of the Court's order limiting the issues for trial (ECF #294), Digicel-Haiti must first prove it had a right to cut off the SIM cards that UPM was using, whether for in-country bypass or for RLYH resale. UPM has long contended that Digicel-Haiti had no such right with respect to RLYH SIMs. While Digicel-Haiti's conduct cutting off those SIMs indeed violated the Communications Act (the legal basis for UPM's principal counterclaim), the fact that Digicel-Haiti's cutting off UPM's RLYH SIM cards was illegal is also an integral part of UPM's defense against Digicel-Haiti's claim in Count I (relating to RLYH). In fact, UPM's position is that it is an essential element of Digicel-Haiti's affirmative case (not just UPM's defense) to prove that it had the right to cut off UPM's

---

[10] UPM notes that Digicel-Haiti has designated as trial exhibits certain filings in this case that include references to Mr. Ruiz, Mr. Sanchez, and Mr. Allen as parties. *See, e.g.,* Digicel-Haiti Exh. Nos. 6, 34, 75 344, 345, 346. Having affirmatively sought to exclude references to the former individual defendants in their status as such, Digicel-Haiti should be barred from using or referring to those exhibits in any way, to the extent that such exhibits would be otherwise admissible.

[11] UPM recognizes that Digicel-Haiti's motion is styled as limited to excluding evidence that is relevant "only" to UPM's counterclaims. *See* Digicel-Haiti Motions *In Limine* at 4. The actual substance of its motion, however, is not limited in that way. This portion of this filing addresses the actual substance of Digicel-Haiti's motion.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

SIM cards, and it would be unfair and unjust to prevent UPM from addressing this issue, including by means of the evidence of its expert Mr. Gillan.[12]

Digicel-Haiti also seeks to preclude UPM from addressing the fact that Digicel-Haiti entered into and became bound by an implied-in-fact contract to permit UPM to use its SIM cards to make calls when Digicel-Haiti accepted UPM's funds to top-up the SIM cards.[13] Excluding this topic would plainly be inappropriate because it relates directly to the point just made, that is, to the viability of Digicel-Haiti's fraud-by-active-concealment-by-HBS claim, certainly in the context of RLYH resale, but with respect to in-country bypass as well.[14]

The same logic applies to Digicel-Haiti's effort to bar references to UPM's other counterclaims. For example, UPM has sought reimbursement for the money that it paid to Digicel-Haiti to top up SIM cards and/or to purchase RLYH plans and which Digicel-Haiti confiscated when it cut off the SIM cards. UPM is entitled to present evidence, including evidence which may also be relevant to UPM's counterclaim, that Digicel-Haiti did not have the right to keep that money, which relates to UPM's contract and unjust enrichment counterclaims. It would be inappropriate to bar UPM from referring to such matters.

---

[12] UPM respectfully refers the Court to its opposition to Digicel-Haiti's earlier-filed motion *in limine* regarding Mr. Gillan for an explanation of why his expert testimony will assist the trier of fact in understanding an important issue in this case. *See* [UPM's] Opposition To Digicel-Haiti's Daubert Motion And, In The Alternative, Motion In Limine To Exclude Testimony Of Defendant's Expert Joseph Gillan (ECF #280), esp. at pp. 6-8.

[13] Digicel-Haiti Motions *In Limine* at 4. *See* [UPM's] Opposition To Digicel-Haiti's Motion For Summary Judgment On Defendant UPM Technology, Inc.'s Counterclaims (ECF # 279) at 13-17, 25-28 (demonstrating the existence of an implied-in-fact contract between the parties).

[14] As UPM argued earlier, the undisputed facts establish that the parties indeed had an implied-in-fact contract. *See id.* UPM asks that the Court consider issuing a ruling to that effect at the pretrial conference in order to simplify the presentation of these already-complicated issues.

Page 10 – DEFENDANTS' OBJECTION TO PLAINTIFF
UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIOS IN *LIMINE*
UPM-L1\00626570.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## V.     MOTION TO EXCLUDE REFERENCES TO THE FCC AND FCC POLICY ENCOURAGING OR SUPPORTING BYPASS AS A MEANS OF "DRIVING DOWN" INTERNATIONAL TERMINATION RATES

UPM and Mr. Tran oppose Digicel-Haiti's Motion V for the same reasons set forth above and incorporate their response to Motion IV. Moreover, as part of proving its fraud claim, Digicel-Haiti must prove that UPM and/or Mr. Tran individually acted with fraudulent intent. Their awareness of the FCC policies encouraging and supporting bypass, and the fact that the actions that UPM took were consistent with those policies, tends to negate any inference that their intent was fraudulent. It would therefore be inappropriate to exclude references to these FCC policies.

