**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

     Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>    Plaintiff & Counterclaim-Defendant,<br><br>    v.<br><br>**UPM TECHNOLOGY, INC**., *et al.,*<br><br>    Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI<br><br>**DEFENDANTS UPM TECHNOLOGY, INC.'S RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |

Page 1 – DEFENDANTS UPM TECHNOLOGY, INC.'S RENEWED
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00626739.000

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), Defendants UPM Technology, Inc. and Bruce Tran (collectively, "UPM") state that their counsel conferred in good faith with counsel for Plaintiff, Digicel-Haiti, to resolve the disputed issues and were unable to do so.

## MOTION

Pursuant to Fed. R. Civ. P. 56, UPM moves this Court for an order granting summary judgment in its favor. The Court's order on dispositive motions (ECF #294) narrowed Digicel-Haiti's case to the claim that UPM actively concealed its bypass activities by using human behavior software ("HBS"). ECF #294 at 31. Now that Digicel-Haiti has presented its witness statements, expert disclosures, and trial brief, it is clear as a matter of law that Digicel-Haiti cannot prevail on that claim. The Court should therefore dismiss the case and save the parties and the Court the time and expense of trial. If the Court does not dismiss Digicel-Haiti's case in its entirety, it should grant UPM partial summary judgment on certain matters, as noted below. This would considerably simplify the trial and minimize the change of jury confusion.

## LEGAL MEMORANDUM

### I.    INTRODUCTION AND SUMMARY

UPM recognizes that the Court is familiar with the basic facts of the case and so does not recite them here. UPM respectfully refers the Court to UPM's earlier filings in support of its own motion for summary judgment against Digicel-Haiti's fraud claims, and its filing in opposition to Digicel-Haiti's motion for summary judgment on those claims.[1]

As narrowed by the Court's recent ruling, Digicel-Haiti's sole claim is that UPM used HBS to actively conceal the fact that its SIMs were being used for bypass. UPM's evidence will show that it did not use HBS, but for purposes of this renewed motion, UPM (for purposes of

---

[1] *See* Defendant UPM Technology, Inc.'s Motion for Summary Judgment (ECF #254) ("UPM Summary Judgment Motion"); Defendants' Opposition to Digicel-Haiti's Motion for Summary Judgment (Fraud) (ECF #278) ("UPM Opposition"); and Defendants' Reply in Support of Motion for Summary Judgment (ECF #284) ("UPM Reply").

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

argument only) takes as given that it did. Digicel-Haiti's fraud claim still fails as a matter of law, in whole or in part in at least eight different ways, mainly arising from fundamental flaws in Digicel-Haiti's damages case.

First, Digicel-Haiti's cannot prove that it was harmed by UPM at all. To prove damages, Digicel-Haiti must show that but for UPM's actions, it would have received more money than it did. That means that Digicel-Haiti must show either (a) that it was entitled to charge more per minute for bypass calls than it charged – that is, that it was entitled to more for those calls than the local rate it actually charged – and also that UPM prevented it from charging that higher rate; or (b) that without UPM in the picture, the bypass calls UPM completed would have gone through Digicel-Haiti's international gateway and been charged a higher rate. Digicel-Haiti ignores these fundamental preconditions to proving damages, so its case must be dismissed.

Second, assume that, in the abstract, bypass calls harm Digicel-Haiti. The fact remains that UPM is only liable for calls it, itself, sent. Digicel-Haiti, however, has no admissible evidence on that point. As explained in UPM's motion *in limine,* the testimony of Digicel-Haiti's damages expert is irrelevant, speculative and unreliable, and must therefore be excluded. As a result, Digicel-Haiti cannot prove that it was harmed by anything UPM did.

Third, Digicel-Haiti ignores the considerable amounts of money that UPM paid for its use of Digicel-Haiti's network, but that Digicel-Haiti confiscated when it cut off UPM's SIM cards. With no evidence of its own, anything Digicel-Haiti says about damages is speculative. Its only alternative is to rely on UPM's business records, but as UPM previously explained, Digicel-Haiti has already received more than what it is entitled to – and thus was not damaged.

Fourth, even if UPM *used* HBS, that does not mean the HBS *worked.* Digicel-Haiti has to show that UPM's HBS delayed Digicel-Haiti in cutting off the affected SIM cards – that is, that by virtue of the HBS, UPM completed more calls than it would have without the HBS. Digicel-Haiti's evidence does not address this point at all, so its damages claim fails.

Fifth, as described in UPM's earlier filings, all Roam Like You're Home ("RLYH") calls go through Digicel-Haiti's international gateway and are charged $0.23 per minute. That

means that for RLYH calls, Digicel-Haiti received **both** the per-minute local rate (paid by UPM) **and** the $0.23 per minute rate (paid by the roaming partner) – which means that Digicel-Haiti was not damaged by RLYH resale.[2] Nothing in Digicel-Haiti's evidence even addresses, much less undermines or contradicts, this point, so Digicel-Haiti's claim fails as it relates to RLYH.

Sixth, as the parties and the Court discussed at the recent hearing, HBS can only constitute "active concealment" if Digicel-Haiti had the right to cut off the UPM's SIM cards in the first place. Digicel-Haiti has presented nothing to suggest that it had that right with respect to the SIM cards UPM was using for RLYH resale. In fact, the Federal Communications Commission's ("FCC's") rule banning restrictions on resale shows that Digicel-Haiti had no such right. So, even if UPM used HBS with its RLYH SIMs, that did not prevent Digicel-Haiti from doing anything it had a legal right to do – which defeats Digicel-Haiti's active concealment claim as it relates to RLYH.

Seventh, UPM previously sought summary judgment against Digicel-Haiti's vague claims for damages arising from supposed harm due to stress on its network, harm from investigating bypass, and harm from a loss of good will.[3] UPM pointed out in its reply to Digicel-Haiti's opposition to that motion that Digicel-Haiti had presented no evidence at all to support those purported damages.[4] One searches Digicel-Haiti's proffered evidence in vain for anything addressing any of these claims, so – if the Court does not dismiss Digicel-Haiti's entire case – it should at least prevent these entirely unsubstantiated and speculative claims from going to the jury.

Finally, the Court should dismiss Digicel-Haiti's claims for punitive damages. Under applicable Oregon law and federal constitutional requirements, punitive damages are not

---

[2] While it may seem a mere semantic point, UPM believes it is important to refer to its use of RLYH to get calls to Digicel-Haiti as "resale" rather than "bypass," for the simple reason that RLYH calls did not "bypass" anything. Once UPM connected a Haiti-bound call to a Digicel-Haiti roaming partner in the United States, the call was routed to Haiti via Digicel-Haiti's international gateway switches, and Digicel-Haiti received its preferred $0.23 per minute rate. There was no "bypass" in connection with RLYH calls.

[3] UPM Summary Judgment Motion at 32-34.

[4] UPM Reply at 20.

Page 4 – DEFENDANTS UPM TECHNOLOGY, INC.'S RENEWED
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00626739.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

available for activities outside of Oregon that caused harm outside of Oregon (in Haiti) to non-Oregonians (Digicel-Haiti), and punitive damages for activities inside of Oregon, that caused harm outside of Oregon to non-Oregonians are only available if Oregon has articulated a policy against the specific behavior that is offered as supporting punitive damages. If UPM's use of HBS is construed as having occurred outside of Oregon (where the calls in the supposedly HBS-manipulated pattern appeared), then no punitive damages are available at all. On the other hand, even if UPM's use of HBS is construed as having occurred in Oregon, not only does Oregon not have any policy against using HBS, any such policy would be inconsistent with the federal policy favoring the use of new technology to bypass excessive foreign termination rates.

## II.    ARGUMENT

UPM previously explained that it was entitled to summary judgment on a range of issues because Digicel-Haiti had not presented any admissible evidence to contest UPM's summary judgment arguments. *See* UPM Reply at 3-5, 20-26. The Court chose to give Digicel-Haiti a pass, letting it have a new opportunity – a second bite at the apple – to come up with admissible evidence showing that there were material factual disputes justifying a trial.

Digicel-Haiti has now presented its witness statements, exhibit list, deposition designations, and trial brief, so we now know what evidence it will present to make its case. Better late than never, but it is entirely appropriate now for the Court to examine Digicel-Haiti's proffered evidence to see if there really are any material issues for trial. As described below, there are not. Some of the flaws in Digicel-Haiti's case are the same ones that UPM identified earlier, and that Digicel-Haiti's filings now confirm it cannot remedy. Others have become clear in light of the Court's ruling on dispositive motions. But either way, of Digicel-Haiti's case should be dismissed.

### A. Digicel-Haiti's Damages Case Is Fundamentally Flawed

There is no dispute that UPM paid Digicel-Haiti's local rate for every bypass minute that UPM completed. This means that Digicel-Haiti's damages case depends on it being able to show that it was entitled to more money for those calls than it received. Nothing it has presented even begins to establish that point.

Page 5 – DEFENDANTS UPM TECHNOLOGY, INC.'S RENEWED
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00626739.000

There are two ways (and only two ways) that Digicel-Haiti could show that what it got paid was not enough. First, it could show that it would have charged bypass calls at a higher rate, had it known they were bypass calls (as opposed to local calls). Digicel-Haiti has presented nothing to suggest that it would have done so. To the contrary, its Rule 30(b)(6) witness said it had chosen **not** to impose higher per-minute charges for bypass calls. So, it has no claim that it was damaged by not directly charging a higher rate for those calls.[5]

If it wouldn't have charged a higher rate for bypass calls, Digicel-Haiti has to show that but for UPM's bypass, the calls UPM sent via the Internet would have gone through Digicel-Haiti's international gateway instead. Digicel-Haiti presents no evidence even addressing this point, much less proving by clear and convincing evidence that this would have occurred. Note that given the prevalence of bypass, if UPM had not completed a given call, it is highly likely that some other bypasser would have. Moreover, the point of bypass is to complete calls at a lower rate than the international call termination rate. This means that calls going through the international gateway would cost more than bypass calls, so fewer calls would be completed. Digicel-Haiti has presented nothing to address these points, which destroys its damages case before it begins.[6]

## B.  Digicel-Haiti Has No Evidence As To How Many Bypass Calls UPM Completed

Digicel-Haiti bears the burden of proving by clear and convincing evidence that UPM's actions damaged Digicel-Haiti. Its only evidence on this point is that put forward by its purported expert, Mr. Castel. For reasons explained in UPM's Motions *in Limine* (No. 1), Mr. Castel is not an expert in any relevant field, and his purported evidence is unreliable and

---

[5] In this regard, Digicel-Haiti indicates that one of its witnesses will testify that it can identify bypass SIMs with "99.9% accuracy." Plaintiff Unigestion Holdings, S.A.'s Lay Witness Statements (ECF #303) ("Digicel-Haiti Witness Statements") at 7 (Laborde). This means that if Digicel-Haiti had wanted to, once it identified a SIM as used for bypass, it could easily have retroactively charged the SIM's account at a higher rate for the calls that SIM had completed.

[6] One can readily imagine economic studies, studies of the behavior of people calling Haiti, or studies of international carriers, that would have addressed how the behavior of carriers routing calls to Haiti, and/or of the people making those calls, would have been affected if all calls had to be completed at the higher rate. The fact that Digicel-Haiti has not chosen to undertake or present such studies does not mean that its damages case can survive without them.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

speculative. With Mr. Castel's evidence excluded, Digicel-Haiti has no evidence that it was damaged by anything UPM did, which means its claim must be dismissed.

## C. Digicel-Haiti Ignores The Money It Was Paid By UPM

UPM has explained that Digicel-Haiti's damages cannot exceed $0.18 per minute of bypass traffic UPM completed. This is Digicel-Haiti's gross $0.23 per minute international rate, minus the $0.05 per minute tax it pays for each international minute it completes. UPM Summary Judgment Motion at 31-32; UPM Opposition at 5 n.10, 16-17; UPM Reply at 23-25. Without any admissible evidence of its own as to how much traffic UPM sent, the only evidence on that point is UPM's own business records. As UPM has explained, *see id.,* when the funds Digicel-Haiti confiscated from UPM are taken into account, UPM has already paid Digicel-Haiti enough to more than cover the $0.18 per minute rate. *Id.* Digicel-Haiti, therefore, has already been paid everything it is entitled to for the services it provided to UPM, so its claim must be dismissed.

## D. Digicel-Haiti Has No Evidence That It Was Damaged By UPM's Use Of HBS

The mere fact (assumed here) that UPM used HBS is not enough to show that Digicel-Haiti was damaged. To the contrary, Digicel-Haiti has to show that the HBS *worked.* This requirement is inherent in Digicel-Haiti's only surviving fraud theory, which is that UPM harmed Digicel-Haiti by using HBS to actively conceal the fact that it was using its SIMs for bypass. ECF #294 at 31. This theory necessarily imposes certain obligations on Digicel-Haiti with respect to how it proves that it was damaged – obligations that Digicel-Haiti has failed to meet.[7]

HBS manages the pattern of calls made using a given SIM so that it looks like the SIM is being used by an individual subscriber. *See* TAC at ¶¶ 46-47. Any damages from the use of HBS, therefore, would arise because that *pattern* of calls had the effect of *delaying* cutting off

---

[7] Note that while Digicel-Haiti alleged that UPM was using HBS, *see* Third Amended Complaint (ECF #200) ("TAC") at ¶¶ 46-47, UPM denied those allegations. *See* Defendants' Answer, Affirmative Defenses And Counterclaims To Plaintiff's Third Amended Complaint And Demand For Jury Trial (ECF # 202) at ¶¶ 46-47. Nothing in any of the proffered testimony of either its experts or its lay witnesses addresses either what HBS is, how it operates in general, what HBS UPM supposedly deployed, how *that* form of HBS operated, or what effect it had on Digicel-Haiti.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

the SIM. This means that the relevant measure of damages starts with the difference between how much traffic the SIM would have completed without HBS, versus the higher amount it actually completed due to HBS. That is, damages from the use of HBS arise only from calls that would not have gone through in the absence of HBS, but that did go through as a result of it.

The first requirement this imposes on Digicel-Haiti's damages case is that Digicel-Haiti must prove that its own bypass-detection systems were ineffective, at least to some degree, against the specific HBS that UPM (supposedly) used.[8] If Digicel-Haiti's systems could see right through the disguise supposedly provided by UPM's HBS, then Digicel-Haiti was not damaged by UPM using it.[9] Unless Digicel-Haiti can prove that UPM's HBS **worked** to allow calls through that would not otherwise have been completed, it cannot prove that UPM's supposed "active concealment" via HBS caused any damages. However, nothing in any of the evidence Digicel-Haiti has proffered even acknowledges the existence of this point, much less addresses it. Digicel-Haiti presents no evidence about what type or configuration of HBS UPM supposedly used, how it supposedly worked, and why and how that HBS was able to evade Digicel-Haiti's systems. To the contrary, Digicel-Haiti says that it will present evidence that its systems are "99.9% accurate" in identifying bypass SIMs, which necessarily undercuts any claim that it was damaged by UPM's (supposed) use of HBS. *See* Digicel-Haiti Witness Statements at 7 (Mr. Laborde). This alone warrants dismissal of Digicel-Haiti's case.

The second requirement imposed by the now-limited fraud claim is slightly more subtle: whatever HBS might have actively concealed from Digicel-Haiti, it inherently cannot ever conceal the first call made with any one SIM. Far from being concealed, the first call made with a SIM announces the existence of that SIM to Digicel-Haiti, and (presumably) begins the process

---

[8] Again, for purposes of this motion, UPM is assuming *arguendo* that the evidence will show that it used HBS in some form – which is the **most** that the evidence Digicel-Haiti presented in connection with the dispositive motions showed. *See* ECF #294 at 5, 18-22, 31, 33, 37.

[9] In terms of the formal elements of the tort of fraud, Digicel-Haiti will only have relied on UPM's misrepresentation-by-active-concealment-by-HBS to the extent that calls got through as a result of the HBS that would not have gone through otherwise.

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

by which Digicel-Haiti's systems track usage patterns to determine if a SIM is being used for bypass. Digicel-Haiti will complete that first call no matter what it might later learn. Under Digicel-Haiti's now-dismissed claim that every bypass call is inherently fraudulent, the very first bypass call made with a given SIM might damage Digicel-Haiti. But under its only surviving claim, based on active concealment via HBS, its damages have to be caused by that active concealment of bypass, not by the mere fact of bypass. Because the first call made with any SIM is never and can never be concealed, any estimate of damages caused by UPM's active concealment via HBS must exclude every SIM's first call. Digicel-Haiti's proffered evidence makes no effort to address this point – which, again, warrants dismissal of Digicel-Haiti's case.

Digicel-Haiti will of course protest that it cannot know what traffic UPM terminated or which SIMs were UPM's. But UPM provided information in discovery that identifies from contemporaneous business records how many SIMs it had and how much traffic it sent to Digicel-Haiti's network. There is no excuse for Digicel-Haiti ignoring that information in its damages presentation. Moreover – and without trying to do Digicel-Haiti's homework – it knows exactly how many SIM cards it cuts off for bypass each day, each week, each month and each year. It also knows exactly how many minutes of use each bypass SIM completed before being cut off. It could have used this data to determine how much traffic, on average, each bypass SIM completes. So even ignoring the usage data from UPM's business records, combining Digicel-Haiti's own readily available actual data with evidence (from UPM) of how many SIMs UPM activated, would have provided a baseline for determining potential damages from UPM's (supposed) use of HBS.[10] That baseline would then need to have been factored down to exclude

---

[10] While it is quite curious that Digicel-Haiti lost all of its relevant records from prior to 2018, that data loss would not have prevented Digicel-Haiti from developing the type of estimate noted above; it could simply have based the estimate on SIMs used for bypass after it lost its records. It is particularly curious that Digicel-Haiti had no analysis based on its own actual data *prior to* the data loss. It filed this case in February 2015, and should have been safeguarding its relevant records since at least that time. UPM addresses these points in its opposition to Digicel-Haiti's motions *in limine,* and is requesting a jury instruction that would permit UPM to argue that Digicel-Haiti's lack of data on these points warrants an inference against Digicel-Haiti.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

the first call made with each SIM and to reflect the degree of effectiveness of actual operation of Digicel-Haiti's bypass detection systems (both as discussed above). Digicel-Haiti's failure to undertake this type of analysis shows that its damages "evidence" is inadmissible as irrelevant and speculative. Because it must present *admissible* evidence to survive UPM's summary judgment motion, Digicel-Haiti's case must be dismissed.

### E.  Digicel-Haiti Was Not Damaged By Resale of RLYH

UPM previously explained that Digicel-Haiti cannot have been damaged by virtue of UPM's resale of RLYH, because Digicel-Haiti received *both* its international rate *and* its local rate for every RLYH call. UPM Motion for Summary Judgment at 28-29; UPM Opposition at 21-22; UPM Reply at 20. The Court denied UPM's summary judgment motion on this point, stating that under the Court's understanding of "Digicel-Haiti's damage theory, it would have received more revenue had the same calls been made using international rates and without RLYH." ECF #294 at 33-34. Reviewing the material Digicel-Haiti has put forward, it is clear that the Court's earlier understanding was mistaken: there is nothing to support any claim that  it would have made more revenue if UPM had not resold RLYH service. The Court now definitively knows that Digicel-Haiti was not damaged by UPM's resale of RLYH service, and Digicel-Haiti's case as it relates to RLYH should be dismissed.

### F.  UPM Efforts To Avoid Having Its RLYH SIMs Cut Off Cannot Constitute Fraud By Active Concealment

Assume that UPM used HBS to manage the calling patterns of the SIMs it used to resell RLYH (in fact, it did not). And assume that that HBS was supremely effective in delaying Digicel-Haiti in cutting off those SIMs (in fact, those SIMs were cut off quite rapidly). Even on those assumptions, Digicel-Haiti has not shown that UPM committed fraud by "active concealment" with respect to the RLYH SIMs, because it has not shown that it had the legal right to cut off those SIMs in the first place.

The Court may recall that at the argument on the dispositive motions, counsel for UPM addressed active concealment using the analogy of someone with a valid ticket to a rock

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

concert, but who has to sneak around to get past a bouncer with a personal grudge against the ticket-holder. The ticket-holder's conduct would certainly be furtive, and certainly be designed to conceal what was happening. But it would not be "fraud by active concealment," because the ticket-holder had a right to be at the concert, and the bouncer had no right to keep him out. The Court, unpersuaded, noted that one could imagine a situation in which the ticket-holder had a valid ticket, but in which the bouncer also had the right to keep him out. The point of the Court's logic was that fraud by active concealment entails using concealment to prevent someone from doing something they had a legal right to do. In context, the point was that if Digicel-Haiti could show that it had the right to cut off SIMs being used for bypass, it might constitute fraudulent concealment for UPM to take active steps to avoid having its SIMs cut off, even if it had established (via a valid implied-in-fact contract) that it had the right to use Digicel-Haiti's services.

Fair enough. While UPM does not concede the point, it recognizes that some of the Haitian regulatory materials that Digicel-Haiti has proffered might support the conclusion that Digicel-Haiti was authorized to cut off SIM cards being used for bypass *in Haiti.* But Digicel-Haiti has produced nothing to suggest – much less prove – that it had any legal right (whether based on regulation, on contract, or on anything else) to cut off the SIMs that UPM was using in the United States to resell RLYH service. This failure is fatal to any Digicel-Haiti argument that UPM committed fraud by active concealment with respect to the RLYH SIMs, even if one assumes that UPM used HBS to manage those SIMs and that the HBS worked.

UPM submits that since Digicel-Haiti has the burden of proving its case by clear and convincing evidence, its failure to address this point is sufficient to dismiss its fraud claim as it relates to RLYH. If the Court disagrees, then UPM respectfully refers the Court to the longstanding FCC precedent on this point, showing over and over again, in context after context, restrictions on resale of services offered in the United States is unjust and unreasonable, in violation of 47 U.S.C. § 201.[11] Based on this precedent, the Court can and should conclude as a

---

[11] See*, In the Matter of Regulatory Policies Concerning Resale and Shared Use of Common*

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

matter of law that Digicel-Haiti had no right to cut off the SIMs UPM was using to resell RLYH service.[12] This means that any use by UPM of HBS to delay or avoid that cutoff cannot constitute fraud by active concealment.[13]

**G. The Court Should Grant Summary Judgment With Respect to Digicel-Haiti's Non-Monetary Damages Claims.**

As noted above, UPM sought summary judgment against Digicel-Haiti's vague claims for damages arising from supposed harm due to stress on its network, harm from investigating bypass, and harm from a loss of good will.[14] And, as UPM pointed out in its reply to Digicel-Haiti's opposition to that motion, Digicel-Haiti presented no evidence to support those purported damages.[15] The Court did not grant UPM's motion on this point, "invite[d] UPM to raise the issue again … at the final pretrial conference." ECF #294 at 35.

Accepting the Court's invitation, UPM has reviewed all of Digicel-Haiti's proffered evidence, but found itself searching in vain for anything addressing these vague, non-specific damages claims. In these circumstances – if the Court does not dismiss Digicel-Haiti's entire case – it should at least prevent these entirely unsubstantiated and speculative damages claims from going to the jury. This case – if it goes forward – will be complicated enough without

---

*Carrier Services and Facilities*, Report and Order, 60 F.C.C.2d 261 (1976); *In the Matter of Regulatory Policies Concerning Resale and Shared Use of Common Carrier Domestic Public Switched Network Services*, Report and Order, 83 F.C.C.2d 167 (1980) at ¶¶1-2, 15-20; *In the Matter of An Inquiry Into the Use of the Bands 825-845 MHz and 870-890 MHz for Cellular Communications Systems; and Amendment of Parts 2 and 22 of the Commission's Rules Relative to Cellular Communications Systems*, Report and Order, 86 F.C.C.2d 469 (1981) at ¶¶ 103-107; *In the Matter of Regulation of International Accounting Rates,* First Report and Order**,** 7 FCC Rcd 559 (1991) at ¶ 5.

[12] The Court has already ruled that Digicel-Haiti is as a carrier subject to United States law as a result of its resale of RLYH service. ECF #154 at 27-31. Digicel-Haiti is therefore subject to the FCC's rules and rulings governing carrier behavior, including those just cited.

[13] If the Court chooses not to rule on this point as a matter of law, then UPM will, in its rebuttal case, present the testimony of its economic expert, Mr. Joseph Gillan, in support of this conclusion.

[14] UPM Summary Judgment Motion at 32-34.

[15] UPM Reply at 20.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

permitting what would amount to arm-waving efforts to receive a damages award entirely unsupported by any evidence. The Court, therefore, should grant summary judgment on this point.

## H. The Court Should Grant Summary Judgment Against Digicel-Haiti's Punitive Damages Claim

Digicel-Haiti seeks punitive damages if UPM is found liable on the underlying fraud claims.[16] Digicel-Haiti, however, is not entitled to punitive damages and, therefore, UPM requests summary judgment on this claim.

The law in Oregon is well settled that punitive damages are not recoverable in the absence of an award of actual and substantial compensatory damages. *Bldg. Structures, Inc. v. Young*, 328 Or. 100, 109, 968 P.2d 1287 (1998) (internal citations omitted); *see also Id*. at 104 ("a jury may not award punitive damages in the absence of an award of actual damages to the plaintiff."). As discussed above, however, Digicel-Haiti will be unable to show that it is entitled to "actual and substantial compensatory damages" by a preponderance of the evidence, as a matter of law. As a result, punitive damages against UPM will likewise be unavailable.

Second, in Oregon, "[p]unitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with **malice** <u>*or*</u> has shown a *reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others*." ORS 31.730(1) (emphasis added). Digicel-Haiti's claim alleges intentional fraud (via active concealment using HBS), not reckless or outrageous indifference. As a result, Digicel-Haiti must show, by clear and convincing evidence, that UPM acted with malice.[17] Malice

---

[16] TAC, ECF #200, prayer following ¶¶ 182, 192.

[17] The "reckless" prong is focused on danger of physical harm, requiring that a defendant "acted with a conscious indifference to the health, safety and welfare of others." ORS 31.730(1). This is obviously inapplicable to the case at hand. In the event that the Court permits Digicel-Haiti to request and argue for punitive damages, UPM alternatively requests that Digicel-Haiti be precluded from arguing or presenting evidence relating to the reckless fraud standard for assessing punitive damages.

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

is "the intentional doing of [an] injurious act without justification or excuse," including a tortious act "committed with a bad motive or so recklessly as to be in disregard of social obligations, or an act wantonly, maliciously or wickedly done." *Johannesen v. Salem Hosp.,* 336 Or 211, 217, 82 P.3d 139 (2003) (quoting *Linkhart v. Savely,*190 Or 484, 505–506, 227 P.2d 187 (1951)).[18] Because Digicel-Haiti has failed to identify any evidence which could potentially meet this heightened standard, it will necessarily fail to demonstrate at trial, by clear and convincing evidence, that UPM acted with malice.

Finally, the United States Constitution precludes an award of punitive damages for the conduct alleged in this case. As discussed below, punitive damages cannot be assessed against UPM for out-of-state conduct that caused out-of-state harm to Digicel-Haiti, or for in-state conduct causing harm in Haiti, because such conduct is lawful in Oregon under the Due Process Clause.

In *BMW of N. Am. v. Gore*,[19] the Supreme Court held that "a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States." 517 U.S. at 572-573. Later, in *State Farm Mut. Automobile Ins. Co. v. Campbell*,[20] the Supreme Court held that "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred." 538 U.S. at 421 (citing *Gore*, *supra*, at 572). Further, the Court went on to find that a state generally does not "have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's

---

[18] The essence of punitive damages is the reprehensibility of the defendant's conduct, which is considered in light of whether "whether the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Williams v. Philip Morris, Inc.*, 340 Or. 35, 47-48, 127 P.3d 1165 (2006), *adh'd on remand*, 344 Ore. 45 (2008), *cert. dismissed as improvidently granted,* 556 US 178 (2009).

[19] *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996).

[20] *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003),

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

jurisdiction." *Id*. It held that out-of-state conduct may not be used as evidence

> to punish a defendant for action that was lawful in the jurisdiction where it occurred … A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction.

*Id*. at 422 (citing *Gore*, 517 U.S. at 572-73).

Oregon applied these fundamental principles of federalism and state sovereignty in

*Schwarz v. Philip Morris Inc.,*[21] summarizing *Gore* and *Campbell* as follows:

> Under the Due Process Clause, a state can punish a defendant for in-state conduct that causes in-state harm. A state also has an interest in punishing a defendant for its out-of-state conduct that causes in-state harm. Both of those interests were at issue in this case because of the evidence that plaintiff adduced. As the Court held in *Gore* and *Campbell*, however, ***a state may not punish a defendant for out-of-state conduct that causes out-of-state harm.*** The final construct, ***punishing a defendant for in-state conduct that causes out-of-state harm, also necessarily depends on the state of the evidentiary record***. For instance, Oregon could make a ***legitimate policy choice***—that that is, a choice that comports with the Due Process Clause—to punish an actor who is conducting a fraudulent advertising campaign from Oregon that causes harm in a neighboring state. But the applicability of that construct, like the other constructs, depends on the evidence adduced at trial and the legal theories of the parties regarding that evidence.

206 Or. App. at 49-50 (emphasis added). As the *Schwarz* Court noted, "[a] state has an interest in

protecting its own consumers and its own economy; a state does not have a valid interest under the

Due Process Clause in punishing a defendant for harm that is caused and occurs outside its

jurisdiction." *Id*. at 52; *see also Vasquez-Lopez v. Ben. Or., Inc.*, 210 Or. App. 553, 152 P.3d 940

(2007) (discussing the Due Process prohibition of punitive damage awards that are grossly

excessive in relation to the state's legitimate interest in punishing unlawful conduct and deterring

its repetition).

---

[21] *Schwarz v. Philip Morris Inc. (In re Estate of Schwarz)* 206 Or. App. 20, 135 P.3d 409 (2006), *aff'd*, 348 Or. 442 (2010), *adh'd to on recons,* 349 Ore. 521 (2010), *on remand sub nom. Schwarz v. Philip Morris USA, Inc.*, 272 Or. App. 268, 355 P.3d 931 (2015), *cert. denied* 578 U.S. 975 (2016).

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Applying these constitutional and statutory principles here, Digicel-Haiti cannot recover punitive damages in this case as a matter of law. First, Digicel-Haiti's injuries occurred *entirely* in Haiti, and Digicel-Haiti is not a resident of Oregon. Indeed, Digicel-Haiti alleges that it "operates solely within Haiti. It does not have any operations within the United States."[22] This means that, no matter *how* Digicel-Haiti was harmed, it cannot have suffered any harm *in Oregon*. Indeed, this Court has previously held, in dismissing Digicel-Haiti's RICO claims, that "whatever it reasonably may mean for an injury to be 'domestic,' *Digicel Haiti's alleged injuries were all suffered in Haiti*, not in the United States, and thus not actionable under § 1964(c)."[23]

Oregon simply has no interest in protecting an out-of-state (out-of-country), non-resident business, purportedly harmed outside of Oregon. Because all of the harm alleged in this case occurred in Haiti, and Digicel-Haiti is not a resident of Oregon, a jury cannot award punitive damages. Moreover, the specific alleged conduct about which Digicel-Haiti complains – managing the pattern of calls on Digicel-Haiti's network – also occurred, or at least primarily manifested itself, in Haiti, which again forecloses a punitive damages award.

Finally, even if UPM's conduct is characterized as partially occurring in Oregon rather than in Haiti, the result is the same. At the outset, even if it does not violate the Constitution for a state to punish in-state conduct with entirely out-of-state (in this case, out-of-country) effects as a matter of law and in all cases, to justify an award of punitive damages still requires *some* reasonable connection between the legitimate policy interests of the State of Oregon and the outside-of-Oregon effects of the conduct that supposedly warrants punitive damages. *Schwarz, supra; see also Dean Foods Co. v. Brancel*, 187 F.3d 609, 619-20 (7th Cir. 1999) ("the fact that a

---

[22] TAC, ECF #200 at ¶15.

[23] Opinion. ECF #188 at 26 (emphasis added). UPM recognizes that this ruling was made in the context of Digicel-Haiti's RICO claims, but the same logic that required dismissal of those claims also requires dismissal of its punitive damages claims. Just as Congress did not intend inherently punitive RICO remedies (treble damages and attorneys' fees) to be available for out-of-country harms, *see* ECF #188 at 27, Oregon has no policy interest in protecting foreign entities such as Digicel-Haiti from harms that occurred in Haiti.

Page 16 – DEFENDANTS UPM TECHNOLOGY, INC.'S RENEWED
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00626739.000

particular transaction may affect or impact a state does not license that state to regulate commerce which occurs outside of its jurisdiction."). No such connection exists here.

Moreover, it would be fundamentally unfair – and unconstitutional – to punish UPM for in-state conduct resulting in an out-of-state-harm where the conduct was not tortious in here in Oregon. *See e.g., Hansen v. Harrah's*, 100 Nev. 60, 65, 675 P.2d 394, 397 (1984). And there can be no question that UPM's allegedly bad conduct – using HBS to conceal the fact that it was not an individual subscriber – was not tortious, illegal or otherwise improper here, in the State of Oregon. To find otherwise, Digicel-Haiti would first have to prove, and the Court would have to find, that Oregon has made a legitimate policy choice to punish the conduct at issue. *Schwarz*, *supra,* 206 Or. App. at 49-50. Digicel-Haiti, however, cannot show that Oregon has made any legitimate policy choice relating to the use of HBS to facilitate bypass/resale of Digicel-Haiti's services, whether in Haiti (in-country bypass) or here (RLYH), much less prohibiting or discouraging such activity. The underlying subject matter – arrangements for international calling from the United States to Haiti – is not one as to which Oregon has, or can have, any independent policy choices at all; this is, instead, a matter for the federal government and, specifically, the FCC. And, as UPM has explained at several points over the course of this case, the policy of the United States (including Oregon) is to encourage precisely the kind of activity in which UPM was engaged.[24]

The federal policy banning restrictions on resale is particularly relevant here. Assuming *arguendo* that UPM used HBS to delay Digicel-Haiti's realization that UPM's SIMs were not being used by individual subscribers, that conduct is not actionable or otherwise improper in the United States. The logic of an "active concealment" claim is that the defendant's actions prevented the plaintiff from taking action that it was lawful for the plaintiff to take. In the United States, however, the FCC's ban on resale restrictions means that it was not legal for a carrier to block the resale of its services, which means, in context, that it was not legal for Digicel-Haiti to

---

[24] *See, e.g.,* Defendants' Opposition To Digicel-Haiti's Motion For Partial Summary Judgment (Fraud), ECF #278 at 22-27.

Page 17 – DEFENDANTS UPM TECHNOLOGY, INC.'S RENEWED
MOTION FOR SUMMARY JUDGMENT
UPM-L1\00626739.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

cut off UPM's SIMs. This means that it could not have been fraudulent *here* for UPM to try to avoid having its SIMs cut off by using HBS – that would simply have been UPM trying to keep Digicel-Haiti from doing something illegal.[25] Because UPM's alleged conduct – trying to avoid having its SIMs cut off – was legal here in Oregon, it cannot support a claim for punitive damages, even if that conduct were to be held to be fraudulent.

In sum, the Court should dismiss Digicel-Haiti's request for punitive damages. Such damages cannot be awarded in this case as a matter of law.

## III.    CONCLUSION

For the foregoing reasons, UPM respectfully requests that the Court grant UPM's renewed motion summary judgment against Digicel-Haiti's fraud claim, either in its entirety or in the specific partial respects discussed herein.

Dated: February 28, 2022.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

---

[25] *See* fn. 11, *supra* for citations to FCC orders embodying its policy against resale restrictions.

Page 18 – DEFENDANTS UPM TECHNOLOGY, INC.'S RENEWED MOTION FOR SUMMARY JUDGMENT
UPM-L1\00626739.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, I served the foregoing **DEFENDANT UPM TECHNOLOGY, INC.'S RENEWED MOTION FOR SUMMARY JUDGMENT** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com

Dated: February 28, 2022.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
 Kathryn P. Salyer, OSB #883017
 Eleanor A. DuBay, OSB #073755
 Blake Van Zile, OSB #184672
 ksalyer@tomasilegal.com
 edubay@tomasilegal.com
 bvanzile@tomasilegal.com
 Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
 Christopher W. Savage, D.C. Bar #362657
 chrissavage@dwt.com
 Telephone: (202) 973-4200
 *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236