**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
**Kathryn E. Kelly**, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
**Cherine Smith Valbrun** *(Pro Hac Vice)*
E-mail: cvalbrun@kvllaw.com
E-mail: emailservice@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL  33316
Telephone: 954.527.1115
Facsimile: 954.527.1116

> *Attorneys for Plaintiff, Unigestion Holdings, S.A.,*
> *a foreign corporation, d/b/a Digicel Haiti*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A., d/b/a DIGICEL HAITI**, | No. 3:15-cv-00185-SI |
|       Plaintiff and Counterclaim Defendant,<br><br>  v. | |
| **UPM TECHNOLOGY, INC., *et al.*,** | **PLAINTIFF UNIGESTION HOLDINGS, S.A.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS IN *LIMINE*** |
|       Defendants and Counterclaim Plaintiffs. | **Request for Oral Argument** |

PLAINTIFF UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION TO UPM'S MOTIONS IN *LIMINE*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

4883-8058-8563, v. 8

Plaintiff Unigestion Holdings, S.A., d/b/a Digicel Haiti ("Digicel Haiti") submits the following Response in Opposition to Defendants UPM Technology, Inc.'s ("UPM") and Duy "Bruce" Tran's ("Tran") (collectively, "Defendants") Motions in Limine [**ECF 324**] ("Response"). This Response is supported by the record and the points and authorities below.

**<u>RESPONSE MEMORANDUM</u>**

## I.    MOTION NO. 1 (EXCLUDE EXPERTS AND REQUEST FOR *DAUBERT* HEARING)

Defendants' Motion in *Limine* to exclude Plaintiff's experts is unsupported in law and fact and should therefore be denied.  Furthermore, Defendants' challenges go to the weight, not the admissibility, of Plaintiff's experts' opinions.  Accordingly, for the reasons set forth below, Defendants' Motion No. 1 should be denied in its entirety.

### A.    MR. CASTEL'S TESTIMONY

Defendants launch various attacks against Plaintiff's damages expert, Mr. Castel, claiming that his testimony should be excluded because "he is not qualified," "his methodology is not reliable," and "based entirely on speculation." MIL at 2.[1] In fact, as shown below, Mr. Castel is qualified and his opinions are well-grounded in the facts of this case and employ well-established economic methodologies.

#### 1.    Mr. Castel Is Qualified And His Opinions Are The Result Of Sound Methodology

An "expert" is viewed as a person qualified by "knowledge, skill, experience, training, or education," not in any narrow sense.  Mr. Castel is qualified to testify in the areas of damages, economics, and corporate financial losses, and his testimony on those topics should be permitted

---

[1] This is a late-filed *Daubert*, being disguised as a Motion in *Limine* and should not be considered at this stage.

Page 1 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
TO UPM'S MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

by the Court.  *See generally* ECF 304-1.  Mr. Castel is a highly respected consultant in economics, law, and public policy with sterling qualifications.  *Id*.  Aside from his academic qualifications, he is a member of the Port-au-Prince Bar and the Haitian Association of Economists.  *Id*. Furthermore, Mr. Castel has more than 25 years of experience in consulting, finance, and research, and in 1997-98, served as the first Executive Director of the Commission for the Modernization of Public Enterprises, as well as an adjunct faculty member for economics and finance courses at the State University of Haiti. *Id*.

Mr. Castel's opinions directly address how "bypass operations negatively impact the target company's revenues; returns on investment of the telecommunication operators; and, losses to the tax authorities of the affected countries, as international traffic taxes cannot be truly monitored and charged." *See* ECF 304-1.  Mr. Castel's damages analysis also describes and details damages suffered by Digicel Haiti beyond direct financial losses, including damages to reputation, credibility, and prestige.

Despite Defendants' argument that Mr. Castel's damages analysis is 'generic,' in arriving at his damages calculation, Mr. Castel analyzes Plaintiff's financial losses from bypass by utilizing data related to the number of circuits, minutes of traffic per day, minutes of traffic per month, and financial loss per month obtained from the facts and testimony in this case.  Mr. Castel uses the established international call termination rate less the termination of local interconnect rate to determine the minimum direct revenue loss realized by Plaintiff assuming *any* credit is given to Defendants for the "local rate."  Additionally, in his rebuttal report, Mr. Castel—equipped with UPM's acknowledgement that it had at least 15% share of the market—adjusted his estimates utilizing UPM's own damages expert's market share estimate.  In sum, Mr. Castel's proposed bypass damages scenarios are based on appropriate and well-recognized methodologies for

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

determining the value of certain financial losses experienced by Digicel Haiti as a result of the Defendants' fraud, and is fully suitable here.

### 2.     Mr. Castel's Opinions Are Not Speculative

Plaintiff is not required to prove its damages with exactitude.  While the fact of damages must be clearly shown, the amount need not be proved (prior to trial) with the same degree of certainty. Only a reasonable approximation is required. *Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1443 (9th Cir. 1990). The most elementary conceptions of justice and public policy require that the wrongdoer bear the risk of uncertainty which his wrong has created. *Bigelow et al. v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946).  Here, Defendants seek to hold Digicel Haiti to an unreasonable and near impossible certitude with respect to proof of damages—especially when considered in light of the type and nature of the harm inflicted through their fraud.

"If plaintiff's inability to prove his damages with certainty is due to defendant's actions, the law does not generally require such proof." *Sheen v. Harris Tr. & Sav. Bank (In re Am. Comput. & Dig. Components, Inc.)*, No. CC-05-1306-KPaB, 2006 Bankr. LEXIS 4905, at *20 (B.A.P. 9th Cir. Aug. 17, 2006) citing *Clemente v. State of California*, 40 Cal. 3d 202, 219 (1985). "Where the fact of damages is certain, the amount of damages need not be calculated with absolute certainty. The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Phone Funders v. Telecare, Inc.*, NO. 96-55129, 1997 U.S. App. LEXIS 12497, at *3 (9th Cir. May 29, 1997) *citing GHK Associates v. Mayer Group, Inc.* 224 Cal. App. 3d 856, 873-874 (1990). While it is desirable that there be definiteness of proof of the amount of damages as far as reasonably possible, it is even more desirable that an injured person not be deprived of substantial compensation merely

Page 3 -     UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
TO UPM'S MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

because he cannot prove with complete certainty the extent of harm he has suffered. *Clemente*, 40 Cal. 3d at 219.

Defendants' contention that Mr. Castel's damages analysis is not valid is not supported by the facts. Although Defendants would prefer that Plaintiff utilize a different methodology (one that assumes Defendants' position and rationale with respect to the injury caused by Defendants' active concealment), that is not a basis to exclude Mr. Castel's testimony. Tellingly, Defendants insist that Plaintiff rely on the information and data provided by UPM to the exclusion of all other evidence when completing its damages analysis. However, Plaintiff disputes the veracity, completeness, and authenticity of the "data" provided by UPM. Accordingly, not only is Defendants' assertion that Plaintiff should rely solely on discovery received by UPM entirely self-serving, it contradicts other evidence in the case and completely ignores Plaintiff's outright rejection of the information provided by UPM. While Defendants may disagree with the choices Mr. Castel made in his analysis, his analysis is neither speculative nor conjectural. Furthermore, Defendants are free to challenge the basis for his opinions or the conclusions reached, through cross-examination and the presentation of competing theories for calculating damages. It would then, appropriately, be left to the jury to decide based upon the evidence presented. Plaintiff should be afforded a full opportunity to present testimony and evidence supported by Mr. Castel's methodology and conclusions to the jury for consideration as to the issue of damages.

### B.    MR. McEWEN'S TESTIMONY

Defendants contend that Mr. McEwen's testimony should be excluded because "he is not an expert on the nature, operation or impact of HBS," and because his conclusions are "based on speculation, and not facts or data." MIL at 2. Defendants' spurious arguments related to this expert are undermined by Mr. McEwen's credentials, his report, and his deposition testimony.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

### 1.    Mr. Mcewen Is Qualified

Mr. McEwen has 30 years' experience in advanced IP systems deployment and management.  Specifically, in Haiti, Mr. McEwen led the fraud investigation team that was able to define originating IP addresses for a wide range of bypass services including VoIP, OTT, media gateways, SIM banks, P2P, and SIP trunks. Despite Mr. McEwen's experience and expertise, Defendants make the strained and patently false argument that he is not an expert on human behavior software ("HBS") and therefore cannot testify in this matter.  Defendants' argument ignores Mr. McEwen's deposition testimony regarding the impact of human behavior software on bypass.[2]  Indeed, Mr. McEwen is qualified to assist the trier of fact with understanding bypass fraud generally, and UPM's choice and rationale for its bypass design – including but not limited to the use of HBS.

### 2.    Mr. Mcewen's Opinions Are Reliable And Not Speculative

*Daubert* requires that there be a reliable methodology and a reliable application of that methodology to the "real world" facts of a particular case. Plaintiff submits that Mr. McEwen's opinions are relevant and admissible in that they were derived using a reliable methodology and reliable application to the facts surrounding UPM's SIM misuse and fraudulent bypass activity. Mr. McEwen's opinions are intended to assist the trier of fact to determine the technical nature, components, and operations of SIM fraud, including but not limited to various types of bypass activity.  Mr. McEwen's analysis concludes with his opinion of UPM's deployment of bypass based on his understanding of UPM's operational design.  At trial, UPM will offer testimony regarding the manner and method of its operations to which Mr. McEwen will offer his expert

---

[2] McEwen Deposition 127:13-132:24.

Page 5 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
TO UPM'S MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

opinion of how UPM effectuated its Bypass operations to avoid payment to Digicel.  Defendants'
argument that Mr. McEwen's testimony and assumptions related to UPM's bypass, bypass fraud,
and technical design are speculative or somehow otherwise unspecific should also be rejected.
Courts have routinely ruled that such arguments simply go to the weight of his testimony—not to
its admissibility.  *United States v. Hirokawa*, 342 F. App'x 242, 246 (9th Cir. 2009) (upholding
lower court's decision that expert was sufficiently reliable because his assumptions "go to the
probative weight, rather than the admissibility, of the evidence and were properly the subjects of
'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the
burden of proof'").  Mr. McEwen's opinions have a reasonable factual basis supported by his
extensive technical, experiential, and scientific knowledge, which he has acquired through
training, education, and experience in telecommunications, VoIP, SIM technology, and bypass
activity.

### C.    MR. CROSS IS QUALIFIED AND HIS TESTIMONY IS RELEVANT AND WILL ASSIST THE TRIER OF FACT

Defendants suggest that Plaintiff's rebuttal expert Mr. Cross' testimony should be excluded
because it is irrelevant and because "he is not qualified to offer opinions about the 'legality' of
'bypass' or any purported 'international standards' relating to it."  MIL at 2.  Defendants argue
that Mr. Cross could not be qualified to render an expert opinion regarding international standards
regulating bypass activity because he is not a lawyer or policy analyst.  This contention is
unavailing.  Furthermore, Plaintiff does not offer Mr. Cross to render a legal opinion or conclusion.
It is ironic that Defendants make this point in the face of their own proffer of Joseph Gillan as an
expert witness for Defendant UPM, where this point alone distinguishes Mr. Cross from
Mr. Gillan, whose opinions are all improper and inadmissible legal opinion, as outlined in the
motion to exclude his testimony.

Page 6 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
TO UPM'S MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Mr. Cross, an accomplished electrical engineer, has over forty years of global experience in telecommunications. He has worked as a private consultant for the International Telecommunication Union (ITU) and other United Nations agencies in the telecommunications industry. Mr. Cross has both the technical expertise and the industry standards knowledge necessary to assist the trier of fact in navigating the technical ground present in this case. Mr. Cross' relevant testimony would assist the jury in understanding industry standards, including but not limited to the obligations of UPM and regulations governing UPM's activity.

Mr. Cross has applied his experience and reliable methodology in opining that UPM ignored the industry standards (adherence to laws, rules, and regulations) governing its activities in Haiti and the US.  Should it be necessary at trial on the fraud claim, Mr. Cross is certainly qualified to testify regarding the relevant and applicable industry standards.   However, here, Mr. Cross has been offered as a rebuttal expert to Mr. Gillan.  Accordingly, Mr. Cross' testimony and expert opinions are *only* necessary to the extent that Defendants attempt to submit to the jury the opinions of its proposed economist, Mr. Gillan.  Plaintiff contemporaneously objects—through a separate filing—to the interjection of Mr. Gillan's testimony in the instant trial as it is irrelevant, and inadmissible under *Daubert* and the Federal Rules of Evidence.

II.     **MOTION NO. 2 (PROHIBIT LAY OPINION TESTIMONY FROM WITNESSES)**

Defendants seek to exclude integral portions of the testimony of Digicel Haiti's lay witnesses, Maarten Boute, the Chief Executive Officer and Chairman of Digicel Haiti, and Gerard Pierre Laborde, the Legal and Regulatory Director of Digicel Haiti.  As stated in Plaintiff's lay witness statements, Mr. Boute will testify as to Digicel Haiti's operations and Mr. Laborde will testify as to his responsibility as a regulator overseeing Digicel Haiti's legal department. Considering the positions and job responsibilities of these individuals, it is inconceivable that

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Defendants argue that they lack knowledge of how Digicel Haiti's business operates and how it conforms with the legal strictures of the Haitian telecommunication system.

Defendants' objections rely on the singular fact that neither person is a Haitian lawyer, however, that has no impact on their knowledge of the facts and subject matter they are offered to testify on.  Literally who could be more knowledgeable about a company's operations than its CEO and Chairman?  Who could know more about how the company navigates their legal obligations than their Legal and Regulatory Director?  Defendants' motion in *limine* to exclude their lay witness testimony must be denied.

Defendants tag on an additional request to this motion to exclude the words "illegal", "unlawful", "fraud", "fraudulent", "misrepresentation", "concealment" or the like to describe UPM's conduct.  Again, it is inconceivable as to how a party can try a fraud case based on active concealment without using these words.  This sub portion of Defendants' motion in *limine* should be expressly denied.

### III.    MOTION NO. 3 (EXCLUDE ALL REFERENCE TO DIGICEL-HAITI'S DISMISSED CLAIMS, THEORIES AND ARGUMENTS)

Digicel Haiti acknowledges that references and evidence <u>solely</u> related to its dismissed claims and/or theories are not relevant to its claim of fraud by active concealment.  Nevertheless, evidence relevant to claims still at issue is admissible and cannot be excluded merely because it was also relevant to claims that were dismissed. *See, e.g.*, *SEC v. Goldstone*, Civ. No. 12-0257 JB/GBW, 2016 U.S. Dist. LEXIS 92514, at *50–53 (D. N.M. June 13, 2016) (holding that evidence "supporting dismissed claims" was admissible because it was relevant to remaining claims); *McGinnis v. Am. Home Mortg. Servicing*, Civ. No. 5:11-CV-284 (CAR), 2013 U.S. Dist. LEXIS 107038, at *2 (M.D. Ga. July 31, 2013) (same).

Claims and theories dismissed by the Court include fraud by <u>affirmative misrepresentation</u> arising from purported "cloning" of data, misuse of SIM cards, misuse of registration forms, and

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

misuse of Digicel Haiti's Distribution Contract for Electronic Recharge, and fraud by material omissions arising from a "duty to speak." [**ECF 294**, at pp.27–30]. Except as relevant to Digicel Haiti's claim of fraud by active concealment, Digicel Haiti does not intend to introduce any evidence that is solely relevant to these dismissed claims and theories and does not intend to introduce any argument asserting (or resurrecting) these dismissed claims. *See, e.g.*, *Goldstone*, 2016 U.S. Dist. LEXIS 92514, at *50–54 (admitting evidence relevant to remaining claims and excluding argument on dismissed claims).

To the extent that Defendants summarily seek to exclude all references and evidence relating to Defendants' overall fraudulent scheme to avoid higher international call rates for in-country bypass calls, such scheme directly relates to Defendants' fraudulent intent.[3] FRE 401; RESTATEMENT (SECOND) OF TORTS § 550 (1977) ("One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other[.]").  It would be impossible for Digicel Haiti to educate and inform the jury as to why Defendants engaged Bypass for profit and how that effort was demonstrably intentional without introducing evidence of how the Bypass operation was executed.  Defendants' motion seeks to preclude the jury from hearing about all the planning, effort, and ultimate execution of the Bypass scheme.  Defendants' motion is overly expansive, particularly where many of the facts this motion would preclude, are admitted to by Defendants.

Defendants will presumably offer benign (and non-fraudulent) explanations for their concealment efforts, including their use of human behavior software ("HBS"). When considered as part of their overall fraudulent scheme, however, it is clear that Defendants' conduct was intentional, and any proffered benign explanations are demonstrably false. [**ECF 294**, at p. 31

---

[3] A *prima facie* claim for common-law fraud requires a plaintiff to demonstrate that: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably calculated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. [**ECF 294**, at p. 23]. The *prima facie* element of representation can be satisfied by active concealment, in which a duty to speak is not required. *Id.* at 24.

Page 9 -   UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
           TO UPM'S MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

("UPM tried to mislead Digicel Haiti into believing that SIM cards were being used by natural persons making individual calls, rather than being used with multiple SIM cards in UPM's SIM Units (or Gateway devices).")]. As a result, Digicel Haiti respectfully requests that the Court deny in part Defendants' third motion in *limine* and authorize Digicel Haiti to introduce any and all evidence that is relevant to its claim of fraud by active concealment.

## IV.    MOTION NO. 4 (EXCLUDE EVIDENCE, TESTIMONY AND ARGUMENT CLAIMING THAT UPM'S ACQUISITION OF SIMS, TOP-UPS OR RLYH PLANS WAS ILLEGAL OR ILLEGITIMATE)

Defendants' conduct was illegal in Haiti. [See ECF 59 and exhibits; ECF 60 Ex. D]. Digicel Haiti has provided notice to the Court of the applicability of foreign law in this regard and of Digicel Haiti's intent to rely on these aspects of foreign law.  The manner in which Defendants sought out and paid individuals in Haiti to bring them bulk amounts of SIM cards goes directly to Defendants' intent and is integral contextual evidence for the jury.  This establishes that even the fundamental steps taken by UPM were carried out in a covert manner because Defendants knew they could not legally pursue bulk SIM card purchases through established and valid retail channels.  Therefore, Defendants went to the black market to make these purchases.

The "legitimacy" of Defendants' conduct is a fundamental issue in this dispute. Defendants' acquisition conduct formed part of its overall fraudulent scheme to avoid higher international call rates for in-country bypass calls. *See supra* § III. This conduct also knowingly departed from industry practice and norms (*see, e.g.*, Digicel Haiti's Distribution Contract for Electronic Recharge) and directly relates to Defendants' fraudulent (and illegitimate[4]) intent. FRE 401; RESTATEMENT (SECOND) OF TORTS § 550 (1977) ("One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other[.]").  Digicel Haiti's prospective use of "illegitimate" and its derivatives is consistent with its claim of fraud by active concealment and corresponding request for punitive damages (*see infra* § IX), and cannot, as a practical matter, exert a prejudicial

---

[4] The adjective "illegitimate" is defined in part as "improper." BLACKS LAW DICTIONARY (11th ed. 2019).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

effect when Defendants are charged with <u>fraudulent conduct</u>.[5] As a result, Digicel Haiti respectfully requests that the Court deny in part Defendants' fourth motion in *limine* and allow Digicel Haiti to use the term "illegitimate" and its derivatives.

## V.    MOTION NO. 5 (EXCLUDE EVIDENCE, TESTIMONY AND ARGUMENT REGARDING SHIPPING TO HAITI AND / OR WIRE TRANSFERS)

Digicel Haiti incorporates by reference its response in opposition to Defendants' third motion in *limine*. *See supra* § III. Defendants' <u>undisputed</u>[6] and illegitimate use of fictitious names on Haitian shipping and customs documents and related wire transfers were part of its overall fraudulent scheme to avoid higher international call rates for in-country bypass calls, and is directly relevant to Defendants' fraudulent <u>intent</u>. FRE 401. This conduct, among other illegitimate conduct, demonstrates that Defendants' concealment efforts were intentional, and any proffered benign explanations are demonstrably false. *See* Susanna M. Kim, *Character Evidence of Soulless Persons: The Applicability of the Character Evidence Rule to Corporations*, 2000 U. ILL. L. REV. 763, 810–11 (2000) ("If jurors are provided with greater information about the . . . decision making processes of the corporation, there is a good chance the information will help, rather than hinder, the evaluation of the corporate conduct at issue."). Further, under Rule 404, Defendants are not entitled to any protection against propensity evidence. *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, Case No. 3:12-cv-1058-SI, 2019 U.S. Dist. LEXIS 66634, at *62 (D. Or. Apr. 17, 2019) (holding that Rule 404(a) and (b) do not apply to "non-natural entities"). As a result, Digicel Haiti respectfully requests that the Court deny in part Defendants' fifth motion in *limine* and allow Digicel Haiti to introduce any and all shipping and wire transfer evidence that is relevant to its claim of fraud by active concealment.

---

[5] The term "fraudulent act" is defined as "[c]onduct involving bad faith, dishonesty, a lack of integrity, or moral turpitude" BLACKS LAW DICTIONARY (11th ed. 2019) (defining "fraudulent act" as).

[6] "Digicel Haiti . . . alleges that UPM misrepresented facts to shipping and customs officials to conceal the true nature and function of UPM's Gateway devices shipped to Haiti and UPM shipped this equipment under the name of a fake company that does not exist. UPM does not deny this allegation[.]" [**ECF 294**, p.3 n.4].

Page 11 -   UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
            TO UPM'S MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

## VI.   MOTION NO. 6 (EXCLUDE EVIDENCE, TESTIMONY AND ARGUMENT REGARDING UPM'S BUSINESS OR PRACTICES IN JURISDICTIONS OTHER THAN HAITI AND OUTSIDE THE RELEVANT TIME PERIOD)

Digicel Haiti incorporates by reference its response in opposition to Defendants' third and fifth motions in *limine*. *See supra* §§ III, V. Defendants' business, practices, and conduct outside of Haiti formed part of its overall fraudulent scheme to avoid higher international call rates for in-country bypass calls and are directly relevant to Defendants' fraudulent <u>intent</u>. FRE 401. This conduct, among other illegitimate conduct, demonstrates that Defendants' concealment efforts were intentional. *See* Susanna M. Kim, *Character Evidence of Soulless Persons: The Applicability of the Character Evidence Rule to Corporations*, 2000 U. ILL. L. REV. 763, 810–11 (2000) ("If jurors are provided with greater information about the . . . decision making processes of the corporation, there is a good chance the information will help, rather than hinder, the evaluation of the corporate conduct at issue."). Moreover, the existence of Defendants' business, practices, and conduct outside of Haiti and occurring after the fraud at issue in this lawsuit (2011–2015) is integral to Digicel Haiti's claim for punitive damages. The scope and breadth of Defendants' intentional scheme goes directly towards their malicious intent to illegally profit off the backs of telecommunication providers that made significant investments to bring reliable cellular service to high-risk markets.  Plaintiff seeks to introduce limited evidence to simply demonstrate the reach of Defendants' operation.

Digicel Haiti respectfully requests that the Court deny Defendants' sixth motion in *limine* and allow Digicel Haiti to introduce evidence of business, practices, and conduct in other jurisdictions that is relevant to its claim of fraud by active concealment occurring on or before the fraud at issue in this lawsuit.

## VII.   MOTION NO. 7 (EXCLUDE EVIDENCE, TESTIMONY AND ARGUMENT RELATING TO ROAMING AGREEMENTS BETWEEN DIGICEL-HAITI AND U.S. "ROAMING PARTNERS")

Defendants seek to exclude "all evidence, testimony and argument" pertaining to Digicel Haiti's roaming agreements with other carriers.  Presumably, the practical reason for this request

Page 12 -   UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
            TO UPM'S MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

is so that Digicel Haiti cannot be clear with the jury that working with established carriers through roaming agreements is the acceptable fashion to facilitate international calls for its subscribers versus non-consensual and clandestine Bypass activity. Again, Defendants have taken what could be a narrowly fashioned remedy to this issue and packaged it in the most expansive version possible.

Digicel Haiti has no intention of discussing the financial and contractual details of its individual roaming agreements with other carriers. Rather, general references to roaming agreements and how they work is required context for this matter, and Digicel Haiti intends to present the evidence through testimony regarding what roaming agreements are and how they work to facilitate international calling.

## VIII.    MOTION NO. 8 (EXCLUDE THE USE OF THE TERM "BYPASS" WHEN REFERRING TO RLYH)

Defendants' fraudulent scheme involved various techniques to <u>bypass higher call rates</u>. [**ECF 294**, pp.3–4]. Of these techniques, Defendants are known to have utilized "traditional bypass"[7] and "RLYH bypass." *Id.* The latter technique involved misusing a discount program intended for certain individual subscribers. *Id.* at p. 3 ("UPM would obtain . . . SIM cards . . . . [and] register these cards . . . for Digicel Haiti's discounted program . . . . Digicel . . . would charge . . . at the lower rate[.]"). It is unclear how Digicel Haiti's intended use of the term "bypass" will lead to jury confusion, particularly when Defendants are free to introduce evidence and arguments distinguishing between these efforts to bypass higher call rates. Digicel Haiti intends to clearly distinguish between these various efforts to demonstrate that Defendants' concealment efforts

---

[7] "For [traditional] bypass, UPM would use its SIM Units to take calls that began in the United States and transmit them via the internet, in Voice-over-Internet Protocol . . . format, to a Gateway device maintained and operated by UPM in Haiti. . . . After being received . . . the call . . . would be transmitted to Digicel Haiti's communications network in Haiti, for termination in Haiti." [**ECF 294**, at p.3].

Page 13 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
TO UPM'S MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

were clearly intentional. As a result, Digicel Haiti respectfully requests that the Court deny Defendants' eighth motion in *limine*.

## IX.    MOTION NO. 9 (EXCLUDE REQUEST FOR PUNITIVE DAMAGES AND ANY RELATED EVIDENCE, TESTIMONY AND ARGUMENT)

Defendants' latest attempt to narrow Plaintiff's claim to the point of disappearance is this improper motion in *Limine* to "exclude" the punitive damages claim this Court allowed to Plaintiff to amend to include after discovery.  Beyond being procedurally improper, Defendants' motion is meritless.

While Digicel Haiti agrees that it will not argue at trial that punitive damages in this case are related to conduct causing bodily injury or bodily harm, the standard for malice as outlined in the relevant jurisprudence is nevertheless applicable and will be relied upon by Digicel Haiti. Digicel Haiti will further address this issue in its response to Defendants' Renewed Motion for Summary Judgement.  [ECF 335].

//

//

//

//

//

//

//

//

//

//

//

//

//

//

Page 14 -    UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
             TO UPM'S MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

## <u>CONCLUSION</u>

Based on the foregoing, Digicel Haiti respectfully requests that the Court deny Defendants'

Motions in *Limine* consistent with the legal and factual arguments set forth above.

Dated this 7th day of March, 2022.

Respectfully submitted,

By:    *s/ Robert C.L. Vaughan*

Anne Talcott, OSB #965325
Email: atalcott@schwabe.com
Kathryn E. Kelly, OSB #175162
Email: kkelly@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Telephone: 503.796-2958

Robert C. L. Vaughan (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
Cherine Smith Valbrun (*Pro Hac Vice*)
Email: cvalbrun@kvllaw.com
Leah B. Storie (*Pro Hac Vice*)
Email: lstorie@kvllaw.com
KIM VAUGHAN LERNER LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, FL 33394
Telephone:     (954) 527-1115

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti*

Page 15 -   UNIGESTION HOLDINGS' RESPONSE IN OPPOSITION
TO UPM'S MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900