**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

        Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**, <br><br> Plaintiff & Counterclaim-Defendant, <br><br> v. <br><br> **UPM TECHNOLOGY, INC**., *et al.,* <br><br> Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTIONS *IN LIMINE*** <br><br><br> REQUEST FOR ORAL ARGUMENT |

Page 1 –   DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628846.000

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 2

II.   THE COURT SHOULD GRANT UPM'S MOTIONS *IN LIMINE* ........................ 3

      A.   Exclusion of Digicel-Haiti's Purported "Experts" (Motion *in Limine* 1) .................................................................................. 3

           1.   Mr. Castel .............................................................................. 4

           2.   Mr. McEwen .......................................................................... 11

           3.   Mr. Cross .............................................................................. 14

      B.   Exclusion of Lay Opinion Testimony (Motion *in Limine* 2) ...................... 15

      C.   Exclude References to Dismissed Claims (Motion *in Limine* 3) ................ 17

      D.   Legality of UPM's Acquisition of SIMs, Top-Ups, and RLYH Plans (Motion *in Limine* 4) .................................................................. 21

      E.   Wire Transfers and Shipping Procedures (Motion *in Limine* 5) ................ 23

      F.   UPM's Activities Outside of Haiti and Outside of the Relevant Time Period (Motion *in Limine* 6). .......................................................... 24

      G.   Roaming Agreements (Motion *in Limine* 7) ............................................. 25

      H.   Use of the Term "Bypass" In Connection With RLYH (Motion *in Limine* 8) .................................................................................. 25

      I.   Punitive Damages (Motion *in Limine* 9) .................................................... 26

III.  CONCLUSION .......................................................................................... 27

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ...................................... 4, 6, 9

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, No. 3:12-cv-1058-SI,
2019 U.S. Dist. LEXIS 66634 (D. Or. Apr. 17, 2019) .................................... 19, 21

*Murray v. S. Route Mar. SA*, 870 F.3d 915 (9th Cir. 2017) ......................................... 6, 11

*Strawn v. Farmers Ins. Co.,* 350 Or. 336, 258 P.3d 1199 (2011) ...................................... 6

**Other Authorities**

David P. Leonard, *In Defense of the Character Evidence Prohibition:
Foundations of the Rule Against Trial by Character,* 73 Ind. L.J. 1161,
1184-88 & n.112 (1998). ...................................................................................... 20

**Rules**

FRE 401 ....................................................................................... 5, 18, 21, 22, 23, 24, 25

FRE 402 ....................................................................................... 5, 18, 21, 22, 23, 24, 25

FRE 403 ................................................................................................ 18, 20, 21, 23, 24

FRE 404 .......................................................................................................... 19, 20, 21, 23

FRE 802 ............................................................................................................................ 25

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## I.    INTRODUCTION

Digicel-Haiti's opposition (ECF #344) to UPM's motions *in limine* (ECF #324) highlights the parties' fundamental dispute as to the scope of this case following the Court's ruling on dispositive motions (ECF #294). The Court dismissed claims that UPM had made affirmative misrepresentations or failed to disclose material information. *Id.* at 27-30. It did not entirely dismiss the claim that UPM had engaged in active concealment, but it allowed that claim to proceed only to a limited extent:

> UPM's use of human behavior software is a deceptive act or contrivance intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter. It also creates a false impression covering up the truth and makes the discovery of a material fact more difficult. ***If UPM did use that software to deceive Digicel Haiti or to hinder Digicel Haiti's ability to identify and block SIM cards being used by other than natural persons for individual calls and UPM did that with the requisite intent to deceive Digicel Haiti, that is enough to allow Digicel Haiti's claim of fraud by active concealment to proceed to trial. To that extent,*** the Court denies Defendants' motion for summary judgment against Digicel Haiti's claim of fraud by active concealment.

*Id.* at 31 (emphasis added). In other words, the only Digicel-Haiti claim that survived summary judgment is whether UPM used human behavior software ("HBS") to interfere with Digicel-Haiti's ability to identify and block UPM's SIM cards.

Other portions of the ruling confirm this. In discussing Roam Like You're Home ("RLYH") service, the Court said that "it is unclear … whether UPM's alleged use of [HBS] also pertains to Digicel-Haiti's claim relating to RLYH." *Id.* at 33. In denying Digicel-Haiti's motion for summary judgment on liability for fraud, the Court noted that UPM and Mr. Tran "deny that they used [HBS] to deceive Digicel-Haiti." *Id.* at 37. And near the end of the ruling, the Court said that "the only issue that appears to be in dispute is whether UPM engaged in fraud by active concealment by using [HBS]." *Id.* at 38-39.

Digicel-Haiti, however, still views this case as a freewheeling exploration of

Page 2 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

anything UPM might have done that can be spun to the jury as bad. Neither its proffered evidence nor its arguments against UPM's motions *in limine* focus on HBS. In its arguments, Digicel-Haiti only mentions HBS in connection with motion 1 (seeking to exclude expert testimony) and motion 3 (seeking to limit the case to conform to the Court's ruling). In contrast, its opposition to five different motions is based on a stated intention to litigate a supposed UPM "overall fraudulent scheme."[1] And its proffered evidence is not focused on HBS at all. Digicel-Haiti has literally *no* evidence addressing:

- What UPM's software supposedly did;

- How it supposedly worked to deceive Digicel-Haiti;

- Why Digicel-Haiti's reliance was reasonable;

- How much bypass traffic got through, by virtue of the software, that would not otherwise have gotten through; and

- Why the money Digicel-Haiti already received has not fully compensated Digicel-Haiti for the calls UPM completed by virtue of using HBS.

Digicel-Haiti's proffered case, in short, is unmoored from the Court's ruling on dispositive motions. Given that ruling, the focus of the case is now on one issue only: whether UPM used HBS in a way that satisfies the elements of common law fraud by active concealment. Granting UPM's motions *in limine* is required to keep that focus.

## II.    THE COURT SHOULD GRANT UPM'S MOTIONS *IN LIMINE*

### A.    Exclusion of Digicel-Haiti's Purported "Experts" (Motion *in Limine* 1)

UPM explained that: (a) Digicel-Haiti's purported experts lack *expertise* relevant to the issues in this case; (b) their proffered *opinions* are not relevant to the

---

[1] *See* ECF #344 at 9 (motion 3); 10 (motion 4); 11 (motion 5); 12 (motion 6); and 13 (motion 8, referring to a "fraudulent scheme").

disputed issues; and (c) their proffered opinions are based on unreliable methodologies and speculation. ECF #324 at 2-14. Digicel-Haiti does not defeat those points, and its proffered experts should be excluded.[2]

### 1.    Mr. Castel

UPM moved to exclude Mr. Castel's testimony on damages because (a) he has no particular qualifications to testify about damages; (b) his methodology is irrelevant to any assessment of whether or how much Digicel-Haiti may have been damaged as a result of UPM using HBS; and (c) that methodology is speculative and unreliable. ECF #324 at 4-10. Digicel-Haiti has not refuted these points.

Digicel-Haiti first recites some of Mr. Castel's accomplishments. ECF #334 at 1-2. Those accomplishments, however, do not qualify him as a damages expert. For example, he has never testified in any case in any jurisdiction on any issue of damages, and does not hold any academic or professional qualifications bearing on damages analysis. This lack of qualification is a sufficient reason to exclude his testimony.[3]

His testimony is also irrelevant. Digicel-Haiti describes it as follows:

> Mr. Castel's opinions directly address how "bypass operations negatively impact the target company's revenues; returns on investment of the telecommunication operators; and, losses to the tax authorities of the affected countries, as international traffic taxes cannot be truly monitored and charged." *See* ECF 304-1.

---

[2] Digicel-Haiti suggests UPM's *Daubert* motions were untimely. ECF #344 at 1 n.1. UPM is unaware of any authority to that effect. To the contrary, UPM understands the practice in this district to be to raise *Daubert* issues as part of normal pretrial procedures.

[3] By way of contrast, UPM notes that its damages expert is "a Certified Valuation Analyst, a Master Analyst in Financial Forensics, and a member of the National Association of Certified Valuators and Analysts and National Association of Forensic Economics," and that he has presented expert testimony in dozens of court and regulatory proceedings, including on issues of damages. *See* Declaration of Christopher W. Savage in Support of UPM's Motions *in Limine,* Expert Report of Don J. Wood at ¶¶1-2 and attached c.v. Mr. Castel possesses no remotely similar qualifications.

ECF 334 at 2. Nobody disputes that bypass, overall, reduces Digicel-Haiti's revenues to some degree. But that is not an issue in this case. The issue is whether UPM in particular, by using HBS, damaged Digicel-Haiti at all and, if so, to what degree. Nothing in Mr. Castel's proffered testimony addresses that point. Not only is an estimate of Digicel-Haiti's total revenue losses due to bypass irrelevant (and thus inadmissible under Federal Rules of Evidence ("Rules") 401 and 402), simply introducing a big number unmoored from any connection to damages that any culpable UPM conduct may have caused is guaranteed to confuse and mislead the jury and unfairly prejudice UPM.

But aside from being irrelevant, there is nothing "expert" about Mr. Castel's damages opinion. All he does is start with unsupported, speculative assumptions and then do some basic math. He begins with a press report, which he says indicates that "fraudsters" had equipment "able to manage 400 calls simultaneously." *See* ECF #304-1 at 14-15 & n.14.[4] He then assumes that 320 of those circuits "were occupied, 14 hours per day." *Id.* at 15. And he then assumes that each minute of traffic harmed Digicel-Haiti to the tune of $0.23 per minute (with no recognition of amounts the bypassers paid). *Id.*

UPM does not challenge Mr. Castel's arithmetic; anyone with a calculator (or paper and pencil) can confirm his math. But the problems with letting Mr. Castel present these calculations as some sort of "expert" analysis are obvious, legion, and fatal.

First, there is no evidence that Digicel-Haiti was ever subject to bypass operations at the scale of 320 simultaneous calls, much less 320 simultaneous calls for 14 hours per day, for months. These assumptions are made up – pulled out of thin air – and nothing in Mr. Castel's background qualifies him to make them, or to validate them. Indeed, no expert in any field would rely on a random press report regarding seized

---

[4] Mr. Castel's characterization of entities engaged in bypass as "fraudsters" illustrates why the Court should issue an order *in limine* barring that kind of language. References to bypass as "fraud" occur nearly ***four dozen times*** in Mr. Castel's report. *See id., passim.*

Page 5 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

equipment and combine it with a pulled-out-the-air assumption about usage to opine that the resulting figures have any relationship to the amount of bypass traffic that Digicel-Haiti actually experienced. This is pure speculation and requires exclusion of Mr. Castel's testimony. District court trial judges must prevent "shoddy expert testimony and junk science from reaching the jury." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 923 (9th Cir. 2017) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595-97 (1993)). Mr. Castel's analysis on this point is not only junk, it is not even remotely scientific.

Second, even if one were to conclude that Mr. Castel has generated a reasonable estimate of the total amount of bypass Digicel-Haiti faces, his testimony would still be inadmissible because it is irrelevant. This case is not about how much bypass Digicel-Haiti faced. This case is about whether UPM used HBS to terminate calls on Digicel-Haiti's network that would not otherwise have gotten though. Digicel-Haiti must prove that it was damaged by virtue of its reliance on UPM's use of HBS.[5] Not only do Mr. Castel's calculations have nothing to do with that question, they are affirmatively inconsistent with it. The point of HBS is to make a bypass SIM's usage look like that of an individual subscriber. But no individual subscriber would blast calls continuously for 14 hours per day, day in, day out, for months at a time. So even if Mr. Castel's calculations were useful for some purpose, their very nature shows that they cannot possibly be relevant to damages in this case. To the extent that those calculations could be said to model something, they model the exact opposite of what a bypasser using HBS would do. As a result, aside from being irrelevant, they are guaranteed, with one hundred percent certainty, to be confusing and prejudicial.

Third, Mr. Castel's calculation of purported damages is unreliable because

---

[5] *See Strawn v. Farmers Ins. Co.,* 350 Or. 336, 351-52, 258 P.3d 1199, 1209 (2011) (plaintiff must show that it "justifiably relied" on the defendant's misrepresentation and "was damaged as a result of that reliance").

Page 6 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

he takes no account of payments Digicel-Haiti received. Digicel-Haiti claims that Mr. Castel "uses the established international termination rate" – by which Digicel-Haiti means the $0.23 per minute rate – "*less the termination of local interconnect rate* to determine" Digicel-Haiti's purported "direct revenue loss." ECF #344 at 2 (emphasis added). But Mr. Castel does no such thing. Nothing in his calculations reflects what his hypothetical bypassers paid for the calls they completed – that is, the local rate that was automatically deducted while the calls were being made. And he also ignores the top-up amounts that Digicel-Haiti confiscates when it cuts off bypass SIMs.

Fourth, basing damages calculations on a $0.23 per minute figure is wrong, as Digicel-Haiti's CEO, Mr. Boute, and its technical expert, Mr. McEwen, both recognize.[6] Any per-minute estimate of Digicel-Haiti's damages must start with $0.18, not $0.23, because of the $0.05 per minute tax that the Government of Haiti takes out of the $0.23. Mr. Castel neither addresses this point nor explains why he ignores it.

Fifth, Mr. Castel's purported rebuttal to UPM's damages expert, Mr. Wood, adds further error to his calculations.[7] UPM asked Mr. Wood to estimate how much it was harmed when Digicel-Haiti cut off UPM's ability to resell RLYH in the United States. To provide Mr. Wood with a starting point, UPM projected that if Digicel-Haiti had not cut off UPM's RLYH SIMs in 2014 its RLYH resale business would have won 15% of the traffic from the United States to Haiti. Mr. Castel misconstrued this to mean that UPM had already achieved that level of traffic in 2014 via in-country bypass. He then took UPM's projection about how much traffic it would have carried via RLYH resale, but for Digicel-Haiti cutting of the SIM cards, and "back-cast" that figure to claim that UPM actually

---

[6] *See* Boute Depo., 134:14-135:2, 139:12-24; ECF #305-1 (McEwen Report) at 5 ("Digicel makes $0.18 per minute and the Haitian Government makes $0.05…").

[7] UPM does not anticipate calling Mr. Wood. It may, however, be necessary to do so if Mr. Castel is permitted to testify based on his rebuttal report.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

carried that much in-country bypass traffic, every month from August 2011 through January 2015. This is pure fiction. It is not based either on any facts or on any purported expertise Mr. Castel might possess.

Ignoring these fatal defects in Mr. Castel's proffered testimony, Digicel-Haiti says that the scenarios he concocts "are based on appropriate and well-recognized methodologies for determining certain financial losses experienced by Digicel-Haiti as a result of Defendants' fraud." ECF #344 at 2-3. This is entirely false. Mr. Castel's calculations do not reflect "well-recognized methodologies" for determining damages. He has no experience performing damages analyses, so he, certainly, cannot vouch for his methodology as "well-recognized." And Digicel-Haiti cites no case law, professional journal articles, records of presentations at professional conferences, or any other objective indicia that would support the claim that Mr. Castel's calculations reflect any "well-recognized methodology." Digicel-Haiti is making this up.

Digicel-Haiti correctly recognizes that its only damages are those experienced "as a result of Defendants' fraud." But it ignores the Court's ruling that the only fraud at issue is active concealment using HBS. Mr. Castel says nothing about that. He does not mention HBS at all, much less estimate how much traffic UPM might have completed by virtue of using it. He admitted that he does not know anything about UPM's operations,[8] so he obviously has no idea whether UPM used HBS or what effect it might have had. The absence of any actual knowledge of the impact of UPM using HBS, and of any attempt to make an evidence-based estimate of that impact, simply confirms that Mr. Castel's testimony is unreliable, irrelevant, and must be excluded.

UPM explained that Mr. Castel's testimony must be excluded because it is speculative. Digicel-Haiti seems not to have understood UPM's points. *See* ECF #324 at

---

[8] Castel Depo., 75:24-76:2.

Page 8 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

5-8 (explaining speculative nature of Mr. Castel's calculations); ECF #344 at 3-4 (arguing that Mr. Castel's calculations are not speculative). To eliminate any confusion, UPM notes that Mr. Castel's calculations are speculative in at least the following respects:

- He relies on a random press report for his baseline assumption that bypassers during the relevant period had 400 channels of capacity to send calls to Digicel-Haiti.

- He speculates with no basis whatsoever that UPM had that level of capacity for bypass deployed in Haiti.

- He speculates with no basis whatsoever that bypassers used 320 of those 400 channels, 14 hours per day, day in, day out, for months on end.

- He speculates with no basis whatsoever that UPM itself used 320 channels of capacity, 14 hours per day, day in, day out, for months on end.

- He speculates that because UPM believes it could have achieved a 15% share of traffic to Haiti in 2014, using RLYH resale from within the United States, that UPM actually achieved a 15% share of traffic to Haiti, using in-country bypass, every month from August 2011 through January 2015.

- He entirely ignores HBS, which means that any tenuous connection between his calculations and the only relevant measure of damages in this case – damages caused by UPM's use of HBS – is entirely speculative.

There is no justification for these speculations. To quote Digicel-Haiti: "*Daubert* requires that there be a reliable methodology and a reliable application of that methodology to the 'real world' facts of a particular case." ECF #344 at 5. Mr. Castel's testimony fails on both counts.

Digicel-Haiti also complains that it is not required to "prove its damages with exactitude." ECF #344 at 3. Fair enough, but the problem is not that Mr. Castel lacks "exactitude." Lacking "exactitude" would be saying that there are "about 100" federal judicial districts when the actual number is 94.[9] What Mr. Castel is doing is more like

---

[9] *See, e.g.,* Introduction To The Federal Court System | USAO | Department of Justice

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

opining that there must be thousands of judicial districts, based on having read somewhere that there are almost 400,000 cases filed in federal district court every year.[10] Even Digicel-Haiti cites cases holding that proof of damages should be as definite as "reasonably possible." ECF #344 at 3. Mr. Castel makes a mockery of that standard.

Finally, Digicel-Haiti claims that UPM insists that it "rely on the information and data provided by UPM" and "should rely solely on discovery provided by UPM." ECF #344 at 4. To the contrary, UPM explained in some detail how Digicel-Haiti could have generated an evidence-based damages estimate using its own data. ECF #324 at 7-8 (laying out data available in Digicel-Haiti's records); *see also* Defendants' Objection to Plaintiff Unigestion Holdings, S.A.'s Omnibus Motions *In Limine* (ECF #329) at 2-4 (same). UPM's data consists of reliable, contemporaneous business records, so of course Digicel-Haiti can and should rely on it, rather than stamp its feet and put its hands over its ears. *See* ECF #344 at 4 (noting Digicel-Haiti's "outright rejection of the information provided by UPM"). Its evidentiary temper tantrum, however, is no excuse for ignoring ***its own data*** and then putting forth speculative nonsense as a replacement.

Considering all of this, it would be plain error to allow Mr. Castel to testify. His calculations bear no relation to harm that UPM, by use of HBS, may have caused Digicel-Haiti. But the jury would inevitably assume that he was testifying because his opinions were at least facially valid. And this is not something that can be cured by cross-examination. The point is not that Mr. Castel is not as preeminent an expert on estimation of damages as he should be; the point is that he is not an expert on damages at all. The point is not that his methodology is questionable; the point is that his methodology is junk. The point is not that his calculations are based on a damages theory different from UPM's;

---

[10] *See, e.g.,* https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2019#

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

the point is that, if his calculations are based on any "theory" at all, it is one that is entirely unconnected to the fraud claimed in this case.

The Court has an obligation to keep junk analysis parading as learned expert opinion away from the jury. *Murray v. S. Route Mar. SA*, *supra.* UPM implores the Court to fulfill that obligation here.

### 2.     Mr. McEwen

UPM explained that Mr. McEwen's testimony should be excluded for two reasons: he is not an expert on the relevant issue in the case (the use of HBS); and, in any case, his opinion is speculative because he has no knowledge of any aspect of UPM's actual operations (including knowledge of any purported use of HBS). ECF #324 at 10-12. Nothing in Digicel-Haiti's opposition rebuts these points.

First, Digicel-Haiti argues that a few pages of Mr. McEwen's deposition shows his supposed expertise regarding HBS. ECF #344 at 5. All that testimony shows, however, is that he knows generally what HBS is and what it does, but that hardly makes him an expert. The reader of this brief knows that cars have engines, steering wheels, and brakes; knows that if people drive too fast, they can lose control of their cars; knows that people driving too fast may go into a skid if they put on the brakes too suddenly; and knows that all of this can lead to accidents. But none of that makes the reader an expert in steering systems, or braking systems, or how to reconstruct accidents from skid marks.

So it is with Mr. McEwen. He knows what HBS is and knows generally what it does.[11] But that no more makes him an expert in HBS than undersigned counsel is an expert in accident reconstruction. Nothing in his c.v. or description of his background

---

[11] Counsel's question at the deposition was whether Mr. McEwen was "familiar with the idea of what's been called human behavior software," followed by some high-level questions about what such software might do. McEwen Depo. 127:13-128:25. *See* ECF #294 at 21.

Page 11 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

suggests that he has ever bought, sold, studied, designed, coded, used, configured, written about, testified about, or been consulted about, any aspect of HBS. He is therefore not qualified to offer opinions about how one could tell whether a bypasser was using HBS or how effective any given version of HBS might be at allowing calls past any given bypass detection system.

Aside from not being an expert on HBS, both Mr. McEwen's expert report and deposition make clear that he has no knowledge about anything that UPM actually did; no knowledge about whether or how UPM used HBS; and certainly no knowledge about whether and to what extent any UPM use of HBS might have allowed its calls to be completed before its SIMs were cut off. ECF #324 at 10-12. Again quoting Digicel-Haiti: "*Daubert* requires that there be a reliable methodology and a reliable application of that methodology to the 'real world' facts of a particular case." ECF #344 at 5. Even if Mr. McEwen were a world-renowned authority on HBS – thus satisfying the first part of Digicel-Haiti's formulation – he has no basis for applying whatever expertise he has to "the 'real world' facts of [this] particular case."

Mr. McEwen thus lacks both the qualifications to testify as an expert about HBS and the knowledge to testify about what UPM supposedly did. As a result, Digicel-Haiti is wrong to claim that "Mr. McEwen is qualified to assist the trier of fact with understanding bypass fraud generally, and UPM's choice and rationale for its bypass design – including but not limited to the use of HBS." ECF #344 at 5. As with Mr. Castel, Digicel-Haiti's own description of the proffered expert testimony shows why it must be excluded.

First, this case is not about "bypass fraud generally." "Bypass" – generally speaking – is not "fraud" at all. This is shown by the Court's dismissal of Digicel-Haiti's claims based on misrepresentation and omission. Second, what bypassers "generally" might have done is not relevant to whether UPM in particular defrauded Digicel-Haiti by

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

means of active concealment using HBS. Third, Mr. McEwen is emphatically *not* qualified to opine as to "*UPM's* choice and rationale for its bypass design." He knows literally nothing at all about the choices UPM made and the rationale for those choices; indeed, what UPM did, and why, is not an appropriate topic for expert testimony in the first place. Fourth, focusing on the only issue in the case, Mr. McEwen knows literally nothing about whether UPM used HBS, and literally nothing about whether any software UPM used allowed it to complete more bypass calls than it otherwise would have.

Digicel-Haiti next seeks to justify Mr. McEwen's testimony by claiming that sometime *after* UPM has presented "testimony regarding the manner and method of its operations," Mr. McEwen will "offer his expert opinion of how UPM effectuated its Bypass operations to avoid payment to Digicel." ECF #344 at 5-6. This is gobbledygook. For in-country bypass, UPM got calls to Haiti via the Internet, connected to Digicel-Haiti's local network using its gateway devices, and paid Digicel-Haiti's local rate for the calls it made. By not going through Digicel-Haiti's international switch, UPM avoided paying the $0.23 per minute rate that Digicel-Haiti charges for calls traversing that switch. For RLYH resale, the gateways were in Portland, the calls went through Digicel-Haiti's international switch, and Digicel-Haiti was paid both its local rate and its desired $0.23 per minute. There is no dispute about any of these facts. What is Mr. McEwen supposedly going to "offer his expert opinion" about?

Moreover, Mr. McEwen's proffered "expert opinion" is divorced from the only issue in this case, which is whether UPM used HBS to actively conceal its bypass activity from Digicel-Haiti. To the extent that Digicel-Haiti's characterization of Mr. McEwen's testimony *is* meant to embrace considerations of HBS, for the reasons noted above Mr. McEwen is not qualified to testify. But to the extent that the testimony *is not* meant to embrace HBS, it is irrelevant.

Mr. McEwen is an educated and accomplished man. But he has nothing to

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

offer of relevance to this case. Allowing him to testify will at best confuse and mislead, and at worst prejudice, the jury. As a result, the Court should exclude his testimony.

### 3.    Mr. Cross

UPM explained that Mr. Cross has no expertise relevant to any issue in this case. ECF #324 at 12-14. Originally presented as a witness in rebuttal of UPM's witness Mr. Gillan (in the context of UPM's now-severed counterclaim), Digicel-Haiti now claims that Mr. Cross' testimony "would assist the jury in understanding industry standards, including but not limited to the obligations of UPM and regulations governing UPM's activity." ECF #344 at 7. But this is both irrelevant and inappropriate for expert testimony.

First, this case has nothing to do with "industry standards." Notably, Digicel-Haiti is not talking about technical standards, such as the protocols for authenticating SIM cards on a network. Digicel-Haiti is talking about ***legal*** and ***regulatory*** standards. This is clear from the statement that the "standards" Mr. Cross would testify to relate to UPM's supposed "obligations," and the "regulations" supposedly "governing UPM's activity." In other words, Mr. Cross is being offered to present supposed "expert" opinions on matters of law and regulation. Not only is this improper on its face, but Mr. Cross is neither an attorney nor a regulator, whether in the United States, in Haiti, or anywhere else.[12]

Mr. Cross' proposed testimony does not fare any better when considered as potential rebuttal to Mr. Gillan. If Digicel-Haiti's fraud claim with respect to RLYH goes to trial, UPM will show that Digicel-Haiti had no right to cut off the SIM cards UPM was using to resell RLYH service. This is because federal law – the longstanding rulings of the Federal Communications Commission ("FCC") – forbid a carrier such as Digicel-Haiti

---

[12] UPM notes that Mr. Cross's report makes more than forty (40) references to bypass as supposedly involving "fraud." If he is allowed to testify for any purpose, he must be strictly admonished not to refer to anything that UPM did as "fraud" or "fraudulent," whether under the law of Haiti, the law of Oregon, or in any common parlance.

Page 14 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

from blocking the resale of its retail services, such as RLYH. That much is a legal argument. Mr. Gillan's testimony would assist the jury in understanding the economic rationale underlying those FCC rulings, which have not previously been expressly applied to the particular service configuration at issue with RLYH resale.[13]

To rebut Mr. Gillan, Digicel-Haiti would need an economist familiar with FCC rulings regarding resale who would testify that Mr. Gillan's explanation of the economics of resale restrictions is wrong. Mr. Cross' proffered testimony has nothing to do with the economic rationale of the FCC's rulings, and therefore has nothing to do with "rebutting" Mr. Gillan. His testimony relates to what some international bodies have said about bypass. That has nothing to do with Mr. Gillan's testimony or with any other issue in the case. Notably, the views of international bodies about bypass are entirely irrelevant to RLYH resale – the sole issue on which Mr. Gillan would testify – because, as UPM has repeatedly pointed out, with RLYH resale Digicel-Haiti's international switch is never "bypassed," and it collects the full $0.23 per minute it says it is entitled to.

Mr. Cross simply has nothing relevant to contribute to this case, and the Court should exclude his testimony. The only possible impact of allowing it in would be to prejudice the jury against UPM by suggesting that UPM was breaking some sort of "international standards" by engaging in bypass in the first place.

## B.    Exclusion of Lay Opinion Testimony (Motion *in Limine* 2)

UPM asked for two orders *in limine* regarding lay opinion testimony: (1) that Mr. Boute and Mr. Laborde not testify as to matters of law; and (2) that no witnesses testify using words like "fraud" or "illegal" or "misrepresent" to describe UPM's conduct. ECF #324 at 14-15. Digicel-Haiti's rejoinders miss the point. ECF #344 at 7-8.

UPM does not dispute that Mr. Boute and Mr. Laborde, as part of their jobs,

---

[13] *See* Defendants' Opposition To Digicel-Haiti's Daubert Motion And, In The Alternative, Motion *In Limine* To Exclude Testimony Of Defendant's Expert Joseph Gillan (ECF #280).

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

try to conform Digicel-Haiti's activities to what they understand Haitian law to be. If ***their understanding*** of Haitian law – their state of mind – mattered to this case, they could testify about it. But UPM can see no issue as to which their understanding of Haitian law is relevant. Digicel-Haiti certainly identifies none. By contrast, if Digicel-Haiti wants to establish Haitian law on any relevant subject, it is free to cite to that law. But if what matters is what Haitian law *is,* neither witness is competent to opine on it.[14]

On the issue of witnesses using words like "fraud," permitting witnesses to use those terms would prejudice the jury, amounting to telling the jury how to decide the case. ECF #324 at 20. The fact that Digicel-Haiti objects to this aspect of UPM's motion confirms that granting it is necessary. The question for the jury in this case will be what UPM ***did*** (did it use HBS?) and what ***effect*** its actions had (did it lead Digicel-Haiti to think some calls were being made by individual subscribers?). Certainly in closing argument counsel can argue that the evidence either does or does not support a jury finding that Digicel-Haiti has proven each element of common-law fraud by active concealment. But there is no conceivable scenario in which a ***witness*** should be able to ***characterize*** any UPM activity as "fraudulent" or "illegal."

Digicel-Haiti seems dismayed by this prospect, wondering how one could even try a fraud case if lay witnesses are not allowed to literally accuse the defendant of fraud. ECF #344 at 8. UPM suggests asking questions that are limited to ***facts*** that a lay witness ***knows***, rather than questions designed to elicit ***opinions*** about the ultimate issue in the case. UPM submits that there is no circumstance in which allowing a lay witness to characterize either what UPM did, or the effects of those actions, as "fraudulent" or a "misrepresentation," or the like, could do anything but prejudice the jury.

---

[14] UPM notes that Digicel-Haiti states that Mr. Laborde will testify as "a regulator overseeing Digicel-Haiti's legal department." UPM assumes this is some kind of typographical error; Mr. Laborde is not a "regulator."

Page 16 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

## C.    Exclude References to Dismissed Claims (Motion *in Limine* 3)

In Section I above, UPM highlighted the contrast between the claim the Court has allowed to go to trial – whether UPM engaged in active concealment using HBS – and the unbounded, freewheeling notions of some UPM "overall fraudulent scheme" on which Digicel-Haiti is basing its case. The concerns outlined there are what underlay UPM's motion *in limine* to bar references to Digicel-Haiti's dismissed claims. ECF #324 at 15-18.

UPM appreciates that Digicel-Haiti acknowledges that its dismissed claims have indeed been dismissed. ECF #344 at 8-9. Unfortunately, what it offers with one hand, it takes away with another.

The high-level problem is Digicel-Haiti's apparent view that evidence about anything (allegedly) bad that UPM might have done, is somehow relevant to whether – assuming UPM used HBS – it used HBS with the requisite intent to defraud Digicel-Haiti. ECF #344 at 9.[15] This basic view is wrong. Digicel-Haiti must prove that UPM used HBS, as well as that UPM used it with the intent to defraud Digicel-Haiti. The second issue – Digicel-Haiti's obligation to prove intent – raises several points.

First, before Digicel-Haiti is allowed to explore any UPM "intent" in using HBS, it should be required to have introduced material and probative evidence that UPM actually used HBS – that is, that it actually configured its SIM management software so that the selection of SIMs was designed to mimic or emulate the behavior of a human being.[16] Until Digicel-Haiti has established that basic, foundational fact, questions of

---

[15] Digicel-Haiti relies on the "intent" argument with respect to four separate UPM motions *in limine:* this one (motion 3); motion 4 (acquisition of SIMs and top-ups); motion 5 (wire transfers and shipments); and motion 6 (UPM activities outside of Haiti and outside the time period of its operations in Haiti). The flaws in this argument are the same in each case, so UPM discusses it in some detail here and refers back to this discussion as appropriate.

[16] It is undisputed that UPM used software to control the selection of SIM cards to authenticate calls. *See* ECF #294 at 20. The only alternative would have been to have

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

"intent" are irrelevant. In this regard, UPM is of course aware that its former employee Mr. Ruiz stated in his deposition that UPM used HBS in the course of its bypass operations in Haiti, but the simple fact is that Mr. Ruiz was mistaken. His job at UPM did not include SIM management and, in any event, his memory was (and likely remains) impaired due to certain medications he has been prescribed. He is not competent to testify as to how UPM configured its SIM management software and UPM will object to the admission of any testimony from him on this point.

Second, assuming that Digicel-Haiti can present sufficient foundational evidence that UPM used HBS, any evidence of UPM's "intent" must be focused on the relevant question, which is whether UPM used that software with the intent of causing Digicel-Haiti to believe that calls being made with UPM's SIMs were actually being made by an individual subscriber. Evidence that UPM used HBS with that intent is relevant. Evidence that UPM did other things of which Digicel-Haiti disapproves is not relevant to why UPM configured its software in a particular way. How do UPM's procedures for shipping Gateways show anything about why UPM configured its SIM management software as it did? How does UPM's acquisition of SIM cards "on the street" in Haiti show anything about UPM's intent in configuring software? The only fair answer is: shipping procedures, SIM card acquisitions, and other activities are not probative of the reasons for UPM's software configuration decisions. Digicel-Haiti wants to introduce evidence about those things, not because they are relevant, but because they will confuse, mislead, and prejudice the jury. Those matters are therefore inadmissible under Rules 401, 402, and 403.

For example, consider UPM's labeling its gateway devices as DVRs to ease

---

someone sitting, Ernestine-like, manually assigning SIMs to Haiti-bound calls. *See, e.g.,* https://tvseriesfinale.com/wp-content/uploads/2016/04/w1200_h678_fmax.jpg. But the fact that UPM used SIM management software does not answer the question of what that software was configured to do.

their way through Haitian customs. And assume for purposes of argument that UPM's motivation for doing that was the worst imaginable. Even on that assumption, that activity has nothing to do with "actively concealing" anything from Digicel-Haiti. The purpose of a gateway is to make calls, and once UPM makes a call using a gateway, the existence of that gateway is not concealed from Digicel-Haiti; it is revealed. And while UPM surely wanted to use its gateways to engage in in-country bypass, the Court has dismissed all of Digicel-Haiti's claims premised on the idea that merely engaging in in-country bypass constitutes fraud. As a result, evidence of UPM mislabeling gateways, even for the worst imaginable reason, is not relevant to UPM's motivation for how it configured its SIM management software.

Third, permitting Digicel-Haiti to introduce evidence showing other (allegedly) bad things that UPM may have done would be improper character evidence under Rule 404. The real point of introducing such evidence would be to impugn UPM's and Mr. Tran's character, permitting arguments that boil down to, "Look, UPM and Mr. Tran did this other bad thing, for this other bad reason, so you can infer that UPM and Mr. Tran also had a bad reason for configuring its SIM management software the way it did." This kind of illegitimate argument is precisely what Rule 404's ban on character evidence is intended to prevent.

Digicel-Haiti argues (in connection with motion *in limine* 5, but the point applies across the board) that UPM may not rely on Rule 404 because UPM – a corporate entity – is not entitled to exclude propensity or character evidence. *See* ECF #344 at 11. Even if it is true in the abstract that a corporate entity may not invoke Rule 404, that rule still applies in this case.[17]

---

[17] As the Court acknowledged in *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, "it is an open question whether 'person' as used in Rule 404 includes non-natural entities." No. 3:12-cv-1058-SI, 2019 U.S. Dist. LEXIS 66634, *62 (D. Or. Apr. 17, 2019). That the

First, Rule 404 is, at a high level, simply a codification, for a specific category of evidence, of the case-by-case judgment called for by Rule 403: the requirement that evidence with limited probative value be excluded if that limited value is outweighed by the tendency of the evidence to confuse, mislead or prejudice the jury. Character evidence is highly likely to fail this balancing test whether or not the party against whom it is wielded is a natural person or a corporation.[18] This is because character evidence is inherently indirect: it is not evidence that someone *did* [x], but rather evidence that because they did *[y]*, maybe it is *more likely* that they did [x]. The further away [y] (the character evidence) is from [x] (the actual point to be proven), and the more unsavory or unattractive [y] might be, the more likely it is that it should be excluded under Rule 403. So, even if a corporate entity cannot literally invoke Rule 404, the Court can and should exclude character evidence that fails the balancing test under Rule 403. The matters addressed by UPM's motions *in limine* plainly fail the Rule 403 test.[19]

But second, even if Rule 404 would not apply in a suit between two corporations, here Digicel-Haiti has insisted on including Mr. Tran as an individual defendant, arguing that his personal knowledge of and involvement in the challenged conduct justify subjecting him to personal liability. *See* ECF #294 at 35-36. Mr. Tran, an individual, can surely invoke Rule 404 to ban the introduction of character evidence against *him.* But if the reason he is still a defendant is his inseparable involvement with the acts of UPM, it beggars belief to think that the jury could somehow view evidence, the very point

---

Court was persuaded that the corporate entities in that case could not invoke Rule 404 does not compel a parallel conclusion here. *See infra.*

[18] *See, e.g.,* David P. Leonard, *In Defense of the Character Evidence Prohibition: Foundations of the Rule Against Trial by Character,* 73 Ind. L.J. 1161, 1184-88 & n.112 (1998).

[19] UPM notes that while it relied on Rule 404 as one ground among many for some of its motions *in limine,* in each case, it *also* relied on Rule 403 (and other rules).

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

of which is to attack **UPM's** character, as inapplicable to **Mr. Tran's** character. It is impossible to imagine a jury instruction that could reasonably protect against this confusion and prejudice.

If Digicel-Haiti had treated this as a case of one corporation against another, its dismissive view of Rule 404 might have some merit, and all of these issues could be resolved simply by reference to Rules 401, 402, and 403. But having insisted on making this case personal to Mr. Tran, Digicel-Haiti cannot fairly be allowed to sneak in character evidence about him, under the pious claim that it really only relates to UPM.[20]

For these reasons, the Court should issue an order *in limine* directing that the evidence and argument at trial – including evidence of UPM's and Mr. Tran's "intent" – be focused on the issue of active concealment by means of HBS. "Intent" evidence focused on why UPM configured its SIM management software the way it did is admissible (if not otherwise objectionable). "Intent" evidence based on other unrelated UPM activities – such as shipping, acquisition of SIMs, top-ups and RLYH plans, or wire transfers – is not.

### D. Legality of UPM's Acquisition of SIMs, Top-Ups, and RLYH Plans (Motion *in Limine* 4)

The parties' disagreement on this point seems fundamental. In its order on dispositive motions, the Court observed that the only issue in dispute "is whether UPM engaged in fraud by active concealment by using HBS." ECF #294 at 38-39. Yet Digicel-Haiti seems intent on trying to prove that UPM's presence in and activities in Haiti were

---

[20] UPM notes that the case on which Digicel-Haiti relies not only did not involve any individual defendants; it arose under a statute that specifically "does not allow for individual liability." *ICTSI Or., Inc. v. Int'l Longshore &Warehouse Union,* Case No. 3:12-cv-1058-SI, 2019 U.S. Dist. LEXIS 66634, at *70 (D. Or. Apr. 17, 2019). That case, therefore, did not call for assessment of a situation such as exists here, where a plaintiff *insisted* on including both individual and corporate defendants, and then sought to end-run Rule 404, as applicable to the natural-person-defendant, by claiming to focus only on the corporate defendant.

Page 21 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

illegal, serving some "overall" fraudulent purpose. In Digicel-Haiti's words, "the 'legitimacy' of [UPM's] conduct is a fundamental issue in this dispute." *See* ECF #344 at 10. As to this particular motion *in limine,* it argues that UPM's acquisition of SIMs and top-ups supposedly "formed part of its overall fraudulent scheme" and "knowingly departed from industry practices and norms." *Id.*

None of that has anything remotely to do with the claim that UPM engaged in active concealment by using HBS. Consider a hypothetical: Suppose UPM never bought any SIM cards from anyone, but instead received them as an unexpected bequest from an eccentric SIM card collector. Now suppose that UPM took those SIM cards and used a particularly diabolical form of HBS, with the stated intent to deceive and defraud Digicel-Haiti, and completed millions of bypass calls with them that only got through due to that diabolical software. Would UPM's purely innocent acquisition of SIM cards excuse its active concealment? No. Now reverse the hypothetical. Suppose UPM acquired its SIM cards in some grossly illegal way involving violence and corruption, such that everyone involved would go to prison for life if the conduct were ever uncovered. But then suppose that UPM put those SIM cards into its SIM servers and blasted calls out, one after another, with no effort whatsoever to hide that the SIMs were being used for bypass. Would its hypothetical corrupt and illegal acquisition of the SIM cards mean that it had actively concealed what it was doing with them? Again, no. These hypotheticals show that evidence about how UPM acquired SIM cards (or top-ups or RLYH plans) is irrelevant and inadmissible under Rules 401 and 402.

Moreover, by seeking to introduce evidence about the claimed illegality or illegitimacy of how UPM acquired its SIM cards or purchased its top-ups, Digicel-Haiti's clear goal is to poison the jury against UPM – "Look at the illegal, bad stuff that the defendants did! What bad people they are!" Admitting this irrelevant (or at best barely relevant) material will inevitably confuse, mislead and prejudice the jury, which means it

Page 22 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

may not be admitted under Rule 403. Speaking pragmatically, this case will be complicated enough for the jury in considering the claim that UPM engaged in active concealment using HBS; adding evidence of extraneous and at best marginally relevant matters is an open invitation to confusion and prejudice. Moreover, because the inevitable effect (if not the obvious purpose) of Digicel-Haiti trying to get this evidence in is precisely to paint Mr. Tran and UPM as lawbreakers, it is also inadmissible character evidence under Rule 404.[21]

This evidence is also not saved by appealing to Digicel-Haiti's punitive damages claim. *See* ECF #344 at 10-11. UPM has explained why that claim should be dismissed, but even if it stays in the case, to get punitive damages Digicel-Haiti has to show that UPM's ***fraudulent conduct*** was sufficiently reprehensible to warrant such damages. Evidence showing that UPM or Mr. Tran are bad actors, in general, who deserve punishment for those unrelated bad acts, is inadmissible. Permitting evidence of (allegedly) bad acts unrelated to the claimed fraudulent conduct is a surefire way to mislead, confuse and inflame the jury. As with references to UPM's conduct as "fraudulent" or "illegal" discussed above, the fact that Digicel-Haiti raises punitive damages as a justification for introducing claims that UPM acquired SIMs and top-ups illegally, is probably the best possible argument for excluding evidence bearing on such claims.

### E.    Wire Transfers and Shipping Procedures (Motion *in Limine* 5)

Evidence relating to UPM's wire transfers and shipping procedures should be excluded for the same reasons just discussed: these matters are at best marginally relevant to UPM's claimed use of HBS, and thus are inadmissible under Rules 401 and 402; are highly likely to confuse, mislead, and prejudice the jury, and so are inadmissible under Rule 403; and constitute inadmissible character evidence under Rule 404.

---

[21] As noted above, having made its bed – insisting on Mr. Tran's presence in the case as an individual defendant – Digicel-Haiti must now lie in it, and be barred from introducing character evidence that would inevitably be considered against Mr. Tran.

Page 23 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

F.    **UPM's Activities Outside of Haiti and Outside of the Relevant Time Period (Motion *in Limine* 6).**

Digicel-Haiti claims that evidence of what UPM may have done in countries other than Haiti, and during time periods other than when it was operating in Haiti, should be admitted because those other UPM activities "formed part of its overall fraudulent scheme to avoid higher international call rates for in-country bypass calls and are directly relevant to Defendants' fraudulent *intent.*" ECF #344 at 12. This is an insufficient basis to permit these materials to be included at trial.

First, as explained above, given the focus of the case on the use of HBS, evidence of UPM's intent must similarly be focused on why UPM configured its SIM management software as it did. Evidence of extraneous activities at other times and in other countries is not relevant and is highly likely to confuse, mislead and prejudice the jury.

Second, and perhaps more fundamentally, this case is not about an "overall fraudulent scheme." It is about whether UPM committed fraud by active concealment by using HBS. Digicel-Haiti originally alleged that every bypass call was a fraud, based on claims that every bypass call involved affirmative misrepresentations or omissions. The Court dismissed those claims, because Digicel-Haiti had no evidence to support them. ECF #294 at 27-30. That means that bypass, *per se*, is not fraudulent, which means that there cannot be any "overall fraudulent scheme." Buying SIM cards from street vendors was not fraudulent. Topping up those cards via third-party services was not fraudulent. Placing Gateways in Haiti and connecting them to the Internet was not fraudulent. Using those Gateways with the topped-up SIM cards to complete bypass calls was not fraudulent. And whether and to what extent UPM did those (non-fraudulent) things in other countries is surely not admissible under Rules 401, 402, and 403.[22]

---

[22] Digicel-Haiti is also wrong that such information could have any bearing on the issue of

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

The only existing fraud claim is based on whether UPM configured its SIM management software in a way that was designed and intended to lead Digicel-Haiti to believe that UPM's bypass calls were actually being made by an individual subscriber. The Court should rule *in limine* that the case will be focused on UPM's claimed use of HBS, and that Digicel-Haiti is barred from any appeals to an "overall fraudulent scheme."

### G.    Roaming Agreements (Motion *in Limine* 7)

Digicel-Haiti has indicated that it does not intend to try to introduce any of its roaming agreements or to discuss their terms in detail, but instead to present testimony about "what roaming agreements are and how they work to facilitate international calling." ECF #344 at 13. As phrased, UPM has no objection to this type of general discussion, so this particular motion *in limine* appears to be moot. UPM reserves the right to object to any particular proffered testimony at trial on this topic on any appropriate ground, including relevance (Rules 401 and 402) or hearsay (Rule 802).

### H.    Use of the Term "Bypass" In Connection With RLYH (Motion *in Limine* 8)

UPM seeks an order *in limine* requiring that UPM's activities regarding RLYH not be characterized as "bypass." ECF #324 at 25-26. Digicel-Haiti opposes this motion, claiming that UPM's "fraudulent scheme" involved both "traditional bypass" and "RLYH bypass," ECF #344 at 13, and purports to quote the Court's ruling on dispositive motions at 3-4 as using the term "RLYH bypass." *Id.* Aside from the fact that this case does not involve any grand "fraudulent scheme," the phrase Digicel-Haiti puts in the Court's mouth – "RLYH bypass" – does not appear in the Court's ruling. Digicel-Haiti's

---

punitive damages. ECF #344 at 12. As explained in UPM's renewed motion for summary judgment, punitive damages are not available in this case at all, but if they are, they must be based on harm that UPM caused to Digicel-Haiti, not on what UPM supposedly did to random non-Oregon, overseas entities. Defendants UPM Technology, Inc.'s Renewed Motion For Summary Judgment (ECF #335) at 13-18.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

sloppy and inaccurate references to the Court's order constitute a strong argument for granting UPM's motion on this point.

More fundamentally, as UPM has explained, its activities involving RLYH did not "bypass" anything. All RLYH calls were routed through Digicel-Haiti's international gateway switch and Digicel-Haiti received its preferred $0.23 per minute rate for those calls. Its own complaint refers to "bypass" as involving routing a call around its international gateway switch. *See* Third Amended Complaint (ECF #200) at ¶ 41. Indeed, as UPM noted in opposition to one of Digicel-Haiti's summary judgment motions, even the definition of "bypass" adopted by the Haitian regulators would not apply to RLYH.[23] Whatever Digicel-Haiti's concern about RLYH might be, "bypass" is not it.

Finally, while UPM expects to prevail on both Count I (RLYH) and Count II (In-Country Bypass), UPM has repeatedly emphasized the legal and factual distinctiveness of those two different calling arrangements. For this reason, one can readily envision a scenario in which the jury finds for Digicel-Haiti with regard to in-country bypass, while finding for UPM with regard to RLYH. Permitting Digicel-Haiti (or its witnesses) to muddy the waters as between the two counts, and to refer to RLYH as "bypass," would unfairly prejudice UPM's right to have the two counts, with the two different underlying fact patterns and applicable law, decided carefully and separately by the jury.[24] As a result, the Court should rule *in limine* that Digicel-Haiti and its witnesses must not confuse those issues by calling UPM's RLYH activities "bypass."

## I.    Punitive Damages (Motion *in Limine* 9)

UPM agrees with Digicel-Haiti that resolution of this motion *in limine* should await the Court's ruling on UPM's renewed motion for summary judgment.

---

[23] *See* Defendants' Opposition To Digicel-Haiti's Motion For Summary Judgment On Defendant UPM Technology Inc.'s Counterclaims   (ECF #279) at 20 & n.63.

[24] *Cf.* ECF #274 at 38-39 & n.22.

## III.    CONCLUSION

UPM respectfully requests the Court to grant its requested motions *in limine* for the reasons set out in its earlier filing and herein.

Dated: March 14, 2022.

TOMASI SALYER MARTIN
By: /s/ Eleanor A. DuBay
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP
By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 27 – DEFENDANTS' REPLY
IN SUPPORT OF MOTIONS IN LIMINE
UPM-L1\00628775.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2022, I served the foregoing **MOTIONS *IN LIMINE*** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com

Dated: March 14, 2022.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
   Kathryn P. Salyer, OSB #883017
   Eleanor A. DuBay, OSB #073755
   Blake Van Zile, OSB #184672
   ksalyer@tomasilegal.com
   edubay@tomasilegal.com
   bvanzile@tomasilegal.com
   Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
   Christopher W. Savage, D.C. Bar #362657
   chrissavage@dwt.com
   Telephone: (202) 973-4200
   *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

Page 1 – CERTIFICATE OF SERVICE
UPM-L1\00626598.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236