**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Salyer Martin
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

    Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**, <br><br>     Plaintiff & Counterclaim-Defendant, <br><br> v. <br><br> **UPM TECHNOLOGY, INC**., *et al.,* <br><br>     Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI <br><br> **DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT** <br><br> **Oral Argument Requested** <br> **Hearing: March 29, 2022 at 10:00 AM** |

Page 1 – DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION FOR SUMMARY JUDGMENT
UPM-L1\00630001.000

## I.      INTRODUCTION

Digicel-Haiti's case has fallen apart. Seven years ago, Digicel-Haiti claimed that UPM was running a vast international scheme in which every call was a separate act of fraud, a lie, a false assertion that the call was really local. And, Digicel-Haiti claimed, to implement and hide that international web of lies, UPM was illegally obtaining SIM cards and top-ups, illegally cloning SIM cards, and covering up the numbers of the phones making the calls by actively substituting false Haitian phone numbers.

None of those claims was true.

Discovery confirmed that UPM was not asserting anything by making calls. It also confirmed that UPM was not cloning SIM cards. It confirmed that Digicel-Haiti itself, not UPM, determined what phone number was associated with a SIM card. It confirmed that Digicel-Haiti sold SIM cards to third-party distributors who sold them on the streets, where UPM's agents could readily (and lawfully) buy them. And it confirmed that UPM bought top-ups from third parties, again not culpable conduct. Because these claims by Digicel-Haiti were false – entirely unsupported by admissible evidence – they were all dismissed. ECF #294.

Left standing in the rubble of Digicel-Haiti's case was one narrow claim: that UPM had used human behavior software ("HBS") to actively conceal the fact that its calls were not being made by individual subscribers. If Digicel-Haiti had the right to cut off SIM cards being used for bypass, *and* if UPM used HBS to hide the bypass from Digicel-Haiti, that might constitute fraud by active concealment. ECF #294 at 30-31. The record did not rule out the possibility that this had happened, so the Court did not dismiss the claim of active-concealment-via-HBS.

Given the Court's detailed review of the evidence and careful parsing of both Digicel-Haiti's claims and UPM's arguments against them, one would have expected Digicel-Haiti to parse its evidence with similar care. This would have required Digicel-Haiti to refocus its case on HBS, in accordance with the Trial Management Order (ECF #191), to present evidence that would establish: (a) that UPM *actually* used HBS; (b) that the HBS *worked* to make Digicel-Haiti complete calls it otherwise would have blocked; and (c) that Digicel-Haiti *was harmed* by

Page 2 – DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION FOR SUMMARY JUDGMENT
UPM-L1\00630001.000

completing those calls. This is what Digicel-Haiti's case ***must be*** to satisfy the elements of an Oregon fraud claim. It has to show that UPM misrepresented material facts via active concealment; that it reasonably relied on those misrepresentations; and that it was harmed as a result.[1]

UPM searched through Digicel-Haiti's witness statements,[2] its expert reports,[3] its proposed trial exhibits,[4] and its trial memorandum,[5] looking for admissible evidence that would support a finding that those things occurred. But there was nothing there.[6]

Yes, there was some indication that UPM used software that a witness called "HBS." But there was no evidence that UPM's software was ***actually configured*** to emulate human calling patterns, and no evidence that UPM's software ever ***actually worked*** to conceal anything. There was no evidence that Digicel-Haiti completed even one single call as a result of UPM's software that it would not have completed anyway. And there was no evidence of ***how many*** calls were supposedly completed as a direct result of UPM's purported use of HBS, which meant that there was no evidence that the amount UPM had paid in confiscated top-ups was insufficient to compensate Digicel-Haiti in the full amount to which it claims to have been entitled, so there was no evidence that UPM's conduct damaged Digicel-Haiti.

In other words, Digicel-Haiti had (and has) no case.

Because Digicel-Haiti's filings contained no evidence showing it could prove the elements of fraud-by-active-concealment, UPM renewed its summary judgment motion, as it

---

[1] *Strawn v. Farmers Ins. Co.,* 350 Or. 336, 351-52, 258 P.3d 1199 (2011).

[2] ECF #303.

[3] ECF #304.

[4] ECF #301.

[5] ECF #299.

[6] UPM looked for admissible evidence because if Digicel-Haiti had none, its case should be dismissed on summary judgment. *See Gonsalez v. Amsberry*, No. 2:18-cry-01839-AC, 2020 U.S. Dist. LEXIS 167099, at *17 (D. Or. Sep. 12, 2020), citing *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982) and Fed. R. Civ. P. 56(c).

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

understood the Court to have invited it to do.[7] And once UPM moved for summary judgment, Digicel-Haiti became obliged to present *admissible evidence* showing that there was a material factual dispute.[8] Stated differently, Digicel-Haiti "must come forward with specific facts showing that there is a *genuine issue for trial*."[9]

UPM awaited Digicel-Haiti's opposition pleading with interest. After all, Digicel-Haiti had designated more than 300 potential trial exhibits running to thousands of pages, and the transcripts of the depositions in this matter run to thousands more. UPM did not *think* it had missed anything material, but perhaps Digicel-Haiti had some evidence that UPM had, indeed, missed.

But UPM hadn't missed anything.

Because there isn't anything.

UPM addresses Digicel-Haiti's specific arguments below. But at a high level, Digicel-Haiti continues to rely on arm-waving about how *everything* UPM did somehow was a form of active concealment,[10] along with some whining that it should not be forced to "preview" its case prior to trial.[11] Its first response – its arm-waving about UPM running a "sophisticated international enterprise" to "conceal" a range of things[12] – boils down to an effort to sidestep the Court's ruling and cling to its broad, scattershot fraud claim. The second response – that it should

---

[7] *See* ECF #294 at 32-33 (resolution of UPM's argument that its use of Roam Like You're Home ("RLYH") was not fraud "may have to wait until … the final pretrial conference"); *id.* at 34 (resolution of UPM's argument that Digicel-Haiti was not damaged because of how much UPM has already paid "may have to wait until … the final pretrial conference"); *id.* at 34-35 (Court "invites UPM's to raise the issue" of lack of Digicel-Haiti evidence supporting its claims for non-monetary damages "at the final pretrial conference").

[8] *See* note 6, *supra.*

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986) (citations and quotations omitted).

[10] [Digicel-Haiti]'s Response in Opposition to [UPM]'s Renewed Motion for Summary Judgment (ECF #363) ("Opposition") at 2, 6-7.

[11] *Id.* at 7; *see also* Fed. R. Civ. P. 56(e)

[12] *Id.* at 2.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

not be forced to "preview" its case – ignores not only that "previewing" is the entire point of discovery in federal court, but also the specific obligations imposed on parties in *this* Court by the Trial Management Order.[13] Proceedings here, as opposed to Oregon state court, are not "trials by ambush." And the specific obligation under Rule 56(c) of a party opposing summary judgment to present admissible evidence of a genuine dispute of material fact necessarily "previews" that party's case. Digicel-Haiti wants to avoid "previewing" its case because it has none.

In short, the Court should grant UPM's Renewed Motion and dismiss Digicel-Haiti's case because there are no genuine, material factual issues for trial.

## II.    DIGICEL-HAITI HAS NO EVIDENCE THAT IT WAS DAMAGED BY UPM'S ALLEGEDLY TORTIOUS CONDUCT

Digicel-Haiti must prove that it suffered damages as a result of UPM's tortious conduct to prevail on its fraud claim.[14] Under Fed. R. Civ. P. 56, the nonmoving party asserting that a fact "is genuinely disputed *must* support the assertion by: (A) *citing to particular parts of materials in the record*…; or (B) showing that the materials cited do *not* establish the absence …of a genuine dispute." Fed. R. Civ. P. 56(c)(1) (emphasis added);[15] *see also* LR 56(a) ("A party's factual positions must be supported by citations, by page and line as appropriate, to the particular parts of materials in the record.")

But Digicel-Haiti has failed to identify any admissible evidence ("particular parts of materials in the record") that it was genuinely harmed in any way by UPM's alleged conduct,

---

[13] ECF # 191.

[14] *Strawn, supra,* 350 Or. at 352.

[15] The "party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." Fed. R. Civ. P. 56 committee note, *Subdivision (c)* (2010).

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

as required by the rule.[16] UPM's Renewed Motion[17] pointed out that Digicel-Haiti's claim that it had been damaged failed in at least the following respects:

- Digicel-Haiti has no evidence that it would have charged more for bypass or RLYH calls, had it known they were not being made by individual subscribers.[18] Without such evidence, it cannot show that it was damaged by completing those calls.

- Digicel-Haiti has no evidence that the bypass calls it completed would instead have been completed as normal incoming international calls (and charged a higher rate) if they had not been sent to Haiti via the Internet.[19] Without such evidence, Digicel-Haiti cannot show that it would have received anything more than it did for the calls it completed.

- Digicel-Haiti has no evidence – not even a reasonable estimate – of how many UPM calls (whether bypass or RLYH) it completed.[20] Without such evidence, it cannot show that UPM in particular caused it any harm.

- Digicel-Haiti has no evidence that any UPM concealment (via HBS or otherwise) caused Digicel-Haiti to complete more calls (whether bypass or RLYH) than it otherwise would have.[21] Without such evidence, it cannot show that it was harmed by any UPM conduct alleged to be tortious.

- Digicel-Haiti has no evidence that the money UPM paid for top-ups, which Digicel-Haiti confiscated, did not sufficiently cover (if not exceed) the amounts to which it claims to be entitled for completed calls (whether bypass or RLYH).[22] Without such evidence, it cannot show that UPM did not fully pay for the services it used.

- Digicel-Haiti has no evidence that it was damaged by UPM's RLYH resale, given that it receives both its local rate and the $0.23 per minute international rate for RLYH calls.[23] Without such evidence, it cannot show that UPM's RLYH resale caused it any harm.

---

[16] As far as UPM can tell, Digicel-Haiti's Opposition makes exactly *one* citation to the factual record. *See* Opposition, p. 7 ("Digicel Haiti had clear terms and conditions that prohibited commercial use of the RLYH program [ECF 274, Ex. A]."). This is a clear failure by Digicel-Haiti to meet its mandatory burden under Fed. R. Civ. P. 56(c) and LR 56(a).

[17] [UPM]'s Renewed Motion for Summary Judgment (ECF #335) ("Renewed Motion").

[18] *Id.* at 6.

[19] *Id.*

[20] *Id.* at 6-7.

[21] *Id.* at 7-10.

[22] *Id.* at 7.

[23] *Id.* at 10.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Whether Digicel-Haiti was actually harmed as a result of UPM's allegedly tortious conduct is a key, required element of its fraud claim, and is thus a material fact. Digicel-Haiti has presented no evidence that it was, in fact, harmed – which means that there is no genuine dispute as to that material fact and summary judgment against its fraud claim is proper.[24]

## A. The Issue Is *Whether* UPM Harmed Digicel-Haiti, Not Quantifying Any Harm.

Digicel-Haiti says that it is not required to prove damages with "exactness and precision,"[25] but the point is not that Digicel-Haiti cannot prove some precise amount of (supposed) damages. The point is that it cannot prove that UPM's allegedly tortious conduct damaged Digicel-Haiti *at all*. Digicel-Haiti states that it is entitled to "such damages as naturally and proximately *resulted from* the fraud."[26] True. But this this is exactly where Digicel-Haiti's case fails: it has no evidence that it, in fact, experienced any harm that *directly resulted from* anything UPM did.

If Digicel-Haiti actually had a damages case, it would have been a simple matter to point to admissible evidence establishing harm caused by what UPM did. Instead, Digicel-Haiti's response on its causation problem is:

> Digicel Haiti has presented abundant evidence of UPM's fraud and the intent behind UPM's business operations. UPM has essentially conceded that it was working to "build a better mouse trap" to take advantage of the high profit margins available in developing international telecommunications markets. But this better mousetrap, designed to reap high profit margins, was at Digicel Haiti's expense and resulted in lost revenue to Digicel Haiti. UPM has also conceded that its business model was based on Bypass—the very activity that Digicel now complains of in this suit.[27]

---

[24] Fed. R. Civ. P. 56(a) ("The court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law") (emphasis added); *see also* Fed. R. Civ. P. 56(e)-(f).

[25] Opposition at 4 (citing *Blanchard v. Makinster,* 137 Or. 58, 66, 290 P. 1098, 1098 (1931)).

[26] *Id*. (emphasis added, citations omitted).

[27] *Id*.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

With due respect, this is simply bobbing and weaving. Digicel-Haiti cites no "abundant evidence" of anything, much less that it was harmed in any way by UPM's alleged conduct.[28] It cites nothing showing it would have charged a higher rate for UPM's calls had it known they were bypass calls. It cites nothing showing that the calls would have gone through Digicel-Haiti's international gateway had UPM not sent them via the Internet. It cites nothing showing that any calls got through by virtue of UPM concealing anything from Digicel-Haiti – and certainly nothing showing that any calls got through by virtue of UPM using HBS. And Digicel-Haiti cites nothing showing that it "lost revenue" or that what UPM paid was not enough to fully compensate it. Digicel-Haiti, in short, has failed to identify any evidence that could demonstrate that it incurred any damages by virtue of anything UPM did.

Digicel-Haiti also ignores the Court's ruling on dispositive motions (ECF #294). If that ruling means anything, it means that not all bypass calls are fraudulent. Instead, only calls that got through *by virtue of active concealment* are even potentially fraudulent. (ECF #294 at 31). So, for Digicel-Haiti to survive summary judgment, it has to have some admissible evidence that it actually completed calls that would not have been completed but for UPM's claimed concealment. Digicel-Haiti's response, however, does not focus on concealment. To the extent that its response is coherent at all, it boils down to this: "UPM engaged in bypass. Bypass is fraud, which is why UPM was sneaky about it. Bypass costs us money. Therefore we are damaged by UPM's fraud." This argument literally and completely ignores the Court's ruling, and compels the conclusion that Digicel-Haiti's case should be dismissed.[29]

On the specific issue of HBS, UPM noted that the fact that it may have used

---

[28] In its entire Opposition, Digicel-Haiti cites exactly one piece of potential "evidence." *See* note 16, *supra.*

[29] Understandably not wanting to blatantly and openly disrespect the Court, Digicel-Haiti at least *mentions* concealment in a few places. *See* Opposition at 4, 6-7. But it seems mainly concerned with denying that the Court said what it said, *viz.*, that the only claim remaining in the case was that UPM engaged in active concealment by means of using HBS. *Compare id.* at 6-7 and n.3 *with* ECF #294 at 27-31.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

software that someone called "HBS" does not, by and of itself, establish that UPM's purported use of that software harmed Digicel-Haiti.[30] Digicel-Haiti notes that UPM denies that it used HBS, and that under the Court's ruling, *if UPM did not use HBS*, the case must be dismissed.[31] True. But the dispute about whether or not UPM used something called "HBS" is not the point. Whether UPM used "HBS" or not, Digicel-Haiti has no evidence that UPM's software – whatever it was – was configured to obscure the fact that its calls were not being made by individual subscribers, and no evidence that Digicel-Haiti was misled by that software. That is, it has no evidence that UPM's software caused Digicel-Haiti any damages. And because it must prove that UPM's conduct caused harm, this alone means that Digicel-Haiti's case fails as a matter of law.

Digicel-Haiti says that "this is not a matter for summary judgment" and that "how UPM used HBS, how well it worked, how it worked with the other components of Defendant's fraud against Digicel-Haiti and whether it all constitutes active concealment are again all issues of fact for a jury."[32] This could be (partially) true *if Digicel-Haiti had any evidence of how UPM's software worked, or that UPM's software "worked" at all*. But it has no such evidence. As part of its fraud case, Digicel-Haiti must prove causation – *i.e.*, that something UPM did caused Digicel-Haiti harm. If Digicel-Haiti has no evidence that would establish a key element of its case, this is a quintessential matter for summary judgment.

Here the missing element is causation. When faced with UPM's summary judgment motion attacking the claim that UPM's conduct *actually caused* any harm, Digicel-Haiti became obliged to point to admissible evidence in its pretrial submissions that would support a conclusion that it was harmed by UPM's software. This is certainly an "issue of fact," but before it can become an issue of fact *for the jury,* Digicel-Haiti has to show that it has admissible evidence for the jury to consider. "A party asserting that a fact … is genuinely disputed must support the assertion with

---

[30] Renewed Motion at 7-8.

[31] Opposition at 6.

[32] *Id*.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

admissible evidence."[33] All Digicel-Haiti needed to do was to point to admissible evidence that shows (at least when considered in its favor) that UPM's conduct indeed caused harm as alleged. But it cited no such evidence, because it has none. This means its case must be dismissed.

A non-technical analogy may clarify the point Digicel-Haiti is dodging. Suppose a delivery service has drivers with assigned routes, and some wrongdoer wants to harm the business by keeping the drivers from delivering things on time. To do this, the wrongdoer removes all the street signs along the drivers' routes. Removing the signs is "active concealment." But suppose that no deliveries were delayed, because the drivers never looked at the signs anyway (because they had their routes memorized or used GPS maps on their phones). In that case, the absence of the signs would not have had any impact on deliveries, and – even though "active concealment" would have occurred – a fraud claim would still fail because the concealment did not cause any harm. And if the delivery service had no admissible evidence that its drivers were affected, and thus no evidence that the delivery service was harmed, its fraud case would be dismissed on summary judgment. So here: Digicel-Haiti has no evidence that it was harmed by any UPM "concealment," whether via HBS or any other purported "components of UPM's fraud."[34]

### B. Mr. Castel's Proffered Testimony Does Not Save Digicel-Haiti's Case.

In its Renewed Motion, UPM pointed out that nothing in the testimony of Digicel-Haiti's purported "damages" "expert," Mr. Castel, addressed the question of causation (*i.e.,* whether Digicel-Haiti was damaged as a result of UPM's claimed active concealment).[35] The numerous and fatal flaws in Mr. Castel's presentation are laid out fully in UPM's Motions *In Limine* and its reply in support of those motions, and UPM respectfully refers the court to those

---

[33] *Gonsalez v. Amsberry,* No. 2:18-cry-01839-AC, 2020 U.S. Dist. LEXIS 167099, at *17 (D. Or. Sep. 12, 2020), *citing Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278, 1284 (9th Cir. 1982) and Fed. R. Civ. P. 56(c).

[34] Opposition at 6.

[35] Renewed Motion at 6-7.

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

filings.[36] Here, UPM simply notes that Digicel-Haiti's formulation of the issue, yet again, ignores the key issue of *causation*. Digicel-Haiti says that, while "the fact of damages must be clearly shown, the amount need not be proved … to the same degree of certainty."[37] This misses the point. What must be "clearly shown" (and specifically cited to now, for the purposes of surviving summary judgment) is that Digicel-Haiti actually suffered damages *caused by UPM's allegedly tortious conduct*.[38] Digicel-Haiti has exactly zero evidence that it was harmed by any UPM concealment, and nothing in Mr. Castel's testimony addresses that point. Proving that it was, in fact, damaged *by UPM's allegedly tortious conduct* is an essential element of Digicel-Haiti's fraud claim, and nothing in Mr. Castel's testimony saves that claim.

## C. Proving Damages Requires Evidence Both of How Many Minutes UPM Delivered And of How Much UPM Paid, Such That Digicel-Haiti Actually Lost Revenue.

Digicel-Haiti's core damages theory is that it lost revenue due to bypass.[39] It follows that if UPM paid enough for the calls it completed, Digicel-Haiti was not damaged. Proving that UPM did not pay enough is thus an essential element of Digicel-Haiti's affirmative damages case.

UPM paid by buying top-ups. ECF #294 at 2. If these payments amount to more than what Digicel-Haiti would have received had the calls flowed through its international gateway, then any claim that it "lost revenue" is simply false. It follows that for Digicel-Haiti to prove that it was damaged *at all* (not prove "how much" it was damaged), it must present evidence

---

[36] [UPM]'s Motions *in Limine* (ECF #324) ("UPM Motions *in Limine*") at 4-10; [UPM]'s Reply In Support of Motions *in Limine* (ECF #357) ("UPM *in Limine* Reply") at 4-11. Very briefly, Mr. Castel is not qualified to express an expert opinion about damages; his calculations are based on pure speculation; his damages "model" is directly contrary to an active concealment claim; and his methodology is unscientific and unreliable.

[37] Opposition at 5.

[38] *Strawn, supra,* 350 Or. at 352.

[39] Opposition at 4 (UPM's bypass activity "was at Digicel Haiti's expense and resulted in lost revenue to Digicel Haiti").

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

that permits a comparison of how much money it received from UPM with how many minutes UPM completed. Neither of these figures needs to be proven with surgical, mathematical precision, but without reliable, admissible evidence of each of them, Digicel-Haiti has nothing but arm-waving *on the essential element of causation of damages*. Digicel-Haiti has no such evidence, which means its case cannot survive summary judgment.

Initially, Digicel-Haiti wants nothing to do with UPM's detailed, contemporaneous business records showing how much traffic UPM completed and how much it paid.[40] There is no mystery as to why: those records show that UPM paid more than the $0.23 per minute to which Digicel-Haiti claims to be entitled. Fair enough. But by rejecting UPM's evidence, Digicel-Haiti necessarily stakes its entire case on its ability, using evidence of its own, to prove that UPM's allegedly tortious conduct resulted in "lost revenues."

The problem with this strategy is that Digicel-Haiti has no such evidence – neither actual, substantiated figures nor reasonable estimates based on circumstantial evidence. Digicel-Haiti has long noted that it has no idea which calls on its network came from UPM. More recently, it has been forced to admit that even if its records might have provided a way to figure that out, it lost all the records from the relevant time period. In these circumstances, an objective observer would be tempted to comment, "Oh well. It looks like you have no viable lawsuit." A federal jury trial is not an opportunity for clever plaintiffs to wax eloquent about how they were harmed by the defendant without having some actual, admissible evidence that they were harmed by the defendant. The purpose of summary judgment is precisely to keep such fantasy-based claims from being tried at all. And at this point, it is entirely clear that Digicel-Haiti's claim that it was harmed by UPM's conduct is, indeed, based on fantasy.

Digicel-Haiti's complete failure to proffer any admissible evidence that UPM's activity led to lost Digicel-Haiti revenue is a fully sufficient reason to dismiss Digicel-Haiti's case.

---

[40] [Digicel-Haiti's] Response In Opposition To UPM's Motions *In Limine* (ECF #344) at 4 (noting Digicel-Haiti's "outright rejection of the information provided by UPM").

Page 12 – DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION FOR SUMMARY JUDGMENT
UPM-L1\00630001.000

But if this case is to go to a jury, then, at a minimum, the Court should issue several partial summary judgment rulings to constrain Digicel-Haiti's ability to spin fantasies.[41]

First, at a minimum and as a baseline, the Court must require Digicel-Haiti to present a coherent estimate of *how much traffic UPM completed* as a result of any claimed "active concealment." Without such an estimate there is no way for any rational jury to assess whether Digicel-Haiti was damaged at all.

Second, the Court must require Digicel-Haiti to present a coherent explanation of *how much revenue it should have received* for the traffic UPM completed. On this point, the Court can and should rule that the baseline per-minute rate is $0.18, not $0.23, because of the $0.05 per minute tax Digicel-Haiti pays on inbound international traffic.[42]

Third, the Court must require Digicel-Haiti to present a coherent estimate of *how much money it already received from UPM* for the services it provided. Any claim that Digicel-Haiti "lost revenue" is incoherent without accounting for the revenues it has already received. On this point, Digicel-Haiti says that UPM is seeking an "offset" for "costs" it supposedly incurred in conducting its overall operations.[43] This is an absurd mischaracterization. UPM spent money on SIMs, on Gateways, on shipping, on computer equipment, on support personnel, on software development, and on a range of other items. UPM is not seeking an "offset" or "reimbursement" for any of those costs. It is simply pointing out that Digicel-Haiti cannot claim that it was damaged because it "lost revenue" and then ignore very substantial revenue that UPM actually provided. And again, this point is not about estimating the *amount* of any Digicel-Haiti damages; this is about Digicel-Haiti having an obligation under Oregon law to prove that it was damaged *at all*.

UPM recognizes that it will be impossible for Digicel-Haiti to provide any of this,

---

[41] Despite the Court having rejected Digicel-Haiti's earlier argument that partial summary judgment rulings addressing particular factual or legal claims is not appropriate, *see* ECF #294 at 7, Digicel-Haiti again asserts that "piecemeal" rulings are not permitted. Opposition at 3 n.2.

[42] *See* Renewed Motion at 7.

[43] *See* Opposition at 6.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

which puts Digicel-Haiti on the horns of a dilemma. By rejecting UPM's business records as valid evidence, Digicel-Haiti deprives itself of any basis for estimating how many minutes of traffic UPM completed or how much UPM paid. But accepting UPM's business records leads ineluctably to the conclusion that Digicel-Haiti was not damaged. Either way, Digicel-Haiti has no evidence that it was harmed by what UPM did. For these reasons, UPM urges the Court, at the pretrial conference, to directly ask Digicel-Haiti whether it can provide *any* evidence-based estimates of how much traffic UPM completed and how much money UPM paid. Once it is (even more) clear on the record that the answer is "no," the Court should dismiss the case.

### D. UPM Is Entitled To Summary Judgment Regarding All RLYH Claims.

UPM's Renewed Motion sought summary judgment with regard to its use of RLYH service on two grounds. First, the undisputed evidence shows that Digicel-Haiti cannot have been damaged by UPM's resale of RLYH service because it received more money from RLYH resale than it would have had the calls not gone through RLYH.[44] Second, as a matter of law, Digicel-Haiti did not have the legal right to cut off UPM's RLYH SIMs, which means that any UPM efforts to avoid being cut off are not "active concealment."[45] Digicel-Haiti has presented no cogent argument against either point.

#### 1. Digicel-Haiti Was Not Damaged By RLYH Resale.

UPM has explained repeatedly that Digicel-Haiti was not damaged by UPM's resale of RLYH service.[46] This is simple math. For calls routed through Digicel-Haiti's international gateway switch, Digicel-Haiti gets $0.23 per minute. RLYH calls are routed through that switch, so Digicel-Haiti gets the $0.23 per minute, but it *also* gets the local rate of about $0.09 per minute. These facts are established by Digicel-Haiti's own Complaint and by the deposition

---

[44] Renewed Motion at 10.

[45] *Id.* at 10-12.

[46] *See, e.g.,* [UPM]'s Motion for Summary Judgment (ECF #254) at 28-29.

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

testimony of its CEO in his capacity as Rule 30(b)(6) witness.[47] It is mathematically impossible

for this economic arrangement to harm Digicel-Haiti, and therefore mathematically impossible for

resale of RLYH to constitute fraud under Oregon law.

Digicel-Haiti has presented no admissible evidence to contest these facts. It

certainly has not come forward with such facts in response to UPM's Renewed Motion.[48] The

Court should therefore grant UPM's request for summary judgment that RLYH resale did not

constitute fraud and dismiss this aspect of Digicel-Haiti's case.

### 2. Digicel-Haiti Had No Legal Right To Cut Off UPM's RLYH SIMs.

Digicel-Haiti's active concealment claim depends on the idea that by interfering

with its ability to realize that UPM's SIMs were not being used by individual subscribers, UPM

prevented Digicel-Haiti from exercising a legal right to cut off those SIMs. For RLYH SIMs, UPM

has shown that as a matter of law, Digicel-Haiti had no such right.

Digicel-Haiti's opposition to this argument is incoherent.[49] It claims that "whether

[it] could disconnect RLYH SIMs used for bypass is a matter of Haitian law,"[50] but provides no

citation for this claim, which is facially absurd. With RLYH, UPM was using SIM cards physically

located in the United States, in connection with other UPM equipment located in the United States,

to make use of services physically provided in the United States, to exclusively United States

callers. It is a mystery how Digicel-Haiti concludes that actions that it took affecting these entirely

---

[47] *See* Third Amended Complaint (ECF #200) at ¶ 128 (RLYH subscriber pays local rate for calls back to Haiti); *id.* at ¶ 136 (United States carrier handling RLYH call pays Digicel-Haiti $0.23 per minute); Savage Declaration in Support of UPM's Motions *in Limine* (ECF #325-2) at 8 (Boute Deposition at 93:1-10) (Digicel-Haiti not charged by United States carrier for handling RLYH calls).

[48] While Digicel-Haiti notes that UPM has sought summary judgment on the grounds that the undisputed evidence shows that Digicel-Haiti cannot have been damaged by RLYH resale, *see* Opposition at 5, it never returns to address the merits of UPM's arguments. So even putting aside the fact that UPM's argument is correct, Digicel-Haiti has waived any opposition to it.

[49] Opposition at 7-8.

[50] *Id.* at 7.

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

United-States-based activities might be subject to Haitian law, and not United States law.

Moreover, as the Court long ago recognized, by offering RLYH service to subscribers in the United States, Digicel-Haiti became a telecommunications carrier in the United States.[51] This means that Digicel-Haiti's actions were subject to the Communications Act.[52] There is no conceivable way that Haitian law could govern these arrangements.

Digicel-Haiti feigns outrage at the notion that Haitian law (assuming it applies) did not justify its actions, claiming that "[t]he law of Haiti on this issue has been established *ad nauseum* over the past nearly seven years of litigation."[53] Interestingly, though, it never tries to state what the "law of Haiti on this issue" *actually is*. UPM submits that the reason is obvious: RLYH resale does not constitute "bypass" as that term is used under Haitian law. The key regulatory document on which Digicel-Haiti has relied, so-called "Circular No. 009," confirms that Haitian regulators were concerned only with in-country bypass, not RLYH resale. That document defines "bypass" as follows:

> Bypassing: activity involving the sending of diverted traffic, i.e. sent towards a central terminal, either illegally or by concealing the true origin of the call. ***In other words, the international call appears as a local call.*** The transit transport of traffic received from one carrier to another operator without the latter knowing the origin is also deemed to constitute bypassing.[54]

Whatever else a resold RLYH call might be, it is not an "international call [that] appears as a local call." As a result, no "law of Haiti" authorized Digicel-Haiti to cut off SIM cards, located in the United States, making calls that were, appeared to be, and were rated as, international calls. And if Digicel-Haiti thought there was Haitian legal authority supporting its action, it was obliged to cite it in response to UPM's Renewed Motion. Its silence speaks volumes.

---

[51] ECF #154 (Opinion and Order, March 30, 2018) at 27-31. *See also* ECF #95 (Opinion and Order, July 26, 2016) at 14-20.

[52] *See* 47 U.S.C. §§ 201-202 (establishing obligations of carriers).

[53] Opposition at 7.

[54] ECF #60 at ¶ 1.4 (emphasis added).

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Digicel-Haiti next accuses UPM of inconsistency, supposedly simultaneously saying that it had a business relationship with Digicel-Haiti that enabled it to use the RLYH service while also denying that it had any such relationship.[55] This misstates UPM's argument. UPM explained that the parties had an implied-in-fact contract, established when Digicel-Haiti accepted UPM's money to top up a SIM card and subscribe it to RLYH.[56] That gave UPM the right to use the RLYH service. Because RLYH service is used in the United States and is subject to the Communications Act, the rulings of the Federal Communications Commission ("FCC") banning restrictions on resale barred Digicel-Haiti from preventing UPM from using the service for that purpose.[57] But even if (as Digicel-Haiti asserts) RLYH service was governed by contractual terms and conditions,[58] those same FCC rulings would render unenforceable any ban on resale in those terms (such as a ban on commercial use or a restriction to individual use). Not only is UPM's position consistent, it is unaffected by whether the relationship between the parties is understood to be an implied-in-fact contract or to be governed by Digicel-Haiti's terms and conditions.

But one thing is clear: these are ***legal*** questions, entirely appropriate for summary judgment. Digicel-Haiti's claim that these are "issues of fact for the jury" is simply wrong.[59]

---

[55] Opposition at 7.

[56] [UPM's] Opposition To Digicel-Haiti's Motion For Summary Judgment On [UPM's] Counterclaims (ECF # 279) at 13-17, 25-28.

[57] *See In the Matter of Regulatory Policies Concerning Resale and Shared Use of Common Carrier Services and Facilities,* Report and Order, 60 F.C.C.2d 261 (1976); *In the Matter of Regulatory Policies Concerning Resale and Shared Use of Common Carrier Domestic Public Switched Network Services,* Report and Order, 83 F.C.C.2d 167 (1980) at ¶¶ 1-2, 15-20; *In the Matter of An Inquiry Into the Use of the Bands 825-845 MHz and 870-890 MHz for Cellular Communications Systems; and Amendment of Parts 2 and 22 of the Commission's Rules Relative to Cellular Communications Systems,* Report and Order, 86 F.C.C.2d 469 (1981) at ¶¶ 103-107; *In the Matter of Regulation of International Accounting Rates,* First Report and Order, 7 FCC Rcd 559 (1991) at ¶ 5.

[58] *See* Opposition at 7-8.

[59] *Id*. at 8.

Page 17 – DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION FOR SUMMARY JUDGMENT
UPM-L1\00630001.000

***TOMASI SALYER MARTIN***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## III.    DIGICEL-HAITI HAS NO EVIDENCE OF NON-MONETARY HARM

UPM explained in its initial motion for summary judgment that Digicel-Haiti has presented no evidence to suggest that anything that UPM did caused Digicel-Haiti any loss of goodwill or harmed Digicel-Haiti's network in any way, and that Digicel-Haiti had presented no evidence regarding any costs it may have incurred in investigating UPM's activities.[60] Noting that Digicel-Haiti's pretrial submissions continued to contain no evidence on these points, UPM renewed that motion.[61] In its response, Digicel-Haiti cites to nothing – and certainly no admissible evidence – that it suffered any of the non-monetary harms at issue.[62] Summary judgment for UPM on these points is therefore appropriate.

## IV.    DIGICEL-HAITI IS NOT ENTITLED TO PUNITIVE DAMAGES

UPM explained why Digicel-Haiti cannot recover punitive damages due to unambiguous constitutional limitations on its claim.[63] Briefly, (a) any harm Digicel-Haiti experienced from UPM's actions was experienced in Haiti, not Oregon; (b) Oregon may not impose punitive damages in such cases unless it has a legitimate public policy interest in condemning the conduct leading to the out-of-Oregon harm; and (c) any UPM action to avoid having its SIM cards cut off by Digicel-Haiti was and would have been legal in Oregon, due to unambiguous United States policies favoring competition in interstate communications, lower international call termination rates, and banning restrictions on resale.[64] As a result, the Court may

---

[60] [UPM]'s Motion for Summary Judgment (ECF #254) at 32-34.

[61] Renewed Motion at 12-13; *see also* ECF #294 at 34-35 ("the Court declines to consider [the] issue [of Digicel Haiti's other claims of harm to its network, goodwill and in investigating bypass] further but invites UPM to raise the issue again either at the final pretrial conference").

[62] Opposition at 8.

[63] Renewed Motion at 12-18.

[64] Oregon may not impose punitive damages "for unlawful acts committed outside of the State's jurisdiction." *Goddard v. Farmers Ins. Co.*, 344 Or. 232, 254, 179 P.3d 645, 659 (2008) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421, 123 S. Ct. 1513 (2003)). Yet the heart of Digicel-Haiti's case, as narrowed by the Court, is based entirely on the pattern of calls made using UPM's gateways in Haiti. The relevant acts, therefore, were "committed outside of"

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

and should exclude punitive damages at the summary judgment stage, because Digicel-Haiti cannot show (and has not even tried to show), for instance, that Oregon has any interest in condemning UPM's conduct. These are not factual questions for the jury; they are purely legal questions for the Court.[65] The possibility of awarding punitive damages for UPM's out-of-state conduct cannot be given to the jury as a matter of law.

At a minimum, the Court should rule (and instruct the jury) that "reprehensible" conduct justifying punitive damages refers to physical, not economic, harm.[66] Digicel-Haiti should not be permitted to spin tales of UPM's supposedly reprehensible actions, when really all that is at issue is a dispute over what per-minute rate UPM should have paid for calls it completed on Digicel-Haiti's network, using services for which it paid the full retail rate.

## V.    CONCLUSION

For the reasons stated herein, UPM respectfully requests that the Court grant UPM's Renewed Motion for summary judgment and dismiss Digicel-Haiti's case or, at the minimum, its RLYH fraud claim and its prayer for punitive damages.

/ / /

/ / /

/ / /

/ / /

---

Oregon, and thus cannot support a punitive damages award.

[65] Opposition at 9-10 (broadly arguing that its entitlement to punitive damages is a jury question).

[66] "Reprehensibility depends, to a large degree, on whether 'the harm caused was <u>physical</u> as opposed to economic' and on whether 'the tortious conduct evidenced an ***indifference to or a reckless disregard of the health or safety of others*.'" *Goddard v. Farmers Ins. Co.*, 344 Or. at 260 (internal quotations and citations omitted; emphasis added). This substantially limits the constitutionally-permitted maximum amount of punitive damages: If "a nine-to-one ratio between punitive and compensatory damages is at the limit of what the Due Process Clause normally will allow a court to impose on any tortious conduct, ***then the limit must be significantly lower for conduct that causes or risks only economic injury*.**" *Id.* (emphasis added). Specifically, for purely economic damages such as exist in this case, punitive damages may not constitutionally exceed ***four times actual compensatory damages*.** *Id.*

Page 19 – DEFENDANTS' REPLY IN SUPPORT OF
RENEWED MOTION FOR SUMMARY JUDGMENT
UPM-L1\00630001.000

Dated: March 22, 2022.

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2022, I served the foregoing **DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com

Dated: March 22, 2022

TOMASI SALYER MARTIN

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Telephone: (202) 973-4200
    *(Admitted Pro Hac Vice)*

Of Attorneys for Defendants

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236