**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNIGESTION HOLDING, S.A., d/b/a DIGICEL-HAITI**,<br><br>Plaintiff,<br><br>v.<br><br>**UPM TECHNOLOGY, INC. and DUY BRUCE TRAN**,<br><br>Defendants. | Case No. 3:15-cv-185-SI<br><br>**OPINION AND ORDER ON UPM'S RENEWED MOTION FOR SUMMARY JUDGMENT AND DIGICEL-HAITI'S MOTIONS FOR RECONSIDERATION, TO CERTIFY INTERLOCUTORY APPEAL, AND TO CERTIFY QUESTIONS TO THE OREGON SUPREME COURT** |

Anne M. Talcott, Kathryn E. Kelly, Andrew J. Lee, and Sara Kobak, SCHWABE, WILLIAMSON & WYATT PC, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204; and Robert C.L. Vaughan, Cherine Smith Valbrun, Leah B. Storie, and Anisha Carla Atchanah, KIM VAUGHAN LERNER LLP, One Financial Plaza, Suite 2001, Fort Lauderdale, FL 33394. Of Attorneys for Plaintiff.

Kathryn P. Salyer, Eleanor A. DuBay, and Blake Van Zile, TOMASI SALYER MARTIN, 121 SW Morrison Street, Suite 1850, Portland, OR 97204; and Christopher W. Savage, DAVIS WRIGHT TREMAINE LLP, 1919 Pennsylvania Avenue NW, Suite 800, Washington, DC 20006. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

On January 18, 2022, the Court granted in part and denied in part the parties' cross-motions for summary judgment. ECF 294; *Unigestion Holding, S.A. v. UPM Technology, Inc.*, --- F. Supp. 3d ---, 2022 WL 161491 (D. Or. Jan. 18, 2022). The following month, on February 28, 2022, Defendant UPM Technology, Inc. (UPM) filed a renewed motion for

summary judgment. ECF 335. On March 29, 2022, the Court held a pretrial conference on Phase I issues, as described more fully below. On May 27, 2022, Plaintiff Unigestion Holding, S.A., doing business as Digicel-Haiti, Inc. (Digicel-Haiti) filed a motion for reconsideration or, in the alternative, certification of interlocutory appeal with the Ninth Circuit under 28 U.S.C. § 1292(b) or, in the further alternative, certification of questions to the Oregon Supreme Court. ECF 375. For the reasons that follow, the Court denies these motions.

## STANDARDS

### A. Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure states that a party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the lack of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

The first sentence of Rule 56(a) provides: "A party may move for summary judgment, identifying each claim or defense—or *the part of each claim or defense*—on which summary

judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). The 2010 Advisory Committee explains that this sentence was "added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment; *see also Minority Police Officers Ass'n of S. Bend v. City of S. Bend, Ind.*, 721 F.2d 197, 200 (7th Cir. 1983) ("The word 'judgment' in the term 'partial summary judgment' is a misnomer. A partial summary judgment is merely an order deciding one or more issues in advance of trial; it may not be a judgment at all, let alone a final judgment on a separate claim.").

Further, Rule 56(g) states: "If the court does not grant all the relief requested by the motion, it may enter an order stating *any material fact*—including an item of damages or other relief—that is not genuinely in dispute *and treating the fact as established* in the case." Fed. R. Civ. P. 56(g) (emphasis added). As explained by the 2010 Advisory Committee, "the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute." Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment. Finally, even if "the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event." *Id.*

**B. Reconsideration**

Rule 54(b) of the Federal Rules of Civil Procedure provides that any order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The rule, however, does not address the standards that a district court should apply when asked to reconsider an interlocutory order, and the Ninth Circuit has not established a standard of review. Some things, however, are clear. "Rule 54(b) is

not a mechanism to get a 'do over' to try different arguments or present additional evidence when the first attempt failed. Thus, while the limits governing reconsideration of final judgments under Rule 59(e) do not strictly apply, courts frequently invoke them as common-sense guideposts when parties seek reconsideration of an interlocutory ruling under Rule 54(b)." Stephen S. Gensler & Lumen N. Mulligan, 2 *Fed. R. of Civ. P., Rules and Commentary*, Rule 54 (2022).

When reconsidering an interlocutory order, district courts in the Ninth Circuit have held:

> Motions to reconsider under Rule 54(b), while generally disfavored, may be granted if: (1) there are material differences in fact or law from that presented to the court and, at the time of the court's decision, the party moving for reconsideration could not have known the factual or legal differences through reasonable diligence; (2) there are new material facts that happened after the Court's decision; (3) there has been a change in law that was decided or enacted after the court's decision; or (4) the movant makes a convincing showing that the court failed to consider material facts that were presented to the court before the court's decision.

*In re Galena Biopharma, Inc. Derivative Litig.*, 2014 WL 5494890 (D. Or. Oct. 30, 2014) (quoting *Lyden v. Nike, Inc.*, 2014 WL 4631206, at * 1 (D. Or. Sept. 15, 2014)); *see also* *see also Stockamp & Assocs. v. Accretive Health*, 2005 WL 425456, at * 6-7 (D. Or. Feb. 18, 2005) (discussing the four factors as established in the local rules of the Central District of California and applied by other district courts within the Ninth Circuit); *cf. U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (discussing that courts have more discretion in evaluating reconsideration under Rule 54(b) and concluding that "a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice" (quotation marks omitted)). However, "[w]hile a motion for reconsideration allows a party to bring a material

oversight to the court's attention, it is not appropriate for a party to request reconsideration merely to force the court to think about an issue again in the hope that it will come out the other way the second time." *Brown v. S. Nevada Adult Mental Health Servs.*, 2014 WL 2807688, at * 2 (D. Nev. June 20, 2014) (cleaned up).

**C. Interlocutory Review Under § 1292(b)**

"Under 28 U.S.C. § 1292(b) parties may take an interlocutory appeal when 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). A district court may certify an order for interlocutory appeal when the district court finds "that such order involves a *controlling question of law* as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (emphasis added); *see also ICTSI*, 22 F.4th at 1130.

"A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *Id.* (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)). A court may find substantial ground for difference of opinion when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). "For example, this prong is satisfied if 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *ICTSI*, 22 F.4th at 1130 (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). The district court need not, however, "await development of contradictory precedent before

concluding that the question presents a substantial ground for difference of opinion." *Id.* at 1130-31 (cleaned up). "Finally, the 'materially advance' prong is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *Id.* (quoting *In re Cement*, 673 F.2d at 1027).

**FACTUAL BACKGROUND**

The factual background of this case has been thoroughly described in earlier opinions, including the Court's decision dated January 18, 2022, on the parties' cross-motions for summary judgment. ECF 294. As relevant here, UPM purchased or otherwise obtained Digicel-Haiti SIM cards[1] from third parties in Haiti and then sent the cards to UPM in Oregon. UPM activated these SIM cards and used them to initiate and authenticate two types of calls to Haiti. One type of call originated in the United States and was sent over the internet to a radio transmitter located in Haiti, resulting in the call appearing to originate on Digicel-Haiti's network in Haiti as a local call. The parties refer to this as "in-country," or "traditional," bypass.

Another type of call also originated in the United States on a network operated by a United States telecommunications carrier that was a roaming partner with Digicel-Haiti. This call was sent by the United States roaming partner to Digicel-Haiti's international switch in either New York or Florida as part of a discounted calling program that Digicel-Haiti marketed and sold under the name "Roam Like You Are Home" (RLYH). Digicel-Haiti asserts that it intended for this program to be available only to its subscribers who were natural persons. Digicel-Haiti

[1] "SIM" is an acronym for "Subscriber Identity Module." Each SIM card contains a unique identification number and other information used to "authenticate" the card on a telecommunication carrier's network, enabling the card to be used to make calls. Typically, an individual cell phone user would purchase a SIM card to be used for making calls from a specific cell phone, or handset. The SIM card would often include a certain monetary value, or "prepaid" amount, but could be recharged or "topped off" with new payments. If a carrier, such as Digicel-Haiti, deactivates (or de-authenticates) a SIM card, that card can no longer be used to make calls.

refers to this as "RLYH bypass." Thus, in one of these two ways, UPM connected third-party calls originating in the United States and ending (or terminating[2]) with a Digicel-Haiti customer located in Haiti. Digicel-Haiti charged UPM the local rate for these calls, rather than Digicel-Haiti's higher rate for inbound international calls.

If, however, Digicel-Haiti determined that a particular SIM card was being used in one of these two ways (either in-country bypass or RLYH bypass), then Digicel-Haiti would deactivate, or de-authenticate, that SIM card, thereby blocking UPM from further using it. According to Digicel-Haiti, UPM used "human behavior software" (HBS) to conceal from Digicel-Haiti that a SIM card was being used for bypass, rather than by an individual human user for a specific call. The Court previously ruled that using HBS in this way would constitute fraud by active concealment in violation of Oregon common law, by deceiving Digicel-Haiti into allowing the SIM cards to continue to be used. In this, UPM would avoid, or bypass, higher charges for international calls coming from the United States to Digicel-Haiti's customers in Haiti. UPM denied using HBS, and the case was heading toward trial at Phase I.

**PROCEDURAL BACKGROUND**

As noted, on January 18, 2022, the Court granted in part and denied in part the parties' cross-motions for summary judgment. The Court also bifurcated and stayed all counterclaims asserted by UPM against Digicel-Haiti. The Court also dismissed Digicel-Haiti's allegations of fraud by either affirmative misrepresentation or material omission, leaving for trial only a single claim (with two counts) that alleged fraud by active concealment through using HBS in violation of Oregon common law. That claim would be tried in Phase I, and the Court ruled that this

---

[2] In this context, "termination" means the location where a call is shown to be received for purposes of a cellular company's tracking and billing records.

claim—and only this claim—may proceed to trial against UPM and its founder, owner, and Chief Executive Officer, Mr. Duy Bruce Tran.[3] Phase II, which would come later, involves UPM's counterclaims. On February 28, 2022, UPM filed a renewed motion for summary judgment. ECF 335. UPM based its renewed motion on Digicel-Haiti's recently filed pretrial documents. The Court previously had scheduled a final pretrial conference for March 29, 2022, and a five-day Phase I jury trial on Digicel-Haiti's claim against UPM to begin on April 4, 2022.

At the pretrial conference held on March 29, 2022, the Court was intending orally to deny UPM's renewed motion for summary judgment. The Court began by asking Digicel-Haiti to clarify its theory of damages as presented in its pretrial documents. It soon became clear that Digicel-Haiti was not interpreting the Court decision of January 18, 2022, in the same way that the Court (and UPM) understood that ruling. When the Court's decision was clarified and Digicel-Haiti understood the limitations the Court was placing on what the jury would be asked to decide, Digicel-Haiti stated that it was not prepared to begin trial the following week. Digicel-Haiti asked the Court to postpone the Phase I jury trial and to reopen discovery. The Court denied both requests. Digicel-Haiti then stated that it could not likely meet its evidentiary burden to establish damages caused by UPM's use of HBS within the Court's limitations and did not want to proceed to trial on Phase I. The Court struck the Phase I trial. Digicel-Haiti asked for an opportunity to brief a request for certification of interlocutory appeal to the Ninth Circuit under § 1292(b), which the Court allowed. *See* ECF 379, at 35, 64 (Transcript from Hearing on March 29, 2022).

---

[3] In this Opinion and Order, the Court generally refers to UPM and Mr. Tran together simply as "UPM."

## DISCUSSION

### A. UPM's Renewed Motion for Summary Judgment

After the Court issued its ruling on January 18, 2022, the parties filed their pretrial documents in anticipation of the Phase I jury trial that was scheduled to begin on April 4, 2022. Among other things, Digicel-Haiti filed its witness statements, expert disclosures, proposed trial exhibits, and trial brief. Based on these filings by Digicel-Haiti, UPM filed a renewed motion for summary judgment. ECF 335, at 2.

UPM's first five arguments in its renewed motion are variations on the theme that Digicel-Haiti cannot show that it was harmed by UPM's alleged fraudulent activity. First, UPM argues that Digicel-Haiti must show that but for UPM's actions, Digicel-Haiti would have received more money than it did. In essence, Digicel-Haiti must show that without UPM in the picture, at least some of the bypass calls that UPM completed instead would have been placed through Digicel-Haiti's international gateway and been charged a higher rate, resulting in greater revenues to Digicel-Haiti. This is a reasonable inference.

Second, UPM argues that the testimony of Digicel-Haiti's damages expert, Charles Castel, is irrelevant, speculative, and unreliable and, therefore, must excluded. UPM adds that without Mr. Castel's testimony, Digicel-Haiti cannot prove that it was harmed by anything that UPM did. At the pretrial conference on March 29, 2022, the Court was prepared to allow Mr. Castel to testify within the limitations provided by the Court's decision of January 18, 2022. That is when Digicel-Haiti explained that it could not likely meet the evidentiary burden to establish its monetary damages within the Court's limitations. ECF 379, at 35.

Third, UPM argues that Digicel-Haiti ignores the considerable amounts of money that UPM paid for its use of Digicel-Haiti's network but that Digicel-Haiti confiscated when it cut off UPM's SIM cards. That evidence will not be ignored. UPM contends that the value of the

terminated SIM cards totaled $156,735.42. *See, e.g.*, ECF 244, ¶¶ 361-74, at ¶¶ 363, 367, 373. UPM may present at trial its evidence on this issue, as UPM seeks to reduce, or even eliminate, its damages.[4]

Fourth, UPM argues that even if UPM used HBS, that does not mean that HBS actually worked. According to UPM, Digicel-Haiti must show that UPM's use of HBS delayed Digicel-Haiti in cutting off the affected SIM cards and that by using HBS, UPM completed more calls than it would have made without using HBS. If the evidence shows that UPM used HBS, it is a reasonable inference that UPM did so for a reason and that UPM would not have continued to do so unless it was at least partially successful in delaying Digicel-Haiti's cutting off the affected SIM cards.

Fifth, UPM argues that Digicel-Haiti received all the money to which it was entitled under the RLYH calls handled by UPM. The Court, however, can evaluate the evidence presented at trial on issue and consider any motion timely made under Rule 50(a).

Sixth, UPM asserts that Digicel-Haiti did not have the legal right to cut off UPM's SIM cards, either at all or at least when UPM was using those cards for RLYH resale. UPM relies upon U.S. telecommunications law to support this conclusion. In response, Digicel-Haiti relies

---

[4] In its response, Digicel-Haiti characterizes this argument as whether UPM is "entitled to an offset for the costs and expenses associated with its fraudulent scheme," and Digicel-Haiti agrees that this is a matter for the jury. ECF 363, at 7 ("Whether Defendants are entitled to an offset for the costs and expenses associated with its fraudulent scheme is a matter for the jury."). Oregon law distinguishes between the related concepts of "set-off" (also referred to as "offset"), "recoupment," and "counterclaims." *Rogue River Mgmt. Co. v. Shaw*, 243 Or. 54, 58-60 (1966). An offset, or set-off, is "a money demand by the defendant against the plaintiff arising upon contract and constituting a debt independent of and unconnected with the cause of action set forth in the complaint." *Id.* at 59 (cleaned up). A "recoupment" is "the keeping back and stopping of something which is due" and must be connected to the transaction upon which the action is brought. *Id.* Neither a set-off nor a recoupment allow for the recovery of an affirmative judgment against the plaintiff by the defendant. *Id.* Only a counterclaim gives a defendant an independent cause of action against a plaintiff. *Id.* at 60.

upon Haitian law. The Court, however, excludes from the Phase I all evidence and argument regarding whether Digicel-Haiti had the legal right to cut off UPM's SIM cards. The Court finds that this issue is legally irrelevant to Digicel-Haiti's claim, even if it might be relevant to the bifurcated counterclaims brought by UPM, which is the subject of Phase II. As noted, Digicel-Haiti agrees that the jury may consider whether UPM is entitled to an offset for the cancelled SIM cards. *See* ECF 363, at 7.

The only relevant issues in Phase I are whether UPM engaged in active concealment by using HBS, whether such active concealment caused damage to Digicel-Haiti, and, if so, the amount of any such damage. To reiterate what has been said previously, active concealment means:

> Any words or acts which create a false impression covering up the truth, or which remove an opportunity that might otherwise have led to the discovery of a material fact as by floating a ship to conceal the defects in her bottom, sending one who is in search of information in a direction where it cannot be obtained, or even a false denial of knowledge by one in possession of the facts are classed as misrepresentations, no less than a verbal assurance that the fact is not true.

*Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104, 113 (1981) (quoting William L. Prosser, *Law of Torts* § 106, at 695 (4th ed. 1971)) (cleaned up).

The inquiry here is whether a defendant's action deprived the plaintiff of the opportunity to discover a *material fact*. Under Oregon law, a material fact or representation "is one that would be likely to affect the conduct of a reasonable person with reference to a transaction." *Pape v. Knoll*, 69 Or. App. 372, 379 (1984). Determinations of materiality are "generally committed to the trier of fact." *Oregon Pub. Employees' Ret. Bd. ex rel. Oregon Pub. Employees' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 436 (2004) ("We acknowledge, as the trial court understood, that the determination of materiality . . . in cases like

this can seem to partake of 'We know it when we see it' jurisprudence. Nevertheless, those determinations are generally committed to the trier of fact."). For a defendant to prevail on a motion for summary judgment, "he must demonstrate that no reasonable trier of fact could have found 'materiality' and consequential causation under these circumstances." *Id.*

UPM appears to read a "legal right" requirement into the standard for active concealment, when Oregon law does not impose any such requirement. The existence of a legal right to act one way or another is not a relevant part of the inquiry, rather, it is for the jury to determine whether the facts UPM allegedly concealed are *material*. UPM may argue to the jury that any information allegedly concealed was not material, but UPM has not demonstrated that no reasonable trier of fact could find that the information they allegedly concealed was material, based solely on their theory of the legality of Digicel-Haiti's conduct. Thus, to the extent that UPM argues that it is entitled to summary judgment on the claim of active concealment, the Court denies the motion.

Seventh, UPM states that Digicel-Haiti cannot demonstrate non-monetary damages due to stress on Digicel-Haiti's network, investigating bypass, and loss of goodwill. Under Oregon law, "[u]ncertainty as to the extent of injury or the amount of damages that will properly compensate for an injury does not preclude recovery." *Crowd Mgmt. Servs., Inc. v. Finley*, 99 Or. App. 688, 691 (1989) (citing *Hinish v. Meier & Frank Co.*, 166 Or. 482, 506 (1941)) (upholding a jury's award for damages because "plaintiff's loss of reputation and business opportunities amount to harm to good will and, once plaintiff established that defendant caused those injuries, the trier of fact was entitled to determine the appropriate compensation"). "A defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." *Blanchard v. Makinster*, 137

Or. 58, 66 (1931) (quoting *Eastman Kodak Co. of New York v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927)).

There are material facts genuinely in dispute relating to Digicel-Haiti's claimed non-monetary damages, including the extent of stress that UPM's activities imposed on Digicel-Haiti's network and the effect on Digicel-Haiti's reputation and goodwill. The fact that Digicel-Haiti has not identified with certainty a precise amount associated with those damages is not fatal to its claim under Oregon law. *See Hinish*, 166 Or. at 506 ("The law has never denied recovery to one entitled to damages simply because of uncertainty as to the extent of his injury and the amount which would properly compensate him."). Rather, it is proper to submit that question to the jury for determination. *See Brown v. McCloud*, 96 Or. 549, 552 (1920) ("It is not a sufficient reason for disallowing damages claimed that they cannot be exactly calculated. It is sufficient if, from proximate estimates of witnesses, a satisfactory conclusion can be reached. There was no error in the trial court thus submitting the question for determination." (citation omitted)).

Eighth, UPM contends that punitive damages are not available to Digicel-Haiti for two reasons. First, UPM argues that Digicel-Haiti is not entitled to punitive damages because it cannot demonstrate that UPM "acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." Or. Rev. Stat. (ORS) § 31.730(1). The Court declines to consider this question, typically reserved for the jury, on UPM's renewed motion for summary judgment. *Fisher v. Carlin*, 219 Or. 159, 162 (1959) ("Punitive damages is generally a question reserved for the jury.").

Second, UPM contends that the Supreme Court's decision in *BMW of North America v. Gore*, 517 U.S. 559 (1996), precludes Digicel-Haiti's claim for punitive damages. In that case, the Supreme Court held that "it follows from these principles of state sovereignty and comity that a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States." *Id.* at 572. UPM relies on *BMW* for UPM's argument that punitive damages cannot be assessed against UPM for either out-of-state conduct that caused out-of-state harm in Haiti, or for in-state conduct that caused only out-of-state harm in Haiti.

UPM argues that the in-state conduct at issue—use of the HBS—is not illegal in Oregon, and so any out-of-state harm resulting from legal, in-state activity cannot give rise to an award for punitive damages. As described above, this position is predicated on a misunderstanding of what constitutes active concealment under Oregon law. If the jury determines that UPM's use of HBS constitutes active concealment under Oregon law, then UPM's use of HBS is not *legal* conduct that causes out-of-state harm, but rather it would be *illegal* in-state conduct causing out-of-state harm.

Further, UPM acknowledges that when a state has made a legitimate policy choice to punish certain conduct, punishing a defendant for that conduct when it causes only out-of-state harm "necessarily depends on the state of the evidentiary record." *Schwarz v. Philip Morris, Inc.*, 206 Or. App. 20, 49-50 (2006). Because of UPM's misunderstanding of the elements of active concealment under Oregon law, they assert that Oregon has made no policy choice governing bypass or RLYH resale. That may be correct, but Oregon *does* have a policy that prohibits fraud, including fraud by active concealment. If the jury determines that UPM did, in fact, engage in

fraud by active concealment, that conduct is contrary to Oregon law and policy sufficient to permit an award of punitive damages in compliance with the Supreme Court's holding in *BMW*.

For these reasons, the Court denies UPM's renewed motion for summary judgment.

**B. Digicel-Haiti's Motion for Reconsideration of Decision Dated January 18, 2022**

The Court has read both Digicel-Haiti's 44-page motion for reconsideration and its 42-page reply. Digicel-Haiti has failed to show any of the recognized factors for reconsideration under Rule 54(b). There are no material differences in fact or law from what was previously presented to the Court that Digicel-Haiti could not have known through reasonable diligence. There are new material facts that happened after the Court's decision. There has been no change in law decided or enacted after the Court's decision. And Digicel-Haiti has not made a convincing showing that the Court failed to consider material facts or law that were presented before the Court's decision.

At the core of its argument, Digicel-Haiti contends that UPM created a misimpression of material fact. That is what Digicel-Haiti has been consistently arguing. In the Court's decision dated January 18, 2022, the Court noted that Oregon's common law of fraud permits a plaintiff to show fraud by affirmative misrepresentation, omission, or active concealment. ECF 294, at 23; *Unigestion*, 2022 WL 161491, at *11. Regarding affirmative misrepresentation, the Court explained that although Digicel-Haiti alleged that UPM "cloned" data from the Digicel-Haiti SIM cards, Digicel-Haiti presented no evidence of any such "cloning." Similarly, although Digicel-Haiti alleged that UPM used the SIM cards to misrepresent the call's international origin, Digicel-Haiti presented no evidence of any affirmative misrepresentations by UPM. Digicel-Haiti also presented no evidence of any misrepresentations by UPM's agents when they acquired the SIM cards in Haiti. Indeed, Digicel-Haiti did not require UPM's agents to fill out any registration forms or even make any representations regarding the use of the SIM cards. The

Court closely evaluated Digicel-Haiti's evidence on these points and found none had been submitted. ECF 294, at 27-30; *Unigestion*, 2022 WL 161491, at *14-15.

Regarding material omissions, the Court held that Digicel-Haiti failed to show that UPM had a duty to speak. ECF 294, at 30; *Unigestion*, 2022 WL 161491, at *15. In its pending motion for reconsideration, Digicel-Haiti argues, for the first time, that "Oregon law imposes a duty to disclose, which may arise from either custom of the industry or applicable law." ECF 375 at 25 (int. p. 17). In support, Digicel-Haiti cited the *Restatement (Second) of Torts* § 551 (1977). *Id*. In its earlier response to UPM's motion for summary judgment, however, Digicel-Haiti made no such argument or citation. ECF 274.

Instead, Digicel-Haiti merely argued that UPM made fraudulent representations and half-truths, but the Court found no record evidence of that. Accordingly, the Court finds that Digicel-Haiti, having not previously raised the argument that Oregon law imposes a duty to disclose arising from any custom of the industry, has waived that argument and may not assert it in a motion for reconsideration.[5] Further, even if the Court were to consider this argument, Digicel-Haiti has failed to present sufficient factual material regarding any relevant industry custom to create a genuine issue for trial.

---

[5] *See Daghlian v. DeVry Univ., Inc*., 582 F. Supp. 2d 1231, 1258 (C.D. Cal. 2007) ("[I]t is a "'well-established principal that arguments raised for the first time in a motion for reconsideration are generally deemed waived.'") (quoting *United States v. Foreman*, 369 F.3d 776, 797 n. 12 (4th Cir. 2004) (Gregory J., concurring in part)); *see also N. Cnty. Commc'ns Corp. v. McLeodUSA Telecommunications Servs., Inc*., 2010 WL 2079754, at *3 (D. Ariz. May 24, 2010) (citing *Daghlian*, 582 F. Supp. 2d at 1258); *Pollution Denim & Co. v. Pollution Clothing Co*., 2008 WL 11340375, at *6 (C.D. Cal. Mar. 5, 2008) (same). This result is not surprising and follows the basic principle announced by the Ninth Circuit that arguments raised for the first time in a reply brief are generally waived and need not be considered by a district court. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

**C. Digicel-Haiti's Motion for Leave to Seek Interlocutory Review**

Digicel-Haiti also moves for leave to seek interlocutory review. The Court is sympathetic to Digicel-Haiti's position but concludes that Digicel-Haiti's request simply does not satisfy the legal requirements. As noted, certification under § 1292(b) requires, among other things, "a controlling question of *law* as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b) (emphasis added); *see also ICTSI*, 22 F.4th at 1130.

Digicel-Haiti offers the following four candidates as its questions of law:

> 1. Where credentials and caller locations are used to calculate charges for beneficial use of a network, *do methods that conceal a user's identity or location from the network*—such as supplying access or plan subscription credentials for the user, or routing calls through hidden gateway devices to disguise the user's international location—create a false impression of material fact that is actionable under Oregon law?
>
> 2. In conjunction with or separate from that question, *does the persistent use of surreptitiously acquired credentials* or hidden gateway devices to access a network in knowing contravention of a network policy or practice, or local law, create a false impression of material fact that is actionable under Oregon law?
>
> 3. Is a fraud claim for restitution (unjust enrichment) under Oregon law treated exclusively as an equitable remedy, or may such a claim be a legal remedy?
>
> 4. Does Oregon law deem a tort claim for damages to be a complete and adequate remedy at law if such a remedy does not completely disgorge a wrongdoer's ill-gotten money?

ECF 375, at 13 (int. p. 5) (emphasis added).

As the Ninth Circuit explained, a "controlling question of law must be one of law—not fact." *ICTSI*, 22 F.4th at 1130. Here, there is no dispute that "using methods that conceal a user's identity or location from the network" can, under certain circumstances, be actionable under Oregon law. These circumstances include making affirmative misrepresentations, omitting materials facts when there is a duty to speak, and actively concealing material information.

Indeed, that was the basis of the Court's ruling that UPM's allegedly using HBS to conceal from Digicel-Haiti that a SIM card was being used in a manner other than by an individual human subscriber presented a triable question for the jury. Thus, there is no legal dispute. The dispute is a factual one: what did UPM do and does that conduct meet the definition of fraud. At best, this is a mixed question of law and fact and is too closely tied to disputed factual issues to be appropriate for certification under § 1292(b).

Similarly, the parties dispute whether UPM "surreptitiously" acquired SIM cards in Haiti. In its Third Amended Complaint, Digicel-Haiti alleges that "SIM Cards used in bypass fraud are sometimes purchased using false or altered identification documents procured by local co-conspirators" and that "SIM Cards are purchased under the pretext that they will be used by an individual for that individual's personal calls in a unique cellular device." ECF 200 ¶¶ 60, 62. In response to UPM's motion for summary judgment, however, Digicel-Haiti failed to present any evidence that UPM or its agents did that here. Digicel-Haiti also alleged that "UPM, through its agents, purchased or secured hundreds of SIM Cards from one or more distributors willing to break the rules for extra payment from UPM." *Id.* ¶ 65. Digicel-Haiti also produced no evidence of that, but even if they had, this would simply show that Digicel-Haiti might have a claim against its own distributors, not against UPM.

Regarding Digicel-Haiti's third and fourth purported questions of law, these might be questions of law, but Digicel-Haiti did not previously raise these issues. In the Court's ruling on January 18, 2022, the Court stated that federal courts "are precluded from awarding equitable relief when an adequate legal remedy exists" and that "Digicel-Haiti has shown an issue of fact for its claim of common law fraud by active concealment, which is a legal claim, and Digicel-Haiti may present that claim to a jury." ECF 294, at 33; *Unigestion*, 2022 WL 161491, at *16.

From this, the Court concluded that the equitable claim of unjust enrichment is not available to Digicel-Haiti. *Id*. Before raising these points for the first time in its motion for reconsideration, Digicel-Haiti never argued that a claim for unjust enrichment may also be a legal claim (and not merely equitable) under Oregon law or that Oregon law may deem a tort claim for damages to be an inadequate remedy at law if it does not completely disgorge a wrongdoer's ill-gotten money. Because Digicel-Haiti did not raise these arguments earlier, they are waived.[6]

**D. Digicel-Haiti's Request for Certification to the Oregon Supreme Court**

Digicel-Haiti also argues that, if the Court declines to certify questions to the Ninth Circuit for interlocutory review under § 1292(b), the Court nevertheless should certify these questions to the Oregon Supreme Court under Or. Rev. Stat. § 28.200. That statute provides, in relevant part:

> The Supreme Court may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court if there are involved in any proceedings before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts of this state.

Or. Rev. Stat. § 28.200. For the same reasons that the Court denies Digicel-Haiti's request to certify questions to the Ninth Circuit under § 1292(b), the Court also denies Digicel-Haiti's request to certify these questions to the Oregon Supreme Court under Oregon law. The first two questions are not, strictly speaking, "questions of law," and the latter two questions were not previously presented to the district court and thus have been waived.

[6] *See* n.5, *supra*.

**CONCLUSION**

The Court DENIES Defendant UPM's renewed motion for summary judgment. ECF 335. The Court also DENIES Plaintiff Digicel-Haiti's motion for reconsideration and alternative motions to certify an interlocutory appeal to the Ninth Circuit or questions to the Oregon Supreme Court. ECF 375

**IT IS SO ORDERED**.

DATED this 13th day of July, 2022.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge