**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
**Kathryn E. Kelly**, OSB #175162
Email: kkelly@schwabe.com
**Andrew J. Lee**, OSB #023646
Email: ajlee@schwabe.com
**Sara Kobak**, OSB #023495
Email: skobak@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
**Cherine Smith Valbrun** *(Pro Hac Vice)*
E-mail: cvalbrun@kvllaw.com
**Anisha C. Atchanah** *(Pro Hac Vice)*
E-Mail: aatchanah@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL  33316
Telephone: 954.527.1115
Facsimile: 954.527.1116

*Attorneys for Plaintiff, Unigestion Holdings, S.A.,
a foreign corporation, d/b/a Digicel Haiti*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A., d/b/a DIGICEL HAITI**,<br><br>        Plaintiff and Counterclaim<br>        Defendant,<br><br>   v.<br><br>**UPM TECHNOLOGY, INC.**, *et al.*,<br><br>        Defendants and Counterclaim<br>        Plaintiffs. | No. 3:15-cv-00185-SI<br><br>**PLAINTIFF UNIGESTION HOLDINGS', CROSS MOTION FOR SUMMARY JUDGMENT ON DEFENDANT UPM TECHNOLOGY, INC.'S, COMMUNICATIONS ACT COUNTERCLAIMS AND RESPONSE IN OPPOSITION TO DEFENDANT UPM TECHNOLOGY, INC.'S MOTION FOR SUMMARY JUDGMENT – COMMUNICATIONS ACT**<br><br> **Request For Oral Argument** |

PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
TECHNOLOGY'S MOTION FOR SUMMARY
JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

**TABLE OF CONTENTS**

**Page**

**LR 7-1 CERTIFICATION** .................................................................................................. 1

**DIGICEL HAITI'S CROSS MOTION FOR SUMMARY JUDGMENT ON UPM
TECHNOLOGY INC.'S COMMUNICATIONS ACT COUNTERCLAIMS AND
RESPONSE IN OPPOSITION TO DEFENDANT, UPM TECHNOLOGY INC.'S
MOTION FOR SUMMARY JUDGMENT – COMMUNICATIONS ACT** .......................... 1

**I.   INTRODUCTION**.................................................................................................. 1

   A.   UPM's Account of the "Facts" is Incorrect and Unreliable and Should Be Disregarded
        in Its Entirety ........................................................................................... 3

   B.   The Actual Facts ............................................................................................ 8

**II.  LEGAL ARGUMENTS** ......................................................................................... 9

   A.   Standard For Summary Judgment.................................................................... 10

   B.   Digicel Haiti is Not a Common Carrier Under the Act and is Therefore Entitled to
        Summary Judgment on All of UPM's Communications Act Claims .......................... 11

        1.   Digicel Haiti is a foreign carrier, over which the FCC does not have jurisdiction.
             ...................................................................................................... 11

        2.   Digicel Haiti is not a U.S. common carrier because it does not offer any services
             to the public in the United States. .......................................................... 15

        3.   Neither the Communications Act nor the FCC's implementing regulations treats a
             foreign carrier's offering of roaming services to its subscribers that visit the
             United States as resale of international telecommunications services in the United
             States. .............................................................................................. 18

        4.   UPM's fraudulent and unauthorized use of Digicel Haiti SIM cards in violation of
             Digicel Haiti's Terms and Conditions does not create an offering, or obligation to
             offer common-carrier resale services in the United States. ................................. 20

        5.   Even if Digicel Haiti was determined to be a U.S. common carrier, its interruption
             of SIM cards which were fraudulently used by UPM in violation of Digicel
             Haiti's Terms and Conditions would not violate Section 201(b) or 202 of the Act.
             ...................................................................................................... 22

**CONCLUSION** .................................................................................................. 25

**REQUEST FOR ORAL ARGUMENT**.................................................................. 26

PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
TECHNOLOGY'S MOTION FOR SUMMARY
JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Message Centers v. FCC,*
    50 F.3d 35 (D.C. Cir. 1995) ...................................................................22, 24, 25

*American Trucking Ass'n  v. FCC,*
    377 F.2d 121 (D.C. Cir. 1966) .......................................................................24

*Anderson v. Liberty Lobby,*
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ..............................10

*AT&T Corp. v. Community Health Group,*
    931 F. Supp. 719 (S.D. Cal. 1995) .................................................................22

*Missouri ex rel Baltimore & Ohio Telephone Co. v. Bell Telephone Co.,*
    23 F. 539 (E.D. Mo. 1885) .............................................................................24

*Brinson v. Linda Rose Joint Venture,*
    53 F.3d 1044 (9th Cir. 1995) .........................................................................11

*Cable & Wireless P.L.C. v. FCC,*
    334 U.S. App. D.C. 261 (1999) ...........................................................11, 12, 14

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ..............................10

*Competitive Telecommunications Ass'n v. FCC,*
    998 F.2d 1058 (D.C. Cir. 1993) .....................................................................24

*Delaware Sports Serv. v. Diamond State Tel. Co.,*
    241 F. Supp. 847 (D. Del. 1965), ...................................................................21

*Delaware Sports Serv. v. Diamond State Tel. Co.,*
    355 F.2d 929 (3d Cir. 1966) ...........................................................................21

*FCC v. Midwest Video Corp.,*
    440 U.S. 689 (1979) .......................................................................................20

*FTC v. Verity Int'l, Ltd.,*
    443 F.3d 48 (2d Cir. 2006) .............................................................................14

Page ii -     PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
              TECHNOLOGY'S MOTION FOR SUMMARY
              JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

*Jesinger v. Nevada Federal Credit Union*,
24 F.3d 1127 (9th Cir. 1994) ..........................................................................10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)...........................................11

*National Ass'n of Regulatory Utility Commissioners v. FCC*,
525 F.2d 630 (D.C. Cir. 1976) ........................................................................15

*Tracy v. Southern Bell Telephone & Telegraph Co.*,
37 F. Supp. 829 (S.D. Fla. 1940) ....................................................................20

*Unigestion Holding, S.A. v. UPM Technology, Inc.*,
305 F. Supp 3d 1134 (D. Or. 2018) ..................................................................11

*Virgin Islands Telephone Corp. v. FCC*,
198 F.3d 921 (D.C. Cir. 1999).........................................................................16

*Western Union v. FCC*,
568 F.2d 1012 (2nd Cir. 1967)..........................................................................24

**Statutes**

47 U.S.C. § 151..........................................................................................17

47 U.S.C. § 152 ................................................................................... *passim*

47 U.S.C. § 153 .......................................................................................15, 16

47 U.S.C. § 201 ................................................................................... *passim*

47 U.S.C. § 202 ................................................................................... *passim*

47 U.S.C. § 214 ................................................................................... *passim*

**Other Authorities**

47 C.F.R. § 63.09 .......................................................................................11

Amendment to Parts 1 and 63 of the Commission's Rules, Report and Order, 22
FCC Rcd 11,398, 11,404 ¶ 8 (2007) ("Parts 1 and 63 Order")................................18

AT&T Submarine Systems, Inc., Cable Landing License 11 FCC Rcd. 14,885
(Int'l. Bur. 1996) ......................................................................................16

Final Acts of the World Administrative Telegraph and Telephone Conference,
Melbourne, 1988 (WATTC-88)........................................................................11

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

In the Need to Promote Competitive and Efficient Use of the Spectrum for Radio
    Common Carrier Services, Memorandum Opinion and Order and Order on
    Reconsideration, 4 FCC Rcd. 2369 (1989) ................................................................20

International Accounting Rates, First Report and Order, 7 FCC Rcd. 559, 562 ¶
    24 (1991) ...................................................................................................................16

International Section 214 Current Authorizations List, FCC International Bureau
    Filing System ............................................................................................................19

International Telecommunication Regulations, Melbourne, WATTC-88 .....................17

Regulatory Policies Concerning Resale and Shared Use of Common Carrier
    Services, Report and Order, 60 FCC.2d 261, 271 ¶ 17 (1976 ..................................16

PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
TECHNOLOGY'S MOTION FOR SUMMARY
JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), Plaintiff, Unigestion Holdings, S.A. ("Digicel Haiti") states that its counsel conferred by telephone on August 30, with counsel for Defendants regarding this motion. The parties made a good-faith effort to resolve the issues raised in this motion but were unable to do so.

**DIGICEL HAITI'S CROSS MOTION FOR SUMMARY JUDGMENT ON UPM TECHNOLOGY INC.'S COMMUNICATIONS ACT COUNTERCLAIMS AND RESPONSE IN OPPOSITION TO DEFENDANT, UPM TECHNOLOGY INC.'S MOTION FOR SUMMARY JUDGMENT – COMMUNICATIONS ACT**

Plaintiff Unigestion Holdings, S.A. ("Digicel Haiti") moves pursuant to Fed. R. Civ. P. 56 and LR 56, for summary judgment as to the Communications Act Counterclaims filed by Defendant and Cross-Plaintiff UPM Technology, Inc. ("UPM") and files this response in opposition to UPM's Cross Motion for Summary Judgment – Communications Act [ECF 386]. UPM's Answer, Affirmative Defenses, and Counterclaims [ECF 244] allege eleven affirmative defenses and ten counterclaims. Counts I – IV are bottomed on 47 U.S.C. §§ 201 and 202 for alleged "unreasonable discrimination" against UPM; Count V alleges a violation of 47 U.S.C. § 214; and UPM's fourth affirmative defense alleges that Digicel Haiti's actions violated the Act and the FCC decisions and policies (these counterclaims along with UPM's fourth affirmative defense are referred to collectively as "Communications Act Counterclaims").

## I.     INTRODUCTION

UPM's Communications Act Counterclaims are all bottomed on a single principal allegation—the allegation that Digicel Haiti is a "common carrier" and a "telecommunications carrier" within the meaning of the federal Communications Act of 1934 as amended, ("The Act"), with respect to its Roam Like You Are Home ("RLYH") service. ECF 386 at 1-4. UPM is wrong for many reasons, both factual and legal. As a threshold matter, UPM premises its arguments and conclusions on (1) misstatements of several material facts; (2) bald conclusory representations that have no good faith basis, save for the *ipse dixit* of counsel; and (3) conclusions that, based on the demonstrable infirmities of (1) and (2) above, are unsound and unsupportable. Digicel Haiti is

Page 1 -     PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
              TECHNOLOGY'S MOTION FOR SUMMARY
              JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

mindful that such a pointed indictment of UPM's "factual" recitations, demands a closer review of what UPM has offered up as the "facts" to support its conclusions and analysis. That review immediately follows this introduction. Thereafter, Digicel Haiti will articulate the actual facts—as supported by the record—to be considered by this Court in its analysis of the pending question. To wit, is Digicel Haiti a common carrier with respect to its RLYH program, such that it is subject to the jurisdiction of the FCC and the Act? The answer is a resounding "no!" Finally, Digicel Haiti will review the controlling law, including the applicable sections of the Act that command the ultimate conclusion that with respect to its RLYH program, Digicel Haiti is not a common carrier subject to the Act and the jurisdiction of the FCC.

Upon a review of the (actual) facts and a review of the law, it will be abundantly clear that: (1) Digicel Haiti is a foreign carrier and therefore not subject to the Act or the FCC's regulatory jurisdiction; (2) because it is not a common carrier subject to the Act, Digicel Haiti is not subject to the restrictions set forth in Sections 201 and 202; (3) even if Digicel Haiti was deemed to be a "common carrier" under the Act and subject to the jurisdiction of the FCC, UPM has not and cannot establish that it made a reasonable request to Digicel Haiti which was unreasonably denied in discriminatory fashion; and, (4) even if UPM overcame the record evidence and the law, and somehow convinced this Court that it created a "customer" relationship with Digicel Haiti, that relationship travels with both benefits and burdens. One such burden would be the terms and conditions of the customer relationship which preclude all of UPM's bypass activities and grant Digicel Haiti the unconditional right to terminate this "relationship" on suspicion of improper or illegal activities.

In short, under *any* scenario, Digicel Haiti is entitled to summary judgment on UPM's counterclaims based on the Communications Act and UPM's corresponding motion for summary judgment should be denied.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

A.     **UPM's Account of the "Facts" is Incorrect and Unreliable and Should Be Disregarded in Its Entirety**

Digicel Haiti is aware that in any lawsuit, opposing parties are expected and even encouraged to articulate their respective positions on certain facts which may be subject to "interpretation."  Even in those instances, however, it remains a universal truth that the "facts" are not what change, but rather, room for disagreement may lie in what certain facts mean—especially in conjunction with other related facts.  To be clear, zealous advocacy is not what Digicel Haiti takes issue with here.  As such, Digicel Haiti will not attempt to refute every single factual assertion from UPM with which it disagrees, but rather, only those facts that have been misrepresented— either affirmatively or by material omission—in such a fashion as to unfairly skew the consideration of the arguments or law to be contemplated by this Court.[1]

Here, Digicel Haiti sets forth only those assertions that have been represented as "facts" by UPM, which are clearly wrong or otherwise misleading because they are materially incomplete.

***UPM misrepresents the target demographic of the Digicel Haiti RLYH Service***.  *See* ECF 386 at 1.  While it should not be an issue in dispute, UPM consistently and purposefully misrepresents Digicel Haiti's RLYH as a program available to "any holder of a Digicel Haiti SIM card in the United States (or some variation of this description)."  Rather than accurately stating that RLYH is offered to Digicel Haiti customers in Haiti who may be traveling in the United States or qualified Digicel market, UPM disingenuously suggests that Digicel Haiti targets the service to ***anybody*** from anywhere, who can lay hands, by any means, on a Digicel Haiti Sim card.  Nothing in the record supports this preposterous position because it is simply not true.  RLYH is a "service which allows Prepaid and Postpaid [Digicel Haiti] *customers who travel abroad* to benefit from local calling rates *as if they were still in Haiti*.  Digicel Haiti - Roam Like You're Home Terms and Conditions Webpage (Pl.'s Trial Ex. 66) (Emphasis added).  It is a service which allows all *Digicel*

---

[1]     By opting not to highlight those other questionable "facts" here, Digicel Haiti does not suggest that it agrees with them, but rather that it understands that some level of creative advocacy is to be expected and tolerated.

Page 3 -     PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM TECHNOLOGY'S MOTION FOR SUMMARY JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

*Haiti* subscribers to opt-in to a specialized rate plan while roaming in the USA … for a limited time (30 days). *See Id.* at Clause 1; *see* also Decl. of B. Tran at para. 25 (DE 256). It is obvious that a local U.S. user, like UPM, is not "traveling abroad" and cannot be calling "as if they were in Haiti" as contemplated in the terms and conditions, even setting aside that they are not a customer, because they were never in Haiti to begin with.

Further, contrary to UPM's alleged "fact", Digicel Haiti did not "configure its network and systems so that any holder of a Digicel Haiti SIM card in the United Sates can become a customer by activating the card automatically on the network of Digicel Haiti's roaming partner." ECF 386 at 1. At first blush this statement appears harmless, but it is insidiously deceptive. Here is why: Digicel Haiti did not take any affirmative steps to "configure its network" to facilitate non-subscribers. It did not take any affirmative steps to facilitate bypass or "RLYH re-sale" and there is **nothing** in the record that supports such a representation. Dig a little bit deeper into the implications of the statement, however, and it becomes apparent that what UPM is actually offering as "fact" is that because it [UPM] and Mr. Tran were able, through fraud and deception, to penetrate Digicel Haiti's network, then the network must have been "configured" that way to allow the hack! The logical extension of this *argument* posing as "fact" is that if a criminal actor (for example) is able to hack into an ATM machine by gaining access to an ATM card, or hack into a cable box by accessing a pin card, or hack into any electronic system for that matter, then it must have been (affirmatively) configured by the unsuspecting target to allow that violation, thus negating the criminal nature of the act because it was "permitted" by insufficient safeguards.

That is not all. UPM further suggests that having hacked into the Digicel Haiti system, it is transformed from a hacker to a "customer" of Digicel Haiti's. So, by pretending that it is a (human) traveling Digicel Haiti subscriber, desirous of roaming while in the United States, UPM argues that it has now created a company-customer relationship with Digicel Haiti. But in this alleged customer-company relationship, no meeting of the minds occurred. UPM's position is preposterous, and the "representation" is factually inaccurate.

Page 4 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
TECHNOLOGY'S MOTION FOR SUMMARY
JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Further, UPM misrepresents that there is "no opportunity for direct communication between Digicel Haiti and the SIM card holder" and that the RLYH subscription is achieved by merely "entering a few codes into the system." ECF 386 at 1-2. While partially correct, to the extent that the subscription process does allow the subscriber to complete subscribe by entering a series of "codes into the system," the representation is, nevertheless materially incorrect because UPM fails to disclose that some of those codes are entered in direct response to requests from Digicel Haiti for confirmations from the subscriber. Specifically, UPM omits that to subscribe to RLYH service using a customer handset while traveling, a Digicel Haiti subscriber must:

A) Dial *186# from their Digicel phone [then] they receive a message from the system with further instructions;

B) Next the customer needs to *confirm the subscription* by dialing *186*1# or if they do not wish to subscribe they can cancel the request by dialing *186*9#;

C) *Once the customer has confirmed the subscription* by dialing *186*1# they will receive the activation confirmation message from Digicel. *See* Digicel Haiti - Roam Like You're Home Terms and Conditions Webpage at Clause 2 (Pl.'s Trial Ex. 66).

This sequence of "codes" presents a series of direct exchanges between the roaming Digicel Haiti customer and Digicel Haiti. ***Only by first pretending to be a customer and then through the use of Human Behavior Software*** designed to hide the fact that these responses were fraudulent communications being directed through UPM's SIM servers in Oregon and not from an actual human being, was UPM able to "subscribe" its illegally acquired SIMs to the RLYH service. To suggest that there was "no opportunity for direct communication" between UPM and Digicel Haiti when UPM programmed its software to cause its servers to "respond" to confirmation requests, in sequence, from Digicel Haiti while pretending it was a human customer, is not merely semantics, it is false. UPM first initiates the "request" to subscribe to the RLYH service by concealing its true identity and instead pretending it is a traveling Digicel Haiti customer. It then accepts the instructions and "confirms" that it indeed wishes to "subscribe". Finally, it receives the

Page 5 -     PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
             TECHNOLOGY'S MOTION FOR SUMMARY
             JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

"confirmation" and begins to fraudulently utilize the RLYH service in Bypass.

*UPM misrepresents that Digicel Haiti "offered RLYH service to SIM card holders in the United States."* ECF 386 at 2. This suggestion is simply false. The truth is that Digicel Haiti offers RLYH to its subscribers in Haiti "who travel abroad" to allow them to benefit from local calling rates while roaming "as if they were still in Haiti." Id. It is *possible* that UPM simply forgot to insert the word "travelling" between "…SIM card holders…" and "…in the United States …" when it made this representation. ECF 386 at 2. Under the circumstances, however, to assume such innocence would be naïve. For ease of reference, the relevant section of UPM's brief is excerpted here:

> Offering RLYH service to SIM card holders in the United States makes Digicel-Haiti a "telecommunications carrier" under the Act. The telephone calls being offered by RLYH service (calls from the United States to Haiti) are "telecommunications." *See* 47 U.S.C. § 153(50). RLYH service is a "telecommunications service" because it is offered "for a fee…to the public." *See* 47 U.S.C. § 153(53). And because RLYH is a "telecommunications service," Digicel-Haiti, in offering it, is a "telecommunications carrier." 47 U.S.C. § 153(51). It is that simple.
>
> Digicel-Haiti's various objections to this conclusion are meritless. First, Digicel-Haiti has claimed that under 47 U.S.C. § 152(b), the Act does not apply to it at all, essentially due to its status as a foreign carrier. But that provision only exempts entities whose "sole" involvement in United States communications activities is a physical connection with an independent United States carrier. Here, Digicel-Haiti is a telecommunications carrier by virtue of its offering of RLYH service to SIM card holders in the United States. Far from being the "sole" basis for its carrier status, its physical interconnection arrangements are irrelevant.

ECF 386 at 2.

Its briefing suggests that UPM's representation is not merely "creative argument", nor is it just a "technicality" or an innocently erroneous turn of a phrase. UPM's motion for summary judgment confirms a purposeful effort to create the necessary independent premise for the second part of this representation, that it "…makes Digicel Haiti a 'telecommunications carrier' under The

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

Act." *Id.*  Without the false independent clause, (Offering RLYH service to SIM card holders in the United States…), the dependent clause characterizing Digicel Haiti as a Telecommunications Carrier under the Act, fails.  Without that false statement (suggesting that RLYH is offered to SIM card holders in the United States), the subsequent sentence which suggests that RLYH is a telecommunications service ***because*** it "is offered for a fee …*to the public*" also fails, ECF 386 at 2, because it begs the obvious question—which "public"?

Even if one were inclined to grant UPM the benefit of the doubt, any such grace should quickly evaporate when we move to the next paragraph where UPM doubles down on the demonstrably false statement.  In the next paragraph, however, the roles of dependent and independent clauses are reversed and rather than serving as the dependent clause in this misrepresentation ("…makes Digicel Haiti a telecommunications carrier…"), the representation is now that "Digicel Haiti is a telecommunications carrier by virtue of its offering of RLYH service to SIM card holders in the United States." [ECF 386 at 2].

Almost as if UPM doesn't expect anyone to notice, it offers up the tautology that is the crux of its entire counterclaim—Digicel Haiti offers RLYH to Sim Card holders in the United States, which makes it a telecommunications (common) carrier.  In further support, because RLYH is a telecommunications service, Digicel Haiti is a common carrier by virtue of offering RLYH to Sim Card holders in the USA.

The significance of the tautology is highlighted in the next paragraph.  There, UPM attempts to dismiss the section of the Act which strikes a fatal blow to its entire claim, 47 U.S.C. § 152, which clarifies that the Act *does not apply to foreign carriers*.  Now, having been thrice stated, this falsehood[2], which began life as a humble dependent clause, then quickly promoted to an independent clause, is now being offered up as gospel truth to dispel the application of 47 USC

---

[2]    That RLYH—a telecommunications service—is offered by Digicel Haiti to SIM card holders in the United States.

Page 7 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
            TECHNOLOGY'S MOTION FOR SUMMARY
            JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

§ 152.  Contrary to UPM's argument, it is not "that simple."  Rather, the assertion that Digicel Haiti offers RLYH to SIM card holders in the United States is, simply, false.

## B.    The Actual Facts

While there is a broader set of facts that has been and will be recounted relating to the fraud claim, there is a subset that bears repeating here with specific regard to the Communications Act Counterclaims.

Digicel Haiti operates a telecommunications network in Haiti and is part of the "Digicel Group" of companies.  Digicel Haiti operates solely in Haiti, and through its relationships with Digicel USA and Digicel Jamaica, it engages in roaming relationships with telecommunications carriers throughout the world.

Defendants admit to the following set of facts which are not in dispute:

1.    UPM acquired Digicel Haiti SIM cards from individuals in Haiti who allegedly purchased Digicel-Haiti SIM cards [from undetermined sources] and had those SIM cards shipped to UPM in Oregon.  *See* ECF 247 at 3; Third Am. Compl. [ECF 200] ("TAC"); Defs.' Am. Answer [ECF 244] ("Defs.' Answer"), ¶¶50, 65, 86, 97; UPM Tech.'s Resp. to First Req. For Admis. Nos. 9-13 [ECF 270-8 at 3-4]; UPM Corp. Rep. Dep. 106:19 – 110:19. There is no allegation that UPM "acquired" any Digicel Haiti SIM cards from a source in the United States.

2.    UPM activated those SIM cards (ECF 247 at 3; Defs.' Answer at ¶¶87-90), and used them to initiate and authenticate two types of bypass calls: (a) calls sent to Haiti via the Internet and originated on Digicel-Haiti's network. (ECF 247 at 3, Defs.' Answer at ¶¶57, 68, 82); and (b) "Roam Like You're Home" ("RLYH") calls sent through the United States network of a Digicel Haiti domestic roaming partner, sent by that carrier to Digicel Haiti (ECF 247 at 3; Defs.' Answer at ¶¶83, 129).

3.    Defendants agree that UPM linked or packaged third party calls bound for Digicel Haiti customers with the calls UPM initiated using the Digicel Haiti SIMS.  ECF 247 at 3; Defs.' Answer at ¶¶57, 68, 82.

Page 8 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
TECHNOLOGY'S MOTION FOR SUMMARY
JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

4.    Defendants acknowledge that Digicel Haiti relied on the actions taken by Defendants by charging UPM the rate for local calls in Haiti, rather than the standard rate for inbound international calls.  ECF 247 at 3; Defs.' Answer at ¶¶58, 136.

5.    Finally, Defendants agree that when it concluded that a SIM card was being used for Bypass, Digicel Haiti took action to interrupt or block the SIM Card from being further used. ECF 247 at 3; ECF 245; and Defs.' Answer at ¶312.

Defendants utilized multiple anti-bypass detection techniques in both types of Bypass, including the use of HBS, to induce Digicel Haiti to connect calls being routed through Bypass by creating the false impression that calls were being placed by individual [human] subscribers rather than by UPM's SIM Servers and Gateways.  *See* UPM's Resp. to Pla.'s First Req. for Admis. [ECF 46-C]; UPM Tech. Resp. to First Req. for Admis. No. 22; Dep. Tr. of UPM Tech. Corp. Rep. 552 – 553; Dep. Tr. of McEwen 127 – 128.

These actions, individually and collectively, actively concealed Defendants' use of Digicel Haiti SIM cards to terminate Bypass calls unto the Digicel Haiti network.  Defendants admit that they committed these acts.

## II.    LEGAL ARGUMENTS

UPM's counterclaims rely on the demonstrably inaccurate positions that: (1) Digicel Haiti's resale of its RLYH service in Haiti, to complete international calls facilitated by its U.S. Domestic Carrier roaming partners; and, (2) Digicel Haiti's actions in Haiti to disconnect SIM Cards which it suspected were being used illegally in Bypass, are both subject to U.S. law and regulation.  UPM claims that Digicel Haiti's arrangements with Domestic Carriers to provide roaming access to its subscribers in Haiti while they are traveling abroad, constitutes "resale" of that RLYH service *in the United States* and further, that disconnection *in Haiti,* of Digicel Haiti SIM cards that were suspected of being used in Bypass, constitutes discriminatory conduct under The Act, giving rise to various claims in the United States.

Digicel Haiti argues that UPM's Counterclaims based on The Act all fail because Digicel

Page 9 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
        TECHNOLOGY'S MOTION FOR SUMMARY
        JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Haiti is not a U.S. common carrier subject to The Act. An analysis of The Act's relevant provisions and an abundance of legal and regulatory precedents, confirm that Digicel Haiti is a foreign carrier, outside of the jurisdiction of The Act and FCC regulation. Consistent with this conclusion, is the fact that Digicel Haiti only operates within Haiti and the specific conduct complained of occurred outside of the United States which would necessarily require an extraterritorial application of the Act under UPM's theory of liability. These fatal deficiencies in UPM's Counterclaims dictate summary disposition of all of UPM's Communications Act Counterclaims.

Under the same analysis, Digicel Haiti is in turn, entitled to an order on summary judgment that Digicel Haiti is a foreign carrier and not a common carrier under the Act and therefore not subject to the Sections 201, 202 or 214 of the Act or to FCC jurisdiction regarding the sale of its RLYH discount rate program in Haiti. Alternatively, Digicel Haiti is entitled to summary judgment as to UPM's section 201 and 202 claims because it cannot establish that it made reasonable request to Digicel for access to resale which request was unreasonably denied with discriminatory intent.

### A.    Standard For Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127 (9th Cir. 1994).

Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see Jesinger*, 24 F.3d at 1130. The nonmovant "may not rest upon the

Page 10 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
TECHNOLOGY'S MOTION FOR SUMMARY
JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

**B.**   **Digicel Haiti is Not a Common Carrier Under the Act and is Therefore Entitled to Summary Judgment on All of UPM's Communications Act Claims**

**1.**   **Digicel Haiti is a foreign carrier, over which the FCC does not have jurisdiction.**

The FCC distinguishes foreign carriers from U.S. (domestic) telecommunications carriers. The FCC defines a "foreign carrier" as "any entity that is authorized within a foreign country to engage in the provision of international telecommunications services offered to the public in that country within the meaning of the International Telecommunication Regulations, *see Final Acts of the World Administrative Telegraph and Telephone Conference, Melbourne, 1988 (WATTC-88), Art. 1*, which includes entities authorized to engage in the provision of domestic telecommunications services if such carriers have the ability to originate or terminate telecommunications services to or from points outside their country."[3]  The FCC "claims no authority to directly regulate foreign carriers."[4]  This limitation is reflected in Sections 63.09 through 63.25 of the FCC's rules, which consistently distinguish a foreign carrier from a U.S. international carrier.[5]  This distinction was also recognized by the Court in the instant dispute between Digicel Haiti and UPM.[6]

The FCC does not have a "policy" toward foreign carriers *per se*.  By definition, it does

---

[3]   47 C.F.R. § 63.09(d).

[4]   *Cable & Wireless P.L.C.*, 166 F.3d 1224, 1229 (1999) (citation omitted) (finding that the FCC's order regulating the settlement rates that U.S. carriers paid to foreign carriers did "not regulate foreign carriers or foreign telecommunications service and therefore does not violate the Communications Act.").

[5]   47 C.F.R. §§ 63.09 through 63.25.

[6]   *Unigestion Holding, S.A. v. UPM Technology, Inc.*, 305 F. Supp 3d 1134, 1154 (D. Or. 2018).

Page 11 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
            TECHNOLOGY'S MOTION FOR SUMMARY
            JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

not regulate foreign carriers unless they are also engaged in the offering of U.S. international telecommunications services (*see infra*).  As demonstrated in the dispute over international settlement rates, the FCC has sought to limit the impact of foreign carrier behavior on U.S. consumers by directly regulating what U.S. international carriers may and may not contract for— not by attempting to regulate foreign carriers directly.[7]

As evidenced by its licenses, marketing, and Terms and Conditions of service, Digicel Haiti offers mobile voice and broadband services in Haiti.  Digicel Haiti does not offer its services to subscribers outside of Haiti.  See UPM Tech., Inc.'s Response to Second Request for Admissions, No. 9 (ECF 267-13); *see also* ECF 294 at 9.

Section 2 of the Act does not authorize the FCC to regulate foreign telecommunications services provided in a foreign jurisdiction.  Rather, the Act authorizes the FCC to regulate all interstate and foreign communication "***which originates and/or is received within the United States, and to all persons engaged within the United States in such communication or such transmission*** . . ."[8]  Section 2 refers to "interstate communications" and "foreign communications" in order to define the limit of its jurisdiction vis-à-vis state public utilities commissions and foreign governments, respectively.  From the text, it is clear that "foreign communication" is communication that has a geographic nexus with the United States.

The Communications Act states in relevant part:

(a) The provisions of this chapter shall apply to all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States, and ***to all persons engaged within the United States*** in such communication or such transmission of energy by radio, and to the licensing and regulating of all radio stations as hereinafter provided;

---

[7]    *See Cable & Wireless*, 166 F.3d at 1229.

[8]    *See* 47 U.S.C. § 152(a), 201 (emphasis supplied).

Page 12 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
          TECHNOLOGY'S MOTION FOR SUMMARY
          JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

. . .

(b) Except as provided in sections 223 through 227 of this title, inclusive, and section 332 of this title, and subject to the provisions of section 301 of this title and subchapter V–A, nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier, or (2) *any carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier*, or (3) any carrier engaged in interstate or foreign communication solely through connection by radio, or by wire and radio, with facilities, located in an adjoining State or in Canada or Mexico (where they adjoin the State in which the carrier is doing business), of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier. . .

47 U.S.C. § 152 (a) & (b) (emphasis supplied). The language of Section 152 confirms that *foreign carriers are not common carriers in the U.S.* or subject to the Act simply because they engage in foreign communication solely through physical connection with the facilities of another (domestic) carrier. Section 152 mandates application to "all interstate and foreign *communications*" on the one hand but to only those "*persons*" on the other hand, who *engage within the U.S. in such communications*. *Id.* (emphasis supplied). This distinction is paramount as it applies directly to the facts of this case. The FCC regulates all communications within the U.S., but it does not regulate foreign carriers who do not "engage" with those communications within the United States, such as Digicel Haiti.

Digicel Haiti does not engage with communications in the U.S., hence the necessity for its roaming agreements with U.S. carriers. *See* Dep. Tr. of Digicel Haiti Corp. Rep. (Boute) 76:20-25; 86:17-20; 88:2-4; 78:10-17 (describing U.S. host networks through which it provides roaming access and the operation of the roaming agreements between Digicel Haiti and U.S. domestic carriers). UPM admits that this is indeed the case in its response to requests for admissions. "UPM admits that Digicel-Haiti's physical network occurs solely in Haiti." UPM Tech., Inc.'s Resp. to Second Req. for Admis., No. 9. UPM continues its response by acknowledging that Digicel Haiti

Page 13 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM TECHNOLOGY'S MOTION FOR SUMMARY JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

uses roaming agreements with United States carriers to transmit calls by its subscribers while they are roaming. *Id.* It further acknowledges Digicel Haiti's use of roaming agreements to facilitate calls made by its subscribers while they are roaming in the U.S. in its Motion to Compel. ECF 247 at 3 citing Answer at ¶¶83, 129 ("Digicel Haiti receives calls made in the U.S. from a Digicel Haiti roaming partner with a U.S. network.").

This distinction between foreign telecommunications on the one hand and foreign carriers on the other, is further confirmed by federal courts interpreting the extent of the FCC's jurisdiction to enforce the Act. "The Communications Act authorizes the Commission to regulate 'foreign telecommunications.' The Commission claims no authority to directly regulate foreign carriers." *Cable & Wireless P.L.C. v. FCC*, 334 U.S. App. D.C. 261, 166 F.3d 1224, 1229 (1999) (relying on the differentiation between foreign and domestic carriers to uphold application of order to "carriers within [Commission's] jurisdiction" noting that FCC "claims no authority to directly regulate foreign carriers"); *see also FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 59 (2d Cir. 2006) ("As indicated by the 'engaged within the United States' limitation, The Communications Act does not apply to foreign terminating carriers.").

Here, there has been no evidence presented to raise an issue of material fact as to whether Digicel Haiti "engages within the United States" as is required by Section 152 to be considered a U.S. common carrier. *See Supra (*UPM's debunked representations regarding Digicel Haiti offering RLYH in the U.S.). Rather, Digicel Haiti has confirmed time and again that it is a wholly foreign carrier that *only* operates in Haiti and is therefore not subject to the strictures of The Communications Act. TAC at ¶ 15. UPM's own discovery responses confirm this to be true. *See* UPM Tech. Inc's Res. to Second Req. for Admis. No. 9 ("UPM admits that Digicel-Haiti's physical wireless retail network is entirely located in Haiti, so the operation of that network occurs solely in Haiti."). Digicel Haiti does not engage with interstate or foreign communication within the United States except solely through physical connection with the facilities of another domestic carrier, and as a matter of law it is not a common carrier as defined by The Act. *See* Dep. Tr. of

Page 14 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
             TECHNOLOGY'S MOTION FOR SUMMARY
             JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

Digicel Haiti Corp. Rep Boute at 97-98 (discussing Digicel Haiti's use of roaming partners to carry traffic within and from the U.S.), 103:23-25; and 104:1-11 (noting that Digicel Haiti is not even responsible for marketing in the United States). Accordingly, as a matter of law, Digicel Haiti is not a common carrier subject to the strictures of The Act on which UPM's Communications Act Counterclaims rely. Summary judgment as to UPM's claims bottomed on the Act is required against UPM and in favor of Digicel Haiti.

Further, section 2 does not define the scope of common carriage. Rather, the scope of entities subject to Sections 201, 202, and 214 is set forth in Title II of the Communications Act, not in Title I as has been suggested by UPM. Because Section 2 does not purport to define the scope of "common carriers", the language of Section 2 is not read to mean that *every* party involved in transmitting or receiving foreign communications is a common carrier requiring international Section 214 authority or subject to Sections 201 and 202 of the Communications Act.[9]

### 2.    Digicel Haiti is not a U.S. common carrier because it does not offer any services to the public in the United States.

It has been well documented that The Act defines "common carrier" with a tautology:

> "The term 'common carrier' or 'carrier' means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier."[10]

For a telecommunications offering to constitute a common-carrier service, the provider must make an indifferent offering to the public or a subset thereof.[11]

---

[9]    See generally, 47 U.S.C. §§ 201 et seq.

[10]    Id. § 153(11).

[11]    See *National Ass'n of Regulatory Utility Commissioners v. FCC*, 525 F.2d 630, 642 (D.C. Cir. 1976) ("NARUC I") (stating that the court must inquire "whether there are reasons implicit in the nature of . . . [the] operations to expect an indifferent holding out to the eligible user public"), *cert. denied*, 425

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

A "telecommunications carrier" is, with an exception not relevant here, a "provider of telecommunications services."[12] The Act defines a "telecommunications service" as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used."[13] A telecommunication is a "transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received."[14] Because this statutory definition of "telecommunications service" generally tracks the judicial language of *NARUC I* for determining when a service is a "common carrier" service, both the FCC and the courts have applied the *NARUC I* test to determine when a service is a "telecommunications service."[15]

The FCC has determined that resale "is a common carrier activity" that requires international Section 214 authority.[16] "Resale" is "an activity wherein one entity subscribes to the communications services and facilities of another entity and then reoffers communications service and facilities to the public (with or without 'adding value') for profit."[17] As with any common-carrier service, there must be an offering to the public or a subset thereof.

Although the Act does not expressly state that the Commission does not have the authority to regulate the offering of communications services in a foreign country, it does expressly *only* grant the Commission the authority to regulate interstate and foreign communications that

---

U.S. 992 (1976).

[12]    47 U.S.C. § 153(51).

[13]    Id. § 153(53).

[14]    Id. § 153(50).

[15]    AT&T Submarine Systems, Inc., Cable Landing License 11 FCC Rcd. 14,885, 14,903 (Int'l. Bur. 1996) ("St. Thomas-St. Croix Bureau Order"), aff'd, 13 FCC Rcd. 21585 (1998), *aff'd Virgin Islands Telephone Corp. v. FCC*, 198 F.3d 921, 926-29 (D.C. Cir. 1999) ("Vitelco").

[16]    See International Accounting Rates, First Report and Order, 7 FCC Rcd. 559, 562 ¶ 24 (1991).

[17]    Regulatory Policies Concerning Resale and Shared Use of Common Carrier Services, Report and Order, 60 FCC.2d 261, 271 ¶ 17 (1976).

Page 16 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
             TECHNOLOGY'S MOTION FOR SUMMARY
             JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

originate or terminate in the United States and the persons engaged within the United States with the offering of such services in the United States and its territories.[18]  This is entirely consistent with the statute's purpose. In enacting the Communications Act, the U.S. Congress sought to:

> …[M]ake available, so far as possible, to all the people of the United States . . . efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications…."[19]

This understanding is also consistent with the jurisdictional scheme articulated in the International Telecommunications Regulations ("ITRs") referenced in the FCC's "foreign carrier" definition, which recognizes the right of each state to regulate international telecommunications and the offering of such international telecommunications to its public.[20]

The Act is therefore intended to regulate what is made available to the people of the United States, not the people of foreign countries.  Here, it is undisputable that the RLYH services offered by Digicel Haiti are offered in Haiti—whether by resale or otherwise—and not in the United States.

---

[18]    See generally 47 U.S.C. §§ 152

[19]    47 U.S.C. § 151.

[20]    See International Telecommunication Regulations, Melbourne, WATTC-88, preamble (stating that "the sovereign right of each country to regulate its telecommunications is fully recognized"), art. 1.1(a) (stating that "these Regulations establish general principles which relate to the provision and operation of international telecommunication services offered to the public as well as to the underlying international telecommunication transport means used to provide such services"), and 1.7(a) (stating that "these Regulations recognize the right of any Member, subject to national law and should it decide to do so, to require that administrations and private operating agencies, which operate in its territory and provide an international telecommunication service to the public, be authorized by that Member.")

Page 17 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM TECHNOLOGY'S MOTION FOR SUMMARY JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

**3.**    **Neither the Communications Act nor the FCC's implementing regulations treats a foreign carrier's offering of roaming services to its subscribers that visit the United States as resale of international telecommunications services in the United States.**

The FCC treats a carrier's offering of roaming services to its subscribers as resale of such services *in its home market*, not resale in the market where its subscribers are roaming.  This is evident where the FCC defines the relationship between U.S. common carriers engaged in roaming arrangements with foreign carriers in their home territories as resale of international services and the relationship between a U.S. common carrier and a foreign carrier as performance of a roaming agreement or other arrangement.

> We amend sections 63.18(e)(2) and 63.23(c) of our rules to permit explicitly all U.S.-authorized resale carriers to provide international service by reselling the international services of any other authorized U.S. common carrier or foreign carrier, *or* by entering into a roaming or other arrangement with a foreign carrier.[21]

(Emphasis added).

The FCC regulates as common-carrier resale, the offering of roaming services by U.S. carriers to their subscribers traveling outside the United States and using the networks of host foreign carriers.  On this very issue, the FCC noted "[W]e disagree, however, with certain commenters who argue that U.S-CMRS carriers' offering of international roaming service which allows customers roaming abroad to call back to the United States does not involve the "resale" of the U.S.-inbound service of a foreign carrier."[22]  Similarly and diametrically contrary to UPM's conclusion, under this analysis, the offering of outbound roaming services (from the US to an international destination) by foreign carriers to their subscribers traveling in the United States and using the networks of U.S. carriers to facilitate that access, would be an offering of resale services

---

[21]    Amendment to Parts 1 and 63 of the Commission's Rules, Report and Order, 22 FCC Rcd. 11,398, 11,404 ¶ 8 (2007) ("Parts 1 and 63 Order").

[22]    Id. at ¶ 20.

Page 18 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM TECHNOLOGY'S MOTION FOR SUMMARY JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

*in the foreign market*—not resale in the United States.[23]

UPM not surprisingly, draws the incorrect conclusion because it chooses to ignore that the FCC and the Act are deemed applicable to regulate calls coming into the United States because the calls are being "re-sold" by a domestic (United States) carrier providing roaming to its US subscribers as a part of its international call services. UPM conveniently and completely ignores the part of the analysis where Digicel Haiti—a foreign carrier—providing services to its Haiti subscribers, would be regulated as a re-seller by Haitian regulators in Haiti, ***not by United States regulators***, where it regulates the host carrier providing the facilities, not the foreign carrier accessing roaming solely through physical connection with that domestic carrier.

As one might expect, this is not a novel question. A review of the FCC's licensing records and databases confirms that foreign carriers offering their subscribers the ability to roam on U.S. carriers' networks do not hold international Section 214 authority in order to offer such roaming services to their subscribers visiting the United States.[24] ***None*** of the world's principal foreign mobile carriers—for example, Vodafone UK (United Kingdom), Orange S.A. (France), T-Mobile (Germany), Movistar (Spain and much of Latin America), América Móvil (Mexico and much of Latin America), TIM (Italy and Brazil), China Mobile (China), and Docomo (Japan)—hold international Section 214 authority to allow their home market subscribers to roam in the United States, although each has one or more U.S. subsidiaries that offer other services in the U.S. market and hold international Section 214 authority to provide those services.

Without any basis in law or fact, UPM proposes a reckless and unprecedented "heads I

---

[23]    See ECF 386 at 18, n. 2 where UPM acknowledges that RLYH is "the same arrangement in the opposite direction" but nonetheless concludes that outbound resale should still be subject to U.S. regulation.

[24]    See International Section 214 Current Authorizations List, FCC International Bureau Filing System, https://licensing.fcc.gov/cgi-bin/ws.exe/prod/ib/forms/reports/swr029b.hts?as_subsystem_code=ITC/INTERNATIONAL+SECTION+214&column=V_SITE_ANTENNA_FREQ.file_numberC/FILE+NUMBER&fstate=1/CURRENT&prepare=.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

win, tails you lose" upheaval of telecommunications policy that would lead this Court to error by ultimately rendering *every international* telecommunications provider that utilizes the facilities of a domestic U.S. carrier to provide roaming access to its subscribers, subject to FCC regulatory jurisdiction pursuant to the Act.

> **4.    UPM's fraudulent and unauthorized use of Digicel Haiti SIM cards in violation of Digicel Haiti's Terms and Conditions does not create an offering, or obligation to offer common-carrier resale services in the United States.**

Section 201(a) of the Act provides that "it shall be the duty of every common carrier engaged in interstate or foreign communication by wire or radio to furnish such communication service *upon reasonable request therefor*."[25] (Emphasis added.)    This obligation extends to providers of mobile services.[26] "A common-carrier service in the communications context is one that 'makes a public offering to provide [communications facilities] whereby all members of the public who choose to employ such facilities may communicate or transmit intelligence of their own design or choosing."[27]

Secret or illicit misuse of a carrier's facilities, without its knowledge or assent, does not create an offering of a telecommunications service, or a reasonable request therefor, whether on a re-sale or facilities basis. "Although telephone companies, as public utilities, are required to furnish their facilities to the public indiscriminately so long as such facilities are used for lawful purposes, it is well settled that a telephone company may refuse, and cannot be compelled, to furnish service which will be used, *or which the Telephone Company has reasonable cause to believe will be used, in furtherance of illegal enterprises*."[28] "[T]he law does not require the utility

---

[25]    47 U.S.C. § 201(a).

[26]    See In the Need to Promote Competitive and Efficient Use of the Spectrum for Radio Common Carrier Services, Memorandum Opinion and Order and Order on Reconsideration, 4 FCC Rcd. 2369 (1989).

[27]    *FCC v. Midwest Video Corp.*, 440 U.S. 689, 701 (1979) (footnote omitted).

[28]    *Tracy v. Southern Bell Telephone & Telegraph Co.*, 37 F. Supp. 829 (S.D. Fla. 1940) (finding that plaintiffs' use of telephone facilities to place wagers on horse races provided the defendant telephone

Page 20 -    PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
                TECHNOLOGY'S MOTION FOR SUMMARY
                JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

company to prove, as a fact, that the service is used to aid an illegal purpose. The law allows the utility to terminate service if it can prove that it reasonably believes that the service is being so used."[29]

Here, the fact that UPM secretly and illegally acquired and subsequently misused—in the United States—SIM cards that Digicel Haiti made available and offered for use by its subscribers in Haiti as part of Digicel Haiti's mobile services for its customers in Haiti, does not create an offering that triggers this "service on demand" requirement.  Neither does it create an obligation to facilitate resale subject to licensing requirements under Section 214.  UPM admits, through Duy Tran, that it ***never*** approached Digicel Haiti regarding a possible business relationship.  (Decl. of B. Tran at ¶¶ 29-30 (ECF 256.)).  Rather, the record evidence confirms that it was UPM's business plan to avoid contact with Digicel Haiti at all costs and to hide its very presence in the Haiti market from Digicel Haiti and the Haiti regulators as a part of its Bypass scheme.  Handcuffed by its own admissions, UPM cannot now make an argument that it made a reasonable request of Digicel Haiti for services and so it must lose—as a matter of law—on its Section 201 and 202 claims.

Applying the definition of "resale" referenced in B.2. *supra*, UPM did not make reasonable request of any Digicel Haiti offering of a resale service in the United States.  Instead, it misrepresented itself as a Digicel Haiti customer and used Digicel Haiti SIM cards to access a subscription provided for its customers for a special discount rate plan, to trick Digicel Haiti into terminating international calls sold by UPM to third parties for profit.  In other words, to effectuate Bypass.

---

company with a basis for refusing service).

[29]    *Delaware Sports Serv. v. Diamond State Tel. Co.*, 241 F. Supp. 847, 852 (D. Del. 1965), aff'd sub nom. *Delaware Sports Serv. v. Diamond State Tel. Co.*, 355 F.2d 929 (3d Cir. 1966) (dismissing claim for unauthorized termination of telephone service based on telephone provider's belief that plaintiff was engaged in illegal gambling activities).

Page 21 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
            TECHNOLOGY'S MOTION FOR SUMMARY
            JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

**5.    Even if Digicel Haiti was determined to be a U.S. common carrier, its interruption of SIM cards which were fraudulently used by UPM in violation of Digicel Haiti's Terms and Conditions would not violate Section 201(b) or 202 of the Act.**

Section 201(b) of the Act declares unlawful, any tariffs, rates or charges that are "unjust or unreasonable."[30]  There are hundreds of precedents that address unjust and unreasonable carrier rates and terms and conditions issues that are not all directly relevant to the scenario at hand.  The most applicable precedents are those involving toll fraud.

The FCC and the courts have long recognized that a carrier may take remedial action against a customer consistent with its terms and conditions of service, including billing the customer for all unauthorized charges.  For example, the U.S. Court of Appeals for the D.C. Circuit upheld the FCC's finding that Sprint's refusal to refund toll fraud charges was not unreasonable because its tariff permitted billing customers for all charges, including unauthorized toll calls.[31]  Similarly, the U.S. District Court for the Southern District of California found that certain healthcare organizations were liable to AT&T for unauthorized calls made using those organizations' telephone system, as AT&T's tariff provided for billing of such charges.[32]

Here, Digicel Haiti has not charged an unjust or unreasonable rate to, nor has it imposed an unjust or unreasonable term of service upon UPM.  Instead, it terminated service to SIM cards which it determined were being used illegally for fraudulent purpose—terminating international calls on its network without payment—or improperly and inconsistent with Digicel Haiti's Terms and Conditions, of use which state in relevant part:

- When utilizing the Digicel Service, the Customer is deemed to have unconditionally accepted these Terms and Conditions in their entirety. (Section 1)
- DIGICEL has the right to refuse to provide a portion or all of its Services to the Customer. This refusal entails the temporary or permanent blocking of certain numbers when circumstances dictate that Digicel do so. (Section 3)

---

[30]    47 U.S.C. § 201(b).

[31]    *American Message Centers v. FCC*, 50 F.3d 35, 39 (D.C. Cir. 1995).

[32]    *AT&T Corp. v. Community Health Group*, 931 F. Supp. 719 (S.D. Cal. 1995).

Page 22 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
TECHNOLOGY'S MOTION FOR SUMMARY
JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

- The Customer shall use the SIM Card strictly for its intended purpose and in accordance with applicable laws and regulations. (Section 10)
- The SIM Card may not be used for commercial purposes, or to alter the routing of telecommunications services. (Section 10)
- The Customer shall not use the SIM card for the purpose of altering the traffic of the telecommunications service and/or in the context of radio broadcasting or reception. (Section 12)
- The Customer agrees not to make any fraudulent, excessive or abusive use of the Service and any acts that may disrupt the availability of the Network. (Section 12)
- This Agreement may be suspended and/or terminated without prior written or verbal notice in the following Circumstances (Section 13)
    o If the Company has reasonable grounds to believe that the Service has been fraudulently obtained, or that fraudulent or improper use of the receiver or the SIM Card allocated to the Customer is made against the Company or a third party;
    o - If, in the opinion of the Company, the Client does anything that would be or is harmful to the operation of the Network or the Company;
    o - If the Customer does anything to avoid or evade the charges made by the Company;
    o - If the Customer does anything that, in the opinion of the Company, results in the avoidance or falsification of legitimately incurred fees by the Company, or otherwise harms the Company;
    o - If the Customer does anything that is intended to, or does, or is likely to, bypass the Service.

*See* generally, Digicel Haiti's Prepaid Services Terms and Conditions (Pl.'s Trial Ex. 337)

Section 202 of the Communications Act provides that:

"It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage."[33]

At its core, Section 202's ban on "unreasonable discrimination" prohibits common carriers

from imposing different charges on *similarly situated* customers for the same or similar services.

---

[33]     47 U.S.C. § 202.

Page 23 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
            TECHNOLOGY'S MOTION FOR SUMMARY
            JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

A telephone company "must be equal in its dealings with all.  It may not say to the lawyers of St. Louis, 'my license is to establish a telephone system open to the doctors and the merchants but shutting out you the gentlemen of the bar.'  The moment it establishes a telephone system here, it is bound to deal equally with all citizens in every department of business."[34]

Over time, courts have disagreed on the degree to which a provider may distinguish customer and services.  The D.C. Circuit took an absolutist position, stating that "[t]he prohibition against different charges to different customers for like services under the circumstances is flat and unqualified. . . .  It is unlawful for 'any' carrier to make 'any' unjust discrimination by 'any' means, or to make 'any' undue preference to 'any' particular person, or to subject 'any' person to 'any' undue preference."[35]  By contrast, the U.S. Court of Appeals for the Second Circuit took a more measured approach, interpreting Section 202 to prohibit discrimination in charges for "like" services.[36]  More recently, the D.C. Circuit articulated a three-step analysis for determining violations of Section 202:  (1) whether the services are "like"; (2) if so, whether the carrier is offering the service to other customers at a "different" price or under "different" conditions than those offered to the petitioner; and (3) if such a difference exists, whether that difference is unreasonable.[37]

The third factor is most relevant to a case where a carrier takes action against a customer in connection with alleged unauthorized activity.  In *American Message Centers*, the D.C. Circuit applied that third factor to uphold FCC's finding that Sprint's refusal to refund toll fraud charges was not unreasonably discriminatory because it had not granted refunds to similarly situated

---

[34]     *Missouri ex rel Baltimore & Ohio Telephone Co. v. Bell Telephone Co.*, 23 F. 539 (E.D. Mo. 1885).

[35]     See *American Trucking Ass'n v. FCC*, 377 F.2d 121, 130 (D.C. Cir. 1966), *cert. denied* 386 U.S. 943 (1967).

[36]     *Western Union v. FCC*, 568 F.2d 1012, 1018 (2nd Cir. 1967).

[37]     *Competitive Telecommunications Ass'n v. FCC*, 998 F.2d 1058, 1061 (D.C. Cir. 1993).

Page 24 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
            TECHNOLOGY'S MOTION FOR SUMMARY
            JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

customers.[38]  In other words, UPM's claim fails here because it cannot point to a single Bypasser who has been knowingly offered free access to misuse Digicel Haiti's network and SIM cards. While this analysis may seem glib at first blush, it is not.  UPM would love nothing more than to have this Court and Digicel Haiti "legitimize" its arguments by validating an unwarranted comparison to a legitimate Digicel Haiti business partner.  That comparison would be inappropriate and misplaced in a section 202 discrimination analysis to determine unreasonable disparate treatment as it would be based upon a false equivalence.  UPM is not similar or analogous to any telecommunications carrier making a reasonable request to access Digicel Haiti's network for resale.  UPM purposefully and with malicious intent, secretly hacked into Digicel Haiti's network and, by design, affirmatively concealed and misrepresented its actions at every stage of the interaction.  Legitimizing that conduct after the fact, by accepting a false equivalence to a legitimate business to business interaction, especially under the guise of legal analysis, would without more, reward UPM's fraud, work a grave injustice to Digicel Haiti and make a mockery of this legal process.

Here, Digicel Haiti has not charged a differential rate to, or imposed a different condition on UPM for a service offered to another customer on different rates or terms.  Prior to discovering that its network was being violated by UPM, Digicel Haiti didn't even know of its existence.  All Digicel Haiti did was terminate an unauthorized use of its network and infrastructure through fraud (including fraud enhanced through the use of Human Behavior software).  This is what Digicel Haiti did in every instance where it detected fraud in its network.

## CONCLUSION

Based on the foregoing, Digicel Haiti respectfully requests that the Court deny UPM's motion for summary judgment and grant Digicel Haiti's opposing motion for summary judgment on UPM's counterclaims based on the Act, including the question of whether Digicel Haiti is a

---

[38]    *American Message Centers*, 50 F.3d at 40.

Page 25 -   PLAINTIFF'S RESPONSE IN OPPOSITION TO UPM
            TECHNOLOGY'S MOTION FOR SUMMARY
            JUDGMENT REGARDING COMMUNICATIONS ACT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

United States domestic common carrier as it relates to its RLYH service.

**REQUEST FOR ORAL ARGUMENT**

Digicel Haiti respectfully requests the Court hold oral argument on the issues presented by this motion and memorandum.

DATED this 30th day of August, 2022.

Respectfully submitted,


By:    *s/ Robert C.L. Vaughan*
 Anne Talcott, OSB #965325
 Email: atalcott@schwabe.com
 Kathryn E. Kelly, OSB #175162
 Email: kkelly@schwabe.com
 Andrew J. Lee, OSB #023646
 Email:  ajlee@schwabe.com
 Sara Kobak, OSB #023495
 Email:  skobak@schwabe.com
 SCHWABE, WILLIAMSON & WYATT, P.C.
 Telephone: 503.796-2958

 Robert C. L. Vaughan (*Pro Hac Vice*)
 E-mail: rvaughan@kvllaw.com
 Cherine Smith Valbrun (*Pro Hac Vice*)
 Email:  cvalbrun@kvllaw.com
 Leah B. Storie (*Pro Hac Vice*)
 Email:  lstorie@kvllaw.com
 Anisha Carla Atchanah *(Pro Hac Vice)*
 Email: aatchanah@kvllaw.com
 KIM VAUGHAN LERNER LLP
 312 SE 17th Street, Suite 300
 Fort Lauderdale, FL  33316
 Telephone:     (954) 527-1115

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a Foreign Corporation, d/b/a Digicel Haiti*

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900