**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Bragar DuBay
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

   Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>  Plaintiff & Counterclaim-Defendant,<br><br>  v.<br><br>**UPM TECHNOLOGY, INC**., *et al.,*<br><br>  Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI<br><br>**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW – CAUSATION AND DAMAGES**<br><br>**Hearing Date: September 14, 2022**<br>**Hearing Time: 1:00 p.m.** |

Cover Page – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## TABLE OF CONTENTS

LOCAL RULE 7-1 CERTIFICATION ...................................................................................... 1

MOTION.................................................................................................................................... 1

I.      INTRODUCTION .......................................................................................................... 1

II.     APPLYING THE SUMMARY JUDGMENT STANDARD TO DIGICEL-HAITI'S FRAUD CLAIM.................................................................................................... 3

III.    WHAT DIGICEL-HAITI HAS NOT SHOWN .............................................................. 5

IV.     DIGICEL-HAITI HAS NOT SHOWN THAT IT RELIED ON UPM'S MISREPRESENTATIONS OR THAT EITHER THAT RELIANCE, OR UPM'S ACTIONS, CAUSED IT ANY HARM................................................................ 8

        A.      Digicel-Haiti Has Not Shown that Completing Bypass Calls Caused It Any Damage ...................................................................................................... 9

        B.      Digicel-Haiti Has Not Shown that UPM Completed Any Calls as a Result of its (Assumed) Use of HBS.................................................................. 12

        C.      Speculation About Damages Cannot Defeat Solid Evidence that There Were None. .......................................................................................................... 15

                1.      UPM's Business Records........................................................................ 15

                2.      Mr. Castel................................................................................................ 18

        D.      Other Than Mr. Castel's Speculations, Digicel-Haiti Has Nothing to Support Its Claim of Damages................................................................................ 19

        E.      Digicel-Haiti Has Not Shown That It Incurred Any Other Damages.................. 21

        F.      Summary: Digicel-Haiti's Case Must Be Dismissed because It Cannot Prove That It was Damaged At All, or that UPM's Use of HBS was the Cause of Any Damages It Sustained.................................................................... 23

V.      DIGICEL-HAITI HAS NO EVIDENCE THAT IT WAS DAMAGED BY RESALE OF RLYH SERVICE........................................................................................ 24

VI.     CONCLUSION............................................................................................................... 25

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## TABLE OF AUTHORITIES

**Cases**

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ................................................. 3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986) ................ 3, 4, 16, 17

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) .......................... 3

*Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982) .................................. 4

*Benavidez v. Cty. of San Diego,* 993 F.3d 1134, 1158 (9th Cir. 2021) .......................................... 14

*Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or. 332, 350, 225 P.2d 757 (1950) .......................... 9

*Cooper v. Pickett*, 137 F.3d 616, 626-27 (9th Cir. 1997) ............................................................... 14

*DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ......................................................... 14

*Dizick v. Umpqua Cmty. Coll.,* 287 Or. 303, 311, 599 P.2d 444, 448 (1979) ................................ 9

*Gonsalez v. Amsberry*, No. 2:18-cry-01839-AC, 2020 U.S. Dist. LEXIS 167099, at \*17 (D. Or. Sep. 12, 2020) ....................................................................................................... 4, 16, 18

*Knepper v. Brown,* 345 Or. 320, 329, 195 P.3d 383 (2008) ...................................................... 9, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348 (1986) ................................................................................................................................... 4, 18

*McLean v. Charles Ellis Realty, Inc.,* 189 Or. App. 417, 427 (2003) ............................................ 9

*Mendoza v. Lithia Motors, Inc.,* No. 6:16-cv-01264-AA, 2017 U.S. Dist. LEXIS 4716, at \*9 (D. Or. Jan. 11, 2017) ............................................................................................................. 10

*Poppell v. City of San Diego,* 149 F.3d 951, 953-54 (9th Cir. 1998) ........................................... 14

*Selman v. Shirley,* 161 Or. 582, 609 (1938) .................................................................................... 9

*Strawn v. Farmers Ins. Co.,* 350 Ore. 336, 351-52 (2011) .............................................. 3, 8, 16

*Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 893 (3d Cir. 1981) ................................... 15

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ......................................... 14

*Webb v. Clark,* 274 Or. 387, 391, 546 P.2d 1078 (1976) ............................................................... 9

*Wieber v. FedEx Ground Packaging Sys.,* 231 Or. App. 469, 480, 220 P.3d 68, 77 (2009) .......... 9

Page ii – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Other Materials**

Octopus Hiding In A Bottle - Stock Image - Z505/0147 - Science Photo Library (last visited August 29, 2022) ........................................................................................................................... 14

WILLIAM SHAKESPEARE, OTHELLO, act 4, sc. 2 ........................................................................ 17

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................................ 4

Local Rule 7-1(a) ..................................................................................................................... 1

Rule 12(b)(6)........................................................................................................................... 14

Rule 30(b)(6)............................................................................................................................ 6

Rule 9(b) ................................................................................................................................. 14

Page iii – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), Counterclaim Plaintiff UPM Technology, Inc. ("UPM") states that its counsel conferred in good faith with counsel for Counterclaim Defendant, Digicel-Haiti to resolve the disputed issues and were unable to do so.

## MOTION

Pursuant to the Court's orders (ECF #384, at 20; ECF #383), UPM asks that the Court dismiss Digicel-Haiti's remaining fraud claim on the following grounds: (1) Digicel-Haiti has no evidence that it was damaged by relying on any UPM misrepresentation; (2) If it relied on a misrepresentation, it has no evidence that it was damaged; (3) Digicel-Haiti's purported damages estimates are pure speculation; and (4) UPM's assumed use of Human Behavior Software ("HBS") in connection with Roam Like You're Home ("RLYH") service cannot constitute fraud at all, and so cannot support a claim for damages. UPM also requests that the Digicel-Haiti be required to file its opposition on the originally scheduled due date of September 9, 2022. *See* ECF #383.[1] UPM will then file its reply on the originally scheduled date of September 12, 2022. *See id.*

## I.      INTRODUCTION

The Court has stated that "[the] *only* relevant issues in Phase I are whether UPM engaged in active concealment by using HBS, whether such active concealment caused damage to Digicel-Haiti, and, if so, the amount of any such damage." ECF #380 at 11 (emphasis added). *See also* ECF #294 at 30-31. In light of this directive, the most striking thing about Digicel-Haiti's new, supposedly-HBS-focused pretrial filings is that they are substantively the same as what Digicel-Haiti filed back in February.[2] Ignoring the Court's directive, Digicel-Haiti continues with

---

[1] On the scheduling point, UPM notes that it is filing this motion one day after its originally scheduled due date.

[2] [Digicel-Haiti's] Supplemental Trail Memorandum on Causation and Damages (ECF #388) ("Digicel-Haiti Memorandum"). [Digicel-Haiti's] Amended Phase I Lay Witness Statements (ECF

Page 1 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

claims about UPM's supposedly vast international bypass operations[3] involving a "sophisticated scheme of fraud,"[4] its supposedly troubling shipping procedures,[5] wildly speculative claims of damages,[6] some supposed "international standard" regarding bypass,[7] and a range of other irrelevant matters.[8] Legally, Digicel-Haiti continues to press its theories of "failure to disclose"[9] and "half-truth,"[10] even though the Court dismissed those theories. ECF #294 at 23-31. Digicel-Haiti's half-hearted concession to the Court's order is its liberal use of the new term "HBS-enhanced bypass."[11] This catchy neologism – a change in branding, not substance – refers to the exact same activity that Digicel-Haiti previously simply called "bypass;" it is a cute rhetorical device without evidentiary significance.[12]

---

#390) ("Digicel-Haiti Lay Witness Statements"); [Digicel-Haiti's] Amended Phase I Expert Witness Statements (ECF #391) ("Digicel-Haiti Expert Witness Statements").

[3] Digicel-Haiti Memorandum at 1.

[4] *Id.*

[5] Digicel-Haiti Lay Witness Statements at 1, 12-13

[6] Digicel-Haiti Memorandum at 10-11; Digicel-Haiti Expert Witness Statements at 1-6.

[7] Digicel-Haiti Expert Witness Statements at 8.

[8] *E.g., id.* at 2 ("global telecommunications regulators" supposedly view bypass as fraud).

[9] Digicel-Haiti Memorandum at 2-3.

[10] *Id.*

[11] *Id.* at 1, 7, 9; Digicel-Haiti Expert Witness Statements at 1, 3, 5-6, 8-9, 11; Digicel-Haiti Lay Witness Statements at 9.

[12] ECF #380 at 11. For example, Digicel-Haiti now says that Mr. Castel and Mr. McEwen will talk about how HBS works and the harm supposedly done by "HBS-enhanced bypass." Digicel-Haiti Expert Witness Statements at 1, 3, 5-6, 8-9, 11. But both gentlemen testified that they had no knowledge of UPM's operations. *See* [UPM's] Reply in Support of Motions *in Limine* (ECF #357) ("*In Limine* Reply") at 8 & n.8 (citing deposition of Mr. Castel); [UPM's] Motions *in Limine* (ECF #324) ("Motion *in Limine*") at 11-12 (citing deposition of Mr. McEwen). As a result, their rebranded testimony has no bearing on, and cannot create a genuine factual dispute about, what UPM actually did. They did not know before, and they do not know now. Anything they have to say about UPM and its operations – including its purported use of HBS – is simply speculation.

Page 2 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Rhetoric, however, cannot hide Digicel-Haiti's utter lack of admissible evidence to prove the causation and damages elements of its case. As shown below, there can be no genuine dispute that Digicel-Haiti was not damaged as a result of UPM's activity, either at all or as a result of UPM's supposed use of HBS. Given this failure of evidence, the time has come for the Court to dismiss Digicel-Haiti's fraud claims.

## II.    APPLYING THE SUMMARY JUDGMENT STANDARD TO DIGICEL-HAITI'S FRAUD CLAIM

The standards for summary judgment are well-settled. *See, e.g.,* ECF # 294 at 6-9. As with its earlier filing regarding UPM's Communications Act counterclaims, however,[13] UPM emphasizes several particularly relevant points regarding the law of summary judgment.

UPM is seeking summary judgment dismissing Digicel-Haiti's remaining fraud claims because there is no genuine dispute as to the material facts. Which facts are material depends on the applicable substantive law. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Moreover, "[f]actual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

Here, the applicable substantive law is the Oregon common law of fraud by active concealment. UPM agrees that there is a genuine dispute as to whether UPM used HBS – that is, a dispute as to whether UPM even ***engaged in*** active concealment. But it turns out that that dispute is irrelevant to the outcome of the case. Oregon law requires a fraud plaintiff to prove not just that a misrepresentation occurred, but also justifiable reliance, causation, and damages.[14] Whether or not UPM used HBS, Digicel-Haiti has no evidence that any such use interfered with Digicel-Haiti's blocking of UPM's SIM cards or, even more fundamentally, that anything UPM did caused

---

[13] [UPM's] Motion for Summary Judgment – Communications Act (ECF #386) at 8-9.

[14] *Strawn v. Farmers Ins. Co.,* 350 Ore. 336, 351-52 (2011).

Page 3 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Digicel-Haiti any harm at all. Digicel-Haiti cannot prevail if it cannot show that tortious conduct by UPM *caused* Digicel-Haiti's damages, so Digicel-Haiti's case must be dismissed.

Certain other aspects of the law of summary judgment are important here as well. First, "when a properly supported motion for summary judgment is made, the adverse party *must set forth specific facts* showing that there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 250 (emphasis added; internal quotations omitted). Second, while the Court "must view the evidence in the light most favorable to the nonmoving party [that] deference … has limits. A party asserting that a fact cannot be true or is genuinely disputed *must support the assertion with admissible evidence*." *Gonsalez v. Amsberry*, No. 2:18-cry-01839-AC, 2020 U.S. Dist. LEXIS 167099, at *17 (D. Or. Sep. 12, 2020) (emphasis added), citing *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982) and Fed. R. Civ. P. 56(c). Third, the party opposing summary judgment "*must do more than simply show that there is some metaphysical doubt as to the material facts*;" instead, it must "come forward with '*specific facts* showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348 (1986) (final emphasis in original; internal citations omitted).

UPM earlier explained, and explains below, that Digicel-Haiti lacks any factual basis to prove that it was damaged by UPM.[15] In brief, Digicel-Haiti has not shown any causal link between anything UPM did and any harm Digicel-Haiti purportedly suffered – and certainly no causal link between UPM's supposed use of HBS and any such harm. Moreover, Digicel-Haiti has chosen to present a damages claim that is based entirely on speculation, and that is inconsistent both with its theory of liability and with its other evidence. Given this failure of proof, Digicel-Haiti's case must be dismissed.

---

[15] *See* [UPM's] Renewed Motion for Summary Judgment (ECF #335) ("Renewed SJ Motion") at 2-13; [UPM's] Reply in Support of Renewed Motion for Summary Judgment (ECF #365) ("Renewed SJ Reply") at 5-18; Motion *in Limine* at 2-14; *In Limine* Reply at 3-15. Rather than burden the record with a full repetition of its earlier filings, UPM respectfully refers the Court to them.

Page 4 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

UPM implores the Court not to permit Digicel-Haiti to ignore its obligation to present admissible evidence supporting critical elements of its fraud claim – *that* it was damaged, and that the damage was *caused by* UPM's supposed use of HBS. Based on a careful review of Digicel-Haiti's filings – its exhibits, its witness statements, and its Memorandum – UPM cannot find any evidence that would plug the causation-and-damages holes in Digicel-Haiti's case. But if UPM has missed something – some hidden fact, some clever legal spin on the evidence – the time for Digicel-Haiti to point that something out is *now.* Permitting Digicel-Haiti to evade its obligation to explain its case would be unfair, unjust, and an inefficient way to manage the remainder of this proceeding. UPM has shown that there should be no trial on Digicel-Haiti's fraud claim, and that, to the contrary, that claim should be dismissed. Failing to hold Digicel-Haiti to its duty, now, in response to this motion, to identify any specific facts that it claims to be material, genuinely in dispute, and supported by admissible evidence – and to fully articulate the legal arguments that support its position – would not only prejudice UPM, but would also create a real possibility of confusing the jury with the needless presentation of complicated evidence about legally immaterial matters not legitimately in dispute.

## III.    WHAT DIGICEL-HAITI HAS NOT SHOWN

Digicel-Haiti's case is limited to the claim that it was damaged by UPM engaging in active concealment by means of HBS. ECF #380 at 11; ECF #294 at 30-31. Active concealment is a form of misrepresentation; the idea is that in using HBS, UPM made its bypass calls look like calls made by individual subscribers, thereby causing Digicel-Haiti to delay blocking UPM's SIM cards until it figured out what was really going on. To show that it was damaged by UPM's active concealment, therefore, Digicel-Haiti has to show (1) that it was harmed *at all* by the fact that it completed bypass calls; (3) that the HBS that UPM (supposedly) used *worked* to conceal what UPM was doing, so that more bypass calls were completed that otherwise would have been; and (3) that Digicel-Haiti was *harmed* by completing whatever bypass calls it completed, that it would not have completed but for UPM's supposed use of HBS.

Page 5 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

Digicel-Haiti has failed to present any admissible evidence that these things are true.[16] As noted above, Digicel-Haiti has no more or different evidence today than it had before. It still has nothing but rhetoric and speculation. To the extent that Digicel-Haiti's recent filings raise any new arguments, UPM addresses them below. It remains true, however, that Digicel-Haiti has no *evidence* to establish any of the following points:

- Digicel-Haiti has no evidence that it would have charged any more than the local rate for bypass calls, had it known that that is what they were:[17]

  - It has no evidence or legal authority suggesting that it was allowed to impose any higher rate than it did for bypass calls.[18]

  - Its CEO, as Rule 30(b)(6) witness, testified that it could have configured its system to charge more for bypass calls but chose not to.[19]

- Digicel-Haiti has no evidence that, had UPM not carried the bypass calls, they would have been carried via Digicel-Haiti's preferred route and charged at $0.23 per minute, as opposed to (for example) not being made at all.[20]

- Digicel-Haiti has no evidence how (or even that) UPM's supposed HBS worked, and so has no evidence that any completed bypass calls were completed *as a result of* the HBS.[21]

- Digicel-Haiti has no evidence that UPM's decision to enter or operate in the Haitian market

---

[16] Remarkably, Digicel-Haiti asserts – with no citation to any evidence – that "[i]njury is not in question here." Digicel-Haiti Memorandum at 6. It further asserts that UPM could only complete the bypass calls it completed by virtue of its supposed use of HBS. *Id.* at 7. To the same effect, it claims (without explanation or citation) that it has "established that its damages arise from a causal connection to … HBS enhanced bypass." *Id.* These unsupported claims are entirely wrong. The point of this motion is to highlight that Digicel-Haiti has to prove these claims with admissible evidence, and to point out that it has no such evidence.

[17] Renewed SJ Motion at 6. Except when specifically addressing resale of RLYH service, UPM uses the terms "bypass call" and "bypass traffic" to refer both to RLYH resale and to in-country bypass.

[18] Renewed SJ Motion at 3, 6; Renewed SJ Reply at 6, 8.

[19] *Id.*

[20] *Id.*

[21] Renewed SJ Motion at 3, 7-10; Renewed SJ Reply at 6, 8-9.

Page 6 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

was based on a belief that its HBS would work, and therefore no basis for any argument that UPM's bypass traffic was in that sense "caused by" HBS.[22]

- Digicel-Haiti has no evidence as to how much bypass traffic UPM terminated. Its damages "estimates" are pure speculation.[23] The only admissible evidence on this point is UPM's business records. Those records show that UPM paid well above $0.23 for each bypass minute, and Digicel-Haiti has no evidence or legal reasoning that would justify ignoring them.[24]

- Digicel-Haiti received $0.23 per minute, in addition to the local rate, for each resold RLYH minute. It was therefore *not* damaged by any RLYH resale, even assuming it had the right to cut off SIM cards being used for that purpose.[25]

- In fact, Digicel-Haiti had no right to cut off SIM cards being used to resell RLYH service; to the contrary, that was illegal. It cannot be fraudulent for UPM to have taken steps (such as its purported use of HBS) to protect itself from Digicel-Haiti's illegal activity.[26]

Each of these evidentiary gaps is individually sufficient to dismiss Digicel-Haiti's fraud claim, because each shows that Digicel-Haiti cannot prove that it was harmed by UPM's activities. Together they show that from multiple angles and for multiple reasons, Digicel-Haiti has no case against UPM. And as noted above, if Digicel-Haiti thinks that it has any arguments or admissible evidence that would plug these holes, the time to put those points forward is *now.*

---

[22] This was raised by the Court at argument as a possible damages theory. Digicel-Haiti has no facts that would support it.

[23] Motion *in Limine* at 4-10; *In Limine* Reply at 4-11; Renewed SJ Reply at 10-11.

[24] Renewed SJ Motion at 3, 7; Renewed SJ Reply at 6.

[25] Renewed SJ Motion at 3-4, 10; Renewed SJ Reply at 6, 14-15.

[26] Renewed SJ Motion at 4, 10; Renewed SJ Reply at 15-17. UPM has since submitted detailed briefing establishing the illegality of Digicel-Haiti's cutting off of RLYH SIM cards. *See* [UPM's] Motion for Summary Judgment – Communications Act (ECF #386).

Page 7 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## IV.    DIGICEL-HAITI HAS NOT SHOWN THAT IT RELIED ON ANY UPM MISREPRESENTATIONS OR THAT EITHER ITS SUPPOSED RELIANCE, OR UPM'S ACTIONS, CAUSED IT ANY HARM

There is a genuine dispute as to whether UPM used HBS; UPM denies having done so, but for purposes of this motion UPM assumes *arguendo* that it did.[27] That that assumption is surely favorable to Digicel-Haiti, but making it does not mean that the case should go forward. To the contrary, Digicel-Haiti still has to prove ***all*** the elements of common-law fraud, which are that:

> the defendant made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended the plaintiff to rely on the misrepresentation; the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance.[28]

Construing the assumption that UPM used HBS in the manner most favorable to Digicel-Haiti, for purposes of this motion the Court can assume that UPM "made a material misrepresentation that was false; … did so knowing that [it] was false; [and] intended [Digicel-Haiti] to rely on [it]."[29] But that still leaves two points for Digicel-Haiti to prove: that it actually and justifiably ***did*** rely on UPM's (supposed) misrepresentation, and that relying on it caused Digicel-Haiti damage.

---

[27] UPM reserves the right, as the case proceeds to and through trial, to ask the Court to reconsider, or at least narrow, its holding (to the extent that it ***was*** the Court's holding) that any use of any SIM management software that could be called "HBS" constitutes a form of active concealment. *See* ECF #294 at 30-31. Managing multiple SIM cards used for bypass/resale will necessarily require the use of ***some*** software, and that software will necessarily select which SIM cards to use to validate which calls, by means of ***some*** algorithm or decision rule. Would the rule of law articulated by the Court require an entity like UPM to affirmatively program its software to make sure that the usage pattern for each SIM cards did ***not*** look like the usage of an individual subscriber? And note that, if there is any validity to the idea that bypass puts some unique stress or strain on the wireless network competing the calls, bypass usage that looks just like the usage of individual subscribers would minimize that effect – a benefit to the network operator. For purposes of this motion, however, UPM assumes that software designed to make the usage pattern of bypass SIMs look like the usage pattern of an individual subscriber constitutes a form of misrepresentation by active concealment.

[28] *Strawn v. Farmers Ins. Co.,* 350 Ore. 336, 351-52 (2011).

[29] UPM is constrained to note again that in fact it did not use HBS in its Haitian operations, but recognizes that that will have to be established at trial, if there is one.

Page 8 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

Moreover, even if it could prove those points, it cannot recover damages based on speculation; its damages claim need not be precise, but it must be as definite as circumstances permit.[30] Digicel-Haiti has *no* admissible evidence to establish those points. As a matter of law, therefore, Digicel-Haiti's HBS-based fraud claim – all it has left – must be dismissed.[31]

### A. Digicel-Haiti Has Not Shown that Completing Bypass Calls Caused It Any Damage

The first section of Digicel-Haiti's Memorandum is entitled "Causation,"[32] and presumably is intended to outline the evidence showing that UPM's activity actually caused harm. However – remarkably – that section of Digicel-Haiti's filing *contains no citations to any facts whatsoever*. While Digicel-Haiti emphatically asserts that it has "establish[ed]" that UPM sent

---

[30] *See* Digicel-Haiti Memorandum at 4-5. Digicel-Haiti also argues that it only needs to prove damages by a preponderance of the evidence. *Id.* UPM's view is slightly different, viz., that a fraud plaintiff must prove the *fact* of damage by clear and convincing evidence, even if it is permitted to prove the *amount* of any damages by the lower preponderance standard. *See Dizick v. Umpqua Cmty. Coll.,* 287 Or. 303, 311, 599 P.2d 444, 448 (1979) (citing *Webb v. Clark,* 274 Or. 387, 391, 546 P.2d 1078 (1976); *Wieber v. FedEx Ground Packaging Sys.,* 231 Or. App. 469, 480, 220 P.3d 68, 77 (2009), citing *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or. 332, 350, 225 P.2d 757 (1950). This distinction in evidentiary standards has no bearing on this motion. Similarly, UPM does not dispute the general proposition that damages, like any other fact, may in appropriate situations be established by reliable circumstantial rather than direct evidence. *See* Digicel-Haiti Memorandum at 7. As discussed below, UPM's objection to Digicel-Haiti's evidence is not that it is circumstantial in nature; it is that it is speculative, legally insufficient, and unreliable.

[31] UPM does not dispute Digicel-Haiti's general statement that a party who has committed fraud is "liable for damages 'naturally and proximately resulting from the fraud.'" *Id.* at 4, quoting *Selman v. Shirley,* 161 Or. 582, 609 (1938) and *McLean v. Charles Ellis Realty, Inc.,* 189 Or. App. 417, 427 (2003). (The more modern formulation, under *Knepper v. Brown,* 345 Or. 320, 329, 195 P.3d 383 (2008), is that the defendant would be liable for the damages that were the "reasonably foreseeable" result of its actions.) This just means that *if* Digicel-Haiti could show that it was damaged by completing bypass calls – which it cannot – and *if* it could show that UPM's use of HBS caused it to complete bypass calls that it would not otherwise have completed – which it cannot – and *if* it could show that UPM had not already paid enough to cover Digicel-Haiti's desired rate for the completed calls – which it cannot – *then* UPM would be liable for the damages "naturally and proximately resulting" from its use of HBS. The fact that Digicel-Haiti has no evidence to show these things is the point of this motion.

[32] Digicel-Haiti Memorandum at 1-3.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

"millions of dollars" of bypass calls to Digicel-Haiti,[33] it does not back that claim up with anything at all. And of course the mere fact that UPM sent bypass calls to Digicel-Haiti does not establish that handling those calls resulted in any damage.

Hiding from the defects in its factual case on causation, Digicel-Haiti deflects, arguing, in effect, that the standard for proving causation is sufficiently flexible that it does not have to prove causation at all. It claims, instead, that there are situations where a fraud plaintiff "need not allege or prove reliance."[34] But Digicel-Haiti's cited case does not support that proposition. *Mendoza v. Lithia Motors* was not a common-law fraud case at all; it arose under three different consumer protection statutes,[35] and the question was whether a certain type of harm constituted an "ascertainable loss" within the meaning of the statute.[36] Putting aside Digicel-Haiti's confusing between ***reliance*** (did the plaintiff act differently due to a misrepresentation?) and ***causation*** (did that different action cause the plaintiff harm?), Digicel-Haiti has no authority for the idea that a common-law fraud plaintiff need not show ***both*** reliance ***and*** causation in order to prevail.[37]

---

[33] *Id.* at 1.

[34] Digicel-Haiti Memorandum at 1-2, citing *Mendoza v. Lithia Motors, Inc.,* No. 6:16-cv-01264-AA, 2017 U.S. Dist. LEXIS 4716, at *9 (D. Or. Jan. 11, 2017).

[35] *Id.* at **1-2 (noting statutes).

[36] *Id.* at **9-10. Moreover, Digicel-Haiti does not mention that Judge Aiken concluded in that case that plaintiffs had failed to adequately allege causation under the statute. *Id.* at *13.

[37] Digicel-Haiti's reliance on *Knepper v. Brown, supra,* is similarly unavailing. *See* Digicel-Haiti Memorandum at 1-2. In that case the Oregon Supreme Court affirmed a ruling that an advertising publisher that had participated in the creation and publishing of an ad that misrepresented the qualifications of a doctor had participated in causing the plaintiff's injuries sustained when, in reliance on the ad, the plaintiff used the doctor's (incompetent) services. The actual holding of the case was that the notion of "proximate cause" in a fraud case was "equivalent to the concept of 'reasonable foreseeability,'" *Id.* That question has no bearing on UPM's motion.

Page 10 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

In addition to having no law to support its effort to avoid having to prove causation, Digicel-Haiti also has no facts. It blithely asserts (in a later section of its filing) that it has "established that its damages arise from a causal connection to the HBS enhanced bypass fraud."[38] But it cites nothing to support this conclusory statement, which, in fact, is false. Digicel-Haiti understandably does not want to explain why it thinks it was entitled to $0.23 per minute for UPM's bypass calls; why – if it was entitled to that amount – it failed to simply charge it; and why it thinks that blocked UPM bypass calls would have been re-routed to Digicel-Haiti's expensive international gateway switches. As discussed below, it also has no evidence that any UPM use of HBS actually resulted in, or can be inferred to have resulted in, the completion of any calls that would not otherwise have gone through. But without proof on these points – which it does not have – Digicel-Haiti has failed to prove that UPM's activity caused it any harm.

Digicel-Haiti's "Causation" discussion, in sum, ignores the issue of causation. Instead, it seems to be addressing the different question of whether Digicel-Haiti relied on UPM's purported misrepresentation via HBS.[39] But that misses the point. Digicel-Haiti's case on causation fails because it has not shown that it was harmed by completing the bypass calls that UPM sent. Assume *arguendo* that it only completed those calls because it relied on a misrepresentation. That does not mean that completing them caused harm. To show that it was harmed, Digicel-Haiti has to show either that the calls would have been sent via Digicel-Haiti's preferred (expensive) routing if UPM had not handled them – which is highly unlikely, both because of the higher cost of that routing and the availability of other bypasses – or that, had it known they were bypass calls, it would have charged more for them – which we know it could have done, because Digicel-Haiti's

---

[38] Digicel-Haiti Memorandum at 7.

[39] Digicel-Haiti Memorandum at 2-3.

CEO testified that it had the capability to impose higher charges on bypass calls but chose not to do so.[40] Digicel-Haiti has no answer to, or evidence on, these points.

The rest of Digicel-Haiti's "Causation" discussion is a hodge-podge of case citations having nothing to do with causation.[41] It concludes this section with: "UPM actively concealed, through use of HBS, the international nature of the calls it was sending onto Digicel Haiti's network by disguising them as local calls."[42] But this again misses the point. Assume UPM did what Digicel-Haiti says. That would be only the very beginning of Digicel-Haiti's causation problem, not an answer to it. Digicel-Haiti has not shown, and cannot show, that completing those "disguised" calls caused it any harm. And without such a showing, its fraud claim fails.

**B. Digicel-Haiti Has Not Shown that UPM Completed Any Calls as a Result of its (Assumed) Use of HBS**

Digicel-Haiti asserts that the artificial intelligence ("AI") engine that it uses to identify SIM cards being used for bypass accomplishes that task with 99.9% accuracy.[43] Yet it simultaneously asserts that it was somehow naked, defenseless and alone against UPM's terrible HBS. For Digicel-Haiti to take these two positions at the same time makes no sense. But at the

---

[40] Once Digicel-Haiti knew that it was being injured by bypass, Oregon law imposed an obligation to take reasonable steps to limit or eliminate whatever damage it was suffering. As stated in Oregon's Uniform Civil Jury Instruction No. 73.1 (entitled "Damages – Avoidable Consequences"): "A person who suffered damage has a duty to exercise reasonable care to avoid increasing that damage. There can be no recovery for increased damage caused by the failure to exercise such care." UPM did not learn that Digicel-Haiti had the capability to simply charge more for calls made using SIM cards identified as being used for bypass until late 2021, in discovery. But now that this is known, it is clear that Digicel-Haiti could have eliminated any damages it thought it was suffering, simply by putting a new pricing option into its system. In the face of this fact, there can be no possible finding that Digicel-Haiti has any recoverable damages.

[41] *Id.* at 2-3 (discussing, *e.g.,* half-truths, duty to speak, false impressions, and non-disclosure, and their possible relationship to active concealment).

[42] *Id.* at 3.

[43] Digicel-Haiti Lay Witness Statements at 9 (Digicel-Haiti's "automated system using proprietary Artificial Intelligence for identifying potential bypass [is] 99.9% accurate").

Page 12 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

very least, this antinomy raises a critical question: **Did** UPM's purported HBS system, in fact, successfully evade Digicel-Haiti's anti-bypass AI? Because if it did not, then UPM's use of HBS – its supposed "active concealment" – did not cause any harm.[44]

A talismanic recitation of the term "HBS" (or Digicel-Haiti's catchier "HBS-enhanced bypass") does not constitute evidence that whatever UPM's supposed HBS actually did had the effect, in fact, of allowing calls to go through that would not have gone through without it. In terms of the issues in this case, the (assumed) fact that UPM **tried** to "actively conceal" its bypass activities by using HBS does not mean that the HBS **worked** to let UPM complete more calls than it otherwise would have. Unless Digicel-Haiti can show that UPM's supposed efforts at "active concealment" **worked,** then Digicel-Haiti cannot show that the active concealment caused any harm – which means that Digicel-Haiti's fraud clam must be dismissed.[45]

It is easy to see that affirmative efforts at misrepresentation by active concealment can fail to work. In an earlier filing, UPM used the hypothetical of someone who tries to conceal the locations of people receiving deliveries by removing street signs along the delivery routes.[46] If the drivers used the GPS functions on their smartphones to reach their destinations, the active concealment would have been ineffective and, therefore, caused no harm. Or, to use an example

---

[44] One could also frame this as an issue of reliance: Even if UPM was trying to get Digicel-Haiti to rely on its (supposedly) disguised bypass calls, if Digicel-Haiti did not get fooled, that would mean that it did not rely on UPM's supposed use of HBS.

[45] UPM notes that there is no evidence to suggest that UPM's decisions (in 2011 and then again in 2014) to enter the Haitian market were based in any way on the notion that UPM had such an effective HBS that that tool justified market entry. In theory, such an argument might support a somewhat tenuous claim of causation – that but for UPM's **belief** in the power of its HBS, it would not have sent calls to Digicel-Haiti at all, so one could perhaps, arguably, attribute all completed calls to the existence of the HBS, whether it really worked or not. It is not necessary to consider that theory, however, because on this record, it is pure speculation: there is no evidence that any UPM belief in the effectiveness of a supposed HBS system had anything to do with its entry into the Haitian market.

[46] *See* Renewed SJ Reply at 10.

Page 13 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

from nature, octopi apparently sometimes "hide" in clear glass bottles – a spectacularly ineffective effort at "active concealment."[47] And so it is with HBS: there is no evidence in the record – none – to suggest that, or how, the features or operation of UPM's (supposed) HBS permitted UPM to complete more calls than it would otherwise have completed without using HBS. But without such evidence, Digicel-Haiti cannot show that UPM's "active concealment" caused any harm. So for this reason as well, Digicel-Haiti's fraud claim fails.[48]

Anticipating a possible Digicel-Haiti rejoinder, UPM notes that there is nothing in the record to support an inference from the (assumed) fact that UPM used HBS, to the conclusion that the HBS worked.[49] There may be times that common experience can provide the basis for a valid inference, but the effectiveness of an HBS system against a sophisticated anti-bypass AI is not one of them. One can imagine an expert witness familiar with the details of **both** a specific HBS system **and** Digicel-Haiti's specific anti-bypass AI opining that **that specific** HBS system would be likely to defeat the specific AI – that is, that it would be reasonable to infer from fact **that** the specific HBS system was used against Digicel-Haiti's specific AI, to the fact that the HBS system would prevail and that calls that would otherwise be blocked, would go through. But no such testimony exists or can exist in this case. An expert who was not familiar with the details of both the "attacking" system – the hypothetical HBS – and the "defending" system – the AI – could

---

[47] *See, e.g.*, Octopus Hiding In A Bottle - Stock Image - Z505/0147 - Science Photo Library (last visited August 29, 2022).

[48] Although this is not a motion under Rule 12(b)(6) or Rule 9(b), it is notable that seven years after it first filed its case, and a year after the close of discovery, Digicel-Haiti remains completely unable to lay out in any detail "the who, what, when, where, and how" of what UPM supposedly did – what HBS UPM supposedly used, how that HBS supposedly worked, why and how it was able to evade Digicel-Haiti's anti-bypass AI, etc. *See Benavidez v. Cty. of San Diego,* 993 F.3d 1134, 1158 (9th Cir. 2021), quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003), quoting *Cooper v. Pickett*, 137 F.3d 616, 626-27 (9th Cir. 1997), quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

[49] *See Poppell v. City of San Diego,* 149 F.3d 951, 953-54 (9th Cir. 1998) (discussing requirements for valid inference in legal reasoning).

Page 14 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

not make any such inference, any more than someone can predict how likely it is that a sports team will win its next contest without knowing the opponent. As the Third Circuit noted in a somewhat analogous context, "As one cannot clap with one hand, and as it takes two to tango, so in a § 1 case there must be proof of more than solitary conduct."[50] Here, there is no evidentiary basis to support a valid inference from the bare assumption that an HBS system was arrayed against Digicel-Haiti's anti-bypass AI, to the conclusion that the HBS system would work.

### C. Speculation About Damages Cannot Defeat Solid Evidence that There Were None.

Digicel-Haiti's damages presentation is so speculative that it cannot support any damages award. Because that presentation is so speculative, there can be no genuine dispute that Digicel-Haiti was not damaged by UPM's activities at all. To be clear: UPM's argument at this juncture here is *not* that Digicel-Haiti's damages analysis is insufficiently precise – though it is, in fact, insufficiently precise. UPM's argument is that Digicel-Haiti's damages analysis is so plainly, obviously, and blatantly speculative and unreliable that it is entitled to no weight *at all*. It is inadmissible junk. As a result, there is and can be no genuine dispute regarding damages, in the face of UPM's uncontradicted business records showing that UPM paid Digicel-Haiti more than $0.23 per minute for the calls it completed on Digicel-Haiti's network.

#### 1. UPM's Business Records

In discovery, UPM produced records showing how many SIM cards it had acquired; how much it had paid to top them up; and how many minutes of traffic it completed using them and has shown what those number imply.[51] Doing the relevant math (dividing money paid by minutes completed) shows that Digicel-Haiti has already received more than the $0.23 per minute

---

[50] *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 893 (3d Cir. 1981) (noting that one cannot infer a conspiracy from unilateral conduct).

[51] Renewed SJ Motion at 3, 7; Renewed SJ Reply at 6, 12. *See also* Declaration Of Bruce Tran As Chief Executive Officer Of UPM Technology, Inc. In Support Of UPM Technology, Inc.'s Motion For Summary Judgment (ECF #256) at 8-12 & Exh. 1.

Page 15 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

to which it claims to be entitled.[52] This means that Digicel-Haiti has not been damaged by UPM's activity, and its fraud claim must be dismissed.[53] In light of this evidence, under the law of summary judgment, Digicel-Haiti must now point to "specific facts" backed up by "admissible evidence" showing that there is a genuine dispute about whether it has already been paid for the minutes UPM completed.[54]

If Digicel-Haiti had any legitimate disagreement with UPM's business records, the logical thing to do would be to develop its own analysis, based on its own records, showing (if it could) that UPM's records were materially wrong – either that UPM completed a lot more minutes than it said it did, or that it paid a lot less than it said it did. The problem is that Digicel-Haiti has no business records for the relevant period. It lost them, under unspecified circumstances, several years after this lawsuit commenced but before discovery got underway.[55] So it has nothing to counter the simple fact that the only available solid evidence, based on UPM's business records, shows that it was not damaged by UPM's activities.

A fair response would have been for Digicel-Haiti to acknowledge that UPM was not the bypass monster Digicel-Haiti had supposed. Instead, it has chosen to accuse UPM of lying. UPM does not quite know what to do with innuendo suggesting that UPM really engaged in a lot more bypass than the records it has produced show, or with the suggestion that it has cleverly

---

[52] *Id.*

[53] The point here is not that Digicel-Haiti has failed to show that UPM's activities were the "cause" of damages that Digicel-Haiti supposedly sustained; the point is that UPM has shown that Digicel-Haiti did not sustain any damages at all as a result of UPM's activities. In terms of the relevant element of the tort, Digicel-Haiti has to prove both that it "*was damaged* as a result of" reliance on UPM's supposed misrepresentations, and that it "was damaged *as a result of*" such reliance. *Strawn, supra,* 350 Ore. at 351-52 (emphasis added). The focus here is on the fact that Digicel-Haiti "was [not] damaged" in the first place.

[54] *Anderson , supra,* 477 U.S. at 250; *Gonsalez v. Amsberry*, *supra,* 2020 U.S. Dist. LEXIS 167099, at *17.

[55] [UPM's] Objections to [Digicel-Haiti's] Omnibus Motions *in Limine* (ECF #239) at 2-7.

Page 16 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

chosen to reveal only some of its actual bypass activity – that is, that it is lying about its records – in order to look good.[56] As with any good conspiracy theory, it is impossible to prove that Digicel-Haiti's claim is not true:

```
DIGICEL-HAITI:    You're lying, just like you lied when you
                  bypassed me. You're hiding records showing how
                  badly you hurt me.

UPM:              No, I'm not. I've produced all my records. I
                  actually didn't hurt you.

DIGICEL-HAITI:    Now you're lying again. How can you stand there
                  and keep lying like that? You're an even bigger
                  liar than I thought before!
```

The tragedy is almost Shakespearian.[57]

Fortunately, the law of summary judgment provides the way out. When a party seeking summary judgment has produced admissible evidence of a material fact (here, UPM's business records showing that it paid Digicel-Haiti more than $0.23 per minute), the opposing party must present "specific facts showing that there is a genuine issue for trial."[58] And those

---

[56] Digicel-Haiti Memorandum at 9-10 ("Digicel maintains that UPM has only admitted to what it was caught doing. Like a child caught with its hand in the cookie jar, UPM now graciously admits to the crumbs that were actually found on its fingers. That is not the same as saying that what UPM has admitted was everything that UPM did.") *See also id.* at 8 ("UPM suggests that after years of fraud and misrepresentation and deceit, [this time] UPM is being entirely honest in its dealings and representations. The notion that the representations of the same party accused of fraud should be the last word on their own exposure for damages for that very fraud, is at the same time both incredible and offensive.") UPM, however, has **never** denied that it engaged in bypass/resale of Digicel-Haiti's services. To the contrary, it has admitted – indeed, affirmatively alleged – that it did so, and explained why its activities were not fraudulent. *See, e.g.,* Defendants' Answer, Affirmative Defenses And Counterclaims To Plaintiff's Amended Complaint And Demand For Jury Trial (ECF #71) at ¶¶ 221-231 and *passim. See also* ECF #294 (dismissing most aspects of Digicel-Haiti's fraud claims).

[57] *Cf.* WILLIAM SHAKESPEARE, OTHELLO, act 4, sc. 2*, passim* (when Desdemona protests her faithfulness, Othello – already convinced she has cuckolded him – treats her honest protestations of innocence as lies, and thus as further proof of her depravity).

[58] *Anderson, supra,* 477 U.S. at 250.

Page 17 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

claimed "specific facts" must be supported with "admissible evidence."[59] Digicel-Haiti has no "specific facts" or "admissible evidence" showing there is anything amiss with UPM's business records. It is simply claiming – without any evidence – that the facts shown by UPM's records "cannot be true."[60] Digicel-Haiti is evidently suffering from inconsolable "metaphysical doubt as to the material facts."[61] There may be nothing anyone can do to soothe that angst. But the law of summary judgment compels the conclusion that UPM cannot be required to endure the time and expense of a trial in order to try to do so.

### 2. Mr. Castel

With Digicel-Haiti having no actual facts to contest the solid, business-record-based evidence that it has already been paid, Digicel-Haiti turns to utter speculation, in the form of its purported expert, Mr. Castel.[62] UPM notes that other than updating his jargon to reflect Digicel-Haiti's rebranding ("HBS-enhanced bypass" as opposed to plain old "bypass"),[63] Mr. Castel's purported damages analysis is completely unchanged from what Digicel-Haiti submitted earlier in the case. That "analysis" has not been updated or modified *at all* to reflect the Court's ruling narrowing this case to the sole claim of fraud-by-active-concealment-by-HBS.

Earlier in the case, UPM explained in detail why Mr. Castel's "analysis" is inadmissible, unreliable, speculative junk.[64] All of those points remain true, and UPM respectfully refers the Court to that still-fully-applicable discussion. In summary, however, UPM highlights the following problems with Mr. Castel's "analysis":

---

[59] *Gonsalez v. Amsberry*, *supra,* 2020 U.S. Dist. LEXIS 167099, at *17.

[60] *Id.*

[61] *Matsushita Elec. Indus. Co. , supra,* 475 U.S. at 586-587.

[62] Digicel-Haiti Expert Witness Statements at 1-7; Digicel-Haiti Memorandum at 10-11.

[63] Digicel-Haiti Expert Witness Statements at 1-3, 5-7 (nearly a dozen usages of bypass "enhanced" by HBS).

[64] Motion *in Limine* at 4-10; *In Limine* Reply at 2-11.

Page 18 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

- He has no information ***at all*** about UPM's operations; his starting point is a press report that does not mention UPM and is not reliable in any event.

- He has no basis for concluding that UPM ever deployed equipment with 400 ports (radios) in Haiti – the starting point of his mathematical games.

- He has no basis to think that a bypasser with 400 ports would actually blast out calls on 320 of those ports, 14 hours per day, day in and day out for any period of time, much less for more than two years.

- Under the Court's rulings, Digicel-Haiti's entire case is necessarily premised on the notion that UPM used HBS to make the usage of its SIM cards indistinguishable from the usage of individual subscribers; Mr. Castel's assumption of a bypasser blasting out calls 14 hours per day, day in and day out, is the exact opposite of using HBS. As a result, Mr. Castel's "analysis" on its face has no possible relevance to Digicel-Haiti's case.

- The speculation that a bypasser could blast out calls, day in, day out, is inconsistent with Digicel-Haiti's point that its anti-bypass AI identifies 99.9% of bypass SIM cards.

As UPM noted earlier in the case, it would be reversible error to permit Mr. Castel to testify or to present any version of his bypass fantasies to the jury.[65] For all those same reasons, those fantasies cannot establish a genuine issue of material fact about the validity of UPM's business records; about what those records show as to how many minutes of bypass traffic UPM sent to Digicel-Haiti; or about how much UPM paid.

### D. Other Than Mr. Castel's Speculations, Digicel-Haiti Has Nothing to Support Its Claim of Damages

UPM has searched in vain through Digicel-Haiti's Memorandum, witness statements, and proposed exhibits looking for anything (other than Mr. Castel) that would support, with admissible evidence, the assertion that UPM's bypass activity either harmed Digicel-Haiti at

---

[65] *In Limine* Reply at 10. Given that Mr. Castel's "analysis" is so speculative and unreliable that it is not admissible at all, it necessarily follows that it is not sufficiently precise or reasonable in the circumstances to support any particular damages claim. It also follows that – contrary to Digicel-Haiti's suggestion – Mr. Castel's "model" is not a form of reliable circumstantial evidence, and does not establish anything, either about the overall impact of bypass on Digicel-Haiti, or about anything UPM, specifically, supposedly did. *See* Digicel-Haiti Memorandum at 8-9.

Page 19 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

all, or harmed Digicel-Haiti in some reasonably ascertainable amount. As far as UPM can tell, it is simply not there. Digicel-Haiti's entire damages case rests on the hope that the Court will let Mr. Castel get before the jury – which the Court cannot, in fairness, do.

For this reason, Digicel-Haiti's effort to cast UPM's objection as having to do with Digicel-Haiti's inability to estimate damages with "certitude," or "certainty," or with "exact" accuracy, or with "precision"[66] is completely beside the point – a classic red herring. The problem is not that Digicel-Haiti has some rough estimate of damages that it cannot make more refined due to a lack of data. And the problem is not that the nature of the alleged tort, or UPM's actions, somehow prevent Digicel-Haiti from getting the data needed to develop a reasonable damages estimate.[67] The problem is that Digicel-Haiti did not look at data it itself has, and does not like the results of looking at the other data that is actually available.

As to the data Digicel-Haiti itself has, UPM explained that even though Digicel-Haiti lost its business records for the specific period relevant to this case, it could have used data from its *ongoing* efforts to block bypass SIM cards to develop reasonable, fact-based estimates of how many (and what portion of) active SIM cards on its network were being used for bypass, how many minutes of bypass traffic each such SIM card handled before being cut off, how much money was left in the SIM cards' accounts at the time of cut-off, etc.[68] This would have been a reasonable first stab at estimating how much unpaid bypass traffic (if any) any given bypass SIM card generated before being cut off. Moreover, based on Digicel-Haiti's knowledge of the bypass market (or with the help of an actual expert), it could have developed an estimate of how many bypass SIM cards were used by UPM, as opposed to other bypassers. UPM would certainly have challenged such an analysis, and would certainly have presented its own counter-analysis. But at

---

[66] Digicel-Haiti Memorandum at 5 ("certitude"), 5-6 ("certainty" and "precision"), 4-6, 9 ("exact" and cognates).

[67] *Id.* at 5-6, 8.

[68] Motion *in Limine* at 7-8; *In Limine* Reply at 10.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

that point the dispute would have been based on competing data: a proper question for a jury.

At this stage, on summary judgment, UPM is not arguing that the Court should draw a negative inference from the fact that Digicel-Haiti chose not to develop or present such an analysis (or from the mysterious disappearance of Digicel-Haiti's records). UPM is, however, insisting that *Digicel-Haiti* cannot be permitted to rely on a purported inability to generate fact-based damages estimates, *when it manifestly could have done so,* as a free pass to avoid the consequences of having no admissible evidence to support its damages claim. That consequence is dismissal of its claim.

Moreover, as discussed above, Digicel-Haiti also has no good excuse for failing to deal with the actual data available in UPM's business records. Digicel-Haiti's existential angst that, despite what UPM's records show, UPM might be a fraudulent criminal bypass mastermind – not only lying about the international nature of its telephone calls, but also lying about what its records show – is simply not enough to avoid summary judgment. It is past time for Digicel-Haiti to let that fantasy go. But whether it does so or not, there is no possible legal or factual basis for the Court to indulge it by letting this matter go to trial.

### E.  Digicel-Haiti Has Not Shown That It Incurred Any Other Damages

Digicel-Haiti's claim for damages at least nominally includes claims for things other than lost revenues.[69] However, any such claims are unsupported by admissible evidence.

First, UPM notes that Digicel-Haiti appears to have (wisely) abandoned any argument that completing bypass calls puts any undue stress or strain on its wireless network. Digicel-Haiti's entire fraud claim is based on the notion that a bypass call looks to its network just like a local call, and its HBS-enhanced-fraud claim is necessarily limited to calls that appear in the same patterns as those of individual subscribers. A pattern of calls that look like they are being made by individual subscribers cannot but any undue strain on Digicel-Haiti's network.

---

[69] *See* Digicel-Haiti Memorandum at 11-12; Digicel-Haiti Lay Witness Statements at 6, 10.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Moreover, Digicel-Haiti charges its local subscribers its local per-minute rate when they make calls. That means that the local rate is sufficient, by Digicel-Haiti's own estimation, to fully compensate it for whatever impact such calls have on its network – whether they are being made by local subscribers or not. There is literally nothing in Digicel-Haiti's filings that addresses this claim, so summary judgment with respect to it is entirely appropriate.[70] And, for this same reason, any claim that UPM's bypass-by-means-of-HBS affected the "quality" of calls on Digicel-Haiti's network is incoherent.[71] Bypass calls that are indistinguishable from local calls could not have degraded the quality or performance of Digicel-Haiti's network.

Moreover, because Digicel-Haiti has no evidence of how much bypass traffic UPM supposedly completed by virtue of using HBS, there is no sound evidentiary basis from which to infer that UPM's bypass traffic harmed Digicel-Haiti's reputation or relationship with regulators. In this regard, Digicel-Haiti asserts that it experienced "tens of millions of bypass minutes per year."[72] Disregarding Mr. Castel's wild speculations about the scale of UPM's operations, the only admissible evidence, based on UPM's business records, shows that during 2011-2012 UPM completed approximately 1 million bypass minutes (all in-country), and that during 2014 it

---

[70] In this regard, UPM notes that Digicel-Haiti's witness statements are not sufficiently specific to meet the goal of avoiding surprise. For example, on the issue of non-monetary damages, Digicel-Haiti states that Mr. Boute will "non-monetary damages, ***including*** damages to Digicel Haiti's relationship with the regulator and the wider Haitian Authorities." Digicel-Haiti Law Witness Statements at 6 (emphasis added); *see also id.* at 10. What will he say about that "relationship"? What will he say about how it was supposedly "damaged" by anything UPM did? Does Digicel-Haiti intend "including" to mean "including, but not limited to"? This problem is pervasive in Digicel-Haiti's filings. If Digicel-Haiti's fraud claim is not dismissed, UPM will file an appropriate motion either seeking further clarification from Digicel-Haiti as to what its witnesses will actually, substantively say, or strictly forbidding testimony the substance of which is not fully and fairly disclosed in the witness statements.

[71] Digicel-Haiti Lay Witness Statements at 10. *See also* Renewed SJ Motion at 7-8; Renewed SJ Reply at 12.

[72] *Id.* at 6.

---

Page 22 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

***TOMASI BRAGAR DUBAY***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

completed only 280,000 bypass minutes, of which less than 1,000 were in-country bypass.[73]

Even assuming that *all* of that traffic is attributable to "HBS enhanced bypass," UPM was clearly such a small fraction of the total that any contribution to reputational or similar harm to Digicel-Haiti was insubstantial. Digicel-Haiti has no admissible evidence that UPM's activity led it to incur any expenses, or endure any reputational damage, that it was not already subject to without UPM's relatively minor presence. Even assuming, therefore, that Digicel-Haiti was entitled to more money from UPM for bypass traffic than UPM has already paid (which it is not), Digicel-Haiti has presented no evidence that shows that UPM's use of HBS caused it harm in any other way. As a result, these aspects of Digicel-Haiti's claim must be dismissed as well.[74]

F.   **Summary: Digicel-Haiti's Case Must Be Dismissed because It Cannot Prove That It was Damaged At All, or that UPM's Use of HBS was the Cause of Any Damages It Sustained**

The discussion above shows that there is no genuine dispute about whether Digicel-Haiti was damaged by UPM's bypass activities. Digicel-Haiti has no admissible evidence that it was hurt by terminating bypass traffic at all. It has no admissible evidence that UPM completed even one bypass call as a result of UPM's supposed use of HBS, and has no admissible evidence from which one could infer that any such calls were completed. It has no admissible evidence to contradict UPM's straightforward, evidence-based showing that UPM has already fully paid for the bypass calls it completed – at Digicel-Haiti's desired $0.23 rate – and no excuse for failing to develop one. And it has no basis at all to rely on Mr. Castel's speculative and unreliable "analysis," which – among its many other flaws – on its face cannot apply to an HBS-based fraud claim, and on its face contradicts Digicel-Haiti's own testimony as to the effectiveness of its anti-bypass AI. In these circumstances, the law of summary judgment requires dismissal of Digicel-Haiti's case.

---

[73] Declaration Of Bruce Tran As Chief Executive Officer Of UPM Technology, Inc. In Support Of UPM Technology, Inc.'s Motion For Summary Judgment (ECF #256) at 8-12 & Exh. 1.

[74] This logic also applies to defeat Digicel-Haiti's claim for damages arising from the money it claims to have spent investigating bypass. *See, e.g.,* Digicel-Haiti Memorandum at 12.

Page 23 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## V.    DIGICEL-HAITI HAS NO EVIDENCE THAT IT WAS DAMAGED BY RESALE OF RLYH SERVICE

The discussion above applies fully to any claim that UPM's resale of RLYH service damaged Digicel-Haiti in any way. There are, however, two additional points, specific to RLYH service, that require dismissal of Digicel-Haiti's fraud claim with respect to that service.

First, for the effective use of HBS to constitute a form of active concealment, the HBS must – at a minimum – have prevented Digicel-Haiti from doing something it was legally entitled to do. For purposes of this motion, UPM assumes that Digicel-Haiti was legally authorized to cut off the SIM cards that Digicel-Haiti identified as being used for in-country bypass. But for reasons UPM has fully explained elsewhere, not only was Digicel-Haiti not *authorized* to cut off the SIM cards that UPM was using to resell RLYH service, cutting off those SIM cards was *affirmatively illegal*.[75] For UPM to try to avoid having its RLYH SIM cards cut off, including by using HBS, would not have been fraud by active concealment; it would have been a lawful effort to mitigate its damages. The "HBS-as-active-concealment" theory simply cannot apply, as a matter of law, to RLYH resale.[76]

Second, assuming that there is some theory on which RLYH resale could be considered fraudulent (which there is not), as UPM explained in earlier filings, the record evidence is clear and uncontradicted that for each RLYH call UPM completed, Digicel-Haiti received *both* the local per-minute rate provided for by the RLYH service *and* the $0.23 per minute for international calls.[77] UPM's resale of RLYH service was a profit center for Digicel-Haiti, not a

---

[75] [UPM's] Motion for Summary Judgment – Communications Act (ECF #386).

[76] For this same reason, any claim that UPM's resale of RLYH service negatively affected Digicel-Haiti's relations with its roaming partners is also precluded. *See* Digicel-Haiti Lay Witness Statements at 5. Any such harm – if it is legally cognizable at all – is attributable to Digicel-Haiti not initially structuring the RLYH service in a way that comports with the United States regulatory requirements to which that service is subject.

[77] Renewed SJ Motion at 3-4, 10; Renewed SJ Reply at 6, 14-15.

Page 24 – DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00677977.000

source of damage. UPM is therefore entitled to summary judgment against Digicel-Haiti's fraud claim as it relates to RLYH resale on this ground as well.

## VI.    CONCLUSION

The Court asked UPM to file a brief seeking "judgment as a matter of law on Phase I (causation and damages) based on Digicel-Haiti's recently-filed trial documents." ECF #383. In this brief, UPM has shown that Digicel-Haiti: (1) has no admissible evidence that it is harmed by completing bypass calls in general; (2) has no admissible evidence that UPM completed any such calls by virtue of using HBS; (3) has no admissible evidence that it was damaged by UPM's bypass activity; (4) has no admissible evidence that could contradict UPM's showing that UPM already fully paid for every bypass call it completed; and (5) has no admissible evidence that RLYH resale could ever even be fraudulent, much less that such resale damaged Digicel-Haiti. It follows that Digicel-Haiti cannot prevail on its fraud claim, which requires affirmative proof that Digicel-Haiti relied on a UPM misrepresentation and that its reliance caused it to be damaged. UPM therefore respectfully requests that the Court fully and finally dismiss Digicel-Haiti's case.

Dated: August 31, 2022

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
Kathryn P. Salyer, OSB #883017
Eleanor A. DuBay, OSB #073755
Blake Van Zile, OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Telephone: (503) 894-9900

Of Attorneys for Defendants

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
Christopher W. Savage, D.C. Bar #362657
chrissavage@dwt.com
*(Admitted Pro Hac Vice)*
Katherine Sheriff
katherinesheriff@dwt.com
Telephone: (202) 973-4200

Of Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2022, I served the foregoing **DEFENDANTS'**

**MOTION FOR JUDGMENT AS A MATTER OF LAW** on the following individuals by

electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com

Dated: August 31, 2022

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
Kathryn P. Salyer, OSB #883017
Eleanor A. DuBay, OSB #073755
Blake Van Zile, OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Telephone: (503) 894-9900

Of Attorneys for Defendants

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
Christopher W. Savage, D.C. Bar #362657
chrissavage@dwt.com
*(Admitted Pro Hac Vice)*
Katherine Sheriff
katherinesheriff@dwt.com
Telephone: (202) 973-4200

Of Attorneys for Defendants

***TOMASI BRAGAR DUBAY***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236