**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Bragar DuBay
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

   Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>  Plaintiff & Counterclaim-Defendant,<br><br>  v.<br><br>**UPM TECHNOLOGY, INC**., *et al.,*<br><br>  Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW – CAUSATION AND DAMAGES**<br><br>**Hearing Date: September 14, 2022**<br>**Hearing Time: 1:30 p.m.** |

Cover Page – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY ........................................................................... 1

II.     DIGICEL-HAITI HAS NO EVIDENCE THAT IT WAS HARMED BY
        BYPASS ........................................................................................................................ 3

        A.      Digicel-Haiti Has No Evidence that Bypass Calls Would Have Been
                Completed Via Its International Gateway................................................................ 6

        B.      Even If Entitled to $0.23 per Minute on Every Bypass Call, Digicel-Haiti
                Still Has No Evidence That It Was Actually Damaged......................................... 8

        C.      Digicel-Haiti's Damages "Estimate" Is Entirely Speculative And
                Inconsistent with Its Theory on the Merits ........................................................... 11

III.    DIGICEL-HAITI HAS NO EVIDENCE THAT IT WAS DAMAGED BY
        VIRTUE OF REASONABLE RELIANCE ON UPM'S SUPPOSED USE OF
        HBS .............................................................................................................................. 14

IV.     CONCLUSION............................................................................................................. 18

Page i – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

# TABLE OF AUTHORITIES

### Cases

*Baughman v. Pina*, 200 Or. App. 15, 18, 113 P.3d 459 (2005) ................................................ 3, 17

*Bixby v. KBR, Inc.*, 2012 U.S. Dist. LEXIS 124267 at *24 (D. Or. Aug. 31, 2012) .......... 3, 17, 18

*Claus v. Columbia State Bank*, 2018 U.S. Dist. LEXIS 64428 at **23-24 (D. Or. April 17, 2018) ...................................................................................................................................... 18

*Dizick v. Umpqua Cmty. Coll.*, 287 Or. 303, 311, 599 P.2d 444 (1979) ...................................... 9

*Mendoza v. Lithia Motors, Inc.,* No. 6:16-cv-01264-AA, 2017 U.S. Dist. LEXIS 4716 at *9 (D. Or. Jan. 11, 2017) .................................................................................................................. 15

*Oregon Pub. Employees' Ret. Bd. ex rel. Oregon Pub. Employees' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 428, 83 P.3d 350 (2004) ............................................................. 18

*Paul v. Kelley*, 42 Or. App. 61,  599 P.2d 1236 (Or. App. 1979) .................................................. 4

*Sanders v. Francis*, 277 Or. 593, 598, 561 P.2d 1003 (1977) ..................................................... 15

*Strawn v. Farmers Ins. Co.*, 350 Or. 336, 351-52, 258 P.3d 1199 (2011) .................................... 4

*Teater v. Pfizer, Inc.*, 2013 U.S. Dist. LEXIS 79629 at *13 (D. Or. May 13, 2013) ................ 3, 18

*Wieber v. FedEx Ground Package Sys., Inc.*, 231 Or. App. 469, 483, 220 P.3d 68 (2009) ......... 18

### Rules

Fed R. Civ. P. 50 .......................................................................................................................... 3

Fed R. Civ. P. 56 .......................................................................................................................... 3

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## I.    INTRODUCTION AND SUMMARY

UPM identified critical gaps in Digicel-Haiti's evidence and explained why that evidence, taken as fully true, does not show that anything UPM did caused Digicel-Haiti any harm.[1] Digicel-Haiti's Opposition does not fill those gaps.[2]

The first problem is that Digicel-Haiti's evidence does not show that it was harmed by bypass at all.[3] It argues that all bypass calls *should have* been routed through the international gateway and charged $0.23 per minute, but then, without justification, it assumes that they *would have* been. This assumption is baseless – contrary to common sense and basic economics: a lower price (the bypass route) will attract demand (bypass calls) that would not be forthcoming at a higher price (the international gateway route). One could imagine Digicel-Haiti presenting some economic or market study that might support its assumption – that price does not matter and that bypass calls would have gone via the international gateway route – but it presents no such study or any other evidence justifying its assumption.[4]

The second problem is that, even if Digicel-Haiti was entitled to $0.23 per minute on each bypass call, it has presented no evidence about how much it actually received.[5] There are two aspects to this evidentiary failure. First, the evidence is clear that when UPM resold "Roam Like You're Home" ("RLYH") service, Digicel-Haiti received *both* $0.23 per minute on every call, *and* its local per-minute rate. This means that Digicel-Haiti cannot possibly have been

---

[1] *See* Defendants' Motion for Judgment as a Matter of Law – Causation and Damages (ECF #398) ("UPM Motion (Damages)"), *passim*.

[2] *See* Plaintiff Unigestion Holdings, S.A.'s Response in Opposition to UPM Technology, Inc.'s Motion for Judgment as a Matter of Law – Causation and Damages (ECF #406) ("Digicel-Haiti Opposition").

[3] *See* UPM Motion (Damages) at 5-7, 9-12.

[4] *See* Digicel-Haiti Opposition at 6-7. Digicel-Haiti tries to dodge this problem by arguing that UPM is trying to "lure" it into "proving a negative." *See infra*.

[5] UPM Motion (Damages) at 7, 17-19.

Page 1 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

damaged by resale of RLYH service. Second, it cannot show that it *lost* money on in-country bypass calls without showing how much money it *received*. SIM cards could only make calls if there was money in their accounts. When Digicel-Haiti cut off a SIM card, it kept that money. Any claim that it was damaged must take account of the top-up money it confiscated. Digicel-Haiti ignores this issue in its own evidence and has nothing to dispute UPM's business records showing that UPM in fact paid Digicel-Haiti more than $0.23 per minute for the calls UPM completed.[6]

Third, Digicel-Haiti's only "evidence" bearing on the amount of its damages is the "analysis" prepared by Mr. Castel. That "evidence" is speculative, unscientific, unreliable, misleading, and directly contrary to Digicel-Haiti's theory of liability.[7] It cannot properly be presented to the jury and, without it, Digicel-Haiti has no evidence that it was damaged. Digicel-Haiti tries to defend Mr. Castel's "analysis," but it presents nothing to justify his speculations.[8]

Finally, Digicel-Haiti's damages case fails in ways specific to human behavior software ("HBS").[9] UPM assumes for purposes of this motion that it used some form of HBS. In terms of the elements of fraud, this is the source of UPM's claimed misrepresentations – it is what supposedly let UPM "actively conceal" that the calls it sent to Digicel-Haiti's network were not from individual subscribers. But Digicel-Haiti has no evidence as to how the supposed HBS worked or what it did. This means that Digicel-Haiti has no evidence that it *relied on* the supposed concealment created by the HBS – that is, no evidence that the HBS got any calls through that would not have gotten through otherwise – and no evidence that any reliance was *reasonable*. These are technically complex issues, far "beyond the knowledge and experience of an ordinary

---

[6] *See* Digicel-Haiti Opposition at 8 (arguing against using UPM's business records but presenting no facts of its own; presenting incoherent statement about RLYH). *See infra.*

[7] UPM Motion (Damages) at 18-20. *See also, e.g.*, Defendants' Motions *in Limine* (ECF #324) at 4-10.

[8] *See* Digicel-Haiti Opposition at 14-17.

[9] UPM Motion (Damages) at 12-15.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

lay person."[10] As a result, they cannot be addressed without competent expert testimony evaluating the nature and effectiveness of both the supposed HBS and Digicel-Haiti's anti-bypass artificial intelligence ("AI") system.[11] Digicel-Haiti has no such evidence and so cannot prove – or even establish the basis for a reasonable inference – that it relied on the supposed HBS in the first place, much less that any reliance was reasonable. Digicel-Haiti's Opposition focuses on arguing that UPM used some form of HBS, not how or why the supposed HBS worked.[12] It entirely ignores the evidentiary problems identified above.

These are complete failures of Digicel-Haiti's case that warrant dismissal, as there are no genuine trial issues for the jury.[13]

## II.    DIGICEL-HAITI HAS NO EVIDENCE THAT IT WAS HARMED BY BYPASS

To prove fraud, Digicel-Haiti must prove each element of the tort: (1) an intentional material misrepresentation by UPM; (2) that Digicel-Haiti reasonably relied on; and (3) that it was

---

[10] *Bixby v. KBR, Inc.*, 2012 U.S. Dist. LEXIS 124267 at *24 (D. Or. Aug. 31, 2012), quoting *Baughman v. Pina*, 200 Or. App. 15, 18, 113 P.3d 459 (2005).

[11] *See Teater v. Pfizer, Inc.*, 2013 U.S. Dist. LEXIS 79629 at *13 (D. Or. May 13, 2013) (when causation involves sufficiently complex issues, "no rational juror can find that a plaintiff has established causation unless the plaintiff has presented *expert testimony* that there is a reasonable probability that [the defendant's actions] *caused the plaintiff's injuries*") (emphasis in original), quoting *Bixby v. KBR, Inc., supra,* 2012 U.S. Dist. LEXIS 124267 at **23-24.

[12] Digicel-Haiti Opposition at 7, 9, 18-19.

[13] UPM does not understand Digicel-Haiti's arguments about timeliness or the application of Rule 50 versus Rule 56. Digicel-Haiti Opposition at 9-13. The Court directed UPM to file a brief seeking "judgment as a matter of law on Phase I (causation and damages) based on Digicel-Haiti's recently-filed trial documents." ECF #383. UPM understood that to mean that it should explain why, considering everything Digicel-Haiti filed, Digicel-Haiti's fraud claim should be dismissed, focusing on explaining why (a) Digicel-Haiti had not shown that anything UPM did caused any damages that Digicel-Haiti claims to have sustained ("causation"), and (b) that Digicel-Haiti had not shown that it was damaged in the first place ("damages"). This is what UPM filed. To the extent that this constitutes another "bite at the apple," *see* Digicel-Haiti Opposition at 11-12, UPM understood the Court to be inviting UPM to take it.

Page 3 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

damaged as a result of its reliance.[14] The Court has ruled that *if* UPM used HBS, that can constitute fraud by "active concealment."[15] So, for purposes of this motion, UPM assumes *arguendo* that it did use HBS. That means that UPM assumes *arguendo* that it made an intentional material misrepresentation to Digicel-Haiti – specifically, that the calls it was completing were being made by an individual subscriber. The point of this motion is that even on that assumption, Digicel-Haiti's fraud claim fails because its evidence does not establish either reasonable reliance or damages.[16] For this reason, Digicel-Haiti's recitation of evidence (and earlier Court rulings) in support of the claim that UPM used HBS are entirely beside the point.[17]

What is *not* beside the point is that Digicel-Haiti has no evidence that it was harmed when UPM completed bypass calls. There is no dispute that if a bypass call had been routed

---

[14] *Strawn v. Farmers Ins. Co.*, 350 Or. 336, 351-52, 258 P.3d 1199 (2011).

[15] Opinion and Order (ECF #294) at 30-31.

[16] There is no support in Oregon case law (or any law) for the notion that a plaintiff claiming to have been the victim of fraud by active concealment is relieved of the obligation to prove that they relied on the misrepresentation created by the active concealment, or that such reliance caused them harm. One can of course imagine simple cases where the connection between the misrepresentation, reliance, and damages is sufficiently obvious that those issues are not in serious dispute. *See, e.g.*, *Paul v. Kelley*, 42 Or. App. 61, 599 P.2d 1236 (Or. App. 1979) (drainage ditch in need of remediation hidden by being filled in). This, however, is not such a case, and UPM does not understand the Court to have so ruled. *See* Opinion and Order (ECF #380) at 10 (the assumption that UPM used HBS supports a "reasonable inference" that HBS worked to harm Digicel-Haiti). To the extent, however, that the Court's ruling was intended to effectively elide Digicel-Haiti's obligation under substantive Oregon tort law to prove reliance, causation, and damages – whether expressly, or by concluding that proof of active concealment necessarily or logically supports an inference of reliance, causation, and damages – UPM respectfully submits that such a ruling constitutes plain error and should be corrected in the Court's consideration of the current motion. *See infra.*

[17] *See, e.g.,* Digicel-Haiti Opposition at 4-5, 7-8. For example, Digicel-Haiti says that UPM "scoffs at the allegation that its uses HBS in its bypass, daring Digicel Haiti to prove it." *Id.* at 8. UPM does not "scoff" at the allegation, it simply denies that it is true. *See, e.g.,* Defendants' Lay Witness Statements (ECF #320) at 6, 9. The Court did not rule that UPM used HBS; it ruled that there was a triable issue of fact regarding whether UPM used HBS. *See* Opinion and Order (ECF #380) at 7 ("***UPM denied using HBS***, and the case was heading toward trial at Phase I") (emphasis added).

Page 4 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

through Digicel-Haiti's international gateway, Digicel-Haiti would have charged a higher per-minute rate for it. But it cannot simply assume that bypass calls would been routed through its international gateway. And if it is entitled to more money for bypass calls than the per-minute rate it charges for local calls, it cannot simply assume that it did not receive that money in the form of confiscated top-ups. And even if it could prove those things, it may not go to the jury with a damages estimate based on pure, unjustified speculation that does not even purport to link any estimate of damages with any UPM use of HBS.[18] Digicel-Haiti's Opposition has not filled these gaps in its case.[19]

UPM emphasizes that the problem is *not* that Digicel-Haiti has failed to prove some specific amount of damages with sufficient precision. The problem is that Digicel-Haiti has failed to prove that it suffered any damages *at all.* As explained below, this failure specifically applies to the damages "analysis" presented by Mr. Castel. It is *also* true that his damages "analysis" is not adequately precise under applicable standards, which is *another* reason to reject it. But Digicel-Haiti's argument about the acceptability of imprecise damage estimates is a distraction, not a rebuttal to UPM's motion.[20]

---

[18] Digicel-Haiti Opposition at 15-17. *See* Opinion and Order (ECF #380) at 9 (damages testimony must fall "within the limitations provided by" the Court's order limiting Digicel-Haiti's case to fraud-by-active-concealment-by-HBS).

[19] Digicel-Haiti's claims for damages for reputational harm and investigation expenses, *see id.* at 16, 18, depend entirely on its being able to show that UPM's actions damaged it economically in the first place. As UPM explained, even if *all* the bypass calls it completed were completed as a result of using HBS, the volume of its activity was an insubstantial portion of the total amount of bypass to which Digicel-Haiti was subject. *See* UPM Motion (Damages) at 22-23. Digicel-Haiti's claims for damages from reputational harm and investigation expenses, therefore, fail as well.

[20] Digicel-Haiti Opposition at 13-14, 18.

Page 5 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

### A. Digicel-Haiti Has No Evidence that Bypass Calls Would Have Been Completed Via Its International Gateway

Bypass calls are technically identical to local calls.[21] Digicel-Haiti is paid the local rate for bypass calls because its system deducts that rate as the call is in progress.[22] If the bypass calls would have gone through Digicel-Haiti's more expensive international gateway, Digicel-Haiti would have received more money. But if the bypass calls would *not* have been made at the higher rate, then Digicel-Haiti was not damaged by completing them as local calls.

Digicel-Haiti presents no evidence that bypass calls would have been made via the international gateway if the bypass route had not been available. Instead, it assumes that the level of calling between the United States and Haiti is like a steadily flowing river: all of the water will make its way downstream whether it flows in the main channel or is diverted to a side channel. In this image, bypass calls are simply being diverted from the main channel – close off the side channel, and they would all flow as Digicel-Haiti claims they should.

The problem with this image is that it contradicts common sense and basic economics. The amount of calling to Haiti is not a fixed number. It depends on how much the calls cost. A higher price (the international gateway route) will suppress demand. A lower price (the bypass route) will stimulate demand. Without proof that the bypass calls would have been made even at the higher international price, Digicel-Haiti cannot show that it was harmed by bypass. Quite the contrary. If the calls would not have been made at the higher price – the most natural inference from how demand responds to price – then the impact of bypass on Digicel-Haiti is not *lost* money, reflected in the difference between its fantasy of getting the international gateway price and the reality of getting the local rate. The impact of bypass on Digicel-Haiti is *found* money, reflected in the difference between getting the local rate and getting nothing at all.

---

[21] McEwen Depo. at 125:25-127:1. (All deposition material cited in this brief is contained in the accompanying Declaration of Christopher Savage in Support of UPM Reply – Damages and Causation.)

[22] Boute Depo. at 75:19-78:6.

Page 6 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Digicel-Haiti's evidence confirms that the laws of economics work for calling to Haiti in accordance with common sense and common experience. When the Haitian government raised the price of inbound international calls to $0.23 (including its $0.05 per minute tax), the amount of calls sent via the international gateway decreased, and the amount of bypass calls increased.[23] This is supply and demand at work. The bypass calls were not diverted like water being stolen from a main channel. They were being made because the international gateway became more expensive. Totally sensible – but directly contrary to the assumptions underlying Digicel-Haiti's damages claim.

Expecting Digicel-Haiti to address these points is not asking that it "prove a negative."[24] It could have and should have used its detailed and intimate knowledge of the United-States-to-Haiti calling market to explain why it would be reasonable to conclude – contrary to the natural working of supply and demand – that bypass calls would still have been made, via the

---

[23] Boute Depo. at 156:19-157:9 ("up until 2011 [bypass] was at a certain level, and then with the introduction of the 23 cents termination rate it increased"); *see also id.* at 160:19-161:10 (after the $0.05 per minute tax was imposed the number of minutes declined, so that the government's projected tax revenues were not collected). This testimony shows that bypass in Haiti developed as a direct result of an increase in the price of calling via the international gateway. The natural inference is that these are calls that would not have been made at the higher price. UPM did not present this evidence in connection with its earlier motion for summary judgment on this issue, and respectfully requests that the Court consider its present motion on this point anew. *See* Opinion and Order (ECF #380) at 9 (it would be a "reasonable inference" that some bypass calls would go by the international gateway route if bypass were unavailable). The evidence shows that the bypass calls that occurred, occurred precisely because the international route ***became*** too expensive, so the natural inference is that they would not have been made at the higher price. Conceivably, Digicel-Haiti could present expert testimony to contradict this inference, *see infra*, but it has not even tried to do so.

[24] Digicel-Haiti Opposition at 6-7.

Page 7 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

expensive international gateway route, if bypass had been unavailable. That should not have been hard, if it were true.[25] But the evidence shows that it is not.[26]

Given this, Digicel-Haiti has no evidence that it was damaged by bypass at all – monetarily or otherwise. This means that it cannot prove that it was harmed by whatever bypass calls UPM completed. As a result, Digicel-Haiti's fraud claim must be dismissed.

**B. Even If Entitled to $0.23 per Minute on Every Bypass Call, Digicel-Haiti Still Has No Evidence That It Was Actually Damaged**

Assume that Digicel-Haiti had somehow proven that every bypass call would have gone through the international gateway if bypass had not occurred. On that theory, Digicel-Haiti would not be wrong to say that it was damaged, if all it received for bypass calls was the local per-minute rate. But the evidence is uncontradicted that that is not all Digicel-Haiti received. To the contrary, when Digicel-Haiti cut off a SIM card being used for bypass, it kept the unused top-up money.[27] Ignoring that money is like claiming a buyer did not pay a $100 price by pointing to the buyer's $50 check, but ignoring that $50 was also paid in cash.

The evidence from UPM's business records shows that UPM in fact paid Digicel-Haiti substantially more than $0.23 per minute for the calls it completed, when the confiscated top-

---

[25] An economic study supporting Digicel-Haiti's assumption would have tried to show that the elasticity of demand for calling from the United States to Haiti is so low that the quantity of calling demanded does not materially decline as price increases. If true, this would have indicated that if bypass routes were not available, the calls would still have been made using the higher-priced international route.

[26] The absence of such a study from Digicel-Haiti's case is probably not accidental, because the available evidence, such as that relating to Digicel-Haiti's "Diaspora" program, shows that United-States-to-Haiti calling is price-sensitive. The advertisements Digicel-Haiti targeted to the Haitian diaspora in the United States were actively promoting price cuts on airtime as a way to encourage calling. *See* Declaration of Bruce Tran in Support of Motion for Summary Judgment and Opposition to Digicel-Haiti's Motion for Summary Judgment (ECF #405).

[27] Boute Depo. at 145:18-146:2 (once a SIM card is cut off, Digicel-Haiti has "banked" the money in the account); *id.* at 140:20-141:1 (when Digicel-Haiti is sure a SIM card is used for bypass, it performs "SIM depletion," which is taking all the money in the account). There are no refunds.

Page 8 – DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW – CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

ups are taken into account. Digicel-Haiti refuses to acknowledge that evidence. But even indulging Digicel-Haiti in that regard, ignoring UPM's evidence does not excuse Digicel-Haiti's failure to address the issue with its own. UPM explained how Digicel-Haiti could readily have developed an evidence-based estimate of the impact of bypass, including the impact of confiscated top-up money.[28] Digicel-Haiti's failure to do so, and to present admissible evidence of the results, is a fatal flaw in its damages case.[29]

Other than complaining about UPM's business records, Digicel-Haiti has nothing to say on this point.[30] It summarizes its damages theory as being that "UPM used Digicel-Haiti's network to complete international calls and did not pay for them."[31] UPM's point – and Digicel's evidentiary failure – is that whether UPM paid enough for international calls cannot be determined without taking account of how much money UPM, in fact, paid.[32] Ignoring the money that UPM paid, which Digicel-Haiti received and retained, is simply irrational.[33]

---

[28] *See, e.g.*, Defendants' Motions *in Limine* (ECF #324) at 7-8; Defendants' Objections to [Digicel-Haiti's] Omnibus Motions in Limine (ECF #239) at 2-7.

[29] UPM asserts that its activity was not fraudulent at all, and that the unused top-up money that it paid and that Digicel-Haiti kept should be returned to UPM. *See* Defendants' Answer, Affirmative Defenses and Counterclaims to Plaintiff's Third Amended Complaint and Demand for Jury Trial (ECF #202) at ¶¶ 350-62 (counterclaims for breach of contract and money had and received).

[30] Digicel-Haiti Opposition at 8.

[31] *Id.* at 7.

[32] Among its many, many flaws, Mr. Castel's damages "analysis" not only ignores the confiscated top-up money, it ignores the fact that all bypass calls were charged the local rate while in progress. And Mr. Castel does not address RLYH resale at all. *See infra*.

[33] From time to time Digicel-Haiti has alluded to a theory under which its damages include ***both*** the local rate for bypass calls that appeared as local calls ***and*** the international rate for the same calls, because the bypass calls came from overseas. No matter how flexible one views fraud damages to be, *see Dizick v. Umpqua Cmty. Coll.*, 287 Or. 303, 311, 599 P.2d 444 (1979), there is no conceivable logic under which Digicel-Haiti should be paid ***twice*** for the single service of completing a single bypass call.

Page 9 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Irrespective of how one treats UPM's business records, it is indisputable that Digicel-Haiti has already been fully paid for RLYH calls. The evidence is uncontradicted that every RLYH call is routed through Digicel-Haiti's international gateway and is assessed both the $0.23 per minute international rate and the local rate.[34] Digicel-Haiti's only response to this destruction of its damages claim for RLYH calls is to quote Mr. McEwen (its technical expert, not its damages "expert") as follows: "there's an international call encapsulated with a local transmission," and "this would be the human equivalent of us trying to cross a border without going through Immigration."[35]

Aside from this being word salad, at that point in his deposition, Mr. McEwen was not even talking about RLYH. Rather, he was responding to a question about whether his notion of "encapsulation" applied to "a bypass call [that] comes through the Internet and pops out as a local call, looks like a local call" – that is a question about in-country bypass.[36] Discussion of RLYH did not start until about ten pages later, after a break, and after an introduction by counsel that stated, among other things, "So now let's change our focus entirely. Forget gateways and radios in Haiti,"[37] before segueing into a discussion of RLYH.

---

[34] This has been uncontested from the start of the case: Digicel-Haiti *affirmatively alleged* that it collected $0.23 per minute on RLYH calls. *See* Third Amended Complaint (ECF #200) at ¶ 136. It has never explained why or how it should be entitled to more.

[35] Digicel-Haiti Opposition at 8.

[36] McEwen Depo. at 124:5-13. UPM notes that Mr. McEwen testified under oath that his report was not based on any information he had regarding how UPM actually operated. McEwen Depo. at 146:12-148:22. UPM pointed out Mr. McEwen's lack of knowledge of UPM's operations in its motion, *see* UPM Motion (Damages) at 2 n.12. Digicel-Haiti counsel has characterized Mr. McEwen's proffered testimony as relating to UPM, *see* Plaintiff Unigestion Holdings, S.A.'s Amended Phase I Expert Witness Statements (ECF #391) at 7, 9-10. But characterization does not change facts – Mr. McEwen's report, and his sworn testimony that his report *is not based on information about UPM*. Characterizing Mr. McEwen's report as relating to UPM reflects an effort by counsel to stretch Digicel-Haiti's actual evidence beyond the breaking point. *See infra*.

[37] McEwen Depo. at 135:8-13.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

In other words, confronted with the unquestionable fact that it was fully paid for resold RLYH calls, Digicel-Haiti has nothing to say. As a result, its fraud claim regarding RLYH should be dismissed because it has no admissible evidence on this essential element of its case.

### C. Digicel-Haiti's Damages "Estimate" Is Entirely Speculative And Inconsistent with Its Theory on the Merits

Digicel-Haiti relies on an "analysis" by Mr. Charles Castel to try to show that it suffered economic damages from UPM's bypass activity. But that "analysis" is speculative, unreliable, ***unrelated to anything UPM did***, and inconsistent with Digicel-Haiti's theory on the merits (which is limited to bypass calls completed using HBS). UPM detailed the flaws with Mr. Castel's "analysis" earlier in the case,[38] and summarized them again in its motion.[39] In its response, with one exception noted below, Digicel-Haiti simply rehashes what is in Mr. Castel's report, without addressing any of the obvious problems that UPM pointed out.[40] Other than that one point, therefore, UPM will not review here, again, the flaws in Mr. Castel's "analysis."

---

[38] *See, e.g.,* Defendants' Motions *in Limine* (ECF #324) at 4-10.

[39] UPM Motion (Damages) at 18-19. UPM has also explained how Digicel-Haiti could have developed an evidence-based estimate of its purported damages. *See* Defendants' Motions *in Limine* (ECF #324) at 7-8; Defendants' Objections to [Digicel-Haiti's] Omnibus Motions in Limine (ECF #239) at 2-7. *See also* UPM Motion (Damages) at 16-18. This is a complete answer to Digicel-Haiti's claim that it is not responsible for demonstrating its damages because UPM's "wrongful conduct" supposedly interfered with its ability to do so. Digicel-Haiti Opposition at 13-14. Moreover, UPM did not cause Digicel-Haiti's reported server crash, or cause it to lose business records relevant to UPM. For these reasons, even if Mr. Castel's "analysis" is not excluded because it is unreliable and unrelated to UPM's activities, it still is entitled to no weight because it is not based on the information that was reasonably available to Digicel-Haiti regarding any damages it claims to have sustained.

[40] Digicel-Haiti Opposition at 14-16. Digicel-Haiti notes that Mr. Castel relied on UPM's damages analysis for its Communications Act claim as support for his wild speculations. *Id.* at 17. However, UPM's analysis of how many RLYH minutes it reasonably ***could have*** resold using equipment in the United States if Digicel-Haiti had not blocked those calls – its reasonable estimate of its lost revenue caused by Digicel-Haiti's violation of the Communications Act – has no bearing on the question of how many minutes of in-country bypass calls it ***actually*** completed in Haiti during the time it was operational there.

Page 11 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

The one exception relates to a significant new claim that, contrary to UPM's argument, Mr. Castel's analysis really *does* relate to UPM's specific activities, and might therefore properly be understood to support Digicel-Haiti's damages claim. This claim is particularly significant because the only testimony that the Court was prepared to allow from Mr. Castel was testimony that conformed to "the limitations provided by the Court's decision of January 18, 2022."[41] In other words, Mr. Castel would only be permitted to testify to the extent that his analysis was tied to UPM's use of HBS.

This would obviously be problematic for Digicel-Haiti, because Mr. Castel's analysis was not based on any information about UPM or its activity at all. To the contrary, Mr. Castel mentions "UPM" exactly *once* in his report, in which he claims, in passing and without evidentiary support, that the Haitian police "dismantled several bypass operations including those of UPM."[42] Because Mr. Castel's report was so generic, and to clear up any ambiguity, at his deposition, he was asked if he had knowledge of "any information specifically relating to" UPM. Without qualification or reservation, he answered "No."[43] Later he reaffirmed his ignorance regarding UPM's actual activities, stating that "UPM knows and *only UPM can know*" what UPM did.[44] So any suggestion that Mr. Castel's "analysis" related to UPM is simply wrong.

---

[41] Opinion and Order (ECF #380), referring to ECF #294 at 30-31.

[42] Plaintiff Unigestion Holdings, S.A.'s Amended Phase I Expert Witness Statements (ECF #391), Exhibit A, Expert Report of Charles Castel (ECF #391-1) ("Castel Report") at 13. Later in Mr. Castel's report, he quotes generic "report[s] in the media" about "activities and initiatives against bypass." *See id.* at 14-15 & n.14. The materials he quotes *do not mention UPM* or *suggest in any way* that they had any relation to UPM.

[43] Castel Depo. at 75:24-76:2 ("Q: Did you look at any information specifically relating to my client, UPM Technologies, in putting together this opinion? A: No.").

[44] *Id.* at 112:17-19 (emphasis added). *See also id.* at 121:9-20 (no knowledge of what portion of UPM's minutes were in-country bypass versus RLYH).

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

UPM was therefore surprised when Digicel-Haiti, in its re-filed case, simply re-filed Mr. Castel's original report, which, as noted, has nothing to do with UPM at all, much less with UPM's purported use of HBS. And UPM took particular notice when Digicel-Haiti stated that one of Mr. Castel's specific assumptions was that the type of equipment "***used by [UPM]***" was capable of handling 400 simultaneous calls.[45] While not true – UPM's equipment in Haiti was quite limited – such a claim could be seen as linking Mr. Castel's "analysis" to UPM's supposed activities and therefore indicating that Mr. Castel's re-filed analysis did, in some way, conform to the limitations established by the Court.

It does not. Checking Mr. Castel's report, it turns out that the alteration in the quote – that is, the "[UPM]" part, the part that would relate Mr. Castel's "analysis" to anything UPM did – was not a fair indication of what Mr. Castel said. Instead, it was created by counsel.[46]

UPM understands why counsel may have been desperate to find some semblance of a connection between Mr. Castel's generic speculations about "fraudsters" and Digicel-Haiti's damages claim against UPM; without Mr. Castel, Digicel-Haiti has nothing. And UPM recognizes that counsel will argue as vigorously and cleverly as possible that existing evidence supports the client's position; that is counsel's job. But presenting altered evidence to the Court in an affirmatively and materially misleading way seems beyond the pale. UPM can only suspect that counsel realized that without the misleading alteration, Digicel-Haiti really has nothing to support its damages claim. UPM submits that the Court should so find.

---

[45] Digicel-Haiti Opposition at 15 (emphasis added, alteration in original).

[46] Mr. Castel's actual language was vague and generic: "The equipment used by fraudsters, seized by the Haitian National Police (PNH). These equipment were able to manage 400 calls simultaneously." Castel Report at 15. There is no mention of UPM. The figure of 400 simultaneous calls apparently came from a press report that also does not mention UPM. *See id.* at 14 n.15. The vague and generic nature of Mr. Castel's report, and his sworn testimony that his report is not based on any information about UPM, is not affected by counsel's effort to create a linkage to UPM when none exists. *See also* Plaintiff Unigestion Holdings, S.A.'s Amended Phase I Expert Witness Statements (ECF #391) at 1-2, 3-7, 9-10.

Page 13 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## III.    DIGICEL-HAITI HAS NO EVIDENCE THAT IT WAS DAMAGED BY VIRTUE OF REASONABLE RELIANCE ON UPM'S SUPPOSED USE OF HBS

Digicel-Haiti's fraud case is limited to the claim that UPM engaged in active concealment by using HBS. As noted above, the operation of the HBS would be the "material misrepresentation" element of the tort of fraud. Assuming here that UPM used HBS, Digicel-Haiti still has to show that it relied on the misrepresentation the HBS created to let through calls that otherwise would have been blocked; that any such reliance was reasonable; and that its reasonable reliance is what caused it to be damaged. Digicel-Haiti has no evidence of any of this. Perhaps for this reason, it seems to take the position that it does not need any.

From this perspective, the fatal and irremediable flaw in Digicel-Haiti's case is that it has no evidence about how UPM's supposed HBS worked or what it supposedly did. This means that it has no evidence that the HBS was effective at getting calls through that would not have gone through without it. In terms of the elements of the tort, Digicel-Haiti has no evidence that it relied on the misrepresentations from the HBS in a way that caused it any harm. Stated simply, if the HBS did not result in any calls getting through that would not otherwise have gotten through, the HBS did not *do* anything, and did not cause Digicel-Haiti any harm. On this point, it does not matter whether the lack of evidence about the effectiveness of the HBS is classified as a failure to show reliance or a failure to show causation. Either way, with no evidence that the HBS actually *worked* – and Digicel-Haiti has no such evidence – it cannot prove its case.

This complete failure of evidence is what led Digicel-Haiti to confess to the Court earlier this year that it could not proceed with a case focused on active concealment via HBS at that time. At the July 26 hearing, Digicel-Haiti stated that it could indeed show that it had a case that it was damaged by UPM's supposed use of HBS, which the Court allowed it to try to do. But,

Page 14 – DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW – CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

having reviewed its re-filed trial pleadings, as UPM pointed out in its motion, Digicel-Haiti has completely failed to tie any supposed use of HBS to any damages it claims to have sustained.[47]

Digicel-Haiti does not dispute this. That is, it does not claim to have evidence that shows that UPM's supposed HBS worked and caused Digicel-Haiti any damages. Instead, it argues that a plaintiff in an active concealment case is not required to prove reliance or causation.[48] This contention is absurd on its face and unsupported by any Oregon case law – including the cases Digicel-Haiti cites. Specifically, neither *Mendoza v. Lithia Motors, Inc.*[49] nor *Sanders v. Francis*,[50] the two cases Digicel-Haiti relies on for this point, were fraud cases. Both of those cases arose under consumer protection statutes; neither addressed common law fraud at all.[51] UPM does not contest that those consumer protection statutes, designed to address unfair consumer business practices, embody a relaxed view of pleading and proof obligations. But that does not say anything

---

[47] This lack of evidence is not surprising, because the actual fact is that UPM did not use HBS in its operations in Haiti. Defendants' Lay Witness Statements (ECF #320) at 6, 9. (Digicel-Haiti is simply wrong to claim that "UPM admits that it utilized HBS in different forms." Digicel-Haiti Opposition at 7. The materials Digicel-Haiti cites do not remotely constitute such an "admission.") The point of this observation is not to contest the Court's ruling that there is enough evidence to create a triable issue of fact as to whether UPM used HBS. Rather, it is to explain why – given the opportunity to make a case premised on UPM's use of HBS – Digicel-Haiti has nothing to present. Discovery revealed nothing about the operation of UPM's supposed HBS system because that system did not exist in the first place. In terms of the elements of the tort, the fact that there is a triable issue as to whether UPM used HBS does not mean that there is a triable issue as to whether any such use caused Digicel-Haiti any damages. As UPM explained in its motion (and notes below) it would be inviting speculation to permit a lay jury to infer from the mere fact that some "HBS" system was used, to the conclusion that it worked. *See* UPM Motion (Damages) at 14-15.

[48] Digicel-Haiti Opposition at 19-20.

[49] 2017 U.S. Dist. LEXIS 4716 at *9 (D. Or. Jan. 11, 2017).

[50] 277 Or. 593, 598, 561 P.2d 1003 (1977).

[51] *Mendoza* was an action under the federal Truth in Lending Act, Oregon's Unlawful Trade Practices Act, and Oregon's financial elder abuse statute. 2017 U.S. Dist. LEXIS 4716 at **1-2. *Sanders* was an action under Oregon's Unlawful Trade Practices Act. 277 Or. at 595, 561 P.3d at 1004. *Sanders* does not mention "fraud" or even "tort" at all. *Mendoza* mentions "fraud" only once, while discussing the statute of limitations under TILA. 2017 U.S. Dist. LEXIS 4716 at *4.

Page 15 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

about letting a business plaintiff ignore key elements of the common law tort of fraud in a case alleging business-to-business torts arising from the interaction of two complex software systems (UPM's supposed HBS and Digicel-Haiti's anti-bypass AI). It would be clear error to require UPM to go to trial on a claim of common law business-to-business fraud when Digicel-Haiti has no evidence that it relied on the misrepresentation of UPM's supposed HBS system or that any such reliance caused Digicel-Haiti any damages.

As just noted, Digicel-Haiti's fraud claim is not merely a business-to-business case. It is an even more complicated software-to-software case. Digicel-Haiti correctly points out that UPM did not manually decide which SIM card to use to authenticate which call; that was done by software.[52] But so too was Digicel-Haiti's response to UPM's efforts to complete calls. Digicel-Haiti used a sophisticated anti-bypass AI system that, according to Digicel-Haiti, is 99.9% effective at identifying SIM cards being used for bypass.[53] There is no rational basis to simply infer from the assumption that UPM used HBS to the conclusion that the HBS worked when confronted with Digicel-Haiti's AI. In its motion, UPM pointed out both that any such inference was unreasonable and that to address this point would require competent expert testimony, which Digicel-Haiti does not have.[54]

In this regard, Digicel-Haiti's Rule 30(b)(6) witness testified that the way Digicel-Haiti's AI was set up, every SIM card would always be permitted to complete a number of calls while the AI analyzed whether the SIM card was being used for bypass.[55] Plainly, calls that would have been completed *irrespective of* whether a SIM card was or was not being managed by HBS cannot be a source of damages *caused by* HBS. This unambiguous Digicel-Haiti testimony has at

---

[52] Digicel-Haiti Opposition at 7.

[53] Unigestion Holdings' Amended Phase I Lay Witness Statements (ECF #390) at 9.

[54] UPM Motion at 14-15.

[55] Boute Depo. at 144:15-145:11.

Page 16 – DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW – CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

least two consequences here. First, it shows that any HBS-focused damages analysis cannot assume that every completed bypass call was caused by the use of HBS – Digicel-Haiti's own testimony negates that assumption.[56] Second, it eliminates any basis for an assumption or inference that the mere use of HBS resulted in any calls being completed that would not otherwise have been completed, so Digicel-Haiti may not rely on the (assumed) fact that UPM used HBS to conclude, without independent evidence, that the HBS worked.[57]

Digicel-Haiti simply ignores these problems. Instead, it focuses on arguing *that* UPM used some form of HBS, not on how or why UPM's supposed HBS actually worked.[58] But all of those arguments are beside the point. UPM's motion assumes *arguendo* that it used HBS,[59] and explains why, even on that assumption, Digicel-Haiti's case fails. By ignoring the real issue, Digicel-Haiti has effectively conceded that it has no case for trial.

It bears emphasis that question of the outcome of UPM's (assumed) HBS system going up against Digicel-Haiti's anti-bypass AI – that is, the question of whether the HBS system actually worked to get any calls through – cannot be simply left to a lay jury. These are technically complex issues, far "beyond the knowledge and experience of an ordinary lay person."[60] As a result, such issues cannot be addressed without competent expert testimony evaluating the nature

---

[56] Digicel-Haiti has never even tried to identify damages caused by UPM supposed use of HBS. Instead, it has put all of its damages eggs in the problematic basket of Mr. Castel's unreliable speculations. *See supra*.

[57] In UPM's prior motions addressing this point, UPM did not bring to the Court's attention the specific testimony from Digicel-Haiti's Rule 30(b)(6) witness establishing that Digicel-Haiti's network would always permit calls to be completed from any SIM card, irrespective of whether that SIM card was being managed by an HBS system. UPM respectfully requests the Court to consider this now-established fact in its consideration of the current motion.

[58] Digicel-Haiti Opposition at 7, 9, 18-19.

[59] *See* UPM Motion (Damages) at 8.

[60] *Bixby v. KBR*, *Inc.*, *supra,* quoting *Baughman v. Pina*, *supra.*

Page 17 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

and effectiveness of both the supposed HBS and Digicel-Haiti's anti-bypass AI system.[61] Digicel-Haiti has no such evidence, and so cannot prove that the HBS caused it any damages. This requires dismissal of Digicel-Haiti's fraud case.[62]

## IV.    CONCLUSION

For the reasons stated here and in UPM's motion, the Court should dismiss Digicel-Haiti's fraud case.

Dated: September 12, 2022.

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

---

[61] *See Teater v. Pfizer*, *supra*, 2013 U.S. Dist. LEXIS 79629 at *13 (when causation involves sufficiently complex issues, "no rational juror can find that a plaintiff has established causation unless the plaintiff has presented ***expert testimony*** that there is a reasonable probability that [the defendant's actions] ***caused the plaintiff's injuries***") (emphasis in original), quoting *Bixby v. KBR, supra*. These cases relate to expert testimony where the causation issue involves a "complex medical question." UPM submits that the interacting effects of a sophisticated anti-bypass AI with a (supposedly) sophisticated HBS system are more than complex enough to compel the same conclusion here.

[62] In the same vein, expert testimony would be required to show that, to the extent that Digicel-Haiti (or, more specifically, Digicel-Haiti's anti-bypass AI) did rely on the HBS' "active concealment," any such reliance was reasonable. To show that its reliance (or that of its AI) was reasonable, Digicel-Haiti would have needed to explain both the totality of the circumstances surrounding the reliance, as well as the relative sophistication of the parties. *Claus v. Columbia State Bank*, 2018 U.S. Dist. LEXIS 64428 at **23-24 (D. Or. April 17, 2018), quoting *Oregon Pub. Employees' Ret. Bd. ex rel. Oregon Pub. Employees' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 428, 83 P.3d 350 (2004) and *Wieber v. FedEx Ground Package Sys., Inc.*, 231 Or. App. 469, 483, 220 P.3d 68 (2009). At a minimum, that would require evidence of how UPM's supposed HBS worked, how Digicel-Haiti's anti-bypass AI worked, and how the HBS managed to get calls past the AI – the software equivalent of relative sophistication. Digicel-Haiti has no such evidence, so its case fails on this ground as well.

Page 18 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    *(Admitted Pro Hac Vice)*
    Katherine Sheriff
    katherinesheriff@dwt.com
    Telephone: (202) 973-4200

Of Attorneys for Defendants

Page 19 – DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW –
CAUSATION AND DAMAGES
UPM-L1\00682512.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022, I served the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW – CAUSATION AND DAMAGES** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Anisha Carla Atchanah
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com
Email: aatchanah@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Andrew J. Lee
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com
Email: ajlee@schwabe.com

Dated: September 12, 2022.

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
　　Kathryn P. Salyer, OSB #883017
　　Eleanor A. DuBay, OSB #073755
　　Blake Van Zile, OSB #184672
　　ksalyer@tomasilegal.com
　　edubay@tomasilegal.com
　　bvanzile@tomasilegal.com
　　Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
　　Christopher W. Savage, D.C. Bar #362657
　　chrissavage@dwt.com
　　*(Admitted Pro Hac Vice)*
　　Katherine Sheriff
　　katherinesheriff@dwt.com
　　Telephone: (202) 973-4200

Of Attorneys for Defendants