**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Bragar DuBay
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

        Attorneys for Counterclaim Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**, | Case No. 3:15-CV-00185-SI |
| Plaintiff & Counterclaim-Defendant, | **COUNTERCLAIM PLAINTIFF'S EXPERT WITNESS STATEMENT** |
| v. | |
| **UPM TECHNOLOGY, INC**., *et al.,* | |
| Defendants & Counterclaim-Plaintiffs | |

Pursuant to the Court's Trial Management Order (ECF # 191), Counterclaim Plaintiff UPM Technology, Inc. submits its expert witness statement.

## I.    INTRODUCTION

UPM has raised several counterclaims against Digicel-Haiti: (1) violations of the Communications Act of 1934, as amended;[1] (2) breach of implied-in-fact contract;[2] (3) money had and received;[3] (4) conversion;[4] and (5) unjust enrichment.[5] The claims for money had and received, conversion, and unjust enrichment are all based on Digicel-Haiti's admitted practice of keeping money paid for top-ups and/or RLYH plans associated with SIM cards that Digicel-Haiti blocked. The damages for these claims are the amounts UPM paid for top-ups. Calculating those damages does not require expert testimony.

UPM's claims for damages arising from its Communications Act and breach of contract claims, however, center on the money that UPM would have made reselling Digicel-Haiti's services, had Digicel-Haiti not blocked UPM's SIM cards.[6] To develop a reasonable and

---

[1] Defendants' Answer, Affirmative Defenses and Counterclaims to Plaintiff's Third Amended Complaint and Demand for Jury Trial (ECF #202) at ¶¶ 328-331 (violation of Section 202 of the Act by banning RLYH resale); *id.* at ¶¶ 336-339 (violation of Section 202 of the Act by banning RLYH resale).

[2] *Id.* at ¶¶ 350-359.

[3] *Id.* at ¶¶ 360-362.

[4] *Id.* at ¶¶ 363-367.

[5] *Id.* at ¶¶ 368-373. UPM is not pursuing its initially alleged counterclaim for interference with prospective economic advantage. *See id.* at ¶¶ 374-380.

[6] Damages for violations of the Communications Act consist of "the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee." 47 U.S.C. § 206. These "consequential" damages plainly include lost profits. Similarly, under Oregon law, one who breaches a contract is liable for profits lost by the non-breaching party. *Willamette Quarries, Inc. v. Wodtli,* 93 Or. App. 306, 309-10, 761 P.2d 1356, 1359 (1988) ("In a breach of contract action for lost profits, a plaintiff must prove with 'reasonable certainty' that profits were lost and that the loss was a result of the breach.") (citing *Buck v. Mueller,* 221 Or. 271, 282, 351 P.2d 61 (1960); *Hillstrom v. McDonald's Corporation,* 88 Or. App. 444, 448, 746 P.2d 222, rev. den. 305 Or. 103 (1988)) (affirming directed verdict in breach of contract action seeking lost profits)).

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

reliable estimate of those amounts, UPM retained the services of Don Wood. Mr. Wood's anticipated testimony is summarized below.

## II.     SUMMARY OF TESTIMONY

Mr. Wood will testify as follows:

1.     Mr. Wood will summarize his background and qualifications as an expert:

a.     He received a BBA in Finance (with Distinction) from Emory University, an MBA with concentrations in Finance and Microeconomics from the College of William and Mary, and a certification in Data Analytics from Cornell University. He has taken courses related to telecommunications networks and costing from Bell Communications Research (Bellcore, now known as iconectiv), has developed and applied cost models to identify and quantify network costs, and has taught professional courses in this area. He is a Certified Valuation Analyst, a Master Analyst in Financial Forensics, and a member of the National Association of Certified Valuators and Analysts and National Association of Forensic Economics.

b.     He has over thirty years' experience in the telecommunications industry and has conducted extensive analyses of the kinds of network facilities and services at issue in this case. His industry experience includes both wireline and wireless technologies and services.

c.     He was employed in the local exchange industry by BellSouth Services, Inc. in its Pricing and Economics, Service Cost Division. His responsibilities included performing cost analyses of new and existing services, and preparing documentation for filings with state regulatory commissions and the Federal Communications Commission ("FCC"). While at BellSouth Services, he was responsible for conducting the network cost analysis required to support BellSouth's tariffed rates. He was employed in the interexchange industry by MCI Telecommunications Corporation, as Manager of Regulatory Analysis for the Southern Division. In this capacity, he was responsible for the development and implementation of regulatory policy for operations in the southern U. S. He then served as a Manager in MCI's Economic Analysis and Regulatory Affairs Organization, where he participated in the development of regulatory policy

Page 3 – COUNTERCLAIM PLAINTIFF'S EXPERT WITNESS STATEMENT
UPM-L1\00682897.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

for national issues. While at MCI, his responsibilities included the in-depth analysis of cost studies of the network functions provided by other carriers.

d.  He has testified on telecommunications cost issues before the regulatory commissions of forty-three states, Puerto Rico, and the District of Columbia, and has presented expert testimony regarding telecommunications cost issues in state, federal, and overseas courts, before alternative dispute resolution tribunals, and at the FCC.

2.  Mr. Wood will explain how he developed his estimate of the financial harm caused to UPM by virtue of Digicel-Haiti refusing to permit UPM to resell Digicel-Haiti's RLYH service. This entailed several steps:

a.  Mr. Wood will explain that he began his analysis with publicly available information from the FCC showing that during 2014, United States callers completed 20,559,917 minutes per month to mobile networks in Haiti. He will testify that this is a reasonable basis for estimating the overall size of the market at issue in this case.

b.  He will explain that he projected that total market to grow from 2014 forward based on Census data showing that the size of the Haitian-American population grew at an annual rate of 3.24% between 2014 and 2015. He will explain that he is not assuming that only Haitian-Americans call Haiti, but rather that growth in that population is a reasonable proxy for growth in the size of the overall community – not limited to Haitian-Americans – that is interested in calling Haiti. He will testify that this is a reasonable use of this figure in the circumstances of this case.

c.  He will explain that his analysis is based on UPM's projections that if Digicel-Haiti had not cut off UPM's RLYH SIM cards, UPM would have achieved a 15% market share for 2014, with an increase of 5 percentage points per year for each year thereafter, until a 50% market share is achieved in 2021.

d.  He will explain that his analysis is based on the UPM's estimate that in order to achieve those market shares, UPM would need to offer calling to Haiti at a 20% discount off of Digicel-Haiti's stated international call termination rate of $0.23 per minute. He will testify

Page 4 – COUNTERCLAIM PLAINTIFF'S EXPERT WITNESS STATEMENT
UPM-L1\00682897.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

that it is consistent with his experience in the telecommunications industry, including issues involving resellers, that resellers need to offer discounts in the 10% to 20% range in order to attract customers from the entity whose services they are reselling.

e.    He will explain that his analysis is based on the assumption that UPM's cost for each minute resold will be $0.095 per minute. These figures lead to the conclusion that UPM would realize a per-minute-of-use margin of $0.184.

f.    He will explain that applying these figures results in UPM reselling 3,083,988 minutes per month of RLYH service starting in June 2014 and increasing to UPM handling 12,853,891 minutes per month in 2021. He will explain that he confirmed, using reasonable assumptions regarding the usage of any one SIM card, that based on information provided by UPM, UPM had a sufficient number of Digicel-Haiti SIM cards to handle this volume of traffic, had those SIM cards not been blocked.

g.    He will explain that, applying the per-minute-of-use margin of $0.184 per minute noted above, UPM was harmed as a result of Digicel-Haiti's blocking of UPM's SIM cards used for RLYH resale in the amounts in the amounts noted below:

| Year | Financial Harm Caused by Digicel-Haiti |
|---|---|
| 2014 | $ 1,921,324 |
| 2015 | $ 4,534,046 |
| 2016 | $ 5,851,393 |
| 2017 | $ 7,249,429 |
| 2018 | $ 8,732,004 |
| 2019 | $ 10,303,130 |
| 2020 | $ 11,966,993 |
| 2021 (9 mos.) | $ 10,295,966 |
| **Total** | **$ 60,854,287** |

3.    Mr. Wood will explain that the ***methodology*** he used to develop his damages estimate is reasonable and appropriate for developing such an estimate in the case of a reseller denied the ability to resell. He will explain that his methodology is appropriate for calculating damages in such situations even if the evidence establishes that different assumptions than the ones he used are warranted. For example, if the evidence shows that UPM would likely

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

have been able to achieve the market shares indicated above with only a 10% discount off of Digicel-Haiti's $0.23 per minute rate, then UPM's damages would be higher than calculated above, because its per-minute margin would be higher than the $0.184 per minute indicated above. Or. if the evidence shows that with the assumed 20% discount off of Digicel-Haiti's $0.23 per minute rate, UPM would have achieved lower market shares than assumed, then UPM's damages would be lower than calculated above, because the number of minutes UPM would have been able to sell would be lower. Mr. Wood will explain that his methodology should be applied to whatever relevant figures are found to be reasonable as the case proceeds.

Dated: September 30, 2022.

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    *(Admitted Pro Hac Vice)*
    Katherine Sheriff
    katherinesheriff@dwt.com
    Telephone: (202) 973-4200

Of Attorneys for Counterclaim Plaintiff

Page 6 – COUNTERCLAIM PLAINTIFF'S EXPERT WITNESS STATEMENT
UPM-L1\00682897.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2022, I served the foregoing **COUNTERCLAIM PLAINTIFF'S EXPERT WITNESS STATEMENT** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Anisha Carla Atchanah
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com
Email: aatchanah@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Andrew J. Lee
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com
Email: ajlee@schwabe.com

Kent D. Bressie
HWG LLP
1919 M Street N.W., Suite 800
Washington, D.C. 20036
Email: kbressie@hwglaw.com
            Dated: September 30, 2022.

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    *(Admitted Pro Hac Vice)*
    Katherine Sheriff
    katherinesheriff@dwt.com
    Telephone: (202) 973-4200

Of Attorneys for Counterclaim Plaintiff

Page 1 – CERTIFICATE OF SERVICE
UPM-L1\00682846.000

*TOMASI SALYER MARTIN*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236