**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Bragar DuBay
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

        Attorneys for Counterclaim Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>        Plaintiff & Counterclaim-Defendant,<br><br>        v.<br><br>**UPM TECHNOLOGY, INC**., *et al.,*<br><br>        Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI<br><br>**COUNTERCLAIM PLAINTIFF'S MOTIONS *IN LIMINE***<br><br>REQUEST FOR ORAL ARGUMENT |

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), UPM Technology, Inc. ("UPM") states that its counsel conferred in good faith with counsel for Digicel-Haiti, to resolve the disputed issues and were unable to do so.

## INTRODUCTION

UPM's motions *in limine* with respect to Phase II of this matter generally arise under Fed. R. Evid. ("Rule") 401 and 402 (exclusion of irrelevant evidence), Rule 403 (exclusion of unduly prejudicial or confusing evidence), Rule 602 (witnesses must have personal knowledge of what they testify to), and Rule 702 (exclusion of unreliable and speculative "expert" testimony).

UPM's motions cover all forms of communicating information to the jury, directly or indirectly, including via exhibits, demonstratives, testimony, questions, objections, comments on testimony, innuendoes, and statements during opening, closing, and *voir dire*. If the Court denies or reserves any motion *in limine* on the ground that Digicel-Haiti may be able to establish a conditional basis for admission, UPM moves in the alternative that Digicel-Haiti provide notice outside of the jury's hearing so that the Court may decide pursuant to a hearing under Rule 104 whether Plaintiff may proceed.[1]

## I.    WITNESSES

### A.  Motion *in Limine* 1 (Exclude Experts and Request for *Daubert* Hearing)

UPM moves, pursuant to Rules 401, 402, 403 and 702, to exclude all testimony from Charles Castel, Kenneth McEwen and Philip Cross, each of whom Digicel-Haiti has designated as an expert witness. *See* (ECF #391).  As of the date of this Motion,

---

[1] UPM notes that it has pending motions *in limine* with respect to Phase I issues. *See* Defendants' Motions *in Limine* (ECF #324). UPM will supplement and update those motions as appropriate as the case proceeds, but whether or not any such supplements or updates are forthcoming, UPM asks that the Court rule in UPM's favor on all of those pending motions.

Page 2 – COUNTERCLAIM PLAINTIFF'S MOTIONS *IN LIMINE*
UPM-L1\00687030.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

UPM does not know whether Digicel-Haiti plans to introduce any testimony from these witnesses as part of Digicel-Haiti's Phase II case, and is filing this motion to address the possibility that it might do so.

All of these witnesses' testimony should be excluded because none of it is relevant to any Phase II issue. In addition, Mr. Castel's testimony should be excluded because he is not qualified to provide an expert opinion on the issues for which he is offered; because his "methodology" is unreliable; and because his testimony is based entirely on unreliable speculation. As for Mr. McEwen, he is not an expert on UPM's use of the RLYH service and is unaware of UPM's specific technical configuration, and so any testimony from him about UPM would be speculative. Finally, Mr. Cross' proffered testimony relates to the "legality [and] international standard related to bypass." (ECF #304) at 2. That is inappropriate testimony regarding legal issues, and in any event has nothing to do with any Phase II issue. His training is as an electrical engineer, not a lawyer or policy analyst, so he is not qualified to offer any opinions about either the "legality" of "bypass" or any purported "international standards" relating to it.

For these reasons, the Court should exclude all of this testimony from Phase II of the case without a *Daubert* hearing. If, however, the Court chooses not to exclude their testimony on those grounds, then UPM requests that the Court conduct a *Daubert* hearing regarding their qualifications and the usefulness of their testimony.[2]

### 1.    Legal Standard – Relevance

Under Rule 402, "irrelevant evidence is not admissible." "Expert opinion testimony is relevant if the knowledge underlying it has ***a valid connection to the pertinent inquiry***. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of ***the relevant discipline***." *City of Pomona v. SQM N. Am.*

---

[2] A *Daubert* hearing for Mr. Castel is scheduled for October 27, 2022 at 11:00 A.M. (ECF #419).

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014), citing *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

The issues in Phase II are (principally) UPM's claim that Digicel-Haiti violated the Communications Act and/or violated its implied-in-fact contracts with UPM by blocking the SIM cards that UPM was using to resell Roam Like You're Home ("RLYH") service. There is no dispute that Digicel-Haiti blocked those SIM cards and did so because it wanted to stop UPM from reselling that service. The only question as to Digicel-Haiti's liability are purely legal ones: whether Digicel-Haiti's offering of RLYH service makes it a carrier subject to the Communications Act and whether its blocking UPM SIM cards violated that Act; and whether the parties had an implied-in-fact contract with respect to the use of those SIM cards. None of the suggested testimony of Digicel-Haiti's "experts" is relevant to these issues.

## 2.    Legal Standard – Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.  District court trial judges must prevent "shoddy expert testimony and junk science from reaching the jury." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 923 (9th Cir. 2017), citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595-97 (1993).  This function applies to ***all*** expert testimony, not just scientific opinions. *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010).  The Ninth Circuit has detailed the standard for admissibility of an expert at trial: (1) the opinion must be based on scientific, technical, or other specialized knowledge; (2) the opinion will assist the trier of fact in understanding the evidence or determining a fact in issue; (3) the expert must have appropriate qualifications with respect to the subject matter on which he is testifying; (4) the testimony must be relevant and reliable; the expert's methodology or technique must fit the conclusions; and (5) the probative value of the testimony must not be outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time. *See United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).  In a more recent case, the Ninth

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Circuit explained:

> Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702.
>
> …
>
> "[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id*. at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id*. at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id*. at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id*. at 969-70.
>
> The test of reliability is flexible. *Estate of Barabin v. AstenJohnson, Inc*., 740 F.3d 457, 463 (9th Cir. 2014) (en banc). The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance. *Id*.; *see also Primiano*, 598 F.3d at 564. But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

marks omitted); *see also Barabin*, 740 F.3d at 463. The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 564-65. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014).

*Daubert* held that an expert's opinion must consist of more than "subjective belief or unsupported speculation."  509 U.S. at 589-90. "[P]ersonal opinion testimony is inadmissible as a matter of law under Rule 702 and speculative testimony is inherently unreliable." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (internal citations omitted), citing *Daubert*, 509 U.S. at 590, *Daubert v. Merrell Dow Pharm., Inc*., 43 F.3d 1311, 1319 (9th Cir. 1995), and *Diviero v. Uniroyal Goodrich Tire Co*., 114 F.3d 851, 853 (9th Cir. 1997). The proponent of the expert has the burden of proving admissibility.  *Lust by & Through Lust v. Merrell Dow Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996). Admissibility of the expert's testimony must be shown by a preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

### 3.    Exclusion of Mr. Castel's Testimony

In addition to being irrelevant to Phase II, Mr. Castel's testimony should be excluded because it is speculative and unreliable. UPM addressed these problems with his testimony in its earlier Motion *in Limine,* and the Court has already scheduled a *Daubert* hearing for Mr. Castel. Given that, UPM will not here repeat its numerous concerns with Mr. Castel's testimony and instead respectfully refers the Court to its earlier filing.[3]

### 4.    Exclusion of Mr. McEwen's Testimony

Mr. McEwen's testimony should also be excluded from Phase II. Unlike Mr.

---

[3] *See* Defendants' Motions *in Limine* (ECF #324) at 4-10.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Castel, he seems to have some expertise that is in some sense broadly relevant to the question of bypass technology and in-country bypass. Neither of those issues, however, are relevant to Phase II. Moreover, as with Mr. Castel, any general knowledge Mr. McEwen may have about bypass technology is not based on any information about UPM or its operations. This is shown by his own expert report[4] and by his deposition testimony, in which he admitted that his testimony was not based on "anything that's been typically passed to me or been passed to me in reference to the way UPM has particularly behaved during any investigation done by Digicel."[5] Any testimony from Mr. McEwen about *UPM,* therefore, would be speculative and unreliable. As a result, his testimony will not help the jury understand any Phase II evidence or determine a fact at issue in Phase II.

Even if such speculative and generic testimony has some minimal probative value, that value is substantially outweighed by the risk of unfair prejudice and confusion under Rule 403, and his report and proposed testimony must be excluded from Phase II on this basis alone. However, coupled with the irrelevant nature of his proposed testimony, he must be excluded entirely from Phase II. In the alternative, UPM requests that the Court conduct a *Daubert* hearing regarding his qualifications to address any Phase II issues, as well as the relevance, reliability, and speculative nature of his proffered testimony.

**5.    Exclusion of Mr. Cross' Testimony**

Mr. Cross' testimony should be excluded for the simple reason that it is not relevant to any issue in the case. He is offered as providing testimony "regarding the legality [and] international standard related to bypass," (ECF #304) at 2, but that has nothing to do with any Phase II issues. It certainly has nothing to do with whether it was legal under the Communications Act or constituted a breach of contract for Digicel-Haiti cut off UPM's RLYH SIM cards. "International standard[s] related to bypass" are irrelevant

---

[4] McEwen Expert Report at 13-14.

[5] McEwen Dep. at146:12-148:22.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

to Phase II.

Mr. Cross is also unqualified. While he has participated at the staff level in various international telecommunications groups, his training is as an electrical engineer, not a lawyer or policy analyst, so he is not qualified to offer any opinions about either the "legality" of "bypass" or any purported "international standards" relating to it. And, of course, such issues are irrelevant anyway. Mr. Cross himself noted in his deposition that no matter what international telecommunications bodies may think about bypass (or anything else), the regulatory obligations applicable to activities in any given country are determined by the regulators in that country.[6]  So, Mr. Cross' testimony cannot be relevant as to how United States law applies to any UPM activities.

For these reasons, the Court should exclude Mr. Cross' testimony as irrelevant and prejudicial under Rules 401, 402, and 403. If the Court does not so rule, then UPM requests that the Court conduct a *Daubert* hearing regarding Mr. Cross's qualifications and proffered testimony.

## B.  Motion *in Limine* 2 (Prohibit Lay Opinion Testimony from Witnesses)

Digicel-Haiti, has identified two potential witnesses, Maarten Boute and Gerard Pierre Laborde, who may offer speculative, inadmissible lay opinion testimony in Phase II.   (ECF #390).  UPM's particular concern is the potential for Mr. Boute and Mr. Laborde to testify regarding "Haitian law" and how that law supposedly affected or justified Digicel-Haiti's illegal actions that are the subject of UPM's counterclaims in Phase II. Any such testimony would be inadmissible under Rules 401, 403 and 701.

Lay opinion testimony is only admissible under Rule 701 when it is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized

---

[6] Cross Depo. at 70:17-71:4; 82:3-13 (*see* ECF #325-6).

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

knowledge within the scope of Rule 702.

Lay opinion testimony must be "predicated upon concrete facts" within the witness's own observation and recollection. *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006), citing *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982). Legal conclusions are generally inadmissible and are not helpful to the trier of fact. *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059-60 (9th Cir. 2008) ("[t]estimony that simply tells the jury how to decide is not considered 'helpful' as lay opinion.").

Neither Mr. Boute nor Mr. Laborde are lawyers or experts admitted under FRE 702, yet both may be asked to testify regarding (or may volunteer views regarding) Haitian law. Not only is such testimony irrelevant in Phase II, it would constitute inadmissible legal conclusions and must be excluded. In addition to excluding testimony relating to Haitian law, UPM also requests that the Court instruct the witnesses not to use the words "fraud", "fraudulent", "misrepresentation", "concealment" or the like to describe UPM's conduct. Such words have specific meaning under Oregon law, are tantamount to telling the jury how to decide this case, and are irrelevant to UPM's counterclaims against Digicel-Haiti. *Nationwide Trans. Fin.*, 523 F.3d at 1059-60. "Resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Id.*, at 1058 (citations omitted). Such testimony not only has no probative value, it would inevitably confuse and prejudice the jury. All such testimony, therefore, should be excluded under Rule 403.

## II.    EVIDENCE

### A.  Motion *in Limine* 3 (Exclude All Reference to Digicel-Haiti's Dismissed Claims, Theories and Arguments)

UPM requests that this Court enter an order *in limine* excluding all references, including evidence, testimony and argument, relating to any of Digicel-Haiti's dismissed claims and theories, including those asserted by Digicel-Haiti relating to its Phase I "in-country bypass" and "human behavior software" theories. Such materials are

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

irrelevant to UPM's claims against Digicel-Haiti.

First, evidence related to Digicel-Haiti's Phase I case regarding UPM's in-country bypass operations and alleged use of human behavior software ("HBS" are irrelevant in Phase II and so must be excluded under Rule 401. Further, in its initial Trial Memorandum, Digicel-Haiti argued that UPM used its "servers and other telecommunications equipment" to route calls using the RLYH services "causing Digicel Haiti's network to recognize that call as a call from a roaming Digicel Haiti subscriber" such that the "call from the original third-party caller remained concealed,"[7] and that UPM used "artifice, concealment, and deception to carry out their fraud. This includes, ***but is not limited to,*** the use of" HBS.[8] Even in its Supplemental Trial Memorandum, Digicel-Haiti still refers to UPM's supposedly "sophisticated scheme of fraud," rather than focusing on HBS, as the Court has required.[9] Such assertions are irrelevant to Phase II and contrary to the Court's prior ruling.

In addition, Digicel-Haiti may seek to continue to argue that there were binding terms and conditions that supposedly restricted UPM's use of Digicel-Haiti SIM cards.[10] For example, Digicel-Haiti's CEO, Mr. Boute, will likely offer testimony regarding "Digicel Haiti's operations and … regulations of the use, sale, and distribution of SIM cards which are subject to Digicel Haiti's terms and conditions. He will confirm where and how the consumer can find said terms and conditions that are available online and in stores,"[11] and regarding the "general terms and conditions for operation and subscription."[12] Such

---

[7] Trial Memorandum, (ECF #299) at 2-3.

[8] *Id.* at 3 (emphasis added).

[9] [Digicel-Haiti's] Supplemental Trial Memorandum on Causation and Damages, (ECF #388) at 1.

[10] Digicel-Haiti's Reply ISO Cross Motion for Summary Judgment, (ECF #414) at 21-25.

[11] [Digicel-Haiti's] Amended Lay Witness Statements, (ECF #390) at 2-3.

[12] *Id*. at 3.

***TOMASI BRAGAR DUBAY***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

testimony has been specifically rejected by the Court: "Digicel Haiti offers no facts or argument explaining how UPM would have become obligated to Digicel Haiti's terms, for example by 'shrink wrap' terms, electronic 'click' agreement, or some other means …" (ECF #294) at 15, fn. 11. The Court also stated that "[i]t is also unclear what, if any, terms Digicel Haiti tried to attach to its RLYH program or how UPM might have become bound to those terms. Digicel Haiti presents no evidence that might answer these questions, especially the latter." *Id*. at 18, fn. 13.

For these same reasons, the Court should exclude, *in limine,* any references to any such purported terms and conditions relating to any Digicel-Haiti services that UPM used, including, specifically, RLYH service. For this same reason, the Court should exclude any evidence, argument or testimony that relates to, or purports to describe, Digicel-Haiti's subjective intentions for, target demographic for, or desired market for, RLYH or any other of its services. There is no evidence that any such matters were objectively manifested to UPM at the time UPM signed up for the services, so such materials are irrelevant and excludable under Rule 402, and likely to confuse and prejudice the jury, warranting exclusion under Rule 403.

The Court should also exclude any reference relating to Digicel-Haiti's dismissed RICO claims. (ECF #188) at 23-7. Such evidence includes purported facts that Digicel-Haiti asserted in order to satisfy the predicate-acts requirement of RICO, including, but not limited to, allegations related to shipping items to and from Haiti and wire transfers regarding Haiti. *See* Third Amended Complaint (ECF #200) ("TAC") at ¶¶ 137-160 ("Defendants' Mail and Wire Fraud Activities"). These claims have no relation to Phase II issues at all and, in any event, because the RICO claims have been dismissed, evidence related to "mail and wire fraud activities" (and similar matters) is irrelevant and must be excluded under Rules 401 and 402. And, to the extent that Digicel-Haiti may be able to concoct some theory on which such materials have some minimal probative value, any such probative value is outweighed by the plain tendency of such materials to confuse and

Page 11 – COUNTERCLAIM PLAINTIFF'S MOTIONS *IN LIMINE*
UPM-L1\00687030.000

prejudice the jury, warranting exclusion under Rule 403. Furthermore, to the extent that Digicel-Haiti seeks to introduce such evidence to make a showing along the lines of, "see what kind of company UPM is," that evidence would constitute improper character evidence under Rule 404, which also further supports excluding it under Rule 403.

## B. Motion *in Limine* 4 (Exclude Claims That UPM's Acquisition of SIMs, Top-Ups or RLYH Plans was Illegal or Illegitimate)

Digicel-Haiti claims that UPM "illegally" or "illegitimately" obtained Digicel-Haiti SIM cards.[13] Digicel-Haiti has also claimed that it is illegal to purchase multiple SIM cards in one day, and that retailers are prohibited from selling to purchasers they know will use the SIM cards for resale.[14] These claims are irrelevant to any Phase II issue (Rules 401 and 402), unfairly prejudicial and misleading (Rule 403), and constitute inadmissible hearsay (Rule 802) and character evidence (Rule 404).

The Court correctly ruled that Digicel-Haiti has not presented any evidence to show that UPM's agents were asked to fill out any forms when they purchased SIM cards in Haiti.[15] Further, there is no evidence that any express contract was established between UPM and Digicel-Haiti, which means that UPM was never bound by any terms or conditions applicable to the purchase of acquisition of SIM cards.[16] None of UPM's Phase II claims is affected by how it acquired its SIM cards. It is uncontested that UPM did not acquire SIM cards directly from Digicel-Haiti, which confirms that their provenance cards is unrelated to UPM's status as a Digicel-Haiti customer, whether for purposes of the Communications Act claim or the implied-in-fact contract claim.

Not only is there no factual basis for claims that UPM "illegally" or "illegitimately" purchased SIM cards; such claims are irrelevant and inadmissible character

---

[13] *See, e.g.,* TAC at ¶ 64. *See* (ECF #294) at 28-29.

[14] (ECF #294) at 28-29.

[15] *Id.* at 28.

[16] *See id.* at 29.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

evidence, and thus excludable under Rules 401 and 402. Moreover, under Rule 403, the Court may exclude otherwise admissible evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." That clearly applies here. Finally, Rule 404(b)(1) states that "[e]vidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acting in accordance with the character."

As narrowed by the Court's prior rulings, the question in Phase II is whether Digicel-Haiti illegally cut off UPM's RLYH SIM cards such that UPM was damaged as a result. How UPM obtained the SIM cards has no bearing on those questions. UPM could have found the RLYH SIM cards in the streets of Haiti and still be entitled to an award of damages for Digicel-Haiti's unlawful conduct.  Further, even if how UPM acquired SIMs had some limited relevance, any such relevance is substantially outweighed by the danger of unfair prejudice to UPM and misleading the jury. Such claims would also be inadmissible character evidence under Rule 404 – essentially amounting to an effort to show that UPM did bad things, so they must not be entitled to an award of damages.[17]

## C. Motion *in Limine* 5 (Exclude Evidence and Testimony Regarding Shipping to Haiti and/or Wire Transfers)

As set forth in Motion *in Limine* 3, UPM has asked the Court to exclude all references to Digicel-Haiti's dismissed claims and theories. This includes evidence related to shipping items between UPM in Oregon and its agents in Haiti, and wire transfers between UPM and its agents in Haiti. (ECF #294) at 3, fn. 4.[18]

In addition to the points in Motion *in Limine* 3, such evidence is inadmissible

---

[17] This argument applies to any effort by Digicel-Haiti to say that UPM's topping-up of its SIM cards, or enrolling them into the RLYH program, was "illegal" or "illegitimate."

[18] *See also* TAC at ¶ 108 ("Defendants are also engaged in the sale and distribution of equipment used in bypass as a part of the fraudulent enterprise.").

Page 13 – COUNTERCLAIM PLAINTIFF'S MOTIONS *IN LIMINE*
UPM-L1\00687030.000

under Rule 404(b)(1). In particular, Digicel-Haiti should be prohibited from presenting any of this material to argue or imply in Phase II that UPM somehow acted in conformity with its claimed wrongful behavior in the shipping or wire transfer contexts. Whether UPM made misrepresentations on shipping or customs documents to unrelated third parties has no bearing on any Phase II issue. As a result, such evidence would necessarily amount to improper character evidence, inadmissible under Rule 404(b)(1). Moreover, the minimal probative value of such evidence (if any) is substantially outweighed by the danger of unfair prejudice to UPM and confusing the issues and misleading the jury, warranting exclusion under Rules 401-403. It is highly probable that a jury may seek to limit UPM's Phase II damages based on the notion that it made false statements to customs officials, even though that activity is irrelevant to the question of whether **Digicel-Haiti** damaged UPM by illegally cutting off UPM's SIM cards, which would result in an unfair trial.

### D. Motion in *Limine* 6 (Exclude Evidence, Testimony and Argument Relating to Roaming Agreements Between Digicel-Haiti and U.S. "Roaming Partners")

The Court should exclude all evidence, testimony and argument that arises from or is based on the content of roaming agreements between Digicel-Haiti (or on its behalf, through affiliates) and its United States roaming partners. UPM sought these agreements in discovery but Digicel-Haiti refused to provide them, stating that its "roaming agreements are not at issue in this litigation."[19] Given this, it is impermissible under Fed. R. Civ. P. 37(c) for Digicel-Haiti's to rely on information derived from the same agreements which it refused to produce. Having refused to produce the roaming agreements during discovery, Digicel-Haiti cannot be allowed to use or rely on them at trial.

If Digicel-Haiti is allowed to address these matters during Phase II, its potential witnesses (Mr. Boute and Mr. Laborde) should be forbidden from conveying information derived from the roaming agreements without introducing them into evidence

---

[19] (ECF #325-8) at p. 2, ¶ 4.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

(and producing them to UPM as soon as possible to permit UPM to prepare for cross-examination). Testimony about the contents of those agreements, without also admitting them into evidence, would not be the best evidence of their contents and must be excluded under Rule 1002. In this regard, if Digicel-Haiti's witnesses have not themselves reviewed the roaming agreements, any testimony about their terms would be inadmissible hearsay to which no exception would apply, because they would necessarily be testifying about what someone else told them about the agreements, in violation of Rules 801 and 802. And of course if they *have* reviewed the agreements, any discussion based on the agreements requires that they be offered and admitted under Rule 1002.[20]

### E.  Motion *in Limine* 7 (Ban the Term "Bypass" When Referring to RYLH)

UPM requests an order *in limine* excluding the use of the term "bypass" in reference to UPM's activities regarding RLYH. Not only is the term irrelevant to UPM's Phase II case against Digicel-Haiti, as a simple factual matter, RLYH calls do not "bypass" anything. All resold RLYH calls were routed to Haiti via Digicel-Haiti's international gateway switches, and Digicel-Haiti received $0.23 per minute for them: there was no "bypass." Using the terms "resale" and "bypass" interchangeably in the context of Phase II would be is misleading and confusing to the jury.

### III.    MOTIONS PRESENTED WITHOUT ARGUMENT[21]

A. **Motion *in Limine* 8** - Excluding all lay and expert witnesses from the trial proceedings when they are not testifying, except each parties' representatives, pursuant to Rule 615.

---

[20] Digicel-Haiti's Rule 30(b)(6) witness testified about the economic terms applicable to RLYH service. This testimony may be used by UPM "for any purpose" at trial, Fed. R. Civ. P. 32(a)(3), and UPM may do so. This, however, does not give Digicel-Haiti free rein to present testimony that relies on the contents of roaming agreements it refused to produce.

[21] Digicel-Haiti did not oppose these motions in connection with UPM's Phase I Motions *in Limine.* In Phase II, as UPM understands it, Digicel-Haiti either does not oppose these motions or considers them unnecessary and/or inappropriate for a motion *in limine,* based on the fact that the requested order is already covered by Court rules.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**B. Motion** *in Limine* **9** - Prohibiting any "Golden Rule" arguments or testimony, or any suggestions that the jury should put themselves in the positions of the parties. Rules 402, 403; *Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000).

**C. Motion** *in Limine* **10** - Prohibiting counsel from explicitly or implicitly arguing their case during jury selection or opening statement.

**D. Motion** *in Limine* **11** - Prohibiting the parties from addressing jurors individually (except in *voir dire*).

**E. Motion** *in Limine* **12** - Prohibiting counsel from suggesting personal knowledge of the facts or giving their opinions of the testimony, facts, credibility of the witnesses, or justice of the case. Rules 402, 403, 602, 802.

**F. Motion** *in Limine* **13** - That counsel be specifically instructed to inform and instruct all witnesses or parties in the courtroom not to volunteer, inject, disclose, state, or mention to the jury any matters prohibited by the Court's rulings on motions *in limine*, unless specifically allowed by the Court.

Dated: September 30, 2022.

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    *(Admitted Pro Hac Vice)*
    Katherine Sheriff
    katherinesheriff@dwt.com
    Telephone: (202) 973-4200

Of Attorneys for Counterclaim Plaintiff

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

# CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2022, I served the foregoing **COUNTERCLAIM PLAINTIFF'S MOTIONS *IN LIMINE*** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Anisha Carla Atchanah
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com
Email: aatchanah@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Andrew J. Lee
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com
Email: ajlee@schwabe.com

Kent D. Bressie
HWG LLP
1919 M Street N.W., Suite 800
Washington, D.C. 20036
Email: kbressie@hwglaw.com

Dated: September 30, 2022.

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    *(Admitted Pro Hac Vice)*
    Katherine Sheriff
    katherinesheriff@dwt.com
    Telephone: (202) 973-4200

Of Attorneys for Counterclaim Plaintiff