**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Bragar DuBay
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

  Attorneys for Counterclaim Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**, | Case No. 3:15-CV-00185-SI |
|   Plaintiff & Counterclaim-Defendant, | |
|   v. | **COUNTERCLAIM PLAINTIFF'S TRIAL MEMORANDUM** |
| **UPM TECHNOLOGY, INC**., *et al.,* | |
|   Defendants & Counterclaim-Plaintiffs | |

Page 1 – COUNTERCLAIM PLAINTIFF'S TRIAL MEMORANDUM
UPM-L1\00682844.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Pursuant to the Court's Trial Management Order (ECF #191), Counterclaim Plaintiff UPM Technology, Inc. submits this Trial Memorandum.

## I.    INTRODUCTION

UPM has five counterclaims against Digicel-Haiti: (1) Digicel-Haiti violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 *et seq.* (the "Act") by blocking UPM's SIM cards and thereby preventing it from reselling RLYH service; (2) Digicel-Haiti breached its implied-in-fact contract with UPM by blocking UPM's SIM cards and thereby preventing it from reselling RLYH service; (3) Digicel-Haiti is liable to UPM for money had and received, specifically, the amounts that UPM paid Digicel-Haiti to top up UPM's SIM cards and that Digicel-Haiti confiscated when it cut off those SIM cards; (4) Digicel-Haiti converted that money by not returning it to UPM; and (5) Digicel-Haiti would be unjustly enriched by letting it keep that money.

UPM's damages for the first two counterclaims consists of the profits that UPM lost by virtue of Digicel-Haiti's illegal actions. From mid-2014 through the date of trial, based on reasonable assumptions and sound analysis, the amount of those lost profits is approximately $76,000,000. UPM's damages for the remaining counterclaims is, as noted, the amount that it paid Digicel-Haiti and that Digicel-Haiti confiscated when it cut off UPM's SIM cards. Based on UPM's accounting records, and considering the services that UPM received from Digicel-Haiti, that amount is $143,500. UPM also seeks punitive damages for those Digicel-Haiti actions that constitute torts, specifically, conversion and unjust enrichment.

## II.    FACTUAL BACKGROUND AND BURDEN OF PROOF

The Court is by now long familiar with the basic facts of the case: UPM acquired SIM cards for Digicel-Haiti's network and had them shipped to UPM in Oregon; it mounted those SIM cards in its equipment; topped them up; and used them to authenticate both in-country bypass calls (made using Gateways in Haiti) and RLYH resale calls (made

Page 2 – COUNTERCLAIM PLAINTIFF'S TRIAL MEMORANDUM
UPM-L1\00682844.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

using Gateways in Oregon). Digicel-Haiti cut off those SIM cards precisely because it concluded that UPM was using them for bypass or resale, and precisely in order to prevent UPM from engaging in those activities.

UPM bears the burden of proof on its counterclaims. No special burden applies to any of them; UPM must prove its case by a preponderance of the evidence. That said, UPM must prove that it is entitled to punitive damages by clear and convincing evidence.

## III.    UPM'S COUNTERCLAIMS

### A.  Violation of the Communications Act[1]

UPM will show that Digicel-Haiti was a common carrier subject to the Act with respect to RLYH service. This entails showing that Digicel-Haiti offered telecommunications, for a fee, to the public.[2] It is uncontested that RLYH service offered the ability to make telephone calls from the United States to Haiti, and such calls are plainly "telecommunications."[3] It is also uncontested that there is a charge for making these RLYH calls – both the $25 enrollment fee and the "local" per-minute rate of approximately $0.095 per minute for those calls.[4] UPM will show through the testimony of Mr. Tran and/or Mr. Boute that RLYH service was physically and actually made available to anyone in the United States with a valid Digicel-Haiti SIM card, on the same terms, and without any individualized discussion or negotiation even possible. This demonstrates that RLYH

---

[1] UPM notes that it has a pending motion for summary judgment on Digicel-Haiti's liability under the Communications Act. UPM urges the Court to grant that motion. UPM discusses these issues here because as of the date of this filing, the Court has not yet done so.

[2] 47 U.S.C. §§ 153(11), (50), (51), (53).

[3] *See* 47 U.S.C. § 153(50). This fact can be established by the testimony of either Mr. Tran or Mr. Boute, as well as by Interrogatory answers from Digicel-Haiti and/or deposition testimony from Mr. Boute, as well as other documents. Again, this is actually uncontested.

[4] *See* 47 U.S.C. § 153(53). *See also* note 2, *supra.*

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

service was made available to "the public" within the meaning of the Communications Act.[5]

It is undisputed that Digicel-Haiti cut off the SIM cards that UPM was using to resell RLYH service and that its purpose in doing so was precisely to prevent UPM from engaging in resale of that service.[6] It is illegal – it violates 47 U.S.C. §§ 201(b) and 202(a) – for a carrier such as Digicel-Haiti to ban or restrict the resale of its services.[7] Because this is plainly what Digicel-Haiti did, it is liable to UPM under 47 U.S.C. § 206 for all damages that UPM suffered "in consequence of" Digicel-Haiti's violation.[8]

---

[5] *Nat'l Ass'n of Regulatory Util. Comm'rs v. FCC*, 525 F.2d 630 (D.C. Cir. 1976); *Nat'l Ass'n of Regulatory Util. Comm'rs v. FCC*, 533 F.2d 601 (D.C. Cir. 1976); *Verizon Cal. Inc. v. FCC*, 555 F.3d 270 (D.C. Cir. 2008); *Protecting and Promoting the Open Internet*, Report and Order On Remand, Declaratory Ruling, and Order, 30 FCC Rcd. 5601 (2015), aff'd, *United States Telecomm. Ass'n v. FCC*, 825 F.3d 674 (D.C. Cir. 2016); *Orloff v. FCC,* 352 F.3d 415 (D.C. Cir. 2003).

[6] *See* Opinion and Order (ECF #294) at 27 (the parties "agree that Digicel Haiti, when it believed that a SIM card was being used" for resale (*i.e.,* when UPM linked calls from third parties to a call established using one of its SIM cards), it "deactivated (or de-authenticated) that card, thereby blocking UPM from continuing to use that SIM card."). *See also* Boute Depo. at 120:22-121:7; Defendant UPM Technology, Inc.'s Motion for Summary Judgment (ECF #255) ("UPM Summary Judgment Motion") at 35; Defendants' Reply in Support of Motion for Summary Judgment (ECF # 284) ("UPM Summary Judgment Reply") at 26-27; Digicel-Haiti Communications Act Motion at 1 ("The fact that Digicel Haiti disconnected offending SIM cards is undisputed"); *id.* at 3-4, 7. If additional proof is necessary, UPM will establish this fact on cross-examination (or direct examination) of Mr. Boute.

[7] *Regulatory Policies Concerning Resale and Shared Use of Common Carrier Services and Facilities,* Report and Order, 60 F.C.C.2d 261 (1976) ("*Resale Order*") at ¶¶ 8, 130; *amended by,* 62 F.C.C.2d 588 (1977), aff'd, *AT&T v. FCC,* 572 F.2d 17 (2d Cir. 1978); *id.* at ¶ 130 (same); *Nat'l Communs. Ass'n v. AT&T Corp.,* 238 F.3d 124, 125 (2d Cir. 2001). The FCC's rulings interpreting the Act are binding on this Court. *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Svcs.,* 545 U.S. 967, 125 S. Ct. 2688 (2005); *Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc.*, 550 U.S. 45, 127 S. Ct. 1513 (2007).

[8] To the extent that Digicel-Haiti claims that UPM was somehow not a customer or

---

Page 4 – COUNTERCLAIM PLAINTIFF'S TRIAL MEMORANDUM
UPM-L1\00682844.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Those damages principally consist of the profits that UPM lost by virtue of being prevented from reselling RLYH service. UPM will establish the amount of those lost profits by the testimony of Mr. Tran and Mr. Wood. Mr. Tran will explain why it is reasonable to conclude that UPM would have captured a significant share of the United-States-to-Haiti market by offering a 20% discount off of Digicel-Haiti's $0.23 per minute rate – ranging from 15% of the market during 2014 and increasing to 50% of the market by 2021 – and that it would have been very easy for UPM, as a technical matter, to handle the volume of traffic that discount would have generated, with negligible additional costs entailed in doing so. Mr. Wood will provide a sound framework for calculating damages and explain that applying that framework to the facts established by Mr. Tran, UPM suffered damages in the amount of approximately $61,000,000 as of the date of Mr. Wood's deposition testimony. Bringing that analysis forward to the date of trial results in damages of approximately $76,000,000.

## B.  Breach of Implied-in-Fact Contract

The parties' actions in connection with activating SIM cards, topping them up, and enrolling them in RLYH service established an implied-in-fact contract. Digicel-Haiti set up its systems so that anyone with a SIM card could automatically activate the card, pay Digicel-Haiti, sign up for RLYH service, and use the service. The physical configuration of Digicel-Haiti's systems constitutes its offer. The customer activating a SIM card and sending the requisite signaling constitutes acceptance. Paying Digicel-Haiti constitutes consideration. And Digicel-Haiti's permitting calls to go through (before cutting off the SIM card) constitutes performance, confirming the existence of the contract in the first place. There is no rational way to look at this sequence of behavior other than

---

subscriber of RLYH service, despite having subscribed its SIM cards to the service, including paying for the service, UPM's status as a customer is addressed below, in connection with UPM's contract claim.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

to conclude that it constitutes an implied-in-fact contract.[9]

In this regard, Digicel-Haiti configured its systems so that, viewed objectively, it was offering RLYH service to anyone with a valid SIM card who had money in the SIM card's account and who sent the codes to Digicel-Haiti directing that the SIM card be subscribed to the service. UPM did just that, including directing/authorizing Digicel-Haiti to take the enrollment fee out of the SIM cards' accounts. That constituted acceptance of Digicel-Haiti's offer, and UPM's status as Digicel-Haiti's customer for RLYH service was confirmed by, among other things, Digicel-Haiti taking the enrollment fee, sending the enrollment confirmation message and (until the SIM card was unlawfully blocked) permitting it to make calls at the local rate. Both scholarly commentary and case law confirm that these kinds of non-human exchanges of behavior establish an implied-in-fact contract between the party interacting with the automatic system and the entity whose system is being interacted with.[10]

Moreover, as with any contract, what matters is not the parties' subjective thoughts and intentions, but rather their objective behavior. As a result, Digicel-Haiti's

---

[9] *See, e.g., Mindful Insights, Ltd. Liab. Co. v. VerifyValid, Ltd. Liab. Co.*, 301 Or. App. 256, 266, 454 P.3d 787 (2019), *adh'd to on recons*, 302 Or. App. 528, 461 P.3d 1034 (2020); *Rose v. Wollenberg*, 36 Or. 154, 157, 59 P 190 (1899); *Owen v. Bradley*, 231 Or. 94, 103, 371 P.2d 966 (1962) *Yoshida's Inc. v. Dunn Carney Allen Higgins & Tongue LLP*, 272 Or. App. 436, 457, 356 P.3d 121, 2015 Or. App. LEXIS 930, quoting *Montez v. Roloff Farms, Inc.*, 175 Or. App. 532, 536-37, 28 P.3d 1255 (2001); *Staley v. Taylor*, 165 Or. App. 256, 262 n.6, 994 P.2d 1220 (2000).

[10] *See* Jonathan G. Rohr, *Smart Contracts and Traditional Contract Law, or: The Law of the Vending Machine,* 67 Clev. St. L. Rev. 67, 74-81 (2019); *Chaffin v. Atlanta Coca Cola Bottling Co.*, 194 S.E.2d 513 (Ga. Ct. App. 1972) (implied contract for sale of a tainted bottle of soda); *Thornton v. Shoe Lane Parking, Ltd.* [1971] 2 QB 163 at 165 (implied contract for purchase of use of parking space via automated machine at entry); *Slater v. Fid. & Cas. Co.,* 98 N.Y.S.2d 28, 29 (N.Y. App. Div. 1950) (contract for flight insurance sold via vending machine); *Steven v. Fid. & Cas. Co.,* 377 P.2d 284, 298 (Cal. 1962) (same); *Lachs v. Fidelity & Casualty Co. of New York*, 118 N.E. 555 (N.Y. 1954) (same).

---

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

claimed subjective desires to limit RLYH service to individual subscribers, or to impose elaborate written terms and conditions on the service, are entirely irrelevant to the parties' legal relationship.[11] The objective manifestations of the parties' intentions show that once a SIM card is subscribed to RLYH service, that SIM card is entitled to make calls back to Digicel-Haiti subscribers in Haiti at the "local" rate. As a result, when Digicel-Haiti cut off UPM's RLYH SIM cards – precisely because they were being used for that purpose – Digicel-Haiti breached the parties' contract.

UPM's damages for this breach of contract consist of the profits that it lost by virtue of not being able to make use of its RLYH SIM cards in the manner contemplated by the contract.[12] UPM's reasonable calculation of those damages is described above.

## C. Money Had And Received

An action for money had and received "may be maintained 'whenever one has money in his hands belonging to another, which, in equity and good conscience, he ought to pay over to that other.'"[13] For this claim, the test "is whether a defendant, in equity and good conscience, is entitled to keep money to which a plaintiff makes a claim."[14]

---

[11] *See Cullinane v. Uber Techs., Inc.,* 893 F.3d 53, 62-64 (1st Cir. 2018) (customers must have conspicuous notice of terms for them to be binding); *Sleash, LLC v. One Pet Planet LLC,* 2014 U.S. Dist. LEXIS 109253, at *42-48 (D. Or. August 6, 2014) (to impose a contractual condition, a party must use "clear and unambiguous language"); ECF #294 at 15 n.11.

[12] Lost profits are recoverable in breach of contract actions under Oregon law. *See* UCJI 77.01; *Buck v. Mueller*, 221 Or. 271, 281, 351 P.2d 61, 66 (1960); *Von Ravensberg v. Houck-Carrow Corp.*, 60 Or. App. 412, 416-417, 653 P.2d 1297 (1982), citing *Cluck et al v. Fish et al*, 230 Or. 63, 368 P.2d 626 (1962)); *Schafer v. Sunset Packing Co.*, 256 Or. 539, 544, 474 P.2d 529, 531 (1970), citing McCormick, Law of Damages § 26, p. 100 (1935); 64 Harv L Rev 318, 319 (1950); *Welch v. U. S. Bancorp Realty & Mortg. Tr.,* 286 Or. 673, 704, 596 P.2d 947 (1979); *Furrer v. Int'l Health Assurance*, 256 Or. 429, 442, 474 P.2d 759 (1970)).

[13] *Briggs v. Lamvik*, 242 Or. App. 132, 143, 255 P.3d 518 (2011).

[14] *Davis v. Tyee Indus., Inc.*, 58 Or. App. 292, 296, 648 P.2d 388 (1982).

Page 7 – COUNTERCLAIM PLAINTIFF'S TRIAL MEMORANDUM
UPM-L1\00682844.000

Digicel-Haiti has never articulated any theory, and there is none, under which "in equity and good conscience" it should be able to keep the unused balances in the accounts of the SIM cards that it has cut off. That is money that UPM paid in order to receive services that Digicel-Haiti not only did not provide, but that its own actions made it impossible to provide. Digicel-Haiti, therefore, should be required to pay that money back to UPM.

Mr. Tran's testimony establishes the amount at issue. As he explains, UPM paid Digicel-Haiti a total of $279,129 for top-ups/recharges, and completed a total of 1,427,255 minutes on Digicel-Haiti's network. Applying the "local" rate for calls on Digicel-Haiti's network (approximately $0.095 per minute), UPM only received services (call termination) worth $135,589. This means that Digicel-Haiti has kept $143,540 of UPM's money to which it has no right, and that should be returned to UPM. Moreover, Mr. Boute's deposition testimony establishes that Digicel-Haiti's practice was to retain funds associated with blocked SIM cards, so there is no basis for any dispute that that is exactly what occurred with UPM's money.

### D. Conversion

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."[15] The underlying facts are the same as those for UPM's claim for money had and received, just discussed, and the compensatory damages are also the same: $143,500. The difference here is that with its conversion claim, UPM is also entitled to punitive damages.

UPM submits that the deposition testimony of Mr. Boute regarding "banking" money in the accounts of SIM cards that it has cut off reflects more than

---

[15] Restatement (Second) of Torts § 222A.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

sufficient malice to justify punitive damages.[16] Digicel-Haiti acted as though it was simply entitled to keep payments made by third parties in order to receive services from Digicel-Haiti, even though Digicel-Haiti not only did not provide those services but, indeed, by cutting off the SIM cards in the first place, made it impossible for the SIM card holder to receive them.

### E. Unjust Enrichment

To state a claim for unjust enrichment, a party must establish: "(1) a benefit conferred, (2) awareness by the recipient that he or she has received the benefit, and (3) that it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it."[17] The same facts just described also establish that Digicel-Haiti would be unjustly enriched were it permitted to keep the $143,500 that UPM paid for services that Digicel-Haiti affirmatively chose not to provide. In this regard, in *Larisa's Home Care, Ltd. Liab. Co. v. Nichols-Shields*,[18] the Oregon Supreme Court stated that, instead of applying the 3-factor test noted above, "Oregon courts should examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust" on a case by case basis.[19] Here, UPM's claim for unjust enrichment is based not only on the simple fact that Digicel-Haiti took UPM's money without providing service, but also that its actions constituted both breach of contract and the tort of conversion. These are clearly sufficient grounds on which

---

[16] *See Johannesen v. Salem Hospital,* 336 Or. 211, 217 82 P.3d 139 (2003) (in civil cases, malice means "the intentional doing of [an] injurious act without justification or excuse," including a tortious act "committed with a bad motive or so recklessly as to be in disregard of social obligations, or an act wantonly, maliciously or wickedly done"), quoting *Linkhart v. Savely*, 190 Or. 484, 505–06, 227 P.2d 187 (1951).

[17] *Wilson v. Gutierrez*, 261 Or. App. 410, 414, 323 P.3d 974 (2014).

[18]  362 Or. 115, 404 P.3d 912 (2017).

[19] *Id.* at 132. *See also Hoag Living Tr. v. Hoag,* 292 Or. App. 34 (2018), which looked to sections 27 and 31 of the Restatement (Third) of Restitution and Unjust Enrichment for guidance as to the application of the tort.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

to base a claim for unjust enrichment.

Moreover, for the same reasons that punitive damages are appropriate for Digicel-Haiti's conversion of UPM's money, punitive damages are also appropriate for its blatant and intentional effort to unjustly enrich itself at UPM's expense.

## IV.    CONCLUSION

The discussion above shows how and why UPM should prevail on all of its counterclaims.

Dated: September 30, 2022.

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    (Admitted Pro Hac Vice)
    Katherine Sheriff
    katherinesheriff@dwt.com
    Telephone: (202) 973-4200

Of Attorneys for Counterclaim Plaintiff

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2022, I served the foregoing **COUNTERCLAIM PLAINTIFF'S TRIAL MEMORANDUM** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Anisha Carla Atchanah
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com
Email: aatchanah@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Andrew J. Lee
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com
Email: ajlee@schwabe.com

Kent D. Bressie
HWG LLP
1919 M Street N.W., Suite 800
Washington, D.C. 20036
Email: kbressie@hwglaw.com

Dated: September 30, 2022.

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
   Kathryn P. Salyer, OSB #883017
   Eleanor A. DuBay, OSB #073755
   Blake Van Zile, OSB #184672
   ksalyer@tomasilegal.com
   edubay@tomasilegal.com
   bvanzile@tomasilegal.com
   Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
   Christopher W. Savage, D.C. Bar #362657
   chrissavage@dwt.com
   *(Admitted Pro Hac Vice)*
   Katherine Sheriff
   katherinesheriff@dwt.com
   Telephone: (202) 973-4200

Of Attorneys for Counterclaim Plaintiff

Page 1 – CERTIFICATE OF SERVICE
UPM-L1\00682844.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236