**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Bragar DuBay
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
chrissavage@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

Attorneys for Defendants / Counterclaim Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>Plaintiff & Counterclaim-Defendant,<br><br>v.<br><br>**UPM TECHNOLOGY, INC**., *et al.,*<br><br>Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI<br><br>**UPM'S OPPOSITION TO MOTION TO STAY DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION OF ISSUES ARISING UNDER THE COMMUNICATIONS ACT OF 1934, AS AMENDED** |

## I.    INTRODUCTION AND SUMMARY

The Court should deny Digicel-Haiti's request to stay resolution of UPM's claims under the Communications Act of 1934, as amended (the "Act") and direct the parties to the Federal Communications Commission ("FCC").[1] There is no sound basis for such a stay. If, however, the Court issues one, it must also stay any proceedings on Digicel-Haiti's fraud claim (assuming it is not dismissed) and await the FCC response to UPM's Communications Act claims, because UPM prevailing at the FCC would moot Digicel-Haiti's claim.

The Court should deny Digicel-Haiti's Stay Motion because granting it would result in unwarranted and unconscionable delay. The Ninth Circuit has repeatedly held that the most important factor – the "deciding factor" – in whether to invoke primary jurisdiction is "efficiency" – the avoidance of needless delay.[2] Here, we are seven weeks from a complete resolution of UPM's Communications Act claims in this Court. Putting on the brakes and sending those claims to the FCC now would entail a delay of at least two more years, perhaps as much as three.[3] Such delay would be particularly egregious because Digicel-Haiti has known for at least four years that it needed to take UPM's Communications Act claims seriously and prepare its defense accordingly.[4] If Digicel-Haiti wanted the FCC to weigh in on those claims, it could have and should have moved for a primary jurisdiction stay long ago.[5]

---

[1] Digicel-Haiti's Motion to Stay (ECF #421) ("Stay Motion").

[2] *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910-911 (9th Cir. 2019); *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 760 (9th Cir. 2015).

[3] *See infra.*

[4] *See* Opinion and Order (ECF #154) (March 30, 2018) at 30-31 (holding that Digicel-Haiti was a common carrier subject to the Act with respect to its RLYH service).

[5] UPM recognizes that Digicel-Haiti's current motion was filed at the invitation of the Court. For the reasons discussed here, UPM respectfully submits that the Court's suggestion that a primary jurisdiction stay might be appropriate, was misplaced, both in light of the needless delay it would impose, as well as on the merits. But in any case, the fact that the Court raised this issue now does not excuse Digicel-Haiti's lack of focus and diligence in failing to raise it for the last four years.

Page 2 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

Given the unconscionable delay that a primary jurisdiction stay would create, only the most compelling case could possibly justify granting one. But Digicel-Haiti has no case for a stay at all. Resolving UPM's Communications Act claims does not require the unique expertise of the FCC,[6] and certainly is not needed for the "protection of the integrity of a regulatory scheme."[7] To the contrary, resolving that claim entails applying statutory language to the facts at hand – the kind of application of statutes to facts that courts do all the time – and applying unambiguous, unchallenged, and binding FCC precedent banning restrictions on resale to those same facts.[8] Not only is FCC input not required to resolve UPM's Communications Act claims; the record is clear that the Court should grant UPM summary judgment on them.[9]

If, notwithstanding these points, the Court invokes primary jurisdiction anyway, then it is imperative that the Court either issue a ruling dismissing Digicel-Haiti's remaining fraud claim or stay all proceedings on that claim while the FCC's process is underway. This is necessary because Digicel-Haiti's fraud claim cannot survive an FCC ruling for UPM. The key question before the FCC would be whether Digicel-Haiti violated the ban on resale restrictions by cutting off UPM's RLYH SIM cards. Digicel-Haiti itself has framed the question for the FCC as whether cutting off of the SIM cards was justified based on UPM's supposedly fraudulent activity.[10] If the

---

[6] *See Astiana, supra,* 783 F.2d at 760; *Robles, supra,* 913 F.3d at 910-911. *See also Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.,* 307 F.3d 775, 780-81 (9th Cir. 2002); Opinion and Order, ECF #122 at 17, quoting *United States v. General Dynamics,* 828 F.2d 1356, 1362 (9th Cir. 1987).

[7] *Syntek, supra,* 307 F.3d at 781.

[8] *Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc.,* 550 U.S. 45, 127 S. Ct. 1513 (2007); *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Svcs.,* 545 U.S. 967, 125 S. Ct. 2688 (2005).

[9] *See* Counterclaim Plaintiff's Motion for Summary Judgment – Communications Act (ECF #386) ("UPM Communications Act Motion"); UPM's Reply in Support of Motion for Summary Judgment and Opposition to Digicel-Haiti's Motion for Summary Judgment (ECF #402) ("UPM Communications Act Reply").

[10] Stay Motion at 2.

Page 3 – UPM'S OPPOSITION TO MOTION TO STAY DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION OF ISSUES ARISING UNDER THE COMMUNICATIONS ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

FCC decides that Digicel-Haiti had no right to cut off the SIM cards notwithstanding how UPM

used those SIM cards, then there is nothing left to Digicel-Haiti's fraud claim. This is because if it

violated the Act for Digicel-Haiti to cut off UPM's SIM cards, Digicel-Haiti necessarily cannot

have been damaged by UPM's use of those SIM cards – including (supposedly) using human

behavior software ("HBS") to manage them. It makes no sense to move forward with the fraud

claim while an FCC ruling entirely mooting it waits in the wings.[11]

In these circumstances, the Court should not stay any aspects of this case. But if it

does, the only issues that should proceed to trial are those UPM counterclaims that do not arise

from the Communications Act – that is, its state-law claims for breach of contract, money had and

received, conversion, and unjust enrichment.[12]

## II.    ARGUMENT

The Ninth Circuit in *Astiana* articulated the considerations that govern a District

Court's discretion in deciding whether to grant a primary jurisdiction stay:

> Primary jurisdiction is a prudential doctrine that permits courts to determine "that
> an otherwise cognizable claim implicates technical and policy questions that should
> be addressed in the first instance by the agency with regulatory authority over the
> relevant industry rather than by the judicial branch." In evaluating primary
> jurisdiction, we consider '(1) the need to resolve an issue that (2) has been placed
> by Congress within the jurisdiction of an administrative body having regulatory
> authority (3) pursuant to a statute that subjects an industry or activity to a
> comprehensive regulatory authority that (4) ***requires expertise or uniformity*** in
> administration.'
>
> ***Not every case that implicates the expertise of federal agencies warrants
> invocation of primary jurisdiction.*** Rather, the doctrine is reserved for a 'limited

---

[11] Of course, this concern would also be solved by the Court granting UPM's pending motion for summary judgment. *See* Defendants' Motion for Judgment as a Matter of Law – Causation and Damages (ECF #398); Defendants' Reply in Support of Motion for Judgment as a Matter of Law – Causation and Damages (ECF #402). Dismissing UPM's common-law fraud claim would not prevent Digicel-Haiti from arguing to the FCC that UPM's conduct (including but not limited to its supposed use of HBS) justified cutting off UPM's RLYH SIM Cards, *i.e.,* such a ruling would not prejudice Digicel-Haiti before the FCC.

[12] *See* Counterclaim Plaintiff's Trial Memorandum (ECF #439).

set of circumstances' that 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.' …

Nonetheless, courts **must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims**. *United States v. Philip Morris USA Inc.,* 686 F.3d 832, 838, 402 U.S. App. D.C. 34 (D.C. Cir. 2012) ("The primary jurisdiction doctrine is rooted in part in judicial efficiency."). **Under our precedent, "efficiency" is the "deciding factor" in whether to invoke primary jurisdiction**.

Common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation. Similarly, **primary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make.**[13]

Applying these standards here compels the conclusion that Digicel-Haiti's motion for a primary jurisdiction stay should be denied.

## A. A Primary Jurisdiction Referral Cannot Be Justified in Light of the Delay and Inefficiency It Would Cause

The Ninth Circuit has declared that **the** "**deciding factor**" in whether to grant a primary jurisdiction stay is "efficiency" and the **avoidance** of delay.[14] Digicel-Haiti's motion does not cite or discuss either *Astiana or Robles,* the Ninth Circuit cases that make this clear. Indeed, Digicel-Haiti does not discuss the issue of delay at all.

This is understandable: sending UPM's Communications Act claims to the FCC would delay resolution by at least one year or two years, and probably more than two. This is evident from the process the FCC has established for primary jurisdiction matters.[15] For issues

---

[13] *Astiana, supra,* 783 F.3d at 760-61 (emphasis added, footnote omitted, all but one citation omitted).

[14] *Robles, supra,* 913 F.3d at 910-911; *Astiana, supra,* 783 F.3d at 760.

[15] *See* Richard Welch, *Demystifying Primary Jurisdiction Referrals,* FEDERAL COMMUNICATIONS COMMISSION (July 29, 2010, 10:00 AM), https://www.fcc.gov/news-events/blog/2010/07/29/demystifying-primary-jurisdiction-referrals.

Page 5 – UPM'S OPPOSITION TO MOTION TO STAY DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION OF ISSUES ARISING UNDER THE COMMUNICATIONS ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

involving "allegations of unlawful conduct by common carriers" – such as UPM's claims here – the FCC requires extensive pre-complaint proceedings before the Market Disputes Resolution Division of the agency's Wireline Competition Bureau.[16] Only *after* those proceedings have been completed may an aggrieved party actually file a complaint.[17] And, once the FCC rules – even if it meets its five-month statutory deadline[18] – the losing party will file an appeal, the resolution of which will take at least a year and likely closer to two.[19] Only then would proceedings resume in this Court. This means that UPM's Communications Act claims – which will otherwise be resolved here in a matter of weeks – would remain unresolved for an additional *two to three years.*[20]

It is impossible to reasonably justify a primary jurisdiction stay in these circumstances. Again, the "deciding factor" in whether to grant such a stay – the factor that Digicel-Haiti completely ignores – is "efficiency" and the avoidance of delay.[21] UPM does not question that the Court has discretion regarding when it may stay cases pending before it. UPM, however, respectfully suggests that staying consideration of UPM's Communications Act claims on primary jurisdiction grounds now – more than six years after they were filed,[22] more than four

---

[16] *See* 47 C.F.R. § 1.724(b).

[17] These mandatory "pre-complaint" procedures permit the agency to mitigate the impact of 47 U.S.C. § 208(b)(1), which requires complaints against carriers to be resolved within five months of filing.

[18] *See* 47 U.S.C. § 208(b)(1).

[19] *See* UNITED STATES COURT OF APPEALS FOR THE 9TH CIRCUIT OFFICE OF THE CLERK, *Frequently Asked Questions*, https://www.ca9.uscourts.gov/general/faq/ ("For a civil appeal, approximately 12-20 months from the notice of appeal date. If briefing isn't delayed, approximately 9-12 months from completion of briefing.")

[20] Not even counting the time for the inevitable appeal of the FCC's initial ruling, the FCC's pre-complaint procedures, combined with even a five-month review period by the FCC, would add close to a year to the time for resolving UPM's Communications Act claims.

[21] *Robles, supra,* 913 F.3d at 910-911; *Astiana, supra,* 783 F.3d at 760.

[22] Defendants' Answer, Affirmative Defenses and Counterclaims to Plaintiff's Amended Complaint and Demand for Jury Trial (ECF #73) (filed March 1, 2016) at ¶¶ 206, 224-229, 241-

Page 6 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

years after the Court sustained them against a motion to dismiss,[23] more than a year after the close of discovery, and nearly a year since UPM first moved for summary judgment in its favor on those claims[24] – would be an abuse of that discretion.

Digicel-Haiti's failure even to address the issue of delay is a fully sufficient reason to deny its Stay Motion. But at a minimum, the extensive and highly prejudicial delay that a primary jurisdiction stay would unavoidably create means that UPM's Communications Act claims should not be stayed unless Digicel-Haiti has presented a truly compelling case "on the merits" showing that input from the FCC is truly "required" to resolve UPM's claims. It has not done so.

## B. A Stay Is Unwarranted Under the Ninth Circuit's Four-Factor Test

The Ninth Circuit has established a four-factor test to preliminarily determine whether a stay of a case to accommodate a primary jurisdiction referral is appropriate:

> In evaluating primary jurisdiction, we consider "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."[25]

UPM does not dispute that resolving its Communications Act claims requires resolving whether Digicel-Haiti is a carrier and whether it violated the FCC's ban on resale restrictions. UPM, therefore, does not dispute that the first factor is satisfied.

With regard to the second factor, while UPM's Communications Act claims are

---

243, 250-252.

[23] Opinion and Order (ECF #154) (March 30, 2018).

[24] Defendant UPM Technology, Inc.'s Motion for Summary Judgment (ECF #254) (November 12, 2021).

[25] *Astiana, supra,* 783 F.3d at 760, quoting *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). The four-factor test is only preliminary because, as discussed above, even if all of its elements are satisfied, the "deciding factor" for a primary jurisdiction stay remains judicial efficiency and the avoidance of delay. *Astiana,* 783 F.3d at 760.

Page 7 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

certainly within the jurisdiction of the FCC, they are also – by specific direction of Congress – within the Court's jurisdiction under Section 207. So, while this factor is in a literal sense fulfilled here, this is not a situation where the Court's involvement in some regulatory dispute arises from, for example, general "federal question" jurisdiction under 28 U.S.C. § 1331. There are doubtless cases (and regulatory regimes) where Congress intended an agency to have the first bite at the enforcement apple, but the Communications Act is not one of them. To the contrary, for more than a century, Congress has given the federal courts original jurisdiction over complaints that common carriers – including, since 1934, communications common carriers – have violated their statutory duties.[26] The Court's basis for jurisdiction over UPM's Communications Act claims is just as strong as, just as specific as, and arises from the same statute as the FCC's. As a result, in considering a primary jurisdiction stay here, the second factor in the Ninth Circuit's test is particularly weak.

With regard to the third factor, UPM does not dispute that the Communications Act, writ large, subjects the communications industry to a "comprehensive regulatory authority."

But finally – and most critically – there is nothing about UPM's Communications Act claims that requires expertise beyond the ken of the judicial branch, or that raises any concerns about "uniformity." UPM does not dispute that its Communications Act claims to some extent "implicate the expertise" of the FCC.[27] But that is inherent in the terms of the Act. In Section 206, Congress made carriers liable to those they harm by violating the Act.[28] But then Congress gave the victims a choice of bringing their claims under the Act either to federal court or to the FCC.[29]

---

[26] *See Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc.*, 550 U.S. 45, 49, 127 S. Ct. 1513 (2007) (noting that Section 207 of the Act was "largely copied" from the 19th-Century Interstate Commerce Act).

[27] *Astiana, supra,* 783 F.3d at 760.

[28] 47 U.S.C. § 206.

[29] 47 U.S.C. §§ 207-208.

Page 8 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

As a result, it is obvious that any claim before a federal court under Section 207 by definition could also be resolved by the agency under Section 208. ***Every*** Section 207 case, in other words, will "implicate" the FCC's expertise. But merely implicating the agency's expertise is not the test; the test is whether recourse to the FCC's expertise is "***required***" to resolve the issues.[30] Digicel-Haiti has not remotely made that showing.

### 1. No Special Expertise is Required to Determine that Digicel-Haiti is a Carrier

Other than quoting the Ninth Circuit's statement that agency expertise is "required" for a primary jurisdiction stay, Digicel-Haiti never addresses this "requirement" factor at all.[31] To the contrary, its argument consists of stating the obvious: that a stay would "permit" the FCC to consider UPM's Communications Act claims,[32] or "allow" the agency to do so.[33] That is a far cry from showing that the agency's expertise is ***required*** to resolve the issues – the actual Ninth Circuit standard. On Digicel-Haiti's theory, no dispute brought to federal court under Section 207 could ever be decided without a primary jurisdiction stay, because in every case, a stay would "permit" or "allow" the FCC to weigh in.

Digicel-Haiti's carrier status is not "a particularly complicated issue."[34] UPM has

---

[30] *Robles, supra,* 913 F.3d at 910-911; *Astiana, supra,* 783 F.3d at 760. These recent and controlling Ninth Circuit cases confirm that a primary jurisdiction stay is only appropriate where agency expertise is "required," and specifically reject the notion that a stay is appropriate simply because agency input would be "helpful." *Astiana, supra,* 783 F.3d at 760. As a result, older cases, and cases from other circuits, that would permit a primary jurisdiction referral where agency input would merely be helpful or provide assistance to the court, have no bearing here. *See, e.g., Tassy v. Brunswick Hosp. Ctr., Inc.,* 296 F.3d 65,73 (2nd Cir. 2002); Stay Motion at 1-2 (citing *Tassy*).

[31] *See* Stay Motion at 2, quoting *Syntek, supra,* 307 F.3d at 780. Digicel-Haiti also quotes an Eighth Circuit case to the same effect. *Id.,* quoting *Access Telecomms. v. Sw. Bell Tel. Co.,* 137 F.3d 605, 608 (8th Cir. 1998).

[32] Stay Motion at 2, 5-6.

[33] *Id.* at 3.

[34] *Astiana, supra*, 783 F.3d at 760.

explained that Digicel-Haiti falls within the definition of "telecommunications carrier" and "common carrier" laid out in the Act and associated case law. While this question "implicates" the FCC's expertise to some extent, no expertise is required to resolve it. Quite to the contrary, determining that Digicel-Haiti is a carrier is a straightforward matter of applying the plain language of the statute to Digicel-Haiti's activities. An entity is a carrier under the Act if it offers telecommunications to the public for a fee.[35] Calling from the United States to Haiti is obviously "telecommunications," and RLYH is plainly offered for a fee. The only possible question is whether Digicel-Haiti offers RLYH service to "the public," and UPM has explained under applicable precedent – from courts, not just from the FCC – that the answer is "yes."[36]

Answering this question requires nothing more than applying the statutory language to the facts, in light of applicable precedent. That is a task that is supremely within the competence of the judicial branch. Courts have addressed whether particular entities are carriers in a broad range of situations.[37] Indeed, the fact that carrier status is commonly addressed by courts shows conclusively that it is not a question that "requires" agency expertise to answer.[38] This shows that primary jurisdiction referral is inappropriate here.[39]

---

[35] *See* 47 U.S.C. §§ 153(11), (50), (51), (53).

[36] *See* UPM Communications Act Motion at 20-22.

[37] *See, e.g., NetChoice, LLC v. AG, Fla.,* 34 F.4th 1196 (11th Cir. 2022); *FTC v. AT&T Mobility, LLC,* 883 F.3d 848 (9th Cir. 2018); *Iowa Telcoms. Servs. v. Iowa Utils. Bd.,* 563 F.3d 743 (8th Cir. 2009); *Verizon Cal. Inc. v. FCC,* 55 F.3d 270 (D.C. Cir. 2008); *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2nd Cir. 2006); *Virgin Islands Tel. Co. v. FCC,* 198 F.3d 921 (D.C. Cir. 1999); *Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000); *Southwestern Bell Tel. Co. v. FCC,* 19 F.3d 1475 (D.C. Cir. 1994); *McKinney v. Google, Inc.*, 2010 U.S. Dist. LEXIS 144800 (N.D. Cal. Nov. 16, 2010); *Kinderstart.com LLC v. Google, Inc.*, 2006 U.S. Dist. LEXIS 82481 (N.D. Cal. July 13, 2006); *Qwest Communs. Corp. v. City of Berkeley,* 146 F. Supp. 2d 1081 (N.D. Cal. 2001).

[38] *See, e.g., Nicholson v. REI Energy, LLC,* 370 F. Supp. 3d 1199, 1206 (D. Or. 2019); *Larson v. Harmon Mgmt. Corp.*, 2018 U.S. Dist. LEXIS 208121, *12 (E.D. Cal. Dec. 10, 2018). As noted above, courts have been deciding the status of various entities as carriers or not, under the terms of the Communications Act, for a very long time.

[39] As an example of the kinds of issues where agency "expertise" might be required, consider

Page 10 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

As noted above, given the unconscionable delay that a primary jurisdiction stay would create, Digicel-Haiti would need to have a strong, compelling showing that agency expertise is, indeed, "required." It has made no such showing. To the contrary, it seems to have, at best, two weak arguments argument against concluding that it is a carrier.

First, Digicel-Haiti argues that because the FCC has not required overseas wireless carriers offering roaming services to their subscribes in the United States to expressly obtain authority to do so, that somehow means that Digicel-Haiti is not a carrier subject to the Act when it offers RLYH service.[40] But the fact that the FCC has not required overseas wireless carriers to formally obtain authority is not precedent – it is a *lack* of precedent.[41] It means nothing other than that other overseas wireless carriers have not violated the Act, and so have not been the subject of the FCC's attention. This hardly shows that agency expertise is "required" to apply the definitions in the Communications Act to Digicel-Haiti.

In fact, UPM has previously explained how the precedent that *does* exist compels the conclusion that Digicel-Haiti is a carrier.[42] In this regard, UPM notes that there was some confusion at the September 14, 2022 hearing regarding the FCC's rulings on these issues.[43] To clear that up, UPM notes that the FCC issued a total of three orders in the relevant proceeding: (1)

---

*Access Telecomms. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998) (cited by Digicel-Haiti at page 3 of its motion). The Eighth Circuit there upheld a primary jurisdiction referral when resolution of the matter would have required the court "to become embroiled in the technical aspects of VG 7 service … such as circuit designs, signal transmissions, noise attenuation, and echo return loss." *Id.* at 609. No such issues arise in UPM's Communications Act claims.

[40] *See* Stay Motion at 3, 5. Digicel-Haiti also, it appears, mistakenly believes that this raises concerns about "uniformity." *See infra.*

[41] *See id.* at 5 (questioning whether "the absence of FCC enforcement action" against other carriers raises "uniformity" issues and suggesting that such absence implies that Digicel-Haiti is not a carrier).

[42] *See* UPM Communications Act Reply at 14-19.

[43] *See* Transcript of Proceedings (ECF #423) at 95:24-96:17.

a "Notice of Proposed Rulemaking," released on March 4, 2004;[44] (2) a "Report and Order," released on June 22, 2007;[45] and (3) an "Order on Reconsideration," released on November 2, 2010.[46] In its briefing, UPM quoted from and discussed both the Notice of Proposed Rulemaking (from 2004) and the Report and Order (from 2007), explaining how these precedents hold that a wireless carrier offering back-to-home-country roaming is reselling the services of the host carrier, and that such resale is a "foreign communications" service, which makes the carriers providing the roaming service subject to the Act with respect to it.[47]

Digicel-Haiti also argues that the fact that the FCC has not required overseas wireless carriers to formally obtain authorization for their back-to-home-country roaming services somehow raises the specter of a lack of "uniformity" under the fourth Ninth Circuit factor.[48] But this is obviously wrong. Concerns about "uniformity" arise when the same issue that is before a court is also pending before other courts or the agency, or where they involve some ongoing industry-wide controversy.[49] This is not the situation here – there are no other cases pending that

---

[44] *Amendment of Parts 1 and 63 of the Commission's Rules,* Notice of Proposed Rulemaking, 19 FCC Rcd 4231 (2004). For the Court's convenience and ease of reference, a true and correct copy of this Notice of Proposed Rulemaking is attached as Exhibit 1 to the supporting Declaration of Christopher Savage ("Savage Dec.") filed concurrently herewith, with the portions that UPM cites highlighted.

[45] *Amendment of Parts 1 and 63 of the Commission's Rules,* Report and Order, 22 FCC Rcd 11398 (2007) ("*Parts 1 and 63 Report and Order*"); *see* Savage Dec., Exh. 2.

[46] *Amendment of Parts 1 and 63 of the Commission's Rules,* Order on Reconsideration, 25 FCC Rcd 15706 (2010). This ruling relates entirely to issues involving application of the Coastal Zone Management Act to submarine cable landing licenses. It has nothing to do with wireless services or roaming, and is irrelevant to any claims in this case. To eliminate any concern or ambiguity on that point, UPM is attaching a copy of that order as well; *see* Savage Dec., Exh. 3.

[47] UPM Communications Act Reply at 14-19. Again, the 2010 reconsideration order dealt with matters unrelated to those at issue here.

[48] Stay Motion at 5-6.

[49] *See, e.g., Sprint Spectrum L.P. v. AT&T Corp.,* 168 F. Supp. 2d 1095 (W.D. Mo. 2001). That case was one battle in an industry-wide controversy over whether and in what circumstances wireless carriers could assess a particular type of regulated charge – "access charges" – on long

---

Page 12 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

might be resolved in an inconsistent, non-uniform way. In any case, Digicel-Haiti's argument proves too much: every Section 207 case would present "uniformity" concerns, because it is always possible that the agency might, conceivably, reach a different answer in another case – which is all that Digicel-Haiti argues here. And, in any event, UPM has explained that the FCC does not waste time on formalities when the reality on the ground is not problematic.[50] If the FCC wants to fully dot its "I's" and cross its "T's" on this point, it can, at its leisure, issue a generic ruling that overseas wireless carriers are indeed authorized to offer their back-to-home-country roaming services.[51] The notion that this Court should delay resolving UPM's Communications Act claims and send these questions to the FCC, simply because the agency has not taken that formal step, is absurd. It certainly has no grounding in the Ninth Circuit's test for when a primary jurisdiction stay is appropriate.

Digicel-Haiti's second argument against carrier status is that it does not "offer" RLYH in the United States.[52] As UPM has explained, this argument is also absurd: anyone in the

---

distance carriers. *Id.,* at 1100-1101. The *Sprint Spectrum* case also involved questions of whether particular rates were or were not "reasonable," a question on which courts have traditionally sought agency guidance. No such issues are involved in the dispute between UPM and Digicel-Haiti. *See also Demmick v. Cellco Partnership,* 2011 U.S. Dist. LEXIS 34381, *19 (D. NJ Mar. 29, 2011) (FCC's notice of proposed rulemaking regarding disclosures made by carriers at the "point of sale" "tips slightly in favor of referral, as the FCC's proposed rulemaking may be relevant to Plaintiffs' claims regarding Verizon's alleged "undisclosed" billing practices"); *Danna v. Air Fr.*, 463 F.2d 407, 412 (2nd Cir. 1972) (when "an agency is currently conducting an investigation into the lawfulness of the [practice] under attack, to permit the court below initially to determine the issue would invite the very disruption…that the doctrine [of primary jurisdiction] is meant to discourage.") (internal citations omitted). There is no ongoing proceeding at the FCC (or anywhere else) dealing with the issues raised by UPM's Communications Act claims.

[50] UPM Communications Act Reply at 19 n.20.

[51] This is exactly what the FCC did with regard to back-to-home-country roaming services offered by United States wireless carriers reselling the services of the overseas carriers where their subscribers were roaming. *See id.*; *see also Parts 1 and 63 Report and Order* at ¶23; 47 C.F.R. § 63.23(c). In fact, the FCC's longstanding practice is to issue blanket authorizations to cover situations where appropriate. *See, e.g.,* 47 C.F.R. § 63.01(a) (providing that "any party" that wants to provide domestic interstate service "is authorized" to do so).

[52] Stay Motion at 2-3, 5.

United States with a Digicel-Haiti SIM card can activate that SIM card and subscribe to RLYH service, and the service is, obviously, physically provided within the United States. It is therefore "offered" here. But whatever the strength (or weakness) of the parties' arguments on this issue, resolving it is a simple matter of applying statutory language (the meaning of the term "offer" in the definition of "telecommunications service" under 47 U.S.C. § 153(53)) to the facts at hand. Applying the law to facts is a quintessential judicial function, and resolving this question does not remotely "require" input from the FCC.

### 2. No Special Expertise is Required to Determine that Digicel-Haiti Violated the FCC's Ban on Resale Restrictions

Digicel-Haiti has also failed to show that any FCC expertise is "required" to resolve UPM's claim that Digicel-Haiti violated the FCC's ban on resale restrictions. Resolving this issue is, again, simply a matter of applying the law – in this case, long-settled FCC precedent – to the facts at hand. Applying a legal rule embodied in precedent to specific facts is a task well within the purview of the judicial branch.

First, the Court should note that at no point in any of Digicel-Haiti's filings on this issue does it cite a single case (from any court, or from the FCC) in which the ban on resale restrictions has been cut back, amended, or qualified in a way that would exempt Digicel-Haiti from its reach. Instead, all it has offered are some ancient, off-point (and entirely inapplicable) precedents about a carrier's right under state common carrier law to terminate service being used for suspected illegal purposes,[53] and to argue that it is permissible for Digicel-Haiti to discriminate against UPM as a reseller because it discriminates against all resellers the same way.[54] These are hardly compelling arguments requiring that UPM's claims be referred to the FCC. To the contrary. For example, consider the fact that there is not a single case in all of Oregon tort law, or indeed in

---

[53] *See* Plaintiff's Response in Opposition to UPM Technology's Motion for Summary Judgment Regarding Communications Act (ECF #397) at 20-24; UPM Communications Act Reply at 25-34.

[54] Plaintiff's Response in Opposition to UPM Technology's Motion for Summary Judgment Regarding Communications Act (ECF #397) at 24-25.

Page 14 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

the tort law of any state, remotely suggesting that the use of HBS in connection with the use of a wireless carrier's services constitutes fraud. On Digicel-Haiti's theory, this Court should have long ago stayed all of Digicel-Haiti's fraud claims so that the Court could ask the Oregon Supreme Court to say whether the Oregon tort of common law fraud could be construed to reach such activity. Just as this Court is entirely competent to apply Oregon tort law to specific factual situations to which that law might not previously have been applied by the Oregon Supreme Court, so too is this Court entirely competent to apply FCC precedent under Sections 201 and 202 of the Act to situations to which those statutes might not have previously been applied. Applying precedent to facts is what courts do, and that is all that is needed to resolve UPM's Communications Act claims.

In this regard, UPM explained – citing two Supreme Court cases and one from the Ninth Circuit – that FCC decisions interpreting Sections 201 and 202 are to be viewed as precedent under the Act, binding on this Court in the same way that an appellate or Supreme Court case interpreting a statute would be.[55] Digicel-Haiti has never challenged this point which, under the cited cases, is indisputable. So all that is involved in resolving UPM's claim regarding violating the ban on resale restrictions is to apply binding precedent to the facts at hand. Again, this is what courts do. To use another example, courts are routinely expected to determine and apply the law of other countries where appropriate, without staying proceedings and asking for clarification from those countries.[56] If courts can do *that,* then surely no stay is required to apply straightforward United States precedent explaining and interpreting Sections 201 and 202, just because it comes

---

[55] *See* UPM Communications Act Motion at 27 n.95, citing *Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc.,* 550 U.S. 45, 127 S. Ct. 1513 (2007), *Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc.,* 423 F.3d 1056 (9th Cir. 2005), *aff'd sub nom. Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc.,* 550 U.S. 45, 127 S. Ct. 1513 (2007), and *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Svcs.,* 545 U.S. 967, 125 S. Ct. 2688 (2005). *See also* UPM Communications Act Motion at. 4 n.11, 23 n.79, 28 n.100.

[56] *See* Fed R. Civ. P 44.1.

from the FCC.

This is not a case where UPM is asking the Court to make some free-floating determination that Digicel-Haiti's actions were "unjust" or "unreasonable" or "unreasonably discriminatory" in the abstract. To the contrary, the FCC has already done that work and has specifically found that it is indeed unjust and unreasonable under Section 201(b) and unreasonably discriminatory under Section 202(a) for a carrier to restrict the resale of its services.[57] The question here is not what the Court might think about the reasonableness of Digicel-Haiti's conduct; the question is whether Digicel-Haiti blocked UPM's ability to resell RLYH.[58]

Finally on this point, it bears emphasis that Digicel-Haiti does not deny that the FCC's ban on resale restrictions operates the way UPM says it does. Instead, it is arguing, ***with no support in any FCC or other authority,*** that the Court should issue a stay because the FCC might, possibly, create an as-yet-unarticulated ***exception*** to its longstanding rule to accommodate Digicel-Haiti's anticompetitive deactivation of UPM's RLYH SIM cards. That argument no more warrants a primary jurisdiction stay than the fact that Oregon courts have never considered whether the use of HBS might constitute fraud warrants referring that question to the Oregon Supreme Court. Again, applying precedent to facts – even facts that do not literally, 100%, fall within a previously decided case – is what courts do. The fact that this Court will need to do that to resolve UPM's Communications Act claims does not remotely constitute a showing that FCC "expertise" is "required" to decide this case.

---

[57] *See* UPM Communications Act Motion at 22-34; UPM Communications Act Reply at 25-34.

[58] In this same vein, UPM is not asking the Court to determine the reasonableness of, or the appropriate level of, any rate that Digicel-Haiti charged for any of its services, nor is UPM asking the Court to determine the reasonableness of or interpretation of any tariff. For this reason, cases referring those types of issues to the FCC have no bearing here. *See, e.g., United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956); *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S. Ct. 1213, 122 L. Ed. 2d 604 (1993); *Access Telecomms., supra,* 137 F.3d 605. *See also* Stay Motion at 203 (citing these cases).

Page 16 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

***TOMASI BRAGAR DUBAY***
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**C. If The Court Issues a Stay, It Must Also Stay Proceedings on Digicel-Haiti's Fraud Claim**

If the Court nonetheless chooses to issue a stay of UPM's Communications Act claims, the stay must also apply to Digicel-Haiti's fraud claim. As this case has evolved over its now nearly eight-year history, Digicel-Haiti's only surviving fraud claim is so intimately tied to UPM's Communications Act claim that it would invite confusion, delay, and potentially inconsistent results to let the fraud claim proceed on its own. To see why this is so, consider what will happen at the FCC if a stay is granted. First, UPM will argue that Digicel-Haiti is a carrier subject to the ban on resale restrictions, and that it violated that ban by cutting off UPM's RLYH SIM cards. Digicel-Haiti will argue that it is not a carrier, but that if it is, and is subject to the ban on resale restrictions, cutting off UPM's SIM cards was nonetheless justified because of UPM's supposedly bad behavior, including its supposed use of HBS.

Now assume that UPM wins at the agency – either by proving that it did not use HBS, or by proving that as a matter of law, even if it did, it was entitled to do so as part of its resale operations. In either case, there is no way that Digicel-Haiti's HBS-based fraud claim could possibly proceed in this Court. If the agency determines that UPM did ***not*** use HBS, that determination would be *res judicata* as between the parties, precluding relitigation of that issue here.[59] If the agency determines that Digicel-Haiti was obliged to permit UPM to resell RLYH service even though UPM ***did*** use HBS, the, as a matter of federal law, Digicel-Haiti was duty-bound to permit that type of use of its RLYH service, and it would directly conflict with that ruling to apply Oregon tort law to impose liability on UPM for doing something that Digicel-Haiti was

---

[59] *See Int'l Bhd. of Teamsters, Local Union No. 1224 v. Allegiant Air, LLC*, 788 F.3d 1080 (9th Cir. 2015) ("Courts 'have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. … When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose'"), quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991).

Page 17 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

obliged by federal law to let UPM do. Any such claim would be preempted.

The only possible way that Digicel-Haiti's fraud claim would remain viable once the FCC got involved is if Digicel-Haiti can convince the agency that UPM's alleged wrongful bad conduct – using HBS to support its resale efforts – in fact absolved Digicel-Haiti of liability for cutting off UPM's SIM cards. If, indeed, that is what the FCC rules, then UPM might have a viable fraud claim in this Court.[60]

UPM is not somehow concocting the intimate linkage between Digicel-Haiti's fraud claim and UPM's Communications Act claims. ***Digicel-Haiti makes that linkage itself in its motion.*** It states that it wants a stay so that the FCC can "apply its experience and expertise to determine whether … Digicel Haiti's termination of that service ***due to fraud*** constitutes an unjust and unreasonable practice within the meaning of Section 201(b) or unreasonable discrimination within the meaning of Section 202."[61] While the FCC would not determine whether any particular UPM actions constituted fraud, Digicel-Haiti clearly intends to present the FCC with evidence of UPM's supposed bad acts as a justification for cutting off UPM's SIM cards. If this matter does indeed get stayed and referred to the FCC, Digicel-Haiti is certainly entitled to make such a presentation. But that necessarily puts into play whether UPM's supposed bad acts gave Digicel-Haiti the right to cut off the SIM cards. If they did not, as UPM will contend at the agency, then, as explained above, Digicel-Haiti's fraud claim becomes unviable.[62]

Finally on this point, UPM notes that the Court should grant UPM's pending motion

---

[60] Or it might not. Even if the FCC concludes that UPM's (here, assumed) bad actions justified Digicel-Haiti in cutting off the SIM cards, that does not mean that those same (here, assumed) bad actions would constitute fraud under Oregon tort law.

[61] Stay Motion at 2.

[62] UPM imagines that Digicel-Haiti would be unhappy at having to wait until the FCC proceedings were complete to see if it can continue with its fraud claim, and UPM sympathizes with that concern. Unlike UPM's concerns about delay, however, as the party seeking the primary jurisdiction stay, Digicel-Haiti cannot be heard to complain about delay necessarily attendant on the relief that it, itself seeks.

Page 18 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

to dismiss Digicel-Haiti's fraud claim. If the Court grants that motion, while UPM still opposes the primary jurisdiction stay for the reasons stated herein, the peculiar unfairness of permitting that claim to proceed next month, while UPM's intimately related Communications Act claim is deferred for years, would be eliminated.

## III.  CONCLUSION

The Court should deny Digicel-Haiti's motion for a primary jurisdiction say. If the Court is nonetheless inclined to grant such a stay, then – and if Digicel-Haiti's remaining fraud claim is not dismissed on summary judgment, as it should be – then the stay must apply to that fraud claim as well, because that claim will become moot if UPM prevails at the FCC. In that case, the only matters to be tried in November will be UPM's state law counterclaims.

Dated: October 3, 2022.

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    *(Admitted Pro Hac Vice)*
    Katherine Sheriff
    katherinesheriff@dwt.com
    Telephone: (202) 973-4200

Of Attorneys for Defendants / Counterclaim Plaintiff

Page 19 – UPM'S OPPOSITION TO MOTION TO STAY
DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION
OF ISSUES ARISING UNDER THE COMMUNICATIONS
ACT OF 1934, AS AMENDED
UPM-L1\00687265.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2022, I served the foregoing **UPM'S OPPOSITION TO MOTION TO STAY DEFENDANT'S COUNTERCLAIMS PENDING RESOLUTION OF ISSUES ARISING UNDER THE COMMUNICATIONS ACT OF 1934, AS AMENDED** on the following individuals by electronic service to said individuals:

| | |
|---|---|
| Robert C.L. Vaughan | Anne M. Talcott |
| Cherine Smith Valbrun | Kathryn E. Kelly |
| Leah Storie | Andrew J. Lee |
| Anisha Carla Atchanah | Schwabe, Williamson & Wyatt, PC |
| Kim Vaughan Lerner LLP | Pacwest Center |
| One Financial Plaza | 1211 SW 5th Ave., Suite 1900 |
| 100 SE Third Avenue • Suite 2001 | Portland, OR 97204 |
| Fort Lauderdale, FL 33394 | Email: atalcott@schwabe.com |
| Email: rvaughan@kvllaw.com | Email: kkelly@schwabe.com |
| Email: cvalbrun@kvllaw.com | Email: ajlee@schwabe.com |
| Email: lstorie@kvllaw.com | |
| Email: aatchanah@kvllaw.com | |

Kent D. Bressie
HWG LLP
1919 M Street N.W., Suite 800
Washington, D.C. 20036
Email: kbressie@hwglaw.com

Dated: October 3, 2022.

TOMASI BRAGAR DUBAY                DAVIS WRIGHT TREMAINE LLP

By: /s/ Eleanor A. DuBay_____
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

By: /s/ Christopher W. Savage_____
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    *(Admitted Pro Hac Vice)*
    Katherine Sheriff
    katherinesheriff@dwt.com
    Telephone: (202) 973-4200

Of Attorneys for Defendants / Counterclaim Plaintiff