IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A., d/b/a DIGICEL HAITI**,<br><br>    Plaintiff,<br><br>v.<br><br>**UPM TECHNOLOGY, INC.,** *et al.*,<br><br>    Defendants. | Case No. 3:15-cv-185-SI<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

Before the Court are several motions. First, Defendants and Counterclaim-Plaintiffs UPM Technology, Inc. and Duy "Bruce" Tran (collectively, UPM) argue that Plaintiff and Counterclaim-Defendant Unigestion Holdings, S.A., doing business as Digicel-Haiti (Digicel-Haiti), has not produced evidence showing that Digicel-Haiti was harmed by UPM's conduct or has suffered awardable damages. ECF 398. Second, UPM seeks summary judgment on its counterclaims alleging that Digicel-Haiti violated the Communications Act of 1934[1] under regulations issued by the Federal Communications Commission (FCC). ECF 386. Third, Digicel-Haiti has moved to stay UPM's counterclaims, pending the FCC's resolution of certain issues

---

[1] 47 U.S.C. §§ 151, *et seq.*

PAGE 1 – ORDER

under the Communications Act. ECF 421. Fourth, UPM has moved *in limine*, seeking evidentiary rulings related only to its Communications Act counterclaims. ECF 438.

## A. Fraud Claim

One of the elements a plaintiff must show to prove a claim for fraud under Oregon common law is damage causally linked to the alleged fraudulent conduct. *Strawn v. Farmers Ins. Co.*, 350 Or. 336, 351-52 (2011). UPM makes several arguments challenging Digicel-Haiti's proof of damages and causation. First, UPM asserts that Digicel-Haiti failed to present evidence showing that customers who made calls from the United States to Haiti through UPM's less expensive bypass service would have otherwise placed those calls through Digicel-Haiti's more expensive international routing. On this point, UPM argues that other bypass services likely would have prevented Digicel-Haiti from connecting those calls through its more expensive routing. Second, UPM asserts that Digicel-Haiti could have mitigated losses by charging more for calls that it identified as bypass, which the record shows it can do. Third, UPM argues that Digicel-Haiti has not provided evidence showing that UPM's alleged use of "Human Behavior Software" (HBS) succeeded in evading Digicel-Haiti's proprietary bypass-identifying system.[2] Fourth, UPM asserts that Digicel-Haiti's calculation of damages is too speculative to present a genuine dispute over whether Digicel-Haiti suffered harm from UPM's bypass activities. UPM points to Digicel-Haiti's lack of business records for the relevant period and its damages expert report, which was not yet been substantively updated after the Court limited the issues in this case to Digicel-Haiti's claim of fraud by active concealment through the use of HBS.

---

[2] UPM denies that it used HBS but makes this argument on the assumption, at least for purposes of its pending motion, that it did.

During oral argument, the Court scheduled a *Daubert*[3] hearing for October 27, 2022 to consider UPM's objections to Digicel-Haiti's damages expert. ECF 423, at 105 (Tr. at 105:20-21). Counsel for Digicel-Haiti also stated that he had not filed an amended expert report on damages because of a misunderstanding of the Court's case management civil trial order. ECF 423 at 111 (Tr. at 111:10-21); *see also* ECF 383 (case management order); ECF 384, at 19-20 (Opinion and Order establishing additional case management scheduling). The Court then allowed Digicel-Haiti to file an updated expert report by October 4, 2022. ECF 423, at 112 (Tr. at 112:2-4); *see generally* ECF 423, at 111-23 (Tr. at 111-23) (discussing extension of amended expert report deadline). The Court also clarified that UPM may challenge Digicel-Haiti's expert during the scheduled *Daubert* hearing to avoid the expense of deposing that expert a second time. ECF 423, at 122-23 (Tr. at 122:22-25, 123:1-6).

Based on the upcoming *Daubert* hearing and the possible receipt of an amended expert report from Digicel-Haiti, the Court denies UPM's motion on causation and damages. These issues may be revisited at or after the *Daubert* hearing or at trial.

**B. Communications Act Counterclaim**

UPM countersued Digicel-Haiti, alleging that it violated the Communications Act with respect to its "Roam Like You're Home" (RLYH) service. UPM argues at summary judgment that Digicel-Haiti is a "common carrier" within the meaning of the Communications Act, and thus Digicel-Haiti violated the FCC's ban on resale restrictions by canceling (or deactivating) UPM's SIM cards that it used for bypassing Digicel-Haiti's international routing. Digicel-Haiti responds that it is a "foreign carrier" under United States law, not a "common carrier," and thus the FCC's resale ban does not apply to the facts alleged in this case. In the alternative, Digicel-

---

[3] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Haiti requests that the Court stay the counterclaims so that the parties may request resolution of these questions by the FCC.

UPM's Communications Act counterclaims raise questions the answers to which carry implications beyond the boundaries of this case. For example, a foreign carrier is one who engages with the United States' telecommunications infrastructure "*solely through physical connection* with the facilities of another carrier." 47 U.S.C. § 152(b)(2) (emphasis added). The parties dispute whether Digicel-Haiti marketed its RLYH service to United States-based customers and, if it did, whether that marketing activity qualifies Digicel-Haiti as a common carrier. Case law and FCC guidance on this topic is sparse and difficult to analogize.[4] Similarly, it is unclear how the FCC would apply its fifty-year-old ban on common carriers restricting the resale of their telecommunications services to the circumstances here.[5]

The primary jurisdiction doctrine exists for precisely these situations, where "a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) (quotation marks omitted). This doctrine ensures "a workable relationship between the courts and administrative

---

[4] *See, e.g.*, *Comtronics, Inc. v. P.R. Tel. Co.*, 553 F.2d 701, 706-07 (1st Cir. 1977) ("Congress in 1934 perceived 'connecting' carriers as weak rural exchanges" but "[i]n the four decades since the Communications Act was passed, 'connecting' carriers have come to include [large enterprises]. . . . It is for Congress, however, and not for this Court, to rewrite the statute to reflect changed circumstances.").

[5] Long ago the FCC stated its position that common carriers of telecommunications services may not ban the resale of those services. *Resale & Shared Use of Common Carrier Servs. & Facilities*, 60 F.C.C. 2d 261 (1976) (Resale Rules). Four years after the FCC promulgated the Resale Rules, it issued a notice of proposed rulemaking regarding the resale of international communication services. *Reg. Policies Concerning Resale & Shared Use of Common Carrier Int'l Commc'ns Serv's*, Notice of Proposed Rulemaking, 77 F.C.C. 2d 831 (1980). The proposed rulemaking, however, never came to fruition. *See Comprehensive Examination of U.S. Reg. of Int'l Telecomm. Serv's*, 58 F.R. 4846, 4850-51 (1993).

agencies" when the former lacks the expertise and policymaking directives of the latter. *See MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1105 (3d Cir. 1995). It is a "prudential doctrine" up to the Court to invoke, heeding the parties' arguments but not relying on them. *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 760-62 (9th Cir. 2015).

There is no "fixed formula" for deciding whether or when to invoke primary jurisdiction, but courts in the Ninth Circuit consider four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d, at 781. The first, second, and third factors support invoking primary jurisdiction. Resolving UPM's counterclaim requires analyzing what the FCC means by "foreign carrier" and whether the Resale Rules apply to Digicel-Haiti's conduct. The FCC is an agency with broad authority over several industries. Judicial interpretation could introduce confusion or discord into the FCC's regulatory scheme.

Considering the fourth factor, the issues raised in UPM's Communications Act counterclaims are technically complex and likely applicable to all international providers who offer roaming programs in the United States. The FCC has expertise and the ability to apply that expertise uniformly. UPM argues that the FCC's expertise is not "required." The fourth factor, however, asks if the "comprehensive regulatory authority" established by the agency demands expertise and uniformity, not whether the issue before the Court requires that expertise. *See Verizon Nw., Inc. v. Portland Gen. Elec. Co.*, 2004 WL 97615, at *5-6 (D. Or. Jan. 13, 2004). In any event, the Court disagrees with UPM's assertion that this case involves only straightforward statutory interpretation and clear analogues to precedent.

In weighing these factors against UPM's need for prompt resolution, the Court concludes that it is appropriate to invoke primary jurisdiction. "Efficiency is the deciding factor in whether to invoke primary jurisdiction." *Astiana*, 753 F.3d, at 760 (quotation marks omitted). Efficiency counsels against "undue delay." *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019). Delay is warranted, however, when the Court risks misjudging how an agency would decide a fundamental question. Whether providers like Digicel-Haiti are common carriers with respect to their international roaming services rises to that level.

In response to Digicel-Haiti's motion to stay, UPM also argues that the FCC's resolution of its Communications Act counterclaims may "moot" Digicel-Haiti's fraud claim. UPM asks that the Court therefore also stay the fraud claim if it invokes primary jurisdiction and stays UPM's counterclaims. The Court previously *sua sponte* bifurcated UPM's counterclaims from Digicel-Haiti's fraud claim on January 18, 2022. The Court also stayed trial on UPM's counterclaims until the conclusion of trial on Digicel-Haiti's fraud claim. ECF 294, at 37-39 (Opinion and Order). UPM did not object. *Id.*

UPM's arguments do not persuade the Court that invoking primary jurisdiction imposes any new or undue hardship on UPM.[6] Indeed, receiving a decision from the jury on whether UPM has committed fraud against Digicel-Haiti by engaging in active concealment through the use of HBS may inform the questions that the FCC will address in considering the Communications Act issues raised in UPM's counterclaims.

---

[6] If UPM is wary of suffering economic injury from the outcome of the trial on Digicel-Haiti's fraud claims before the FCC resolves UPM's Communications Act counterclaims, the Court notes that Digicel-Haiti may not execute on a jury verdict alone. The Court will hear from both sides before deciding whether to enter a partial judgment under Rule 54(b) of the Federal Rules of Civil Procedure or to await a ruling from the FCC before entering a complete and final judgment in this case.

## CONCLUSION

The Court DENIES Defendants' Motion for Judgment as a Matter of Law–Causation and Damages (ECF 398). The Court GRANTS Digicel-Haiti's Motion to Stay Defendants' Counterclaims Pending Resolution of Issues Arising Under the Communications Act of 1934 (ECF 421). The Court STAYS all counterclaims asserts by UPM pending resolution by the FCC of the Communications Act issues raised in UPM's Communications Act counterclaims. The Court also DENIES WITHOUT PREJUDICE both UPM's Motion for Summary Judgment–Communications Act (ECF 386) and UPM's Motions *in Limine* (ECF 438), with leave to renew after the FCC proceedings have been completed. The parties are directed to file a joint status report promptly after a decision by the FCC that materially affects these issues or by April 5, 2023, whichever occurs first. Trial on Digicel-Haiti's fraud claim based solely on active concealment by using HBS remains set for trial on November 14, 2022. The *Daubert* hearing to consider Digicel-Haiti's expert damages testimony remains set for October 27, 2022, at 11:00 a.m.

**IT IS SO ORDERED.**

DATED this 4th day of October, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge