**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
**Cherine Smith Valbrun** *(Pro Hac Vice)*
E-mail: cvalbrun@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL  33316
Telephone: 954.527.1115
Facsimile: 954.527.1116

**Kent D. Bressie** (*Pro Hac Vice*)
Email: kbressie@hwglaw.com
HWG LLP
1919 M Street N.W., Suite 800
Washington, D.C.  20036
Telephone:  202.730.1337
Facsimile:  202.730.1303

(Additional counsel shown on signature page.)

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a foreign corporation, d/b/a Digicel Haiti*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A.** d/b/a **DIGICEL HAITI,**<br><br>    Plaintiff and Counterclaim Defendant,<br><br>  vs.<br><br>**UPM TECHNOLOGY, INC., et al.,**<br><br>    Defendants and Counterclaim Plaintiffs. | Case No. 3:15-cv-00185-SI<br><br>**PLAINTIFF UNIGESTION HOLDINGS, S.A.'S AMENDED PHASE I EXPERT WITNESS STATEMENTS** |

PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
AMENDED PHASE I EXPERT WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Pursuant to the Court's Trial Management Order dated September 9, 2019 (ECF 191), and Order dated September 14, 2022 (ECF 420), Plaintiff Unigestion Holdings, S.A., d/b/a Digicel Haiti ("Digicel Haiti") submits its amended Phase I expert witness statements and exhibits attached thereto. As stated in Digicel Haiti's Complaint[1] and confirmed by UPM,[2] UPM's bypass operations against Digicel Haiti includes the use of HBS. However, in light of the Court's recent rulings, Digicel-Haiti attempts to highlight facts regarding HBS, which is part and parcel of UPM's bypass operations.

### 1.    **Charles Castel**

A.    Digicel Haiti will rely on the expert testimony of Charles Castel who will testify regarding Digicel Haiti's damages resulting from bypass and in particular bypass enhanced by HBS. Digicel Haiti incorporates by reference Mr. Castel's amended supplemental expert report which he will testify consistent with and which is attached hereto as Exhibit A. As outlined in the qualifications, opinions, and the facts and data sections in his detailed report, Mr. Castel intends to testify about the following:

B.    Mr. Castel will describe his education and relevant professional background, which includes a Master's degree in Economics and LLM from Columbia, his affiliation with the Haitian Association of Economics (including publishing of multiple articles in its journal), and expertise in regulatory law generally (including 20 years working as a regulator at the Central Bank of Haiti). He will detail his eight years of experience on the boards of two telecom operators in Haiti where he addressed, among other things, bypass operations, including those where the use of HBS to

---

[1] *See* Digicel Haiti's Third Amended Complaint para. 46-47.

[2] *See eg.* at Dep. Tr. of UPM's Corporate Representative, Bruce Ngoc Quang Tran, at 552:8-11 (October 26, 2021) (ECF 271-2 at pg. 5 of 8).

Page 1 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I EXPERT WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

enhance the anti-fraud detection capabilities of bypass was suspected and/or confirmed. Additionally, he will describe some of the literature he reviewed concerning bypass with and without HBS.

C.      Mr. Castel will describe the harm caused by bypass in any form to local telecom companies, to users and to the telecommunication system of the nation as a whole.  He will testify that in coming to his opinion he considered and relied upon several articles addressing the efforts regulators have and are employing in Haiti and other geographic regions to combat bypass.  He will discuss the impact of HBS on combatting bypass and the added costs (damages) incurred as a result of HBS enhancements to bypass.

D.      Consistent with his deposition on October 21, 2021, Mr. Castel will testify that bypass, including HBS enhanced bypass, is classified as fraud by global telecommunications regulators, including Haitian regulators and in telecommunications literature because by its very nature bypass misrepresents an international call so that it appears to be an individual local call conducted by a legitimate single user.

E.      He will explain how using HBS enhanced bypass to further misrepresent the nature of incoming calls by mimicking human use of a SIM card—specifically by varying the time of day the SIM is used, the duration of use and often misrepresenting the geographic location of the call with the goal of disguising the bypass call as an individual local call to avoid detection by the local telecom carrier and payment of the long distance termination fee—bypassers significantly increase the lifespan and minutes completed by each SIM card before detection.  This significant increase in use from each SIM card, increases the revenues to the bypasser and the damages to Digicel Haiti.

Page 2 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
             AMENDED PHASE I EXPERT WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

F.      From his many years working in the telecommunications industry, supplemented by his review of the literature on bypass operations, Mr. Castel will testify that bypass operators disguise or misrepresent incoming international calls aggregated in their SIM servers as individual local calls to pay lower termination fees than what the local telecom carrier is entitled to receive for the termination of international calls.  He will explain that in so doing, the bypassers retain a larger share of the call charge for themselves.

G.      Further, Mr. Castel will testify that HBS enhanced bypass is used to: misrepresent the calls as individual calls to avoid detection of the bypass operation; avoid deactivation of offending SIMs, as well as to avoid the risk of seizure of equipment, and in some cases arrest and prosecution of the bypass operators by local law enforcement.  He will explain generally how HBS enhanced bypass results in the local telecom carrier losing the legitimate international termination revenue to which it is entitled and instead receives compensation for local calls only when an international call is smuggled unto the target's local network using HBS enhanced bypass.  He will further explain that the damages to Digicel Haiti go beyond loss of revenue for the international calls, but also more likely than not, include adverse effects to Digicel Haiti's network capacity, general call quality, and overall reputation in the market.

H.      Mr. Castel will testify that in general, telecom carriers are losing approximately 20 percent of their total revenue in large part due to bypass operations.  He will explain that the targets are typically in developing countries where the gap between local and international termination rates is high.  He will testify that he estimates that Digicel Haiti specifically, lost between 18 and 27 percent of its international incoming call revenue due to bypass and bypass related activities. In particular, he has reviewed and is familiar with Digicel Haiti's publicly disclosed financial

Page 3 -     PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I EXPERT WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

records which suggest a loss of revenues between 18-27 percent of international incoming call revenue during 2011 to 2015 that he concludes is attributable in large part to bypass activities.

I.      Mr. Castel will testify that he considered the nature, size, capability and complexity of equipment actually seized from UPM at a single site as was reported by the press with regard to one publicly reported law enforcement raid in Haiti to make his initial calculation of the damages.  In completing his analysis, Mr. Castel used only the capacity of the equipment seized in a single raid from which Digicel Haiti more likely than not suffered from lost international termination fees due to UPM's use of one bypass SIM box.

J.      Mr. Castel will then explain to the jury that he limited his analysis and calculations to a single site—understanding that it is more likely than not, that UPM had multiple bypass sites operating at the same time.  He will explain that from a single site, UPM reportedly had the capacity to transmit 400 calls simultaneously using HBS enhanced bypass based on the size and complexity of the equipment that was seized.  He will explain that he employed several limiting assumptions to his analysis of the single site capacity, including: (1) assuming that the full 400 call capacity was not maximized but rather that the site operated at an average of approximately 80% capacity or 320 simultaneous calls; (2) assuming that the site was not operated full time but that operations at any single site were limited to an average of 14 hours per day.  He will further explain that these assumptions are reasonable and appropriate based upon economic assumptions about a rationale economic actor incentivized to maximize profit as well as his assumption of technical capabilities based upon the report of the technical expert Ken McEwen.  Mr. Castel will further explain his assumptions as consistent with his report.

K.      By applying his experience in the telecom industry and the literature he reviewed, he will testify that UPM more likely than not had multiple sites and had the capacity to far exceed

Page 4 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
AMENDED PHASE I EXPERT WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

the capacity he assumed for his damages analysis.  He will explain that his assumption of one site for damages is extremely conservative since it was also assumed that UPM used HBS to manage deployment of multiple bypass sites in Haiti and was operating additional sites beyond the one detected. Moreover, consistent with his expert report (and with the added detail provided there), Mr. Castel will explain that based on his experience in the telecommunications industry and his research concerning HBS enhanced bypass, the assumption that UPM was utilizing approximately 80% of its circuits for fourteen hours a day on average for 20-27 months is entirely reasonable considering that he utilized only one site for his analysis.

L.      He will also explain that the periods of time utilized for his damages calculations (20, 22 and 27-months), are conservatively based on the periods of activity that correspond to evidence that UPM was present or active in bypass in Haiti and with periods when the average traffic registered by Digicel Haiti was noticeably lower than its historical average termination of international call minutes even when adjusted for seasonal variances.

M.      He will explain that the fact that he limited his damages analysis to a single site, mitigates against any deviation in fact which would result in lower actual utilization of capacity or estimated traffic in terms of hours per day.

N.      Mr. Castel will testify that he further discounted his estimate of UPM's windfall and Digicel Haiti's losses and did not quantify myriad other damages caused by UPM's HBS enhanced bypass, including damage to Digicel's reputation in the community, because the quality of international calls and service to its customers was more likely than not degraded due to UPM's bypass activities.

O.      Mr. Castel will testify that UPM's bypass adversely affects the quality of the call for the user including by eliminating the caller identification feature.  This impact alone reduced

Page 5 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I EXPERT WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

the caller/client experience for Digicel Haiti customers and likely impacted pickup and answer rates for many calls which arrived without necessary, recognizable identification information for the recipient to identify the incoming call and decide to accept it.

P.      Mr. Castel will outline that in calculating Digicel Haiti's damages, he reviewed Digicel Haiti's financial losses due to bypass as a function of its published Earnings Before Interest Taxes Depreciation and Amortization ("EBITDA"); its total publicly disclosed revenues; and, as a function of its total international incoming call revenue.

Q.      He will explain that from 2013 to 2015, bypass related losses represented between 18.5% to 27.2% of Digicel Haiti's total international incoming call revenues.  During that same period, he will confirm that Digicel Haiti's bypass related losses consistently represented between 9.8% and 9.9% of its EBITDA and between 4.2% and 4.6% of Digicel Haiti's total revenue.

R.      Mr. Castel will confirm that while Digicel Haiti's losses due to bypass approximated $22 million USD per year, during that same time UPM's capacity—*at a single site*— also averaged approximately $21 million USD.

S.      He will testify that when his damages calculations are compared to UPM's analysis regarding its own projected "capacity" and the potential for available termination, and applying $0.23 (instead of $0.10), Digicel-Haiti's damages calculations are a reasonable approximation of its losses due to UPM HBS enhanced bypass.

T.      Digicel Haiti expects direct examination to take approximately 3 hours.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

2.    **Philip Cross**[3]

A.    Digicel Haiti will rely on the rebuttal expert testimony of Philip Cross who will testify regarding the legality and international standard related to bypass.  Mr. Cross is being included in an abundance of caution due to the uncertainty of whether Defendants will be permitted to use the legal theories of their counterclaims as defenses to Plaintiff's fraud claim.  Mr. Cross's qualifications, the substance of his opinions, and the facts and data upon which he relied are provided in the form of his expert report, which he will testify consistent with and which is attached hereto as Exhibit C. Digicel Haiti expects direct examination to take approximately 3 hours.

3.    **Kenneth McEwen**

A.    Digicel Haiti will rely on the expert testimony of Kenneth McEwen who will testify regarding the type of equipment and technology typically used in bypass operations, the utilization of Human Behavior Simulation ("HBS")[4], and the impact of HBS when used for bypass on local telecom providers such as Digicel Haiti who are the targets of bypass.  Digicel Haiti incorporates by reference Mr. McEwen's expert report (which is being filed under seal pursuant to the protective order and filed consecutively herewith as Exhibit B).

B.    Mr. McEwen will also explain that he is a network consulting engineer who has worked for almost 40 years in voice and data transmission with various technologies, transmission

---

[3] Pursuant to the Court's Order [ECF 384], this filing is limited to Phase I.  Philip Cross was Plaintiff's Phase II expert or potential rebuttal expert (to the Defendants' affirmative defenses that overlap with UPM's Counterclaims).  The Court has stayed Phase II pending resolution by the FCC of issues arising under the Communications Act of 1934 [ECF 442].  As such, Plaintiff reserves the right to supplement its expert statement, if necessary, after a decision by the FCC and UPM's filings in relation to Phase II.

[4] HBS is effectuated through the use of HBS software. For the purpose of this filing, both terms are used interchangeably as "HBS" unless otherwise specified.

Page 7 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I EXPERT WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

models and methods around the world.  In addition to developing and supporting routing systems, he has specific experience in investigating fraud through bypass, including bypass that has been enhanced through the use of HBS at all stages of bypass operations.  He is knowledgeable about the types of HBS used to conduct bypass, the purpose of HBS, how HBS is used in the various stages of a bypass operation, how its use can be detected, the characteristics of HBS technology employed to avoid detection, and the impact of using HBS enhanced bypass to target local telecom providers such as Digicel Haiti.  He will describe how using HBS at the various stages of bypass operations, makes detecting bypass and equipment and SIMS used in bypass, harder to detect and intercept.

C.      Mr. McEwen will generally describe the relevant terms that are expected to be used throughout the technical description of the dispute.  He will outline the technical parameters of the dispute and orient the jury and the Court to the technical nature of the issues in dispute including a general description of relevant concepts such as wireless, SMS cellphone, landline, data and cross border telecommunications.  He will generally describe SIM Cards, SIM Servers, SIM boxes, Gateways and other components necessary to understanding the dispute.

D.      He will generally describe the evolution of "bypass" and the role bypass plays in driving the development and evolution of various types of "anti-fraud" sectors in the telecommunications industry.

E.      Mr. McEwen will describe generally the completion of traditional and roaming calls which are intended for termination on the Digicel Haiti local network.  He will describe the process generally and explain in basic terms the technical components or "anatomy" of a completed call.  He will explain, in general terms, the various components of a call, the various

Page 8 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
                  AMENDED PHASE I EXPERT WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

inputs along the path and generally how a call makes it from the originating radio unit (cellphone) to the recipient radio unit (receiving cell phone).

F.      Mr. McEwen will outline generally how "roaming" works and the basic anatomy of a roaming call to the extent it is different from a call originated from a non-roaming cell phone subscriber.

G.      He will explain generally what is "bypass" and different types of bypass including what has come to be described as "in-country" bypass and "RLYH bypass" in this case.  He will explain the technical components of both types of bypass and the technical side of the bypass business model.

H.      He will explain the assumptions that he has made about the UPM business model based upon the record evidence established in this case and explain the technical aspects of UPM's Haiti bypass operation and the estimated calling capacity of UPM's Haiti operations based upon those assumptions and record evidence.

I.      Consistent with his deposition on October 13, 2021, Mr. McEwen will testify that all modern telecommunications systems are technologically capable of transmitting Calling Line Identification ("CLI") to identify the call originator.  He will testify that while it is of course possible for a manufacturer to manufacture a gateway or switch or other telecommunications device with the CLI feature disabled, the capability would still exist as part of the protocol used to connect to the network based on the SIM card utilized and the connection to the carrier.  SIM cards have CLI capability built into them.  When bypass is used (especially with HBS) CLI is omitted or dropped from the call leaving the local telecom provider unable or precluded from identifying whether the call is international or local.

Page 9 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I EXPERT WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

J.      Mr. McEwen will also testify that HBS is a term used to describe different types of software that serve as the "brains" of the SIM Servers and Gateways used in bypass. HBS is used by bypass operators at all stages of a 'bypass transaction' to disguise the perpetrators' automated use of SIMs in their systems to present calls with characteristics consistent with individual users to avoid detection by local telecom providers who consistently monitor for and halt use of bypass in any form as it avoids payment to the local telecom provider of the appropriate long distance termination fee. More specifically, use of HBS allows bypassers to activate and "top-up" SIM cards used in bypass in an aggregated format rather than one SIM at a time, but also where the Servers are programmed to only top up SIMs in amounts, and at times, and in frequencies, that do not raise suspicion. HBS is also used to effectuate the virtual registration and movement of SIM cards with the target network; hide the true nature of the bypass call such that it appears to be an individual call and not one being generated by an aggregating SIM server; manage credit balances and recharges; detect and monitor blocking attempts by the target; service whitelists and blacklists to avoid bypass detection; and simulate randomized SIM card profiles including mimicking in Server dummy calls to simulate receipt of [fake] calls. By using HBS to alter the frequency a SIM is used, the time of day a SIM is used, the geographic location the SIM appears to be originating from, modifying duration of the calls conducted on a SIM to mimic the typical use a human would employ, with varying call lengths and locations, and randomizing the manner of use, HBS is used to create a more "human-like" profile for the SIM.

K.      He will explain how the use of HBS enhanced bypass presents a long-distance call as a local call to telecom providers like Digicel Haiti, resulting in charging of the local rather than the long-distance termination fee. Additionally, he will explain how the use of HBS software in bypass detrimentally affects the network by increasing the number of calls, the duration of each

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

call and distorts the distribution of the calls resulting in the degradation of service to the ultimate users.  Even one HBS enhanced bypass call will detrimentally affect the network.

L.      He will testify that although the most commercially profitable configuration would be to use all of the available GSM module resources 100 percent of the time, in practice, the number of SIMs in simultaneous use for active calls is approximately 80% of the total available GSM modules within all the gateways.

M.      Mr. McEwen will testify that local telecom providers, including Digicel Haiti, utilize technology to attempt to detect and neutralize HBS enhanced bypass. Mr. McEwen will testify, however, that combatting bypass is like a telecommunications "arms race" and that as technology evolves to detect bypass, bypass operators evolve their technology to avoid detection.

N.      Finally, Mr. McEwen will describe the concept of encapsulation and how bypassers use technology to "encapsulate" or package two calls together to avoid the detection and charges associated with terminating an international call.

O.      Digicel Haiti expects direct examination of Mr. McEwen to take approximately 3 hours.

Dated this 4th day of October, 2022.

Respectfully submitted,

By:      *s/ Robert C.L. Vaughan*
Anne M. Talcott, OSB #965325
Email:  atalcott@schwabe.com
Kathryn E. Kelly, OSB #175162
Email:  kkelly@schwabe.com
Andrew J. Lee, OSB #023646
Email: ajlee@schwabe.com
Sarah Kobak, OSB #043495
Email: skobak@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
Telephone:  503.222.9981
Facsimile:  503.796.2900

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Robert C. L. Vaughan (*Pro Hac Vice*)
Email:  rvaughan@kvllaw.com
Cherine Smith Valbrun *(Pro Hac Vice)*
Email:  cvalbrun@kvllaw.com
Leah B. Storie *(Pro Hac Vice)*
Email:  lstorie@kvllaw.com
Anisha Carla Atchanah
Email: Aatchanah@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL  33316
Telephone:  954.527.1115

Kent D. Bressie (*Pro Hac Vice*)
E-Mail: kbressie@hwglaw.com
HWG LLP
1919 M Street N.W., Suite 800
Washington, D.C.  20036
Telephone:  202.730.1337
Facsimile:  202.730.1303

*Attorneys for Plaintiff*

Page 12 -   PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I EXPERT WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

PDX\AMT\34885729.1