**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Facsimile: 503.796.2900

**Robert C. L. Vaughan** (*Pro Hac Vice*)
E-mail: rvaughan@kvllaw.com
**Cherine Smith Valbrun** *(Pro Hac Vice)*
E-mail: cvalbrun@kvllaw.com
KIM VAUGHAN LERNER LLP
312 SE 17th Street, Suite 300
Fort Lauderdale, FL  33316
Telephone: 954.527.1115
Facsimile: 954.527.1116

**Kent D. Bressie** (*Pro Hac Vice*)
Email: kbressie@hwglaw.com
HWG LLP
1919 M Street N.W., Suite 800
Washington, D.C.  20036
Telephone:  202.730.1337
Facsimile:  202.730.1303

(Additional counsel shown on signature page.)

*Attorneys for Plaintiff, Unigestion Holdings, S.A., a foreign corporation, d/b/a Digicel Haiti*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDINGS, S.A.** d/b/a **DIGICEL HAITI,**<br><br>Plaintiff and Counterclaim Defendant,<br><br>vs.<br><br>**UPM TECHNOLOGY, INC., et al.,**<br><br>Defendants and Counterclaim Plaintiffs. | Case No. 3:15-cv-00185-SI<br><br>**PLAINTIFF UNIGESTION HOLDINGS, S.A.'S AMENDED PHASE I AMENDED LAY WITNESS STATEMENTS** |

PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
AMENDED PHASE I LAY WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Plaintiff, Unigestion Holdings, S.A., d/b/a Digicel Haiti, ("Digicel Haiti"), submits its list of lay witnesses to be called, in alphabetical order by last name, as follows:

**A. Tyler Allen**
**Occupation:** SQC Technician
**Estimated Length of Direct Testimony:** TBD
**Substance of Testimony:**

Mr. Allen has been employed by UPM Technology, Inc. ("UPM") since June 1, 2009, and holds the position of SQC Technician.  Mr. Allen will explain his experience working with UPM including the shipping and testing of equipment and ensuring equipment functions properly. He will explain how VoIP bypass works generally and how it was employed by UPM. Mr. Allen will testify about his knowledge of UPM's operations in Haiti between 2011 through 2015, including SIM management and UPM's instructions contained in the shipping standard operating procedures. He will describe the responsibility of reviewing shipping documents to avoid licensing charges and other obligations related to retail or commercial restrictions. Mr. Allen will discuss his experience with rejected and/ or confiscated equipment, and the instruction he received at UPM to avoid using any names that might identify UPM on shipped items such as "UPM", "Upmtelecom", "upmtelecom.net", and "Pennydial" as stated in the UPM Shipping Standard Operating Procedures.

As an employee in the shipping department of UPM, Mr. Allen has knowledge of and will testify about the telecom company, Digicel, blocking SIMs used by UPM in Bypass during UPM's time in Haiti during 2011 through 2015.  Mr. Allen will also testify regarding documents and communications that he received or is copied on which are exhibits in this case.

Mr. Allen will also provide the testimony identified in the Plaintiff's deposition designations filed with the Court.

Page 1 -     PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
             AMENDED PHASE I LAY WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

**B. Maarten Boute**
   **Occupation:** CEO and Chairman of Digicel Haiti
   **Estimated Length of Direct Testimony:** TBD
   **Substance of Testimony:**

Mr. Boute will testify regarding how Digicel Haiti distributes SIM cards for sale, including the terms and conditions Digicel Haiti imposes on SIM card purchasers, how those terms and conditions are conveyed to customers, why they are imposed, and how Digicel Haiti tries to enforce those terms and conditions. He will discuss how Haitian law regulates Digicel Haiti's operations and the regulations of the use, sale, and distribution of SIM cards which are subject to Digicel Haiti's terms and conditions. He will confirm where and how the consumer can find the SIM terms and conditions that are available online and in stores.

He will testify about Digicel Haiti's tracking and record keeping of sold SIM cards, activation of SIM cards in Digicel Haiti's network, and generally, balances on prepaid SIM cards. He will discuss the various methods available for consumers to top-up/recharge SIM cards including the purchase of a scratch card from the possible thousands of street sellers, several agent locations, or online purchasing options. He will also discuss online platforms which are branded Digicel and explain what is available to customers online, as well as explain the role of the several independent retailers in the U.S. that sell "top-ups" to the "Haitian diaspora," who desire the ability to make calls back to Haiti. Mr. Boute will also describe the usual processes and opportunities that are obtained when, for example, a family member in the United States wishes to "top-up" or recharge an account of a family member resident in Haiti who is a Digicel Haiti subscriber. He will describe how that money—which is another form of currency remittance to Haiti—eventually results in Digicel Haiti creating an indirect wider social benefit through the telecommunications services provided by Digicel Haiti. Mr. Boute will also discuss his knowledge of Digicel Haiti's

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

systems that record and monitor top-ups, recharges, communications, outgoing and incoming calls, and the locations of mobile antennas, which in turn, allow Digicel Haiti to identify from which sector the call is being made.

Mr. Boute will give a general description of the "Roam Like You're Home" program/service ("RLYH"), including when Digicel Haiti established it, its purpose and limitations and its general terms and conditions for operation and subscription. He will also testify about subscriber enrollment and the process of properly activating a SIM card in RLYH.

Mr. Boute will discuss record keeping for RLYH, including the requirement that an "account" have sufficient available funds to buy a prepaid plan and the process of enrolling a RLYH subscription which ends with the system sending a USSD message confirming enrollment. He will also discuss the record keeping process related to RLYH and its inherent limitations. He will also discuss applicable real time controls on roaming SIM cards that are enrolled in the RLYH program, including their purpose and limitations.

Mr. Boute will also discuss generally, Digicel Haiti's incurred charges for local calls within the United States by someone roaming in the United States, as well as describe how Digicel Haiti charges its end user for making calls from the United States while roaming.

In sum, he will describe the business and contract arrangements that apply to a call *to* a Digicel Haiti subscriber in Haiti, *__from__* a caller in the United States, using a SIM card that is subscribed to RLYH. This includes:

Outlining the RLYH program which allows a Digicel Haiti subscriber to make calls from the United States as if they were calling from within Haiti—charging the equivalent pay-as-you-go local rate for that call, not an out-of-plan or international termination rate.  On this topic, Mr. Boute will discuss, generally:

Page 3 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I LAY WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

i. Charges to the RLYH user by Digicel Haiti;

ii. Charges (if any) to the RLYH user by the Digicel Haiti roaming partner handling the call in the United States;

iii. Charges (if any), in money, set-off, or otherwise, by the roaming partner to Digicel Haiti (such as per-minute roaming fees); and

iv. Charges (if any), in money, set-off, or otherwise, by Digicel Haiti to the roaming partner or other entities (such as the $0.23 per minute fee for terminating the call on Digicel Haiti's network in Haiti).

v. Information about Digicel Haiti's roaming arrangements in the United States, including the economic arrangements associated with netting calls inbound to, and outbound from, Digicel Haiti.

Mr. Boute will testify to the impact of UPM's bypass using the RLYH program, including the resulting limitation imposed on the arrangements between Digicel Haiti's group carrier services team by its United States roaming partners in 2014 to put a cap on the number of minutes Digicel Haiti's roaming SIMs could use host carrier's network, as well as the estimated financial impact this imposed on Digicel Haiti and why Digicel Haiti attributes the impact on the RLYH program to UPM's bypass

Digicel Haiti's Marketing, Sales, Distribution, Advertising, and Similar Activities in the United States

Finally, Mr. Boute will discuss marketing, distribution, and advertising of Digicel Haiti services within or directed to the United States, including top-ups and recharges for Digicel Haiti accounts within Haiti, and the economic impact and overall importance of calls from the United States to Digicel Haiti customers in Haiti.  He will discuss the role played by Digicel Haiti's marketing team and employees as contrasted with the role played by outside contractors or vendors, or by Digicel Haiti affiliates. He will specifically discuss the Digicel Haiti "Diaspora" program described in Digicel Group's Form F-1, dated June 26, 2015, and in Interrogatory No. 12 of UPM's Second Interrogatories to Digicel-Haiti.

Page 4 -     PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I LAY WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

Finally, he will describe Digicel group's activities designed to market services to the varied diaspora in America, promoting the availability of top-ups (remittances) and calling plans to various Digicel markets, including, in particular, Haiti, Jamaica, and El Salvador due to the large Haitian, Jamaican, and Salvadorian diaspora communities in the United States.

**C.    Gerard Pierre Laborde**
     **Occupation:** Legal and Regulatory Director
     **Estimated Length of Direct Testimony:** TBD
     **Substance of Testimony:**

Gerard Pierre Laborde has been employed with Digicel Haiti since 2012 and holds the positions of Legal and Regulatory Director. Mr. Laborde will testify regarding his responsibilities as a regulator overseeing the legal department.

**Digicel Haiti's Distribution of SIM Cards in Haiti, and Its Obligation to Serve the Public.**

Mr. Laborde will discuss the obligations that Digicel Haiti is subject to under its Haitian license, franchise, or other authorization from the Government of Haiti to provide wireless services in Haiti, including its obligation to provide services to the public under practical and economic limitations brought about by recent natural disasters in Haiti.

**Digicel Haiti's Processes for Activating SIM Cards, How SIM Cards are Authenticated When A Call Is Made, and the Technical Process of Call Initiation.**

He will discuss the various methods through which Digicel Haiti allows a holder of a SIM card to register or activate that SIM card on Digicel Haiti's network, including activation over Digicel Haiti's wireless network, over the network of a Digicel Haiti roaming partner, or using Internet sites, web pages, or other online portals.

Mr. Laborde will describe the process of receiving on-net calls on Digicel Haiti's network, the normal course of receiving the calling line identification ("CLI") which comes from the International Mobile Subscriber Identification ("IMSI") or the switch of whoever is calling. He

Page 5 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I LAY WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

will describe how the device receiving the call gets the CLI and relationship to Digicel Haiti's network.

He will also describe and explain how a SIM card authenticates itself on, and initiates a call on, Digicel Haiti's wireless network in Haiti, including the steps discussed in Digicel Haiti's response to Interrogatory No. 12 of UPM's First (revised) Interrogatories to Plaintiff.

a. What information is and can be transmitted from a SIM card to Digicel Haiti's network as part of the SIM card authenticating itself on the network and/or initiating a call on the network.

b. How a Digicel Haiti SIM card authenticates itself on, and initiates a call on, the network of a Digicel Haiti roaming partner in the United States, including the steps discussed in Digicel Haiti's response to Interrogatory No. 12 of UPM's First (revised) Interrogatories to Plaintiff.

c. What information is and can be transmitted from the SIM card to a roaming partner's network as part of authenticating itself on the network and/or initiating a call on the network.

**Detection of "Bypass"/Resale and SIM Card Deauthorization.**

Mr. Laborde will describe, generally, how Digicel Haiti analyzes usage/calling patterns for SIM cards to determine whether a SIM card is being used by an individual for personal use or instead is being used contrary to Digicel Haiti's terms and conditions (as UPM used SIM cards) for resale to third parties ("bypass"), typically through use of Human Behavior Software ("HBS").

He will explain how, using various methodologies, including test call programs and proprietary human behavior algorithms, Digicel Haiti would identify SIM cards being used in bypass—sometimes even being able to confirm through those test calls that calls using those SIM cards did not come through a normal international gateway and were likely using HBS. He will confirm that the Digicel Haiti system flags and interrupts a SIM card once that SIM card is identified as involved with bypass, and explain why Digicel Haiti did so.

Page 6 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I LAY WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Mr. Laborde will describe the system for identifying potential bypass and testify that it was 99.9% accurate at identifying bypass as opposed to misidentifying a standard call as bypass. He will explain the process of identifying, interrupting and confirming whether a SIM card that has been flagged, is actually a "bypass SIM." Mr. Laborde will testify that Digicel Haiti cannot specifically identify a card as belonging to UPM or any other bypasser, and why that is. He will discuss Digicel Haiti's obligation under Haitian law to identify and eliminate bypass, regardless of who the bypasser is.

Mr. Laborde will discuss the role that human intervention or oversight plays in Digicel Haiti deciding to de-authenticate a SIM card and the interplay between the automated processes.

**The Nature, Scope and Timing of Digicel Haiti's Efforts to Identify which Entities Were Engaged in "Bypass"/Resale of Digicel Haiti's Services.**

Mr. Laborde will describe how Digicel Haiti first became aware that UPM was involved in bypass on its network. He will describe, generally, the interactions and engagement with the local regulator, law enforcement, and private investigators in joint operations to identify and dismantle bypass operations generally and with UPM specifically.

Mr. Laborde will describe in particular, the operation that discovered UPM's Bypass involvement in Haiti in July 2014. He will testify that the local Haitian Police commenced operations to identify possible locations or bases of bypass activities. Contemporaneous with the local Haitian Police operations, Digicel Haiti had its own internal investigations of suspected bypass operations by engaging the services of Shields Crime & Security Consultants ("Shields CSC"), in Kingston, Jamaica. The combined investigations of Shields CSC (on behalf of Digicel Haiti) and local Haitian Police, revealed a systematic and ongoing bypass operation coordinated, funded, and conducted by Defendants UPM and Duy Tran. He will testify that the investigation culminated in the arrest of individuals working with Defendants and the seizure of several of the

Page 7 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
            AMENDED PHASE I LAY WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

Defendants' gateways and a cache of Digicel Haiti SIM cards, some of which had already been packaged and addressed for shipment to UPM. He will testify regarding documents related to the arrests and seizure and that SIM cards seized by the local Haitian Police were not "blocked" as alleged by Defendants.

**Financial Impact**

Mr. Laborde will testify regarding Digicel Haiti's internal analysis of international incoming call traffic and the unusual decrease in traffic observed.  He will also testify regarding the Conatel invoices related to said traffic.

Mr. Laborde will describe the substantial financial impact that Digicel Haiti experienced as a result of bypass, the cost that Digicel Haiti incurred to employ various security and testing measures that worked to detect and interrupt illegal bypass.  He will testify regarding the following costs:

| | |
|---|---|
| Test call campaigns: | USD 126,500.00 |
| Investigations on the border | USD   46,000.00 |
| * Losses in regular traffic due to decrease coverage on border: | USD 266,000.00 |

And that in some cases, Digicel Haiti had no choice than to shut down the sector covering the origin of bypass.

**D. Baltazar Ruiz**
   **Occupation:** Industry Technical Specialist, Former Network Operations Center ("NOC") Manager and NOC Engineer
   **Estimated Length of Direct Testimony:** TBD
   **Substance of Testimony:**

Baltazar Ruiz was employed with UPM from 2012 to 2016 and held the positions of Network Operations Center ("NOC") manager and later as a NOC engineer. As a NOC manager at UPM, he supervised approximately 10 employees and managed infrastructure in the data center. Mr. Ruiz will testify regarding UPM Technology Inc.'s ("UPM") facilities used to maintain and

Page 8 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
             AMENDED PHASE I LAY WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

update programs for gateway software deployed in multiple geographic markets targeted by UPM. He will discuss his responsibilities at UPM's international office in Mexico during 2015 through 2016 including software updates, repairs to remote gateways, and managing the IT infrastructure for the data center in the United States. As an NOC manager, Mr. Ruiz monitored gateway performance and quality control of calls.

Mr. Ruiz will testify that UPM used software that was utilized to emulate human behavior so that Digicel Haiti would not be able to identify SIMs being used by UPM for bypass. He will also testify about UPM's hardware working group, project management working group, shipping working group, and SIMs management working group. He will testify that he received guidance and instructions from a leadership team which included Duy Tran, Manual Del Toro, Samuel Del Toro, Jaspaul Gosal, Victor Moscoso, Daniel Yannoucos, and Benjamin Sanchez. Mr. Ruiz will testify about the internal platform created by UPM as a web-based portal to manage and monitor the performance of all gateways in his network. He will describe his experience with UPM's formal business model of including equipment necessary or utilized to terminate calls in international destinations.

Further, Mr. Ruiz will describe his experience with UPM's standard operating procedures and his involvement with testing routes and gateways. Mr. Ruiz will also describe his knowledge of the project in Haiti and UPM's efforts to actively conceal its activities and avoid fraud detection techniques used by carriers such as Digicel. He will testify to how UPM utilizes technology like VPN tunnels to get their traffic into a country without it being detected or intercepted and how bypass access to Digicel Haiti's local network was obtained through Roam Like You're Home pathway to the Digicel network. Mr. Ruiz will also testify regarding communications that he received or is copied on.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

Mr. Ruiz will also provide the testimony identified in the Plaintiff's deposition designations filed with the Court.

**E.    Bruce Ngoc Quang Tran, individually**
**Occupation:** CEO at UPM Technology, Inc.
**Estimated Length of Direct Testimony:** TBD
**Substance of Testimony:**

Bruce Ngoc Quang Tran is the principal of and is employed by all UPM companies, including Xeebi, UPM Solutions, UPM Technology, and UPM Properties Management. As the central figure at UPM, Mr. Tran will testify about his role as CEO, with responsibilities including hiring employees, approving transactions, releasing wire transfers, and controlling and executing the direction of the UPM companies. In 2014, Mr. Tran had approximately 20 GSM gateways in his private residence which were used to route calls through Digicel's Roam Like You're Home and possibly in traditional Bypass. Mr. Tran will testify regarding his communications with Conner Clarke, a former Digicel Haiti employee. He will also testify regarding each exhibit that he is a recipient or creator of.

**F.    Bruce Ngoc Quang Tran, Corporate Representative**
**Occupation:** CEO at UPM Technology, Inc.
**Estimated Length of Direct Testimony:** TBD
**Substance of Testimony:**

Bruce Ngoc Quang Tran is the principal and has been employed with UPM Technology, Inc. ("UPM") since its creation in 2007. Mr. Tran will explain the relationship between each UPM defendant, their operations and years when active. He will also explain UPM's business and infrastructure including its purchasing and reselling of voice airtime. He will discuss the duties of the different departments in the UPM group including project management, network operation center ("NOC"), service quality control, accounting, shipping, which includes production and inventory, operations, research and development, marketing/sales, human resources, and SIM

Page 10 -    PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
             AMENDED PHASE I LAY WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900

management. Mr. Tran will explain the process of identifying locations for a new project and the equipment required to operate from a location including gateways, network cables, batteries, and SIM cards. Further, Mr. Tran will testify about UPM contracting with independent contractors to purchase SIM cards, airtime, internet and provide a location with power in Haiti.

Mr. Tran will confirm UPM's Bypass operations in Haiti and the scope and extent of UPM's international bypass operations including the method of selecting new target markets for Bypass. In the instance of UPM Haiti, Mr. Tran will discuss how UPM identified and selected individuals to acquire SIM cards without regard or research to determine if the SIM cards were legally sold in Haiti.

Mr. Tran will also confirm the success of UPM's overall business model and the meteoric rise of UPM as a local company in Oregon with revenues derived in large part from Bypass.

Mr. Tran will also testify regarding UMP documents and communications.

**G. Record Custodian of DHL**
   **Estimated Length of Direct Testimony:** TBD
   **Substance of Testimony:**

The record custodian of DHL will testify regarding the authenticity of the DHL documents listed on Plaintiff's exhibit list and the facts contained in those documents.

Dated this 4th day of October, 2022.

Respectfully submitted,

By:     *s/ Robert C.L. Vaughan*
        Anne M. Talcott, OSB #965325
        Email: atalcott@schwabe.com
        Kathryn E. Kelly, OSB #175162
        Email: kkelly@schwabe.com
        Andrew J. Lee, OSB #023646
        Email: ajlee@schwabe.com
        Sarah Kobak, OSB #043495
        Email: skobak@schwabe.com
        SCHWABE, WILLIAMSON & WYATT, P.C.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503-222-9981
Fax: 503-796-2900

Telephone:  503.222.9981 Facsimile: 503.796.2900

Robert C. L. Vaughan (*Pro Hac Vice*)
Email:  rvaughan@kvllaw.com Cherine Smith Valbrun *(Pro Hac Vice)* Email: cvalbrun@kvllaw.com
Leah B. Storie *(Pro Hac Vice)* Email: lstorie@kvllaw.com
Anisha Carla Atchanah
Email: Aatchanah@kvllaw.com KIM VAUGHAN LERNER LLP 312 SE 17th Street, Suite 300
Fort Lauderdale, FL  33316 Telephone: (954) 527-1115 Facsimile:  (954) 527-1116

Kent D. Bressie (*Pro Hac Vice*)
E-Mail: kbressie@hwglaw.com HWG LLP
1919 M Street N.W., Suite 800
Washington, D.C.  20036 Telephone: 202.730.1337 Facsimile:  202.730.1303

*Attorneys for Plaintiff*

Page 12 -   PLAINTIFF UNIGESTION HOLDINGS, S.A.'S
AMENDED PHASE I LAY WITNESS STATEMENTS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Fax: 503-796-2900