**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Bragar DuBay
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
**Katherine Sheriff**, D.C. Bar #1632141
chrissavage@dwt.com
katherinesheriff@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

        Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A.**, a foreign corporation, d/b/a **DIGICEL HAITI**, <br><br> Plaintiff & Counterclaim-Defendant, <br><br> v. <br><br> **UPM TECHNOLOGY, INC.**, *et al.,* <br><br> Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI <br><br> **DECLARATION OF CHRISTOPHER W. SAVAGE IN SUPPORT OF SUPPLEMENTAL BRIEFING IN SUPPORT OF DEFENDANTS' PROPOSED JURY INSTRUCTIONS AND VERDICT FORM** |

I, Christopher W. Savage, declare under penalty of perjury:

1.      I am an attorney at Davis Wright Tremaine LLP.  I am one of the attorneys representing the defendants in the above-captioned action.  I make this declaration based on personal knowledge and my review of the records and files in this proceeding and public records referenced herein.  I am competent to testify if called to do so.

2.      I make this declaration in support of Supplemental Briefing in Support of Defendants' Proposed Jury Instructions and Verdict Form.

3.      Attached hereto as Exhibit 1 is a true and correct copy of Defendants' proposed redline revisions to the Court's draft Preliminary Jury Instructions dated October 29, 2022.  A Microsoft Word version with Defendant's proposed revisions in "track changes" is being submitted directly to the Court contemporaneously herewith.

4.      Attached hereto as Exhibit 2 is a true and correct copy of Defendants' proposed redline revisions to the Court's draft Final Jury Instructions dated October 29, 2022.  A Microsoft Word version with Defendant's proposed revisions in "track changes" is being submitted directly to the Court contemporaneously herewith.

5.      Attached hereto as Exhibit 3 is a true and correct copy of Defendants' proposed redline revisions to the Court's draft Verdict Form dated October 29, 2022.  A Microsoft Word version with Defendant's proposed revisions in "track changes" is being submitted directly to the Court contemporaneously herewith.

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

Dated: November 11, 2022.

By:_____

Christopher W. Savage
Portland, OR

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

# CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2022, I served the foregoing **DECLARATION OF CHRISTOPHER W. SAVAGE IN SUPPORT OF SUPPLEMENTAL BRIEFING IN SUPPORT OF DEFENDANTS' PROPOSED JURY INSTRUCTIONS AND VERDICT FORM** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Anisha Carla Atchanah
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com
Email: aatchanah@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Andrew J. Lee
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com
Email: ajlee@schwabe.com

Kent D. Bressie
HWG LLP
1919 M Street N.W., Suite 800
Washington, D.C. 20036
Email: kbressie@hwglaw.com

Dated: November 11, 2022.

TOMASI BRAGAR DUBAY

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    Katherine Sheriff, D.C. Bar #1632141
    katherinesheriff@dwt.com
    (*Admitted Pro Hac Vice*)
    Telephone: (202) 973-4200

Of Attorneys for Defendants

*Draft Dated: October 29, 2022 (Not filed in CM/ECF)*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDING, S.A., d/b/a DIGICEL-HAITI**, | Case No. 3:15-cv-185-SI |
| Plaintiff, | **PRELIMINARY JURY INSTRUCTIONS** |
| v. | |
| **UPM TECHNOLOGY, INC. and DUY BRUCE TRAN**, | |
| Defendants. | |

Exhibit 1
Page 1 of 27

Members of the Jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must decide the case solely on the evidence and the law before you. You have taken an oath to do so.

Perform these duties fairly and impartially. You should not be influenced by any person's race, color, ethnicity, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances. Also, do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases.

At the end of the trial, I will give you a set of written final instructions. Those final instructions are what will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

When you deliberate at the end of the trial, it will be your duty to weigh and evaluate all the evidence received in this trial and, in that process, to decide the facts. To the facts as you find them, you will apply the law as I give it to you. You must follow the law as I give it to you, whether you agree with it or not. You will recall that you have taken an oath to do so. In following my instructions, you must

Exhibit 1
Page 2 of 27

follow all of them and not single out some and ignore others; they are all important. You must decide the case solely on the evidence and the law before you. You must not be influenced by any personal likes or dislikes, opinions, prejudices, sympathy, or biases.

Let me now talk a little more about biases.

As we previously discussed during the jury selection process this morning, we all have feelings, assumptions, perceptions, fears, and stereotypes about others. Some biases we are aware of. Others, we might not be fully aware of, which is why they are called unconscious, or implicit, biases. No matter how unbiased we may think we are, are brains are hard-wired to make certain unconscious decisions. We look at others and filter what they say through our own personal experiences and background. Because we all do this, we often see life in a way that tends to favor people who are like ourselves, or who have had life experiences like our own.

Biases can affect our thoughts, how we remember what we see and hear, who be believe or disbelieve, and how we make important decisions.

As jurors, you are being asked to make important decisions. You must, first, take the time you need to reflect carefully and thoughtfully about the evidence. Second, you need to think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of people and the evidence in this case. If the people involved in this case were from different

Exhibit 1
Page 3 of 27

backgrounds, for example, richer or poorer, more or less educated, old or younger, or of a different gender, gender identity, sexual orientation, race, ethnicity, or religion, would you still view them, and the evidence, the same way?

Third, listen to one another. You must carefully evaluate the evidence and resist, and help each other to resist, any urge to reach a verdict influenced by bias for or against any party or witness. You all have different backgrounds and will be viewing this case based on your own insights, assumptions, and biases. Listening to different perspectives may help you better identify the possible effects that hidden, or unconscious, biases, may have on decision-making.

And fourth, resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

The law demands that you make a fair decision based solely on the evidence received at trial, your individual evaluation of that evidence, your reasoning, your common sense, and the law that I give to you in my instructions.

When you go into the jury room to deliberate at the end of the trial, you will be asked to decide the case. But you not only will have to vote "yes" or "no" on certain verdict questions and, depending on your answers, possibly make other decisions. To do your duty as jurors, you will also have to explain to your fellow jurors what evidence you believe supports your decision to vote a certain way. I

Exhibit 1
Page 4 of 27

tell you this now because research has shown that jurors who understand they will be accountable to their fellow jurors for their vote follow the evidence more closely and are more engaged in jury deliberations. Our legal system wants you to pay attention and to engage fully in jury deliberations because jurors who do these things help make sure the trial reaches a just and fair result under the law. Thus, we ask jurors to pay attention during the trial and participate with their fellow jurors during deliberations.

**Overview of the Case**

Now that you have been selected to be the jurors in this case, I am going to repeat what I said during jury selection, describing what this dispute is about. I am doing this to help you follow the evidence that soon will be presented by the parties. I will give you a summary of the positions of the parties and will describe the Plaintiff's claim, which the Defendants deny. The Plaintiff has the burden of proving its claim. Please do not draw any conclusions from what I am saying. You will need to decide the facts based on the evidence that will be presented at trial.

As a mentioned earlier today during the jury selection process, this is a civil lawsuit. It is not a criminal case. In a civil trial, the plaintiff seeks money damages from the defendants.

Also as I previously said, the plaintiff in this case is a company called "Unigestion Holding, S.A.," also known as "Digicel-Haiti." I will refer to the

Exhibit 1
Page 5 of 27

plaintiff mostly as "Digicel-Haiti," but both "Unigestion" and "Digicel-Haiti" refer to the same company. Digicel-Haiti owns and operates a wireless telecommunications network in the country of Haiti, located in the Caribbean.

There are two defendants in this case: one company and one individual. The company defendant is "UPM Technology, Inc." or "UPM" for short. UPM also has been known as "UPM Telecom, Inc." and "UPM Marketing, Inc.," but those names all refer to the same company, which for simplicity I will just refer as "UPM." The individual defendant is Mr. Duy Bruce Tran. UPM is a telecommunications company based in the greater Portland area, specifically Hillsboro. Mr. Tran is UPM's founder and Chief Executive Officer.

Digicel-Haiti's claims arise out of the law of fraud, specifically what the law calls "fraud by active concealment." In general, it is more expensive to place an international call from the United States to Haiti than it is to place a local call within Haiti, even when both calls end (or terminate) with a customer in Haiti on Digicel-Haiti's wireless network. Digicel-Haiti charges at least $0.23 (23 cents) per minute for international calls from the United States to Haiti and approximately $0.09 (9 cents) per minute for local calls within Haiti. In the telecommunications industry, making a phone call is also referred to as "terminating" a call.

In this lawsuit, the Plaintiff, Digicel-Haiti, alleges that the Defendants, UPM and its founder and chief executive Mr. Tran, terminated international calls

Exhibit 1
Page 6 of 27

on Digicel-Haiti's network without paying the Digicel-Haiti rate for terminating international calls. Digicel-Haiti alleges that UPM accomplished this by fraudulently concealing its activities.

According to Digicel-Haiti, UPM did this in one of two ways. In other words, Digicel-Haiti alleges two different ways that UPM circumvented Digicel-Haiti's international pricing. Digicel-Haiti calls these two methods "traditional bypass" and "Roam Like You Are Home bypass," or "RLYH bypass." UPM uses the labels "in-country bypass" for the first way and simply "Roam Like You Are Home service," or just "RLYH," for the second way. The Defendants say that their RLYH activities are not a type of bypass at all. To be neutral, I will sometimes switch between the two sets of names or use both. I will call the first way "traditional bypass" or "in-country bypass;," and they refer to the same thing. I will call the second way "Roam Like You Are Home bypass" or simply "Roam Like You Are Home," and they refer to the same thing.

Before I get into the differences between traditional bypass and RLYH bypass, let me describe their similarities. For both methods, Digicel-Haiti alleges that UPM used a combination of telecommunications technology and the Internet to "bypass" Digicel-Haiti's international rate. UPM allegedly did this by acquiring Digicel-Haiti's SIM cards. SIM, spelled S-I-M, stands for "Subscriber Identity Module." SIM cards are small computer chips often put in cell phones that allow a

Exhibit 1
Page 7 of 27

cellular device to access a cellular network. For example, if a phone has a Digicel-Haiti SIM card, then the Digicel-Haiti cellular network could recognize that phone and card as valid and give it access to Digicel-Haiti's wireless network in Haiti. UPM used prepaid Digicel-Haiti SIM cards to access its wireless network. This means that UPM's calls would go through to Haiti only if the SIM card's account had enough money to make the call. When an account's money ran out, a call could disconnect, even if the SIM card was valid.

Now, I will describe the differences between in-country bypass and RLYH service. When a call originates in the United States and terminates in Haiti through Digicel-Haiti's network, it usually goes through one of Digicel-Haiti's two "international switches" located in the United States. These switches let Digicel-Haiti recognize that an international call is coming through and charge $0.23 per minute for those calls.

For traditional or in-country bypass, UPM arranged for calls coming from the United States to avoid Digicel-Haiti's international switches. Instead, UPM used computer servers in Oregon that connected calls over the Internet to UPM's Gateway devices in Haiti. This use of the Internet is sometimes known as "Voice over Internet Protocol," or VoIP. When UPM sends a call to Haiti over the Internet, the call arrives in Haiti at a device called a "Gateway." Gateways are like to wireless radios. They transmit calls received in Haiti over the Internet from UPM's servers in the United States directly to Digicel-Haiti's local cellular

Exhibit 1
Page 8 of 27

network. Gateways can make multiple calls at the same time.

Because UPM used these Gateways rather than Digicel-Haiti's international switches, Digicel-Haiti did not charge the international rate of 23 cents per minute. Instead, Digicel-Haiti registered these types of calls sent by UPM as local calls made entirely with Haiti, and charged them the local rate of about 9 cents per minute.

RLYH, or RLYH bypass, is different from traditional, or in-country, bypass. RLYH is a special discount program. By paying a subscription fee, subscribers to the RLYH program can make calls to Haiti from the United States without paying international and roaming rates. Instead, these customers can make calls to Haiti at the local per-minute rate. Digicel-Haiti contends that RLYH is offered to customers in Haiti. UPM contends that RLYH is offered to anyone with a Digicel- Haiti SIM card, whether in Haiti or in the United States.

Digicel-Haiti alleges that UPM obtained Digicel-Haiti's SIM cards and then enrolled some of those cards in Digicel-Haiti's RLYH program. UPM then used its computer servers to connect international calls from the United States to Digicel- Haiti's roaming partners in the United States. Digicel-Haiti's roaming partners in the United States are U.S. telecommunications carriers that provide communications services in this country. With RLYH, Digicel-Haiti's United States roaming partners paid Digicel-Haiti the 23 cents per minute international termination rate for each RLYH call, while UPM was charged 9 cents per minute

Exhibit 1
Page 9 of 27

for such calls. For RLYH, UPM contends that it used Gateway radios in the United States, rather than Gateway radios in Haiti.

Now I will explain how the alleged fraud comes into this trial. Digicel-Haiti sought to prevent companies like UPM from engaging in both traditional bypass and RLYH bypass in Haiti. When Digicel-Haiti believed that one of its SIM cards was being used in either of those ways, Digicel-Haiti would deactivate that card so that it could no longer be used to make calls. Also, UPM contends that after Digicel-Haiti would deactivate a SIM that it believed was being used for bypass, Digicel-Haiti generally would keep any money left over in that SIM card's account.

In this trial, Digicel-Haiti alleges that UPM used special computer software, sometimes called "Human Behavior Simulation" software (or HBS software), when placing calls from the United States to Haiti. According to Digicel-Haiti, HBS software allowed UPM to mimic how real human beings make calls. Allegedly, this software would control when each SIM card would be used to make a call, how long it stayed on calls, how often it made a call, and similar factors. Digicel-Haiti alleges that UPM used this HBS software to try to avoid Digicel- Haiti's efforts to detect and deactivate SIM cards being used by UPM. In other words, Digicel-Haiti alleges that UPM used Human Behavior Simulation software to commit fraud by actively concealing, or hiding, UPM's bypass and RLYH activities from Digicel-Haiti. Based on this claim, Digicel-

Exhibit 1
Page 10 of 27

Haiti is seeking money damages for the calls UPM terminated on its network, as well as punitive damages.

UPM and Mr. Tran deny that they engaged in fraud by active concealment. They say that UPM did not use HBS software to try to deceive Digicel-Haiti into thinking that actual human beings were making calls with the SIM cards that UPM used. UPM further states that Digicel-Haiti was very good at detecting when a SIM card was being used for bypass, and quickly deactivated those cards.

UPM also argues that it did not cause any economic harm to Digicel-Haiti, which is required for a claim of fraud by active concealment. UPM says that Digicel-Haiti had no losses because it kept all the leftover money in the accounts of deactivated SIM cards. For traditional bypass, UPM says that Digicel-Haiti received the correct per-minute rate of 9 cents per minute because UPM's Gateways were in Haiti and the calls, therefore, were made entirely with Haiti. For RLYH, UPM contends that Digicel-Haiti received 23 cents per minute from its roaming partners in the United States plus 9 cents per minute from UPM. In addition, for both types of bypass, UPM contends that Digicel-Haiti was not actually entitled to $0.23 per minute, because it was required to pay $0.05 per minute to the Haitian government for incoming international traffic, and so was entitled to at most $0.18 per minute. According to UPM, even if it used HBS software to actively conceal its activities, Digicel-Haiti has not been financially harmed or harmed in the amount that Digicel-Haiti claims. Digicel-Haiti disagrees

Exhibit 1
Page 11 of 27

and contends that it has been harmed by UPM's use of RLYH.

As you can see, the parties agree on some things and disagree on other things. That is why we are having a trial. Also, I appreciate that some of these issues may seem complicated. If you are selected to serve on this jury, you will hear what I just explained a few more times, you will see evidence, and you will hear witness testimony. It will make more sense as the trial progresses.

But I do need to make one thing clear now. The Court has already ruled that bypass, by itself, is not fraud under Oregon law, which is the law that applies in this case. Whether UPM purchased SIM cards from third-party vendors, whether UPM placed multiple SIM cards in computer servers, and whether UPM used those servers to terminate calls over the internet from the United States to Haiti are questions that may have to be determined at trial, but even if those specific activities were done, they are not, by themselves, fraud. Also, whether UPM used multiple SIM cards to subscribe to RLYH may have to be determined at trial, but even if it did, that, by itself, is not fraud.

The only questions of alleged fraud in this trial are: (1) whether Defendants UPM and Mr. Tran actively concealed their activities from Digicel-Haiti by using Human Behavior Simulation software; (2) if they did, whether UPM's use of HBS software caused harm to Digicel-Haiti; and (3) if it did, what is a reasonable estimate of that harm, without speculating. Specifically, the first question is whether UPM and Mr. Tran used Human Behavior Simulation

Exhibit 1
Page 12 of 27

software to mimic the patterns of individual human callers to disguise the fact

that they were a business using multiple SIM cards and terminating multiple calls

on Digicel- Haiti's network. UPM and Mr. Tran deny using HBS, and Digicel-

Haiti alleges that they did.

**Burden of Proof**

The plaintiff has the burden of proving all the elements its claim of fraud~~,~~

~~other than~~ except for the amount of ~~the amount of~~ damages~~,~~ by what the law calls

"clear and convincing evidence." ~~When a party has the burden of proving a claim~~

~~by clear and convincing evidence, it~~[1] That means that the party asserting a claim

of fraud must present evidence on all elements of that claim that leaves you with a

firm belief or conviction that it is highly probable that the ~~factual contentions of~~

~~the claim or defense are true.~~facts required for liability are true.[2] Clear and

convincing evidence is evidence which is free from confusion, fully intelligible,

distinct, and establishes that the defendant intended to deceive the plaintiff.[3]

If the plaintiff proves by clear and convincing evidence all the elements of

its claim of fraud, other than the amount of damages, the plaintiff then need only

prove the amount of its damages by what the law calls a "preponderance of the

---

[1] *See* Final Jury Instruction (Draft Dated October 29, 2022), No. 2.

[2] *Id*.

[3] *Riley Hill Gen. Contractor, Inc. v. Tandy Corp*., 303 Or 390, 407, 737 P2d 595 (1987) (citing *Cook v. Michael*, 214 Or. 513, 527, 330 P.2d 1026 (1958)); *see also* Defendants' Proposed Instructions (ECF #473) ("UPM Instructions"), p. 7.

Exhibit 1
Page 13 of 27

evidence." When a party has the burden of proving its damages by a preponderance of the evidence, it means that you must be persuaded by the evidence that the facts showing the amount of damages to be awarded are more probably true than not true.

In this case, Digicel-Haiti is suing not only UPM, but also its chief executive officer, Mr. Tran. To hold an officer of a corporation liable for fraudulent conduct committed by the corporation, a plaintiff must first establish that the corporation is liable for fraud by clear and convincing evidence and, then, the plaintiff must prove by clear and convincing evidence that the officer either personally participated in the fraudulent conduct or had knowledge of the fraudulent conduct being committed and did not stop it from occurring before the officer can be held personally liable.[4]

Also, a plaintiff must prove a claim for punitive damages by clear and convincing evidence.[5] A jury may award punitive damages to punish misconduct and deter similar misconduct from occurring in the future.[6] That means that the party seeking punitive damages must present evidence that leaves you with a firm belief that it is highly probable that the facts required for punitive damages are true.[7]

---

[4] *See* Final Jury Instruction (Draft Dated October 29, 2022) No. 20; UPM Instructions, p. 33; UPM Instructions Response, p. 16-18.

[5] *See* Final Jury Instruction (Draft Dated October 29, 2022) No. 2.

[6] UCJI No. 75.02 (Punitive Damages—General).

[7] *Id.*

Exhibit 1
Page 14 of 27

You should base your decision on all the evidence, regardless of which party presented it.

**What Is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are received into evidence; and

3.    any facts to which the parties have agreed, which are called "stipulations."  The parties have agreed to certain facts[8] and a glossary of technical terms that will be presented to you after the attorneys' opening arguments [and to be placed into evidence as Exhibit(s) ___]. You must therefore treat these stipulated facts as having been proved.[9]

**What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.    Arguments and statements by lawyers are not evidence. The lawyers are not the witnesses in this case. What they will soon say in their opening statements, will say in their closing arguments at the end of the trial, and at other times is intended to help you interpret the evidence, but what the

[8] *See* Joint Stipulations (ECF #362) *and* Supplemental Joint Stipulations (Glossary) (ECF #368).

[9] 9th Circuit Model Civil Jury Instructions ("MCJI") No. 2.2 (Stipulations of Fact).

Exhibit 1
Page 15 of 27

lawyers say is not evidence. Also, if the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

~~3.~~ 3.   Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose~~; when~~. When I ~~have given~~instruct you ~~a limiting instruction~~that an item of evidence has been admitted only for a limited purpose, you must ~~follow~~consider it only for that limited purpose and not for any other purpose.[10]

4. Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law

[10] MCJI 1.10 (What is Not Evidence).

Exhibit 1
Page 16 of 27

makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. Other evidence, however, such as testimony that someone turned on a garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, by saying "overruled," for example, the question may be answered, or the exhibit may be received. If I sustain the objection, by saying "sustained," for example, the question may not be answered, or the exhibit may not be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the

Exhibit 1
Page 17 of 27

case, you must not consider the evidence that I told you to disregard.

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Also, proof of a fact does not necessarily depend on the number of witnesses who testify about it. In considering the testimony of any witness, you may consider:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness's memory and other factors affecting their cognitive abilities;[11]

3.    the witness's manner while testifying;

4.    the witness's interest in the outcome of the case, if any;

5.    the witness's bias or prejudice, if any;

6.    whether other evidence contradicted the witness's testimony;

7.    the reasonableness of the witness's testimony based on all the evidence; and

8.    [Evidence concerning the character of the witness for

---

[11] UPM Instructions, p. 10; *see also* Defendants' Response to Plaintiff Unigestion Holdings, S.A.'S Objections to Defendants' Proposed Jury Instructions and Verdict Form (ECF #496) ("UPM Instructions Response"), p. 8-9

Exhibit 1
Page 18 of 27

truthfulness; and][12]

    9.    8. any other factors that bear on believability.

In your determination of credibility, you must avoid bias, conscious or unconscious, based on a witness's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances.

In addition, the weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**Conduct of the Jury**

I will now say a few words about your conduct as jurors. First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.

Thus, until the end of the case or unless I tell you otherwise:

    1.    Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to

---

[12] UCJI No. 10.03; UPM Instructions, p. 10; UPM Instructions Response, p. 8-9.

Exhibit 1
Page 19 of 27

do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Tumblr, Instagram, LinkedIn, Snapchat, WhatsApp, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

2.      You may, however, notify your family and your employer that you have been seated as a juror in the case. You may tell them that you are expected to be in court from 9:00 a.m. through 5:00 p.m. every day that the trial is in session, and you may tell them how long this trial is expected to last. But you may not tell them what this case is about or who is involved.

3.      If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either. That is why you are asked to wear your juror tags. It shows that you are a juror and should not be approached in any way during this trial.

4.      Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news

Exhibit 1
Page 20 of 27

or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials or law books; and do not make any investigation or in any other way try to learn about the case on your own. By this I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. Also, as I said, do not try to do any independent factual or legal research or investigation on your own on any matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries, law books, or reference materials; do not search the internet, websites, blogs, or use any other electronic tools to obtain factual or legal information about this case or to help you decide the case. In short, do not try to find out information from any source other than what I allow to be received in evidence in this courtroom.

5.         The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address and respond to. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

Exhibit 1
Page 21 of 27

**Publicity During Trial**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

**No Transcript Available to Jury**

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given. If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

**Taking Notes**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the jury room. No one will read your notes. At the end of the entire trial, you will be welcome to take your notes home with you or you can leave them with us and we will destroy them – but until then, please leave them in the jury room at the end of each trial day. Whether or not you take

Exhibit 1
Page 22 of 27

notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

**Bench Conferences and Recesses**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error. We will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference, and I may tell an attorney to move on to another topic and save our discussion for the next break. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Outline of Trial Process**

Trials proceed in the following way: First, the lawyers for each side make opening statements. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

After the opening statements, the plaintiff's lawyer will call a witness to

Exhibit 1
Page 23 of 27

testify, either in person ~~or by playing video excerpts~~ or by reading portions from the deposition of that witness. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth, and lawyers for each party may ask questions. The questions and answers are recorded. Insofar as possible, you should consider deposition testimony shown or read to you in court in the same way as if the witness had testified in court in person.

When a witness is called to the stand to testify before you in person, the witness will be questioned first by a lawyer for the plaintiff in what is called "direct examination." After the direct examination of a witness is completed, a lawyer for the defendant may question that witness. That is called "cross-examination." When that cross-examination is done, I will allow the plaintiff's lawyer to ask additional questions; that is called "re-direct examination." Next, I will allow the defendant's lawyer to ask additional questions; that is called "re-cross-examination."

After the plaintiff has presented all its witnesses, the defendants will be allowed to call witnesses. If a defendant calls a witness, that person will be examined and cross-examined in the same manner that I have just described.

You should keep an open mind throughout the entire trial. After all the evidence has been presented, I will give each of you a written copy of the Final Jury Instructions on the law that applies in this case, and the attorneys for each side will make their closing arguments. After that, you will go to the jury room to

Exhibit 1
Page 24 of 27

discuss the case with each other, deliberate on your verdict, and answer the questions presented to you on the verdict form.

**Questions of Witnesses by Jurors**

When a witness has completed answering questions in both direct and cross- examination, a juror may submit a written question to our Courtroom Deputy, which I will review and share with the lawyers. If it is appropriate, we will either ask the witness that question before continuing, or another witness later in the trial may be asked that question. If the question or answer is not allowed under the rules of evidence, I will not allow the question to be asked or answered. I use this process primarily to reduce the risk of confusion or ambiguity in a witness's testimony. The jurors are not to assume the role of a lawyer. This process of allowing jurors to submit questions simply is intended to ensure that the evidence that the lawyers are presenting is reasonably clear and understandable for everyone.

**Recesses**

We will soon take a recess. During this recess and any other recesses, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately. Do not read, watch, or listen to any news reports of the trial, or conduct any factual or legal research or investigation, including on the internet, dictionaries, or

Exhibit 1
Page 25 of 27

law books. Do not go to or visit any location mentioned during the trial. Finally, keep an open mind throughout the trial until all the evidence has been received and you have heard the views of your fellow jurors. If you need to speak with me about anything, simply give a signed note to our courtroom deputy, Mary Austad, and she will give it to me. I may not repeat these admonitions each time we recess or adjourn, but even when I don't repeat them, they will always apply. I am certain, however, that I will be reminding you about them from time to time.

Exhibit 1
Page 26 of 27

Document comparison by Workshare Compare on Friday, November 11, 2022
2:49:39 PM

| Input: | |
|---|---|
| Document 1 ID | file://F:\STORAGE\LSSe64DOCS\00000736\00702023.000.DOCX |
| Description | 00702023.000 |
| Document 2 ID | file://F:\STORAGE\LSSe64DOCS\00000736\00702010.000.DOCX |
| Description | 00702010.000 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 66 |
| Deletions | 16 |
| Moved from | 2 |
| Moved to | 2 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 86 |

Exhibit 1
Page 27 of 27

*Draft dated: October 29, 2022 (Not filed in CM/ECF)*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDING, S.A., d/b/a DIGICEL-HAITI**, | Case No. 3:15-cv-00185-SI |
| Plaintiff, | **FINAL JURY INSTRUCTIONS** |
| v. | |
| **UPM TECHNOLOGY, INC. and DUY BRUCE TRAN**, | |
| Defendants. | |

DATED this_____day of November, 2022.


Michael H. Simon
United States District Judge

Exhibit 2
Page 1 of 40

# INDEX OF FINAL JURY INSTRUCTIONS

Instruction No. 1:  Duty of Jury.........................................................................4

Instruction No. 2:  Burden of Proof—Clear and Convincing Evidence .........4

Instruction No. 3:  Burden of Proof—Preponderance of the Evidence...........5

Instruction No. 4:  What Is Evidence ..............................................................5

Instruction No. 5:  What Is Not Evidence .......................................................6

Instruction No. 6:  Evidence for a Limited Purpose.......................................7

Instruction No. 7:  Direct and Circumstantial Evidence ................................7

Instruction No. 8:  Ruling on Objections........................................................7

Instruction No. 9:  Credibility of Witnesses...................................................8

Instruction No. 10:  Charts and Summaries Received in Evidence ...............9

Instruction No. 11: Charts and Summaries Not Received in Evidence ........10

Instruction No. 12: Stipulations of Fact .......................................................10

Instruction No. 13: Deposition in Lieu of Live Testimony...........................10

Instruction No. 14: Answers to Interrogatories ............................................11

Instruction No. 15: Responses to Requests for Admissions..........................11

Instruction No. 16: Opinion Testimony.........................................................11

Instruction No. 17: All Parties Are Equal Before the Law ...........................12

Instruction No. 18: Corporations, Agents, and Principals.............................12

Instruction No. 19: Two Defendants ..............................................................12

Exhibit 2
Page 2 of 40

Instruction No. 20: Joint or Separate Liability ................................................12

Instruction No. 21: Plaintiff's Claim of Fraud by Active Concealment .......13

Instruction No. 22: Compensatory Damages.................................................15

Instruction No. 23: Punitive Damages...........................................................17

Instruction No. 24: Verdict Form ...................................................................18

Instruction No. 25: Duty to Deliberate ..........................................................19

Instruction No. 26: Consideration of Evidence—Conduct of the Jury .........19

Instruction No. 27: Evidence in Electronic Format.......................................21

Instruction No. 28: Communication with Court.............................................23

Instruction No. 29: Return of Verdict............................................................23

Exhibit 2
Page 3 of 40

**Instruction No. 1: Duty of Jury**

Members of the Jury:

Now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case. You may keep a copy of these instructions and have them with you in the jury room to consult.

It is your duty to weigh and evaluate all the evidence received in the case and, in that process, to decide the facts. It is also your duty to apply the law as I state it to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law. At the beginning of this trial, you took an oath promising to do so. Also, do not allow personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases to influence you.

You must follow all these instructions and not single out some and ignore others; they are all important. Please do not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

**Instruction No. 2: Burden of Proof—Clear and Convincing Evidence**

A plaintiff must prove all elements of a fraud claim except for the amount of damages by what the law calls "clear and convincing" evidence. That means that the party asserting a claim of fraud must present evidence on all elements of that claim except the amount of damages that leaves you with a firm belief or conviction that it is highly probable that the facts required for liability are true.

Exhibit 2
Page 4 of 40

Also, a plaintiff must prove a claim for punitive damages by clear and convincing evidence. That means that the party seeking punitive damages must present evidence that leaves you with a firm belief that it is highly probable that the facts required for punitive damages are true.

Proof by clear and convincing evidence is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence which is free from confusion, fully intelligible, distinct, and establishes that the defendant intended to deceive the plaintiff.[1]

You should base your decision on all the evidence, regardless of which party presented it.

**Instruction No. 3: Burden of Proof—Preponderance of the Evidence**

A plaintiff alleging fraud need only prove the amount of damages by what the law ~~call~~calls a "preponderance of the evidence." That means that you must be persuaded by the evidence that the facts needed to show the amount of actual damages, if any, are more probably true than not.

After weighing all the evidence, if you cannot decide that something is more likely true than not true, you must conclude that the party did not prove it.[2] You

---

[1] *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or 390, 407, 737 P2d 595 (1987); *see also* Defendants' Proposed Instructions (ECF #473) ("UPM Instructions"), p. 7.

[2] Oregon Uniform Civil Jury Instructions ("UCJI") No. 14.02 (Preponderance of the Evidence) at ❡ 2.

Exhibit 2
Page 5 of 40

should base your decision on all the evidence, regardless of which party presented it.

**Instruction No. 4: What Is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are received into evidence; and3. any facts to which the parties have agreed, which are also called "stipulations." The parties have agreed to certain facts[3] [which were read to you and/or were placed into evidence as Exhibit ___]. You must therefore treat these stipulated facts as having been proved.[4]Instruction No. 5: What Is Not Evidence

In reaching your verdict, you may consider only these three types of evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they saysaid in their opening statements, closing arguments, or at any other time is intended to help you interpret the evidence, but what the lawyers say is not evidence. If the facts as you remember them differ from how the lawyers stated them, you should rely on your memory of the facts.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the

[3] *See* Joint Stipulations (ECF #362) *and* Supplemental Joint Stipulations (Glossary) (ECF #368).
[4] 9th Circuit Model Civil Jury Instructions ("MCJI") No. 2.2 (Stipulations of Fact).

Exhibit 2
Page 6 of 40

rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.    Any testimony that has been excluded or stricken or that I have instructed you to disregard is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.[5]

4.    Anything you may have seen or heard when the court was not in session or when I was not on the bench is not evidence. You are to decide the case solely on the evidence received at trial.

**Instruction No. 6: Evidence Received for a Limited Purpose**

Some evidence may be admitted only for a limited purpose. If I instructed you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

Specifically, the Court received evidence related to [*UPM's shipping of items between UPM in Oregon and its agents in Haiti, and Defendants' wire transfers between UPM and its agents in Haiti*] and [*describe any other limited-*

[5] MCJI 1.10 (What is Not Evidence).

Exhibit 2
Page 7 of 40

*purpose  evidence admitted at trial*] for a limited purpose.

You may consider such evidence, testimony and argument only for the limited purpose of determining whether or not UPM used human behavior simulation software (or HBS software) with the motive, intent or absence of mistake to disguise the nature of any calls that UPM caused to be transmitted to Digicel-Haiti's network in Haiti.

 You may not consider such evidence for any other purpose. You may not consider this testimony for the purpose of proving the Defendants' character in order to show that any Defendant acted in conformity with that character.

**Instruction No. 7: Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Instruction No. 8: Ruling on Objections**

There are rules of evidence that control what can be received in evidence. When a lawyer asks a question or offers an exhibit in evidence and a lawyer on

Exhibit 2
Page 8 of 40

the other side believes that question or exhibit is not permitted by the rules of evidence, that lawyer may object. If I overruled the objection, the question may be answered, or the exhibit may be received in evidence. If I sustained the objection, however, the question may not be answered, or the exhibit may not be received in evidence. Whenever I sustained an objection to a question or an exhibit, you must ignore the question or the exhibit and must not guess what the answer might have been or what might have been in the exhibit that was offered.

**Instruction No. 9: Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In evaluating the testimony of any witness, you may consider:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness's memory and other factors affecting their cognitive abilities;[6]

3.    the witness's manner while testifying;

4.    the witness's interest in the outcome of the case, if any;

5.    the witness's bias or prejudice, if any;

---

[6] UPM Instructions p. 10; *see also* Defendants' Response to Plaintiff Unigestion Holdings, S.A.'S Objections to Defendants' Proposed Jury Instructions and Verdict Form (ECF #496) ("UPM Instructions Response"), p. 8-9

Exhibit 2
Page 9 of 40

6.      whether other evidence contradicted the witness's testimony;

7.      the reasonableness of the witness's testimony considering all the evidence; and

8.      [Evidence concerning the character of the witness for truthfulness; and][7]

9.      8. any other factors that you think bear on believability.

In your determination of credibility, however, you must avoid bias, conscious or unconscious, based on a witness's race, color, ethnicity, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances.

Sometimes a witness may say something that is not consistent withsomething with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

If you decide, however, that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness

[7] UCJI No. 10.03 (Evaluating Witness Testimony); UPM Instructions p. 10; UPM Instructions Response, p. 8-9.

Exhibit 2
Page 10 of 40

said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

Neither the proof of a fact nor the weight of any evidence depends on the number of witnesses who testify. What is important is how believable the witnesses were and how much weight you think their testimony deserves.

**Instruction No. 10: Charts and Summaries Received in Evidence**

Certain charts or summaries have been admitted in evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Instruction No. 11: Charts and Summaries Not Received in Evidence**

Certain charts or summaries not admitted in evidence have been shown to you to help explain the evidence in the case. I have sometimes referred to those items as "demonstrative evidence." Demonstrative evidence will not be available to you during your deliberations, and they are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think they and the underlying evidence deserves.

**Instruction No. 12: Stipulations of Fact**

The parties have agreed to certain facts that I will read to you. You must treat these facts as having been proved. The stipulated, or agreed-upon, facts are as

Exhibit 2
Page 11 of 40

follows:

[*INSERT, IF APPLICABLE*]

1.      The Plaintiff in this case is Unigestion Holdings, S.A., doing business as Digicel Haiti, Inc. (Digicel Haiti). Digicel Haiti provides mobile telecommunications services in Haiti and has more than four million customers. It operates solely within Haiti and has more than 900 employees. Digicel Haiti has several affiliated entities, collectively, the "Digicel Group." Besides Digicel Haiti, the Digicel Group includes, among others, Digicel USA, Inc. (Digicel USA) and Digicel Jamaica Limited (Digicel Jamaica).

2.      Digicel USA holds a license from the Federal Communications Commission that permits it to switch international telecom traffic in the United States. Digicel USA is not a party to this case, but it performs some functions relating to calls between the United States and Haiti. Digicel USA's switching operations act as a hub for international traffic between wholesale carriers in the USA and several markets in the Caribbean, including Haiti, which is served by Digicel Haiti.

3.      Digicel Jamaica is not a party to this case, but performs some administrative functions for Digicel Haiti, including billing United States telecommunications companies on behalf of Digicel Haiti.

4.      The defendants in this case are UPM Technology, Inc. (UPM) and its owner and Chief Executive Officer Mr. Bruce Tran. UPM is an Oregon corporation. During the period relevant to this lawsuit, UPM participated in the spot market for

Exhibit 2
Page 12 of 40

international resale to identify other carriers that had traffic that terminated in other countries.

5.      UPM purchased bulk quantities of Digicel Haiti's SIM cards from third-party vendors. "SIM" is an acronym for "Subscriber Identity Module." Each SIM card contains a unique identification number and other information used to "authenticate" the card on a telecommunication carrier's network, enabling the card to be used to make calls. Typically, an individual cell phone user would purchase a SIM card to be used for making calls from a specific cell phone, or handset.

6.      Each SIM card has an associated account in Digicel-Haiti's system. For pre-paid wireless service, which is the only form of service relevant to this case, a SIM card must have money in its account in order to be used to make calls. Adding money to a prepaid SIM card is called "recharging" or "topping up" the SIM card. UPM would install multiple SIM cards in UPM's computer servers (known as "SIM Units"), which were typically in Oregon.

7.      If a carrier, such as Digicel Haiti, deactivates (or de-authenticates) a SIM card, that card can no longer be used to make calls.

8.      A "softswitch" is a computer program running on a server connected to the Internet that can receive calls in "Voice over Internet Protocol," or "VoIP" format, and then transmit those calls to other devices that are also connected to the Internet.

Exhibit 2
Page 13 of 40

9.    A Gateway device can contain multiple radios, or radio transmitters. After being received by the UPM Gateway device in Haiti, the call (which began in the United States) would be transmitted to Digicel Haiti's cellular communications network in Haiti, for termination in Haiti. (In this context, "termination" means the location where a call is shown to be received for purposes of a telecommunications company's tracking and billing records.) These calls would appear to Digicel Haiti to be local calls that had begun in Haiti. Digicel Haiti would charge these calls as local.

10.    For another category of calls, UPM would use SIM cards that were registered with Digicel Haiti for Digicel Haiti's discounted program known as "Roam Like You're Home" (RLYH). In this scenario, when a call that originates in the United States intended for Haiti reached UPM's softswitch in the United States, UPM would route that call through Gateway devices here in Portland, where it would be associated with a call initiated using a Digicel Haiti SIM Card. For these calls, a Digicel Haiti roaming partner (a United States wireless carrier) would route the call to Digicel Haiti's network in Haiti through the Digicel Haiti international switches in the USA. Digicel Haiti's network would recognize that call as having begun in the United States by a RLYH Digicel SIM card and would charge the local rate for such a call (and reduce the value remaining on the SIM card accordingly).

11.    To facilitate the termination of incoming international call traffic on Digicel Haiti's network in Haiti, Digicel Haiti typically connects telephone calls sent

Exhibit 2
Page 14 of 40

to it from the United States through a system of telephone switching systems operated by Digicel USA and located in Miami, Florida, and New York City, New York. Digicel USA provides centralized switching facilities that allow for the management, technical support, and quality control for the switching equipment responsible for transmission and direction of international calls to Digicel Haiti and other Digicel Group affiliates from carriers in the United States.

12.    Digicel Haiti routes all telecommunications traffic from the United States to its cellular network in Haiti through the Digicel USA international switching centers in Miami and New York. From the cellular network in Haiti, a call is then terminated on a Digicel Haiti subscriber's handset.

13.    Typically, a call from the United States to an individual in Haiti would be handled as follows. The caller in the United States (U.S. Caller) would place a call to a recipient in Haiti (Haitian Recipient). The call originates on a United States carrier's network, and that carrier transfers the call to a wholesale international carrier.  The wholesale international carrier recognizes the call as one that is directed to Haiti and sends the call to a Digicel USA switch, in either New York or Miami. The call is then transmitted from that switch to a switch in Haiti owned and operated by Digicel Haiti. The switch in Haiti sends the call to a cell site in Haiti, also owned and operated by Digicel Haiti. From that cell site, the call is transmitted by Digicel Haiti to the Haitian Recipient's cellular device.

14.    When a call is directed through Digicel USA's switch in Miami or New

Exhibit 2
Page 15 of 40

York, a Call Detail Record (CDR) is created at the switch. The CDR is complete when the call is completed. The CDR is a record generated by a switch that contains certain call information including the telephone number of the caller, the number of the recipient, the time the call was made, and the duration of the call. The information in the CDR about the calling and called telephone numbers is in the electronic signaling information transmitted from the sending switch as part of the technical process of handing off the call from one switch to another. The Digicel Haiti switch typically records when the call begins and the duration of the call.

15.    For each incoming international call, a separate simultaneous CDR is created by a switch in Haiti and operated by Digicel Haiti. For billing and administrative purposes, Digicel Jamaica uses both the CDRs from the international switches in Miami and New York and the CDRs from the local switch in Haiti to create reports used to reconcile the number of international calls made to Haiti and the number of minutes that should be invoiced to the appropriate parties.

16.    When UPM was itself providing call termination on a destination network, it would need to acquire SIM cards for use on that specific network. Each SIM card has a unique identification number, as well as a telephone number assigned to it by the destination network.

17.    "In-country bypass" refers to when UPM itself connected the calls to Digicel Haiti's network in Haiti. In general terms, UPM would send calls via the Internet (using VoIP) to Haiti and, via a local Internet connection, to UPM's Gateway

Exhibit 2
Page 16 of 40

devices in Haiti. The Gateways were equipped with standard wireless telephone service radios, or "ports," which would make calls on Digicel Haiti's network. UPM's Gateway would have multiple radios installed inside which allowed the Gateways to make multiple calls at the same time.

18.    Before UPM could make calls using its Gateway devices, UPM needed to have acquired SIM cards for Digicel Haiti's network and recharged those SIM cards so that the calls would go through. UPM acquired Digicel Haiti SIM cards by paying individual people in Haiti to buy them. The individuals would ship the SIM cards back to UPM in Oregon. UPM would then mount the SIM cards into a device called a "SIM Unit." The SIM Unit is essentially a large SIM card reader — a device that can read the information contained on a SIM card and transmit that information to other UPM equipment and send that information, as needed, to Haiti.

19.    To make a wireless call on Digicel Haiti's network (and, in fact, any network using standard technology), it is necessary to authenticate a SIM card on the network. To make a call, the radio in a UPM Gateway would transmit authentication data from the SIM Card to Digicel Haiti's network and, after the network has confirmed that the SIM card is valid and has money in its account, the radio sends the network the number being called. At that point, Digicel Haiti's network establishes a connection to the wireless phone of the party being called.

20.    "RLYH" refers to a specific service that Digicel Haiti offered to

Exhibit 2
Page 17 of 40

subscribers roaming in the United States known as "Roam Like You're Home." UPM also used Digicel Haiti's RLYH service to terminate international calls to Haiti. With RLYH, a Digicel Haiti subscriber would pay a flat fee of around $25 per month to subscribe to the program. Digicel Haiti would then charge calls using the associated SIM card from the United States back to another Digicel Haiti subscriber at the same rate that a subscriber would pay for a local wireless call in Haiti. Digicel Haiti would also charge the United States wireless carrier (directly or indirectly) the $0.23 per minute fee for incoming international calls. After a month, the subscription would run out and, unless the RLYH service was renewed, normal roaming rates would apply for calls back to Haiti.

21.    When using RLYH to terminate calls on the Digicel Haiti network, a call bound for Digicel Haiti's network would hit UPM's softswitch and be directed, via the Internet, to a Gateway in Oregon, which would initiate a wireless call on the United States network of a Digicel Haiti roaming partner, such as AT&T. A SIM card enrolled in the RLYH program would be used to authenticate the call. The roaming partner would then get the call back to Haiti.

22.    UPM used software that managed the use of multiple SIM cards simultaneously. The software was configured to determine which SIM card was used to authenticate a call. When Digicel Haiti discovered that the calling and usage patterns of SIM cards differed from use by individual customers, Digicel Haiti would "de-authorize" those SIM cards so that calls associated with them could no longer be

Exhibit 2
Page 18 of 40

completed. In its counterclaims, UPM asserts:

23.    Digicel-Haiti used various technical means to analyze the calling and usage patterns associated with particular SIM cards to determine if the SIM card was being used in Bypass, and, when it concluded that the calling and usage patterns were not consistent with authorized use by an individual subscriber, it deauthorized the affected SIM cards in its own system, so that calls associated with those SIM cards would no longer be completed. UPM knew Digicel Haiti was doing this. Digicel Haiti did not know who was using any particular SIM that was being used for bypass.

You have also been provided a glossary of technical terms,[8] which you are also to treat as being proved.

**Instruction No. 13: Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

The deposition of [*name of witness*] was taken on [*date*]. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been in the courtroom to testify. [Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

---

[8] Supplemental Joint Stipulations (Glossary) (ECF #368).

Exhibit 2
Page 19 of 40

**Instruction No. 14: Answers to Interrogatories**

Evidence was presented to you in the form of answers by one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, as far as possible, in the same way as if they were given by a witness from the stand.

**Instruction No. 15: Responses to Requests for Admissions**

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**Instruction No. 16: Opinion Testimony**

You have heard testimony from [*name*]Charles Castel and Kenneth McEwen who testified to opinions and the reasons for [his] [her] [their] opinions. This opinion testimony is allowed, because of the education or experience of [this witness] [these witnesses].

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, credibility, the reasons given for the opinion, the reasonableness of any assumptions underlying the opinions,[9]

---

[9] UCJI No. 10.06 (Expert Witnesses); *see also* UPM Instructions, p. 11.

Exhibit 2
Page 20 of 40

and all the other evidence in the case.

**Instruction No. 17: All Parties Are Equal Before the Law**

All parties are equal before the law. A corporation or other business entity is entitled to the same fair and conscientious consideration by you as any party.

**Instruction No. 18: Corporations, Agents, and Principals**

Under the law, a corporation is considered a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority. An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal.

**Instruction No. 19: Two Defendants**

There are two defendants in this case: UPM, the corporation, and Mr. Tran, an individual and UPM's Chief Executive Officer. [10]  You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

**Instruction No. 20: Joint or Separate Liability and Officer/Director Personal Liability**

~~Each person or corporation who commits fraudulent conduct is jointly liable~~

[10] Preliminary Jury Instructions, p. 6 (Overview of the Case).

Exhibit 2
Page 21 of 40

for any indivisible injury legally caused by the fraudulent conduct.
~~To hold~~

First, in order to maintain an action for fraud against an officer or director of a

corporation ~~liable for~~, it is necessary to first establish that the corporation is liable

for fraud. Only then can an officer or director be personally liable for the fraudulent

conduct ~~committed by~~.

Second, if the corporation, ~~a plaintiff~~ is liable for fraud, the officer or director

can only be held personally liable if he or she authorized or participated in the

fraudulent conduct. Specifically, the Plaintiff must prove, by clear and convincing

evidence, that ~~the~~such director or officer either personally participated in the

fraudulent conduct or had knowledge of the fraudulent conduct being committed and

did not stop it from occurring.[11]Each person or corporation who commits fraudulent

conduct is jointly liable for any indivisible injury legally caused by the fraudulent

conduct.

**Instruction No. 21: Plaintiff's Claim of Fraud by Active Concealment**

**Using Human Behavior Simulation Software**

The only claim that is before you in this trial is the plaintiff's claim that one

or both defendants committed fraud by active concealment. Further, the only

allegation of fraud by active concealment that is before you in this trial is

[11] UPM Instructions, p. 33; UPM Instructions Response, p. 16-18.

Exhibit 2
Page 22 of 40

plaintiff's allegation that ~~one or both defendants~~UPM[12] used human behavior

simulation software to disguise the nature of any calls that UPM caused to be

transmitted to Digicel-Haiti's network in Haiti by simulating the calling patterns of

local callers to mislead Digicel-Haiti and avoid detection by Digicel-Haiti (and

deactivation of the associated SIM cards).[13]

 

     As I have stated earlier in this trial, UPM's use of bypass or RLYH, if done

without also using human behavior simulation software, is not fraud. Thus, if Digicel-

Haiti has not proven by clear and convincing evidence that UPM used human

behavior simulation software to facilitate sending calls to Digicel-Haiti's network and

that UPM did that with the intent to deceive Digicel Haiti or to hinder Digicel Haiti's

ability to identify and block SIM cards being used by other than natural persons for

individual calls, then your verdict must be for the defendants.[14]

     Fraud by active concealment means any words or acts that

~~create~~intentionally conceals a material matter either by creating a false impression

covering up the truth or that removes or hinders an opportunity that might

---

[12]  There is no allegation that Mr. Tran, individually, used human behavior simulation software; rather, the claim is only that UPM, the corporation, implemented such HBS software in terminating calls to Digicel-Haiti's network in Haiti. It would be confusing and misleading to instruct the jury that one or both defendants terminated calls to Haiti, when only UPM did. *See e.g.*, Opinion and Order (ECF #294), p. 5, 31; Opinion and Order on Digicel-Haiti's Motions for Summary Judgment Against UPM's Counterclaims and to Exclude UPM's Expert Witness, and UPM's Motion for Partial Summary Judgment (ECF #384), p. 8.

[13] Opinion and Order (ECF #294), p. 5.

[14] Opinion and Order (ECF #294), p. 31.

Exhibit 2
Page 23 of 40

otherwise have led to the discovery of ~~a~~ material ~~fact~~information.[15] Fraud by active

concealment is characterized by deceptive acts or contrivances intended to hide

information, mislead, avoid suspicion, or prevent or delay further inquiry into a

material matter.

　　　　To prevail on its claim of fraud by active concealment, Digicel-Haiti must

prove each of the following five elements by clear and convincing evidence:

　　　　(1)　　A defendant made a false representation of a material matter;

　　　　(2)　　A defendant knew that the representation was false;

　　　　(3)　　A defendant intended to mislead the plaintiff;

　　　　(4)　　The plaintiff reasonably relied on the false representation; and

　　　　(5)　　The plaintiff was damaged as a direct result of its reliance on the false

representation; in other words, the plaintiff must prove that its damages were

caused by its reliance on the false representation.

　　　　A person can make a false representation of a material matter by actively

concealing the truth. In other words, the law considers the active concealment of

the truth to be making a false representation. A false representation by active

concealment occurs when a person, by any word or act, conceals a material matter

either by creating a false impression covering up the truth, or by removing or

---

[15] *Paul v. Kelley*, 42 Ore. App. 61, 65-66, 599 P.2d 1236 (1979), quoting Prosser, *Law of Torts*, § 106, at 695 (4th ed. 1971); *see also  Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104, 113, 634 P.2d 471 (1981) (same); UPM Instructions, p. 14.

Exhibit 2
Page 24 of 40

hindering an opportunity that might otherwise have led to the discovery of the truth.

A fraudulent representation must be both false and material.[16] A misrepresentation of a "material matter" is one that would be likely to affect the conduct of a reasonable person regarding a transaction with another person.[17] Additionally, a fraudulent misrepresentation of a material matter is one that is made by the defendant with knowledge of its falsity or ignorance of its truth.[18]

Fraudulent misrepresentation by active concealment of a material fact requires that the defendant suppress the truth with the intent to deceive the plaintiff. "Intent" means either: (1) the defendant desired to induce the plaintiff to act, or refrain from acting, in reliance on the misrepresentation; or (2) the defendant believed that the plaintiff would act, or refrain from acting, in reliance on the misrepresentation with substantial certainty.[19]

---

[16] UPM Instructions, p. 13, citing *Onita Pac. Corp. v. Trs. of Bronson*, 122 Or. App. 452, 456, 858 P.2d 453, 456 (1993) ("To establish fraud, plaintiffs must show that defendants made a false and material representation…").

[17] *Id.*

[18] UPM Instructions, p. 15, citing *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (1976) (quoting *Rice v. McAlister*, 268 Or. 125, 128, 519 P.2d 1263 (1974)); *Smith v. United States Escrow Corp.*, 89 Or. App. 224, 229, 748 P.2d 168 (1988); *Strawn v. Farmers Ins. Co.*, 350 Or. 336, 352, 258 P.3d 1199, *adh'd to on recons*, 350 Or. 521, 256 P.3d 100 (2011)).

[19] UPM Instructions, p. 16, citing Restat 2d of Torts, §§ 531, 550; *Elizaga v. Kaiser Found. Hosps., Inc.*, 259 Or. 542, 548, 487 P.2d 870 (1971) (citing Prosser, Torts (3d ed.) 711 at 715-719); *United States Nat'l Bank v. Fought*, 291 Or. 201, 223-26, 630 P.2d 337 (1981); *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or. 390, 406-07, 737 P.2d 595 (1987); *Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104, 112, 634 P.2d 471 (1981); UCJI 40.06).

Exhibit 2
Page 25 of 40

The plaintiff must have (1) actually relied on the fraudulent misrepresentation by active concealment and (2) the plaintiff's reliance on the misrepresentation must have been reasonable. As to the first element, the plaintiff must have in fact relied upon the misrepresentation in acting or refraining from acting, and such reliance must have resulted in their loss. The plaintiff must have relied on the truth of the misrepresentation itself, and their reliance upon its truth must be a substantial factor in inducing them to act or to refrain from action.[20] Then, if the plaintiff actually relied on the misrepresentation, their reliance must have been reasonable.[21] In determining whether a plaintiff's reliance on alleged active concealment of the truth by a defendant was reasonable, you must consider the totality of the parties' circumstances and conduct, including the sophistication of the party asserting fraud.[22] In doing so, you may consider factors such as:

(a)    any information already known or obvious to the plaintiff; and (b) to confirm or refute the defendant's representation, as well as any resources or policies plaintiff had, or could have had, to detect such misrepresentations

(b)    the relative status, knowledge, experience, resources and sophistication of the plaintiff and the defendant in the telecommunications industry

---

[20] Restat 2d of Torts, §§ 537, cmt. b, 546, cmt. b, 548 (1977)

[21] Restat 2d of Torts, §§ 537(b), 547; *Vasquez-Lopez v. Ben. Or., Inc.*, 210 Or. App. 553, 580, 152 P.3d 940 (2007); UPM Instructions, p. 17

[22] *Vasquez-Lopez*, 210 Or. App. at 580 (2007); *Or. Pub. Emples. Ret. Bd. v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 428, 83 P.3d 350 (2004);  UPM Instructions, p. 17.

Exhibit 2
Page 26 of 40

(c)    the previous experience of the plaintiff and defendant in similar

telecommunications transactions.

If, specifically in identifying and blocking potentially misused SIM Cards;

(d)    the plaintiff''s ability to obtain information that would reveal the truth

that the defendant actively concealed;

(e)    the parties' respective access to specialists, means of information, and

qualifications to engage in telecommunications operations;

(f)    whether the plaintiff took reasonable precautions to safeguard its own

interests;

(g)    Whether the representation was specific or general; and

Whether the representation was a statement of fact or the expression of an

opinion.[23] The plaintiff must have suffered a pecuniary loss (*i.e.*, they must have

been "damaged") as a direct result of their justifiable reliance on the defendant's

material and false misrepresentation by active concealment using human behavior

simulation software.[24] If the plaintiff's loss or injury would not have occurred but

for a defendant's wrongful conduct, then the defendant's conduct caused the

plaintiff's loss or injury. On the other hand, if the plaintiff's loss or injury still

---

[23] UPM Instructions, p. 17-18.

[24] UPM Instructions, p. 19, citing *Knepper v. Brown*, 345 Or. 320, 329-332, 195 P.3d 383 (2008); *Strawn v. Farmers Ins. Co.*, 350 Or. 336, 352, 258 P.3d 1199, *adh'd to on recons*, 350 Or. 521, 256 P.3d 100 (2011); *Dizick v. Umpqua Cmty. Coll.*, 287 Or. 303, 311, 599 P.2d 444 (1979); *Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or. 390, 405, 737 P.2d 595 (1987); Restat 2d of Torts, §§ 550, 546, 548A).

Exhibit 2
Page 27 of 40

would have occurred even without the defendant's wrongful conduct, the defendant's conduct did not cause the plaintiff's loss or injury.

**Instruction No. 22: Compensatory Damages**

It is the duty of the court to instruct you about the measure of damages. By instructing you on damages, the court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must then determine the plaintiff's damages, if any, sustained as a direct result of the defendant's active concealment using human behavior simulation software.[25] The plaintiff has the burden of proving damages by a preponderance of the evidence. "Damages" means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by a defendant. Such damages are called "compensatory damages."

In deciding the amount of compensatory damages, you should consider the following:

1.    any of Digicel-Haiti's lost profits caused by a defendant's wrongful conduct; and

---

[25] UPM Instructions, p. 25; *see also e.g., Oksenholt v. Lederle Labs., Div. of Am. Cyanamid Corp.*, 294 Or. 213, 223, 656 P.2d 293 (1982), citing *Cluck et ux v. Fish et al*, 230 Or 63, 368 P2d 626 (1962); *Knepper v. Brown*, 345 Or. 320, 330-332, 195 P.3d 383 (2008), citing Restatement (Second) of Torts § 548A, cmts. A-b (1977),  W. Page Keeton, *Prosser and Keeton on Torts* § 110 at 767 (5th ed. 1984); *Restat. 2nd* of Torts §§ 550, 546.

Exhibit 2
Page 28 of 40

2.    any costs reasonably incurred by Digicel-Haiti in attempting to reduce, or mitigate, its lost profits directly caused by a defendant's wrongful conduct. Digicel-Haiti may recover only those ~~damages~~losses that ~~were caused by~~it actually suffered as a result of a defendant's wrongful conduct.[26]  Further, the only wrongful conduct at issue in this trial is Digicel-Haiti's allegation that UPM used human behavior simulation software in placing or connecting calls to Digicel-Haiti's network in Haiti with the requisite intent to deceive Digicel Haiti or to hinder Digicel Haiti's ability to identify and block SIM cards being used by other than natural persons for individual calls.[27] You may not award damages to Digicel-Haiti for harm that was not caused by UPM's use of human behavior simulation software.

The plaintiff's damages may consist of lost profits, the costs of mitigating losses, or both. In order to recover any damages, the plaintiff must establish the existence and amount of damages sustained as a result of a defendant's wrongful conduct with reasonable certainty,[28]

To recover for lost profits, the plaintiff must first prove that ~~there was a~~ some loss exists, and that the defendant's wrongful conduct caused that loss.[29] Those

---

[26] *Id.*

[27] Opinion and Order (ECF #294), p. 31.

[28] *Parker v. Harris Pine Mills, Inc.*, 206 Or. 187, 205, 291 P.2d 709 (1955).

[29] UCJI No. 77.01 (Damages for Lost Profits); UPM Instructions, p. 25.

Exhibit 2
Page 29 of 40

elements must be proven by clear and convincing evidence. If the plaintiff proves that a defendant caused the plaintiff to suffer lost profits by clear and convincing evidence, the plaintiff must then prove the existence and amount of its lost net profits that is reasonably probable by a preponderance of the evidence.[30]  The plaintiff may prove the amount of lost net profits with a reasonable estimate based on the evidence.[31] The plaintiff need not prove the exact amount of its lost profits, but the plaintiff is not entitled to recover damages based on speculation, unverifiable estimates of loss, or guesswork unsupported by the evidence and reasonable probability.[32]

To decide the amount of lost net profits, first decide the total amount of money the plaintiff likely would have earned but did not had there not been fraud by active concealment committed by a defendant. Then, subtract from that amount what would have been (1) the plaintiff's costs of ~~doing business~~ terminating those calls to earn that money; (2) the $0.05 per minute fee that it would have been

---

[30] *See e.g., Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or. 390, 392-93, 737 P.2d 595 (1987); *Cruz Dev., Inc. v. Yamalov*a, 174 Or. App. 494, 497-98, 26 P.3d 174 (2001); *Pearson v. Schmitt*, 259 Or. 439, 442, 487 P.2d 84 (1971).

[31] *Id.*

[32] UPM Instructions, p. 25; *see also JH Kelly, Ltd. Liab. Co. v. Quality Plus Servs.*, 305 Or. App. 565, 585, 472 P.3d 280 (2020), citing *Willamette Quarries v. Wodtli*, 308 Ore. 406, 412, 781 P2d 1196 (1989) ("Lost profits or sales, however, are not proved merely by testimony of unverifiable expectations of profits."); *Buck v. Mueller*, 221 Ore. 271, 282, 351 P2d 61 (1960) ("[L]oss of profits must not be uncertain and speculative."); *Schafer v. Sunset Packing Co.*, 256 Or. 539, 544, 474 P.2d 529 (1970) ("the degree to which such proof will succeed in establishing the reasonable certainty of profits must depend in large measure upon the circumstances of the particular case and thus will escape hard and fast rules of general applicability," citing 64 Harv L Rev 318, 319 (1950)).

Exhibit 2
Page 30 of 40

required to pay the Haitian government for each minute; and (3) the amount of money that UPM and/or Digicel-Haiti's roaming partners in the United Stated paid plaintiff for the calls terminated successfully on to Digicel-Haiti's network using human behavior simulation software. What remains are lost profits, which may be awarded as compensatory damages.[33]

As I previously explained, the plaintiff also may recover the costs that it reasonably incurred in trying to reduce, or mitigate, its losses ~~caused by a defendant'~~ directly arising from  UPM's wrongful conduct. using HBS software

## Instruction No. 23: Punitive Damages

If you find for the plaintiff on its fraud claim and you have determined that the plaintiff is entitled to an award of compensatory damages, you may, but are not required to, also award punitive damages.[34] The purposes of punitive damages are to punish a defendant's misconduct and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff. for economic losses caused by defendant's wrongful conduct.[35] Punitive damages should only be

---

[33] UPM Instructions, p. 25.

[34] UPM Instructions, p, 28; *see also Klinicki v. Lundgren,* 298 Or. 662, 687, 695 P.2d 906, 922 (1985) ("Punitive damages cannot exist alone."); *Schwarz v. Philip Morris USA, Inc.*, 272 Or. App. 268, 283, 355 P.3d 931 (2015)l UCJI No. 75.02 (Punitive Damages—General).

[35] *Klinicki v. Lundgren*, 298 Or. 662, 686, 695 P.2d 906, (1985) ("actual damages are to compensate the injured party, whereas punitive damages are "to give bad actors a legal spanking" (citing *Lane County v. Wood*, 298 Or 191, 203, 691 P2d 473 (1984)); remedial damages "are different from punitive damages, which are intended to punish the tortfeasor and not to compensate the injured person," *Busch v. McInnis Waste Sys.*, 366 Or. 628, 666, 468 P.3d 419 (2020), citing *DeMendoza v. Huffman*, 334 Or. 425, 442, 445-46, 51 P.3d 1232 (2002),

Exhibit 2
Page 31 of 40

awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.[36]

The plaintiff has the burden of proving by clear and convincing evidence that punitive damages should be awarded and, if so, the amount of any punitive damages. You may award punitive damages against a defendant if the plaintiff shows by clear and convincing evidence that the defendant ~~either: (a) has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety, and welfare of others; or(b)~~ has acted with malice.[37] "Malice" means intentionally doing an injurious or wrongful act without justification or excuse. ~~As I previously explained~~This includes committing an act with a bad motive, or done so recklessly as to be in disregard of social obligations, or done wantonly, maliciously, or wickedly.[38] Again, clear and convincing evidence is evidence that makes you believe that the truth of the claim is highly probable.

Evidence has been received of conduct by the defendant occurring outside

---

[36] *Schwarz*, 272 Or. App. at 283, quoting *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 US 408, 123 S Ct 1513, 155 L Ed 2d 585 (2003).

[37] UPM Instructions, p. 28; UCJI No. UCJI No. 75.02 (Punitive Damages—General), COMMENT ("Read both the recklessness and the malice standards only if the plaintiff alleges both and submits both to the jury."); *see also e.g.*, *Navas v. City of Springfield*, 122 Or. App. 196, 201, 857 P.2d 867 (1993); *Neikes v. Ticor Title Co.*, 291 Or. App. 720, 727-28, 423 P.3d 102 (2018).

[38] UPM Instructions, p. 32 (UCJI 75.02C (Punitive Damages—Malice Defined (unmodified)).

Exhibit 2
Page 32 of 40

the State of Oregon.[39] This evidence may be considered in evaluating the reprehensibility of the defendant's conduct occurring in Oregon if the out-of-state conduct is reasonably related to the conduct of the defendant directed toward the plaintiff in Oregon.[40]

You may not award punitive damages against the defendant based on evidence of out-of-state conduct that was lawful in the state where it occurred (*i.e.*, Oregon).[41] Further, when considering reprehensibility, you may not consider conduct of the defendant, wherever it might have occurred, that is not similar to the conduct upon which you found the defendant liable to the plaintiff.[42]There is no fixed standard for determining the amount of punitive damages, and you are not required to award punitive damages. If you decide to award punitive damages, you should consider all the following, separately for each defendant, in determining the amount: (a) how reprehensible was that defendant's conduct, considering the

---

[39] *Id.*, p. 30-31 (UCJI No. 75.02A (Punitive Damages—Out-of-State Conduct) (unmodified) and UCJI No. 75.02A (Punitive Damages—Harm to Others) (unmodified)); *see also* UCJI No. 75.02A and 75.02B, CAVEAT ("This instruction should not be used unless evidence has been received of out-of-state conduct by the defendant. If it has been received, the jury *must* be instructed that it may not use this type of evidence to punish a defendant for conduct that was lawful in the jurisdiction where it occurred. *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 US 408, 421–22, 123 S Ct 1513, 155 L Ed2d 585 (2003)." (emphasis in original)); UCJI No. 75.02 CAVEAT ("It may be necessary to instruct the jury on certain other federal constitutional limitations on punitive damages. *See* UCJI 75.02A (jury may not punish for out-of-state harm); UCJI 75.02B (jury may not punish for harm to others).").

[40] *Id.*

[41] *Id.* ("(*i.e.*, Oregon)" added).

[42]*Id.*; *see also id.,* p. 28 (rephrasing UCJI No. 75.02A).

Exhibit 2
Page 33 of 40

nature of that conduct and the defendant's motive; (b) is there a reasonable relationship between the amount of punitive damages and the plaintiff's harm; (c) has that defendant taken remedial measures that are reasonable under the circumstances to prevent reoccurrence of the offensive conduct?[43] and (ed) in view of the defendant's financial condition, what amount is necessary to punish the defendant and discourage future wrongful conduct? You may not punish a defendant merely because a defendant has substantial financial resources.

**Instruction No. 24: Verdict Form**

A form titled "Verdict" has been prepared for you. As you will see, the Verdict form has several questions. Some of the questions ask you to answer either "Yes" or "No." To answer those questions, you should place either a check mark or an "X" on the applicable line. Other questions ask you to fill in a dollar figure, if applicable. More detailed instructions are set forth in the Verdict form in *italics*. Those detailed instructions will guide you by telling you which questions you must answer, and which questions you must skip, depending on your previous answers. As I will explain further after the closing arguments, your decision on each question that you answer must be unanimous.

***** *CLOSING ARGUMENTS BY COUNSEL* *****

---

[43] UPM Instructions, p. 29.

Exhibit 2
Page 34 of 40

**Instruction No. 25: Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court. You should diligently strive to reach agreement with all other jurors if you can do so. Your verdict must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honestly held belief about the weight and effect of the evidence simply to reach a verdict.

**Instruction No. 26: Consideration of Evidence—Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

1.    Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to

Exhibit 2
Page 35 of 40

do with it. This includes discussing the case in person, in writing, by phone, by email, by text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your friends, your employer, the media or press, and the people involved in this trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered by a federal judge not to discuss the matter. You must then report the contact to the court.

2.      Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it. Do not do any research, such as consulting dictionaries, searching the Internet, or using any reference materials, and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any information, person, or place mentioned during the trial. Also, do not do any research about the law, court procedures, or the people involved in this case— including the parties, the witnesses, or the lawyers—until after I have excused you as jurors. If you happen to read or hear anything touching on this case in the media or elsewhere, turn away and report that to the court as soon as possible.

These rules protect each party's right to have this case decided only on

Exhibit 2
Page 36 of 40

evidence that has been presented here in court. Witnesses in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## Instruction No. 27: Evidence in Electronic Format

The exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, monitor, and related equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer. You also will be provided with a paper list of all exhibits received in evidence. You may request a

Exhibit 2
Page 37 of 40

paper copy of any exhibit received in evidence by sending a note through the courtroom deputy, Mary Austad. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to Ms. Austad, signed by your foreperson or by one or more members of the jury.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the courtroom deputy present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any non-juror is in the jury room, the jury shall not deliberate or discuss the merits of the case. No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of the equipment.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any outside website, database, directory, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

Exhibit 2
Page 38 of 40

**Instruction No. 28: Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, also known as a "bailiff," signed by your presiding juror or one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing. I will communicate with any member of the jury on anything concerning the case only in writing or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**Instruction No. 29: Return of Verdict**

After you have reached unanimous agreement on each applicable question on the Verdict form, your presiding juror should fill in the form, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

Exhibit 2
Page 39 of 40

Document comparison by Workshare Compare on Friday, November 11, 2022 2:59:32 PM

| Input: | |
|---|---|
| Document 1 ID | file://F:\STORAGE\LSSe64DOCS\00000736\00702022.000.DOCX |
| Description | 00702022.000 |
| Document 2 ID | file://F:\STORAGE\LSSe64DOCS\00000736\00702014.000.DOCX |
| Description | 00702014.000 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 218 |
| Deletions | 38 |
| Moved from | 2 |
| Moved to | 2 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 260 |

Exhibit 2
Page 40 of 40

*Draft dated: October 29, 2022 (Not filed in CM/ECF)*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDING, S.A., d/b/a DIGICEL-HAITI**, | Case No. 3:15-cv-185-SI |
| Plaintiff, | **VERDICT** |
| v. | |
| **UPM TECHNOLOGY, INC. and DUY BRUCE TRAN**, | |
| Defendants. | |

We, the Jury, being duly empaneled and sworn, do unanimously find as follows:

1. Did Digicel-Haiti prove by clear and convincing evidence that UPM, Mr. Tran, or both engaged in fraud by active concealment by using human behavior simulation software to mimic the patterns of individual human callers to disguise the fact that they were a business using multiple SIM cards and terminating multiple calls on Digicel-Haiti's network in the context of traditional, or in-country, bypass?

   a.   UPM                    _____YES                    _____NO

   *If you answered "no" to Question 1(a), skip Question 1(b).*

   b.   Mr. Tran              _____YES                    _____NO

Exhibit 3
Page 1 of 6

2.    Did Digicel-Haiti prove by clear and convincing evidence that UPM, Mr. Tran, or both

engaged in fraud by active concealment by using human behavior simulation software

to mimic the patterns of individual human callers to disguise the fact that they were a

business using multiple SIM cards and terminating multiple calls on Digicel-Haiti's

network in the context of Digicel-Haiti's RLYH program?

a.    UPM                _____YES                _____NO

Exhibit 3
Page 2 of 6

*If you answered "no" to Question 2(a), skip Question 2(b).*

      b.      Mr.              _____YES         _____NO
            Tran

*If you answered "yes" to <u>any</u> part of either Question 1 or Question 2, continue to Question 3. If you answered "no" to both Question 1(a) and Question 2(a), your verdict is for the Defendants; do not answer any more questions; have the presiding juror sign and date this form.*

3.      Did Digicel-Haiti prove by clear and convincing evidence that it suffered damages caused by a Defendant's fraud by active concealment by using human behavior simulation software?

      a.      Bypass:           _____YES         _____NO

      b.      RLYH:             _____YES         _____NO

*If you answered "yes" to <u>any</u> part of Question 3, continue to Question 4. If you answered "no" to <u>both</u> part (a) and part (b) of Question 3, your verdict is for the Defendants; do not answer any more questions; have the presiding juror sign and date this form.*

4.      What is the amount of Digicel-Haiti's damages, if any, caused by any Defendant's fraud by active concealment by using human behavior simulation software and proven by Digicel-Haiti by a preponderance of the evidence?

      a.      Bypass damages:      $ _____

      b.      RLYH damages:       $ _____

      c.      Total damages:        $ _____

     *Line c must equal the sum of Line a and Line b.*

5.      Of the amount(s), if any, specified in your answer to Question 4, what percentage is

      a.      the joint responsibility of UPM and Mr. Tran:     _____%

      b.      the sole responsibility of UPM:              _____%

Exhibit 3
Page 3 of 6

c.      the sole responsibility of Mr. Tran:          _____%

*The listed percentages must total 100 percent.*

Exhibit 3
Page 4 of 6

6.      Did Digicel-Haiti prove by clear and convincing evidence that it should recover

punitive damages against Defendant UPM?

_____YES                    _____NO

*If you answered "yes" to either Question 1(b) or Question 2(b) and Question 3, continue to Question 7. If you answered "no" to both Question 1(b) and Question 2(b), skip to Question 8.*

7.      Did Digicel-Haiti prove by clear and convincing evidence that it should recover

punitive damages against Defendant Mr. Tran?

_____YES                    _____NO

*If you answered "yes" to either Question 6 or Question 7, continue to Question 8. If you answered "no" to both Question 6 and Question 7, do not answer any more questions; have the presiding juror sign and date this form.*

8.      What is the total amount of punitive damages that Digicel-Haiti should recover

against either or both Defendants?

$_____

9.      Of the amount, if any, specified in your answer to Question 8, what percentage is

a.      the joint responsibility of UPM and Mr. Tran:      _____%

b.      the sole responsibility of UPM:      _____%

c.      the sole responsibility of Mr. Tran:      _____%

*The listed percentages must total 100 percent.*

*Your deliberations are now complete. Please have the presiding juror date and sign this form and inform the Courtroom Deputy that you are ready to return to the Courtroom.*

DATED this_____day of November, 2022.

_____

Presiding Juror

Exhibit 3
Page 5 of 6

Document comparison by Workshare Compare on Friday, November 11, 2022 3:09:31 PM

| Input: | |
|---|---|
| Document 1 ID | file://F:\STORAGE\LSSe64DOCS\00000736\00702024.000.DOCX |
| Description | 00702024.000 |
| Document 2 ID | file://F:\STORAGE\LSSe64DOCS\00000736\00702019.000.DOCX |
| Description | 00702019.000 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 23 |
| Deletions | 0 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 23 |

Exhibit 3
Page 6 of 6