**Kathryn P. Salyer**, OSB #883017
**Eleanor A. DuBay**, OSB #073755
**Blake Van Zile,** OSB #184672
ksalyer@tomasilegal.com
edubay@tomasilegal.com
bvanzile@tomasilegal.com
Tomasi Bragar DuBay
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204-3136
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**Christopher W. Savage**, D.C. Bar #362657
**Katherine Sheriff**, D.C. Bar #1632141
chrissavage@dwt.com
katherinesheriff@dwt.com
(Admitted *Pro Hac Vice*)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005-3317
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

        *Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNIGESTION HOLDING, S.A**., a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>        Plaintiff & Counterclaim-Defendant,<br><br>    v.<br><br>**UPM TECHNOLOGY, INC**., *et al.,*<br><br>        Defendants & Counterclaim-Plaintiffs | Case No. 3:15-CV-00185-SI<br><br>**SUPPLEMENTAL BRIEFING REGARDING LOST PROFITS AND MOTION FOR DIRECTED VERDICT PURSUANT TO RULE 50(a)** |

Page 1 – SUPPLEMENTAL BRIEFING REGARDING LOST PROFITS AND
MOTION FOR DIRECTED VERDICT PURSUANT TO RULE 50(A)
UPM-L1\00702754.000

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

<u>**LOCAL RULE 7-1 CERTIFICATION**</u>

Pursuant to Local Rule 7-1(a), Defendants state that their counsel determined that under the present circumstances, discussion of this motion with counsel for Digicel-Haiti would have been futile and the supplemental briefing set forth herein was requested by the Court, thus, this constitutes adequate compliance in the circumstances with Local Rule 7-1(a).

<u>**MOTION**</u>

Defendants UPM Technology, Inc. and Bruce Tran (collectively, "UPM") hereby submit its supplemental briefing regarding the applicable legal standard for recovering lost profits in a fraud case—and, specifically, whether evidence of lost revenues alone is sufficient to establish damages with reasonable certainty, as requested by the Court during trial on November 15, 2022. Further, and in part based on these points, UPM moves for judgment as a matter of law as to Plaintiff Digicel-Haiti's claim for damages pursuant to Fed. R. Civ. P. ("Rule") 50(a).

## I.     INTRODUCTION AND SUMMARY

There is no dispute between the parties that Oregon law allows a flexible approach for determining the appropriate measure of damages in a fraud case. *See e.g.*, *Dizick v. Umpqua Cmty. Coll.*, 287 Or. 303, 312, 599 P.2d 444 (1979). The pertinent issue, however, is whether that flexible standard can be extended past the minimum evidentiary requirements for establishing tort damages and allow Digicel-Haiti's wholly speculative damages claim against UPM to proceed to the jury. Judgment as a matter of law is appropriate here because, based upon Digicel-Haiti's trial materials, the current record, and the evidence anticipated in the remainder of Digicel-Haiti's case-in-chief (as shown by its witness statements), Digicel-Haiti cannot and will not be able to establish a legally sufficient evidentiary basis for the jury to determine damages with reasonable certainty.

In the event the Court chooses to deny or defer UPM's motion for a directed verdict, UPM respectfully requests that the Court allow further briefing in support of this motion at that time. Moreover, as the Court continues to review the parties' respective proposed jury instructions,

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

UPM again urges the Court to adopt its proposed Jury Instructions and Verdict Form[1] for the reasons previously set forth and further articulated here.[2]

## II.    DIGICEL-HAITI'S DAMAGES THEORY AND TRIAL EVIDENCE

As noted by the Court, Digicel-Haiti's theory of damages arising from "lost profits" is, in fact, based entirely on lost *revenues*. Thus far, Digicel-Haiti's corporate witness, Gerard Laborde, has testified that Digicel-Haiti lost revenues of approximately $18 million during the period of 2011 to 2015 due to bypass. Contemporaneously herewith, UPM is filing a motion to strike all of that testimony due to severe discovery violations by Digicel-Haiti. But even if that testimony remains, UPM notes that in its Witness Statements, Digicel-Haiti identified Mr. Laborde as "describ[ing] the damages suffered by Digicel Haiti measured in *lost international call revenue*."[3]   Those witness statements do not identify any witness as proffering testimony as to Digicel-Haiti's *lost profits*; likewise, no proposed trial exhibit offers such information or underlying data.[4]   Additionally, the data purportedly underlying Mr. Laborde's above-described lost revenue calculation was not presented at trial.

As a further example of the inadequacy of Digicel-Haiti's damages case, its Lay Witness Statement states that Mr. Laborde would also testify that "Digicel Haiti also experienced an increase in expenses related associated with anti-bypass and anti-fraud initiatives and consultant fees associated with anti-bypass and software to counter HBS," which Mr. Laborde's testimony

---

[1] Defendants' Proposed Jury Instructions (ECF #473) ("UPM Instructions") and Defendant's Proposed Verdict Form (ECF #465) ("UPM Verdict Form").

[2] Specifically, UPM refers the Court to its Supplemental Briefing in Support of UPM Instructions and Verdict Form (ECF #505-506); Response to Plaintiff Unigestion Holdings, S.A.'s Objections to Defendants' Proposed Jury Instructions and Verdict Form (ECF #496) and Defendants' Objections to Plaintiff's Jury Instructions and Verdict Form (ECF #470), fully incorporated herein by reference.

[3] Digicel-Haiti's Amended Phase I Lay Witness Statement (ECF #390), p. 11 at ¶ N.

[4] *Id.*; *see also* Digicel-Haiti's Amended Phase I Expert Witness Statement (ECF #391); Digicel-Haiti's Amended Phase I Trial Exhibit List (ECF #448); Digicel-Haiti's Second Amended Phase I Trial Exhibit List (ECF #507).

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

did touch upon, but failed to identify or establish those expenses with any specificity which the jury could reasonably ascertain any recoverable amounts.[5] Also, Mr. Laborde was supposedly going to testify regarding the "diminution of call quality and company goodwill and reputation," but offered no such evidence. This testimony—unsupported by any underlying data or other documentary evidence—is clearly legally insufficient for the jury to reasonably approximate Digicel-Haiti's claimed damages with reasonable certainty.

## III. RULE 50(a) DIRECTED VERDICT STANDARDD

Rule 50(a) provides for judgment as a matter of law at trial:

(1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
(A) resolve the issue against the party; and
(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
(2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

## IV. DIGICEL-HAITI'S BURDEN OF ESTABLISHING DAMAGES WITH REASONABLE CERTAINTY

The legal insufficiency of Digicel-Haiti's damages theory and trial evidence in support of its claim is two-fold. Oregon law requires that "*the evidence must disclose the damages sustained with reasonable certainty, and they must be shown to be the proximate result of defendant's wrongful acts*." *Parker v. Harris Pine Mills, Inc.*, 206 Or. 187, 205, 291 P.2d 709 (1955) (emphasis added). Digicel-Haiti's damages evidence fails to meet this standard.

First, Digicel-Haiti's claim for damages generally fails because proximate cause is lacking. "Damages properly recoverable in an action for intentional misrepresentation are those which are a *direct and necessary result of defendant's acts or omissions*." *Oksenholt v. Lederle*

---

[5] *Id.*

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*Labs., Div. of Am. Cyanamid Corp.*, 294 Or. 213, 223, 656 P.2d 293 (1982), citing *Cluck et ux v. Fish et al,* 230 Or 63, 368 P2d 626 (1962) (emphasis added). "Losses suffered through injury to reputation, lost business and impairment capacity are such that could flow naturally from an intentional misrepresentation." *Id.*; *see also e.g., Knepper v. Brown*, 345 Or. 320, 330-332, 195 P.3d 383 (2008), citing *Restatement (Second) of Torts* § 548A, cmts. a-b (1977), W. Page Keeton, *Prosser and Keeton on Torts* § 110 at 767 (5th ed. 1984); *Restat. 2nd of Torts* §§ 550, 546. There is no indication that Digicel-Haiti will offer any admissible, probative evidence of any injury actually and proximately caused by UPM's bypass activities in Haiti at all, much less evidence of damages caused by any UPM use of human behavior software ("HBS") to satisfy this preliminary burden of proof.

Second, Digicel-Haiti's "recovery cannot be based upon mere guess work;" in order to recover any damages in this case, it still bears the burden of presenting "evidence upon which their ***existence and amount*** may be determined with ***reasonable certainty***." *Parker,* 206 Or. at 197 (emphasis added). Where, as here, compensatory damages ***<u>can</u> be proven with approximate accuracy, "the necessary evidence <u>must</u> be supplied***." *Id.*, citing *Porter Const. Co. v. Berry et al.*, 136 Or. 80, 93, 298 P. 179 (1931)) (emphasis added) (finding plaintiff's evidence at trial too speculative to support jury verdict); *see also Bixler v. First Nat'l Bank,* 49 Or. App. 195, 202, 619 P.2d 895 (1980) (same). As described below, Digicel-Haiti has not, and will not, provide the necessary evidence to ascertain its actual damages with reasonable certainty, therefore failing the second requirement for a viable damages claim.

### A.   Lost Profits

The Oregon Supreme Court has long held that "the established rule in Oregon that in order to recover damages for lost profits, ***both the existence and the amount*** of such profits must be proved with ***reasonable certainty***." *Pearson v. Schmitt*, 259 Or. 439, 442, 487 P.2d 84 (1971) (internal quotation marks and citations omitted; emphasis added); *see also Buck v. Mueller,* 221 Or. 271, 282, 351 P.2d 61 (1960); *Schafer v. Sunset Packing Co.*, 256 Or. 539, 544, 474 P.2d

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

529 (1970). The Court further clarified that, in articulating that rule,

> ***We were speaking of net profits as distinguished from gross profits.*** The evidence submitted must provide the jury with a sufficient basis for estimating the amount of damages (lost profits) with reasonable certainty. *Stubblefield v. Montgomery Ward & Co.*, 163 Or. 432, 96 P.2d 774 (1940). The evidence offered *must not allow the jury to freely speculate as to the amount* of damages for the lost __*net*__ profits.

*Id.* (last emphasis in original) (holding that the plaintiff's testimony that "his lost earnings were *about* $ 4,900," without any evidence of what it cost him to operate his business, failed to meet the required test of reasonable certainty). As such, "[a] person seeking lost profits __*must present evidence that refers 'unambiguously to __net__ profits*__," *because* '***only __net__ lost profit may be recovered***.'" *Cruz Dev., Inc. v. Yamalov*a, 174 Or. App. 494, 497, 26 P.3d 174 (2001) (internal quotation marks, internal citation, and brackets omitted; emphasis added).

In order to meet the reasonable certainty standard, moreover, a plaintiff must present more than speculative or unverifiable estimates of loss to recover lost profits. *JH Kelly, Ltd. Liab. Co. v. Quality Plus Servs.*, 305 Or. App. 565, 585, 472 P.3d 280 (2020)*, citing Willamette Quarries v. Wodtli*, 308 Or. 406, 412, 781 P.2d 1196 (1989) ("***Lost profits*** or sales, however, ***are not proved merely by testimony of unverifiable expectations of profits***." (emphasis added)); *Buck*, 221 Or. at 282 ("[L]oss of profits must not be uncertain and speculative."). Like any other damages, when determining "whether the proof measures up to the requirements of the law governing the right to recover damages for anticipated profits ***in a tort action***,

> [t]he general rule is that such profits are a proper element of damage when the loss is the ***direct and necessary result of the defendant's acts*** and the profits can be shown with a ***reasonable degree of certainty.*** Damages which are speculative and contingent may not be recovered…Absolute certainty that there would have been profits, or certainty as to their amount, is, of course, not required. But it is ***essential that the plaintiff "present such evidence as might reasonably be expected to be available under the circumstances"***. Restatement, Torts, 580, § 912. See, 15 Am. Jur., Damages, 574, § 157, where the author says: "The proof ***must pass the realm of conjecture, speculation or opinion*** not founded on facts, and must ***consist of actual facts from which a reasonably accurate conclusion*** regarding the cause and the amount of the loss can be logically and rationally drawn", citing *Homestead Co. v. Des Moines Electric Co.* (C. C. A. 8th) 248 F. 439, 12 A. L. R. 390.

*Randles v. Nickum & Kelly Sand & Gravel Co.*, 169 Or. 284, 286-288, 127 P.2d 347 (1942)

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

(citations partially omitted; emphasis added) (while there was substantial evidence that the defendant converted the plaintiffs' lumber, the plaintiffs' "mere estimate" of anticipated profits from certain construction contracts, with no supporting data from which the jury could have ascertained whether the amount claimed or any other amount would have been realized failed the reasonable certainty standard).

In short, although the type and quantum of evidence establishing fraud damages depends on the circumstances of the case,

> claims for damages resulting ***from torts*** consisting of alleged loss of earnings or income of a business, as in this case, whether past or future, must nevertheless be established with "reasonable certainty" in the sense that **"*supporting data*" must be offered to the extent that such data is reasonably available to show both the existence and amount of the alleged loss of past or future earnings or income, and in terms of net, rather than gross earnings *or income*.** See *Pearson v. Schmitt*, 259 Or. 439, 442, 487 P.2d 84 (1971). Cf. *Verret v. Leagjeld*, 263 Or. 112, 115, 501 P.2d 780 (1972). See also McCormick on Damages, 309-313, § 87 (1935).

*Jenks v. Larimer*, 268 Or. 37, 41-42, 518 P.2d 1301 (1974) (emphasis added) (because the plaintiff, a self-employed driver, claimed the gross amount payable to him as a driver, less only the cost of operating that car, the evidence offered failed to satisfy the reasonable certainty standard; thus, the trial court erred in submitting lost income claim to the jury and remanded for a new trial).

UPM has found no controlling authority contrary to this well-established standard, or any caselaw indicating that a tort plaintiff would ever be entitled to recovery of loss revenue, or gross profits, based solely on testimonial estimates, without any basis in evidence or other supporting data. Rather, in *Cruz*, for instance, the defendant "submitted no evidence of lost net profits" in support of her counterclaim for lost profits; she just testified at trial to her lost rental income and offered subsequent rental agreements to prove the amount of that lost income, which only identified her lost revenue, not her lost net profits. 174 Or. App. at 498. The Court of Appeals found that this evidence was insufficient to establish lost *net* profits and, moreover, the rental agreements showing her maintenance/repair obligations showed that her lost rental income necessarily failed to account for operating expenses and there was "no evidence from which a jury could calculate defendant's lost net profits without engaging in pure speculation." *Id*., citing

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*Pearson v. Schmitt*, 259 Or. 439, 442, 487 P.2d 84 (1971). *See also e.g.*, *Summa Real Estate Grp., Inc. v. Horst*, 303 Or. App. 415, 464 P.3d 483 (2020) ("Once the trial court determined that ***there was insufficient evidence to determine the amount of expenses***, it should have concluded that respondents had f***ailed to prove lost profits with reasonable certainty***, and it erred in awarding the individual respondent lost profits as damages on his intentional interference with economic relations claim." (emphasis added)); *Neikes v. Ticor Title Co.*, 291 Or. App. 720, 726, 423 P.3d 102 (2018) ("Plaintiff presented no evidence or supporting testimony about the market to back up his belief as to his lost profit from a sale, which…amounts to pure speculation on the part of plaintiff."); *Frogge v. US West Communications, Inc.*, 120 Or. App. 619, 620, 853 P.2d 1323, *on recons* 124 Or. App. 669 (1993), *rev den*, 319 Or. 36 (1994) ("Plaintiff's brief relates testimony that either refers expressly to lost *gross* profits, or is ambiguous. Plaintiff directs us to no evidence, nor have we found any, that establishes her lost net profits. The directed verdict was proper, because plaintiff presented no evidence from which a reasonable trier of fact could find the amount of her damages.").

Relevant here, and as noted by the Court, Digicel-Haiti's damages theory appears to be entirely premised on lost ***revenues***—which are not recoverable under controlling law. Digicel-Haiti argues that each minute of bypass traffic should have generated revenue at the rate of $0.23 per minute.[6] Because Digicel-Haiti has not presented, or suggested that it will present, any evidence of its lost ***net*** profits, its entire theory as to lost international calling revenue is fundamentally flawed. And, even if Digicel-Haiti were actually trying to claim lost profits, "the ***essential ingredient of proof*** of lost profits to a reasonable certainty ***is supporting data***," and Digicel-Haiti has none. *Verret v. Leagjeld*, 263 Or. 112, 115, 501 P.2d 780 (1972) (emphasis added); *see also e.g., Rindlisbacher v. Steinway & Sons Inc.*, 497 F. Supp. 3d 479, 512-13 (D. Ariz.

---

[6] It also argues, somewhat bizarrely, that it is entitled to that revenue ***in addition to*** the $0.09 per minute that UPM paid for using Digicel-Haiti's local service from within Haiti. Bizarre or not, this is also a revenue-based theory, not a profits-based theory, and therefore insufficient under Oregon law.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

2020) (lost profits theory too speculative to support a judgment; "[t]o accept the Rindlisbachers' lost-profit damages theory, the Court would be required to make numerous, unjustified inferential leaps that are wholly unsupported by the record.").

After years of litigation, Digicel-Haiti has not identified or provided any supporting data to substantiate its claimed damages, and the bare estimates of witnesses (without any underlying evidentiary basis) is clearly insufficient to reasonably establish the existence and amount of lost net profit. In addition to the numerous other problems with its damages claim (as detailed in UPM's various filings on this point), therefore, Digicel-Haiti's damages claim should be rejected because it is inconsistent with Oregon law. The Court should enter judgment as a matter of law against Digicel-Haiti's lost "profits" claim because any verdict rendered would be impermissibly speculative.

**B. Digicel-Haiti Otherwise Fails to Provide Sufficient Data to Support Its Other Compensatory Damages Theories, Including Supposed Bypass Reduction And Mitigation Costs**

1. *Bypass Reduction and Mitigation Costs*.

Not only can Digicel-Haiti not recover its lost revenues on a "lost profits" theory; it cannot recover its expenses and costs supposedly incurred in detecting, reducing and/or mitigating unwanted bypass operations on its network that do not proximately arise from Digicel-Haiti's investigation and blocking of UPM's bypass operations based on HBS software specifically.

In the Third Amended Complaint (ECF #200) ("TAC"), Digicel-Haiti alleges that "[i]n early 2014, Digicel Haiti uncovered evidence of possible fraudulent activity using bypass techniques and discovered equipment typically used in bypass fraud during monitoring and investigation designed to detect and deter bypass operations," which discovery purportedly ultimately led to the identification of UPM's activities in Haiti.[7] And, insofar as Digicel-Haiti will attempt to establish its investigation costs at trial, Mr. Laborde will describe "how Digicel Haiti

---

[7] TAC at ¶¶ 72-29.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

first became aware that UPM was involved in bypass on its network" and, "in particular, the operation that discovered UPM's Bypass involvement in Haiti in July 2014."[8] It follows that, because Digicel-Haiti cannot allege and prove that it was aware of ***UPM's*** bypass operations using HBS software specifically before 2014, it cannot recover any costs of detecting/investigating bypass activity generally which pre-date Digicel-Haiti's awareness of UPM's use of its network or which relate to investigation of other entities engaged in bypass either before, during, or after its investigation relating to UPM.

Moreover, even with respect to 2014, Digicel-Haiti cannot show that UPM's use of HBS was the cause of any such costs. Assuming that Digicel-Haiti could establish non-speculative mitigation costs in the first place, which it has not done, it must still present sufficient evidence that those costs arose ***directly*** from detecting, investigating, blocking or otherwise mitigating ***UPM's*** activities using HBS software. *Parker, Oksenholt, supra.* For example, Digicel-Haiti has presented no evidence regarding how much it costs (or might cost) to identify and investigate bypass activities that do not involve HBS, nor has it presented any evidence that any UPM use of HBS made identifying UPM's operations any more difficult than the non-HBS baseline. Additionally, it has not presented any evidence that UPM used multiple gateways to virtually "move" SIMs from place to place, nor has it presented any evidence that UPM varied the pattern of calls made by any SIM that would delay or deter Digicel-Haiti in identifying and blocking UPM's operations. In this regard, any damages based on costs that Digicel-Haiti incurred in detecting or mitigating bypass in general may not be considered. That is, Digicel-Haiti is not entitled to damages for bypass-related costs that it would have incurred irrespective of UPM's use of HBS software. Because bypass *per se* is not fraudulent, costs that Digicel-Haiti incurred to detect or mitigate bypass in general are not recoverable.

2. *No Harm to Network/Costs to Infrastructure*.

Digicel-Haiti has presented no evidence, and has not indicated that any of its

---

[8] Digicel-Haiti's Amended Phase I Lay Witness Statement (ECF #445), p. 8.

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

witnesses have any evidence, to suggest that any UPM bypass activities at all – much less bypass using HBS – caused any harm to, or imposed any costs on, Digicel-Haiti's network infrastructure. To the contrary, Mr. Laborde testified that Digicel-Haiti itself set the rate for local calling at $0.09 per minute in order to cover the costs of operating its network. The only possible conclusion is that UPM's use of the network fully compensated Digicel-Haiti for that use.

Moreover, Digicel-Haiti has no evidence to present as to how much traffic UPM terminated onto Digicel-Haiti's network. Mr. Laborde testified that Digicel-Haiti's network handles several **billion** minutes of traffic each year. Without evidence that UPM sent a significant fraction of that amount to Digicel-Haiti, any claim of harm to its network fails.[9]

3. _No Evidence of Loss of Goodwill_.

As to claims involving damages to the good will of a business, the Oregon Supreme Court has adopted a rule similar to the standard for lost profits:

> The evidence must afford sufficient data from which the court or jury may properly estimate the amount of damages, which data shall be established by facts rather than by mere conclusions of witnesses. 25 C.J.S., Damages, 813, § 162. It appears, however, that there is no specific rule for determining the value of good will, and that each case must be considered and determined in the light of its own particular facts. _Schuh Trading Co. v. Commissioner of Internal Revenue_, (C.A.7th) 95 F. 2d 404, 410; 38 C.J.S., Good Will, 953, § 6. Elements which may be considered are, length of time the business has been in existence; the nature and character of the business; its success or lack thereof; its average profits; and the probability of its continuance under the same name. 2 Sutherland, Damages, 4th ed, p. 1459, § 448. Past profits may be established, and the value of the good will estimated therefrom as a basis, subject to being reduced by a showing of a depression in trade or other circumstances that would tend to make the business less valuable. 1 Sedgwick on Damages, 9th ed., p. 513, § 254."

---

[9] Using three billion minutes as a rough estimate, one percent of that amount would be 30,000,000 minutes in a year. Even if one assumes that traffic at that level could somehow harm Digicel-Haiti's network, there is no evidence whatsoever – Digicel-Haiti certainly has none – that UPM ever sent that amount of traffic (or any amount of traffic). UPM's evidence will shows that it only sent about 1.4 million minutes of traffic over the course of about 14 months, spread over two periods. The point here, though, is that because Digicel-Haiti has no evidence from which a jury could conclude that UPM's use of HBS generated enough traffic to harm Digicel-Haiti's network, its claim for harm to the network fails.

_TOMASI BRAGAR DUBAY_
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

*Kwipco, Inc. v. Gen. Trailer Co.*, 267 Or. 184, 188-89, 515 P.2d 1317 (1973), quoting Levene *et ux v. City of Salem*, 191 Or. 182, 200, 229 P.2d 255 (1951); *see also Buck v. Mueller*, 221 Or. 271, 285, 351 P.2d 61 (1960) (damage to goodwill claim rejected for insufficient evidence); *Western Rebuilders v. Felmley*, 247 Or. 577, 579, 430 P.2d 348 (1967) (same). Digicel-Haiti has no such evidence to present. It has, *at most,* the "mere conclusions" of witnesses. This aspect of Digicel-Haiti's damages claim, therefore, fails as well.

### C. Because Digicel-Haiti Cannot Recovery Compensatory Damages, Its Claim for Punitive Damages Fails as a Matter of Law.

Punitive damages can only be assessed *after* the jury has awarded compensatory damages. *Klinicki v. Lundgren,* 298 Or. 662, 687, 695 P.2d 906 (1985) ("Punitive damages cannot exist alone"; "actual damages are to compensate the injured party, whereas punitive damages are 'to give bad actors a legal spanking,'" quoting Lane *County v. Wood*, 298 Or. 191, 203, 691 P.2d 473 (1984)); *see also Roshak v. Leathers*, 277 Or. 207, 211, 560 P.2d 275 (1977) ("Punitive damages can only be justified on the theory of determent…It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper." (citations omitted)). Accordingly, where compensatory damages fail, so too must a claim of punitive damages. Because Digicel-Haiti cannot meet its burden of establishing compensatory damages, its punitive damages claim must also be dismissed.

Dated: November 16, 2022.                    TOMASI BRAGAR DUBAY


By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

DAVIS WRIGHT TREMAINE LLP

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    *(Admitted Pro Hac Vice)*
    Katherine Sheriff, D.C. Bar #1632141
    katherinesheriff@dwt.com
    Telephone: (202) 973-4200

*Of Attorneys for Defendants*

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2022, I served the foregoing **DEFENDANTS' SUPPLEMENTAL BRIEFING REGARDING LOST PROFITS AND MOTION FOR DIRECTED VERDICT PURSUANT TO RULE 50(a)** on the following individuals by electronic service to said individuals:

Robert C.L. Vaughan
Cherine Smith Valbrun
Leah Storie
Anisha Carla Atchanah
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue • Suite 2001
Fort Lauderdale, FL 33394
Email: rvaughan@kvllaw.com
Email: cvalbrun@kvllaw.com
Email: lstorie@kvllaw.com
Email: aatchanah@kvllaw.com

Anne M. Talcott
Kathryn E. Kelly
Andrew J. Lee
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Email: atalcott@schwabe.com
Email: kkelly@schwabe.com
Email: ajlee@schwabe.com

Kent D. Bressie
HWG LLP
1919 M Street N.W., Suite 800
Washington, D.C. 20036
Email: kbressie@hwglaw.com

Dated: November 16, 2022.

TOMASI BRAGAR DUBAY

DAVIS WRIGHT TREMAINE LLP

By: /s/ Eleanor A. DuBay
    Kathryn P. Salyer, OSB #883017
    Eleanor A. DuBay, OSB #073755
    Blake Van Zile, OSB #184672
    ksalyer@tomasilegal.com
    edubay@tomasilegal.com
    bvanzile@tomasilegal.com
    Telephone: (503) 894-9900

By: /s/ Christopher W. Savage
    Christopher W. Savage, D.C. Bar #362657
    chrissavage@dwt.com
    *(Admitted Pro Hac Vice)*
    Katherine Sheriff, D.C. Bar #1632141
    katherinesheriff@dwt.com
    Telephone: (202) 973-4200

*Of Attorneys for Defendants*

*TOMASI BRAGAR DUBAY*
121 SW Morrison Street, Suite 1850
Portland, Oregon 97204
Telephone: (503) 894-9900
Facsimile: (971) 544-7236