IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNIGESTION HOLDING, S.A.**, a foreign corporation, d/b/a **DIGICEL HAITI**,<br><br>    Plaintiff and<br>    Counter-Claim Defendant,<br><br>    v.<br><br>**UPM TECHNOLOGY, INC.**, *et al.*,<br><br>    Defendants and<br>    Counter-Claim Plaintiffs. | Case No. 3:15-cv-185-SI<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

After a five-day trial, the jury returned a verdict in the amount of $5.4 million in total compensatory damages and $4.3 million in total punitive damages in favor of Plaintiff Unigestion Holding, S.A., doing business as Digicel Haiti, Inc. ("Digicel Haiti"), and against Defendants UPM Technology, Inc. ("UPM") and its founder and Chief Executive Officer, Duy "Bruce" Tran ("Mr. Tran"). The jury found that both UPM and Mr. Tran (collectively, "Defendants") had engaged in fraud by active concealment by using Human Behavior Simulation ("HBS") software to conceal the fact that they were placing international phone calls on Digicel Haiti's communications network in Haiti without paying Digicel Haiti's rate for

PAGE 1 – ORDER

international calls. The jury determined that UPM was solely responsible for 75 percent of Digicel Haiti's actual damages and Mr. Tran was solely responsible for 25 percent of Digicel Haiti's actual damages. The jury also awarded punitive damages against UPM in the amount of $3.6 million and against Mr. Tran in the amount of $700,000. The Court received the jury's verdict and discharged the jury but deferred entering judgment.

UPM filed a renewed motion for judgment as a matter of law and alternative motion for a new trial. The Court heard oral argument, during which Mr. Tran orally joined UPM's motion and alternative motion without objection by Digicel Haiti and reserved the right to file a future motion on any grounds that are not repetitive of UPM's arguments. The Court granted in part and denied in part Defendants' renewed motion for judgment as a matter of law. The Court reduced Digicel Haiti's total compensatory damages to $1.8 million because the evidence did not support the jury's finding of $3.6 million in damages for lost profits. The Court also reduced the punitive damage award against UPM from $3.6 million to $1.2 million and decreased the punitive damage award against Mr. Tran from $700,000 to $233,333.33. The Court denied the alternative motion for a new trial. The parties are familiar with the background of this case, and a thorough discussion can be found at *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 2025 WL 33165, at *1-2 (D. Or. Jan. 6, 2025).

Now before the Court are Digicel Haiti's motion for reconsideration of the Court's Opinion and Order granting in part Defendants' motion for judgment as a matter of law, ECF 570, Defendants' motion for reconsideration of the same Opinion and Order, ECF 576, and Mr. Tran's renewed motion for judgment as a matter of law and alternative motion for a new trial, ECF 577. For the reasons explained below, the Court denies all three motions.

**STANDARDS**

**A. Reconsideration**

Rule 54(b) of the Federal Rules of Civil Procedure provides that any order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The rule, however, does not address the standards that a district court should apply when reconsidering interlocutory orders, and the Ninth Circuit has not established a standard of review. "Rule 54(b) is not a mechanism to get a 'do over' to try different arguments or present additional evidence when the first attempt failed. Thus, while the limits governing reconsideration of final judgments under Rule 59(e) do not strictly apply, courts frequently invoke them as common-sense guideposts when parties seek reconsideration of an interlocutory ruling under Rule 54(b)." Stephen S. Gensler & Lumen N. Mulligan, 2 *Fed. R. of Civ. P., Rules and Commentary*, Rule 54 (2022).

When reconsidering an interlocutory order, district courts in the Ninth Circuit have stated:

> Motions to reconsider under Rule 54(b), while generally disfavored, may be granted if: (1) there are material differences in fact or law from that presented to the court and, at the time of the court's decision, the party moving for reconsideration could not have known the factual or legal differences through reasonable diligence; (2) there are new material facts that happened after the Court's decision; (3) there has been a change in law that was decided or enacted after the court's decision; or (4) the movant makes a convincing showing that the court failed to consider material facts that were presented to the court before the court's decision.

*In re Galena Biopharma, Inc. Derivative Litig.*, 2014 WL 5494890 (D. Or. Oct. 30, 2014) (quoting *Lyden v. Nike, Inc.*, 2014 WL 4631206, at *1 (D. Or. Sept. 15, 2014)); *see also Stockamp & Assocs. v. Accretive Health*, 2005 WL 425456, at *6-7 (D. Or. Feb. 18, 2005) (discussing the four factors as established in the local rules of the Central District of California

and applied by other district courts within the Ninth Circuit); *cf. U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (noting that courts have more discretion in evaluating reconsideration under Rule 54(b) and concluding that "a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice" (quotation marks omitted)). However, "[w]hile a motion for reconsideration allows a party to bring a material oversight to the court's attention, it is not appropriate for a party to request reconsideration merely to force the court to think about an issue again in the hope that it will come out the other way the second time." *Brown v. S. Nev. Adult Mental Health Servs.*, 2014 WL 2807688, at *2 (D. Nev. June 20, 2014) (cleaned up).

### B.  Judgment as a Matter of Law

Under Rule 50(b) of the Federal Rules of Civil Procedure, judgment as a matter of law is proper if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quotation marks omitted); *see also Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (explaining that a motion for judgment as a matter of law must be granted if "the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party" (quotation marks omitted)). Because a motion under Rule 50(b) is a renewed motion, "a party cannot properly 'raise arguments in its post-trial motion for judgment as a matter of law . . . that it did not first raise in its pre-verdict Rule 50(a) motion.'" *Go Daddy*, 581 F.3d at 961 (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)).

A court reviews properly raised arguments challenging the factual sufficiency of a jury's verdict for substantial evidence. That means that "the jury's verdict must be upheld if there is

'evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.'" *Id.* at 963 (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)); *see also Weaving*, 763 F.3d at 1111 (noting that substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion[,] even if it is possible to draw two inconsistent conclusions from the evidence" (quotation marks omitted)).

In evaluating a motion for judgment as a matter of law, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). Further, the Court may not make credibility determinations, weigh the evidence, or "substitute its view of the evidence for that of the jury." *Krechman v. County of Riverside*, 723 F.3d 1104, 1110 (9th Cir. 2013) (cleaned up).

### C.  New Trial

Under Rule 59(a) of the Federal Rules of Civil Procedure, a district court may "on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation marks omitted). "Rather, the court is 'bound by those grounds that have been historically recognized.'" *Id.* (quoting *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003)). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Id.* (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)); *see also Shimko v. Guenther*, 505 F.3d 987, 993 (9th Cir. 2007).

Unlike a motion (or renewed motion) for judgment as a matter of law under Rule 50, when considering a motion for new trial under Rule 59 the Court is not limited to viewing the evidence in the light most favorable to the nonmoving party. *Experience Hendrix*, 762 F.3d at 842. Rather, the Court "can weigh the evidence and assess the credibility of the witnesses." *Id.* "The district court also is not limited to the grounds a party asserts to justify a new trial but may sua sponte raise its own concerns about the damages verdict." *Id.* Although a district court may view the evidence differently than the jury, it may not substitute its "evaluations for those of the jurors." *Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003); *see also Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) ("[A] district court may not grant a new trial simply because it would have arrived at a different verdict."); *France Telecom S.A. v. Marvell Semiconductor Inc.*, 2015 WL 925892, at *1 (N.D. Cal. Mar. 2, 2015) (noting that a judge should not grant a new trial unless "left with the definite and firm conviction that a mistake has been committed" (quoting *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1371-72 (9th Cir. 1987))).

A "trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski*, 481 F.3d at 729 (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). In determining the clear weight of the evidence, "the district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" *Id.* (cleaned up).

# DISCUSSION

## A. Motions for Reconsideration

Digicel Haiti seeks reconsideration of the Court's reduction in punitive damages. Defendants also seek reconsideration of the Court's reduction in punitive damages, requesting the Court to either vacate all punitive damages or order a new trial solely on the issue of punitive damages. Defendants further move for reconsideration of the Court's finding that Defendants waived both their implied-in-fact contract argument and their argument that mitigation costs cannot be the only basis for actual damages. All parties argue that reconsideration is warranted because the Court failed to consider certain facts or law and there is clear error.

### 1. Punitive Damages

Digicel Haiti does not cite any authority holding that a court may not reduce punitive damages in connection with a reduction in compensatory damages. Instead, Digicel Haiti argues that a reduction in compensatory damages does not require a corresponding reduction in punitive damages and the jury's punitive damages award is consistent with due process, such that the Court should not disturb the jury's findings. *See, e.g.*, *McGee v. Tucoemas Fed. Credit Union*, 153 Cal. App. 4th 1351, 1362 (2007); *Betts v. Allstate Ins. Co.*, 154 Cal. App. 3d 688, 712 (1984); *Hamlin v. Hampton Lumber Mills, Inc.*, 349 Or. 526, 533 (2011). None of these state court decisions, however, support Digicel Haiti's argument for reconsideration. Instead, the cases merely upheld a trial court's decision not to reduce punitive damages.

Defendants argue that the Court should vacate the entire award of punitive damages. Defendants contend that the jury would not have awarded the same punitive damages absent the award of compensatory damages for lost profits. By decreasing the punitive damages, Defendants assert, the Court has encroached upon a role that is the "peculiar function of the jury." *Pac. Mut. Life Ins. v. Haslip*, 499 U.S. 1, 16 (1991) (quotation marks omitted). In support,

Defendants cite decisions from outside the Ninth Circuit in which courts vacated punitive damage awards when the compensatory damage awards were premised on insufficient evidence.

Defendants focus on *Schwigel v. Kohlmann*, a Wisconsin Court of Appeals case, in which the trial court overturned the majority of the compensatory damage award and then held that the punitive award similarly could not stand. 254 Wis. 2d 830, 841 (Wis. Ct. App. 2002). The court vacated $250,000 of the jury's $262,000 compensatory award and vacated the entire $300,000 punitive damages award, explaining that "[t]he jury did not award $300,000 in punitive damages based on a $12,000 compensatory damage award. *Instead, the jury awarded $300,000 in punitive damages based upon a $262,000 compensatory damage award*." *Id.* at 841-42 (emphasis in original). "To surmise that the jury would have made the same punitive damage award based upon a $12,000 compensatory damage award is rank speculation." *Id.* at 842. The court thus reversed the entire punitive damage award and remanded for a new trial. Defendants here note that the jury's punitive damage award against UPM was equal to the lost-profits award against Defendants, which they say supports their argument that the entire award cannot stand. But this argument ignores that only 75 percent of the lost-profits award ($2.7 million) was allocated to UPM.

Neither party meets the required showing that the Court has overlooked material facts or law or that there has been clear error. There is no binding authority that requires the Court either to maintain or to vacate entirely the jury's punitive damage award. The Court's reduction in punitive damages is not speculative, given the relationship between the amount of the punitive damages awarded and the compensatory damages found by the jury. The Court thus denies both motions for reconsideration regarding punitive damages.

PAGE 8 – ORDER

**2. Waiver**

Defendants also move for reconsideration of the Court's finding that Defendants waived certain arguments by failing to raise them in their Rule 50(a) motions. Defendants argue that Digicel Haiti did not argue waiver, and thus the Court should not *sua sponte* have made such a finding. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018) ("[I]f a party fails to object to a Rule 50(b) motion on the basis of waiver, then the party waives its waiver defense."). Defendants cite a Ninth Circuit case stating that if a party "does not object to an improperly filed Rule 50(b) motion . . . *before the trial court*, then the procedural flaw in the Rule 50(b) motion is waived and we will review the district court's denial of such a Rule 50(b) motion de novo." *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 838-39 (9th Cir. 2003) (emphasis added), *abrogated on other grounds by OTR Wheel Eng'g, Inc.*, 897 F.3d 1008. This case, however, does not preclude a trial court from making waiver findings *sua sponte*. It merely holds that an appellate court might not consider waiver if waiver was not raised before the district court.

Defendants further note that district courts within the Ninth Circuit have proceeded to the merits of a party's Rule 50(b) motion when the nonmovant waives the waiver defense. *See, e.g.*, *Jones v. Nat'l R.R. Passenger Corp.*, 2023 WL 3852696, at *3 n.4 (N.D. Cal. June 5, 2023); *Adams v. Roberts*, 2021 WL 3545315, at *6 n.7 (D. Mont. Aug. 11, 2021). But these cases do not mandate that a court cannot find waiver *sua sponte*.

As Digicel Haiti also notes, the Court ruled on the merits of Defendants' reliance argument and the materiality and injury arguments based on the existence of an implied-in-fact contract in ruling on Defendants' motion for new trial. ECF 566. The Court held that the weight of the evidence shows that Digicel Haiti reasonably relied on UPM's representations, and that Defendants had not raised the issue of an implied-in-fact contract during trial, such that there was

no possibility that a reasonable jury would find that UPM's misrepresentations were not material or that Digicel Haiti did not suffer an injury based on an implied-in-fact contract.

Defendants also argue that they properly preserved the arguments that Digicel Haiti suffered no injury because it was fulfilling its legal obligations under an implied-in-fact contract and that mitigation damages cannot stand on their own. Defendants cite the Ninth Circuit's guidance that Rule 50(b) is not a "harsh" rule and is given "a liberal interpretation." *Go Daddy*, 581 F.3d at 961; *see also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286-87 (2d Cir. 1998) (holding that "the JMOL motion must at least identify the specific element that the defendant contends is insufficiently supported" and "provide the opposing party with the requisite notice"). Accordingly, Defendants contend, their Rule 50(a) argument that there was "an insufficient showing to go to the jury that [Digicel Haiti has] suffered any harm at all under any theory" preserves their argument that Digicel Haiti suffered no legal injury. ECF 537 at 121 (Tr. at 1061:8-9). Similarly, Defendants assert that their argument that Digicel Haiti "failed to provide the jury with evidence from which one could discern the existence of any amount of damages," *id.* (Tr. at 1061:10-12), and their supplemental Rule 50(a) briefing, in which they argued that Digicel Haiti must present evidence that its mitigation costs arose directly from Defendants' alleged fraud, ECF 516 at 10, preserve their argument that mitigation damages cannot stand on their own. Digicel Haiti responds that Defendants' Rule 50(a) motion did not "specify the judgment sought and the law and facts that entitle the movant to the judgment," as required by Rule 50(a), and was merely a "general denial that Digicel Haiti has met its burden of establishing harm and damages."

Defendants' Rule 50(a) arguments were not sufficiently like their Rule 50(b) arguments. Arguing that there was an insufficient showing of harm under any theory does not encompass the

PAGE 10 – ORDER

implied-in-fact contract argument, especially because, as noted above, Defendants did not present any evidence of or arguments about an implied-in-fact contract to the jury. Likewise, a broad statement that Digicel Haiti did not provide any evidence of damages is not sufficiently related to the argument that mitigation damages cannot stand alone.

Further, even if Defendants had not waived these arguments, the Court already considered their merits. The Court held that Defendants did not present evidence of an implied-in-fact contract and held that Digicel Haiti had proven sufficient mitigation costs caused by Defendants' fraud. The Court thus denies Defendants' motion for reconsideration.[1]

## B. Motion for Judgment as a Matter of Law

Mr. Tran moves for judgment as a matter of law, arguing that Digicel Haiti failed to prove that Mr. Tran participated in any fraudulent conduct and that Digicel Haiti is entitled to punitive damages against Mr. Tran. The Court addresses these arguments in turn.

### 1. Mr. Tran's Participation

Mr. Tran argues that Digicel Haiti did not provide clear and convincing evidence that Mr. Tran participated in any fraudulent conduct, and that the jury's apportionment of 25 percent of liability to Mr. Tran is arbitrary and should be vacated. Digicel Haiti responds that it presented clear and convincing evidence that Mr. Tran both had actual knowledge of the fraud and personally participated in the fraud, as required to hold him liable.

The Court instructed the jury:

> To hold an officer of a corporation liable for fraudulent conduct committed by the corporation, a plaintiff must first establish by clear and convincing evidence that the corporation is liable for

---

[1] Defendants also argue that the Court's modification of the jury's special verdict presents a material difference in fact or law that requires the Court to reconsider its finding on whether Defendants' motion as to out-of-pocket damages was waived. Because the Court finds that its decision on waiver did not affect its conclusion, the Court rejects this argument.

> fraud. If that is your finding, the plaintiff must then prove, also by clear and convincing evidence, that the officer either personally participated in the fraudulent conduct or had knowledge of the fraudulent conduct being committed and did not stop it from occurring.

ECF 521, Final Jury Instr. No. 17. This instruction is consistent with Oregon law. *See McFarland v. Carlsbad Hot Springs Sanitarium Co.*, 68 Or. 530, 539 (1913) ("[I]n order to maintain an action for deceit against an officer or agent of a corporation, it is necessary to allege and prove that such officer or agent in some manner participated in the fraudulent representations."); *Osborne v. Hay*, 284 Or. 133, 145-46 ("[I]]n order to hold the officer of a corporation personally liable for fraud by an agent or employee of the corporation it is necessary to show that the officer had knowledge of the fraud, either actual or imputed, or that he personally participated in the fraud."); *Hoff v. Peninsula Drainage Dist. No. 2*, 172 Or. 630, 643 (1943) ("Directors who do not participate in or authorize the making of fraudulent representations are not chargeable with fraud.").

At trial, Mr. Tran presented evidence that he was responsible merely for "creating the company's vision and overall direction," providing "general guidance" to "key employees," and making certain "key decisions." ECF 534 at 240-41 (Tr. 382:14-383:2); *see also id.* (Tr. 382:23-383:2) (Mr. Tran was not involved with "the minutiae on the day-to-day levels for everybody"); *id.* at 240 (Tr. 382:10-13) (Mr. Tran does not "manage everybody," as "there are layers"); ECF 535 at 239 (Tr. 652:19-23) (SIM managers were responsible for "manag[ing] the assignment of calls to SIMs" with respect to calls to Haiti).

The jury, however, also heard evidence from Digicel Haiti that Mr. Tran was involved in communications regarding UPM's use of HBS software, the installation of gateways in Haiti, and efforts to conceal bypass-related equipment shipments. *See* Trial Ex. 193 (Mr. Tran copied on emails about "implement[ing] this human behavior simulation scenarios"); ECF 534 at 224-

PAGE 12 – ORDER

27 (Tr. 366:13-369:4); Trial Ex. 217 (Mr. Tran emailing a project manager about gateways in Haiti); Trial Ex. 8 (email from UPM's former Network Operations Center Project Manager requesting Mr. Tran's approval for shipping procedures designed to conceal gateway devices).

In addition to Mr. Tran's receipt of communications regarding HBS, Mr. Tran emailed his friend Mark Baker, stating: "We tried our protection technology in Haiti and it seems to work. My model is soon to license my technology to other companies like UPM who is doing bypass." Trial Ex. 48. The Court asked Mr. Tran what the term "protection technology" meant in his email, ECF 536 at 123 (Tr. 808:12-13), and Mr. Tran responded, "So a protection—it protects SIMs, of course. It doesn't exist. But what it would do is try to keep the SIMs alive longer. That's what it would mean." *Id.* (Tr. 808:20-22).

Mr. Tran argues that the email merely shows that UPM tested non-HBS technology in Haiti. He explained that he sent this email because, "You test a few things, and it seems to work. Then once you use it, it doesn't work. Then you stop it. At that time I had high hope that it actually could work. That's why I'm saying, 'it seems to work.' I'm not saying it is working." *Id.* at 126 (Tr. 811:7-11). He also testified that "the statement that [the] technology 'seems to work' [was] made in the context" of his attempt to sell gateways to Mr. Baker. *Id.* at 127 (Tr. 812:6-8).

Finally, Mr. Tran testified that the protection technology was "whitelist based call screening," *id.* at 126 (Tr. 811:3-20), in which calls are accepted or rejected based on if the number is on a known list, not HBS technology. Digicel Haiti's expert, Kenneth McEwen, conceded that whitelist screening without call scoring, where a phone number is assigned a score based on how it is used, is not HBS, but that scoring is a form of HBS. *Id.* at 183-84, 185-86 (Tr. 868:24-869:20, 870:11-871:5). Mr. Tran argues that Mr. McEwen's opinion on scoring is

conclusory and must be rejected.[2] Mr. McEwen, however, explained that HBS is used to affect characteristics of a call that then determine the score, *id.* at 183-84, 185-86 (Tr. 868:24-869:20, 870:11-871:5), and thus his opinion is proper.

Mr. Tran testified that the protection technology was to prevent SIM cards being used in bypass from being deactivated. ECF 536 at 129-130 (Tr. 814:20-21). A reasonable conclusion was that the referenced protection technology was the HBS technology that disguised bypass. There may be several interpretations of this email, but it is sufficient to support the jury's finding that Mr. Tran was personally involved in the use of HBS. Digicel Haiti also argues that Mr. Tran was impeached to argue that it was reasonable for the jury to decide that Mr. Tran was not credible. *See, e.g.*, ECF 535 at 76-81 (Tr. 489:6-494:18) (Mr. Tran first claiming that "in the deposition it was misunderstood" and that what he said was "[he] could have 20 gateways if [he] really wanted to," but then admitting to having at least 1 gateway in his Oregon residence). This further supports that a reasonable jury could find that Mr. Tran personally participated in the use of HBS and was responsible for 25 percent of Digicel Haiti's damages. The Court thus denies Mr. Tran's motion for judgment as a matter of law on this ground.

### 2. Punitive Damages

Mr. Tran also argues that Digicel Haiti failed to prove that it is entitled to punitive damages against Mr. Tran because (1) Digicel Haiti did not prove that Mr. Tran engaged in intentional conduct; (2) there is no nexus between Mr. Tran's conduct and Oregon; (3) Mr. Tran

---

[2] Although Defendants did not object to this testimony at trial, they moved *in limine* pretrial to exclude Mr. McEwen's testimony. The Court denied this motion in part, holding that Mr. McEwen could testify to the basics of how bypass works. Mr. Tran thus has not waived this argument. *See Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 ("[W]here the substance of the objection has been thoroughly explored during the hearing on the motion *in limine*, and the trial court's ruling permitting introduction of evidence was explicit and definitive, no further action is required to preserve for appeal the issue of admissibility of that evidence.").

lacks the requisite reprehensibility necessary to award punitive damages; and (4) as detailed in Defendants' motion for reconsideration, the punitive damages award must be dismissed in its entirety because the Court eliminated all lost-profits damages. Digicel Haiti responds that these arguments have already been addressed in Defendants' previous motion for judgment as a matter of law and all fail on the merits. The Court agrees that the argument regarding the nexus to Oregon has already been addressed[3] and denies the motion on that ground, and addresses Mr. Tran's remaining arguments in turn.

### a. Intentional Conduct

Mr. Tran cites the jury instructions provided by the Court, which state, "You may award punitive damages against a defendant if the plaintiff shows by clear and convincing evidence that a defendant acted with malice. In this context, 'malice' means intentionally doing an injurious or wrongful act without justification or excuse." ECF 521, Final Jury Instr. No. 20. Mr. Tran argues that Digicel Haiti presented no evidence of his intentional conduct, and thus punitive damages are not supported. But, as discussed above, Digicel Haiti presented sufficient evidence for a reasonable jury to find that Mr. Tran acted intentionally in the use of HBS. *See, e.g.*, Trial Ex. 48. The Court thus denies Mr. Tran's motion on this ground.

### b. Reprehensibility

Mr. Tran argues that punitive damages are improper because he did not act reprehensibly. He contends that punitive damages "are reserved for conduct that violates fundamental societal

---

[3] Mr. Tran requests that if the Court considers its earlier Opinion and Order controlling, the Court should treat this portion of his motion as a motion for partial reconsideration based on Ninth Circuit caselaw holding that a jury may not punish a defendant for out-of-state conduct. *White v. Ford Motor Co.*, 312 F.3d 998, 1020 (9th Cir. 2002). The harm-producing activity here occurred in Oregon and was launched from Oregon; thus, punitive damages are consistent with *White*.

norms, not ordinary business competition." Digicel Haiti responds that the Court previously found that there was sufficient evidence to support that UPM intentionally engaged in fraud. Digicel Haiti argues that this finding applies to Mr. Tran as well, and that fraud is inherently reprehensible. *Badger v. Paulson Inv. Co.*, 311 Or. 14, 30 (1991). As discussed, Digicel Haiti presented sufficient evidence at trial to establish that Mr. Tran acted reprehensibly: its evidence showed that Mr. Tran intentionally engaged in HBS-assisted bypass, which injured Digicel Haiti. The Court therefore denies Mr. Tran's motion on this ground.

### c. Compensatory Damages

Finally, Mr. Tran argues that, as set forth in Defendants' motion to reconsider, ECF 576, the punitive damages award cannot stand because the Court has vacated the jury's award of all lost-profits damages. Digicel Haiti responds that the Court has already ruled on this issue in its Opinion and Order on Defendants' motion for judgment as a matter of law, ECF 566, and cites its response to Defendants' motion for reconsideration, ECF 581. As discussed above and in the Court's previous Opinion and Order, Digicel Haiti adequately has established actual damages based on its out-of-pocket expenses and an award of punitive damages is appropriate. The Court thus denies Mr. Tran's motion.

## C. Motion for a New Trial

Mr. Tran moves in the alternative for a new trial under Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure, arguing that Digicel Haiti made improper references to the legality of bypass under Haitian law. The Court already addressed this argument in its ruling on Defendants' motion for judgment as a matter of law and held that this evidence did not substantially prejudice Defendants. ECF 566 at 21-23.[4] The Court thus denies this motion.

---

[4] Mr. Tran also argues that the Court erred in applying the substantial prejudice test, and instead should have evaluated whether "it is more probable than not that the jury would have

## CONCLUSION

The Court DENIES Digicel Haiti's motion for reconsideration, ECF 570. The Court also DENIES Defendants' motion for reconsideration, ECF 576. Finally, the Court DENIES Mr. Tran's renewed motion for judgment as a matter of law and his alternative motion for a new trial, ECF 577.

**IT IS SO ORDERED.**

DATED this 10th day of March, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

reached the same verdict even if the evidence had been admitted." *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005). *Obrey*, however, provides the standard for an appellate court "reviewing the effect of erroneous evidentiary rulings," not for a district court deciding a motion for a new trial. *Id.*