## VI.    MOTION TO EXCLUDE REFERENCES TO OUTSIDE LITIGATION INVOLVING DIGICEL HAITI, DIGICEL USA, INC., DIGICEL HOLDINGS, LTD., AND THEIR CORPORATE OFFICERS

As counsel for UPM proposed to counsel for Digicel-Haiti, UPM is agreeable to this motion *in limine* provided that Digicel-Haiti is also precluded from making references to any outside litigation involving UPM Technology, Inc. (UPM) d/b/a UPM Telecom, Inc., UPM Marketing, Inc., UPM Telecom, Inc., UPM Marketing, Inc., and/or to Mr. Tran.

## VII.   MOTION TO EXCLUDE REFERENCES TO UPM PURCHASING SIM CARDS FROM DIGICEL HAITI.

Both parties have long agreed that UPM did not purchase SIM cards ***directly from*** Digicel-Haiti.  Rather, the SIM cards were sold to UPM's agents by third-party vendors and retailers.  ECF #294 at 15, fn. 11.  Thus, as UPM understands it, the parties agree that UPM did not buy SIM cards ***directly from*** Digicel-Haiti. To that extent, UPM does not oppose this motion.

Digicel-Haiti, however, has also wrongly argued throughout this proceeding that UPM's purchase of the SIM cards was "illegal" or "illegitimate".  This argument has already been addressed, and rejected, by the Court. ECF #294 at 28-29. Given that ruling, UPM is filing a motion *in limine* to exclude evidence, testimony and argument claiming that UPM's acquisition of SIMs,

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

top-ups or RLYH plans was illegal or illegitimate. To the extent, therefore, that Digicel-Haiti would use a grant of this motion *in limine* to argue that the only legitimate or legal way to purchase the SIM cards was from Digicel-Haiti directly (which is factually wrong), UPM opposes the motion for the same reasons set forth in UPM's motion *in limine* addressing this topic.

## VIII.  MOTION TO EXCLUDE ALL EVIDENCE THAT IS SOLELY RELEVANT TO DEFENDANTS' THIRD AND FOURTH AFFIRMATIVE DEFENSES BECAUSE DIGICEL USA WAS DISMISSED

UPM agrees that it will not refer to any material that is ***solely*** relevant to its third and fourth affirmative defenses. This agreement, however, should not be construed to indicate that UPM will not refer in any way to the existence or function of Digicel-USA in routing calls to Digicel-Haiti. UPM agrees that it will not refer to Digicel-USA's role in getting traffic from the United States to Haiti as illegal or inappropriate.

## IX.  MOTION TO EXCLUDE THE USE OF IRRELEVANT AND PREJUDICIAL TERMS MONOPOLY, ANTI-COMPETITIVE AND THEIR DERIVATIVES

Digicel-Haiti has a monopoly or near-monopoly on the provision of telephone service in Haiti, and it has an absolute monopoly on getting calls to its own customers in Haiti. This fact is directly relevant to understanding why the FCC's prohibition on resale restrictions applies to Digicel-Haiti's offering of RLYH service, which – as discussed above – is fatal to Digicel-Haiti's fraud claim as it relates to that service. Moreover, as noted above, Digicel-Haiti has to prove that UPM and/or Mr. Tran acted with fraudulent intent. To the extent that their intent was related to or developed in the context of Digicel-Haiti's status as possessing market power, it would be inappropriate to preclude testimony on that point.

## X.  MOTION TO EXCLUDE UPM'S EXPERT, JOSEPH GILLAN, FROM TESTIFYING DURING DIGICEL HAITI'S TRIAL ON THE CLAIM OF FRAUD BY ACTIVE CONCEALMENT AGAINST UPM AND MR. TRAN

Defendants oppose Digicel-Haiti's Motion V for the same reasons set forth above and incorporate their response to Motion IV.

Page 12 – DEFENDANTS' OBJECTION TO PLAINTIFF
UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIOS IN *LIMINE*
UPM-L1\00626570.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Dated: February 28, 2022.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
Kathryn P. Salyer, OSB #883017
Eleanor A. DuBay, OSB #073755
Blake Van Zile, OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Telephone: (503) 894-9900


DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
Christopher W. Savage, D.C. Bar #362657
chrissavage@dwt.com
Telephone: (202) 973-4200
*(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, I served the foregoing **DEFENDANTS' OBJECTION TO PLAINTIFF UNIGESTION HOLDINGS, S.A.'S OMNIBUS MOTIONS IN *LIMINE*** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com

Dated: February 28, 2022.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants